**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF
TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re: Highland Capital Management, L.P.** | § | Case No. **19-34054-SGJ-11** |
| The Charitable DAF Fund LP | § | |
| | § | |
| Appellant | § | 22-03052 |
| vs. | § | |
| **Highland Capital Management, L.P.** | § | |
| | § | |
| Appellee | § | **3:22-CV-02280-S** |

**[43]  Order granting amended motion to dismiss adversary proceeding with prejudice (related
document # 19) Entered on 9/30/2022**

**APPELLANT RECORD
VOLUME 3**

SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367

*Counsel for The Charitable DAF Fund, L.P.*
*and CLO Holdco, Ltd.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| THE CHARITABLE DAF FUND, L.P. | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 22-03052-sgj11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | *INDEX* |
| | § | |

## APPELLANT'S SECOND AMENDED STATEMENT OF ISSUES AND
## DESIGNATION OF RECORD ON APPEAL

Pursuant to Rules 8009(a)(1)(A)-(B) and (a)(4) of the Federal Rules of Bankruptcy

Procedure, The Charitable DAF Fund, L.P. ("Appellant") hereby designates the following items

to be included in the record and identifies the following issues with respect to its appeal of the

Order Granting Defendant's Amended Motion to Dismiss Adversary Proceeding [Doc.43] which

was entered by the United States Bankruptcy Court for the Northern District of Texas on

September 30, 2022.

**I.      STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL**

Whether the Bankruptcy Court erred in granting Defendant's Amended Motion to Dismiss Adversary Proceeding.

**II.     DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD**

*Vol. 1*
*000001*       1.      Notice of Appeal for Bankruptcy Case Adversary Proceeding No. 21-03067-sgj11 [Doc. 46].

*000004*     2.      The judgment, order, or decree appealed from: Order Granting Amended Motion to Dismiss Adversary Proceeding [Doc. 43].

3.      Any opinion, findings of fact and conclusions of law of the bankruptcy court relating to the issues on appeal, including transcripts of all oral rulings: None.

*000032*    3.      Docket Sheet kept by the Bankruptcy Clerk.

4.      Documents listed below and as described in the Docket Sheet for Bankruptcy Case Proceeding No. 22-03052-sgj.

| No. | Date Filed | Docket No. | Description/Document Text |
|---|---|---|---|
| 1 | 5/25/22 (7/22/21) | 1 | (18 pgs; 4 docs) Adversary case 22-03052. ORDER REFERRING CASE 3:21-CV-1710-N from U.S District Court for the Northern District of Texas, Dallas Division to U.S. Bankruptcy Court for Northern District of Texas, Dallas Division and Complaint by Charitable DAF Fund, LP against Highland Capital Management, L.P. Fee Amount $350 (Attachments: # 1 Original Complaint # 2 Civil Cover Sheet # 3 Docket Sheet from 21-CV-1710). Nature(s) of suit: 02 (Other (e.g., other actions that would have been brought in state court if unrelated to bankruptcy)). (Okafor, Marcey) |
| 2 | 5/25/22 (10/5/21) | 8 | (8 pgs; 2 docs) MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) Attorney Zachery Z. Annable added to party Highland Capital Management LP(pty: dft) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #8 ON |

*Vol. 2*

*000040*

*000058*

*Vol. 2*

| | | | 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
|---|---|---|---|
| 3 | 5/25/22 (10/5/21) | 9 | (15 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #9 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 4 | 5/25/22 (10/5/21) | 10 | (1012 pgs; 28 docs) Appendix in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #10 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION](Okafor, Marcey) |
| 5 | 5/25/22 (10/5/21) | 11 | (8 pgs; 2 docs) MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #11 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 6 | 5/25/22 (10/5/21) | 12 | (10 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Annable, Zachery [ORIGINALLY FILED IN 21-CV-1710 AS #12 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 7 | 5/25/22 (10/5/21) | 13 | ((238 pgs; 4 docs) Appendix in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 |

*000066*

*000081*

*Thru Vol. 6*

*Vol. 7*

*001093*

*001101*

*001111*

| VOL. 8 | | | | AS #13 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
|---|---|---|---|
| 001349 | 8 | 5/25/22 (10/27/21) | 15 | (3 pgs) RESPONSE filed by Charitable DAF Fund LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Sbaiti, Mazin) [ORIGINALLY FILED IN 21-CV-1710 AS #15 ON 10/27/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 001352 | 9 | 5/25/22 (11/5/21) | 16 | (7 pgs) REPLY filed by Highland Capital Management LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #16 ON 11/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 001359 | 10 | 5/25/22 (11/21/21) | 18 | (2 pgs) ORDER re: 8 Motion for Reconsideration. The Court grants Defendant's motion, lifts the stay, and refers this case to Judge Stacey G.C. Jernigan of the United States Bankruptcy Court for the Northern District of Texas, to be adjudicated as a matter related to the Chapter 11 Bankruptcy of HCM., Chapter 11 Case No. 10-34054. The Clerk of this Court and the Clerk of the Bankruptcy Court to which this case is referred are directed to take such actions as are necessary to docket this matter as an Adversary Proceeding associated with the aforementioned consolidated bankruptcy case. (Ordered by Judge David C Godbey on 5/19/2022) (oyh) (Main Document 18 replaced on 5/23/2022) (twd). (Entered: 05/20/2022) [ORIGINALLY FILED IN 21-CV-1710 AS #18 ON 11/21/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (*ERROR IN ENTRY: CORRECT CASE NUMBER IS: 19-34054*) (Okafor, Marcey) |
| 001361 | 11 | 5/27/22 | 19 | (8 pgs; 2 docs) Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments:# 1 Exhibit A--Proposed Order) (Annable, Zachery) |
| 001369 | 12 | 5/27/22 | 20 | (12 pgs) Brief in support filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| 001381 Thru VOL. 10 | 13 | 5/27/22 | 21 | (637 pgs) Support/supplemental document (Appendix in Support of Highland Capital Management, L.P.'s Amended |

| | | | | |
|---|---|---|---|---|
| | | | | *Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| Vol. 11<br>002018 | 14 | 6/1/22 | 23 | (6 pgs; 2 docs) Notice of hearing filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Hearing to be held on 8/3/2022 at 02:30 PM at https://us courts.webex.com/meet/jerniga for 19 and for 19, (Attachments: # 1 Exhibit A)(Hayward, Melissa) |
| 002024 | 15 | 7/5/22 | 30 | (12 pgs) Response opposed to (related document(s): 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) filed by Plaintiff Charitable DAF Fund, LP . (Ecker, C.) (Entered: 07/06/2022) |
| 002036 | 16 | 7/26/22 | 31 | (15 pgs) Reply to (related document(s): 30 Response filed by Plaintiff Charitable DAF Fund, LP) filed by Defendant Highland Capital Management, L.P.. (Annable, Zachery) |
| 002051<br>Thru Vol 14 | 17 | 7/26/22 | 32 | (865 pgs) Support/supplemental document *(Amended Appendix in Support of Highland Capital Management, L.P.'s Amended Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 21 Support/supplemental document). (Annable, Zachery) |
| Vol. 15<br>002916<br>Thru Vol. 18 | 18 | 8/1/22 | 34 | (867 pgs; 23 docs) Witness and Exhibit List *(Reorganized Debtor's Witness and Exhibit List with Respect to Evidentiary Hearing to Be Held on August 3, 2022)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22) (Annable, Zachery) |
| Vol. 19<br>003783<br>Thru Vol. 22 | 19 | 8/3/22 | 40 | (1 pg) Court admitted exhibits date of hearing August 3, 2022 (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments: # 1 Exhibit A--Proposed Order)) COURT ADMITTED EXHIBIT 17. COURT TOOK JUDICIAL NOTICE OF EXHIBITS 1-13, 21 AND 22. (Ellison, T.) (Entered: 08/04/2022) |

| vol. 22 004651 | 20 | 9/30/22 | 42 | (28 pgs) Memorandum of opinion regarding Defendant's amended motion to dismiss adversary proceeding (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Entered on 9/30/2022 (Okafor, Marcey) |
|---|---|---|---|---|
| 004679 | 21 | 8/4/22 | 41 | 41 Transcript regarding Hearing Held 08/03/2022 (45 pages) RE: Motion to Dismiss Adversary Proceeding (19). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 11/2/2022. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 37 Hearing held on 8/3/2022. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) (Appearances: G. Demo and Z. Annabel for Movant/Highland; J. Bridges for Respondant/Charitable DAF. Evidentiary hearing. Motion granted. Court to issue Opinion and Order.)). Transcript to be made available to the public on 11/2/2022. (Rehling, Kathy) |

Dated: November 28, 2022                    Respectfully submitted,

                                            **SBAITI & COMPANY PLLC**

                                            /s/  Mazin A. Sbaiti
                                            **Mazin A. Sbaiti**
                                            Texas Bar No. 24058096
                                            **Jonathan Bridges**
                                            Texas Bar No. 24028835
                                            JPMorgan Chase Tower
                                            2200 Ross Avenue – Suite 4900W
                                            Dallas, TX  75201
                                            T: (214) 432-2899
                                            F: (214) 853-4367
                                            E: mas@sbaitilaw.com
                                                jeb@sbaitilaw.com

                                            **Counsel for Appellant**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically through the Court's ECF system, which provides notice to all parties of interest, on this 28th day of November, 2022.

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti

# EXHIBIT 4

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01270-N   Document 64   Filed 2/07/21   Page 02 of 208   PageID 2338
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 1 of 66

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P. (AS MODIFIED)

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
          ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

- 1 -



1934054210122000000000013

000268

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01780-N   Document 8-4   Filed 08/06/21   Page 13 of 208   PageID 2389
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 2 of 66

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME,
        GOVERNING LAW AND DEFINED TERMS ..............................................1

    A.    Rules of Interpretation, Computation of Time and Governing Law....................1

    B.    Defined Terms ..........................................................................................2

ARTICLE II. ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS................16

    A.    Administrative Expense Claims....................................................................16

    B.    Professional Fee Claims...............................................................................17

    C.    Priority Tax Claims ....................................................................................18

ARTICLE III. CLASSIFICATION AND TREATMENT OF  CLASSIFIED CLAIMS
        AND EQUITY INTERESTS ...............................................................18

    A.    Summary....................................................................................................18

    B.    Summary of Classification and Treatment of Classified Claims and
          Equity Interests .........................................................................................19

    C.    Elimination of Vacant Classes ....................................................................19

    D.    Impaired/Voting Classes .............................................................................19

    E.    Unimpaired/Non-Voting Classes .................................................................19

    F.    Impaired/Non-Voting Classes .....................................................................19

    G.    Cramdown...................................................................................................19

    H.    Classification and Treatment of Claims and Equity Interests...........................20

    I.    Special Provision Governing Unimpaired Claims ..........................................24

    J.    Subordinated Claims...................................................................................25

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN .....................................25

    A.    Summary....................................................................................................25

    B.    The Claimant Trust .....................................................................................26

    1.    *Creation and Governance of the Claimant Trust and Litigation Sub-
          Trust.* ........................................................................................................26

    2.    *Claimant Trust Oversight Committee* ...............................................................27

000269
Appx 0484

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01270-S    Document 10-4    Filed 04/06/21    Page 4 of 208    PageID 2390
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 3 of 66

**Page**

3.    *Purpose of the Claimant Trust.* ...........................................................................27

4.    *Purpose of the Litigation Sub-Trust.* .................................................................28

5.    *Claimant Trust Agreement and Litigation Sub-Trust Agreement.* ......................28

6.    *Compensation and Duties of Trustees.* .............................................................29

7.    *Cooperation of Debtor and Reorganized Debtor.* ...........................................30

8.    *United States Federal Income Tax Treatment of the Claimant Trust.* ..............30

9.    *Tax Reporting.* ..................................................................................................30

10.    *Claimant Trust Assets.* ....................................................................................31

11.    *Claimant Trust Expenses.* ...............................................................................31

12.    *Trust Distributions to Claimant Trust Beneficiaries.* .....................................31

13.    *Cash Investments.* ............................................................................................31

14.    *Dissolution of the Claimant Trust and Litigation Sub-Trust.* ..........................32

C.    The Reorganized Debtor .................................................................................32

1.    *Corporate Existence* .........................................................................................32

2.    *Cancellation of Equity Interests and Release* ...................................................33

3.    *Issuance of New Partnership Interests* .............................................................33

4.    *Management of the Reorganized Debtor* ...........................................................33

5.    *Vesting of Assets in the Reorganized Debtor* ...................................................34

6.    *Purpose of the Reorganized Debtor* .................................................................34

7.    *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets* ...............................................................................34

D.    Company Action ..............................................................................................34

E.    Release of Liens, Claims and Equity Interests .................................................35

F.    Cancellation of Notes, Certificates and Instruments ........................................36

G.    Cancellation of Existing Instruments Governing Security Interests .................36

000270
App. 0185

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01270-S    Document 8-4    Filed 06/06/22    Page 35 of 208    PageID 3401
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 4 of 66

**Page**

    H.    Control Provisions ........................................................................................... 36

    I.    Treatment of Vacant Classes ........................................................................ 36

    J.    Plan Documents .............................................................................................. 36

    K.    Highland Capital Management, L.P. Retirement Plan and Trust ....................... 37

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
                LEASES ......................................................................................... 37

    A.    Assumption, Assignment, or Rejection of Executory Contracts and
            Unexpired Leases ........................................................................................... 37

    B.    Claims Based on Rejection of Executory Contracts or Unexpired
            Leases ............................................................................................................. 38

    C.    Cure of Defaults for Assumed or Assigned Executory Contracts and
            Unexpired Leases ........................................................................................... 39

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 39

    A.    Dates of Distributions .................................................................................... 39

    B.    Distribution Agent .......................................................................................... 40

    C.    Cash Distributions .......................................................................................... 41

    D.    Disputed Claims Reserve ............................................................................... 41

    E.    Distributions from the Disputed Claims Reserve ............................................ 41

    F.    Rounding of Payments ................................................................................... 41

    G.    *De Minimis* Distribution ................................................................................ 41

    H.    Distributions on Account of Allowed Claims ................................................ 42

    I.    General Distribution Procedures .................................................................... 42

    J.    Address for Delivery of Distributions ............................................................ 42

    K.    Undeliverable Distributions and Unclaimed Property .................................... 42

    L.    Withholding Taxes ......................................................................................... 43

    M.    Setoffs ........................................................................................................... 43

000271

App. 186

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N    Document 10-4    Filed 06/06/22    Page 5 of 208    PageID 2442
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 5 of 66

**Page**

    N.    Surrender of Cancelled Instruments or Securities ................................43

    O.    Lost, Stolen, Mutilated or Destroyed Securities ...................................43

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,
            UNLIQUIDATED AND DISPUTED CLAIMS............................................44

    A.    Filing of Proofs of Claim ....................................................................44

    B.    Disputed Claims ...................................................................................44

    C.    Procedures Regarding Disputed Claims or Disputed Equity Interests ...............44

    D.    Allowance of Claims and Equity Interests............................................44

    *1.*    *Allowance of Claims* ........................................................................45

    *2.*    *Estimation* .......................................................................................45

    *3.*    *Disallowance of Claims* ..................................................................45

ARTICLE VIII. EFFECTIVENESS OF THIS PLAN .................................................46

    A.    Conditions Precedent to the Effective Date .......................................46

    B.    Waiver of Conditions ..........................................................................47

    C.    Effect of Non-Occurrence of Conditions to Effectiveness**Error! Bookmark not defined.**

    D.    Dissolution of the Committee ..............................................................47

ARTICLE IX. EXCULPATION, INJUNCTION AND RELATED PROVISIONS .................48

    A.    General.................................................................................................48

    B.    Discharge of Claims.............................................................................48

    C.    Exculpation ..........................................................................................48

    D.    Releases by the Debtor.........................................................................49

    E.    Preservation of Rights of Action..........................................................50

    *1.*    *Maintenance of Causes of Action* ...................................................50

    *2.*    *Preservation of All Causes of Action Not Expressly Settled or Released*...........50

    F.    Injunction ............................................................................................51

000272

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01270-N    Document 16-4    Filed 07/06/21    Page 15 of 208    PageID 3443
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 6 of 66

**Page**

 G. Term of Injunctions or Stays ............................................................... 52

 H. Continuance of January 9 Order ......................................................... 52

ARTICLE X. BINDING NATURE OF PLAN ............................................................... 52

ARTICLE XI. RETENTION OF JURISDICTION ......................................................... 53

ARTICLE XII. MISCELLANEOUS PROVISIONS ....................................................... 55

 A. Payment of Statutory Fees and Filing of Reports .............................. 55

 B. Modification of Plan ........................................................................... 55

 C. Revocation of Plan ............................................................................. 55

 D. Obligations Not Changed .................................................................... 56

 E. Entire Agreement ................................................................................ 56

 F. Closing of Chapter 11 Case ................................................................ 56

 G. Successors and Assigns ...................................................................... 56

 H. Reservation of Rights .......................................................................... 56

 I. Further Assurances .............................................................................. 57

 J. Severability ......................................................................................... 57

 K. Service of Documents ......................................................................... 57

 L. Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code ........................................................................ 58

 M. Governing Law ................................................................................... 59

 N. Tax Reporting and Compliance .......................................................... 59

 O. Exhibits and Schedules ....................................................................... 59

 P. Controlling Document ......................................................................... 59

000273

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N    Document 16-4    Filed 2/06/22    Page 3 of 208    PageID 3434

Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 7 of 66

---
## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
---

HIGHLAND CAPITAL MANAGEMENT, L.P., as debtor and debtor-in-possession in the above-captioned case (the "<u>Debtor</u>"), proposes the following chapter 11 plan of reorganization (the "<u>Plan</u>") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtor.  Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of this Plan.  The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtor's history, business, results of operations, historical financial information, projections and assets, and for a summary and analysis of this Plan and the treatment provided for herein.  There also are other agreements and documents that may be Filed with the Bankruptcy Court that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Documents.  All such Exhibits and Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein.  Subject to the other provisions of this Plan, and in accordance with the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date.

If this Plan cannot be confirmed, for any reason, then subject to the terms set forth herein, this Plan may be revoked.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A.    Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Documents" are references to Articles, Sections, Exhibits and Plan Documents hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns;

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01230-N   Document 6-4   Filed 2006/52   Page 7 of 208   PageID 3445
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 8 of 66

(h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

**B.**   **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.  "*Acis*" means collectively Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

2.  "*Administrative Expense Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; and (b) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, and that have not already been paid by the Debtor during the Chapter 11 Case and a Professional Fee Claim.

3.  "*Administrative Expense Claims Bar Date*" means, with respect to any Administrative Expense Claim (other than a Professional Fee Claim) becoming due on or prior to the Effective Date, 5:00 p.m. (prevailing Central Time) on such date that is forty-five days after the Effective Date.

4.  "*Administrative Expense Claims Objection Deadline*" means, with respect to any Administrative Expense Claim, the later of (a) ninety (90) days after the Effective Date and (b) sixty (60) days after the timely Filing of the applicable request for payment of such Administrative Expense Claim; *provided, however,* that the Administrative Expense Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

5.  "*Affiliate*" of any Person means any Entity that, with respect to such Person, either (i) is an "affiliate" as defined in section 101(2) of the Bankruptcy Code, or (ii) is an "affiliate" as defined in Rule 405 of the Securities Act of 1933, or (iii) directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person.  For the purposes of this definition, the term "control" (including, without limitation, the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction in any respect of the management or policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

6.  "*Allowed*" means, with respect to any Claim, except as otherwise provided in the Plan: (a) any Claim that is evidenced by a Proof of Claim that has been timely Filed by the

000275
App. 0120

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 34    Filed 10/05/22    Page 18 of 208    PageID 346
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 9 of 66

Bar Date, or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy Code or a Final Order; (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed and for which no Proof of Claim has been timely filed; (c) a Claim Allowed pursuant to the Plan or an order of the Bankruptcy Court that is not stayed pending appeal; or (d) a Claim that is not Disputed (including for which a Proof of Claim has been timely filed in a liquidated and noncontingent amount that has not been objected to by the Claims Objection Deadline or as to which any such objection has been overruled by Final Order); *provided, however,* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed as set forth above.

7.   "*Allowed Claim or Equity Interest*" means a Claim or an Equity Interest of the type that has been Allowed.

8.   "*Assets*" means all of the rights, titles, and interest of the Debtor, Reorganized Debtor, or Claimant Trust, in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property, the Debtor's books and records, and the Causes of Action.

9.   "*Available Cash*" means any Cash in excess of the amount needed for the Claimant Trust and Reorganized Debtor to maintain business operations as determined in the sole discretion of the Claimant Trustee.

10.  "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510, 544, 545, and 547-553 of the Bankruptcy Code or under similar state or federal statutes and common law, including fraudulent transfer laws

11. "*Ballot*" means the form(s) distributed to holders of Impaired Claims or Equity Interests entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

12. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

13. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court having jurisdiction over the Chapter 11 Case.

14. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in each case as amended from time to time and as applicable to the Chapter 11 Case.

000276

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 34    Filed 10/06/22    Page 19 of 208    PageID 277
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 10 of 66

15. "*Bar Date*" means the applicable deadlines set by the Bankruptcy Court for the filing of Proofs of Claim against the Debtor as set forth in the Bar Date Order, which deadlines may be or have been extended for certain Claimants by order of the Bankruptcy Court.

16. "*Bar Date Order*" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and (II) Approving the Form and Manner of Notice Thereof* [D.I. 488].

17. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

19. "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Cause of Action includes, without limitation,: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims; (f) the Avoidance Actions, and (g) the Estate Claims.  The Causes of Action include, without limitation, the Causes of Action belonging to the Debtor's Estate listed on the schedule of Causes of Action to be filed with the Plan Supplement.

20. "*CEO/CRO*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer.

21. "*Chapter 11 Case*" means the Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Delaware Bankruptcy Court and transferred to the Bankruptcy Court on December 4, 2019, and styled *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj-11.

22. "*Claim*" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

23. "*Claims Objection Deadline*" means the date that is 180 days after the Confirmation Date; *provided, however,* the Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

000277

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 3034    Filed 10/06/27    Page 202 of 267    PageID 348
Case 19-34054-sgj11  Doc 1808  Filed 01/22/21    Entered 01/22/21 18:59:39    Page 11 of 66

24. "*Claimant Trust*" means the trust established for the benefit of the Claimant Trust Beneficiaries on the Effective Date in accordance with the terms of this Plan and the Claimant Trust Agreement.

25. "*Claimant Trust Agreement*" means the agreement Filed in the Plan Supplement establishing and delineating the terms and conditions of the Claimant Trust.

26. "*Claimant Trust Assets*" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

27. "*Claimant Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, including, upon Allowance, Disputed General Unsecured Claims and Disputed Subordinated Claims that become Allowed following the Effective Date, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, post-petition interest from the Petition Date at the Federal Judgment Rate in accordance with the terms and conditions set forth in the Claimant Trust Agreement and all Disputed Claims in Class 8 and Class 9 have been resolved, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

28. "*Claimant Trustee*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer, or such other Person identified in the Plan Supplement who will act as the trustee of the Claimant Trust in accordance with the Plan, the Confirmation Order, and Claimant Trust Agreement or any replacement trustee pursuant to (and in accordance with) the Claimant Trust Agreement.  The Claimant Trustee shall be responsible for, among other things, monetizing the Estate's investment assets, resolving Claims (other than those Claims assigned to the Litigation Sub-Trust for resolution), and, as the sole officer of New GP LLC, winding down the Reorganized Debtor's business operations.

29. "*Claimant Trust Expenses*" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Trustees on account of administration of the Claimant Trust, including any reasonable administrative fees and expenses, reasonable attorneys' fees and expenses, reasonable insurance costs, taxes, reasonable escrow expenses, and other expenses.

30. "*Claimant Trust Interests*" means the non-transferable interests in the Claimant Trust that are issued to the Claimant Trust Beneficiaries pursuant to this Plan; *provided*, *however*, Holders of Class A Limited Partnership Interests, Class B Limited Partnership Interests, and Class C Limited Partnership Interests will not be deemed to hold

000278

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 1034    Filed 10/06/21    Page 213 of 207    PageID 348
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 12 of 66

Claimant Trust Interests unless and until the Contingent Claimant Trust Interests distributed to such Holders vest in accordance with the terms of this Plan and the Claimant Trust Agreement.

31. "*Claimant Trust Oversight Committee*" means the committee of five Persons established pursuant to ARTICLE IV of this Plan to oversee the Claimant Trustee's performance of its duties and otherwise serve the functions described in this Plan and the Claimant Trust Agreement.

32. "*Class*" means a category of Holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to section 1122(a) of the Bankruptcy Code.

33. "*Class A Limited Partnership Interest*" means the Class A Limited Partnership Interests as defined in the Limited Partnership Agreement held by The Dugaboy Investment Trust, Mark and Pamela Okada Family Trust – Exempt Trust 2, Mark and Pamela Okada – Exempt Descendants' Trust, and Mark Kiyoshi Okada, and the General Partner Interest.

34. "*Class B Limited Partnership Interest*" means the Class B Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

35. "*Class B/C Limited Partnership Interests*" means, collectively, the Class B Limited Partnership and Class C Limited Partnership Interests.

36. "*Class C Limited Partnership Interest*" means the Class C Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

37. "*Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102(a)(1) on October 29, 2019 [D.I. 65], consisting of (i) the Redeemer Committee of Highland Crusader Fund, (ii) Meta-e Discovery, (iii) UBS, and (iv) Acis.

38. "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

39. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

40. "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

41. "*Convenience Claim*" means any prepetition, liquidated, and unsecured Claim against the Debtor that as of the Confirmation Date is less than or equal to $1,000,000 or any General Unsecured Claim that makes the Convenience Class Election. For the avoidance of doubt, the Reduced Employee Claims will be Convenience Claims.

000279

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 3034    Filed 14/06/27    Page 22 of 208    PageID 350
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 13 of 66

42. "*Convenience Claim Pool*" means the $13,150,000 in Cash that shall be available upon the Effective Date for distribution to Holders of Convenience Claims under the Plan as set forth herein. Any Cash remaining in the Convenience Claim Pool after all distributions on account of Convenience Claims have been made will be transferred to the Claimant Trust and administered as a Claimant Trust Asset.

43. "*Convenience Class Election*" means the option provided to each Holder of a General Unsecured Claim that is a liquidated Claim as of the Confirmation Date on their Ballot to elect to reduce their claim to $1,000,000 and receive the treatment provided to Convenience Claims.

44. "*Contingent Claimant Trust Interests*" means the contingent Claimant Trust Interests to be distributed to Holders of Class A Limited Partnership Interests, Holders of Class B Limited Partnership Interests, and Holders of Class C Limited Partnership Interests in accordance with this Plan, the rights of which shall not vest, and consequently convert to Claimant Trust Interests, unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been paid indefeasibly in full, plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, all accrued and unpaid post-petition interest from the Petition Date at the Federal Judgment Rate and all Disputed Claims in Class 8 and Class 9 have been resolved. As set forth in the Claimant Trust Agreement, the Contingent Claimant Trust Interests distributed to the Holders of Class A Limited Partnership Interests will be subordinated to the Contingent Claimant Trust Interests distributed to the Holders of Class B/C Limited Partnership Interests.

45. "*Debtor*" means Highland Capital Management, L.P. in its capacity as debtor and debtor in possession in the Chapter 11 Case.

46. "*Delaware Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

47. "*Disclosure Statement*" means that certain *Disclosure Statement for Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

48. "*Disputed*" means with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed.

49. "*Disputed Claims Reserve*" means the appropriate reserve(s) or account(s) to be established on the Initial Distribution Date and maintained by the Claimant Trustee for distributions on account of Disputed Claims that may subsequently become an Allowed Claim.

50. "*Disputed Claims Reserve Amount*" means, for purposes of determining the Disputed Claims Reserve, the Cash that would have otherwise been distributed to a Holder of a Disputed Claim at the time any distributions of Cash are made to the Holders of Allowed Claims. The amount of the Disputed Claim upon which the Disputed Claims Reserve is calculated shall be: (a) the amount set forth on either the Schedules or the filed Proof of Claim, as applicable; (b) the amount agreed to by the Holder of the Disputed Claim and the Claimant Trustee or

000280
App. 0425

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 34    Filed 10/06/21    Page 235 of 208    PageID 250
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 14 of 66

Reorganized Debtor, as applicable; (c) the amount ordered by the Bankruptcy Court if it enters an order disallowing, in whole or in part, a Disputed Claim; or (d) as otherwise ordered by the Bankruptcy Court, including an order estimating the Disputed Claim.

51. "*Distribution Agent*" means the Claimant Trustee, or any party designated by the Claimant Trustee to serve as distribution agent under this Plan.

52. "*Distribution Date*" means the date or dates determined by the Reorganized Debtor or the Claimant Trustee, as applicable, on or after the Initial Distribution Date upon which the Distribution Agent shall make distributions to holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

53. "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions hereunder, which date shall be the Effective Date or such later date determined by the Bankruptcy Court.

54. "*Effective Date*" means the Business Day that this Plan becomes effective as provided in ARTICLE VIII hereof.

55. "*Employees*" means the employees of the Debtor set forth in the Plan Supplement.

56. "*Enjoined Parties*" means (i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons of each of the foregoing.

57. "*Entity*" means any "entity" as defined in section 101(15) of the Bankruptcy Code and also includes any Person or any other entity.

58. "*Equity Interest*" means any Equity Security in the Debtor, including, without limitation, all issued, unissued, authorized or outstanding partnership interests, shares, of stock or limited company interests, the Class A Limited Partnership Interests, the Class B Limited Partnership Interests, and the Class C Limited Partnership Interests.

59. "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

60. "*Estate*" means the bankruptcy estate of the Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

61. "*Estate Claims*" has the meaning given to it in <u>Exhibit A</u> to the *Notice of Final Term Sheet* [D.I. 354].

App. 0196
000281

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 34    Filed 10/06/21    Page 24 of 208    PageID 252
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 15 of 66

62. "*Exculpated Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

63. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

64. "*Exhibit*" means an exhibit annexed hereto or to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

65. "*Federal Judgment Rate*" means the post-judgment interest rate set forth in 28 U.S.C. § 1961 as of the Effective Date.

66. "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

67. "*Final Order*" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

68. "*Frontier Secured Claim*" means the loan from Frontier State Bank to the Debtor in the principal amount of $7,879,688.00 made pursuant to that certain First Amended and Restated Loan Agreement, dated March 29, 2018.

000282
App. 0185

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 034    Filed 10/06/22    Page 25 of 208    PageID 252
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 16 of 66

69. "*General Partner Interest*" means the Class A Limited Partnership Interest held by Strand, as the Debtor's general partner.

70. "*General Unsecured Claim*" means any prepetition Claim against the Debtor that is not Secured and is not a/an:  (a) Administrative Expense Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) Priority Non-Tax Claim; or (e) Convenience Claim.

71. "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

72. "*GUC Election*" means the option provided to each Holder of a Convenience Claim on their Ballot to elect to receive the treatment provided to General Unsecured Claims.

73. "*Holder*" means an Entity holding a Claim against, or Equity Interest in, the Debtor.

74. "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

75. "*Independent Directors*" means John S. Dubel, James P. Seery, Jr., and Russell Nelms, the independent directors of Strand appointed on January 9, 2020, and any additional or replacement directors of Strand appointed after January 9, 2020, but prior to the Effective Date.

76. "*Initial Distribution Date*" means, subject to the "Treatment" sections in ARTICLE III hereof, the date that is on or as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims and Equity Interests.

77. "*Insurance Policies*" means all insurance policies maintained by the Debtor as of the Petition Date.

78. "*Jefferies Secured Claim*" means any Claim in favor of Jefferies, LLC, arising under that certain Prime Brokerage Customer Agreement, dated May 24, 2013, between the Debtor and Jefferies, LLC, that is secured by the assets, if any, maintained in the prime brokerage account created by such Prime Brokerage Customer Agreement.

79. "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

80. "*Limited Partnership Agreement*" means that certain Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 24, 2015, as amended.

000283

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 1034    Filed 08/06/27    Page 26 of 267    PageID 254
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 17 of 66

81. "*Litigation Sub-Trust*" means the sub-trust established within the Claimant Trust or as a wholly –owned subsidiary of the Claimant Trust on the Effective Date in each case in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement and Claimant Trust Agreement.  As set forth in the Litigation Sub-Trust Agreement, the Litigation Sub-Trust shall hold the Claimant Trust Assets that are Estate Claims.

82. "*Litigation Sub-Trust Agreement*" means the agreement filed in the Plan Supplement establishing and delineating the terms and conditions of the Litigation Sub-Trust.

83. "*Litigation Trustee*" means the trustee appointed by the Committee and reasonably acceptable to the Debtor who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

84. "*Managed Funds*" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to this Plan.

85. "*New Frontier Note*" means that promissory note to be provided to the Allowed Holders of Class 2 Claims under this Plan and any other documents or security agreements securing the obligations thereunder.

86. "*New GP LLC*" means a limited liability company incorporated in the State of Delaware pursuant to the New GP LLC Documents to serve as the general partner of the Reorganized Debtor on the Effective Date.

87. "*New GP LLC Documents*" means the charter, operating agreement, and other formational documents of New GP LLC.

88. "*Ordinary Course Professionals Order*" means that certain *Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course* [D.I. 176].

89. "*Other Unsecured Claim*" means any Secured Claim other than the Jefferies Secured Claim and the Frontier Secured Claim.

90. "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, individual, corporation, company, general or limited partnership, limited liability company, unincorporated organization firm, trust, estate, business trust, association, joint stock company, joint venture, government, governmental agency, Governmental Unit or any subdivision thereof, the United States Trustee, or any other entity, whether acting in an individual, fiduciary or other capacity.

91. "*Petition Date*" means October 16, 2019.

92. "*Plan*" means this *Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, including the Exhibits and the Plan Documents and all supplements, appendices,

000284
App. 01190

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-4    Filed 10/06/22    Page 27 of 208    PageID 255
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 18 of 66

and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

93. "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Allowed Equity Interests under this Plan.

94. "*Plan Documents*" means any of the documents, other than this Plan, but including, without limitation, the documents to be filed with the Plan Supplement, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, and as may be modified consistent with the terms hereof with the consent of the Committee.

95. "*Plan Supplement*" means the ancillary documents necessary for the implementation and effectuation of the Plan, including, without limitation, (i) the form of Claimant Trust Agreement, (ii) the forms of New GP LLC Documents, (iii) the form of Reorganized Limited Partnership Agreement, (iv) the Sub-Servicer Agreement (if applicable), (v) the identity of the initial members of the Claimant Trust Oversight Committee, (vi) the form of Litigation Sub-Trust Agreement; (vii) the schedule of retained Causes of Action; (viii) the New Frontier Note, (ix) the schedule of Employees; (x) the form of Senior Employee Stipulation,; and (xi) the schedule of Executory Contracts and Unexpired Leases to be assumed pursuant to this Plan, which, in each case, will be in form and substance reasonably acceptable to the Debtor and the Committee.

96. "*Priority Non-Tax Claim*" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, including any Claims for paid time-off entitled to priority under section 507(a)(4) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

97. "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim or Equity Interest in a particular Class bears to (b) the aggregate Allowed amount of all Claims or Equity Interests in such Class.

98. "*Professional*" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to sections 327, 328, 330, 331, 363, 503(b), 503(b)(4) and 1103 of the Bankruptcy Code.

99. "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code, with respect to a particular Professional, for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

100.    "*Professional Fee Claims Bar Date*" means with respect to Professional Fee Claims, the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

000285
App. 0285

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 3034  Filed 01/06/27    Page 28 of 208    PageID 256
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 19 of 66

101. "*Professional Fee Claims Objection Deadline*" means, with respect to any Professional Fee Claim, thirty (30) days after the timely Filing of the applicable request for payment of such Professional Fee Claim.

102. "*Professional Fee Reserve*" means the reserve established and funded by the Claimant Trustee pursuant this Plan to provide sufficient funds to satisfy in full unpaid Allowed Professional Fee Claims.

103. "*Proof of Claim*" means a written proof of Claim or Equity Interest Filed against the Debtor in the Chapter 11 Case.

104. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

105. "*Protected Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

106. "*PTO Claims*" means any Claim for paid time off in favor of any Debtor employee in excess of the amount that would qualify as a Priority Non-Tax Claim under section 507(a)(4) of the Bankruptcy Code.

107. "*Reduced Employee Claims*" has the meaning set forth in ARTICLE IX.D.

108. "*Reinstated*" means, with respect to any Claim or Equity Interest, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Equity Interest in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim or Equity Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Equity Interest for any

000286
App. 0281

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 3-4   Filed 10/06/21   Page 21 of 208   PageID 257
Exhibit B-1   Page 20 of 207
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 20 of 66

damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Equity Interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Equity Interest (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

109.     "*Rejection Claim*" means any Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease pursuant to the Confirmation Order.

110.     "*Related Entity*" means, without duplication, (a) Dondero, (b) Mark Okada ("Okada"), (c) Grant Scott ("Scott"), (d) Hunter Covitz ("Covitz"), (e) any entity or person that was an insider of the Debtor on or before the Petition Date under Section 101(31) of the Bankruptcy Code, including, without limitation, any entity or person that was a non-statutory insider, (f) any entity that, after the Effective Date, is an insider or Affiliate of one or more of Dondero, Okada, Scott, Covitz, or any of their respective insiders or Affiliates, including, without limitation, The Dugaboy Investment Trust, (g) the Hunter Mountain Investment Trust and any of its direct or indirect parents, (h) the Charitable Donor Advised Fund, L.P., and any of its direct or indirect subsidiaries, and (i) Affiliates of the Debtor and any other Entities listed on the Related Entity List.

111.     "*Related Entity List*" means that list of Entities filed with the Plan Supplement.

112.     "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

113.     "*Released Parties*" means, collectively, (i) the Independent Directors; (ii) Strand (solely from the date of the appointment of the Independent Directors through the Effective Date); (iii) the CEO/CRO; (iv) the Committee; (v) the members of the Committee (in their official capacities), (vi) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case; and (vii) the Employees.

114.     "*Reorganized Debtor*" means the Debtor, as reorganized pursuant to this Plan on and after the Effective Date.

115.     "*Reorganized Debtor Assets*" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust.  For the avoidance of doubt, "Reorganized

000287
App. 0282

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 3034  Filed 07/06/21  Page 30 of 267  PageID 258
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 21 of 66

Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

116.    "*Reorganized Limited Partnership Agreement*" means that certain Fifth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., by and among the Claimant Trust, as limited partner, and New GP LLC, as general partner, Filed with the Plan Supplement.

117.    "*Restructuring*" means the restructuring of the Debtor, the principal terms of which are set forth in this Plan and the Disclosure Statement.

118.    "*Retained Employee Claim*" means any Claim filed by a current employee of the Debtor who will be employed by the Reorganized Debtor upon the Effective Date.

119.    "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtor with the Bankruptcy Court [D.I. 247].

120.    "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Debtor's Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the interest of the Debtor's Estate in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

121.    "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

122.    "*Senior Employees*" means the senior employees of the Debtor Filed in the Plan Supplement.

123.    "*Senior Employee Stipulation*" means the agreements filed in the Plan Supplement between each Senior Employee and the Debtor.

124.    "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

125.    "*Statutory Fees*" means fees payable pursuant to 28 U.S.C. § 1930.

126.    "*Strand*" means Strand Advisors, Inc., the Debtor's general partner.

127.    "*Sub-Servicer*" means a third-party selected by the Claimant Trustee to service or sub-service the Reorganized Debtor Assets.

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 30-4 Filed 2/06/27    Page 31 of 207    PageID 259
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 22 of 66

128.    "*Sub-Servicer Agreement*" means the agreement that may be entered into providing for the servicing of the Reorganized Debtor Assets by the Sub-Servicer.

129.    "*Subordinated Claim*" means any Claim that is subordinated to the Convenience Claims and General Unsecured Claims pursuant to 11 U.S.C. § 510 or order entered by the Bankruptcy Court.

130.    "*Subordinated Claimant Trust Interests*" means the Claimant Trust Interests to be distributed to Holders of Allowed Subordinated Claims under the Plan, which such interests shall be subordinated in right and priority to the Claimant Trust Interests distributed to Holders of Allowed General Unsecured Claims as provided in the Claimant Trust Agreement.

131.    "*Trust Distribution*" means the transfer of Cash or other property by the Claimant Trustee to the Claimant Trust Beneficiaries.

132.    "*Trustees*" means, collectively, the Claimant Trustee and Litigation Trustee.

133.    "*UBS*" means, collectively, UBS Securities LLC and UBS AG London Branch.

134.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

135.    "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

136.    "*Voting Deadline*" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the under the Order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125(a) of the Bankruptcy Code and authorizing the Debtor to solicit acceptances of the Plan.

137.    "*Voting Record Date*" means November 23, 2020.

## ARTICLE II.
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

### A.    <u>Administrative Expense Claims</u>

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Administrative Expense Claim either (i) payment in full in Available Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtor or the Reorganized

000289
App. 0284

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-4 Filed 12/06/21    Page 32 of 208 PageID 269
Exhibit Page 24 of 57
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 23 of 66

Debtor, as applicable, and such Holder; *provided, however,* that Administrative Expense Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

If an Administrative Expense Claim (other than a Professional Fee Claim) is not paid by the Debtor in the ordinary course, the Holder of such Administrative Expense Claim must File, on or before the applicable Administrative Expense Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for allowance and payment of such Administrative Expense Claim.

Objections to any Administrative Expense Claim (other than a Professional Fee Claim) must be Filed and served on the Debtor or the Reorganized Debtor, as applicable, and the party asserting such Administrative Expense Claim by the Administrative Expense Claims Objection Deadline.

## B.    **Professional Fee Claims**

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must submit fee applications under sections 327, 328, 329,330, 331, 503(b) or 1103 of the Bankruptcy Code and, upon entry of an order of the Bankruptcy Court granting such fee applications, such Professional Fee Claim shall promptly be paid in Cash in full to the extent provided in such order.

Professionals or other Entities asserting a Professional Fee Claim for services rendered on or prior to the Effective Date must File, on or before the Professional Fee Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated as requiring such notice by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim.

Objections to any Professional Fee Claim must be Filed and served on the Debtor or Reorganized Debtor, as applicable, and the party asserting the Professional Fee Claim by the Professional Fee Claim Objection Deadline.  Each Holder of an Allowed Professional Fee Claim will be paid by the Debtor or the Claimant Trust, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

On the Effective Date, the Claimant Trustee shall establish the Professional Fee Reserve. The Professional Fee Reserve shall vest in the Claimant Trust and shall be maintained by the Claimant Trustee in accordance with the Plan and Claimant Trust Agreement.  The Claimant Trust shall fund the Professional Fee Reserve on the Effective Date in an estimated amount determined by the Debtor in good faith prior to the Confirmation Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date.  Following the payment of all Allowed Professional Fee Claims, any excess funds in the Professional Fee

000290

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-4    Filed 05/25/22    Page 33 of 208    PageID 360
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 24 of 66

Reserve shall be released to the Claimant Trust to be used for other purposes consistent with the Plan and the Claimant Trust Agreement.

**C.**      **Priority Tax Claims**

       On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (b) payment of such Allowed Priority Tax Claim in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; or (c) such other less favorable treatment as agreed to in writing by the Debtor and such Holder. Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtor may prepay any or all such Claims at any time, without premium or penalty.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.**      **Summary**

       All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

       The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled (in each case, by the Debtor or any other Entity) prior to the Effective Date.

App. 00206
000291

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 34    Filed 2/06/23    Page 34 of 208    PageID 262
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 25 of 66

B.    **Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Jefferies Secured Claim | Unimpaired | Deemed to Accept |
| 2 | Frontier Secured Claim | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Priority Non-Tax Claim | Unimpaired | Deemed to Accept |
| 5 | Retained Employee Claim | Unimpaired | Deemed to Accept |
| 6 | PTO Claims | Unimpaired | Deemed to Accept |
| 7 | Convenience Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Subordinated Claims | Impaired | Entitled to Vote |
| 10 | Class B/C Limited Partnership Interests | Impaired | Entitled to Vote |
| 11 | Class A Limited Partnership Interests | Impaired | Entitled to Vote |

C.    **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

D.    **Impaired/Voting Classes**

Claims and Equity Interests in Class 2 and Class 7 through Class 11 are Impaired by the Plan, and only the Holders of Claims or Equity Interests in those Classes are entitled to vote to accept or reject the Plan.

E.    **Unimpaired/Non-Voting Classes**

Claims in Class 1 and Class 3 through Class 6 are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

F.    **Impaired/Non-Voting Classes**

There are no Classes under the Plan that will not receive or retain any property and no Classes are deemed to reject the Plan.

G.    **Cramdown**

If any Class of Claims or Equity Interests is deemed to reject this Plan or does not vote to accept this Plan, the Debtor may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the

000292
App. 0292

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 34   Filed 20/05/27   Page 32 of 203   PageID 362
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 26 of 66

Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**H.**   **Classification and Treatment of Claims and Equity Interests**

   *1.*   *Class 1 – Jefferies Secured Claim*

- *Classification*:  Class 1 consists of the Jefferies Secured Claim.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor:  (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.  Each Holder of an Allowed Class 1 Claim will retain the Liens securing its Allowed Class 1 Claim as of the Effective Date until full and final payment of such Allowed Class 1 Claim is made as provided herein.

- *Impairment and Voting*:  Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

   *2.*   *Class 2 – Frontier Secured Claim*

- *Classification*:  Class 2 consists of the Frontier Secured Claim.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim:  (A) Cash in an amount equal to all accrued but unpaid interest on the Frontier Claim through and including the Effective Date and (B) the New Frontier Note.  The Holder of an Allowed Class 2 Claim will retain the Liens securing its Allowed Class 2 Claim as of the Effective Date until full and final payment of such Allowed Class 2 Claim is made as provided herein.

- *Impairment and Voting*:  Class 2 is Impaired, and the Holders of Class 2 Claims are entitled to vote to accept or reject this Plan.

20

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 34    Filed 12/06/21    Page 38 of 208    PageID 264
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 27 of 66

3.    *Class 3 – Other Secured Claims*

- *Classification*:  Class 3 consists of the Other Secured Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 3 Claim is Allowed on the Effective Date or (ii) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 3 Claim, at the option of the Debtor, or following the Effective Date, the Reorganized Debtor or Claimant Trustee, as applicable, (i) Cash equal to such Allowed Other Secured Claim, (ii) the collateral securing its Allowed Other Secured Claim, plus postpetition interest to the extent required under Bankruptcy Code Section 506(b), or (iii) such other treatment rendering such Claim Unimpaired.

- *Impairment and Voting*:  Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

4.    *Class 4 – Priority Non-Tax Claims*

- *Classification*:  Class 4 consists of the Priority Non-Tax Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 4 Claim is Allowed on the Effective Date or (ii) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, each Holder of an Allowed Class 4 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 4 Claim Cash equal to the amount of such Allowed Class 4 Claim.

- *Impairment and Voting*:  Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

5.    *Class 5 – Retained Employee Claims*

- *Classification*:  Class 5 consists of the Retained Employee Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Allowed Class 5 Claim will be Reinstated.

000294
App. 0290

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-4    Filed 12/06/22    Page 37 of 208    PageID 365
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 28 of 66

- *Impairment and Voting*:  Class 5 is Unimpaired, and the Holders of Class 5 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 5 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

6.    *Class 6 – PTO Claims*

- *Classification*:  Class 6 consists of the PTO Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 6 Claim is Allowed on the Effective Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 6 Claim Cash equal to the amount of such Allowed Class 6 Claim.

- *Impairment and Voting*:  Class 6 is Unimpaired, and the Holders of Class 6 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 6 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

7.    *Class 7 – Convenience Claims*

- *Classification*:  Class 7 consists of the Convenience Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 7 Claim is Allowed on the Effective Date or (ii) the date on which such Class 7 Claim becomes an Allowed Class 7 Claim, each Holder of an Allowed Class 7 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim (1) the treatment provided to Allowed Holders of Class 8 General Unsecured Claims if the Holder of such Class 7 Claim makes the GUC Election or (2) an amount in Cash equal to the lesser of (a) 85% of the Allowed amount of such Holder's Class 7 Claim or (b) such Holder's Pro Rata share of the Convenience Claims Cash Pool.

- *Impairment and Voting*:  Class 7 is Impaired, and the Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

8.    *Class 8 – General Unsecured Claims*

- *Classification*:  Class 8 consists of the General Unsecured Claims.

22

000295

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 34   Filed 03/06/23   Page 380 of 207   PageID 266
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 29 of 66

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Claimant Trust Interests, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing, or (iii) the treatment provided to Allowed Holders of Class 7 Convenience Claims if the Holder of such Class 8 General Unsecured Claim is eligible and makes a valid Convenience Class Election.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 8 is Impaired, and the Holders of Class 8 Claims are entitled to vote to accept or reject this Plan.

9.   <u>*Class 9 – Subordinated Claims*</u>

- *Classification*:  Class 9 consists of the Subordinated Claims.

  *Treatment*:  On the Effective Date, Holders of Subordinated Claims  shall receive either (i) their Pro Rata share of the Subordinated Claimant Trust Interests or, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee may agree upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Subordinated Claim, except with respect to any Subordinated Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 9 is Impaired, and the Holders of Class 9 Claims are entitled to vote to accept or reject this Plan.

10.   <u>*Class 10 – Class B/C Limited Partnership Interests*</u>

- *Classification*:  Class 10 consists of the Class B/C Limited Partnership Interests.

000296

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-4    Filed 20/06/27    Page 39 of 208    PageID 367
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 30 of 66

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class B/C Limited Partnership Interest Claim, except with respect to any Class B/C Limited Partnership Interest Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 10 is Impaired, and the Holders of Class 10 Claims are entitled to vote to accept or reject this Plan.

11. <u>*Class 11 – Class A Limited Partnership Interests*</u>

- *Classification*:  Class 11 consists of the Class A Limited Partnership Interests.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 11 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class A Limited Partnership Interest, except with respect to any Class A Limited Partnership Interest Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 11 is Impaired, and the Holders of Class 11 Claims are entitled to vote to accept or reject this Plan.

**I.    Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

000297
App. 0242

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 3-4    Filed 03/06/27    Page 40 of 208    PageID 267
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 31 of 66

**J.**    **Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Under section 510 of the Bankruptcy Code, upon written notice and hearing, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to seek entry of an order by the Bankruptcy Court to re-classify or to subordinate any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

<div align="center">

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THIS PLAN**

</div>

**A.**    **Summary**

As discussed in the Disclosure Statement, the Plan will be implemented through (i) the Claimant Trust, (ii) the Litigation Sub-Trust, and (iii) the Reorganized Debtor.

On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust.  The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner.  The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited Partnership Agreement.  Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC.  The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to this Plan and the Claimant Trust Agreement, and the Litigation Trustee will pursue, if applicable, the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan.  The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds.

Although the Reorganized Debtor will manage the wind down of the Managed Funds, it is currently anticipated that neither the Reorganized Debtor nor the Claimant Trust will assume or assume and assign the contracts between the Debtor and certain Related Entities pursuant to which the Debtor provides shared services and sub-advisory services to those Related Entities.  The Debtor believes that the continued provision of the services under such contracts will not be

000298
App. 0283

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 3634   Filed 230/05/27   Page 433 of 267   PageID 269
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 32 of 66

cost effective.

The Reorganized Debtor will distribute all proceeds from the wind down to the Claimant Trust, as its limited partner, and New GP LLC, as its general partner, in each case in accordance with the Reorganized Limited Partnership Agreement. Such proceeds, along with the proceeds of the Claimant Trust Assets, will ultimately be distributed to the Claimant Trust Beneficiaries as set forth in this Plan and the Claimant Trust Agreement.

**B.**      **The Claimant Trust**[2]

      *1.*      *Creation and Governance of the Claimant Trust and Litigation Sub-Trust.*

On or prior to the Effective Date, the Debtor and the Claimant Trustee shall execute the Claimant Trust Agreement and shall take all steps necessary to establish the Claimant Trust and the Litigation Sub-Trust in accordance with the Plan in each case for the benefit of the Claimant Trust Beneficiaries. Additionally, on or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax.

The Claimant Trustee shall be the exclusive trustee of the Claimant Trust Assets, excluding the Estate Claims and the Litigation Trustee shall be the exclusive trustee with respect to the Estate Claims in each case for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Claimant Trust Assets. The Claimant Trustee shall also be responsible for resolving all Claims and Equity Interests in Class 8 through Class 11, under the supervision of the Claimant Trust Oversight Committee.

On the Effective Date, the Claimant Trustee and Litigation Trustee shall execute the Litigation Sub-Trust Agreement and shall take all steps necessary to establish the Litigation Sub-Trust. Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims. The Claimant Trust shall be governed by the Claimant Trust Agreement and administered by the Claimant Trustee. The powers, rights, and responsibilities of the Claimant Trustee shall be specified in the Claimant Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting to the Claimant Trust Oversight Committee as may be set forth in the Claimant Trust Agreement. The Claimant Trust shall hold and distribute the Claimant Trust Assets (including the proceeds from the Estate Claims, if any) in accordance with the provisions of the Plan and the Claimant Trust Agreement; *provided* that the Claimant Trust Oversight Committee may direct the Claimant Trust to reserve

---

[2] In the event of a conflict between the terms of this summary and the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, the terms of the Claimant Trust Agreement or the Litigation Sub-Trust Agreement, as applicable, shall control.

000299
App. 0241

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 34   Filed 01/06/27   Page 42 of 208   PageID 269
Case 19-34054-sgj11   Doc 1808   Filed 01/22/21   Entered 01/22/21 18:59:39   Page 33 of 66

Cash from distributions as necessary to fund the Claimant Trust and Litigation Sub-Trust. Other rights and duties of the Claimant Trustee and the Claimant Trust Beneficiaries shall be as set forth in the Claimant Trust Agreement. After the Effective Date, neither the Debtor nor the Reorganized Debtor shall have any interest in the Claimant Trust Assets.

The Litigation Sub-Trust shall be governed by the Litigation Sub-Trust Agreement and administered by the Litigation Trustee. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Sub-Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting as may be set forth in the Litigation Sub-Trust Agreement. The Litigation Sub-Trust shall investigate, prosecute, settle, or otherwise resolve the Estate Claims in accordance with the provisions of the Plan and the Litigation Sub-Trust Agreement and shall distribute the proceeds therefrom to the Claimant Trust for distribution. Other rights and duties of the Litigation Trustee shall be as set forth in the Litigation Sub-Trust Agreement.

2.        *Claimant Trust Oversight Committee*

The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) and the Litigation Sub-Trust will be overseen by the Claimant Trust Oversight Committee, subject to the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as applicable.

The Claimant Trust Oversight Committee will initially consist of five members. Four of the five members will be representatives of the members of the Committee: (i) the Redeemer Committee of Highland Crusader Fund, (ii) UBS, (iii) Acis, and (iv) Meta-e Discovery. The fifth member will be an independent, natural Person chosen by the Committee and reasonably acceptable to the Debtor. The members of the Claimant Trust Oversight Committee may be replaced as set forth in the Claimant Trust Agreement. The identity of the members of the Claimant Trust Oversight Committee will be disclosed in the Plan Supplement.

As set forth in the Claimant Trust Agreement, in no event will any member of the Claimant Trust Oversight Committee with a Claim against the Estate be entitled to vote, opine, or otherwise be involved in any matters related to such member's Claim.

The independent member(s) of the Claimant Trust Oversight Committee may be entitled to compensation for their services as set forth in the Claimant Trust Agreement. Any member of the Claimant Trust Oversight Committee may be removed, and successor chosen, in the manner set forth in the Claimant Trust Agreement.

3.        *Purpose of the Claimant Trust.*

The Claimant Trust shall be established for the purpose of (i) managing and monetizing the Claimant Trust Assets, subject to the terms of the Claimant Trust Agreement and the oversight of the Claimant Trust Oversight Committee, (ii) serving as the limited partner of, and holding the limited partnership interests in, the Reorganized Debtor, (iii) serving as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner, (iv) in its capacity as the sole member and manager of New GP LLC, overseeing the management and

000300

Appx. 0045

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 3034    Filed 05/06/27    Page 435 of 207    PageID 270
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 34 of 66

monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement; and (v) administering the Disputed Claims Reserve and serving as Distribution Agent with respect to Disputed Claims in Class 7 or Class 8.

In its management of the Claimant Trust Assets, the Claimant Trust will also reconcile and object to the General Unsecured Claims, Subordinated Claims, Class B/C Limited Partnership Interests, and Class A Limited Partnership Interests, as provided for in this Plan and the Claimant Trust Agreement, and make Trust Distributions to the Claimant Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

The purpose of the Reorganized Debtor is discussed at greater length in ARTICLE IV.C.

4.        *Purpose of the Litigation Sub-Trust.*

The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims.  Any proceeds therefrom shall be distributed by the Litigation Sub-Trust to the Claimant Trust for distribution to the Claimant Trust Beneficiaries pursuant to the terms of the Claimant Trust Agreement.

5.        *Claimant Trust Agreement and Litigation Sub-Trust Agreement.*

The Claimant Trust Agreement generally will provide for, among other things:

(i)        the payment of the Claimant Trust Expenses;

(ii)        the payment of other reasonable expenses of the Claimant Trust;

(iii)        the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation;

(iv)        the investment of Cash by the Claimant Trustee within certain limitations, including those specified in the Plan;

(v)        the orderly monetization of the Claimant Trust Assets;

(vi)        litigation of any Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(vii)        the resolution of Claims and Equity Interests in Class 8 through Class 11, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(viii)        the administration of the Disputed Claims Reserve and distributions to be made therefrom; and

(ix)        the management of the Reorganized Debtor, including the utilization of a Sub-Servicer, with the Claimant Trust serving as the managing member of New GP LLC.

000301
App. 0216

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 30-4    Filed 08/05/22    Page 44 of 208    PageID 272
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 35 of 66

Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement. The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expense (including, without limitation, any reserve for potential indemnification claims as authorized and provided under the Claimant Trust Agreement), and shall periodically replenish such reserve, as necessary.

In furtherance of, and consistent with the purpose of, the Claimant Trust and the Plan, the Trustees, for the benefit of the Claimant Trust, shall, subject to reporting and oversight by the Claimant Trust Oversight Committee as set forth in the Claimant Trust Agreement: (i) hold the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries, (ii) make Distributions to the Claimant Trust Beneficiaries as provided herein and in the Claimant Trust Agreement, and (iii) have the sole power and authority to prosecute and resolve any Causes of Action and objections to Claims and Equity Interests (other than those assigned to the Litigation Sub-Trust), without approval of the Bankruptcy Court. Except as otherwise provided in the Claimant Trust Agreement, the Claimant Trustee shall be responsible for all decisions and duties with respect to the Claimant Trust and the Claimant Trust Assets; *provided, however,* that the prosecution and resolution of any Estate Claims included in the Claimant Trust Assets shall be the responsibility of the Litigation Trustee. The Litigation Sub-Trust Agreement generally will provide for, among other things:

(i)     the payment of other reasonable expenses of the Litigation Sub-Trust;

(ii)     the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; and

(iii)     the investigation and prosecution of Estate Claims, which may include the prosecution, settlement, abandonment, or dismissal of any such Estate Claims, subject to reporting and oversight as set forth in the Litigation Sub-Trust Agreement.

The Trustees, on behalf of the Claimant Trust and Litigation Sub-Trust, as applicable, may each employ, without further order of the Bankruptcy Court, employees and other professionals (including those previously retained by the Debtor and the Committee) to assist in carrying out the Trustees' duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Claimant Trust Assets in accordance with the Plan and the Claimant Trust Agreement.

The Claimant Trust Agreement and Litigation Sub-Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee. Any such indemnification shall be the sole responsibility of the Claimant Trust and payable solely from the Claimant Trust Assets.

6.          *Compensation and Duties of Trustees.*

The salient terms of each Trustee's employment, including such Trustee's duties and compensation shall be set forth in the Claimant Trust Agreement and the Litigation Sub-Trust

000302
App. 0245

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 34    Filed 07/06/22    Page 45 of 208    PageID 273
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 36 of 66

Agreement, as appropriate.  The Trustees shall each be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

       7.         *Cooperation of Debtor and Reorganized Debtor.*

To effectively investigate, prosecute, compromise and/or settle the Claims and/or Causes of Action that constitute Claimant Trust Assets (including Estate Claims), the Claimant Trustee, Litigation Trustee, and each of their professionals may require reasonable access to the Debtor's and Reorganized Debtor's documents, information, and work product relating to the Claimant Trust Assets.  Accordingly, the Debtor and the Reorganized Debtor, as applicable, shall reasonably cooperate with the Claimant Trustee and Litigation Trustee, as applicable, in their prosecution of Causes of Action and in providing the Claimant Trustee and Litigation Trustee with copies of documents and information in the Debtor's possession, custody, or control on the Effective Date that either Trustee indicates relates to the Estate Claims or other Causes of Action.

The Debtor and Reorganized Debtor shall preserve all records, documents or work product (including all electronic records, documents, or work product) related to the Claims and Causes of Action, including Estate Claims, until the earlier of (a) the dissolution of the Reorganized Debtor or (b) termination of the Claimant Trust and Litigation Sub-Trust.

       8.         *United States Federal Income Tax Treatment of the Claimant Trust.*

Unless the IRS requires otherwise, for all United States federal income tax purposes, the parties shall treat the transfer of the Claimant Trust Assets to the Claimant Trust as:  (a) a transfer of the Claimant Trust Assets (other than the amounts set aside in the Disputed Claims Reserve, if the Claimant Trustee makes the election described in Section 7 below) directly to the applicable Claimant Trust Beneficiaries followed by (b) the transfer by the such Claimant Trust Beneficiaries to the Claimant Trust of such Claimant Trust Assets in exchange for the Claimant Trust Interests.  Accordingly, the applicable Claimant Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Claimant Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

       9.         *Tax Reporting.*

(a) The Claimant Trustee shall file tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claims Reserve as a separate taxable entity.

(b) The Claimant Trustee shall be responsible for payment, out of the Claimant Trust Assets, of any taxes imposed on the Claimant Trust or its assets.

000303

App. 0243

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-4    Filed 03/05/22    Page 46 of 208    PageID 274
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 37 of 66

(c) The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Claimant Trust Beneficiaries of such valuation, and such valuation shall be used consistently for all federal income tax purposes.

(d) The Claimant Trustee shall distribute such tax information to the applicable Claimant Trust Beneficiaries as the Claimant Trustee determines is required by applicable law.

10.        *Claimant Trust Assets.*

The Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action included in the Claimant Trust Assets (except for the Estate Claims) without any further order of the Bankruptcy Court, and the Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to sell, liquidate, or otherwise monetize all Claimant Trust Assets, except as otherwise provided in this Plan or in the Claimant Trust Agreement, without any further order of the Bankruptcy Court.  Notwithstanding anything herein to the contrary, the Litigation Trustee shall have the exclusive right to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Estate Claims included in the Claimant Trust Assets without any further order of the Bankruptcy Court.

From and after the Effective Date, the Trustees, in accordance with section 1123(b)(3) and (4) of the Bankruptcy Code, and on behalf of the Claimant Trust, shall each serve as a representative of the Estate with respect to any and all Claimant Trust Assets, including the Causes of Action and Estate Claims, as appropriate, and shall retain and possess the right to (a) commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Action in any court or other tribunal and (b) sell, liquidate, or otherwise monetize all Claimant Trust Assets.

11.        *Claimant Trust Expenses.*

From and after the Effective Date, the Claimant Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Claimant Trust, the Litigation Sub-Trust, and any professionals retained by such parties and entities from the Claimant Trust Assets, except as otherwise provided in the Claimant Trust Agreement.

12.        *Trust Distributions to Claimant Trust Beneficiaries.*

The Claimant Trustee, in its discretion, may make Trust Distributions to the Claimant Trust Beneficiaries at any time and/or use the Claimant Trust Assets or proceeds thereof, *provided* that such Trust Distributions or use is otherwise permitted under the terms of the Plan, the Claimant Trust Agreement, and applicable law.

13.        *Cash Investments.*

With the consent of the Claimant Trust Oversight Committee, the Claimant Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in a manner consistent with the terms of the Claimant Trust Agreement; *provided, however,* that such investments are

App. 0310
000304

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 3034   Filed 09/05/21   Page 47 of 208   PageID 275
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 38 of 66

investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

14.     *Dissolution of the Claimant Trust and Litigation Sub-Trust.*

The Trustees and the Claimant Trust and Litigation Sub-Trust shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets; *provided, however,* that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Claimant Trust Assets, by the Bankruptcy Court within 6 months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes.

Upon dissolution of the Claimant Trust, and pursuant to the Claimant Trust Agreement, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

**C.     The Reorganized Debtor**

1.     *Corporate Existence*

The Debtor will continue to exist after the Effective Date, with all of the powers of partnerships pursuant to the law of the State of Delaware and as set forth in the Reorganized Limited Partnership Agreement.

000305
App. 0228

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 3034    Filed 20/06/27    Page 48 of 208    PageID 276
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 39 of 66

2.          *Cancellation of Equity Interests and Release*

On the Effective Date, (i) all prepetition Equity Interests, including the Class A Limited Partnership Interests and the Class B/C Limited Partnership Interests, in the Debtor shall be canceled, and (ii) all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, the Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.

3.          *Issuance of New Partnership Interests*

On the Effective Date, the Debtor or the Reorganized Debtor, as applicable, will issue new Class A Limited Partnership Interests to (i) the Claimant Trust, as limited partner, and (ii) New GP LLC, as general partner, and will admit (a) the Claimant Trust as the limited partner of the Reorganized Debtor, and (b) New GP LLC as the general partner of the Reorganized Debtor. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor. Also, on the Effective Date, the Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement and receive partnership interests in the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement.

The Reorganized Limited Partnership Agreement does not provide for, and specifically disclaims, the indemnification obligations under the Limited Partnership Agreement, including any such indemnification obligations that accrued or arose or could have been brought prior to the Effective Date. Any indemnification Claims under the Limited Partnership Agreement that accrued, arose, or could have been filed prior to the Effective Date will be resolved through the Claims resolution process provided that a Claim is properly filed in accordance with the Bankruptcy Code, the Plan, or the Bar Date Order. Each of the Debtor, the Reorganized Debtor, the Claimant Trust, and the Litigation Sub-Trust reserve all rights with respect to any such indemnification Claims.

4.          *Management of the Reorganized Debtor*

Subject to and consistent with the terms of the Reorganized Limited Partnership Agreement, the Reorganized Debtor shall be managed by its general partner, New GP LLC. The initial officers and employees of the Reorganized Debtor shall be selected by the Claimant Trustee. The Reorganized Debtor may, in its discretion, also utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees.

As set forth in the Reorganized Limited Partnership Agreement, New GP LLC will receive a fee for managing the Reorganized Debtor. Although New GP LLC will be a limited liability company, it will elect to be treated as a C-Corporation for tax purposes. Therefore, New GP LLC (and any taxable income attributable to it) will be subject to corporate income taxation on a standalone basis, which may reduce the return to Claimants.

000306

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-4    Filed 01/06/23    Page 49 of 208    PageID 276
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 40 of 66

5.        *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in this Plan or the Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

6.        *Purpose of the Reorganized Debtor*

Except as may be otherwise provided in this Plan or the Confirmation Order, the Reorganized Debtor will continue to manage the Reorganized Debtor Assets (which shall include, for the avoidance of doubt, serving as the investment manager of the Managed Funds) and may use, acquire or dispose of the Reorganized Debtor Assets and compromise or settle any Claims with respect to the Reorganized Debtor Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  The Reorganized Debtor shall oversee the resolution of Claims in Class 1 through Class 7.

Without limiting the foregoing, the Reorganized Debtor will pay the charges that it incurs after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

7.        *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets*

Any proceeds received by the Reorganized Debtor will be distributed to the Claimant Trust, as limited partner, and New GP LLC, as general partner, in the manner set forth in the Reorganized Limited Partnership Agreement.  As set forth in the Reorganized Limited Partnership Agreement, the Reorganized Debtor may, from time to time distribute Reorganized Debtor Assets to the Claimant Trust either in Cash or in-kind, including to institute the wind-down and dissolution of the Reorganized Debtor.  Any assets distributed to the Claimant Trust will be (i) deemed transferred in all respects as forth in ARTICLE IV.B.1, (ii) deemed Claimant Trust Assets, and (iii) administered as Claimant Trust Assets.

**D.    Company Action**

Each of the Debtor, the Reorganized Debtor, and the Trustees, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, the Claimant Trust Agreement, the Reorganized Limited Partnership Agreement, or the New GP LLC Documents, as applicable, in

000307
App. 0232

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 34    Filed 02/06/27    Page 50 of 208    PageID 278
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 41 of 66

the name of and on behalf of the Debtor, the Reorganized Debtor, or the Trustees, as applicable, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers, or directors of the Debtor or the Reorganized Debtor, as applicable, or by any other Person.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the stockholders, partners, directors, managers, or members of the Debtor, any Related Entity, or any Affiliate thereof (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, partners, directors, managers or members of such Persons, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in this Plan involving the legal or corporate structure of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, and any legal or corporate action required by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, in connection with this Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, partners, directors, managers, or members of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, or by any other Person. On the Effective Date, the appropriate officers of the Debtor and the Reorganized Debtor, as applicable, as well as the Trustees, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and the Reorganized Debtor, as well as the Trustees, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The appropriate officer of the Debtor, the Reorganized Debtor, as well as the Trustees, will be authorized to certify or attest to any of the foregoing actions.

E.    **Release of Liens, Claims and Equity Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, from and after the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or Equity Interests extinguished pursuant to the prior sentence will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable. For the avoidance of

000308
Appx. 0278

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 3-4    Filed 04/06/22    Page 51 of 267    PageID 379
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 42 of 66

doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

**F.    Cancellation of Notes, Certificates and Instruments**

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan, and the obligations of the Debtor thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

**G.    Cancellation of Existing Instruments Governing Security Interests**

Upon payment or other satisfaction of an Allowed Class 1 or Allowed Class 2 Claim, or promptly thereafter, the Holder of such Allowed Class 1 or Allowed Class 2 Claim shall deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, any collateral or other property of the Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Class 1 or Allowed Class 2 Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or *lis pendens*, or similar interests or documents.

**H.    Control Provisions**

To the extent that there is any inconsistency between this Plan as it relates to the Claimant Trust, the Claimant Trust Agreement, the Reorganized Debtor, or the Reorganized Limited Partnership Agreement, this Plan shall control.

**I.    Treatment of Vacant Classes**

Any Claim or Equity Interest in a Class considered vacant under ARTICLE III.C of this Plan shall receive no Plan Distributions.

**J.    Plan Documents**

The documents, if any, to be Filed as part of the Plan Documents, including any documents filed with the Plan Supplement, and any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in ARTICLE I hereof) and fully enforceable as if stated in full herein.



Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 1-34    Filed 12/06/21    Page 52 of 208    PageID 310
Exhibit B4    Page 44 of 57
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 43 of 66

The Debtor and the Committee are currently working to finalize the forms of certain of the Plan Documents to be filed with the Plan Supplement.  To the extent that the Debtor and the Committee cannot agree as to the form and content of such Plan Documents, they intend to submit the issue to non-binding mediation pursuant to the *Order Directing Mediation* entered on August 3, 2020 [D.I. 912].

## K.    **Highland Capital Management, L.P. Retirement Plan and Trust**

The Highland Capital Management, L.P. Retirement Plan And Trust ("Pension Plan") is a single-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  29 U.S.C. §§ 1301-1461.  The Debtor is the contributing sponsor and, as such, the PBGC asserts that the Debtor is liable along with any members of the contributing sponsor's controlled-group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) with respect to the Pension Plan.

Upon the Effective Date, the Reorganized Debtor shall be deemed to have assumed the Pension Plan and shall comply with all applicable statutory provisions of ERISA and the Internal Revenue Code (the "IRC"), including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083; paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307; and administering the Pension Plan in accordance with its terms and the provisions of ERISA and the IRC.  In the event that the Pension Plan terminates after the Plan of Reorganization Effective Date, the PBGC asserts that the Reorganized Debtor and each of its controlled group members will be responsible for the liabilities imposed by Title IV of ERISA.

Notwithstanding any provision of the Plan, the Confirmation Order, or the Bankruptcy Code (including section 1141 thereof) to the contrary, neither the Plan, the Confirmation Order, or the Bankruptcy Code shall be construed as discharging, releasing, exculpating or relieving the Debtor, the Reorganized Debtor, or any person or entity in any capacity, from any liability or responsibility, if any, with respect to the Pension Plan under any law, governmental policy, or regulatory provision.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility against any person or entity as a result of any of the provisions of the Plan, the Confirmation Order, or the Bankruptcy Code.  The Debtor reserves the right to contest any such liability or responsibility.

<div align="center">

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

</div>

## A.    **Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases**

Unless an Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtor pursuant to this Plan on or prior to the Confirmation Date; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtor on or before the Confirmation Date; (iv) contains a change of control or similar provision that would be triggered by the Chapter 11 Case (unless such provision has been irrevocably waived); or (v) is specifically designated as a

App. 0225
00031O

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 3-4    Filed 10/06/22    Page 53 of 208    PageID 280
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 44 of 66

contract or lease to be assumed in the Plan or the Plan Supplement, on the Confirmation Date, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease is listed in the Plan Supplement.

At any time on or prior to the Confirmation Date, the Debtor may (i) amend the Plan Supplement in order to add or remove a contract or lease from the list of contracts to be assumed or (ii) assign (subject to applicable law) any Executory Contract or Unexpired Lease, as determined by the Debtor in consultation with the Committee, or the Reorganized Debtor, as applicable.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, rejections, and assumptions and assignments.  Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.  To the extent applicable, no change of control (or similar provision) will be deemed to occur under any such Executory Contract or Unexpired Lease.

If certain, but not all, of a contract counterparty's Executory Contracts and/or Unexpired Leases are rejected pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being rejected pursuant to the Plan.  Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

Notwithstanding anything herein to the contrary, the Debtor shall assume or reject that certain real property lease with Crescent TC Investors L.P. ("Landlord") for the Debtor's headquarters located at 200/300 Crescent Ct., Suite #700, Dallas, Texas 75201 (the "Lease") in accordance with the notice to Landlord, procedures and timing required by 11 U.S.C. §365(d)(4), as modified by that certain *Agreed Order Granting Motion to Extend Time to Assume or Reject Unexpired Nonresidential Real Property Lease* [Docket No. 1122].

## B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

Any Executory Contract or Unexpired Lease not assumed or rejected on or before the Confirmation Date shall be deemed rejected, pursuant to the Confirmation Order.  Any Person asserting a Rejection Claim shall File a proof of claim within thirty days of the Effective Date.  Any Rejection Claims that are not timely Filed pursuant to this Plan shall be forever disallowed

App. 0226
000311

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 34   Filed 10/05/22   Page 54 of 208   PageID 282
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 45 of 66

and barred.  If one or more Rejection Claims are timely Filed, the Claimant Trustee may File an objection to any Rejection Claim.

Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with ARTICLE III of this Plan.

## C.     Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed or assigned hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor upon assumption or assignment thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts may otherwise agree.  The Debtor may serve a notice on the Committee and parties to Executory Contracts or Unexpired Leases to be assumed or assigned reflecting the Debtor's or Reorganized Debtor's intention to assume or assign the Executory Contract or Unexpired Lease in connection with this Plan and setting forth the proposed cure amount (if any).

If a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Debtor, the Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assigned or (3) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assignment.

Assumption or assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable cure amounts pursuant to this ARTICLE V.C shall result in the full release and satisfaction of any cure amounts, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assignment.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed or assigned in the Chapter 11 Case, including pursuant to the Confirmation Order, and for which any cure amounts have been fully paid pursuant to this ARTICLE V.C, shall be deemed disallowed and expunged as of the Confirmation Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.     Dates of Distributions

Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity

000312
App. 0225

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 34   Filed 10/05/21   Page 55 of 208   PageID 282
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 46 of 66

Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtor shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Allowed Equity Interests in the applicable Class and in the manner provided herein.  If any payment or act under this Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent there are Disputed Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in this Plan.  Except as otherwise provided in this Plan, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Claims and Equity Interests against the Debtor shall be deemed fixed and adjusted pursuant to this Plan and none of the Debtor, the Reorganized Debtor, or the Claimant Trust will have liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Confirmation Order.  All payments and all distributions made by the Distribution Agent under this Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Debtor and the Reorganized Debtor.

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtor and the Equity Interests in the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests.  The Debtor, the Reorganized Debtor, the Trustees, and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Claims against the Debtor or Equity Interests in the Debtor occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under this Plan to such Persons or the date of such distributions.

B.     **Distribution Agent**

Except as provided herein, all distributions under this Plan shall be made by the Claimant Trustee, as Distribution Agent, or by such other Entity designated by the Claimant Trustee, as a Distribution Agent on the Effective Date or thereafter.  The Reorganized Debtor will be the Distribution Agent with respect to Claims in Class 1 through Class 7.

The Claimant Trustee, or such other Entity designated by the Claimant Trustee to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the

000313
App. 0228

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 30-4    Filed 08/05/22    Page 56 of 208    PageID 284
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 47 of 66

Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

The Distribution Agent shall not have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

## C.    Cash Distributions

Distributions of Cash may be made by wire transfer from a domestic bank, except that Cash payments made to foreign creditors may be made in such funds and by such means as the Distribution Agent determines are necessary or customary in a particular foreign jurisdiction.

## D.    Disputed Claims Reserve

On or prior to the Initial Distribution Date, the Claimant Trustee shall establish, fund and maintain the Disputed Claims Reserve(s) in the appropriate Disputed Claims Reserve Amounts on account of any Disputed Claims.

## E.    Distributions from the Disputed Claims Reserve

The Disputed Claims Reserve shall at all times hold Cash in an amount no less than the Disputed Claims Reserve Amount.  To the extent a Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, within 30 days of the date on which such Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, the Claimant Trustee shall distribute from the Disputed Claims Reserve to the Holder thereof any prior distributions, in Cash, that would have been made to such Allowed Claim if it had been Allowed as of the Effective Date.  For the avoidance of doubt, each Holder of a Disputed Claim that subsequently becomes an Allowed Claim will also receive its Pro Rata share of the Claimant Trust Interests. If, upon the resolution of all Disputed Claims any Cash remains in the Disputed Claims Reserve, such Cash shall be transferred to the Claimant Trust and be deemed a Claimant Trust Asset.

## F.    Rounding of Payments

Whenever this Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  To the extent that Cash to be distributed under this Plan remains undistributed as a result of the aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under this Plan.

## G.    De Minimis Distribution

Except as to any Allowed Claim that is Unimpaired under this Plan, none of the Debtor, the Reorganized Debtor, or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in ARTICLE VI.J hereof within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim.  De minimis distributions for which no such request is timely received shall

000314

App. 0220

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 3-4   Filed 10/06/22   Page 57 of 208   PageID 285
Case 19-34054-sgj11   Doc 1808   Filed 01/22/21   Entered 01/22/21 18:59:39   Page 48 of 66

revert to the Claimant Trust. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

**H.  Distributions on Account of Allowed Claims**

Except as otherwise agreed by the Holder of a particular Claim or as provided in this Plan, all distributions shall be made pursuant to the terms of this Plan and the Confirmation Order. Except as otherwise provided in this Plan, distributions to any Holder of an Allowed Claim shall, to the extent applicable, be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**I.  General Distribution Procedures**

The Distribution Agent shall make all distributions of Cash or other property required under this Plan, unless this Plan specifically provides otherwise. All Cash and other property held by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, for ultimate distribution under this Plan shall not be subject to any claim by any Person.

**J.  Address for Delivery of Distributions**

Distributions to Holders of Allowed Claims, to the extent provided for under this Plan, shall be made (1) at the addresses set forth in any written notices of address change delivered to the Debtor and the Distribution Agent; (2) at the address set forth on any Proofs of Claim Filed by such Holders (to the extent such Proofs of Claim are Filed in the Chapter 11 Case), (2), or (3) at the addresses in the Debtor's books and records.

If there is any conflict or discrepancy between the addresses set forth in (1) through (3) in the foregoing sentence, then (i) the address in Section (2) shall control; (ii) if (2) does not apply, the address in (1) shall control, and (iii) if (1) does not apply, the address in (3) shall control.

**K.  Undeliverable Distributions and Unclaimed Property**

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtor or the Claimant Trust as undeliverable, no further distribution shall be made to such Holder, and Distribution Agent shall not have any obligation to make any further distribution to the Holder, unless and until the Distribution Agent is notified in writing of such Holder's then current address.

Any Entity that fails to claim any Cash within six months from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under this Plan and such Cash shall thereafter be deemed a Claimant Trust Asset in all respects and for all purposes. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor's Estate, the Reorganized Debtor, the Claimant Trust, or against any Holder of an Allowed Claim to whom distributions are made by the Distribution Agent.

000315
App. 0220

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 34    Filed 05/06/27    Page 58 of 208    PageID 286
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 49 of 66

**L.**     **Withholding Taxes**

In connection with this Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Distribution Agent shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  As a condition to receiving any distribution under this Plan, the Distribution Agent may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to this Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Distribution Agent to comply with applicable tax reporting and withholding laws.  If a Holder fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

**M.**     **Setoffs**

The Distribution Agent may, to the extent permitted under applicable law, set off against any Allowed Claim and any distributions to be made pursuant to this Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Debtor, the Reorganized Debtor, or the Distribution Agent may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with this Plan; *provided, however,* that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or the Claimant Trustee of any such claims, rights and causes of action that the Debtor, the Reorganized Debtor, or Claimant Trustee possesses against such Holder.  Any Holder of an Allowed Claim subject to such setoff reserves the right to challenge any such setoff in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

**N.**     **Surrender of Cancelled Instruments or Securities**

As a condition precedent to receiving any distribution pursuant to this Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to ARTICLE IV of this Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Distribution Agent unless waived in writing by the Distribution Agent.

**O.**     **Lost, Stolen, Mutilated or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by this Plan, deliver to the Distribution Agent:  (i) evidence reasonably satisfactory to the Distribution Agent of such loss, theft, mutilation, or destruction; and (ii) such security or indemnity as may be required by the Distribution Agent to hold such party harmless from any

000316
App. 0221

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 1634    Filed 10/06/27    Page 59 of 208    PageID 287
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 50 of 66

damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest. Upon compliance with ARTICLE VI.O of this Plan as determined by the Distribution Agent, by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under this Plan, be deemed to have surrendered such security or note to the Distribution Agent.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

### A.    Filing of Proofs of Claim

Unless such Claim appeared in the Schedules and is not listed as disputed, contingent, or unliquidated, or such Claim has otherwise been Allowed or paid, each Holder of a Claim was required to file a Proof of Claim on or prior to the Bar Date.

### B.    Disputed Claims

Following the Effective Date, each of the Reorganized Debtor or the Claimant Trustee, as applicable, may File with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Disputed Equity Interest, request the Bankruptcy Court subordinate any Claims to Subordinated Claims, or any other appropriate motion or adversary proceeding with respect to the foregoing by the Claims Objection Deadline or, at the discretion of the Reorganized Debtor or Claimant Trustee, as applicable, compromised, settled, withdrew or resolved without further order of the Bankruptcy Court, and (ii) unless otherwise provided in the Confirmation Order, the Reorganized Debtor or the Claimant Trust, as applicable, are authorized to settle, or withdraw any objections to, any Disputed Claim or Disputed Equity Interests following the Effective Date without further notice to creditors (other than the Entity holding such Disputed Claim or Disputed Equity Interest) or authorization of the Bankruptcy Court, in which event such Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of this Plan.

### C.    Procedures Regarding Disputed Claims or Disputed Equity Interests

No payment or other distribution or treatment shall be made on account of a Disputed Claim or Disputed Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interests and the amount of such Allowed Claim or Equity Interest, as applicable, is determined by order of the Bankruptcy Court or by stipulation between the Reorganized Debtor or Claimant Trust, as applicable, and the Holder of the Claim or Equity Interest.

### D.    Allowance of Claims and Equity Interests

Following the date on which a Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interest after the Distribution Date, the Distribution Agent shall make a distribution to the Holder of such Allowed Claim or Equity Interest in accordance with the Plan.

000317

Appx. 0292

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 34    Filed 02/06/21    Page 60 of 208    PageID 287
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 51 of 66

      1.       *Allowance of Claims*

After the Effective Date and subject to the other provisions of this Plan, the Reorganized Debtor or the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Claim. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

      2.       *Estimation*

Subject to the other provisions of this Plan, the Debtor, prior to the Effective Date, and the Reorganized Debtor or the Claimant Trustee, as applicable, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Disputed Equity Interest pursuant to applicable law and in accordance with this Plan and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Disputed Equity Interest, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation proceeding.

      3.       *Disallowance of Claims*

Any Claims or Equity Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Reorganized Debtor or the Claimant Trust, as applicable, by that Entity have been turned over or paid to the Reorganized Debtor or the Claimant Trust, as applicable.

**EXCEPT AS OTHERWISE PROVIDED HEREIN OR AS AGREED TO BY THE DEBTOR, REORGANIZED DEBTOR, OR CLAIMANT TRUSTEE, AS APPLICABLE, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH**

000318
App. 0288

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 34    Filed 03/06/27    Page 53 of 207    PageID 289
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 52 of 66

LATE PROOF OF CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL
ORDER.

<div align="center">

**ARTICLE VIII.**
**EFFECTIVENESS OF THIS PLAN**

</div>

**A.**    <u>**Conditions Precedent to the Effective Date**</u>

The Effective Date of this Plan will be conditioned upon the satisfaction or waiver by the
Debtor (and, to the extent such condition requires the consent of the Committee, the consent of
the Committee with such consent not to be unreasonably withheld), pursuant to the provisions of
ARTICLE VIII.B of this Plan of the following:

- This Plan and the Plan Documents, including the Claimant Trust Agreement and the
  Reorganized Limited Partnership Agreement, and all schedules, documents,
  supplements and exhibits to this Plan shall have been Filed in form and substance
  reasonably acceptable to the Debtor and the Committee.

- The Confirmation Order shall have become a Final Order and shall be in form and
  substance reasonably acceptable to the Debtor and the Committee.  The Confirmation
  Order shall provide that, among other things, (i) the Debtor, the Reorganized Debtor,
  the Claimant Trustee, or the Litigation Trustee are authorized to take all actions
  necessary or appropriate to effectuate and consummate this Plan, including, without
  limitation, (a) entering into, implementing, effectuating, and consummating the
  contracts, instruments, releases, and other agreements or documents created in
  connection with or described in this Plan, (b) assuming the Executory Contracts and
  Unexpired Leases set forth in the Plan Supplement, (c) making all distributions and
  issuances as required under this Plan; and (d) entering into any transactions as set
  forth in the Plan Documents; (ii) the provisions of the Confirmation Order and this
  Plan are nonseverable and mutually dependent; (iii) the implementation of this Plan in
  accordance with its terms is authorized; (iv) pursuant to section 1146 of the
  Bankruptcy Code, the delivery of any deed or other instrument or transfer order, in
  furtherance of, or in connection with this Plan, including any deeds, bills of sale, or
  assignments executed in connection with any disposition or transfer of Assets
  contemplated under this Plan, shall not be subject to any Stamp or Similar Tax; and
  (v) the vesting of the Claimant Trust Assets in the Claimant Trust and the
  Reorganized Debtor Assets in the Reorganized Debtor, in each case as of the
  Effective Date free and clear of liens and claims to the fullest extent permissible
  under applicable law pursuant to section 1141(c) of the Bankruptcy Code except with
  respect to such Liens, Claims, charges and other encumbrances that are specifically
  preserved under this Plan upon the Effective Date.

- All documents and agreements necessary to implement this Plan, including without
  limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust
  Agreement, and the New GP LLC Documents, in each case in form and substance
  reasonably acceptable to the Debtor and the Committee, shall have (a) been tendered
  for delivery, and (b) been effected by, executed by, or otherwise deemed binding

000319
App. 0284

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 34   Filed 02/06/23   Page 62 of 208   PageID 390
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 53 of 66

upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement this Plan, including, without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, shall have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent effectiveness or consummation of the Restructuring.

- The Debtor shall have obtained applicable directors' and officers' insurance coverage that is acceptable to each of the Debtor, the Committee, the Claimant Trust Oversight Committee, the Claimant Trustee and the Litigation Trustee.

- The Professional Fee Reserve shall be funded pursuant to this Plan in an amount determined by the Debtor in good faith.

**B.**     **Waiver of Conditions**

The conditions to effectiveness of this Plan set forth in this ARTICLE VIII (other than that the Confirmation Order shall have been entered) may be waived in whole or in part by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee) and any applicable parties in Section VII.A of this Plan, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or effectuate this Plan. The failure to satisfy or waive a condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable.

**C.**     **Dissolution of the Committee**

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's

000320
App. 0325

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 31-1 Filed 05/06/22   Page 63 of 208   PageID 290
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 54 of 66

Professionals to represent either of the Trustees or to be compensated or reimbursed per the Plan and the Claimant Trust Agreement in connection with such representation.

## ARTICLE IX.
## EXCULPATION, INJUNCTION AND RELATED PROVISIONS

### A.   General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

### B.   Discharge of Claims

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### C.   Exculpation

Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); *provided*, *however*, the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross

App. 0336
000321

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 34    Filed 05/06/27    Page 64 of 207    PageID 292
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 55 of 66

negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

**D.    Releases by the Debtor**

On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Person.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release: (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance Actions, or (v) any Causes of Action arising from willful misconduct, criminal misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

Notwithstanding anything herein to the contrary, any release provided pursuant to this ARTICLE IX.D (i) with respect to a Senior Employee, is conditioned in all respects on (a) such Senior Employee executing a Senior Employee Stipulation on or prior to the Effective Date and (b) the reduction of such Senior Employee's Allowed Claim as set forth in the Senior Employee Stipulation (such amount, the "Reduced Employee Claim"), and (ii) with respect to any Employee, including a Senior Employee, shall be deemed null and void and of no force and effect (1) if there is more than one member of the Claimant Trust Oversight Committee who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full Claimant Trust Oversight Committee) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

- sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation

000322
App. 0287

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 30-4   Filed 07/05/22   Page 65 of 208   PageID 292
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 56 of 66

Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

- has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets, or

- (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (1) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (2) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing.

*Provided, however,* that the release provided pursuant to this ARTICLE IX.D will vest and the Employee will be indefeasibly released pursuant to this ARTICLE IX.D if such Employee's release has not been deemed null and void and of no force and effect on or prior to the date that is the date of dissolution of the Claimant Trust pursuant to the Claimant Trust Agreement.

By executing the Senior Employee Stipulation embodying this release, each Senior Employee acknowledges and agrees, without limitation, to the terms of this release and the tolling agreement contained in the Senior Employee Stipulation.

The provisions of this release and the execution of a Senior Employee Stipulation will not in any way prevent or limit any Employee from (i) prosecuting its Claims, if any, against the Debtor's Estate, (ii) defending him or herself against any claims or causes of action brought against the Employee by a third party, or (iii) assisting other persons in defending themselves from any Estate Claims brought by the Litigation Trustee (but only with respect to Estate Claims brought by the Litigation Trustee and not collection or other actions brought by the Claimant Trustee).

**E.** **Preservation of Rights of Action**

*1.* *Maintenance of Causes of Action*

Except as otherwise provided in this Plan, after the Effective Date, the Reorganized Debtor or the Claimant Trust will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action included in the Reorganized Debtor Assets or Claimant Trust Assets, as applicable, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case and, as the successors in interest to the Debtor and the Estate, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Causes of Action without notice to or approval from the Bankruptcy Court.

*2.* *Preservation of All Causes of Action Not Expressly Settled or Released*

Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final

000323
Appx 0288

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-4    Filed 25/05/22    Page 66 of 208    PageID 294
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 57 of 66

Order (including, without limitation, the Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtor or Claimant Trust, as applicable (including, without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action as a consequence of the confirmation, effectiveness, or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such Causes of Action have been expressly released in this Plan or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the right of the Reorganized Debtor or the Claimant Trust to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

## F.    **Injunction**

**Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.**

**Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the property of the Debtor, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor or the property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtor or against property or interests in property of the Debtor, except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

**The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Debtor, including, but not limited to, the Reorganized Debtor, the Litigation Sub-Trust, and the Claimant Trust and their respective property and interests in property.**

**Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or**

000324
Appx 2038

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 34    Filed 05/06/22    Page 67 of 208    PageID 295
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 58 of 66

arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; *provided, however,* the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date.    The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

**G.      Duration of Injunctions and Stays**

ARTICLE II. Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Bankruptcy Court, (i) all injunctions and stays entered during the Chapter 11 Case and in existence on the Confirmation Date shall remain in full force and effect in accordance with their terms; and (ii) the automatic stay arising under section 362 of the Bankruptcy Code shall remain in full force and effect subject to Section 362(c) of the Bankruptcy Code, and to the extent necessary if the Debtor does not receive a discharge, the Court will enter an equivalent order under Section 105.

**H.      Continuance of January 9 Order**

Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Bankruptcy Court, the restrictions set forth in paragraphs 9 and 10 of the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course*, entered by the Bankruptcy Court on January 9, 2020 [D.I. 339] shall remain in full force and effect following the Effective Date.

**ARTICLE X.
BINDING NATURE OF PLAN**

On the Effective Date, and effective as of the Effective Date, the Plan, including, without limitation, the provisions in ARTICLE IX, will bind, and will be deemed binding upon, all Holders of Claims against and Equity Interests in the Debtor and such Holder's respective successors and assigns, to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder will receive or retain any property or interest in property under the Plan.   All Claims and Debts shall be fixed and adjusted pursuant to this Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state,

000325

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 34    Filed 10/06/22    Page 68 of 208    PageID 296
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 59 of 66

Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated thereby is to be recorded with respect to nay taxes of the kind specified in Bankruptcy Code section 1146(a).

## ARTICLE XI.
## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Reorganized Debtor, the Claimant Trust, and this Plan to the maximum extent legally permissible, including, without limitation, jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

- grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided, however*, that, from and after the Effective Date, the Reorganized Debtor shall pay Professionals in the ordinary course of business for any work performed after the Effective Date subject to the terms of this Plan and the Confirmation Order, and such payment shall not be subject to the approval of the Bankruptcy Court;

- resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor, Reorganized Debtor, or Claimant Trust may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, any dispute regarding whether a contract or lease is or was executory or expired;

- make any determination with respect to a claim or cause of action against a Protected Party as set forth in ARTICLE IX;

- resolve any claim or cause of action against an Exculpated Party or Protected Party arising from or related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, or the transactions in furtherance of the foregoing;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any sale, disposition, assignment or other transfer of the Reorganized Debtor Assets or Claimant Trust Assets, including any break-up compensation or

000326
App. 326

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 3-4    Filed 10/06/27    Page 69 of 207    PageID 296
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 60 of 66

expense reimbursement that may be requested by a purchaser thereof; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any borrowing or the incurrence of indebtedness, whether secured or unsecured by the Reorganized Debtor or Claimant Trust; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- resolve any issues related to any matters adjudicated in the Chapter 11 Case;

- ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of this Plan;

- decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action (including Estate Claims) that are pending as of the Effective Date or that may be commenced in the future, including approval of any settlements, compromises, or other resolutions as may be requested by the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee whether under Bankruptcy Rule 9019 or otherwise, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor, the Claimant Trustee, or Litigation Trustee after the Effective Date, provided that the Reorganized Debtor, the Claimant Trustee, and the Litigation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

- enter such orders as may be necessary or appropriate to implement, effectuate, or consummate the provisions of this Plan, the Plan Documents, and all other contracts, instruments, releases, and other agreements or documents adopted in connection with this Plan, the Plan Documents, or the Disclosure Statement;

- resolve any cases, controversies, suits or disputes that may arise in connection with the implementation, effectiveness, consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

- issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, effectiveness, consummation, or enforcement of this Plan, except as otherwise provided in this Plan;

- enforce the terms and conditions of this Plan and the Confirmation Order;

- resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification, and other provisions contained herein and enter such

000327
Appx 8342

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 34   Filed 02/06/23   Page 70 of 208   PageID 397
Exhibit 34   Page 62 of 67
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 61 of 66

orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

- enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

- resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents, or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

- enter an order concluding or closing the Chapter 11 Case after the Effective Date.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.    Payment of Statutory Fees and Filing of Reports

All outstanding Statutory Fees shall be paid on the Effective Date.  All such fees payable, and all such fees that become due and payable, after the Effective Date shall be paid by the Reorganized Debtor when due or as soon thereafter as practicable until the Chapter 11 Case is closed, converted, or dismissed.  The Claimant Trustee shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Claimant Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee.  The Reorganized Debtor shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

### B.    Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in this Plan:  (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order with the consent of the Committee, such consent not to be unreasonably withheld; and (b) after the entry of the Confirmation Order, the Debtor may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

### C.    Revocation of Plan

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File a subsequent chapter 11 plan with the consent of the Committee.  If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, then:  (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan, assumption of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement

000328
Appx 263

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 1-34    Filed 10/06/21    Page 63 of 207    PageID 298
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 62 of 66

executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

### D.    Obligations Not Changed

Notwithstanding anything in this Plan to the contrary, nothing herein will affect or otherwise limit or release any non-Debtor Entity's (including any Exculpated Party's) duties or obligations, including any contractual and indemnification obligations, to the Debtor, the Reorganized Debtor, or any other Entity whether arising under contract, statute, or otherwise.

### E.    Entire Agreement

Except as otherwise described herein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### F.    Closing of Chapter 11 Case

The Claimant Trustee shall, after the Effective Date and promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

### G.    Successors and Assigns

This Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns, including, without limitation, the Reorganized Debtor and the Claimant Trustee. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

### H.    Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs.  Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor, the Reorganized Debtor, the Claimant Trustee, or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (1) the Debtor, the Reorganized Debtor, or the Claimant Trustee with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Documents, nor anything contained in this

000329
App. 3204

Case 22-03052-sgj   Doc 10-4   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 3-4 Filed 12/06/22   Page 72 of 208   PageID 400
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21   Entered 01/22/21 18:59:39   Page 63 of 66

Plan, will constitute an admission by the Debtor that any such contract or lease is or is not an executory contract or lease or that the Debtor, the Reorganized Debtor, the Claimant Trustee, or their respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtor, the Reorganized Debtor, or the Claimant Trustee under any executory or non-executory contract.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, under any executory or non-executory contract or lease.

If there is a dispute regarding whether a contract or lease is or was executory at the time of its assumption under this Plan, the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract.

## I.   **Further Assurances**

The Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.   On or before the Effective Date, the Debtor shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## J.   **Severability**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## K.   **Service of Documents**

All notices, requests, and demands to or upon the Debtor, the Reorganized Debtor, or the Claimant Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered addressed as follows:

000330

App. 825

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 30-4    Filed 05/06/22    Page 785 of 208    PageID 300
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 64 of 66

**If to the Claimant Trust:**

Highland Claimant Trust
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:   James P. Seery, Jr.

**If to the Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:   James P. Seery, Jr.

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Attn:   Jeffrey N. Pomerantz, Esq.
         Ira D. Kharasch, Esq.
         Gregory V. Demo, Esq.

**If to the Reorganized Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:   James P. Seery, Jr.
**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Attn:   Jeffrey N. Pomerantz, Esq.
         Ira D. Kharasch, Esq.
         Gregory V. Demo, Esq.

L.    **Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code**

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 34    Filed 05/05/27    Page 74 of 208    PageID 402
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 65 of 66

the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under this Plan; (ii) the maintenance or creation of security or any Lien as contemplated by this Plan; and (iii) assignments, sales, or transfers executed in connection with any transaction occurring under this Plan.

**M.**    <u>**Governing Law**</u>

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Texas, without giving effect to the principles of conflicts of law of such jurisdiction; *provided, however,* that corporate governance matters relating to the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trust, as applicable, shall be governed by the laws of the state of organization of the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trustee, as applicable.

**N.**    <u>**Tax Reporting and Compliance**</u>

The Debtor is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor is for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**O.**    <u>**Exhibits and Schedules**</u>

All exhibits and schedules to this Plan, if any, including the Exhibits and the Plan Documents, are incorporated and are a part of this Plan as if set forth in full herein.

**P.**    <u>**Controlling Document**</u>

In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control.  The provisions of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and of the Confirmation Order, on the other hand, shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and any provision of the Confirmation Order, on the other hand, that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan, the Disclosure Statement, and the Plan Documents, as applicable.

*[Remainder of Page Intentionally Blank]*

App. 8247

Case 22-03052-sgj    Doc 10-4    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 3034    Filed 07/06/27    Page 75 of 208    PageID 403
Case 19-34054-sgj11 Doc 1808 Filed 01/22/21    Entered 01/22/21 18:59:39    Page 66 of 66

Dated:  January 22, 2021

Respectfully submitted,

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____

James P. Seery, Jr.
Chief Executive Officer and Chief Restructuring
Officer

Prepared by:

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        gdemo@pszjlaw.com

and

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com

*Counsel for the Debtor and Debtor-in-Possession*

# EXHIBIT 5

Appx 8249

Case 22-03052-sgj    Doc 10-5    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02003-N  Document 13-5  Filed 02/02/24  Page 77 of 208  PageID 3405
Case 19-34054-sgj11 Doc 1990 Filed 03/08/21    Entered 03/08/21 06:24:28    Page 1 of 164

D. Michael Lynn – State Bar ID 12736500
John Y. Bonds, III – State Bar ID 02589100
Clay M. Taylor – State Bar ID 24033261
Bryan C. Assink – State Bar ID 24089009
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 – Telephone
(817) 405-6902 – Facsimile
Michael.lynn@bondsellis.com
john@bondsellis.com
clay.taylor@bondsellis.com
bryan.assink@bondsellis.com

**ATTORNEYS FOR JAMES DONDERO**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-SGJ-11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, LP, | § | |
| | § | Chapter 11 |
| | § | |
| Debtor. | § | |

## <u>NOTICE OF APPEAL</u>

James Dondero (the "Appellant"), creditor, indirect equity holder, and party-in-interest in

the above styled and numbered bankruptcy case (the "Bankruptcy Case") of Highland Capital

Management, L.P. (the "Debtor"), and pursuant to 28 U.S.C. § 158(a), hereby appeals to the United

States District Court for the Northern District of Texas that certain *Order (i) Confirming the Fifth*

*Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii)*

*Granting Related Relief* (the "Confirmation Order") entered by the Bankruptcy Court on February

22, 2021 at docket no. 1943 in the Bankruptcy Case.[1]

---

[1] Appellant anticipates that the Appeal will actually be certified for a direct appeal to the 5th Circuit by agreement of all Appellants and Appellee based on the parties' prior agreements, but hereby directs this appeal to the District Court as that direct appeal to the Circuit Court is not yet procedurally ripe.

1934054210308000000000003

000335
App. 0350

Case 22-03052-sgj    Doc 10-5    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02800-N Document 10-5 Filed 2/30/21 Page 78 of 208 PageID 466
Case 19-34054-sgj11 Doc 1990 Filed 03/08/21    Entered 03/08/21 06:24:28    Page 2 of 164

A copy of the Confirmation Order is attached hereto as Exhibit "A."

The names of the parties to the Confirmation Order, and the contact information for their

attorneys, is as follows:

1. <u>Appellant:</u>[2]

     James Dondero

     <u>Attorneys:</u>

          D. Michael Lynn
          John Y. Bonds
          Clay M. Taylor
          Bryan C. Assink
          Bonds Ellis Eppich Schafer Jones LLP
          420 Throckmorton Street, Ste. 1000
          Fort Worth, Texas 76102
          Telephone: (817) 405-6900
          Facsimile: (817) 405-6902
          Michael.lynn@bondsellis.com
          john@bondsellis.com
          clay.taylor@bondsellis.com
          bryan.assink@bondsellis.com

---

[2] Two other Notices of Appeal have already been filed by other Appellants to this Order and are found at Docket Nos. 1957 and 1966 which were filed by Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P. on the one hand; and Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund, and NexPoint Capital, Inc. on the other hand, respectively.  It is possible that other appellants may additionally file separate notices of appeal.

000336
Appx. 0251

Case 22-03052-sgj    Doc 10-5    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02802-N   Document 30-5   Filed 04/06/21   Page 79 of 208   PageID 8407
Case 19-34054-sgj11 Doc 1990 Filed 03/08/21    Entered 03/08/21 06:24:28    Page 3 of 164

2.  Appellee:

Highland Capital Management, L.P.

Attorneys:

Jeffrey N. Pomerantz
Ira D. Kharasch
John A. Morris
Gregory V. Demo
Hayley R. Winograd
Pachulski Stang Ziehl & Jones, L.L.P.
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          hwinograd@pszjlaw.com

Signed: March 4, 2021.

BONDS ELLIS EPPICH SCHAFER JONES LLP

By:     /s/ Clay M. Taylor_____
          Clay M. Taylor
          Texas Bar No. 24033261
          420 Throckmorton Street, Ste. 1000
          Fort Worth, Texas 76102
          Telephone: (817) 405-6900
          Facsimile: (817) 405-6902
          Email: clay.taylor@bondsellis.com

ATTORNEYS FOR JAMES DONDERO

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this on March 4, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Appellee.

By:     /s/ Clay M. Taylor_____
          Clay M. Taylor

# EXHIBIT 6

Appx 8253
000338

Case 22-03052-sgj    Doc 10-6    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02800-N   Document 8-6   Filed 2/00/21   Page 12 of 208   PageID 3409
Case 19-34054-sgj11 Doc 1986 Filed 03/08/21    Entered 03/08/21 06:14:10    Page 1 of 3

Docket #1986  Date Filed: 03/08/2021

K&L GATES LLP
Artoush Varshosaz (TX Bar No. 24066234)
1717 Main Street, Suite 2800
Dallas, TX 75201
Tel: (214) 939-5659
artoush.varshosaz@klgates.com

A. Lee Hogewood, III (*pro hac vice*)
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Tel: (919) 743-7306
Lee.hogewood@klgates.com

*Counsel for Highland Income Fund, NexPoint*
*Strategic Opportunities Fund, Highland Global*
*Allocation Fund, and NexPoint Capital, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
| | ) | |
| Debtor. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## NOTICE OF APPEAL

### Part 1:  Identify the appellants

1.  Names of appellants:

    Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global
    Allocation Fund, and NexPoint Capital, Inc.

2.  Position of appellants in the adversary proceeding or bankruptcy case that is the subject
    of this appeal:

For appeals in an adversary          For appeals in a bankruptcy case and not in
proceeding:                          an adversary proceeding:

__ Plaintiff                         __ Debtor
__ Defendant                         __ Creditor
__ Other (describe) _____      __ Trustee
                                     X_ Other (describe) _Interested parties____



1934054210308000000000001

000339

App. 0254

Case 22-03052-sgj    Doc 10-6    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02008-SN  Document 180-6  Filed 05/25/22  Page 23 of 208  PageID 3490
Case 19-34054-sgj11 Doc 1986 Filed 03/08/21    Entered 03/08/21 06:14:10    Page 2 of 3

**Part 2:  Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from:

   The Bankruptcy Court's Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief [Dkt. No. 1943]

2. State the date on which the judgment, order, or decree was entered:  February 22, 2021

**Part 3:  Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names,

addresses, and telephone numbers of their attorneys:

| 1. Debtor-Appellee | 2. Creditor-Appellant |
|---|---|
| PACHULSKI STANG ZIEHL & JONES LLP<br>Jeffrey N. Pomerantz<br>Ira D. Kharasch<br>jpomerantz@pszjlaw.com<br>ikharasch@pszjlaw.com<br>10100 Santa Monica Blvd, 13th Floor<br>Los Angeles, CA 90067<br><br>John A. Morris<br>Gregory V. Demo<br>Hayley R. Winograd<br>jmorris@pszjlaw.com<br>gdemo@pszjlaw.com<br>hwinograd@pszjlaw.com<br>780 Third Avenue, 34th Floor<br>New York, NY 10017-2024<br><br>HAYWARD & ASSOCIATES PLLC<br>Melissa S. Hayward<br>Zachery Z. Annable<br>10501 N. Central Expressway, Suite 106<br>Dallas, TX 75231<br>MHayward@HaywardFirm.com<br>zannable@haywardfirm.com<br><br>*Counsel for Highland Capital Management, L.P.* | K&L GATES LLP<br>Artoush Varshosaz (TX Bar No. 24066234)<br>1717 Main Street, Suite 2800<br>Dallas, TX 75201<br>Tel: (214) 939-5659<br>artoush.varshosaz@klgates.com<br><br>A. Lee Hogewood, III (*pro hac vice*)<br>4350 Lassiter at North Hills Ave., Suite 300<br>Raleigh, NC 27609<br>Tel: (919) 743-7306<br>Lee.hogewood@klgates.com<br><br>*Counsel for Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund, and NexPoint Capital, Inc.* |

000340
App. 0255

Case 22-03052-sgj    Doc 10-6    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02800-N Document 30-6 Filed 04/06/21 Page 84 of 208 PageID 3401
Case 19-34054-sgj11 Doc 1986 Filed 03/08/21    Entered 03/08/21 06:14:10    Page 3 of 3

**Part 4:  Optional election to have appeal heard by District Court**

N/A

**Part 5:  Sign below**

Dated:        March 3, 2021

                                      **K&L GATES LLP**

                                      */s/ A. Lee Hogewood, III*
                                      A. Lee Hogewood, III (*pro hac vice*)
                                      4350 Lassiter at North Hills Ave., Suite 300
                                      Raleigh, NC 27609
                                      Telephone: (919) 743-7306
                                      E-mail: lee.hogewood@klgates.com

                                      Artoush Varshosaz (TX Bar No. 24066234)
                                      1717 Main Street, Suite 2800
                                      Dallas, TX 75201
                                      Telephone: (214) 939-5659
                                      E-mail: artoush.varshosaz@klgates.com

                                      *Counsel for Highland Income Fund, NexPoint*
                                      *Strategic Opportunities Fund, Highland Global*
                                      *Allocation Fund, and NexPoint Capital, Inc.*

000341
App. 0256

Case 22-03052-sgj    Doc 10-6    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02806-SN Document 630 Filed 05/25/22 Page 45 of 208 PageID 3412
Case 19-34054-sgj11 Doc 1986-1 Filed 03/08/21    Entered 03/08/21 06:14:10    Page 1 of 4

BTXN 116 (rev. 07/08)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

## APPEAL SERVICE LIST

### Transmission of the Record

BK Case No.: _19−34054−sgj11_

Received in District Court by: _____

Date: _____

Volume Number(s): _____

cc: Stacey G. Jernigan
    Robert (Bob) Schaaf
    Nathan (Nate) Elner
    Attorney(s) for Appellant
    US Trustee

**Appellant**   Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund, and
NexPoint Capital, Inc.

K&L GATES LLP
Artoush Varshosaz
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939−5659
And
A. Lee Hogewood, III
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Telephone: (919) 743−7306

**Appellee**   Highland Capital Management, L.P.

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
Ira D. Kharasch
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067
(No telephone number)

John A. Morris
Gregory V. Demo
Hayley R. Winograd
780 Third Avenue, 34th Floor
New York, NY 10017−2024
(No telephone number)

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expressway, Suite 106

Dallas, TX 75231
(No telephone number)



000344
Appx. 9259



Case 19-34054-sgj11 Doc 1986-1 Filed 03/08/21    Entered 03/08/21 06:14:10    Page 4 of 4

# EXHIBIT 7

Case 22-03052-sgj    Doc 10-7    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02008-N Document 7 Filed 02/09/21 Page 89 of 208 PageID 3467
Case 19-34054-sgj11 Doc 1988 Filed 03/08/21    Entered 03/08/21 06:20:14    Page 1 of 164

Docket #1988  Date Filed: 03/08/2021

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |

## <u>NOTICE OF APPEAL</u>

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors,

L.P. (the "<u>Appellants</u>"), creditors and parties-in-interest in the above styled and numbered

bankruptcy case (the "<u>Bankruptcy Case</u>") of Highland Capital Management, L.P. (the "<u>Debtor</u>"),

and, pursuant to 28 U.S.C. § 158(a), hereby appeal to the United States District Court for the

Northern District of Texas that certain *Order (i) Confirming the Fifth Amended Plan of*

*Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related*

*Relief* (the "<u>Confirmation Order</u>") entered by the Bankruptcy Court on February 22, 2021 at docket

no. 1943 in the Bankruptcy Case.

A copy of the Confirmation is attached hereto as Exhibit "A."

1934054210308000000000002

Appx. 0262

000347

Case 22-03052-sgj    Doc 10-7    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02003-N   Document 7   Filed 03/04/21   Page 90 of 208   PageID 3478
Case 19-34054-sgj11 Doc 1988 Filed 03/08/21    Entered 03/08/21 06:20:14    Page 2 of 164

The names of the parties to the Confirmation Order, and the contact information for their

attorneys, is as follows:

1.    <u>Appellants:</u>

        Highland Capital Management Fund Advisors, L.P.
        NexPoint Advisors, L.P.

        <u>Attorneys:</u>

                Davor Rukavina
                Julian P. Vasek
                MUNSCH HARDT KOPF & HARR, P.C.
                3800 Ross Tower
                500 N. Akard Street
                Dallas, Texas  75201-6659
                Telephone: (214) 855-7587
                Facsimile: (214) 855-7584
                Email: drukavina@munsch.com

2.    <u>Appellee:</u>

        Highland Capital Management, L.P.

        <u>Attorneys:</u>

                Jeffrey N. Pomerantz
                Ira D. Kharasch
                John A. Morris
                Gregory V. Demo
                Hayley R. Winograd
                PACHULSKI STANG ZIEHL & JONES LLP
                10100 Santa Monica Blvd., 13th Floor
                Los Angeles, CA 90067
                Telephone: (310) 277-6910
                Facsimile: (310) 201-0760
                Email: jpomerantz@pszjlaw.com
                      ikharasch@pszjlaw.com
                      jmorris@pszjlaw.com
                      gdemo@pszjlaw.com
                      hwinograd@pszjlaw.com

000348
App. 0283

Case 22-03052-sgj    Doc 10-7    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02300-S Document 30-7 Exhibit 7 Filed 04/06/21 Page 91 of 208 PageID 3489
Case 19-34054-sgj11 Doc 1988 Filed 03/08/21    Entered 03/08/21 06:20:14    Page 3 of 164

RESPECTFULLY SUBMITTED this 1st day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
   Davor Rukavina, Esq.
   Texas Bar No. 24030781
   3800 Ross Tower
   500 N. Akard Street
   Dallas, Texas  75201-6659
   Telephone: (214) 855-7500
   Facsimile: (214) 855-7584
   Email:    drukavina@munsch.com

**ATTORNEYS FOR HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. AND NEXPOINT ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 1st day of March, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Appellee.

By: /s/ Davor Rukavina
   Davor Rukavina, Esq.

App. 0284

000349

# EXHIBIT 8

Appx 0285

000350

Case 22-03052-sgj   Doc 10-8   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01205-N   Document 33-8   Filed 02/03/21   Page 93 of 208   PageID 3401
Case 19-34054-sgj11   Doc 1992   Filed 03/08/21   Entered 03/08/21 06:28:13   Page 1 of 4

Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust and Get Good Trust*

<div align="center">

UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

</div>

| | | |
|---|---|---|
| IN RE: | * | Chapter 11 |
| | * | |
| | * | Case No. 19-34054sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | * | |
| | * | |
| Debtor | * | |

<div align="center">

**NOTICE OF APPEAL AND STATEMENT OF ELECTION**

</div>

**Part 1: Identify the appellant(s)**

1. Name(s) of appellant(s): ___

*The Dugaboy Investment Trust and Get Good Trust* _____

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
  Plaintiff
  Defendant
  Other (describe)
_____

For appeals in a bankruptcy case and not in an adversary proceeding.
  Debtor
  **X** Creditor
  Trustee
  Other (describe)
_____

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from: *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) and (II) Granting Related Relief [Dkt. # 1943]*

{00375211-1}

<div align="center">1</div>



Case 22-03052-sgj    Doc 10-8    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-00800-N Document 8-8 Filed 03/08/22 Page 94 of 208 PageID 3412
Case 19-34054-sgj11 Doc 1992 Filed 03/08/21    Entered 03/08/21 06:28:13    Page 2 of 4

2. State the date on which the judgment, order, or decree was entered: <u>February 22, 2021</u>

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. *Party/Appellee*: <u>Debtor: Highland Capital Management, L.P.</u>

Attorney:

PACHULSKI STANG ZIEHL & JONES LLP
Jeffery N. Pomerantz
Ira D. Kharasch
John A. Morris
Gregory V. Demo
Hayley R. Winograd
780 Third Avenue, 34th Floor
New York, NY 10017-2024
Telephone:  (212) 561-7700
Fax:  (212) 561-7777

And

Hayward & Associates PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy. Ste. 106
Dallas, TX 75231
Telephone:  (972) 755-7100
Fax:  (972) 755-7110

2. *Party/Appellants:*  <u>Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund, and NexPoint Capital, Inc.</u>

Attorney:

K&L GATES LLP
Artoush Varshosaz
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone:  (214) 939-5659
Artoush.varshosaz@klgates.com

And

{00375211-1}

2

Case 22-03052-sgj    Doc 10-8    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02306-N  Document 3-8  Filed 04/06/21  Page 95 of 208  PageID 3423
Case 19-34054-sgj11 Doc 1992 Filed 03/08/21    Entered 03/08/21 06:28:13    Page 3 of 4

A. Lee Hogewood, III
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Telephone: (919) 743-7306
Lee.hogewood@klgates.com


3. *Party/Appellants:*  Highland Capital Management Fund Advisors, L.P. and NexPoint
Advisors, L.P.


Attorney:

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina
Julian P. Vasek
3800 Ross Tower
500 N. Akard Street
Dallas, TX 75201-6659
Telephone:  (214) 855-7587
Facsimile: (214) 855-7584
E-mail:  drukavina@munsch.com


4. *Party/Appellants*:  The Dugaboy Investment Trust and Get Good Trust


Attorney:

HELLER, DRAPER & HORN, L.L.C.
Douglas S. Draper
Leslie A. Collins
Greta M. Brouphy
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399


5. *Party/Appellants*:  James Dondero


Attorney:

BONDS ELLIS EPPICH SCHAFER JONES LLP
D. Michael Lynn
John Y. Bonds
Clay M. Taylor
Bryan C. Assink
420 Throckmorton Street, Ste. 1000

{00375211-1}

000353
App. 0288

Case 22-03052-sgj    Doc 10-8    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02003-N    Document 18-8 Filed 05/25/22    Page 96 of 208    PageID 3434
Case 19-34054-sgj11 Doc 1992 Filed 03/08/21    Entered 03/08/21 06:28:13    Page 4 of 4

Fort Worth, Texas 76102
Telephone:  (817) 405-6900
Facsimile: (817) 405-6902
Michael.lynn@bondsellis.com
john@bondsellis.com
clay.taylor@bondsellis.com
bryan.assink@bondsellis.com

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

**Not applicable.**

March 4, 2021                                        Respectfully submitted,

                                                    */s/Douglas S. Draper.*
                                                    Douglas S. Draper, La. Bar No. 5073
                                                    ddraper@hellerdraper.com
                                                    Leslie A. Collins, La. Bar No. 14891
                                                    lcollins@hellerdraper.com
                                                    Greta M. Brouphy, La. Bar No. 26216
                                                    gbrouphy@hellerdraper.com
                                                    Heller, Draper & Horn, L.L.C.
                                                    650 Poydras Street, Suite 2500
                                                    New Orleans, LA  70130
                                                    Telephone: (504) 299-3300
                                                    Fax: (504) 299-3399
                                                    *Attorneys for The Dugaboy Investment Trust
                                                    and Get Good Trust*

{00375211-1}

App. 8260

000354

Case 22-03052-sgj    Doc 10-8    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02305-N Document 30-8 Filed 06/05/21 Page 97 of 208 PageID 3425
Case 19-34054-sgj11 Doc 1992-1 Filed 03/08/21    Entered 03/08/21 06:28:13    Page 1 of 4

BTXN 116 (rev. 07/08)

<div align="center">

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**APPEAL SERVICE LIST**

**Transmission of the Record**

</div>

BK Case No.:  19−34054−sgj11

Received in District Court by: _____

Date: _____

Volume Number(s): _____

cc: Stacey G. Jernigan
    Robert (Bob) Schaaf
    Nathan (Nate) Elner
    Attorney(s) for Appellant
    US Trustee

**Appellant**   : Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund, and NexPoint Capital, Inc.

K&L GATES LLP
Artoush Varshosaz
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939−5659
And
A. Lee Hogewood, III
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Telephone: (919) 743−7306

**Appellant**   Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina
Julian P. Vasek
3800 Ross Tower
500 N. Akard Street
Dallas, TX 75201−6659
Telephone: (214) 855−7587

**Appellant**   The Dugaboy Investment Trust and Get Good Trust

HELLER, DRAPER & HORN, L.L.C.
Douglas S. Draper
Leslie A. Collins
Greta M. Brouphy
650 Poydras Street, Suite 2500
New Orleans, LA 70130

Telephone: (504) 299−3300

Case 19-34054-sgj11 Doc 1992-1 Filed 03/08/21   Entered 03/08/21 06:28:13   Page 3 of 4

**Appellant**  James Dondero

BONDS ELLIS EPPICH SCHAFER JONES LLP
D. Michael Lynn
John Y. Bonds
Clay M. Taylor
Bryan C. Assink
420 Throckmorton Street, Ste. 1000
Fort Worth, Texas 76102
Telephone: (817) 405−6900


**Appellee**  Highland Capital Management, L.P.

PACHULSKI STANG ZIEHL & JONES LLP
Jeffery N. Pomerantz
Ira D. Kharasch
John A. Morris
Gregory V. Demo
Hayley R. Winograd
780 Third Avenue, 34th Floor
New York, NY 10017−2024
Telephone: (212) 561−7700

And

Hayward & Associates PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy. Ste. 106
Dallas, TX 75231
Telephone: (972) 755−7100

Case 19-34054-sgj11 Doc 1992-1 Filed 03/08/21 Entered 03/08/21 06:28:13 Page 4 of 4

# EXHIBIT 9

000359

Appx. 8274

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01008-N Document 630-9 Filed 02/21 Page 102 of 208 PageID 8490
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 1 of 34

Docket #1955  Date Filed: 02/28/2021

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

Counsel for Highland Capital Management Fund
Advisors, L.P. and NexPoint Advisors, L.P.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |

## EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF
## THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P. (the "Movants"), creditors and parties-in-interest in the above styled and numbered bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"), and file this their *Emergency Motion for Stay Pending Appeal of the Confirmatio Order, and Brief In Support Thereof* (the "Motion"), respectfully stating as follows:

### I.    SUMMARY

1.    The Movants respectfully request a stay of the Confirmation Order pending appeal in order to protect their appellate rights and ensure that, if they are successful on their



000360

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02205-N Document 63-9 Filed 08/06/21 Page 103 of 208 PageID 3491
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 2 of 34

appeal of the Confirmation Order, their rights will not be mooted by that time.  Not only is there the threat of equitable mootness, but there is also a more immediate threat that, if the Movants cannot exercise their legitimate rights and fulfil their fiduciary obligations to the funds due to the Plan's gatekeeper injunction, those rights will effectively be vitiated by the time of any final resolution of the appeal.  A stay pending appeal would not harm the Debtor or the creditors because the Plan does not give the Debtor any tools or ability to manage its assets any more or better than it has at present; the Debtor will continue doing what it is doing today, albeit through a different corporate form, but will not receive any new money, exit financing, or other assets under the Plan.  Thus, while the absence of a stay pending appeal may well irreparably harm the legitimate interests of the Movants, no legitimate interest of the Debtor will be implicated or harmed.

2.      The Movants submit that they have a likelihood of success on the merits of their appeal.  The issues being appealed with respect to: (i) the Absolute Priority Rule; (ii) satisfaction of section 1129(a)(2) of the Bankruptcy Code; and (iii) the confirmed plan's exculpation and injunction provisions are all legal issues reviewed *de novo*.  While the Court has overruled the Movants' objections to the Plan on these bases, an objective analysis of these issues demonstrates that they are subject to material dispute and that the Movants have a reasonable likelihood of success on the merits.  The public interest supports a stay because the Advisors, those whose money the Debtor manages, and the public at large all have a strong interest in ensuring that the Debtor complies with its contractual, fiduciary, and statutory obligations to its investors.  And, because the Plan does not afford the Debtor any tools to manage its business and monetize its assets, any bond for the stay pending appeal should not be punitive but should instead compensate for the time value of money at the federal postjudgment interest rate.

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02806-N Document 18-9 Filed 04/05/21 Page 04 of 208 PageID 3432
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 3 of 34

## II.    **BACKGROUND**

3.    On February 22, 2021, the Court entered its *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [docket no. 1943] (the "<u>Confirmation Order</u>").

4.    By the Confirmation Order, and over the Movants' objections, the Court confirmed the *Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [docket no. 1808], as further modified (the "<u>Plan</u>").

5.    The Movants, although controlled by James Dondero, advise and manage various funds and investment vehicles including, of relevance to this Bankruptcy Case, various publicly traded retail funds.  The Movants are registered as investment advisors under the Investment Advisors Act of 1940.  The Movants have fiduciary duties to the funds and other investment vehicles they advise and manage.

6.    Three of these retail funds managed by the Advisors are Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc.  In turn, these funds have invested approximately $140 million in various collateralized loan obligations ("<u>CLOs</u>") managed by the Debtor pursuant to portfolio management agreements (the "<u>Portfolio Management Agreements</u>").  Under most of the Portfolio Management Agreements, defined "cause" is required to remove the Debtor as manager of the CLOs, but in a handful such removal is possible without cause.

7.     Under at least three of the Portfolio Management Agreements, these funds have the right to remove the Debtor as the manager of the CLOs, because these funds hold the requisite percentage of shares under the agreements to remove the CLO manager.  There are various other CLOs where the funds do not hold the requisite percentage of shares to remove the Debtor as manager unilaterally, but are able to vote their shares to remove the Debtor as

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01805-N Document 10-9 Filed 05/05/21 Page 105 of 208 PageID 3433
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 4 of 34

manager if other preference shareholders join in such removal and, collectively, the contractual threshold of voting preference shares for removal is met.

8.     As the Advisors have informed the Court (and as the funds have also informed the Court), they do not believe that the Debtor is properly managing more than $1 billion invested in the CLOs because the Debtor, in contravention of the Advisors' and funds' stated objectives otherwise, has been liquidating the CLOs even though they do not need liquidity, and will liquidate the CLOs in approximately 18 to 24 months.  The Advisors recognize that the Court did not agree with these concerns.  Nevertheless, the Advisors submit that these are legitimate concerns motivated by business interests and not by any desire to harm the Debtor.

9.     The Plan contains various exculpation, release, and injunction provisions that are of particular concern to the Advisors.  Article IX of the Plan contains the following exculpation provision (the "Exculpation Provision"):

### C.     Exculpation

Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); provided, however, the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. This exculpation shall be in addition to, and not in limitation of, all other

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02180-N    Document 30-9    Filed 06/06/21    Page 106 of 208    PageID 8434
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 5 of 34

releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

Plan at 54-55. "Exculpated Parties," in turn, means, collectively:

(i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

Plan at 15.

10.    Article IX of the Plan also contains an injunction provision (the "Injunction"), which provides, in pertinent part, as follows:

**F.    Injunction**

Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.

. . . .

Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct,

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02008-N Document 38-9 Filed 06/02/21 Page 107 of 208 PageID 3445
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 6 of 34

fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; provided, however, the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

Plan at 57-58. "Enjoined Parties," in turn, is defined to mean:

(i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons of each of the foregoing.

Plan at 14. "Protected Parties" means, collectively:

(i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

Plan at 19.

Case 22-03052-sgj   Doc 10-9   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02005-N   Document 5-9   Filed 08/06/21   Page 108 of 208   PageID 456
Case 19-34054-sgj11   Doc 1955   Filed 02/28/21   Entered 02/28/21 09:49:28   Page 7 of 34

11.     The Advisors are subject to the Injunction.  The Injunction prohibits the Advisors from taking any action to "interfere with the implementation or consummation of the Plan."  As the evidence at the confirmation hearing made clear, the Debtor considers this injunction to prohibit the Advisors from advising the funds or others to cause the removal of the Debtor as the manager of the CLOs.  As also made clear at the confirmation hearing, the Injunction applies to the Debtor's postconfirmation operations, including its management of the CLOs.  Thus, the Plan prohibits the Advisors from fully exercising their fiduciary duties to the funds.

### III.     ARGUMENTS AND AUTHORITIES

#### A.     STANDARD FOR A STAY PENDING APPEAL

12.     Bankruptcy Rule 8007 allows a bankruptcy court, in the first instance, to stay a judgment in order to maintain the status quo pending appeal.  FED. R. BANKR. P. 8007(a)(1)(A).  In determining whether to grant a discretionary stay pending appeal under Bankruptcy Rule 8007, courts consider the following criteria:

> (1) the likelihood that the movant will prevail on the merits of the appeal;
>
> (2) whether the movant will suffer irreparable injury if the stay is denied;
>
> (3) whether other parties would suffer substantial harmed if the stay is granted; and
>
> (4) whether the public interest will be served by granting the stay.

*In re First S. Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987); *In re Texas Equip. Co.*, 283 B.R. 222, 226-27 (Bankr. N.D. Tex. 2002).  The first two elements are the most critical.  *Saldana v. Saldana*, 2015 WL 502145, at *2 (N.D. Tex. Aug. 25, 2015).

13.     The fundamental purpose of a stay pending appeal, especially with respect to an order of an Article I court, is aptly summarized as follows:

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02308-N  Document 630-9  Filed 07/06/21  Page 109 of 208  PageID 8467
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 8 of 34

The application for a stay of an order confirming a chapter 11 reorganization plan in a highly litigated and complex bankruptcy proceeding presents a classic clash of competing interests, all of which have merit. Without a stay, it is extremely unlikely that Appellants will ever be able to have meaningful appellate review of the rulings of the Bankruptcy Court, a non-Article III court, and in any event, a lower court. The ability to review decisions of the lower courts is the guarantee of accountability in our judicial system. In other words, no single judge or court can violate the Constitution and laws of the United States, or the rules that govern court proceedings, with impunity, because nearly all decisions are subject to appellate review. At the end of the appellate process, all parties and the public accept the decision of the courts because we, as a nation, are governed by the rule of law. Thus, the ability to appeal a lower court ruling is a substantial and important right.

*In re Adelphia Commc'ns. Corp.*, 361 B.R. 337, 342 (S.D.N.Y. 2007).

**B.**     <u>THERE IS A LIKELIHOOD OF SUCCESS ON THE MERITS</u>

    **i.**     **Legal Standard.**

14.     With respect to the first factor, the likelihood of success on the merits of the appeal, this Court has summarized as follows:

With respect to the first element, the Fifth Circuit has explained that the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay. When the issue appealed is mostly a factual question over which the bankruptcy court has broad discretion, such discretion is unlikely to be overturned on appeal. Thus, with respect to questions of fact, the movant usually fails to satisfy the first element. With respect to questions of law, however, especially questions involving the application of law, or when the law has not been definitively addressed by a higher court, the movant more easily satisfies the first element.

*In re Tex. Equip. Co.*, 283 B.R. at 227 (internal citations and quotations omitted); *accord In re First S. Sav. Assoc.*, 820 F.2d at 704 ("the movant need only present a substantial case on the merits when a serious legal question is involved").

15.     When considering the confirmation of a chapter 11 plan on appeal, the Court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *See In re Tex. Grand Prairie Hotel Realty LLC*, 710 F.3d 324, 326 n. 1 (5th Cir. 2013).

Case 22-03052-sgj   Doc 10-9   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-N   Document 89   Filed 10/06/21   Page 110 of 208   PageID 3438
Case 19-34054-sgj11   Doc 1955   Filed 02/28/21   Entered 02/28/21 09:49:28   Page 9 of 34

Here, the Movants challenge the Court's ruling on issues of law: the Absolute Priority Rule,
section 1129(a)(2) of the Bankruptcy Code, and the Plan's exculpation and injunction
provisions. As these are issues of law, the standard of review will be *de novo*, and as such,
"the movant more easily satisfies the first element." *In re Tex. Equip. Co.*, 283 B.R. at 227.

### ii. Absolute Priority Rule.

16. Class 8, a class of unsecured creditors, rejected the plan.[1] That means that the
Plan could have only been confirmed under the cramdown provisions of section 1129(b) of
the Bankruptcy Code. *See* 11 U.S.C. §§ 1129(b)(1); 1129(a)(8). This means that, in order to
be confirmed, the Plan must "not discriminate unfairly" and that it must be "fair and
equitable" with respect to Class 8. Because Class 8 consists of unsecured creditors, in order
to be "fair and equitable":

> (i) the plan provides that each holder of a claim of such class receive or retain
> on account of such claim property of a value, as of the effective date of the
> plan, equal to the allowed amount of such claim; or

> (ii) the holder of any claim or interest that is junior to the claims of such class
> will not receive or retain under the plan on account of such junior claim or
> interest any property.

11 U.S.C. § 1129(b)(2)(B).

17. The Plan estimates a recovery to Class 8 creditors of 71% over time. *See*
Confirmation Order at p. 41. While the Debtor testified that there may be a higher return
based on causes of action, the Debtor did not value those causes of action or offer any
evidence that Class 8 would be paid in full. As such, subsection (i) above does not apply
because Class 8 will not be paid in full. That means that the only way the Plan could be
confirmed is under subsection (ii), also known as the Absolutely Priority Rule. This Rule is

---

[1]    The Movants do not hold Class 8 claims. Nevertheless, as the Plan alters their legal rights,
they have standing to object to any portion of the Plan that may prevent the Plan from being confirmed.

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 9



Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01700-S    Document 30-9    Filed 11/08/21    Page 111 of 208    PageID 3439
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 10 of 34

simple: if the Class rejects the Plan and is not paid in full under the Plan, then the holder of any junior interest; *i.e.* equity interest, cannot "receive or retain . . . any property" on account of its junior interest.

18.     Here, the Plan violates the Absolute Priority Rule as a matter of law, and the Movants respectfully submit that Court erred as a matter of law in concluding otherwise. This is because the Plan gives the holders of limited partnership interests in the Debtor contingent interests in the Claimant Trust. *See* Plan at p. 45. There can be no question that the contingent trust interests the Plan gives to holders of equity interests is "property" within the meaning of the Absolute Priority Rule. The Debtor admitted this during closing arguments: "These are contingent interests. They are property. No doubt they are property." Confirmation Hearing Transcript at 242:19-20. The Debtor's Chief Executive Officer and Chief Restructuring Officer, who prepared and authorized the Plan for the Debtor, testified that the contingent interests are, in his belief, inchoate property interests. *See id.* at 177:10-178:21. Moreover, that witness confirmed that these contingent interests may have some value in the future. *See id.* at 178:22-25. As a matter of law, an interest in a trust, even if a contingent one subject to a contingency that may never happen, is "property." *See In re Edmonds*, 273 B.R. 527, 529 (Bankr. E.D. Mich. 2000) ("[t]he question should not be whether a future interest is vested or contingent. Clearly a contingent future interest is a legally cognizable interest, and thus property of the estate").

19.     That is the beginning and end of the inquiry: the Absolute Priority Rule prohibits equity from receiving or retaining any "property" under the Plan, and that is precisely what they are receiving under the Plan. It does not matter that that property is subject to a contingency that is only triggered if and when unsecured creditors are paid in full,

000369
App. 0284

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02780-S    Document 18-9    Filed 10/08/21    Page 112 of 208    PageID 3440
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 11 of 34

or that the property has little to no value, or that the contingency may never occur: "property" is being received under the Plan.

20.    The Debtor argued, and the Court agreed, that these contingent interests may have no value and would only vest and be paid if unsecured creditors are paid in full, thus preserving the priority scheme of the Bankruptcy Code.  As for the argument regarding value, the United States Supreme Court has squarely rejected any such argument:

> Respondents further argue that the absolute priority rule has no application in this case, where the property which the junior interest holders wish to retain has no value to the senior unsecured creditors.  In such a case, respondents argue, the creditors are deprived of nothing if such a so-called interest continues in the possession of the reorganized debtor.  Here, respondents contend, because the farm has no 'going concern' value (apart from their own labor on it), any equity interest they retain in a reorganization of the farm is worthless and therefore is not 'property' under 11 U. S. C. § 1129(b)(2)(B)(ii).
>
> We join with the overwhelming consensus of authority which has rejected this 'no value' theory. . .  Whether the value is present or prospective, for dividends or only for purposes of control a retained equity interest is a property interest. . .  And while the Code itself does not define what 'property' means as the term is used in § 1129(b), the relevant legislative history suggests that Congress' meaning was quite broad.  Property includes both tangible and intangible property.

*Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207-08 (1988) (internal quotations and citations omitted).  Thus, it does not matter that the "property" may be prospective, or that it may be intangible, or that it may have no value.  All that matters is that "property," which is intended to be read broadly, is retained or received under the Plan.  There can be no question that it is.

21.    The Debtor and the Court also relied on *In re Introgen Therapeutics*, 429 B.R. 570 (Bankr. W.D. Tex. 2010) for the proposition that, so long as the contingent interests are not paid unless and until all unsecured claims are paid in full, the Absolute Priority Rule is not violated and is, in fact, preserved.  As is the case here, the plan in *Introgen* provided that

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 11

App. 000370

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02170-N    Document 18-9    Filed 10/08/21    Page 113 of 208    PageID 3401
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 12 of 34

equity interests, which were retained, would only be paid if and when unsecured creditors were paid in full:

> The right to receive something imaginary is not property. The only way Class 4 will receive anything is if Class 3 in fact gets paid in full, in satisfaction of § 1129(b)(2)(B)(i), meaning the absolute priority rule would not be an issue. If Class 3 is not paid in full, Class 4's 'property interest' is not just valueless, as Creditors argue, it simply does not exist.

*Id.*

22.    This opinion is wrongly decided. First, it directly contradicts the language of the Bankruptcy Code, which implicates the Absolute Priority if *any* "property" is being retained or received. Second, this opinion looked to the present value of what was being retained, something directly foreclosed by the Supreme Court's opinion in *Norwest Bank Worthington v. Ahlers* quoted above. It cannot be doubted that a contingent, non-vested interest in a trust is "property." It may have no present value or other benefits, and it may never have a value or any other benefits, but there is a condition precedent which, if triggered, converts it to something of value, benefit, and present interest. Whatever it is that is converted into the "property" is itself "property."

23.    Third, this opinion fails to take into account the Supreme Court's opinion in *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. Lasalle P'ship*, 526 U.S. 434 (1999). That well know opinion considered whether the Absolute Priority Rule was triggered under a plan where equity was retained. While it may be obvious that equity is "property" and that the retention of equity therefore violated the Rule, the Supreme Court's reasoning was different. Rather, the Supreme Court equated the exclusive opportunity to bid on new equity under a plan as itself "property" that was being granted or retained in violation of the Rule: "[t]his opportunity should, first of all, be treated as an item of property in its own right." Id. at 455. The Supreme Court reasoned as follows:

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 12

App. 0286
00371

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02780-N    Document 18-9    Filed 10/06/25    Page 114 of 208    PageID 3442
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 13 of 34

> While it may be argued that the opportunity has no market value, being significant only to old equity holders owing to their potential tax liability, such an argument avails the Debtor nothing, for several reasons. It is to avoid just such arguments that the law is settled that any otherwise cognizable property interest must be treated as sufficiently valuable to be recognized under the Bankruptcy Code. Even aside from that rule, the assumption that no one but the Debtor's partners might pay for such an opportunity would obviously support no inference that it is valueless, let alone that it should not be treated as property. And, finally, the source in the tax law of the opportunity's value to the partners implies in no way that it lacks value to others.

*Id*. at 455. If an exclusive "opportunity" is "property" for purposes of the Absolute Priority Rule, then the "opportunity" to perhaps share in a future recovery, however remote, is also "property." Even a contingent, non-vested interest is "otherwise cognizable property," since the law recognizes such interests and even brings them into an estate as property of the estate.

24.    For similar reasons, the Plan also violates the Absolute Priority Rule because the Debtor retains control of its property and its business after confirmation. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207-08 (holding that retention of control is "property" under the Absolute Priority Rule). In this respect, it must be understood that the Plan, while creating a trust for creditors and funding that trust with certain assets, also reorganizes the Debtor and vests the Debtor's business assets in the reorganized Debtor, while the creditor trust will own the reorganized debtor. Before the Plan, the Debtor controlled its property and its business. Under the Plan, the Debtor will continue to do so, through the same CEO/CRO, even though the Debtor will be indirectly owned by its creditors. But it is the retention of control that matters, not the ownership of the new equity.

25.    As summarized by one court in denying confirmation, "the power to control a corporation, through its board of directors, that a majority shareholder has, *is a separate property interest*, distinct from the value of the shares themselves." *In re 4 C Solutions Inc.*, 302 B.R. 592, 597 (Bankr. C.D. Ill. 2003) (emphasis added). Likewise, the U.S. Court of

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 13

App. 0285
000372

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02120-N    Document 18-9    Filed 10/08/21    Page 115 of 208    PageID 3443
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 14 of 34

Appeals for the Tenth Circuit has concluded that the retention of control is "property" within the meaning of the Absolute Priority Rule. *See Unruh v. Rushville State Bank*, 987 F.2d 1506, 1509 (10th Cir. 1993). Stated differently, "[i]t is the control of the reorganized entity which is a valuable asset, and that asset should not be passed on to the junior class." *In re Pecht*, 53 B.R. 768, 772 (Bankr. E.D. Va. 1985). This conclusion also applies where there is a change in ownership but control is retained. In *In re Perdido Motel Group Inc.*, 101 B.R. 289, 291-92 (Bankr. N.D. Ala. 1989), the debtor principals proposed to transfer ownership of the debtor to someone else (their parents) but with them retaining control after confirmation. Setting aside the potential of a sham transaction, the court denied confirmation because, while current equity would lose its equity, it would retain control: "by indirection, a retention of control of the debtor's property." *Id.* at 292. Indeed, the Absolute Priority Rule would lose all meaning if a debtor could create a trust, have that trust own the reorganized debtor, yet retain control of the reorganized debtor.

26.    Therefore, under the Plan, current holders of equity interests retain "property" in the form of contingent trust interests, and the Debtor retains controls on account of its current equity interests, both in violation of the Absolute Priority Rule because Class 8 has rejected the Plan and Class 8 is not paid in full under the Plan. The Movants therefore submit that they have presented "a substantial case on the merits when a serious legal question is involved." *In re Tex. Equip. Co.*, 283 B.R. at 227. Moreover, with respect to the conclusion that the Absolute Priority Rule is not violated because equity would not be paid anything unless and until all unsecured creditors are paid in full, and the holding of *In re Introgen Therapeutics* supporting that conclusion, neither the Supreme Court nor the Fifth Circuit has addressed this argument. Thus, because this issue has not been "definitively addressed by a higher court," the Movants have "more easily" satisfied this element. *See id.*

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02030-N    Document 3-9    Filed 10/06/25    Page 116 of 208    PageID 3434
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 15 of 34

iii.    **Exculpation and Injunction Provisions.**

27.    The Movants recognize that the Court, through its oral and written findings and conclusions, carefully considered the Plan's exculpation and injunction provisions and carefully considered all objections to the same in detail, prior to approving these provisions. Respectfully, the Movants believe that the Court's findings and conclusions on these points do not comport with established Fifth Circuit precedent because, among other things: (i) these provisions apply to *business* decisions as well as to case administration, and exculpating and providing injunctions for business decisions appears unprecedented; (ii) these provisions apply to non-debtor entities, *i.e.* the Debtor's general partner and its management; and (iii) these provisions apply to *postconfirmation* matters.

28.    The Fifth Circuit has held that exculpation provisions designed to absolve parties other than the debtor and the creditors' committee of any negligent conduct that occurred during the course of the bankruptcy are unenforceable. *In re Pacific Lumber Co.*, 584 F.3d 229, 253 (5th Cir. 2009).    To the contrary, Fifth Circuit authorities broadly "foreclose non-consensual non-debtor releases and permanent injunctions." *Id.* at 252 (citing authorities); *see also In re Thru, Inc.*, Civil Action No. 3:17-CV-1958-G, 2018 WL 5113124, at *22-23 (N.D. Tex. Oct. 19, 2018).    Whereas exculpation of the debtor is justified by section 524 of the Bankruptcy Code, and exculpation of creditors' committees has been deemed justified by section 1103 of the Bankruptcy Code, there is no authority justifying an extension of exculpation protections to other parties, even if the parties sought to be exculpated participated significantly in formulating the confirmed plan. *In re Pacific Lumber*, 584 F.3d at 253 (noting that the creditors' committee and its members were "the only disinterested volunteers among the parties sought to be released").

29.    However, the Plan extends the Exculpation Provision to not only the Debtor,

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01228-N    Document 18-9    Filed 10/08/25    Page 117 of 208    PageID 3445
Case 19-34054-sgj11    Doc 1955    Filed 02/28/21    Entered 02/28/21 09:49:28    Page 16 of 34

the creditors' committee, and their professionals, but also impermissibly to the Debtor's majority-owned subsidiaries, Strand, the Independent Directors, the CEO/CRO, and other Related Persons, in contravention of established precedent. Such parties are not "disinterested volunteers" akin to the creditors' committee, and even if they were, Fifth Circuit precedent does not support their exculpation from liability. Furthermore, there is no clear end date with respect to the Exculpation Provision. The Exculpation Provision has the practical effect of allowing the Exculpated Parties to escape liability for post-confirmation conduct that goes beyond activity relating to the bankruptcy case or the administration of the estate, and allows the Exculpated Parties to escape liability that may arise in ordinary course, post-petition relationships of the parties, such as liability for an ordinary breach of contract.

30.    Indeed, the District Court, in *In re Thru, Inc.*, struck down a virtually identical exculpation clause as the one in the Plan. 2018 WL 5113124, at *22-23. The exculpation clause in that case provided as follows:

> Neither the Debtor nor any of its present officers, directors, employees, agents, advisors, or affiliates, nor any of its Professionals (collectively, the "Exculpated Persons"), shall have or incur any liability to any Entity for any act taken or omission made in good faith in connection with or related to formulating, negotiating, implementing, confirming or consummating the Plan, the Disclosure Statement or any Plan Document. The Exculpated Persons shall have no liability to the Debtor, any Creditor, Interest holder, any other party in interest in the Chapter 11 Case or any other Entity for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan, in good faith, including failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

*Id.* at *22.

31.    Because the District Court has already concluded that confirmation of a plan containing a virtually identical exculpation provision constituted an error as a matter of law,

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 16

000375    App. 000

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01780-N    Document 1-9    Filed 08/06/21    Page 118 of 208    PageID 3445
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 17 of 34

the Movants have demonstrated a likelihood of success on the merits of their appeal.  Here, however, the exculpation provision is even broader, protecting non-debtor entities and their directors, not being limited to bankruptcy administration matters but also affecting business decisions, and not being limited in time to the pre-confirmation period.

32.      Furthermore, the sweeping Injunction preventing parties from pursuing causes of action against the non-debtor Protected Parties effectively discharges non-debtors and contravenes established Fifth Circuit precedent.  The Injunction is significantly broader than injunctions that have been struck down by courts in the Fifth Circuit.  In the recent case of *In re Thru, Inc.*, the District Court struck down an injunction that purported to enjoin causes of action held against the debtor or the estate and that arose prior to the effective date of the plan from being brought against certain non-debtor protected parties.  2018 WL 5113124, at *21-22.  The District Court found that it was clearly erroneous for the bankruptcy court to approve the injunction under section 105 of the Bankruptcy Code.  *Id.*  The injunction at issue in *In re Thru* was narrower than the Injunction in the Plan in several important respects, as the Plan Injunction is not limited to claims that arose prior to the Effective Date, and is not limited to claims that the Enjoined Parties hold against the Debtor.  Rather, the Injunction appears to have no end date, so long as a claim or cause of action arises out of some future administration or implementation of the Plan.  Moreover, and significantly, the Injunction precludes Enjoined Parties from bringing claims held *against the Protected Parties* -- not just claims held against the Debtor or the estate.

33.      The propriety of the Injunction is not saved by the ability of an Enjoined Party to bring such claim if the Court so allows.  In fact, the channeling nature of the Injunction is impermissible as well.  As drafted, the Injunction is broad enough to cover claims and causes of action that arise out of postconfirmation, ordinary course transactions between the

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 17

000376
App. 0321

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01230-N    Document 18-9    Filed 10/06/21    Page 119 of 208    PageID 3467
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 18 of 34

reorganized debtor and parties in interest and which do not have any actual relationship to the Plan or its implementation.  With result to any such disputes that arise, the Court lacks subject matter jurisdiction.  *See In re CJ Holding Co.*, 597 B.R. 597, 604 (S.D. Tex. 2019) ("After confirmation, 'the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.'") (quoting *In re Galaz*, 841 F.3d 316, 322 (5th Cir. 2016)).  Therefore, the channeling Injunction is impermissible because the Court appears to lack jurisdiction to even consider whether an enjoined action is colorable.  Parties cannot create indefinite subject matter jurisdiction where none otherwise exists.

34.    The Injunction of particular concern to the Movants.  Under the Injunction, the Movants are prohibited from advising or causing their clients to exercising their contractual rights against the postconfirmation Debtor pursuant to contracts that the Debtor has assumed under the Plan.  The law is clear that, upon assumption, the Debtor must comply with and be subject to all provisions of the assumed contracts.  *See In re Nat'l Gypsum Co.*, 208 F.3d 498, 505-06 (5th Cir. 2000); *In re Texas Baseball Partners*, 521 B.R. 134, 179-80 (Bankr. N.D. Tex. 2014).  Here, the Plan's exculpation and injunction provisions alter this clear law by imposing a new requirement that permission from the Court must first be obtained before proceeding against the Debtor, and that, as part of that permission, any party seeking to enforce rights must demonstrate a "colorable claim."  This means that this Court will of necessity be determining some aspect of the underlying dispute, even if the dispute relates solely to postconfirmation mattes over which the Court will have no jurisdiction.  Moreover, if the Court finds that the action is not colorable, then an Article I court with no post-confirmation jurisdiction will have effectively decided the matter on the merits.  In addition to the Court lacking jurisdiction, the Injunction also violates 28 U.S.C. § 959, the first portion of

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 18

000377    App. 0292

Case 22-03052-sgj   Doc 10-9   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02700-N   Document 89   Filed 12/03/21   Page 120 of 208   PageID 3448
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 19 of 34

which expressly provides that no leave from court is required in order to sue a debtor-in-possession based on its management of property—which would be the direct issue involved in any post-confirmation action.

35.     The Confirmation Order, by approving the Exculpation Provision and the Injunction, therefore presents a serious legal question.  At a minimum, the Movants have shown a substantial case on the merits and the balance of equities weigh heavily in favor of a stay.  *See In re First S. Savings*, 820 F.2d at 704; *In re Dernick*, 2019 WL 236999, at *3; *In re Texas Equipment Co.*, 283 B.R. at 227.  "A serious legal question exists when legal issues have far-reaching effects, involve significant public concerns, or have a broad impact on federal/state relations."  *In re Dernick*, 2019 WL 236999, at *3; *see In re Westwood Plaza Apartments, Ltd.*, 150 B.R. 163, 168 (Bankr. E.D. Tex. 1993).  Here, the Exculpation Provision and the Injunction violate established Fifth Circuit precedent and the Confirmation Order's approval of such provisions is erroneous as a matter of law.  Precedent involves significant public concerns, and the allowance of the provisions will cause lasting effects on parties in interest.  Indeed, the Injunction is so broad that it will prevent parties from enforcing their rights with respect to postconfirmation transactions unrelated to the bankruptcy case unless they first seek authority to do so from the Court.  Not only does this prevent a serious hurdle to the enforcement of rights, but it presents a serious due process concern.

   iv.     **Section 1129(a)(2) of the Bankruptcy Code.**

36.     In order to confirm the Plan, the Bankruptcy Code requires that the "proponent of the plan complies with the applicable provisions of this title [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(2).  The proponent of the Plan was the Debtor.  The Debtor failed to satisfy section 1129(a)(2) of the Bankruptcy Code, and the Court erred as a matter of law in

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 19

000378

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02003-N    Document 18-9    Filed 20/00/25    Page 221 of 208    PageID 3449
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 20 of 34

concluding that it had, because the Debtor completely failed to comply with Bankruptcy Rule 2015.3—on at least three occasions.

37.    Section 1129(a)(2) is a mandatory provision and if it is not satisfied, a plan cannot be confirmed as a matter of law.  11 U.S.C. § 1129(a) ("[t]he court shall confirm a plan only if all of the following requirements are met").  Section 1129(a)(2) is not limited to whether a debtor complies with section 1129 itself; that is the point of the opening clause of section 1129(a).  Rather, as the House Judiciary Report confirms, this section "requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."  H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 412–418.

38.    The Debtor, as a debtor-in-possession, has the duties and obligations of a trustee under section 1106(a) of the Bankruptcy Code (except with respect to certain such duties not relevant here).  11 U.S.C. § 1107(a).  One of those duties is to comply with subsection 8 of section 704(a) of the Bankruptcy Code."  11 U.S.C. § 1106(a)(1).  That subsection provides that that trustee (here, the debtor-in-possession) shall:

> if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires.

11 U.S.C. § 704(a)(8).

39.    As there is no question that the business of the Debtor was authorized to be operated, this section requires the Debtor to file periodic reports of business operations and such other information as the "United States trustee or the court requires."  *Id.*  Bankruptcy Rule 2015.3 provides that:

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 20

000379
App. 00384

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01790-N    Document 18-9    Filed 02/08/25    Page 122 of 208    PageID 3490
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 21 of 34

In a chapter 11 case, the trustee or debtor in possession shall file periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest. The reports shall be prepared as prescribed by the appropriate Official Form, and shall be based upon the most recent information reasonably available to the trustee or debtor in possession.

Bankruptcy Rule 2015.3(a).

40.     There is a presumption of "substantial or controlling interest" where the debtor owns or controls at least 20 percent of such entity."  Bankruptcy Rule 2015.3(c).  The first Rule 2015.3 report is due seven days before the meeting of creditors, and a subsequent report is due every six months thereafter.  Bankruptcy Rule 2015.3(b).

41.     The Debtor violated this Rule several times.  The Debtor admitted that it held interests in at least eight other companies, with respect to which the Debtor admitted that it held at least 20% of such interests in three of such companies (and did not remember the percentage of interest in the other companies.  Confirmation Hearing Transcript (February 3, 2021) at 46:15-48:8.  The Debtor admitted that these were not publicly traded entities and were not themselves debtors in bankruptcy.  *See id.* at 46:2-14.  The reason given for the Debtor for its failure to file its initial Rule 2015.3 report and each subsequent one was that, with all that was going on early in the case, "it fell through the cracks."  *See id.* at 49:17-21.  Yet, the Debtor never sought nor received any leave from the Bankruptcy Court to file its Rule 2015.3 reports late. *See id.* at 50:1-8.

42.     There is no question, therefore, that the Debtor failed to comply with Bankruptcy Rule 2015.3—indeed the Debtor admitted that fact.  The Debtor therefore failed to comply with its duties to file such reports as required by the United States Trustee and Bankruptcy Court under section 704(a)(8) of the Bankruptcy Code, as made applicable to a debtor-in-possession under sections 1106 and 1107 of the Bankruptcy Code.  The Debtor

000380
App. 0285

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01780-N    Document 10-9    Filed 12/08/25    Page 123 of 208    PageID 3501
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 22 of 34

therefore failed to comply with all applicable provisions of the Bankruptcy Code; *i.e.* Chapter 11.

43.    That section is broad, requiring the Debtor to "compl[y] with the applicable provisions of this title." There is no exception for minor things, reports that need to be filed, or anything else. Indeed, courts have correctly construed this section broadly, as it is an important safety mechanism to ensure that a plan proponent cannot simply ignore its obligations under the Bankruptcy Code yet confirm a plan just because its plan otherwise satisfies confirmation requirements, thereby sweeping all prior failures and defaults under the rug. The District Court held that this section prohibited confirmation where the debtor had retained and paid professionals without proper bankruptcy court authority, even though the bankruptcy court later granted this relief *nunc pro tunc*. *See In re Briscoe Enters. Ltd.*, 138 B.R. 795, 808-09 (N.D. Tex. 1992) ("[i]f that were all that was required, there would be no need for § 1129(a)(2)"), *rev'd* 994 F.2d 1160, 1170 (5th Cir.). While this conclusion was reversed on appeal, because the bankruptcy court subsequently permitted the retention and payment *nunc pro tunc*, the Debtor here never made a request for leave to file its Bankruptcy Rule 2015.3 reports late, and it has never sought any *nunc pro tunc* relief regarding the same. And, as the Supreme Court has made clear, a court cannot use its *nunc pro tunc* authority to "make the record what it is not." *Roman Catholic Archdiocese of San Juan v. Feliciano*, 140 S. Ct. 696, 701 (2020) (internal quotation omitted).

44.    A different district court affirmed a denial of a plan based on section 1129(a)(2) because the plan proponent had spent proceeds from a sale in violation of section 363(c) of the Bankruptcy Code. *See Cothran v. United States*, 45 B.R. 836, 838 (S.D. Ga. 1984) ("[t]o the extent that the administrative provisions of Chapter 3 apply to cases under Chapter 11, a debtor must also abide by Chapter 3 or risk non-confirmation"). One

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 22

000381
App. 8296

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02100-N    Document 10-9    Filed 12/06/25    Page 224 of 208    PageID 3452
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 23 of 34

bankruptcy court denied confirmation under section 1129(a)(2) because the debtor refused to pay court-ordered administrative expense claims. *See In re Midwestern Cos.*, 55 B.R. 856, 863-64 (Bankr. D. Mont. 1985). A different bankruptcy court denied confirmation on the basis of section 1129(a)(2) because the debtor had failed to comply with the deadline to propose a small business plan. *See In re Win Trucking Inc.*, 236 B.R. 774, 778-79 (Bankr. D. Utah 1999).

45.     What these opinions demonstrate is that section 1129(a)(2) means what it says, and what it says is broad: if the plan proponent has not complied with chapter 11 (the "applicable provisions") then its plan cannot be confirmed. Period. And, as these opinions further confirm, the provisions of chapter 11 that must be complied with are all of them, as opposed to merely those governing the plan itself. Indeed, that is the point of section 1129(a)(1) of the Bankruptcy Code and there would be no need for a separate provision if all that was applicable was the statute governing confirmation itself. *See* 11 U.S.C. § 1129(a)(1).

46.     Notwithstanding the broad language of section 1129(a)(2) of the Bankruptcy Code, one bankruptcy court has concluded that section 1129(a)(2) "does not provide creditors with a 'silver bullet' to defeat confirmation based on each and every minor infraction of Title 11 that a debtor may commit." *In re Cypresswood Land Partners I*, 409 B.R. 396, 423-24 (Bankr. S.D. Tex. 2009). This opinion is wrong, however, and it should not be followed, for the simple reason that it reads into the statute an exception that is simply not there. *Connecticut Nat'l Bank v Germain*, 503 U.S. 249, 254 (1992) (Congress "says in a statute what it means and means in a statute what it says there"). Nor is a violation of the Bankruptcy Code a "silver bullet" that creditors have. A debtor obtains immense relief and benefits from Chapter 11 and requiring it to comply with its own obligations, and imposing upon it consequences if it fails to do so, should not be a controversial proposition. It is not the

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 23

App. 000382

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02700-N    Document 31-9    Filed 05/06/22    Page 125 of 208    PageID 4523
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 24 of 34

creditor's "silver bullet"; it is the consequence, perhaps even penalty, for failure to comply with the law.

47.     But even if this opinion has some persuasiveness, compliance with Bankruptcy Rule 2015.3 is not a "minor infraction."    This is an important rule that provides all participants with transparency and some level of control over a debtor's ownership interest in other entities—here, interests worth hundreds of millions of dollars. *See, e.g., In re Sillerman*, 605 B.R. 631, 644 (Bankr. S.D.N.Y. 2019) (discussing importance of Rule 2015.3 reports: "[t]hese reports would supply the Court and creditors with relevant and material information regarding the Debtor's interest in his dozens of entities, thereby enhancing transparency and potentially laying bare any improper transfers or self-dealing").    What if a debtor is selling its interests and not accounting for the proceeds?    What if a debtor is using its control of those entities to cause them to dispose of their assets improperly, so as to remove them from creditor reach?    What if a debtor is channeling business or other estate resources into or through those entities?    As those entities are not debtors themselves, the bankruptcy court and creditors would have no other way of knowing what is going on with those assets except through compliance with Bankruptcy Rule 2015.3.    *See, e.g., In re Hoyle*, 2013 Bankr. LEXIS 420 at *12-*14 (Bankr. D. Idaho 2013) (detailing improper use and accounting of non-debtor entities owned by debtor).

48.     Bankruptcy Rule 2015.3 is not trivial or minor; it is very important.    Failure to comply with the Rule has led to conversion of the bankruptcy case:

> Winterhalter's failure deprived creditors of critical information regarding the Debtor's partnership interests, and Debtor's receipt and use of the partnership distributions created suspicion among the creditors, contributed to the multiple litigation between the Debtor and his creditors at almost every juncture of his Chapter 11 case, and ultimately contributed to the conversion of the Debtor's case from Chapter 11 to Chapter 7.

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 24

000383

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02700-S    Document 10-9    Filed 06/06/22    Page 26 of 38    PageID 3454
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 25 of 34

*In re Grasso*, 586 B.R. 110, 150 (Bankr. E.D. Pa. 2018).  Likewise, a failure to file the reports is cause to appoint a chapter 11 trustee or to dismiss the bankruptcy case.  *See, e.g., In re Sillerman*, 605 B.R. 631, 644 (Bankr. S.D.N.Y. 2019).  Thus, if the failure to timely file these reports is sufficient cause to convert or dismiss the case, or to appoint a chapter 11 trustee, then such failure cannot be described as trivial or a "minor infraction" even if there were a "minor infraction" exception to section 1129(a)(1).

## C.    MOVANTS WILL SUFFER IRREPARABLE INJURY WITHOUT A STAY

49.    The focus of the second element is whether, absent a stay pending appeal, the Movants may suffer irreparable injury in the form of effectively being denied appellate review due to mootness or similar considerations.  *See In re Tex. Equip. Co.*, 283 B.R. 222, 228 (Bankr. N.D. Tex. 2002).  This element puts the Movants in an awkward situation.  On the one hand, they are not admitting that their appeal will be moot.  On the other hand, they have to address the reality that mootness is a significant concern any time that a chapter 11 plan is on appeal.

50.    This is because consummation of a plan may render any challenges to confirmation thereof moot.  *In re Westwood Plaza Apartments*, 150 B.R. at 169 (factor tilted in favor of granting stay); *Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*, Case No. 3:17-CV-1958-G, 2018 WL 5113124, at *12 (N.D. Tex. Oct. 19, 2018) (equitable mootness more likely if no stay has been obtained and plan has been substantially consummated); *see also In re Best Products Co.*, 177 B.R. 791 (S.D.N.Y. 1995) (dismissing appeal of confirmation order as moot where appellant failed to seek stay of confirmation order and plan had been consummated).  Indeed, the Fifth Circuit in *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009), recognized the potential issues with denying a stay of a confirmation order pending appeal:

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 25

App. 0390
000384

Case 22-03052-sgj   Doc 10-9   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02780-N   Document 18-9   Filed 07/08/25   Page 127 of 208   PageID 3455
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 26 of 34

> Although the exigencies of the case appeared to demand prompt action, simply denying a stay seems to have been, and often will be, too simplistic a response. A plan may be designed to take effect, as it was here, after a lapse of sufficient time to initiate appellate review. A supersedeas bond may be tailored to the scope of the appeal. An appeal may be expedited. As with all facets of bankruptcy practice, myriad possibilities exist. Thus, substantial legal issues can and ought to be preserved for review.

584 F.3d at 243.

51.     The unprecedented breadth of the Exculpation Provision and the Injunction has the potential to cause immediate and irreparable harm to the Movants and other parties in interest.  These provisions have the cumulative effect of preventing the Movants, among other parties, from exercising their legal rights to pursue any claims or causes of action against non-debtor parties.[2]  Indeed, the provisions are so broad that they essentially prevent the Movants from exercising their rights and remedies that arise post-confirmation in the ordinary course of business, despite the same being completely distinct from the bankruptcy case, and notwithstanding the basis or nature of the claim.  In practical effect, the Movants will, at the very least, have to seek leave of the Court in order to seek any relief for any present or future actionable wrongs, whether contractual or under applicable non-bankruptcy law.  Furthermore, if the stay is denied, the Movants could suffer harm for which they have no legal redress and which becomes moot - equitably or otherwise - before the District Court has an opportunity to rule.

52.     The impermissibility of the Exculpation Provision and Injunction is apparent, and absent a stay, will immediately deprive Movants of their due process rights and ability to seek legal redress for wrongs that may be suffered.  The possibility of irreparable injury can

---

[2]     As the Court is aware, in light of the Debtor's termination of its shared services agreements with the Advisors, the Advisors and the Debtor are in the process of transferring to the Advisors their data held by the Debtor.  It is too soon to determine whether this process will be satisfactorily concluded but, if it is not, the Movants may have additional claims and causes of action against the Debtor which would be subject to the Plan's exculpation and injunction provisions.

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF—Page 26

000385
App. 0300

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02801-N    Document 8-9    Filed 08/20/21    Page 28 of 208    PageID 3556
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 27 of 34

only be remedied by a stay of the Confirmation Order.

53.    Additionally, the Plan has the practical effect of enjoining the Movants from advising or causing the funds to remove the Debtor as manager of the CLOs or to join with other, non-enjoined funds, from removing the Debtor as manager.  Should the Debtor engage in conduct after confirmation that justifies the removal of the Debtor as manager, the Movants will be prevented from being able to advise their clients accordingly or to take action on their behalf.  This would cause Movants irreparable injury.

54.    The Debtor will argue that there is no irreparable harm because the gatekeeper Injunction will permit the Movants to seek relief from the Court in order to exercise their rights.  But, as argued above, this Court will not have post-confirmation jurisdiction over post-confirmation and post-assumption transactions and disputes.  This is especially the case if the Bankruptcy Case is closed soon after confirmation, as may be likely given that most sizable claims have been adjudicated or compromised.  Simply put, the Court, without jurisdiction, may nevertheless decide that a proposed action is not "colorable" as is required by the gatekeeper Injunction, meaning that the Movants will be prevented from acting without a court of proper jurisdiction reviewing the matter.  At a minimum, the time it would take Movants to comply with the gatekeeping Injunction, during which time the Movants would be prevented from exercising their legitimate, contractual and statutory rights, imposes a substantial burden.

55.    As a subset of the above, mootness will also arise because the Debtor has stated that it intends to liquidate and wind down the CLOs in approximately two years.  Thus, by the time that the appeal of the Plan is ultimately concluded, the liquidation of the CLOs will have occurred in full or in large part, and even if the Movants prevail on appeal the damage will already have been done.

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 27

000386
App. 0391

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N    Document 10-9    Filed 12/06/21    Page 129 of 208    PageID 3567
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 28 of 34

D.    NO SUBSTANTIAL HARM TO DEBTOR OR OTHER PARTIES

56.    A stay pending appeal is also justified under the third prong because neither the Debtor, nor any of the Debtor's creditors, will be substantially harmed by a stay of the Confirmation Order pending appeal.  Moreover, the Court can fashion the stay to prevent harm to the Debtor and other parties.  *See In re Westwood Plaza Apartments*, 150 B.R. at 169 (conditioning stay of plan on, among other things, debtor's ability to pay administrative, tax and secured claims as provided for under the plan); *In re Thru*, 2018 WL 5113124, at *20 (recognizing availability of partial relief on appeal of plan with respect to exculpation provisions).

57.    Courts have found substantial harm to other parties if the stay would cause a significant delay in the administration of the estate or a delay in the distribution to creditors under the plan.  *In re Dernick*, 2019 WL 236999, at *4.  Here, a stay will not lead to any harm, much less substantial harm, to the Debtor or other creditors.  This is because the Debtor can continue doing exactly what it would do under the Plan: (i) the CEO/CRO is still in charge and the members of the creditors committee will be on the trust oversight board, with the addition of one additional member; (ii) the CEO/CRO can continue administering the estate the same as he is doing now; (iii) the CEO/CRO can continue managing affirmative litigation the same as he is doing now; (iv) the CEO/CRO can continue managing the CLOs and funds that the Debtor manages the same as he is doing now; (v) there is no exit financing under the Plan; (vi) there are no asset sales or compromises under the Plan that cannot be effectuated without the Plan; and (vii) there is no new money or new value being contributed under the Plan.  185:3-188:5.

58.    As the Debtor's CEO/CRO confirmed, "post-confirmation, you are basically going to continue managing the CLOs and funds and trying to monetize assets for creditors

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 28

000387    App. 0382

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N    Document 18-9    Filed 12/06/21    Page 130 of 208    PageID 3458
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 29 of 34

the same as you are today."  Confirmation Hearing Transcript (February 2, 2021) at 188:2-5.
And, as the CEO/CRO confirmed, he does not "need anything in the plan that [he] does [not]
have today to keep managing" the "Funds and the CLOs."  *Id.* 188:23-189:2.  Instead, as the
CEO/CRO confirmed, the only difference is that he would not be willing to serve as the post-
confirmation trustee without the Plan's channeling Injunction, and that the reorganized debtor
would be unable to obtain directors and officers insurance.  *Id.* 168:6-18.  But that is precisely
the point: a Plan should not have as its principal purpose the entry of an injunction limiting the
ability of parties to exercise their rights for matters arising *after* confirmation and assumption.

59.    The Court should also take into account that 27 Class 8 creditors rejected the
Plan, while only 17 accepted the Plan.  It is the unsecured creditors who would be the only
ones potentially prejudiced if the Plan is stayed, as that may delay their recoveries.  But Class
8 overwhelmingly rejected the Plan.  While 16 Class 7 convenience class creditors accepted
the Plan, the total cost to pay those creditors is approximately $10 million.  The Debtor has
more than sufficient cash on hand to pay these creditors with an interim distribution if it so
wished.  The five subordinated creditors accepting the Plan do not matter, since they are not
projected to receive anything under the Plan, and if they do receive anything, it will be years
into the future after extensive litigation.  As for the Class 2 Frontier Secured Claim, the
Debtor has many options to treat this secured claim with adequate protection and other
payments that it can do without need for the Plan.

60.    Finally, a stay pending appeal will actually protect the Debtor and its
professionals.  As demonstrated above, the District Court has already rejected an exculpation
clause that is similar to the one in the Plan as a matter of law.  Yet, as the Court heard at the
confirmation hearing, the CEO/CRO would not be willing to serve as the post-confirmation
trustee or manager of the Debtor without the Plan's Exculpation Provision and Injunction, and

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 29

000388
App. 0383

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02170-S    Document 18-9    Filed 06/06/25    Page 331 of 208    PageID 3599
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 30 of 34

the reorganized debtor would not be able to obtain directors and officers insurance. Should something arise after confirmation, with these provisions of the Plan reversed by an appellate court, the CEO/CRO, the reorganized debtor, and potentially others may face potential liability without coverage. All parties, and especially the CEO/CRO and the Debtor, should have a strong interest in ensuring that nothing of that sort happens—something best done by a stay pending appeal.

E.    THE PUBLIC INTEREST IS SERVED BY A STAY PENDING APPEAL

61.    Because the Exculpation Provision and the Injunction impermissibly infringe upon the contractual, legal and due process rights of parties in interest in the bankruptcy case, a stay pending appeal of such provisions will serve the public interest. A stay will ensure that non-debtor parties are held accountable for their post-petition and post-confirmation conduct, while preserving the rights and remedies of parties in interest under applicable non-bankruptcy law. Likewise, a stay will serve the public interest of respecting and upholding judicial precedent. The interests of many innocent, third party investors must also be taken into account, and their interests are not served by the Exculpation Provision and Injunction that may effectively and permanently prevent them from exercising legitimate contract and statutory rights. Finally, the public has a strong interest in ensuring that securities laws are complied with, including the Investment Advisers Act of 1940. The Plan's Exculpation Provision and Injunction threaten to substantially vitiate these laws and effectively relieve the Debtor from its obligations and duties (and potential liabilities) thereunder.

F.    SECURITY FOR STAY PENDING APPEAL

62.    The Court may, but need not, condition a stay pending appeal on a bond or other security being posted. As this Court has summarized:

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 30

000389
App. 0384

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N    Document 10-9    Filed 02/28/21    Page 332 of 208    PageID 3690
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 31 of 34

> The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal.  The bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal.  In deciding how best to secure the non-appealing party from loss, the court applies general equitable principles.

*In re Tex. Equip. Co*., 283 B.R. at 229.

63.    Normally, the amount of any bond should be the amount of the judgment being stayed.  The Movants are aware of one bankruptcy court concluding that, when the order being stayed is a confirmation order, the amount of the bond should be the entire amount of debt subject to the plan.  *See In re Scotia Dev. LLC*, 2008 Bankr. LEXIS 5127 *32-*33 (Bankr. S.D. Tex. 2008).  Here, however, the Plan does not propose to pay any claims any time soon, except for administrative claims and Class 7 convenience claims, both of which can be satisfied by the amount of cash the Debtor is presently holding.  Thus, an analogy to *Scotia Dev. LLC* is not warranted, and applying its reasoning here would lead to a punitive result that would actually better the returns to creditors, meaning that it would do far more than preserve the status quo and protect against harm resulting from the stay pending appeal itself.  Moreover, the risk in *Scotia Dev. LLC* was that the debtor's business would collapse from a lack of funding that the confirmed plan provided for.  *See id*. at *25 ("the continued viability and operation of the debtors must be protected.  All parties agree that some extraordinary program is required to allow these debtors to survive more than even ten days.  Without additional cash, both Scopac and Palco would have to shut down immediately").  No such considerations are present here.

64.    Instead, the Movants respectfully submit that any such conclusion would be punitive and would not be warranted by the facts.  *See, e.g., In re Gleasman*, 111 B.R. 595, 604 (Bankr. W.D. Tex. 1990) ("The purpose of a bond, after all, is to protect Franklin against

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 31

000390
App. 0385

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N    Document 18-9    Filed 03/08/25    Page 133 of 208    PageID 3461
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 32 of 34

any loss, not to confer a windfall.  The property itself is not going anywhere").  As discussed above, the Plan does not give the Debtor anything it does not have now.  No new funds are coming in, no exit financing is involved, and no asset sale is provided for in the Plan.  Rather, the Debtor will simply continue doing under the Plan what it is doing now: it will manage its assets, funds, and the CLOs, and will continue monetizing its assets and managing litigation the same as now.  Whatever the value of the assets being administered is today will be the same under the Plan and without the Plan.  No new funds and no exit financing is involved.  Nothing in the Plan gives the Debtor tools to administer its estate that it lacks at present, and nothing in the Plan will increase the value of assets available for creditors.  Thus, there will be no harm to the Debtor or to the estate.

65.    The only conceivable harm is from a delay in certain payments to certain creditors.  If the Plan is affirmed, then those creditors would not have the use of those funds for a period of time.  Here, the Debtor believes that it will distribute approximately $60 million to Class 7 and Class 8 creditors within one year of the Plan being confirmed.  As unsecured creditors, these creditors would be entitled to interest at the federal rate of post-judgment interest.  *See In re Thru Inc.*, 2017 Bankr. LEXIS 1902 at *28-29.  That rate is at present less than 1% and is unlikely to rise past that amount during the period of any stay.  Thus, the interest that any creditor may be able to claim for any delay in payment is less than 1%, or less than $600,000.00.

66.    The Movants therefore submit that a bond or security of $1 million is sufficient to protect the Debtor and its estate from any harm resulting from the delay in the effectiveness of the Plan.

## IV.    CONCLUSION

67.    Based on the foregoing, a stay of the Confirmation Order is justified under

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 32

000391
App. 0306

Case 22-03052-sgj   Doc 10-9   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-N   Document 18-9   Filed 03/08/25   Page 134 of 208   PageID 3462
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 33 of 34

each of the applicable factors for a stay pending appeal.  Accordingly, the Court should grant

a stay of the Confirmation Order.

      WHEREFORE, the Movants request that the Court enter an Order:

    1.    Staying the effectiveness of the Confirmation Order pending appeal; and

    2.    Granting such other relief as is just and proper.

Dated:  February 28, 2021          **MUNSCH HARDT KOPF & HARR, P.C.**

                    By: /s/ Davor Rukavina
                        Davor Rukavina, Esq.
                        Texas Bar No. 24030781
                        Julian P. Vasek, Esq.
                        Texas Bar No. 24070790
                        3800 Ross Tower
                        500 N. Akard Street
                        Dallas, Texas  75201-6659
                        Telephone: (214) 855-7500
                        Facsimile: (214) 855-7584
                        E-mail: drukavina@munsch.com

                    **COUNSEL FOR HIGHLAND CAPITAL**
                    **MANAGEMENT FUND ADVISORS, L.P.,**
                    **AND NEXPOINT ADVISORS, L.P.**

App. 0385
000392

Case 22-03052-sgj    Doc 10-9    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01270-N    Document 18-9    Filed 05/06/25    Page 135 of 208    PageID 3463
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 34 of 34

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 28th day of February, 2021, true and correct copies of this document were electronically served on parties entitled to notice thereof, including on counsel for the Debtor.

Dated:  February 28, 2021

<div align="right">

*/s/ Davor Rukavina*
Davor Rukavina

</div>

# EXHIBIT 10

Appx 0309

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01290-N    Document 16-10    Filed 06/02/22    Page 137 of 208    PageID 3465
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 1 of 20

K&L GATES LLP
Artoush Varshosaz (TX Bar No. 24066234)
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5659
E-mail: artoush.varshosaz@klgates.com

A. Lee Hogewood, III (*pro hac vice*)
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Telephone: (919) 743-7306
E-mail: lee.hogewood@klgates.com

*Counsel for Highland Income Fund, NexPoint*
*Strategic Opportunities Fund, Highland Global*
*Allocation Fund, and NexPoint Capital, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ11) |
| Debtor. | |

**MOTION FOR STAY PENDING APPEAL OF THE COURT'S ORDER**
**CONFIRMING THE DEBTOR'S FIFTH AMENDED PLAN**

Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global

Allocation Fund, and NexPoint Capital, Inc. (each, a "**Fund**," and collectively, the "**Funds**" or

"**Movants**"), by and through their undersigned counsel, and pursuant to Rule 8007 of the Federal

Rules of Bankruptcy Procedure, respectfully move (the "**Motion**") this Court to stay its *Order (I)*

*Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as*

*Modified) and (II) Granting Related Relief* [Dkt. No. 1943] (the "**Confirmation Order**") pending

appeal.  In support of the Motion, the Movants respectfully show the Court as follows:

## I.    PRELIMINARY STATEMENT

1

¦1934054210303000000000006¦

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-S    Document 16-10 Filed 06/02/22    Page 138 of 208    PageID 3466
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 2 of 20

1.      On February 22, 2021, this Court entered its Confirmation Order in the above-
captioned chapter 11 case of Highland Capital Management, L.P. (the "**Debtor**").  On March 3,
2021, Movants timely filed a notice of appeal pursuant to Bankruptcy Rule 8002.  Movants
maintain that the Confirmation Order contravenes established law in the Fifth Circuit by
confirming a plan that contains non-consensual non-debtor exculpation and injunction provisions
that are overly broad.  Further, the Confirmation Order approves a channeling injunction that
impermissibly attempts to confer jurisdiction in the Court over post-confirmation matters with
respect to which it would otherwise lack subject matter jurisdiction.  The aforementioned
provisions, which are now part of a confirmed plan, are sweeping and unprecedented.

2.      Accordingly, Movants respectfully request a stay pending appeal of the
Confirmation Order.  If a stay is not granted, Movants' rights would be severely prejudiced
pending the ruling on appeal, even if the ruling on appeal ultimately results in Movants' favor.
There is a present threat that the exculpation and injunction provisions preclude Movants from
being able to exercise their contractual rights under certain management contracts with
collateralized loan obligations (the "**CLOs**") that are assumed under the confirmed plan.
Moreover, Movants' rights could be mooted by the time of any final resolution on appeal because
by that time, the Debtor may have already completed its liquidation and wind down of the CLOs'
assets.  A stay pending appeal does not present any serious risk of harm to the Debtor or its
creditors.  Furthermore, the public interest supports a stay pending appeal by ensuring that the
Debtor and non-debtor parties are held responsible for their performance and compliance under
contracts the Debtor has assumed, including the CLO management contracts.  Accordingly, and as
required by Bankruptcy Rule 8007, Movants, with all due respect, move this Court for a stay of its
own Confirmation Order.

000396

Appx 0341

Case 22-03052-sgj   Doc 10-10   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-N   Document 18-10   Filed 06/02/21   Page 84 of 208   PageID 3667
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21   Entered 03/03/21 14:43:05   Page 3 of 20

## II.    BACKGROUND

### A.    General Background on the Funds

3.    Each of the Funds is a publicly registered investment company or business development company under the Investment Company Act of 1940, as amended, 15 U.S.C. § 80a-1, *et. seq.* (the "**1940 Act**").  Each of the Funds is regulated by the U.S. Securities and Exchange Commission (the "**SEC**") and by a comprehensive set of securities laws, including the Securities Act of 1933, the Securities Exchange Act of 1934, and the 1940 Act, in addition to various state law provisions (collectively, the "**Securities Laws**").  Collectively, the Funds have thousands of shareholders, ranging from large institutional investors to small individual shareholders, and have more than $1 billion in assets under management.

4.    Each Fund is advised by either Highland Capital Management Fund Advisors, L.P., or NexPoint Advisors, L.P. (each, an "**Advisor**," and collectively, the "**Advisors**").  The Advisors are investment advisers registered with the SEC as investment advisers under the Investment Advisers Act of 1940, as amended, 15 U.S.C. § 80b-1, *et seq.* (the "**Advisers Act**").

5.    As public registered investment companies and a business development company, each Fund is regulated under the 1940 Act and is governed by a Board of Trustees (a "**Board**"). Each Board owes fiduciary duties to its Funds and to the Funds' shareholders.  The Boards also have obligations under the Securities Laws to exercise independent business judgment and act in the best interests of the Funds and their shareholders.

6.    The Boards have regular quarterly meetings, and frequently meet in between the quarterly meetings regarding a variety of Fund operational issues.  The SEC routinely describes and emphasizes the oversight duties of investment company boards in its rulemaking efforts. The Boards' members include a number of sophisticated investment professionals, all but one of whom

3

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N    Document 18-10    Filed 06/02/22    Page 140 of 208    PageID 3468
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 4 of 20

is independent from the Advisors and who are advised by their own legal counsel.

7.     Additionally, the Funds do not have employees.  Rather, the Boards retain the Advisors to advise the Funds, subject to the Boards' oversight.

8.     The Funds also own the preference shares in certain CLOs for which the Debtor serves as portfolio manager, and own the majority of preference shares in at least three of such CLOs.  The CLOs are securitization vehicles that were formed to acquire and hold pools of debt obligations.  They also issued various tranches of notes and preference shares, which are intended to be repaid from proceeds of the subject CLO's pool of debt obligations.  The notes issued by the CLOs are paid according to a contractual priority of payments, with the value remaining in the CLOs after the notes are fully paid flowing to the holders of the preference shares.

9.     The CLO management agreements generally allow the holders of preference shares, i.e., the Funds, to remove the portfolio manager for cause, and some allow removal without cause.

**B.     The Confirmation Order**

10.     On October 16, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), commencing the above-captioned bankruptcy case.

11.     On November 24, 2020, the Debtor filed its *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Dkt. No. 1472] (the "**Fifth Amended Plan**").

12.     Movants, among other parties in interest, filed an objection to the Fifth Amended Plan.  *See, e.g.,* Dkt. No. 1670.

13.     On January 22, 2021, the Debtor filed its *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Dkt. No. 1808] (the "**Plan**").

14.     Article IX of the Plan contains the following exculpation provision (the

000398
App. 0343

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N  Document 18-10  Filed 06/08/21  Page 16 of 208  PageID 3469
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 5 of 20

"**Exculpation Provision**"):[1]

### C.    <u>Exculpation</u>

Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); provided, however, the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

Dkt. No. 1808 at 54-55. "Exculpated Parties," in turn, means, collectively:

(i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds,[2] (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of

---

[1] Capitalized terms used, but not otherwise defined, shall have the meanings ascribed to such terms in the Plan.
[2] To avoid any confusion, Movants note that the Plan defines the Managed Funds as "Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to this Plan." Dkt. No. 1808 at 17.

000399
App. 0344

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02780-N    Document 36-10    Filed 06/02/21    Page 142 of 208    PageID 3690
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 6 of 20

its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

Dkt. No. 1808 at 15.

15.    Article IX of the Plan also contains an injunction provision (the "**Injunction**"),

which provides, in pertinent part, as follows:

### F.    Injunction

Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.

. . . .

Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; provided, however, the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

Dkt. No. 1808 at 57-58.  "Enjoined Parties," in turn, is defined to mean:

(i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the

000400
App. 0345

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N    Document 18-10    Filed 08/08/22    Page 143 of 208    PageID 3470
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 7 of 20

capacity in which such Entity appeared and any other party in interest, (iv) any
Related Entity, and (v) the Related Persons of each of the foregoing.

Dkt. No. 1808 at 14. "Protected Parties" means, collectively:

> (i) the Debtor and its successors and assigns, direct and indirect majority-owned
> subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the
> Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the
> members of the Committee (in their official capacities), (viii) the Claimant Trust,
> (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee,
> (xii) the members of the Claimant Trust Oversight Committee (in their official
> capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and
> the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related
> Persons of each of the parties listed in (iv) through (xv); *provided, however,* that,
> for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint
> Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable
> Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd.,
> and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries,
> members, and managed entities), NexBank, SSB (and any of its subsidiaries),
> Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and
> managed entities), the Hunter Mountain Investment Trust (or any trustee acting for
> the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or
> Grant Scott is included in the term "Protected Party."

Dkt. No. 1808 at 19.

16.    On February 2 and 3, 2021, the Court conducted a hearing on confirmation of the

Plan, and on February 22, 2021, entered the Confirmation Order.

17.    Movants timely appealed the Confirmation Order by filing a Notice of Appeal on

March 3, 2021 [Dkt. No. 1966].

## III.    ARGUMENTS AND AUTHORITIES

### A.    Standard for a Stay Pending Appeal

18.    By the Motion, Movants request a stay of the Confirmation Order pending appeal

pursuant to Bankruptcy Rule 8007.

19.    Bankruptcy Rule 8007 allows a bankruptcy court to stay a judgment in order to

maintain the status quo pending appeal.  Fed. R. Bankr. P. 8007(a)(1)(A).

App. 0316
000401

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02180-N    Document 3-10    Filed 09/08/21    Page 144 of 208    PageID 3472
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 8 of 20

20.    The decision of whether to grant a stay pending appeal under Bankruptcy Rule 8007 is a matter within the court's discretion. *In re Dye*, Case No. 06-71024, 2007 Bankr. LEXIS 2972, at *3 (Bankr. N.D. Ga. July 24, 2007) (discussing former Bankruptcy Rule 8005). "That discretion is by design a flexible tool which permits the bankruptcy court to tailor relief to the circumstances of the particular case." *Id.* (citing *Gleasman v. Jones, Day, Reavis & Pogue*, 111 B.R. 595 (Bankr. W.D. Tex. 1990)).

21.    In determining whether to grant a discretionary stay pending appeal under Bankruptcy Rule 8007, courts consider the following criteria:

(1) the likelihood that the movant will prevail on the merits of the appeal;

(2) whether the movant will suffer irreparable injury if the stay is denied;

(3) whether other parties would suffer substantial harmed if the stay is granted; and

(4) whether the public interest will be served by granting the stay.

*In re First S. Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987); *In re Tex. Equip. Co.*, 283 B.R. 222, 226-27 (Bankr. N.D. Tex. 2002). In the Fifth Circuit, each of the foregoing criteria must be satisfied by the party requesting the stay. *In re Tex. Equip. Co.*, 283 B.R. at 227; *see also In re Dernick*, Case No. 18-32417, 2019 WL 236999, at *2 (Bankr. S.D. Tex. Jan. 16, 2019) (movants must prove entitlement to relief by a preponderance of the evidence). However, the first two elements are the most critical. *Saldana v. Saldana*, 2015 WL 502145, at *2 (N.D. Tex. Aug. 25, 2015).

22.    The nature of an order confirming a plan of reorganization makes a stay pending appeal uniquely important. Without a stay of such an order, "it is extremely unlikely that Appellants will ever be able to have meaningful appellate review of the rulings of the Bankruptcy Court, a non-Article III court, and in any event, a lower court. The ability to review decisions of

000402
App. 0347

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-10    Filed 06/06/22    Page 145 of 208    PageID 373
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 9 of 20

the lower courts is the guarantee of accountability in our judicial system. . . . Thus, the ability to appeal a lower court ruling is a substantial and important right." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 342 (S.D.N.Y. 2007).

23.     As discussed herein, a stay of the Confirmation Order is justified.

**B.     There is a Likelihood of Success on the Merits**

24.     With respect to the first factor, the U.S. Court of Appeals for the Fifth Circuit has recognized that a movant must either present a prima facie case, but need not show that it is certain to win, or, if a serious legal question is involved, must present a substantial case on the merits and show that the balance of equities weighs heavily in favor of granting the stay. *In re First S. Sav.*, 820 F.2d at 704; *In re Dernick*, 2019 WL 236999, at *2; *In re Tex. Equip. Co.*, 283 B.R. at 227. The standards provided by substantive law guide the court in determining whether a movant has shown a likelihood of success on the merits. *In re Dernick*, 2019 WL 236999, at *2.

25.     Where an appeal involves questions of law, "the movant more easily satisfies the first element." *In re Tex. Equip. Co.*, 283 B.R. at 227. With respect to confirmation of a chapter 11 plan, the bankruptcy court's conclusions of law are reviewed *de novo*. *See In re Tex. Grand Prairie Hotel Realty LLC*, 710 F.3d 324, 326 n.1 (5th Cir. 2013). The Movants' appeal relates to the Exculpation Provision and the Injunction, which are legal issues that will be subject to *de novo* review.

26.     The Movants have shown a likelihood of success on the merits. The Exculpation Provision and Injunction provided for in the Plan contravene established law. The Fifth Circuit has held that exculpation provisions designed to absolve parties other than the debtor and the creditors' committee of any negligent conduct that occurred during the course of the bankruptcy are unenforceable. *In re Pac. Lumber Co.*, 584 F.3d 229, 253 (5th Cir. 2009). To the contrary,

000403
App. 0343

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-10    Filed 10/05/22    Page 146 of 208    PageID 373
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 10 of 20

Fifth Circuit authorities broadly "foreclose non-consensual non-debtor releases and permanent injunctions." *Id.* at 252 (citing authorities); *see also Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*, Civil Action No. 3:17-CV-1958-G, 2018 WL 5113124, at \*22-23 (N.D. Tex. Oct. 19, 2018). Whereas exculpation of the debtor is justified by section 524 of the Bankruptcy Code, and exculpation of creditors' committees has been deemed justified by section 1103 of the Bankruptcy Code, there is no authority justifying an extension of exculpation protections to other parties, even if the parties sought to be exculpated participated significantly in formulating the confirmed plan. *In re Pac. Lumber*, 584 F.3d at 253 (noting that the creditors' committee and its members were "the only disinterested volunteers among the parties sought to be released"); *see also In re Pilgrim's Pride Corp.*, Case No. 08-45664, 2010 WL 200000, at \*5 (Bankr. N.D. Tex. Jan. 14, 2010) ("Because *Pacific Lumber* is binding precedent, the court may not, over objection, approve through confirmation of the Plan third-party protections, other than those provided to the Committees, members of the Committees, and the Committees' Professionals.").

27.    However, the Plan extends the Exculpation Provision to not only the Debtor, the creditors' committee, and their professionals, but also, impermissibly, to the Debtor's majority-owned subsidiaries, the Managed Funds, Employees, Strand, the Independent Directors, the CEO/CRO, and other Related Persons, in contravention of established precedent.  Such parties are not "disinterested volunteers" akin to the creditors' committee, and even if they were, Fifth Circuit precedent does not support their exculpation from liability.

28.    Furthermore, there is no clear end date with respect to the Exculpation Provision. The Exculpation Provision has the practical effect of allowing the Exculpated Parties to escape liability for post-confirmation conduct that goes beyond activity relating to the bankruptcy case, formulation of the Plan, or the administration of the estate, and allows the Exculpated Parties to

000404
App. 0318

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-10    Filed 07/06/22    Page 147 of 208    PageID 375
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 11 of 20

escape liability that may arise in ordinary course, post-petition relationships of the parties, such as liability for an ordinary breach of contract.

29.    Indeed, the district court, in *In re Thru, Inc.*, struck down a virtually identical exculpation clause as the one in the Plan.  2018 WL 5113124, at *22-23.  The exculpation clause in that case provided as follows:

> Neither the Debtor nor any of its present officers, directors, employees, agents, advisors, or affiliates, nor any of its Professionals (collectively, the "Exculpated Persons"), shall have or incur any liability to any Entity for any act taken or omission made in good faith in connection with or related to formulating, negotiating, implementing, confirming or consummating the Plan, the Disclosure Statement or any Plan Document.  The Exculpated Persons shall have no liability to the Debtor, any Creditor, Interest holder, any other party in interest in the Chapter 11 Case or any other Entity for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan, in good faith, including failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

*Id.* at *22.

30.    Because the district court has already concluded that confirmation of a plan containing a virtually identical exculpation provision constituted clear error, the Movants have demonstrated a likelihood of success on the merits of their appeal.  Here, the Exculpation Provision is even broader than the one at issue in *In re Thru*, as it protects non-debtor entities and their directors, is not limited to bankruptcy administration matters, and is not limited in time to the pre-Effective Date period.

31.    Moreover, the Court's stated reasons for allowing the Exculpation Provision, as expressed in the Confirmation Order, on their face do not apply to many of the Exculpated Parties. The Court found that dicta in *Pacific Lumber* that "costs the released parties might incur defending against suits alleging such negligence are unlikely to swamp either these parties or the

000405
App. 0328

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-10 Filed 10/06/21 Page 148 of 208    PageID 476
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 12 of 20

consummated reorganization" hinted that the equities and/or economics of a case might justify a non-debtor exculpation provision.  While Movants concede it is possible that litigation against some of the Exculpated Parties, such as the Debtor, the Independent Directors, the CEO/CRO, and even the Employees, could hamper reorganization efforts, there is no foreseeable or expressed concern that litigation against other Exculpated Parties, such as the Debtor's owned subsidiaries and Managed Funds, or the Related Persons, would have any impact on reorganization efforts. The Court also found that the Independent Directors, and by extension the CEO/CRO, fell within a policy-based exclusion as being akin to a creditors' committee or its members, but the Independent Directors and the CEO/CRO are only one subset of the Exculpated Parties.  The Court made no finding that exculpation of any of the other Exculpated Parties could be justified under this rationale.  Finally, again only with respect to the Independent Directors, the Court found that they were already exculpated by virtue of its January 9, 2020 order at Docket No. 339. Accordingly, even if there is a basis in law for extending exculpation protections to certain of the Exculpated Parties, namely the Independent Directors and the CEO/CRO, there is no stated or implied basis for allowing the Exculpation Provision with respect to any of the other Exculpated Parties.[3]

32.    Furthermore, the sweeping Injunction preventing parties from pursuing causes of action against the non-debtor Protected Parties effectively discharges non-debtors and contravenes

---

[3] It is also worth noting that the breadth of the Exculpation Provision *does* serve to discharge non-debtors in contravention of section 524 of the Bankruptcy Code.  Under section 1141(d) of the Bankruptcy Code, confirmation of a plan discharges the debtor from any debt "that arose before the date of such confirmation."  11 U.S.C. § 1141(d)(1).  Section 524 simply provides the effect of a discharge granted under another chapter of the Bankruptcy Code.  Thus, to the extent that the Exculpation Provision exculpates non-debtor parties from claims arising prior to the date of confirmation, it has the effect of granting a discharge to such parties.  With this understanding in mind, the Fifth Circuit's bar on exculpation provisions with respect to non-debtor third parties that are not co-liable with the debtor avoids conflict between sections 524(e) and 1141(d)(1) of the Bankruptcy Code.  Movants submit that the decision of the U.S. Court of Appeals for the Ninth Circuit, cited favorably by the Court in its oral ruling, misses this point.

000406
App. 0406

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-10    Filed 10/05/21    Page 149 of 208    PageID 476
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 13 of 20

established Fifth Circuit precedent.  The Injunction is significantly broader than injunctions that have been struck down by courts in the Fifth Circuit.  In the recent case of *In re Thru, Inc.*, the district court struck down an injunction that purported to enjoin causes of action held against the debtor or the estate and that arose prior to the effective date of the plan from being brought against certain non-debtor protected parties.  2018 WL 5113124, at *21-22.  The district court found that it was clearly erroneous for the bankruptcy court to approve the injunction, which the bankruptcy court approved under section 105 of the Bankruptcy Code, because it effectively discharged non-debtors.  *Id.*  The Injunction in the Plan is broader than the injunction at issue in *In re Thru* in several important respects, as the Plan Injunction is not limited to claims that arose prior to the Effective Date, and is not limited to claims that the Enjoined Parties hold against the Debtor.  Rather, the Injunction appears to have no end date, so long as a claim or cause of action arises out of some future administration or implementation of the Plan.  Moreover, and significantly, the Injunction precludes Enjoined Parties from bringing claims held *against the Protected Parties* -- not just claims held against the Debtor or the estate.  *See also In re Pilgrim's Pride*, 2010 WL 200000, at *5 n.14 (*Pacific Lumber* prohibits exculpatory language that would bar outright actions against the debtor's management and professionals for their actions taken during a chapter 11 case).

33.    The propriety of the Injunction is not saved by the ability of an Enjoined Party to bring such claim if the Court so allows.  In fact, the channeling nature of the Injunction is impermissible as well.  As drafted, the Injunction is broad enough to cover claims and causes of action that arise out of post-confirmation, ordinary course transactions between the Reorganized Debtor and/or non-debtor parties and other parties in interest and which do not have any actual relationship to the Plan or its implementation.  The Court lacks subject matter jurisdiction over the

13

Case 22-03052-sgj   Doc 10-10   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 10   Exhibit 10   Filed 06/06/22   Page 150 of 208   PageID 478
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21   Entered 03/03/21 14:43:05   Page 14 of 20

breadth of actions covered by the Injunction.  *See In re CJ Holding Co.*, 597 B.R. 597, 604 (S.D.

Tex. 2019) ("After confirmation, 'the debtor's estate, and thus bankruptcy jurisdiction, ceases to

exist, other than for matters pertaining to the implementation or execution of the plan.'") (quoting

*In re Galaz*, 841 F.3d 316, 322 (5th Cir. 2016)); *see also In re Pilgrim's Pride*, 2010 WL 200000,

at *5, n.14 (bankruptcy court could retain *limited* jurisdiction to channel claims against the debtors'

management and professionals stemming from their conduct during the chapter 11 cases, but

*Pacific Lumber* prohibits exculpatory language that would bar such claims outright).  Therefore,

the channeling Injunction is impermissible because the Court appears to lack jurisdiction to even

consider whether an enjoined action is colorable.  The channeling Injunction goes far beyond what

the Court has jurisdiction to channel to itself.  Parties cannot create indefinite subject matter

jurisdiction where none otherwise exists.

34.     Furthermore, the Court's justification of the gatekeeping Injunction is based

primarily on the litigiousness of Dondero and his controlled entities.  However, this justification

does not extend to the Funds, which are controlled by independent boards, as discussed above, and

are wholly independent of Dondero.  This reality reflects why the gatekeeping Injunction is overly

broad, as it serves to prevent innocent third parties from exercising their legal rights.

35.     Accordingly, to the extent that the Confirmation Order authorizes the Exculpation

Provision and the Injunction, it does so based upon an erroneous interpretation of the law and is

an abuse of discretion.  *In re Tex. Equip. Co.*, 283 B.R. at 227.

36.     Second, this element is also satisfied because the Confirmation Order, to the extent

it approves the Exculpation Provision and the Injunction, presents a serious legal question.  At a

minimum, Movants have shown a substantial case on the merits and the balance of equities weigh

heavily in favor of a stay.  *See In re First S. Sav.*, 820 F.2d at 704; *In re Dernick*, 2019 WL 236999,

14

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-10    Filed 06/05/21    Page 151 of 208    PageID 479
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 15 of 20

at *3; *In re Tex. Equip. Co.*, 283 B.R. at 227.  "A serious legal question exists when legal issues have far-reaching effects, involve significant public concerns, or have a broad impact on federal/state relations."  *In re Dernick*, 2019 WL 236999, at *3; *see In re Westwood Plaza Apartments, Ltd.*, 150 B.R. 163, 168 (Bankr. E.D. Tex. 1993) (serious legal question existed with respect to the appropriate standard for determining the market rate of interest in a cramdown plan, even though no likelihood of success on the merits).  Here, the Exculpation Provision and the Injunction violate established Fifth Circuit precedent, and the Confirmation Order's approval of such provisions is clearly erroneous.  Upholding judicial precedent is a significant public interest, and the allowance of these provisions will cause lasting effects on parties in interest.  Indeed, the Injunction is so broad that it will prevent parties, such as the Movants, from enforcing their rights with respect to post-confirmation transactions unrelated to the bankruptcy case unless they first seek authority to do so from the Court.  Not only does this prevent a significant hurdle to the enforcement of rights, but it presents a serious due process concern.

37.    Accordingly, it is likely that the Confirmation Order will be reversed to the extent it allows the Exculpation Provision and the Injunction.  At the very least, the validity of the Exculpation Provision and the Injunction presents serious legal issues, Movants have presented a substantial case on the merits, and as discussed herein, the balance of equities weigh in favor of issuing a stay.

### C.    Movants will Suffer Irreparable Injury without a Stay

38.    The second factor concerns whether the moving party will suffer irreparable injury if the stay is denied because it will effectively be denied appellate review due to mootness or similar considerations.  *In re Tex. Equip. Co.*, 283 B.R. at 228.  This factor also warrants a stay of the Confirmation Order.

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-10    Exhibit 10-11    Page 107/05/21    Page 152 of 208    PageID 480
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 16 of 20

39.    Consummation of a plan may render any challenges to confirmation thereof moot. *In re Westwood Plaza Apartments*, 150 B.R. at 169 (factor tilted in favor of granting stay); *In re Thru, Inc.*, 2018 WL 5113124, at *12 (equitable mootness more likely if no stay has been obtained and plan has been substantially consummated); *see also In re Best Products Co.*, 177 B.R. 791 (S.D.N.Y. 1995) (dismissing appeal of confirmation order as moot where appellant failed to seek stay of confirmation order and plan had been consummated).  Indeed, the Fifth Circuit in *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009), recognized the potential issues with denying a stay of a confirmation order pending appeal:

> Although the exigencies of the case appeared to demand prompt action, simply denying a stay seems to have been, and often will be, too simplistic a response. A plan may be designed to take effect, as it was here, after a lapse of sufficient time to initiate appellate review. A supersedeas bond may be tailored to the scope of the appeal. An appeal may be expedited. As with all facets of bankruptcy practice, myriad possibilities exist. Thus, substantial legal issues can and ought to be preserved for review.

584 F.3d at 243.

40.    The unprecedented breadth of the Exculpation Provision and the Injunction has the potential to cause immediate and irreparable harm to the Movants and other parties in interest. These provisions have the cumulative effect of preventing Movants, among other parties, from exercising their legal rights to pursue any claims or causes of action, however distantly related to the bankruptcy case.  Indeed, the provisions are so broad that they would prevent Movants from exercising their contractual rights and remedies that arise post-confirmation in the ordinary course of business under the CLO management agreements, and insulate the Debtor as well as non-debtor parties from any corresponding liability, despite the same being completely distinct from the bankruptcy case, and notwithstanding the basis or nature of the claim.  In effect, even if the Debtor were to engage in conduct post-confirmation that presented a basis for the Movants to remove the

000410
App. 0325

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-10    Filed 10/06/21    Page 153 of 208    PageID 480
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 17 of 20

Debtor as manager under the CLO management agreements, they would be prevented from doing so.  The Exculpation Provision and the Injunction impermissibly shields the Debtor and non-debtor parties from liability for post-petition and post-confirmation breaches of contract.

41.    In practical effect, Movants will, at the very least, have to seek leave of the Court in order to seek any relief for any present or future actionable wrongs, whether contractual or under applicable non-bankruptcy law.  However, the Court will not have jurisdiction with respect to disputes that arise post-confirmation.  It is thus foreseeable that the Court, without jurisdiction, could decide that a proposed claim is not colorable, preventing Movants from pursuing their contractual rights and remedies without review by a court of proper jurisdiction.  At a minimum, the time it would take Movants to comply with the gatekeeping Injunction, during which time the Movants would be prevented from exercising their legitimate contractual rights, imposes a substantial burden.

42.    Clearly, if the stay is denied, Movants could suffer harm for which they have no legal redress and which becomes moot - equitably or otherwise - before a decision is rendered on appeal.

43.    The impermissibility of the Exculpation Provision and Injunction is apparent, and absent a stay, will immediately deprive Movants of their rights and ability to seek legal redress for wrongs that may be suffered.  The possibility of irreparable injury can only be remedied by a stay of the Confirmation Order.

**D.     No Substantial Harm to the Debtor or Other Parties**

44.    A stay pending appeal is also justified under the third prong because neither the Debtor, nor any of the Debtor's creditors, will be substantially harmed by a stay of the Confirmation Order pending appeal.  Moreover, the Court can fashion the stay to prevent harm to

App. 0326
0004 11

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-10    Filed 10/06/22    Page 154 of 208    PageID 482
Case 19-34054-sgj11  Doc 1967  Filed 03/03/21    Entered 03/03/21 14:43:05    Page 18 of 20

the Debtor and other parties. *See In re Westwood Plaza Apartments*, 150 B.R. at 169 (conditioning stay of plan on, among other things, debtor's ability to pay administrative, tax and secured claims as provided for under the plan); *In re Thru*, 2018 WL 5113124, at \*20 (recognizing availability of partial relief on appeal of plan with respect to exculpation provisions).

45.     Courts have found substantial harm to other parties if the stay would cause a significant delay in the administration of the estate or a delay in the distribution to creditors under the plan. *In re Dernick*, 2019 WL 236999, at \*4. However, a stay of the Confirmation Order does not prevent the Debtor from continuing to operate as it has been doing during the bankruptcy case. Indeed, the Plan largely contemplates a continuation of the pre-confirmation business. The Debtor can thus continue administering the estate, as well as the CLOs and other managed funds. There are no asset sales or compromises under the Plan that depend upon it becoming effective, nor is there any contingent exit financing. Accordingly, staying the Confirmation Order will not hamper the reorganization.

46.     To the contrary, if the Confirmation Order is not stayed, parties in interest in the case would be significantly injured by the serious deprivation of their rights.

47.     A stay pending appeal is critical to preserve the status quo, which, in this instance involves preservation of the Movants' legal rights and remedies, while important legal issues are determined by the appellate court. *In re Tolco Props., Inc.*, 6 B.R. 490, 491 (Bankr. E.D. Va. 1980) ("The Court is of the opinion that the purpose of a stay pending appeal is to maintain the status quo and to prevent harm to the moving party between the time the original order was entered and the decision to appeal.").

**E.     The Public Interest is Served by a Stay**

48.     Because the Exculpation Provision and the Injunction impermissibly infringe upon

App. 0327
000412

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-10    Filed 08/05/22    Page 155 of 208    PageID 482
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 19 of 20

the contractual, legal and due process rights of parties in interest in the bankruptcy case, a stay pending appeal of the Confirmation Order will serve the public interest.  A stay will ensure that the Debtor as well as non-debtor parties are held accountable for their post-petition and post-confirmation conduct, while preserving the rights and remedies of parties in interest under applicable non-bankruptcy law.  Likewise, a stay will serve the public interest of respecting and upholding judicial precedent.

49.    Moreover, a stay will protect the interests of the Movants and other innocent third party investors that have collectively invested more than $1 billion in the CLOs that the Debtor manages.  The Exculpation Provision and Injunction, if not stayed, may effectively and permanently prevent these parties from exercising legitimate contractual rights.

50.    The public interest will further be served by preserving the status quo among the parties while the propriety of the Exculpation and Injunction provisions is resolved by the appellate court.  "The case law signals a preference in favor of maintaining the status quo." *Skinner v. SBA (In re Skinner)*, 202 B.R. 867, 869 (W.D. Va. 1996) (*citing Feller v. Brock,* 802 F.2d 722, 727 (4th Cir. 1986)).

## IV.    <u>CONCLUSION</u>

51.    Based on the foregoing, a stay of the Confirmation Order is justified under each of the applicable factors for a stay pending appeal.  Accordingly, the Court should grant a stay of the Confirmation Order with respect to such provisions pending appeal.

WHEREFORE, Movants request that the Court enter an Order:

1.    Staying the Confirmation Order pending appeal; and

2.    Granting such other relief as is just and proper.

000413
App. 0328

Case 22-03052-sgj    Doc 10-10    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-10    Filed 06/06/22    Page 156 of 208    PageID 384
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 20 of 20

Dated:  March 3, 2021

**K&L Gates LLP**

*/s/ A. Lee Hogewood, III*
A. Lee Hogewood, III (*pro hac vice*)
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Telephone: (919) 743-7306
E-mail: lee.hogewood@klgates.com

Artoush Varshosaz (TX Bar No. 24066234)
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5659
E-mail: artoush.varshosaz@klgates.com

*Counsel for Highland Income Fund,*
*NexPoint Strategic Opportunities Fund,*
*Highland Global Allocation Fund, and*
*NexPoint Capital, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2021, I caused the foregoing document to be served via first class United States mail, postage prepaid and/or electronic email through the Court's CM/ECF system to the parties that consented to such service.

Dated:  March 3, 2021

*/s/ A. Lee Hogewood, III*
A. Lee Hogewood, III

000414
App. 0320

# EXHIBIT 11

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01790-N   Document 18-11   Filed 06/02/21   Page 158 of 208   PageID 3486
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 1 of 14

Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust and Get Good Trust*

UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | * | Chapter 11 |
| | * | |
| | * | Case No. 19-34054sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | * | |
| | * | |
| Debtor | * | |

**JOINDER TO MOTIONS FOR STAY PENDING APPEAL
OF THE COURT'S ORDER CONFIRMING THE
DEBTOR'S FIFTH AMENDED PLAN**

Now into Court, through undersigned counsel, come The Dugaboy Investment Trust and

Get Good Trust ("Movers") who hereby submit this *Joinder to Motions for Stay Pending Appeal of*

*the Court's Order Confirming the Debtor's Fifth Amended Plan* ("Joinder"), and respectfully represent as

follows:

**Notice of Joinder**

1.    The Dugaboy Investment Trust and Get Good Trust hereby join and adopt all

assertions as stated in the following:

a.    *Emergency Motion of the Advisors for Stay Pending Appeal of the*

*Confirmation Order, and Brief in Support thereof* filed on February 28, 2021 (Dkt.

{00375210-8}

1



1934054210304000000000000005

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01228-N    Document 36-11    Filed 08/06/21    Page 159 of 208    PageID 3467
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 2 of 14

#1955) filed by Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.; and

b.    *Motion for Stay Pending Appeal of the Court's Order Confirming the Debtor's Fifth Amended Plan* filed on March 3, 2021 (Dkt. #1967) filed by Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund, and NexPoint Capital, Inc.

(collectively, "Motions for Stay").

2.    Further, to the extent any other parties seek the relief requested in the Motions for Stay subsequent to filing this Joinder, The Dugaboy Investment Trust and Get Good Trust shall support the relief requested in the subsequent filing.

3.    In addition to the reasons set forth in the Motions for Stay, Movers believe that a stay is warranted based upon the following:

a.  Success on the Merits -

i.  The Court, in confirming the Debtor's Plan, distinguished 5th Circuit case law (*In Re Pacific Lumber*, 584 F.3d 229 (5th Cir 2009) regarding the release and exculpation provisions set forth in the Plan.  Movers believe the 5th Circuit's decision in *Securities and Exchange Commission v. Stanford International Bank, Ltd.*, No. 17-10663 (5th Cir. 2019) (copy attached) is the latest expression by the 5th Circuit that such release and exculpation provisions are not permissible as a matter of law.  Judge Jones in *Stanford* stated:

"The prohibition on enjoining unrelated, third party claims without the third parties' consent does not depend on the Bankruptcy Code, but it is a maxim of law not abrogated by the district court's equitable power to fashion ancillary relief measures."

{00375210-8}

App. 0392

000417

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N    Document 18-11    Filed 06/02/21    Page 160 of 208    PageID 3488
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 3 of 14

The *Stanford* decision rendered some ten (10) years after *In re Pacific Lumber* reaffirms the 5th Circuit's bright line prohibition concerning release and exculpation provisions and that, notwithstanding the equitable powers of District and Bankruptcy Courts, such provisions are not permissible as a matter of law.

    b.  Public Policy -

The other issue raised by Movers is the issue relative to the unfair discrimination contained in the Plan.  As a policy matter, absent a clear directive by the 5th Circuit that the language in 11 U.S.C. § 1129(b) means something other than prohibiting unfair discrimination, this Court should suspend the effect of the Plan that discriminates against the Class 8 creditors.

**WHEREFORE**, based upon the foregoing Joinder to Motions for Stay Pending Appeal of the Court's Order Confirming the Debtor's Fifth Amended Plan, The Dugaboy Investment Trust and Get Good Trust assert a stay of the Confirmation Order is justified under each of the applicable factors for a stay pending appeal.  Therefore, The Dugaboy Investment Trust and Get Good Trust pray that this Court grant a stay of the Confirmation Order with respect to such provisions pending appeal and for all other relief that is just and equitable.

March 4, 2021

                              */s/Douglas S. Draper.*
                              Douglas S. Draper, La. Bar No. 5073
                              ddraper@hellerdraper.com
                              Leslie A. Collins, La. Bar No. 14891
                              lcollins@hellerdraper.com
                              Greta M. Brouphy, La. Bar No. 26216
                              gbrouphy@hellerdraper.com
                              Heller, Draper & Horn, L.L.C.
                              650 Poydras Street, Suite 2500
                              New Orleans, LA  70130
                              Telephone: (504) 299-3300

{00375210-8}

000418
App. 0328

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02780-S    Document 18-11    Filed 06/02/22    Page 161 of 208    PageID 3489
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 4 of 14

Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust*
 *and Get Good Trust*

## CERTIFICATE OF SERVICE

I, Douglas S. Draper, certify that on March 4, 2021, a copy of the above and foregoing *Joinder to Motions for Stay Pending Appeal of the Court's Order Confirming the Debtor's Fifth Amended Plan* has been served electronically to all parties entitled to receive electronic notice in this matter through the Court's ECF system as follows:

- David G. Adams    david.g.adams@usdoj.gov, southwestern.taxcivil@usdoj.gov;dolores.c.lopez@usdoj.gov
- Amy K. Anderson    aanderson@joneswalker.com, lfields@joneswalker.com;amy-anderson-9331@ecf.pacerpro.com
- Zachery Z. Annable    zannable@haywardfirm.com
- Bryan C. Assink    bryan.assink@bondsellis.com
- Asif Attarwala    asif.attarwala@lw.com
- Joseph E. Bain    JBain@joneswalker.com, kvrana@joneswalker.com;joseph-bain-8368@ecf.pacerpro.com;msalinas@joneswalker.com
- Michael I. Baird    baird.michael@pbgc.gov, efile@pbgc.gov
- Sean M. Beach    bankfilings@ycst.com, sbeach@ycst.com
- Paul Richard Bessette    pbessette@KSLAW.com, ccisneros@kslaw.com;jworsham@kslaw.com;kbryan@kslaw.com;jcarvalho@kslaw.com;rmatsumura@kslaw.com
- John Y. Bonds    john@bondsellis.com
- Larry R. Boyd    lboyd@abernathy-law.com, ljameson@abernathy-law.com
- Jason S. Brookner    jbrookner@grayreed.com, lwebb@grayreed.com;acarson@grayreed.com;cpatterson@grayreed.com
- Greta M. Brouphy    gbrouphy@hellerdraper.com, dhepting@hellerdraper.com;vgamble@hellerdraper.com
- M. David Bryant    dbryant@dykema.com, csmith@dykema.com
- Candice Marie Carson    Candice.Carson@butlersnow.com
- Annmarie Antoniette Chiarello    achiarello@winstead.com
- Shawn M. Christianson    schristianson@buchalter.com, cmcintire@buchalter.com
- James Robertson Clarke    robbie.clarke@bondsellis.com
- Matthew A. Clemente    mclemente@sidley.com, matthew-clemente-8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russell@sidley.com;dtwomey@sidley.com
- Megan F. Clontz    mclontz@spencerfane.com, lvargas@spencerfane.com
- Andrew Clubok    andrew.clubok@lw.com
- Leslie A. Collins    lcollins@hellerdraper.com
- David Grant Crooks    dcrooks@foxrothschild.com, etaylor@foxrothschild.com,jsagui@foxrothschild.com,plabov@foxrothschild.com,jmanfrey@foxrothschild.com

{00375210-8}

4

App. 0324
0004119

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02210-N   Document 18-11 Filed 06/08/21 Page 162 of 208   PageID 3990
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 5 of 14

- Gregory V. Demo     gdemo@pszjlaw.com,
  jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com
  ;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjla
  w.com;lsc@pszjlaw.com
- Casey William Doherty     casey.doherty@paulhastings.com
- Douglas S. Draper     ddraper@hellerdraper.com,
  dhepting@hellerdraper.com;vgamble@hellerdraper.com
- Lauren Kessler Drawhorn     lauren.drawhorn@wickphillips.com,
  samantha.tandy@wickphillips.com
- Vickie L. Driver     Vickie.Driver@crowedunlevy.com,
  crissie.stephenson@crowedunlevy.com;seth.sloan@crowedunlevy.com;elisa.weaver@cr
  owedunlevy.com;ecf@crowedunlevy.com
- Jonathan T. Edwards     jonathan.edwards@alston.com
- Jason Alexander Enright     jenright@winstead.com
- Robert Joel Feinstein     rfeinstein@pszjlaw.com
- Matthew Gold     courts@argopartners.net
- Bojan Guzina     bguzina@sidley.com
- Thomas G. Haskins     thaskins@btlaw.com
- Melissa S. Hayward     MHayward@HaywardFirm.com, mholmes@HaywardFirm.com
- Michael Scott Held     mheld@jw.com, lcrumble@jw.com
- Gregory Getty Hesse     ghesse@HuntonAK.com,
  amckenzie@HuntonAK.com;tcanada@HuntonAK.com;creeves@HuntonAK.com
- Juliana Hoffman     jhoffman@sidley.com, txefilingnotice@sidley.com;julianna-
  hoffman-8287@ecf.pacerpro.com
- A. Lee Hogewood     lee.hogewood@klgates.com,
  haley.fields@klgates.com;matthew.houston@klgates.com;mary-
  beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.co
  m;Artoush.varshosaz@klgates.com
- Warren Horn     whorn@hellerdraper.com,
  dhepting@hellerdraper.com;vgamble@hellerdraper.com
- John J. Kane     jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com
- Jason Patrick Kathman     jkathman@spencerfane.com,
  gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com
- Edwin Paul Keiffer     pkeiffer@romclaw.com, bwallace@romclaw.com
- Jeffrey Kurtzman     kurtzman@kurtzmansteady.com
- Phillip L. Lamberson     plamberson@winstead.com
- Lisa L. Lambert     lisa.l.lambert@usdoj.gov
- Paul M. Lopez     bankruptcy@abernathy-law.com
- Faheem A. Mahmooth     mahmooth.faheem@pbgc.gov, efile@pbgc.gov
- Ryan E. Manns     ryan.manns@nortonrosefulbright.com
- Thomas M. Melsheimer     tmelsheimer@winston.com, tom-melsheimer-
  7823@ecf.pacerpro.com
- Paige Holden Montgomery     pmontgomery@sidley.com,
  txefilingnotice@sidley.com;paige-montgomery-
  7756@ecf.pacerpro.com;crognes@sidley.com;ebromagen@sidley.com;efilingnotice@sid
  ley.com

{00375210-8}

000420
App. 0525

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02778-N    Document 8-11    Filed 07/06/21    Page 163 of 208    PageID 3491
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 6 of 14

- J. Seth Moore    smoore@ctstlaw.com, jsteele@ctstlaw.com
- John A. Morris    jmorris@pszjlaw.com
- Edmon L. Morton    emorton@ycst.com
- Holland N. O'Neil    honeil@foley.com,
  jcharrison@foley.com;acordero@foley.com;holly-holland-oneil-3540@ecf.pacerpro.com
- Rakhee V. Patel    rpatel@winstead.com,
  dgalindo@winstead.com;achiarello@winstead.com
- Charles Martin Persons    cpersons@sidley.com
- Mark A. Platt    mplatt@fbtlaw.com, aortiz@fbtlaw.com
- Jeffrey Nathan Pomerantz    jpomerantz@pszjlaw.com
- Kimberly A. Posin    kim.posin@lw.com, colleen.rico@lw.com
- Jeff P. Prostok    jprostok@forsheyprostok.com,
  lbreedlove@forsheyprostok.com;calendar@forsheyprostok.com;calendar_0573@ecf.cour
  tdrive.com;jprostok@ecf.courtdrive.com
- Linda D. Reece    lreece@pbfcm.com
- Penny Packard Reid    preid@sidley.com, txefilingnotice@sidley.com;penny-reid-
  4098@ecf.pacerpro.com;ncade@sidley.com
- Suzanne K. Rosen    srosen@forsheyprostok.com,
  lbreedlove@forsheyprostok.com;calendar@forsheyprostok.com;srosen@ecf.courtdrive.c
  om;calendar_0573@ecf.courtdrive.com
- Davor Rukavina    drukavina@munsch.com
- Amanda Melanie Rush    asrush@jonesday.com
- Alyssa Russell    alyssa.russell@sidley.com
- Douglas J. Schneller    douglas.schneller@rimonlaw.com
- Brian Patrick Shaw    shaw@roggedunngroup.com,
  cashion@roggedunngroup.com;jones@roggedunngroup.com
- Michelle E. Shriro    mshriro@singerlevick.com,
  scotton@singerlevick.com;tguillory@singerlevick.com
- Nicole Skolnekovich    nskolnekovich@hunton.com,
  plozano@huntonak.com;astowe@huntonak.com;creeves@huntonak.com
- Jared M. Slade    jared.slade@alston.com
- Frances Anne Smith    frances.smith@judithwross.com,
  michael.coulombe@judithwross.com
- Eric A. Soderlund    eric.soderlund@judithwross.com
- Martin A. Sosland    martin.sosland@butlersnow.com,
  ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com
- Laurie A. Spindler    Laurie.Spindler@lgbs.com, Dora.Casiano-
  Perez@lgbs.com;dallas.bankruptcy@lgbs.com
- Jonathan D. Sundheimer    jsundhimer@btlaw.com
- Kesha Tanabe    kesha@tanabelaw.com
- Chad D. Timmons    bankruptcy@abernathy-law.com
- Dennis M. Twomey    dtwomey@sidley.com
- Basil A. Umari    BUmari@dykema.com, pelliott@dykema.com
- United States Trustee    ustpregion06.da.ecf@usdoj.gov
- Artoush Varshosaz    artoush.varshosaz@klgates.com, Julie.garrett@klgates.com
- Julian Preston Vasek    jvasek@munsch.com

App. 0336
0000421

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02300-S    Document 18-11    Filed 08/09/21    Page 164 of 208    PageID 3492
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 7 of 14

- Donna K. Webb    donna.webb@usdoj.gov,
  brian.stoltz@usdoj.gov;CaseView.ECF@usdoj.gov;brooke.lewis@usdoj.gov
- Jaclyn C. Weissgerber    bankfilings@ycst.com, jweissgerber@ycst.com
- Elizabeth Weller    dallas.bankruptcy@publicans.com, dora.casiano-
  perez@lgbs.com;Melissa.palo@lgbs.com
- Daniel P. Winikka    danw@lfdslaw.com,
  craigs@lfdslaw.com,dawnw@lfdslaw.com,ivys@lfdslaw.com
- Hayley R. Winograd    hwinograd@pszjlaw.com
- Megan Young-John    myoung-john@porterhedges.com

I also caused same to be served on March 5, 2021, by Docusource via U.S. First Class Mail, postage prepaid upon the following parties:

Paul N. Adkins
11 Mount Emily Road #07-27
Singapore, 228493

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

James T. Bentley
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

Jeffrey E. Bjork
LATHAM & WATKINS LLP
355 South Grand Avenue, Ste. 100
Los Angeles, CA 90071

Jessica Boelter
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019

Matthew G. Bouslog
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612

William P. Bowden
Ashby & Geddes, P.A.
500 Delaware Avenue, 8th Floor
P.O. Box 1150

{00375210-8}

7

000422

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02170-S    Document 18-11    Filed 06/02/21    Page 165 of 208    PageID 3923
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 8 of 14

Wilmington, DE 19899

Candace C. Carlyon
CARLYON CICA CHTD.
265 e. Warm Springs Road., Ste 107
Las Vegas, NV 89119

Joseph L. Christensen
McCollom D'Emilio Smith Uebler LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808

Louis J. Cisz
Nixon Peabody LLP
One Embarcadero Center, 32nd Fl
San Francisco, CA 94111

Kevin M. Coen
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street, Suite 1600
1000 North King Street
Wilmington, DE 19801

Debra A. Dandeneau
Baker & McKenzie LLP
425 5th Ave.
New York, NY 10018

Deloitte Tax LLP
1111 Bagby Street, Ste. 4500
Houston, TX 77002

Mark. L. Desgrosseilliers
Chipman, Brown, Cicero & Cole, LLP
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, DE 19801

Development Specialists, Inc.
333 South Grand Ave., Ste. 4070
Los Angeles, CA 90071

Fair Harbor Capital, LLC
Ansonia Finance Station
PO Box 237037
New York, NY 10023

{00375210-8}

000423

App. 0538

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 3-11    Filed 10/06/26    Page 166 of 208    PageID 394
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 9 of 14

Bojan Guzina
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

Emily M. Hahn
Abernathy, Roeder, Boyd & Hullett, P.C.
1700 Redbud Blvd. Ste. 300
McKinney, TX 75069

Hain Capital Group, LLC
301 Route 17, 6th Floor
Rutherford, NJ 07070

Marc B. Hankin
Jenner & Block LLP
919 Third Avenue
New York, NY 10022-3098

Michelle Hartman
Baker & McKenzie LLP
1900 N. Pearl, Ste. 1500
Dallas, TX 75201

Hayward & Associates PLLC
10501 N. Central Expwy., Ste 106
Dallas, TX 75231

William A. Hazeltine
Sullivan Hazeltine Allinson LLC
901 North Market Street
Suite 1300
Wilmington, DE 19801

Kuan Huang
Latham & Watkins LLP
855 Third Avenue
New York, NY 10022

Ira D Kharasch
10100 Santa Monica Boulevard
13th Floor
Los Angeles, CA 90067

{00375210-8}

App. 0539

000424

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11    Filed 06/05/46    Page 167 of 208    PageID 395
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 10 of 14

Marshall R. King
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
Suite 1400
New York, NY 10066

Alan J. Kornfeld
Pachulski Stang Ziehl & Jones LLPL
10100 Santa Monica Blvd., 13 Fl
Los Angeles, CA 90067

Kurtzman Carson Consultants LLC
Attn: Drake Foster
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA 90245

 Kurtzman Carson Consultants, LLC
222 N. Pacific Coast Highway, Ste. 300
El Segundo, CA 90245

M. Natasha Labovitz
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Richard B. Levin
Jenner & Block LLP
919 Third Avenue
New York, NY 10022-3098

Maxim B Litvak
Pachulski Stang Ziehl & Jones LLP
150 California Street
15th Floor
San Francisco, CA 94111

John E. Lucian
Blank Rome LLP
1201 N. Market Street, Sutie 800
1000 North King Street
Wilmington, DE 19801

Lauren Macksoud
1221 Avenue of the Americas
New York, NY 10020-1089

{00375210-8}

10

000425

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11 Filed 07/05/22 Page 168 of 208    PageID 396
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 11 of 14

Mark M. Maloney
King & Spalding LLP
191 Peachtree St.
Suite 4900
Atlanta, GA 30303-1763

Mark M. Maloney
King & Spalding LLP
1180 Peachtree Steet, NE
Atlanta, GA 30309

Terri L. Mascherin
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456

Patrick C. Maxcy
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606-6361

R. Stephen McNeill
POTTER ANDERSON & CORROON LLP
1313 North Market Street, 6th Fl
Wilmington, DE 19801

Mercer (US) Inc.
155 N. Wacker Drive, Ste. 1500
Chicago, IL 60606

Michael J. Merchant
RICHARDS, LAYTON & FINGER, P.A.
one Rodney Square
920 North King Street
Wilmington, DE 19801

Curtis S. Miller
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street, Suite 1600
1000 North King Street
Wilmington, DE 19801

{00375210-8}

App. 0261
000426

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11 Filed 10/05/22 Page 169 of 208    PageID 397
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 12 of 14

Josef W. Mintz
Blank Rome LLP
1201 Market Street, Suite 800
1000 North King Street
Wilmington, DE 19801

Joseph T. Moldovan
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022

Alan A. Moskowitz
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10066

Michael R. Nestor
YOUNG CONAWAY STARGATT & TAYLOR, LL
Rodney Square
1000 North King Street
Wilmington, DE 19801

James E. O'Neill
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Fl.
Wilmington, DE 19801

Tracy M. O'Steen
CARLYON CICA CHTD.
265 E. Warm Springs Road., Ste 107
Las Vegas, NV 89119

Jeffrey N. Pomerantz
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

Kathleen Preston
Winston & Strawn LLP
800 Capitol Street, Ste. 2400
Houston, TX 77002

Michael A. Rosenthal - DO NOT USE
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10066

{00375210-8}

000427
App. 0342

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11  Filed 04/05/22    Page 170 of 208    PageID 398
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 13 of 14

Jeremy W. Ryan
POTTER ANDERSON & CORROON LLP
1313 North Market Street, 6th Fl
Wilmington, DE 19801

James P. Seery
795 Columbus Ave., 12A
New York, NY 10025

Sally T. Siconolfi
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022

Sarah E. Silveira
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

D. Ryan Slaugh
POTTER ANDERSON & CORROON LLP
1313 North Market Street, 6th Fl
Wilmington, DE 19801

Tracy K. Stratford
Jones Day
North Point
901 Lakeside Ave.
Cleveland, OH 44114

Daniel E. Stroik
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Sarah A. Tomkowiak
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304

{00375210-8}

000428

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11    Filed 05/25/22    Page 171 of 208    PageID 398
Case 19-34054-sgj11 Doc 1971 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 14 of 14

Stephen G. Topetzes
K&L Gates LLP
1601 King St., N.W.
Washington, DC 20006

Thomas A. Uebler
McCollom D'Emilio Smith Uebler LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808

Michael L. Vild
CROSS & SIMON, LLC
1105 N. Market Street, Suite 901
1000 North King Street
Wilmington, DE 19801

Elissa A. Wagner
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003

Erica S. Weisgerber
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

James A. Wright
K&L Gates LLP
State Street Financial Center
One Lincoln St.
Boston, MA 02111

Sean M. Young Conway Stargatt & Taylor, LLP
Young Conway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801

                                        _/s/Douglas S. Draper._
                                        Douglas S. Draper, La. Bar No. 5073

{00375210-8}

000429

Case 22-03052-sgj   Doc 10-11   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 10-11   Filed 10/05/22   Page 172 of 208   PageID 300
Case: 17-10663   Document: 00514998485   Page: 1   Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21   Entered 03/04/21 17:04:18   Page 1 of 31

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————

No. 17-10663

————————

SECURITIES AND EXCHANGE COMMISSION

> Plaintiff

v.

STANFORD INTERNATIONAL BANK, LIMITED

> Defendant

v.

JOSEPH BECKER; TERENCE BEVEN; WANDA BEVIS;
THOMAS EDDIE BOWDEN; TROY L. LILLIE, JR., et al

> Movants - Appellants

DOUG MCDANIEL; SCOTT NOTOWICH;
EDDIE ROLLINS; CORDELL HAYMON; et al,

> Objecting Parties - Appellants

v.

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON;
ARCH SPECIALTY INSURANCE COMPANY;
LEXINGTON INSURANCE COMPANY,

> Interested Parties - Appellees

RALPH S. JANVEY,

> Appellee

***********************

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON;

United States Court of Appeals
Fifth Circuit

**FILED**

June 17, 2019

Lyle W. Cayce
Clerk

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-11    Filed 10/05/22    Page 173 of 208    PageID 800
Case: 17-10663    Document: 00514998485    Page: 2    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 2 of 31

No. 17-10663

ARCH SPECIALTY INSURANCE COMPANY,

Plaintiffs - Appellees

v.

RALPH S. JANVEY, In his Capacity as Court Appointed Receiver for
Stanford International Bank Limited, Stanford Group Company, Stanford
Capital Managment L.L.C., Stanford Financial Group, and Stanford
Financial Group Bldg,

Defendant - Appellee

v.

CORDELL HAYMON,

Intervenor - Appellant
**************************************
CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON;
ARCH SPECIALTY INSURANCE COMPANY;
LEXINGTON INSURANCE COMPANY,

Plaintiffs - Appellees
v.

CORDELL HAYMON,

Objecting Party - Appellant
v.

RALPH S. JANVEY,

Intervenor - Appellee
**************************************
CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON;
ARCH SPECIALTY INSURANCE COMPANY;
LEXINGTON INSURANCE COMPANY,

Plaintiffs - Appellees
v.

000431
App. 0346

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 3-11    Filed 10/05/22    Page 174 of 208    PageID 602
Case: 17-10663    Document: 00514998485    Page: 3    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 3 of 31

No. 17-10663

RALPH S. JANVEY,

        Intervenor Defendant - Appellee

v.

CORDELL HAYMON,

        Objecting Party - Appellant

*********************************************

CORDELL HAYMON,

        Third Party Plaintiff - Appellant

v.

CERTAIN UNDERWRITERS OF LLOYD'S OF LONDON, Claims asserted
by Claude F. Reynaud, Jr.

        Third Party Defendant - Appellee

v.

RALPH S. JANVEY,

        Appellee

———————————————

Appeals from the United States District Court
for the Northern District of Texas

———————————————

Before JONES, CLEMENT, and SOUTHWICK, Circuit Judges.

EDITH H. JONES, Circuit Judge:

      These appeals challenge the district court's approval of a global
settlement between Ralph Janvey, the Receiver for Stanford International
Bank and related entities, and various insurance company Underwriters, who
issued policies providing coverage for fidelity breaches, professional indemnity,
directors and officers protection, and excess losses. The settlement yielded $65

000432
App. 0347

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-11    Filed 08/05/22    Page 175 of 208    PageID 803
Case: 17-10663    Document: 00514998485    Page: 4    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 4 of 31

No. 17-10663

million for the Receiver's claims against the insurance policy proceeds, but it wipes out, through "bar orders," claims by coinsureds to the policy proceeds and their extracontractual claims against the Underwriters even if such claims would not reduce or affect the policies' coverage limits.  Among the parties whose claims were barred are Appellants comprising (a) two groups of former Stanford managers and employees; (b) Cordell Haymon, a Stanford entity director who settled with the Receiver for $2 million; and (c) a group of Louisiana retiree-investors.

A constellation of issues surrounding the global settlement is encapsulated in the question whether the district court abused its discretion in approving the settlement and bar orders.  Based on the nature of *in rem* jurisdiction and the limitations on the court's and Receiver's equitable power, we conclude the district court lacked authority to approve the Receiver's settlement to the extent it (a) nullified the coinsureds' claims to the policy proceeds without an alternative compensation scheme; (b) released claims the Estate did not possess; and (c) barred suits that could not result in judgments against proceeds of the Underwriters' policies or other receivership assets. Accordingly, we VACATE the district court's order approving the settlement and bar orders and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

The massive Stanford Financial Ponzi scheme defrauded more than 18,000 investors who collectively lost over $5 billion.  As part of a securities fraud lawsuit brought by the SEC, the district court appointed the Receiver "to immediately take and have complete and exclusive control" of the receivership estate and "any assets traceable" to it.  The court granted the Receiver "the full power of an equity receiver under common law," including the right to assert claims against third parties and "persons or entities who received assets or

000433
App. 0348

Case 22-03052-sgj   Doc 10-11   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 3-11   Filed 12/05/46   Page 7 of 208   PageID 804
Case: 17-10663      Document: 00514998485      Page: 5      Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21   Entered 03/04/21 17:04:18   Page 5 of 31

No. 17-10663

records traceable to the Receivership Estate." *SEC v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 326 (N.D. Tex. 2011). The district court also held that the court possessed exclusive jurisdiction over a group of insurance policies and their proceeds, at issue in this case, and ruled that, other than a lawsuit involving the Stanford criminal defendants, "[n]o persons or entities may bring further claims related to the [Proceeds] in any forum other than" the district court. Neither of these latter two orders was timely appealed.

The policies issued to the Stanford entities covered, in different arrangements, losses and defense costs for the entities and their officers, directors and certain employees. At issue are the following policies: a Directors' and Officers' Liability and Company Indemnity Policy ("D&O"); a Financial Institutions Crime and Professional Indemnity Policy, including (a) first-party fidelity coverage for employee theft ("Fidelity Bond") and "[l]oss resulting directly from dishonest, malicious or fraudulent acts committed by an Employee," and (b) third-party coverage for professional indemnity ("PI Policy"); and an Excess Blended "Wrap" Policy ("Excess Policy"). The policy limits are as follows:

|  | Stanford Bank Entities | Stanford Brokerage Entities |
|---|---|---|
| **D&O Policy** | $5 million | $5 million |
| **PI Policy** | $5 million per Claim $10 million aggregate | $5 million per Claim $10 million aggregate |
| **Fidelity Bond** | $5 million per Loss $10 million aggregate | $5 million per Loss $10 million aggregate |
| **Excess Policy** | $45 million each Claim or Loss/$90 million aggregate | |

000434
App. 2 349

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 3-11    Filed 06/05/46    Page 177 of 208    PageID 504
Case: 17-10663    Document: 00514998485    Page: 6    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 6 of 31

No. 17-10663

The maximum amount of remaining coverage is disputed. According to the district court, the Underwriters have paid some $30 million in claims under the policies for insureds' defense costs. Underwriters contend that only $46 million remains available because the losses resulted from a single event – the Ponzi scheme. The Receiver argues that the conduct implicates the aggregate loss limits up to $101 million of remaining coverage. The questions of coverage ultimately depend on the identity of the insureds under each policy and the nature of the claims, and these issues are hotly contested. The Stanford corporate entities are insured under all of the policies, but Stanford directors, officers, and employees are coinsureds only under the D&O, PI, and Excess policies.[1] Each policy is subject to multiple definitions and exclusions. After the Receiver made numerous claims for coverage under the policies (the "Direct Claims") that were met with Underwriters' denial based on policy exclusions, several lawsuits ensued.

The Receiver also pursued the policy proceeds indirectly by filing lawsuits (the "Indirect Claims") against hundreds of former Stanford directors, officers, and employees, alleging fraudulent transfers and unjust enrichment and/or breach of fiduciary duty. The Receiver obtained a $2 billion judgment against one former Stanford International Bank director and a $57 million judgment against a former Bank treasurer, both of whom were potentially covered under the policies. The Receiver continues to litigate similar claims against the coinsured Appellants who were Stanford managers and employees. *See, e.g.*, *Stanford International Bank, Ltd., et al., v. James R. Alguire, et al.*, No. 3:09-CV-0724-N (N.D. Tex., filed Dec. 18, 2019).

_____

[1] There is no dispute that the Appellants here are coinsured under the noted policies, but *not* coinsured under the Fidelity bond. The chief dispute is about the effect of certain limitations and exclusions within the policies.

6

000435

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 13-11    Filed 07/05/24    Page 178 of 208    PageID 906
Case: 17-10663    Document: 00514998485    Page: 7    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 7 of 31

No. 17-10663

After eight years of sparring, the Receiver and Underwriters, together with the court-appointed Examiner on behalf of Stanford investors, mediated their disputes for several months in 2015. Mediation initially resulted in a Settlement Proposal under which the Underwriters agreed to pay the Receiver $65 million, and in return the Receiver would "fully release any and all insureds under the relevant policies." The purpose of the complete release was to shield the Underwriters from any policy obligations to defend or indemnify former Stanford personnel, including the employee Appellants, in the Receiver's Indirect Claim lawsuits. The parties almost immediately disagreed about the content of the settlement, however, and the Underwriters filed an Expedited Motion to Enforce the Settlement Agreement. The district court denied the motion and instructed the parties to continue negotiating. On June 27, 2016, the Receiver and Underwriters notified the court that they had entered into a new settlement agreement, which the Examiner supported.

Under this new settlement, the Underwriters again agreed to pay $65 million into the receivership estate, but the settlement required orders barring all actions against Underwriters relating to the policies or the Stanford Entities. Paragraph 35 of the settlement provides Underwriters the unqualified right to withdraw from the settlement if the court refuses to issue the bar orders. The bar orders were necessary because, unlike the terms of the first proposed settlement, the Receiver is required to release only the Estate's claims against 16 directors and officers (rather than all insureds), as well as the judgments already obtained against certain directors and officers.[2] All other former Stanford employees, officers and directors, including Appellants,

---

[2] Oddly, the settlement releases claims only against those directors and officers who were among the most culpable for the Ponzi scheme. And it releases Underwriters from any obligation in connection with the aforementioned judgments for $2 billion and $57 million. This oddity should have been considered when assessing the fairness of the settlement.

000436

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-11    Filed 06/06/22    Page 179 of 208    PageID 807
Case: 17-10663    Document: 00514998485    Page: 8    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 8 of 31

No. 17-10663

remain subject to ongoing or potential litigation by the Receiver once the litigation stay against them is lifted. Some Appellants assert that their individual costs of defending the Receiver's ongoing actions already exceed $10,000. But the bar orders prevent them from suing the Underwriters for their costs of defense and indemnity under the insurance policies, even though they are coinsured, or for extra-contractual or statutory claims.

The Receiver moved for approval of the settlement and entry of the bar orders. The district court directed notice to all interested parties, and received objections from several third parties, including Appellants. The court heard arguments of counsel regarding the settlement, but it refused to allow parties to offer evidence or live testimony or engage in cross-examination. After the hearing, parties were permitted to file additional declarations or affidavits.

The district court approved the settlement and bar orders, denied all objections, and approved the payment of $14 million of attorney fees to Receiver's counsel. Separate Final Judgments and Bar Orders were entered in each action pending before it relating to the Stanford Entities and in Appellant Haymon's and Appellant Alvarado's separate lawsuits against the Underwriters. The district court rejected all post-trial motions.

A more complete discussion of the court's findings will follow, but in general, the court found that the settlement resulted from "vigorous, good faith, arm's-length, mediated negotiations" and concluded that the settlement was "in all respects, fair, reasonable, and adequate, and in the best interests of all Persons claiming an interest in, having authority over, or asserting a claim against Underwriters, Underwriters' Insureds, the Stanford Entities, the Receiver, or the Receivership Estate." The court further found that the settlement and bar orders were "fair, just, and equitable," and it rejected the Appellants' due process claims based on their exclusion from settlement talks and the lack of an evidentiary hearing. While the court recognized that the

000437
App. 0352

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11    Filed 04/05/22    Page 180 of 208    PageID 508
Case: 17-10663    Document: 00514998485    Page: 9    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 9 of 31

No. 17-10663

bar orders discriminate between a few Stanford officers and the Appellants, it reasoned that "on balance the unfairness alleged by the Objectors is either mitigated by other circumstances or simply outweighed by the benefit of the settlement in terms of fairness, equity, reasonableness, and the best interests of the receivership."

The Appellants fall into three categories. The McDaniel Appellants and "Alvarado"[3] Appellants are former Stanford managers or employees from offices around the country ("Employees") who seek contractual coverage under the insurance policies and press extra-contractual claims against the Underwriters, including for bad faith and statutory violations of the Texas Insurance Code. Appellant Cordell Haymon ("Haymon") was a member of Stanford Trust Company's Board of Directors who settled the Receiver's claims against him for $2 million before the instant global settlement was reached, and in return received the express right to pursue Underwriters for policy coverage and extra-contractual claims. Finally, the Louisiana Retirees/Becker Appellants ("Retirees") are former Stanford investors who sued Stanford brokers covered by the insurance policies and seek to recover from the Underwriters directly pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. 22:1269.

Each group of Appellants raises different challenges to the court's approval of the settlement and bar orders. They appeal from the district court's order denying their objections to the proposed settlement, the Final Bar Order,

---

[3] While Alvarado was originally a party to this appeal, he withdrew his individual appeal on April 19, 2018. The other employees to that action remain as appellants and will be denominated, for the sake of convenience, Alvarado Appellants.

000438
App. 0353

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11    Filed 05/25/22    Page 182 of 208    PageID 808
Case: 17-10663    Document: 00514998485    Page: 10    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 10 of
31

No. 17-10663

and the Order Approving Attorneys' Fees[4] for the Receiver's counsel.  The Stanford Employees additionally appeal the Order denying their new trial motion, and Haymon appeals from the Order denying his motion for reconsideration.  After explaining the principles that govern the court's management of the Receivership, we will analyze each set of Appellants' objections.

## STANDARD OF REVIEW

A district court's entry of a bar order, like other actions in supervising an equity receivership, is reviewed for abuse of discretion.  *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 373 (5th Cir. 1982); *Newby v. Enron Corp.*, 542 F.3d 463, 468 (5th Cir. 2008).  A district court's determination of the fairness of a settlement in an equity receivership proceeding is reviewed for an abuse of discretion.  *Sterling v. Stewart*, 158 F.3d 1199, 1202 (11th Cir. 1998) ("Determining the fairness of the settlement [in an equity receivership] is left to the sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of that discretion.").  There is no abuse of discretion where factual findings are not clearly erroneous and rulings are without legal error.  *Marlin v. Moody Nat. Bank, N.A.*, 533 F.3d 374, 377 (5th Cir. 2008).  A district court's denial of a Rule 59 motion for a new trial or to alter or amend a judgment also is reviewed for an abuse of discretion.  *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997).  This Court reviews *de novo* a district court's application of exceptions to the Anti–Injunction Act as a question of law.  *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009).

---

[4] The amount and propriety of the Receiver's very high fee request is not substantively briefed by any party and is therefore waived, except to the extent that on remand the fee ought to be reconsidered in light of this opinion.

000439
App. 354

Case 22-03052-sgj   Doc 10-11   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 1-11   Page 12 of 146   Page 182 of 208   PageID 300
Case: 17-10663   Document: 00514998485   Page: 11   Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21   Entered 03/04/21 17:04:18   Page 11 of
31

No. 17-10663

# DISCUSSION

## I.  General Receivership Principles

A district court has broad authority to place assets into receivership "to preserve and protect the property pending its final disposition."  *Gordon v. Washington*, 295 U.S. 30, 37, 55 S. Ct. 584 (1935); *see also Gilchrist v. Gen. Elec. Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001) ("the district court has within its equity power the authority to appoint receivers and to administer receiverships") (citing Fed. R. Civ. P. 66).  The primary purpose of the equitable receivership is the marshaling of the estate's assets for the benefit of aggrieved investors and other creditors of the receivership entities.  *See SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986).  Receivers appointed by a federal court are directed to "manage and operate" the receivership estate "according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."  28 U.S.C. § 959(b).

In general, the Receiver has wide powers to acquire, organize and distribute the property of the receivership.  A properly appointed receiver is "vested with complete jurisdiction and control of all [receivership] property with the right to take possession thereof."  28 U.S.C. § 754.  The Receiver is obliged to allocate receivership assets among the competing claimants according to their respective rights and, in this case, under the laws of Texas, where the Stanford Financial Group was headquartered.  The district court ruled, in a 2009 order that was not appealed, that the insurance policies and proceeds are property of the estate subject to the court's exclusive *in rem* jurisdiction.

Once assets have been placed in receivership, "[i]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."  *Safety Fin.*,

000440
App. 355

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-11    Filed 06/05/46    Page 183 of 208    PageID 610
Case: 17-10663    Document: 00514998485    Page: 12    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 12 of
31

No. 17-10663

674 F.2d at 372–73 (citing *SEC v. Lincoln Thrift Assoc.*, 577 F.2d 600, 606 (9th Cir. 1978)). This discretion derives not only from the statutory grant of power, but also the court's equitable power to fashion appropriate remedies as "ancillary relief" measures. *See SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). Courts have accordingly exercised their discretion to issue bar orders to prevent parties from initiating or continuing lawsuits that would dissipate receivership assets or otherwise interfere with the collection and distribution of the assets. *See SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 340 (5th Cir. 2011) ("It is axiomatic that a district court has broad authority to issue blanket stays of litigation to preserve the property placed in receivership pursuant to SEC actions."). Receivership courts, like bankruptcy courts, may also exercise discretion to approve settlements of disputed claims to receivership assets, provided that the settlements are "fair and equitable and in the best interests of the estate." *Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015) (citing *Tri–State Fin., LLC v. Lovald*, 525 F.3d 649, 654 (8th Cir. 2008)).

Neither a receiver's nor a receivership court's power is unlimited, however. *See Whitcomb v. Chavis,* 403 U.S. 124, 161, 91 S. Ct. 1858, 1878 (1971) ("The remedial powers of an equity court must be adequate to the task, but they are not unlimited."). Courts often look to the related context of bankruptcy when deciding cases involving receivership estates. The district court here acknowledged that the purpose of bankruptcy receiverships and equity receiverships is "essentially the same—to marshal assets, preserve value, equally distribute to creditors, and, either reorganize, if possible, or orderly liquidate." *Janvey v. Alquire*, No. 3:09-cv-0724, 2014 WL 12654910, at *17 (N.D. Tex. July 30, 2014); *see also SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 334 (7th Cir. 2010) ("The goal in both securities-fraud receiverships and liquidation bankruptcy is identical—the fair distribution of the liquidated

12

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11    Filed 12/28/22    Page 184 of 208    PageID 512
Case: 17-10663    Document: 00514998485    Page: 13    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 13 of
31

No. 17-10663

assets"). That their purpose is the same "makes sense" and reflects their shared legal heritage, since "federal equity receiverships were the predecessor to Chapter 7 liquidations and Chapter 11 reorganizations." *Alquire*, 2014 WL 12654910, at *17 (citing *Duparquet Huot & Moneuse Co. v. Evans*, 297 U.S. 216, 221, 56 S. Ct. 412, 414 (1936)). The district court also recognized that "[i]n this particular case, the purpose and objectives of the receivership, as delineated in the Receivership Order, closely reflect the general purpose shared by the Bankruptcy Code and federal equity receiverships," and it concluded that "[u]ltimately, this particular receivership is the essential equivalent of a Chapter 7 bankruptcy." *Id.* at *18.

Unfortunately, two interrelated limitations on the Stanford receivership were downplayed by the district court in its approval of the settlement and bar orders. Both derive from the broader principle that the receiver collects and distributes only assets of the entity in receivership. The first applies to the Receiver's standing: "[l]ike a trustee in bankruptcy or for that matter the plaintiff in a derivative suit, an equity receiver may sue *only to redress injuries to the entity in receivership*, corresponding to the debtor in bankruptcy and the corporation of which the plaintiffs are shareholders in the derivative suit." *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) (emphasis added) (citing, *inter alia*, *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S. Ct. 1678 (1972)). The *Scholes* case involved an SEC receivership, but *Caplin*, on which it relied, was a Supreme Court decision in a Chapter X reorganization case. This court endorsed the *Scholes* limitation as applied to this receivership in *Janvey v. Democratic Senatorial Campaign Comm., Inc.* ("*DSCC*"), 712 F.3d 185, 190–93 (5th Cir. 2013). And following *Caplin,* a sister circuit held, "a trustee, who lacks standing to assert the claims of creditors, equally lacks standing to settle them." *DSQ Prop. Co., Ltd. v. DeLorean,* 891 F.2d 128, 131 (6th Cir. 1989); s*ee also Wuliger v. Mfr's. Life Ins. Co.,* 567 F.3d 787, 794 (6th

000442
App. 0357

Case 22-03052-sgj   Doc 10-11   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 10-11   Filed 12/06/24   Page 185 of 208   PageID 813
Case: 17-10663   Document: 00514998485   Page: 14   Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21   Entered 03/04/21 17:04:18   Page 14 of
31

No. 17-10663

Cir. 2009) ("Because the receivership entities all would have lacked standing, and because of the rule that receivers' rights are limited to those of the receivership entities, the Receiver also lacked standing [to sue for misrepresentations by brokers to defrauded investors].").

The second limitation, arising from the district court's *in rem* jurisdiction, is that the court may not exercise unbridled authority over assets belonging to third parties to which the receivership estate has no claim. Put another way, in the course of administering this receivership, this district court previously rejected a broad reading of 28 U.S.C. § 754 that suggested the court's *in rem* jurisdiction over the property would necessarily reach every *claim* relating to that property. *See Rishmague v. Winter*, No. 3:11-cv-2024-N, 2014 WL 11633690, at *2 (N.D. Tex. Sept. 9, 2014).

Thus, this court and others have held that a bankruptcy court may not authorize a debtor to enter into a settlement with liability insurers that enjoins independent third-party claims against the insurers. *See*, *e.g.*, *Matter of Zale Corp.*, 62 F.3d 746 (5th Cir. 1995) (refusing to countenance a bankruptcy court's authority to enforce a settlement prohibiting third-party bad faith insurance claims because the claims were not property of the bankruptcy estate). Similarly, "if [the coinsureds'] portion of the [insurance] Proceeds is truly *not* property of the Estate, then the bankruptcy court has no authority to enjoin suits against the [coinsureds]." *In re Vitek*, 51 F.3d 530, 536 (5th Cir. 1995); s*ee also In re SportStuff, Inc.,* 430 B.R. 170, 175 (B.A.P. 8th Cir. 2010) (bankruptcy court lacked jurisdiction or authority to impair or extinguish independent contractual rights of vendors that were additional insureds under the debtor's policies). As these cases illustrate, bankruptcy courts lack "jurisdiction" to enjoin such claims.

The prohibition on enjoining unrelated, third-party claims without the third parties' consent does not depend on the Bankruptcy Code, but is a maxim

14

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11    Filed 08/06/24    Page 186 of 208    PageID 513
Case: 17-10663    Document: 00514998485    Page: 15    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 15 of
31

No. 17-10663

of law not abrogated by the district court's equitable power to fashion ancillary relief measures.   Contrary to the Receiver's assertion, the fact that the bankruptcy statute, 28 U.S.C. § 1334(b), limits jurisdiction to proceedings "arising in or related to" bankruptcy cases does not diminish the application of *Zale* or *Vitek* to equity receiverships.   As noted, bankruptcy and equity receiverships share common legal roots.[5]   *See In re Davis*, 730 F.2d 176, 183–84 (5th Cir. 1984) (the Bankruptcy Code arms bankruptcy courts with broad powers analogous to a court in equity).  Moreover, to justify its decision denying bankruptcy court jurisdiction over third-party claims, the court in *Zale* quoted the Supreme Court in a civil rights class action case: "[o]f course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement.  A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors . . . ." *Zale*, 62 F.3d at 757 n.26 (citing *Local No. 93 v. City of Cleveland*, 478 U.S. 501, 529, 106 S. Ct. 3063, 3079, (1986)).[6]  All of

---

[5]  Modern bankruptcy reorganization law originated with Section 77B of the Bankruptcy Act of 1934, the purpose of which was to codify best practices in what had formerly been known as equity receiverships.  *See Duparquet Huot & Moneuse Co. v. Evans,* 297 U.S. 216, 222–24, 56 S. Ct. 412, 415–17 (1936).  Section 77B(a), in turn, stated that the bankruptcy court's powers are those "which a Federal court would have had it appointed a receiver in equity of the property of the debtor . . . ." *Id.* at 221, 56 S. Ct. at 415.

[6]  *Local No. 93* is merely one example of the Supreme Court's rejection of the use of consent decrees to extinguish the claims of non-consenting third-parties, for "[a] voluntary settlement in the form of a consent decree between one [party] and [another party] cannot possibly 'settle,' voluntarily or otherwise, the conflicting claims of another group of [parties] who do not join in the agreement.  This is true even if the second group of [parties] is a party to the litigation." *Martin v. Wilks*, 490 U.S. 755, 755–68, 109 S. Ct. 2180, 2181–88 (1989).  Indeed, "[a]ll agree" that "[i]t is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Id.* (citing *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S. Ct. 115, 117 (1940)).

App. 0452
000444

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-11    Filed 06/05/46    Page 183 of 208    PageID 515
Case: 17-10663    Document: 00514998485    Page: 16    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 16 of
31

No. 17-10663

this makes clear that it is not the subject matter or statutory limitations driving this limitation, and federal district courts have no greater authority in equity receiverships to ignore these bedrock propositions, because a "court in equity may not do that which the law forbids." *United States v. Coastal Ref. & Mktg., Inc.,* 911 F.2d 1036, 1043 (5th Cir. 1990).

Rather than reckon with the limits on the Receiver's standing and the court's equitable power, the district court here cited an unpublished Fifth Circuit case, *SEC v. Kaleta,* No. 4:09-cv-3674, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012), aff'd., 530 F. App'x. 360 (5th Cir. 2013), to support both the settlement and bar orders. Importantly, *Kaleta* is an unpublished, non-precedential decision of this court. Not only that, but reading it as the district court and Appellees here advocate would mean investing the Receiver with unbridled discretion to terminate the third-party claims against a settling party that are unconnected to the *res* establishing jurisdiction. That is unprecedented. But *Kaleta* is in any event distinguishable and not inconsistent with the above-stated principles. In *Kaleta,* the bar order prevented defrauded investors from suing parties closely affiliated with the entity in receivership after the parties had agreed to make good on their guarantees to the receiver. Moreover, the settling parties would have been codefendants with receivership entities, leading to the possibility of their asserting indemnity or contribution from the estate. The court was forestalling a race to judgment that would have diminished the recovery of all creditors against receivership assets. That bar order protected the assets of the receivership estate, whereas the bar orders before us extend beyond receivership assets.

The Receiver also contends that the district court may permanently enjoin the claims of non-consenting third parties based on general statements about ancillary powers found in SEC cases such as *Wencke* and *Safety*

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11    Filed 08/05/24    Page 188 of 208    PageID 816
Case: 17-10663    Document: 00514998485    Page: 17    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 17 of
31

No. 17-10663

*Financial Services.* We disagree. These cases stand only for the proposition that, in some circumstances, federal courts may use injunctive measures, such as stays, "where necessary to protect the federal receivership." *See Wencke*, 622 F.2d at 1370; *Safety Fin. Serv.*, 674 F.2d at 372 n.5 (distinguishing *Wencke*, which "involved the much broader question of a federal court's power to enjoin nonparty state actions *against receivership assets*.") (emphasis added). In fact, the court in *Wencke* recognized that its holding was limited to the propriety of staying third-party "proceedings *against a court-imposed receivership*." *Wencke*, 622 F.2d at 1371 (emphasis added). Correctly read, these cases explain that *in rem* jurisdiction over the receivership estate imbues the district court with broad discretion to shape equitable remedies necessary to protect the *estate*.[7] They do not support that a district court's *in rem* jurisdiction over the estate may serve as a basis to permanently bar and extinguish independent, non-derivative third-party claims that do not affect the *res* of the receivership estate.

The Appellees emphasize the recent decision *SEC v. DeYoung*, 850 F.3d 1172 (10th Cir. 2017), as supporting their argument that an equity court's permanent bar order against third parties is appropriate when tied to a settlement that secures receivership assets. Like many of their arguments, however, this assertion proves too much. *DeYoung* is a narrow and deliberately fact-specific opinion. *See DeYoung*, 850 F.3d at 1182–83. The court approved a bar order preventing three defrauded IRA Account holders (out of over 5,500 victims) from pursuing claims against the depository bank in which the accounts had been illegally commingled. Notably, however, the court demonstrated that (1) the claims of the barred investors precisely mirrored

---

[7] *See also SEC v. Stanford Int'l Bank, Ltd.*, 424 F. App'x. 338, 340 (5th Cir. 2011) ("It is axiomatic that a district court has broad authority to issue blanket stays of litigation *to preserve the property placed in receivership* pursuant to SEC actions.") (emphasis added).

App. 0381

000446

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11    Filed 09/08/42    Page 189 of 208    PageID 616
Case: 17-10663    Document: 00514998485    Page: 18    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 18 of
31

No. 17-10663

claims that had been asserted and settled by the receiver; (2) averted a duplicative lawsuit whereby the bank could have asserted its contract right to indemnity from the receivership assets; and (3) provided the account holders with a claim against the receivership estate. The court simply channeled redundant claims into the receivership while preventing diminution of receivership assets.

Returning to the broad issue in this case, whether the district court abused its discretion in approving the settlement and bar orders, there are two subparts to the question. The first is whether the district court's equitable power to fashion ancillary relief could be used to bar claims by insureds to proceeds of the Underwriters' policies, which are property within the receivership estate. The second is whether the court's equitable power may be used to bar third-party claims, like tort or statutory claims, against the Underwriters but unconnected to the property of the Receivership. The answers to these questions vary according to the Appellants' claims. Texas law, unless otherwise noted, applies by virtue of 28 U.S.C. § 959(b).

## II. Party Contentions

### a. Appellants Alvarado and McDaniel

The McDaniel and Alvarado Appellants are all former Stanford managers or employees who are being sued by the Receiver for clawbacks of their compensation via the Receiver's Indirect Claims on the Underwriters' policies. Appellants seek coverage under the insurance policies, which Underwriters have denied, to defend against these lawsuits and indemnify their losses. Appellants object to the settlement and bar orders on numerous grounds. From a practical standpoint, the settlement will exhaust the Underwriters' policy proceeds, leaving these Appellants wholly uninsured against the Receiver's lawsuits. The bar orders, moreover, prevent them from pursuing against the Underwriters not only breach of contract claims for

000447    App. 0362

Case 22-03052-sgj   Doc 10-11   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 10-11 Filed 04/05/46 Page 190 of 208   PageID 513
Case: 17-10663      Document: 00514998485      Page: 19   Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21   Entered 03/04/21 17:04:18   Page 19 of
31

No. 17-10663

violating the duties to defend and indemnify, but also statutory and tort claims
that, if successful, would not be paid from policy proceeds and would not reduce
Receivership assets.

The district court's rejection of Appellants' objections rested generally on
its conclusion that the settlement and bar orders are fair, equitable, reasonable
and in the best interests of the receivership estate.  As has been noted, the
court cited only the *Kaleta* case, affirmed by a non-precedential decision of this
court, in support of its conclusions.   The court's reasoning invoked the
perceived necessity of a settlement, together with the bar orders, to resolve
fairly and efficiently the competing claims of the Receiver and Underwriters
about policy coverage and assure the maximum recovery for Stanford's
defrauded investors.  Without the bar orders, the court stated, Underwriters
would not settle.   The court pointedly refused to decide whether policy
exclusions apply to the Appellants' coverage claims.  Even if such exclusions
barred coverage, the court added, then the Receiver might also be barred by
the same exclusions and all potential benefit of the settlement would be lost.
In sum, the Appellants would lose out no matter what: their claims could be
barred by exclusions, held uninsurable, or the Receiver, having the right to
settle, would exhaust the proceeds first.[8]   The balance of benefits to the
receivership estate against Appellants' admitted losses weighed in favor of the
court's approving the settlement and bar orders.

---

[8] Implicit in the district court's reference to the Receiver's right to settle and exhaust
all the policy proceeds is apparently its reliance on Texas law, which allows an insurer to
settle with fewer than all of its co-insureds when the policy proceeds are insufficient to satisfy
all of the claims.  *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex.
1929); *Pride Transp. v. Cont'l Cas. Co.*, 511 F. App'x 347, 351 (5th Cir. 2013); *Travelers
Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 765–68 (5th Cir. 1999); *see also Tex.
Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 315 (Tex. 1994).  The court, however, never
referenced these cases.

000448
App. 383

Case 22-03052-sgj   Doc 10-11   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 10-11   Page 35 of 246   Page 193 of 208   PageID 518
Case: 17-10663   Document: 00514998485   Page: 20   Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21   Entered 03/04/21 17:04:18   Page 20 of
31

No. 17-10663

In the course of explaining its decision, however, the court made some errors.  First, its broad statement that the settlement would fail without the bar orders did not account for the fact that the parties had mediated a prior settlement that required no bar orders against these Appellants because the Receiver had agreed to release all of its claims against them.  "Global peace" there was achieved not by bar orders, but by the Receiver's agreeing to drop the Indirect Claim suits.  The final settlement required the broad bar orders only because the Receiver, for whatever reason, insisted that it must continue to pursue hundreds of clawback actions.[9]  The court's broad statement also neglected to note that, despite the Receiver's overall insistence to the contrary, the Receiver nonetheless released its claims against sixteen former Stanford officers and employees in the final settlement.

Second, the court, perhaps inadvertently, did not address the fact that Appellants were foreclosed from sharing in the assets recovered by the Receiver by filing claims against the estate.

Third, the court failed to distinguish between the Appellants' two separate types of claims – contractual claims for defense and indemnity payable (if successful) from policy proceeds in competition with investors' claims to the Receivership assets; and independent, non-derivative, third-party claims for tort and statutory violations, which would be satisfied (if successful) out of Underwriters' assets.  In this connection, the court also undervalued the Appellants' claims for indemnity by disregarding *Pendergest-Holt*.  In that case, this court held that the D&O policies should provide up-front reimbursement of defense costs in Stanford insureds' criminal cases

---

[9] Indeed, when the Underwriters moved the district court to enforce the terms of the mediated settlement, their motion queried the benefits to be reaped, other than in the Receiver's legal fees, from these time-consuming suits against relatively poor former employees targeted by the Receiver.

000449
App. 0384

Case 22-03052-sgj   Doc 10-11   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 10-11   Filed 06/06/24   Page 193 of 208   PageID 520
Case: 17-10663   Document: 00514998485   Page: 21   Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21   Entered 03/04/21 17:04:18   Page 21 of
31

No. 17-10663

pending a separate judicial proceeding to resolve the coverage question. *Pendergest-Holt v. Certain Und. at Lloyd's of London,* 600 F.3d 562, 572–74 (5th Cir. 2010). Although carefully hedged, this decision offered Appellants the prospect of possible, temporary relief for their mounting defense costs and was not "wholly inapplicable" to the decision concerning the settlement and bar orders. But in any event, the court did not analyze the ramifications of Appellants' distinct claims against Receivership assets and claims wholly independent of receivership assets.

### i. *Contractual Claims for Defense and Indemnity*

Reviewing first the settlement and bar of Appellants' contractual claims against the policy proceeds that are property of the receivership estate, we find that the court abused its discretion by extinguishing Appellants' claims to the policy proceeds, while making no provision for them to access the proceeds through the Receiver's claims process. This undermines the fairness of the settlement.

As the district court observed, some settlement with the Underwriters was prudent because of the sheer magnitude of claims far beyond the policies' coverage, and because the scope of coverage, dependent on multiple, insured-specific factual and legal questions, is unclear. What is clear in Texas law, as conceded by Appellants, is that an insurer may settle with fewer than all of its co-insureds when the policy proceeds are insufficient to satisfy all of the claims. *See G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex. 1929); *Pride Transp. v. Continental Cas. Co.*, 511 F. App'x 347, 351 (5th Circuit 2013); *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 765–68 (5th Cir. 1999); *see also Farmers Insurance Co. v. Soriano*, 881 S.W.2d 312, 315

000450

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-11    Filed 06/05/24    Page 193 of 208    PageID 520
Case: 17-10663    Document: 00514998485    Page: 22    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 22 of
31

No. 17-10663

(Tex. 1994).[10]  Although the district court did not cite these cases, its ruling squares with them and supports its cost/benefit calculation for the Receiver/Underwriters' settlement to the detriment of Appellants' contractual claims.

But not only did  the settlement expressly foreclose the Appellants from sharing in the insurance policy proceeds of which they are coinsureds, the Appellants are not even allowed to file claims against the Receivership estate. Unlike the Stanford investors and the Receiver's attorneys, who can pursue restitution through the Receiver's claims process, Appellants have no access to the claims process.  The Settlement Agreement specifically restricts payment of the Proceeds to the Receivers' attorneys and the Stanford investors and specifically excludes Stanford employees and management, including Appellants.  For these Appellants, should the Receiver continue to pursue them, their claims against the Underwriters offer the only avenue of recovery. This alone serves to distinguish this case from *Kaleta*, which approved the settlement because, inter alia, the settlement agreement "expressly permits" those affected by the bar order "to pursue their claims by 'participat[ing] in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate.'"  *See Kaleta*, 530 F. App'x at 362–63 (alteration in original).  Barring Appellants' claims to coverage under their insurance policies by claiming the proceeds of these policies as property of the Receivership, *and then* barring Appellants' from accessing even a portion of these proceeds through the Receivership claim process, undermines the fairness of the settlement.

---

[10] *Soriano* may not squarely apply to the extent that the settlement does not, on its face, exhaust the policy limits.  But this uncertainty in the law meant that settlement between the Receiver and the Underwriters was fair game.

000451    App. 8366

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-11    Filed 08/05/24    Page 193 of 208    PageID 522
Case: 17-10663    Document: 00514998485    Page: 23    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 23 of
31

No. 17-10663

The district court and Receiver lacked authority to dispossess claimants of their legal rights to share in receivership assets "for the sake of the greater good." The court's duty, as previously described, is to assure that all claimants against the Receivership have a reasonable opportunity to share in the estate's assets. Given the numerous exclusions to policy coverage,[11] the Appellants' entitlement to proceeds may appear weak, but the court disclaimed deciding coverage issues, and the Appellants have identified several reasons, in addition to *Pendergest-Holt,* why their contractual claims might prevail on final adjudication.[12]

Rather than extinguish the Appellants' contractual claims, the court could have authorized them to be filed against the Receivership in tandem with the Stanford investors' claims. Such "channeling orders" are often employed to afford alternative satisfaction to competing claimants to receivership assets while limiting their rights of legal recourse against the assets. *See, e.g., DeYoung,* 850 F.3d at 1182; *see also Kaleta,* 530 F. App'x at 360 (approving claims filing in receivership for barred litigants). In any event, the court may have intended to channel the Appellants' claims here but simply overlooked their omission from the extant procedures.[13]

---

[11] The myriad of contested policy exclusions include the insured versus insured, money laundering, fraud, intentional corporate or business policy, and prior knowledge exclusions.

[12] Appellants explain that a significant number of their group have no personal liability, and, inferentially, should not be subject to policy exclusions, because they did not sell Stanford CDs to investors. Further, because the Receiver's claims against the Appellants are not derivative, any recovery from the proceeds would not at all reduce or offset the Appellants' liability for fraudulent transfers. Finally, Appellants assert viable defenses to the clawback actions based, in part, on Texas law in this Receivership. *See Janvey v. Golf Channel, Inc.,* 487 S.W.3d 581, 582 (Tex. 2016) (recognizing defense to fraudulent transfer of reasonably equivalent value received).

[13] The Receiver and Underwriters contend that in lieu of other modes of compensation through the receivership, these Appellants have received "benefits," however small, from the settlement because the insurance proceeds that have gone into the receivership estate offset

App. 8587

Case 22-03052-sgj   Doc 10-11   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 10-11   Filed 08/05/24   Page 195 of 208   PageID 523
Case: 17-10663   Document: 00514998485   Page: 24   Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21   Entered 03/04/21 17:04:18   Page 24 of
31

No. 17-10663

## ii. *Extracontractual Claims for Tort and Statutory Violations*

By ignoring the distinction between Appellants' contractual and extracontractual claims against Underwriters, the district court erred legally and abused its discretion in approving the bar orders.[14]  These claims, including common law bad faith breach of duty and claims under the Texas Insurance Code, lie directly against the Underwriters and do not involve proceeds from the insurance policies or other receivership assets.[15]  These damage claims against the Underwriters exist independently; they do not arise from derivative liability nor do they seek contribution or indemnity from the estate.[16]  As the preceding discussion explains in detail, receivership courts have no authority to dismiss claims that are unrelated to the receivership estate.  That the district court was "looking only to the fairness of the settlement as between the debtor and the settling claimant [and ignoring third-party rights] contravenes a basic notion of fairness." *Zale*, 62 F.3d at 754

---

their potential liability in the Receiver's and other suits.  The district court made no such finding, and we see no basis in the record for it.

[14] The Receiver and Underwriters would pretermit any such distinction by contending that unless the Appellants had valid contractual claims for insurance from the Underwriters' policies, they could not bring extracontractual claims.  This may well be accurate.  The district court, however, refused to rule on the viability of Appellants' contractual claims, and we need not undertake that task here.  The basis of settlement for all concerned is to avoid tedious litigation of insurance coverage claims.

[15] This principle has been described above in the related context of bankruptcy.  *See Matter of Zale Corp.*, 62 F.3d 746, 756–57 (5th Cir. 1995); *Matter of Vitek, Inc.*, 51 F.3d 530, 538 (5th Cir. 1995); *In re Sportstuff, Inc.*, 430 B.R. 170, 178–79 (B.A.P. 8th Cir. 2010); *see also Matter of Buccaneer Res., LLC*, 912 F.3d 291, 293–97 (5th Cir. 2019) (explicating the difference between derivative and non-derivative injuries and holding that a tortious interference claim by a former company president against the outside lenders is non-derivative and separate from the bankruptcy estate).

[16] *See SEC v. DeYoung*, 850 F.3d 1172; *In re Heritage Bond Litig.*, 546 F.3d 667, 680 (9th Cir. 2008) (discussing settlement of a securities class action and distinguishing between claims for codefendant contribution and independent claims against settling defendants; former could be dismissed by bar order, but latter claims could not be).

24

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-11    Filed 04/05/23    Page 196 of 208    PageID 523
Case: 17-10663    Document: 00514998485    Page: 25    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 25 of
31

No. 17-10663

(alteration in original) (citing *United States v. AWECO, Inc.*, 725 F.2d 293, 298
(5th Cir.)).

As discussed above, the Receiver lacked standing to settle independent,
non-derivative, non-contractual claims of these Appellants against the
Underwriters.  *See DSCC,* 712 F.3d at 190, 193 (receiver "has standing to
assert only the claims of the entities in receivership, not the claims of the
entities' investor-creditors [coinsureds] . . ."). Of course, the Receiver and
Underwriters were, as Appellants' counsel colorfully described, all too happy
to compromise at the expense of Appellants' rights. The court purported to
justify this result by claiming that "the bar orders are not settling claims, they
are enjoining them." No matter the euphemism, a permanent bar order is a
death knell intended to extinguish the claims, which are a property interest,
however valued, of the Appellants.

Moreover, in approving the settlement and bar orders against these
Appellants, the district court overlooked problems inherent in the settling
parties' positions. The Underwriters' position was in conflict with the
Appellants: by means of the bar orders, the Underwriters limited their
exposure to further costly and time-consuming litigation over Appellants' non-
derivative extracontractual claims against them. The Receiver was enabled by
the settlement and bar orders to place Appellants in a vise: preserving his
ability to sue Appellants for clawbacks even as the agreement stripped
Appellants' access to any recompense from the Underwriters.[17]    These

---

[17] The mediated settlement, in contrast, averted these conflicts of interest with the
Receiver's release of claims against Appellants offsetting the Underwriters' potential
extracontractual liability.

000454
App. 8360

Case 22-03052-sgj   Doc 10-11   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 10-11   Filed 06/06/24   Page 197 of 208   PageID 825
Case: 17-10663   Document: 00514998485   Page: 26   Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21   Entered 03/04/21 17:04:18   Page 26 of
31

No. 17-10663

problems cast grave doubt on the fairness and equity of the settlement and bar orders reached without Appellants' participation.[18]

In sum, although we sympathize with the impetus to settle difficult and atomized issues of insurance coverage rather than dissipate receivership assets in litigation, the settlement and bar orders violated fundamental limits on the authority of the court and Receiver.  The court and Receiver could not abrogate contractual claims of these Appellants to proceeds of Underwriters' policies without affording them an alternative compensation scheme similar, if not identical, to the claims process for Stanford investors.  The court could not authorize the Receiver and Underwriters to compromise their differences while extinguishing the Appellants' extracontractual claims against Underwriters.  Equity must follow the law, which here constrains the court's and Receiver's authority to protecting the assets of the receivership and claims directly affecting those assets.[19]

### b.    Appellant Cordell Haymon

Like the Alvarado and McDaniel Appellants, Appellant Cordell Haymon, a member of Stanford Trust Company's board of Directors, was targeted by the

---

[18] When compared with *DeYoung,* 850 F.3d at 1182–83, the unsustainability of the settlement and bar orders here is manifest.  Unlike that case, the extracontractual claims of these Appellants do not parallel those of the Receiver, Underwriters possess no contribution/indemnity claim against the receivership estate, and Appellants have been provided no channel to assert claims in the receivership.

[19] We reject Appellants' due process claims against the settlement and bar orders. They contend that because they "had an interest in" the outcome of the settlement, and the Bar Order "fully and finally adjudicates Appellants' independent state law contract and tort claims," due process required at least the ability to introduce evidence at the hearing. McDaniel presses other constitutional claims.  But Appellants were provided notice of the settlement hearing, were able to fully brief their position and provide affidavits, and they have offered nothing more on appeal.  Although excluded from the settlement negotiations, they have shown no legal requirement that they be allowed to participate in a settlement resolving claims for reimbursement against the limited policy proceeds.  The applicable Texas law allows insurers to settle with fewer than all of the insureds in such circumstances. Appellants' due process arguments fail, and McDaniel's other claims are meritless.

000455
App. 878

Case 22-03052-sgj   Doc 10-11   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-N   Document 10-11   Filed 07/05/22   Page 198 of 208   PageID 826
Case: 17-10663   Document: 00514998485   Page: 27   Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21   Entered 03/04/21 17:04:18   Page 27 of
31

No. 17-10663

Receiver and sought coverage of his defense costs under the insurance policies. After the Underwriters denied his claim for coverage, he settled the Receiver's fiduciary duty breach suit for $2 million. Haymon asserts that he relied on the language of his settlement agreement, which specifically authorized the continuation of his suit against the Underwriters. Only a few months later, however, the final proposed settlement undid his expectations of recovery from the Underwriters. Haymon requested to intervene in the initial coverage dispute between Underwriters and the Receiver, and he filed objections to the proposed settlement. He argues now that the district court erred in barring all of his contractual and extracontractual tort and statutory claims against the Underwriters.

To the extent that Haymon's claims mirror those of Alvarado and McDaniel, the same results follow. The district court acted within its authority to bar Haymon's claim for contractual defense and indemnity under the insurance policies, but some alternate compensation mode from the receivership estate is required, and the court could not bar his extracontractual claims against the Underwriters. However, the ultimate evaluation of Haymon's claims may differ from that of the other Appellants for two reasons, which the district court should assess on remand. First, because his insurance coverage claim was liquidated before the final settlement ($2 million potential indemnity and $1.5 million defense costs) it was ripe for judicial determination under *Pendergest-Holt*.[20] Second, Haymon received a bar order, perhaps valuable to him, against any further litigation concerning his involvement with Stanford entities.

---

[20] Finally, as noted in regard to the other Appellants, Haymon was afforded the opportunity, and availed himself of the ability to press his constitutional objections to the settlement and bar orders. There was no failure of due process and his other vaguely identified constitutional objections are meritless.

000456
App. 571

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-11    Filed 04/06/246    Page 199 of 208    PageID 527
Case: 17-10663    Document: 00514998485    Page: 28    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 28 of
31

No. 17-10663

### c.    Appellant Louisiana Retirees

Unlike the foregoing Appellants, the Louisiana Retirees are not coinsureds under the insurance policies, and they are not being pursued in Indirect Claim actions by the Receiver. Retirees have assiduously pursued securities law claims against certain Stanford brokers and the Underwriters, as insurers for those brokers, under the Louisiana Direct Action Statute, La. R.S. 22:1269.

First, the parties dispute the meaning of the bar order and the extent to which it bars the Retirees' claims. The Receiver argues that the bar order applies only to claims against the Underwriters and the Underwriters' *Released Parties*, defined as the officers, agents, etc. of Underwriters, and expressly excluding the officers, directors, or employees of Stanford Entities. Retirees argue that it enjoins them from pursuing the Stanford Claims, defined as "any action, lawsuit or claims brought by any Stanford Investor against Underwriters [or] . . . *Underwriter's Insureds.*" In turn, Underwriters' Insureds are defined as "any person that shall be an officer and director of any Stanford Entities . . . [or] any employee of any Stanford Entities." On remand, it would be appropriate for the district court to determine and clarify the meaning of the bar order as to the Retirees, keeping in mind that the district court may not enjoin any claims by Retirees against the brokers that do not implicate the policy proceeds.

Second, the Retirees' claims under the Louisiana direct action statute unequivocally implicate the policy proceeds and therefore assets of the receivership. The statute specifies that an action can be brought "within the terms and limits of the policy by the injured person." La. Rev. Stat. 22:1269(A), (C), (D). It "does not create an independent cause of action against the insurer[;] it merely grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured." *Soileau v.*

000457

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11    Filed 04/05/24    Page 200 of 208    PageID 527
Case: 17-10663    Document: 00514998485    Page: 29    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 29 of
31

No. 17-10663

*Smith True Value & Rental*, 144 So. 3d 771, 780 (La. 2013). As such, the Receiver could settle with the Underwriters notwithstanding the direct action claim just as he could settle regardless of the Employee Appellants' contractual claims to policy proceeds. Further, as former investors in the Stanford entities, the Retirees were afforded a means of filing claims apart from the direct action suit, and many have availed themselves of that opportunity. Consequently, the Retirees' direct action suit against the Underwriters amounts to a redundant claim on receivership assets.

Nevertheless, the Retirees assert several arguments that have no bearing on the permissibility of the settlement and bar order as to them. They contend first that the settlement and bar order conflict with the Supreme Court's decision in *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058 (2014), which they characterize as "acknowledg[ing] the Louisiana Retirees' rights to bring their state law securities claims in Louisiana state court." But *Troice* held only that the Securities Litigation Uniform Standards Act did not preempt the Louisiana Appellants' state court claims. The Court's ruling did not bear on the merits of or procedure for the Retirees' state law case.

Second, they contend that *DSCC*, 712 F.3d at 185, forbids giving the receiver the right to "control the settlement of a claim it does not own." That is certainly correct according to our previous discussion, but here, the Receiver had standing to pursue *its own* claims as coinsured under the Underwriters' policies, such claims perfected the Receiver's interest in a valuable asset, and Texas law provided the right to settle them even at the expense of the Retirees' direct action claims.

The Retirees argue that the district court should have first determined the disputed legal questions about the magnitude of, and legal rights to, the policy proceeds before approving the settlement and bar orders under *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987). This

000458
App. 373

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-11    Filed 05/25/22    Page 201 of 208    PageID 528
Case: 17-10663    Document: 00514998485    Page: 30    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 30 of
31

No. 17-10663

argument simply misreads that case. The court in *Louisiana World* explicitly distinguished the facts before it from cases involving coinsureds with equal claims to the policy proceeds. Moreover, at least one disputed policy – the Fidelity Bond – covers only the Receivership entities.[21] It was not an abuse of discretion for the district court to hold that equity favored avoiding costly litigation and dissipation of receivership assets by allowing the Receiver, a coinsured with equal claim to the policy proceeds, to settle with the Underwriters. Avoiding protracted legal examination of the policy exclusions, which could just as easily bar Retirees and others from the policy proceeds, was precisely the point of the settlement.

Fourth, Retirees assert that the Anti-Injunction Act, 28 U.S.C. § 2283 ("AIA"), prevented the court from issuing its bar orders. This argument has no merit. Under the AIA, "any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to [the Anti-Injunction Act] if it is to be upheld." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287, 90 S. Ct. 1739, 1743 (1970). The specific exceptions are express authorization by an Act of Congress, where necessary in aid of the court's jurisdiction, or to protect or effectuate the court's judgments. *Id.* at 288, 90 S. Ct. at 1743–44. The AIA does not prohibit the settlement and bar order because, pertinent to the Retirees, they cover only those claims implicating the insurance policy proceeds and so were necessary in aid of the district court's jurisdiction over those proceeds. The district court has exclusive *in rem* jurisdiction over the policy proceeds and permanent bar orders have been approved as parts of settlements to secure receivership assets. *See*, *e.g.*, S*EC*

---

[21] As with the other policies, the Underwriters and Receiver dispute the scope of coverage and exclusions of the Fidelity Bond, and whether the Receiver may access the proceeds, but there is no argument that the Retirees may access these proceeds.

000459
App. 8574

Case 22-03052-sgj    Doc 10-11    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-N    Document 10-11    Filed 06/05/46    Page 202 of 208    PageID 530
Case: 17-10663    Document: 00514998485    Page: 31    Date Filed: 06/17/2019
Case 19-34054-sgj11 Doc 1971-1 Filed 03/04/21    Entered 03/04/21 17:04:18    Page 31 of
31

No. 17-10663

*v. Parish*, No. 2:07-CV-00919-DCN, 2010 WL 8347143 (D.S.C. Feb. 10, 2010)

("[T]he bar order is necessary to preserve and aid this court's jurisdiction over

the receivership estate, such that the Anti-Injunction Act would not prohibit

the bar order even if there were pending state court actions, which there are

not.").

For these reasons, the settlement and bar orders did not interfere with

or improperly extinguish the Retirees' rights.

## CONCLUSION

For the foregoing reasons, we **VACATE** the district court's orders

approving the settlement and bar orders and **REMAND** for further

proceedings consistent with this opinion.[22]

---

[22] Vacatur and remand will probably necessitate the court's reconsideration of the
attorneys' fee award to the Receiver's counsel.

000460
App. 2375

# EXHIBIT 12

Appx. 2876

Case 22-03052-sgj    Doc 10-12    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01205-N   Document 31-11   Filed 03/06/2  Page 204 of 208   PageID 4532
Case 19-34054-sgj11 Doc 1973 Filed 03/04/21    Entered 03/04/21 17:34:17    Page 1 of 5

D. Michael Lynn – State Bar ID 12736500
John Y. Bonds, III – State Bar ID 02589100
Clay M. Taylor – State Bar ID 24033261
Bryan C. Assink – State Bar ID 24089009
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 – Telephone
(817) 405-6902 – Facsimile
Michael.lynn@bondsellis.com
john@bondsellis.com
clay.taylor@bondsellis.com
bryan.assink@bondsellis.com

**COUNSEL FOR JAMES DONDERO**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-SGJ-11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | Chapter 11 |
| | § | |
| Debtor. | § | |

## JOINDER IN MOTION FOR STAY PENDING APPEAL AND ADDITIONAL
## GROUNDS FOR THE ISSUANCE OF A STAY PENDING APPEAL

James Dondero ("Dondero") herby files his Joinder to Highland Capital Management Fund

Advisors, L.P. and NexPoint Advisors, L.P.'s Motion for Stay Pending Appeal of the Confirmation

Order, and Brief In Support Thereof (the "Advisor Motion"), and also submits his Additional

Grounds for the Issuance of a Stay Pending Appeal.[1]

### Joinder

1.    First, Dondero joins and incorporates by reference each of the points, facts, legal

analysis and standards made by the Movants in the Advisor Motion.

---

[1] Defined terms not defined herein have the same terms ascribed to them in the Advisor Motion.

JOINDER IN MOTION FOR STAY PENDING APPEAL

1934054210304000000000007

000462

Case 22-03052-sgj    Doc 10-12    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02008-N    Document 30-12    Filed 03/06/22    Page 205 of 208    PageID 4533
Case 19-34054-sgj11 Doc 1973 Filed 03/04/21    Entered 03/04/21 17:34:17    Page 2 of 5

**Additional Facts Relevant to this Joinder**

2.      During the course of this bankruptcy case, and after Dondero was removed from his role at the Debtor, the Debtor or its subsidiaries, under the direction of the Debtor's CEO James Seery, sold three substantial assets.  Those three assets sales were generically referred to as the Life Settlements sale, the Omnimax sale and the Trussway or SSP sale (collectively the "Sales").

3.      In each of the Sales, the sale of the assets that occurred was not actually carried on the balance sheet of the Debtor itself, but instead on the balance sheet of a subsidiary or a subsidiary of a subsidiary.  Each Sale was significant and in excess of $2,000,000.

4.      The Debtor did not provide notice of the Sales to creditors or parties-in-interest.

5.      The Debtor further maintains that notice of the Sales was not required.  For the reasons stated below, the Debtor is mistaken.

**Additional Support for Issuance of a Stay Pending Appeal**

6.      As additional grounds and argument as why a stay should issue, as stated in Dondero's Objection to the Plan and as argued at the confirmation hearing on the same, the Debtor failed to meet its burden proving that the best interests of the creditors test had been met by showing that creditors and other parties in the waterfall (such as equity) would receive as much as they would have in a hypothetical chapter 7 case.  This objection was, in part, based on the Debtor's repeated refusal, even while in bankruptcy, to afford creditors and parties-in-interest, such as Dondero, notice and opportunity to participate in sales of the Debtor's assets.  One of the numerous reasons for the requirements under the Bankruptcy Code and Rules that notice of such sales be provided is so that any creditor, or any other interested party, could participate in the sales process and thereby ensure that the estate (and other stakeholders) can reasonably anticipate that

000463
App. 0378

Case 22-03052-sgj   Doc 10-12   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02800-N   Document 31-12   Filed 04/05/22   Page 206 of 208   PageID 4534
Case 19-34054-sgj11 Doc 1973 Filed 03/04/21   Entered 03/04/21 17:34:17   Page 3 of 5

the highest and best sales price(s) for any asset(s) being sold was indeed reached for the sale of that asset.  Absent a stay pending appeal, Dondero and other parties-in-interest would lose the protections offered by the notice procedures for the sale of assets provided for under 11 U.S.C. Section 363 and Federal Rule of Bankruptcy Procedure 2002.

7.      The Debtor maintains that while it did not give notice to Dondero of prior sales in bankruptcy, that it did not have to.  Dondero reasonably assumes that the Debtor may continue such practice even if a stay was granted.  As a result, the imposition of the stay is not material to the Debtor and does no harm to it.

8.      Alternatively, if the Debtor now acknowledges that under the Bankruptcy Code and Rules notice should have been provided and that any subsequent similar sale would need to be noticed out in accordance with Section 363 and Rule 2002, then the additional burden to do so is not material to the Debtor, better insures that creditors and parties-in-interest are both informed and their interests are protected, and informs both this Court and the court hearing the appeal of this matter additional evidence of why this underlying appeal should be granted.

9.      First, the argument used to justify the prior lack of compliance with the Code and the Rules of "the assets that were being sold were assets of a subsidiary entity and therefore not assets of the estate," and therefore not implicating the notice provisions of Section 363 and Rule 2002, is specious and self-serving.  At times in this case, the Debtor has maintained that the subsidiaries are subject to ultimate control of and by this Court and proceeding, but at other times it chooses to assert their independence from the obligations that come commensurate with that assertion.

10.      All the Sales done in this bankruptcy were significant sales, not conducted within the ordinary course of business of the Debtor, and necessarily positively or negatively impacted

Case 22-03052-sgj    Doc 10-12    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02085-N    Document 13-12    Filed 06/06/22    Page 207 of 208    PageID 4535
Case 19-34054-sgj11 Doc 1973 Filed 03/04/21    Entered 03/04/21 17:34:17    Page 4 of 5

the recoveries that creditors and parties-in-interest will ultimately realize in this case.  In short, the Debtor knew exactly what it was doing, violated the Code and the Rules, but proceeded with the Sales despite these infirmities.

11.    Moreover, the argument misses the point.  If a stay were granted, and if the Debtor continued to operate in such a manner avoiding what Dondero maintains are fundamental and applicable protections of both bankruptcy statute and rule, and the appeal was subsequently granted in whole or in part on such grounds, and also on the third-party releases and exculpation grounds, then the parties responsible for such violations of the Bankruptcy Code and Rules could be held responsible for such acts and the creditors and parties-in-interest could seek recompense. Absent a stay pending appeal, the public interests are harmed by allowing the Debtor to continue to skirt its duties about providing due notice of sales of the Debtor's assets under a plan that may be subsequently overturned if the appeal is granted.  The imposition of a stay would not alter the Debtor's ability to actually sell assets, but would at least make it either provide notice of such sales, or, if it chooses not to, make the Debtor responsible for the consequences of its actions if that decision is an erroneous one.  This is precisely why a stay should be grated to keep irreparable harm from being done to creditors and parties-in-interest such as Dondero.

12.    Therefore, the issuance of stay pending appeal affords: (i) at least some marginal protections to the creditors and parties-in-interest that the Bankruptcy Code provisions should be adhered to regarding sales of assets; and (ii) if it is ultimately found that such lack of notice is and was indeed proper, then the issuance of a stay does no practical harm to the Debtor who can continue its practices of not providing such notice.

000465
App. 0320

Case 22-03052-sgj   Doc 10-12   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02008-N Document 18-12 Filed 05/26/22 Page 208 of 208 PageID 4556
Case 19-34054-sgj11 Doc 1973 Filed 03/04/21   Entered 03/04/21 17:34:17   Page 5 of 5

**Request for Relief**

Dondero requests that the Court enter an Order:

(i)      Staying the effectiveness of the Confirmation Order pending appeal; and

(ii)     granting such other relief as is just and proper.

Signed: March 4, 2021.

BONDS ELLIS EPPICH SCHAFER JONES LLP

By:      /s/ Clay M. Taylor
         D. Michael Lynn – State Bar ID 12736500
         John Y. Bonds, III – State Bar ID 02589100
         Clay M. Taylor – State Bar ID 24033261
         Bryan C. Assink – State Bar ID 24089009
         Telephone: (817) 405-6900
         Facsimile: (817) 405-6902
         Email: clay.taylor@bondsellis.com

ATTORNEYS FOR JAMES DONDERO

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this on March 4, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Appellee.

By:      /s/ Clay M. Taylor
         Clay M. Taylor

000466
App. 0321