**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re: Highland Capital Management, L.P.** | § | Case No. **19-34054-SGJ-11** |
| The Charitable DAF Fund LP | § | |
| | § | |
| Appellant | § | 22-03052 |
| vs. | § | |
| **Highland Capital Management, L.P.** | § | |
| | § | |
| Appellee | § | **3:22-CV-02280-S** |

**[43]  Order granting amended motion to dismiss adversary proceeding with prejudice (related document # 19) Entered on 9/30/2022**

**APPELLANT RECORD**
**VOLUME 5**

SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367

*Counsel for The Charitable DAF Fund, L.P.*
*and CLO Holdco, Ltd.*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| THE CHARITABLE DAF FUND, L.P. | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 22-03052-sgj11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |
| | § | |

*INDEX*

### APPELLANT'S SECOND AMENDED STATEMENT OF ISSUES AND
### DESIGNATION OF RECORD ON APPEAL

Pursuant to Rules 8009(a)(1)(A)-(B) and (a)(4) of the Federal Rules of Bankruptcy

Procedure, The Charitable DAF Fund, L.P. ("Appellant") hereby designates the following items

to be included in the record and identifies the following issues with respect to its appeal of the

Order Granting Defendant's Amended Motion to Dismiss Adversary Proceeding [Doc.43] which

was entered by the United States Bankruptcy Court for the Northern District of Texas on
September 30, 2022.

## I.      STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

Whether the Bankruptcy Court erred in granting Defendant's Amended
Motion to Dismiss Adversary Proceeding.

## II.     DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD

*Vol. 1*
*000001*

1.  Notice of Appeal for Bankruptcy Case Adversary Proceeding No. 21-
    03067-sgj11 [Doc. 46].

*000004*

2.  The judgment, order, or decree appealed from: Order Granting Amended
    Motion to Dismiss Adversary Proceeding [Doc. 43].

3.  Any opinion, findings of fact and conclusions of law of the bankruptcy court
    relating to the issues on appeal, including transcripts of all oral rulings:
    None.

*000032*

3.  Docket Sheet kept by the Bankruptcy Clerk.

4.  Documents listed below and as described in the Docket Sheet for
    Bankruptcy Case Proceeding No. 22-03052-sgj.

*Vol. 2*

| No. | Date Filed | Docket No. | Description/Document Text |
|---|---|---|---|
| 1 | 5/25/22 (7/22/21) | 1 | (18 pgs; 4 docs) Adversary case 22-03052. ORDER REFERRING CASE 3:21-CV-1710-N from U.S District Court for the Northern District of Texas, Dallas Division to U.S. Bankruptcy Court for Northern District of Texas, Dallas Division and Complaint by Charitable DAF Fund, LP against Highland Capital Management, L.P. Fee Amount $350 (Attachments: # 1 Original Complaint # 2 Civil Cover Sheet # 3 Docket Sheet from 21-CV-1710). Nature(s) of suit: 02 (Other (e.g., other actions that would have been brought in state court if unrelated to bankruptcy)). (Okafor, Marcey) |
| 2 | 5/25/22 (10/5/21) | 8 | (8 pgs; 2 docs) MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) Attorney Zachery Z. Annable added to party Highland Capital Management LP(pty: dft) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #8 ON |

*000040*

*000058*

| | | | 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
|---|---|---|---|
| 3 | 5/25/22 (10/5/21) | 9 | (15 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #9 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 4 | 5/25/22 (10/5/21) | 10 | (1012 pgs; 28 docs) Appendix in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #10 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION](Okafor, Marcey) |
| 5 | 5/25/22 (10/5/21) | 11 | (8 pgs; 2 docs) MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #11 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 6 | 5/25/22 (10/5/21) | 12 | (10 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Annable, Zachery [ORIGINALLY FILED IN 21-CV-1710 AS #12 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 7 | 5/25/22 (10/5/21) | 13 | ((238 pgs; 4 docs) Appendix in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 |

Handwritten margin notes: Vol. 2, 000066, 000081, Thru Vol. 6, Vol. 7, 001093, 001101, 001111

| Vol. 8 | | | AS #13 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
|---|---|---|---|
| 8 001349 | 5/25/22 (10/27/21) | 15 | (3 pgs) RESPONSE filed by Charitable DAF Fund LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Sbaiti, Mazin) [ORIGINALLY FILED IN 21-CV-1710 AS #15 ON 10/27/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 9 001352 | 5/25/22 (11/5/21) | 16 | (7 pgs) REPLY filed by Highland Capital Management LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #16 ON 11/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 10 001359 | 5/25/22 (11/21/21) | 18 | (2 pgs) ORDER re: 8 Motion for Reconsideration. The Court grants Defendant's motion, lifts the stay, and refers this case to Judge Stacey G.C. Jernigan of the United States Bankruptcy Court for the Northern District of Texas, to be adjudicated as a matter related to the Chapter 11 Bankruptcy of HCM., Chapter 11 Case No. 10-34054. The Clerk of this Court and the Clerk of the Bankruptcy Court to which this case is referred are directed to take such actions as are necessary to docket this matter as an Adversary Proceeding associated with the aforementioned consolidated bankruptcy case. (Ordered by Judge David C Godbey on 5/19/2022) (oyh) (Main Document 18 replaced on 5/23/2022) (twd). (Entered: 05/20/2022) [ORIGINALLY FILED IN 21-CV-1710 AS #18 ON 11/21/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (*ERROR IN ENTRY: CORRECT CASE NUMBER IS: 19-34054*) (Okafor, Marcey) |
| 11 001361 | 5/27/22 | 19 | (8 pgs; 2 docs) Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments:# 1 Exhibit A--Proposed Order) (Annable, Zachery) |
| 12 001369 | 5/27/22 | 20 | (12 pgs) Brief in support filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| 13 001381 Thru Vol. 10 | 5/27/22 | 21 | (637 pgs) Support/supplemental document (*Appendix in Support of Highland Capital Management, L.P.'s Amended* |

| | | | | |
|---|---|---|---|---|
| | | | | *Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| | 14 | 6/1/22 | 23 | (6 pgs; 2 docs) Notice of hearing filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Hearing to be held on 8/3/2022 at 02:30 PM at https://us courts.webex.com/meet/jerniga for 19 and for 19, (Attachments: # 1 Exhibit A)(Hayward, Melissa) |
| | 15 | 7/5/22 | 30 | (12 pgs) Response opposed to (related document): 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) filed by Plaintiff Charitable DAF Fund, LP . (Ecker, C.) (Entered: 07/06/2022) |
| | 16 | 7/26/22 | 31 | (15 pgs) Reply to (related document(s): 30 Response filed by Plaintiff Charitable DAF Fund, LP) filed by Defendant Highland Capital Management, L.P.. (Annable, Zachery) |
| | 17 | 7/26/22 | 32 | (865 pgs) Support/supplemental document *(Amended Appendix in Support of Highland Capital Management, L.P.'s Amended Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 21 Support/supplemental document). (Annable, Zachery) |
| | 18 | 8/1/22 | 34 | (867 pgs; 23 docs) Witness and Exhibit List *(Reorganized Debtor's Witness and Exhibit List with Respect to Evidentiary Hearing to Be Held on August 3, 2022)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22) (Annable, Zachery) |
| | 19 | 8/3/22 | 40 | (1 pg) Court admitted exhibits date of hearing August 3, 2022 (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments: # 1 Exhibit A--Proposed Order)) COURT ADMITTED EXHIBIT 17. COURT TOOK JUDICIAL NOTICE OF EXHIBITS 1-13, 21 AND 22. (Ellison, T.) (Entered: 08/04/2022) |

Handwritten annotations: Vol. 11 / 002018 / 002024 / 002036 / 002051 Thru Vol 14 / Vol. 15 / 002916 Thru Vol. 18 / Vol. 19 / 003783 Thru Vol. 22

*vol. 22*

*004651*

| | 20 | 9/30/22 | 42 | (28 pgs) Memorandum of opinion regarding Defendant's amended motion to dismiss adversary proceeding (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Entered on 9/30/2022 (Okafor, Marcey) |
|---|---|---|---|---|
| | 21 | 8/4/22 | 41 | 41 Transcript regarding Hearing Held 08/03/2022 (45 pages) RE: Motion to Dismiss Adversary Proceeding (19). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 11/2/2022. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 37 Hearing held on 8/3/2022. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) (Appearances: G. Demo and Z. Annabel for Movant/Highland; J. Bridges for Respondent/Charitable DAF. Evidentiary hearing. Motion granted. Court to issue Opinion and Order.)). Transcript to be made available to the public on 11/2/2022. (Rehling, Kathy) |

*004679*

Dated:  November 28, 2022          Respectfully submitted,

SBAITI & COMPANY PLLC

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
**Jonathan Bridges**
Texas Bar No. 24028835
JPMorgan Chase Tower
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
    jeb@sbaitilaw.com

**Counsel for Appellant**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically through the Court's ECF system, which provides notice to all parties of interest, on this 28th day of November, 2022.

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti

Case: 21-90011     Document: 00515803515     Page: 185     Date Filed: 03/31/2021

# EXHIBIT B

Appx 9580

000674

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01228-S Document 348 Filed 12/06/21 Page 187 of 349 PageID 7644

Case: 21-90011    Document: 00515803515    Page: 186    Date Filed: 03/31/2021

```
 1                   IN THE UNITED STATES BANKRUPTCY COURT
                      FOR THE NORTHERN DISTRICT OF TEXAS
 2                              DALLAS DIVISION

 3    In Re:                        )   Case No. 19-34054-sgj-11
                                    )   Chapter 11
                                    )
 4    HIGHLAND CAPITAL              )   Dallas, Texas
      MANAGEMENT, L.P.,             )   Monday, February 8, 2021
 5                                  )   9:00 a.m. Docket
                                    )
 6              Debtor.             )
                                    )   BENCH RULING ON CONFIRMATION
 7                                  )   HEARING [1808] AND AGREED
                                    )   MOTION TO ASSUME [1624]
 8    _____)

 9                         TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
10                    UNITED STATES BANKRUPTCY JUDGE.

      WEBEX APPEARANCES:
11
      For the Debtor:              Jeffrey Nathan Pomerantz
12                                 PACHULSKI STANG ZIEHL & JONES, LLP
                                   10100 Santa Monica Blvd.,
13                                    13th Floor
                                   Los Angeles, CA  90067-4003
14                                 (310) 277-6910

15    For the Official Committee   Matthew A. Clemente
      of Unsecured Creditors:      SIDLEY AUSTIN, LLP
16                                 One South Dearborn Street
                                   Chicago, IL  60603
17                                 (312) 853-7539

18    For James Dondero:           D. Michael Lynn
                                   John Y. Bonds, III
19                                 Bryan C. Assink
                                   BONDS ELLIS EPPICH SCHAFER
20                                   JONES, LLP
                                   420 Throckmorton Street,
21                                   Suite 1000
                                   Fort Worth, TX  76102
22                                 (817) 405-6900

23    For Get Good Trust and       Douglas S. Draper
      Dugaboy Investment Trust:    HELLER, DRAPER & HORN, LLC
24                                 650 Poydras Street, Suite 2500
                                   New Orleans, LA  70130
25                                 (504) 299-3300
```

EXHIBIT B

000675

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01220-N-SD   Document 1-18   Filed 11/08/21   Page 186 of 349   PageID 6245

Case: 21-90011   Document: 00515803515   Page: 187   Date Filed: 03/31/2021

2

```
 1    APPEARANCES, cont'd.:

 2    For Certain Funds and        Davor Rukavina
      Advisors:                    MUNSCH, HARDT, KOPF & HARR
 3                                 500 N. Akard Street, Suite 3800
                                   Dallas, TX  75201-6659
 4                                 (214) 855-7587

 5    For Certain Funds and        A. Lee Hogewood, III
      Advisors:                    K&L GATES, LLP
 6                                 4350 Lassiter at North Hills
                                     Avenue, Suite 300
 7                                 Raleigh, NC  27609
                                   (919) 743-7306
 8

 9    Recorded by:                 Michael F. Edmond, Sr.
                                   UNITED STATES BANKRUPTCY COURT
10                                 1100 Commerce Street, 12th Floor
                                   Dallas, TX  75242
11                                 (214) 753-2062

12    Transcribed by:              Kathy Rehling
                                   311 Paradise Cove
13                                 Shady Shores, TX  76208
                                   (972) 786-3063

14

15

16

17

18

19

20

21

22

23

24
             Proceedings recorded by electronic sound recording;
25               transcript produced by transcription service.
```

Appx. 4521

3

```
 1            DALLAS, TEXAS - FEBRUARY 8, 2021 - 9:08 A.M.
 2            THE COURT:  Please be seated.
 3       (Beeping.)
 4            THE COURT:  Someone needs to turn off their whatever.
 5       All right.  Good morning.  This is Judge Jernigan, and we
 6  have scheduled today a bench ruling regarding the Debtor's
 7  plan that we had a confirmation trial on last week.  This is
 8  Highland Capital Management, LP, Case No. 19-34054.
 9       Let me first make sure we've got Debtor's counsel on the
10  line.  Do we have --
11            MR. POMERANTZ:  Yes.
12            THE COURT:  -- Mr. Pomerantz?
13            MR. POMERANTZ:  Yes, Your Honor.  Good morning, Your
14  Honor.  Jeff Pomerantz; Pachulski Stang Ziehl & Jones; on
15  behalf of the Debtor.
16            THE COURT:  Okay.  Good morning.  Do we have the
17  Creditors' Committee on the phone?
18            MR. CLEMENTE:  Good morning, Your Honor.  Matthew
19  Clemente of Sidley Austin on behalf of the Creditors'
20  Committee.
21            THE COURT:  Good morning.  All right.  We had various
22  Objectors.  Do we have Mr. Dondero's counsel on the phone?
23            MR. LYNN:  Yes, Your Honor.  Michael Lynn, together
24  with John Bonds and Bryan Assink, for Jim Dondero.
25            THE COURT:  Good morning.  For the Trusts, the
```

Appx. 0592

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01270-N-SD Document 1418   Filed 05/06/22   Page 13 of 193   PageID 6847

Case: 21-90011     Document: 00515803515     Page: 189     Date Filed: 03/31/2021

4

1    Dugaboy and Get Good Trusts, do we have Mr. Draper?

2            MR. DRAPER:  Yes.  Douglas Draper is on the line,

3    Your Honor.

4            THE COURT:  Good morning.  Now, for what I'll call

5    the Funds and Advisor Objectors, do we have Mr. Rukavina and

6    your crew on the line?

7            MR. RUKAVINA:  Davor Rukavina.  And Lee Hogewood is

8    also on the line.

9            THE COURT:  All right.  Good morning to you.  All

10   right.  And we had objections pending from the U.S. Trustee as

11   well.  Do we have the U.S. Trustee on the line?

12       (No response.)

13           THE COURT:  All right.  If you're appearing, you're

14   on mute.  We're not hearing you.

15       All right.  Well, we have lots of other folks.  I don't

16   mean to be neglectful of them, but we're going to get on with

17   the ruling this morning.  This is going to take a while.  This

18   is a complex matter, so it should take a while.

19       All right.  Before the Court, of course, for consideration

20   is the Debtor's Fifth Amended Plan, first filed on November

21   24, 2020, as later modified on or around January 22, 2021,

22   with more amendments filed on or around February 1, 2021.  The

23   Court will hereinafter refer to this as the "Plan."

24       The parties refer to the Plan as a monetization plan

25   because it involves the gradual wind-down of the Debtor's

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01282-N-SD   Document 14-8   Filed 07/06/22   Page 14 of 193   PageID 6548

Case: 21-90011     Document: 00515803515     Page: 190     Date Filed: 03/31/2021

```
1   assets and certain of its funds over time, with the
2   Reorganized Debtor continuing to manage certain other funds
3   for a while, under strict governance and monitoring, and a
4   Claimants Trust will receive the proceeds of that process,
5   with the creditors receiving an interest in that trust.  There
6   is also anticipated to be Litigation Sub-Trust established for
7   the purpose of pursuing certain avoidance or other causes of
8   action for the benefit of creditors.
9       The recovery for general unsecured creditors is estimated
10  now at 71 percent.
11      The Plan was accepted by 99.8 percent of the dollar amount
12  of voting creditors in Class 8, the general unsecured class,
13  but as to numerosity, a majority of the class of general
14  unsecured creditors did not vote in favor of the plan.
15  Specifically, 27 claimants voted no and 17 claimants voted
16  yes.  All but one of the rejecting ballots were cast by
17  employees who, according to the Debtor, are unlikely to have
18  allowed claims because they are asserted for bonuses or other
19  compensation that will not become due.
20      Meanwhile, in a convenience class, Class 7, of general
21  unsecured claims under one million dollars, one hundred
22  percent of the 16 claimants who chose to vote in that class
23  chose to accept the Plan.
24      Because of the rejecting votes in Class 8, and because of
25  certain objections to the Plan, the Court heard two full days
```

Appx 9584

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-D Document 348   Filed 09/26/24 Page 130 of 193 PageID 6649

Case: 21-90011     Document: 00515803515     Page: 191     Date Filed: 03/31/2021

6

 1   of evidence, considering testimony from five witnesses and

 2   thousands of pages of documentary evidence, in considering

 3   whether to confirm the Plan pursuant to Sections 1129(a) and

 4   (b) of the Bankruptcy Code.

 5       The Court finds and concludes that the Plan meets all of

 6   the relevant requirements of Sections 1123, 1124, and 1129 of

 7   the Code, and other applicable provisions of the Bankruptcy

 8   Code, but is issuing this detailed ruling to address certain

 9   pending objections to the Plan, including but not limited to

10   objections regarding certain Exculpations, Releases, Plan

11   Injunctions, and Gatekeeping Provisions of the Plan.

12       The Court reserves the right to amend or supplement this

13   oral ruling in more detailed findings of fact, conclusions of

14   law, and an Order.

15       First, by way of introduction, this case is not your

16   garden-variety Chapter 11 case.  Highland Capital Management,

17   LP is a multibillion dollar global investment advisor,

18   registered with the SEC pursuant to the Investment Advisers

19   Act of 1940.  It was founded in 1993 by James Dondero and Mark

20   Okada.  Mr. Okada resigned from his role with Highland prior

21   to the bankruptcy case being filed.  Mr. Dondero was in

22   control of the Debtor as of the day it filed bankruptcy, but

23   agreed to relinquish control of it on or about January 9,

24   2020, pursuant to an agreement reached with the Official

25   Unsecured Creditors' Committee, which will be described later.

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-S Document 34-8 Filed 09/07/22 Page 196 of 1934 PageID 6750

Case: 21-90011     Document: 00515803515     Page: 192     Date Filed: 03/31/2021

7

1    Although Mr. Dondero remained on as an unpaid employee and

2    portfolio manager with the Debtor after January 9, 2020, his

3    employment with the Debtor terminated on October 9, 2020.  Mr.

4    Dondero continues to work for and essentially control numerous

5    nondebtor companies in the Highland complex of companies.

6        The Debtor is headquartered in Dallas, Texas.  As of the

7    October 2019 petition date, the Debtor employed approximately

8    76 employees.

9        Pursuant to various contractual arrangements, the Debtor

10   provides money management and advisory services for billions

11   of dollars of assets, including CLOs and other investments.

12   Some of these assets are managed pursuant to shared services

13   agreements with a variety of affiliated entities, including

14   other affiliated registered investment advisors.  In fact,

15   there are approximately 2,000 entities in the Byzantine

16   complex of companies under the Highland umbrella.

17       None of these affiliates of Highland filed for Chapter 11

18   protection.  Most, but not all, of these entities are not

19   subsidiaries, direct or indirect, of Highland.  And certain

20   parties in the case preferred not to use the term "affiliates"

21   when referring to them.  Thus, the Court will frequently refer

22   loosely to the so-called, in air quotes, "Highland complex of

23   companies" when referring to the Highland enterprise.  That's

24   a term many of the lawyers in the case use.

25       Many of the companies are offshore entities, organized in

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01208-S Document 10-18   Exhibit B   Page 17 of 19   PageID 7665

Case: 21-90011     Document: 00515803515     Page: 193     Date Filed: 03/31/2021

8

1   such faraway jurisdictions as the Cayman Islands and Guernsey.

2     The Debtor is privately owned 99.5 percent by an entity

3   called Hunter Mountain Investment Trust; 0.1866 percent by the

4   Dugaboy Investment Trust, a trust created to manage the assets

5   of Mr. Dondero and his family; 0.0627 percent by Mark Okada,

6   personally and through family trusts; and 0.25 percent by

7   Strand Advisors, Inc., the general partner.

8     The Debtor's primary means of generating revenue has

9   historically been from fees collected for the management and

10   advisory services provided to funds that it manages, plus fees

11   generated for services provided to its affiliates.

12     For additional liquidity, the Debtor, prior to the

13   petition date, would sell liquid securities in the ordinary

14   course, primarily through a brokerage account at Jefferies,

15   LLC.  The Debtor would also, from time to time, sell assets at

16   nondebtor subsidiaries and distribute those proceeds to the

17   Debtor in the ordinary course of business.

18     The Debtor's current CEO, James Seery, credibly testified

19   that the Debtor was "run at a deficient for a long time and

20   then would sell assets or defer employee compensation to cover

21   its deficits."  This Court cannot help but wonder if that was

22   necessitated because of enormous litigation fees and expenses

23   that Highland was constantly incurring due to its culture of

24   litigation, as further addressed hereafter.

25     Highland and this case are not garden-variety for so many

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-S   Document 18   Filed 10/05/22   Page 195 of 193   PageID 6352

Case: 21-90011     Document: 00515803515     Page: 194     Date Filed: 03/31/2021

1   reasons.  One is the creditor constituency.  Highland did not

2   file bankruptcy because of some of the typical reasons a large

3   company files Chapter 11.  For example, it did not have a

4   large asset-based secured lender with whom it was in default.

5   It only had relatively insignificant secured indebtedness

6   owing to Jefferies, with whom it had a brokerage account, and

7   one other entity called Frontier State Bank.

8       Highland did not have problems with trade vendors or

9   landlords.  It did not suffer any type of catastrophic

10  business calamity.  In fact, it filed Chapter 11 six months

11  before the COVID-19 pandemic was declared.  The Debtor filed

12  Chapter 11 due to a myriad of massive unrelated business

13  litigation claims that it was facing, many of which had

14  finally become liquidated or were about to become liquidated

15  after a decade or more of contentious litigation in multiple

16  fora all over the world.

17      The Unsecured Creditors' Committee in this case has

18  referred to the Debtor under its former chief executive, Mr.

19  Dondero, as a serial litigator.  This Court agrees with that

20  description.  By way of example, the members of the Creditors'

21  Committee and their history of litigation with the Debtor and

22  others in the Highland complex are as follows:

23      First, the Redeemer Committee of the Highland Crusader

24  Fund, which I'll call the Redeemer Committee.  This Creditors'

25  Committee member obtained an arbitration award against the

10

1  Debtor of more than $190 million, inclusive of interest,

2  approximately five months before the petition date from a

3  panel of the American Arbitration Association.  It was on the

4  verge of having that award confirmed by the Delaware Chancery

5  Court immediately prior to the petition date, after years of

6  disputes that started in late 2008 and included legal

7  proceedings in Bermuda.  This creditor's claim was settled

8  during the bankruptcy case in the amount of approximately

9  $137.7 million.  The Court is omitting various details and

10  aspects of that settlement.

11      The second Creditors' Committee member, Acis Capital

12  Management, LP, which was formerly in the Highland complex of

13  companies but was not affiliated with Highland as of the

14  petition date.  This UCC member and its now-owner, Josh Terry,

15  were involved in litigation with Highland dating back to 2016.

16  Acis was forced into an involuntary bankruptcy in the

17  Bankruptcy Court for the Northern District of Texas, Dallas

18  Division, by Josh Terry, who was a former Highland portfolio

19  manager, in 2018 after Josh Terry obtained an approximately $8

20  million arbitration award and judgment against Acis that was

21  issued by a state court in Dallas County, Texas.  Josh Terry

22  was ultimately awarded the equity ownership of Acis by the

23  Dallas Bankruptcy Court in the Acis bankruptcy case.

24      Acis subsequently asserted a multimillion dollar claim

25  against Highland in the Dallas Bankruptcy Court for Highland's

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-N   Document 10-18   Filed 10/06/22   Page 20 of 193   PageID 7754

Case: 21-90011      Document: 00515803515      Page: 196      Date Filed: 03/31/2021

11

```
 1   alleged denuding of Acis in fraud of its creditors, primarily
 2   Josh Terry.
 3       The litigation involving Acis and Mr. Terry dates back to
 4   mid-2016, and has continued on, with numerous appeals of
 5   bankruptcy court orders, including one appeal still pending at
 6   the United States Court of Appeals for the Fifth Circuit.
 7       There was also litigation involving Josh Terry and Acis in
 8   the Royal Court of the Island of Guernsey and in a court in
 9   New York.
10       The Acis claim was settled during this bankruptcy case in
11   court-ordered mediation for approximately $23 million.  Other
12   aspects and details of this settlement are being omitted.
13       Now, the third Creditors' Committee member, UBS
14   Securities.  It's a creditor who filed a proof of claim in the
15   amount of $1,039,000,000 in the Highland case.  Yes, over one
16   billion dollars.  The UBS claim was based on the amount of a
17   judgment that UBS received from a New York state court in 2020
18   after a multi-week bench trial which had occurred many months
19   earlier on a breach of contract claim against other entities
20   in the Highland complex.  UBS alleged that the Debtor should
21   be liable for the judgment.  The UBS litigation related to
22   activities that occurred in 2008.  The litigation involving
23   UBS and Highland and its affiliates was pending for more than
24   a decade, there having been numerous interlocutory appeals
25   during its history.
```

12

1        The Debtor and UBS recently announced a settlement of the

2   UBS claim, which came a few months after court-ordered

3   mediation.  The settlement is in the amount of $50 million as

4   a general unsecured claim, $25 million as a subordinated

5   claim, and $18 million of cash coming from a nondebtor entity

6   in the Highland complex known as Multistrat.  Other aspects of

7   this settlement are being omitted.

8        The fourth and last Creditors' Committee member is Meta-e

9   Discovery.  It is a vendor who happened to supply litigation

10  and discovery-related services to the Debtor over the years.

11  It had unpaid invoices on the petition date of more than

12  $779,000.

13       It is fair to say that the members of the Creditors'

14  Committee in this case all have wills of steel.  They fought

15  hard before and during the bankruptcy case.  The members of

16  the Creditors' Committee are highly sophisticated and have had

17  highly sophisticated professionals representing them.  They

18  have represented their constituency in this case as

19  fiduciaries extremely well.

20       In addition to these Creditors Committee members, who were

21  all embroiled in years of litigation with Highland and its

22  affiliates in various ways, the Debtor has been in litigation

23  with Patrick Daugherty, a former limited partner and employee

24  of Highland, for many years in both Delaware and Texas state

25  courts.  Patrick Daugherty filed a proof of claim for "at

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01228-N-SD Document 0-18   Filed 09/27/24   Page 22 of 193   PageID 756

Case: 21-90011     Document: 00515803515     Page: 198     Date Filed: 03/31/2021

13

 1   least $37.4 million" relating to alleged breached employment-

 2   related agreements and for the tort of defamation arising from

 3   a 2017 press release posted by the Debtor.

 4        The Debtor and Patrick Daugherty recently announced a

 5   settlement of the Patrick Daugherty claim in the amount of

 6   $750,000 cash on the effective date, an $8.25 million general

 7   unsecured claim, and a $2.75 million subordinated claim.

 8   Other aspects and details of this settlement are being

 9   omitted.

10        Additionally, an entity known as HarbourVest, who invested

11   more than $70 million with an entity in the Highland complex,

12   asserted a $300 million proof of claim against Highland,

13   alleging, among other things, fraud and RICO violations.  The

14   HarbourVest claim was settled during the bankruptcy case for a

15   $45 million general unsecured claim and a $35 million junior

16   claim.

17        Other than these claims just described, most of the other

18   claims in this case are claims asserted against the Debtor by

19   other entities in the Highland complex, most of which entities

20   the Court finds to be controlled by Mr. Dondero; claims of

21   employees who believe that they are entitled to large bonuses

22   or other types of deferred compensation; and claims of

23   numerous law firms that did work for Highland and were unpaid

24   for amounts due to them on the petition date.

25        Yet another reason this is not your garden-variety Chapter

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01228-S Document 4-3   Filed 06/22/21   Page 230 of 349   PageID 7357

Case: 21-90011     Document: 00515803515     Page: 199     Date Filed: 03/31/2021

14

 1   11 case is its postpetition corporate governance structure.

 2   Highland filed bankruptcy October 16, 2019.  Contentiousness

 3   with the Creditors' Committee began immediately, with first

 4   the Committee's request for a change of venue from Delaware to

 5   Dallas, and then a desire by the Committee and the U.S.

 6   Trustee for a Chapter 11 or 7 trustee to be appointed due to

 7   concerns over and distrust of Mr. Dondero and his numerous

 8   conflicts of interest and alleged mismanagement or worse.

 9       After many weeks of the threat of a trustee lingering, the

10   Debtor and the Creditors' Committee negotiated and the Court

11   approved a corporate governance settlement on January 9, 2020

12   that resulted in Mr. Dondero no longer being an officer or

13   director of the Debtor or of its general partner, Strand.

14       As part of the court-approved settlement, three eminently-

15   qualified Independent Directors were chosen by the Creditors'

16   Committee and engaged to lead Highland through its Chapter 11

17   case.  They were James Seery, John Dubel, and Retired

18   Bankruptcy Judge Russell Nelms.  They were technically the

19   Independent Directors of Strand, the general partner of the

20   Debtor.  Mr. Dondero had previously been the sole director of

21   Strand, and thus the sole person in ultimate control of the

22   Debtor.

23       The three independent board members' resumes are in

24   evidence.  James Seery eventually was named CEO of the Debtor.

25   Suffice it to say that this changed the entire trajectory of

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01228-S   Document 103   Filed 12/06/22   Page 24 of 193   PageID 758

Case: 21-90011      Document: 00515803515      Page: 200      Date Filed: 03/31/2021

15

1    the case.  This saved the Debtor from a trustee.  The Court

2    trusted the new directors.  The Creditors' Committee trusted

3    them.  They were the right solution at the right time.

4        Because of the unique character of the Debtor's business,

5    the Court believed this solution was far better than a

6    conventional Chapter 7 or 11 trustee.  Mr. Seery, in

7    particular, knew and had vast experience at prominent firms

8    with high-yield and distressed investing similar to the

9    Debtor's business.  Mr. Dubel had 40 years of experience

10   restructuring large, complex businesses and serving on their

11   boards of directors in this context.  And Retired Judge Nelms

12   had not only vast bankruptcy experience but seemed

13   particularly well-suited to help the Debtor maneuver through

14   conflicts and ethical quandaries.

15       By way of comparison, in the Chapter 11 case of Acis, the

16   former affiliate of Highland that this Court presided over two

17   or three years ago, which company was much smaller in size and

18   scope than Highland, managing only five or six CLOs, a Chapter

19   11 trustee was elected by the creditors that was not on the

20   normal rotation panel for trustees in this district, but

21   rather was a nationally-known bankruptcy attorney with more

22   than 45 years of large Chapter 11 case experience.  This

23   Chapter 11 trustee performed valiantly, but was sued by

24   entities in the Highland complex shortly after he was

25   appointed, which this Court had to address.  The Acis trustee

000689
Appx 0684

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01022-N-SD Document 34-8   Filed 12/02/21   Page 250 of 934   PageID 17659

Case: 21-90011     Document: 00515803515     Page: 201     Date Filed: 03/31/2021

16

```
 1    could not get Highland and its affiliates to agree to any

 2    actions taken in the case, and he finally obtained

 3    confirmation of a plan over Highland and its affiliates'

 4    objections in his fourth attempted plan, which confirmation

 5    then was promptly appealed by Highland and its affiliates.

 6        Suffice it to say it was not easy to get such highly-

 7    qualified persons to serve as independent board members and

 8    CEO of this Debtor.  They were stepping into a morass of

 9    problems.  Naturally, they were worried about getting sued, no

10    matter how defensible their efforts might be, given the

11    litigation culture that enveloped Highland historically.  It

12    seemed as though everything always ended in litigation at

13    Highland.

14        The Court heard credible testimony that none of them would

15    have taken on the role of Independent Director without a good

16    D&O insurance policy protecting them, without indemnification

17    from Strand, guaranteed by the Debtor; without exculpation for

18    mere negligence claims; and without a gatekeeper provision,

19    such that the Independent Directors could not be sued without

20    the bankruptcy court, as a gatekeeper, giving a potential

21    plaintiff permission to sue.

22        With regard to the gatekeeper provision, this was

23    precisely analogous to what bankruptcy trustees have pursuant

24    to the so-called "Barton Doctrine," which was first

25    articulated in an old U.S. Supreme Court case.
```

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-S   Document 16-3   Filed 12/06/21   Page 206 of 934   PageID 7760

Case: 21-90011      Document: 00515803515      Page: 202      Date Filed: 03/31/2021

17

1    The Bankruptcy Court approved all of these protections in

2    a January 9, 2020 order.  No one appealed that order.  And Mr.

3    Dondero signed the settlement agreement that was approved by

4    that order.

5    An interesting fact about the D&O policy came out in

6    credible testimony at the confirmation hearing.  Mr. Dubel and

7    an insurance broker from Aon, named Marc Tauber, both credibly

8    testified that the gatekeeper provision was needed because of

9    the so-called, and I quote, "Dondero Exclusion" in the

10   insurance marketplace.

11   Specifically, the D&O insurers in the marketplace did not

12   want to cover litigation claims that might be brought against

13   the Independent Directors by Mr. Dondero because the

14   marketplace of D&O insurers are aware of Mr. Dondero's

15   litigiousness.  The insurers would not have issued a D&O

16   policy to the Independent Directors without either the

17   gatekeeping provision or a "Dondero Exclusion" being in the

18   policy.

19   Thus, the gatekeeper provision was part of the January 9,

20   2020 settlement.  There was a sound business justification for

21   it.  It was reasonable and necessary.  It was consistent with

22   the Barton Doctrine in an extremely analogous situation --

23   *i.e.*, the independent board members were analogous to a three-

24   headed trustee in this case, if you will.  Mr. Dondero signed

25   off on it.  And, again, no one ever appealed the order

**000691**

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01070-S Document 34-18   Filed 12/06/21 Page 204 of 199 Page ID 761

Case: 21-90011      Document: 00515803515      Page: 203      Date Filed: 03/31/2021

18

1  approving it.

2      The Court finds that, like the Creditors' Committee, the

3  independent board members here have been resilient and

4  unwavering in their efforts to get the enormous problems in

5  this case solved.  They seem to have at all times negotiated

6  hard and with good faith.  As noted previously, they changed

7  the entire trajectory of this case.

8      Still another reason why this was not your garden-variety

9  case was the mediation effort.  In summer of 2020, roughly

10 nine months into the Chapter 11 case, this Court ordered

11 mediation among the Debtor, Acis, UBS, the Redeemer Committee,

12 and Mr. Dondero.  The Court selected co-mediators, since this

13 seemed like such a Herculean task, especially during COVID-19,

14 where people could not all be in the same room.  Those co-

15 mediators were Retired Bankruptcy Judge Allan Gropper from the

16 Southern District of New York, who had a distinguished career

17 presiding over complex Chapter 11 cases, and Ms. Sylvia Mayer,

18 who likewise has had a distinguished career, first as a

19 partner in a preeminent law firm working on complex Chapter 11

20 cases, and subsequently as a mediator and arbitrator in

21 Houston, Texas.

22     As noted earlier, the Acis claim was settled during the

23 mediation, which seemed nothing short of a miracle to this

24 Court, and the UBS claim was settled many months later, and

25 this Court believes the groundwork for that ultimate

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01220-S Document 24-1 Exhibit 18   Page 205 of 349   Page ID 2362

Case: 21-90011      Document: 00515803515      Page: 204      Date Filed: 03/31/2021

19

1    settlement was laid, or at least helped, through the

2    mediation.  And as earlier noted, other enormous claims have

3    been settled during this case, including that of the Redeemer

4    Committee, who, again, had asserted approximately or close to

5    a $200 million claim; HarbourVest, who asserted a $300 million

6    claim; and Patrick Daugherty, who asserted close to a $40

7    million claim.

8         This Court cannot stress strongly enough that the

9    resolution of these enormous claims and the acceptance of all

10   of these creditors of the Plan that is now before the Court

11   seems nothing short of a miracle.  It was more than a year in

12   the making.

13        Finally, a word about the current remaining Objectors to

14   the Plan before the Court.  Once again, the Court will use the

15   phrase "not garden-variety."  Originally, there were over one

16   dozen objections filed to this Plan.  The Debtor has made

17   various amendments or modifications to the Plan to address

18   some of these objections.  The Court finds that none of these

19   modifications require further solicitation, pursuant to

20   Sections 1125, 1126, 1127 of the Code, or Bankruptcy Rule

21   3019, because, among other things, they do not materially

22   adversely change the treatment of the claims of any creditor

23   or interest holder who has not accepted in writing the

24   modifications.

25        Among other things, there were changes to the projections

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-S Document 14-3   Filed 12/06/22   Page 29 of 193   PageID 7863

Case: 21-90011      Document: 00515803515      Page: 205      Date Filed: 03/31/2021

20

1   that the Debtor filed shortly before the confirmation hearing

2   that, among other things, show the estimated distribution to

3   creditors and compare plan treatment to a likely disbursement

4   in a Chapter 7.

5       These do not constitute a materially adverse change to the

6   treatment of any creditors or interest holders.  They merely

7   update likely distributions based on claims that have now been

8   settled, and they've otherwise incorporated more recent

9   financial data.  This happens often before confirmation

10  hearings.  The Court finds that it did not mislead or

11  prejudice any creditors or interest holders, and certainly

12  there was no need to resolicit the Plan.

13      The only Objectors to the Plan left at this time were Mr.

14  Dondero and entities that the Court finds are controlled by

15  him.  The standing of these entities to object to the Plan

16  exists, but the remoteness of their economic interest is

17  noteworthy, and the Court questions the good faith of the

18  Objectors.  In fact, the Court has good reason to believe that

19  these parties are not objecting to protect economic interests

20  they have in the Debtor, but to be disruptors.

21      Mr. Dondero wants his company back.  This is

22  understandable.  But it's not a good faith basis to lob

23  objections to the Plan.  The Court has slowed down

24  confirmation multiple times on the current Plan and urged the

25  parties to talk to Mr. Dondero.  The parties represent that

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01228-N-S Document 8   Exhibit 18   Page 1206762249 Page 30 of 193 Page ID 7864

Case: 21-90011     Document: 00515803515     Page: 206     Date Filed: 03/31/2021

21

1    they have, and the Court believes that they have.

2      Now, to be specific about the remoteness of the objectors'

3    interests, the Court will address them each separately.

4    First, Mr. Dondero has a pending objection.  Mr. Dondero's

5    only economic interest with regard to the Debtor at this point

6    is an unliquidated indemnification claim.  And based on

7    everything this Court has heard, his indemnification claim

8    will be highly questionable at this juncture.

9      Second, a joint objection has been filed by the Dugaboy

10    Trust and the Get Good Trust.  As for the Dugaboy Trust, it

11    was created to manage the assets of Mr. Dondero and his

12    family, and it owns a 0.1866 percent limited partnership

13    interest in the Debtor.  The Court is not clear what economic

14    interest the Get Good Trust has, but it likewise seems to be

15    related to Mr. Dondero, and it has been represented to the

16    Court numerous times that the trustee is Mr. Dondero's college

17    roommate.

18      Another group of Objectors that has joined together in one

19    objection is what the Court will refer to as the Highland and

20    NexPoint Advisors and Funds.  The Court understands they

21    assert disputed administrative expense claims against the

22    estate.  While the evidence presented was that they have

23    independent board members that run these companies, the Court

24    was not convinced of their independence from Mr. Dondero.

25    None of the so-called independent board members of these

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01022-N-SD  Document 118-3   Filed 12/08/22   Page 31 of 193   PageID 7655

Case: 21-90011     Document: 00515803515     Page: 207     Date Filed: 03/31/2021

22

1   entities have ever testified before the Court.  Moreover, they

2   have all been engaged with the Highland complex for many

3   years.

4       The witness who testified on these Objectors' behalves at

5   confirmation, Mr. Jason Post, their chief compliance officer,

6   resigned from Highland after more than twelve years in October

7   2020, at the same time that Mr. Dondero resigned or was

8   terminated by Highland.  And a prior witness recently for

9   these entities whose testimony was made part of the record at

10  the confirmation hearing essentially testified that Mr.

11  Dondero controlled these entities.

12      Finally, various NexBank entities objected to the Plan.

13  The Court does not believe they have liquidated claims.  Mr.

14  Dondero appears to be in control of these entities as well.

15      To be clear, the Court has allowed all of these objectors

16  to fully present arguments and evidence in opposition to

17  confirmation, even though their economic interests in the

18  Debtor appear to be extremely remote and the Court questions

19  their good faith.  Specifically on that latter point, the

20  Court considers them all to be marching pursuant to the orders

21  of Mr. Dondero.

22      In the recent past, Mr. Dondero has been subject to a TRO

23  and preliminary injunction by the Bankruptcy Court for

24  interfering with the current CEO's management of the Debtor in

25  specific ways that were supported by evidence.  Around the

23

```
 1    time that this all came to light and the Court began setting

 2    hearings on the alleged interference, Mr. Dondero's company

 3    phone supplied to him by Highland, which he had been asked to

 4    turn in, mysteriously went missing.  The Court merely mentions

 5    this in this context as one of many reasons that the Court has

 6    to question the good faith of Mr. Dondero and his affiliated

 7    objectors.

 8        The only other pending objection besides these objections

 9    of the Dondero and Dondero-controlled entities is an objection

10    of the United States Trustee pertaining to the release,

11    exculpation, and injunction provisions in the Plan.

12        In juxtaposition to these pending objections, the Court

13    notes that the Debtor has resolved earlier-filed objections to

14    the Plan filed by the IRS, Patrick Daugherty, CLO Holdco,

15    Ltd., numerous local taxing authorities, and certain current

16    and former senior-level employees of the Debtor.

17        With that rather detailed factual background addressed,

18    because certainly context matters here, the Court now

19    addresses what it considers the only serious objections raised

20    in connection with confirmation.  Specifically, the Plan

21    contain certain releases, exculpation, plan injunctions, and a

22    gatekeeper provision which are obviously not fully consensual,

23    since there are objections.  Certainly, these provisions are

24    mostly consensual when you consider that parties with hundreds

25    of millions of dollars' worth of legitimate claims have not
```

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01220-N-SD Document 348   Filed 12/06/21   Page 33 of 193  PageID 867

Case: 21-90011      Document: 00515803515      Page: 209      Date Filed: 03/31/2021

24

1  objected to them.

2       First, a word about plan releases generally, since the

3  Objectors at times seem to gloss over, in this Court's view,

4  relevant distinctions, and seem to refer to the plan releases

5  in this Plan and the exculpations and the plan injunctions all

6  as impermissible third-party releases, when, in fact, they are

7  not, *per se*.

8       It has, without a doubt, become quite commonplace in

9  complex Chapter 11 bankruptcy cases to have three categories

10  of releases in plans.  These three types are as follows.

11       First, Debtor Releases.  A debtor release involves a

12  release by the debtor and its bankruptcy estate of claims

13  against nondebtor third-parties.  For example, a release may

14  be granted in favor of creditors, directors, officers,

15  employees, professionals who participated in the bankruptcy

16  process.  This is the least-controversial type of release

17  because the debtor is extinguishing its own claims, which are

18  property of the estate, that a debtor has authority to utilize

19  or not, pursuant to Sections 541 and 363 of the Bankruptcy

20  Code.

21       Authority for a debtor release pursuant to a plan arises

22  out of Section 1123(b)(3)(A), which indicates that a plan may

23  provide for "the settlement or adjustment of any claim or

24  interest belonging to the debtor or to the estate."

25       In this context, it would appear that the only analysis

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01220-S Document 34-3   Filed 10/06/22   Page 34 of 193   PageID 8568

Case: 21-90011     Document: 00515803515     Page: 210     Date Filed: 03/31/2021

25

 1   required is to determine whether the release or settlement of

 2   the claim is an exercise of reasonable business judgment on

 3   that part of the debtor, is it fair and equitable, is it in

 4   the best interest of the estate, given all the relevant facts

 5   and circumstances?  Also relevant is whether there's

 6   consideration given of some sort by the releasees.

 7       Now, the second type of very commonplace Chapter 11 plan

 8   release is an exculpation.  Chapter 11 plans also very often

 9   have these exculpation provisions, and they're something much

10   narrower in scope and time than a full-fledged release.  An

11   exculpation provision is more like a shield for a certain

12   subset of key actors in the case for their acts during and in

13   connection with the case, which acts may have been merely

14   negligent.

15       Specifically, a plan may absolve certain actors -- usually

16   estate fiduciaries -- such as an Official Unsecured Creditors'

17   Committee and its members, Committee professionals, sometimes

18   Debtor professionals, senior management, officers and

19   directors of the Debtor, from any liability for postpetition

20   negligent conduct -- *i.e.*, conduct which occurred during the

21   administration of the Chapter 11 case and in the negotiation,

22   drafting, and implementation of a plan.  An exculpation

23   provision typically excludes gross negligence and willful

24   misconduct.  It is usually worded in a passive voice, so it

25   may seem a little unclear as to whether it is actually a

26

1 | release and by whom.

2 |     In any event, the rationale is that parties who actively

3 | participate in a court-approved process -- often, court-

4 | approved transactions by court order -- should receive

5 | protection for their work.  Otherwise, who would want to work

6 | in such a messy, contentious situation, only to be sued for

7 | alleged negligence for less-than-perfect end results?

8 |     Chapter 11 end results are not always pretty.  One could

9 | argue that these exculpation provisions, though, are much ado

10 | about nothing.  Why?  For one thing, again, the shield is only

11 | as to negligent conduct.  There is no shield for other

12 | problematic conduct, such as gross negligence or willful

13 | misconduct.

14 |     Second, in many situations, any claims or causes of action

15 | that might arise will belong to the Debtor or its estate.

16 | Thus, they would already be released pursuant to a debtor

17 | release.

18 |     Additionally, there is case law stating that, where a

19 | claim is brought against an estate professional whose fees

20 | have already been approved in a final fee application, any

21 | claims are barred by *res judicata*.  Thus, exculpated

22 | professionals would only have potential exposure for a very

23 | short window of time, until final fee applications.

24 |     Additionally, certain case law in Texas makes clear that

25 | an attorney generally does not owe any duties to persons other

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-N-SD   Document 34-8   Filed 12/06/22   Page 36 of 193   PageID 8670

Case: 21-90011      Document: 00515803515      Page: 212      Date Filed: 03/31/2021

27

```
 1    than his own client.
 2        All of this suggests that the shield of a typical
 3    exculpation provision may rarely become useful or needed.
 4        Moving now to the third type of release, a true third-
 5    party release, Chapter 11 plans also sometimes contain third-
 6    party releases.  A true third-party release involves the
 7    release of claims held by nondebtor third parties against
 8    other nondebtor third parties, and there is often no
 9    limitation on the scope and time of the claims released.
10        This is the most heavily scrutinized of the three types of
11    plan releases.  Much of the case authority focuses on whether
12    a third-party release is consensual or not in analyzing their
13    propriety and/or enforceability.
14        In Highland, there are no third-party releases.  Rather,
15    there are debtor releases and exculpations.  There also happen
16    to be plan injunctions and gatekeeper provisions that have
17    been challenged.  The Objectors argue that these provisions
18    violate the Fifth Circuit's opinion in Pacific Lumber or are
19    otherwise beyond the jurisdiction or authority of the
20    bankruptcy court.  These arguments are now addressed.
21        First, the debtor release is found at Article IX.D of the
22    Plan.  The language, in pertinent part, reads as follows.  "On
23    and after the effective date, each Released Party is deemed to
24    be hereby conclusively, absolutely, unconditionally,
25    irrevocably, and forever released and discharged by the Debtor
```

000701
Appx 0616

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-N   Document 34-18   Filed 12/06/21   Page 37 of 193   PageID 7871

Case: 21-90011      Document: 00515803515      Page: 213      Date Filed: 03/31/2021

28

```
 1   and the Estate, in each case on behalf of themselves and their

 2   respective successors, assigns, and representatives, including

 3   but not limited to the Claimant Trust and the Litigation Sub-

 4   Trust, from any and all causes of action, including any

 5   derivative claims, asserted on behalf of the Debtor, whether

 6   known or unknown, foreseen or unforeseen, matured or

 7   unmatured, existing or hereafter arising, in law, equity,

 8   contract, tort, or otherwise, that the Debtor or the Estate

 9   would have been legally entitled to assert in their own right,

10   whether individually or collectively, or on behalf of the

11   holder of any claim against, or interest in, a debtor or other

12   person."

13       There are certain exceptions discussed, and then Released

14   Parties are defined at Definition 113 of the Plan collectively

15   as:  the Independent Directors; Strand, solely from the date

16   of the appointment of the Independent Directors through the

17   effective date; the CEO/CRO; the Committee, the members of the

18   Committee, in their official capacities; the professionals

19   retained by the Debtor and the Committee in the Chapter 11

20   case; and the employees.  This is a defined term in the Plan

21   Supplement and does not include certain employees.

22       To be clear, these are not third-party releases such as

23   addressed in the *Pacific Lumber* case.  These are the Debtor's

24   and/or the bankruptcy estate's causes of action that are

25   proposed to be released.  Releases by a debtor are
```

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01220-N-SD Document 10-18   Filed 12/06/21   Page 38 of 193   PageID 7872

Case: 21-90011      Document: 00515803515      Page: 214      Date Filed: 03/31/2021

29

1   discretionary and can be provided by a debtor to persons who

2   have provided consideration to the debtor and the estate.

3   Section 1123(b)(3)(A) of the Bankruptcy Code permits this.

4        The evidence here supported the notion that these releases

5   are a *quid pro quo* for the Released Parties' significant

6   contributions to a highly complex and contentious

7   restructuring.  The Debtor is releasing its own claims.  Some

8   of the Released Parties would have indemnification rights

9   against the Debtor.  And the Debtor's CEO, James Seery,

10  credibly testified that he does not believe any claims exist

11  as to the Released Parties.  The Court approves the Debtor

12  releases and overrules the objections to them.

13       Next, the exculpations appear at Article IX.C of the Plan

14  and provide as follows:  Subject in all respects to Article

15  XII.D of the Plan, to the maximum extent permitted by

16  applicable law, no Exculpated Party will have or incur, and

17  each Exculpated Party is hereby exculpated from, any claim,

18  obligation, suit, judgment, damage, demand, debt, right, cause

19  of action, remedy, loss, and liability for conduct occurring

20  on or after the petition date in connection with or arising

21  out of the filing and administration of the Chapter 11 case,

22  the negotiation and pursuit of a disclosure statement, the

23  Plan, or the solicitation of votes for or confirmation of the

24  Plan, the funding or consummation of the Plan, or any related

25  agreements, instruments, et cetera, et cetera, whether or not

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01022-N-SD Document 14-8   Filed 10/06/22   Page 39 of 193 PageID 9673

Case: 21-90011       Document: 00515803515       Page: 215       Date Filed: 03/31/2021

30

```
 1   such Plan distributions occur following the effective date,

 2   the implementation of the Plan, and any negotiation,

 3   transactions, and documentation in connection with the

 4   foregoing clauses, provided, however, the foregoing will not

 5   apply to any acts or omissions of any Exculpated Party arising

 6   out of or related to acts or omissions that constitute bad

 7   faith, fraud, gross negligence, criminal misconduct, or

 8   willful misconduct; or Strand or any employee other than with

 9   respect to actions taken by such entities from the date of

10   appointment of the Independent Directors through the effective

11   date.

12       Exculpated Parties are later defined at Section -- or,

13   earlier defined at Section 62 of the Plan, Definition No. 62

14   of the Plan, as later limited by the Debtor, as announced in

15   the confirmation hearing.  And so these are the Exculpated

16   Parties:  the Debtor and its successors and assigns; the

17   employees, certain employees, as defined; Strand; the

18   Independent Directors; the Committee, the members of the

19   Committee, in their official capacities; the professionals

20   retained by the Debtor and the Committee in the Chapter 11

21   case; the CEO and CRO; and the related persons as to each of

22   these parties listed in Part (iv) through (viii) above;

23   provided, for the avoidance of doubt, and it goes on to say

24   Dondero, Mark Okada, and various others aren't Exculpated

25   Parties.
```

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01220-S   Document 18   Filed 12/06/21   Page 40 of 193   PageID 9574

Case: 21-90011      Document: 00515803515      Page: 216      Date Filed: 03/31/2021

31

1      Now, as earlier mentioned, the Objectors argue that

2  *Pacific Lumber*, 584 F.3d 229, a Fifth Circuit case from 2009,

3  categorically rejects the permissibility of nonconsensual

4  exculpations as well as third-party releases in a Chapter 11

5  plan.  So the Court is going to take a deep dive into that

6  assertion.

7      In *Pacific Lumber*, the Fifth Circuit reviewed on appeal

8  numerous challenges to a confirmed plan of affiliated debtors

9  known as Palco and Scopac and four subsidiaries.  The debtor

10  Palco owned and operated the sawmill, a power plant, and even

11  a town called Scotia, California.  The debtor Scopac owned

12  timberlands.  A creditor, a secured creditor called Marathon

13  had a claim against Palco's assets.  Marathon estimated

14  Palco's assets were worth $110 million.  Its claim was $160

15  million.  Meanwhile, other parties had large secured claims

16  against the other debtor, Scopac.

17      The plan that the bankruptcy court confirmed, which was on

18  appeal to the Fifth Circuit, was filed by both the secured

19  creditor Marathon and a joint plan proponent called MRC.  MRC

20  was a competitor of the debtor Palco.  The Marathon/MRC plan

21  proposed to dissolve all the debtors, cancel intercompany

22  debts, and create two new entities, Townco and Newco.  Almost

23  all of the debtor Palco's assets, including the town of

24  Scotia, California, would be transferred to Townco.  The

25  timberlands and other assets, including the sawmill, would be

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 8:21-cv-01020-SD  Document 34-13   Filed 12/08/22   Page 41 of 193  PageID 9575

Case: 21-90011      Document: 00515803515      Page: 217      Date Filed: 03/31/2021

32

1   placed in Newco.

2       Marathon and MRC proposed to contribute $580 million to

3   Newco to pay claims against Scopac.  And Marathon would

4   convert its secured claim against Palco's assets into equity,

5   giving it full ownership of Townco, a 15 percent stake in

6   Newco, and a new note for the sawmill's working capital.  MRC

7   would own the other 80 percent of Newco and would manage and

8   run the company.

9       An indenture trustee for the secured indebtedness against

10  Scopac -- which, by the way, had also been a plan proponent of

11  a competing plan -- appealed the confirmation order, raising

12  eight distinct issues on appeal.  One of the eight issues

13  pertained to what the Fifth Circuit referred to as a

14  "nondebtor exculpation and release clause."  This issue is

15  discussed on the last two pages of a very lengthy opinion.

16      While the complained-of provision is not quoted verbatim

17  in the *Pacific Lumber* opinion, it appears to have been a

18  typical exculpation clause.  Not a third-party release; a

19  typical exculpation clause.  The Fifth Circuit stated, "The

20  plan releases MRC, Marathon, Newco, Townco, and the Unsecured

21  Creditors' Committee, and their personnel, from liability,

22  other than for willful and gross negligence related to

23  proposing, implementing, and administering the plan" at Page

24  251.

25      The Fifth Circuit held that "the nondebtor releases must

33

1    be struck except with respect to the Creditors' Committee and

2    its members."

3        Footnote 26 of the opinion also states that the appellants

4    had "not briefed why Newco and Townco or their officers and

5    directors should not be released," and so "we do not analyze

6    their position."  Rather, the Fifth Circuit merely analyzed

7    why the exculpation provision was not permissible as to the

8    two plan proponents, MRC and Marathon.

9        Thus, the Court views *Pacific Lumber* as being a holding

10   that squarely addressed the propriety of two plan proponents,

11   a secured lender and a third-party competitor purchaser of the

12   Debtors, obtaining nonconsensual exculpation in the plan.

13   However, its reasoning certainly cannot be ignored, strongly

14   suggesting it would not be inclined to approve an exculpation

15   for any party other than a Creditors' Committee or its

16   members.

17       As far as the Fifth Circuit's reasoning, it relied on

18   Bankruptcy Code Section 524(e) for striking down the

19   exculpations, stating, "The law states, however, that

20   discharge of a debt of the debtor does not affect the

21   liability of any other entity on such debt."  Page 251.  The

22   opinion suggests that MRC and Marathon may have tried to argue

23   that 524(e) did not apply to their exculpations because MRC

24   and Marathon were not liable as co-obligors in any way on any

25   of the debtor's debt.

App. 0622

34

```
1      The Fifth Circuit seemed dismissive of this argument,
2  stating as follows, "MRC/Marathon insist the release clause is
3  part of their bargain because, without the clause, neither
4  company would have been willing to provide the plan's
5  financing.  Nothing in the records suggests that MRC/Marathon,
6  the Committee, or the Debtor's officers and directors were co-
7  liable for the Debtor's prepetition debts.  Instead, the
8  bargain the proponents claim to have purchased is exculpation
9  from any negligence that occurred during the course of the
10  case.  Any costs the released parties might incur defending
11  against suits alleging such negligence are unlikely to swamp
12  either of these parties or the consummated reorganization.  We
13  see little equitable about protecting the released nondebtors
14  from negligence suits arising out of the reorganization."
15      The Court goes on to note that, in a variety of cases,
16  that releases have been approved, but these cases "seem
17  broadly to foreclose nonconsensual nondebtor releases and
18  permanent injunctions."
19      The Court then adds at Footnote 27 that the Fifth Circuit
20  in the past did not set aside challenged plan releases that
21  were in final nonappealable orders and were the subject of
22  collateral attack much later, citing its famous Republic
23  Supply v. Shoaf case, where the Fifth Circuit ruled that res
24  judicata barred a debtor from bringing a claim that was
25  specifically and expressly released by a confirmed
```

35

1  reorganization plan because the debtor -- the objector failed

2  to object to the release at confirmation.

3       The Fifth Circuit in *Pacific Lumber* also noted that the

4  Bankruptcy Code permits bankruptcy courts to enjoin third-

5  party asbestos claims under certain circumstances, 524(g),

6  which the Court said suggests nondebtor releases are most

7  appropriate as a method to channel mass tort claims towards a

8  specific pool of assets, citing numerous cases, including

9  *Johns-Manville*.

10      In reach its holding, the Fifth Circuit saw no reason to

11 uphold exculpation to the plan proponents MRC and Marathon,

12 seeming to find it inconsistent with 524(e) under the facts at

13 bar, but the Court did uphold exculpation for the Creditors'

14 Committee and its members, stating, "We agree, however, with

15 courts that have held that 1103(c) under the Code, which lists

16 the Creditors' Committee's powers, implies Committee members

17 have qualified immunity for actions within the scope of their

18 duties."  Numerous cites.  "The Creditors' Committee and its

19 members are the only disinterested volunteers among the

20 parties sought to be released here.  The scope of protection,

21 which does not insulate them from willful and gross

22 negligence, is adequate."

23      Thus, the Court held that the exculpation provisions in

24 *Pacific Lumber* must be struck except with regard to the

25 Creditors' Committee and its members.

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01228-N-SD Document 14-8  Filed 12/06/22  Page 45 of 193  PageID 9679

Case: 21-90011      Document: 00515803515      Page: 221      Date Filed: 03/31/2021

36

1    Now, after all of that, this Court believes the following
2  can be gleaned from *Pacific Lumber*.  First, the Fifth Circuit
3  hinted that consensual exculpations and/or consensual
4  nondebtor third-party releases are permissible.  The Court
5  was, of course, dealing with nonconsensual exculpations in
6  *Pacific Lumber*.  In this regard, I note Page 252, where the
7  Court cited various prior Fifth Circuit authority and then
8  stated, "These cases seem broadly to foreclose nonconsensual
9  nondebtor releases and permanent injunctions."

10    The second thing that can be gleaned from *Pacific Lumber*:
11  The Fifth Circuit hinted that nondebtor releases may be
12  permissible in cases involving global settlements of mass
13  claims against the debtors and co-liable parties.  The Court,
14  of course, referred to 524(g), but various other cases which
15  approved nondebtor releases where mass claims were channeled
16  to a specific pool of assets.

17    Third, the Fifth Circuit outright held that exculpations
18  from negligence for a Creditors' Committee and its members are
19  permissible because the concept is both consistent with
20  1103(c), "which implies Committee members have qualified
21  immunity for actions within the scope of their duties," and a
22  good policy result, since "if members of the Committee can be
23  sued by persons unhappy with the outcome of the case, it will
24  be extremely difficult to find members to serve on an official
25  committee."

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01022-N-SD Document 18 Filed 12/06/22 Page 46 of 193 PageID 9580

Case: 21-90011     Document: 00515803515     Page: 222     Date Filed: 03/31/2021

1        Fourth, the Fifth Circuit recognized in *Pacific Lumber*

2    that *res judicata* may bar complaints regarding an

3    impermissible plan release, citing to its earlier *Republic*

4    *Supply v. Shoaf* opinion.

5        Now, being ever-mindful of the Fifth Circuit's words in

6    *Pacific Lumber*, this Court cannot help but wonder about at

7    least three things.

8        First, did the Fifth Circuit leave open the door that

9    facts/equities might sometimes justify approval of an

10   exculpation for a person other than a Creditors' Committee and

11   its members?  For example, the Fifth Circuit stated, in

12   referring to the plan proponents Marathon and MRC, that "Any

13   costs the released parties might incur defending against suits

14   alleging such negligence are unlikely to swamp either of these

15   parties or the consummated reorganization."  Here, this Court

16   can easily expect the proposed exculpated parties to incur

17   costs that could swamp them and the reorganization based on

18   the past litigious conduct of Mr. Dondero and his controlled

19   entities.  Do these words of the Fifth Circuit hint that

20   equities/economics might sometimes justify an exculpation?

21       Second, did the Fifth Circuit's rationale for permitted

22   exculpations to Creditors' Committee and their members, which

23   was clearly policy-based, based on their implied qualified

24   immunity flowing from their duties in Section 1103 and their

25   disinterestedness, and the importance of their role in a

Case 22-03052-sgj    Doc 10-18    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01228-X-SD Document 1-18    Filed 12/24/21 Page 47 of 193 Page ID 793

Case: 21-90011       Document: 00515803515       Page: 223       Date Filed: 03/31/2021

38

```
 1   Chapter 11 case, did this rationale leave open the door to

 2   sometimes permitting exculpations to other parties in a

 3   particular Chapter 11 case besides Creditors' Committees and

 4   their members?  For example, in a situation such as the

 5   Highland case, in which Independent Directors, brought in to

 6   avoid a trustee, are more like a Creditors' Committee than an

 7   incumbent board of directors.

 8       Third, the Fifth Circuit's sole statutory basis was

 9   Section 524(e).  This Court would humbly submit that this is a

10   statute dealing with prepetition liability in which some

11   nondebtor is liable with the Debtor.  Exculpation is a concept

12   dealing with postpetition liability.

13       The Ninth Circuit recently, in a case called Blixseth v.

14   Credit Suisse, 961 F.3d 1074 (9th Cir. 2020), approved the

15   validity of an exculpation clause incorporated into a

16   confirmed Chapter 11 plan that purported to absolve certain

17   nondebtor parties that were "closely involved" in drafting the

18   plan.  They were the largest secured creditor, a purchaser,

19   and an individual who was an indirect owner of certain of the

20   debtor companies.  The exculpation was from any negligence,

21   liability, for "any act or omission in connection with,

22   related to, or arising out of the Chapter 11 cases."

23       By the time the appeal was before the Ninth Circuit, the

24   only issue was the propriety of the exculpation clause as to

25   the large secured creditor, which was also a plan proponent,
```

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01022-N-SD   Document 18   Page 225 of 349   Page ID 953

Case: 21-90011     Document: 00515803515     Page: 224     Date Filed: 03/31/2021

39

```
 1   since all the other exculpated parties had settled with the
 2   appellant.
 3        The Court, in determining that the exculpation clause was
 4   permissible as to the secured lender, concluded that Section
 5   524(e) "does not bar a narrow exculpation clause of the kind
 6   here at issue -- that is, one focused on actions of various
 7   participants in the plan approval process and relating only to
 8   that process," Page 1082.  Why?  Because "Section 524(e)
 9   establishes that discharge of a debt of the debtor does not
10   affect the liability of any other entity on such debt."  In
11   other words, the discharge in no way affects the liability of
12   any other entity for the discharged debt.  By its terms,
13   524(e) prevents a bankruptcy court from extinguishing claims
14   of creditors against nondebtors over the very discharged debt
15   through the bankruptcy proceedings.
16        The Court went on to explicitly disagree with *Pacific
17   Lumber* in its analysis of 524(e), reiterating that an
18   exculpation clause covers only liabilities arising from the
19   bankruptcy proceedings and not of any of the debtor's
20   discharged debt.  Footnote 7, Page 1085.
21        Ultimately, the Court held that under Section 105(a),
22   which empowers a bankruptcy court to issue any order, process,
23   or judgment that is necessary or appropriate to carry out the
24   provisions of Chapter 11 and Section 1123, which establishes
25   the appropriate content of the bankruptcy plan, under these
```

Appx. 0628

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01228-S Document 148   Filed 12/06/21   Page 49 of 193   PageID 2633

Case: 21-90011     Document: 00515803515     Page: 225     Date Filed: 03/31/2021

40

1    sections, the bankruptcy court had authority to approve an

2    exculpation clause intended to trim subsequent litigation over

3    acts taken during the bankruptcy proceedings and so render the

4    plan viable.

5        This Court concludes that, just as the Fifth Circuit left

6    open the door for consensual exculpations and releases in

7    *Pacific Lumber*, just as it left open the door for consensual

8    exculpations and releases in *Pacific Lumber*, its dicta

9    suggests that an exculpation might be permissible if there is

10   a showing that "costs that the released parties might incur

11   defending against suits alleging such negligence are likely to

12   swamp either the Exculpated Parties or the reorganization."

13   Again, that was a quote from the Fifth Circuit.

14       If ever there were a risk of that happening in a Chapter

15   11 reorganization, it is this one.  The Debtor's current CEO

16   credibly testified that Mr. Dondero has said outside the

17   courtroom that if Mr. Dondero's own pot plan does not get

18   approved, that he will "burn the place down."  Here, this

19   Court can easily expect the proposed exculpated parties might

20   expect to incur costs that could swamp them and the

21   reorganization process based on the past litigious conduct of

22   Mr. Dondero and his controlled entities.

23       Additionally, this Court concludes that the Fifth

24   Circuit's rationale in *Pacific Lumber* for permitted

25   exculpations to Creditors' Committees and their members, which

1   was clearly policy-based based on their implied qualified

2   immunity flowing from Section 1103 and their importance in a

3   Chapter 11 case, leaves the door open to sometimes permitting

4   exculpations to other parties in a particular Chapter 11 case

5   besides a UCC and its members.

6        Again, if there was ever such a case, the Court believes

7   it is this one, in which Independent Directors were brought in

8   to avoid a trustee and are much more like a Creditors'

9   Committee than an incumbent board of directors.  While,

10  admittedly, there are a few exculpated parties here proposed

11  beyond the independent board, such as certain employees, it

12  would appear that no one is invulnerable to a lawsuit here if

13  past is prologue in this Highland saga.

14       The Creditors' Committee was initially not keen on

15  exculpations for certain employees.  However, Mr. Seery

16  credibly testified that there was a contentious arm's-length

17  negotiation over this and that he needs these employees to

18  preserve value implementing the Plan.  Mr. Dondero has shown

19  no hesitancy to litigate with former employees in the past, to

20  the *nth* degree, and there is every reason to believe he would

21  again in the future, if able.

22       Finally, in this situation, in the case at bar, we would

23  appear to have a *Shoaf* reason to approve the exculpations.

24  The January 9, 2020 order of this Court, Docket Entry 339,

25  which approved the independent board and an ongoing corporate

App. 0620

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01220-N-SD Document 8-3   Filed 12/06/22   Page 52 of 193   PageID 3035

Case: 21-90011      Document: 00515803515      Page: 227      Date Filed: 03/31/2021

42

```
 1   governance structure for this case, and which is incorporated

 2   into the Plan at Article IX.H, provided as follows:  "No

 3   entity may commence or pursue a claim or cause of action of

 4   any kind against any Independent Director, any Independent

 5   Director's agents, or any Independent Director's advisors

 6   relating in any way to the Independent Director's role as an

 7   Independent Director of Strand without the Court (1) first

 8   determining, after notice, that such claim or cause of action

 9   represents a colorable claim of willful misconduct or gross

10   negligence against Independent Director, any Independent

11   Director's agents, or any Independent Director's advisors; and

12   (2) specifically authorizing such entity to bring such a

13   claim.  The Court will have sole jurisdiction to adjudicate

14   any claim for which approval of the Court to commence or

15   pursue has been granted."

16       This was both an exculpation from negligence as to the

17   Independent Directors and their agents and advisors, as well

18   as a gatekeeping provision.  This Court believes that this

19   provision basically approved an exculpation for the

20   Independent Directors way back on January 9, 2020 for their

21   postpetition conduct that might be negligent.  And this is the

22   law of the case and has res judicata preclusive effect now.

23       Thus, as to the three Independent Directors, as well as

24   the other named parties in the January 9, 2020 order, their

25   agents, their advisors, we have a situation that fits within
```

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02180-S   Document 1-8   Filed 12/09/22   Page 52 of 193   PageID 3086

Case: 21-90011      Document: 00515803515      Page: 228      Date Filed: 03/31/2021

43

1   *Republic Supply v. Shoaf*, and we fit within the exception

2   articulated in *Pacific Lumber*.

3        The Court reserves the right to supplement these findings

4   and conclusions as to the exculpations, but based on the

5   foregoing, they are approved and the objections are overruled.

6        Now, turning to the Plan objection, it appears at Article

7   IX.F of the Plan and provides, in pertinent part, as follows:

8   Upon entry of the confirmation order, all enjoined parties are

9   and shall be permanently enjoined on and after the effective

10  date from taking any action to interfere with the

11  implementation or consummation of the Plan.  Except as

12  expressly provided in the Plan, the confirmation order, or a

13  separate order of the Bankruptcy Court, all Enjoined Parties

14  are and shall be permanently enjoined on and after the

15  effective date, with respect to any claims and interests, from

16  directly or indirectly -- and then commencing, conducting,

17  continuing any suit, action, proceeding of any kind, and

18  numerous other acts of that vein.

19       The injunction set forth herein shall extend to and apply

20  to any act of the type set forth in any of the causes above

21  against any successors to the Debtor, including but not

22  limited to the Reorganized Debtor, the Litigation Sub-Trust,

23  and the Claimant Trust, and their respective property and

24  interests in property.

25       Plan injunctions like this are commonplace and

Appx 0692

Case 22-03052-sgj    Doc 10-18    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01022-N-SD Document 13-8    Filed 12/06/22    Page 53 of 193   PageID 3037

Case: 21-90011      Document: 00515803515      Page: 229      Date Filed: 03/31/2021

44

1   appropriate.  They are entirely consistent with and

2   permissible under Bankruptcy Code Sections 1123(a)(5),

3   1123(a)(6), 1141(a) and (c), and 1142, as well as Bankruptcy

4   Rule 3016(c), which articulates the form that a plan

5   injunction must be set forth in a plan.

6       The Court finds the objections to the Plan Injunctions to

7   be unfounded, and they are thus overruled without much

8   discussion here.

9       Now, lastly, the Gatekeeper Provision.  It appears at

10  Paragraph 4 of Article IX.F of the Plan and provides, in

11  pertinent part, "Subject in all respects to Article XII.D, no

12  Enjoined Party may commence or pursue a claim or cause of

13  action of any kind against any Protected Party that arose or

14  arises from or is related to the Chapter 11 case, the

15  negotiation of the Plan, the administration of the Plan, or

16  property to be distributed under the Plan, the wind-down of

17  the business of the Debtor or Reorganized Debtor, the

18  administration of the Claimant Trust or the Litigation Sub-

19  Trust, or the transactions in furtherance of the foregoing,

20  without the Bankruptcy Court (1) first determining, after

21  notice and a hearing, that such claim or cause of action

22  represents a colorable claim of any kind, including but not

23  limited to negligence, bad faith, criminal misconduct and

24  willful misconduct, fraud, or gross negligence against a

25  Protected Party; and (2) specifically authorizing such

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01228-X   Document 4318   Filed 12/06/22   Page 54 of 193   PageID 13058

Case: 21-90011      Document: 00515803515      Page: 230      Date Filed: 03/31/2021

45

1   Enjoined Party to bring such claim or cause of action against

2   such Protected Party, provided, however, that the foregoing

3   will not apply to a claim or cause of action against Strand or

4   against any employee other than with respect to actions taken,

5   respectively, by Strand or any such employee from the date of

6   appointment of the Independent Directors through the effective

7   date.  The Bankruptcy Court will have sole and exclusive

8   jurisdiction to determine whether a claim or cause of action

9   is colorable and, only to the extent legally permissible and

10  as provided for in Article XI, shall have jurisdiction to

11  adjudicate the underlying colorable claim or cause of action."

12      This gatekeeper provision appears necessary and reasonable

13  in light of the litigiousness of Mr. Dondero and his

14  controlled entities that has been described at length herein.

15  Provisions similar to this have been approved in this district

16  in the *Pilgrim's Pride* case and the *CHC Helicopter* case.  The

17  provision is within the spirit of the Supreme Court's Barton

18  Doctrine.  And it appears consistent with the notion of a pre-

19  filing injunction to deter vexatious litigants that has been

20  approved by the Fifth Circuit in such cases as *Baum v. Blue*

21  *Moon Ventures*, 513 F.3d 181, and in the *In re Carroll* case,

22  850 F.3d 811, which arose out of a bankruptcy pre-filing

23  injunction.

24      The Fifth Circuit, in fact, noted in the *Carroll* case that

25  federal courts have authority to enjoin vexatious litigants

000719
Appx. 0624

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01022-S Document 4-33   Filed 12/06/21   Page 55 of 193 PageID 3639

Case: 21-90011    Document: 00515803515    Page: 231    Date Filed: 03/31/2021

46

```
 1   under the All Writs Act, 28 U.S.C. § 1651.  And additionally,
 2   under the Bankruptcy Code, a bankruptcy court can issue any
 3   order, including a civil contempt order, necessary or
 4   appropriate to carry out the provisions of the Code, citing,
 5   of course, 105 of the Bankruptcy Code.
 6        The Fifth Circuit stated that, when considering whether to
 7   enjoin future filings against a vexatious litigant, a
 8   bankruptcy court must consider the circumstances of the case,
 9   including four factors:  (1)  the party's history of
10   litigation; in particular, whether he has filed vexatious,
11   harassing, or duplicative lawsuits; (2) whether the party had
12   a good faith basis for pursuing the litigation, or perhaps
13   intended to harass; (3) the extent of the burden on the courts
14   and other parties resulting from the party's filings; and (4)
15   the adequacy of alternatives.
16        In the Baum case, the Fifth Circuit stated that the
17   traditional standards for injunctive relief -- i.e.,
18   irreparable harm and inadequate remedy at law -- do not apply
19   to the issuance of an injunction against a vexatious litigant.
20        Here, although I have not been asked to declare Mr.
21   Dondero and his affiliated entities as vexatious litigants per
22   se, it is certainly not beyond the pale to find that his long
23   history with regard to the major creditors in this case has
24   strayed into that possible realm, and thus this Court is
25   justified in approving this provision.
```

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01228-N-SD Document 10-18   Page 1206 of 1349 Page ID 30590

Case: 21-90011      Document: 00515803515      Page: 232      Date Filed: 03/31/2021

47

 1        One of the Objectors' lawyers stated very eloquently in

 2    closing argument, in opposing the plan injunction and

 3    gatekeeping provisions, that "Even a serial killer has

 4    constitutional rights," suggesting that these provisions would

 5    deprive Mr. Dondero and his controlled entities of fundamental

 6    rights or due process somehow.  But to paraphrase the district

 7    court in the *Carroll* case, no one, rich or poor, is entitled

 8    to abuse the judicial process.  There exists no constitutional

 9    right of access to the courts to prosecute actions that are

10    frivolous or malicious.  The Plan injunction and gatekeeper

11    provisions in Highland's plan simply set forth a way for this

12    Court to use its tools, its inherent powers, to avoid abuse of

13    the court system, protect the implementation of the Plan, and

14    preempt the use of judicial time that properly could be used

15    to consider the meritorious claims of other litigants.

16        Accordingly, the Objectors' objections to this provision

17    are overruled.

18        As earlier stated, this Court reserves the right to alter

19    or supplement this ruling in a written order.  In this regard,

20    the Court directs Debtor's counsel -- I hope you are still

21    awake; it's been a long time -- the Court directs Debtor's

22    counsel to submit a form of order.  And specifically, I assume

23    that you've already prepared or have been in the process of

24    preparing a set of findings of fact, conclusions of law, and

25    confirmation order that tracks the confirmation evidence and

App. 2636

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-S Document 10-18   Filed 12/04/22   Page 57 of 193   PageID 1691

Case: 21-90011     Document: 00515803515     Page: 233     Date Filed: 03/31/2021

1   recites conclusions of law that the Plan complies with all the

2   various provisions of Section 1123, 1129, and other applicable

3   Code provisions.

4       What I want you to do is take this bench ruling and add it

5   to what you've prepared.  And what I mean is, as you can tell,

6   I've been reading:  I will have my courtroom deputy email to

7   you all a copy of what I just read.  I'll have her obviously

8   copy the Debtor's counsel, Creditors' Committee, Dondero and

9   the other Objectors, copy them on this written document she's

10  going to send out.  And, again, I want you to kind of meld it

11  into what you've already been preparing.

12      Obviously, I did not address in this oral ruling every

13  provision of 1129(a) and (b).  I did not address every 1123

14  objection.  I did not even address every single objection of

15  the Objectors.  But, again, any objection I've not

16  specifically addressed today is overruled.

17      The briefing, I should say, that the Debtor submitted,

18  there was a Memorandum of Law in Support of Confirmation filed

19  on January 22nd.  There was also a reply brief, a hundred

20  pages or so, separately filed, replying to all the objections.

21  I don't disagree with anything that was in that.  So, again,

22  to the extent you want to send me conclusions of law that are

23  along the lines of that briefing, I would consider that.

24      And so what I thought is you'll send me the melded

25  document and I will edit it if I see fit.  I recognize this

Appx. 0687

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01027-N-SD Document 10-18   Filed 12/05/22   Page 58 of 193   PageID 3092

Case: 21-90011    Document: 00515803515    Page: 234    Date Filed: 03/31/2021

49

 1    may take a few days, so I don't give you a strict timetable,

 2    just hopefully it won't take too many days.

 3        All right.  Is there anyone out there -- Mr. Pomerantz,

 4    you had to go to jury duty, except I can't believe --

 5            MR. POMERANTZ:  No, I --

 6            THE COURT:  I can't believe you were called, but are

 7    you there?

 8            MR. POMERANTZ:  Your Honor, I am here.  I was luckily

 9    excused, because I probably wouldn't have made it.

10        Your Honor, one just comment I'd make.  You referred to

11    the January 9th order.  You didn't refer to the CEO order,

12    which is your order July 16th, which had the same gatekeeper

13    provision.  I assume that was the same analysis?

14            THE COURT:  That was an oversight.  Same analysis.

15    And that's exactly why I said I reserve the right to

16    supplement or amend, because I know there had to be places

17    like that where I omitted to mention something important.

18            MR. POMERANTZ:  But thank you, Your Honor, for your

19    thoughtful ruling, and we will certainly incorporate your

20    materials into the order that we're working on and get it to

21    you when we can.  But we appreciate it on behalf of the

22    Debtor.  We know this took a lot of time and a lot of effort.

23    Hopefully, you got a chance to still watch the Super Bowl

24    yesterday.

25            THE COURT:  Well, when I saw that Tom Brady was going

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01228-N Document 18   Page 1227 of 2449 Page 536 of 1934 PageID 1693

Case: 21-90011     Document: 00515803515     Page: 235     Date Filed: 03/31/2021

50

1   to win, I turned it off.

2       I'm sorry.  That's terrible.  You know, my law clerk, my

3   law clerk that you can't see, Nate, he is from Ann Arbor,

4   Michigan, University of Michigan, and he almost cried when I

5   said I didn't like Tom Brady the other day.  So, I apologize.

6           MR. POMERANTZ:  Your Honor, one other comment.  We

7   had our motion to assume our nonresidential real property

8   lease that was also on.  It got missed in all the fanfare, but

9   it was -- it has been unopposed and essentially done pursuant

10  to stipulation.  So we'd like to submit an order on that as

11  well.

12          THE COURT:  Okay.  I have seen that, and I approve it

13  under 365.  You may submit the order.  Okay.  Thank you.

14          MR. POMERANTZ:  Thank you, Your Honor.

15          THE CLERK:  All rise.

16      (Proceedings concluded at 10:35 a.m.)

17                          --oOo--

18

19

20                      CERTIFICATE

21      I certify that the foregoing is a correct transcript from
    the electronic sound recording of the proceedings in the
22  above-entitled matter.

23    /s/ Kathy Rehling                        02/09/2021

24  _____      _____
    Kathy Rehling, CETD-444                      Date
25  Certified Electronic Court Transcriber

Case 22-03052-sgj    Doc 10-18    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01280-S Document 31-13    Filed 12/06/21    Page 60 of 193    PageID 1694

Case: 21-90011    Document: 00515803515    Page: 236    Date Filed: 03/31/2021

51

INDEX

PROCEEDINGS                                                    3

WITNESSES

-none-

EXHIBITS

-none-

RULINGS

Confirmation Hearing [1808]                                    3

Agreed Motion to (1) Assume Non-Residential Real Property    50
Lease with Crescent TC Investors, LP upon Confirmation of
Plan and (II) Extend Assumption Deadline [1624]

END OF PROCEEDINGS                                           50

INDEX                                                        51

Case: 21-90011     Document: 00515803515     Page: 237     Date Filed: 03/31/2021

# EXHIBIT C

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-D Document 48   Filed 12/06/21 Page 62 of 193 PageID 13196
Case 19-34054-sgj11 Document 0515-8003515   Filed 03/01/21 Date Filed 03/31/2021 1 of 3

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas  75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |

## NOTICE OF APPEAL

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors,

L.P. (the "Appellants"), creditors and parties-in-interest in the above styled and numbered

bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"),

and, pursuant to 28 U.S.C. § 158(a), hereby appeal to the United States District Court for the

Northern District of Texas that certain *Order (i) Confirming the Fifth Amended Plan of

Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related

Relief* (the "Confirmation Order") entered by the Bankruptcy Court on February 22, 2021 at docket

no. 1943 in the Bankruptcy Case.

A copy of the Confirmation is attached hereto as Exhibit "A."

NOTICE OF APPEAL—Page 1

EXHIBIT C

000727

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01022-N-SD Document 18-3   Filed 12/06/22   Page 64 of 193   PageID 1697
Case 19-34054-sgj11 Document 905 05803/15   Filed 03/01/21   Date Filed 03/31/2021   Page 2 of 3

The names of the parties to the Confirmation Order, and the contact information for their

attorneys, is as follows:

1. <u>Appellants:</u>

> Highland Capital Management Fund Advisors, L.P.
> NexPoint Advisors, L.P.

> <u>Attorneys:</u>

>> Davor Rukavina
>> Julian P. Vasek
>> MUNSCH HARDT KOPF & HARR, P.C.
>> 3800 Ross Tower
>> 500 N. Akard Street
>> Dallas, Texas  75201-6659
>> Telephone: (214) 855-7587
>> Facsimile: (214) 855-7584
>> Email: drukavina@munsch.com

2. <u>Appellee:</u>

> Highland Capital Management, L.P.

> <u>Attorneys:</u>

>> Jeffrey N. Pomerantz
>> Ira D. Kharasch
>> John A. Morris
>> Gregory V. Demo
>> Hayley R. Winograd
>> PACHULSKI STANG ZIEHL & JONES LLP
>> 10100 Santa Monica Blvd., 13th Floor
>> Los Angeles, CA 90067
>> Telephone: (310) 277-6910
>> Facsimile: (310) 201-0760
>> Email: jpomerantz@pszjlaw.com
>>      ikharasch@pszjlaw.com
>>      jmorris@pszjlaw.com
>>      gdemo@pszjlaw.com
>>      hwinograd@pszjlaw.com

App. 0643
000728

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01028-L Document 34 Filed 12/06/22 Page 64 of 94 PageID 1698
Case 19-34054-sgj11 Document 2051-1 Filed 03/31/21 Page 3 of 3

RESPECTFULLY SUBMITTED this 1st day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email:   drukavina@munsch.com

**ATTORNEYS FOR HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. AND NEXPOINT ADVISORS, L.P.**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 1st day of March, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Appellee.

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.

Appx. 0644
000729

Case: 21-90011    Document: 00515803515    Page: 241    Date Filed: 03/31/2021

# EXHIBIT D

Case 22-03052-sgj    Doc 10-18    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-D    Document 18    Filed 12/06/21    Page 66 of 193    PageID 1700
Case 19-34054-sgj11    Document 005058035    Filed 04/11/21    Date Filed 03/31/2021    Page 1 of 4

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |

### STATEMENT BY NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL
### MANAGEMENT FUND ADVISORS, L.P. OF ISSUES ON APPEAL

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors,
L.P. (the "Appellants"), creditors and parties-in-interest in the above styled and numbered
bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"),
and, with respect to their *Notice of Appeal* [docket no. 1957], hereby file their *Statement of Issues
on Appeal* (the "Statement").

With respect to the Bankruptcy Court's *Order (i) Confirming the Fifth Amended Plan of
Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related
Relief* [docket no. 1943] (the "Confirmation Order"), by which the Bankruptcy Court confirmed

---

EXHIBIT D

Appx. 4646

000731

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01080-X Document 13 Filed 12/06/21 Page 674 of 939 PageID 13301
Case 19-34054-sgj11 Doc 2015 Filed 05/31/21 Entered 12/31/21 15:52:21 Page 2 of 4

the *Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [docket no. 1808], as further modified (the "Plan"):

1.      Whether the Bankruptcy Court erred as a matter of law in confirming the Plan and entering the Confirmation Order under the Absolute Priority Rule codified by 11 U.S.C. § 1129(b)(2)(B)(ii) because the Plan provides that the holders of equity interests, in the form of limited partnership interests in the Debtor, retain or receive any property under the Plan even though Class 8 under the Plan, a class of unsecured creditors not paid in full under the Plan, rejected the Plan?

2.      Whether the Bankruptcy Court erred as a matter of law in confirming the Plan and entering the Confirmation Order because the exculpation provisions of the Plan, contained in Article IX of the Plan, effectuated:

(i)      third party releases (*i.e.* releasing a claim of a non-debtor against a non-debtor) prohibited by the Bankruptcy Court and over which the Bankruptcy Court had no jurisdiction, in direct violation of Fifth Circuit and Northern District of Texas precedent (*see, e.g., In re Pacific Lumber Co.*, 584 F.3d 229, 253 (5th Cir. 2009) and *In re Thru, Inc.*, Civil Action No. 3:17-CV-1958-G, 2018 WL 5113124, at *22-23 (N.D. Tex. Oct. 19, 2018) and in violation of due process rights;

(ii)     releases of business decisions, actions, and potential liabilities, as opposed to case administration matters;

(ii)     releases of non-debtor entities and their managers and professionals, as opposed to estate managers and professionals; and

(iv)     releases of post-confirmation matters.

3.      Whether the Bankruptcy Court erred as a matter of law in confirming the Plan and entering the Confirmation Order because the permanent injunction contained in Article IX of the Plan, which prohibits "taking any actions to interfere with the implementation or consummation of the Plan," is overly broad and impermissibly vague, and because the injunction prohibits the Appellants from advising various funds that they advise and manage, or causing said funds, to

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-D Document 31-8  Filed 12/16/22 Page 68 of 193 PageID 19702
Case 19-34054-sgj11 Doc 2005 Filed 05/03/21 Entered 05/03/21 Page 3 of 4

remove the Debtor as CLO portfolio manager over various CLOs that the Debtor manages pursuant
to executory contracts assumed by the Plan, even though the assumption of an executory contract
subjects, as a matter of law, the Debtor to all provisions of the contract on a go-forward basis?

4.      Whether the Bankruptcy Court erred as a matter of law in confirming the Plan and
entering the Confirmation Order because the "gatekeeper" injunction contained in Article IX of
the Plan, which requires leave of the Bankruptcy Court upon a showing of a "colorable" claim or
cause of action, is:

(i)     not permitted by the Bankruptcy Code and effectively effectuates prohibited third
party releases for the same reasons as stated above with respect to exculpation;

(ii)    not permitted with respect to any post-confirmation matter as the Bankruptcy Court
will have no jurisdiction over such matters to make any finding or render any order,
which would be purely advisory; and

(iii)   not permitted because it violates due process by requiring a party with a claim to
seek leave from a court that has no jurisdiction and, if such leave is not granted,
such claim will be permanently enjoined without having a court of competent
jurisdiction pass on its merits.

5.      Whether the Bankruptcy Court erred as a matter of fact in confirming the Plan and
entering the Confirmation Order because the "gatekeeper" injunction contained in Article IX of
the Plan, which requires leave of the Bankruptcy Court upon a showing of a "colorable" claim or
cause of action, is based on the Bankruptcy Court's finding of vexatious litigation against the
Appellants and the need for an ant-filing or pre-filing injunction, when there was no evidence to
support such finding?

6.      Whether the Bankruptcy Court erred as a matter of law in confirming the Plan and
entering the Confirmation Order because the Debtor failed to satisfy the 11 U.S.C. § 1129(a)(2)
element for confirmation requiring the Debtor to have complied with all applicable provisions of
the Bankruptcy Code, which the Debtor admittedly failed to do because it utterly failed to comply
with Bankruptcy Rule 2015.3?

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01290-S Document 84-8   Filed 12/06/22   Page 69 of 193   PageID 2003
Case 19-34054-sgj11 Document 1950-5   Filed 02/15/21   Date Filed 03/31/2021 of 4

RESPECTFULLY SUBMITTED this 11th day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**


By: /s/ Davor Rukavina
       Davor Rukavina, Esq.
       Texas Bar No. 24030781
       3800 Ross Tower
       500 N. Akard Street
       Dallas, Texas  75201-6659
       Telephone: (214) 855-7500
       Facsimile: (214) 855-7584
       Email:   drukavina@munsch.com

**ATTORNEYS FOR HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. AND NEXPOINT ADVISORS, L.P.**


**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that, on this the 11th day of March, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Appellee.

By: /s/ Davor Rukavina
       Davor Rukavina, Esq.

STATEMENT BY NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT FUND
ADVISORS, L.P. OF ISSUES ON APPEAL—Page 4
4849-6635-7984v.1 019717.00001

000734
Appx 9649

Case: 21-90011    Document: 00515803515    Page: 246    Date Filed: 03/31/2021

# EXHIBIT E

Appx 4650

000735

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01080-S Document 34   Filed 12/06/21   Page 246 of 934 PageID 9225
Case 19-34054-sgj11   Doc 2066   Filed 05/08/21   Entered 05/08/21   Page 2471 of 2



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**



**Signed March 16, 2021**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## ORDER CERTIFYING APPEALS OF THE CONFIRMATION ORDER
## FOR DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

CAME ON FOR CONSIDERATION the *Joint Motion for Certification of Appeals of Confirmation Order for Direct Appeal to the Fifth Circuit* (the "Motion"), filed jointly by Highland Capital Management, L.P., Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., Highland Global Allocation Fund, Highland Income Fund, NexPoint Capital, Inc., NexPoint Strategic Opportunities Fund, James Dondero, Get Good Trust, and The Dugaboy Investment Trust (collectively, the "Parties").

EXHIBIT E

---

ORDER CERTIFYING APPEALS OF THE CONFIRMATION ORDER FOR DIRECT APPEAL TO THE
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT—Page 1

000736

App. 0651

Case 22-03052-sgj   Doc 10-18   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-L Document 148 Filed 12/06/21 Page 72 of 193 PageID 8233
Case 19-34054-sgj11 Document 3515 Filed 24816/21 Date Filed 03/31/2021 of 2

By the Motion, the Parties jointly request a certification for a direct appeal to the Fifth
Circuit of the following appeals (collectively, the "Appeals") of the Court's *Order (i) Confirming
the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)
and (ii) Granting Related Relief* [docket no. 1943] (the "Confirmation Order"):

(i)     the notice of appeal filed by Highland Capital Management Fund Advisors, L.P.
        and NexPoint Advisors, L.P. on March 1, 2021 at docket no. 1957;

(ii)    the notice of appeal filed by Highland Global Allocation Fund, Highland Income
        Fund, NexPoint Capital, Inc., and NexPoint Strategic Opportunities Fund on March
        3, 2021 at docket no. 1966;

(iii)   the notice of appeal filed by James Dondero on March 4, 2021 at docket no. 1970;
        and

(iv)    the notice of appeal filed by Get Good Trust and The Dugaboy Investment Trust on
        March 4, 2021 at docket no. 1972.

Having considered the Motion, concluding that the Court has core jurisdiction over the
Motion, finding that no further notice or hearing on the Motion is required as all parties affected
thereby are the Parties to the Motion, and, based on the Parties joint certification and request as
provided for in 28 U.S.C. § 158(d)(2)(B), and based also on the Court's agreement with the factual
predicates underlying the Parties' certification and request, it is hereby:

ORDERED that the Appeals of the Confirmation Order are certified for direct appeal to
the Fifth Circuit because a direct appeal may materially advance the progress of the case or
proceeding in which the appeal is taken, within the meaning and operation of 28 U.S.C. §
158(d)(2)(A)(iii).

### # # #  END OF ORDER  # # #

ORDER CERTIFYING APPEALS OF THE CONFIRMATION ORDER FOR DIRECT APPEAL TO THE
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT—Page 2
4828-7733-3728v.1 019717.00001

Appx 0652
000737

# EXHIBIT 19

# No. _____

IN THE

# United States Court of Appeals for the Fifth Circuit

_____

In Re: HIGHLAND CAPITAL MANAGEMENT, L.P.

Proposed Appeal of Highland Income Fund, NexPoint Strategic Opportunities
Fund, Highland Global Allocation Fund and NexPoint Capital, Inc.

_____

*On petition for direct appeal from the United States Bankruptcy Court
for the Northern District of Texas at No. 19-34054; Appeal pending in the United States
District Court for the Northern District of Texas at No.* 3:21-cv-00539-N

_____

## PETITION FOR DIRECT APPEAL UNDER 28 U.S.C. § 158(d)

_____

A. Lee Hogewood, III
**K&L GATES LLP**
4350 Lassiter at North Hills Ave.
Suite 300
Raleigh, N.C. 27609
(919) 743-7306
lee.hogewood@klgates.com

Artoush Varshosaz
**K&L GATES LLP**
1717 Main St.
Suite 2800
Dallas, TX  75201
(214) 939-5659
artoush.varshosaz@klgates.com

David R. Fine
**K&L GATES LLP**
Market Square Plaza
17 North Second St.
18th Floor
Harrisburg, PA 17101
(717) 231-5820
david.fine@klgates.com

*Counsel for Petitioners*

## CERTIFICATE OF INTERESTED PERSONS

**Appellants**
Highland Income Fund; NexPoint Strategic Opportunities Fund; Highland Global Allocation Fund and NexPoint Capital, Inc.

*Counsel:*
K&L GATES LLP
A. Lee Hogewood, III
Artoush Varshosaz
David R. Fine

**Appellee**
Highland Capital Management, L.P.

*Counsel:*
PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
John A. Morris

HAYWARD PLLC
Melissa S. Hayward
Zachery Z. Annable

**Other Appellants:**

1.      James Dondero

*Counsel:*
BONDS ELLIS EPPICH SCHAFER JONES LLP
D. Michael Lynn
John Y. Bonds, III
Clay M. Taylor
Bryan C. Assink

000740
App. 0655

2.    Get Good Trust
       The Dugaboy Investment Trust

*Counsel:*
HELLER, DRAPER & HORN, L.L.C.
Douglas S. Draper
Leslie A. Collins
Greta M. Brouphy

3.    NexPoint Advisors, L.P.
       Highland Capital Management Fund Advisors, L.P.

*Counsel:*
MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina

000741
App. 0656

## TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

FACTUAL AND PROCEDURAL HISTORY ........................................ 3

QUESTIONS PRESENTED ..................................................... 11

REASONS FOR THE COURT TO GRANT THIS PETITION ......................... 12

    A. The Bankruptcy Court correctly determined that an immediate appeal would  materially advance the progress of the case. ...................................... 13

    B. The Bankruptcy Court's Confirmation Order involves questions of law on which lower courts have differed such that this Court's resolution is necessary. .................................................................. 14

    C. The Bankruptcy Court's determination that certain protections afforded to a creditors' committee and its members should be extended to "other parties in a particular chapter 11 case that perform similar roles to a creditors' committee and its members" raises a question of law as to which there is no controlling authority ................................................. 20

CONCLUSION ................................................................ 22

000742
Appx 0657

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of N.Y. Trust Co., N.A. v. Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009) ...................................*passim*

*Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*,
   No. 3:17-CV-1958-G, 2018 WL 5113124 (N.D. Tex. Oct. 19, 2018) ....... 16, 17, 19

*In re MPF Holding U.S. LLC*, 444 B.R. 719 (Bankr. S.D. Tex. 2011)...................... 13

*In re MPF Holding U.S. LLC*, 701 F.3d 449 (5th Cir. 2012) ................................... 14

*In re OCA, Inc.*, 552 F.3d 413 (5th Cir. 2008) ........................................................ 13

*In re Patriot Place, Ltd.*, 486 B.R. 773 (Bankr. W.D. Tex. 2013) ......................16, 19

*In re Pilgrim's Pride Corp.*, 08-45664-DML-11, 2010 WL 200000
   (Bankr. N.D. Tex. Jan. 14, 2010)........................................................................ 18

**Statutes**

11 U.S.C. § 524(e) ................................................................................................... 18

11 U.S.C. § 1103(c) ..................................................................................................20

28 U.S.C. § 158(d) ............................................................................................. 1, 12

28 U.S.C. § 158(d)(2)(A)(i) ........................................................... 2, 12, 13, 21

28 U.S.C. § 158(d)(2)(A)(ii) ..........................................................2, 12, 13, 15, 20

28 U.S.C. § 158(d)(2)(A)(iii) ................................................... 1, 11, 13, 14

## INTRODUCTION

Section 158(d)(2) allows a direct appeal from a bankruptcy court to the court of appeals if at least one of four conditions is met. *See* 28 U.S.C. § 158(d). The bankruptcy court order at issue here, which confirmed a complex plan and included a number of contested provisions, independently meets three of Section 158(d)(2)'s provisions.

*First*, as the Bankruptcy Court held when it certified its confirmation order for direct appeal, a direct appeal "may materially advance the progress of the case" because (1) the interests at stake guarantee that the case will ultimately be appealed to this Court, (2) the parties have significant interests in obtaining this Court's prompt review so that they can order their affairs accordingly in light of certain future actions Highland Capital Management, L.P. (the "Debtor"), proposes to take and (3) the parties will collectively spend hundreds of thousands of dollars in district-court proceedings that will almost certainly be unnecessary in light of this Court's ultimate review. *See* 28 U.S.C. § 158(d)(2)(A)(iii).

*Second*, the confirmed plan includes broad exculpation and injunction provisions the Funds believe *Bank of N.Y. Trust Co., N.A. v. Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009), plainly

prohibits.[1] A number of district courts and bankruptcy courts in this Circuit read *Pacific Lumber* as the Funds do, but the Bankruptcy Court read the case more narrowly. Accordingly, there is a conflict among the "lower" courts on a question of law that requires this Court's resolution. *See* 28 U.S.C. § 158(d)(2)(A)(ii).

*Third*, the Bankruptcy Court held that the protections the Bankruptcy Code affords to creditors' committees and their members may be extended to "other parties in a particular chapter 11 case that perform similar roles to a creditors' committee and its members." Neither this Court nor the Supreme Court has addressed or approved such a protection-by-analogy holding, and, so, there is no controlling authority on that legal question. *See* 28 U.S.C. § 158(d)(2)(A)(i).

The Confirmation Order meets the requirements of Section 158(d)(2) in three independent ways, and the Funds request that the Court allow a direct appeal.[2]

---

[1] The Funds, who are the petitioners, include Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund and NexPoint Capital, Inc.

[2] As other aggrieved parties have noted in their separate petition for permission, there are issues for review beyond the exculpation and injunction issues. Because of space constraints, the Funds focus here on those issues that most plainly demonstrate that the confirmation order should be directly appealed; the Funds reserve the right to raise additional issues should the Court accept the direct appeal.

000745
App. 0688

## FACTUAL AND PROCEDURAL HISTORY

The Bankruptcy Court fairly noted that this is not a garden-variety bankruptcy case. However, while the facts and procedural history are complex, the Funds believe the Court needs only a summary to understand this petition.

James Dondero co-founded Highland Capital Management L.P. (the "Debtor") in 1993.[3] The Debtor provided services to and support for an extensive network of investment entities, trusts, other ventures and investment advisers.[4] The Debtor invested and managed billions of dollars on behalf of itself, its subsidiaries and affiliates and other unaffiliated entities.[5] The Debtor provided such services to collateralized loan obligation vehicles ("CLOs").[6] The CLOs own assets, generally securities at this stage, and the Debtor manages them pursuant to a series of portfolio-management agreements between itself and the CLOs.[7]

---

[3] Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief (the "Confirmation Order") at ¶ 4 (attached at Tab "A").

[4] Confirmation Order at ¶ 6.

[5] *Id.*

[6] *Id.*

[7] Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) (the "Plan") at Exh. B (attached at Tab "B").

000746

The Debtor filed for Chapter-11 bankruptcy protection in Delaware in October 2019.[8]

The Debtor and the Official Unsecured Creditors' Committee (the "Committee") had a difficult relationship from the start.[9] First, the Committee moved for a change of venue to the Northern District of Texas (which was granted).[10] Second, the Committee and, ultimately, the bankruptcy trustee pushed for appointment of a Chapter-11 trustee.[11]

On January 9, 2020, the Debtor, the Committee and Mr. Dondero entered into a stipulation and consent order (the "January 9 Order").[12] The January 9 Order provided, among other things, for the removal of Mr. Dondero from the management of the Debtor, replaced him with a board of independent directors (the "Independent Directors) and prohibited Mr. Dondero from causing "Related Entities" to terminate contracts with the Debtor.[13]

---

[8] *Id.* at ¶ 4.

[9] *Id.* at ¶ 11.

[10] *Id.*

[11] *Id.*

[12] *Id.* at ¶ 12.

[13] *Id.* The Independent Directors include James P. Seery, Jr.; John S. Dubel and retired bankruptcy judge Russell Nelms. *Id.*

4

Among other things, Mr. Dondero beneficially owns two investment advisers, Highland Capital Management Fund Advisors, L.P., and NexPoint Advisors, L.P. (the "Advisors"), because he owns their general partners.[14]

Petitioners are several retail investment funds (the "Funds"). The Funds invest more than $1 billion for the benefit of thousands of investors/shareholders. In doing so, the Funds receive advice and services from the Advisors. The Advisors and the Funds are subject to the regulatory regime established pursuant to the Investment Company Act of 1940 and the Investment Advisers Act of 1940. Among other investments, the Funds hold interests in a number of the CLOs described above.

Because Mr. Dondero is a beneficial owner, the Advisors are "Related Entities" under the January 9 Order. At the time of the January 9 Order, each of the Advisors was a party to a shared-services agreement with the Debtor. Under the respective shared-services agreements, the Debtor was required to provide a wide range of services and support to the Advisors (and by extension, to the Funds), including accounting, legal, clerical, valuation and other "back-office" services, as well as office space, in exchange for a fee. The Advisors' compliance with their

---

[14] The Advisors have filed a separate appeal from the Confirmation Order and have filed a separate petition seeking permission to appeal directly to this Court. That petition is docketed at No. 21-90011.

000748
App. 0688

regulatory and fiduciary obligations to the Funds was facilitated by their access to shared services provided by the Debtor.

While the January 9 Order limited Mr. Dondero's ability to cause the Advisors to terminate agreements, the Debtor was not so limited. Thus, the Debtor notified the Advisors on November 30, 2020, that the shared-services agreements would be terminated effective January 31, 2021 (as extended, through February 28). In December 2020, the Advisors advised—and the Funds agreed—that the Advisors should seek limited relief from the Bankruptcy Court with respect to the Debtor's role as portfolio manager of the CLOs. Specifically, the Advisors and the Funds requested that the Bankruptcy Court prohibit the Debtor from trading or disposing of CLO assets pending the confirmation hearing on the Debtor's plan.[15] After the Bankruptcy Court denied the motion, the Advisors and the Funds requested that the Debtor not trade in CLO assets on a voluntary basis. The Debtor denied that request.

Outside of the bankruptcy context, the Funds collectively hold the majority of preference shares in three CLOs for which the respective portfolio-management agreements allow them to remove the Debtor as portfolio manager "for cause." While the Debtor remained in bankruptcy and before confirmation of the Plan, the

---

[15] The CLO assets are not property of the bankruptcy estate; they are, instead, assets under the Debtor's management and for which the Debtor is paid a management fee.

000749                                    App. 0684

Bankruptcy Court would have had to approve any such removal in the form of relief from the automatic stay. After confirmation, the general rule is that contracts may be terminated according to their terms, if those contracts have been assumed.

Over objections from the Funds and others, the Bankruptcy Court confirmed the Plan on February 22, 2021. The Debtor's representatives presented the Plan as an "asset-maximization plan." Under the confirmed Plan, the reorganized Debtor intends to liquidate its assets over the course of an approximate two-year period. In addition to liquidating its assets, the Debtor, having assumed the portfolio-management agreements, continues to manage the assets of others, including the CLOs. It similarly intends to liquidate the assets of others within the same period.

As noted, the Debtor assumed the portfolio-management agreements. However, the Plan goes further than merely assuming and reinstating those agreements and binding the parties to their written terms.

The Plan, as approved over objections by the Funds and others, includes a number of disputed provisions. Article IX includes both exculpation and injunction provisions:

### C. Exculpation
Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the

000750
Appx 8685

Petition Date in connection with or arising out of (i) the filing and
administration of the Chapter 11 Case; (ii) the negotiation and pursuit
of the Disclosure Statement, the Plan, or the solicitation of votes for, or
confirmation of, the Plan; (iii) the funding or consummation of the Plan
(including the Plan Supplement) or any related agreements,
instruments, or other documents, the solicitation of votes on the Plan,
the offer, issuance, and Plan Distribution of any securities issued or to
be issued pursuant to the Plan, including the Claimant Trust Interests,
whether or not such Plan Distributions occur following the Effective
Date; (iv) the implementation of the Plan; and (v) any negotiations,
transactions, and documentation in connection with the foregoing
clauses (i)-(iv); *provided*, *however*, the foregoing will not apply to (a) any
acts or omissions of an Exculpated Party arising out of or related to acts
or omissions that constitute bad faith, fraud, gross negligence, criminal
misconduct, or willful misconduct or (b) Strand or any Employee other
than with respect to actions taken by such Entities from the date of
appointment of the Independent Directors through the Effective Date.
This exculpation shall be in addition to, and not in limitation of, all other
releases, indemnities, exculpations, any other applicable law or rules, or
any other provisions of this Plan, including ARTICLE IV.C.2,
protecting such Exculpated Parties from liability.[16]

Article I.B of the Plan defines "Exculpated Parties" broadly:

"*Exculpated Parties*" means, collectively, (i) the Debtor and its
successors and assigns, (ii) the Employees, (iii) Strand, (iv) the
Independent Directors, (v) the Committee, (vi) the members of the
Committee (in their official capacities), (vii) the Professionals retained
by the Debtor and the Committee in the Chapter 11 Case, (viii) the
CEO/CRO; and (ix) the Related Persons of each of the parties listed in
(iv) through (viii) ...[17]

---

[16] *See* Plan at IX.C.

[17] *Id*. at I.B.

8

App. 8666

Thus, the approved Plan exculpates not only the Debtor but also the Independent Directors, employees of the Debtor, officers and directors of the Debtor and professionals retained by the Debtor—among others. That exculpation extends not only to creditors' direct claims but to the negotiation, administration and implementation of the Plan as well as to ordinary business matters and post-confirmation matters related to plan implementation.[18]

The accompanying Plan injunction is broad as well. It provides, among other things, that "all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan."[19] ("Enjoined Parties" is defined broadly to include, among others, all entities that "have held, hold, or may hold claims against the Debtor's equity interests and any entity "that has appeared and/or filed any motion, objection, or other pleading" in the Chapter-11 case.[20]) The Confirmation Order bars any Enjoined Party from commencing or pursuing a claim or cause of action against

---

[18] To be clear, the exculpation is not a full release but imposition of a particularly high burden of proof on anyone seeking to assert a claim against an Exculpated Party. Essentially, an Exculpated Party is released unless its acts or omissions "constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct ..." Plan at IX.C. That heightened burden is material in that, among other things, it releases that large group of persons and entities from claims for negligence.

[19] Plan at IX.F.

[20] *Id*. at I.B.

any "Protected Party" unless the Bankruptcy Court first determines that the claim or cause of action is "colorable."[21] ("Protected Parties" is defined broadly to include, among others, the Debtor, the Debtor's employees, the Committee and its members and professionals retained by the Debtor and the Committee in the Chapter-11 case.[22])

The Funds believe that the exculpation and gatekeeper/channeling-injunction provisions exceed the scope of what this Court has previously permitted. The Funds contend that these provisions restrict their ability to act quickly and appropriately in fulfillment of their investment objectives and impair their ability to protect their retail investors. The issue is of critical and practical importance to the Funds because they invest in a number of illiquid assets with a long-term investment horizon. On the other hand, the Debtor's liquidation plan anticipates a short, two-year window for the Debtor to liquidate its assets as well as those assets it manages. Thus, the Debtor's short-term liquidation goal conflicts with the Funds' plan to hold the assets for a longer term. Were the Debtor to sell the CLO assets as planned, it would act against the Fund's wishes, and the Funds believe the challenged Plan terms

---

[21] Plan at IX.F.

[22] *Id.* at I.B.

000753

improperly interfere with the Funds' right and ability to remove the manager in such a situation.

## QUESTIONS PRESENTED

1.      Whether the Court should accept direct review of the Bankruptcy Court's Confirmation Order because an immediate appeal may materially advance the progress of the case, *see* 28 U.S.C. § 158(d)(2)(A)(iii), since—

  a.      all parties concur that the interests at stake in this bankruptcy matter are such that, if the appeals are heard in the District Court, it is all but certain that the non-prevailing party or parties will then take an appeal or appeals to this Court;

  b.      all parties concur that, in light of the inevitability of this Court's review, requiring the parties to pursue appeals first in the District Court would delay finality of the Plan for the Debtor, creditors and other interested parties by a year or more; and

  c.      all parties concur that, in light of the inevitability of this Court's review, requiring the parties to pursue appeals first in the District Court would cause the parties collectively  to incur hundreds of thousands of dollars in attorneys' fees for ultimately unnecessary proceedings in the District Court.

000754
App. 06660

2.    Whether the Court should accept direct review of the Bankruptcy Court's Confirmation Order because that order involves a question of law requiring resolution of conflicting decisions since a number of cases in this Circuit have interpreted *Pacific Lumber* to prohibit inclusion in a bankruptcy plan of broad exculpation and injunction provisions such as those the Bankruptcy Court approved in this case. *See* 28 U.S.C. § 158(d)(2)(A)(ii).

3.    Whether the Court should accept direct review of the Confirmation Order because the Bankruptcy Court's holding that the protections the Bankruptcy Code affords to creditors' committees and their members may be extended to "other parties in a particular chapter 11 case that perform similar roles to a creditors' committee and its members" is a question of law as to which there is no controlling decision of this Court or the Supreme Court. *See* 28 U.S.C. § 158(d)(2)(A)(i).

### REASONS FOR THE COURT TO GRANT THIS PETITION

Section 158(d)(2) of Title 28 of the U.S. Code provides that a bankruptcy court may certify an order for direct appeal to the court of appeals when the order (1) involves a controlling issue of law as to which there is no controlling decision of the court of appeals or the Supreme Court, (2) the order involves a question of law requiring resolution of conflicting decisions or (3) an immediate appeal from the order may materially advance the progress of the case or proceeding in which the

appeal is taken. *See* 28 U.S.C. § 158(d)(2)(A)(i)-(iii); *In re OCA, Inc.*, 552 F.3d 413, 418 (5th Cir. 2008). If the bankruptcy court certifies the order, the would-be appellant must then file a petition with the court of appeals seeking permission to appeal under the same standard. *Id.*

The parties jointly asked the Bankruptcy Court to certify its confirmation order for direct appeal to this Court, and the Bankruptcy Court did so.[23]

### A.    *The Bankruptcy Court correctly determined that an immediate appeal would materially advance the progress of the case.*

In granting the parties' joint motion for certification, the Bankruptcy Court agreed that "a direct appeal may materially advance the progress of the case or proceeding in which the appeal is taken."[24] The Funds agree.

In *In re MPF Holding U.S. LLC*, 444 B.R. 719 (Bankr. S.D. Tex. 2011), a bankruptcy court held that a direct appeal would be appropriate because the stakes were sufficiently high that it was particularly likely that any decision by the district court would ultimately be appealed to this Court such that requiring the parties first to appeal to the district court would unnecessarily delay a final resolution of the

---

[23] *See* Order Certifying Appeals of the Confirmation Order for Direct Appeal to the United States Court of Appeals for the Fifth Circuit (the "Certification Order") (Tab "C").

[24] *Id.* at 2.

000756

bankruptcy. *Id.* at 727. This Court accepted and decided the appeal. *See* 701 F.3d 449 (5th Cir. 2012).

Moreover, as the parties informed the Bankruptcy Court in requesting its certification for direct appeal, the parties, creditors and others would benefit from a direct appeal in that they would have this Court's decision that much sooner and the bankruptcy case could be fully administered and closed. Among other things, as noted above the Debtor intends to take certain steps in the next two years—steps the Funds believe may impair their interests and those of the CLOs—and the Funds believe the Plan as confirmed leaves them with an insufficient remedy. When it reviews the Plan, this Court will of course either reject or allow the challenged provisions, but the progression of events and the Debtor's plans make it important for the parties to have that resolution sooner rather than later.

Thus, the case meets the requirements of Section 158(d)(2)(A)(iii), and the Funds request that the Court grant permission for a direct appeal from the Bankruptcy Court's Confirmation Order.

**B.    *The Bankruptcy Court's Confirmation Order involves questions of law on which lower courts have differed such that this Court's resolution is necessary.***

On at least one of the principal issues on which the Funds seek permission to appeal, the Bankruptcy Court's interpretation of the law conflicts with that of other

courts. While the Funds believe the Bankruptcy Court erred in not following *Pacific Lumber* such that its Confirmation Order should be reversed, they will focus here on detailing the conflict rather than arguing the ultimate merits because the conflict is the focus under § 158(d)(2)(A)(ii).

In this Circuit, *Pacific Lumber* is important—and, in the Funds view, controlling—authority regarding the permissible scope of exculpation provisions and related injunctions. The procedural background of *Pacific Lumber* is lengthy and complex, but the facts relevant here are neither. The bankruptcy court approved a plan that included an exculpation provision that protected not just the debtor but a number of other persons and entities, including the debtor's personnel, the current owners of the reorganized debtor (MRC and Marathon) and two entities created by the plan (Newco and Townco) into which certain of the debtor's assets were transferred as well as the personnel of those parties. On direct appeal from the bankruptcy court, this Court rejected the exculpation of non-debtor parties:

> The plan releases MRC, Marathon, Newco, Townco, and the Unsecured Creditors' Committee (and their personnel) from liability—other than for willfulness and gross negligence—related to proposing, implementing, and administering the plan. The law states, however, that "discharge of a debt of the debtor does not affect the liability of any other entity on such debt." 11 U.S.C. § 524(e).
>
> ***
>
> We see little equitable about protecting the released non-debtors from negligence suits arising out of the reorganization. In a variety of contexts, this court has held that Section 524(e) only releases the

15

000758
App. 8673

debtor, not co-liable third parties. *See, e.g.*, *In re Coho Resources, Inc.*, 345 F.3d 338, 342 (5th Cir. 2003); *Hall v. National Gypsum Co.*, 105 F.3d 225, 229 (5th Cir. 1997); *Matter of Edgeworth*, 993 F.2d 51, 53-54 (5th Cir. 1993); *Feld v. Zale Corporation*, 62 F.3d 746 (5th Cir. 1995). These cases seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions.

*** 

There are no allegations in this record that either MRC/Marathon or their or the Debtors' officers or directors were jointly liable for any of Palco's or Scopac's pre-petition debt. They are not guarantors or sureties, nor are they insurers. Instead, the essential function of the exculpation clause proposed here is to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy. The fresh start § 524(e) provides to debtors is not intended to serve this purpose.

584 F.3d at 251-52 (footnotes omitted). A number of courts have interpreted *Pacific Lumber* broadly to reject exculpation provisions that reach beyond the debtor itself and the creditors' committee. For example, in *In re Patriot Place, Ltd.*, 486 B.R. 773 (Bankr. W.D. Tex. 2013), the court wrote that this Court "takes a very restrictive approach to non-debtor releases in bankruptcy cases" and cited *Pacific Lumber* for the proposition that "[t]he Fifth Circuit cases seem 'broadly to foreclose non-consensual non-debtor releases and permanent injunctions.'" 486 B.R. at 882. In *Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*, No. 3:17-CV-1958-G, 2018 WL 5113124 (N.D. Tex. Oct. 19, 2018), the district court rejected an exculpation clause much like the one in the Plan in this case and offered the following analysis:

16

In *In re The Pacific Lumber Company*, the plan in question released the
debtor and its personnel from liability, other than for willfulness and
gross negligence, "related to proposing, implementing, and
administering the plan." *In re The Pacific Lumber Company*, 584 F.3d at
251. There, the Fifth Circuit determined that the broad exculpation
provision contained in the plan was designed "to absolve the released
parties from any negligent conduct that occurred during the course of
the bankruptcy" which the fresh start provision in Bankruptcy Code
section 524(e)[14] was not intended to do. *Id.* at 252. Here, Thru's plan
releases Thru, its officers, directors, and various other personnel from
liability, except for acts or omissions made in bad faith, "in connection
with or related to formulating, negotiating, implementing, confirming,
or consummating" the plan, disclosure statement, or any plan
document. Modified Chapter 11 Plan at 25, ¶ 9.7 (emphasis added).

The appellees' attempts to distinguish their plan's exculpation
language from that of the language used in *In re The Pacific Lumber
Company* are unpersuasive.

*Id.* at *22-*23. The court also rejected an injunction provision that was "broad

enough to cover non-debtor third parties ..." because the court read *Pacific Lumber* to

preclude such an injunction. *Id.* at *21 (citing *Pacific Lumber*, 584 F.3d at 252 (Fifth

Circuit authority "seems broadly to foreclose non-consensual non-debtor releases

and permanent injunction.").

A judge in the same bankruptcy court from which this matter arises

understood *Pacific Lumber* to preclude non-consensual third-party exculpation:

The plan in *Pacific Lumber* provided numerous third parties with
protection from liability for their negligent conduct during the course of
the chapter 11 case including liability related to proposing,
implementing, and administering the plan. The third-party protections
in *Pacific Lumber* applied to the debtors' officers and directors as well as

000760
App. 2675

the companies that proposed the plan and that ultimately acquired majority ownership of the reorganized debtors. Although a third-party exculpation provision arguably might be defended as justified by the bankruptcy court's equitable powers given by Code § 105, Chief Judge of the Fifth Circuit Court of Appeals Edith Jones struck the exculpatory provisions because the Court saw "little equitable about protecting the released non-debtors from negligence suits arising out of the reorganization." *Id*. at 252.

<div align="center">* * *</div>

Debtors and the Equity Committee argue that the ruling in *Pacific Lumber* is limited to the facts of that case. The court disagrees. Chief Judge Jones wrote that "non-debtor releases are most appropriate as a method to channel mass claims toward a specific pool of assets." *Id*. at 252. Chief Judge Jones also cited to several prior Fifth Circuit decisions ... stating that, "these cases seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions." *Id*. These statements persuade the court that the ruling in *Pacific Lumber* is not limited to its facts. Indeed, there is nothing in the *Pacific Lumber* opinion which, in the court's view, can reasonably be read to limit its ruling to the facts of that case.

*In re Pilgrim's Pride Corp.*, 08-45664-DML-11, 2010 WL 200000 at *4-*5 (Bankr.

N.D. Tex. Jan. 14, 2010).

The Bankruptcy Court in this matter understood *Pacific Lumber* differently.[25]

The court held that *Pacific Lumber* focused on 11 U.S.C. § 524(e) but that the case

---

[25] The Bankruptcy Court wrote that certain earlier orders in the case, including the January 9 Order described in the statement of the case, above, and a July 16, 2020, order had already exculpated the Independent Directors and Mr. Seery and were due *res judicata* effect. *See* Confirmation Order at ¶ 73. When the merits are before this Court, the Funds will demonstrate that the Bankruptcy Court was mistaken in that determination, and in any event those orders would not shield the exculpation and injunction provisions from appellate review.

<div align="center">18</div>

does not prohibit all exculpations under the Bankruptcy Code and the court in such case specifically approved the exculpations of a creditor's committee and its members on the grounds that "11 U.S.C. § 1103(c), which lists the creditors' committee's powers, implies committee members have qualified immunity for actions within the scope of their duties. ... [I]f members of the committee can be sued by persons unhappy with the committee's performance during the case or unhappy with the outcome of the case, it will be extremely difficult to find members to serve on the committee. *Pacific Lumber*'s rationale for permitted exculpation of creditors' committees and their members (which was clearly policy based and based on creditors' committee qualified immunity flowing from their duties under section 1103(c) of the Bankruptcy Code and their disinterestedness and importance in chapter 11 cases) does not preclude exculpation to other parties in a particular chapter 11 case that perform similar roles to a creditors' committee and its members.[26]

Thus, the Bankruptcy Court read *Pacific Lumber* as rejecting only third-party exculpations in the Section-524(e) context but not in others. That holding is plainly in conflict with cases like *Patriot Place*, 486 B.R. at 882 ("[t]he Fifth Circuit cases seem 'broadly to foreclose non-consensual non-debtor releases and permanent injunctions.'"), and *In re Thru,* 2018 WL 5113124 at *22.

The Bankruptcy Court also overruled the Funds' objection that the Plan's channeling injunction is foreclosed by *Pacific Lumber* because it extends impermissibly to protect third parties.[27] As noted, *In re Thru* understood *Pacific*

---

[26] Confirmation Order at ¶ 74(a).

[27] *Id*. at ¶¶ 75-76.

*Lumber* to prohibit non-consensual, permanent injunctions in favor of non-debtors. *See In re Thru*, 2018 WL 5113124 at *21.

While the Funds believe this Court will confirm that *Pacific Lumber* should be read more broadly than the Bankruptcy Court did, the Court need not decide that issue now. It is enough for the Court to decide that there are conflicting decisions in need of this Court's resolution. *See* § 158(d)(2)(A)(ii). There are.

**C.    *The Bankruptcy Court's determination that certain protections afforded to a creditors' committee and its members should be extended to "other parties in a particular chapter 11 case that perform similar roles to a creditors' committee and its members" raises a question of law as to which there is no controlling authority .***

As noted in the previous section, in its discussion of *Pacific Lumber*, the Bankruptcy court held that

> *Pacific Lumber*'s rationale for permitted exculpation of creditors' committees and their members (which was clearly policy based and based on creditors' committee qualified immunity flowing from their duties under section 1103(c) of the Bankruptcy Code and their disinterestedness and importance in chapter 11 cases) does not preclude exculpation to other parties in a particular chapter 11 case that perform similar roles to a creditors' committee and its members.[28]

The Funds believe that protection-by-analogy holding is wrong under both *Pacific Lumber* and Section 1103(c), but for present purposes it is sufficient to say that the

---

[28] *Id*. at ¶ 74(a).

000763

App. 0678

Bankruptcy Court appears to be the first court to reach that holding and that neither this Court nor the Supreme Court has addressed it.

Section 158(d)(2)(A)(i) permits a direct appeal when the bankruptcy court's order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States ..." The legal question of whether parties "that perform similar roles to a creditors' committee and its members" should be entitled to the same protections as creditors' committees and their members is such a question.

000764
App. 2674

**CONCLUSION**

Accordingly, the Funds respectfully request that the Court grant this petition

and allow a direct appeal to this Court from the Bankruptcy Court's Confirmation

Order.

<div style="margin-left:50%">

Respectfully submitted,
**K&L GATES LLP**

</div>

| | |
|---|---|
| A. Lee Hogewood, III | /s/ David R. Fine |
| 4350 Lassiter at North Hills Ave. | David R. Fine |
| Suite 300 | Market Square Plaza |
| Raleigh, N.C. 27609 | 17 North Second St. |
| (919) 743-7306 | Harrisburg, PA 17101 |
| lee.hogewood@klgates.com | (717) 231-5820 |
| | david.fine@klgates.com |
| Artoush Varshosaz | |
| 1717 Main St., Suite 2800 | |
| Dallas, TX 75201 | |
| (214) 939-5659 | *Counsel for Petitioners* |
| artoush.varshosaz@klgates.com | April 13, 2021 |

000765

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies that this brief:

(i)        complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(C)(1) because it contains 4,912 words, including footnotes and excluding the cover, certificate of interested persons, table of contents, table of authorities, certificate of compliance and certificate of service.

(ii)       complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2010 and is set in Equity font in a size equivalent to 14 points or larger.

/s/ David R. Fine

## CERTIFICATE OF SERVICE

I certify that, on April 13, 2021, I filed the attached document with the Court's

CM/ECF system and that I also e-mailed a copy with exhibits to the following:

Jeffrey Pomerantz, Esq. (jpomerantz@pszlaw.com)
John A. Morris, Esq. (jmorris@pszlaw.com)
*Counsel for the Debtor*

John Bonds, Esq. (john@bondsellis.com)
Clay Taylor, Esq. (clay.taylor@bondsellis)
*Counsel for J. Dondero*

Douglas Draper, Esq. (ddraper@hellerdraper.com)
*Counsel for the Dugaboy Investment Trust*

Davor Rukavina, Esq. (drukavina@munsch.com)
*Counsel for the Advisors*


/s/ David R. Fine

# Tab "A"

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01273-N    Document 10-59    Filed 03/06/23    Page 104 of 193    PageID 8558
Case 19-34054-sgj11    Doc 1943    Filed 02/22/21    Entered 02/22/21 16:04:16    Page 2 of 161



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 22, 2021**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |

### ORDER (I) CONFIRMING THE FIFTH AMENDED
### PLAN OF REORGANIZATION OF HIGHLAND CAPITAL
### MANAGEMENT, L.P. (AS MODIFIED) AND (II) GRANTING RELATED RELIEF

The Bankruptcy Court[2] having:

a.      entered, on November 24, 2020, the *Order (A) Approving the Adequacy of the Disclosure Statement, (B) Scheduling A Hearing to Confirm the Fifth Amended Plan of Reorganization (C) Establishing Deadline for Filing Objections to Confirmation of Plan, (D) Approving Form of Ballots, Voting Deadline and Solicitation Procedures, and (E) Approving Form and Manner of Notice* [Docket No. 1476] (the "<u>Disclosure Statement Order</u>"), pursuant to which the Bankruptcy Court approved the adequacy of the *Disclosure Statement Relating to the Fifth*

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan (as defined below). The rules of interpretation set forth in Article I of the Plan apply to this Confirmation Order.

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02802-S   Document 16-9   Filed 03/08/22   Page 105 of 193   PageID 5359
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:48:16   Page 14 of 161

*Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1473] (the "Disclosure Statement") under section 1125 of the Bankruptcy Code and authorized solicitation of the Disclosure Statement;

b.      set January 5, 2021, at 5:00 p.m. prevailing Central Time (the "Objection Deadline"), as the deadline for filing objections to confirmation of the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (*As Modified*) [Docket No. 1808] (as amended, supplemented or modified, the "Plan");

c.      set January 5, 2021, at 5:00 p.m. prevailing Central Time,  as the deadline for voting on the Plan (the "Voting Deadline") in accordance with the Disclosure Statement Order;

d.      initially set January 13, 2021, at 9:30 a.m. prevailing Central Time, as the date and time to commence the hearing to consider confirmation of the Plan pursuant to Bankruptcy Rules 3017 and 3018, sections 1126, 1128, and 1129 of the Bankruptcy Code, and the Disclosure Statement Order, which hearing was continued to January 26, 2021, at 9:30 a.m. prevailing Central Time and further continued to February 2, 2021;

e.      reviewed: (i) the Plan; (ii) the Disclosure Statement; and (iii) *Notice of (I) Entry of Order Approving Disclosure Statement; (II) Hearing to Confirm; and (III) Related Important Dates* (the "Confirmation Hearing Notice"), the form of which is attached as Exhibit 1-B to the Disclosure Statement Order;

f.      reviewed: (i) the *Debtor's Notice of Filing of Plan Supplement for the Third Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1389] filed November 13, 2020; (ii) *Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1606] filed on December 18, 2020; (iii) the *Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1656] filed on January 4, 2021; (iv) *Notice of Filing Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with Technical Modifications)t* dated January 22, 2021 [Docket No. 1811]; and (v) *Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland of Highland Capital Management, L.P. (As Modified)* on February 1, 2021 [Docket No. 1875]; (collectively, the documents listed in (i) through (v) of this paragraph, the "Plan Supplements");

g.      reviewed: (i) the *Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith* filed on December 30, 2020 [Docket No. 1648]; (ii) the *Second Notice of (I) Executory Contracts and*

2

000770
App. 0625

Case 22-03052-sjg   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-00280-S   Document 18-59   Filed 04/08/22   Page 64 of 156   PageID 3540
Case 19-34054-sgj11   Doc 1943 Filed 05/28/20   Entered 05/28/20 18:46   Page 32 of 161

*Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith* filed on January 11, 2021 [Docket No.1719]; (iii) the *Third Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith* filed on January 15, 2021 [Docket No. 1749]; (iv) the *Notice of Withdrawal of Certain Executory Contracts and Unexpired Leases from List of Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan* [Docket No. 1791]; (v) the *Fourth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan (II) Cure Amounts, if Any, and (III) Released Procedures in Connection Therewith* filed on January 27, 2021 [Docket No. 1847]; (vi) the *Notice of Hearing on Agreed Motion to (I) Assume Nonresidential Real Property Lease with Crescent TC Investors, L.P. Upon Confirmation of Plan and (II) Extend Assumption Deadline* filed on January 28, 2021 [Docket No. 1857]; and (vii) the *Fifth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan (II) Cure Amounts, if Any, and (III) Released Procedures in Connection Therewith* filed on February 1, 2021 [Docket No. 1873] (collectively, the documents referred to in (i) to (vii) are referred to as "List of Assumed Contracts");

h.   reviewed: (i) the *Debtor's Memorandum of Law in Support of Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1814] (the "Confirmation Brief"); (ii) the *Debtor's Omnibus Reply to Objections to Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management*; [Docket No. 1807]; and (iii) the *Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1772] and *Supplemental Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1887] filed on February 3, 2021 (together, the "Voting Certifications");

i.   reviewed: (i) the *Notice of Affidavit of Publication* dated December 3, 2020 [Docket No. 1505]; (ii) the *Certificate of Service* dated December 23, 2020 [Docket No. 1630]; (iii) the *Supplemental Certificate of Service* dated December 24, 2020 [Docket No. 1637]; (iv) the *Second Supplemental Certificate of Service* dated December 31, 2020 [Docket No. 1653]; (v) the *Certificate of Service* dated December 23, 2020 [Docket No. 1627]; (vi) the *Certificate of Service* dated January 6, 2021 [Docket No. 1696]; (vii) the *Certificate of Service* dated January 7, 2021 [Docket No. 1699]; (viii) the *Certificate of Service* dated January 7, 2021 [Docket No 1700]; (ix) the *Certificate of Service* dated January 15, 2021 [Docket No. 1761]; (x) the *Certificate of Service* dated January 19, 2021 [Docket No. 1775]; (xi) the

DOCS_SF:104487.21 36027/002

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01280-N    Document 10-59    Filed 05/06/21    Page 85 of 156    PageID 8531
Case 19-34054-sgj11    Doc 1943    Filed 02/22/21    Entered 02/22/21 16:58:16    Page 107 of 161

*Certificate of Service* dated January 20, 2021 [Docket No. 1787]; (xii) the *Certificate of Service* dated January 26, 2021[Docket No. 1844]; (xiii) the *Certificate of Service* dated January 27, 2021 [Docket No. 1854]; (xiv) the *Certificate of Service* dated February 1, 2021 [Docket No. 1879]; (xv) the *Certificates of Service* dated February 3, 2021 [Docket No. 1891 and 1893]; and (xvi) the *Certificates of Service* dated February 5, 2021 [Docket Nos. 1906, 1907, 1908 and 1909] (collectively, the "<u>Affidavits of Service and Publication</u>");

j.    reviewed all filed[3] pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and confirmation of the Plan, including all objections, statements, and reservations of rights;

k.    conducted a hearing to consider confirmation of the Plan, which commenced on February 2, 2021, at 9:30 a.m. prevailing Central Time and concluded on February 3, 2021, and issued its oral ruling on February 8, 2021 (collectively, the "<u>Confirmation Hearing</u>);

l.    heard the statements and arguments made by counsel in respect of confirmation of the Plan and having considered the record of this Chapter 11 Case and taken judicial notice of all papers and pleadings filed in this Chapter 11 Case; and

m.    considered all oral representations, testimony, documents, filings, and other evidence regarding confirmation of the Plan, including (a) all of the exhibits admitted into evidence;[4] (b) the sworn testimony of (i) James P. Seery, Jr., the Debtor's Chief Executive Officer and Chief Restructuring Officer and a member of the Board of Directors of Strand Advisors, Inc. ("<u>Strand</u>"), the Debtor's general partner; (ii) John S. Dubel, a member of the Board of Strand; (iii) Marc Tauber, a Vice President at Aon Financial Services; and (iv) Robert Jason Post, the Chief Compliance Officer of NexPoint Advisors, LP (collectively, the "<u>Witnesses</u>"); (c) the credibility of the Witnesses; and (d) the Voting Certifications.

NOW, THEREFORE, after due deliberation thereon and good cause appearing therefor,

the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of

law:

---

[3] Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in this Chapter 11 Case, as applicable.

[4] The Court admitted the following exhibits into evidence: (a) all of the Debtor's exhibits lodged at Docket No. 1822 (except TTTTT, which was withdrawn by the Debtor); (b) all of the Debtor's exhibits lodged at Docket No. 1866; (c) all of the Debtor's exhibits lodged at Docket No. 1877; (d) all of the Debtor's exhibits lodged at Docket No. 1895; and (e) Exhibits 6-12 and 15-17 offered by Mr. James Dondero and lodged at Docket No. 1874.

Appx. 0687
000772

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N    Document 10-59    Filed 08/06/21    Page 108 of 155    PageID 8592
Case 19-34054-sgj11    Doc 1943    Filed 02/22/21    Entered 02/22/21 18:46:10    Page 26 of 161

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

1.      **Findings of Fact and Conclusions of Law.**  The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record during the Confirmation Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding pursuant to Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.      **Introduction and Summary of the Plan.** Prior to addressing the specific requirements under the Bankruptcy Code and Bankruptcy Rules with respect to the confirmation of the Plan, the Bankruptcy Court believes it would be useful to first provide the following background of the Debtor's Chapter 11 Case, the parties involved therewith, and some of the major events that have transpired culminating in the filing and solicitation of the Plan of this very unusual case.  Before the Bankruptcy Court is the *Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*, filed on November 24, 2020, as modified on January 22, 2021 and again on February 1, 2021.  The parties have repeatedly referred to the Plan as an "asset monetization plan" because it involves the orderly wind-down of the Debtor's estate, including the sale of assets and certain of its funds over time, with the Reorganized Debtor continuing to manage certain other funds, subject to the oversight of the Claimant Trust Oversight Board.  The Plan provides for a Claimant Trust to, among other things, manage and monetize the Claimant Trust Assets for the benefit of the Debtor's economic stakeholders.  The Claimant Trustee is responsible

000773

for this process, among other duties specified in the Plan's Claimant Trust Agreement.  There is also anticipated to be a Litigation Sub-trust established for the purpose of pursuing certain avoidance or other causes of action for the benefit of the Debtor's economic constituents.

3.      **Confirmation Requirements Satisfied.**  The Plan is supported by the Committee and all claimants with Convenience Claims (*i.e.*, general unsecured claims under $1 million) who voted in Class 7.  Claimants with Class 8 General Unsecured Claims, however, voted to reject the Plan because, although the Plan was accepted by 99.8% of the amount of Claims in that class, only 17 claimants voted to accept the Plan while 27 claimants voted to reject the Plan.  As a result of such votes, and because Mr. Dondero and the Dondero Related Entities (as defined below) objected to the Plan on a variety of grounds primarily relating to the Plan's release, exculpation and injunction provisions, the Bankruptcy Court heard two full days of evidence on February 2 and 3, 2021, and considered testimony from five witnesses and thousands of pages of documentary evidence in determining whether the Plan satisfies the confirmation standards required under the Bankruptcy Code.  The Bankruptcy Court finds and concludes that the Plan meets all of the relevant requirements of sections 1123, 1124, and 1129, and other applicable provisions of the Bankruptcy Code, as more fully set forth below with respect to each of the applicable confirmation requirements.

4.      **Not Your Garden Variety Debtor**.  The Debtor's case is not a garden variety chapter 11 case.  The Debtor is a multibillion-dollar global investment adviser registered with the SEC, pursuant to the Investment Advisers Act of 1940.  It was founded in 1993 by James Dondero and Mark Okada.  Mark Okada resigned from his role with Highland prior to the

DOCS_SF:104487.21 36027/002

000774
App. 0680

bankruptcy case being filed on October 16, 2019 (the "<u>Petition Date</u>").  Mr. Dondero controlled

the Debtor as of the Petition Date but agreed to relinquish control of it on or about January 9, 2020,

pursuant to an agreement reached with the Committee, as described below.  Although Mr. Dondero

remained with the Debtor as an unpaid employee/portfolio manager after January 9, 2020, his

employment with the Debtor terminated on October 9, 2020.  Mr. Dondero continues to work for

and/or control numerous non-debtor entities in the complex Highland enterprise.

   5. **The Debtor**.  The Debtor is headquartered in Dallas, Texas.  As of the

Petition Date, the Debtor employed approximately 76 employees.  The Debtor is privately-owned:

(a) 99.5% by the Hunter Mountain Investment Trust; (b) 0.1866% by The Dugaboy Investment

Trust, a trust created to manage the assets of Mr. Dondero and his family; (c) 0.0627% by Mark

Okada, personally and through family trusts; and (d) 0.25% by Strand, the Debtor's general

partner.

   6. **The Highland Enterprise.**  Pursuant to various contractual arrangements,

the Debtor provides money management and advisory services for billions of dollars of assets,

including collateralized loan obligation vehicles ("<u>CLOs</u>"), and other investments.  Some of these

assets are managed by the Debtor pursuant to shared services agreements with certain affiliated

entities, including other affiliated registered investment advisors. In fact, there are approximately

2,000 entities in the byzantine complex of entities under the Highland umbrella.  None of these

affiliated entities filed for chapter 11 protection.  Most, but not all, of these entities are not

subsidiaries (direct or indirect) of the Debtor.  Many of the Debtor's affiliated companies are

000775
Appx 00620

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01270-N   Document 10-59   Filed 09/08/21   Page 139 of 156   PageID 8625
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:48:16   Page 82 of 161

offshore entities, organized in jurisdictions such as the Cayman Islands and Guernsey. *See* Disclosure Statement, at 17-18.

7.     **Debtor's Operational History.**  The Debtor's primary means of generating revenue has historically been from fees collected for the management and advisory services provided to funds that it manages, plus fees generated for services provided to its affiliates.  For additional liquidity, the Debtor, prior to the Petition Date, would sell liquid securities in the ordinary course, primarily through a brokerage account at Jefferies, LLC. The Debtor would also, from time to time, sell assets at non-Debtor subsidiaries and cause those proceeds to be distributed to the Debtor in the ordinary course of business.  The Debtor's current Chief Executive Officer, James P. Seery, Jr., credibly testified at the Confirmation Hearing that the Debtor was "run at a deficit for a long time and then would sell assets or defer employee compensation to cover its deficits."  The Bankruptcy Court cannot help but wonder if that was necessitated because of enormous litigation fees and expenses incurred by the Debtor due to its culture of litigation—as further addressed below.

8.     **Not Your Garden Variety Creditor's Committee**.  The Debtor and this chapter 11 case are not garden variety for so many reasons.  One of the most obvious standouts in this case is the creditor constituency.  The Debtor did not file for bankruptcy because of any of the typical reasons that large companies file chapter 11.  For example, the Debtor did not have a large, asset-based secured lender with whom it was in default; it only had relatively insignificant secured indebtedness owing to Jeffries, with whom it had a brokerage account, and one other entity, Frontier State Bank.  The Debtor also did not have problems with its trade vendors or landlords.

DOCS_SF:104487.21 36027/002

000776
Appx 9621

The Debtor also did not suffer any type of catastrophic business calamity.  In fact, the Debtor filed

for Chapter 11 protection six months before the onset of the COVID-19 pandemic.  Rather, the

Debtor filed for Chapter 11 protection due to a myriad of massive, unrelated, business litigation

claims that it faced—many of which had finally become liquidated (or were about to become

liquidated) after a decade or more of contentious litigation in multiple forums all over the world.

The Committee in this case has referred to the Debtor—under its former chief executive, Mr.

Dondero—as a "serial litigator."  The Bankruptcy Court agrees with that description. By way of

example, the members of the Committee (and their history of litigation with the Debtor and others

in the Highland complex) are as follows:

a. **The Redeemer Committee of the Highland Crusader Fund (the "Redeemer
Committee")**.  This Committee member obtained an arbitration award against the
Debtor in the amount of $190,824,557, inclusive of interest, approximately five
months before the Petition Date, from a panel of the American Arbitration
Association. It was on the verge of having that award confirmed by the Delaware
Chancery Court immediately prior to the Petition Date, after years of disputes that
started in late 2008 (and included legal proceedings in Bermuda).  This creditor's
claim was settled during this Chapter 11 Case in the amount of approximately
$137,696,610 (subject to other adjustments and details not relevant for this
purpose).

b. **Acis Capital Management, L.P., and Acis Capital Management GP, LLC
("Acis")**.  Acis was formerly in the Highland complex of companies, but was not
affiliated with Highland as of the Petition Date.  This Committee member and its
now-owner, Joshua Terry, were involved in litigation with the Debtor dating back
to 2016.  Acis was forced by Mr. Terry (who was a former Highland portfolio
manager) into an involuntary chapter 11 bankruptcy in the Bankruptcy Court for
the Northern District of Texas, Dallas Division before the Bankruptcy Court in
2018, after Mr. Terry obtained an approximately $8 million arbitration award and
judgment against Acis.  Mr. Terry ultimately was awarded the equity ownership of
Acis by the Bankruptcy Court in the Acis bankruptcy case.  Acis subsequently
asserted a multi-million dollar claim against Highland in the Bankruptcy Court for
Highland's alleged denuding of Acis to defraud its creditors—primarily Mr. Terry.
The litigation involving Acis and Mr. Terry dates back to mid-2016 and has

9

000777

continued on with numerous appeals of Bankruptcy Court orders, including one appeal still pending at the Fifth Circuit Court of Appeals. There was also litigation involving Mr. Terry and Acis in the Royal Court of the Island of Guernsey and in a state court in New York. The Acis claim was settled during this Chapter 11 Case, in Bankruptcy Court-ordered mediation, for approximately $23 million (subject to other details not relevant for this purpose), and is the subject of an appeal being pursued by Mr. Dondero.

c.    **UBS Securities LLC and UBS AG London Branch ("UBS").** UBS is a Committee member that filed a proof of claim in the amount of $1,039,957,799.40 in this Chapter 11 Case. The UBS Claim was based on a judgment that UBS received from a New York state court in 2020. The underlying decision was issued in November 2019, after a multi-week bench trial (which had occurred many months earlier) on a breach of contract claim against non-Debtor entities in the Highland complex. The UBS litigation related to activities that occurred in 2008 and 2009. The litigation involving UBS and Highland and affiliates was pending for more than a decade (there having been numerous interlocutory appeals during its history). The Debtor and UBS recently announced an agreement in principle for a settlement of the UBS claim (which came a few months after Bankruptcy Court-ordered mediation) which will be subject to a 9019 motion to be filed with the Bankruptcy Court on a future date.

d.    **Meta-E Discovery ("Meta-E").** Meta-E is a Committee member that is a vendor who happened to supply litigation and discovery-related services to the Debtor over the years. It had unpaid invoices on the Petition Date of more than $779,000.

It is fair to say that the members of the Committee in this case all have wills of steel. They fought hard before and during this Chapter 11 Case. The members of the Committee, all of whom have volunteered to serve on the Claimant Trust Oversight Board post-confirmation, are highly sophisticated and have had highly sophisticated professionals representing them. They have represented their constituency in this case as fiduciaries extremely well.

9.    **Other Key Creditor Constituents.** In addition to the Committee members who were all embroiled in years of litigation with Debtor and its affiliates in various ways, the Debtor has been in litigation with Patrick Daugherty, a former limited partner and employee of the Debtor, for many years in both Delaware and Texas state courts. Mr. Daugherty filed an amended

000778

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01280-S    Document 10-59    Filed 07/26/22    Page 142 of 156    PageID 8663
Case 19-34054-sgj11    Doc 1946    Filed 02/28/22    Entered 02/22/21    Date Filed    Page 202 of 161

proof of claim in this Chapter 11 Case for $40,710,819.42 relating to alleged breaches of
employment-related agreements and for defamation arising from a 2017 press release posted by
the Debtor. The Debtor and Mr. Daugherty recently announced a settlement of Mr. Daugherty's
claim pursuant to which he will receive $750,000 in cash on the Effective Date of the Plan, an
$8.25 million general unsecured claim, and a $2.75 million subordinated claim (subject to other
details not relevant for this purpose). Additionally, entities collectively known as "HarbourVest"
invested more than $70 million with an entity in the Highland complex and asserted a $300 million
proof of claim against the Debtor in this case, alleging, among other things, fraud and RICO
violations. HarbourVest's claim was settled during the bankruptcy case for a $45 million general
unsecured claim and a $35 million subordinated claim, and that settlement is also being appealed
by a Dondero Entity.

     10.    **Other Claims Asserted.** Other than the Claims just described, most of the
other Claims in this Chapter 11 Case are Claims asserted against the Debtor by: (a) entities in the
Highland complex—most of which entities the Bankruptcy Court finds to be controlled by Mr.
Dondero; (b) employees who contend that are entitled to large bonuses or other types of deferred
compensation; and (c) numerous law firms that worked for the Debtor prior to the Petition Date
and had outstanding amounts due for their prepetition services.

     11.    **Not Your Garden Variety Post-Petition Corporate Governance
Structure**. Yet another reason this is not your garden variety chapter 11 case is its post-petition
corporate governance structure. Immediately from its appointment, the Committee's relationship
with the Debtor was contentious at best. First, the Committee moved for a change of venue from

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01273-S   Document 10-59   Filed 06/08/21   Page 143 of 196   PageID 8669
Case 19-34054-sgj11   Doc 1048   Filed 02/28/20   Entered 02/22/21   Date Filed: 07/14/20   Page 202 of 161

Delaware to Dallas. Second, the Committee (and later, the United States Trustee) expressed its then-desire for the appointment of a chapter 11 trustee due to its concerns over and distrust of Mr. Dondero, his numerous conflicts of interest, and his history of alleged mismanagement (and perhaps worse).

12.     **Post-Petition Corporate Governance Settlement with Committee.** After spending many weeks under the threat of the potential appointment of a trustee, the Debtor and Committee engaged in substantial and lengthy negotiations resulting in a corporate governance settlement approved by the Bankruptcy Court on January 9, 2020.[5] As a result of this settlement, among other things, Mr. Dondero relinquished control of the Debtor and resigned his positions as an officer or director of the Debtor and its general partner, Strand. As noted above, Mr. Dondero agreed to this settlement pursuant a stipulation he executed,[6] and he also agreed not to cause any Related Entity (as defined in the Settlement Motion) to terminate any agreements with the Debtor. The January 9 Order also (a) required that the Bankruptcy Court serve as "gatekeeper" prior to the commencement of any litigation against the three independent board members appointed to oversee and lead the Debtor's restructuring in lieu of Mr. Dondero and (b) provided for the exculpation of those board members by limiting claims subject to the "gatekeeper" provision to those alleging willful misconduct and gross negligence.

---

[5] This order is hereinafter referred to as the "January 9 Order" and was entered by the Court on January 9, 2020 [Docket No. 339] pursuant to the *Motion of the Debtor to Approve Settlement with Official Committee of Unsecured Creditors Regarding the Governance of the Debtor and Procedures for Operation in the Ordinary Course* [Docket No. 281] (the "Settlement Motion").

[6] *See Stipulation in Support of Motion of the Debtor for Approval of Settlement With the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in Ordinary Course* [Docket No. 338] (the "Stipulation").

DOCS_SF:104487.21 36027/002

000780

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02802-S    Document 10-9    Filed 04/06/23    Page 164 of 1966    PageID 8650
Case 19-34054-sgj11    Doc 1946    Filed 02/28/23    Entered 02/28/23 16:41:51    Page 202 of 161

13.    **Appointment of Independent Directors.**    As part of the Bankruptcy

Court-approved settlement, three eminently qualified independent directors were chosen to lead

Highland through its Chapter 11 Case.  They are:  James P. Seery, Jr., John S. Dubel (each chosen

by the Committee), and Retired Bankruptcy Judge Russell Nelms.  These three individuals are

each technically independent directors of Strand (Mr. Dondero had previously been the sole

director of Strand and, thus, the sole person in ultimate control of the Debtor).  The three

independent board members' resumes are in evidence.  The Bankruptcy Court later approved Mr.

Seery's appointment as the Debtor's Chief Executive Officer, Chief Restructuring Officer, and

Foreign Representative.   Suffice it to say that this settlement and the appointment of the

independent directors changed the entire trajectory of the case and saved the Debtor from the

appointment of a trustee.  The Bankruptcy Court and the Committee each trusted the independent

directors.  They were the right solution at the right time.  Because of the unique character of the

Debtor's business, the Bankruptcy Court believed the appointment of three qualified independent

directors was a far better outcome for creditors than the appointment of a conventional chapter 11

trustee.  Each of the independent directors brought unique qualities to the table.  Mr. Seery, in

particular, knew and had vast experience at prominent firms with high-yield and distressed

investing similar to the Debtor's business.  Mr. Dubel had 40 years of experience restructuring

large complex businesses and serving on boards in this context.  And Retired Judge Nelms had not

only vast bankruptcy experience but seemed particularly well-suited to help the Debtor maneuver

through conflicts and ethical quandaries.  By way of comparison, in the chapter 11 case of Acis,

the former affiliate of Highland that the Bankruptcy Court presided over and which company was

DOCS_SF:104487.21 36027/002

000781
App. 0696

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-S   Document 13-9   Filed 05/25/22   Page 145 of 156   PageID 8681
Case 19-34054-sgj11   Doc 1943   Filed 02/28/22   Entered 02/22/21   Date Filed: 04/02/20   Page 202 of 161

much smaller in size and scope than Highland (managing only 5-6 CLOs), the creditors elected a
chapter 11 trustee who was not on the normal trustee rotation panel in this district but, rather, was
a nationally known bankruptcy attorney with more than 45 years of large chapter 11 experience.
While the Acis chapter 11 trustee performed valiantly, he was sued by entities in the Highland
complex shortly after he was appointed (which the Bankruptcy Court had to address). The Acis
trustee was also unable to persuade the Debtor and its affiliates to agree to any actions taken in the
case, and he finally obtained confirmation of Acis' chapter 11 plan over the objections of the
Debtor and its affiliates on his fourth attempt (which confirmation was promptly appealed).

14. **Conditions Required by Independent Directors.** Given the experiences
in Acis and the Debtor's culture of constant litigation, it was not as easy to get such highly qualified
persons to serve as independent board members and, later, as the Debtor's Chief Executive Officer,
as it would be in an ordinary chapter 11 case. The independent board members were stepping into
a morass of problems. Naturally, they were worried about getting sued no matter how defensible
their efforts—given the litigation culture that enveloped Highland historically. Based on the
record of this Case and the proceedings in the Acis chapter 11 case, it seemed as though everything
always ended in litigation at Highland. The Bankruptcy Court heard credible testimony that none
of the independent directors would have taken on the role of independent director without (1) an
adequate directors and officers' ("D&O") insurance policy protecting them; (2) indemnification
from Strand that would be guaranteed by the Debtor; (3) exculpation for mere negligence claims;
and (4) a gatekeeper provision prohibiting the commencement of litigation against the independent
directors without the Bankruptcy Court's prior authority. This gatekeeper provision was also

000782
Appx 0687

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02780-S   Document 10-59   Filed 06/08/23   Page 146 of 195   PageID 8692
Case 19-34054-sgj11   Doc 3046   Filed 02/28/23   Entered 02/28/23   Page 202 of 161

included in the Bankruptcy Court's order authorizing the appointment of Mr. Seery as the Debtor's

Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative entered on

July 16, 2020.[7]   The gatekeeper provisions in both the January 9 Order and July 16 Order are

precisely analogous to what bankruptcy trustees have pursuant to the so-called "Barton Doctrine"

(first articulated in an old Supreme Court case captioned *Barton v. Barbour,* 104 U.S. 126 (1881)).

The Bankruptcy Court approved all of these protections in the January 9 Order and the July 16

Order, and no one appealed either of those orders.   As noted above, Mr. Dondero signed the

Stipulation that led to the settlement that was approved by the January 9 Order.   The Bankruptcy

Court finds that, like the Committee, the independent board members have been resilient and

unwavering in their efforts to get the enormous problems in this case solved.   They seem to have

at all times negotiated hard and in good faith, which culminated in the proposal of the Plan

currently before the Bankruptcy Court.   As noted previously, they completely changed the

trajectory of this case.

      15.   **Not Your Garden Variety Mediators.**   And still another reason why this

was not your garden variety case was the mediation effort.   In the summer of 2020, roughly nine

months into the chapter 11 case, the Bankruptcy Court ordered mediation among the Debtor, Acis,

UBS, the Redeemer Committee, and Mr. Dondero.   The Bankruptcy Court selected co-mediators

because mediation among these parties seemed like such a Herculean task—especially during

COVID-19 where people could not all be in the same room.   Those co-mediators were:   Retired

---

[7] *See Order Approving the Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Retention of James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative Nunc Pro Tunc to March 15, 2020* [Docket No. 854] entered on July 16, 2020 (the "July 16 Order")

000783
App. 0688

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01227-NS   Document 10-59   Filed 07/08/21   Page 147 of 156   PageID 8758
Case 19-34054-sgj11   Doc 1943 Filed 02/28/20   Entered 02/28/21 16:45:16   Page 202 of 161

Bankruptcy Judge Alan Gropper from the Southern District of New York, who had a distinguished career presiding over complex chapter 11 cases, and Ms. Sylvia Mayer, who likewise has had a distinguished career, first as a partner at a preeminent law firm working on complex chapter 11 cases, and subsequently as a mediator and arbitrator in Houston, Texas.  As noted earlier, the Redeemer Committee and Acis claims were settled during the mediation—which seemed nothing short of a miracle to the Bankruptcy Court—and the UBS claim was settled several months later and the Bankruptcy Court believes the ground work for that ultimate settlement was laid, or at least helped, through the mediation.  And, as earlier noted, other significant claims have been settled during this case, including those of HarbourVest (who asserted a $300 million claim) and Patrick Daugherty (who asserted a $40 million claim).  The Bankruptcy Court cannot stress strongly enough that the resolution of these enormous claims—and the acceptance by all of these creditors of the Plan that is now before the Bankruptcy Court—seems nothing short of a miracle. It was more than a year in the making.

16.    **Not Your Garden Variety Plan Objectors (That Is, Those That Remain)**.  Finally, a word about the current, remaining objectors to the Plan before the Bankruptcy Court.  Once again, the Bankruptcy Court will use the phrase "not your garden variety", which phrase applies to this case for many reasons.  Originally, there were over a dozen objections filed to the Plan.  The Debtor then made certain amendments or modifications to the Plan to address some of these objections, none of which require further solicitation of the Plan for reasons set forth in more detail below.  The only objectors to the Plan left at the time of the Confirmation Hearing

000784

App. 0690

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-S   Document 59   Filed 10/08/21   Page 240 of 256   PageID 8754
Case 19-34054-sgj11   Doc 1940   Filed 02/22/21   Entered 02/22/21 Date Filed: 02/22/2021   Page 120 of 161

were Mr. Dondero [Docket No. 1661] and entities that the Bankruptcy Court finds are owned and/or controlled by him and that filed the following objections:

a.   *Objection to Confirmation of the Debtor's Fifth Amended Plan of Reorganization* (filed by Get Good Trust and The Dugaboy Investment Trust) [Docket No. 1667];

b.   *Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (filed by Highland Capital Management Fund Advisors, L.P., Highland Fixed Income Fund, Highland Funds I and its series, Highland Funds II and its series, Highland Global Allocation Fund, Highland Healthcare Opportunities Fund, Highland Income Fund, Highland Merger Arbitrate Fund, Highland Opportunistic Credit Fund, Highland Small-Cap Equity Fund, Highland Socially Responsible Equity Fund, Highland Total Return Fund, Highland/iBoxx Senior Loan ETF, NexPoint Advisors, L.P., NexPoint Capital, Inc., NexPoint Real Estate Strategies Fund, NexPoint Strategic Opportunities Fund)* [Docket No. 1670];

c.   A *Joinder to the Objection filed at 1670 by:  NexPoint Real Estate Finance Inc., NexPoint Real Estate Capital, LLC, NexPoint Residential Trust, Inc., NexPoint Hospitality Trust, NexPoint Real Estate Partners, LLC, NexPoint Multifamily Capital Trust, Inc., VineBrook Homes Trust, Inc., NexPoint Real Estate Advisors, L.P., NexPoint Real Estate Advisors II, L.P., NexPoint Real Estate Advisors III, L.P., NexPoint Real Estate Advisors IV, L.P., NexPoint Real Estate Advisors V, L.P., NexPoint Real Estate Advisors VI, L.P., NexPoint Real Estate Advisors VII, L.P., NexPoint Real Estate Advisors VIII, L.P., and any funds advised by the foregoing* [Docket No. 1677];

d.   *NexPoint Real Estate Partners LLC's Objection to Debtor's Fifth Amended Plan of Reorganization (filed by NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC)* [Docket No. 1673]; and

e.   *NexBank's Objection to Debtor's Fifth Amended Plan of Reorganization (filed by NexBank Title, Inc., NexBank Securities, Inc., NexBank Capital, Inc., and NexBank)* [Docket No. 1676].  The entities referred to in (i) through (v) of this paragraph are hereinafter referred to as the "Dondero Related Entities").

17.   **Questionability of Good Faith as to Outstanding Confirmation Objections.**  Mr. Dondero and the Dondero Related Entities technically have standing to object to the Plan, but the remoteness of their economic interests is noteworthy, and the Bankruptcy Court

17

000785
App. 0700

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01228-NS    Document 10-59    Filed 09/08/216    Page 1 of 136    Page ID 87525
Case 19-34054-sgj11    Doc 1040    Filed 03/28/20    Entered 03/28/21    Date Filed: 0 Page 2 of 161

questions the good faith of Mr. Dondero's and the Dondero Related Entities' objections. In fact, the Bankruptcy Court has good reason to believe that these parties are not objecting to protect economic interests they have in the Debtor but to be disruptors. Mr. Dondero wants his company back. This is understandable, but it is not a good faith basis to lob objections to the Plan. As detailed below, the Bankruptcy Court has slowed down plan confirmation multiple times and urged the parties to talk to Mr. Dondero in an attempt to arrive at what the parties have repeatedly referred to as a "grand bargain," the ultimate goal to resolve the Debtor's restructuring. The Debtor and the Committee represent that they have communicated with Mr. Dondero regarding a grand bargain settlement, and the Bankruptcy Court believes that they have.

18.    **Remote Interest of Outstanding Confirmation Objectors.** To be specific about the remoteness of Mr. Dondero's and the Dondero Related Entities' interests, the Bankruptcy Court will address them each separately. First, Mr. Dondero has a pending objection to the Plan. Mr. Dondero's only economic interest with regard to the Debtor is an unliquidated indemnification claim (and, based on everything the Bankruptcy Court has heard, his indemnification claims would be highly questionable at this juncture). Mr. Dondero owns no equity in the Debtor directly. Mr. Dondero owns the Debtor's general partner, Strand, which in turn owns a quarter percent of the total equity in the Debtor. Second, a joint objection has been filed by The Dugaboy Trust ("Dugaboy") and the Get Good Trust ("Get Good"). The Dugaboy Trust was created to manage the assets of Mr. Dondero and his family and owns a 0.1866% limited partnership interest in the Debtor. *See* Disclosure Statement at 7, n.3. The Bankruptcy Court is not clear what economic interest the Get Good Trust has, but it likewise seems to be related to Mr. Dondero. Get Good

DOCS_SF:104487.21 36027/002

000786
App. 0781

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02170-S   Document 10-59   Filed 06/08/22   Page 250 of 1256   PageID 8756
Case 19-34054-sgj11   Doc 1940   Filed 02/18/21   Entered 02/18/21 14:48:10   Page 202 of 161

filed three proofs of claim relating to a pending federal tax audit of the Debtor's 2008 return, which

the Debtor believes arise from Get Good's equity security interests and are subject to subordination

as set forth in its Confirmation Brief.  Dugaboy filed three claims against the Debtor: (a) an

administrative claim relating to the Debtor's alleged postpetition management of Multi-Strat

Credit Fund, L.P., (b) a prepetition claim against a subsidiary of the Debtor for which it seeks to

pierce the corporate veil, each of which the Debtor maintains are frivolous in the Confirmation

Brief, and (c) a claim arising from its equity security interest in the Debtor, which the Debtor

asserts should be subordinated.  Another group of objectors that has joined together in one

objection is what the Bankruptcy Court will refer to as the "Highland Advisors and Funds." *See*

Docket No. 1863.  The Bankruptcy Court understands they assert disputed administrative expense

claims against the estate that were filed shortly before the Confirmation Hearing on January 23,

2021 [Docket No. 1826], and during the Confirmation Hearing on February 3, 2021 [Docket No.

1888].  At the Confirmation Hearing, Mr. Post testified on behalf of the Highland Advisors and

Funds that the Funds have independent board members that run the Funds, but the Bankruptcy

Court was not convinced of their independence from Mr. Dondero because none of the so-called

independent board members have ever testified before the Bankruptcy Court and all have been

engaged with the Highland complex for many years.  Notably, the Court questions Mr. Post's

credibility because, after more than 12 years of service, he abruptly resigned from the Debtor in

October 2020 at the exact same time that Mr. Dondero resigned at the Board of Directors' request,

and he is currently employed by Mr. Dondero.  Moreover, Dustin Norris, a witness in a prior

proceeding (whose testimony was made part of the record at the Confirmation Hearing), recently

19

000787

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 10-59   Filed 10/08/22   Page 231 of 1936   PageID 8747
Case 19-34054-sgj11   Doc 10-40   Filed 02/28/2630   Entered 02/22/21   Date Filed: 0P/14/2021 of 161

testified on behalf of the Highland Advisors and Funds in another proceeding that Mr. Dondero owned and/or controlled these entities.  Finally, various NexBank entities objected to the Plan.  The Bankruptcy Court does not believe they have liquidated claims against the Debtor.  Mr. Dondero appears to be in control of these entities as well.

19.     **Background Regarding Dondero Objecting Parties.**  To be clear, the Bankruptcy Court has allowed all these objectors to fully present arguments and evidence in opposition to confirmation, even though their economic interests in the Debtor appear to be extremely remote and the Bankruptcy Court questions their good faith.  Specifically, the Bankruptcy Court considers them all to be marching pursuant to the orders of Mr. Dondero.  In the recent past, Mr. Dondero has been subject to a temporary restraining order and preliminary injunction by the Bankruptcy Court for interfering with Mr. Seery's management of the Debtor in specific ways that were supported by evidence.  Around the time that this all came to light and the Bankruptcy Court began setting hearings on the alleged interference, Mr. Dondero's company phone, which he had been asked to turn in to Highland, mysteriously went missing.  The Bankruptcy Court merely mentions this in this context as one of many reasons that the Bankruptcy Court has to question the good faith of Mr. Dondero and his affiliates in raising objections to confirmation of the Plan.

20.     **Other Confirmation Objections.**  Other than the objections filed by Mr. Dondero and the Dondero Related Entities, the only other pending objection to the Plan is the *United States Trustee's Limited Objection to Confirmation of Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1671], which objected to the Plan's exculpation, injunction, and

000788
App. 0788

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-S    Document 10-59    Filed 02/08/22    Page 124 of 193    PageID 8753
Case 19-34054-sgj11    Doc 1943    Filed 02/18/22    Entered 02/18/22 14:42:04    Page 202 of 161

Debtor release provisions.  In juxtaposition, to these pending objections, the Bankruptcy Court

notes that the Debtor resolved the following objections to the Plan:

a.   *CLO Holdco, Ltd.'s Joinder to Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. and Supplemental Objections to Plan Confirmation* [Docket No. 1675].  This Objection has been resolved pursuant to mutually agreed language by the parties set forth in paragraph VV of the Confirmation Order;

b.   *Objection of Dallas County, City of Allen, Allen ISD, City of Richardson, and Kaufman County to Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1662].  This Objection has been resolved pursuant to mutually agreed language by the parties set forth in paragraph QQ of the Confirmation Order;

c.   *Senior Employees' Limited Objection to Debtor's Fifth Amended Plan of Reorganization (filed by Scott Ellington, Thomas Surgent, Frank Waterhouse, Isaac Leventon)* [Docket No. 1669].  This Objection has been resolved pursuant to mutually agreed language by the parties set forth in paragraph 82 and paragraphs RR and SS of the Confirmation Order;

d.   *Limited Objection of Jack Yang and Brad Borud to Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1666] and the amended joinder filed by Davis Deadman, Paul Kauffman and Todd Travers [Docket No. 1679].  This Objection and the amended joinder were resolved by agreement of the parties pursuant to modifications to the Plan filed by the Debtor;

e.   *United States' (IRS) Limited Objection to Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1668].  This Objection has been resolved pursuant to mutually agreed language by the parties set forth in paragraphs TT and UU of the Confirmation Order; and

f.   *Patrick Hagaman Daugherty's Objection to Confirmation of Fifth Amended Plan of Reorganization* [Docket No. 1678].  This objection was resolved by the parties pursuant to the settlement of Mr. Daugherty's claim announced on the record of the Confirmation Hearing.

21.    **Capitalized Terms.**  Capitalized terms used herein, but not defined herein,

shall have the respective meanings attributed to such terms in the Plan and the Disclosure

Statement, as applicable.

DOCS_SF:104487.21 36027/002

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01228-S    Document 10-59    Filed 06/08/22    Page 253 of 156    PageID 8769
Case 22-03052-sgj11    Doc 10-19    Filed 05/25/22    Entered 05/25/22    Date Filed    Page 22 of 161

22.    **Jurisdiction and Venue.**  The Bankruptcy Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Chapter 11 Case is proper in this district and in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

23.    **Chapter 11 Petition.**  On the Petition Date, the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, which case was transferred to the Bankruptcy Court on December 19, 2019.  The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case.  The Office of the United States Trustee appointed the Committee on October 29, 2019.

24.    **Judicial Notice.**  The Bankruptcy Court takes judicial notice of the docket in this Chapter 11 Case maintained by the clerk of the Bankruptcy Court and the court-appointed claims agent, Kurtzman Carson Consultants LLC ("KCC"), including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during this Chapter 11 Case, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing, as well as all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at hearings held before the Bankruptcy Court or the District Court for the Northern District of Texas in

000790
App. 0785

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-NS    Document 10-59    Filed 04/08/21    Page 264 of 1956    PageID 8760
Case 19-34054-sgj11    Doc 1946    Filed 02/18/21    Entered 02/18/21    Date Filed: 07/14/2020    Page 202 of 161

connection with an adversary proceeding or appellate proceeding, respectively, related to this Chapter 11 Case.

25.    **Plan Supplement Documents.**    Prior to the Confirmation Hearing, the Debtor filed each of the Plan Supplements.    The Plan Supplements contain, among other documents, the Retained Causes of Action, the Claimant Trust Agreement, the Litigation Sub-Trust Agreement, the Senior Employee Stipulation, the Related Entity List, the Schedule of Employees, the Reorganized Limited Partnership Agreement, supplements to the Liquidation Analysis/Financial Projections, the Schedule of Contracts and Leases to be Assumed, and the other Plan Documents set forth therein (collectively, the "Plan Supplement Documents").

26.    **Retained Causes of Action Adequately Preserved.**    The Bankruptcy Court finds that the list of Retained Causes of Action included in the Plan Supplements sufficiently describes all potential Retained Causes of Action, provides all persons with adequate notice of any Causes of Action regardless of whether any specific claim to be brought in the future is listed therein or whether any specific potential defendant or other party is listed therein, and satisfies applicable law in all respects to preserve all of the Retained Causes of Action. The definition of the Causes of Action and Schedule of Retained Causes of Action, and their inclusion in the Plan, specifically and unequivocally preserve the Causes of Action for the benefit of the Reorganized Debtor, the Claimant Trust, or the Litigation Sub-Trust, as applicable.

27.    **Plan Modifications Are Non-Material.**    In addition to the Plan Supplements, the Debtor made certain non-material modifications to the Plan, which are reflected in (i) the *Redline of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*

App. 0706
000791

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 10-59    Filed 05/08/23    Page 255 of 256    PageID 8781
Case 19-34054-sgj11    Doc 1943    Filed 02/22/21    Entered 02/22/21    Date Filed:    Page 202 of 161

*(as Modified)* filed on January 22, 2021 [Docket No. 1809], and (ii) Exhibit B to the *Debtor's Notice of Filing of Plan Supplement to Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* filed on February 1, 2021 [Docket No. 1875] (collectively, the "Plan Modifications").  Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation so long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.  None of the modifications set forth in the Plan Supplements or the Plan Modifications require any further solicitation pursuant to sections 1125, 1126, or 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, because, among other things, they do not materially adversely change the treatment of the claims of any creditors or interest holders who have not accepted, in writing, such supplements and modifications.  Among other things, there were changes to the projections that the Debtor filed shortly before the Confirmation Hearing (which included projected distributions to creditors and a comparison of projected distributions under the Plan to potential distributions under a hypothetical chapter 7 liquidation).  The Plan Supplements and Plan Modifications did not mislead or prejudice any creditors or interest holders nor do they require that Holders of Claims or Equity Interests be afforded an opportunity to change previously cast votes to accept or reject the Plan. Specifically, the Amended Liquidation Analysis/Financial Projections filed on February 1, 2021 [Docket No. 1875] do not constitute any material adverse change to the treatment of any creditors or interest holders but, rather, simply update the estimated distributions based on Claims that were settled in the interim and provide updated financial data.  The filing and notice of the Plan Supplements and Plan Modifications were appropriate and complied with the requirements of

Appx 0785

000792

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01281-N   Document 10-59   Filed 06/08/22   Page 156 of 196   PageID 8792
Case 19-34054-sgj11   Doc 1940   Filed 02/28/20   Entered 02/28/20   Filed: Page 202 of 161

section 1127(a) of the Bankruptcy Code and the Bankruptcy Rules, and no other solicitation or

disclosure or further notice is or shall be required.  The Plan Supplements and Plan Modifications

each became part of the Plan pursuant section 1127(a) of the Bankruptcy Code.  The Debtor or

Reorganized Debtor, as applicable, is authorized to modify the Plan or Plan Supplement

Documents following entry of this Confirmation Order in a manner consistent with section 1127(b)

of the Bankruptcy Code, the Plan, and, if applicable, the terms of the applicable Plan Supplement

Document.

28.     **Notice of Transmittal, Mailing and Publication of Materials.**  As is

evidenced by the Voting Certifications and the Affidavits of Service and Publication, the

transmittal and service of the Plan, the Disclosure Statement, Ballots, and Confirmation Hearing

Notice were adequate and sufficient under the circumstances, and all parties required to be given

notice of the Confirmation Hearing (including the deadline for filing and serving objections to the

confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance

with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy

Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had an

opportunity to appear and be heard with respect thereto.  No other or further notice is required.

The publication of the Confirmation Hearing Notice, as set forth in the *Notice of Affidavit of

Publication* dated December 3, 2020 [Docket No. 1505], complied with the Disclosure Statement

Order.

29.     **Voting.**  The Bankruptcy Court has reviewed and considered the Voting

Certifications.  The procedures by which the Ballots for acceptance or rejection of the Plan were

DOCS_SF:104487.21 36027/002

000793

distributed and tabulated, including the tabulation as subsequently amended to reflect the settlement of certain Claims to be Allowed in Class 7, were fairly and properly conducted and complied with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

30.     **Bankruptcy Rule 3016(a).**  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtor as the proponent of the Plan.

31.     **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

32.     **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).**  Section 1122 of the Bankruptcy Code provides that a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interest of such class.  The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Equity Interests.

33.     **Classification of Secured Claims.**  Class 1 (Jefferies Secured Claim) and Class 2 (Frontier Secured Claim) each constitute separate secured claims held by Jefferies LLC and Frontier State Bank, respectively, and it is proper and consistent with section 1122 of the Bankruptcy Code to separately classify the claims of these secured creditors.  Class 3 (Other

000794

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01290-N   Document 10-59   Filed 05/08/23   Page 363 of 1956   PageID 8654
Case 21-30589-sgj11   Doc 0940   Filed 03/28/30   Entered 02/27/21   Date Filed: 04/14/20 of 161

Secured Claims) consists of other secured claims (to the extent any exist) against the Debtor, are not substantially similar to the Secured Claims in Class 1 or Class 2, and are also properly separately classified.

34.     **Classification of Priority Claims.**   Class 4 (Priority Non-Tax Claims) consists of Claims entitled to priority under section 507(a), other than Priority Tax Claims, and are properly separately classified from non-priority unsecured claims.   Class 5 (Retained Employee Claims) consists of the potential claims of employees who may be retained by the Debtor on the Effective Date, which claims will be Reinstated under the Plan, are not substantially similar to other Claims against the Debtor, and are properly classified.

35.     **Classification of Unsecured Claims.**   Class 6 (PTO Claims) consists solely of the claims of the Debtor's employees for unpaid paid time off in excess of the $13,650 statutory cap amount under sections 507(a)(4) and (a)(5) of the Bankruptcy Code and are dissimilar from other unsecured claims in Class 7 and Class 8.   Class 7 (Convenience Claims) allows holders of eligible and liquidated Claims (below a certain threshold dollar amount) to receive a cash payout of the lesser of 85% of the Allowed amount of the creditor's Claim or such holder's *pro rata* share of the Convenience Claims Cash Pool. Class 7 (Convenience Claims) are provided for administrative convenience purposes in order to allow creditors, most of whom are either trade creditors or holders of professional claims, to receive treatment provided under Class 7 in lieu of the treatment of Class 8 (General Unsecured Claims).   The Plan also provides for reciprocal "opt out" mechanisms to allow holders of Class 7 Claims to elect to receive the treatment for Class 8 Claims. Class 8 creditors primarily constitute the litigation claims of the Debtor.   Class 8 Creditors

000795

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01208-NS    Document 10-59    Filed 07/08/21    Page 159 of 195    PageID 8865
Case 19-34054-sgj11    Doc 1943    Filed 02/28/20    Entered 02/28/21    Date Filed: 07/14/2020    Page 202 of 161

will receive Claimant Trust Interests which will be satisfied pursuant to the terms of the Plan. Class 8 also contains an "opt out" mechanism to allow holders of liquidated Class 8 Claims at or below a $1 million threshold to elect to receive the treatment of Class 7 Convenience Claims. The Claims in Class 7 (primarily trade and professional Claims against the Debtor) are not substantially similar to the Claims in Class 8 (primarily the litigation Claims against the Debtor), and are appropriately separately classified. Valid business reasons also exist to classify creditors in Class 7 separately from creditors in Class 8. Class 7 creditors largely consist of liquidated trade or service providers to the Debtor. In addition, the Claims of Class 7 creditors are small relative to the large litigation claims in Class 8. Furthermore, the Class 8 Claims were overwhelmingly unliquidated when the Plan was filed. The nature of the Class 7 Claims as being largely liquidated created an expectation of expedited payment relative to the largely unliquidated Claims in Class 8, which consists in large part of parties who have been engaged in years, and in some cases over a decade of litigation with the Debtor. Separate classification of Class 7 and Class 8 creditors was the subject of substantial arm's-length negotiations between the Debtor and the Committee to appropriately reflect these relative differences.

36. **Classification of Equity Interests.** The Plan properly separately classifies the Equity Interests in Class 10 (Class B/C Limited Partnership Interests) from the Equity Interests in Class 11 (Class A Limited Partnership Interests) because they represent different types of equity security interests in the Debtor and different payment priorities.

37. **Elimination of Vacant Classes.** Section III.C of the Plan provides for the elimination of Classes that do not have at least one holder of a Claim or Equity Interest that is

DOCS_SF:104487.21 36027/002

000796

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01228-N    Document 10-59    Filed 06/06/23    Page 350 of 1956    PageID 8686
Case 21-30589-mvl11    Doc 10-10    Filed 03/28/23    Entered 03/28/23 Date Filed: 04/29/22    Page 202 of 161

Allowed in an amount greater than zero for purposes of voting to accept or reject the Plan, and are disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.  The purpose of this provision is to provide that a Class that does not have voting members shall not be included in the tabulation of whether that Class has accepted or rejected the Plan.  Pursuant to the Voting Certifications, the only voting Class of Claims or Equity Interests that did not have any members is Class 5 (Retained Employees).  As noted above, Class 5 does not have any voting members because any potential Claims in Class 5 would not arise, except on account of any current employees of the Debtor who may be employed as of the Effective Date, which is currently unknown.  Thus, the elimination of vacant Classes provided in Article III.C of the Plan does not violate section 1122 of the Bankruptcy Code.  Class 5 is properly disregarded for purposes of determining whether or not the Plan has been accepted under Bankruptcy Code section 1129(a)(8) because there are no members in that Class.  However, the Plan properly provides for the treatment of any Claims that may potentially become members of Class 5 as of the Effective Date in accordance with the terms of the Plan.  The Plan therefore satisfies section 1122 of the Bankruptcy Code.

38.    **Classification of Claims and Designation of Non-Classified Claims (11 U.S.C. §§ 1122, 1123(a)(1)).**  Section 1123(a)(1) of the Bankruptcy Code requires that the Plan specify the classification of claims and equity security interests pursuant to section 1122 of the Bankruptcy Code, other than claims specified in sections 507(a)(2), 507(a)(3), or 507(a)(8) of the Bankruptcy Code.  In addition to Administrative Claims, Professional Fee Claims, and Priority Tax Claims, each of which need not be classified pursuant to section 1123(a)(1) of the Bankruptcy

000797
App. 0742

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-S   Document 59   Filed 06/08/22   Page 351 of 956   PageID 8867
Case 19-34054-sgj11   Doc 1048   Filed 02/28/20   Entered 02/28/20   Filed: 0   Page 30 of 161

Code, the Plan designates eleven (11) Classes of Claims and Equity Interests.  The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

39.     **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).**  Article III of the Plan specifies that each of Class 1 (Jefferies Secured Claim), Class 3 (Other Secured Claims), Class 4 (Priority Non-Tax Claims), Class 5 (Retained Employee Claims), and Class 6 (PTO Claims) are Unimpaired under the Plan.  Thus, the requirement of section 1123(a)(2) of the Bankruptcy Code is satisfied.

40.     **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**  Article III of the Plan designates each of Class 2 (Frontier Secured Claim), Class 7 (Convenience Claims), Class 8 (General Unsecured Claims), Class 9 (Subordinated Claims), Class 10 (Class B/C Limited Partnership Interests), and Class 11 (Class A Limited Partnership Interests) as Impaired and specifies the treatment of Claims and Equity Interests in such Classes.  Thus, the requirement of section 1123(a)(3) of the Bankruptcy Code is satisfied.

41.     **No Discrimination (11 U.S.C. § 1123(a)(4)).**  The Plan provides for the same treatment by the Plan proponent for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest.  The Plan satisfies this requirement because Holders of Allowed Claims or Equity Interests in each Class will receive the same rights and treatment as other Holders of Allowed Claims or Equity Interests within such holder's respective class, subject only to the voluntary "opt out" options afforded to members of Class 7 and Class 8 in accordance with the terms of the Plan.  Thus, the requirement of section 1123(a)(4) of the Bankruptcy Code is satisfied.

000798
App. 0743

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01228-S    Document 10-59    Filed 02/06/23    Page 334 of 1956    PageID 8655
Case 19-34054-sgj11    Doc 1940    Filed 02/18/21    Entered 02/18/21 14:32:02    Page 32 of 161

42.     **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**  Article IV of the

Plan sets forth the means for implementation of the Plan which includes, but is not limited to, the

establishment of:  (i) the Claimant Trust; (ii) the Litigation Sub-Trust; (iii) the Reorganized Debtor;

and (iv) New GP LLC, in the manner set forth in the Plan Documents, the forms of which are

included in the Plan Supplements.

a.  **The Claimant Trust.**  The Claimant Trust Agreement provides for the management of the Claimant Trust, as well as the Reorganized Debtor with the Claimant Trust serving as the managing member of New GP LLC (a wholly-owned subsidiary of the Claimant Trust that will manage the Reorganized Debtor as its general partner).  The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) and the Litigation Sub-Trust will all be managed and overseen by the Claimant Trust Oversight Committee.  Additionally, the Plan provides for the transfer to the Claimant Trust of all of the Debtor's rights, title, and interest in and to all of the Claimant Trust Assets in accordance with section 1141 of the Bankruptcy Code and for the Claimant Trust Assets to automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement.  The Claimant Trust will administer the Claimant Trust Assets as provided under the Plan and the Claimant Trust Agreement contained in the Plan Supplements.

b.  **The Litigation Sub-Trust.**  The Plan and the Litigation Sub-Trust Agreement provide for the transfer to the Litigation Sub-Trust all of the Claimant Trust's rights, title, and interest in and to all of the Estate Claims (as transferred to the Claimant Trust by the Debtor) in accordance with section 1141 of the Bankruptcy Code and for the Estate Claims to automatically vest in the Litigation Sub-Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Litigation Sub-Trust Interests and the Litigation Sub-Trust Expenses, as provided for in the Litigation Sub-Trust Agreement.  The Litigation Trustee is charged with investigating, pursuing, and otherwise resolving any Estate Claims (including those with respect to which the Committee has standing to pursue prior to the Effective Date pursuant to the January 9 Order) pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan, regardless of whether any litigation with respect to any Estate Claim was commenced by the Debtor or the Committee prior to the Effective Date.

DOCS_SF:104487.21 36027/002

000799

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-NS   Document 10-59   Filed 03/08/26   Page 135 of 195   PageID 8869
Case 19-34054-sgj11   Doc 1940   Filed 02/18/21   Entered 02/18/21 16:48:10   Page 32 of 161

      c.     **The Reorganized Debtor**.  The Reorganized Debtor will administer the Reorganized Debtor Assets, which includes managing the wind down of the Managed Funds.

The precise terms governing the execution of these restructuring transactions are set forth in greater detail in the applicable definitive documents included in the Plan Supplements, including the Claimant Trust Agreement, the Litigation Sub-Trust Agreement, and the Schedule of Retained Causes of Action. The Plan, together with the documents and forms of agreement included in the Plan Supplements, provides a detailed blueprint for the transactions contemplated by the Plan. The Plan's various mechanisms provide for the Debtor's continued management of its business as it seeks to liquidate the Debtor's assets, wind down its affairs, and pay the Claims of the Debtor's creditors. Upon full payment of Allowed Claims, plus interest as provided in the Plan, any residual value would then flow to the holders of Class 10 (Class B/C Limited Partnership Interests), and Class 11 (Class A Limited Partnership Interests). Finally, Mr. Seery testified that the Debtor engaged in substantial and arm's length negotiations with the Committee regarding the Debtor's post-Effective Date corporate governance, as reflected in the Plan. Mr. Seery testified that he believes the selection of the Claimant Trustee, Litigation Trustee, and members of the Claimant Trust Oversight Board are in the best interests of the Debtor's economic constituents. Thus, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

      43.    **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).**  The Debtor is not a corporation and the charter documents filed in the Plan Supplements otherwise comply with section 1123(a)(6) of the Bankruptcy Code. Therefore, the requirement of section 1123(a)(6) of the Bankruptcy Code is satisfied.

000800
App. 0745

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01281-N   Document 10-59   Filed 02/08/23   Page 364 of 1956   PageID 8870
Case 19-34054-sgj11   Doc 1940 Filed 02/28/23   Entered 02/28/23   Filed   Page 282 of 161

44.     **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).**  Article IV of the Plan provides for the Claimant Trust to be governed and administered by the Claimant Trustee.  The Claimant Trust, the management of the Reorganized Debtor, and the management and monetization of the Claimant Trust Assets and the Litigation Sub-Trust will be managed by the Claimant Trust Oversight Board.  The Claimant Trust Oversight Board will consist of:  (1) Eric Felton, as representative of the Redeemer Committee; (2) Joshua Terry, as representative of Acis; (3) Elizabeth Kozlowski, as representative of UBS; (4) Paul McVoy, as representative of Meta-E Discovery; and (5) David Pauker.  Four of the members of the Claimant Trust Oversight Committee are the holders of several of the largest Claims against the Debtor and/or are current members of the Committee.  Each of these creditors has actively participated in the Debtor's case, both through their fiduciary roles as Committee members and in their individual capacities as creditors.  They are therefore intimately familiar with the Debtor, its business, and assets.  The fifth member of the Claimant Trustee Oversight Board, David Pauker, is a disinterested restructuring advisor and turnaround manager with more than 25 years of experience advising public and private companies and their investors, and he has substantial experience overseeing, advising or investigating troubled companies in the financial services industry and has advised or managed such companies on behalf of boards or directors, court-appointed trustees, examiners and special masters, government agencies, and private investor parties.  The members of the Claimant Trust Oversight Board will serve without compensation, except for Mr. Pauker, who will receive payment of $250,000 for his first year of service, and $150,000 for subsequent years.



Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-S Document 10-59 Filed 05/08/26 Page 355 of 1955 PageID 8881
Case 19-34054-sgj11 Doc 1044 Filed 02/28/20 Entered 02/22/20 16:45:16 Page 302 of 161

45.     **Selection of Trustees.**  The Plan Supplements disclose that Mr. Seery will serve as the Claimant Trustee and Marc Kirschner will serve as the Litigation Trustee.  As noted above, Mr. Seery has served as an Independent Board member since January 2020, and as the Chief Executive Officer and Chief Restructuring Officer since July 2020, and he has extensive management and restructuring experience, as evidenced from his curriculum vitae which is part of the record.   The evidence shows that Mr. Seery is intimately familiar with the Debtor's organizational structure, business, and assets, as well as how Claims will be treated under the Plan. Accordingly, it is reasonable and in the Estate's best interests to continue Mr. Seery's employment post-emergence as the Claimant Trustee.  Mr. Seery, upon consultation with the Committee, testified that he intends to employ approximately 10 of the Debtor's employees to enable him to manage the Debtor's business until the Claimant Trust effectively monetizes its remaining assets, instead of hiring a sub-servicer to accomplish those tasks.  Mr. Seery testified that he believes that the Debtor's post-confirmation business can most efficiently and cost-effectively be supported by a sub-set of the Debtor's current employees, who will be managed internally.  Mr. Seery shall initially be paid $150,000 per month for services rendered after the Effective Date as Claimant Trustee; however, Mr. Seery's long-term salary as Claimant Trustee and the terms of any bonuses and severance are subject to further negotiation by Mr. Seery and the Claimant Trust Oversight Board within forty-five (45) days after the Effective Date.   The Bankruptcy Court has also reviewed Mr. Kirschner's curriculum vitae.  Mr. Kirschner has been practicing law since 1967 and has substantial experience in bankruptcy litigation matters, particularly with respect to his prior experience as a litigation trustee for several litigation trusts, as set forth on the record of the

DOCS_SF:104487.21 36027/002

000802

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3-22-cv-00728-DNS    Document 10-59    Filed 06/08/22    Page 336 of 1256    PageID 8892
Case 19-34054-sgj11    Doc 1046    Filed 02/28/20    Entered 02/28/20 18:46    Page 282 of 161

Confirmation Hearing and in the Confirmation Brief. Mr. Kirschner shall be paid $40,000 per month for the first three months and $20,000 per month thereafter, plus a success fee related to litigation recoveries. The Committee and the Debtor had arm's lengths negotiations regarding the post-Effective Date corporate governance structure of the Reorganized Debtor and believe that the selection of the Claimant Trustee, the Litigation Trustee, and the Claimant Trust Oversight Committee are in the best interests of the Debtor's economic stakeholders. Section 1123(a)(7) of the Bankruptcy Code is satisfied.

46. **Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).** Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, the Plan Supplements, and all other matters considered by the Bankruptcy Court in connection with this Chapter 11 Case.

47. **Debtor's Solicitation Complied with Bankruptcy Code and Disclosure Statement Order.** Before the Debtor solicited votes on the Plan, the Bankruptcy Court entered the Disclosure Statement Order. In accordance with the Disclosure Statement Order and evidenced by the Affidavits of Service and Publication, the Debtor appropriately served (i) the Solicitation Packages (as defined in the Disclosure Statement Order) on the Holders of Claims in Classes 2, 7, 8 and 9 and Holders of Equity Interests in Classes 10 and 11 who were entitled to vote on the Plan; and (ii) the Notice of Nonvoting Status (as defined in the Disclosure Statement Order) and the

000803
App. 0743

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 22-03052-sgj    Document 10-19    Filed 05/25/22    Page 2 of 26    Page ID 8903
Case 19-34054-sgj11    Doc 1943    Filed 02/28/20    Entered 02/28/20 16:48:10    Page 202 of 161

Confirmation Hearing Notice to the Holders of Claims in Classes 1, 3, 4, 5 and 6, who were not

entitled to vote on the Plan pursuant to the Disclosure Statement Order.  The Disclosure Statement

Order approved the contents of the Solicitation Packages provided to Holders of Claims and Equity

Interests entitled to vote on the Plan, the notices provided to parties not entitled to vote on the Plan,

and the deadlines for voting on and objecting to the Plan.  The Debtor and KCC each complied

with the content and delivery requirements of the Disclosure Statement Order, thereby satisfying

sections 1125(a) and (b) of the Bankruptcy Code, as evidenced by the Affidavits of Service and

Publication.  The Debtor also satisfied section 1125(c) of the Bankruptcy Code, which provides

that the same disclosure statement must be transmitted to each holder of a claim or interest in a

particular class.  The Debtor caused the same Disclosure Statement to be transmitted to all holders

of Claims and Equity Interests entitled to vote on the Plan.  The Debtor has complied in all respects

with the solicitation requirements of section 1125 of the Bankruptcy Code and the Disclosure

Statement Order.  The Bankruptcy Court rejects the arguments of the Mr. Dondero and certain

Dondero Related Entities that the changes made to certain assumptions and projections from the

Liquidation Analysis annexed as Exhibit C to the Disclosure Statement (the "Liquidation

Analysis") to the Amended Liquidation Analysis/Financial Projections require resolicitation of the

Plan.  The Bankruptcy Court heard credible testimony from Mr. Seery regarding the changes to

the Liquidation Analysis as reflected in the Amended Liquidation Analysis/Financial Projections.

Based on the record, including the testimony of Mr. Seery, the Bankruptcy Court finds that the

changes between the Liquidation Analysis and the Amended Liquidation Analysis/Financial

Projections do not constitute materially adverse change to the treatment of Claims or Equity

000804
App. 0718

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-S   Document 10-59   Filed 08/08/22   Page 463 of 1256   PageID 8974
Case 19-34054-sgj11   Doc 1943 Filed 02/28/20   Entered 02/27/21   Date Filed: 01/02/2021   Page 37 of 161

Interests.  Instead, the changes served to update the projected distributions based on Claims that were settled after the approval of the Disclosure Statement and to otherwise incorporate more recent financial data.  Such changes were entirely foreseeable given the large amount of unliquidated Claims at the time the Disclosure Statement was approved and the nature of the Debtor's assets.  The Bankruptcy Court therefore finds that holders of Claims and Equity Interests were not misled or prejudiced by the Amended Liquidation Analysis/Financial Projections and the Plan does not need to be resolicited.

48.    **Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).**  The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of this Chapter 11 Case, the Plan itself, and the extensive, unrebutted testimony of Mr. Seery in which he described the process leading to Plan's formulation.  Based on the totality of the circumstances and Mr. Seery's testimony, the Bankruptcy Court finds that the Plan is the result of extensive arm's-length negotiations among the Debtor, the Committee, and key stakeholders, and promotes the objectives and purposes of the Bankruptcy Code.  Specifically, the Debtor's good faith in proposing the Plan is supported by the following facts adduced by Mr. Seery:

    a.    The Independent Board determined that it should consider all potential restructuring alternatives, including pursuit of a traditional restructuring and the continuation of the Debtor's business, a potential sale of the Debtor's assets in one or more transactions, an asset monetization plan similar to that described in the Plan, and a so-called "grand bargain" plan that would involve Mr. Dondero's sponsorship of a plan with a substantial equity infusion.

37

000805

App. 0728

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01228-NS    Document 10-59    Filed 09/08/21    Page 49 of 155    PageID 8925
Case 19-34054-sgj11    Doc 1940 Filed 02/23/21    Entered 02/23/21 16:08:22    Page 382 of 161

b.  The Debtor subsequently engaged in arm's-length, good faith negotiations with the Committee over an asset monetization Plan commencing in June 2020, which negotiations occurred over the next several months.

c.  Negotiations between the Debtor and the Committee were often contentious over disputes, including, but not limited to, the post-confirmation corporate governance structure and the scope of releases contemplated by the Plan.

d.  While negotiations with the Committee progressed, the Independent Board engaged in discussions with Mr. Dondero regarding a potential "grand bargain" plan which contemplated a significant equity infusion by Mr. Dondero, and which Mr. Seery personally spent hundreds of hours pursuing over many months.

e.  On August 3, 2020, the Bankruptcy Court entered the *Order Directing Mediation* [Docket No. 912] pursuant to which the Bankruptcy Court ordered the Debtor, the Committee, UBS, Acis, the Redeemer Committee, and Mr. Dondero into mediation. As a result of this mediation, the Debtor negotiated the settlement of the claims of Acis and Mr. Terry, which the Bankruptcy Court approved on October 28, 2020 [Docket No. 1302].

f.  On August 12, 2020, the Debtor filed its *Chapter 11 Plan of* Reorganization *of Highland Capital Management, L.P.* [Docket No. 944] (the "Initial Plan") and related disclosure statement (the "Initial Disclosure Statement") which were not supported by either the Committee or Mr. Dondero. The Independent Board filed the Initial Plan and Initial Disclosure Statement in order to act as a catalyst for continued discussions with the Committee while it simultaneously worked with Mr. Dondero on the "grand bargain" plan.

g.  The Bankruptcy Court conducted a contested hearing on the Initial Disclosure Statement on October 27, 2020. The Committee and other parties objected to approval of the Disclosure Statement at the Initial Disclosure Statement hearing, which was eventually continued to November 23, 2020.

h.  Following the Initial Disclosure Statement hearing, the Debtor continued to negotiate with the Committee and ultimately resolved the remaining material disputes and led to the Bankruptcy Court's approval of the Disclosure Statement on November 23, 2020.

i.  Even after obtaining the Bankruptcy Court's approval of the Disclosure Statement, the Debtor and the Committee continued to negotiate with Mr. Dondero and the Committee over a potential "pot plan" as an alternative to the Plan on file with the Bankruptcy Court, but such efforts were unsuccessful. This history conclusively demonstrates that the Plan is being proposed in good faith within the meaning of section 1129(a)(3).



Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-N   Document 10-59   Filed 07/06/22   Page 420 of 195   PageID 8936
Case 19-34054-sgj11   Doc 1943   Filed 02/28/20   Entered 02/28/20   Date Filed:   Page 292 of 161

49.     **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**
Article II.B of the Plan provides that Professionals will file all final requests for payment of
Professional Fee Claims no later than 60 days after the Effective Date, thereby providing an
adequate period of time for interested parties to review such claims.  The procedures set forth in
the Plan for the Bankruptcy Court's approval of the fees, costs, and expenses to be paid in
connection with this chapter 11 Case, or in connection with the Plan and incident to this Chapter
11 Case, satisfy the objectives of and are in compliance with section 1129(a)(4) of the Bankruptcy
Code.

50.     **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**  Article IV.B
of the Plan provides for the appointment of the Claimant Trustee, Litigation Trustee, and the
Claimant Trust Oversight Committee and the members thereto.  For the reasons more fully
explained in paragraphs 44-45 of this Confirmation Order with respect to the requirement of
section 1123(a)(7) of the Bankruptcy Code, the Debtor has disclosed the nature of compensation
of any insider to be employed or retained by the Reorganized Debtor, if applicable, and
compensation for any such insider.  The appointment of such individuals is consistent with the
interests of Claims and Equity Interests and with public policy.  Thus, the Plan satisfies section
1129(a)(5) of the Bankruptcy Code.

51.     **No Rate Changes (11 U.S.C. § 1129(a)(6)).**  The Plan does not provide for
any rate change that requires regulatory approval.  Section 1129(a)(6) of the Bankruptcy Code is
thus not applicable.

DOCS_SF:104487.21 36027/002

000807
Appx 0722

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01281-S   Document 10-59   Filed 07/06/21   Page 143 of 193   PageID 8947
Case 19-34054-sgj11   Doc 1940   Filed 02/18/21   Entered 02/22/21 Date Filed: 02/18/21 Page 40 of 161

52.     **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).** The "best interests" test is satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Equity Interest in such Impaired Classes will receive or retain property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. On October 15, 2020, the Debtor filed the Liquidation Analysis [Docket 1173], as prepared by the Debtor with the assistance of its advisors and which was attached as Exhibit C to the Disclosure Statement. On January 29, 2021, in advance of Mr. Seery's deposition in connection with confirmation of the Plan, the Debtor provided an updated version of the Liquidation Analysis to the then-objectors of the Plan, including Mr. Dondero and the Dondero Related Entities. On February 1, 2021, the Debtor filed the Amended Liquidation Analysis/Financial Projections. The Amended Liquidation Analysis/Financial Projections included updates to the Debtor's projected asset values, revenues, and expenses to reflect: (1) the acquisition of an interest in an entity known as "HCLOF" that the Debtor will acquire as part of its court-approved settlement with HarbourVest and that was valued at $22.5 million; (2) an increase in the value of certain of the Debtor's assets due to changes in market conditions and other factors; (3) expected revenues and expenses arising in connection with the Debtor's continued management of the CLOs pursuant to management agreements that the Debtor decided to retain; (4) increases in projected expenses for headcount (in addition to adding two or three employees to assist in the management of the CLOs, the Debtor also increased modestly the projected headcount as a result of its decision not to engage a Sub-Servicer) and professional fees; and (5) an increase in projected recoveries on notes resulting from the

DOCS_SF:104487.21 36027/002

000808

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01788-S   Document 59   Filed 07/08/22   Page 442 of 1956   PageID 8953
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:48:40   Page 202 of 161

acceleration of term notes owed to the Debtor by the following Dondero Related Entities:

NexPoint Advisors, L.P.; Highland Capital Management Services, Inc.; and HCRE Partners, LLC

(n/k/a NexPoint Real Estate Partners, LLC).  Under the Plan, as of the Confirmation Date, (a) Class

7 General Unsecured Creditors are projected to receive 85% on account of their claims; and (b)

Class 8 General Unsecured Creditors are projected to receive at least approximately 71% on

account of their Claims.  Under a hypothetical chapter 7 liquidation, all general unsecured creditors

are projected to receive approximately 55% on account of their Claims.  The Bankruptcy Court

finds that the distributions that Class 7 and 8 General Unsecured Creditors are projected to receive

under the Plan substantially exceeds that which they would receive under a chapter 7 liquidation

based on Mr. Seery's testimony, including the following credible reasons he posited, among

others:

> a.    The nature of the Debtor's assets is complex.  Certain assets relate to complicated real estate structures and private equity investments in operating businesses.  Mr. Seery's extensive experience with the Debtor during the thirteen months since his appointment as an Independent Director and later Chief Executive Officer and Chief Restructuring Officer, provides him with a substantial learning curve in connection with the disposition of the Debtor's assets and are reasonably expected to result in him being able to realize tens of millions of dollars more value than would a chapter 7 trustee.

> b.    Assuming that a hypothetical chapter 7 trustee could even operate the Debtor's business under chapter 7 of the Bankruptcy Code and hire the necessary personnel with the relevant knowledge and experience to assist him or her in selling the Debtor's assets, a chapter 7 trustee would likely seek to dispose of the Debtor's assets in a forced sale liquidation which would generate substantially less value for the Debtor's creditors than the asset monetization plan contemplated by the Plan.

> c.    A chapter 7 trustee would be unlikely to retain the Debtor's existing professionals to assist in its efforts to monetize assets, resulting in delays, increased expenses, and reduced asset yields for the chapter 7 estate.

000809
Appx. 0724

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-00780-S    Document 10-59    Filed 07/08/23    Page 145 of 193    PageID 8969
Case 19-34054-sgj11    Doc 1940    Filed 02/22/23    Entered 02/22/23 16:48:10    Page 202 of 161

d.      The chapter 7 estate would be unlikely to maximize value as compared to the asset monetization process contemplated by the Plan because potential buyers are likely to perceive a chapter 7 trustee as engaging in a quick, forced "fire sale" of assets; and

e.      The Debtor's employees, who are vital to its efforts to maximum value and recoveries for stakeholders, may be unwilling to provide services to a chapter 7 trustee.

Finally, there is no evidence to support the objectors' argument that the Claimant Trust Agreement's disclaimed liability for ordinary negligence by the Claimant Trustee compared to a chapter 7 trustee's liability has any relevance to creditor recoveries in a hypothetical chapter 7 liquidation.  Thus, section 1129(a)(7) of the Bankruptcy Code is satisfied.

53.      **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**  Classes 1, 3, 4, 5 and 6 are Unimpaired under the Plan.  Class 2 (Frontier Secured Claim), Class 7 (Convenience Claims), and Class 9 (Subordinated Claims) have each voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes.  However, Class 8 (General Unsecured Claims), Class 10 (Class B/C Limited Partnership Interests), and Class 11 (Class A Limited Partnership Interests) have not accepted the Plan.  Accordingly, section 1129(a)(8) of the Bankruptcy Code has not been satisfied.  The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth below.

54.      **Treatment of Administrative, Priority, Priority Tax Claims, and Professional Fee Claims (11 U.S.C. § 1129(a)(9)).**  The treatment of Administrative Claims, Priority Claims, and Professional Fee Claims pursuant to Article III of the Plan, and as set forth below with respect to the resolution of the objections filed by the Internal Revenue Service and

000810
App. 0725

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-00203-S    Document 10-59    Filed 07/08/22    Page 464 of 1956    PageID 8930
Case 19-34054-sgj11    Doc 1944    Filed 03/28/20    Entered 03/28/20    Page 462 of 161

certain Texas taxing authorities satisfies the requirements of sections 1129(a)(9) of the Bankruptcy
Code.

55.    **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).**    Class 2
(Frontier Secured Claims) and Class 7 (Convenience Claims) are each Impaired Classes of Claims
that voted to accept the Plan, determined without including any acceptance of the Plan by any
insider.  Therefore, the requirement of section 1129(a)(10) of the Bankruptcy Code is satisfied.

56.    **Feasibility (11 U.S.C. § 1129(a)(11)).**    Article IV of the Plan provides for
the implementation of the Plan through the Claimant Trust, the Litigation Sub-Trust, and the
Reorganized Debtor.  The Plan provides that the Claimant Trust, among other things, will monetize
and distribute the Debtor's remaining assets.  The Disclosure Statement, the Amended Liquidation
Analysis/Financial Projections, and the other evidence presented at the Confirmation Hearing
provide a reasonable probability of success that the Debtor will be able to effectuate the provisions
of the Plan.  The Plan contemplates the establishment of the Claimant Trust upon the Effective
Date, which will monetize the Estate's assets for the benefit of creditors.  Mr. Seery testified that
the Class 2 Frontier Secured Claim will be paid over time pursuant to the terms of the New Frontier
Note and the Reorganized Debtor will have sufficient assets to satisfy its obligations under this
note.  The Claims of the Holders of Class 7 Claims (as well as those Class 8 creditors who validly
opted to receive the treatment of Class 7 Claims) are expected to be satisfied shortly after the
Effective Date.  Holders of Class 8 Claims (including any holders of Class 7 Claims who opted to
receive the treatment provided to Class 8 Claims) are not guaranteed any recovery and will

000811

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01209-NS   Document 10-59   Filed 07/06/23   Page 475 of 956   PageID 8981
Case 19-34054-sgj11   Doc 1040 Filed 02/28/20   Entered 02/27/21 16:48:10   Page 202 of 161

periodically receive pro rata distributions as assets are monetized pursuant to the Plan and the Claimant Trust Agreement. Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

57.     **Payment of Fees (11 U.S.C. § 1129(a)(12)).**  All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to Article XII.A of the Plan, thus satisfying the requirement of section 1129(a)(12) of the Bankruptcy Code. The Debtor has agreed that the Reorganized Debtor, the Claimant Trust, and the Litigation Sub-Trust shall be jointly and severally liable for payment of quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 through the entry of the Final Decree for the Debtor or the dismissal or conversion of the Chapter 11 Case.

58.     **Retiree Benefits.**  The Plan provides for the assumption of the Pension Plan (to the extent such Pension Plan provides "retiree benefits" and is governed by section 1114 of the Bankruptcy Code).  Thus, the Plan complies with section 1129(a)(13) of the Bankruptcy Code, to the extent applicable.

59.     **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(14)-(16)).**  Sections 1129(a)(14)-(16) of the Bankruptcy Code are inapplicable as the Debtor (i) has no domestic support obligations (section 1129(a)(14)), (ii) is not an individual (section 1129(a)(15)), and (iii) is not a nonprofit corporation (section 1129(a)(16)).

60.     **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).**  The classification and treatment of Claims and Equity Interests in Classes 8, 10 and 11, which have not accepted the Plan, is proper pursuant to section 1122 of the Bankruptcy Code, does

DOCS_SF:104487.21 36027/002

000812
App. 0727

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01228-NS    Document 10-59    Filed 07/06/22    Page 476 of 1956    PageID 8992
Case 19-34054-sgj11    Doc 1046    Filed 02/28/20    Entered 02/28/20 18:48:10    Page 45 of 161

not discriminate unfairly, and is fair and equitable pursuant to section 1129(b)(1) of the Bankruptcy

Code.

> a.  <u>Class 8</u>.  The Plan is fair and equitable with respect to Class 8 General Unsecured
> Claims.  While Equity Interests in Class 10 and Class 11 will receive a contingent
> interest in the Claimant Trust under the Plan (the "<u>Contingent Interests</u>"), the
> Contingent Interests will not vest unless and until holders of Class 8 General
> Unsecured Claims and Class 9 Subordinated Claims receive distributions equal to
> 100% of the amount of their Allowed Claims plus interest as provided under the
> Plan and Claimant Trust Agreement.  Accordingly, as the holders of Equity
> Interests that are junior to the Claims in Class 8 and Class 9 will not receive or
> retain under the Plan on account of such junior claim interest any property unless
> and until the Claims in Class 8 and Class 9 are paid in full plus applicable interest,
> the Plan is fair and equitable with respect to holders of Class 8 General Unsecured
> Claims pursuant to section 1129(b)(2)(B) of the Bankruptcy Code and the reasoning
> of *In re Introgen Therapuetics* 429 B.R 570 (Bankr. W.D. Tex. 2010).

> b.  <u>Class 10 and Class 11</u>.  There are no Claims or Equity Interests junior to the Equity
> Interests in Class 10 and Class 11.  Equity Interests in Class 10 and 11 will neither
> receive nor retain any property under the Plan unless Allowed Claims in Class 8
> and Class 9 are paid in full plus applicable interest pursuant to the terms of the Plan
> and Claimant Trust Agreement.  Thus, the Plan does not violate the absolute priority
> rule with respect to Classes 10 and 11 pursuant to Bankruptcy Code section
> 1129(b)(2)(C).  The Plan does not discriminate unfairly as to Equity Interests.  As
> noted above, separate classification of the Class B/C Partnership Interests from the
> Class A Partnerships Interests is appropriate because they constitute different
> classes of equity security interests in the Debtor, and each are appropriately
> separately classified and treated.

Accordingly, the Plan does not violate the absolute priority rule, does not discriminate unfairly,

and is fair and equitable with respect to each Class that has rejected the Plan.  Thus, the Plan

satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to Classes 8, 10,

and 11.

DOCS_SF:104487.21 36027/002

000813

App. 0728

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 59   Filed 07/06/22   Page 497 of 1256   PageID 9003
Case 19-34054-sgj11   Doc 1940   Filed 02/28/20   Entered 02/28/20   Page 202 of 161

61. **Only One Plan (11 U.S.C. § 1129(c)).**  The Plan is the only chapter 11 plan confirmed in this Chapter 11 Case, and the requirements of section 1129(c) of the Bankruptcy Code are therefore satisfied.

62. **Principal Purpose (11 U.S.C. § 1129(d)).**  Mr. Seery testified that the principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit has objected to the confirmation of the Plan on any such grounds.  Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable.

63. **Satisfaction of Confirmation Requirements.**  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.

64. **Good Faith Solicitation (11 U.S.C. § 1125(e)).**  The Debtor, the Independent Directors, and the Debtor's employees, advisors, Professionals, and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

65. **Discharge (11 U.S.C. § 1141(d)(3)).**  The Debtor is entitled to a discharge of debts pursuant to section 1141(d)(3)(B) of the Bankruptcy Code.  Under the Plan, the Claimant Trust or Reorganized Debtor, as applicable, will continue to manage funds and conduct business

000814
Appx. 0720

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-S   Document 59   Filed 07/08/22   Page 150 of 195   PageID 9014
Case 19-34054-sgj11   Doc 1943   Filed 03/28/30   Entered 03/22/21   Date Filed: 07/14/21   Page 202 of 161

in the same manner as the Debtor did prior to Plan confirmation, which includes the management

of the CLOs, Multi-Strat, Restoration Capital, the Select Fund and the Korea Fund.  Although the

Plan projects that it will take approximately two years to monetize the Debtor's assets for fair

value, Mr. Seery testified that while the Reorganized Debtor and Claimant Trust will be

monetizing their assets, there is no specified time frame by which this process must conclude.  Mr.

Seery's credible testimony demonstrates that the Debtor will continue to engage in business after

consummation of the Plan, within the meaning of Section 1141(d)(3)(b) and that the Debtor is

entitled to a discharge pursuant to section 1141(d)(1) of the Bankruptcy Code.

66.    **Retention of Jurisdiction.**  The Bankruptcy Court may properly retain

jurisdiction over the matters set forth in Article XI of the Plan and/or section 1142 of the

Bankruptcy Code to the maximum extent under applicable law.

67.    **Additional Plan Provisions (11 U.S.C. § 1123(b)).**  The Plan's provisions

are appropriate, in the best interests of the Debtor and its Estate, and consistent with the applicable

provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

68.    **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).**

The Debtor has exercised reasonable business judgment with respect to the rejection of the

Executory Contracts and Unexpired Leases pursuant the terms of the Plan and this Confirmation

Order, and such rejections are justified and appropriate in this Chapter 11 Case.  The Debtor also

filed the List of Assumed Contracts, which contain notices to the applicable counterparties to the

contracts set forth on Exhibit "FF" to Plan Supplement filed on February 1, 2021 [Docket No.

1875] and which exhibit sets forth the list of executory contracts and unexpired leases to be

000815

App. 0720

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01280-S    Document 10-19    Filed 07/08/22    Page 579 of 955    PageID 9025
Case 3:21-cv-01490-N    Document 10-19    Filed 02/28/22    Page 272 of 161    Page 402 of 161

assumed by the Debtor pursuant to the Plan (collectively, the "Assumed Contracts"). With respect to the Assumed Contracts, only one party objected to the assumption of any of the Assumed Contracts, but that objection was withdrawn.[8] Any modifications, amendments, supplements, and restatements to the Assumed Contracts that may have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Assumed Contracts or the validity, priority, or amount of any Claims that may arise in connection therewith. Assumption of any Assumed Contract pursuant to the Plan and full payment of any applicable Cure pursuant to the Plan shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

69. **Compromises and Settlements Under and in Connection with the Plan (11 U.S.C. § 1123(b)(3)).** All of the settlements and compromises pursuant to and in connection with the Plan, comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

70. **Debtor Release, Exculpation and Injunctions (11 U.S.C. § 1123(b)).** The Debtor Release, Exculpation, and Injunction provisions provided in the Plan (i) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (ii) are integral elements of the transactions incorporated into the Plan, and inextricably bound with the other provisions of the Plan; (iii) confer material benefit on, and are in the best interests of, the Debtor, its Estate, and its

---

[8] *See Notice of Withdrawal of James Dondero's Objection Debtor's Proposed Assumption of Contracts and Cure Amounts Proposed in Connection Therewith* [Docket No. 1876]

DOCS_SF:104487.21 36027/002

000816
Appx. 0721

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01280-NS    Document 10-59    Filed 00/00/26    Page 152 of 156    PageID 9036
Case 19-34054-sgj11    Doc 10940    Filed 03/28/30    Entered 02/22/21    Date Filed: 0/14/202 of 161

creditors; (iv) are fair, equitable, and reasonable; (v) are given and made after due notice and opportunity for hearing; (vi) satisfy the requirements of Bankruptcy Rule 9019; and (vii) are consistent with the Bankruptcy Code and other applicable law, and as set forth below.

71.     **Debtor Release.** Section IX.D of the Plan provides for the Debtor's release of the Debtor's and Estate's claims against the Released Parties.  Releases by a debtor are discretionary and can be provided by a debtor to persons who have provided consideration to the Debtor and its estate pursuant to section 1123(b)(3)(A) of the Bankruptcy Code.  Contrary to the objections raised by Mr. Dondero and certain of the Dondero Related Entities, the Debtor Release is appropriately limited to release claims held by the Debtor and does not purport to release the claims held by the Claimant Trust, Litigation Sub-Trust, or other third parties.  The Plan does not purport to release any claims held by third parties and the Bankruptcy Court finds that the Debtor Release is not a "disguised" release of any third party claims as asserted by certain objecting parties.  The limited scope of the Debtor Release in the Plan was extensively negotiated with the Committee, particularly with the respect to the Debtor's conditional release of claims against employees, as identified in the Plan, and the Plan's conditions and terms of such releases.  The Plan does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance Actions, or (v) any Causes of Action arising from willful misconduct, criminal misconduct, actual

DOCS_SF:104487.21 36027/002

Appx. 0792
000817

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01228-NS   Document 10-19   Filed 10/03/22   Page 153 of 193   PageID 9047
Case 3:21-cv-03654-B   Document 003128263088   Entered 05/25/21   Date Filed: Page 152 of 161

fraud, or gross negligence of such applicable Released Party as determined by Final Order of the

Bankruptcy Court or any other court of competent jurisdiction.  The Debtor Release also contains

conditions to such releases as set forth in Article X.D of the Plan with respect to employees (the

"Release Conditions").  Until the an employee satisfies the Release Conditions or the Release

Conditions otherwise terminate, any claims against such employee will be tolled so that if the

Release Conditions are not met the Litigation Trustee may pursue claims against an employee at a

later date.  The evidence before the Bankruptcy Court, including, but not limited to Mr. Seery's

testimony, demonstrates that the Debtor is not aware of any claims against any of the Released

Parties, that the Released Parties have been instrumental in assisting the Debtor's efforts toward

confirmation of the Plan and that, therefore, the releases are a *quid pro quo* for the Released

Parties' significant contributions to a highly complex and contentious restructuring.   The

Committee, whose members hold approximately $200 million in claims against the Estate, is

highly sophisticated and is represented by highly sophisticated professionals, and has actively and

vigorously negotiated the terms of the Debtor Release, which was the subject of significant

controversy at the Initial Disclosure Statement hearing held by the Bankruptcy Court on October

27, 2020.

72.   **Exculpation.**  Section IX.C of the Plan provides for the exculpation of

certain Exculpated Parties to the extent provided therein (the "Exculpation Provision").  As

explained below, the Exculpation Provision is appropriate under the unique circumstances of this

litigious Chapter 11 Case and consistent with applicable Fifth Circuit precedent.  First, with respect

to the Independent Directors, their agents, and their advisors, including any employees acting at

000818
Appx 0728

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01270-NS    Document 10-59    Filed 10/09/23    Page 132 of 156    PageID 9053
Case 19-34054-sgj11    Doc 1943 Filed 02/28/20    Entered 02/28/20 14:45:06    Page 52 of 161

their direction, the Bankruptcy Court finds and concludes that it has already exculpated these parties for acts other than willful misconduct and gross negligence pursuant to the January 9 Order. The January 9 Order was specifically agreed to by Mr. Dondero, who was in control of the Debtor up until entry of the January 9 Order. The January 9 Order was not appealed.  In addition to the appointment of the Independent Directors in an already contentious and litigious case, the January 9 Order set the standard of care for the Independent Directors and specifically exculpated them for negligence.  Mr. Seery and Mr. Dubel each testified that they had input into the contents of the January 9 Order and would not have agreed to their appointment as Independent Directors if the January 9 Order did not include the protections set forth in paragraph 10 of the January 9 Order. Paragraph 10 of the January 9 Order (1) requires that parties wishing to sue the Independent Directors or their agents and advisors must first seek approval from the Bankruptcy Court before doing so; (2) sets the standard of care for the Independent Directors during the Chapter 11 Case and exculpated the Independent Directors for acts other than willful misconduct or gross negligence; (3) only permits suits against the Independent Directors to proceed for colorable claims of willful misconduct and gross negligence upon order of the Bankruptcy Court; and (4) does not expire by its terms.

73.    **Existing Exculpation of Independent Directors.**  The Bankruptcy Court also finds and concludes that  it has already exculpated Mr. Seery acting in the capacity as Chief Executive Officer and Chief Restructuring Officer pursuant to the July 16 Order.  The Bankruptcy Court concludes its previous approval of the exculpation of the Independent Directors, their agents, advisors and employees working at their direction pursuant to the January 9 Order, and the Chief



Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01283-S Document 10-59 Filed 08/08/22 Page 155 of 156 PageID 9069
Case 3:21-cv-01496-N Document 10-40 Filed 03/18/22 Entered 03/18/22 Date Filed: Page 52 of 161

Executive Officer and Chief Restructuring Officer pursuant to the July 16 Order constitutes the
law of this case and are *res judicata* pursuant to *In re Republic Supply Co. v. Shoaf*, 815 F.2d 1046
(5th Cir.1987). The January 9 Order and July 16 Order cannot be collaterally attacked based on
the objectors' objection to the exculpation of the Independent Directors, their agents, and advisors,
including any employees acting at their direction, as well as the Chief Executive Officer and Chief
Restructuring Officer, that the Bankruptcy Court already approved pursuant to the January 9 Order
and the July 16 Order.

74.    **The Exculpation Provision Complies with Applicable Law.**  Separate
and apart from the *res judicata* effect of the January 9 Order and the July 16 Order, the Bankruptcy
Court also finds and concludes that the Exculpation Provision is consistent with applicable law,
including *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009), for several reasons:

a.    First, the statutory basis for *Pacific Lumber's* denial of exculpation for certain
parties other than a creditors' committee and its members is that section 524(e) of
the Bankruptcy Code "only releases the debtor, not co-liable third parties." *Pacific
Lumber*, 253 F.3d. at 253.  However, *Pacific Lumber* does not prohibit all
exculpations under the Bankruptcy Code and the court in such case specifically
approved the exculpations of a creditors' committee and its members on the
grounds that "11 U.S.C. § 1103(c), which lists the creditors' committee's powers,
implies committee members have qualified immunity for actions within the scope
of their duties…. [I]f members of the committee can be sued by persons unhappy
with the committee's performance during the case or unhappy with the outcome of
the case, it will be extremely difficult to find members to serve on an official
committee." *Pacific Lumber*, 253 F.3d at 253 (quoting Lawrence P. King, et al,
Collier on Bankruptcy, ¶ 1103.05[4][b] (15th Ed. 2008)).  *Pacific Lumber's*
rationale for permitted exculpation of creditors' committees and their members
(which was clearly policy-based and based on a creditors' committee qualified
immunity flowing from their duties under section 1103(c) of the Bankruptcy Code
and their disinterestedness and importance in chapter 11 cases) does not preclude
exculpation to other parties in a particular chapter 11 case that perform similar roles
to a creditors' committee and its members.  The Independent Directors, and by
extension the Chief Executive Officer and Chief Restructuring Officer, were not

000820
Appx 0725

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-S    Document 10-9    Filed 04/08/22    Page 564 of 956    PageID 9090
Case 19-34054-sgj11    Doc 1943    Filed 02/28/22    Entered 02/28/22 16:48:16    Page 502 of 161

part of the Debtor's enterprise prior to their appointment by the Bankruptcy Court under the January 9 Order. The Bankruptcy Court appointed the Independent Directors in lieu of a chapter 11 trustee to address what the Bankruptcy Court perceived as serious conflicts of interest and fiduciary duty concerns with the then-existing management prior to January 9, 2020, as identified by the Committee. In addition, the Bankruptcy Court finds that the Independent Directors expected to be exculpated from claims of negligence, and would likely have been unwilling to serve in contentious cases absent exculpation. The uncontroverted testimony of Mr. Seery and Mr. Dubel demonstrates that the Independent Directors would not have agreed to accept their roles without the exculpation and gatekeeper provision in the January 9 Order. Mr. Dubel also testified as to the increasing important role that independent directors are playing in complex chapter 11 restructurings and that unless independent directors could be assured of exculpation for simple negligence in contentious bankruptcy cases they would be reluctant to accept appointment in chapter 11 cases which would adversely affect the chapter 11 restructuring process. The Bankruptcy Court concludes that the Independent Directors were appointed under the January 9 Order in order to avoid the appointment of a chapter 11 trustee and are analogous to a creditors' committee rather than an incumbent board of directors. The Bankruptcy Court also concludes that if independent directors cannot be assured of exculpation for simple negligence in contentious bankruptcy cases, they may not be willing to serve in that capacity. Based upon the foregoing, the Bankruptcy Court concludes that *Pacific Lumber's* policy of exculpating creditors' committees and their members from "being sued by persons unhappy with the committee's performance during the case or unhappy with the outcome of the case" is applicable to the Independent Directors in this Chapter 11 Case.[9]

b.    Second, the Bankruptcy Court also concludes that *Pacific Lumber* does not preclude the exculpation of parties if there is a showing that "costs [that] the released parties might incur defending against such suits alleging such negligence are likely to swamp either the Exculpated Parties or the reorganization." *Pacific Lumber*, 584 F.3d at 252. If ever there was a risk of that happening in a chapter 11 reorganization, it is this one. Mr. Seery credibly testified that Mr. Dondero stated outside the courtroom that if Mr. Dondero's pot plan does not get approved, that Mr. Dondero will "burn the place down." The Bankruptcy Court can easily expect that the proposed Exculpated Parties might expect to incur costs that could swamp them and the reorganization based on the prior litigious conduct of Mr. Dondero and his controlled entities that justify their inclusion in the Exculpation Provision.

---

[9] The same reasoning applies to the inclusion of Strand in the Exculpation Provision because Strand is the general partner of the Debtor through which each of the Independent Board members act.

DOCS_SF:104487.21 36027/002

000821
App. 0736

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-S   Document 10-59   Page 255 of 366   Page 573 of 1956   PageID 9081
Case 3:21-cv-00901   Document 10-2/8/26308   Entered 08/24/21   Date Filed: 07/14/21   Page 292 of 161

75.     **Injunction.**  Section IX.D of the Plan provides for a Plan inunction to
implement and enforce the Plan's release, discharge and release provisions (the "Injunction
Provision").  The Injunction Provision is necessary to implement the provisions in the Plan.  Mr.
Seery testified that the Claimant Trustee will monetize the Debtor's assets in order to maximize
their value.  In order to accomplish this goal, the Claimant Trustee needs to be able to pursue this
objective without the interference and harassment of Mr. Dondero and his related entities,
including the Dondero Related Entities.  Mr. Seery also testified that if the Claimant Trust was
subject to interference by Mr. Dondero,  it would take additional time to monetize the Debtor's
assets and those assets could be monetized for less money to the detriment of the Debtor's
creditors.  The Bankruptcy Court finds and concludes that the Injunction Provision is consistent
with and permissible under Bankruptcy Code sections 1123(a), 1123(a)(6), 1141(a) and (c), and
1142.  The Bankruptcy Court rejects assertions by certain objecting parties that the Injunction
Provision constitutes a "third-party release."  The Injunction Provision is appropriate under the
circumstances of this Chapter 11 Case and complies with applicable bankruptcy law.  The
Bankruptcy Court also concludes that the terms "implementation" and "consummation" are neither
vague nor ambiguous

76.     **Gatekeeper Provision**.  Section IX.F of the Plan contains a provision
contained in paragraph AA of this Confirmation Order and which the Debtor has referred to as a
gatekeeper provision (the "Gatekeeper Provision").   The Gatekeeper Provision requires that
Enjoined Parties first seek approval of the Bankruptcy Court before they may commence an action
against Protected Parties.  Thereafter, if the Bankruptcy Court determines that the action is

DOCS_SF:104487.21 36027/002

**000822**

App. 0737

colorable, the Bankruptcy Court may, if it has jurisdiction, adjudicate the action.  The Bankruptcy Court finds that the inclusion of the Gatekeeper Provision is critical to the effective and efficient administration, implementation, and consummation of the Plan.  The Bankruptcy Court also concludes that the Bankruptcy Court has the statutory authority as set forth below to approve the Gatekeeper Provision.

77. **Factual Support for Gatekeeper Provision.**  The facts supporting the need for the Gatekeeper Provision are as follows.  As discussed earlier in this Confirmation Order, prior to the commencement of the Debtor's bankruptcy case, and while under the direction of Mr. Dondero, the Debtor had been involved in a myriad of litigation, some of which had gone on for years and, in some cases, over a decade.  Substantially all of the creditors in this case are either parties who were engaged in litigation with the Debtor, parties who represented the Debtor in connection with such litigation and had not been paid, or trade creditors who provided litigation-related services to the Debtor.  During the last several months, Mr. Dondero and the Dondero Related Entities have harassed the Debtor, which has resulted in further substantial, costly, and time-consuming litigation for the Debtor.  Such litigation includes: (i) entry of a temporary restraining order and preliminary injunction against Mr. Dondero [Adv. Proc. No. 20-03190 Docket No. 10 and 59] because of, among other things, his harassment of Mr. Seery and employees and interference with the Debtor's business operations; (ii) a contempt motion against Mr. Dondero for violation of the temporary restraining order, which motion is still pending before the Bankruptcy Court [Adv. Proc. No. 20-03190 Docket No. 48]; (iii) a motion by Mr. Dondero's controlled investors in certain CLOs managed by the Debtor that the Bankruptcy Court referred to

000823
Appx 05788

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01278-S    Document 10-19    Filed 07/08/22    Page 537 of 1956    PageID 9793
Case 3:21-cv-00911    Document 10-19    Filed 02/26/21    Entered 02/26/21    Date Filed: 07/16/2021    Page 260 of 161

as frivolous and a waste of the Bankruptcy Court's time [Docket No. 1528] which was denied by

the Court [Docket No. 1605]; (iv) multiple plan confirmation objections focused on ensuring the

Dondero Related Entities be able to continue their litigation against the Debtor and its successors

post-confirmation [Docket Nos. 1661, 1667, 1670, 1673, 1676, 1677 and 1868]; (v) objections to

the approval of the Debtor's settlements with Acis and HarbourVest and subsequent appeals of the

Bankruptcy Court's order approving each of those settlements [Docket Nos. 1347 and 1870]; and

(vi) a complaint and injunction sought against Mr. Dondero's affiliated entities to prevent them

from violating the January 9 Order and entry of a restraining order against those entities [Adv Proc.

No. 21-03000 Docket No 1] (collectively, the "Dondero Post-Petition Litigation").

78.     **Findings Regarding Dondero Post-Petition Litigation.**  The Bankruptcy

Court finds that the Dondero Post-Petition Litigation was a result of Mr. Dondero failing to obtain

creditor support for his plan proposal and consistent with his comments, as set forth in Mr. Seery's

credible testimony, that if Mr. Dondero's plan proposal was not accepted, he would "burn down

the place."  The Bankruptcy Court concludes that without appropriate protections in place, in the

form of the Gatekeeper Provision, Mr. Dondero and his related entities will likely commence

litigation against the Protected Parties after the Effective Date and do so in jurisdictions other than

the Bankruptcy Court in an effort to obtain a forum which Mr. Dondero perceives will be more

hospitable to his claims.  The Bankruptcy Court also finds, based upon Mr. Seery's testimony, that

the threat of continued litigation by Mr, Dondero and his related entities after the Effective Date

will impede efforts by the Claimant Trust to monetize assets for the benefit of creditors and result

000824

Appx 0730

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01270-N    Document 109    Filed 08/08/22    Page 663 of 955    PageID 9794
Case 19-34054-sgj11    Doc 1940    Filed 02/28/23    Entered 02/28/23    Date Filed: Page 202 of 161

in lower distributions to creditors because of costs and distraction such litigation or the threats of
such litigation would cause.

79.    **Necessity of Gatekeeper Provision.**  The Bankruptcy Court further finds
that unless the Bankruptcy Court approves the Gatekeeper Provision, the Claimant Trustee and the
Claimant Trust Oversight Board will not be able to obtain D&O insurance, the absence of which
will present unacceptable risks to parties currently willing to serve in such roles.  The Bankruptcy
Court heard testimony from Mark Tauber, a Vice President with AON Financial Services, the
Debtor's insurance broker ("AON"), regarding his efforts to obtain D&O insurance.  Mr. Tauber
credibly testified that of all the insurance carriers that AON approached to provide D&O insurance
coverage after the Effective Date, the only one willing to do so without an exclusion for claims
asserted by Mr. Dondero and his affiliates otherwise requires that this Order approve the
Gatekeeper Provision.  Based on the foregoing, the Bankruptcy Court finds that the Gatekeeper
Provision is necessary and appropriate in light of the history of the continued litigiousness of Mr.
Dondero and his related entities in this Chapter 11 Case and necessary to the effective and efficient
administration, implementation and consummation of the Plan and is appropriate pursuant to
*Carroll v. Abide (In re Carroll)* 850 F.3d 811 (5th Cir. 2017).  Approval of the Gatekeeper
Provision will prevent baseless litigation designed merely to harass the post-confirmation entities
charged with monetizing the Debtor's assets for the benefit of its economic constituents, will avoid
abuse of the court system and preempt the use of judicial time that properly could be used to
consider the meritorious claims of other litigants.  Any suit against a Protected Party would
effectively be a suit against the Debtor, and the Debtor may be required to indemnify the Protected

DOCS_SF:104487.21 36027/002

000825
Appx. 0769

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01222-S   Document 10-59   Filed 04/06/23   Page 639 of 1956   PageID 9725
Case 19-34054-sgj11   Doc 1940   Filed 02/02/22   Entered 02/02/22 Filed   Page 202 of 161

Parties under the Limited Partnership Agreement, which will remain in effect through the Effective Date, or those certain *Indemnification and Guaranty Agreements*, dated January 9, 2020, between Strand, the Debtor, and each Independent Director, following the Confirmation Date as each such agreement will be assumed pursuant to 11 U.S.C. § 365 pursuant to the Plan.

80.    **Statutory Authority to Approve Gatekeeper Provision.**    The Bankruptcy Court finds it has the statutory authority to approve the Gatekeeper Provision under sections 1123(a)(5), 1123(b)(6), 1141, 1142(b), and 105(a).   The Gatekeeper Provision is also within the spirit of the Supreme Court's "Barton Doctrine." *Barton v. Barbour,* 104 U.S. 126 (1881).  The Gatekeeper Provision is also consistent with the notion of a prefiling injunction to deter vexatious litigants, that has been approved by the Fifth Circuit in such cases as *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008), and *In re Carroll,* 850 F.3d 811 (5th Cir. 2017).

81.    **Jurisdiction to Implement Gatekeeper Provision.**  The Bankruptcy Court finds that it will have jurisdiction after the Effective Date to implement the Gatekeeper Provision as post-confirmation bankruptcy court jurisdiction has been interpreted by the Fifth Circuit under *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296 (5th Cir. 2002) and *EOP-Colonnade of Dallas Ltd. P'Ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260 (5th Cir. 2005).  Based upon the rationale of the Fifth Circuit in *Villegas v. Schmidt*, 788 F.3d 156, 158-59 (5th Cir. 2015), the Bankruptcy Court's jurisdiction to act as a gatekeeper does not violate *Stern v. Marshall.*  The Bankruptcy Court's determination of whether

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01280-NS    Document 10-59    Filed 2006.216    Page 620 of 956    PageID 9736
Case 19-34054-sgj11    Doc 1943    Filed 02/28/21    Entered 02/28/21    Date Filed: 07/14/21    Page 59 of 161

a claim is colorable, which the Bankruptcy Court has jurisdiction to determine, is distinct from whether the Bankruptcy Court would have jurisdiction to adjudicate any claim it finds colorable.

82.    **Resolution of Objections of Scott Ellington and Isaac Leventon**.  Each of Scott Ellington ("Mr. Ellington") and Isaac Leventon ("Mr. Leventon") (each, a "Senior Employee Claimant") has asserted certain claims for liquidated but unpaid bonus amounts for the following periods: 2016, 2017, and 2018, as set forth in Exhibit A to that certain *Senior Employees' Limited Objection to Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1669] (the "Senior Employees' Objection") (for each of Mr. Ellington and Mr. Leventon, the "Liquidated Bonus Claims").

a.    Mr. Ellington has asserted Liquidated Bonus Claims in the aggregate amount of $1,367,197.00, and Mr. Leventon has asserted Liquidated Bonus Claims in the aggregate amount of $598,198.00.  Mr. Ellington received two Ballots[10] – a Ballot for Class 7 of the Plan and a Ballot for Class 8 of the Plan.  Mr. Ellington completed and timely returned both of such Ballots, voted to reject the Plan, and elected to have his Class 8 Liquidated Bonus Claims treated under Class 7 of the Plan, subject to the objections and reservations of rights set forth in the Senior Employees' Objection.  If Mr. Ellington is permitted to elect Class 7 treatment for his Liquidated Bonus Claims, then the maximum amount of his Liquidated Bonus Claims will be $1,000,000.

b.    Mr. Leventon received two Ballots—a Ballot for Class 7 of the Plan and a Ballot for Class 8 of the Plan.  Mr. Leventon completed and timely returned both of such Ballots and voted each such Ballots to rejected the Plan.

c.    The Senior Employees' Objection, among other things, objects to the Plan on the grounds that the Debtor improperly disputes the right of Mr. Ellington to elect Class 7 treatment for his Liquidated Bonus Claims and Mr. Leventon's entitlement to receive Class 7 Convenience Class treatment for his Liquidated Bonus Claims.  The Debtor contended that neither Mr. Ellington or Mr. Leventon were entitled to elect to receive Class 7 Convenience Class treatment on account of their Liquidated

---

[10] As defined in the Plan, "Ballot" means the forms(s) distributed to holders of Impaired Claims or Equity Interests entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

000827
Appx 05742

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02780-NS    Document 10-59   Filed 2/08/26   Page 631 of 195    PageID 9747
Case 19-34054-sgj11    Doc 1049   Filed 05/18/20   Entered 2/22/21   Date Filed: 04/20/20   Page 60 of 161

Bonus Claims under the terms of the Plan, the Disclosure Statement Order or applicable law.

d.      The Debtor and Mr. Ellington and Mr. Leventon negotiated at arms' length in an effort to resolve all issues raised in the Senior Employee's Objection, including whether or not Mr. Ellington and Mr. Leventon were entitled to Class 7 Convenience Class treatment of their Liquidated Bonus Claims.  As a result of such negotiation, the Debtor, Mr. Ellington, and Mr. Leventon have agreed to the settlement described in paragraphs 82(e) through 82(k) below and approved and effectuated pursuant to decretal paragraphs RR through SS (the "Senior Employees' Settlement").

e.      Under the terms of the Senior Employees' Settlement, the Debtor has the right to elect one of two treatments of the Liquidated Bonus Claims for a Senior Employee Claimant.  Under the first treatment option ("Option A"), the Liquidated Bonus Claims will be entitled to be treated in Class 7 of the Plan, and the Liquidated Bonus Claims will be entitled to receive payment in an amount equal to 70.125% of the Class 7 amount of the Liquidated Bonus Claims, subject to the Liquidated Bonus Claims becoming Allowed Claims under the terms of the Plan.  Under this calculation, Mr. Ellington would be entitled to receive $701,250.00 on account of his Class 7 Convenience Class Claim when and as Allowed under the Plan, and Mr. Leventon would be entitled to receive $413,175.10 on account of his Class 7 Convenience Class Claim when and as Allowed under the Plan.  If, however, any party in interest objects to the allowance of the Senior Employee Claimant's Liquidated Bonus Claims and does not prevail in such objection, then such Senior Employee Claimant will be entitled to a payment in an amount equal to 85% of his Allowed Liquidated Bonus Claims (subject, in the case of Mr. Ellington, to the cap imposed on Class 7 Claims).  In addition, under Option A, each of Mr. Ellington and Mr. Leventon would retain their respective rights to assert that the Liquidated Bonus Claims are entitled to be treated as Administrative Expense Claims, as defined in Article I.B.2. of the Plan, in which case the holder of such Liquidated Bonus Claims would be entitled to payment in full of the Allowed Liquidated Bonus Claims.  Under Option A, parties in interest would retain the right to object to any motion seeking payment of the Liquidated Bonus Amounts as Administrative Expenses.

f.      Under the second treatment option ("Option B"), the Debtor would agree that the Senior Employee Claimant has Allowed Liquidated Bonus Claims, no longer subject to objection by any party in interest, in the amounts of the Liquidated Bonus Claims (subject, in the case of Mr. Ellington, to the cap imposed by Class 7).  If the Debtor elects Option B as to a Senior Employee Claimant, then such Senior Employee Claimant would be entitled to a payment on account of his Allowed Liquidated Bonus Claims in an amount equal to 60% of the amount of the

DOCS_SF:104487.21 36027/002

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01230-N-S   Document 10-59   Filed 02/08/23   Page 1 of 166   PageID 9713
Case 19-34054-sgj11   Doc 1940   Filed 02/28/20   Entered 02/22/21   Date Filed:   Page 202 of 161

Liquidated Bonus Claims (which, in Mr. Ellington's case, would be $600,000 and in Mr. Leventon's case, would be $358,918.80), and such payment would be the sole recovery on account of such Allowed Liquidated Bonus Claims.

g.      The Debtor may, with the consent of the Committee, elect Option B with respect to a Senior Employee Claimant at any time prior to the occurrence of the Effective Date.  If the Debtor does not make an election, then Option A will apply.

h.      Under either Option A or Option B, Mr. Ellington and Mr. Leventon will retain all their rights with respect to all Claims other than the Liquidated Bonus Amounts, including, but not limited to, their Class 6 PTO Claims, other claims asserted as Class 8 General Unsecured Claims, the Senior Employees' claims for indemnification against the Debtor, and any other claims that they may assert constitute Administrative Expense Claims, and any other such Claims are subject to the rights of any party in interest to object to such Claims, and the Debtor reserves any all of its rights and defenses in connection therewith.

i.      Subject to entry of this Confirmation Order and as set forth and announced on the record at the hearing on confirmation of the Plan and no party objecting thereto, Mr. Ellington and Mr. Leventon agreed to change the votes in their respective Ballots from rejection to acceptance of the Plan and to withdraw the Senior Employees' Objection.

j.      The Senior Employees' Settlement represents a valid exercise of the Debtor's business judgment and satisfies the requirements for a compromise under Bankruptcy Rule 9019(a).

k.      For the avoidance of doubt, neither Mr. Leventon nor Mr. Ellington shall be a Released Party under the Plan regardless of how the Senior Employee Claimants' Claims are to be treated hereunder.

Based upon the foregoing findings, and upon the record made before the Bankruptcy Court

at the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

    **A.      Confirmation of the Plan.**  The Plan is approved in its entirety and

**CONFIRMED** under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the

DOCS_SF:104487.21 36027/002

000829
Appx 0714

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01228-N   Document 10-59   Filed 03/08/23   Page 653 of 1256   PageID 9789
Case 19-34054-sgj11   Doc 4046   Filed 03/28/23   Entered 03/28/23 13:48:16   Page 202 of 161

Plan Supplements and Plan Modifications, are incorporated by reference into and are an integral part of this Confirmation Order.[11]

> **B.**     **Findings of Fact and Conclusions of Law**.  The findings of fact and the conclusions of law set forth in this Confirmation Order and on the record of the Confirmation Hearing constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusion of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated into this Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any findings of fact or conclusions of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing and incorporated herein) constitutes an order of the Bankruptcy Court, and is adopted as such.

> **C.**     **Objections**.  Any resolution or disposition of objections to confirmation of the Plan or otherwise ruled upon by the Bankruptcy Court on the record of the Confirmation Hearing is hereby incorporated by reference.  All objections and all reservations of rights pertaining to confirmation of the Plan that have not been withdrawn, waived or settled are overruled on the merits, except as otherwise specifically provided in this Confirmation Order.

> **D.**     **Plan Supplements and Plan Modifications.**     The filing with the Bankruptcy Court of the Plan Supplements and the Plan Modifications constitutes due and

---

[11] The Plan is attached hereto as **Exhibit A**.

000830

App. 0745

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01270-N   Document 10-59   Filed 12/04/23   Page 664 of 1956   PageID 9300
Case 21-04096-sgj11   Doc 1046   Filed 02/28/23   Entered 02/22/21 16:41:10   Page 262 of 161

sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications and the Plan Supplements do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  The Plan Modifications and the Plan Supplements constitute the Plan pursuant to section 1127(a) of the Bankruptcy Code.  Accordingly, the Plan, as modified, is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

      **E.**    **Deemed Acceptance of Plan.**  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Equity Interests who voted to accept the Plan (or whom are conclusively presumed to accept the Plan) are deemed to have accepted the Plan as modified by the Plan Modifications.  No holder of a Claim shall be permitted to change its vote as a consequence of the Plan Modifications.

      **F.**    **Vesting of Assets in the Reorganized Debtor.**  Except as otherwise provided in the Plan or this Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code, except with respect to such Liens, Claims, charges, and other encumbrances that are specifically preserved under the Plan upon the Effective Date.  The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 22-03052-sgj    Document 10-59    Filed 05/25/22    Page 625 of 1956    Page ID 9381
Case 19-34054-sgj11    Doc 1943    Filed 02/28/20    Entered 02/28/20 16:48:00    Page 202 of 161

representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

      **G.    Effectiveness of All Actions.**  All actions contemplated by the Plan, including all actions in connection with the Claimant Trust Agreement, the Senior Employee Stipulation, the New GP LLC Documents, the New Frontier Note, the Reorganized Limited Partnership Agreement, the Litigation Sub-Trust Agreement, and the other Plan Documents, are authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to or order of the Bankruptcy Court, or further action by the directors, managers, officers or partners of the Debtor or the Reorganized Debtor and with the effect that such actions had been taken by unanimous action of such parties.

      **H.    Restructuring Transactions.**  The Debtor or Reorganized Debtor, as applicable, are authorized to enter into and effectuate the Restructuring provided under the Plan, including, without limitation, the entry into and consummation of the transactions contemplated by the Claimant Trust Agreement, the Senior Employee Stipulation, the New GP LLC Documents, the New Frontier Note, the Reorganized Limited Partnership Agreement, the Litigation Sub-Trust Agreement, and the other Plan Documents, and may take any actions as may be necessary or appropriate to effect a corporate restructuring of its business or a corporate restructuring of the overall corporate structure of the Reorganized Debtor, as and to the extent provided in the Plan. Any transfers of assets or equity interests effected or any obligations incurred through the Restructuring pursuant to the Plan are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance.

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01228-N   Document 18-59   Filed 09/08/23   Page 636 of 1956   PageID 9302
Case 21-30590-sgj11   Doc 3940   Filed 09/18/23   Entered 09/18/23   Date Filed: 07/14/2023   Page 262 of 161

I.      **Preservation of Causes of Action.**  Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, this Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtor, the Litigation Sub-Trust, or the Claimant Trust, as applicable (including, without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action as a consequence of the confirmation, effectiveness, or consummation of the Plan based on the Disclosure Statement, the Plan, or this Confirmation Order, except where such Causes of Action have been expressly released in the Plan or any other Final Order (including, without limitation, this Confirmation Order).  In addition, the right of the Reorganized Debtor, the Claimant Trust, or the Litigation Sub-Trust to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

J.      **Independent Board of Directors of Strand.**  The terms of the current Independent Directors shall expire on the Effective Date without the need for any further or other action by any of the Independent Directors.  For avoidance of doubt, the Assumed Contracts

DOCS_SF:104487.21 36027/002

**000833**

include the *Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and James Seery*; the *Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and John Dubel* and *Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and Russell Nelms* and shall each remain in full force and effect notwithstanding the expiration of the terms of any Independent Directors.

**K.    Cancellation of Equity Interests and Issuance of New Partnership Interests.**    On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be deemed cancelled, and all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, such Class A Limited Partnership Interests and Class B/C Limited Partnership Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.  As of the Effective Date and pursuant to the Plan, new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC.  The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner.  The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited

DOCS_SF:104487.21 36027/002

000834

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-S   Document 10-59   Filed 08/08/26   Page 793 of 1936   PageID 9204
Case 19-34054-sgj11   Doc 1043 Filed 02/28/20   Entered 02/27/21 16:48:16   Page 202 of 161

Partnership Agreement. Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC. The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

   **L.**  **Transfer of Assets to Claimant Trust.** On or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax. Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to the Plan and the Claimant Trust Agreement.

   **M.**  **Transfer of Estate Claims to Litigation Sub-Trust**. On or prior to the Effective Date, the Claimant Trust shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Litigation Sub-Trust all of the Claimant Trust's rights, title, and interest in and to all of the Estate Claims as successor in interest to the Debtor, and in accordance with section 1141 of the Bankruptcy Code, the Estate Claims shall automatically vest in the Litigation Sub-Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Litigation Sub-Trust Interests and Litigation Sub-Trust Expenses. The Litigation Trustee will

DOCS_SF:104487.21 36027/002

000835
App. 0750

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01736-S   Document 10-59   Filed 08/29/22   Page 79 of 195   PageID 9225
Case 3:21-cv-04766-sgj11   Doc 1040-1 Filed 02/28/22   Entered 02/28/22 18:45:18   Page 202 of 161

be authorized to investigate, pursue, and otherwise resolve the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan, including as successor in interest to the Debtor or Committee, as applicable, in any litigation commenced prior to the Effective Date in which Estate Claims are asserted.

N.      **Compromise of Controversies.**  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Equity Interests, and controversies resolved under the Plan and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

O.      **Objections to Claims**.  The Claims Objection Deadline shall be the date that is 180 days after the Effective Date, *provided, however*, that the Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee and as otherwise provided under the Plan.

P.      **Assumption of Contracts and Leases.**  Effective as of the date of this Confirmation Order, each of the Assumed Contacts shall be assumed by the Debtor without the need for any further notice to or action, order, or approval of the Bankruptcy Court, under section 365 of the Bankruptcy Code and the payment of Cures, if any, shall be paid in accordance with the Plan.   Each Assumed Contract shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to any of the

000836
Appx 8751

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02200-NS    Document 18-19    Filed 10/06/22    Page 170 of 186    PageID 9806
Case 19-34054-sgj11    Doc 1040    Filed 03/28/20    Entered 03/28/20    Date Filed: 07/14/20    Page 202 of 161

Assumed Contracts that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of such Assumed Contracts or the validity, priority, or amount of any Claims that may arise in connection therewith.  Assumption of the Assumed Contracts pursuant to Article V.A of the Plan and full payment of any applicable Cure pursuant to the Plan shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition, or other bankruptcy-related defaults, arising under any Assumed Contracts.

Q.    **Rejection of Contracts and Leases.**  Unless previously assumed during the pendency of the Chapter 11 Case or pursuant to the Plan, all other Executory Contracts and Unexpired Leases are rejected as of the date of the entry of this Confirmation Order and pursuant to the terms of the Plan.  To the extent that any party asserts any damages resulting from the rejection of any Executory Contract or Unexpired Lease, such claim must be filed within **thirty (30) days** following entry of this Confirmation Order, or such claim will be forever barred and disallowed against the Reorganized Debtor.

R.    **Assumption of Issuer Executory Contracts.**  On the Confirmation Date, the Debtor will assume the agreements set forth on **Exhibit B** hereto (collectively, the "Issuer Executory Contracts") pursuant to section 365 of the Bankruptcy Code and Article V of the Plan. In full and complete satisfaction of its obligation to cure outstanding defaults under section 365(b)(1) of the Bankruptcy Code, the Debtor or, as applicable, any successor manager under the

Issuer Executory Contracts (collectively, the "<u>Portfolio Manager</u>") will pay to the Issuers[12] a

cumulative amount of $525,000 (the "<u>Cure Amount</u>") as follows:

    a.    $200,000 in cash on the date that is five business days from the Effective Date, with such payment paid directly to Schulte Roth & Zabel LLP ("<u>SRZ</u>") in the amount of $85,714.29, Jones Walker LLP ("<u>JW</u>") in the amount of $72,380.95, and Maples Group ("<u>Maples</u>" and collectively with SRZ and JW, the "<u>Issuers' Counsel</u>") in the amount of $41,904.76 as reimbursement for the attorney's fees and other legal expenses incurred by the Issuers in connection with the Debtor's bankruptcy case; and

    b.    $325,000 in four equal quarterly payments of $81,250.00 (each, a "<u>Payment</u>"), which amounts shall be paid to SRZ in the amount of $34,821.43, JW in the amount of $29,404.76, and Maples in the amount of $17,023.81 as additional reimbursement for the attorney's fees and other legal expenses incurred by the Issuers in connection with the Debtor's bankruptcy case (i) from any management fees actually paid to the Portfolio Manager under the Issuer Executory Contracts (the "<u>Management Fees</u>"), and (ii) on the date(s) Management Fees are required to be paid under the Issuer Executory Contracts (the "<u>Payment Dates</u>"), and such obligation shall be considered an irrevocable direction from the Debtor and the Bankruptcy Court to the relevant CLO Trustee to pay, on each Payment Date, the Payment to Issuers' Counsel, allocated in the proportion set forth in such agreement; *provided, however,* that (x) if the Management Fees are insufficient to make any Payment in full on a Payment Date, such shortfall, in addition to any other amounts due thereunder, shall be paid out of the Management Fees owed on the following Payment Date, and (y) nothing herein shall limit either Debtor's liability to pay the amounts set forth herein, nor the recourse of the Issuers or Issuers' Counsel to the Debtor, in the event of any failure to make any Payment.

    **S.**    **Release of Issuer Claims.**  Effective as of the Confirmation Date, and to

the maximum extent permitted by law, each Issuer on behalf of itself and each of its current and

former advisors, trustees, directors, officers, managers, members, partners, employees,

beneficiaries, shareholders, agents, participants, subsidiaries, parents, successors, designees, and

---

[12] The "Issuers" are: Brentwood CLO, Ltd., Gleneagles CLO, Ltd., Greenbriar CLO, Ltd., Highland CLO 2018-1, Ltd., Highland Legacy Limited, Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Pam Capital Funding LP, Rockwall CDO II Ltd., Rockwall CDO Ltd., Southfork CLO Ltd., Stratford CLO Ltd., Westchester CLO, Ltd., Aberdeen Loan Funding, Ltd., Eastland CLO, Ltd., Grayson CLO, Ltd., Highland Credit Opportunities CDO Ltd., Jasper CLO, Ltd., Liberty Cayman Holdings, Ltd., Liberty CLO, Ltd., Red River CLO, Ltd., Valhalla CLO, Ltd.

000838
Appx 4753

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 18-19   Filed 10/06/22   Page 174 of 186   PageID 9808
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21   Last Filed: 04/14/2021   Page 174 of 161

assigns hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits,

remises, and exonerates, and covenants never to sue, (i) the Debtor and (ii) the Professionals

retained by the Debtor and the Committee in the Chapter 11 Case, the Independent Directors, the

CEO/CRO, and with respect to the Persons listed in this subsection (ii), such Person's Related

Persons (collectively, the "Debtor Released Parties"), for and from any and all claims, debts,

liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses

(including, without limitation, attorney's fees and related costs), damages, injuries, suits, actions,

and causes of action of whatever kind or nature, whether known or unknown, suspected or

unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in

equity, statutory or otherwise, including, without limitation, any claims, defenses, and affirmative

defenses, whether known or unknown, including, without limitation, those which were or could

have been asserted in, in connection with, or with respect to the Bankruptcy Case (collectively, the

"Issuer Released Claims").

     **T.**       **Release of Debtor Claims against Issuer Released Parties.**  Upon entry

of this Order, and to the maximum extent permitted by law, the Debtor hereby forever, finally,

fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and

covenants never to sue [(i) each Issuer and (ii) Wendy Ebanks, (iii) Yun Zheng, (iv) Laura

Chisholm, (v) Mora Goddard, (vi) Stacy Bodden, (vii) Suzan Merren (viii) Scott Dakers, (ix) Samit

Ghosh, (x) Inderjit Singh, (xi) Ellen Christian, (xii) Andrew Dean, (xiii) Betsy Mortel, (xiv) David

Hogan, (xv) Cleveland Stewart, (xvi) Rachael Rankin, (xvii) Otelia Scott, (xviii) Martin Couch,

(xx) Ferona Bartley-Davis, (xxi) Charlotte Cloete, (xxii) Christina McLean, (xxiii) Karen Ellerbe,

000839
Appx. 874

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-00286-NS   Document 8-19   Filed 11/08/22   Page 176 of 186   PageID 9809
Case 3:20-cv-06931   Document 10-14   Filed 05/28/20   Entered 02/21/21   Date Filed: 04/04/2021   Page 4 of 161

(xxiv) Gennie Kay Bigord, (xxv) Evert Brunekreef, (xxvii) Evan Charles Burtton  (collectively,

the "Issuer Released Parties"),] for and from any and all claims, debts, liabilities, demands,

obligations, promises, acts, agreements, liens, losses, costs and expenses (including, without

limitation, attorney's fees and related costs), damages, injuries, suits, actions, and causes of action

of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or

unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or

otherwise, including, without limitation, any claims, defenses, and affirmative defenses, whether

known or unknown, which were or could have been asserted in, in connection with, or with respect

to the Bankruptcy Case (collectively, the "Debtor Released Claims"); *provided, however,* that

notwithstanding anything herein to the contrary, the release contained herein will apply to the

Issuer Released Parties set forth in subsection (ii) above only with respect to Debtor Released

Claims arising from or relating to the Issuer Executory Contracts.  Notwithstanding anything in

this Order to the contrary, the releases set forth in paragraphs S and T hereof will not apply with

respect to the duties, rights, or obligations of the Debtor or any Issuer hereunder.

U.     **Authorization to Consummate.**  The Debtor is authorized to consummate

the Plan after the entry of this Confirmation Order subject to satisfaction or waiver of the

conditions precedent to the Effective Date of the Plan set forth in Article VIII.A of the Plan.  The

Plan shall not become effective unless and until the conditions set forth in Article VIII.A of the

Plan have been satisfied, or otherwise waived pursuant to Article VIII.B of the Plan.

V.     **Professional Compensation.**  All requests for payment of Professional Fee

Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01260-N   Document 8-19   Filed 11/04/22   Page 176 of 186   PageID 9870
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21   Date Filed: 04/04/2022   Page 73 of 161

must be filed no **later than sixty (60) days after the Effective Date**. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and an opportunity for hearing in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Court. The Debtor shall fund the Professional Fee Reserve as provided under the Plan. The Reorganized Debtor shall pay Professional Fee Claims in Cash in the amounts the Bankruptcy Court allows. The Debtor is authorized to pay the pre-Effective Date fees and expenses of all ordinary course professionals in the ordinary course of business without the need for further Bankruptcy Court order or approval. From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 (if applicable) of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor or Claimant Trustee, as applicable, may employ and pay any Professional or Entity employed in the ordinary course of the Debtor's business without any further notice to or action, order, or approval of the Bankruptcy Court.

> **W.** **Release, Exculpation, Discharge, and Injunction Provisions. The following release, exculpation, discharge, and injunction provisions set forth in the Plan are approved and authorized in their entirety, and such provisions are effective and binding on all parties and Entities to the extent provided therein.**

> **X.** **Discharge of Claims and Termination of Interests.** To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or this Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement,

Appx. 0756
000841

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02280-NS Document 18-19    Filed 11/05/22    Page 170 of 186    PageID 9831
Case 19-34054-sgj11    Doc 1943    Filed 02/22/21    Entered 02/24/21    Last Filed: 04/14/21    Page 2 of 161

discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests. Except as otherwise expressly provided by the Plan or this Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

Y.     **Exculpation.**  Subject in all respects to Article XII.D of the Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(v);

DOCS_SF:104487.21 36027/002

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 18-39   Filed 11/06/23   Page 178 of 186   PageID 9892
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21   Date Filed: 04/14/2021   Page 178 of 161

*provided, however*, the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date.  The Plan's exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of the Plan, including Article IV.C.2 of the Plan, protecting such Exculpated Parties from liability.

   **Z.    Releases by the Debtor.**  On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Person.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release: (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under

DOCS_SF:104487.21 36027/002

000843
Appx 0758

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01260-S   Document 19   Filed 11/07/22   Page 179 of 186   PageID 9803
Case 19-34054-sgj11   Doc 3943   Filed 05/22/23   Entered 02/26/21   Date Filed: 04/14/2021   Page 179 of 161

any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance Actions, or (v) any Causes of Action arising from willful misconduct, criminal misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

**AA.    Injunction.  Upon entry of this Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.  Except as expressly provided in the Plan, this Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the property of the Debtor, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor or the property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtor or against property or interests in property of the Debtor, except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner,**

DOCS_SF:104487.21 36027/002

000844
Appx. 0759

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02260-S Document 10-19   Filed 08/07/26 Page 180 of 186   PageID 9814
Case 19-34054-sgj11   Doc 1943 Filed 05/22/20   Entered 02/22/21   Date Filed: 04/16/2020   Page 180 of 161

in any place whatsoever, that does not conform to or comply with the provisions of the Plan. The injunctions set forth in the Plan and this Confirmation Order shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Debtor, including, but not limited to, the Reorganized Debtor, the Litigation Sub-Trust, and the Claimant Trust and their respective property and interests in property.  Subject in all respects to Article XII.D of the Plan, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; *provided, however*, the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in

000845
Appx. 0766

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S Document 18-19   Filed 11/09/22   Page 180 of 186   PageID 9825
Case 19-34054-sgj11    Doc 1943   Filed 02/22/21   Entered 02/22/21   Date Filed: 04/14/2021   Page 4 of 161

Article XI of the Plan, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

BB.    **Duration of Injunction and Stays.**  Unless otherwise provided in the Plan, in this Confirmation Order, or in a Final Order of the Bankruptcy Court, (i) all injunctions and stays entered during the Chapter 11 Case and in existence on the Confirmation Date, shall remain in full force and effect in accordance with their terms; and (ii) the automatic stay arising under section 362 of the Bankruptcy Code shall remain in full force and effect subject to Section 362(c) of the Bankruptcy Code, and to the extent necessary if the Debtor does not receive a discharge, the Bankruptcy Court will enter an equivalent order under Section 105.

CC.    **Continuance of January 9 Order and July 16 Order.**  Unless otherwise provided in the Plan, in this Confirmation Order, or in a Final Order of the Bankruptcy Court, each of the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course, entered by the Bankruptcy Court on January 9, 2020* [Docket No. 339] and *Order Approving the Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Retention of James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative Nunc Pro Tunc to March 15, 2020* [Docket No. 854] entered on July 16, 2020  shall remain in full force and effect from the Confirmation Date and following the Effective Date.

DD.    **No Governmental Releases.**  Nothing in this Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or

**000846**

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01260-NS   Document 1-19   Filed 10/06/22   Page 182 of 186   PageID 9836
Case 3:21-cv-01490-N   Doc 10-48   Filed 05/28/22   Page 2/09/21   Date Filed: 04/04/2021 of 161

any state and local authority whatsoever, including without limitation any claim arising under the

Internal Revenue Code, the environmental laws or any criminal laws of the United States or any

state and local authority against any party or person, nor shall anything in this Confirmation Order

or the Plan enjoin the United States or any state or local authority from bringing any claim, suit,

action, or other proceedings against any party or person for any liability of such persons whatever,

including without limitation any claim, suit, or action arising under the Internal Revenue Code,

the environmental laws or any criminal laws of the United States or any state and local authority

against such persons, nor shall anything in this Confirmation Order or the Plan exculpate any party

or person from any liability to the United States Government or any of its agencies or any state

and local authority whatsoever, including any liabilities arising under the Internal Revenue Code,

the environmental laws, or any criminal laws of the United States or any state and local authority

against any party or person.

     **EE.   Exemption from Transfer Taxes.**  Pursuant to section 1146(a) of the

Bankruptcy Code, any transfers (whether from the Debtor to the Reorganized Debtor or to any

other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or

exchange of any debt, equity security, or other interest in the Debtor or the Reorganized Debtor;

(b) the Restructuring transactions pursuant to the Plan; (c) the creation, modification,

consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other

security interest, or the securing of additional indebtedness by such or other means; (d) the making,

assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any

deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan,

DOCS_SF:104487.21 36027/002

Appx. 0762

000847

including any deeds, bills of sale, assignments, or other instrument of transfer executed in
connection with any transaction arising out of, contemplated by, or in any way related to the Plan,
shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or
similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial
Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental
assessment to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code, and upon
entry of this Confirmation Order, the appropriate state or local governmental officials or agents
shall forego the collection of any such tax or governmental assessment and accept for filing and
recordation of any of the foregoing instruments or other documents without the payment of any
such tax, recordation fee, or governmental assessment.

   **FF.** **Cancellation of Notes, Certificates and Instruments.** Except for the
purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in
the Plan or as otherwise provided in this Confirmation Order, on the Effective Date, all agreements,
instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest
and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no
force or effect.  The holders of or parties to such cancelled instruments, Securities, and other
documentation will have no rights arising from or related to such instruments, Securities, or other
documentation or the cancellation thereof, except the rights provided for pursuant to the Plan, and
the obligations of the Debtor thereunder or in any way related thereto will be fully released,
terminated, extinguished and discharged, in each case without further notice to or order of the

DOCS_SF:104487.21 36027/002

Appx 0783

000848

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01260-S Document 8-19   Filed 07/06/22   Page 184 of 186   PageID 9858
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21   Page 48   Filed: 04/14/2021   Page 2 of 161
Exhibit 19   Page 107602266   Page 184 of 193 PageID 9858

Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement
of further action, vote or other approval or authorization by any Person.

GG.     **Documents, Mortgages, and Instruments.**     Each federal, state,
commonwealth, local, foreign, or other governmental agency is authorized to accept any and all
documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or
consummate the Plan, including the Restructuring transactions contemplated under the Plan, and
this Confirmation Order.

HH.     **Post-Confirmation Modifications.**     Subject section 1127(b) of the
Bankruptcy Code and the Plan, the Debtor and the Reorganized Debtor expressly reserve their
rights to revoke or withdraw, or to alter, amend, or modify materially the Plan, one or more times
after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court
to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any
inconsistencies in the Plan or this Confirmation Order, in such manner as may be necessary to
carry out the purposes and intent of the Plan.  Any such modification or supplement shall be
considered a modification of the Plan and shall be made in accordance with Article XII.B of the
Plan.

II.     **Applicable Nonbankruptcy Law.**  The provisions of this Confirmation
Order, the Plan and related documents, or any amendments or modifications thereto, shall apply
and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

JJ.     **Governmental Approvals Not Required.**  This Confirmation Order shall
constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state,

DOCS_SF:104487.21 36027/002

Appx 0784
000849

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01260-NS   Document 18-19   Filed 11/08/22   Page 185 of 186   PageID 9869
Case 3:22-cv-01260-N   Document 40-11   Filed 05/22/23   Page 212 of 161   Date Filed: 04/14/2023

federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

KK.    **Notice of Effective Date.**    As soon as reasonably practicable after the Effective Date, the Reorganized Debtor shall file notice of the Effective Date and shall serve a copy of the same on all Holders of Claims and Equity Interests, and all parties who have filed with the Bankruptcy Court requests to receive notices in accordance with Bankruptcy Rules 2002 and 3020(c).  Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtor mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtor has been informed in writing by such Entity, or is otherwise aware, of that Entity's new address. The above-referenced notices are adequate under the particular circumstances of this Chapter 11 Case and no other or further notice is necessary.

LL.    **Substantial Consummation.**    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

MM.   **Waiver of Stay.**   For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

DOCS_SF:104487.21 36027/002

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S    Document 19    Filed 10/06/22    Page 186 of 186    PageID 9820
Case 3:21-cv-00011    Document 43    Filed 02/23/21    Page 23 of 161

**NN. References to and Omissions of Plan Provisions.** References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

**OO. Headings.** Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**PP. Effect of Conflict.** This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control. If there is any inconsistency between the terms of this Confirmation Order and the terms of a final, executed Plan Supplement Document, the terms of the final, executed Plan Supplement Document will govern and control.

**QQ. Resolution of Objection of Texas Taxing Authorities.** Dallas County, Kaufman County, City of Allen, Allen ISD and City of Richardson (collectively, the "Tax Authorities") assert that they are the holders of prepetition and administrative expense claims for 2019, 2020 and 2021 ad valorem real and business personal property taxes. The ad valorem property taxes for tax year 2020 shall be paid in accordance with and to the extent required under

App. 0766
000851

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:23-cv-00200-S Document 19    Filed 11/05/22 Page 187 of 186  PageID 981
Case 19-34054-sgj11    Doc 1043 Filed 05/22/23 Entered 02/22/21 Date Filed: 04/04/2021  Page 84 of 161

applicable nonbankruptcy law.  In the event the 2020 taxes are paid after February 1, 2021, the

Tax Authorities may assert any rights and amounts they claim are owed with respect to penalties

and interest that have accrued through the date of payment and the Debtor and Reorganized Debtor

reserve any all rights and defenses in connection therewith.

a.   The Debtor/Reorganized Debtor shall pay all amounts owed to the Tax Authorities for tax year 2021 in accordance with and to the extent required under applicable nonbankruptcy law.  The Tax Authorities shall not be required to file and serve an administrative expense claim and request for payment as a condition of allowance of their administrative expense claims pursuant to 11 U.S.C. Section 503(b)(1)(D). With regard to year 2019 ad valorem property taxes, the Tax Authorities will receive payment of their prepetition claims within 30 days of the Effective Date of the Plan.  The payment will include interest from the Petition Date through the Effective Date and from the Effective Date through payment in full at the state statutory rate pursuant to 11 U.S.C. Sections 506(b), 511, and 1129, if applicable, subject to all of the Debtor's and Reorganized Debtor's rights and defenses in connection therewith. Notwithstanding any other provision in the Plan, the Tax Authorities shall (i) retain the liens that secure all prepetition and postpetition amounts ultimately owed to them, if any, as well as (ii) the state law priority of those liens until the claims are paid in full.

b.   The Tax Authorities' prepetition claims and their administrative expense claims shall not be discharged until such time as the amounts owed are paid in full.  In the event of a default asserted by the Taxing Authorities, the Tax Authorities shall provide notice Debtor or Reorganized Debtor, as applicable, and may demand cure of any such asserted default.  Subject to all of its rights and defenses, the Debtor or Reorganized Debtor shall have fifteen (15) days from the date of the notice to cure the default.  If the alleged default is not cured, the Tax Authorities may exercise any of their respective rights under applicable law and pursue collection of all amounts owed pursuant to state law outside of the Bankruptcy Court, subject in all respects to the Debtor's and Reorganized Debtor's applicable rights and defenses. The Debtor/Reorganized Debtor shall be entitled to any notices of default required under applicable nonbankruptcy law and each of the Taxing Authorities, the Debtor and the Reorganized Debtor reserve any and all of their respective rights and defenses in connection therewith.  The Debtor's and Reorganized Debtor's rights and defenses under Texas Law and the Bankruptcy Code with respect to this provision of the Confirmation Order, including their right to dispute or object to the Tax Authorities' Claims and liens, are fully preserved.

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S  Document 19   Filed 11/06/22  Page 188 of 186  PageID 9832
Case 19-34054-sgj11  Doc 1943  Filed 02/22/21 Entered 02/22/21  Date Filed: 04/26/21  Page 162 of 161

**RR.    Resolution of Objections of Scott Ellington and Isaac Leventon.**
Pursuant to Bankruptcy Rule 9019(a), the Senior Employees' Settlement is approved in all respects.  The Debtor may, only with the consent of the Committee, elect Option B for a Senior Employee Claimant by written notice to such Senior Employee Claimant on or before the occurrence of the Effective Date.  If the Debtor does not elect Option B, then Option A will govern the treatment of the Liquidated Bonus Claims.

  a.    Notwithstanding any language in the Plan, the Disclosure Statement, or this Confirmation Order to the contrary, if Option A applies to the Liquidated Bonus Claims of a Senior Employee Claimant, then the Liquidated Bonus Claims of such Senior Employee Claimant will receive the treatment described in paragraph 82(e) hereof, and if the Debtor timely elects Option B with respect to the Liquidated Bonus Claims of a Senior Employee Claimant, then the Liquidated Bonus Claims of such Senior Employee will receive the treatment described in paragraph 82(f) hereof.

  b.    The Senior Employees' Settlement is hereby approved, without prejudice to the respective rights of Mr. Ellington and Mr. Leventon to assert all their remaining Claims against the Debtor's estate, including, but not limited to, their Class 6 PTO Claims, their remaining Class 8 General Unsecured Claims, any indemnification claims, and any Administrative Expense Claims that they may assert and is without prejudice to the rights of any party in interest to object to any such Claims.

  c.    Pursuant to Bankruptcy Rule 3018(a), Mr. Ellington and Mr. Leventon were permitted to change their votes on the Plan.  Accordingly, Mr. Ellington's votes on his Ballots in Class 7 and Class 8 of the Plan were changed from a rejection of the Plan to acceptance of the Plan, and Mr. Leventon's votes on his Ballots in Class 7 and Class 8 of the Plan were, changed from rejections of the Plan to acceptances of the Plan.

  d.    The Senior Employees' Objection is deemed withdrawn.

**SS.    No Release of Claims Against Senior Employee Claimants**.  For the avoidance of doubt, the Senior Employees' Settlement, as approved herein, shall not, and shall not be deemed to, release any Claims or Causes of Action held by the Debtor against either Senior

DOCS_SF:104487.21 36027/002

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01280-S Document 1-9    Filed 11/07/22    Page 107 of 266    Page 189 of 186    PageID 9803
Case 19-34054-sgj11    Doc 3443-19    Filed 05/23/22    Entered 02/28/21 04:46:02    Page 4 of 161

Employee Claimant nor shall either Senior Employee Claimant be, or be deemed to be, a "Released Party" under the Plan.

  **TT.**  **Resolution of Objection of Internal Revenue Service.** Notwithstanding any other provision or term of the Plan or Confirmation Order, the following Default Provision shall control as to the United States of America, Internal Revenue Service ("IRS") and all of its claims, including any administrative claim (the "IRS Claim"):

  (a) Notwithstanding any other provision in the Plan, if the Debtor, the Reorganized Debtor, or any successor in interest fails to pay when due any payment required to be made on federal taxes, the IRS Claim, or other payment required to be made to the IRS under the terms and provisions of this Plan, the Confirmation Order, or the Internal Revenue Code (26 U.S.C.), or fails to timely file any required federal tax return, or if any other event of default as set forth in the Plan occurs, the IRS shall be entitled to give the Debtor, the Reorganized Debtor and/or any successor in interest and their counsel of record, by United States Certified Mail, written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of the date of said notice and demand, then the following shall apply to the IRS:

    (1)  The administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien and the powers of levy, seizure, and collection as provided under the Internal Revenue Code;

    (2)  The automatic stay of 11 U.S.C. § 362 and any injunction of the Plan or in the Confirmation Order shall, with regard to the IRS only, lift or terminate without further notice or hearing by the Bankruptcy Court, and the entire prepetition liability owed to the IRS, together with any unpaid postpetition tax liabilities, may become due and payable immediately; and

    (3)  The IRS shall have the right to proceed to collect from the Debtor, the Reorganized Debtor or any successor in interest any of the prepetition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.

  (b)  If the IRS declares the Debtor, the Reorganized Debtor, or any successor-in-interest to be in default of the Debtor's, the Reorganized Debtor's and/ or any successor- in-interest's obligations under the Plan, then entire prepetition liability of an IRS' Allowed Claim, together with any unpaid postpetition tax liabilities shall become due and payable

<div align="center">86</div>

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01260-S Document 8-19   Filed 11/08/22   Page 190 of 186   PageID 9424
Case 3:21-cv-40-SJ11   Doc 1043-Filed 05/23/22308   Entered 02/22/21   Date Filed: 04/04/2021 of 161

immediately upon written demand to the Debtor, Reorganized Debtor and/or any successor-in-interest. Failure of the IRS to declare a failure and/or default does not constitute a waiver by the United States or its agency the IRS of the right to declare that the Debtor, Reorganized Debtor, and/or any successor in interest is in default.

(c) The IRS shall only be required to send two notices of failure and/or default, and upon the third event of a failure and/or default, the IRS shall be entitled to proceed as set out in paragraphs (1), (2), and/or (3) herein above without further notice to the Debtor, the Reorganized Debtor, or any successor in interest, or its counsel. The collection statute expiration date for all unpaid federal tax liabilities shall be extended pursuant to non-bankruptcy law.

(d) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor, the Reorganized Debtor, and/or any successor in interest to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor, the Reorganized Debtor and/or any successor in interest to the Internal Revenue Service.

(e) Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, causes of action, rights of setoff or recoupment, rights to appeal tax assessments, or other legal or equitable defenses that the Debtor or Reorganized Debtor have under non-bankruptcy law in connection with any claim, liability or cause of action of the United States and its agency the Internal Revenue Service.

(f) The term "any payment required to be made on federal taxes," as used herein above, is defined as: any payment or deposit required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full. The term "any required tax return," as used herein above, is defined as: any tax return or report required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full.

     **UU.    IRS Proof of Claim.** Notwithstanding anything in the Plan or in this Confirmation Order, until all required tax returns are filed with and processed by the IRS, the IRS's proof of claim will not be deemed fixed for purposes of Section 502 of the Bankruptcy Code and may be amended in order to reflect the IRS' assessment of the Debtor's unpaid priority and general unsecured taxes, penalties and interest.

DOCS_SF:104487.21 36027/002

000855

Appx. 8778

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01220-NS Document 39   Filed 10/06/22 Page 191 of 196 PageID 9425
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Date Filed: 04/14/2021   Page 91 of 161

**VV.    CLO Holdco, Ltd. Settlement**    Notwithstanding anything contained herein to the contrary, nothing in this Order is or is intended to supersede the rights and obligations of either the Debtor or CLO Holdco contained in that certain *Settlement Agreement between CLO Holdco, Ltd., and Highland Capital Management, L.P., dated January 25,2021* [Docket No. 1838-1] (the "CLOH Settlement Agreement").  In the event of any conflict between the terms of this Order and the terms of the CLOH Settlement Agreement, the terms of the CLOH Settlement Agreement will govern.

**WW.    Retention of Jurisdiction.**  The Bankruptcy Court may properly, and upon the Effective Date shall, to the maximum extent permitted under applicable law, retain jurisdiction over all matters arising out of, and related to, this Chapter 11 Case, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

**XX.    Payment of Statutory Fees; Filing of Quarterly Reports.**  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date.  The Reorganized Debtor, the Claimant Trust, and the Litigation Sub-Trust shall be jointly and severally liable for payment of quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 through the entry of the Final Decree for the Debtor or the dismissal or conversion of the Chapter 11 Case.  Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to 28 U.S.C. § 1930.

**YY.    Dissolution of the Committee.**  On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have

Appx 8771
000856

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:23-cv-02260-S    Document 9-19    Filed 11/06/22    Page 192 of 196    PageID 9436
Case 19-34054-sgj11    Doc 1943    Filed 02/22/21    Entered 02/22/21 Date Filed: 04/14/2021    Page 4 of 161

any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). Notwithstanding the foregoing, any Committee member or Professional may serve following the Effective Date with respect to the Claimant Trust Oversight Board or Litigation Sub-Trust. The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent either of the Trustees or to be compensated or reimbursed per the Plan, the Claimant Trust Agreement, and/or Litigation Sub-Trust in connection with such representation.

**ZZ.    Miscellaneous.**    After the Effective Date, the Debtor or Reorganized Debtor, as applicable, shall have no obligation to file with the Bankruptcy Court or serve on any parties reports that the Debtor or Reorganized Debtor, as applicable, were obligated to file under the Bankruptcy Code or a court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed before the Effective Date), ordinary course professional reports, reports to any parties otherwise required under the "first" and "second" day orders entered in this Chapter 11 Case (including any cash collateral financing orders entered in this Chapter 11 Case) and monthly or quarterly reports for Professionals; *provided*, *however*, that

000857

Appx. 8772

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S  Document 18-9    Filed 10/06/22    Page 193 of 196   PageID 984
Case 3:40-90-gj11  Doc 1048 Filed 05/28/21  Entered 02/22/21 Date Filed: 04/14/2021  Page 90 of 161

the Debtor or Reorganized Debtor, as applicable, will comply with the U.S. Trustee's post confirmation reporting requirements.

### ###END OF ORDER###

000858
Appx. 0778