**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | | |
|---|---|---|---|
| **In Re: Highland Capital Management, L.P.** | § | Case No. | **19-34054-SGJ-11** |
| The Charitable DAF Fund LP | § | | |
| | § | | |
| Appellant | § | 22-03052 | |
| vs. | § | | |
| **Highland Capital Management, L.P.** | § | | |
| | § | | |
| Appellee | § | **3:22-CV-02280-S** | |

**[43]  Order granting amended motion to dismiss adversary proceeding with prejudice (related document # 19) Entered on 9/30/2022**

**APPELLANT RECORD**
**VOLUME 6**

SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367

*Counsel for The Charitable DAF Fund, L.P.*
*and CLO Holdco, Ltd.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| THE CHARITABLE DAF FUND, L.P. | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 22-03052-sgj11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | *INDEX* |
| | § | |

## APPELLANT'S SECOND AMENDED STATEMENT OF ISSUES AND
## DESIGNATION OF RECORD ON APPEAL

Pursuant to Rules 8009(a)(1)(A)-(B) and (a)(4) of the Federal Rules of Bankruptcy

Procedure, The Charitable DAF Fund, L.P. ("Appellant") hereby designates the following items

to be included in the record and identifies the following issues with respect to its appeal of the

Order Granting Defendant's Amended Motion to Dismiss Adversary Proceeding [Doc.43] which

was entered by the United States Bankruptcy Court for the Northern District of Texas on
September 30, 2022.

## I.     STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

Whether the Bankruptcy Court erred in granting Defendant's Amended
Motion to Dismiss Adversary Proceeding.

## II.     DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD

1.    Notice of Appeal for Bankruptcy Case Adversary Proceeding No. 21-
03067-sgj11 [Doc. 46].

2.    The judgment, order, or decree appealed from: Order Granting Amended
Motion to Dismiss Adversary Proceeding [Doc. 43].

3.    Any opinion, findings of fact and conclusions of law of the bankruptcy court
relating to the issues on appeal, including transcripts of all oral rulings:
None.

3.    Docket Sheet kept by the Bankruptcy Clerk.

4.    Documents listed below and as described in the Docket Sheet for
Bankruptcy Case Proceeding No. 22-03052-sgj.

| No. | Date Filed | Docket No. | Description/Document Text |
|---|---|---|---|
| 1 | 5/25/22 (7/22/21) | 1 | (18 pgs; 4 docs) Adversary case 22-03052. ORDER REFERRING CASE 3:21-CV-1710-N from U.S District Court for the Northern District of Texas, Dallas Division to U.S. Bankruptcy Court for Northern District of Texas, Dallas Division and Complaint by Charitable DAF Fund, LP against Highland Capital Management, L.P. Fee Amount $350 (Attachments: # 1 Original Complaint # 2 Civil Cover Sheet # 3 Docket Sheet from 21-CV-1710). Nature(s) of suit: 02 (Other (e.g., other actions that would have been brought in state court if unrelated to bankruptcy)). (Okafor, Marcey) |
| 2 | 5/25/22 (10/5/21) | 8 | (8 pgs; 2 docs) MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) Attorney Zachery Z. Annable added to party Highland Capital Management LP(pty: dft) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #8 ON |

| | | | |
|---|---|---|---|
| | | | 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 3 | 5/25/22 (10/5/21) | 9 | (15 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #9 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 4 | 5/25/22 (10/5/21) | 10 | (1012 pgs; 28 docs) Appendix in Support filed by Highland Capital Management LP 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #10 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION](Okafor, Marcey) |
| 5 | 5/25/22 (10/5/21) | 11 | (8 pgs; 2 docs) MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #11 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 6 | 5/25/22 (10/5/21) | 12 | (10 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Annable, Zachery [ORIGINALLY FILED IN 21-CV-1710 AS #12 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 7 | 5/25/22 (10/5/21) | 13 | ((238 pgs; 4 docs) Appendix in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 |

*Handwritten annotations in left margin:* Vol. 2, 000066, 000081, Thru Vol. 6, Vol. 7, 001093, 001101, 001111

Appellant's Second Amended Statement of Issues and Designation of Record on Appeal          Page 3

| | | | AS #13 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
|---|---|---|---|
| 8 | 5/25/22 (10/27/21) | 15 | (3 pgs) RESPONSE filed by Charitable DAF Fund LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Sbaiti, Mazin) [ORIGINALLY FILED IN 21-CV-1710 AS #15 ON 10/27/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 9 | 5/25/22 (11/5/21) | 16 | (7 pgs) REPLY filed by Highland Capital Management LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #16 ON 11/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 10 | 5/25/22 (11/21/21) | 18 | (2 pgs) ORDER re: 8 Motion for Reconsideration. The Court grants Defendant's motion, lifts the stay, and refers this case to Judge Stacey G.C. Jernigan of the United States Bankruptcy Court for the Northern District of Texas, to be adjudicated as a matter related to the Chapter 11 Bankruptcy of HCM., Chapter 11 Case No. 10-34054. The Clerk of this Court and the Clerk of the Bankruptcy Court to which this case is referred are directed to take such actions as are necessary to docket this matter as an Adversary Proceeding associated with the aforementioned consolidated bankruptcy case. (Ordered by Judge David C Godbey on 5/19/2022) (oyh) (Main Document 18 replaced on 5/23/2022) (twd). (Entered: 05/20/2022) [ORIGINALLY FILED IN 21-CV-1710 AS #18 ON 11/21/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (*ERROR IN ENTRY: CORRECT CASE NUMBER IS: 19-34054*) (Okafor, Marcey) |
| 11 | 5/27/22 | 19 | (8 pgs; 2 docs) Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments:# 1 Exhibit A--Proposed Order) (Annable, Zachery) |
| 12 | 5/27/22 | 20 | (12 pgs) Brief in support filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| 13 | 5/27/22 | 21 | (637 pgs) Support/supplemental document *(Appendix in Support of Highland Capital Management, L.P.'s Amended* |

*Handwritten annotations in left margin:*
Vol. 8
001349
001352
001359
001361
001369
001381
Thru Vol. 10

|  |  |  |  | *Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
|---|---|---|---|---|
| Vol. 11 002018 | 14 | 6/1/22 | 23 | (6 pgs; 2 docs) Notice of hearing filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Hearing to be held on 8/3/2022 at 02:30 PM at https://us courts.webex.com/meet/jerniga for 19 and for 19, (Attachments: # 1 Exhibit A)(Hayward, Melissa) |
| 002024 | 15 | 7/5/22 | 30 | (12 pgs) Response opposed to (related document(s): 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) filed by Plaintiff Charitable DAF Fund, LP . (Ecker, C.) (Entered: 07/06/2022) |
| 002036 | 16 | 7/26/22 | 31 | (15 pgs) Reply to (related document(s): 30 Response filed by Plaintiff Charitable DAF Fund, LP) filed by Defendant Highland Capital Management, L.P.. (Annable, Zachery) |
| 002051 Thru Vol 14 | 17 | 7/26/22 | 32 | (865 pgs) Support/supplemental document *(Amended Appendix in Support of Highland Capital Management, L.P.'s Amended Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 21 Support/supplemental document). (Annable, Zachery) |
| Vol. 15 002916 Thru Vol. 18 | 18 | 8/1/22 | 34 | (867 pgs; 23 docs) Witness and Exhibit List *(Reorganized Debtor's Witness and Exhibit List with Respect to Evidentiary Hearing to Be Held on August 3, 2022)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22) (Annable, Zachery) |
| Vol. 19 003783 Thru Vol. 22 | 19 | 8/3/22 | 40 | (1 pg) Court admitted exhibits date of hearing August 3, 2022 (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments: # 1 Exhibit A--Proposed Order)) COURT ADMITTED EXHIBIT 17. COURT TOOK JUDICIAL NOTICE OF EXHIBITS 1-13, 21 AND 22. (Ellison, T.) (Entered: 08/04/2022) |

| | 20 | 9/30/22 | 42 | (28 pgs) Memorandum of opinion regarding Defendant's amended motion to dismiss adversary proceeding (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Entered on 9/30/2022 (Okafor, Marcey) |
| | 21 | 8/4/22 | 41 | 41 Transcript regarding Hearing Held 08/03/2022 (45 pages) RE: Motion to Dismiss Adversary Proceeding (19). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 11/2/2022. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 37 Hearing held on 8/3/2022. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) (Appearances: G. Demo and Z. Annabel for Movant/Highland; J. Bridges for Respondent/Charitable DAF. Evidentiary hearing. Motion granted. Court to issue Opinion and Order.)). Transcript to be made available to the public on 11/2/2022. (Rehling, Kathy) |

*(Handwritten notations in left margin: "Vol. 22", "004651", "004679")*

Dated:  November 28, 2022

Respectfully submitted,

**SBAITI & COMPANY PLLC**

/s/ Mazin A. Sbaiti
**Mazin A. Sbaiti**
Texas Bar No. 24058096
**Jonathan Bridges**
Texas Bar No. 24028835
JPMorgan Chase Tower
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367
E:  mas@sbaitilaw.com
     jeb@sbaitilaw.com

**Counsel for Appellant**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically through the Court's ECF system, which provides notice to all parties of interest, on this 28th day of November, 2022.

*/s/ Mazin A. Sbaiti*

Mazin A. Sbaiti

**Exhibit A**

**Fifth Amended Plan (as Modified)**

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-X Document 149    Filed 12/06/22 Page 126 of 242 PageID 9529
Case 19-34054-sgj11 Doc 3148 Filed 05/23/22 Entered 02/22/21 14:48:41 Page 10 of 161

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
| | ) |
| Debtor. | ) |
| | ) |

## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P. (AS MODIFIED)

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
      ikharasch@pszjlaw.com
      gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
      ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01022-N-SD  Document 9-19  Filed 11/04/22  Page 11 of 242 PageID 5530
Case 19-34054-sgj11  Doc 1943  Filed 02/23/21  Entered 02/23/21 Last Filed: 04/04/21 Page 11 of 161

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ............................................... 1

    A.    Rules of Interpretation, Computation of Time and Governing Law .................... 1

    B.    Defined Terms .......................................................................................... 2

ARTICLE II. ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS ................ 16

    A.    Administrative Expense Claims ........................................................... 16

    B.    Professional Fee Claims ...................................................................... 17

    C.    Priority Tax Claims ............................................................................. 17

ARTICLE III. CLASSIFICATION AND TREATMENT OF  CLASSIFIED CLAIMS AND EQUITY INTERESTS ................................................................ 18

    A.    Summary ............................................................................................. 18

    B.    Summary of Classification and Treatment of Classified Claims and Equity Interests ................................................................................... 18

    C.    Elimination of Vacant Classes ............................................................ 19

    D.    Impaired/Voting Classes ..................................................................... 19

    E.    Unimpaired/Non-Voting Classes ........................................................ 19

    F.    Impaired/Non-Voting Classes ............................................................ 19

    G.    Cramdown ........................................................................................... 19

    H.    Classification and Treatment of Claims and Equity Interests ............ 19

    I.    Special Provision Governing Unimpaired Claims .............................. 24

    J.    Subordinated Claims ........................................................................... 24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ..................................... 24

    A.    Summary ............................................................................................. 24

    B.    The Claimant Trust ............................................................................. 25

        1.    Creation and Governance of the Claimant Trust and Litigation Sub-Trust .............................................................................. 25

        2.    Claimant Trust Oversight Committee .................................... 26

000861
Appx 8776

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01020-N-SD Document 149   Filed 05/25/22 Page 125 of 266 Page ID 563
Case 19-34054-sgj11 Doc 1943 Filed 02/22/21 Entered 02/22/21 Date Filed: 04/04/2021 of 161

|  |  |  | **Page** |
|---|---|---|---|
|  | 3. | Purpose of the Claimant Trust. | 27 |
|  | 4. | Purpose of the Litigation Sub-Trust. | 27 |
|  | 5. | Claimant Trust Agreement and Litigation Sub-Trust Agreement. | 27 |
|  | 6. | Compensation and Duties of Trustees. | 29 |
|  | 7. | Cooperation of Debtor and Reorganized Debtor. | 29 |
|  | 8. | United States Federal Income Tax Treatment of the Claimant Trust. | 29 |
|  | 9. | Tax Reporting. | 30 |
|  | 10. | Claimant Trust Assets. | 30 |
|  | 11. | Claimant Trust Expenses. | 31 |
|  | 12. | Trust Distributions to Claimant Trust Beneficiaries. | 31 |
|  | 13. | Cash Investments. | 31 |
|  | 14. | Dissolution of the Claimant Trust and Litigation Sub-Trust. | 31 |
| C. | The Reorganized Debtor | | 32 |
|  | 1. | Corporate Existence | 32 |
|  | 2. | Cancellation of Equity Interests and Release. | 32 |
|  | 3. | Issuance of New Partnership Interests | 32 |
|  | 4. | Management of the Reorganized Debtor | 33 |
|  | 5. | Vesting of Assets in the Reorganized Debtor | 33 |
|  | 6. | Purpose of the Reorganized Debtor | 33 |
|  | 7. | Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets | 33 |
| D. | Company Action | | 34 |
| E. | Release of Liens, Claims and Equity Interests. | | 35 |
| F. | Cancellation of Notes, Certificates and Instruments. | | 35 |

000862
App. 0777

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01220-N-SD   Document 8-19   Filed 11/26/22   Page 126 of 266   PageID 5532
Case 19-34054-sgj11   Doc 1943   Filed 02/23/21   Entered 02/23/21   Date Filed: 04/14/2021   Page 962 of 161

**Page**

    G.         Cancellation of Existing Instruments Governing Security Interests...................35

    H.         Control Provisions ....................................................................................................35

    I.           Treatment of Vacant Classes ...................................................................................36

    J.          Plan Documents .......................................................................................................36

    K.        Highland Capital Management, L.P. Retirement Plan and Trust .......................36

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
            LEASES .................................................................................................37

    A.         Assumption, Assignment, or Rejection of Executory Contracts and
            Unexpired Leases....................................................................................................37

    B.         Claims Based on Rejection of Executory Contracts or Unexpired
            Leases......................................................................................................................38

    C.         Cure of Defaults for Assumed or Assigned Executory Contracts and
            Unexpired Leases....................................................................................................38

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS..............................................39

    A.         Dates of Distributions .............................................................................................39

    B.         Distribution Agent ...................................................................................................39

    C.         Cash Distributions...................................................................................................40

    D.         Disputed Claims Reserve ........................................................................................40

    E.         Distributions from the Disputed Claims Reserve .................................................40

    F.         Rounding of Payments.............................................................................................40

    G.         *De Minimis* Distribution ........................................................................................41

    H.         Distributions on Account of Allowed Claims.........................................................41

    I.           General Distribution Procedures............................................................................41

    J.          Address for Delivery of Distributions.....................................................................41

    K.        Undeliverable Distributions and Unclaimed Property .........................................41

    L.         Withholding Taxes...................................................................................................42

- iii -

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01022-N-SD Document 149   Filed 10/05/22 Page 142 of 266 PageID 9583
Case 19-34054-sgj11   Doc 1940 Filed 02/22/21   Entered 02/22/21 14:48:03   Page 14 of 161

**Page**

M.   Setoffs ................................................................................. 42

N.   Surrender of Cancelled Instruments or Securities ................................. 42

O.   Lost, Stolen, Mutilated or Destroyed Securities ................................... 43

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS ............................................ 43

A.   Filing of Proofs of Claim ........................................................... 43

B.   Disputed Claims ..................................................................... 43

C.   Procedures Regarding Disputed Claims or Disputed Equity Interests .............. 43

D.   Allowance of Claims and Equity Interests .......................................... 44

  1.   Allowance of Claims .......................................................... 44

  2.   Estimation .................................................................... 44

  3.   Disallowance of Claims ....................................................... 44

ARTICLE VIII. EFFECTIVENESS OF THIS PLAN .......................................... 45

A.   Conditions Precedent to the Effective Date ......................................... 45

B.   Waiver of Conditions ................................................................ 46

C.   Dissolution of the Committee ....................................................... 46

ARTICLE IX. EXCULPATION, INJUNCTION AND RELATED PROVISIONS ............... 47

A.   General .............................................................................. 47

B.   Discharge of Claims ................................................................. 47

C.   Exculpation .......................................................................... 47

D.   Releases by the Debtor .............................................................. 48

E.   Preservation of Rights of Action .................................................... 49

  1.   Maintenance of Causes of Action ............................................. 49

  2.   Preservation of All Causes of Action Not Expressly Settled or
       Released ..................................................................... 49

- iv -

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01022-N-SD  Document 349    Filed 12/08/22    Page 15 of 242  PageID 5934
Case 19-34054-sgj11  Doc 1943  Filed 02/22/21  Entered 02/22/21  Date Filed: 04/04/2021  Page 15 of 161

                                                                                              **Page**

    F.     Injunction .................................................................................................50

    G.     Duration of Injunctions and Stays..........................................................51

    H.     Continuance of January 9 Order .............................................................51

ARTICLE X. BINDING NATURE OF PLAN ...............................................................51

ARTICLE XI. RETENTION OF JURISDICTION ..........................................................52

ARTICLE XII. MISCELLANEOUS PROVISIONS ........................................................54

    A.     Payment of Statutory Fees and Filing of Reports ...................................54

    B.     Modification of Plan ...............................................................................54

    C.     Revocation of Plan ..................................................................................54

    D.     Obligations Not Changed ........................................................................55

    E.     Entire Agreement ....................................................................................55

    F.     Closing of Chapter 11 Case ....................................................................55

    G.     Successors and Assigns ...........................................................................55

    H.     Reservation of Rights ..............................................................................55

    I.      Further Assurances ..................................................................................56

    J.      Severability .............................................................................................56

    K.     Service of Documents .............................................................................56

    L.     Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of
           the Bankruptcy Code................................................................................57

    M.     Governing Law ........................................................................................58

    N.     Tax Reporting and Compliance ...............................................................58

    O.     Exhibits and Schedules ...........................................................................58

    P.     Controlling Document .............................................................................58

Appx. 0720

000865

---

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

---

HIGHLAND CAPITAL MANAGEMENT, L.P., as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), proposes the following chapter 11 plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtor. Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of this Plan. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtor's history, business, results of operations, historical financial information, projections and assets, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents that may be Filed with the Bankruptcy Court that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Documents. All such Exhibits and Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the other provisions of this Plan, and in accordance with the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date.

If this Plan cannot be confirmed, for any reason, then subject to the terms set forth herein, this Plan may be revoked.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME,
## GOVERNING LAW AND DEFINED TERMS

### A.    Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Documents" are references to Articles, Sections, Exhibits and Plan Documents hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01022-N-SD Document 9-19    Filed 11/30/22    Page 17 of 242    PageID 9636
Case 19-34054-sgj11    Doc 1943    Filed 02/22/21    Entered 02/22/21    Page 19 of 161

forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

**B.**    **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Acis*" means collectively Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

2.    "*Administrative Expense Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; and (b) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, and that have not already been paid by the Debtor during the Chapter 11 Case and a Professional Fee Claim.

3.    "*Administrative Expense Claims Bar Date*" means, with respect to any Administrative Expense Claim (other than a Professional Fee Claim) becoming due on or prior to the Effective Date, 5:00 p.m. (prevailing Central Time) on such date that is forty-five days after the Effective Date.

4.    "*Administrative Expense Claims Objection Deadline*" means, with respect to any Administrative Expense Claim, the later of (a) ninety (90) days after the Effective Date and (b) sixty (60) days after the timely Filing of the applicable request for payment of such Administrative Expense Claim; *provided, however,* that the Administrative Expense Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

5.    "*Affiliate*" of any Person means any Entity that, with respect to such Person, either (i) is an "affiliate" as defined in section 101(2) of the Bankruptcy Code, or (ii) is an "affiliate" as defined in Rule 405 of the Securities Act of 1933, or (iii) directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person.  For the purposes of this definition, the term "control" (including, without limitation, the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction in any respect of the management or policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

6.    "*Allowed*" means, with respect to any Claim, except as otherwise provided in the Plan: (a) any Claim that is evidenced by a Proof of Claim that has been timely Filed by the Bar Date, or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy

000867
App. 00762

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01021-N-SD Document 419    Filed 11/16/22 Page 18 of 242 PageID 9637
Case 19-34054-sgj11 Doc 1043 Filed 05/26/20 Entered 03/22/21 16:46:04 Page 18 of
161

Code or a Final Order; (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed and for which no Proof of Claim has been timely filed; (c) a Claim Allowed pursuant to the Plan or an order of the Bankruptcy Court that is not stayed pending appeal; or (d) a Claim that is not Disputed (including for which a Proof of Claim has been timely filed in a liquidated and noncontingent amount that has not been objected to by the Claims Objection Deadline or as to which any such objection has been overruled by Final Order); *provided, however,* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed as set forth above.

7.  "*Allowed Claim or Equity Interest*" means a Claim or an Equity Interest of the type that has been Allowed.

8.  "*Assets*" means all of the rights, titles, and interest of the Debtor, Reorganized Debtor, or Claimant Trust, in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property, the Debtor's books and records, and the Causes of Action.

9.  "*Available Cash*" means any Cash in excess of the amount needed for the Claimant Trust and Reorganized Debtor to maintain business operations as determined in the sole discretion of the Claimant Trustee.

10.  "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510, 544, 545, and 547-553 of the Bankruptcy Code or under similar state or federal statutes and common law, including fraudulent transfer laws

11.  "*Ballot*" means the form(s) distributed to holders of Impaired Claims or Equity Interests entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

12.  "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

13.  "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court having jurisdiction over the Chapter 11 Case.

14.  "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in each case as amended from time to time and as applicable to the Chapter 11 Case.

000868
Appx. 8783

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-S Document 19    Filed 11/26/21    Page 19 of 242 PageID 9638
Case 19-34054-sgj11    Doc 1943    Filed 02/22/21    Entered 02/22/21 16:46:04    Page 20 of
161

15. "*Bar Date*" means the applicable deadlines set by the Bankruptcy Court for the filing of Proofs of Claim against the Debtor as set forth in the Bar Date Order, which deadlines may be or have been extended for certain Claimants by order of the Bankruptcy Court.

16. "*Bar Date Order*" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and (II) Approving the Form and Manner of Notice Thereof* [D.I. 488].

17. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

19. "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Cause of Action includes, without limitation,: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims; (f) the Avoidance Actions, and (g) the Estate Claims.  The Causes of Action include, without limitation, the Causes of Action belonging to the Debtor's Estate listed on the schedule of Causes of Action to be filed with the Plan Supplement.

20. "*CEO/CRO*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer.

21. "*Chapter 11 Case*" means the Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Delaware Bankruptcy Court and transferred to the Bankruptcy Court on December 4, 2019, and styled *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj-11.

22. "*Claim*" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

23. "*Claims Objection Deadline*" means the date that is 180 days after the Confirmation Date; *provided, however,* the Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

000869
Appx. 0784

24.    "*Claimant Trust*" means the trust established for the benefit of the Claimant Trust Beneficiaries on the Effective Date in accordance with the terms of this Plan and the Claimant Trust Agreement.

25.    "*Claimant Trust Agreement*" means the agreement Filed in the Plan Supplement establishing and delineating the terms and conditions of the Claimant Trust.

26.    "*Claimant Trust Assets*" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

27.    "*Claimant Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, including, upon Allowance, Disputed General Unsecured Claims and Disputed Subordinated Claims that become Allowed following the Effective Date, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, post-petition interest from the Petition Date at the Federal Judgment Rate in accordance with the terms and conditions set forth in the Claimant Trust Agreement and all Disputed Claims in Class 8 and Class 9 have been resolved, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

28.    "*Claimant Trustee*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer, or such other Person identified in the Plan Supplement who will act as the trustee of the Claimant Trust in accordance with the Plan, the Confirmation Order, and Claimant Trust Agreement or any replacement trustee pursuant to (and in accordance with) the Claimant Trust Agreement.  The Claimant Trustee shall be responsible for, among other things, monetizing the Estate's investment assets, resolving Claims (other than those Claims assigned to the Litigation Sub-Trust for resolution), and, as the sole officer of New GP LLC, winding down the Reorganized Debtor's business operations.

29.    "*Claimant Trust Expenses*" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Trustees on account of administration of the Claimant Trust, including any reasonable administrative fees and expenses, reasonable attorneys' fees and expenses, reasonable insurance costs, taxes, reasonable escrow expenses, and other expenses.

30.    "*Claimant Trust Interests*" means the non-transferable interests in the Claimant Trust that are issued to the Claimant Trust Beneficiaries pursuant to this Plan; *provided*, *however*, Holders of Class A Limited Partnership Interests, Class B Limited Partnership Interests, and Class C Limited Partnership Interests will not be deemed to hold Claimant Trust Interests

5

000870
Appx. 9785

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-X Document 19   Filed 11/24/21   Page 21 of 242   PageID 9640
Case 19-34054-sgj11   Doc 1943   Filed 03/23/21   Entered 03/23/21 16:40:04   Page 20 of
161

unless and until the Contingent Claimant Trust Interests distributed to such Holders vest in accordance with the terms of this Plan and the Claimant Trust Agreement.

31.     "*Claimant Trust Oversight Committee*" means the committee of five Persons established pursuant to ARTICLE IV of this Plan to oversee the Claimant Trustee's performance of its duties and otherwise serve the functions described in this Plan and the Claimant Trust Agreement.

32.     "*Class*" means a category of Holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to section 1122(a) of the Bankruptcy Code.

33.     "*Class A Limited Partnership Interest*" means the Class A Limited Partnership Interests as defined in the Limited Partnership Agreement held by The Dugaboy Investment Trust, Mark and Pamela Okada Family Trust – Exempt Trust 2, Mark and Pamela Okada – Exempt Descendants' Trust, and Mark Kiyoshi Okada, and the General Partner Interest.

34.     "*Class B Limited Partnership Interest*" means the Class B Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

35.      "*Class B/C Limited Partnership Interests*" means, collectively, the Class B Limited Partnership and Class C Limited Partnership Interests.

36.     "*Class C Limited Partnership Interest*" means the Class C Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

37.     "*Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102(a)(1) on October 29, 2019 [D.I. 65], consisting of (i) the Redeemer Committee of Highland Crusader Fund, (ii) Meta-e Discovery, (iii) UBS, and (iv) Acis.

38.     "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

39.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

40.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

41.     "*Convenience Claim*" means any prepetition, liquidated, and unsecured Claim against the Debtor that as of the Confirmation Date is less than or equal to $1,000,000 or any General Unsecured Claim that makes the Convenience Class Election.  For the avoidance of doubt, the Reduced Employee Claims will be Convenience Claims.

Appx. 0786
000871

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01220-S Document 119    Filed 11/05/21    Page 23 of 242    PageID 9641
Case 19-34054-sgj11 Doc 1943 Filed 02/22/21    Entered 02/22/21 16:48:04    Page 21 of
161

42.     "*Convenience Claim Pool*" means the $13,150,000 in Cash that shall be available upon the Effective Date for distribution to Holders of Convenience Claims under the Plan as set forth herein.  Any Cash remaining in the Convenience Claim Pool after all distributions on account of Convenience Claims have been made will be transferred to the Claimant Trust and administered as a Claimant Trust Asset.

43.     "*Convenience Class Election*" means the option provided to each Holder of a General Unsecured Claim that is a liquidated Claim as of the Confirmation Date on their Ballot to elect to reduce their claim to $1,000,000 and receive the treatment provided to Convenience Claims.

44.     "*Contingent Claimant Trust Interests*" means the contingent Claimant Trust Interests to be distributed to Holders of Class A Limited Partnership Interests, Holders of Class B Limited Partnership Interests, and Holders of Class C Limited Partnership Interests in accordance with this Plan, the rights of which shall not vest, and consequently convert to Claimant Trust Interests, unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been paid indefeasibly in full, plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, all accrued and unpaid post-petition interest from the Petition Date at the Federal Judgment Rate and all Disputed Claims in Class 8 and Class 9 have been resolved.  As set forth in the Claimant Trust Agreement, the Contingent Claimant Trust Interests distributed to the Holders of Class A Limited Partnership Interests will be subordinated to the Contingent Claimant Trust Interests distributed to the Holders of Class B/C Limited Partnership Interests.

45.     "*Debtor*" means Highland Capital Management, L.P. in its capacity as debtor and debtor in possession in the Chapter 11 Case.

46.     "*Delaware Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

47.     "*Disclosure Statement*" means that certain *Disclosure Statement for Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

48.     "*Disputed*" means with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed.

49.     "*Disputed Claims Reserve*" means the appropriate reserve(s) or account(s) to be established on the Initial Distribution Date and maintained by the Claimant Trustee for distributions on account of Disputed Claims that may subsequently become an Allowed Claim.

50.     "*Disputed Claims Reserve Amount*" means, for purposes of determining the Disputed Claims Reserve, the Cash that would have otherwise been distributed to a Holder of a Disputed Claim at the time any distributions of Cash are made to the Holders of Allowed Claims. The amount of the Disputed Claim upon which the Disputed Claims Reserve is calculated shall be:  (a) the amount set forth on either the Schedules or the filed Proof of Claim, as applicable; (b) the amount agreed to by the Holder of the Disputed Claim and the Claimant Trustee or Reorganized

Appx. 0785
000872

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S Document 19  Filed 12/06/22 Page 236 of 242  PageID 6742
Case 3:21-cv-03090-S Document 43 Filed 05/22/23  Page 23 of 242  PageID 10205
161

Debtor, as applicable; (c) the amount ordered by the Bankruptcy Court if it enters an order disallowing, in whole or in part, a Disputed Claim; or (d) as otherwise ordered by the Bankruptcy Court, including an order estimating the Disputed Claim.

51.    "*Distribution Agent*" means the Claimant Trustee, or any party designated by the Claimant Trustee to serve as distribution agent under this Plan.

52.    "*Distribution Date*" means the date or dates determined by the Reorganized Debtor or the Claimant Trustee, as applicable, on or after the Initial Distribution Date upon which the Distribution Agent shall make distributions to holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

53.    "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions hereunder, which date shall be the Effective Date or such later date determined by the Bankruptcy Court.

54.    "*Effective Date*" means the Business Day that this Plan becomes effective as provided in ARTICLE VIII hereof.

55.    "*Employees*" means the employees of the Debtor set forth in the Plan Supplement.

56.    "*Enjoined Parties*" means (i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons of each of the foregoing.

57.    "*Entity*" means any "entity" as defined in section 101(15) of the Bankruptcy Code and also includes any Person or any other entity.

58.    "*Equity Interest*" means any Equity Security in the Debtor, including, without limitation, all issued, unissued, authorized or outstanding partnership interests, shares, of stock or limited company interests, the Class A Limited Partnership Interests, the Class B Limited Partnership Interests, and the Class C Limited Partnership Interests.

59.    "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

60.    "*Estate*" means the bankruptcy estate of the Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

61.    "*Estate Claims*" has the meaning given to it in <u>Exhibit A</u> to the *Notice of Final Term Sheet* [D.I. 354].

000873
Appx. 0786

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01070-SD Document 14-19   Filed 11/07/22 Page 24 of 242 PageID 984
Case 19-34054-sgj11   Doc 1043   Filed 05/28/20   Entered 03/22/21 16:16:04   Page 20 of
161

62.    "*Exculpated Parties*" means, collectively, (i) the Debtor and its successors and assigns, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

63.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

64.    "*Exhibit*" means an exhibit annexed hereto or to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

65.    "*Federal Judgment Rate*" means the post-judgment interest rate set forth in 28 U.S.C. § 1961 as of the Effective Date.

66.    "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

67.    "*Final Order*" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

68.    "*Frontier Secured Claim*" means the loan from Frontier State Bank to the Debtor in the principal amount of $7,879,688.00 made pursuant to that certain First Amended and Restated Loan Agreement, dated March 29, 2018.

000874
Appx. 0780

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Exhibit 19   Page 25 of 242
Case 3:21-cv-01010-X-SD Document 1-49   Filed 11/08/22   Page 25 of 242   PageID 9944
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:16:04   Page 25 of
161

69.     "*General Partner Interest*" means the Class A Limited Partnership Interest held by Strand, as the Debtor's general partner.

70.     "*General Unsecured Claim*" means any prepetition Claim against the Debtor that is not Secured and is not a/an: (a) Administrative Expense Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) Priority Non-Tax Claim; or (e) Convenience Claim.

71.     "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

72.     "*GUC Election*" means the option provided to each Holder of a Convenience Claim on their Ballot to elect to receive the treatment provided to General Unsecured Claims.

73.     "*Holder*" means an Entity holding a Claim against, or Equity Interest in, the Debtor.

74.     "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

75.     "*Independent Directors*" means John S. Dubel, James P. Seery, Jr., and Russell Nelms, the independent directors of Strand appointed on January 9, 2020, and any additional or replacement directors of Strand appointed after January 9, 2020, but prior to the Effective Date.

76.     "*Initial Distribution Date*" means, subject to the "Treatment" sections in ARTICLE III hereof, the date that is on or as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims and Equity Interests.

77.     "*Insurance Policies*" means all insurance policies maintained by the Debtor as of the Petition Date.

78.     "*Jefferies Secured Claim*" means any Claim in favor of Jefferies, LLC, arising under that certain Prime Brokerage Customer Agreement, dated May 24, 2013, between the Debtor and Jefferies, LLC, that is secured by the assets, if any, maintained in the prime brokerage account created by such Prime Brokerage Customer Agreement.

79.     "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

80.     "*Limited Partnership Agreement*" means that certain Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 24, 2015, as amended.

000875

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01020-S   Document 49   Filed 09/02/22   Page 263 of 242   PageID 9745
Case 19-34054-sgj11   Doc 1943   Filed 05/28/20   Entered 05/28/22 16:16:04   Page 26 of
161

81.     "*Litigation Sub-Trust*" means the sub-trust established within the Claimant Trust or as a wholly –owned subsidiary of the Claimant Trust on the Effective Date in each case in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement and Claimant Trust Agreement.  As set forth in the Litigation Sub-Trust Agreement, the Litigation Sub-Trust shall hold the Claimant Trust Assets that are Estate Claims.

82.     "*Litigation Sub-Trust Agreement*" means the agreement filed in the Plan Supplement establishing and delineating the terms and conditions of the Litigation Sub-Trust.

83.     "*Litigation Trustee*" means the trustee appointed by the Committee and reasonably acceptable to the Debtor who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

84.     "*Managed Funds*" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to this Plan.

85.     "*New Frontier Note*" means that promissory note to be provided to the Allowed Holders of Class 2 Claims under this Plan and any other documents or security agreements securing the obligations thereunder.

86.     "*New GP LLC*" means a limited liability company incorporated in the State of Delaware pursuant to the New GP LLC Documents to serve as the general partner of the Reorganized Debtor on the Effective Date.

87.     "*New GP LLC Documents*" means the charter, operating agreement, and other formational documents of New GP LLC.

88.     "*Ordinary Course Professionals Order*" means that certain *Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course* [D.I. 176].

89.     "*Other Unsecured Claim*" means any Secured Claim other than the Jefferies Secured Claim and the Frontier Secured Claim.

90.     "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, individual, corporation, company, general or limited partnership, limited liability company, unincorporated organization firm, trust, estate, business trust, association, joint stock company, joint venture, government, governmental agency, Governmental Unit or any subdivision thereof, the United States Trustee, or any other entity, whether acting in an individual, fiduciary or other capacity.

91.     "Petition *Date*" means October 16, 2019.

92.     "*Plan*" means this *Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, including the Exhibits and the Plan Documents and all supplements, appendices,

000876
Appx. 0721

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01079-D Document 14-9  Filed 10/06/22 Page 27 of 242 PageID 9746
Case 19-34054-sgj11  Doc 1943  Filed 02/22/21  Entered 02/22/21 16:16:04  Page 27 of
161

and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

93.    "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Allowed Equity Interests under this Plan.

94.    "*Plan Documents*" means any of the documents, other than this Plan, but including, without limitation, the documents to be filed with the Plan Supplement, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, and as may be modified consistent with the terms hereof with the consent of the Committee.

95.    "*Plan Supplement*" means the ancillary documents necessary for the implementation and effectuation of the Plan, including, without limitation, (i) the form of Claimant Trust Agreement, (ii) the forms of New GP LLC Documents, (iii) the form of Reorganized Limited Partnership Agreement, (iv) the Sub-Servicer Agreement (if applicable), (v) the identity of the initial members of the Claimant Trust Oversight Committee, (vi) the form of Litigation Sub-Trust Agreement; (vii) the schedule of retained Causes of Action; (viii) the New Frontier Note, (ix) the schedule of Employees; (x) the form of Senior Employee Stipulation,; and (xi) the schedule of Executory Contracts and Unexpired Leases to be assumed pursuant to this Plan, which, in each case, will be in form and substance reasonably acceptable to the Debtor and the Committee.

96.    "*Priority Non-Tax Claim*" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, including any Claims for paid time-off entitled to priority under section 507(a)(4) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

97.    "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim or Equity Interest in a particular Class bears to (b) the aggregate Allowed amount of all Claims or Equity Interests in such Class.

98.    "*Professional*" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to sections 327, 328, 330, 331, 363, 503(b), 503(b)(4) and 1103 of the Bankruptcy Code.

99.    "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code, with respect to a particular Professional, for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

100.    "*Professional Fee Claims Bar Date*" means with respect to Professional Fee Claims, the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

101.    "*Professional Fee Claims Objection Deadline*" means, with respect to any Professional Fee Claim, thirty (30) days after the timely Filing of the applicable request for payment of such Professional Fee Claim.

000877

Appx. 0792

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01026-S Document 119  Filed 11/05/21 Page 280 of 326 PageID 9747
Case 19-34054-sgj11  Doc 1943-1 Filed 02/03/21  Page 04/22/21 16:8:16 04/20/21 of
161

102.    "*Professional Fee Reserve*" means the reserve established and funded by the Claimant Trustee pursuant this Plan to provide sufficient funds to satisfy in full unpaid Allowed Professional Fee Claims.

103.    "*Proof of Claim*" means a written proof of Claim or Equity Interest Filed against the Debtor in the Chapter 11 Case.

104.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

105.    "*Protected Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

106.    "*PTO Claims*" means any Claim for paid time off in favor of any Debtor employee in excess of the amount that would qualify as a Priority Non-Tax Claim under section 507(a)(4) of the Bankruptcy Code.

107.    "*Reduced Employee Claims*" has the meaning set forth in ARTICLE IX.D.

108.    "*Reinstated*" means, with respect to any Claim or Equity Interest, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Equity Interest in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim or Equity Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Equity Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Equity Interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder

000878

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01022-N-S   Document 349   Filed 11/26/22   Page 29 of 242   PageID 9734
Case 19-34054-sgj11   Doc 1943   Filed 05/28/21   Entered 04/22/21 16:35:06   Page 29 of
161

of such Claim or Equity Interest (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

109.    "*Rejection Claim*" means any Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease pursuant to the Confirmation Order.

110.    "*Related Entity*" means, without duplication, (a) Dondero, (b) Mark Okada ("Okada"), (c) Grant Scott ("Scott"), (d) Hunter Covitz ("Covitz"), (e) any entity or person that was an insider of the Debtor on or before the Petition Date under Section 101(31) of the Bankruptcy Code, including, without limitation, any entity or person that was a non-statutory insider, (f) any entity that, after the Effective Date, is an insider or Affiliate of one or more of Dondero, Okada, Scott, Covitz, or any of their respective insiders or Affiliates, including, without limitation, The Dugaboy Investment Trust, (g) the Hunter Mountain Investment Trust and any of its direct or indirect parents, (h) the Charitable Donor Advised Fund, L.P., and any of its direct or indirect subsidiaries, and (i) Affiliates of the Debtor and any other Entities listed on the Related Entity List.

111.    "*Related Entity List*" means that list of Entities filed with the Plan Supplement.

112.    "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

113.    "*Released Parties*" means, collectively, (i) the Independent Directors; (ii) Strand (solely from the date of the appointment of the Independent Directors through the Effective Date); (iii) the CEO/CRO; (iv) the Committee; (v) the members of the Committee (in their official capacities), (vi) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case; and (vii) the Employees.

114.    "*Reorganized Debtor*" means the Debtor, as reorganized pursuant to this Plan on and after the Effective Date.

115.    "*Reorganized Debtor Assets*" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust.  For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

116.    "*Reorganized Limited Partnership Agreement*" means that certain Fifth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., by and among the Claimant Trust, as limited partner, and New GP LLC, as general partner, Filed with the Plan Supplement.

000879
Appx. 9784

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01080-X Document 349   Filed 11/05/22   Page 30 of 242   PageID 7849
Case 19-34054-sgj11   Doc 1943   Filed 05/25/22   Entered 04/22/21 16:48:06   Page 01 of
161

117.    "*Restructuring*" means the restructuring of the Debtor, the principal terms of which are set forth in this Plan and the Disclosure Statement.

118.    "*Retained Employee Claim*" means any Claim filed by a current employee of the Debtor who will be employed by the Reorganized Debtor upon the Effective Date.

119.    "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtor with the Bankruptcy Court [D.I. 247].

120.    "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Debtor's Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the interest of the Debtor's Estate in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

121.    "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

122.    "*Senior Employees*" means the senior employees of the Debtor Filed in the Plan Supplement.

123.    "*Senior Employee Stipulation*" means the agreements filed in the Plan Supplement between each Senior Employee and the Debtor.

124.    "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

125.    "*Statutory Fees*" means fees payable pursuant to 28 U.S.C. § 1930.

126.    "*Strand*" means Strand Advisors, Inc., the Debtor's general partner.

127.    "*Sub-Servicer*" means a third-party selected by the Claimant Trustee to service or sub-service the Reorganized Debtor Assets.

128.    "*Sub-Servicer Agreement*" means the agreement that may be entered into providing for the servicing of the Reorganized Debtor Assets by the Sub-Servicer.

129.    "*Subordinated Claim*" means any Claim that is subordinated to the Convenience Claims and General Unsecured Claims pursuant to an order entered by the Bankruptcy Court (including any other court having jurisdiction over the Chapter 11 Case) after notice and a hearing.


000880

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01020-N-SD Document 149    Filed 12/16/22    Page 31 of 242    PageID 9750
Case 34-09009-sgj11 Document 143-1 Filed 05/28/2208    Page 04/22/21 16:48:06    Page of 213 of
161

130.    "*Subordinated Claimant Trust Interests*" means the Claimant Trust Interests to be distributed to Holders of Allowed Subordinated Claims under the Plan, which such interests shall be subordinated in right and priority to the Claimant Trust Interests distributed to Holders of Allowed General Unsecured Claims as provided in the Claimant Trust Agreement.

131.    "*Trust Distribution*" means the transfer of Cash or other property by the Claimant Trustee to the Claimant Trust Beneficiaries.

132.    "*Trustees*" means, collectively, the Claimant Trustee and Litigation Trustee.

133.    "*UBS*" means, collectively, UBS Securities LLC and UBS AG London Branch.

134.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

135.    "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

136.    "*Voting Deadline*" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the under the Order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125(a) of the Bankruptcy Code and authorizing the Debtor to solicit acceptances of the Plan.

137.    "*Voting Record Date*" means November 23, 2020.

## ARTICLE II.
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

### A.    Administrative Expense Claims

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Administrative Expense Claim either (i) payment in full in Available Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtor or the Reorganized Debtor, as applicable, and such Holder; *provided, however,* that Administrative Expense Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

If an Administrative Expense Claim (other than a Professional Fee Claim) is not paid by the Debtor in the ordinary course, the Holder of such Administrative Expense Claim must File, on

000881

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01026-N-D Document 49    Filed 04/06/22    Page 32 of 42    Page ID 9761
Case 19-34054-sgj11    Doc 1043    Filed 05/26/20    Entered 04/22/21 16:48 04/2021 of
161

or before the applicable Administrative Expense Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for allowance and payment of such Administrative Expense Claim.

Objections to any Administrative Expense Claim (other than a Professional Fee Claim) must be Filed and served on the Debtor or the Reorganized Debtor, as applicable, and the party asserting such Administrative Expense Claim by the Administrative Expense Claims Objection Deadline.

## B.    Professional Fee Claims

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must submit fee applications under sections 327, 328, 329,330, 331, 503(b) or 1103 of the Bankruptcy Code and, upon entry of an order of the Bankruptcy Court granting such fee applications, such Professional Fee Claim shall promptly be paid in Cash in full to the extent provided in such order.

Professionals or other Entities asserting a Professional Fee Claim for services rendered on or prior to the Effective Date must File, on or before the Professional Fee Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated as requiring such notice by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim.

Objections to any Professional Fee Claim must be Filed and served on the Debtor or Reorganized Debtor, as applicable, and the party asserting the Professional Fee Claim by the Professional Fee Claim Objection Deadline.  Each Holder of an Allowed Professional Fee Claim will be paid by the Debtor or the Claimant Trust, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

On the Effective Date, the Claimant Trustee shall establish the Professional Fee Reserve. The Professional Fee Reserve shall vest in the Claimant Trust and shall be maintained by the Claimant Trustee in accordance with the Plan and Claimant Trust Agreement.  The Claimant Trust shall fund the Professional Fee Reserve on the Effective Date in an estimated amount determined by the Debtor in good faith prior to the Confirmation Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date.  Following the payment of all Allowed Professional Fee Claims, any excess funds in the Professional Fee Reserve shall be released to the Claimant Trust to be used for other purposes consistent with the Plan and the Claimant Trust Agreement.

## C.    Priority Tax Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor:  (a) Cash in an amount of a total value as of the Effective Date of the Plan equal to the amount of such Allowed

000882

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01270-S Document 119   Filed 12/16/22   Page 34 of 242   PageID 9752
Case 3:09009-sgj11 Doc 1043  Filed 05/26/20   Entered 04/22/21 16:46:06   Page 21 of
161

Priority Tax Claim in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (b) if paid over time, payment of such Allowed Priority Tax Claim in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; or (c) such other less favorable treatment as agreed to in writing by the Debtor and such Holder.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtor may prepay any or all such Claims at any time, without premium or penalty.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.    Summary**

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled (in each case, by the Debtor or any other Entity) prior to the Effective Date.

**B.    Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Jefferies Secured Claim | Unimpaired | Deemed to Accept |
| 2 | Frontier Secured Claim | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Priority Non-Tax | Unimpaired | Deemed to Accept |
| 5 | Retained Employee Claim | Unimpaired | Deemed to Accept |
| 6 | PTO Claims | Unimpaired | Deemed to Accept |
| 7 | Convenience Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Subordinated Claims | Impaired | Entitled to Vote |
| 10 | Class B/C Limited Partnership Interests | Impaired | Entitled to Vote |
| 11 | Class A Limited Partnership Interests | Impaired | Entitled to Vote |

000883
App. 0788

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-N-SD Document 10-9 Filed 12/06/22 Page 344 of 426 PageID 9753
Case 21-30589-sgj11 Document 43 Filed 05/26/22 Entered 04/22/21 16:16:04 Page 216 of
161

**C.**     **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**D.**     **Impaired/Voting Classes**

Claims and Equity Interests in Class 2 and Class 7 through Class 11 are Impaired by the Plan, and only the Holders of Claims or Equity Interests in those Classes are entitled to vote to accept or reject the Plan.

**E.**     **Unimpaired/Non-Voting Classes**

Claims in Class 1 and Class 3 through Class 6 are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

**F.**     **Impaired/Non-Voting Classes**

There are no Classes under the Plan that will not receive or retain any property and no Classes are deemed to reject the Plan.

**G.**     **Cramdown**

If any Class of Claims or Equity Interests is deemed to reject this Plan or does not vote to accept this Plan, the Debtor may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**H.**     **Classification and Treatment of Claims and Equity Interests**

1.     *Class 1 – Jefferies Secured Claim*

- *Classification*: Class 1 consists of the Jefferies Secured Claim.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor:  (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.  Each Holder of an Allowed Class 1 Claim will retain the Liens securing its Allowed Class 1 Claim as of the Effective Date until

000884

full and final payment of such Allowed Class 1 Claim is made as provided herein.

- *Impairment and Voting*: Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

2. *Class 2 – Frontier Secured Claim*

- *Classification*: Class 2 consists of the Frontier Secured Claim.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim: (A) Cash in an amount equal to all accrued but unpaid interest on the Frontier Claim through and including the Effective Date and (B) the New Frontier Note. The Holder of an Allowed Class 2 Claim will retain the Liens securing its Allowed Class 2 Claim as of the Effective Date until full and final payment of such Allowed Class 2 Claim is made as provided herein.

- *Impairment and Voting*: Class 2 is Impaired, and the Holders of Class 2 Claims are entitled to vote to accept or reject this Plan.

3. *Class 3 – Other Secured Claims*

- *Classification*: Class 3 consists of the Other Secured Claims.

- *Allowance and Treatment*: On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 3 Claim is Allowed on the Effective Date or (ii) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 3 Claim, at the option of the Debtor, or following the Effective Date, the Reorganized Debtor or Claimant Trustee, as applicable, (i) Cash equal to such Allowed Other Secured Claim, (ii) the collateral securing its Allowed Other Secured Claim, plus postpetition interest to the extent required under Bankruptcy Code Section 506(b), or (iii) such other treatment rendering such Claim Unimpaired.

- *Impairment and Voting*: Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

000885

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01228-N-SD Document 1-19  Filed 04/25/22  Page 36 of 242 PageID 885
Case 3:22-cv-01228-N-SD Document 1-19  Filed 04/25/22  Page 36 of 242 PageID 885
Case 21-40539-sgj11 Doc 1043 Filed 05/26/23 Entered 04/22/21 16:16:04 Page 36 of
161

4.     _Class 4 – Priority Non-Tax Claims_

- _Classification_:  Class 4 consists of the Priority Non-Tax Claims.

- _Allowance and Treatment_:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 4 Claim is Allowed on the Effective Date or (ii) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, each Holder of an Allowed Class 4 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 4 Claim Cash equal to the amount of such Allowed Class 4 Claim.

- _Impairment and Voting_:  Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

5.     _Class 5 – Retained Employee Claims_

- _Classification_:  Class 5 consists of the Retained Employee Claims.

- _Allowance and Treatment_:  On or as soon as reasonably practicable after the Effective Date, each Allowed Class 5 Claim will be Reinstated.

- _Impairment and Voting_:  Class 5 is Unimpaired, and the Holders of Class 5 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 5 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

6.     _Class 6 – PTO Claims_

- _Classification_:  Class 6 consists of the PTO Claims.

- _Allowance and Treatment_:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 6 Claim is Allowed on the Effective Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 6 Claim Cash equal to the amount of such Allowed Class 6 Claim.

- _Impairment and Voting_:  Class 6 is Unimpaired, and the Holders of Class 6 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 6

Appx. 0881
000886

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01080-S Document 349   Filed 05/06/22   Page 37 of 242   PageID 9856
Case 19-34054-sgj11   Doc 1043   Filed 05/06/22   Entered 04/22/22 16:16:04   Page 29 of
161

Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

7.    *Class 7 – Convenience Claims*

- *Classification*:  Class 7 consists of the Convenience Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 7 Claim is Allowed on the Effective Date or (ii) the date on which such Class 7 Claim becomes an Allowed Class 7 Claim, each Holder of an Allowed Class 7 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim (1) the treatment provided to Allowed Holders of Class 8 General Unsecured Claims if the Holder of such Class 7 Claim makes the GUC Election or (2) an amount in Cash equal to the lesser of (a) 85% of the Allowed amount of such Holder's Class 7 Claim or (b) such Holder's Pro Rata share of the Convenience Claims Cash Pool.

- *Impairment and Voting*:  Class 7 is Impaired, and the Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

8.    *Class 8 – General Unsecured Claims*

- *Classification*:  Class 8 consists of the General Unsecured Claims.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Claimant Trust Interests, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing, or (iii) the treatment provided to Allowed Holders of Class 7 Convenience Claims if the Holder of such Class 8 General Unsecured Claim is eligible and makes a valid Convenience Class Election.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 8 is Impaired, and the Holders of Class 8 Claims are entitled to vote to accept or reject this Plan.

000887
Appx 0882

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01228-S Document 1-49    Filed 05/25/22    Page 35 of 242    PageID 9857
Case 19-34054-sgj11    Doc 1943    Filed 02/22/21    Entered 02/22/21 16:04:20    Page 40 of
161

9.    *Class 9 – Subordinated Claims*

- *Classification*:  Class 9 consists of the Subordinated Claims.

    *Treatment*:  On the Effective Date, Holders of Subordinated Claims  shall receive either (i) their Pro Rata share of the Subordinated Claimant Trust Interests or, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee may agree upon in writing.

    Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Subordinated Claim, except with respect to any Subordinated Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 9 is Impaired, and the Holders of Class 9 Claims are entitled to vote to accept or reject this Plan.

10.    *Class 10 – Class B/C Limited Partnership Interests*

- *Classification*:  Class 10 consists of the Class B/C Limited Partnership Interests.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

    Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class B/C Limited Partnership Interest Claim, except with respect to any Class B/C Limited Partnership Interest Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 10 is Impaired, and the Holders of Class 10 Claims are entitled to vote to accept or reject this Plan.

11.    *Class 11 – Class A Limited Partnership Interests*

- *Classification*:  Class 11 consists of the Class A Limited Partnership Interests.

000888    Appx 00888

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 11 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class A Limited Partnership Interest, except with respect to any Class A Limited Partnership Interest Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 11 is Impaired, and the Holders of Class 11 Claims are entitled to vote to accept or reject this Plan.

## I.    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

## J.    **Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Upon written notice and hearing, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to seek entry of an order by the Bankruptcy Court to re-classify or to subordinate any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

### ARTICLE IV.
### MEANS FOR IMPLEMENTATION OF THIS PLAN

## A.    **Summary**

As discussed in the Disclosure Statement, the Plan will be implemented through (i) the Claimant Trust, (ii) the Litigation Sub-Trust, and (iii) the Reorganized Debtor.

On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust. The Claimant Trust, as limited


000889

partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner. The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited Partnership Agreement. Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC. The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to this Plan and the Claimant Trust Agreement, and the Litigation Trustee will pursue, if applicable, the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan. The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds.

Although the Reorganized Debtor will manage the wind down of the Managed Funds, it is currently anticipated that neither the Reorganized Debtor nor the Claimant Trust will assume or assume and assign the contracts between the Debtor and certain Related Entities pursuant to which the Debtor provides shared services and sub-advisory services to those Related Entities. The Debtor believes that the continued provision of the services under such contracts will not be cost effective.

The Reorganized Debtor will distribute all proceeds from the wind down to the Claimant Trust, as its limited partner, and New GP LLC, as its general partner, in each case in accordance with the Reorganized Limited Partnership Agreement. Such proceeds, along with the proceeds of the Claimant Trust Assets, will ultimately be distributed to the Claimant Trust Beneficiaries as set forth in this Plan and the Claimant Trust Agreement.

**B.    The Claimant Trust**[2]

1.    *Creation and Governance of the Claimant Trust and Litigation Sub-Trust.*

On or prior to the Effective Date, the Debtor and the Claimant Trustee shall execute the Claimant Trust Agreement and shall take all steps necessary to establish the Claimant Trust and the Litigation Sub-Trust in accordance with the Plan in each case for the benefit of the Claimant Trust Beneficiaries. Additionally, on or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement, and

---

[2] In the event of a conflict between the terms of this summary and the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, the terms of the Claimant Trust Agreement or the Litigation Sub-Trust Agreement, as applicable, shall control.

000890
Appx 0885

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01022-N-SD    Document 19    Filed 12/14/22    Page 415 of 426    PageID 9860
Case 19-34054-sgj11    Doc 1943-1    Filed 02/28/23    Page 03/22/21 16:16:04    Page 23 of
161

such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax.

The Claimant Trustee shall be the exclusive trustee of the Claimant Trust Assets, excluding the Estate Claims and the Litigation Trustee shall be the exclusive trustee with respect to the Estate Claims in each case for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Claimant Trust Assets. The Claimant Trustee shall also be responsible for resolving all Claims and Equity Interests in Class 8 through Class 11, under the supervision of the Claimant Trust Oversight Committee.

On the Effective Date, the Claimant Trustee and Litigation Trustee shall execute the Litigation Sub-Trust Agreement and shall take all steps necessary to establish the Litigation Sub-Trust. Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims. The Claimant Trust shall be governed by the Claimant Trust Agreement and administered by the Claimant Trustee. The powers, rights, and responsibilities of the Claimant Trustee shall be specified in the Claimant Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting to the Claimant Trust Oversight Committee as may be set forth in the Claimant Trust Agreement. The Claimant Trust shall hold and distribute the Claimant Trust Assets (including the proceeds from the Estate Claims, if any) in accordance with the provisions of the Plan and the Claimant Trust Agreement; *provided* that the Claimant Trust Oversight Committee may direct the Claimant Trust to reserve Cash from distributions as necessary to fund the Claimant Trust and Litigation Sub-Trust. Other rights and duties of the Claimant Trustee and the Claimant Trust Beneficiaries shall be as set forth in the Claimant Trust Agreement. After the Effective Date, neither the Debtor nor the Reorganized Debtor shall have any interest in the Claimant Trust Assets.

The Litigation Sub-Trust shall be governed by the Litigation Sub-Trust Agreement and administered by the Litigation Trustee. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Sub-Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting as may be set forth in the Litigation Sub-Trust Agreement. The Litigation Sub-Trust shall investigate, prosecute, settle, or otherwise resolve the Estate Claims in accordance with the provisions of the Plan and the Litigation Sub-Trust Agreement and shall distribute the proceeds therefrom to the Claimant Trust for distribution. Other rights and duties of the Litigation Trustee shall be as set forth in the Litigation Sub-Trust Agreement.

2.    *Claimant Trust Oversight Committee*

The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) and the Litigation Sub-Trust will be overseen by the Claimant Trust Oversight Committee, subject to the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as applicable.

Appx. 0606

000891

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01022-N-SD Document 319 Filed 11/05/21 Page 455 of 1266 PageID 9861
Case 19-34054-sgj11 Document 143 Filed 05/28/20 Page 03/22/21 16:16:04 Page 01 of
161

The Claimant Trust Oversight Committee will initially consist of five members.  Four of the five members will be representatives of the members of the Committee:  (i) the Redeemer Committee of Highland Crusader Fund, (ii) UBS, (iii) Acis, and (iv) Meta-e Discovery.  The fifth member will be an independent, natural Person chosen by the Committee and reasonably acceptable to the Debtor.  The members of the Claimant Trust Oversight Committee may be replaced as set forth in the Claimant Trust Agreement.  The identity of the members of the Claimant Trust Oversight Committee will be disclosed in the Plan Supplement.

As set forth in the Claimant Trust Agreement, in no event will any member of the Claimant Trust Oversight Committee with a Claim against the Estate be entitled to vote, opine, or otherwise be involved in any matters related to such member's Claim.

The independent member(s) of the Claimant Trust Oversight Committee may be entitled to compensation for their services as set forth in the Claimant Trust Agreement.  Any member of the Claimant Trust Oversight Committee may be removed, and successor chosen, in the manner set forth in the Claimant Trust Agreement.

3.    *Purpose of the Claimant Trust.*

The Claimant Trust shall be established for the purpose of (i) managing and monetizing the Claimant Trust Assets, subject to the terms of the Claimant Trust Agreement and the oversight of the Claimant Trust Oversight Committee, (ii) serving as the limited partner of, and holding the limited partnership interests in, the Reorganized Debtor, (iii) serving as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner, (iv) in its capacity as the sole member and manager of New GP LLC, overseeing the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement; and (v) administering the Disputed Claims Reserve and serving as Distribution Agent with respect to Disputed Claims in Class 7 or Class 8.

In its management of the Claimant Trust Assets, the Claimant Trust will also reconcile and object to the General Unsecured Claims, Subordinated Claims, Class B/C Limited Partnership Interests, and Class A Limited Partnership Interests, as provided for in this Plan and the Claimant Trust Agreement, and make Trust Distributions to the Claimant Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

The purpose of the Reorganized Debtor is discussed at greater length in ARTICLE IV.C.

4.    *Purpose of the Litigation Sub-Trust.*

The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims.  Any proceeds therefrom shall be distributed by the Litigation Sub-Trust to the Claimant Trust for distribution to the Claimant Trust Beneficiaries pursuant to the terms of the Claimant Trust Agreement.

5.    *Claimant Trust Agreement and Litigation Sub-Trust Agreement.*

The Claimant Trust Agreement generally will provide for, among other things:

000892
Appx 0887

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01022-N-SD Document 349    Filed 05/06/22 Page 456 of 426 PageID 8762
Case 3:19-03005-sgj11 Doc 1043 Filed 05/25/22 Entered 05/25/22 16:48:16 Page 43 of
161

(i)      the payment of the Claimant Trust Expenses;

(ii)     the payment of other reasonable expenses of the Claimant Trust;

(iii)     the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation;

(iv)     the investment of Cash by the Claimant Trustee within certain limitations, including those specified in the Plan;

(v)      the orderly monetization of the Claimant Trust Assets;

(vi)     litigation of any Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(vii)     the resolution of Claims and Equity Interests in Class 8 through Class 11, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(viii)    the administration of the Disputed Claims Reserve and distributions to be made therefrom; and

(ix)     the management of the Reorganized Debtor, including the utilization of a Sub-Servicer, with the Claimant Trust serving as the managing member of New GP LLC.

Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement. The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expense (including, without limitation, any reserve for potential indemnification claims as authorized and provided under the Claimant Trust Agreement), and shall periodically replenish such reserve, as necessary.

In furtherance of, and consistent with the purpose of, the Claimant Trust and the Plan, the Trustees, for the benefit of the Claimant Trust, shall, subject to reporting and oversight by the Claimant Trust Oversight Committee as set forth in the Claimant Trust Agreement: (i) hold the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries, (ii) make Distributions to the Claimant Trust Beneficiaries as provided herein and in the Claimant Trust Agreement, and (iii) have the sole power and authority to prosecute and resolve any Causes of Action and objections to Claims and Equity Interests (other than those assigned to the Litigation Sub-Trust), without approval of the Bankruptcy Court. Except as otherwise provided in the Claimant Trust Agreement, the Claimant Trustee shall be responsible for all decisions and duties with respect to the Claimant Trust and the Claimant Trust Assets; *provided, however,* that the prosecution and resolution of any Estate Claims included in the Claimant Trust Assets shall be the responsibility of the Litigation Trustee. The Litigation Sub-Trust Agreement generally will provide for, among other things:

(i)      the payment of other reasonable expenses of the Litigation Sub-Trust;

000893

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01022-N-SD   Document 3-19   Filed 05/06/22   Page 45 of 242   PageID 9863
Case 3:09-sgj11   Document 3-19   Filed 05/26/2208   Page 03/22/22 16:48:16 04  Page 02 of
161

(ii)     the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; and

(iii)     the investigation and prosecution of Estate Claims, which may include the prosecution, settlement, abandonment, or dismissal of any such Estate Claims, subject to reporting and oversight as set forth in the Litigation Sub-Trust Agreement.

The Trustees, on behalf of the Claimant Trust and Litigation Sub-Trust, as applicable, may each employ, without further order of the Bankruptcy Court, employees and other professionals (including those previously retained by the Debtor and the Committee) to assist in carrying out the Trustees' duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Claimant Trust Assets in accordance with the Plan and the Claimant Trust Agreement.

The Claimant Trust Agreement and Litigation Sub-Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee. Any such indemnification shall be the sole responsibility of the Claimant Trust and payable solely from the Claimant Trust Assets.

6.     _Compensation and Duties of Trustees._

The salient terms of each Trustee's employment, including such Trustee's duties and compensation shall be set forth in the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as appropriate.  The Trustees shall each be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

7.     _Cooperation of Debtor and Reorganized Debtor._

To effectively investigate, prosecute, compromise and/or settle the Claims and/or Causes of Action that constitute Claimant Trust Assets (including Estate Claims), the Claimant Trustee, Litigation Trustee, and each of their professionals may require reasonable access to the Debtor's and Reorganized Debtor's documents, information, and work product relating to the Claimant Trust Assets. Accordingly, the Debtor and the Reorganized Debtor, as applicable, shall reasonably cooperate with the Claimant Trustee and Litigation Trustee, as applicable, in their prosecution of Causes of Action and in providing the Claimant Trustee and Litigation Trustee with copies of documents and information in the Debtor's possession, custody, or control on the Effective Date that either Trustee indicates relates to the Estate Claims or other Causes of Action.

The Debtor and Reorganized Debtor shall preserve all records, documents or work product (including all electronic records, documents, or work product) related to the Claims and Causes of Action, including Estate Claims, until the earlier of (a) the dissolution of the Reorganized Debtor or (b) termination of the Claimant Trust and Litigation Sub-Trust.

8.     _United States Federal Income Tax Treatment of the Claimant Trust._

Unless the IRS requires otherwise, for all United States federal income tax purposes, the parties shall treat the transfer of the Claimant Trust Assets to the Claimant Trust as:  (a) a transfer

29

000894

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01022-N-SD Document 119    Filed 11/18/22    Page 45 of 242    PageID 9864
Case 19-34054-sgj11    Doc 1043    Filed 05/28/20    Entered 05/28/20 16:48:16    Page 127 of
161

of the Claimant Trust Assets (other than the amounts set aside in the Disputed Claims Reserve, if the Claimant Trustee makes the election described in Section 7 below) directly to the applicable Claimant Trust Beneficiaries followed by (b) the transfer by such Claimant Trust Beneficiaries to the Claimant Trust of such Claimant Trust Assets in exchange for the Claimant Trust Interests. Accordingly, the applicable Claimant Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Claimant Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

9.    _Tax Reporting._

(a) The Claimant Trustee shall file tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claims Reserve as a separate taxable entity.

(b) The Claimant Trustee shall be responsible for payment, out of the Claimant Trust Assets, of any taxes imposed on the Claimant Trust or its assets.

(c) The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Claimant Trust Beneficiaries of such valuation, and such valuation shall be used consistently for all federal income tax purposes.

(d) The Claimant Trustee shall distribute such tax information to the applicable Claimant Trust Beneficiaries as the Claimant Trustee determines is required by applicable law.

10.    _Claimant Trust Assets._

The Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action included in the Claimant Trust Assets (except for the Estate Claims) without any further order of the Bankruptcy Court, and the Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to sell, liquidate, or otherwise monetize all Claimant Trust Assets, except as otherwise provided in this Plan or in the Claimant Trust Agreement, without any further order of the Bankruptcy Court.  Notwithstanding anything herein to the contrary, the Litigation Trustee shall have the exclusive right to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Estate Claims included in the Claimant Trust Assets without any further order of the Bankruptcy Court.

From and after the Effective Date, the Trustees, in accordance with section 1123(b)(3) and (4) of the Bankruptcy Code, and on behalf of the Claimant Trust, shall each serve as a representative of the Estate with respect to any and all Claimant Trust Assets, including the Causes of Action and Estate Claims, as appropriate, and shall retain and possess the right to (a) commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Action in any court or other tribunal and (b) sell, liquidate, or otherwise monetize all Claimant Trust Assets.

000895

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01205-S Document 8-19   Filed 11/09/22   Page 46 of 242   PageID 9865
Case 19-34054-sgj11   Document 2208   Filed 03/22/21   Page 46 of 2028 of
161

11.   _Claimant Trust Expenses._

From and after the Effective Date, the Claimant Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Claimant Trust, the Litigation Sub-Trust, and any professionals retained by such parties and entities from the Claimant Trust Assets, except as otherwise provided in the Claimant Trust Agreement.

12.   _Trust Distributions to Claimant Trust Beneficiaries._

The Claimant Trustee, in its discretion, may make Trust Distributions to the Claimant Trust Beneficiaries at any time and/or use the Claimant Trust Assets or proceeds thereof, _provided_ that such Trust Distributions or use is otherwise permitted under the terms of the Plan, the Claimant Trust Agreement, and applicable law.

13.   _Cash Investments._

With the consent of the Claimant Trust Oversight Committee, the Claimant Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in a manner consistent with the terms of the Claimant Trust Agreement; _provided, however,_ that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

14.   _Dissolution of the Claimant Trust and Litigation Sub-Trust._

The Trustees and the Claimant Trust and Litigation Sub-Trust shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Claimant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets; _provided, however,_ that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Claimant Trust Assets, by the Bankruptcy Court within 6 months of the beginning of the extended term and

000896

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01022-N-SD Document 19   Filed 06/06/22   Page 47 of 242   PageID 9366
Case 19-34054-sgj11   Doc 1943   Filed 05/28/20   Page 032/22/21 16:48:06   Page 029 of
161

no extension, together with any prior extensions, shall exceed three years without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes.

Upon dissolution of the Claimant Trust, and pursuant to the Claimant Trust Agreement, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

## C.   **The Reorganized Debtor**

### 1.   *Corporate Existence*

The Debtor will continue to exist after the Effective Date, with all of the powers of partnerships pursuant to the law of the State of Delaware and as set forth in the Reorganized Limited Partnership Agreement.

### 2.   *Cancellation of Equity Interests and Release*

On the Effective Date, (i) all prepetition Equity Interests, including the Class A Limited Partnership Interests and the Class B/C Limited Partnership Interests, in the Debtor shall be canceled, and (ii) all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, the Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.

### 3.   *Issuance of New Partnership Interests*

On the Effective Date, the Debtor or the Reorganized Debtor, as applicable, will issue new Class A Limited Partnership Interests to (i) the Claimant Trust, as limited partner, and (ii) New GP LLC, as general partner, and will admit (a) the Claimant Trust as the limited partner of the Reorganized Debtor, and (b) New GP LLC as the general partner of the Reorganized Debtor. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor. Also, on the Effective Date, the Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement and receive partnership interests in the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement.

The Reorganized Limited Partnership Agreement does not provide for, and specifically disclaims, the indemnification obligations under the Limited Partnership Agreement, including any such indemnification obligations that accrued or arose or could have been brought prior to the Effective Date. Any indemnification Claims under the Limited Partnership Agreement that accrued, arose, or could have been filed prior to the Effective Date will be resolved through the Claims resolution process provided that a Claim is properly filed in accordance with the Bankruptcy Code, the Plan, or the Bar Date Order. Each of the Debtor, the Reorganized Debtor, the Claimant Trust, and the Litigation Sub-Trust reserve all rights with respect to any such indemnification Claims.

000897
Appx 0642

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01036-S Document 19 Filed 10/06/22 Page 460 of 426 PageID 9937
Case 19-34054-sgj11 Doc 1043 Filed 05/22/20 Entered 02/22/20 16:48:04 Page 20 of
161

4.      *Management of the Reorganized Debtor*

Subject to and consistent with the terms of the Reorganized Limited Partnership Agreement, the Reorganized Debtor shall be managed by its general partner, New GP LLC. The initial officers and employees of the Reorganized Debtor shall be selected by the Claimant Trustee. The Reorganized Debtor may, in its discretion, also utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees.

As set forth in the Reorganized Limited Partnership Agreement, New GP LLC will receive a fee for managing the Reorganized Debtor. Although New GP LLC will be a limited liability company, it will elect to be treated as a C-Corporation for tax purposes. Therefore, New GP LLC (and any taxable income attributable to it) will be subject to corporate income taxation on a standalone basis, which may reduce the return to Claimants.

5.      *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in this Plan or the Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

6.      *Purpose of the Reorganized Debtor*

Except as may be otherwise provided in this Plan or the Confirmation Order, the Reorganized Debtor will continue to manage the Reorganized Debtor Assets (which shall include, for the avoidance of doubt, serving as the investment manager of the Managed Funds) and may use, acquire or dispose of the Reorganized Debtor Assets and compromise or settle any Claims with respect to the Reorganized Debtor Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The Reorganized Debtor shall oversee the resolution of Claims in Class 1 through Class 7.

Without limiting the foregoing, the Reorganized Debtor will pay the charges that it incurs after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

7.      *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets*

Any proceeds received by the Reorganized Debtor will be distributed to the Claimant Trust, as limited partner, and New GP LLC, as general partner, in the manner set forth in the Reorganized Limited Partnership Agreement. As set forth in the Reorganized Limited Partnership Agreement,

000898
Appx 06848

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01270-S Document 319   Filed 10/26/22 Page 49 of 242 PageID 9368
Case 19-34054-sgj11 Doc 1943   Filed 02/22/21   Entered 02/22/21 16:46:04  Page 31 of
161

the Reorganized Debtor may, from time to time distribute Reorganized Debtor Assets to the Claimant Trust either in Cash or in-kind, including to institute the wind-down and dissolution of the Reorganized Debtor. Any assets distributed to the Claimant Trust will be (i) deemed transferred in all respects as forth in ARTICLE IV.B.1, (ii) deemed Claimant Trust Assets, and (iii) administered as Claimant Trust Assets.

## D.    **Company Action**

Each of the Debtor, the Reorganized Debtor, and the Trustees, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, the Claimant Trust Agreement, the Reorganized Limited Partnership Agreement, or the New GP LLC Documents, as applicable, in the name and on behalf of the Debtor, the Reorganized Debtor, or the Trustees, as applicable, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers, or directors of the Debtor or the Reorganized Debtor, as applicable, or by any other Person.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the stockholders, partners, directors, managers, or members of the Debtor, any Related Entity, or any Affiliate thereof (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, partners, directors, managers or members of such Persons, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in this Plan involving the legal or corporate structure of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, and any legal or corporate action required by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, in connection with this Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, partners, directors, managers, or members of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, or by any other Person. On the Effective Date, the appropriate officers of the Debtor and the Reorganized Debtor, as applicable, as well as the Trustees, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and the Reorganized Debtor, as well as the Trustees, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The appropriate officer of the Debtor, the Reorganized Debtor, as well as the Trustees, will be authorized to certify or attest to any of the foregoing actions.

Appx. 0044
000899

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01220-N-SD Document 18-9  Filed 10/06/22 Page 50 of 242 PageID 9969
Case 19-34054-sgj11 Doc 1943 Filed 05/26/20  Entered 05/22/20 16:48:16 Page 20 of
161

### E.    Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, from and after the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or Equity Interests extinguished pursuant to the prior sentence will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable.  For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

### F.    Cancellation of Notes, Certificates and Instruments

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect.  The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan, and the obligations of the Debtor thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.  For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

### G.    Cancellation of Existing Instruments Governing Security Interests

Upon payment or other satisfaction of an Allowed Class 1 or Allowed Class 2 Claim, or promptly thereafter, the Holder of such Allowed Class 1 or Allowed Class 2 Claim shall deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, any collateral or other property of the Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Class 1 or Allowed Class 2 Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or *lis pendens*, or similar interests or documents.

### H.    Control Provisions

To the extent that there is any inconsistency between this Plan as it relates to the Claimant Trust, the Claimant Trust Agreement, the Reorganized Debtor, or the Reorganized Limited Partnership Agreement, this Plan shall control.

000900
App. 0845


Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01010-SD Document 149    Filed 10/04/22 Page 51 of 242 PageID 9570
Case 24-0900-sgj11    Document Filed 05/26/2208    Entered 08/22/21 16:48:16 04/18/2023 of
161

**I.**    **Treatment of Vacant Classes**

Any Claim or Equity Interest in a Class considered vacant under ARTICLE III.C of this Plan shall receive no Plan Distributions.

**J.**    **Plan Documents**

The documents, if any, to be Filed as part of the Plan Documents, including any documents filed with the Plan Supplement, and any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in ARTICLE I hereof) and fully enforceable as if stated in full herein.

The Debtor and the Committee are currently working to finalize the forms of certain of the Plan Documents to be filed with the Plan Supplement.  To the extent that the Debtor and the Committee cannot agree as to the form and content of such Plan Documents, they intend to submit the issue to non-binding mediation pursuant to the *Order Directing Mediation* entered on August 3, 2020 [D.I. 912].

**K.**    **Highland Capital Management, L.P. Retirement Plan and Trust**

The Highland Capital Management, L.P. Retirement Plan And Trust ("Pension Plan") is a single-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  29 U.S.C. §§ 1301-1461.  The Debtor is the contributing sponsor and, as such, the PBGC asserts that the Debtor is liable along with any members of the contributing sponsor's controlled-group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) with respect to the Pension Plan.

Upon the Effective Date, the Reorganized Debtor shall be deemed to have assumed the Pension Plan and shall comply with all applicable statutory provisions of ERISA and the Internal Revenue Code (the "IRC"), including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083; paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307; and administering the Pension Plan in accordance with its terms and the provisions of ERISA and the IRC.  In the event that the Pension Plan terminates after the Plan of Reorganization Effective Date, the PBGC asserts that the Reorganized Debtor and each of its controlled group members will be responsible for the liabilities imposed by Title IV of ERISA.

Notwithstanding any provision of the Plan, the Confirmation Order, or the Bankruptcy Code (including section 1141 thereof) to the contrary, neither the Plan, the Confirmation Order, or the Bankruptcy Code shall be construed as discharging, releasing, exculpating or relieving the Debtor, the Reorganized Debtor, or any person or entity in any capacity, from any liability or responsibility, if any, with respect to the Pension Plan under any law, governmental policy, or regulatory provision.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility against any person or entity as a result of any of the provisions of the Plan, the Confirmation Order, or the Bankruptcy Code.  The Debtor reserves the right to contest any such liability or responsibility.

000901

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02280-D   Document 119   Filed 10/26/22   Page 526 of 1266 PageID 9571
Case 21-30589-sgj11   Doc 1043   Filed 05/28/20   Entered 02/21/21 16:48:16   Page 204 of
161

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases**

Unless an Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtor pursuant to this Plan on or prior to the Confirmation Date; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtor on or before the Confirmation Date; (iv) contains a change of control or similar provision that would be triggered by the Chapter 11 Case (unless such provision has been irrevocably waived); or (v) is specifically designated as a contract or lease to be assumed in the Plan or the Plan Supplement, on the Confirmation Date, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease is listed in the Plan Supplement.

At any time on or prior to the Confirmation Date, the Debtor may (i) amend the Plan Supplement in order to add or remove a contract or lease from the list of contracts to be assumed or (ii) assign (subject to applicable law) any Executory Contract or Unexpired Lease, as determined by the Debtor in consultation with the Committee, or the Reorganized Debtor, as applicable.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, rejections, and assumptions and assignments.  Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.  To the extent applicable, no change of control (or similar provision) will be deemed to occur under any such Executory Contract or Unexpired Lease.

If certain, but not all, of a contract counterparty's Executory Contracts and/or Unexpired Leases are rejected pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being rejected pursuant to the Plan.  Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

Notwithstanding anything herein to the contrary, the Debtor shall assume or reject that certain real property lease with Crescent TC Investors L.P. ("Landlord") for the Debtor's headquarters located at 200/300 Crescent Ct., Suite #700, Dallas, Texas 75201 (the "Lease") in accordance with the notice to Landlord, procedures and timing required by 11 U.S.C. §365(d)(4),

000902
Appx 0647

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01220-N-SD Document 3-19    Filed 11/06/22  Page 536 of 426 Page ID 9972
Case 3:21-cv-00903-sgj11 Doc 1043 Filed 05/23/20  Entered 05/22/21 16:46:04 Page 25 of
161

as modified by that certain *Agreed Order Granting Motion to Extend Time to Assume or Reject Unexpired Nonresidential Real Property Lease* [Docket No. 1122].

**B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Any Executory Contract or Unexpired Lease not assumed or rejected on or before the Confirmation Date shall be deemed rejected, pursuant to the Confirmation Order.  Any Person asserting a Rejection Claim shall File a proof of claim within thirty days of the Confirmation Date. Any Rejection Claims that are not timely Filed pursuant to this Plan shall be forever disallowed and barred.  If one or more Rejection Claims are timely Filed, the Claimant Trustee may File an objection to any Rejection Claim.

Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with ARTICLE III of this Plan.

**C.    Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases**

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed or assigned hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor upon assumption or assignment thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts may otherwise agree.  The Debtor may serve a notice on the Committee and parties to Executory Contracts or Unexpired Leases to be assumed or assigned reflecting the Debtor's or Reorganized Debtor's intention to assume or assign the Executory Contract or Unexpired Lease in connection with this Plan and setting forth the proposed cure amount (if any).

If a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Debtor, the Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assigned or (3) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assignment.

Assumption or assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable cure amounts pursuant to this ARTICLE V.C shall result in the full release and satisfaction of any cure amounts, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assignment.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed or assigned in the Chapter 11 Case, including pursuant to the Confirmation Order, and for which any cure amounts have been fully paid pursuant to this ARTICLE V.C, shall be deemed disallowed and expunged as of the Confirmation Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

000903
Appx 0648

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.  Dates of Distributions

Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtor shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Allowed Equity Interests in the applicable Class and in the manner provided herein.  If any payment or act under this Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent there are Disputed Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in this Plan.  Except as otherwise provided in this Plan, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Claims and Equity Interests against the Debtor shall be deemed fixed and adjusted pursuant to this Plan and none of the Debtor, the Reorganized Debtor, or the Claimant Trust will have liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Confirmation Order.  All payments and all distributions made by the Distribution Agent under this Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Debtor and the Reorganized Debtor.

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtor and the Equity Interests in the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests.  The Debtor, the Reorganized Debtor, the Trustees, and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Claims against the Debtor or Equity Interests in the Debtor occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under this Plan to such Persons or the date of such distributions.

### B.  Distribution Agent

Except as provided herein, all distributions under this Plan shall be made by the Claimant Trustee, as Distribution Agent, or by such other Entity designated by the Claimant Trustee, as a Distribution Agent on the Effective Date or thereafter.  The Reorganized Debtor will be the Distribution Agent with respect to Claims in Class 1 through Class 7.

000904
Appx. 0610

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01220-N-SD Document 49   Filed 11/08/22   Page 556 of 242 Page ID 9974
Case 3:09-cv-00905-sgj11 Document 1-9   Filed 05/26/22   Page 03/22/21 16:16:04 Page 237 of
161

The Claimant Trustee, or such other Entity designated by the Claimant Trustee to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

The Distribution Agent shall not have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

## C.      **Cash Distributions**

Distributions of Cash may be made by wire transfer from a domestic bank, except that Cash payments made to foreign creditors may be made in such funds and by such means as the Distribution Agent determines are necessary or customary in a particular foreign jurisdiction.

## D.      **Disputed Claims Reserve**

On or prior to the Initial Distribution Date, the Claimant Trustee shall establish, fund and maintain the Disputed Claims Reserve(s) in the appropriate Disputed Claims Reserve Amounts on account of any Disputed Claims.

## E.      **Distributions from the Disputed Claims Reserve**

The Disputed Claims Reserve shall at all times hold Cash in an amount no less than the Disputed Claims Reserve Amount.  To the extent a Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, within 30 days of the date on which such Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, the Claimant Trustee shall distribute from the Disputed Claims Reserve to the Holder thereof any prior distributions, in Cash, that would have been made to such Allowed Claim if it had been Allowed as of the Effective Date.  For the avoidance of doubt, each Holder of a Disputed Claim that subsequently becomes an Allowed Claim will also receive its Pro Rata share of the Claimant Trust Interests.  If, upon the resolution of all Disputed Claims any Cash remains in the Disputed Claims Reserve, such Cash shall be transferred to the Claimant Trust and be deemed a Claimant Trust Asset.

## F.      **Rounding of Payments**

Whenever this Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  To the extent that Cash to be distributed under this Plan remains undistributed as a result of the aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under this Plan.



Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S   Document 8-19   Filed 10/06/22   Page 56 of 242   PageID 805
Case 19-34054-sgj11   Doc 1043   Filed 05/28/20   Entered 05/28/20 16:46:04   Page 28 of
161

**G.** *De Minimis* **Distribution**

Except as to any Allowed Claim that is Unimpaired under this Plan, none of the Debtor, the Reorganized Debtor, or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in ARTICLE VI.J hereof within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim. *De minimis* distributions for which no such request is timely received shall revert to the Claimant Trust. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

**H.** **Distributions on Account of Allowed Claims**

Except as otherwise agreed by the Holder of a particular Claim or as provided in this Plan, all distributions shall be made pursuant to the terms of this Plan and the Confirmation Order. Except as otherwise provided in this Plan, distributions to any Holder of an Allowed Claim shall, to the extent applicable, be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**I.** **General Distribution Procedures**

The Distribution Agent shall make all distributions of Cash or other property required under this Plan, unless this Plan specifically provides otherwise. All Cash and other property held by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, for ultimate distribution under this Plan shall not be subject to any claim by any Person.

**J.** **Address for Delivery of Distributions**

Distributions to Holders of Allowed Claims, to the extent provided for under this Plan, shall be made (1) at the addresses set forth in any written notices of address change delivered to the Debtor and the Distribution Agent; (2) at the address set forth on any Proofs of Claim Filed by such Holders (to the extent such Proofs of Claim are Filed in the Chapter 11 Case), (2), or (3) at the addresses in the Debtor's books and records.

If there is any conflict or discrepancy between the addresses set forth in (1) through (3) in the foregoing sentence, then (i) the address in Section (2) shall control; (ii) if (2) does not apply, the address in (1) shall control, and (iii) if (1) does not apply, the address in (3) shall control.

**K.** **Undeliverable Distributions and Unclaimed Property**

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtor or the Claimant Trust as undeliverable, no further distribution shall be made to such Holder, and Distribution Agent shall not have any obligation to make any further distribution to the Holder, unless and until the Distribution Agent is notified in writing of such Holder's then current address.

000906
Appx 2621

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02200-S Document 8-19   Filed 10/06/22   Page 57 of 242   PageID 9916
Case 19-34054-sgj11   Doc 1943   Filed 05/22/20   Entered 05/22/20 16:48:16   Page 120 of
161

Any Entity that fails to claim any Cash within six months from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under this Plan and such Cash shall thereafter be deemed an Claimant Trust Asset in all respects and for all purposes. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor's Estate, the Reorganized Debtor, the Claimant Trust, or against any Holder of an Allowed Claim to whom distributions are made by the Distribution Agent.

**L.**     **Withholding Taxes**

In connection with this Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. The Distribution Agent shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. As a condition to receiving any distribution under this Plan, the Distribution Agent may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to this Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Distribution Agent to comply with applicable tax reporting and withholding laws. If a Holder fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

**M.**     **Setoffs**

The Distribution Agent may, to the extent permitted under applicable law, set off against any Allowed Claim and any distributions to be made pursuant to this Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Debtor, the Reorganized Debtor, or the Distribution Agent may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with this Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or the Claimant Trustee of any such claims, rights and causes of action that the Debtor, the Reorganized Debtor, or Claimant Trustee possesses against such Holder. Any Holder of an Allowed Claim subject to such setoff reserves the right to challenge any such setoff in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

**N.**     **Surrender of Cancelled Instruments or Securities**

As a condition precedent to receiving any distribution pursuant to this Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to ARTICLE IV of this Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Distribution Agent unless waived in writing by the Distribution Agent.

000907
Appx 0622

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-00200-S   Document 18-19   Filed 11/06/22   Page 58 of 242   PageID 10827
Case 19-34054-sgj11   Doc 1943   Filed 05/23/23   Entered 07/22/21 16:44:10   Page 1240 of
161

## O.    Lost, Stolen, Mutilated or Destroyed Securities

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by this Plan, deliver to the Distribution Agent: (i) evidence reasonably satisfactory to the Distribution Agent of such loss, theft, mutilation, or destruction; and (ii) such security or indemnity as may be required by the Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest. Upon compliance with ARTICLE VI.O of this Plan as determined by the Distribution Agent, by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under this Plan, be deemed to have surrendered such security or note to the Distribution Agent.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED AND DISPUTED CLAIMS

## A.    Filing of Proofs of Claim

Unless such Claim appeared in the Schedules and is not listed as disputed, contingent, or unliquidated, or such Claim has otherwise been Allowed or paid, each Holder of a Claim was required to file a Proof of Claim on or prior to the Bar Date.

## B.    Disputed Claims

Following the Effective Date, each of the Reorganized Debtor or the Claimant Trustee, as applicable, may File with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Disputed Equity Interest, request the Bankruptcy Court subordinate any Claims to Subordinated Claims, or any other appropriate motion or adversary proceeding with respect to the foregoing by the Claims Objection Deadline or, at the discretion of the Reorganized Debtor or Claimant Trustee, as applicable, compromised, settled, withdrew or resolved without further order of the Bankruptcy Court, and (ii) unless otherwise provided in the Confirmation Order, the Reorganized Debtor or the Claimant Trust, as applicable, are authorized to settle, or withdraw any objections to, any Disputed Claim or Disputed Equity Interests following the Effective Date without further notice to creditors (other than the Entity holding such Disputed Claim or Disputed Equity Interest) or authorization of the Bankruptcy Court, in which event such Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of this Plan.

## C.    Procedures Regarding Disputed Claims or Disputed Equity Interests

No payment or other distribution or treatment shall be made on account of a Disputed Claim or Disputed Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interests and the amount of such Allowed Claim or Equity Interest, as applicable, is determined by order of the Bankruptcy Court or by stipulation between the Reorganized Debtor or Claimant Trust, as applicable, and the Holder of the Claim or Equity Interest.

000908
Appx. 2628

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02024-S Document 18-19    Filed 11/02/22    Page 59 of 242    PageID 6038
Case 19-34054-sgj11    Doc 043    Filed 05/25/22    Entered 07/22/22 16:04:20    Page 21 of
161

**D.     Allowance of Claims and Equity Interests**

Following the date on which a Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interest after the Distribution Date, the Distribution Agent shall make a distribution to the Holder of such Allowed Claim or Equity Interest in accordance with the Plan.

1.     *Allowance of Claims*

After the Effective Date and subject to the other provisions of this Plan, the Reorganized Debtor or the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Claim. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

2.     *Estimation*

Subject to the other provisions of this Plan, the Debtor, prior to the Effective Date, and the Reorganized Debtor or the Claimant Trustee, as applicable, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Disputed Equity Interest pursuant to applicable law and in accordance with this Plan and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Disputed Equity Interest, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  The rights and objections of all parties are reserved in connection with any such estimation proceeding.

3.     *Disallowance of Claims*

Any Claims or Equity Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Reorganized Debtor or the Claimant Trust, as applicable, by that Entity have been turned over or paid to the Reorganized Debtor or the Claimant Trust, as applicable.

**EXCEPT AS OTHERWISE PROVIDED HEREIN OR AS AGREED TO BY THE DEBTOR, REORGANIZED DEBTOR, OR CLAIMANT TRUSTEE, AS APPLICABLE,**

000909
Appx. 0624

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:23-cv-01260-S Document 18-9 Filed 11/08/2022 Page 60 of 242 PageID 10049
Case 19-34054-sgj11 Doc 1943 Filed 05/28/2208 Entered 07/22/21 16:48:06 Page 60 of
161

**ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

**ARTICLE VIII.**
**EFFECTIVENESS OF THIS PLAN**

**A.**     **Conditions Precedent to the Effective Date**

The Effective Date of this Plan will be conditioned upon the satisfaction or waiver by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee with such consent not to be unreasonably withheld), pursuant to the provisions of ARTICLE VIII.B of this Plan of the following:

- This Plan and the Plan Documents, including the Claimant Trust Agreement and the Reorganized Limited Partnership Agreement, and all schedules, documents, supplements and exhibits to this Plan shall have been Filed in form and substance reasonably acceptable to the Debtor and the Committee.

- The Confirmation Order shall have become a Final Order and shall be in form and substance reasonably acceptable to the Debtor and the Committee.  The Confirmation Order shall provide that, among other things, (i) the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee are authorized to take all actions necessary or appropriate to effectuate and consummate this Plan, including, without limitation, (a) entering into, implementing, effectuating, and consummating the contracts, instruments, releases, and other agreements or documents created in connection with or described in this Plan, (b) assuming the Executory Contracts and Unexpired Leases set forth in the Plan Supplement, (c) making all distributions and issuances as required under this Plan; and (d) entering into any transactions as set forth in the Plan Documents; (ii) the provisions of the Confirmation Order and this Plan are nonseverable and mutually dependent; (iii) the implementation of this Plan in accordance with its terms is authorized; (iv) pursuant to section 1146 of the Bankruptcy Code, the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under this Plan, shall not be subject to any Stamp or Similar Tax; and (v) the vesting of the Claimant Trust Assets in the Claimant Trust and the Reorganized Debtor Assets in the Reorganized Debtor, in each case as of the Effective Date free and clear of liens and claims to the fullest extent permissible under applicable law pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

- All documents and agreements necessary to implement this Plan, including without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust

0009 10
Appx. 0825

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:23-cv-02203-S Document 18-19   Filed 11/06/22   Page 61 of 242   PageID 1080
Case 3:21-cv-03082-sgj11 Document 18-19   Filed 05/26/08   Entered 07/22/21 16:46:04   Page 61 of
161

Agreement, and the New GP LLC Documents, in each case in form and substance reasonably acceptable to the Debtor and the Committee, shall have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement this Plan, including, without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, shall have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent effectiveness or consummation of the Restructuring.

- The Debtor shall have obtained applicable directors' and officers' insurance coverage that is acceptable to each of the Debtor, the Committee, the Claimant Trust Oversight Committee, the Claimant Trustee and the Litigation Trustee.

- The Professional Fee Reserve shall be funded pursuant to this Plan in an amount determined by the Debtor in good faith.

**B.     Waiver of Conditions**

The conditions to effectiveness of this Plan set forth in this ARTICLE VIII (other than that the Confirmation Order shall have been entered) may be waived in whole or in part by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee), without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or effectuate this Plan. The failure to satisfy or waive a condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable.

**C.     Dissolution of the Committee**

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on

0009 11
Appx. 0826

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:23-cv-02200-S Document 18-19 Filed 11/06/22 Page 62 of 242 PageID 10061
Case 19-34054-sgj11 Doc 1043 Filed 05/26/20 Entered 07/22/21 16:06:04 Page 62 of
161

the Effective Date or filed and served after the Effective Date pursuant to the Plan.  Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent either of the Trustees or to be compensated or reimbursed per the Plan and the Claimant Trust Agreement in connection with such representation.

### ARTICLE IX.
### EXCULPATION, INJUNCTION AND RELATED PROVISIONS

**A.**    **General**

 Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

**B.**    **Discharge of Claims**

 To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind and nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**C.**    **Exculpation**

 Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); *provided*, *however,* the foregoing

000912

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02204-S   Document 18-19   Filed 11/06/22   Page 63 of 242   Page ID 1082
Case 19-34054-sgj11   Doc 3143   Filed 05/26/23   Entered 07/22/21 16:45:16   Page 64 of
161

will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

**D.     Releases by the Debtor**

On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Person.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release: (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance Actions, or (v) any Causes of Action arising from willful misconduct, criminal misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

Notwithstanding anything herein to the contrary, any release provided pursuant to this ARTICLE IX.D (i) with respect to a Senior Employee, is conditioned in all respects on (a) such Senior Employee executing a Senior Employee Stipulation on or prior to the Effective Date and (b) the reduction of such Senior Employee's Allowed Claim as set forth in the Senior Employee Stipulation (such amount, the "Reduced Employee Claim"), and (ii) with respect to any Employee, including a Senior Employee, shall be deemed null and void and of no force and effect (1) if there is more than one member of the Claimant Trust Oversight Committee who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full Claimant Trust Oversight Committee) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

- sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation

000913

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:23-cv-00200-S Document 18-19    Filed 07/06/22    Page 64 of 242    PageID 1083
Case 19-34054-sgj11    Doc 1043    Filed 05/28/20    Entered 07/22/21 16:48:16    Page 26 of
161

Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

- has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets, or

- (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (1) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (2) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing.

*Provided, however,* that the release provided pursuant to this ARTICLE IX.D will vest and the Employee will be indefeasibly released pursuant to this ARTICLE IX.D if such Employee's release has not been deemed null and void and of no force and effect on or prior to the date that is the date of dissolution of the Claimant Trust pursuant to the Claimant Trust Agreement.

By executing the Senior Employee Stipulation embodying this release, each Senior Employee acknowledges and agrees, without limitation, to the terms of this release and the tolling agreement contained in the Senior Employee Stipulation.

The provisions of this release and the execution of a Senior Employee Stipulation will not in any way prevent or limit any Employee from (i) prosecuting its Claims, if any, against the Debtor's Estate, (ii) defending him or herself against any claims or causes of action brought against the Employee by a third party, or (iii) assisting other persons in defending themselves from any Estate Claims brought by the Litigation Trustee (but only with respect to Estate Claims brought by the Litigation Trustee and not collection or other actions brought by the Claimant Trustee).

**E.**    **Preservation of Rights of Action**

1.    *Maintenance of Causes of Action*

Except as otherwise provided in this Plan, after the Effective Date, the Reorganized Debtor or the Claimant Trust will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action included in the Reorganized Debtor Assets or Claimant Trust Assets, as applicable, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case and, as the successors in interest to the Debtor and the Estate, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Causes of Action without notice to or approval from the Bankruptcy Court.

2.    *Preservation of All Causes of Action Not Expressly Settled or Released*

Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including, without limitation, the Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtor or Claimant Trust, as applicable (including,

000914

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:23-cv-02071-S Document 10-19 Filed 17/06/22 Page 65 of 242 PageID 1094
Case 19-34054-sgj11 Doc 1943 Filed 02/22/21 Entered 02/22/21 16:04:02 Page 117 of
161

without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action as a consequence of the confirmation, effectiveness, or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such Causes of Action have been expressly released in this Plan or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the right of the Reorganized Debtor or the Claimant Trust to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

F.    **Injunction**

      **Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.**

      **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the property of the Debtor, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor or the property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtor or against property or interests in property of the Debtor, except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

      **The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Debtor, including, but not limited to, the Reorganized Debtor, the Litigation Sub-Trust, and the Claimant Trust and their respective property and interests in property.**

      **Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court**

000915

Appx. 08120

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-00200-S Document 18-19 Filed 07/06/22 Page 66 of 242 PageID 805
Case 19-34054-sgj11 Document 43 Filed 05/26/20 Page 07/22/20 16:48:16 Page 24 of
161

(i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; *provided, however,* the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

G.   **Duration of Injunctions and Stays**

ARTICLE II. Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Bankruptcy Court, (i) all injunctions and stays entered during the Chapter 11 Case and in existence on the Confirmation Date shall remain in full force and effect in accordance with their terms; and (ii) the automatic stay arising under section 362 of the Bankruptcy Code shall remain in full force and effect subject to Section 362(c) of the Bankruptcy Code, and to the extent necessary if the Debtor does not receive a discharge, the Court will enter an equivalent order under Section 105.

H.   **Continuance of January 9 Order**

Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Bankruptcy Court, the restrictions set forth in paragraphs 9 and 10 of the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course*, entered by the Bankruptcy Court on January 9, 2020 [D.I. 339] shall remain in full force and effect following the Effective Date.


## ARTICLE X.
## BINDING NATURE OF PLAN

On the Effective Date, and effective as of the Effective Date, the Plan, including, without limitation, the provisions in ARTICLE IX, will bind, and will be deemed binding upon, all Holders of Claims against and Equity Interests in the Debtor and such Holder's respective successors and assigns, to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder will receive or retain any property or interest in property under the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to this Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated thereby is to be recorded with respect to nay taxes of the kind specified in Bankruptcy Code section 1146(a).

000916

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01260-S Document 18-19 Filed 10/07/22 Page 67 of 242 PageID 886
Case 19-34054-sgj11 Doc 1943 Filed 02/26/21 Entered 02/22/21 16:46:04 Page 39 of
161

## ARTICLE XI.
## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Reorganized Debtor, the Claimant Trust, and this Plan to the maximum extent legally permissible, including, without limitation, jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

- grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Reorganized Debtor shall pay Professionals in the ordinary course of business for any work performed after the Effective Date subject to the terms of this Plan and the Confirmation Order, and such payment shall not be subject to the approval of the Bankruptcy Court;

- resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor, Reorganized Debtor, or Claimant Trust may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, any dispute regarding whether a contract or lease is or was executory or expired;

- make any determination with respect to a claim or cause of action against a Protected Party as set forth in ARTICLE IX;

- resolve any claim or cause of action against an Exculpated Party or Protected Party arising from or related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, or the transactions in furtherance of the foregoing;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any sale, disposition, assignment or other transfer of the Reorganized Debtor Assets or Claimant Trust Assets, including any break-up compensation or expense reimbursement that may be requested by a purchaser thereof; *provided, however,* that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

000917

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02200-S Document 18-19   Filed 12/06/22   Page 68 of 242   PageID 887
Case 19-34054-sgj11   Document 3431-1   Filed 08/22/21   Filed 04/06/21   Page 68 of 161

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any borrowing or the incurrence of indebtedness, whether secured or unsecured by the Reorganized Debtor or Claimant Trust; *provided, however,* that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- resolve any issues related to any matters adjudicated in the Chapter 11 Case;

- ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of this Plan;

- decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action (including Estate Claims) that are pending as of the Effective Date or that may be commenced in the future, including approval of any settlements, compromises, or other resolutions as may be requested by the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee whether under Bankruptcy Rule 9019 or otherwise, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor, the Claimant Trustee, or Litigation Trustee after the Effective Date, provided that the Reorganized Debtor, the Claimant Trustee, and the Litigation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

- enter such orders as may be necessary or appropriate to implement, effectuate, or consummate the provisions of this Plan, the Plan Documents, and all other contracts, instruments, releases, and other agreements or documents adopted in connection with this Plan, the Plan Documents, or the Disclosure Statement;

- resolve any cases, controversies, suits or disputes that may arise in connection with the implementation, effectiveness, consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

- issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, effectiveness, consummation, or enforcement of this Plan, except as otherwise provided in this Plan;

- enforce the terms and conditions of this Plan and the Confirmation Order;

- resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification, and other provisions contained herein and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

- enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

000918
Appx. 0828

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02200-S Document 10-19   Filed 11/07/22   Page 69 of 242   PageID 888
Case 19-34054-sgj11   Doc 2043   Filed 05/28/20   Entered 03/22/21 16:16:04   Page 51 of
161

- resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents, or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

- enter an order concluding or closing the Chapter 11 Case after the Effective Date.

**ARTICLE XII.**
**MISCELLANEOUS PROVISIONS**

### A.    Payment of Statutory Fees and Filing of Reports

All outstanding Statutory Fees shall be paid on the Effective Date. All such fees payable, and all such fees that become due and payable, after the Effective Date shall be paid by the Reorganized Debtor when due or as soon thereafter as practicable until the Chapter 11 Case is closed, converted, or dismissed. The Claimant Trustee shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Claimant Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee. The Reorganized Debtor shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

### B.    Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order with the consent of the Committee, such consent not to be unreasonably withheld; and (b) after the entry of the Confirmation Order, the Debtor may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

### C.    Revocation of Plan

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File a subsequent chapter 11 plan with the consent of the Committee. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan, assumption of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

000919

Appx. 0824

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02260-NS   Document 10-19   Filed 11/08/22   Page 70 of 242   PageID 889
Case 3:09-00-sgj11   Doc 1043   Filed 05/28/2208   Page 08/22/21   16:06:06   Page 52 of
161

**D. Obligations Not Changed**

Notwithstanding anything in this Plan to the contrary, nothing herein will affect or otherwise limit or release any non-Debtor Entity's (including any Exculpated Party's) duties or obligations, including any contractual and indemnification obligations, to the Debtor, the Reorganized Debtor, or any other Entity whether arising under contract, statute, or otherwise.

**E. Entire Agreement**

Except as otherwise described herein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**F. Closing of Chapter 11 Case**

The Claimant Trustee shall, after the Effective Date and promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

**G. Successors and Assigns**

This Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns, including, without limitation, the Reorganized Debtor and the Claimant Trustee. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

**H. Reservation of Rights**

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor, the Reorganized Debtor, the Claimant Trustee, or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor, the Reorganized Debtor, or the Claimant Trustee with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Documents, nor anything contained in this Plan, will constitute an admission by the Debtor that any such contract or lease is or is not an executory contract or lease or that the Debtor, the Reorganized Debtor, the Claimant Trustee, or their respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the

000920
Appx 0625

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:23-cv-02290-S Document 18-19   Filed 10/16/22   Page 18 of 242   PageID 890
Case 19-34054-sgj11   Doc 1943   Filed 05/22/23   Entered 05/22/23 16:46:04   Page 18 of
161

Debtor, the Reorganized Debtor, or the Claimant Trustee under any executory or non-executory contract.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, under any executory or non-executory contract or lease.

If there is a dispute regarding whether a contract or lease is or was executory at the time of its assumption under this Plan, the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract.

I.      **Further Assurances**

The Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.  On or before the Effective Date, the Debtor shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

J.      **Severability**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

K.      **Service of Documents**

All notices, requests, and demands to or upon the Debtor, the Reorganized Debtor, or the Claimant Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered addressed as follows:

> **If to the Claimant Trust:**
>
> Highland Claimant Trust
> c/o Highland Capital Management, L.P.
> 300 Crescent Court, Suite 700

000921

Appx. 2636

Dallas, Texas 75201
Attention:   James P. Seery, Jr.

**If to the Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:   James P. Seery, Jr.

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Attn:   Jeffrey N. Pomerantz, Esq.
        Ira D. Kharasch, Esq.
        Gregory V. Demo, Esq.

**If to the Reorganized Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:   James P. Seery, Jr.
**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Attn:   Jeffrey N. Pomerantz, Esq.
        Ira D. Kharasch, Esq.
        Gregory V. Demo, Esq.

## L.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to

000922
Appx 4637

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02260-S   Document 1-9   Filed 10/06/22   Page 73 of 242   PageID 892
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:46:04   Page 125 of
161

evidence and implement the provisions of and the distributions to be made under this Plan; (ii) the maintenance or creation of security or any Lien as contemplated by this Plan; and (iii) assignments, sales, or transfers executed in connection with any transaction occurring under this Plan.

**M.**     <u>Governing Law</u>

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Texas, without giving effect to the principles of conflicts of law of such jurisdiction; *provided, however,* that corporate governance matters relating to the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trust, as applicable, shall be governed by the laws of the state of organization of the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trustee, as applicable.

**N.**     <u>Tax Reporting and Compliance</u>

The Debtor is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor is for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**O.**     <u>Exhibits and Schedules</u>

All exhibits and schedules to this Plan, if any, including the Exhibits and the Plan Documents, are incorporated and are a part of this Plan as if set forth in full herein.

**P.**     <u>Controlling Document</u>

In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control.  The provisions of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and of the Confirmation Order, on the other hand, shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however,* that if there is determined to be any inconsistency between any provision of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and any provision of the Confirmation Order, on the other hand, that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan, the Disclosure Statement, and the Plan Documents, as applicable.

*[Remainder of Page Intentionally Blank]*

000923

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01200-S    Document 18-19    Filed 08/06/21    Page 74 of 242    PageID 883
Case 19-34054-sgj11    Doc 1943    Filed 02/26/21    Entered 02/26/21 16:48:16    Page 76 of
161

Dated:  January 22, 2021

Respectfully submitted,

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By:
    James P. Seery, Jr.
    Chief Executive Officer and Chief Restructuring
    Officer

Prepared by:

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
      ikharasch@pszjlaw.com
      gdemo@pszjlaw.com

and

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
      ZAnnable@HaywardFirm.com

*Counsel for the Debtor and Debtor-in-Possession*



**Exhibit B**

**Schedule of CLO Management Agreements and Related Contracts to Be Assumed**

Appx. 2648

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01260-S Document 18-19 Filed 11/29/21 Page 76 of 242 PageID 1205
Case 19-34054-sgj11 Doc 1943 Filed 05/26/20 Entered 05/26/20 16:48:16 Page 76 of
161

**Schedule of CLO Management Agreements and Related Contracts to Be Assumed**

1.  Servicing Agreement, dated December 20, 2007, by and among Greenbriar CLO, Ltd., and Highland Capital Management, L.P.

2.  Investment Management Agreement, dated November 1, 2007, by and between Longhorn Credit Funding, LLC, and Highland Capital Management, L.P. (as amended)

3.  Reference Portfolio Management Agreement, dated August 1, 2016, by and between Highland Capital Management, L.P., and Valhalla CLO, Ltd.

4.  Collateral Servicing Agreement, dated December 20, 2006, by and among Highland Park CDO I, Ltd., and Highland Capital Management, L.P.

5.  Portfolio Management Agreement, dated March 15, 2005, by and among Southfork CLO Ltd., and Highland Capital Management, L.P.

6.  Amended and Restated Portfolio Management Agreement, dated November 30, 2005, by and among Jaspar CLO Ltd., and Highland Capital Management, L.P.

7.  Servicing Agreement, dated May 31, 2007, by and among Westchester CLO, Ltd., and Highland Capital Management, L.P.

8.  Servicing Agreement, dated May 10, 2006, by and among Rockwall CDO Ltd. and Highland Capital Management, L.P. (as amended)

9.  Portfolio Management Agreement, dated December 8, 2005, by and between Liberty CLO, Ltd., and Highland Capital Management, L.P.

10.  Servicing Agreement, dated March 27, 2008, by and among Aberdeen Loan Funding, Ltd., and Highland Capital Management, L.P.

11.  Servicing Agreement, dated May 9, 2007, by and among Rockwall CDO II Ltd. and Highland Capital Management, L.P.

12.  Collateral Management Agreement, by and between, Highland Loan Funding V Ltd. and Highland Capital Management, L.P., dated August 1, 2001.

13.  Collateral Management Agreement, dated August 18, 1999, by and between Highland Legacy Limited and Highland Capital Management, L.P.

14.  Servicing Agreement, dated November 30, 2006, by and among Grayson CLO Ltd., and Highland Capital Management, L.P. (as amended)

15.  Servicing Agreement, dated October 25, 2007, by and among Stratford CLO Ltd., and Highland Capital Management, L.P.

16.  Servicing Agreement, dated August 3, 2006, by and among Red River CLO Ltd., and Highland Capital Management, L.P. (as amended)

17.  Servicing Agreement, dated December 21, 2006, by and among Brentwood CLO, Ltd., and Highland Capital Management, L.P.

18.  Servicing Agreement, dated March 13, 2007, by and among Eastland CLO Ltd., and Highland Capital Management, L.P.

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01260-S Document 18-9   Filed 11/06/21   Page 79 of 242   PageID 896
Case 19-34054-sgj11   Doc 1043   Filed 05/26/20   Entered 08/22/21 16:48:16   Page 89 of
161

19.  Portfolio Management, Agreement, dated October 13, 2005, by and among Gleneagles CLO, Ltd., and Highland Capital Management, L.P.

20.  Members' Agreement and Amendment, dated November 15, 2017, by and between Highland CLO Funding, Ltd. and Highland Capital Management, L.P.

21.  Collateral Management Agreement, dated May 19, 1998, by and between Pam Capital Funding LP, Ranger Asset Mgt LP and Highland Capital Management, L.P.

22.  Collateral Management Agreement, dated August 6, 1997, by and between Pamco Cayman Ltd., Ranger Asset Mgt LP and Highland Capital Management, L.P.

23.  Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Red River CLO Ltd. et al

24.  Interim Collateral Management Agreement, June 15, 2005, between Highland Capital Management, L.P. and Rockwall CDO Ltd

25.  Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Rockwall CDO Ltd

26.  Collateral Servicing Agreement dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.; The Bank of New York Trust Company, National Association

27.  Representations and Warranties Agreement, dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.

28.  Collateral Administration Agreement, dated March 27, 2008, between Highland Capital Management, L.P. and Aberdeen Loan Funding, Ltd.; State Street Bank and Trust Company

29.  Collateral Administration Agreement, dated December 20, 2007, between Highland Capital Management, L.P. and Greenbriar CLO, Ltd.; State Street Bank and Trust Company

30.  Collateral Acquisition Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd

31.  Collateral Administration Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd. and Investors Bank and Trust Company

32.  Collateral Administration Agreement, dated October 13, 2005, between Highland Capital Management, L.P. and Gleneagles CLO, Ltd.; JPMorgan Chase Bank, National Association

33.  Collateral Acquisition Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.

34.  Collateral Administration Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.; Investors Bank & Trust Company

35.  Collateral Acquisition Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.

DOCS_NY:42355.1 36027/002

App. 0842

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:23-cv-02300-NS Document 18-19    Filed 1/06/22 Page 78 of 242 PageID 837
Case 3:21-cv-03061 Document 143 Filed 05/26/22 on 09/22/21 16:16:16 Page 260 of
161

36.     Collateral Administration Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.; U.S. Bank National Association

37.     Master Warehousing and Participation Agreement, dated April 19, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company

38.     Master Warehousing and Participation Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

39.     Master Warehousing and Participation Agreement (Amendment No. 2), dated May 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

40.     Master Warehousing and Participation Agreement (Amendment No. 1), dated April 12, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

41.     Master Warehousing and Participation Agreement (Amendment No. 3), dated June 22, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

42.     Master Warehousing and Participation Agreement (Amendment No. 4), dated July 17, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

43.     Collateral Administration Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; U.S. Bank National Association; IXIS Financial Products Inc.

44.     Collateral Administration Agreement, dated April 18, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company; U.S. Bank National Association

45.     Master Participation Agreement, dated June 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Grand Central Asset Trust

46.     A&R Asset Acquisition Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Smith Barney Inc.; Highland Loan Funding V Ltd.

47.     A&R Master Participation Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Brothers Holding Company; Highland Loan Funding V Ltd.

48.     Collateral Acquisition Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.

49.     Collateral Administration Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.; JPMorgan Chase Bank, National Association

50.     Master Warehousing and Participation Agreement, dated March 24, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

3

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02208-S   Document 18-19   Filed 11/07/22   Page 79 of 242   PageID 10898
Case 19-34054-sgj11   Doc 1043   Filed 05/28/20   Entered 09/22/21 16:48:16   Page 161 of
161

51.     Master Warehousing and Participation Agreement (Amendment No. 1), dated May 16, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

52.     Collateral Administration Agreement, dated December 8, 2005, between Highland Capital Management, L.P. and Liberty CLO Ltd.

53.     Collateral Administration Agreement, dated May 10, 2006, between Highland Capital Management, L.P. and Rockwall CDO Ltd; JPMorgan Chase Bank, National Association

54.     Collateral Administration Agreement, dated May 9, 2007, between Highland Capital Management, L.P. and Rockwall CDO II, Ltd.; Investors Bank & Trust Company

55.     Collateral Administration Agreement, dated March 15, 2005, between Highland Capital Management, L.P. and Southfork CLO Ltd.; JPMorgan Chase Bank, National Association

56.     Collateral Administration Agreement, dated October 25, 2007, between Highland Capital Management, L.P. and Stratford CLO Ltd.; State Street

57.     Collateral Administration Agreement, dated August 18, 2004, between Highland Capital Management, L.P. and Valhalla CLO, Ltd.; JPMorgan Chase Bank

58.     Collateral Acquisition Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.

59.     Collateral Administration Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.; Investors Bank & Trust Company

60.     Collateral Administration Agreement, dated December 21, 2006, between Highland Capital Management, L.P. and Brentwood CLO, Ltd.; Investors Bank & Trust Company

000929
Appx. 2664

Case: 21-90011    Document: 00515826308    Page: 192    Date Filed: 04/14/2021

# Tab "B"

000930

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-00260-S Document 89   Filed 10/04/21   Page 81 of 242   PageID 9350
Case 19-34054-sgj11   Doc 3043-1 Filed 02/22/22   Entered 02/22/21 Date Filed: 04/9/2021   Page 1 of 161

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P. (AS MODIFIED)

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
          ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02060-S   Document 18-19   Filed 11/05/21   Page 82 of 242   PageID 9061
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 14:40:51   Page 82 of 161

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ..............................................1

    A.   Rules of Interpretation, Computation of Time and Governing Law....................1

    B.   Defined Terms .............................................................................2

ARTICLE II. ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS................16

    A.   Administrative Expense Claims........................................................16

    B.   Professional Fee Claims................................................................17

    C.   Priority Tax Claims.....................................................................17

ARTICLE III. CLASSIFICATION AND TREATMENT OF  CLASSIFIED CLAIMS AND EQUITY INTERESTS ........................................................18

    A.   Summary ................................................................................18

    B.   Summary of Classification and Treatment of Classified Claims and Equity Interests .........................................................................18

    C.   Elimination of Vacant Classes ........................................................19

    D.   Impaired/Voting Classes...............................................................19

    E.   Unimpaired/Non-Voting Classes .....................................................19

    F.   Impaired/Non-Voting Classes.........................................................19

    G.   Cramdown ..............................................................................19

    H.   Classification and Treatment of Claims and Equity Interests............................19

    I.   Special Provision Governing Unimpaired Claims................................................24

    J.   Subordinated Claims...................................................................24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN .....................................24

    A.   Summary ................................................................................24

    B.   The Claimant Trust ....................................................................25

        1.   Creation and Governance of the Claimant Trust and Litigation Sub-Trust....................................................................25

        2.   Claimant Trust Oversight Committee....................................26

000932

Appx. 0847

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02300-S Document 18-19   Filed 11/06/22   Page 336 of 426   PageID 9072
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21   Date Filed: 04/14/2021   Page 2 of 161

**Page**

3.    Purpose of the Claimant Trust. ...............................................................27

4.    Purpose of the Litigation Sub-Trust. ......................................................27

5.    Claimant Trust Agreement and Litigation Sub-Trust Agreement. .........27

6.    Compensation and Duties of Trustees. ...................................................29

7.    Cooperation of Debtor and Reorganized Debtor. ...................................29

8.    United States Federal Income Tax Treatment of the Claimant
Trust. .......................................................................................................29

9.    Tax Reporting. ........................................................................................30

10.   Claimant Trust Assets. ...........................................................................30

11.   Claimant Trust Expenses. .......................................................................31

12.   Trust Distributions to Claimant Trust Beneficiaries. .............................31

13.   Cash Investments. ...................................................................................31

14.   Dissolution of the Claimant Trust and Litigation Sub-Trust. ................31

C.    The Reorganized Debtor ....................................................................................32

1.    Corporate Existence ................................................................................32

2.    Cancellation of Equity Interests and Release..........................................32

3.    Issuance of New Partnership Interests ....................................................32

4.    Management of the Reorganized Debtor .................................................33

5.    Vesting of Assets in the Reorganized Debtor .........................................33

6.    Purpose of the Reorganized Debtor ........................................................33

7.    Distribution of Proceeds from the Reorganized Debtor Assets;
Transfer of Reorganized Debtor Assets ..................................................33

D.    Company Action ..................................................................................................34

E.    Release of Liens, Claims and Equity Interests....................................................35

F.    Cancellation of Notes, Certificates and Instruments...........................................35

000933

Appx. 0848

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01260-NS   Document 18-19   Filed 10/07/22   Page 84 of 242   PageID 0983
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21   Date Filed: 04/04/2021   Page 84 of 161

**Page**

G.   Cancellation of Existing Instruments Governing Security Interests ................... 35

H.   Control Provisions ....................................................................................... 35

I.   Treatment of Vacant Classes ......................................................................... 36

J.   Plan Documents ............................................................................................ 36

K.   Highland Capital Management, L.P. Retirement Plan and Trust ...................... 36

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES .......................................................................................................... 37

A.   Assumption, Assignment, or Rejection of Executory Contracts and
    Unexpired Leases ........................................................................................... 37

B.   Claims Based on Rejection of Executory Contracts or Unexpired
    Leases ............................................................................................................ 38

C.   Cure of Defaults for Assumed or Assigned Executory Contracts and
    Unexpired Leases ........................................................................................... 38

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ................................... 39

A.   Dates of Distributions .................................................................................... 39

B.   Distribution Agent ......................................................................................... 39

C.   Cash Distributions ......................................................................................... 40

D.   Disputed Claims Reserve ............................................................................... 40

E.   Distributions from the Disputed Claims Reserve ............................................ 40

F.   Rounding of Payments ................................................................................... 40

G.   *De Minimis* Distribution ................................................................................ 41

H.   Distributions on Account of Allowed Claims .................................................. 41

I.   General Distribution Procedures ..................................................................... 41

J.   Address for Delivery of Distributions ............................................................. 41

K.   Undeliverable Distributions and Unclaimed Property ...................................... 41

L.   Withholding Taxes ......................................................................................... 42

000934

Appx. 3849

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02260-S   Document 18-19   Filed 11/08/22   Page 85 of 242   PageID 3994
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21   Date Filed: 04/14/2621 of 161

|  |  |  | **Page** |
|---|---|---|---|
| M. | Setoffs | | 42 |
| N. | Surrender of Cancelled Instruments or Securities | | 42 |
| O. | Lost, Stolen, Mutilated or Destroyed Securities | | 43 |

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS** ... 43

| A. | Filing of Proofs of Claim | | 43 |
| B. | Disputed Claims | | 43 |
| C. | Procedures Regarding Disputed Claims or Disputed Equity Interests | | 43 |
| D. | Allowance of Claims and Equity Interests | | 44 |
| | 1. | Allowance of Claims | 44 |
| | 2. | Estimation | 44 |
| | 3. | Disallowance of Claims | 44 |

**ARTICLE VIII. EFFECTIVENESS OF THIS PLAN** ... 45

| A. | Conditions Precedent to the Effective Date | | 45 |
| B. | Waiver of Conditions | | 46 |
| C. | Dissolution of the Committee | | 46 |

**ARTICLE IX. EXCULPATION, INJUNCTION AND RELATED PROVISIONS** ... 47

| A. | General | | 47 |
| B. | Discharge of Claims | | 47 |
| C. | Exculpation | | 47 |
| D. | Releases by the Debtor | | 48 |
| E. | Preservation of Rights of Action | | 49 |
| | 1. | Maintenance of Causes of Action | 49 |
| | 2. | Preservation of All Causes of Action Not Expressly Settled or Released | 49 |

000935

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01260-S   Document 18-19   Filed 11/09/22   Page 86 of 242   PageID 10905
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21   Date Filed: 04/04/2021   Page 48 of 161

**Page**

    F.     Injunction ...................................................................................................50

    G.    Duration of Injunctions and Stays.............................................................51

    H.    Continuance of January 9 Order ...............................................................51

ARTICLE X. BINDING NATURE OF PLAN ......................................................................51

ARTICLE XI. RETENTION OF JURISDICTION ................................................................52

ARTICLE XII. MISCELLANEOUS PROVISIONS .............................................................54

    A.    Payment of Statutory Fees and Filing of Reports ....................................54

    B.    Modification of Plan .................................................................................54

    C.    Revocation of Plan ...................................................................................54

    D.    Obligations Not Changed..........................................................................55

    E.    Entire Agreement .....................................................................................55

    F.     Closing of Chapter 11 Case ......................................................................55

    G.    Successors and Assigns.............................................................................55

    H.    Reservation of Rights................................................................................55

    I.     Further Assurances....................................................................................56

    J.     Severability ..............................................................................................56

    K.    Service of Documents ...............................................................................56

    L.     Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of
          the Bankruptcy Code.................................................................................57

    M.    Governing Law .........................................................................................58

    N.    Tax Reporting and Compliance ................................................................58

    O.    Exhibits and Schedules .............................................................................58

    P.     Controlling Document ..............................................................................58

000936

Appx 0851

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01200-NS   Document 18-19   Filed 2006/22   Page 87 of 242   Page ID 906
Case 19-34054-sgj11   Doc 1943   Filed 01/22/21   Entered 02/22/21   Date Filed: Page 4/2021 of 161

---

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

---

HIGHLAND CAPITAL MANAGEMENT, L.P., as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), proposes the following chapter 11 plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtor. Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of this Plan. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtor's history, business, results of operations, historical financial information, projections and assets, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents that may be Filed with the Bankruptcy Court that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Documents. All such Exhibits and Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the other provisions of this Plan, and in accordance with the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date.

If this Plan cannot be confirmed, for any reason, then subject to the terms set forth herein, this Plan may be revoked.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A.   Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Documents" are references to Articles, Sections, Exhibits and Plan Documents hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set

Appx. 4852

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01200-S Document 18-19    Filed 10/06/22    Page 88 of 242    PageID 10907
Case 19-34054-sgj11    Doc 1940    Filed 02/22/21    Entered 02/22/21    Page 89 of 161

forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## B. **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Acis*" means collectively Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

2.    "*Administrative Expense Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; and (b) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, and that have not already been paid by the Debtor during the Chapter 11 Case and a Professional Fee Claim.

3.    "*Administrative Expense Claims Bar Date*" means, with respect to any Administrative Expense Claim (other than a Professional Fee Claim) becoming due on or prior to the Effective Date, 5:00 p.m. (prevailing Central Time) on such date that is forty-five days after the Effective Date.

4.    "*Administrative Expense Claims Objection Deadline*" means, with respect to any Administrative Expense Claim, the later of (a) ninety (90) days after the Effective Date and (b) sixty (60) days after the timely Filing of the applicable request for payment of such Administrative Expense Claim; *provided, however,* that the Administrative Expense Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

5.    "*Affiliate*" of any Person means any Entity that, with respect to such Person, either (i) is an "affiliate" as defined in section 101(2) of the Bankruptcy Code, or (ii) is an "affiliate" as defined in Rule 405 of the Securities Act of 1933, or (iii) directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person.  For the purposes of this definition, the term "control" (including, without limitation, the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction in any respect of the management or policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

6.    "*Allowed*" means, with respect to any Claim, except as otherwise provided in the Plan: (a) any Claim that is evidenced by a Proof of Claim that has been timely Filed by the Bar Date, or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy

000938
Appx. 4853

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:23-cv-02300-NS   Document 18-19   Filed 2023/02/26 Page 89 of 242 Page ID 908
Case 19-34054-sgj11   Doc 1943   Filed 05/26/20   Entered 02/22/20 16:43:06 Page 20 of
161

Code or a Final Order; (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed and for which no Proof of Claim has been timely filed; (c) a Claim Allowed pursuant to the Plan or an order of the Bankruptcy Court that is not stayed pending appeal; or (d) a Claim that is not Disputed (including for which a Proof of Claim has been timely filed in a liquidated and noncontingent amount that has not been objected to by the Claims Objection Deadline or as to which any such objection has been overruled by Final Order); *provided, however,* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed as set forth above.

7.      "*Allowed Claim or Equity Interest*" means a Claim or an Equity Interest of the type that has been Allowed.

8.      "*Assets*" means all of the rights, titles, and interest of the Debtor, Reorganized Debtor, or Claimant Trust, in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property, the Debtor's books and records, and the Causes of Action.

9.      "*Available Cash*" means any Cash in excess of the amount needed for the Claimant Trust and Reorganized Debtor to maintain business operations as determined in the sole discretion of the Claimant Trustee.

10.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510, 544, 545, and 547-553 of the Bankruptcy Code or under similar state or federal statutes and common law, including fraudulent transfer laws

11.      "*Ballot*" means the form(s) distributed to holders of Impaired Claims or Equity Interests entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

12.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

13.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court having jurisdiction over the Chapter 11 Case.

14.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in each case as amended from time to time and as applicable to the Chapter 11 Case.

Appx. 0854
000939

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01260-NS    Document 18-19    Filed 2/08/02266 Page 90 of 24266 Page ID 909
Case 19-34054-sgj11    Doc 0943    Filed 05/28/2208    Entered 02/22/2216 Filed 04/2021 of
161

15.    "*Bar Date*" means the applicable deadlines set by the Bankruptcy Court for the filing of Proofs of Claim against the Debtor as set forth in the Bar Date Order, which deadlines may be or have been extended for certain Claimants by order of the Bankruptcy Court.

16.    "*Bar Date Order*" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and (II) Approving the Form and Manner of Notice Thereof* [D.I. 488].

17.    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

19.    "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Cause of Action includes, without limitation,: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims; (f) the Avoidance Actions, and (g) the Estate Claims.  The Causes of Action include, without limitation, the Causes of Action belonging to the Debtor's Estate listed on the schedule of Causes of Action to be filed with the Plan Supplement.

20.    "*CEO/CRO*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer.

21.    "*Chapter 11 Case*" means the Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Delaware Bankruptcy Court and transferred to the Bankruptcy Court on December 4, 2019, and styled *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj-11.

22.    "*Claim*" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

23.    "*Claims Objection Deadline*" means the date that is 180 days after the Confirmation Date; *provided, however,* the Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

000940
Appx. 0855

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01260-NS   Document 18-19   Filed 10/06/22   Page 91 of 242   PageID 10950
Case 19-34054-sgj11   Doc 1843-1   Filed 02/02/21   Entered 02/02/21 16:48:16   Page 92 of
161

24.     "*Claimant Trust*" means the trust established for the benefit of the Claimant Trust Beneficiaries on the Effective Date in accordance with the terms of this Plan and the Claimant Trust Agreement.

25.     "*Claimant Trust Agreement*" means the agreement Filed in the Plan Supplement establishing and delineating the terms and conditions of the Claimant Trust.

26.     "*Claimant Trust Assets*" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

27.     "*Claimant Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, including, upon Allowance, Disputed General Unsecured Claims and Disputed Subordinated Claims that become Allowed following the Effective Date, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, post-petition interest from the Petition Date at the Federal Judgment Rate in accordance with the terms and conditions set forth in the Claimant Trust Agreement and all Disputed Claims in Class 8 and Class 9 have been resolved, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

28.     "*Claimant Trustee*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer, or such other Person identified in the Plan Supplement who will act as the trustee of the Claimant Trust in accordance with the Plan, the Confirmation Order, and Claimant Trust Agreement or any replacement trustee pursuant to (and in accordance with) the Claimant Trust Agreement.  The Claimant Trustee shall be responsible for, among other things, monetizing the Estate's investment assets, resolving Claims (other than those Claims assigned to the Litigation Sub-Trust for resolution), and, as the sole officer of New GP LLC, winding down the Reorganized Debtor's business operations.

29.     "*Claimant Trust Expenses*" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Trustees on account of administration of the Claimant Trust, including any reasonable administrative fees and expenses, reasonable attorneys' fees and expenses, reasonable insurance costs, taxes, reasonable escrow expenses, and other expenses.

30.     "*Claimant Trust Interests*" means the non-transferable interests in the Claimant Trust that are issued to the Claimant Trust Beneficiaries pursuant to this Plan; *provided*, *however*, Holders of Class A Limited Partnership Interests, Class B Limited Partnership Interests, and Class C Limited Partnership Interests will not be deemed to hold Claimant Trust Interests

Appx. 0856
00094 1

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02280-S Document 18-19   Filed 2056/02/2266 Page 92 of 2426 Page ID 961
Case 19-34054-sgj11 Doc 1043 Filed 05/23/2608   Entered 02/22/22 16:41:06 Page 20 of
161

unless and until the Contingent Claimant Trust Interests distributed to such Holders vest in accordance with the terms of this Plan and the Claimant Trust Agreement.

31.     "*Claimant Trust Oversight Committee*" means the committee of five Persons established pursuant to ARTICLE IV of this Plan to oversee the Claimant Trustee's performance of its duties and otherwise serve the functions described in this Plan and the Claimant Trust Agreement.

32.     "*Class*" means a category of Holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to section 1122(a) of the Bankruptcy Code.

33.     "*Class A Limited Partnership Interest*" means the Class A Limited Partnership Interests as defined in the Limited Partnership Agreement held by The Dugaboy Investment Trust, Mark and Pamela Okada Family Trust – Exempt Trust 2, Mark and Pamela Okada – Exempt Descendants' Trust, and Mark Kiyoshi Okada, and the General Partner Interest.

34.     "*Class B Limited Partnership Interest*" means the Class B Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

35.     "*Class B/C Limited Partnership Interests*" means, collectively, the Class B Limited Partnership and Class C Limited Partnership Interests.

36.     "*Class C Limited Partnership Interest*" means the Class C Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

37.     "*Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102(a)(1) on October 29, 2019 [D.I. 65], consisting of (i) the Redeemer Committee of Highland Crusader Fund, (ii) Meta-e Discovery, (iii) UBS, and (iv) Acis.

38.     "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

39.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

40.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

41.     "*Convenience Claim*" means any prepetition, liquidated, and unsecured Claim against the Debtor that as of the Confirmation Date is less than or equal to $1,000,000 or any General Unsecured Claim that makes the Convenience Class Election.  For the avoidance of doubt, the Reduced Employee Claims will be Convenience Claims.

000942
App. 0857

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02180-S Document 18-19 Filed 10/06/22 Page 93 of 242 PageID 10972
Case 19-34054-sgj11 Doc 1943 Filed 05/28/20 Entered 05/28/20 16:04 Page 10 of
161

42.      "*Convenience Claim Pool*" means the $13,150,000 in Cash that shall be available upon the Effective Date for distribution to Holders of Convenience Claims under the Plan as set forth herein.  Any Cash remaining in the Convenience Claim Pool after all distributions on account of Convenience Claims have been made will be transferred to the Claimant Trust and administered as a Claimant Trust Asset.

43.      "*Convenience Class Election*" means the option provided to each Holder of a General Unsecured Claim that is a liquidated Claim as of the Confirmation Date on their Ballot to elect to reduce their claim to $1,000,000 and receive the treatment provided to Convenience Claims.

44.      "*Contingent Claimant Trust Interests*" means the contingent Claimant Trust Interests to be distributed to Holders of Class A Limited Partnership Interests, Holders of Class B Limited Partnership Interests, and Holders of Class C Limited Partnership Interests in accordance with this Plan, the rights of which shall not vest, and consequently convert to Claimant Trust Interests, unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been paid indefeasibly in full, plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, all accrued and unpaid post-petition interest from the Petition Date at the Federal Judgment Rate and all Disputed Claims in Class 8 and Class 9 have been resolved.  As set forth in the Claimant Trust Agreement, the Contingent Claimant Trust Interests distributed to the Holders of Class A Limited Partnership Interests will be subordinated to the Contingent Claimant Trust Interests distributed to the Holders of Class B/C Limited Partnership Interests.

45.      "*Debtor*" means Highland Capital Management, L.P. in its capacity as debtor and debtor in possession in the Chapter 11 Case.

46.      "*Delaware Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

47.      "*Disclosure Statement*" means that certain *Disclosure Statement for Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

48.      "*Disputed*" means with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed.

49.      "*Disputed Claims Reserve*" means the appropriate reserve(s) or account(s) to be established on the Initial Distribution Date and maintained by the Claimant Trustee for distributions on account of Disputed Claims that may subsequently become an Allowed Claim.

50.      "*Disputed Claims Reserve Amount*" means, for purposes of determining the Disputed Claims Reserve, the Cash that would have otherwise been distributed to a Holder of a Disputed Claim at the time any distributions of Cash are made to the Holders of Allowed Claims. The amount of the Disputed Claim upon which the Disputed Claims Reserve is calculated shall be:  (a) the amount set forth on either the Schedules or the filed Proof of Claim, as applicable; (b) the amount agreed to by the Holder of the Disputed Claim and the Claimant Trustee or Reorganized

000943

Appx. 0953

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:23-cv-02200-S Document 18-19   Filed 07/07/23   Page 94 of 242   Page ID 983
Case 19-34054-sgj11   Doc 3943   Filed 05/26/23   Entered 05/26/23 16:46:06   Page 20 of
161

Debtor, as applicable; (c) the amount ordered by the Bankruptcy Court if it enters an order disallowing, in whole or in part, a Disputed Claim; or (d) as otherwise ordered by the Bankruptcy Court, including an order estimating the Disputed Claim.

51.     "*Distribution Agent*" means the Claimant Trustee, or any party designated by the Claimant Trustee to serve as distribution agent under this Plan.

52.     "*Distribution Date*" means the date or dates determined by the Reorganized Debtor or the Claimant Trustee, as applicable, on or after the Initial Distribution Date upon which the Distribution Agent shall make distributions to holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

53.     "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions hereunder, which date shall be the Effective Date or such later date determined by the Bankruptcy Court.

54.      "*Effective Date*" means the Business Day that this Plan becomes effective as provided in ARTICLE VIII hereof.

55.     "*Employees*" means the employees of the Debtor set forth in the Plan Supplement.

56.     "*Enjoined Parties*" means (i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons of each of the foregoing.

57.     "*Entity*" means any "entity" as defined in section 101(15) of the Bankruptcy Code and also includes any Person or any other entity.

58.     "*Equity Interest*" means any Equity Security in the Debtor, including, without limitation, all issued, unissued, authorized or outstanding partnership interests, shares, of stock or limited company interests, the Class A Limited Partnership Interests, the Class B Limited Partnership Interests, and the Class C Limited Partnership Interests.

59.     "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

60.     "*Estate*" means the bankruptcy estate of the Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

61.     "*Estate Claims*" has the meaning given to it in <u>Exhibit A</u> to the *Notice of Final Term Sheet* [D.I. 354].

000944
Appx. 0859

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01205-S    Document 18-19    Filed 10/06/22    Page 95 of 242 PageID 10994
Case 19-34054-sgj11    Doc 1943    Filed 05/26/20    Entered 05/26/20 16:48:04    Page 100 of
161

62.    "*Exculpated Parties*" means, collectively, (i) the Debtor and its successors and assigns, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

63.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

64.    "*Exhibit*" means an exhibit annexed hereto or to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

65.    "*Federal Judgment Rate*" means the post-judgment interest rate set forth in 28 U.S.C. § 1961 as of the Effective Date.

66.    "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

67.    "*Final Order*" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

68.    "*Frontier Secured Claim*" means the loan from Frontier State Bank to the Debtor in the principal amount of $7,879,688.00 made pursuant to that certain First Amended and Restated Loan Agreement, dated March 29, 2018.

000945
Appx. 0886

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-S Document 18-19 Filed 12/09/22 Page 96 of 242 PageID 10405
Case 19-34054-sgj11 Doc 1943 Filed 05/26/20 Entered 05/26/20 16:33:06 Page 97 of
161

69.     "*General Partner Interest*" means the Class A Limited Partnership Interest held by Strand, as the Debtor's general partner.

70.     "*General Unsecured Claim*" means any prepetition Claim against the Debtor that is not Secured and is not a/an:  (a) Administrative Expense Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) Priority Non-Tax Claim; or (e) Convenience Claim.

71.     "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

72.     "*GUC Election*" means the option provided to each Holder of a Convenience Claim on their Ballot to elect to receive the treatment provided to General Unsecured Claims.

73.     "*Holder*" means an Entity holding a Claim against, or Equity Interest in, the Debtor.

74.     "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

75.     "*Independent Directors*" means John S. Dubel, James P. Seery, Jr., and Russell Nelms, the independent directors of Strand appointed on January 9, 2020, and any additional or replacement directors of Strand appointed after January 9, 2020, but prior to the Effective Date.

76.     "*Initial Distribution Date*" means, subject to the "Treatment" sections in ARTICLE III hereof, the date that is on or as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims and Equity Interests.

77.     "*Insurance Policies*" means all insurance policies maintained by the Debtor as of the Petition Date.

78.     "*Jefferies Secured Claim*" means any Claim in favor of Jefferies, LLC, arising under that certain Prime Brokerage Customer Agreement, dated May 24, 2013, between the Debtor and Jefferies, LLC, that is secured by the assets, if any, maintained in the prime brokerage account created by such Prime Brokerage Customer Agreement.

79.     "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

80.     "*Limited Partnership Agreement*" means that certain Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 24, 2015, as amended.

000946

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:23-cv-02200-S    Document 18-19    Filed 2/06/22266 Page 97 of 242 6 Page ID 416
Case 19-34054-sgj11    Doc 1943    Filed 05/25/22    Entered 01/22/21 06:48:06    Page 20 of
161

81.      "*Litigation Sub-Trust*" means the sub-trust established within the Claimant Trust or as a wholly –owned subsidiary of the Claimant Trust on the Effective Date in each case in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement and Claimant Trust Agreement.  As set forth in the Litigation Sub-Trust Agreement, the Litigation Sub-Trust shall hold the Claimant Trust Assets that are Estate Claims.

82.      "*Litigation Sub-Trust Agreement*" means the agreement filed in the Plan Supplement establishing and delineating the terms and conditions of the Litigation Sub-Trust.

83.      "*Litigation Trustee*" means the trustee appointed by the Committee and reasonably acceptable to the Debtor who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

84.      "*Managed Funds*" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to this Plan.

85.      "*New Frontier Note*" means that promissory note to be provided to the Allowed Holders of Class 2 Claims under this Plan and any other documents or security agreements securing the obligations thereunder.

86.      "*New GP LLC*" means a limited liability company incorporated in the State of Delaware pursuant to the New GP LLC Documents to serve as the general partner of the Reorganized Debtor on the Effective Date.

87.      "*New GP LLC Documents*" means the charter, operating agreement, and other formational documents of New GP LLC.

88.      "*Ordinary Course Professionals Order*" means that certain *Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course* [D.I. 176].

89.      "*Other Unsecured Claim*" means any Secured Claim other than the Jefferies Secured Claim and the Frontier Secured Claim.

90.      "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, individual, corporation, company, general or limited partnership, limited liability company, unincorporated organization firm, trust, estate, business trust, association, joint stock company, joint venture, government, governmental agency, Governmental Unit or any subdivision thereof, the United States Trustee, or any other entity, whether acting in an individual, fiduciary or other capacity.

91.      "Petition *Date*" means October 16, 2019.

92.      "*Plan*" means this *Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, including the Exhibits and the Plan Documents and all supplements, appendices,

000947
Appx. 0862

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-02280-S   Document 18-19   Filed 02/06/23   Page 98 of 242   PageID 11027
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:16:04   Page 20 of
161

and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

93.      "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Allowed Equity Interests under this Plan.

94.      "*Plan Documents*" means any of the documents, other than this Plan, but including, without limitation, the documents to be filed with the Plan Supplement, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, and as may be modified consistent with the terms hereof with the consent of the Committee.

95.      "*Plan Supplement*" means the ancillary documents necessary for the implementation and effectuation of the Plan, including, without limitation, (i) the form of Claimant Trust Agreement, (ii) the forms of New GP LLC Documents, (iii) the form of Reorganized Limited Partnership Agreement, (iv) the Sub-Servicer Agreement (if applicable), (v) the identity of the initial members of the Claimant Trust Oversight Committee, (vi) the form of Litigation Sub-Trust Agreement; (vii) the schedule of retained Causes of Action; (viii) the New Frontier Note, (ix) the schedule of Employees; (x) the form of Senior Employee Stipulation,; and (xi) the schedule of Executory Contracts and Unexpired Leases to be assumed pursuant to this Plan, which, in each case, will be in form and substance reasonably acceptable to the Debtor and the Committee.

96.      "*Priority Non-Tax Claim*" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, including any Claims for paid time-off entitled to priority under section 507(a)(4) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

97.      "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim or Equity Interest in a particular Class bears to (b) the aggregate Allowed amount of all Claims or Equity Interests in such Class.

98.      "*Professional*" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to sections 327, 328, 330, 331, 363, 503(b), 503(b)(4) and 1103 of the Bankruptcy Code.

99.      "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code, with respect to a particular Professional, for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

100.      "*Professional Fee Claims Bar Date*" means with respect to Professional Fee Claims, the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

101.      "*Professional Fee Claims Objection Deadline*" means, with respect to any Professional Fee Claim, thirty (30) days after the timely Filing of the applicable request for payment of such Professional Fee Claim.

000948
App. 0883

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02295-S   Document 18-19   Filed 07/06/22   Page 99 of 242   PageID 10438
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:16:04   Page 20 of
161

102.    "*Professional Fee Reserve*" means the reserve established and funded by the Claimant Trustee pursuant this Plan to provide sufficient funds to satisfy in full unpaid Allowed Professional Fee Claims.

103.    "*Proof of Claim*" means a written proof of Claim or Equity Interest Filed against the Debtor in the Chapter 11 Case.

104.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

105.    "*Protected Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

106.    "*PTO Claims*" means any Claim for paid time off in favor of any Debtor employee in excess of the amount that would qualify as a Priority Non-Tax Claim under section 507(a)(4) of the Bankruptcy Code.

107.    "*Reduced Employee Claims*" has the meaning set forth in ARTICLE IX.D.

108.    "*Reinstated*" means, with respect to any Claim or Equity Interest, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Equity Interest in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim or Equity Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Equity Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Equity Interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder

000949

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01298-NS    Document 10-19    Filed 10/03/22    Page 101 of 242    PageID 10449
Case 19-34054-sgj11    Doc 1943    Filed 05/26/20    Entered 02/22/21 16:43:06    Page 101 of
161

of such Claim or Equity Interest (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

109.    "*Rejection Claim*" means any Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease pursuant to the Confirmation Order.

110.    "*Related Entity*" means, without duplication, (a) Dondero, (b) Mark Okada ("Okada"), (c) Grant Scott ("Scott"), (d) Hunter Covitz ("Covitz"), (e) any entity or person that was an insider of the Debtor on or before the Petition Date under Section 101(31) of the Bankruptcy Code, including, without limitation, any entity or person that was a non-statutory insider, (f) any entity that, after the Effective Date, is an insider or Affiliate of one or more of Dondero, Okada, Scott, Covitz, or any of their respective insiders or Affiliates, including, without limitation, The Dugaboy Investment Trust, (g) the Hunter Mountain Investment Trust and any of its direct or indirect parents, (h) the Charitable Donor Advised Fund, L.P., and any of its direct or indirect subsidiaries, and (i) Affiliates of the Debtor and any other Entities listed on the Related Entity List.

111.    "*Related Entity List*" means that list of Entities filed with the Plan Supplement.

112.    "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

113.    "*Released Parties*" means, collectively, (i) the Independent Directors; (ii) Strand (solely from the date of the appointment of the Independent Directors through the Effective Date); (iii) the CEO/CRO; (iv) the Committee; (v) the members of the Committee (in their official capacities), (vi) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case; and (vii) the Employees.

114.    "*Reorganized Debtor*" means the Debtor, as reorganized pursuant to this Plan on and after the Effective Date.

115.    "*Reorganized Debtor Assets*" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust.  For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

116.    "*Reorganized Limited Partnership Agreement*" means that certain Fifth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., by and among the Claimant Trust, as limited partner, and New GP LLC, as general partner, Filed with the Plan Supplement.

000950
Appx. 8585

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01280-NS    Document 10-19    Filed 04/05/22    Page 101 of 242    PageID 925
Case 34-90001-sgj11    Doc 1943    Filed 05/26/22    Page 01/22/21 16:43 06    Page 101 of
161

117.    "*Restructuring*" means the restructuring of the Debtor, the principal terms of which are set forth in this Plan and the Disclosure Statement.

118.    "*Retained Employee Claim*" means any Claim filed by a current employee of the Debtor who will be employed by the Reorganized Debtor upon the Effective Date.

119.    "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtor with the Bankruptcy Court [D.I. 247].

120.    "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Debtor's Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the interest of the Debtor's Estate in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

121.    "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

122.    "*Senior Employees*" means the senior employees of the Debtor Filed in the Plan Supplement.

123.    "*Senior Employee Stipulation*" means the agreements filed in the Plan Supplement between each Senior Employee and the Debtor.

124.    "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

125.    "*Statutory Fees*" means fees payable pursuant to 28 U.S.C. § 1930.

126.    "*Strand*" means Strand Advisors, Inc., the Debtor's general partner.

127.    "*Sub-Servicer*" means a third-party selected by the Claimant Trustee to service or sub-service the Reorganized Debtor Assets.

128.    "*Sub-Servicer Agreement*" means the agreement that may be entered into providing for the servicing of the Reorganized Debtor Assets by the Sub-Servicer.

129.    "*Subordinated Claim*" means any Claim that is subordinated to the Convenience Claims and General Unsecured Claims pursuant to an order entered by the Bankruptcy Court (including any other court having jurisdiction over the Chapter 11 Case) after notice and a hearing.

000951

App. 8866

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 16-9   Filed 12/05/22   Page 205 of 266   PageID 10425
Case 34-09009-sgj11   Document 2430   Filed 05/26/20   Entered 01/22/21 16:48:06   Page 213 of
161

130.     "*Subordinated Claimant Trust Interests*" means the Claimant Trust Interests to be distributed to Holders of Allowed Subordinated Claims under the Plan, which such interests shall be subordinated in right and priority to the Claimant Trust Interests distributed to Holders of Allowed General Unsecured Claims as provided in the Claimant Trust Agreement.

131.     "*Trust Distribution*" means the transfer of Cash or other property by the Claimant Trustee to the Claimant Trust Beneficiaries.

132.     "*Trustees*" means, collectively, the Claimant Trustee and Litigation Trustee.

133.     "*UBS*" means, collectively, UBS Securities LLC and UBS AG London Branch.

134.     "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

135.     "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

136.     "*Voting Deadline*" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the under the Order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125(a) of the Bankruptcy Code and authorizing the Debtor to solicit acceptances of the Plan.

137.     "*Voting Record Date*" means November 23, 2020.

## ARTICLE II.
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**A.     Administrative Expense Claims**

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Administrative Expense Claim either (i) payment in full in Available Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtor or the Reorganized Debtor, as applicable, and such Holder; *provided, however,* that Administrative Expense Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

If an Administrative Expense Claim (other than a Professional Fee Claim) is not paid by the Debtor in the ordinary course, the Holder of such Administrative Expense Claim must File, on

000952
Appx. 8887

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02180-NS    Document 10-19    Filed 12/05/22    Page 103 of 242    PageID 10972
Case 19-34054-sgj11    Doc 1043    Filed 05/25/20    Entered 05/25/20 16:06:04    Page 103 of
161

or before the applicable Administrative Expense Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for allowance and payment of such Administrative Expense Claim.

Objections to any Administrative Expense Claim (other than a Professional Fee Claim) must be Filed and served on the Debtor or the Reorganized Debtor, as applicable, and the party asserting such Administrative Expense Claim by the Administrative Expense Claims Objection Deadline.

**B.      Professional Fee Claims**

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must submit fee applications under sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code and, upon entry of an order of the Bankruptcy Court granting such fee applications, such Professional Fee Claim shall promptly be paid in Cash in full to the extent provided in such order.

Professionals or other Entities asserting a Professional Fee Claim for services rendered on or prior to the Effective Date must File, on or before the Professional Fee Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated as requiring such notice by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim.

Objections to any Professional Fee Claim must be Filed and served on the Debtor or Reorganized Debtor, as applicable, and the party asserting the Professional Fee Claim by the Professional Fee Claim Objection Deadline.  Each Holder of an Allowed Professional Fee Claim will be paid by the Debtor or the Claimant Trust, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

On the Effective Date, the Claimant Trustee shall establish the Professional Fee Reserve. The Professional Fee Reserve shall vest in the Claimant Trust and shall be maintained by the Claimant Trustee in accordance with the Plan and Claimant Trust Agreement.  The Claimant Trust shall fund the Professional Fee Reserve on the Effective Date in an estimated amount determined by the Debtor in good faith prior to the Confirmation Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date.  Following the payment of all Allowed Professional Fee Claims, any excess funds in the Professional Fee Reserve shall be released to the Claimant Trust to be used for other purposes consistent with the Plan and the Claimant Trust Agreement.

**C.      Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor:  (a) Cash in an amount of a total value as of the Effective Date of the Plan equal to the amount of such Allowed

000953

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 10-19   Filed 12/16/22   Page 104 of 242   PageID 1048
Case 3:09-sgj11   Document 43   Filed 05/26/20   Page 01/22/21 16:46:04   Page 021 of
161

Priority Tax Claim in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (b) if paid over time, payment of such Allowed Priority Tax Claim in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; or (c) such other less favorable treatment as agreed to in writing by the Debtor and such Holder.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtor may prepay any or all such Claims at any time, without premium or penalty.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.**     **Summary**

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled (in each case, by the Debtor or any other Entity) prior to the Effective Date.

**B.**     **Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Jefferies Secured Claim | Unimpaired | Deemed to Accept |
| 2 | Frontier Secured Claim | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Priority Non-Tax | Unimpaired | Deemed to Accept |
| 5 | Retained Employee Claim | Unimpaired | Deemed to Accept |
| 6 | PTO Claims | Unimpaired | Deemed to Accept |
| 7 | Convenience Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Subordinated Claims | Impaired | Entitled to Vote |
| 10 | Class B/C Limited Partnership Interests | Impaired | Entitled to Vote |
| 11 | Class A Limited Partnership Interests | Impaired | Entitled to Vote |

000954
Appx. 0660

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 10-9   Filed 10/05/22   Page 105 of 242   PageID 10494
Case 3:22-cv-01280-sgj11   Document 41   Filed 05/26/22   Page 21/22   Date Filed 04/16/2016 of
161

**C.    Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**D.    Impaired/Voting Classes**

Claims and Equity Interests in Class 2 and Class 7 through Class 11 are Impaired by the Plan, and only the Holders of Claims or Equity Interests in those Classes are entitled to vote to accept or reject the Plan.

**E.    Unimpaired/Non-Voting Classes**

Claims in Class 1 and Class 3 through Class 6 are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

**F.    Impaired/Non-Voting Classes**

There are no Classes under the Plan that will not receive or retain any property and no Classes are deemed to reject the Plan.

**G.    Cramdown**

If any Class of Claims or Equity Interests is deemed to reject this Plan or does not vote to accept this Plan, the Debtor may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**H.    Classification and Treatment of Claims and Equity Interests**

1.    *Class 1 – Jefferies Secured Claim*

• *Classification*: Class 1 consists of the Jefferies Secured Claim.

• *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor:  (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.  Each Holder of an Allowed Class 1 Claim will retain the Liens securing its Allowed Class 1 Claim as of the Effective Date until

000955

Appx 8578

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01287-NS   Document 10-19   Filed 12/09/22   Page 106 of 242   PageID 1055
Case 19-34054-sgj11   Doc 1043   Filed 05/28/20   Entered 01/22/21 16:16:04   Page 21 of
161

full and final payment of such Allowed Class 1 Claim is made as provided
herein.

- *Impairment and Voting*:  Class 1 is Unimpaired, and the Holders of Class 1
Claims are conclusively deemed to have accepted this Plan pursuant to
section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1
Claims are not entitled to vote to accept or reject this Plan and will not be
solicited.

2. <u>*Class 2 – Frontier Secured Claim*</u>

- *Classification*:  Class 2 consists of the Frontier Secured Claim.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date,
each Holder of an Allowed Class 2 Claim will receive in full satisfaction,
settlement, discharge and release of, and in exchange for, such Allowed
Class 2 Claim:  (A) Cash in an amount equal to all accrued but unpaid
interest on the Frontier Claim through and including the Effective Date and
(B) the New Frontier Note.  The Holder of an Allowed Class 2 Claim will
retain the Liens securing its Allowed Class 2 Claim as of the Effective Date
until full and final payment of such Allowed Class 2 Claim is made as
provided herein.

- *Impairment and Voting*:  Class 2 is Impaired, and the Holders of Class 2
Claims are entitled to vote to accept or reject this Plan.

3. <u>*Class 3 – Other Secured Claims*</u>

- *Classification*:  Class 3 consists of the Other Secured Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the
later of (i) the Initial Distribution Date if such Class 3 Claim is Allowed on
the Effective Date or (ii) the date on which such Class 3 Claim becomes an
Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim will
receive in full satisfaction, settlement, discharge and release of, and in
exchange for, its Allowed Class 3 Claim, at the option of the Debtor, or
following the Effective Date, the Reorganized Debtor or Claimant Trustee,
as applicable, (i) Cash equal to such Allowed Other Secured Claim, (ii) the
collateral securing its Allowed Other Secured Claim, plus postpetition
interest to the extent required under Bankruptcy Code Section 506(b), or
(iii) such other treatment rendering such Claim Unimpaired.

- *Impairment and Voting*:  Class 3 is Unimpaired, and the Holders of Class 3
Claims are conclusively deemed to have accepted this Plan pursuant to
section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3
Claims are not entitled to vote to accept or reject this Plan and will not be
solicited.

000956
Appx. 2871

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 1-69   Filed 2205/22/26   Page 107 of 242   PageID 1056
Case 19-34054-sgj11   Document 43   Filed 05/25/22   Entered 05/22/21 16:45:06   Page 021 of
161

4. *Class 4 – Priority Non-Tax Claims*

- *Classification*: Class 4 consists of the Priority Non-Tax Claims.

- *Allowance and Treatment*: On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 4 Claim is Allowed on the Effective Date or (ii) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, each Holder of an Allowed Class 4 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 4 Claim Cash equal to the amount of such Allowed Class 4 Claim.

- *Impairment and Voting*: Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

5. *Class 5 – Retained Employee Claims*

- *Classification*: Class 5 consists of the Retained Employee Claims.

- *Allowance and Treatment*: On or as soon as reasonably practicable after the Effective Date, each Allowed Class 5 Claim will be Reinstated.

- *Impairment and Voting*: Class 5 is Unimpaired, and the Holders of Class 5 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 5 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

6. *Class 6 – PTO Claims*

- *Classification*: Class 6 consists of the PTO Claims.

- *Allowance and Treatment*: On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 6 Claim is Allowed on the Effective Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 6 Claim Cash equal to the amount of such Allowed Class 6 Claim.

- *Impairment and Voting*: Class 6 is Unimpaired, and the Holders of Class 6 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 6

000957

Appx 8672

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-NS   Document 10-19   Filed 02/25/22   Page 108 of 242   Page ID 1052
Case 19-34090-sgj11   Doc 1943   Filed 05/25/22   Entered 02/22/21 16:46:04   Page 021 of
161

Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

7.    *Class 7 – Convenience Claims*

- *Classification*:  Class 7 consists of the Convenience Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 7 Claim is Allowed on the Effective Date or (ii) the date on which such Class 7 Claim becomes an Allowed Class 7 Claim, each Holder of an Allowed Class 7 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim (1) the treatment provided to Allowed Holders of Class 8 General Unsecured Claims if the Holder of such Class 7 Claim makes the GUC Election or (2) an amount in Cash equal to the lesser of (a) 85% of the Allowed amount of such Holder's Class 7 Claim or (b) such Holder's Pro Rata share of the Convenience Claims Cash Pool.

- *Impairment and Voting*:  Class 7 is Impaired, and the Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

8.    *Class 8 – General Unsecured Claims*

- *Classification*:  Class 8 consists of the General Unsecured Claims.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Claimant Trust Interests, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing, or (iii) the treatment provided to Allowed Holders of Class 7 Convenience Claims if the Holder of such Class 8 General Unsecured Claim is eligible and makes a valid Convenience Class Election.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 8 is Impaired, and the Holders of Class 8 Claims are entitled to vote to accept or reject this Plan.

000958
Appx. 2873

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-NS   Document 16-9   Filed 12/27/21   Page 109 of 242   PageID 1053
Case 19-34054-sgj11   Doc 1043   Filed 05/28/20   Entered 02/22/21 16:48:04   Page 20 of
161

9.      *Class 9 – Subordinated Claims*

- *Classification*: Class 9 consists of the Subordinated Claims.

  *Treatment*: On the Effective Date, Holders of Subordinated Claims shall receive either (i) their Pro Rata share of the Subordinated Claimant Trust Interests or, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee may agree upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Subordinated Claim, except with respect to any Subordinated Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 9 is Impaired, and the Holders of Class 9 Claims are entitled to vote to accept or reject this Plan.

10.    *Class 10 – Class B/C Limited Partnership Interests*

- *Classification*: Class 10 consists of the Class B/C Limited Partnership Interests.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class B/C Limited Partnership Interest Claim, except with respect to any Class B/C Limited Partnership Interest Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 10 is Impaired, and the Holders of Class 10 Claims are entitled to vote to accept or reject this Plan.

11.    *Class 11 – Class A Limited Partnership Interests*

- *Classification*: Class 11 consists of the Class A Limited Partnership Interests.

000959

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 10-19   Filed 12/03/22   Page 110 of 242   PageID 1059
Case 3:22-cv-01280-sgj11   Doc 1043   Filed 05/25/22   Entered 02/22/22 16:48:16   Page 001 of
161

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 11 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class A Limited Partnership Interest, except with respect to any Class A Limited Partnership Interest Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 11 is Impaired, and the Holders of Class 11 Claims are entitled to vote to accept or reject this Plan.

**I.** **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**J.** **Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Upon written notice and hearing, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to seek entry of an order by the Bankruptcy Court to re-classify or to subordinate any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THIS PLAN**

**A.** **Summary**

As discussed in the Disclosure Statement, the Plan will be implemented through (i) the Claimant Trust, (ii) the Litigation Sub-Trust, and (iii) the Reorganized Debtor.

On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust. The Claimant Trust, as limited


000960

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 10-19   Filed 09/25/22   Page 124 of 242   PageID 1053
Case 19-34054-sgj11   Doc 1043   Filed 05/28/20   Entered 02/22/21 16:16:04   Page 26 of
161

partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner.  The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited Partnership Agreement. Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC.  The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to this Plan and the Claimant Trust Agreement, and the Litigation Trustee will pursue, if applicable, the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan. The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds.

Although the Reorganized Debtor will manage the wind down of the Managed Funds, it is currently anticipated that neither the Reorganized Debtor nor the Claimant Trust will assume or assume and assign the contracts between the Debtor and certain Related Entities pursuant to which the Debtor provides shared services and sub-advisory services to those Related Entities.  The Debtor believes that the continued provision of the services under such contracts will not be cost effective.

The Reorganized Debtor will distribute all proceeds from the wind down to the Claimant Trust, as its limited partner, and New GP LLC, as its general partner, in each case in accordance with the Reorganized Limited Partnership Agreement.  Such proceeds, along with the proceeds of the Claimant Trust Assets, will ultimately be distributed to the Claimant Trust Beneficiaries as set forth in this Plan and the Claimant Trust Agreement.

**B.     The Claimant Trust**[2]

1.     _Creation and Governance of the Claimant Trust and Litigation Sub-Trust._

On or prior to the Effective Date, the Debtor and the Claimant Trustee shall execute the Claimant Trust Agreement and shall take all steps necessary to establish the Claimant Trust and the Litigation Sub-Trust in accordance with the Plan in each case for the benefit of the Claimant Trust Beneficiaries.  Additionally, on or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement, and

---

[2] In the event of a conflict between the terms of this summary and the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, the terms of the Claimant Trust Agreement or the Litigation Sub-Trust Agreement, as applicable, shall control.

000961
Appx 02676

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:22-cv-01280-NS    Document 10-19    Filed 05/25/22    Page 112 of 242   PageID 10561
Case 19-34054-sgj11    Doc 1943-1    Filed 02/22/21    Entered 02/22/21 16:16:04    Page 113 of
161

such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax.

The Claimant Trustee shall be the exclusive trustee of the Claimant Trust Assets, excluding the Estate Claims and the Litigation Trustee shall be the exclusive trustee with respect to the Estate Claims in each case for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Claimant Trust Assets. The Claimant Trustee shall also be responsible for resolving all Claims and Equity Interests in Class 8 through Class 11, under the supervision of the Claimant Trust Oversight Committee.

On the Effective Date, the Claimant Trustee and Litigation Trustee shall execute the Litigation Sub-Trust Agreement and shall take all steps necessary to establish the Litigation Sub-Trust. Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims. The Claimant Trust shall be governed by the Claimant Trust Agreement and administered by the Claimant Trustee. The powers, rights, and responsibilities of the Claimant Trustee shall be specified in the Claimant Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting to the Claimant Trust Oversight Committee as may be set forth in the Claimant Trust Agreement. The Claimant Trust shall hold and distribute the Claimant Trust Assets (including the proceeds from the Estate Claims, if any) in accordance with the provisions of the Plan and the Claimant Trust Agreement; *provided* that the Claimant Trust Oversight Committee may direct the Claimant Trust to reserve Cash from distributions as necessary to fund the Claimant Trust and Litigation Sub-Trust. Other rights and duties of the Claimant Trustee and the Claimant Trust Beneficiaries shall be as set forth in the Claimant Trust Agreement. After the Effective Date, neither the Debtor nor the Reorganized Debtor shall have any interest in the Claimant Trust Assets.

The Litigation Sub-Trust shall be governed by the Litigation Sub-Trust Agreement and administered by the Litigation Trustee. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Sub-Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting as may be set forth in the Litigation Sub-Trust Agreement. The Litigation Sub-Trust shall investigate, prosecute, settle, or otherwise resolve the Estate Claims in accordance with the provisions of the Plan and the Litigation Sub-Trust Agreement and shall distribute the proceeds therefrom to the Claimant Trust for distribution. Other rights and duties of the Litigation Trustee shall be as set forth in the Litigation Sub-Trust Agreement.

2.    *Claimant Trust Oversight Committee*

The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) and the Litigation Sub-Trust will be overseen by the Claimant Trust Oversight Committee, subject to the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as applicable.

000962
Appx 2677

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-NS    Document 10-19    Filed 04/26/22    Page 126 of 242    PageID 1057
Case 19-34054-sgj11    Doc 1943    Filed 05/28/20    Entered 02/22/21 16:06:04    Page 114 of
161

The Claimant Trust Oversight Committee will initially consist of five members.  Four of the five members will be representatives of the members of the Committee:  (i) the Redeemer Committee of Highland Crusader Fund, (ii) UBS, (iii) Acis, and (iv) Meta-e Discovery.  The fifth member will be an independent, natural Person chosen by the Committee and reasonably acceptable to the Debtor.  The members of the Claimant Trust Oversight Committee may be replaced as set forth in the Claimant Trust Agreement.  The identity of the members of the Claimant Trust Oversight Committee will be disclosed in the Plan Supplement.

As set forth in the Claimant Trust Agreement, in no event will any member of the Claimant Trust Oversight Committee with a Claim against the Estate be entitled to vote, opine, or otherwise be involved in any matters related to such member's Claim.

The independent member(s) of the Claimant Trust Oversight Committee may be entitled to compensation for their services as set forth in the Claimant Trust Agreement.  Any member of the Claimant Trust Oversight Committee may be removed, and successor chosen, in the manner set forth in the Claimant Trust Agreement.

3.      *Purpose of the Claimant Trust.*

The Claimant Trust shall be established for the purpose of (i) managing and monetizing the Claimant Trust Assets, subject to the terms of the Claimant Trust Agreement and the oversight of the Claimant Trust Oversight Committee, (ii) serving as the limited partner of, and holding the limited partnership interests in, the Reorganized Debtor, (iii) serving as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner, (iv) in its capacity as the sole member and manager of New GP LLC, overseeing the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement; and (v) administering the Disputed Claims Reserve and serving as Distribution Agent with respect to Disputed Claims in Class 7 or Class 8.

In its management of the Claimant Trust Assets, the Claimant Trust will also reconcile and object to the General Unsecured Claims, Subordinated Claims, Class B/C Limited Partnership Interests, and Class A Limited Partnership Interests, as provided for in this Plan and the Claimant Trust Agreement, and make Trust Distributions to the Claimant Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

The purpose of the Reorganized Debtor is discussed at greater length in ARTICLE IV.C.

4.      *Purpose of the Litigation Sub-Trust.*

The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims.  Any proceeds therefrom shall be distributed by the Litigation Sub-Trust to the Claimant Trust for distribution to the Claimant Trust Beneficiaries pursuant to the terms of the Claimant Trust Agreement.

5.      *Claimant Trust Agreement and Litigation Sub-Trust Agreement.*

The Claimant Trust Agreement generally will provide for, among other things:

000963

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-NS   Document 10-19   Filed 05/22/22   Page 127 of 246   PageID 1058
Case 19-34054-sgj11   Doc 1043   Filed 05/08/20   Entered 02/22/20 16:48:16   Page 25 of
161

(i)      the payment of the Claimant Trust Expenses;

(ii)     the payment of other reasonable expenses of the Claimant Trust;

(iii)     the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation;

(iv)     the investment of Cash by the Claimant Trustee within certain limitations, including those specified in the Plan;

(v)      the orderly monetization of the Claimant Trust Assets;

(vi)     litigation of any Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(vii)    the resolution of Claims and Equity Interests in Class 8 through Class 11, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(viii)   the administration of the Disputed Claims Reserve and distributions to be made therefrom; and

(ix)     the management of the Reorganized Debtor, including the utilization of a Sub-Servicer, with the Claimant Trust serving as the managing member of New GP LLC.

Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement. The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expense (including, without limitation, any reserve for potential indemnification claims as authorized and provided under the Claimant Trust Agreement), and shall periodically replenish such reserve, as necessary.

In furtherance of, and consistent with the purpose of, the Claimant Trust and the Plan, the Trustees, for the benefit of the Claimant Trust, shall, subject to reporting and oversight by the Claimant Trust Oversight Committee as set forth in the Claimant Trust Agreement: (i) hold the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries, (ii) make Distributions to the Claimant Trust Beneficiaries as provided herein and in the Claimant Trust Agreement, and (iii) have the sole power and authority to prosecute and resolve any Causes of Action and objections to Claims and Equity Interests (other than those assigned to the Litigation Sub-Trust), without approval of the Bankruptcy Court.  Except as otherwise provided in the Claimant Trust Agreement, the Claimant Trustee shall be responsible for all decisions and duties with respect to the Claimant Trust and the Claimant Trust Assets; *provided, however,* that the prosecution and resolution of any Estate Claims included in the Claimant Trust Assets shall be the responsibility of the Litigation Trustee.  The Litigation Sub-Trust Agreement generally will provide for, among other things:

(i)      the payment of other reasonable expenses of the Litigation Sub-Trust;

000964

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01780-NS   Document 10-19   Filed 12/28/22   Page 128 of 242   PageID 10594
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:13:16   Page 120 of
161

(ii)    the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; and

(iii)    the investigation and prosecution of Estate Claims, which may include the prosecution, settlement, abandonment, or dismissal of any such Estate Claims, subject to reporting and oversight as set forth in the Litigation Sub-Trust Agreement.

The Trustees, on behalf of the Claimant Trust and Litigation Sub-Trust, as applicable, may each employ, without further order of the Bankruptcy Court, employees and other professionals (including those previously retained by the Debtor and the Committee) to assist in carrying out the Trustees' duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Claimant Trust Assets in accordance with the Plan and the Claimant Trust Agreement.

The Claimant Trust Agreement and Litigation Sub-Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee. Any such indemnification shall be the sole responsibility of the Claimant Trust and payable solely from the Claimant Trust Assets.

6.    _Compensation and Duties of Trustees._

The salient terms of each Trustee's employment, including such Trustee's duties and compensation shall be set forth in the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as appropriate.  The Trustees shall each be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

7.    _Cooperation of Debtor and Reorganized Debtor._

To effectively investigate, prosecute, compromise and/or settle the Claims and/or Causes of Action that constitute Claimant Trust Assets (including Estate Claims), the Claimant Trustee, Litigation Trustee, and each of their professionals may require reasonable access to the Debtor's and Reorganized Debtor's documents, information, and work product relating to the Claimant Trust Assets. Accordingly, the Debtor and the Reorganized Debtor, as applicable, shall reasonably cooperate with the Claimant Trustee and Litigation Trustee, as applicable, in their prosecution of Causes of Action and in providing the Claimant Trustee and Litigation Trustee with copies of documents and information in the Debtor's possession, custody, or control on the Effective Date that either Trustee indicates relates to the Estate Claims or other Causes of Action.

The Debtor and Reorganized Debtor shall preserve all records, documents or work product (including all electronic records, documents, or work product) related to the Claims and Causes of Action, including Estate Claims, until the earlier of (a) the dissolution of the Reorganized Debtor or (b) termination of the Claimant Trust and Litigation Sub-Trust.

8.    _United States Federal Income Tax Treatment of the Claimant Trust._

Unless the IRS requires otherwise, for all United States federal income tax purposes, the parties shall treat the transfer of the Claimant Trust Assets to the Claimant Trust as:  (a) a transfer

000965

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-NS   Document 10-19   Filed 12/09/21   Page 126 of 246   PageID 1065
Case 19-34054-sgj11   Doc 1043   Filed 05/28/20   Entered 02/22/21 16:46:04   Page 127 of
161

of the Claimant Trust Assets (other than the amounts set aside in the Disputed Claims Reserve, if the Claimant Trustee makes the election described in Section 7 below) directly to the applicable Claimant Trust Beneficiaries followed by (b) the transfer by the such Claimant Trust Beneficiaries to the Claimant Trust of such Claimant Trust Assets in exchange for the Claimant Trust Interests. Accordingly, the applicable Claimant Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Claimant Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

9. _Tax Reporting._

(a) The Claimant Trustee shall file tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claims Reserve as a separate taxable entity.

(b) The Claimant Trustee shall be responsible for payment, out of the Claimant Trust Assets, of any taxes imposed on the Claimant Trust or its assets.

(c) The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Claimant Trust Beneficiaries of such valuation, and such valuation shall be used consistently for all federal income tax purposes.

(d) The Claimant Trustee shall distribute such tax information to the applicable Claimant Trust Beneficiaries as the Claimant Trustee determines is required by applicable law.

10. _Claimant Trust Assets._

The Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action included in the Claimant Trust Assets (except for the Estate Claims) without any further order of the Bankruptcy Court, and the Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to sell, liquidate, or otherwise monetize all Claimant Trust Assets, except as otherwise provided in this Plan or in the Claimant Trust Agreement, without any further order of the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Litigation Trustee shall have the exclusive right to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Estate Claims included in the Claimant Trust Assets without any further order of the Bankruptcy Court.

From and after the Effective Date, the Trustees, in accordance with section 1123(b)(3) and (4) of the Bankruptcy Code, and on behalf of the Claimant Trust, shall each serve as a representative of the Estate with respect to any and all Claimant Trust Assets, including the Causes of Action and Estate Claims, as appropriate, and shall retain and possess the right to (a) commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Action in any court or other tribunal and (b) sell, liquidate, or otherwise monetize all Claimant Trust Assets.

000966
Appx 2631

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-02280-NS   Document 10-9   Filed 12/30/22   Page 1230 of 1426   PageID 10636
Case 19-34054-sgj11   Doc 1043   Filed 05/23/20   Entered 02/22/21 16:46:04   Page 123 of
161

11. *Claimant Trust Expenses.*

From and after the Effective Date, the Claimant Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Claimant Trust, the Litigation Sub-Trust, and any professionals retained by such parties and entities from the Claimant Trust Assets, except as otherwise provided in the Claimant Trust Agreement.

12. *Trust Distributions to Claimant Trust Beneficiaries.*

The Claimant Trustee, in its discretion, may make Trust Distributions to the Claimant Trust Beneficiaries at any time and/or use the Claimant Trust Assets or proceeds thereof, *provided* that such Trust Distributions or use is otherwise permitted under the terms of the Plan, the Claimant Trust Agreement, and applicable law.

13. *Cash Investments.*

With the consent of the Claimant Trust Oversight Committee, the Claimant Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in a manner consistent with the terms of the Claimant Trust Agreement; *provided, however,* that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

14. *Dissolution of the Claimant Trust and Litigation Sub-Trust.*

The Trustees and the Claimant Trust and Litigation Sub-Trust shall be discharged or dissolved, as the case may be, at such time as: (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Claimant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets; *provided, however,* that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Claimant Trust Assets, by the Bankruptcy Court within 6 months of the beginning of the extended term and

000967

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01228-S   Document 69   Filed 06/10/22   Page 130 of 242   PageID 1627
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:46:06   Page 119 of
161

no extension, together with any prior extensions, shall exceed three years without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes.

Upon dissolution of the Claimant Trust, and pursuant to the Claimant Trust Agreement, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

## C.   **The Reorganized Debtor**

### 1.   *Corporate Existence*

The Debtor will continue to exist after the Effective Date, with all of the powers of partnerships pursuant to the law of the State of Delaware and as set forth in the Reorganized Limited Partnership Agreement.

### 2.   *Cancellation of Equity Interests and Release*

On the Effective Date, (i) all prepetition Equity Interests, including the Class A Limited Partnership Interests and the Class B/C Limited Partnership Interests, in the Debtor shall be canceled, and (ii) all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, the Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.

### 3.   *Issuance of New Partnership Interests*

On the Effective Date, the Debtor or the Reorganized Debtor, as applicable, will issue new Class A Limited Partnership Interests to (i) the Claimant Trust, as limited partner, and (ii) New GP LLC, as general partner, and will admit (a) the Claimant Trust as the limited partner of the Reorganized Debtor, and (b) New GP LLC as the general partner of the Reorganized Debtor. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor. Also, on the Effective Date, the Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement and receive partnership interests in the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement.

The Reorganized Limited Partnership Agreement does not provide for, and specifically disclaims, the indemnification obligations under the Limited Partnership Agreement, including any such indemnification obligations that accrued or arose or could have been brought prior to the Effective Date. Any indemnification Claims under the Limited Partnership Agreement that accrued, arose, or could have been filed prior to the Effective Date will be resolved through the Claims resolution process provided that a Claim is properly filed in accordance with the Bankruptcy Code, the Plan, or the Bar Date Order. Each of the Debtor, the Reorganized Debtor, the Claimant Trust, and the Litigation Sub-Trust reserve all rights with respect to any such indemnification Claims.

000968
App. 0688

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01270-NS    Document 10-19    Filed 2/27/22    Page 119 of 242   PageID 10638
Case 19-34054-sgj11   Doc 1943   Filed 05/25/22   Entered 02/22/21 16:48:16   Page 120 of
161

4. _Management of the Reorganized Debtor_

Subject to and consistent with the terms of the Reorganized Limited Partnership Agreement, the Reorganized Debtor shall be managed by its general partner, New GP LLC. The initial officers and employees of the Reorganized Debtor shall be selected by the Claimant Trustee. The Reorganized Debtor may, in its discretion, also utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees.

As set forth in the Reorganized Limited Partnership Agreement, New GP LLC will receive a fee for managing the Reorganized Debtor. Although New GP LLC will be a limited liability company, it will elect to be treated as a C-Corporation for tax purposes. Therefore, New GP LLC (and any taxable income attributable to it) will be subject to corporate income taxation on a standalone basis, which may reduce the return to Claimants.

5. _Vesting of Assets in the Reorganized Debtor_

Except as otherwise provided in this Plan or the Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

6. _Purpose of the Reorganized Debtor_

Except as may be otherwise provided in this Plan or the Confirmation Order, the Reorganized Debtor will continue to manage the Reorganized Debtor Assets (which shall include, for the avoidance of doubt, serving as the investment manager of the Managed Funds) and may use, acquire or dispose of the Reorganized Debtor Assets and compromise or settle any Claims with respect to the Reorganized Debtor Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The Reorganized Debtor shall oversee the resolution of Claims in Class 1 through Class 7.

Without limiting the foregoing, the Reorganized Debtor will pay the charges that it incurs after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

7. _Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets_

Any proceeds received by the Reorganized Debtor will be distributed to the Claimant Trust, as limited partner, and New GP LLC, as general partner, in the manner set forth in the Reorganized Limited Partnership Agreement. As set forth in the Reorganized Limited Partnership Agreement,



Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01298-NS    Document 10-19    Filed 08/05/22    Page 208 of 242    PageID 10649
Case 19-34054-sgj11    Doc 1943    Filed 05/08/20    Page 93 of 161

the Reorganized Debtor may, from time to time distribute Reorganized Debtor Assets to the Claimant Trust either in Cash or in-kind, including to institute the wind-down and dissolution of the Reorganized Debtor. Any assets distributed to the Claimant Trust will be (i) deemed transferred in all respects as forth in ARTICLE IV.B.1, (ii) deemed Claimant Trust Assets, and (iii) administered as Claimant Trust Assets.

### D.    **Company Action**

Each of the Debtor, the Reorganized Debtor, and the Trustees, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, the Claimant Trust Agreement, the Reorganized Limited Partnership Agreement, or the New GP LLC Documents, as applicable, in the name and on behalf of the Debtor, the Reorganized Debtor, or the Trustees, as applicable, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers, or directors of the Debtor or the Reorganized Debtor, as applicable, or by any other Person.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the stockholders, partners, directors, managers, or members of the Debtor, any Related Entity, or any Affiliate thereof (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, partners, directors, managers or members of such Persons, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in this Plan involving the legal or corporate structure of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, and any legal or corporate action required by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, in connection with this Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, partners, directors, managers, or members of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, or by any other Person. On the Effective Date, the appropriate officers of the Debtor and the Reorganized Debtor, as applicable, as well as the Trustees, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and the Reorganized Debtor, as well as the Trustees, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The appropriate officer of the Debtor, the Reorganized Debtor, as well as the Trustees, will be authorized to certify or attest to any of the foregoing actions.

000970

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-N   Document 16-9   Filed 02/04/22   Page 122 of 242   PageID 10650
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:48:04   Page 122 of
161

### E.   Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, from and after the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or Equity Interests extinguished pursuant to the prior sentence will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

### F.   Cancellation of Notes, Certificates and Instruments

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan, and the obligations of the Debtor thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

### G.   Cancellation of Existing Instruments Governing Security Interests

Upon payment or other satisfaction of an Allowed Class 1 or Allowed Class 2 Claim, or promptly thereafter, the Holder of such Allowed Class 1 or Allowed Class 2 Claim shall deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, any collateral or other property of the Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Class 1 or Allowed Class 2 Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or *lis pendens*, or similar interests or documents.

### H.   Control Provisions

To the extent that there is any inconsistency between this Plan as it relates to the Claimant Trust, the Claimant Trust Agreement, the Reorganized Debtor, or the Reorganized Limited Partnership Agreement, this Plan shall control.

00097 1
Appx 9886

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-S   Document 16-9   Filed 12/05/22   Page 235 of 242   PageID 10661
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:46:04   Page 123 of
161

**I.**     **Treatment of Vacant Classes**

Any Claim or Equity Interest in a Class considered vacant under ARTICLE III.C of this Plan shall receive no Plan Distributions.

**J.**     **Plan Documents**

The documents, if any, to be Filed as part of the Plan Documents, including any documents filed with the Plan Supplement, and any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in ARTICLE I hereof) and fully enforceable as if stated in full herein.

The Debtor and the Committee are currently working to finalize the forms of certain of the Plan Documents to be filed with the Plan Supplement. To the extent that the Debtor and the Committee cannot agree as to the form and content of such Plan Documents, they intend to submit the issue to non-binding mediation pursuant to the *Order Directing Mediation* entered on August 3, 2020 [D.I. 912].

**K.**     **Highland Capital Management, L.P. Retirement Plan and Trust**

The Highland Capital Management, L.P. Retirement And Trust ("<u>Pension Plan</u>") is a single-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("<u>ERISA</u>"). 29 U.S.C. §§ 1301-1461. The Debtor is the contributing sponsor and, as such, the PBGC asserts that the Debtor is liable along with any members of the contributing sponsor's controlled-group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) with respect to the Pension Plan.

Upon the Effective Date, the Reorganized Debtor shall be deemed to have assumed the Pension Plan and shall comply with all applicable statutory provisions of ERISA and the Internal Revenue Code (the "<u>IRC</u>"), including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083; paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307; and administering the Pension Plan in accordance with its terms and the provisions of ERISA and the IRC. In the event that the Pension Plan terminates after the Plan of Reorganization Effective Date, the PBGC asserts that the Reorganized Debtor and each of its controlled group members will be responsible for the liabilities imposed by Title IV of ERISA.

Notwithstanding any provision of the Plan, the Confirmation Order, or the Bankruptcy Code (including section 1141 thereof) to the contrary, neither the Plan, the Confirmation Order, or the Bankruptcy Code shall be construed as discharging, releasing, exculpating or relieving the Debtor, the Reorganized Debtor, or any person or entity in any capacity, from any liability or responsibility, if any, with respect to the Pension Plan under any law, governmental policy, or regulatory provision. PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility against any person or entity as a result of any of the provisions of the Plan, the Confirmation Order, or the Bankruptcy Code. The Debtor reserves the right to contest any such liability or responsibility.

000972
Appx 9887

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 16-9   Filed 02/06/22   Page 236 of 366   PageID 1067
Case 21-30905-sgj11   Doc 1043   Filed 05/25/22   Entered 05/25/22 16:48:16   Page 124 of
161

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases**

Unless an Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtor pursuant to this Plan on or prior to the Confirmation Date; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtor on or before the Confirmation Date; (iv) contains a change of control or similar provision that would be triggered by the Chapter 11 Case (unless such provision has been irrevocably waived); or (v) is specifically designated as a contract or lease to be assumed in the Plan or the Plan Supplement, on the Confirmation Date, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease is listed in the Plan Supplement.

At any time on or prior to the Confirmation Date, the Debtor may (i) amend the Plan Supplement in order to add or remove a contract or lease from the list of contracts to be assumed or (ii) assign (subject to applicable law) any Executory Contract or Unexpired Lease, as determined by the Debtor in consultation with the Committee, or the Reorganized Debtor, as applicable.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, rejections, and assumptions and assignments. Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. To the extent applicable, no change of control (or similar provision) will be deemed to occur under any such Executory Contract or Unexpired Lease.

If certain, but not all, of a contract counterparty's Executory Contracts and/or Unexpired Leases are rejected pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being rejected pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

Notwithstanding anything herein to the contrary, the Debtor shall assume or reject that certain real property lease with Crescent TC Investors L.P. ("Landlord") for the Debtor's headquarters located at 200/300 Crescent Ct., Suite #700, Dallas, Texas 75201 (the "Lease") in accordance with the notice to Landlord, procedures and timing required by 11 U.S.C. §365(d)(4),

000973

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 16-9   Filed 02/07/23   Page 206 of 426   PageID 1068
Case 19-34054-sgj11   Doc 1043   Filed 05/28/20   Entered 03/22/21 16:48:04   Page 125 of
161

as modified by that certain *Agreed Order Granting Motion to Extend Time to Assume or Reject Unexpired Nonresidential Real Property Lease* [Docket No. 1122].

**B.**    **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Any Executory Contract or Unexpired Lease not assumed or rejected on or before the Confirmation Date shall be deemed rejected, pursuant to the Confirmation Order.  Any Person asserting a Rejection Claim shall File a proof of claim within thirty days of the Confirmation Date. Any Rejection Claims that are not timely Filed pursuant to this Plan shall be forever disallowed and barred.  If one or more Rejection Claims are timely Filed, the Claimant Trustee may File an objection to any Rejection Claim.

Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with ARTICLE III of this Plan.

**C.**    **Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases**

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed or assigned hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor upon assumption or assignment thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts may otherwise agree.  The Debtor may serve a notice on the Committee and parties to Executory Contracts or Unexpired Leases to be assumed or assigned reflecting the Debtor's or Reorganized Debtor's intention to assume or assign the Executory Contract or Unexpired Lease in connection with this Plan and setting forth the proposed cure amount (if any).

If a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Debtor, the Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assigned or (3) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assignment.

Assumption or assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable cure amounts pursuant to this ARTICLE V.C shall result in the full release and satisfaction of any cure amounts, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assignment.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed or assigned in the Chapter 11 Case, including pursuant to the Confirmation Order, and for which any cure amounts have been fully paid pursuant to this ARTICLE V.C, shall be deemed disallowed and expunged as of the Confirmation Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

000974
Appx 0880

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-NS   Document 10-19   Filed 07/30/21   Page 236 of 256   PageID 0694
Case 19-34054-sgj11   Doc 1043   Filed 05/26/20   Entered 03/22/21 16:48:46   Page 036 of 161

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.**    **Dates of Distributions**

Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtor shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Allowed Equity Interests in the applicable Class and in the manner provided herein. If any payment or act under this Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in this Plan. Except as otherwise provided in this Plan, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Claims and Equity Interests against the Debtor shall be deemed fixed and adjusted pursuant to this Plan and none of the Debtor, the Reorganized Debtor, or the Claimant Trust will have liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Confirmation Order. All payments and all distributions made by the Distribution Agent under this Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Debtor and the Reorganized Debtor.

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtor and the Equity Interests in the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests. The Debtor, the Reorganized Debtor, the Trustees, and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Claims against the Debtor or Equity Interests in the Debtor occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under this Plan to such Persons or the date of such distributions.

**B.**    **Distribution Agent**

Except as provided herein, all distributions under this Plan shall be made by the Claimant Trustee, as Distribution Agent, or by such other Entity designated by the Claimant Trustee, as a Distribution Agent on the Effective Date or thereafter. The Reorganized Debtor will be the Distribution Agent with respect to Claims in Class 1 through Class 7.

000975

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-NS   Document 10-19   Filed 10/05/21   Page 236 of 426   PageID 10045
Case 3:21-cv-01280-NS   Document 10-19   Filed 05/26/21   Page 236 of 426   PageID 10045
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:46:04   Page 127 of
161

The Claimant Trustee, or such other Entity designated by the Claimant Trustee to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

The Distribution Agent shall not have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

## C.   **Cash Distributions**

Distributions of Cash may be made by wire transfer from a domestic bank, except that Cash payments made to foreign creditors may be made in such funds and by such means as the Distribution Agent determines are necessary or customary in a particular foreign jurisdiction.

## D.   **Disputed Claims Reserve**

On or prior to the Initial Distribution Date, the Claimant Trustee shall establish, fund and maintain the Disputed Claims Reserve(s) in the appropriate Disputed Claims Reserve Amounts on account of any Disputed Claims.

## E.   **Distributions from the Disputed Claims Reserve**

The Disputed Claims Reserve shall at all times hold Cash in an amount no less than the Disputed Claims Reserve Amount. To the extent a Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, within 30 days of the date on which such Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, the Claimant Trustee shall distribute from the Disputed Claims Reserve to the Holder thereof any prior distributions, in Cash, that would have been made to such Allowed Claim if it had been Allowed as of the Effective Date. For the avoidance of doubt, each Holder of a Disputed Claim that subsequently becomes an Allowed Claim will also receive its Pro Rata share of the Claimant Trust Interests. If, upon the resolution of all Disputed Claims any Cash remains in the Disputed Claims Reserve, such Cash shall be transferred to the Claimant Trust and be deemed a Claimant Trust Asset.

## F.   **Rounding of Payments**

Whenever this Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash to be distributed under this Plan remains undistributed as a result of the aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under this Plan.

000976   Appx. 9821

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 10-19   Filed 11/04/22   Page 240 of 266   PageID 10746
Case 19-34054-sgj11   Doc 1043   Filed 05/28/20   Entered 05/28/20 16:48:06   Page 128 of
161

### G.   *De Minimis* Distribution

Except as to any Allowed Claim that is Unimpaired under this Plan, none of the Debtor, the Reorganized Debtor, or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in ARTICLE VI.J hereof within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim. *De minimis* distributions for which no such request is timely received shall revert to the Claimant Trust. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

### H.   Distributions on Account of Allowed Claims

Except as otherwise agreed by the Holder of a particular Claim or as provided in this Plan, all distributions shall be made pursuant to the terms of this Plan and the Confirmation Order. Except as otherwise provided in this Plan, distributions to any Holder of an Allowed Claim shall, to the extent applicable, be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

### I.   General Distribution Procedures

The Distribution Agent shall make all distributions of Cash or other property required under this Plan, unless this Plan specifically provides otherwise. All Cash and other property held by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, for ultimate distribution under this Plan shall not be subject to any claim by any Person.

### J.   Address for Delivery of Distributions

Distributions to Holders of Allowed Claims, to the extent provided for under this Plan, shall be made (1) at the addresses set forth in any written notices of address change delivered to the Debtor and the Distribution Agent; (2) at the address set forth on any Proofs of Claim Filed by such Holders (to the extent such Proofs of Claim are Filed in the Chapter 11 Case), (2), or (3) at the addresses in the Debtor's books and records.

If there is any conflict or discrepancy between the addresses set forth in (1) through (3) in the foregoing sentence, then (i) the address in Section (2) shall control; (ii) if (2) does not apply, the address in (1) shall control, and (iii) if (1) does not apply, the address in (3) shall control.

### K.   Undeliverable Distributions and Unclaimed Property

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtor or the Claimant Trust as undeliverable, no further distribution shall be made to such Holder, and Distribution Agent shall not have any obligation to make any further distribution to the Holder, unless and until the Distribution Agent is notified in writing of such Holder's then current address.

000977
Appx. 9892

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01280-NS    Document 16-9    Filed 12/01/22    Page 284 of 426    PageID 10747
Case 19-34054-sgj11    Doc 1943    Filed 02/22/21    Entered 02/22/21 16:48:16    Page 129 of
161

Any Entity that fails to claim any Cash within six months from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under this Plan and such Cash shall thereafter be deemed an Claimant Trust Asset in all respects and for all purposes. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor's Estate, the Reorganized Debtor, the Claimant Trust, or against any Holder of an Allowed Claim to whom distributions are made by the Distribution Agent.

**L.    Withholding Taxes**

In connection with this Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. The Distribution Agent shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. As a condition to receiving any distribution under this Plan, the Distribution Agent may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to this Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Distribution Agent to comply with applicable tax reporting and withholding laws. If a Holder fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

**M.    Setoffs**

The Distribution Agent may, to the extent permitted under applicable law, set off against any Allowed Claim and any distributions to be made pursuant to this Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Debtor, the Reorganized Debtor, or the Distribution Agent may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with this Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or the Claimant Trustee of any such claims, rights and causes of action that the Debtor, the Reorganized Debtor, or Claimant Trustee possesses against such Holder. Any Holder of an Allowed Claim subject to such setoff reserves the right to challenge any such setoff in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

**N.    Surrender of Cancelled Instruments or Securities**

As a condition precedent to receiving any distribution pursuant to this Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to ARTICLE IV of this Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Distribution Agent unless waived in writing by the Distribution Agent.

000978

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 16-9   Filed 02/07/24   Page 244 of 266 Page 294 of 426 PageID 1048
Case 19-34054-sgj11   Doc 1043   Filed 05/28/20   Entered 04/22/21 16:41:06   Page 240 of
161

O.      **Lost, Stolen, Mutilated or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by this Plan, deliver to the Distribution Agent: (i) evidence reasonably satisfactory to the Distribution Agent of such loss, theft, mutilation, or destruction; and (ii) such security or indemnity as may be required by the Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest. Upon compliance with ARTICLE VI.O of this Plan as determined by the Distribution Agent, by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under this Plan, be deemed to have surrendered such security or note to the Distribution Agent.

### ARTICLE VII.
### PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.      **Filing of Proofs of Claim**

Unless such Claim appeared in the Schedules and is not listed as disputed, contingent, or unliquidated, or such Claim has otherwise been Allowed or paid, each Holder of a Claim was required to file a Proof of Claim on or prior to the Bar Date.

B.      **Disputed Claims**

Following the Effective Date, each of the Reorganized Debtor or the Claimant Trustee, as applicable, may File with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Disputed Equity Interest, request the Bankruptcy Court subordinate any Claims to Subordinated Claims, or any other appropriate motion or adversary proceeding with respect to the foregoing by the Claims Objection Deadline or, at the discretion of the Reorganized Debtor or Claimant Trustee, as applicable, compromised, settled, withdrew or resolved without further order of the Bankruptcy Court, and (ii) unless otherwise provided in the Confirmation Order, the Reorganized Debtor or the Claimant Trust, as applicable, are authorized to settle, or withdraw any objections to, any Disputed Claim or Disputed Equity Interests following the Effective Date without further notice to creditors (other than the Entity holding such Disputed Claim or Disputed Equity Interest) or authorization of the Bankruptcy Court, in which event such Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of this Plan.

C.      **Procedures Regarding Disputed Claims or Disputed Equity Interests**

No payment or other distribution or treatment shall be made on account of a Disputed Claim or Disputed Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interests and the amount of such Allowed Claim or Equity Interest, as applicable, is determined by order of the Bankruptcy Court or by stipulation between the Reorganized Debtor or Claimant Trust, as applicable, and the Holder of the Claim or Equity Interest.

000979   App. 0994

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-S   Document 16-9   Filed 2/16/24   Page 304 of 426   PageID 0749
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:48:16   Page 201 of
161

**D.**     **Allowance of Claims and Equity Interests**

Following the date on which a Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interest after the Distribution Date, the Distribution Agent shall make a distribution to the Holder of such Allowed Claim or Equity Interest in accordance with the Plan.

1.     *Allowance of Claims*

After the Effective Date and subject to the other provisions of this Plan, the Reorganized Debtor or the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Claim. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

2.     *Estimation*

Subject to the other provisions of this Plan, the Debtor, prior to the Effective Date, and the Reorganized Debtor or the Claimant Trustee, as applicable, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Disputed Equity Interest pursuant to applicable law and in accordance with this Plan and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Disputed Equity Interest, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  The rights and objections of all parties are reserved in connection with any such estimation proceeding.

3.     *Disallowance of Claims*

Any Claims or Equity Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Reorganized Debtor or the Claimant Trust, as applicable, by that Entity have been turned over or paid to the Reorganized Debtor or the Claimant Trust, as applicable.

**EXCEPT AS OTHERWISE PROVIDED HEREIN OR AS AGREED TO BY THE DEBTOR, REORGANIZED DEBTOR, OR CLAIMANT TRUSTEE, AS APPLICABLE,**

Appx. 8685
000980

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01280-N    Document 10-19    Filed 12/24/22    Page 314 of 426    PageID 10751
Case 19-34054-sgj11    Doc 1943    Filed 02/08/21    Entered 02/08/21 16:48:06    Page 04 of 2042 of
161

**ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

**ARTICLE VIII.**
**EFFECTIVENESS OF THIS PLAN**

**A.**    **Conditions Precedent to the Effective Date**

The Effective Date of this Plan will be conditioned upon the satisfaction or waiver by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee with such consent not to be unreasonably withheld), pursuant to the provisions of ARTICLE VIII.B of this Plan of the following:

- This Plan and the Plan Documents, including the Claimant Trust Agreement and the Reorganized Limited Partnership Agreement, and all schedules, documents, supplements and exhibits to this Plan shall have been Filed in form and substance reasonably acceptable to the Debtor and the Committee.

- The Confirmation Order shall have become a Final Order and shall be in form and substance reasonably acceptable to the Debtor and the Committee.  The Confirmation Order shall provide that, among other things, (i) the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee are authorized to take all actions necessary or appropriate to effectuate and consummate this Plan, including, without limitation, (a) entering into, implementing, effectuating, and consummating the contracts, instruments, releases, and other agreements or documents created in connection with or described in this Plan, (b) assuming the Executory Contracts and Unexpired Leases set forth in the Plan Supplement, (c) making all distributions and issuances as required under this Plan; and (d) entering into any transactions as set forth in the Plan Documents; (ii) the provisions of the Confirmation Order and this Plan are nonseverable and mutually dependent; (iii) the implementation of this Plan in accordance with its terms is authorized; (iv) pursuant to section 1146 of the Bankruptcy Code, the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under this Plan, shall not be subject to any Stamp or Similar Tax; and (v) the vesting of the Claimant Trust Assets in the Claimant Trust and the Reorganized Debtor Assets in the Reorganized Debtor, in each case as of the Effective Date free and clear of liens and claims to the fullest extent permissible under applicable law pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

- All documents and agreements necessary to implement this Plan, including without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust

000981
Appx. 08896

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01270-NS   Document 10-19   Filed 05/25/22   Page 2 of 26   PageID 10761
Case 19-34054-sgj11   Doc 1943   Filed 02/22/21   Entered 02/22/21 16:11:16   Page 16 of 161

Agreement, and the New GP LLC Documents, in each case in form and substance reasonably acceptable to the Debtor and the Committee, shall have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement this Plan, including, without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, shall have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent effectiveness or consummation of the Restructuring.

- The Debtor shall have obtained applicable directors' and officers' insurance coverage that is acceptable to each of the Debtor, the Committee, the Claimant Trust Oversight Committee, the Claimant Trustee and the Litigation Trustee.

- The Professional Fee Reserve shall be funded pursuant to this Plan in an amount determined by the Debtor in good faith.

## B.   Waiver of Conditions

The conditions to effectiveness of this Plan set forth in this ARTICLE VIII (other than that the Confirmation Order shall have been entered) may be waived in whole or in part by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee), without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or effectuate this Plan. The failure to satisfy or waive a condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable.

## C.   Dissolution of the Committee

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on

46

Appx. 08887

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01228-NS   Document 16-9   Filed 12/06/22   Page 134 of 242   PageID 1052
Case 3:40-cv-03091-sgj11   Doc 1043   Filed 05/28/20   Entered 04/22/21 16:16:04   Page 134 of
161

the Effective Date or filed and served after the Effective Date pursuant to the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent either of the Trustees or to be compensated or reimbursed per the Plan and the Claimant Trust Agreement in connection with such representation.

## ARTICLE IX.
## EXCULPATION, INJUNCTION AND RELATED PROVISIONS

### A.    General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

### B.    Discharge of Claims

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests. Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### C.    Exculpation

Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); *provided, however,* the foregoing

000983

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01260-NS   Document 10-19   Filed 12/27/22   Page 134 of 242   PageID 1073
Case 3:40-09-sgj11   Doc 1043   Filed 05/26/208   Entered 04/22/21 16:48:06   Page 20 of
161

will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

### D.     Releases by the Debtor

On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Person.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release: (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance Actions, or (v) any Causes of Action arising from willful misconduct, criminal misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

Notwithstanding anything herein to the contrary, any release provided pursuant to this ARTICLE IX.D (i) with respect to a Senior Employee, is conditioned in all respects on (a) such Senior Employee executing a Senior Employee Stipulation on or prior to the Effective Date and (b) the reduction of such Senior Employee's Allowed Claim as set forth in the Senior Employee Stipulation (such amount, the "Reduced Employee Claim"), and (ii) with respect to any Employee, including a Senior Employee, shall be deemed null and void and of no force and effect (1) if there is more than one member of the Claimant Trust Oversight Committee who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full Claimant Trust Oversight Committee) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

- sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation

000984

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-NS   Document 10-19   Filed 12/23/22   Page 135 of 242 PageID 0754
Case 3:21-cv-01710-sgj11   Doc 1043   Filed 05/25/22   Entered 04/22/21 16:48:06   Page 135 of
161

Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

- has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets, or

- (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (1) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (2) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing.

*Provided, however,* that the release provided pursuant to this ARTICLE IX.D will vest and the Employee will be indefeasibly released pursuant to this ARTICLE IX.D if such Employee's release has not been deemed null and void and of no force and effect on or prior to the date that is the date of dissolution of the Claimant Trust pursuant to the Claimant Trust Agreement.

By executing the Senior Employee Stipulation embodying this release, each Senior Employee acknowledges and agrees, without limitation, to the terms of this release and the tolling agreement contained in the Senior Employee Stipulation.

The provisions of this release and the execution of a Senior Employee Stipulation will not in any way prevent or limit any Employee from (i) prosecuting its Claims, if any, against the Debtor's Estate, (ii) defending him or herself against any claims or causes of action brought against the Employee by a third party, or (iii) assisting other persons in defending themselves from any Estate Claims brought by the Litigation Trustee (but only with respect to Estate Claims brought by the Litigation Trustee and not collection or other actions brought by the Claimant Trustee).

**E.     Preservation of Rights of Action**

1.     *Maintenance of Causes of Action*

Except as otherwise provided in this Plan, after the Effective Date, the Reorganized Debtor or the Claimant Trust will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action included in the Reorganized Debtor Assets or Claimant Trust Assets, as applicable, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case and, as the successors in interest to the Debtor and the Estate, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Causes of Action without notice to or approval from the Bankruptcy Court.

2.     *Preservation of All Causes of Action Not Expressly Settled or Released*

Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including, without limitation, the Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtor or Claimant Trust, as applicable (including,

000985

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01270-NS    Document 10-19    Filed 12/09/22    Page 136 of 242    PageID 10355
Case 19-34054-sgj11    Doc 1943    Filed 05/26/20    Entered 04/22/21 16:48:16    Page 10 of
161

without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action as a consequence of the confirmation, effectiveness, or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such Causes of Action have been expressly released in this Plan or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the right of the Reorganized Debtor or the Claimant Trust to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

**F.    Injunction**

**Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.**

**Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the property of the Debtor, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor or the property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtor or against property or interests in property of the Debtor, except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

**The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Debtor, including, but not limited to, the Reorganized Debtor, the Litigation Sub-Trust, and the Claimant Trust and their respective property and interests in property.**

**Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court**

000986
Appx. 0984

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-N   Document 16-9   Filed 09/22/21   Page 375 of 426   PageID 9556
Case 19-34054-sgj11   Doc 1943   Filed 02/26/21   Entered 02/22/21 16:45:16   Page 018 of
161

(i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; *provided, however,* the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

G.    **Duration of Injunctions and Stays**

ARTICLE II. Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Bankruptcy Court, (i) all injunctions and stays entered during the Chapter 11 Case and in existence on the Confirmation Date shall remain in full force and effect in accordance with their terms; and (ii) the automatic stay arising under section 362 of the Bankruptcy Code shall remain in full force and effect subject to Section 362(c) of the Bankruptcy Code, and to the extent necessary if the Debtor does not receive a discharge, the Court will enter an equivalent order under Section 105.

H.    **Continuance of January 9 Order**

Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Bankruptcy Court, the restrictions set forth in paragraphs 9 and 10 of the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course*, entered by the Bankruptcy Court on January 9, 2020 [D.I. 339] shall remain in full force and effect following the Effective Date.

**ARTICLE X.**
**BINDING NATURE OF PLAN**

On the Effective Date, and effective as of the Effective Date, the Plan, including, without limitation, the provisions in ARTICLE IX, will bind, and will be deemed binding upon, all Holders of Claims against and Equity Interests in the Debtor and such Holder's respective successors and assigns, to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder will receive or retain any property or interest in property under the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to this Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated thereby is to be recorded with respect to nay taxes of the kind specified in Bankruptcy Code section 1146(a).

000987
Appx. 0987

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01277-NS    Document 10-19    Filed 05/22/22    Page 138 of 242    PageID 10557
Case 3:40900-sgj11    Document 43    Filed 05/23/2208    Entered 03/22/21 16:48:06    Page 020 of
161

# ARTICLE XI.
## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Reorganized Debtor, the Claimant Trust, and this Plan to the maximum extent legally permissible, including, without limitation, jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

- grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Reorganized Debtor shall pay Professionals in the ordinary course of business for any work performed after the Effective Date subject to the terms of this Plan and the Confirmation Order, and such payment shall not be subject to the approval of the Bankruptcy Court;

- resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor, Reorganized Debtor, or Claimant Trust may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, any dispute regarding whether a contract or lease is or was executory or expired;

- make any determination with respect to a claim or cause of action against a Protected Party as set forth in ARTICLE IX;

- resolve any claim or cause of action against an Exculpated Party or Protected Party arising from or related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, or the transactions in furtherance of the foregoing;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any sale, disposition, assignment or other transfer of the Reorganized Debtor Assets or Claimant Trust Assets, including any break-up compensation or expense reimbursement that may be requested by a purchaser thereof*; provided, however,* that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

000988
Appx. 0983

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 16-9   Filed 2/0/22 Page 295 of 2266 Page 4 395 of 422 6 PageID 1053
Case 3:40-90-sgj 11   Document 43   Filed 05/03/22 3208   Entered 03/22/22 16:53:06 Page 05/2050 of
161

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any borrowing or the incurrence of indebtedness, whether secured or unsecured by the Reorganized Debtor or Claimant Trust; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- resolve any issues related to any matters adjudicated in the Chapter 11 Case;

- ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of this Plan;

- decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action (including Estate Claims) that are pending as of the Effective Date or that may be commenced in the future, including approval of any settlements, compromises, or other resolutions as may be requested by the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee whether under Bankruptcy Rule 9019 or otherwise, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor, the Claimant Trustee, or Litigation Trustee after the Effective Date, provided that the Reorganized Debtor, the Claimant Trustee, and the Litigation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

- enter such orders as may be necessary or appropriate to implement, effectuate, or consummate the provisions of this Plan, the Plan Documents, and all other contracts, instruments, releases, and other agreements or documents adopted in connection with this Plan, the Plan Documents, or the Disclosure Statement;

- resolve any cases, controversies, suits or disputes that may arise in connection with the implementation, effectiveness, consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

- issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, effectiveness, consummation, or enforcement of this Plan, except as otherwise provided in this Plan;

- enforce the terms and conditions of this Plan and the Confirmation Order;

- resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification, and other provisions contained herein and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

- enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;


000989

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 10-19   Filed 12/05/22   Page 405 of 426   PageID 1059
Case 3:409003-sgj11   Document 1043   Filed 05/26/23   Entered 03/22/22 16:48:16   Page 051 of
161

- resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents, or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

- enter an order concluding or closing the Chapter 11 Case after the Effective Date.

**ARTICLE XII.**
**MISCELLANEOUS PROVISIONS**

**A.    Payment of Statutory Fees and Filing of Reports**

All outstanding Statutory Fees shall be paid on the Effective Date.  All such fees payable, and all such fees that become due and payable, after the Effective Date shall be paid by the Reorganized Debtor when due or as soon thereafter as practicable until the Chapter 11 Case is closed, converted, or dismissed.  The Claimant Trustee shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Claimant Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee.  The Reorganized Debtor shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**B.    Modification of Plan**

Effective as of the date hereof and subject to the limitations and rights contained in this Plan:  (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order with the consent of the Committee, such consent not to be unreasonably withheld; and (b) after the entry of the Confirmation Order, the Debtor may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**C.    Revocation of Plan**

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File a subsequent chapter 11 plan with the consent of the Committee.  If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan, assumption of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

000990
Appx 0985

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:22-cv-01280-NS   Document 10-19   Filed 2259/522   Page 142 of 226   PageID 1085
Case 3:09-cv-11   Doc 1043   Filed 05/26/2208   Entered 03/22/21 16:16:04   Page 142 of
161

**D.      Obligations Not Changed**

Notwithstanding anything in this Plan to the contrary, nothing herein will affect or otherwise limit or release any non-Debtor Entity's (including any Exculpated Party's) duties or obligations, including any contractual and indemnification obligations, to the Debtor, the Reorganized Debtor, or any other Entity whether arising under contract, statute, or otherwise.

**E.      Entire Agreement**

Except as otherwise described herein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**F.      Closing of Chapter 11 Case**

The Claimant Trustee shall, after the Effective Date and promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

**G.      Successors and Assigns**

This Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns, including, without limitation, the Reorganized Debtor and the Claimant Trustee.  The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

**H.      Reservation of Rights**

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs.  Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor, the Reorganized Debtor, the Claimant Trustee, or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (1) the Debtor, the Reorganized Debtor, or the Claimant Trustee with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Documents, nor anything contained in this Plan, will constitute an admission by the Debtor that any such contract or lease is or is not an executory contract or lease or that the Debtor, the Reorganized Debtor, the Claimant Trustee, or their respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the

000991
Appx. 0906

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-NS   Document Exhibit 19   Filed 05/25/22 Page 255 of 426 Page ID 5361
Case 19-34054-sgj11   Doc 1943   Filed 05/22/21   Entered 05/22/21 16:18:16   Page 143 of
161

Debtor, the Reorganized Debtor, or the Claimant Trustee under any executory or non-executory contract.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, under any executory or non-executory contract or lease.

If there is a dispute regarding whether a contract or lease is or was executory at the time of its assumption under this Plan, the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract.

**I.      Further Assurances**

The Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.  On or before the Effective Date, the Debtor shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**J.      Severability**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**K.      Service of Documents**

All notices, requests, and demands to or upon the Debtor, the Reorganized Debtor, or the Claimant Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered addressed as follows:

**If to the Claimant Trust:**

Highland Claimant Trust
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700

000992
App. 0985

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-NS   Document 10-19   Filed 05/25/22   Page 435 of 426   PageID 0862
Case 3:21-cv-00909-sgj11   Document 43   Filed 05/26/2208   Entered 03/22/2216 Filed 04/16/2054 of
161

Dallas, Texas 75201
Attention:   James P. Seery, Jr.

**If to the Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:   James P. Seery, Jr.

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Attn:   Jeffrey N. Pomerantz, Esq.
        Ira D. Kharasch, Esq.
        Gregory V. Demo, Esq.

**If to the Reorganized Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:   James P. Seery, Jr.
**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Attn:   Jeffrey N. Pomerantz, Esq.
        Ira D. Kharasch, Esq.
        Gregory V. Demo, Esq.

**L.**    **Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code**

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to

000993
Appx 2088

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01280-NS    Document 10-19    Filed 2/25/2163age 145 of 242 Page ID 0868
Case 19-34054-sgj11    Document 3423    Filed 05/25/2208    Page 03/22/21 6:Filed 04/Page 25 of
161

evidence and implement the provisions of and the distributions to be made under this Plan; (ii) the maintenance or creation of security or any Lien as contemplated by this Plan; and (iii) assignments, sales, or transfers executed in connection with any transaction occurring under this Plan.

## M.    Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Texas, without giving effect to the principles of conflicts of law of such jurisdiction; *provided, however,* that corporate governance matters relating to the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trust, as applicable, shall be governed by the laws of the state of organization of the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trustee, as applicable.

## N.    Tax Reporting and Compliance

The Debtor is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor is for all taxable periods ending after the Petition Date through, and including, the Effective Date.

## O.    Exhibits and Schedules

All exhibits and schedules to this Plan, if any, including the Exhibits and the Plan Documents, are incorporated and are a part of this Plan as if set forth in full herein.

## P.    Controlling Document

In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control.  The provisions of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and of the Confirmation Order, on the other hand, shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however,* that if there is determined to be any inconsistency between any provision of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and any provision of the Confirmation Order, on the other hand, that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan, the Disclosure Statement, and the Plan Documents, as applicable.

*[Remainder of Page Intentionally Blank]*

000994

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-NS    Document 10-69    Filed 05/25/22    Page 45 of 226    PageID 10894
Case 19-34054-sgj11    Doc 1943    Filed 05/25/22    Entered 05/25/22 16:00:36    Page 26 of
161

Dated:  January 22, 2021

Respectfully submitted,

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By:

James P. Seery, Jr.
Chief Executive Officer and Chief Restructuring
Officer

Prepared by:

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
            ikharasch@pszjlaw.com
            gdemo@pszjlaw.com

and

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
            ZAnnable@HaywardFirm.com

*Counsel for the Debtor and Debtor-in-Possession*

## Exhibit B

**Schedule of CLO Management Agreements and Related Contracts to Be Assumed**

000996

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01228-NS    Document 10-19    Page 260 of 226    Page 476 of 236    Page ID 0996
Case 3:19-03904-sgj11    Document 1043   Filed 05/25/2208   Entered 03/22/21 16:48:16   Page 147 of
161

### Schedule of CLO Management Agreements and Related Contracts to Be Assumed

1.    Servicing Agreement, dated December 20, 2007, by and among Greenbriar CLO, Ltd., and Highland Capital Management, L.P.

2.    Investment Management Agreement, dated November 1, 2007, by and between Longhorn Credit Funding, LLC, and Highland Capital Management, L.P. (as amended)

3.    Reference Portfolio Management Agreement, dated August 1, 2016, by and between Highland Capital Management, L.P., and Valhalla CLO, Ltd.

4.    Collateral Servicing Agreement, dated December 20, 2006, by and among Highland Park CDO I, Ltd., and Highland Capital Management, L.P.

5.    Portfolio Management Agreement, dated March 15, 2005, by and among Southfork CLO Ltd., and Highland Capital Management, L.P.

6.    Amended and Restated Portfolio Management Agreement, dated November 30, 2005, by and among Jaspar CLO Ltd., and Highland Capital Management, L.P.

7.    Servicing Agreement, dated May 31, 2007, by and among Westchester CLO, Ltd., and Highland Capital Management, L.P.

8.    Servicing Agreement, dated May 10, 2006, by and among Rockwall CDO Ltd. and Highland Capital Management, L.P. (as amended)

9.    Portfolio Management Agreement, dated December 8, 2005, by and between Liberty CLO, Ltd., and Highland Capital Management, L.P.

10.    Servicing Agreement, dated March 27, 2008, by and among Aberdeen Loan Funding, Ltd., and Highland Capital Management, L.P.

11.    Servicing Agreement, dated May 9, 2007, by and among Rockwall CDO II Ltd. and Highland Capital Management, L.P.

12.    Collateral Management Agreement, by and between, Highland Loan Funding V Ltd. and Highland Capital Management, L.P., dated August 1, 2001.

13.    Collateral Management Agreement, dated August 18, 1999, by and between Highland Legacy Limited and Highland Capital Management, L.P.

14.    Servicing Agreement, dated November 30, 2006, by and among Grayson CLO Ltd., and Highland Capital Management, L.P. (as amended)

15.    Servicing Agreement, dated October 25, 2007, by and among Stratford CLO Ltd., and Highland Capital Management, L.P.

16.    Servicing Agreement, dated August 3, 2006, by and among Red River CLO Ltd., and Highland Capital Management, L.P. (as amended)

17.    Servicing Agreement, dated December 21, 2006, by and among Brentwood CLO, Ltd., and Highland Capital Management, L.P.

18.    Servicing Agreement, dated March 13, 2007, by and among Eastland CLO Ltd., and Highland Capital Management, L.P.

000997
Appx 0912

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-N   Document 68-9   Filed 06/02/22   Page 486 of 1266   PageID 9987
Case 19-34054-sgj11   Doc 1043   Filed 05/26/20   Entered 08/22/21 16:48:16   Page 159 of
161

19.   Portfolio Management, Agreement, dated October 13, 2005, by and among Gleneagles CLO, Ltd., and Highland Capital Management, L.P.

20.   Members' Agreement and Amendment, dated November 15, 2017, by and between Highland CLO Funding, Ltd. and Highland Capital Management, L.P.

21.   Collateral Management Agreement, dated May 19, 1998, by and between Pam Capital Funding LP, Ranger Asset Mgt LP and Highland Capital Management, L.P.

22.   Collateral Management Agreement, dated August 6, 1997, by and between Pamco Cayman Ltd., Ranger Asset Mgt LP and Highland Capital Management, L.P.

23.   Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Red River CLO Ltd. et al

24.   Interim Collateral Management Agreement, June 15, 2005, between Highland Capital Management, L.P. and Rockwall CDO Ltd

25.   Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Rockwall CDO Ltd

26.   Collateral Servicing Agreement dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.; The Bank of New York Trust Company, National Association

27.   Representations and Warranties Agreement, dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.

28.   Collateral Administration Agreement, dated March 27, 2008, between Highland Capital Management, L.P. and Aberdeen Loan Funding, Ltd.; State Street Bank and Trust Company

29.   Collateral Administration Agreement, dated December 20, 2007, between Highland Capital Management, L.P. and Greenbriar CLO, Ltd.; State Street Bank and Trust Company

30.   Collateral Acquisition Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd

31.   Collateral Administration Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd. and Investors Bank and Trust Company

32.   Collateral Administration Agreement, dated October 13, 2005, between Highland Capital Management, L.P. and Gleneagles CLO, Ltd.; JPMorgan Chase Bank, National Association

33.   Collateral Acquisition Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.

34.   Collateral Administration Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.; Investors Bank & Trust Company

35.   Collateral Acquisition Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.

DOCS_NY:42355.1 36027/002

Appx 00998

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01280-NS    Document 16-9    Filed 12/27/21    Page 456 of 426    PageID 0958
Case 19-34054-sgj11    Doc 1043    Filed 05/26/20    Entered 08/22/21 16:48:16    Page 260 of
161

36. Collateral Administration Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.; U.S. Bank National Association

37. Master Warehousing and Participation Agreement, dated April 19, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company

38. Master Warehousing and Participation Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

39. Master Warehousing and Participation Agreement (Amendment No. 2), dated May 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

40. Master Warehousing and Participation Agreement (Amendment No. 1), dated April 12, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

41. Master Warehousing and Participation Agreement (Amendment No. 3), dated June 22, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

42. Master Warehousing and Participation Agreement (Amendment No. 4), dated July 17, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

43. Collateral Administration Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; U.S. Bank National Association; IXIS Financial Products Inc.

44. Collateral Administration Agreement, dated April 18, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company; U.S. Bank National Association

45. Master Participation Agreement, dated June 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Grand Central Asset Trust

46. A&R Asset Acquisition Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Smith Barney Inc.; Highland Loan Funding V Ltd.

47. A&R Master Participation Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Brothers Holding Company; Highland Loan Funding V Ltd.

48. Collateral Acquisition Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.

49. Collateral Administration Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.; JPMorgan Chase Bank, National Association

50. Master Warehousing and Participation Agreement, dated March 24, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

DOCS_NY:42355.1 36027/002

000999
Appx 0914

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01280-NS   Document 10-19   Filed 08/05/22   Page 150 of 242   PageID 10969
Case 19-34054-sgj11   Doc 1043   Filed 05/26/20   Entered 05/26/20 16:48:16   Page 151 of
161

51.  Master Warehousing and Participation Agreement (Amendment No. 1), dated May 16, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

52.  Collateral Administration Agreement, dated December 8, 2005, between Highland Capital Management, L.P. and Liberty CLO Ltd.

53.  Collateral Administration Agreement, dated May 10, 2006, between Highland Capital Management, L.P. and Rockwall CDO Ltd; JPMorgan Chase Bank, National Association

54.  Collateral Administration Agreement, dated May 9, 2007, between Highland Capital Management, L.P. and Rockwall CDO II, Ltd.; Investors Bank & Trust Company

55.  Collateral Administration Agreement, dated March 15, 2005, between Highland Capital Management, L.P. and Southfork CLO Ltd.; JPMorgan Chase Bank, National Association

56.  Collateral Administration Agreement, dated October 25, 2007, between Highland Capital Management, L.P. and Stratford CLO Ltd.; State Street

57.  Collateral Administration Agreement, dated August 18, 2004, between Highland Capital Management, L.P. and Valhalla CLO, Ltd.; JPMorgan Chase Bank

58.  Collateral Acquisition Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.

59.  Collateral Administration Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.; Investors Bank & Trust Company

60.  Collateral Administration Agreement, dated December 21, 2006, between Highland Capital Management, L.P. and Brentwood CLO, Ltd.; Investors Bank & Trust Company

Appx. 0915

001000

# Tab "C"

Case 22-03052-sgj    Doc 10-19    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-NS   Document 169   Filed 05/22/22   Page 265 of 426   PageID 6096
Case 19-34054-sgj11   Doc 2064-1   Filed 03/26/21   Entered 03/16/21 11:48:04   Page 1 of 2





CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 16, 2021**

United States Bankruptcy Judge

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**ORDER CERTIFYING APPEALS OF THE CONFIRMATION ORDER
FOR DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS
<u>FOR THE FIFTH CIRCUIT</u>**

CAME ON FOR CONSIDERATION the *Joint Motion for Certification of Appeals of Confirmation Order for Direct Appeal to the Fifth Circuit* (the "<u>Motion</u>"), filed jointly by Highland Capital Management, L.P., Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., Highland Global Allocation Fund, Highland Income Fund, NexPoint Capital, Inc., NexPoint Strategic Opportunities Fund, James Dondero, Get Good Trust, and The Dugaboy Investment Trust (collectively, the "<u>Parties</u>").

---

ORDER CERTIFYING APPEALS OF THE CONFIRMATION ORDER FOR DIRECT APPEAL TO THE
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT—Page 1

Appx. 0847

Case 22-03052-sgj   Doc 10-19   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-S   Document 69   Filed 06/22/22   Page 536 of 742   PageID 0977
Case 19-34054-sgj11   Doc 2064   Filed 05/26/21   Entered 05/26/21 14:38:04   Page 2 of 2

By the Motion, the Parties jointly request a certification for a direct appeal to the Fifth Circuit of the following appeals (collectively, the "Appeals") of the Court's *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [docket no. 1943] (the "Confirmation Order"):

(i)     the notice of appeal filed by Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P. on March 1, 2021 at docket no. 1957;

(ii)    the notice of appeal filed by Highland Global Allocation Fund, Highland Income Fund, NexPoint Capital, Inc., and NexPoint Strategic Opportunities Fund on March 3, 2021 at docket no. 1966;

(iii)   the notice of appeal filed by James Dondero on March 4, 2021 at docket no. 1970; and

(iv)    the notice of appeal filed by Get Good Trust and The Dugaboy Investment Trust on March 4, 2021 at docket no. 1972.

Having considered the Motion, concluding that the Court has core jurisdiction over the Motion, finding that no further notice or hearing on the Motion is required as all parties affected thereby are the Parties to the Motion, and, based on the Parties joint certification and request as provided for in 28 U.S.C. § 158(d)(2)(B), and based also on the Court's agreement with the factual predicates underlying the Parties' certification and request, it is hereby:

ORDERED that the Appeals of the Confirmation Order are certified for direct appeal to the Fifth Circuit because a direct appeal may materially advance the progress of the case or proceeding in which the appeal is taken, within the meaning and operation of 28 U.S.C. § 158(d)(2)(A)(iii).

### # # #  END OF ORDER  # # #

001003

# EXHIBIT 20

App. 0918

001004

Case No. _____

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

### In re: HIGHLAND CAPITAL MANAGEMENT, L.P.

### Proposed Appeal of The Dugaboy Investment Trust
### And Get Good Trust

---

On Appeal from the United States Bankruptcy Court for
the Northern District of Texas, Dallas Division
Bankruptcy Case No. 19-34054 (SGJ11)

Appeal Pending as Civil Action No. 3:21-cv-00550-N in the United States District
Court for the Northern District of Texas, Dallas Division

---

## PETITION FOR DIRECT APPEAL UNDER 28 U.S.C. § 158(d)

---

Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399

ATTORNEY FOR PETITIONERS THE DUGABOY
INVESTMENT TRUST AND GET GOOD TRUST

001005
Appx. 2928

## CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal:

1. Appellants

   **The Dugaboy Investment Trust**
   **Get Good Trust**

   Counsel:
   Douglas S. Draper, La. Bar No. 5073
   ddraper@hellerdraper.com
   Heller, Draper & Horn, L.L.C.
   650 Poydras Street, Suite 2500
   New Orleans, LA  70130
   Telephone: (504) 299-3300
   Fax: (504) 299-3399

2. Appellee:

   **Highland Capital Management, L.P.**

   Counsel:
   Jeffrey N. Pomerantz
   John A. Morris
   Pachulski Stang Ziehl & Jones LLP
   10100 Santa Monica Blvd., 13th Floor
   Los Angeles, CA 90067
   Telephone: (310) 277-6910
   Facsimile: (310) 201-0760

Appx 2021
001006

Melissa S. Hayward
Zachery Z. Annable
Hayward PLLC
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

3.  Other Appellants

**NexPoint Advisors, L.P.**
**Highland Capital Management Fund Advisors, L.P.**

Counsel:
Davor Rukavina
MUNSCH HARDT KOPF & HARR, P.C.
500 North Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**Highland Income Fund**
**NexPoint Strategic Opportunities Fund**
**Highland Global Allocation Fund**
**NexPoint Capital, Inc.**

Counsel:
Artoush Varshosaz
K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, TX 75201
Tel: (214) 939-5659

A. Lee Hogewood, III
K&L GATES LLP
4350 Lassiter at North Hills Ave.
Suite 300
Raleigh, NC 27609
Tel: (919) 743-7306

{00375541-7}                                              iii

David R. Fine
K&L GATES LLP
Market Square Plaza
17 North Second St.
18th Floor
Harrisburg, PA 17101
Tel: (717) 231-5820

**James Dondero**

Counsel:
D. Michael Lynn
John Y. Bonds, III
Clay M. Taylor
John T. Wilson IV
Bryan C. Assink
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

          /s/ *Douglas S. Draper*
          Douglas S. Draper
          Counsel for The Dugaboy Investment
          Trust and Get Good Trust


Appx. 2023
001008

# INTRODUCTION

The Dubagoy Investment Trust and Get Good Trust (the "Trusts") respectfully request that the Court grant them permission to appeal, pursuant to Federal Rule of Appellate Procedure 5 and 28 U.S.C. § 158(d)(2)(A), the *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified); and (ii) Granting Related Relief* (the "Confirmation Order")[1] directly to this Court from the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").

A direct appeal from the Bankruptcy Court to the District Court is authorized pursuant to § 158(d)(2) provided that four conditions are satisfied.  It is the position of the Trusts that the conditions for direct appeal are satisfied for the reason set forth herein and in the Petitions filed by Highland Income Fund, NexPoint Stategic Opportunities Fund, Highland Global Allocation Fund, Nexpoint Capital Inc., James Dondero, NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P. each of which has filed a Petition for Direct Appeal with this Court.

The Trusts, in support of this Petition, note the following:

Appx 0021
001009

a) The Bankruptcy Court affirmatively held that the direct appeal of
the Confirmation Order to this Court will "materially advance the
progress of the case";

b) The Confirmed Plan contains broad exculpation, release and
channeling injunctions (called gatekeeper provisions under the
Plan) that are contrary to established precedent in this Court. See
*In re Pacific Lumber*, 584 F.3d 220 (5th Circuit) and *SEC vs
Standford Bank*, 17-10663 (5th Cir. 2019). It is interesting to note
that the *In Pacific Lumber* case involved a direct appeal to this
Court; and

c) The Plan that was confirmed by the Court granted protection by
analogy to third parties and by analogy applied the Barton Doctrine
without any precedent supporting the opinion.

The direct appeal of the Confirmation Order meets the statutory
requirements for a direct appeal of the Confirmation Order to this Court.

The Confirmation Order raises questions of law as to the use and effect of
exculpation and release provisions and the imposition of a gatekeeper injunction in
a bankruptcy plan where there is no controlling precedent from this Court or the
Supreme Court.

App. 0925
001010

## BACKGROUND

The Bankruptcy Court on February 21, 2021 entered the Confirmation Order confirming the *Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (the "Plan"). The Plan, in essence, is a liquidation Plan notwithstanding the fact that Highland Capital Management, L.P. ("Debtor") refers to it as a monetization Plan.  The Debtor projects it will operate certain assets over a projected two year liquidation period.

 The Plan exculpates and releases the Debtor and its independent directors, employees, officers, and their retained professionals. The Plan further protects the same group from pre and post confirmation claims by imposing a gatekeeper injunction that bars parties from bringing a claim or causes of action against the released and exculpated parties for their activities related to the Debtor or reorganized Debtor without first seeking approval from the Bankruptcy Court that the claim is "colorable."

On March 4, 2021, the Trusts timely filed a *Notice of Appeal* of the Confirmation Order to the United States District Court for the Northern District of Texas (the "District Court"). Ex. A. The Trusts' appeal is pending as Civil Action No. 3:21-cv-00550-N (the "Appeal").

Similar appeals to the Confirmation Order were filed as follows:

Appx 0926
001011

Civil Action No.: 3:21-cv-00539-N by Highland Global Allocation Fund, Highland Income Fund, NexPoint Capital, Inc., and NexPoint Strategic Opportunities Fund.

Civil Action No.: 3:21-cv-00546-L by James Dondero.

Civil Action No.: 3:21-cv-00538-N by Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.

(collectively "Related Parties" or "Related Appeals"). These appeals have been consolidated in the District Court for the purpose of deciding issues on a stay pending appeal. It is anticipated that these Related Appeals will also be consolidated by the District Court or this Court on a final basis sometime in the near future.

On March 16, 2021, the Trusts, the Related Parties and the Debtor jointly moved for the Bankruptcy Court to certify their collective appeals for direct appeal to this Court. The Parties agreed that direct appeals would materially advance the progress of the case. The same day, the Bankruptcy Court granted the joint motion and entered its *Order Certifying Appeals of the Confirmation Order for Direct Appeal to the United States Court of Appeals for the Fifth Circuit* ("Certification Order") per 28 U.S.C. § 158(d)(2)(A)(iii).

All Parties have filed Petitions for Direct Appeal to this Court.

### ISSUES ON APPEAL

1.    Whether the U.S. Bankruptcy Court for the Northern District of Texas (the "***Bankruptcy Court***") erred in confirming the Debtor's Fifth Amended

001012
Appx. 0927

Plan of Reorganization of Highland Capital Management, L.P. (as Modified) (the "***Plan***").[2]

2.      Whether the Bankruptcy Court erred as a matter of law in confirming the Plan and entering the Confirmation Order because the exculpation provisions of the Plan, contained in Article IX of the Plan, effectuated third party releases (i.e. releasing a claim of a non-debtor against a non-debtor) prohibited by the Bankruptcy Court and over which the Bankruptcy Court had no jurisdiction, in direct violation of Fifth Circuit Court of Appeal ("***Fifth Circuit***") case law (see, e.g., *In re Pacific Lumber Co.*, 584 F.3d 229, 253 (5th Cir. 2009) and *Securities and Exchange Commission vs Stanford International Bank, Ltd.* No. 17-10663 (5th Cir. 2019)). The third party releases and exculpations in the confirmed Plan provide releases and exculpations for business decisions and operational decisions as opposed to case administration matters. The releases and exculpations are also in favor of non-debtor entities and their managers and professionals, as opposed to estate managers and professionals, and post-confirmation claims against entities, their officers, managers and professionals, for entities that are to be formed pursuant to the confirmed Plan.

3.      Whether the Bankruptcy Court erred as a matter of law in confirming the Plan and entering the Confirmation Order because the permanent injunction contained in Article IX of the Plan, which prohibits "taking any actions to interfere with the implementation or consummation of the Plan," is overly broad and impermissibly vague.

4.      Whether the Bankruptcy Court erred as a matter of law in confirming the Plan and entering the Confirmation Order because the "gatekeeper" injunction contained in Article IX of the Plan is a disguised grant of jurisdiction to the Bankruptcy Court to enter final orders on matters upon which it would not possess jurisdiction.

5.      Whether the Bankruptcy Court erred as a matter of fact in confirming the Plan and entering the Confirmation Order because the "gatekeeper" injunction contained in Article IX of the Plan, which requires leave of the Bankruptcy Court upon a showing of a "colorable" claim or cause of action, is based on the Bankruptcy Court's finding of vexatious litigation on the part of the Appellants and the need for a form of pre-filing injunction, when there was no evidence to support such findings.

6.      Whether the Bankruptcy Court erred as a matter of law in confirming the Plan and entering the Confirmation Order because the Debtor failed to satisfy the 11 U.S.C. § 1129(a)(2) element for confirmation requiring the Debtor to have complied with all applicable provisions of the Bankruptcy Code, which the

---

[2] Capitalized terms used but not otherwise defined have the meanings set forth in the Plan.

App. 0928
001013

Debtor admittedly failed to do because it utterly failed to comply with Bankruptcy Rule 2015.3.

7.     Whether the Bankruptcy Court erred as a matter of law in confirming the Plan and entering the Confirmation Order because the Plan violates 11 U.S.C. §1107(a)(7).

8.     Whether the Bankruptcy Court erred as a matter of law in confirming the Plan and entering the Confirmation Order because the Plan does not meet the requirements of 11 U.S.C. §1129(b), unfairly discriminates and is not fair and equitable.

## REASONS FOR DIRECT APPEAL

The Trusts' reasons for direct appeal mirror those asserted by the Related Parties and adopts the assertions made by such parties.

## RELIEF REQUESTED

The Trusts respectfully request, pursuant to 28 U.S.C. § 158(d)(2), that this Court grant permission for the instant appeal, and all those Related Appeals, to bypass the District Court and be heard directly by this Court because (i) as certified by the Bankruptcy Court, a direct appeal will materially advance the progress of the case and (ii) the underlying judgment involves questions of law without controlling precedent.

App. 0920
001014

April 15, 2021                                    Respectfully Submitted,

                                                 */s/ Douglas S. Draper*
                                                 Douglas S. Draper, La. Bar No. 5073
                                                 ddraper@hellerdraper.com
                                                 Heller, Draper & Horn, L.L.C.
                                                 650 Poydras Street, Suite 2500
                                                 New Orleans, LA  70130
                                                 Telephone: (504) 299-3300
                                                 Fax: (504) 299-3399
                                                 Attorneys for The Dugaboy Investment
                                                 Trust and Get Good Trust

## **CERTIFICATE OF SERVICE**

        Undersigned counsel hereby certifies that, on this 15th day of April 2021, he caused a true and correct copies of this Petition to be served via e-mail on the following parties through their counsel of record:

Highland Capital Management, L.P.:
        Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
        John A. Morris (jmorris@pszjlaw.com)

NexPoint Advisors, L.P.
Highland Capital Management Fund Advisors, L.P.
        Davor Rukavina (drukavina@munsch.com)

Highland Income Fund
NexPoint Strategic Opportunities Fund
Highland Global Allocation Fund
NexPoint Capital, Inc.:
        A. Lee Hogewood, III (A.Lee.HogewoodIII@klgates.com)

Mr. James Dondero
        Clay M. Taylor (clay.taylor@bondsellis.com)

                                                 */s/ Douglas S. Draper*
                                                 Douglas S. Draper

001015
App. 0920

## <u>CERTIFICATION OF WORD COUNT</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this Petition complies with Rule 5(c) because it contains 2044 words, excepting those portions that may be excepted, and complies with the typeface and type-style requirements of Rule 32 because it has been prepared using Microsoft Office Word 2010 and set in Times New Roman font in a size equivalent to 14 points or larger.

*/s/ Douglas S. Draper*
Douglas S. Draper

001016
App. 0921

# "TAB" - A

Case 22-03052-sgj   Doc 10-20   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-N   Document 16-20   Filed 05/05/27   Page 168 of 242   PageID 1987
Case 19-34054-sgj11   Doc 2016   Filed 05/18/21   Entered 04/11/21 14:55:18   Page 1 of 3

Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust and Get Good Trust*

UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | * | Chapter 11 |
| | * | |
| | * | Case No. 19-34054sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | * | |
| | * | |
| Debtor | * | |

**AMENDED NOTICE OF APPEAL AND STATEMENT OF ELECTION**

**Part 1: Identify the appellant(s)**
1. Name(s) of appellant(s): ___

*The Dugaboy Investment Trust and Get Good Trust*

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐ Plaintiff
☐ Defendant
☐ Other (describe)
_____

For appeals in a bankruptcy case and not in an adversary proceeding.
☐ Debtor
**X** Creditor
☐ Trustee
☐ Other (describe)
_____

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from: *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) and (II) Granting Related Relief [Dkt. # 1943]*

{00375279-1}

1

Case 22-03052-sgj   Doc 10-20   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-01710-N   Document 18-20   Filed 06/08/22   Page 169 of 242   PageID 1888
Case 21-90016-sgj11   Document Filed 05/13/24511   Entered 05/11/Date Filed 04/15/2021 of 3

2. State the date on which the judgment, order, or decree was entered: <u>February 22, 2021</u>

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. ***Party/Appellee***: <u>Debtor: Highland Capital Management, L.P.</u>

Attorney:

PACHULSKI STANG ZIEHL & JONES LLP
Jeffery N. Pomerantz
Ira D. Kharasch
John A. Morris
Gregory V. Demo
Hayley R. Winograd
780 Third Avenue, 34th Floor
New York, NY 10017-2024
Telephone:  (212) 561-7700
Fax:  (212) 561-7777

And

Hayward & Associates PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy. Ste. 106
Dallas, TX 75231
Telephone:  (972) 755-7100
Fax:  (972) 755-7110

2. ***Party/Appellants***:  <u>The Dugaboy Investment Trust and Get Good Trust</u>
Attorney:

HELLER, DRAPER & HORN, L.L.C.
Douglas S. Draper
Leslie A. Collins
Greta M. Brouphy
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399

{00375279-1}

App. 0924
001019

Case 22-03052-sgj    Doc 10-20    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01710-N    Document 16-20    Filed 06/06/22    Page 170 of 242    PageID 1994
Case 21-90043-sgj11    Document Filed 05/15/2451    Entered 08/11/Date Filed 04/15/2021 of 3

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

**Not applicable.**

March 11, 2021                                          Respectfully submitted,

*/s/Douglas S. Draper.*
Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust
 and Get Good Trust*

{00375279-1}

Appx 0925
001020

# EXHIBIT 21

Case No. _____

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### In re: HIGHLAND CAPITAL MANAGEMENT, L.P.

### Proposed Appeal of James Dondero

---

On Appeal from the United States Bankruptcy Court for
the Northern District of Texas, Dallas Division
Bankruptcy Case No. 19-34054 (SGJ11)

Appeal Pending as Civil Action No. 3:21-cv-00546-L in the United States District
Court for the Northern District of Texas, Dallas Division

---

### PETITION FOR DIRECT APPEAL UNDER 28 U.S.C. § 158(d)

---

D. Michael Lynn
John Y. Bonds, III
Clay M. Taylor
John T. Wilson IV
Bryan C. Assink
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

ATTORNEYS FOR PETITIONER JAMES DONDERO

i

Appx 4937

## CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal:

1. Appellant

   **James Dondero**

   Counsel:
   D. Michael Lynn
   John Y. Bonds, III
   John T. Wilson IV
   Clay M. Williams
   Bryan C. Assink
   BONDS ELLIS EPPICH SCHAFER JONES LLP
   420 Throckmorton Street, Suite 1000
   Fort Worth, Texas 76102
   (817) 405-6900 telephone
   (817) 405-6902 facsimile

2. Appellee:

   **Highland Capital Management, L.P.**

   Counsel:
   Jeffrey N. Pomerantz
   John A. Morris
   Pachulski Stang Ziehl & Jones LLP
   10100 Santa Monica Blvd., 13th Floor
   Los Angeles, CA 90067
   Telephone: (310) 277-6910
   Facsimile: (310) 201-0760

   Melissa S. Hayward
   Zachery Z. Annable
   Hayward PLLC
   10501 N. Central Expy, Ste. 106

001023
App. 0938

Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

3.  Other Appellants

**NexPoint Advisors, L.P.**
**Highland Capital Management Fund Advisors, L.P.**

Counsel:
Davor Rukavina
MUNSCH HARDT KOPF & HARR, P.C.
500 North Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**Highland Income Fund**
**NexPoint Strategic Opportunities Fund**
**Highland Global Allocation Fund**
**NexPoint Capital, Inc.**

Counsel:
Artoush Varshosaz
K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, TX 75201
Tel: (214) 939-5659

A. Lee Hogewood, III
K&L GATES LLP
4350 Lassiter at North Hills Ave.
Suite 300
Raleigh, NC 27609
Tel: (919) 743-7306

David R. Fine
K&L GATES LLP
Market Square Plaza
17 North Second St.

001024
Appx 4939

18th Floor
Harrisburg, PA 17101
Tel: (717) 231-5820

**Get Good Trust**
**The Dugaboy Investment Trust**

Counsel:
Douglas S. Draper
Leslie A. Collins
Greta M. Brouphy
HELLER, DRAPER & HORN, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300
Fax: (504) 299-3399

　　　　　　　　　　　　　　　 /s/ *Clay M. Taylor*　　　
　　　　　　　　　　　　　　　Clay M. Taylor
　　　　　　　　　　　　　　　Counsel for James Dondero

001025
Appx 4948

# INTRODUCTION

James Dondero ("Mr. Dondero") respectfully requests that the Court grant him permission to appeal, pursuant to Federal Rule of Appellate Procedure 5 and 28 U.S.C. § 158(d)(2)(A), the *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified); and (ii) Granting Related Relief* (the "Confirmation Order")[1] directly to this Court from the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").

This Court should grant permission for a direct appeal because, as all parties agree, a direct appeal would materially advance the progress of the bankruptcy case. The conduct and statements of the parties have made their intention plain that the issues presented on appeal will ultimately be brought to this Court by whichever parties are unsuccessful at the District Court. Further, the Confirmation Order raises questions of law as to the use and effect of exculpation provisions and imposition of a gatekeeper injunction in the bankruptcy plan where there is no controlling precedent from this Court or the Supreme Court.

# BACKGROUND

The issues on appeal arise from the cramdown confirmation of a Chapter 11 plan containing a broad exculpation provision that releases typically unreleased third

---

[1] Included as Exhibit A.

001026

parties and a permanent gatekeeper injunction prohibiting any claims, including post-confirmation claims, without prior approval of the Bankruptcy Court. Inversely, the same plan lacks the requisite notice or participation provisions for creditor and parties-in-interest involvement in sales to be in the best interest of the creditors.

Mr. Dondero founded Highland Capital Management, L.P. ("Debtor"). On October 16, 2019, Debtor filed for voluntary Chapter 11 bankruptcy protection, creating its bankruptcy estate. On January 9, 2020, the Debtor, the Official Unsecured Creditors' Committee, and Mr. Dondero entered into a stipulation and consent order that, among other things, provided for the removal of Mr. Dondero from Debtor and his replacement by a board of independent directors.

On February 22, 2021, the Bankruptcy Court entered the Confirmation Order confirming the *Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (the "Plan"). The Plan is a wind down and liquidation plan where Debtor intends to liquidate over the course of a two-year period. In the interim, the reorganized Debtor continues to manage the assets of others.

Under the Plan, and over the objection of Mr. Dondero and others, the Debtor and its independent directors, employees, officers, and their retained professionals are exculpated and anyone with a claim, even one arising post-confirmation, is

2

Appx 0942

enjoined via the gatekeeper injunction from bringing a claim or cause of action against those released parties for their activities related to the Debtor or reorganized Debtor without first seeking approval from the Bankruptcy Court that the claim is "colorable."

On March 8, 2021, Mr. Dondero timely filed his *Notice of Appeal* of the Confirmation Order to the United States District Court for the Northern District of Texas (the "District Court"). Ex. B. Mr. Dondero's appeal is pending as Civil Action No. 3:21-cv-00546-L (the "Appeal").

> Similar appeals to the Confirmation Order were filed as follows:
>
> Civil Action No.: 3:21-cv-00539-N by Highland Global Allocation Fund, Highland Income Fund, NexPoint Capital, Inc., and NexPoint Strategic Opportunities Fund.
>
> Civil Action No.: 3:21-cv-00550-L by Get Good Trust and The Dugaboy Investment Trust.
>
> Civil Action No.: 3:21-cv-00538-N by Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.

(collectively "Related Parties" or "Related Appeals"). These appeals have been consolidated in the District Court for the purpose of deciding issues on a stay pending appeal. It is anticipated that these Related Appeals will also be consolidated by the District Court or this Court on a final basis sometime in the near future.

On March 16, 2021, Mr. Dondero, along with Debtor and the Related Parties (the "Parties"), jointly moved for the Bankruptcy Court to certify their collective appeals for direct appeal to this Court. The Parties agreed that direct appeals would

001028
Appx 6963

materially advance the progress of the case. The same day, the Bankruptcy Court granted the joint motion and entered its *Order Certifying Appeals of the Confirmation Order for Direct Appeal to the United States Court of Appeals for the Fifth Circuit* ("Certification Order")[2] per 28 U.S.C. § 158(d)(2)(A)(iii).

On March 31, 2021, NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P. (collectively the "Advisors") filed their *Petition for Permission to Appeal* with this Court in Case No. 21-90011 ("Advisors' Petition").[3] The Advisors' Petition addresses issues similar to those raised by Mr. Dondero on appeal. Mr. Dondero joins in the arguments asserted in the Advisors' Petition and will endeavor not to duplicate those arguments here.

On April 9, 2021, Debtor filed a response to Advisors' Petition ("Debtor's Response")[4] challenging, not this Court taking up the appeal, but whether a direct appeal should be granted for more reasons than just because it would materially advance the progress of the case. Debtor's Response is an attempt to argue the merits of the appeal. Rather than being a reason to limit the direct appeal, Debtor's Response highlights why there is a need for controlling precedent on the issues raised in Mr. Dondero's appeal and the Related Appeals.

---

[2] Included as Exhibit C.
[3] Included as Exhibit D.
[4] Included as Exhibit E.

001029
Appx 964

On April 13, 2021, Highland Income Fund, NexPoint Strategic Opportunities
Fund, Highland Global Allocation Fund, and NexPoint Capital, Inc. (the "Funds")
filed their *Petition for Direct Appeal Under 28 U.S.C. § 158(d)* with this Court in
Case No.: 21-90014 ("Funds' Petition").[5] The Funds' Petition addresses issues
similar to those raised by Mr. Dondero on appeal. Mr. Dondero also joins in the
arguments asserted in the Funds' Petition and will also endeavor not to duplicate
those arguments here.

### ISSUES ON APPEAL

The issues raised by Mr. Dondero on appeal are as follows:

1.    Whether the Plan's channeling injunction/gatekeeper injunction
violates applicable law by requiring claims against certain parties to be brought
before the Bankruptcy Court for a finding the claims are colorable before those
causes of action can be asserted against those parties in the Bankruptcy Court or any
other court of competent jurisdiction, and that, as a result, confirmation of that Plan
was improper both under the law and the facts of this case and record at trial?

2.    Whether the Plan's broad post-confirmation jurisdictional grant to the
Bankruptcy Court was so over-broad as to violate applicable law and that, as a result,
confirmation of that Plan was improper both under the law and the facts of this case
and record at trial?

3.    Whether the exculpation provisions of the Plan releasing third-party,
non-debtor parties violates applicable law and that, as a result, confirmation of that
Plan was improper both under the law and the facts of this case and record at trial?

4.    Whether confirmation of the plan violates 11 U.S.C. § 1129(a)(7),
especially given the Claimant Trust's unfettered ability to sell assets without
providing creditors and other parties-in-interest notice of the sales or the ability to

---

[5] Included as Exhibit F.

001030
Appx 0045

participate in the sales processes either as bidders, or to bring in other bidders who might pay a higher and better value to the table?

Ex. G, *Statement of Issues on Appeal*.

## BASES FOR DIRECT APPEAL

Mr. Dondero's bases for direct appeal are similar to those raised by the Funds and Advisors: a direct appeal materially advances the case, the exculpation provisions in the Plan go beyond this Court's *Pacific Lumber* opinion, and the gatekeeper injunction extends the bounds of the Bankruptcy Court's jurisdiction beyond the scope of controlling authority. Mr. Dondero incorporates and joins in the arguments in the Advisors' Petition and Funds' Petition on these issues and addresses each only to highlight how Debtor's Response further shows the need for this Court to opine on the issues on direct appeal.

**I.      Mr. Dondero, Debtor, the Related Parties, and the Bankruptcy Court Agree that a Direct Appeal will Materially Advance this Case.**

There is no dispute that a direct appeal will materially advance this case. Debtor welcomes a direct appeal so that the case will be materially advanced. A direct appeal ensures a faster resolution such that the bankruptcy case can be promptly administered and closed, which is beneficial for all parties and the Court.

Appx 0946

001031

## II.    Debtor's Assertion that the Exculpatory Provision Issue Has Controlling Authority Highlights the need for Clarity from this Court.

Resolution of the exculpatory provision issue would advance this case and presents an opportunity for this Court to clarify and reinforce its holding in *Pacific Lumber*. This Court stated that "non-consensual non-debtor releases and permanent injunctions" are foreclosed. *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009). Such releases are limited to creditor committees and their members. *Id.* at 253. There is little doubt that under applicable law officers and directors generally are not afforded releases. *See In re Thru, Inc.*, 2018 U.S. Dist. LEXIS 179769, 2018 WL 5113124, at *67 (N.D. Tex. October 19, 2018), aff'd., *In re Thru, Inc.*, 2019 U.S. App. LEXIS 32405, 2019 WL 5561276 (5th Cir. Tex., Oct. 28, 2019) (holding it was clear error to approve plan with exculpation provision releasing officers and directors from liability for own negligence). The allegedly unanswered question is where do independent directors and officers appointed post-petition and their professionals fall under *Pacific Lumber*: are they non-debtors not to be afforded releases or are they the equivalent of creditor committee members?

Debtor clings to the Bankruptcy Court's analysis of *Pacific Lumber* to suggest that because the Bankruptcy Court analyzed *Pacific Lumber*, it interpreted the case correctly. Debtor's argument is focused on winning the merits, not on whether there is an important issue for this Court's consideration. That Debtor stresses a particular

App. 0047
001032

and inconsistent reading of *Pacific Lumber* emphasizes the need for a clarification of how that precedent should be applied in this case.

Debtor also suggests that under *Shoaf* the exculpatory provision issue is precluded by res judicata. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987). This again goes to the merits of the issue and not the need for its resolution. Regardless, this Court re-stated its *Shoaf* holding as "once a reorganization plan passed the appeal stage it could not be challenged even though it violated the Bankruptcy Code's prohibition on such discharges." *In re Vitro SAB De CV*, 701 F.3d 1031, 1069 (5th Cir. 2012). This is not *Shoaf*; the Plan is what is being appealed.

### III.   Debtor's Defense of the Gatekeeper Injunction Emphasizes the Need for Controlling Authority.

Debtor focuses on the potential for the Bankruptcy Court's post-confirmation jurisdiction in matters pertaining to implementation of the Plan, the Bankruptcy Court's gatekeeping function for claims asserted by creditor committees or against trustees, and the authority of a court to protect its jurisdiction from vexatious litigation to support the gatekeeper injunction. However, Debtor does not cite controlling authority that stands for the proposition that the Bankruptcy Court can make "the initial determination as to whether a claim is colorable" for claims asserted post-confirmation, not against trustees, and by parties that are not creditor committees. Ex. E, ¶ 18. By arguing that these different concepts synthesize to

001033
App. 2048

support the gatekeeper injunction in the Plan, Debtor is highlighting the gap in controlling authority that is primed for this Court's review.

Debtor asserts that the Bankruptcy Court's post-confirmation jurisdiction "concerning the implementation or execution of a confirmed plan" allows for the jurisdiction necessary for the gatekeeper injunction. *In re United States Brass Corp.*, 301 F.3d 296, 305 n.29 (5th Cir. 2002) (*citing In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir. 2001)). However, this ignores that the gatekeeper injunction applies to claims or causes of action a party may assert not necessarily concerning the plan. *In re Stonebridge Techs., Inc.* is similarly inapposite because the jurisdictional question concerned an adversary action brought by the trustee on behalf of the bankruptcy estate. 430 F.3d 260, 266-67 (5th Cir. 2005). The gatekeeper injunction effectively forever protects Debtor from claims and causes of action from third parties by forcing them to all be brought before the Bankruptcy Court, whether there is a basis for jurisdiction or not. The gatekeeper injunction itself manufactures jurisdiction for the Bankruptcy Court, which is not a function derived from the bankruptcy statutes or Debtor's case law.

Debtor contends that the gatekeeping function can be derived from the Bankruptcy Court's similar function for claims asserted by a creditor committee or against a trustee. *See La. World Exposition v. Fed. Ins. Co.,* 858 F.2d 233 (5th Cir. 1988) (bankruptcy court has gatekeeping function to determine if committee claims

001034
Appx 0949

are colorable before authorizing suit); *see also Villegas v. Schmidt*, 788 F.3d 156, 158 (5th Cir. 2015) (bankruptcy court has gatekeeping function as to claims brought against bankruptcy trustee). While these cases provide for a gatekeeping function, they do not stand for the proposition that such a function should be used by the Bankruptcy Court to insulate a debtor from all claims after the bankruptcy estate has ended. This dramatic expansion of both the duration and scope of an Article I court's jurisdictional power in spite of *Stern v. Marshall* decided by the U.S. Supreme Court is particularly troubling. 564 U.S. 462 (2011). *Stern* stands for the limited jurisdiction of the Bankruptcy Court over only bankruptcy matters. *Id*. at 499. An expansive gatekeeper injunction, asserting jurisdiction over every possible claim or cause of action, goes against *Stern*. This Court needs to provide guidance to its lower courts on the appropriate use of "gatekeeper" functions in light of the jurisdictional limitations of *Stern* and its progeny.

Debtor also finds authority for the gatekeeper injunction in a court's ability to sanction harassing or vexatious litigants. Debtor cites *Baum v. Blue Moon Ventures, LLC* to argue that the gatekeeper injunction is just an extension of the Bankruptcy Court's inherent power over its docket. 513 F.3d 181 (5th Cir. 2008). *Baum* is focused on a district court's *sua sponte* change to an injunction limiting the ability to file claims of those who had previously been sanctioned to jail time and a $100,000.00 fine for impersonating attorneys, lying to the court, and abusing the

10

judicial system. *Id.* at 187. *Baum*, and other cases like it, are not about enjoining claims against a debtor that could, after the bankruptcy estate has ended, be brought in other courts.

While it may be the case that the Bankruptcy Court synthesized concepts from the likes of *In re U.S. Brass Corp.*, *La. World Exposition*, *Villegas*, and *Baum*, this amalgamation of different concepts to reach new conclusions shows that controlling authority on the subject is lacking. This is especially the case where the new amalgamation contradicts the jurisdictional limits the Supreme Court imposed in *Stern* and this Court's prohibitions in *Pacific Lumber*. This points to the need for this Court to opine on the issues presented in these Appeals.

### RELIEF REQUESTED

Mr. Dondero respectfully requests, pursuant to 28 U.S.C. § 158(d)(2), that this Court grant permission for the instant appeal, and all those Related Appeals, to bypass the District Court and be heard directly by this Court because (i) as certified by the Bankruptcy Court, a direct appeal will materially advance the progress of the case and (ii) the underlying judgment involves questions of law without controlling precedent.

April 15, 2021                                 Respectfully Submitted,

                                               */s/ Clay M. Taylor*
                                               D. Michael Lynn

11

001036

State Bar I.D. No. 12736500
John Y. Bonds, III
State Bar I.D. No. 02589100
Clay M. Taylor
State Bar I.D. No. 24033261
John T. Wilson, IV
State Bar I.D. No. 24033344
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
Telephone: (817) 405-6900
Facsimile: (817) 405-6902
E-mail: michael.lynn@bondsellis.com
E-mail: john@bondsellis.com
E-mail: clay.taylor@bondsellis.com
E-mail: john.wilson@bondsellis.com
E-mail: bryan.assink@bondsellis.com

*Attorneys for James Dondero*

001037

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that, on this 15th day of April 2021, he caused a true and correct copies of this Petition, with all exhibits attached hereto, to be served via e-mail on the following parties through their counsel of record:

Highland Capital Management, L.P.:
    Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
    John A. Morris (jmorris@pszjlaw.com)

NexPoint Advisors, L.P.
Highland Capital Management Fund Advisors, L.P.
    Davor Rukavina (drukavina@munsch.com)

Highland Income Fund
NexPoint Strategic Opportunities Fund
Highland Global Allocation Fund
NexPoint Capital, Inc.:
    A. Lee Hogewood, III (A.Lee.HogewoodIII@klgates.com)

Get Good Trust
The Dugaboy Investment Trust:
    Douglas Draper (ddraper@hellerdraper.com)

*/s/ Clay M. Taylor*
Clay M. Taylor

## CERTIFICATION OF WORD COUNT

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this Petition complies with Rule 5(c) because it contains 2,537 words, excepting those portions that may be excepted, and complies with the typeface and type-style requirements of Rule 32 because it has been prepared using Microsoft Office Word 2010 and set in Times New Roman font in a size equivalent to 14 points or larger.

*/s/ Clay M. Taylor*
Clay M. Taylor

001038
Appx 0953

# EXHIBIT 22

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔦𝔣𝔱𝔥 𝔠𝔦𝔯𝔠𝔲𝔦𝔱

United States Court of Appeals
Fifth Circuit

**FILED**

May 4, 2021

Lyle W. Cayce
Clerk

No. 21-90011

_____

IN RE:  HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Debtor*,

NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P.; HIGHLAND INCOME FUND; NEXPOINT
STRATEGIC OPPORTUNITIES FUND; HIGHLAND GLOBAL
ALLOCATION FUND; NEXPOINT CAPITAL, INCORPORATED;
JAMES DONDERO; THE DUGABOY INVESTMENT TRUST; GET
GOOD TRUST,

*Petitioners*,

*versus*

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Respondent.*

_____

Motion for Leave to Appeal
Pursuant to 28 U.S.C. § 158(D)

_____

Before DENNIS, SOUTHWICK, and ENGELHARDT, *Circuit Judges*.

PER CURIAM:

No. 21-90011

IT IS ORDERED that the motion of NexPoint Advisors, L.P. and
Highland Capital Management Fund Advisors, L.P. for leave to appeal under
28 U.S.C. § 158(d) is GRANTED.

001041
Appx. 0956

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

May 04, 2021

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 21-90011     NexPoint v. Highland Capital
USDC No. 19-34054

Enclosed is an order entered in this case.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Charles B. Whitney, Deputy Clerk
504-310-7679

Mr. Zachery Z. Annable
Mr. Bryan Christopher Assink
Mr. Douglas Scott Draper
Mr. David R. Fine
Ms. Melissa Sue Hayward
Mr. Jeffrey N. Pomerantz
Mr. Davor Rukavina
Mr. Clay Marshall Taylor
Mr. Jed Weintraub

# EXHIBIT 23

App. 0958
001043

# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 21-90011

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

June 2, 2021

Lyle W. Cayce
Clerk

IN RE:  HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Debtor*,

NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P.; HIGHLAND INCOME FUND; NEXPOINT
STRATEGIC OPPORTUNITIES FUND; HIGHLAND GLOBAL
ALLOCATION FUND; NEXPOINT CAPITAL, INCORPORATED;
JAMES DONDERO; THE DUGABOY INVESTMENT TRUST; GET
GOOD TRUST,

*Petitioners*,

*versus*

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Respondent*.

———————————————————

Motion for Leave to Appeal
Pursuant to 28 U.S.C. § 158(D)

———————————————————

Before DENNIS, SOUTHWICK, and ENGELHARDT, *Circuit Judges*.

PER CURIAM:

IT IS ORDERED that the motion of Highland Global Allocation
Fund, Highland Income Fund, NexPoint Capital, Incorporated, and

Appx 0959

No. 21-90011

NexPoint Strategic Opportunities Fund for leave to appeal under 28 U.S.C. § 158(d) is GRANTED.

IT IS FURTHER ORDERED that the motion of James Dondero for leave to appeal under 28 U.S.C. § 158(d) is GRANTED.

IT IS FURTHER ORDERED that the motion of Get Good Trust and The Dugaboy Investment Trust for leave to appeal under 28 U.S.C. § 158(d) is GRANTED.

001045
Appx 0980

Case: 21-90011   Document: 00515884597   Page: 1   Date Filed: 06/02/2021

# *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 02, 2021

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 21-90011   NexPoint v. Highland Capital
USDC No. 19-34054

Enclosed is an order entered in this case.


Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Charles B. Whitney, Deputy Clerk
504-310-7679

Mr. Zachery Z. Annable
Mr. Bryan Christopher Assink
Mr. Robert P. Colwell
Mr. Douglas Scott Draper
Mr. David R. Fine
Ms. Melissa Sue Hayward
Mr. Jeffrey N. Pomerantz
Mr. Davor Rukavina
Mr. Clay Marshall Taylor

# EXHIBIT 24

App. 0962

**Case No. 21-10449**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

In re:  Highland Capital Management, L.P.

   Debtor.
-------------------------------------------------

NexPoint Advisors, L.P., and Highland Capital Management Fund Advisors, L.P.,

   Appellants,

v.

Highland Capital Management, L.P.,

   Appellee.

---

## APPELLANTS' MOTION FOR STAY PENDING APPEAL

---

Direct Appeal from the United States Bankruptcy Court
for the Northern District of Texas, Honorable Stacey G.C. Jernigan

Davor Rukavina, Esq.
Julian P. Vasek, Esq.
MUNSCH HARDT KOPF & HARR, P.C.
500 North Akard Street, Ste. 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR APPELLANTS/MOVANTS

Case No. 21-10449

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

In re:  Highland Capital Management, L.P.

　　　Debtor.

--------------------------------------------------

NexPoint Advisors, L.P., and Highland Capital Management Fund Advisors, L.P.,

　　　Appellants,

v.

Highland Capital Management, L.P.,

　　　Appellee.

### <u>CERTIFICATE OF INTERESTED PERSONS</u>

　　　The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

　　1.　　<u>APPELLANTS/MOVANT</u>:

　　　**NexPoint Advisors, L.P.**
　　　　　Owned by:
　　　　　　　The Dugaboy Investment Trust
　　　　　　　NexPoint Advisors GP, LLC
　　　　　　　　Owned by:
　　　　　　　　　　James Dondero

i

**Highland Capital Management Fund Advisors, L.P.**
       Owned by:
             Highland Capital Management Services, Inc.
             Strand Advisors XVI, Inc.
             Okada Family Revocable Trust

**Represented by**:
       Davor Rukavina, Esq.
       Julian P. Vasek, Esq.
       MUNSCH HARDT KOPF & HARR, P.C.

2.    **RETAIL FUNDS MANAGED BY APPELLANTS:**

**NexPoint Capital, Inc.**

**Highland Income Fund**

**NexPoint Global Strategic Opportunities, Fund**

3.    **APPELLEE/RESPONDENT:**

**Highland Capital Management, L.P.**
       Owned by:
             Hunter Mountain Investment Trust
             The Dugaboy Investment Trust
             Mark and Pamela Okada Family Trust – Exempt Trust 2
             Mark and Pamela Okada – Exempt Descendants' Trust
             Mark Kiyoshi Okada
             Strand Advisors, Inc.

**Represented by:**
       PACHULSKI STANG ZIEHL & JONES LLP
       Jeffrey N. Pomerantz, Esq.
       John Morris, Esq.
       HAYWARD PLLC
       Melissa S. Hayward, Esq.
       Zachery Annable, Esq.

001050
Appx 8985

**4.    OTHER PARTIES INDIRECTLY AFFECTED BY APPEAL:**

**Official Committee of Unsecured Creditors**
          Members:
                    Redeemer Committee of Highland Crusader Fund
                    Meta-e Discovery
                    UBS Securities LLC
                    UBS AG London Branch
                    Acis Capital Management, L.P.
                    Acis Capital Management GP, LLC
                    Josh Terry

**All creditors in Highland Capital Management, L.P. bankruptcy**


                    /s/ Davor Rukavina
                    Davor Rukavina, Esq.
                    Counsel for the Appellants

001051
Appx. 8966

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................v

I.      SUMMARY ............................................................................1

II.     BACKGROUND .....................................................................3

        A.      THE DEBTOR AND THE CLOs ................................................3

        B.      THE CONFIRMATION ORDER AND PLAN..................................4

        C.      MOTION FOR STAY PENDING APPEAL PROCEEDINGS BELOW ................6

III.    ARGUMENTS AND AUTHORITIES.......................................................7

        A.      STANDARD FOR A STAY PENDING APPEAL .............................7

        B.      THERE IS A LIKELIHOOD OF SUCCESS ON THE MERITS ..........................8

                i.      Legal Standard ...............................................8

                ii.     The Plan Violates *Pacific Lumber* .............................8

                iii.    The Plan Violates the Absolute Priority Rule..........................16

                iv.     Conclusion ................................................18

        C.      MOVANTS WILL SUFFER IRREPARABLE INJURY WITHOUT
                A STAY ........................................................19

        D.      DEBTOR AND CREDITORS WILL NOT BE UNDULY
                PREJUDICED BY A STAY .......................................21

        E.      THE PUBLIC INTEREST IS SERVED BY A STAY PENDING APPEAL..........22

        F.      SECURITY FOR STAY PENDING APPEAL ................................23

IV.     CONCLUSION.................................................................24

001052
Appx 8987

# TABLE OF AUTHORITIES

## Cases

*Arnold v. Garlock*, 278 F.3d 426 (5th Cir. 2001) ........................................................8

*Associated Press v. Otter*, 682 F.3d 821 (9th Cir. 2012).........................................20

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. Lasalle P'ship*,
    526 U.S. 434 (1999) ..........................................................................................18

*Bank of. La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores*
    *of Tex., Inc.)*, 266 F.3d 388 (5th Cir. 2001)..................................................11, 14

*Bank of New York Trust Co., N.A. v. Official Unsecured*
    *Creditors' Comm. (In re Pacific Lumber Co.)*,
    584 F.3d 229 (5th Cir. 2009) ...................................................................*passim*

*Cooper v. U.S. Postal. Serv.*, 246 F.R.D. 415 (D. Conn. 2007) ..............................20

*Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*, 782 Fed. Appx. 339
    (5th Cir. 2019).........................................................................................................23

*In re Blast Energy Services, Inc.*, 593 F.3d 418 (5th Cir. 2010) .............................19

*Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995) .........................9

*In re Edmonds*, 273 B.R. 527 (Bankr. E.D. Mich. 2000) .......................................17

*In re First S. Sav. Ass'n*, 820 F.2d 700 (5th Cir. 1987) ...........................................8

*In re Introgen Therapeutics*, 429 B.R. 570 (Bankr. W.D. Tex. 2010) ...................17

*In re Nat'l Gypsum Co.*, 208 F.3d 498 (5th Cir. 2000).........................................5, 12

*In re W. Real Fund*, 922 F.2d 592 (10th Cir. 1990) .................................................9

*Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988)..................................17

*Scott v. Schedler*, 826 F.3d 207 (5th Cir. 2016).....................................................13

*Tex. Democratic Party v. Abbott*, 961 F.2d 389 (5th Cir. 2020) ........................8, 18

*Weingarten Realty Investors v. Miller*, 661 F.3d 904 (5th Cir. 2011)................8, 19

001053
Appx 8988

**Statutes and Rules**

11 U.S.C. § 1126 ........................................................................................16

11 U.S.C. § 1129 ........................................................................................16

Fed. R. Bankr. P. 8007 ...........................................................................7, 22

001054
Appx 8968

Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P. (the "Movants"), the appellants in this direct bankruptcy appeal, file this their *Motion for Stay Pending Appeal* (the "Motion"), respectfully stating as follows:

## I.    SUMMARY[1]

The Movants respectfully request a stay of the Bankruptcy Court's Confirmation Order, by which it confirmed the Chapter 11 Plan of Highland Capital Management, L.P. (the "Debtor").

A stay is necessary to prevent irreparable harm by ensuring that this Appeal does not become equitably moot through the implementation of the Plan. A stay is also necessary because the Plan's injunctions prevent the Movants from exercising their contractual and statutory rights, post-confirmation, and from potentially asserting claims against various non-debtor parties, which claims the Plan releases, exculpates, and enjoins. If a stay is not entered, then the Debtor is likely to liquidate all of its holdings with judicial immunity by the time that the merits of this appeal are heard.

A stay is appropriate because the Plan violates this Court's precedent and the Bankruptcy Code. First, the Plan contains sweeping injunction, release, and exculpation provisions expressly forbidden by this Court in *Pacific Lumber*, which provisions permanently enjoin the Movants from exercising their lawful rights and

---

[1]      Capitalized terms used in this Summary are defined below.

001055   Appx 8970

which impermissibly release claims that the Movants have against various non-debtors.  The Bankruptcy Court recognized as much, predicting that this Court would "extend the holding" of *Pacific Lumber*—something that this Court has yet to do, however.  Second, the Plan could not have been confirmed at all under the "cramdown" provisions of the Bankruptcy Code because equity interest holders retain certain interests even though unsecured creditors rejected the Plan and are not paid in full under the Plan.

A stay will not prejudice the Debtor or other creditors.  The Plan does not provide for a sale, nor for exit financing, nor for the issuance or new securities or investments in the Debtor.  Rather, the Plan simply provides for the Debtor to liquidate its assets over time, something that the Debtor is presently doing and can continue doing without a need for the Plan.

A stay will serve the public interests.  Thousands of innocent investors, whose investments (more than $1 billion) the Debtor manages, are enjoined from exercising their solemn rights for post-bankruptcy claims.  Potential claims they hold against the Debtor's management and non-debtors are simultaneously extinguished through the Plan's exculpation provisions.  The public interest cannot be served by permitting a Plan that clearly violates this Court's precedent to become effective, and the public interest cannot be served when these innocent investors are enjoined from exercising their contractual and statutory rights.

001056
Appx 8974

# I.   BACKGROUND[2]

## A.   THE DEBTOR AND THE CLOS

The Debtor is a multibillion-dollar global investment adviser registered with the SEC, pursuant to the Investment Advisers Act of 1940.[3]   Under that Act, the Debtor owes strict fiduciary duties to the funds that it manages and to the investors whose investments it manages.[4]   Among other things, the Debtor manages more than $1 billion in investments in various collateralized loan obligations ("CLOs") pursuant to portfolio management agreements (the "PMAs") in exchange for various fees paid by the CLOs.[5]

The Movants are also registered investment advisors who manage and advise various publicly traded funds, including three such funds (the "Funds")[6] which collectively have invested approximately $140 million in the CLOs the Debtor manages.[7]   The Movants are also unsecured and administrative creditors

---

[2]   Contemporaneously with the filing of this Motion, the Movants are filing their *Appendix of Appellants*.  Citations to the appendix shall be notated as follows: Appx. #.

[3]   Appx. 6.

[4]   Appx. 340 (Tr. 179:8-15).

[5]   Appx. 350-51 (Tr. 189:3-190:12).

[6]   NexPoint Capital Inc., Highland Income Fund, and NexPoint Strategic Opportunities, Fund.  Appx. 508 (Tr. 52:20-25).

[7]   Appx. 509-11 (Tr. 53:1-55:5).

001057

Appx. 8972

against the Debtor.[8]  The Movants have standing to appeal the Confirmation Order

and to seek a stay pending appeal, as confirmed by the Bankruptcy Court.[9]

Under at least three PMAs, the Funds may remove the Debtor as CLO

manager because the Funds hold the requisite percentage of shares.  There are

various other CLOs where the Funds do not hold enough shares but are still able to

vote their shares along with other shareholders.  Thus, should the Debtor, as

manager, act inappropriately, the Funds, and the Movants acting on their behalf,

have the ability to protect themselves and their investors, absent the Plan.

## B.    THE CONFIRMATION ORDER AND PLAN

The Debtor filed a voluntary petition for relief under Chapter 11 of the

Bankruptcy Code on October 16, 2019.[10]  On February 22, 2021, the United States

Bankruptcy Court for the Northern District of Texas, Dallas Division (the

"Bankruptcy Court") entered an order (the "Confirmation Order")[11] confirming the

Debtor's Chapter 11 plan (the "Plan") over the objections of the Movants and

various others.[12]

---

[8]      Appx. 777-95.

[9]      Appx. 733 (Tr. 20:15-18); Appx. 863 (Tr. 68:13-15).

[10]     Appx. 7.

[11]     Appx. 1.

[12]     Appx. 92.

001058
Appx. 8973

Because Class 8, the class of unsecured creditors, rejected the Plan and is not paid in full under the Plan,[13] the Bankruptcy Court confirmed the Plan under the cramdown provisions of the Bankruptcy Code, *see* 11 U.S.C. § 1129(b)(2)(B), including the critical "Absolute Priority Rule." This Rule is discussed in detail in section III.B.iii below.

The Plan contains various other provisions directly applicable to this appeal. First, the Plan assumes the PSAs.[14]   The effect of assumption is that "the debtor must continue to perform . . . the debtor accepts both the obligations and the benefits of the executory contract." *In re Nat'l Gypsum Co.*, 208 F.3d 498, 505-06 (5th Cir. 2000).  Second, the Plan releases and exculpates claims that the Movants and others have against numerous non-debtors, as discussed in detail in section III.B.ii below.  Third, the Plan enjoins the Movants and others from exercising their rights and claims against the Debtor and numerous non-debtors, some of which claims are subject to a "gatekeeper" injunction where the Bankruptcy Court must first determine that a claim against a non-debtor is "colorable," as discussed in detail in section III.B.ii below.

The Movants timely filed their notice of appeal of the Confirmation Order.[15] On March 31, 2021, and after certification by the Bankruptcy Court,[16] the Movants

---

[13]     Appx. 6, ¶ 3 (Class 8 rejected Plan); Appx. 41 (Class 8 projected to receive 71%).

[14]     Appx. 69, 157-61.

[15]     Appx. 772.

001059
Appx. 8974

filed their petition for leave to file a direct appeal of the Confirmation Order, asserting five (5) issues on appeal (only the first four (4) of which are relevant to this Motion).[17]  On May 4, 2021, this Court granted the Movants' petition for a direct appeal of the Confirmation Order.[18]

## C.    MOTION FOR STAY PENDING APPEAL PROCEEDINGS BELOW

While the Confirmation Order has been entered, that does not mean that the Plan is effective or operative.  Rather, as is common, the Plan contains various conditions precedent that must be met before the Plan can be declared "effective."[19]

On February 28, 2021, the Movants sought a stay of the Confirmation Order before the Bankruptcy Court.[20]  On March 19, 2021, the Bankruptcy Court orally denied said motion.[21]  The Bankruptcy Court followed its oral denial with two written orders.[22]

On April 1, 2021, the Movants sought a stay of the Confirmation Order before the United States District Court for the Northern District of Texas, Dallas

---

[16]    Appx. 775.

[17]    Appx. 885, 897-99.

[18]    Appx. 945.

[19]    Appx. 142.

[20]    Appx. 947-80.

[21]    Appx. 861-76 (Tr. 66:13 – 81:13).

[22]    Appx. 878-84.

001060
Appx. 8975

Division (the "District Court"), as that is where the appeal was then pending.[23]  On April 12, 2021, the District Court entered an order granting expedited consideration of said motion and ordering expedited briefing.[24]  As of the filing of this Motion, the District Court has yet to adjudicate the motion for stay pending appeal.

Because this Court now has jurisdiction over this appeal, the Movants now file this Motion and seek a stay of the Confirmation Order from this Court.

The Debtor has agreed to stay the effectiveness of the Plan through June 25, 2021.  Thus, the Plan has yet to become effective or be implemented.

## II.    ARGUMENTS AND AUTHORITIES

### A.    STANDARD FOR A STAY PENDING APPEAL

Because this Court has granted a direct appeal of the Confirmation Order, this Court is the appropriate court to consider a stay of the Confirmation Order pending appeal.  *See* FED. R. BANKR. P. 8007(b)(1).  The Movants have satisfied the requirement of first seeking a stay from the Bankruptcy Court, which denied said relief.  *See id.* at 8007(b)(2)(B).

In determining whether to grant a discretionary stay pending appeal, the Court considers the following criteria: (1) the likelihood that the movant will

---

[23]    Appx. 912-44.

[24]    Appx. 907-11.

001061
Appx. 0976

prevail on the merits of the appeal; (2) whether the movant will suffer irreparable injury if the stay is denied; (3) whether other parties would suffer substantial harm if the stay is granted; and (4) whether the public interest will be served by granting the stay. *See In re First S. Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987). "The first two factors are the most critical." *Tex. Democratic Party v. Abbott*, 961 F.2d 389, 397 (5th Cir. 2020). However, the four-element test does not apply "where there is a serious legal question involved and the balance of equities heavily favors a stay; in those situations, the movant only needs to present a substantial case on the merits." *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011).

## B.   THERE IS A LIKELIHOOD OF SUCCESS ON THE MERITS

### i.   Legal Standard.

"[T]he appellant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Arnold v. Garlock*, 278 F.3d 426, 439 (5th Cir. 2001) (quotations omitted).

### ii.   The Plan Violates *Pacific Lumber*

In *Bank of New York Trust Co., N.A. v. Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 253 (5th Cir. 2009), this Court

001062
Appx 0977

broadly foreclosed nonconsensual releases or exculpations of third party claims;

*i.e.* a claim held by a non-debtor against a non-debtor.  The *Pacific Lumber* plan

proposed to exculpate the debtor's management and professionals for actions (or

omissions) they may have taken during the Chapter 11 case.  *See id.* at 251.  The

Court found this impermissible:

> this court has held Section 524(e) only releases the debtor, not co-
> liable third parties.  These cases seem broadly to foreclose non-
> consensual non-debtor releases and permanent injunctions. . .  the
> essential function of the exculpation clause proposed here is to
> absolve the released parties from any negligent conduct that occurred
> during the course of the bankruptcy.  The fresh start § 524(e) provides
> to debtors is not intended to serve this purpose.

*Id.* at 252 (internal citations omitted).

Nor can a release of third party claims be effectuated through an injunction:

"[s]ection 524 prohibits the discharge of debts of nondebtors.  Accordingly, we

must overturn a § 105 injunction if it effectively discharges a nondebtor."  *Feld v.*

*Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995).  The Court

concluded that no such injunction could be imposed under a plan on a permanent

basis:

> the stay may not be extended post-confirmation in the form of a
> permanent injunction that effectively relieves the nondebtor from its
> own liability to the creditor.  Not only does such a permanent
> injunction improperly insulate nondebtors in violation of section
> 524(e), it does so without any countervailing justification of debtor
> protection.

*Id.* at 760 (*quoting In re W. Real Fund*, 922 F.2d 592, 601-02 (10th Cir. 1990)).

001063
Appx 0973

Here, the Plan violates these dictates in three substantial ways: (i) it exculpates claims for negligence that may be held by the Movants and others against numerous non-debtor parties;[25] (ii) it enjoins the Movants and others from exercising their contractual rights after confirmation under contracts that are assumed;[26] and (iii) it subjects any claim that the Movants and others may have against the foregoing for anything other than negligence to a "gatekeeper injunction" where the Bankruptcy Court, reserving "exclusive jurisdiction," must first determine that a "colorable claim" exists.[27]

With respect to the Plan's exculpation provisions, "Exculpated Parties" non-debtor managed funds, employees, the Debtor's general partner, the Debtor's management and professionals, and the affiliates of the foregoing.[28]  Subject to various limitations, the Plan provides that:

> no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of . . .[29]

On its face, these provisions directly and clearly violate *Pacific Lumber*. But these provisions are even more serious because they also apply to, and

---

[25]   Appx. 144 (C. Exculpation).

[26]   Appx. 147 (F. Injunction)

[27]   *Id.*

[28]   Appx. 106.

[29]   Appx. 144 (C. Exculpation).

001064
Appx. 2974

exculpate, potential *prospective* liability incurred after the confirmation of the

Plan, because these provisions also apply to "the implementation of the Plan."[30]

The "implementation of the Plan" will take between two to three years and

involves the Debtor's management of more than $1 billion of other peoples'

investments.[31]   This is unprecedented, that a federal court would immunize

fiduciaries against future claims.  This also violates the fundamental premise of

what it means to *exit* bankruptcy:

> Once the bankruptcy court confirms a plan of reorganization, the
> debtor may go about its business without further supervision or
> approval.  The firm also is without the protection of the bankruptcy
> court.  It may not come running to the bankruptcy judge every time
> something unpleasant happens.

*Bank of. La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266

F.3d 388, 390 (5th Cir. 2001).

It is the equivalent of General Motors releasing the post-confirmation entity

from liability for manufacturing defects for cars it sells after bankruptcy.  Nor is

this concern an academic one.  As the Debtor's CEO testified at the confirmation

hearing, the Debtor lost approximately $200 million in value during its bankruptcy

case, at least $100 million of which the CEO blamed on the Debtor's prior (yet

post-bankruptcy) manager.[32]

---

[30]   *Id.* (sub. iv).

[31]   Appx. 350 (Tr. 189:3-9).

[32]   Appx. 256-59 (Tr. 95:17-98:6); Appx. 361 (Tr. 200:16-19).

001065

Appx. 2920

Next, the Plan contains a sweeping, permanent injunction: "all Enjoined Parties[33] are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan."[34] Of immediate relevance and effect on the Movants, this means that the Movants are enjoined from advising or causing their clients, including the Funds, to remove the Debtor as the manager of the CLOs, even though the Debtor assumed the PMAs and even if the Debtor mismanages the CLOs.[35]

As with exculpations, *Pacific Lumber* broadly foreclosed non-consensual "permanent injunctions." *In re Pacific Lumber Co.*, 584 F.3d at 252-53. More technically, the assumption of the PMAs means that the Debtor is obligated to perform under them and all rights of the counterparty are preserved and may be enforced: "[w]here the debtor assumes an executory contract, it must assume the entire contract, cum onere – the debtor accepts both the obligations and the benefits of the executory contract." *In re Nat'l Gypsum Co.*, 208 F.3d at 505-06. The Debtor here found a clever way around this fundamental rule by simply obtaining an injunction that permanently enjoins and alters contract rights and obligations, in direct violation of the Bankruptcy Code.

---

[33] The Movants are "Enjoined Parties." Appx. 105.

[34] Appx. 147.

[35] Appx. 359 (Tr. 198:12-25).

001066
Appx. 2021

This injunction, prohibiting "any actions to interfere with the implementation or consummation of the Plan," is also both overbroad and vague. *See Scott v. Schedler*, 826 F.3d 207, 211-12 (5th Cir. 2016) ("an injunction is overly vague if it fails to satisfy the specificity requirements . . . and it is overboard if it is not narrowly tailored to remedy the specific action"). The Movants should not be subjected to potential contempt actions when the Plan fails to define with any reasonable specificity what it means to "interfere" with the "implementation or consummation" of the Plan.

With respect to the "gatekeeper injunction," the Movants are included within the "Enjoined Parties" subject to that injunction, which injunction prohibits the Movants from taking various actions, including to sue any of the "Protected Parties."[36] The "Protected Parties" include the same entities that are exculpated as discussed above.[37] Like the exculpation provision, this injunction effectuates a non-consensual, non-debtor release prohibited by *Pacific Lumber* because the Movants are enjoined from suing the Protected Parties *even for* claims based on "bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence."[38] *See In re Pacific Lumber Co.*, 584 F.3d at 252-53.

---

[36]   Appx. 105 ("Enjoined Parties"); Appx. 110 ("Protected Parties"); Appx. 147 (F. Injunction).

[37]   Appx. 110.

[38]   Appx. 147-48.

001067

Appx. 2982

This injunction is not saved by the fact that the Bankruptcy Court may grant relief from the injunction if it first determines that an Enjoined Party has a "colorable claim" against a "Protected Party."  Nothing in the Bankruptcy Code possibly permits the Bankruptcy Court to require a non-debtor to come to it and prove that it has a viable claim against another non-debtor before it can assert that claim, or else be in contempt of court.  And this, too, applies *prospectively* to actions the Debtor will take in the next two to three years during the "wind down of the business of the Debtor or Reorganized Debtor" and the "the administration of the Claimant Trust."[39]  This is unprecedented, it violates due process, it is a taking, and it is prohibited by *Pacific Lumber*.

The Bankruptcy Court also impermissibly reserved to itself the "sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable."[40]  It is black-letter law that the Bankruptcy Court has no such jurisdiction between non-debtors today, and will certainly have no such jurisdiction in the future as the Plan is implemented.  *See In re Craig's Stores of Tex. Inc.*, 266 F.3d at 390 ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.").  And it is certainly

---

[39]   *Id.*

[40]   *Id.*

001068   App. 0983

black-letter law that the Bankruptcy Court cannot confer onto itself jurisdiction that it does not have.

The end result is that the Movants, and many others, are enjoined *permanently* from exercising their legal and contractual rights; that potential present and *prospective* claims they have against non-debtors are released and exculpated; and that they are required to prove a "colorable" claim for any present or *prospective* claim they may have against non-debtors before they may assert that claim, while the Debtor and its management, officers, and others are free to manage billions of dollars of innocent investors' funds, taking very large fees for themselves, effectively free from the fiduciary duties imposed on them by the federal securities laws.  This is precisely what *Pacific Lumber* prohibits, and the wisdom of *Pacific Lumber's* prohibition is aptly proven by this case.

The Bankruptcy Court attempted to distinguish *Pacific Lumber*.[41]   In fact, the Bankruptcy Court stated its belief that this Court would "extend the holding of *Pacific Lumber*" with respect to the proper scope of an exculpation provision.[42] But if the holdings and limitations of *Pacific Lumber* must be extended in order for the Plan's exculpation provision to be permissible, then the Movants have demonstrated a likelihood of success on the merits of this issue *per se*.

---

[41]        Appx. 744-56.

[42]        Appx. 865 (Tr. 70:10-24).

001069        Appx. 984

### iii.    The Plan Violates the Absolute Priority Rule.

Creditors vote by class under a Chapter 11 plan.  *See* 11 U.S.C. § 1126(c).

Class 8—unsecured creditors—rejected the plan.[43]  As the Plan does not pay Class

8 in full[44] and Class 8 rejected the Plan, the Plan could only be confirmed if the

Debtor satisfied the "Absolute Priority Rule."   Under the Absolute Priority Rule,

the holder of any junior interest—*e.g.*, an equity interest—cannot "receive or retain

… any property" on account of its junior interest.  11 U.S.C. § 1129(b)(2)(B)(ii).

Here, the Plan violates the Absolute Priority Rule as a matter of law because

the Plan gives the Debtor's limited partners—*i.e.*, junior interest holders—

contingent interests in the "Claimant Trust" created under the Plan to pay creditors

and, after they are paid in full, to pay equity holders.[45]  There is no question that

those contingent trust interests are "property" as admitted by the Debtor at trial:

"These are contingent interests.  They are property.  No doubt they are property."[46]

The Debtor's CEO also testified that the contingent interests are, in his belief,

inchoate property interests which may have some value in the future.[47]  As a matter

of law, an interest in a trust, even one subject to a contingency that may never

---

[43]      Appx. 6.  One of the Movants, NexPoint Advisors, L.P., is a partial assignee of four Class
8 Claims.  Appx. 777-87.

[44]      Appx. 41.

[45]      Appx. 120.

[46]      Appx. 698 (242:19-20).

[47]      Appx. 339 (178:22-25).

001070
Appx. 9985

happen, is "property." *See In re Edmonds*, 273 B.R. 527, 529 (Bankr. E.D. Mich. 2000).   The Plan therefore violates the Absolute Priority Rule because equity holders retain or receive "property" under the Plan.

The Debtor argued that these contingent interests may have no value and would only vest and be paid if unsecured creditors are paid in full, thus satisfying the Absolute Priority Rule.[48]   But the United States Supreme Court has squarely rejected this argument:

> Respondents further argue that the absolute priority rule has no application in this case, where the property which the junior interest holders wish to retain has no value to the senior unsecured creditors. . . We join with the overwhelming consensus of authority which has rejected this 'no value' theory. . .   Whether the value is present or prospective, for dividends or only for purposes of control a retained equity interest is a property interest. . .   And while the Code itself does not define what 'property' means as the term is used in § 1129(b), the relevant legislative history suggests that Congress' meaning was quite broad.  Property includes both tangible and intangible property.

*Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207-08 (1988) (internal quotations and citations omitted).  Thus, it does not matter that the property may be prospective, intangible, or valueless.

The Bankruptcy Court relied on *In re Introgen Therapeutics*, 429 B.R. 570 (Bankr. W.D. Tex. 2010), for the proposition that, so long as the contingent interests are not paid unless and until all unsecured claims are paid in full, the

---

[48]      Appx. 45.

Absolute Priority Rule is satisfied.  This opinion was wrongly decided and has never been adopted by this Court or any appellate court.

First, it directly contradicts the language of the Bankruptcy Code, which implicates the Absolute Priority Rule if *any* "property" is being retained or received.  Second, the opinion looked to the present value of what was being retained, something directly foreclosed by the Supreme Court's opinion in *Norwest Bank Worthington* quoted above.  Third, the opinion fails to take into account the Supreme Court's opinion in *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. Lasalle P'ship*, 526 U.S. 434 (1999).  There the Supreme Court equated the exclusive opportunity to bid on new equity under a plan as itself "property" that was being granted or retained in violation of the Rule: "[t]his opportunity should, first of all, be treated as an item of property in its own right."  *Id.* at 455.  If an exclusive opportunity is "property" for purposes of the Absolute Priority Rule, then so is an "opportunity" to share in a future recovery, however remote.

**(iv)   Conclusion.**

At a minimum, the Movants have shown that a "serious legal question is involved and [that] the balance of the equities weighs heavily in favor of granting the stay." *Tex. Democratic Party v. Abbott*, 961 F.3d at 397.  Permanent federal injunctions; a court exculpating someone of potential liability; a court requiring someone to come before it and prove that a claim is "colorable" before he may

001072

have access to the courts; violating the Absolute Priority Rule—all of these are "serious legal questions." And, given that the Bankruptcy Court ignored the dictates of *Pacific Lumber*, and that billions of dollars of investments from thousands of innocent investors are at stake, whose claims are released and who are enjoined from exercising their legal rights and remedies *after* bankruptcy, "the equities weighs heavily in favor of granting the stay."

Simply put, debtors and bankruptcy courts must not be permitted to use expediency to trample on legal rights, in the belief that appeals will become moot rendering appellate review unlikely. The Confirmation Order represents such clear errors of law and such a "substantial case on the merits" that the Court need not even consider the remaining factors governing a discretionary stay pending appeal under the authority of *Weingarten Realty Investors*, 661 F.3d at 910. Nevertheless, the Movants address such other factors below.

**C.    MOVANTS WILL SUFFER IRREPARABLE INJURY WITHOUT A STAY**

First, there is the threat of equitable mootness, which this Court applies to Chapter 11 confirmation orders to dismiss appeals because it may be effectively too late to "unscramble the eggs." *See, e.g., In re Blast Energy Services, Inc.*, 593 F.3d 418, 424 (5th Cir. 2010). Indeed, this Court has recognized potential issues with denying a stay pending appeal:

> Although the exigencies of the case appeared to demand prompt action, simply denying a stay seems to have been, and often will be,

001073    Appx 9888

> too simplistic a response. A plan may be designed to take effect, as it
> was here, after a lapse of sufficient time to initiate appellate review. A
> supersedeas bond may be tailored to the scope of the appeal. An
> appeal may be expedited. As with all facets of bankruptcy practice,
> myriad possibilities exist. Thus, substantial legal issues can and ought
> to be preserved for review.

*Bank of New York Trust Co., N.A. v. Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 243 (5th Cir. 2009).   This is all the more important here where the order of the Article I bankruptcy court should be reviewed on its merits by an Article III court.

Second, the various release, exculpation, and injunction provisions of the Plan detailed above will lead to irreparable injury if the Movants are unable to exercise their contractual rights or take other action to protect their interests and those of the investments they manage.   Being enjoined from doing what one otherwise has the lawful right to do is irreparable injury as a matter of law.   *C.f. Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012); *Cooper v. U.S. Postal. Serv.*, 246 F.R.D. 415, 418 (D. Conn. 2007).

The Debtor has testified that it intends to liquidate and wind down the CLOs in approximately two years.[49]   During that time, if the Movants dispute how the Debtor is doing so, or believe they have claims against the Debtor for its conduct, or wish to advise or cause their clients to take action against the Debtor on account of the same, the Plan will prohibit them from doing so, and the Debtor and its

---

[49]      Appx. 273 (line 5); Appx. 343 (line 5).

001074    Appx 3380

management will be exculpated.  Absent a stay pending appeal, by the time that the
Movants may ultimately prevail on their appeal, various rights will effectively
have been lost for good.

**D.     DEBTOR AND CREDITORS WILL NOT BE UNDULY PREJUDICED BY A STAY**

The Plan does not involve exit financing, a sale of the business, new
investments, new money coming in, nor anything else that the Debtor does not
already have to monetize its assets for the benefit of its creditors.[50]    As the
Debtor's CEO confirmed at trial, "post-confirmation, you are basically going to
continue managing the CLOs and funds and trying to monetize assets for creditors
the same as you are today."[51]  He does not "need anything in the plan that [he] does
[not] have today to keep managing" the "Funds and the CLOs."[52]

Thus, because the Plan does not give the Debtor anything that it lacks at
present to continue monetizing its assets, managing the CLOs, and doing
everything else it would under the Plan, the Debtor and its other creditors will not
suffer any prejudice if a stay pending appeal is granted.  In this respect, the Court
should take into account that 27 Class 8 creditors rejected the Plan, while only 17
accepted the Plan.[53]   It is the unsecured creditors who would be the only ones

---

[50]      Appx. 346 (185:3-188:5).

[51]      Appx. 349 (188:2-5).

[52]      *Id.* (188:23-189:2).

[53]      Appx. 6.

001075

potentially prejudiced if the Plan is stayed, as that may delay their recoveries, but Class 8 overwhelmingly rejected the Plan.

## E.   THE PUBLIC INTEREST IS SERVED BY A STAY PENDING APPEAL

Because the Plan's exculpation and injunction provisions impermissibly infringe upon the contractual, legal, and due-process rights of parties in interest in the bankruptcy case, a stay pending appeal will serve the public interest. Thousands of innocent investors have invested in the CLOs or funds that the Debtor manages, totaling well over $1 billion, including $140 million for just the Funds that the Movants manage.  A stay will ensure that non-debtor parties can be held accountable for their post-petition and post-confirmation conduct.  The public has a strong interest, for example, in ensuring that the Debtor complies with federal securities laws.  But the Plan's exculpation provision and injunction threaten to substantially vitiate these laws and effectively relieve the Debtor from its obligations and duties (and potential liabilities) thereunder.

The public interest is also best served by requiring respect for judicial precedent, here *Pacific Lumber*.  While the Bankruptcy Court believed that this Court will revisit its *Pacific Lumber* holdings and will expand *Pacific Lumber*, at present *Pacific Lumber* is the law, and the Bankruptcy Court was bound by it.  This Court should not permit a Plan that clearly and directly violates *Pacific Lumber* to become effective before addressing the merits of this appeal.

001076

F.  SECURITY FOR STAY PENDING APPEAL

      The Court may, but need not, condition a stay pending appeal on a bond or other security being posted.  *See* FED. R. BANKR. P. 8007(c).  Because: (i) the Plan so clearly violates *Pacific Lumber;* (ii) the Plan so clearly violates the Absolute Priority Rule; (iii) there is the threat of equitable mootness; and (iv) the Debtor and creditors would not be harmed by a stay pending appeal, the Movants should not be required to post a bond as a condition to obtaining a stay.  Indeed, the Debtor argued below for a multi-hundred-million dollar bond, clearly designed *not* to protect other parties but to effectively *prevent* a stay pending appeal as no legitimate appellant should be required to post the entire amount of debt in a bankruptcy case as a condition of obtaining meaningful appellate relief.

      The only conceivable harm pending appeal is from a delay in payments to certain creditors and minor added administrative expenses for having to file reports and pleadings with the Bankruptcy Court.  If the Plan is affirmed, then those creditors would not have use of those funds for a period of time.  Here, the Debtor believes that it will distribute approximately $60 million to Class 7 and Class 8 creditors within one year of the Plan going effective, which so far it has not.[54]  As unsecured creditors, these creditors would be entitled to interest at the federal rate of post-judgment interest.  *See Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*, 782

---

[54]    Appx. 766.

001077

Fed. Appx. 339, 341 (5th Cir. 2019).  That rate is presently less than 1% and is unlikely to rise past that amount during the period of any stay.  Thus, the interest that any creditor may be able to claim for any delay in payment is less than 1%, or less than $600,000.00.  With respect to increased administrative costs for having to file reports and pleadings with the Bankruptcy Court, the Movants estimate that it cannot reasonably cost the Debtor more than $150,000.00 per month to have to continue filing reports and pleadings with the Bankruptcy Court that it would no longer have to do under its Plan.

Assuming this Court resolves this appeal within twelve months, the Movants therefore submit that a bond or security of no more than $2.4 million is sufficient to protect the Debtor and its estate from any harm resulting from the delay in the effectiveness of the Plan.

## IV.    <u>CONCLUSION</u>

WHEREFORE, premises considered, the Movants request that the Court enter an Order: (i) staying the effectiveness of the Confirmation Order pending appeal; and (ii) granting such other relief as is just and proper.

001078    Appx 0983

RESPECTFULLY SUBMITTED this the 19th day of May, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By:  /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Julian P. Vasek, Esq.
    500 N. Akard St., Ste. 3800
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    drukavina@munsch.com
    jvasek@munsch.com

**COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS,
L.P., AND NEXPOINT ADVISORS, L.P.**

Appx 3384
001079

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he discussed the relief requested herein with Jeff Pomerantz, Esq., counsel of record for the Debtor, who informed the undersigned that the Debtor opposes said relief.

/s/ Davor Rukavina
Davor Rukavina

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this Petition complies with Rule 27(d)(2) because it contains 5,176 words, excepting those portions that may be excepted under Rule 32(f).

/s/ Davor Rukavina
Davor Rukavina

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 19th day of May, 2021, true and correct copies of this document, with any exhibits attached thereto, were served on the recipients listed below via email.

Jeffrey N Pomerantz
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067
Email: jpomerantz@pszjlaw.com

John A Morris
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY 10017-2024
Email: jmorris@pszjlaw.com

/s/ Davor Rukavina
Davor Rukavina

001080
Appx 8085

**EXHIBIT 25**

Case: 21-10449     Document: 00515906886     Page: 1     Date Filed: 06/21/2021

# *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 21, 2021

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

        No. 21-10449     NexPoint v. Highland Capital Mgmt
                         USDC No. 19-34054
                         USDC No. 3:21-CV-538

Enclosed is an order entered in this case.

                         Sincerely,

                         LYLE W. CAYCE, Clerk

                         By: _____
                         Lisa E. Ferrara, Deputy Clerk
                         504-310-7675

Mr. Zachery Z. Annable
Mr. Robert P. Colwell
Mr. Douglas Scott Draper
Mr. David R. Fine
Ms. Melissa Sue Hayward
Mr. Jeffrey N. Pomerantz
Mr. Davor Rukavina
Mr. Clay Marshall Taylor
Mr. Julian Preston Vasek

# United States Court of Appeals
# for the Fifth Circuit

_____

No. 21-10449

_____

NexPoint Advisors, L.P.; Highland Capital Management
Fund Advisors, L.P.,

*Appellants,*

*versus*

Highland Capital Management, L.P.,

*Appellee.*

_____

Appeal from the United States Bankruptcy Court
for the Northern District of Texas
USDC No. 19-34054

_____

Before Dennis, Southwick, and Engelhardt, *Circuit Judges*.

Per Curiam:

　　IT IS ORDERED that appellants Highland Capital Management
Fund Advisors, L.P. and Nexpoint Advisors, L.P.'s motion for stay pending
appeal is DENIED.

Appx 8088

# EXHIBIT 26

Case 22-03052-sgj   Doc 10-26   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-00550-N Document 28-26 Filed 07/07/22 Page 235 of 242 PageID 10549
Case 3:21-cv-00550-N   Document 28   Filed 06/23/21   Page 1 of 3   PageID 1365

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | Bankruptcy Case No. 19-34054 |
| | § | |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. and NEXPOINT ADVISORS, L.P., | § § § § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-538-N |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| | § | |
| Appellee. | § | |
| | § | |
| HIGHLAND GLOBAL ALLOCATION FUND, HIGHLAND INCOME FUND, NEXPOINT CAPITAL, INC., and NEXPOINT STRATEGY OPPORTUNITIES FUND | § § § § § § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-539-N |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| | § | |
| Appellee. | § | |
| | § | |
| JAMES DONDERO, | § | |
| | § | |
| Appellant, | § | |
| | § | |

ORDER – PAGE 1

001085
Appx. 6088

Case 22-03052-sgj    Doc 10-26    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-00280-N  Document Exhibit 26    Filed 09/30/21    Page 236 of 242  PageID 11580
Case 3:21-cv-00550-N  Document 28  Filed 06/23/21  Page 2 of 3  PageID 1366

v.                                        §        Civil Action No. 3:21-cv-546-N
                                          §
HIGHLAND CAPITAL MANAGEMENT, §
L.P.,                                     §
                                          §
        Appellee.                         §
_____ §_____
                                          §
THE DUGABOY INVESTMENT TRUST §
AND GET GOOD TRUST                        §
                                          §
        Appellants,                       §
                                          §
v.                                        §        Civil Action No. 3:21-cv-550-N
                                          §
HIGHLAND CAPITAL MANAGEMENT, §
L.P.,                                     §
                                          §
        Appellee.                         §

## **ORDER**

This Order addresses Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P. (collectively, the "Advisors"), The Dugaboy Investment Trust, and Get Good Trust's motion for stay pending appeal. The Court denies the motion.

This is a bankruptcy case concerning Highland Capital Management, L.P. On February 22, 2021, the Bankruptcy Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* (the "Confirmation Order"). Appellants filed motions for stay in the Bankruptcy Court and initiated four separate appeals of the Confirmation Order to this Court. The Bankruptcy Court denied the motions for stay and certified a direct appeal to the Fifth Circuit. The Advisors then filed this motion for stay pending the outcome of their

ORDER – PAGE 2

Case 22-03052-sgj   Doc 10-26   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-00280-N  Document 181-26  Filed 11/04/24  Page 237 of 242  PageID 10581
Case 3:21-cv-00550-N   Document 28   Filed 06/23/21   Page 3 of 3   PageID 1367

appeal to the Fifth Circuit.  The Dugaboy Investment Trust and the Get Good Trust then filed a motion adopting the Advisors' motion.

Shortly after this motion became ripe, the Advisors filed a similar motion to the Fifth Circuit.  The Fifth Circuit ultimately denied that motion.  *See* Order, NexPoint v. Highland Capital Mgmt., No. 21-10449 (5th Cir. June 21, 2021).  Because the Fifth Circuit has already reviewed and denied a motion with identical arguments, the Court denies this motion for stay pending appeal.

Signed June 23, 2021.

David C. Godbey
United States District Judge

ORDER – PAGE 3

# EXHIBIT 27

Appx 4083

Case 22-03052-sgj   Doc 10-27   Filed 05/25/22   Entered 05/25/22 17:52:21   Desc
Case 3:21-cv-02800-S   Document 41-27   Filed 06/17/22   Page 239 of 242   PageID 10583
Case 19-34054-sgj11 Doc 2700 Filed 08/11/21   Entered 08/11/21 14:07:35   Page 1 of 4

Docket #2700  Date Filed: 08/11/2021

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (admitted *pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (admitted *pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
| | ) |
| Debtor. | ) |
| | ) |

## NOTICE OF OCCURRENCE OF EFFECTIVE DATE OF
## CONFIRMED FIFTH AMENDED PLAN OF REORGANIZATION
## OF HIGHLAND CAPITAL MANAGEMENT, L.P.

       **PLEASE TAKE NOTICE** that on February 22, 2021, the United States
Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered the *Order
Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*
[Docket No. 1943] (the "Confirmation Order") confirming the *Fifth Amended Plan of
Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808] (as

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address
for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



¹⁹³⁴⁰⁵⁴²¹⁰⁸¹¹⁰⁰⁰⁰⁰⁰⁰⁰⁰⁰⁰¹
**001089**

Case 22-03052-sgj    Doc 10-27    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02802-N Document 61-27 Filed 03/30/22 Page 240 of 242 PageID 10594
Case 19-34054-sgj11 Doc 2700 Filed 08/11/21    Entered 08/11/21 14:07:35    Page 2 of 4

amended, supplemented, or modified, the "<u>Plan</u>"). Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order, as applicable.

    **PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on August 11, 2021.

    **PLEASE TAKE FURTHER NOTICE** that, except with respect to Administrative Expense Claims that are Professional Fee Claims or as otherwise set forth in the Plan, requests for payment of an Administrative Expense Claim must be Filed with the Bankruptcy Court **no later than forty-five (45) days after the Effective Date** (the "<u>Administrative Expense Claims Bar Date</u>"). **HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS BY THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE THAT DO NOT FILE AND SERVE SUCH A REQUEST BY THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR.**

    **PLEASE TAKE FURTHER NOTICE** that, unless otherwise ordered by the Bankruptcy Court, all final requests for payment of Professional Fee Claims must be Filed **no later than sixty (60) days after the Effective Date**.

    **PLEASE TAKE FURTHER NOTICE** that the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor or the Reorganized Debtor, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan and Confirmation Order, including, without limitation: the injunction with respect to the commencement of claims and causes of action against Protected Parties set forth in Section IX.F of the Plan and Sections AA and BB of the Confirmation Order, the duration of injunction and stays set forth in Section IX.G of the Plan and Section AA of the Confirmation Order, and the continuance of the January 9 Order and July 16 Order set forth in Section IX.H of the Plan and Section CC of the Confirmation Order.

    **PLEASE TAKE FURTHER NOTICE** that on the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be deemed cancelled, and all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, such Class A Limited Partnership Interests and Class B/C Limited Partnership Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.

    **PLEASE TAKE FURTHER NOTICE** that the Confirmation Order and the Plan

001090

Appx. 0985

Case 22-03052-sgj    Doc 10-27    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-01205-N Document 641-27 Filed 04/04/22 Page 241 of 242 PageID 10685
Case 19-34054-sgj11 Doc 2700 Filed 08/11/21    Entered 08/11/21 14:07:35    Page 3 of 4

are available for inspection.  If you would like to obtain copies you may: (a) access the Debtor's restructuring website at http://www.kccllc.net/hcmlp; (b) call toll free: (877) 573-3984 or international: (310) 751-1829; or (c) email HighlandInfo@kccllc.com and reference "Highland" in the subject line.  You may also obtain copies of any pleadings filed in this case for a fee via PACER at: pacer.uscourts.gov.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

Appx. 1006

001091

Case 22-03052-sgj    Doc 10-27    Filed 05/25/22    Entered 05/25/22 17:52:21    Desc
Case 3:21-cv-02800-N Document 61-27 Filed 05/05/22 Page 242 of 242 PageID 10686
Case 19-34054-sgj11 Doc 2700 Filed 08/11/21    Entered 08/11/21 14:07:35    Page 4 of 4

Dated: August 11, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor*

001092

Appx 01087