**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re: Highland Capital Management, L.P.** | § | Case No. **19-34054-SGJ-11** |
| The Charitable DAF Fund LP | § | |
| Appellant | § | 22-03052 |
| vs. | § | |
| **Highland Capital Management, L.P.** | § | |
| Appellee | § | **3:22-CV-02280-S** |

**[43] Order granting amended motion to dismiss adversary proceeding with prejudice (related document # 19) Entered on 9/30/2022**

# APPELLANT RECORD
# VOLUME 10

SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367

*Counsel for The Charitable DAF Fund, L.P.
and CLO Holdco, Ltd.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § Case No. 19-34054-sgj11 |
| | § |
| Debtor. | § |
| | § |
| THE CHARITABLE DAF FUND, L.P. | § |
| | § |
| Plaintiff, | § Adversary Proceeding No. |
| | § |
| vs. | § 22-03052-sgj11 |
| | § |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | § |
| Defendant. | § |
| | § |

*INDEX*

## APPELLANT'S SECOND AMENDED STATEMENT OF ISSUES AND
## DESIGNATION OF RECORD ON APPEAL

Pursuant to Rules 8009(a)(1)(A)-(B) and (a)(4) of the Federal Rules of Bankruptcy

Procedure, The Charitable DAF Fund, L.P. ("Appellant") hereby designates the following items

to be included in the record and identifies the following issues with respect to its appeal of the

Order Granting Defendant's Amended Motion to Dismiss Adversary Proceeding [Doc.43] which

was entered by the United States Bankruptcy Court for the Northern District of Texas on
September 30, 2022.

**I.     STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL**

Whether the Bankruptcy Court erred in granting Defendant's Amended
Motion to Dismiss Adversary Proceeding.

**II.     DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD**

*Vol. 1*
*000001*

1.     Notice of Appeal for Bankruptcy Case Adversary Proceeding No. 21-
03067-sgj11 [Doc. 46].

*000004*

2.     The judgment, order, or decree appealed from: Order Granting Amended
Motion to Dismiss Adversary Proceeding [Doc. 43].

3.     Any opinion, findings of fact and conclusions of law of the bankruptcy court
relating to the issues on appeal, including transcripts of all oral rulings:
None.

*000032*

3.     Docket Sheet kept by the Bankruptcy Clerk.

4.     Documents listed below and as described in the Docket Sheet for
Bankruptcy Case Proceeding No. 22-03052-sgj.

*Vol. 2*

| No. | Date Filed | Docket No. | Description/Document Text |
|-----|-----------|-----------|---------------------------|
| 1 | 5/25/22 (7/22/21) | 1 | (18 pgs; 4 docs) Adversary case 22-03052. ORDER REFERRING CASE 3:21-CV-1710-N from U.S District Court for the Northern District of Texas, Dallas Division to U.S. Bankruptcy Court for Northern District of Texas, Dallas Division and Complaint by Charitable DAF Fund, LP against Highland Capital Management, L.P. Fee Amount $350 (Attachments: # 1 Original Complaint # 2 Civil Cover Sheet # 3 Docket Sheet from 21-CV-1710). Nature(s) of suit: 02 (Other (e.g., other actions that would have been brought in state court if unrelated to bankruptcy)). (Okafor, Marcey) |
| 2 | 5/25/22 (10/5/21) | 8 | (8 pgs; 2 docs) MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) Attorney Zachery Z. Annable added to party Highland Capital Management LP(pty: dft) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #8 ON |

*000040*

*000058*

---

| | | | 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
|---|---|---|---|
| 3 | 5/25/22 (10/5/21) | 9 | (15 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #9 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 4 | 5/25/22 (10/5/21) | 10 | (1012 pgs; 28 docs) Appendix in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #10 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION](Okafor, Marcey) |
| 5 | 5/25/22 (10/5/21) | 11 | (8 pgs; 2 docs) MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #11 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 6 | 5/25/22 (10/5/21) | 12 | (10 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Annable, Zachery [ORIGINALLY FILED IN 21-CV-1710 AS #12 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 7 | 5/25/22 (10/5/21) | 13 | ((238 pgs; 4 docs) Appendix in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 |

Handwritten: Vol. 2, 000066, 000081, Thru Vol. 6, Vol. 7, 001093, 001101, 001111

| Vol. 8 | | | AS #13 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
|---|---|---|---|
| 8 | 5/25/22 (10/27/21) | 15 | (3 pgs) RESPONSE filed by Charitable DAF Fund LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Sbaiti, Mazin) [ORIGINALLY FILED IN 21-CV-1710 AS #15 ON 10/27/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 9 | 5/25/22 (11/5/21) | 16 | (7 pgs) REPLY filed by Highland Capital Management LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #16 ON 11/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 10 | 5/25/22 (11/21/21) | 18 | (2 pgs) ORDER re: 8 Motion for Reconsideration. The Court grants Defendant's motion, lifts the stay, and refers this case to Judge Stacey G.C. Jernigan of the United States Bankruptcy Court for the Northern District of Texas, to be adjudicated as a matter related to the Chapter 11 Bankruptcy of HCM., Chapter 11 Case No. 10-34054. The Clerk of this Court and the Clerk of the Bankruptcy Court to which this case is referred are directed to take such actions as are necessary to docket this matter as an Adversary Proceeding associated with the aforementioned consolidated bankruptcy case. (Ordered by Judge David C Godbey on 5/19/2022) (oyh) (Main Document 18 replaced on 5/23/2022) (twd). (Entered: 05/20/2022) [ORIGINALLY FILED IN 21-CV-1710 AS #18 ON 11/21/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (*ERROR IN ENTRY: CORRECT CASE NUMBER IS: 19-34054*) (Okafor, Marcey) |
| 11 | 5/27/22 | 19 | (8 pgs; 2 docs) Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments:# 1 Exhibit A--Proposed Order) (Annable, Zachery) |
| 12 | 5/27/22 | 20 | (12 pgs) Brief in support filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| 13 | 5/27/22 | 21 | (637 pgs) Support/supplemental document (*Appendix in Support of Highland Capital Management, L.P.'s Amended* |

Handwritten annotations (left margin):
Vol. 8
001349
001352
001359
001361
001369
001381
Thru Vol. 10

| | | | | |
|---|---|---|---|---|
| | | | | *Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| *Vol. 11*<br><br>*002018* | 14 | 6/1/22 | 23 | (6 pgs; 2 docs) Notice of hearing filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Hearing to be held on 8/3/2022 at 02:30 PM at https://us courts.webex.com/meet/jerniga for 19 and for 19, (Attachments: # 1 Exhibit A)(Hayward, Melissa) |
| *002024* | 15 | 7/5/22 | 30 | (12 pgs) Response opposed to (related document(s): 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) filed by Plaintiff Charitable DAF Fund, LP . (Ecker, C.) (Entered: 07/06/2022) |
| *002036* | 16 | 7/26/22 | 31 | (15 pgs) Reply to (related document(s): 30 Response filed by Plaintiff Charitable DAF Fund, LP) filed by Defendant Highland Capital Management, L.P.. (Annable, Zachery) |
| *002051*<br>*Thru Vol 14* | 17 | 7/26/22 | 32 | (865 pgs) Support/supplemental document *(Amended Appendix in Support of Highland Capital Management, L.P.'s Amended Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 21 Support/supplemental document). (Annable, Zachery) |
| *Vol. 15*<br><br>*002916*<br>*Thru Vol. 18* | 18 | 8/1/22 | 34 | (867 pgs; 23 docs) Witness and Exhibit List *(Reorganized Debtor's Witness and Exhibit List with Respect to Evidentiary Hearing to Be Held on August 3, 2022)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22) (Annable, Zachery) |
| *Vol. 19*<br><br>*003783*<br>*Thru Vol. 22* | 19 | 8/3/22 | 40 | (1 pg) Court admitted exhibits date of hearing August 3, 2022 (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments: # 1 Exhibit A--Proposed Order) COURT ADMITTED EXHIBIT 17. COURT TOOK JUDICIAL NOTICE OF EXHIBITS 1-13, 21 AND 22. (Ellison, T.) (Entered: 08/04/2022) |

*vol. 22*
*004651*
*004679*

| | 20 | 9/30/22 | 42 | (28 pgs) Memorandum of opinion regarding Defendant's amended motion to dismiss adversary proceeding (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Entered on 9/30/2022 (Okafor, Marcey) |
| | 21 | 8/4/22 | 41 | 41 Transcript regarding Hearing Held 08/03/2022 (45 pages) RE: Motion to Dismiss Adversary Proceeding (19). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 11/2/2022. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 37 Hearing held on 8/3/2022. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) (Appearances: G. Demo and Z. Annabel for Movant/Highland; J. Bridges for Respondent/Charitable DAF. Evidentiary hearing. Motion granted. Court to issue Opinion and Order.)). Transcript to be made available to the public on 11/2/2022. (Rehling, Kathy) |

Dated:  November 28, 2022                Respectfully submitted,

                                        **SBAITI & COMPANY PLLC**

                                        */s/  Mazin A. Sbaiti*
                                        **Mazin A. Sbaiti**
                                        Texas Bar No. 24058096
                                        **Jonathan Bridges**
                                        Texas Bar No. 24028835
                                        JPMorgan Chase Tower
                                        2200 Ross Avenue – Suite 4900W
                                        Dallas, TX  75201
                                        T:  (214) 432-2899
                                        F:  (214) 853-4367
                                        E:  mas@sbaitilaw.com
                                             jeb@sbaitilaw.com

                                        **Counsel for Appellant**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically through the Court's ECF system, which provides notice to all parties of interest, on this 28th day of November, 2022.

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Red Hat | | 100 East Davie Street | | | Raleigh | NC | 27601-0000 | |
| Red Oak Compliance Solutions LLC | | 1320 Arrow Point Dr Ste 411 | | | Cedar Park | TX | 78613-2095 | |
| Red River CLO Corp. | | P.O. Box 1093GT, Queensgate House | | George Town | Grand Cayman | | | Cayman Islands |
| Red River CLO Ltd c/o Ogier Fiduciary Services (Cayman) Limited | Attention The Directors | P.O. Box 1234, | Queensgate House South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |
| Red River CLO Ltd. | | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Red River CLO Ltd. et al | U.S. Bank National Association Corporate Trust Services/CDO Department | One Federal Street, Third Floor | | | Boston | MA | 02110 | |
| Red River CLO Ltd. Grand Central Asset Trust | LaSalle Bank N.A., as Collateral Administrator | 181 West Madison Street | Suite 3200 | CDO Trust Services - Roy Hykal | Chicago | IL | 60602 | |
| Red River CLO Ltd. Grand Central Asset Trust | U.S. Bank, National Association | One Federal Street | 3rd Floor | Mr. Jackson Carneiro | Boston | MA | 02110 | |
| Red River CLO Ltd. Highland Special Opportunities Holding Company U.S. Bank National Association | Highland Special Opp. Holding Company | 2 Galleria Towers 13455 Noel Road | Suite 1300 | | Dallas | TX | 75240 | |
| Red River CLO Ltd. Highland Special Opportunities Holding Company U.S. Bank National Association | LaSalle Bank N.A., as Collateral Administrator | 181 West Madison Street | Suite 3200 | CDO Trust Services - Maciej Zurawski | Chicago | IL | 60602 | |
| Red River CLO Ltd. Highland Special Opportunities Holding Company U.S. Bank National Association | U.S. Bank, National Association | One Federal Street | Third Floor | Mr. Jackson Carneiro | Boston | MA | 02110 | |
| Red River CLO Ltd. MMP-5 Funding, LLC IXIS Financial Products Inc. | IXIS Financial Products Inc. | 9 West 57th Street | 36th Floor | | New York | NY | 10019 | |
| Red River CLO Ltd. MMP-5 Funding, LLC IXIS Financial Products Inc. | MMP-5 Funding, LLC | 120 White Plains Road | Suite 115 | | Tarrytown | NY | 10591 | |
| Red River CLO Ltd. U.S. Bank National Association IXIS Financial Products Inc. | Red River CLO Ltd. Address c/o Ogier Fiduciary Services (Cayman) Limited | P.O. Box 1234 | Queensgate House South Church Street | Red River CLO Ltd. | George Town | | KY1-1108 | Cayman Islands |
| Red River CLO Ltd., et al | c/o Ogier Fiduciary Services (Cayman) Limited | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Red River CLO, Ltd. | | P.O. Box 1093GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Red River CLO, Ltd. | Red River CLO Ltd. c/o Ogier Fiduciary Services (Cayman) limited | P.O. Box 1093GT | Queensgate House, South Church Street | The Directors c/o Ogier Fiduciary Services (Cayman) Limited | George Town | | | Cayman Islands |
| Red River CLO, Ltd. U.S. Bank National Association | U.S. Bank National Association Corporate Trust Services/CDO Department | One Federal Street, Third Floor | Ref Red River CLO Ltd | The Directors - Red River | Boston | MA | 02110 | |
| Red River CLO, Ltd. U.S. Bank National Association | | P.O. Box 1234 | Queensgate House South Church Street | | George Town | | KY1-1108 | Cayman Islands |

Highland Capital Management, L.P.
Case No. 19-34054

Page 115 of 155

APPX. 00401
001785

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 128 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Red Rock Strategic Partners | | PO Box 35 | | | Watkinsville | GA | 30677 | |
| Redbud E&P Inc. | | 2602 McKinney Ave | Ste 400 | | Dallas | TX | 75204 | |
| Redeemer Committee - Highland Crusader | | | | | | | | |
| Redeemer Committee Highland Crusader Fund | Attn Eric Felton | 731 Pleasant Ave. | | | Glen Ellyn | IL | 60137 | |
| Redmond Law Firm | c/o Terri Mascherin, Esq. | Jenner & Block | 353 N. Clark Street | | Chicago | IL | 60654-3456 | |
| | | 6731 W. 121 St, Ste 226 | | | Overland Park | KS | 66209 | |
| Redspin | | 27271 Las Rambias | Suite 200 | | Mission Viejo | CA | 92691 | |
| REED SMITH | | Address on File | | | | | | |
| REED SMITH | | PO Box 360074M | | | Pittsburgh | PA | 15251-6074 | |
| REED SMITH | | PO BOX 759052 | | | Baltimore | MD | 21275-9052 | |
| REED WATSON | | Address on File | | | | | | |
| Reese Energy Consulting, Inc. | | 725 South Boulevard | | | Edmond | OK | 73034 | |
| Refinitiv | c/o Sarah E. Doerr | Refinitiv f/d/b/a Thomson Reuters | Moss & Barnett | 150 5th St S, Suite 1200 | Minneapolis | MN | 55402 | |
| Refinitiv US LLC | | 3 Times Square | | | New York | NY | 10036 | |
| Regulatory Compliance Watch | | PO Box 9407 | | | Gaithersburg | MD | 20898-9407 | |
| Regus Business Centre | | Colleen Susini, Centre Manager | 245 Park Ave, 39th Flr | | New York | NY | 10167 | |
| Regus Management Group LLC | | PO Box 842456 | | | Dallas | TX | 75284-2458 | |
| Reid Collins & Tsai | William T. Reid, Esq. | Reid Collins & Tsai LLP | 810 Seventh Avenue, Ste 410 | | New York | NY | 10019 | |
| Reid Collins & Tsai LLP | | 1301 S. Capital of Texas Hwy | #C300 | | Austin | TX | 78746 | |
| Reid Collins & Tsai LLP | | 4301 Westbank Drive | Building B Suite 230 | | Austin | TX | 78746 | |
| Reid Davis | | Address on File | | | | | | |
| REIS SERVICES, LLC | | 530 Fifth Ave5th Floor | | | New York | NY | 10036 | |
| Reis, Inc. | | 5 West 37th St | | | New York | NY | 10018 | |
| Reis, Inc. | | 530 5TH AVE, 5TH FLR | | | New York | NY | 10036 | |
| REIT ZONE PUBLICATIONS, LLC | | 448 IGNACIO BLVD | STE 345 | | Novato | CA | 94949 | |
| Reiter, Jon | | Address on File | | | | | | |
| Relationship Science LLC | | 909 3rd Ave | FL 18 | | New York | NY | 10022 | |
| Relationship Science LLC | | PO Box 347989 | | | Pittsburgh | PA | 15251-4989 | |
| Ren Morrison Photography | | 5445 Caruth Haven 121 | | | Dallas | TX | 75225 | |
| Rentacrate Incorporated | | 124 Prospect St. | | | Waltham | MA | 02453 | |
| Rentacrate Incorporated | | 22 Century Blvd | Suite 420 | | Nashville | TN | 37214 | |
| Rentacrate Incorporated | | PO Box 32194 | | | New York | NY | 10087-2194 | |
| Renfro, Tyler | | Address on File | | | | | | |
| Reorg Research, Inc. | | 1140 Broadway | Ste 201 | | New York | NY | 10001 | |
| Reorg Research, Inc. | | 11 East 26th Street | 12th Floor | | New York | NY | 10010-0000 | |
| Reporters Central LLC | | 363 Seventh Ave, 21st Fl | | | New York | NY | 10001 | |
| Republic Title of Texas, Inc. | | 2701 W. Plano Parkway, Suite 100 | | | Plano | TX | 75075 | |
| Reputation Management Consultants | | 92 Corporate Park | Suite C-700 | | Irvine | CA | 92606 | |
| Rescue Cell Phone | | 280 Legacy Dr | #104 | | Plano | TX | 75023 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 116 of 155

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Rescue Cell Phone | | 6121 Greenville Ave | | | Dallas | TX | 75206 | |
| Research in Motion Corporation | | 12432 Collections Center Dr | | | Chicago | IL | 60693 | |
| Resolutions, LLC. | | 222 Berkeley Street | Suite 1060 | | Boston | MA | 02116 | |
| Resort Capital Advisors | | 712 Intracoastal Dr | | | Ft. Lauderdale | FL | 33304 | |
| Resource Technologies Corp. | | PO Box 3201 | | | Troy | MI | 48007-3201 | |
| Restaurant Associates | Attn Jeanine Miller | 1071 Fifth Avenue | | | New York | NY | 10128 | |
| Resulte Universal | | 5151 Belt Line Rd | Suite 455 | | Dallas | TX | 75254 | |
| REUTERS LOAN PRICING CORPORATION | | GENERAL POST OFFICE | PO BOX 26803 | | New York | NY | 10087-6803 | |
| Rey Rodriquez | | Address on File | | | | | | |
| Reynolds Frizzell Black Doyle Allen | | 1100 Louisiana | Ste 3500 | | Houston | TX | 77002 | |
| Reynolds, Steven | | Address on File | | | | | | |
| RFPnetworks B.V. | | Laan van Kronenburg 14 | | | Amstelveen | | 1183AS | NETHERLANDS |
| Rhinotek Computer Products | | PO Box 6205 | | | Carson | CA | 90749 | |
| Rhode Island Dept. Business Regulation | | Securities Division | 1511 Pontiac Ave. Bldg 69, 1st Floor | | Cranston | RI | 02920 | |
| Rialto Capital Advisors, LLC | | 790 NW 107th Avenue | Suite 400 | | Miami | FL | 33131 | |
| RICCI, JENNIFER | | Address on File | | | | | | |
| Riccione Resources, Inc | | 17194 Preston Rd | Suite 102-390 | | Dallas | TX | 75248-1221 | |
| RICE, BRIAN | | Address on File | | | | | | |
| RICE, CHARLES | | Address on File | | | | | | |
| Rice, Christopher | | Address on File | | | | | | |
| Rich Bitterman | | Address on File | | | | | | |
| RICH DAPAAH | | Address on File | | | | | | |
| RICH, MICHAEL | | Address on File | | | | | | |
| RICHARD & SYLVIA TUCKER TRUST | | Address on File | | | | | | |
| Richard Arnitz | | Address on File | | | | | | |
| RICHARD BARNES TRUST | | Address on File | | | | | | |
| Richard Egelhof | | Address on File | | | | | | |
| Richard Even | | Address on File | | | | | | |
| Richard Harris | | Address on File | | | | | | |
| Richard Layton & Finger | | One Rodney Square | 920 North King Street | | Wilmington | DE | 19801 | |
| RICHARD LINDENMUTH | | Address on File | | | | | | |
| Richard M. Alderman | | Address on File | | | | | | |
| Richard Pines | | Address on File | | | | | | |
| Richard Redden | | Address on File | | | | | | |
| Richard Rinehart | | Address on File | | | | | | |
| RICHARD TUCKER | | Address on File | | | | | | |
| Richards Partners | | 8750 N Central Expy | Suite 100 | | Dallas | TX | 75231-6437 | |
| Richards, Paul | | Address on File | | | | | | |
| Richards, Paul A. | | Address on File | | | | | | |
| Richardson, Kellie | | Address on File | | | | | | |
| Richmond Communicatinos Group, Inc. | | 2750 Northhaven Rd Ste 202 | | | Dallas | TX | 75229 | |
| Richofsky, Lori | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 130 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| RICK DREW | | Address on File | | | | | | |
| Ricky Swadley | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Ricoh Americas Corporation | | PO BOX 13852 | | | Newark | NJ | 07188-0852 | |
| Ricoh Americas Corporation | | PO Box 4245 | | | Carol Stream | IL | 60197-4245 | |
| Ricoh Americas Corporation | | PO BOX 73210 | | | Chicago | IL | 60673-7210 | |
| Ricoh Americas Corporation | | PO Box 660342 | | | Dallas | TX | 75266-0342 | |
| Ricoh Americas Corporation | | PO BOX 730366 | | | Dallas | TX | 75373-0366 | |
| RICOH BUSINESS SOLUTIONS | | First Floor | 4667 N. Royal Atlanta Dr. | | Tucker | GA | 30084 | |
| RICOH BUSINESS SOLUTIONS | | PO BOX 73210 | | | Chicago | IL | 60673-7210 | |
| Ricoh USA, Inc. | | PO Box 827577 | | | Philadelphia | PA | 19182-7577 | |
| Ricoh USA, Inc. | | 21146 Network Place | | | Chicago | IL | 60673-1211 | |
| Ricoh USA, Inc. | | PO Box 660342 | | | Dallas | TX | 75266-0342 | |
| Riddle, Cara | | Address on File | | | | | | |
| Ridgely, Taylor | | Address on File | | | | | | |
| RIDGELY, TAYLOR | | Address on File | | | | | | |
| RIDGELY, TAYLOR | | Address on File | | | | | | |
| RIDGEWAY, BRIAN | | Address on File | | | | | | |
| Rigzone.com, Inc. | | 14531 FM 529, Ste 225 | | | Houston | TX | 77095 | |
| RINGHEIMER, JEREMY | | Address on File | | | | | | |
| RIORDAN, TERRENCE | | Address on File | | | | | | |
| RIORDAN, TERRENCE C. | | Address on File | | | | | | |
| Rios, Heriberto | | Address on File | | | | | | |
| Ripe4Offices | | 13-19 Circus Rd | St. Johns Wood | | London | | NW8 6PB | United Kingdom |
| Ripple Effect Strategies, Inc. | | 503 E. Jackson St. | Suite 235 | | Tampa | FL | 33602-4904 | |
| RISI | | PO BOX 16586 | | | North Hollywood | CA | 91615-6586 | |
| Risk Metrics Group | | PO Box 2621 | | | Buffalo | NY | 14240-2621 | |
| Ritch, Lauren N. | | Address on File | | | | | | |
| Riveron Consulting, LLC | | 2515 McKinney Avenue | Suite 1200 | | Dallas | TX | 75201 | |
| RL Consulting | | 19228 Charandy Drive | | | Leesburg | VA | 20175 | |
| RME | | PO Box 261237 | | | Tampa | FL | 33685-1237 | |
| ROARK, BRANDEN | | Address on File | | | | | | |
| ROB BUCK PHOTOGRAPHS, INC | | 3411 CLEARVIEW DR | | | Austin | TX | 78703 | |
| ROB PEDERSON | | Address on File | | | | | | |
| Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP | | 2000 K Street, NW | 4th FL | | Washington | DC | 20006 | |
| Robert A. Leonard | | Address on File | | | | | | |
| Robert Carey | | Address on File | | | | | | |
| Robert Fink | | Address on File | | | | | | |
| ROBERT GAGE | | Address on File | | | | | | |
| ROBERT GEORGE | | Address on File | | | | | | |
| Robert Half Finance and Accounting | | 2613 Camino Ramon | | | San Ramon | CA | 94583 | |
| Robert Half Finance and Accounting | | PO Box 743295 | | | Los Angeles | CA | 90074-3295 | |

Highland Capital Management, L.P.
Case No. 19-34054

Appx. 00404
001788

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 131 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Robert Half Legal | | PO Box 743295 | | | Los Angeles | CA | 90074-3295 | |
| Robert Half Legal | | File 73484 | PO Box 60000 | | San Francisco | CA | 94160-3484 | |
| Robert Half Management Resources | | PO Box 743295 | | | Los Angeles | CA | 90074-3295 | |
| Robert Half Management Resources | | | PO Box 60000 | | San Francisco | CA | 94160-3484 | |
| Robert Half Technology | | PO Box 743295 | | | Los Angeles | CA | 90074-3295 | |
| Robert Half Technology | | FILE 73484 | PO Box 60000 | | San Francisco | CA | 94160-3484 | |
| Robert Hargesheimer | | Address on File | | | | | | |
| Robert M. Garza & Associates, Inc. | | 1001 Hot Springs Dr | | | Allen | TX | 75013 | |
| ROBERT MUNROE | | Address on File | | | | | | |
| Robert Pederson | | Address on File | | | | | | |
| Robert Peiser | | Address on File | | | | | | |
| Robert Roland | | Address on File | | | | | | |
| Robert Sullivan | | Address on File | | | | | | |
| ROBERT THOMPSON | | Address on File | | | | | | |
| Robert William Chanda | | Address on File | | | | | | |
| Roberta L. Fisher | | Address on File | | | | | | |
| Robin Russell, Joseph P. Rovira | Hunton Andrews Kurth LLP | 600 Travis Street, Suite 4200 | | | Houston | TX | 77002 | |
| Robust Advisors, Inc. | | 7 DeGraaf Court | | | Mahwah | NJ | 07430 | |
| ROBY, JOHN | | Address on File | | | | | | |
| Rochelle McCullough, LLP | E. P. Keiffer | 325 North St. Paul Street, Suite 4500 | | | Dallas | TX | 75201 | |
| Rockwell CDO II Ltd. | | P.O. Box 1093GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Rockwell CDO II, Ltd. Investors Bank & Trust Company | Investors Bank & Trust Company | 200 Claredon Street | CDO Services Group | | Boston | MA | 02116 | |
| Rockwell CDO II, Ltd. Investors Bank & Trust Company | Rockwell CDO II Ltd c/o Maples Finance Limited | P.O. Box 1093GT, Boundary Hall | Cricket Square George Town, Grand Cayman | | Grand Cayman | | | Cayman Islands |
| Rockwell CDO Ltd JPMorgan Chase Bank, National Association | JPMorgan Chase Bank | 600 Travis Street | 50th Floor | Attention The Directors-Stratford CLO Ltd. Worldwide Securities Services-Rockwill CDO Ltd. | Houston | TX | 77002 | |
| Rockwell CDO Ltd. | c/o Maples Finance Limited | P.O. Box 1093GT | Queensgate House South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Rockwell CDO Ltd., et al | | P.O. Box 1093GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Rockwell CDO (Delaware) Corp. | c/o Maples Finance Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |
| Rockwell CDO I Ltd | c/o Maples Finance Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |
| Rockwell CDO II Ltd | c/o Maples Finance Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |
| Rockwell CDO, Ltd | c/o Maples Finance Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |
| Rod Laughlin | | Address on File | | | | | | |
| Rod Lim | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 132 of
175
Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| RODDA, SANDIE | | Address on File | | | | | | |
| RODDA, SANDIE K | | Address on File | | | | | | |
| Roderick Givens | | Address on File | | | | | | |
| Rodolfo Esquivel | | Address on File | | | | | | |
| Roe Golightly | | Address on File | | | | | | |
| Roeber, Blair A. | | Address on File | | | | | | |
| ROGER CHEN | | Address on File | | | | | | |
| ROGER LI | | Address on File | | | | | | |
| ROOGE DUNN GROUP, PC | Brian P. Shaw | 500 N. Akard Street, Suite 1900 | | | Dallas | TX | 75201 | |
| Romacorp. Inc. | David Short | 1700 Alma Drive | Suite 400 | | Plano | TX | 75075 | |
| Ron Attar | | Address on File | | | | | | |
| Ron DVari | | Address on File | | | | | | |
| Ron Patterson Insurance | | 2435 N Central Expy Ste 1600 | | | Richardson | TX | 75080-2784 | |
| Ronald McDonald House of Dallas | | 5641 Medical Center Dr | | | Dallas | TX | 75235 | |
| ROOS, PAUL | | Address on File | | | | | | |
| Ropes & Gray LLP | | 800 Boylston Street | | | Boston | MA | 02199 | |
| Ropes & Gray LLP | | One International Place | | | Boston | MA | 02110-2624 | |
| Ropes & Gray LLP | | PO Box 414265 | | | Boston | MA | 02214-4265 | |
| Rosen Systems, Inc. | | 2323 Langford St. | | | Dallas | TX | 75208 | |
| Rosenthal, Monhait, & Goddess PA | | Suite 1401, 919 Market St | PO Box 1070 | | Wilmington | DE | 19899-1070 | |
| Rosewood Crescent Hotel | Attn Ms Eva Delgadillo | PO Box 845576 | | | Dallas | TX | 75284-5576 | |
| Rosewood Crescent Hotel | | 400 Crescent Court | | | Dallas | TX | 75201 | |
| Rosewood Crescent Hotel & | | Rosewood Mansion on Turtle Creek | 400 Crescent Court | | Dallas | TX | 75201 | |
| Ross & Smith, PC | Judith W. Ross, Frances A. Smith, Eric Soderlund | 700 North Pearl Street, Suite 1610 | | | Dallas | TX | 75201 | |
| Ross Smith Energy Group | | 400, 407 - 8th Avenue | | | CALGARY | AB | T2P 4Z2 | CANADA |
| Ross Vaillancourt | | Address on File | | | | | | |
| ROSS, JAMES | | Address on File | | | | | | |
| Roth Staffing Companies, LP | | PO Box 848761 | | | Los Angeles | CA | 90084-8761 | |
| ROTHSTEIN, JASON | | Address on File | | | | | | |
| Rothstein, Kass & Company, P.C. | | 9171 Wilshire Blvd, Ste 500 | | | Beverly Hills | CA | 90210-5591 | |
| Roubini Global Economics, LLC | | 131 Varick St., Ste 1005 | | | New York | NY | 10013 | |
| Roubini Global Economics, LLC | | PO Box 10087 | | | Uniondale | NY | 11555 | |
| Rough Creek Lodge | | PO Box 2400 | | | Glen Rose | TX | 76043 | |
| Round Hill Country Club | | 3169 Roundhill Rd | | | Alamo | CA | 94507 | |
| ROURKE, KEVIN | | Address on File | | | | | | |
| ROWLETT HILL, LLP | | 25 HIGHLAND PARK VILLAGE STE 100-448 | | | Dallas | TX | 75205 | |
| Rowlett Law PLLC | | 100 HIGHLAND PARK VILLAGE | STE 200 | | Dallas | TX | 75205 | |
| Rowlett Law PLLC | | 12655 N Central Expwy Ste 421 | | | Dallas | TX | 75243 | |

Highland Capital Management, L.P.
Case No. 19-34054

Appx. 00406
001790

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 133 of
175
Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| ROY SEROUSSI | | Address on File | | | | | | |
| Royal Dispatch Services Inc | | 43-22 Van Dam Street | | | Long Island City | NY | 11101 | |
| ROYAL PRINTING GROUP, INC. | | 2035 ROYAL LN | STE 250 | | Dallas | TX | 75229 | |
| RR Donnelley | | PO Box 932721 | | | Cleveland | OH | 44193 | |
| RR Donnelley | | PO Box 538602 | | | Atlanta | GA | 30353-8602 | |
| RR Donnelley Financial, Inc. | | PO Box 932721 | | | Cleveland | OH | 44193 | |
| RR Donnelley Financial, Inc. | | PO Box 730216 | | | Dallas | TX | 75373-0216 | |
| RR Donnelley Receivables, Inc | | PO Box 13654 | | | Newark | NJ | 07188-0001 | |
| RSM MCGladrey | | 5155 Paysphere Circle | | | Chicago | IL | 60674 | |
| RSM US LLP | | 5155 Paysphere Circle | | | Chicago | IL | 60674 | |
| RTB Media LLC | | 619 Willow Ave | | | Hoboken | NJ | 07030 | |
| Rubin and Rudman LLP | | 50 Rowes Wharf | | | Boston | MA | 02110 | |
| Rudy Mora Brick Masonry | | 131 Rosegarden Dr. | | | McKinney | TX | 75070 | |
| RUGG, STACEY | | Address on File | | | | | | |
| Rugmakers Gallery, Inc. | | 4920 Cash Rd. | | | Dallas | TX | 75247-6308 | |
| RUSCH, MARYAM | | Address on File | | | | | | |
| Russ Kathrein | | Address on File | | | | | | |
| Russel Reynolds & Associates | | Church Street Station | Post Office Box 6427 | | New York | NY | 10249 | |
| Russell Jones & Walker | | 61 Sandmere Rd | Clapham | | London | | SW1Y4UR | United Kingdom |
| Russell Reynolds Associates | | Church Street Station | PO Box 6427 | | New York | NY | 77100 | |
| Russell W. May | | Address on File | | | | | | |
| Russell W. May | | Address on File | | | | | | |
| RUTLEDGE, ROBERT | | Address on File | | | | | | |
| Ryan Associates Technology LLC | | 21 Hillandale Dr | | | New Rochelle | NY | 10804 | |
| RYAN HIGHTOWER | | Address on File | | | | | | |
| Ryan Law | | Address on File | | | | | | |
| Ryan Lucero | | Address on File | | | | | | |
| Ryan Moore | | Address on File | | | | | | |
| Ryan ODowd Photography | | 3924 County Road 168 | | | McKinney | TX | 75071 | |
| Ryan P. Newell (Connolly Gallagher LLP) | Attn Jeffrey C. Wisler, Esq. | Connolly Gallagher LLP | 1201 N. Market Street, 20th Floor | | Wilmington | DE | 19801 | |
| RYAN VOTAW | | Address on File | | | | | | |
| Ryan, Inc. | | Address on File | | | | | | |
| Ryder, Phillip | | Address on File | | | | | | |
| S&P Global Market Intelligence | | 33356 Collection Center Drive | | | Chicago | IL | 60693-0333 | |
| S&P Global Market Intelligence LLC | | 55 Water Street | | | New York | NY | 10041-0000 | |
| S. LeBlanc & Company | | 942 Shore Crest Rd. | | | Carlsbad | CA | 92011 | |
| Saagar Grover | | Address on File | | | | | | |
| Sachdev, Kunal | | Address on File | | | | | | |
| Sacred Heart in NYC | | 1 East 91st ST. | | | New York | NY | 10128 | |
| SACRS | c/o Strategic Local Govt Services, LLC | 1415 L Street, Suite 1000 | | | Sacramento | CA | 95814 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 121 of 155

APPX 00407
001797

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 134 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Sadis & Goldberg | Stephen Hutter | 551 Fifth Avenue, 21st Flr | | | New York | NY | 10176 | |
| SAEHLER, CHRISTOPHER J. | | Address on File | | | | | | |
| Sagar Vira | | Address on File | | | | | | |
| Sage Document Services Group LLC | | 2 West 45th Street | Ste 407 | | New York | NY | 10036 | |
| Sage Search Partners | | 3811 Turtle Creek Blvd | Suite 850 | | Dallas | TX | 75219 | |
| SagePoint Financial, Inc. | Attn Supervision-Reimbursement | 2800 N Central Ave, Suite 1200 | | | Phoenix | AZ | 85004 | |
| SagePoint Financial, Inc. | | 74 8th St. SE | Suite 105 | | Hickory | NC | 28602 | |
| SAKUNGEW, PON | | Address on File | | | | | | |
| Sal Villacorta | | Address on File | | | | | | |
| Salesforce.com | | PO BOX 842569 | | | Boston | MA | 02284 | |
| Salesforce.com | | PO Box 5126 | | | Carol Stream | IL | 60197-5126 | |
| Salesforce.com | | PO Box 203141 | | | Dallas | TX | 75320-3141 | |
| Salesmanship Club Chrtbl Golf Dallas Inc | | 106 E. Tenth St. | | | Dallas | TX | 75203 | |
| Sali Fund Management, LLC | Tom Nieman | 6836 Austin Center Blvd. | Suite 320 | | Austin | TX | 78731 | |
| Highland Loan Funding V Ltd. | | P. O. Box 1093 GT | Queensgate House South Church Street | The Directors | George Town | | KY1-1108 | Cayman Islands |
| Salomon Smith Barney Inc. | Salomon Smith Barney | 390 Greenwich Street | 4th Floor | FI Structured Products Group | New York | NY | 10013-2396 | |
| Highland Loan Funding V Ltd. | | 111 West Myrtle Ave | Unit 6 | | Foley | AL | 36535 | |
| Salus Valuation Group, Inc. | | 1115 Luke St, Suite 100 | | | Irving | TX | 75061 | |
| Sam Engineering & Testing | | Address on File | | | | | | |
| SAM GARCIA | | Address on File | | | | | | |
| Sam Graham | | PO Box 9001152 | | | Louisville | KY | 40290-1152 | |
| Sams Club | | Address on File | | | | | | |
| Sanborn, Brian | | Address on File | | | | | | |
| SANBORN, PATRICIA | | Address on File | | | | | | |
| SANCHEZ, RODERICK | | Address on File | | | | | | |
| SANDEEP GUPTA | | Address on File | | | | | | |
| SANDEEP GUPTA | | Address on File | | | | | | |
| Sandlapper Securities, LLC | | 406 N Pleasantburg Dr | | | Greenville | SC | 29607-2128 | |
| Sands Point Funding, Ltd. | c/o Guggenheim Partners | 330 Madison Ave, 11th Floor | | | New York | NY | 10017 | |
| SANJEEV MEHTA | | Address on File | | | | | | |
| Santoyo Moore Wehmeyer P.C. | | 1020 NE Loop 410, Suite 320 | | | San Antonio | TX | 78209 | |
| Sard Verbinnen & Co. | | 630 Third Ave | | | New York | NY | 10017 | |
| Sard Verbinnen & Co. | | General Post Office | PO Box 26781 | | New York | NY | 10087-6781 | |
| Sard Verbinnen, LLC | | PO Box 26781 | | | New York | NY | 10087-6781 | |
| Satuit Technologies Inc. | | 80 Washington St. | Unit M50 | | Norwell | MA | 02061 | |
| Satuit Technologies Inc. | | 100 Grossman Drive | Suite 302 | | Braintree | MA | 02184 | |
| Savvy Training & Consulting | | 4530 Independence Trail | | | Evergreen | CO | 80439 | |
| Sawko & Burroughs, P.C. | | 1172 Bent Oaks Drive | | | Denton | TX | 76210 | |
| Saxton Morgan | | PO Box 2302 | | | Addison | TX | 75001 | |
| Sayles Werbner | | Address on File | | | | | | |
| Sbaiti & Company PLLC | Mazin A Sbaiti | J.P. Morgan Chase Tower | 2200 Ross Avenue | Suite 4900W | Dallas | TX | 75201 | |
| SBC | | PO Box 660324 | | | Dallas | TX | 75266-0324 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 135 of
175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SBC Long Distance | | PO Box 660688 | | | Dallas | TX | 75266-0688 | |
| SBC Southwestern Bell | | PO Box 5069 | | | Saginaw | MI | 48605-5069 | |
| SC Department of Revenue | | 300A Outlet Pointe Boulevard | | | Columbia | SC | 29210 | |
| Scarab Consulting | AMEGY BANK NATIONAL ASSOCIATION | ASSIGNEE FOR SCARAB ACQUISITION, LLC | DEPT 338, PO BOX 4346 | | Houston | TX | 77210-4346 | |
| Scarab Consulting | | Dept 338, PO Box 4346 | | | Houston | TX | 77210 | |
| Scarab Consulting | | 504 Lavaca, Suite 910 | | | Austin | TX | 78701 | |
| SCF Securities, Inc. | | 155 E. Shaw Avenue | Suite 102 | | Fresno | CA | 93710 | |
| SCHEMBRI, STEPHEN | | Address on File | | | | | | |
| Schmidt & Stacey Consulting Eng. Inc. | | 400 City Place | 2711 N. Haskell Ave. | Lock Box 29 | Dallas | TX | 75204 | |
| SCHNABEL, MATTHEW | | Address on File | | | | | | |
| School, Jennifer | | Address on File | | | | | | |
| SCHRAY, NATHAN | | Address on File | | | | | | |
| SCHRECK, DEANNE | | Address on File | | | | | | |
| Schroepfer Wessels Jolesch | | 8401 North Central Expwy Ste 300 | | | Dallas | TX | 75225 | |
| SCHROTH, MELISSA | | Address on File | | | | | | |
| SCHULER, ELLIOT | | Address on File | | | | | | |
| SCHULER, KARISSA | | Address on File | | | | | | |
| Schulte Roth & Zabel LLP | James T. Bentley | 919 Third Avenue | | | New York | NY | 10022 | |
| Schumacher Cargo Logistics, Inc. | | 550 W. 135th Street | | | Gardena | CA | 90248 | |
| SCI | | 31/507 Clerkenwell Close | | | London | | EC1R 0AT | United Kingdom |
| Scoop Reprint Source | | 30270 Rancho Viejo Road | Suite E | | San Juan Capistrano | CA | 92675 | |
| Scott A. Snook | | Address on File | | | | | | |
| Scott B. Ellington | c/o David Neier, Winston Strawn LLP | 200 Park Avenue | | | New York | NY | 10166 | |
| Scott B. Ellington | Scott Ellington c/o Francis A Smith, Ross & Smith PC | Plaza of the Americas | 700 N Pearl Street, Suite 1610 | | Dallas | TX | 75201 | |
| Scott B. Ellington | | Address on File | | | | | | |
| SCOTT COOPER | | Address on File | | | | | | |
| Scott Douglass & McConnico LLP | | 303 Colorado Street, Suite 2400 | | | Austin | TX | 78701 | |
| Scott Ellington | Debra A. Dandeneau | Baker & McKenzie LLP | 452 Fifth Avenue | | New York | NY | 10018 | |
| Scott Ellington | Michelle Hartmann | Baker & McKenzie LLP | 1900 North Pearl, Suite 1500 | | Dallas | TX | 75201 | |
| Scott F. Kavanaugh | | Address on File | | | | | | |
| Scott F. Kavanaugh | | Address on File | | | | | | |
| Scott Harris | | Address on File | | | | | | |
| Scott Hoermann | | Address on File | | | | | | |
| Scott K Meyer | | Address on File | | | | | | |
| SCOTT KOHNEN | | Address on File | | | | | | |
| Scott McCurry | | Address on File | | | | | | |
| SCOTT NELSON | | Address on File | | | | | | |
| Scott Niebling Valuation Group | | 3930 East Ray Rd | Suite 180 | | Phoenix | AZ | 85044 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 123 of 155

Appx. 09409
001793

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 136 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SCOTT ROSENTHAL | | Address on File | | | | | | |
| SCOTT SCHEIN | | Address on File | | | | | | |
| Scott Shpilberg | | Address on File | | | | | | |
| SCOTT TANDBERG | | Address on File | | | | | | |
| Scott Waggoner | | Address on File | | | | | | |
| Scura Paley Securities LLC | | 489 5th Ave, 15th Flr | | | New York | NY | 10017 | |
| Sea Island Company | c/o Group Billing, Acctg Dept | 100 Cloister Drive | | | Sea Island | GA | 31561 | |
| SEAL Legacy Foundation | | 1401 McKinney | Ste 2222 | | Houston | TX | 77010 | |
| SEAMAN, CRISTINA | | Address on File | | | | | | |
| SeamlessWeb Professional Solutions, Inc. | | PO Box 5439 | | | New York | NY | 10087-5439 | |
| SeamlessWeb Professional Solutions, Inc. | | PO Box 71649 | | | Chicago | IL | 60694-1649 | |
| Sean Neumayer Photography | | 4321 S. Coolidge Ave | | | Tampa | FL | 33611 | |
| Search Finance | | 14001 Dallas Pkwy | Ste 1200 | | Dallas | TX | 75240 | |
| Seaver, Jeffrey | | Address on File | | | | | | |
| SEC Headquarters | Mail Stop 7010 / 2017 Annual Report | 100 F Street, NE | Mail Stop 7010 | | WASHINGTON | DC | 20549-2000 | |
| Secretary of State | Division of Corporations | Franchise Tax | P.O. Box 7040 | | Dover | DE | 19903 | |
| Secretary of State | | PO BOX 12887 | | | Austin | TX | 78711 | |
| Secretary of State | | 1500 11th St | IRC Unit, 3rd FL | | Sacramento | CA | 95814 | |
| Secretary of State | | PO Box 13550 | | | Austin | TX | 78711-3550 | |
| Secretary of State | | PO Box 13697 | | | Austin | TX | 78711-3697 | |
| Secretary of State | | 801 Capitol Way South | PO Box 40234 | | Olympia | WA | 98504-0234 | |
| Secretary of State of Illinois | | Illinois Securities Department | 421 E. Capital Ave., 2nd Fl. | | Springfield | IL | 62701 | |
| SECRETARY OF STATE OF TEXAS | ACCOUNTS RECEIVABLE | PO BOX 12887 | | | Austin | TX | 78711-2887 | |
| Secretary of the Commonwealth | | Securities Division | One Ashburton Place, Rm 1701 | | Boston | MA | 02108 | |
| Secretary of Treasury | | P.O. Box 7040 | | | Dover | DE | 19903 | |
| Secretary of Treasury | | 15th & Pennsylvania Avenue, N.W. | | | Washington | DC | 20220 | |
| Secure Concepts LLC | | 128 East BRdway #501 | | | New York | NY | 10002 | |
| Secure Options, Inc. | | 5420 Bryan Street | | | Dallas | TX | 75206 | |
| Secure Options, Inc. | | 2156 W Northwest Hwy Ste 300 | | | Dallas | TX | 75220 | |
| Secure Share Network LLC | | 3475 Piedmont Road NE, Ste 450 | | | Atlanta | GA | 30305 | |
| Secure Source Inc. | | 710 South Kimball Ave | | | Southlake | TX | 76092 | |
| Secured Access Systems, LLC | | 1913 Walden Court | | | Flower Mound | TX | 75022 | |
| Securities & Exchange Commission | Division of Trading & Markets | 100 F Street, NE | Mail Stop 7010 | | WASHINGTON | DC | 20549-2000 | |
| Securities & Exchange Commission | | Office of General Counsel-Bankruptcy | 100 F Street, N.E. | | Washington | DC | 20549 | |
| Securities America | Attn Accounting Dept | 12325 Port Grace Blvd. | | | La Vista | NE | 68128 | |
| Securities America, Inc. Cooper McManus | | 9870 Research Drive | | | Irvine | CA | 92618-3302 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 124 of 155

001794

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 04/05/22    Page 19 of 241    PageID 1921
Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 137 of
175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Securities Commissioner State of ND | | State Capitol | 600 East Boulevard Avenue, 5th Floor | | Bismarck | ND | 58505-0510 | |
| Securities Division, AZ Corp. Comm | | Securities Division | 1300 W Washington St #3 | | Phoenix | AZ | 85007 | |
| Securities Investor Protection Corp | | PO Box 92185 | | | Washington | DC | 20090-2185 | |
| Securities Service Network | | 115 Glastonbury Blvd | | | Glastonbury | CT | 06033 | |
| See Food Media LLC | | 496 Lagurdai Place # 4C | | | New York | NY | 10012 | |
| SEI Investments Distribution Co. | Attn Chris Rowan-SIDCO Acctng | One Freedom Valley Dr | | | Oaks | PA | 19456 | |
| SEIDEN KRIEGER ASSOCIATES, INC | | 375 PARK AVE | | | New York | NY | 10152 | |
| Selah Photography | | 5421 Shiver Road | | | Keller | TX | 76244 | |
| Select Security & Private Investigations | | PO Box 1352 | | | Rockwall | TX | 75087 | |
| Selig ADR, Inc | | 5009 Caroline St, Ste 100 | | | Houston | TX | 77004 | |
| Selman, Matthew | | Address on File | | | | | | |
| SERENI, ALEXIS J. | | Address on File | | | | | | |
| SERVCORP | | Level 19 | Two International Finance Center | 8 Finance Street | CENTRAL HONG KONG | | | HONG KONG |
| SERVCORP | | 6 BATTERY ROAD | RAFFLES PLACE | | Singapore | | 049909 | SINGAPORE |
| Service Systems Associates | Attn Robin Scichili | 650 S RL Thornton Frwy | | | Dallas | TX | 75203 | |
| SET, AUGUSTUS | | Address on File | | | | | | |
| Setfords Solicitors | | 14 Haydon Place | | | Guilford | | GU1 4LL | United Kingdom |
| Seth Weinstein | | Address on File | | | | | | |
| Seton Hall University | Attn Bryan Felt | 400 South Orange Ave | | | South Orange | NJ | 07079 | |
| Severson, Keith | | Address on File | | | | | | |
| SEVILLA, JEAN-PAUL | | Address on File | | | | | | |
| Seward & Kissel | | One Battery Park Plaza | | | New York | NY | 10004 | |
| Seyfarth Shaw LLP | | 131 S. Dearborn Street, Suite 2400 | | | Chicago | IL | 60603 | |
| ShadowTV, Inc. | | 630 9th Ave | Suite 1000 | | New York | NY | 10036 | |
| Shag Carpet Productions, Inc. | | 502 South 2nd Avenue | | | Dallas | TX | 75226 | |
| SHAH, AMOL | | Address on File | | | | | | |
| SHAHDA, CHRIS | | Address on File | | | | | | |
| SHAHDA, CHRISTOPHER | | Address on File | | | | | | |
| Shahzad Pirvani | | Address on File | | | | | | |
| Shakelford Melton & McKinley | | 3333 Lee Pkwy | 10 th fl | | Dallas | TX | 75219 | |
| Shane Tipton | | Address on File | | | | | | |
| Shannon, Gracey, Ratliff & Miller, LLP | | 420 Commerce St, Ste 500 | | | Fort Worth | TX | 76102 | |
| SharePoint Solutions | Attn Accounts Receivable | PO Box 1588 | | | Brentwood | TN | 37024-1588 | |
| SHARON EASLEY | | Address on File | | | | | | |
| SHARON SHUSTER | | Address on File | | | | | | |
| SHARRY, GREGORY | | Address on File | | | | | | |
| Shasta Land Management Consultants | | 1229 South Street | | | Redding | CA | 96001 | |

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 06/02/22    Page 20 of 241    PageID 1922
Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 138 of
175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SHAWN LEDERMAN | | Address on File | | | | | | |
| Shawn Raver | | Address on File | | | | | | |
| Shayla Kelly | | Address on File | | | | | | |
| Shea & Carlyon Ltd | | 701 Bridger Ave #850 | | | LasVegas | NV | 89101 | |
| Shearman & Sterling LLP | | 5990 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shelley Shackelford & Co. | | 5807 SANDHURST LN SUITE D | | | Dallas | TX | 75206 | |
| SHELLY RASTOGI | | Address on File | | | | | | |
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | | 333 S. Hope Street | 48th Floor | | Los Angeles | CA | 90071 | |
| SHIFFERD, CHARLES | | Address on File | | | | | | |
| Shoot2Sell | | 14681 Midway Rd | Ste 105 | | Addison | TX | 75001 | |
| Short, Lauren | | Address on File | | | | | | |
| SHPILBERG, SCOTT | | Address on File | | | | | | |
| Shred-it USA | | 11101 Franklin Avenue | Suite 100 | | Franklin Park | IL | 60131-1403 | |
| Shred-it USA | | 28883 Network Place | | | Chicago | IL | 60673-1288 | |
| Shred-it USA | | PO Box 730504 | | | Dallas | TX | 75373-0504 | |
| Shred-it USA | | PO Box 101007 | | | Pasadena | CA | 91189-1007 | |
| SHUMWAY, CLAY | | Address on File | | | | | | |
| SHUSTER, SHARON | | Address on File | | | | | | |
| Siber Systems, Inc | | 3701 Pender Dr Ste 400 | | | Fairfax | VA | 22030-6045 | |
| Siddharth Mehra | | Address on File | | | | | | |
| SIDLEY AUSTIN LLP | | PO BOX 0642 | | | Chicago | IL | 60690 | |
| SIEGEL, HAROLD | | Address on File | | | | | | |
| Siepe Services, LLC | Chris Doty | 5440 Harvest Hill Road Suite 100 | | | Dallas | TX | 75230 | |
| Siepe Services, LLC | | 5440 Harvest Hill Road | Suite 100 | | Dallas | TX | 75230 | |
| Siepe Services, LLC | | 2200 Ross Ave. Ste 4700E | | | Dallas | TX | 7520 1-0000 | |
| Siepe, LLC | | 6135 Churchill Way | | | Dallas | TX | 75230 | |
| SIEVERT, AMY | | Address on File | | | | | | |
| Sigma Financial Corp | Attn Jackie Pascarella | 1717 N. IH 35, Ste 150 | | | Round Rock | TX | 78664 | |
| Sigma Financial Corporation | | 300 Parkland Plaza | | | Ann Arbor | MI | 48103 | |
| Signator Investors, Inc. | | 20 E Thomas Rd Ste 2000 | | | Phoenix | AZ | 85012-3129 | |
| Signature Productions, Ltd. | | 5331 85th St. | | | Lubbock | TX | 79424 | |
| Sills Cummis & Gross | | The Legal Center | One Riverfront Plaza | | Newark | NJ | 07102-5400 | |
| Silva, Alison | | Address on File | | | | | | |
| Silver Scriptor LLC | | PO Box 9012 | | | Austin | TX | 78766 | |
| Silver Scriptor LLC | | PO Box 61064 | | | Seattle | WA | 98141 | |
| Silverman Communications Group | | 11 Carol Ct. | | | Glen Rock | NJ | 07452 | |
| SIMEK, DAVID | | Address on File | | | | | | |
| SIMMONS, DAVID | | Address on File | | | | | | |
| Simon, Scott | | Address on File | | | | | | |
| Simpson Appraisal, Inc | | 6009 Belt Line Rd., Suite 145 | | | Dallas | TX | 75254 | |
| SIMPSON THACHER & BARTLETT LLP | | 425 LEXINGTON AVE | | | New York | NY | 10017-3954 | |
| SIMPSON THACHER & BARTLETT LLP | | PO Box 29008 | | | New York | NY | 10087-9008 | |
| Sims, Austin | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

App. 001796

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 139 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SINGH, TANIA | | Address on File | | | | | | |
| SISK, JESSICA | | Address on File | | | | | | |
| Stirick and Company Inc. | | 11999 Vincente Blvd | Penthouse | | Los Angeles | CA | 90049 | |
| Stirick and Company Inc. | | 1840 Century Park East Ste 800 | | | Los Angeles | CA | 90067 | |
| SK Research, LLC | | 10320 Little Patuxent Parkway | 12th Floor | | Columbia | MD | 21044 | |
| Skadden, Arps, Slate, Meagher & Flom LLP | | Four Times Square | | | New York | NY | 10036 | |
| Skadden, Arps, Slate, Meagher & Flom LLP | | PO Box 1764 | | | White Plains | NY | 10602 | |
| SKC COMMUNICATION PRODUCTS, LLC | | P.O. BOX 874843 | | | Kansas City | MO | 64187-4843 | |
| Skybridge Alternatives Conference | Attn Jeanie Reyes | 527 Madison Ave, 16th Flr | | | New York | NY | 10022 | |
| SkyBridge SALT LLC | Attn Jeanie Reyes | 527 Madison Ave, 16th Floor | | | New York | NY | 10022 | |
| Skyline DFW Exhibits & Events | | 900 Avenue S | | | Grand Prairie | TX | 75050 | |
| Skyline Sector 5 | | 525 113th Street | | | Arlington | TX | 76011 | |
| Slant Partners | | 3838 Oak Lawn Avenue | Suite 1550 | | Dallas | TX | 75219 | |
| Slayton International | | One North Franklin Ste 2500 | | | Chicago | IL | 60606 | |
| SlideGenius, Inc. | | 1660 Hotel Cir N # 175 | | | San Diego | CA | 92108-2807 | |
| SloMo Lounge | | 4901 Harbor Court | | | Flower Mound | TX | 75022 | |
| Smallwood, Allan | | Address on File | | | | | | |
| Smarsh | | 921 SW Washington St | Suite 540 | | Portland | OR | 97205 | |
| Smarsh | | PO Box 505265 | | | Saint Louis | MO | 63150-5265 | |
| Smith Katzenstein Jenkins LLP | | 800 Delaware Avenue, Ste. 1000 | P.O. Box 410 | | Washington | DE | 19899 | |
| SMITH, DAVID | | Address on File | | | | | | |
| Smith, Felicia | | Address on File | | | | | | |
| Smith, Ian | | Address on File | | | | | | |
| Smith, Jackson, Boyer & Bovard | | 9400 NCX, Ste 420 9400 N Central Expwy | | | Dallas | TX | 75231-5063 | |
| SMITH, SEAN | | Address on File | | | | | | |
| Smith, Theodore | | WELLS FARGO BANK-IN CARE OF SMS | | | | | | |
| SMS | | 6480 ARGO ST | | | Dallas | TX | 75214 | |
| SMU Cox School of Business | | Pitts Leadership Award | PO Box 750333 | | Dallas | TX | 75275-0333 | |
| Snapptraffic Consulting | | 9 Cherry Pl. | | | Huntington | NY | 11743 | |
| Snell & Wilmer LLP | | One Arizona Center | 400 E. Van Buren, Suite 1900 | | Phoenix | AZ | 85004-2202 | |
| SNI Companies | | 14241 Dallas Parkway | Suite 550 | | Dallas | TX | 75254 | |
| SNL Financial | | PO BOX 414624 | | | Boston | MA | 02241-4624 | |
| SNR Denton US LLP | | 233 S. Wacker Dr | Suite 7800 | | Chicago | IL | 60606 | |
| Snyder Kearney, LLC | | 10320 Little Patuxent Pkwy Suite 1200 | | | Columbia | MD | 21044 | |
| Snyder, Evan | | Address on File | | | | | | |
| Social Matters | | PO Box 800357 | | | Dallas | TX | 75380-0357 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 127 of 155

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 08/02/22    Page 22 of 241    PageID 1924
Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 140 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SOCIETY FOR HUMAN RESOURCE MANAGEMENT | | PO BOX 79482 | | | Baltimore | MD | 21279-0482 | |
| Society of St. Vincent de Paul, Inc. | Diocesan Council of Dallas | 10500 Steppington Drive, Suite 251 | | | Dallas | TX | 75230 | |
| Software Shelf International, Inc | | 601 Cleveland Street, Suite 710 | | | Clearwater | FL | 33755 | |
| Software Shelf International, Inc | | PO Box 7343 | | | Menlo Park | CA | 94026 | |
| SoftwareONE, Inc. | | 20875 Crossroads Cir. | Suite 1 | | Waukesha | WI | 53186 | |
| SoftwareONE, Inc. | | PO Box 510944 | | | New Berlin | WI | 53151-0944 | |
| Sohn Conference Foundation | c/o Garwood Events | 225 106 Street, Ste 15M | 15700 W. Cleveland Ave | | New York | NY | 10025 | |
| Solarwinds | | 7171 Southwest Parkway | Bldg 400 | | Austin | TX | 78735-0000 | |
| SolarWinds, Inc | | PO Box 730720 | | | Dallas | TX | 75373 | |
| Solid Details LLC | | 2121 Santa Anna Ave. | | | Dallas | TX | 75228 | |
| Solomon R. Guggenheim Foundation | | 345 Hudson Street | 12th Floor | | New York | NY | 10014 | |
| SOLOW BUILDING COMPANY II, LLC | | PO BOX 27112 | | | New York | NY | 10087-7112 | |
| SOLOW BUILDING COMPANY II, LLC | | PO Box 823812 | | | Philadelphia | PA | 19182-3812 | |
| SOMMER FRAZIER | | Address on File | | | | | | |
| Sonny Bryans Smokehouse | | 2625 Seelco St | | | Dallas | TX | 75235-2608 | |
| Sony Pictures Studio Group | A Sony Pictures Entertainment Company | File #54715 | | | Los Angeles | CA | 90074-4715 | |
| Soto, Hailey | | Address on File | | | | | | |
| Source Code North America, Inc | | Dept CH 16510 | | | Palatine | IL | 60055-6510 | |
| Source, Inc. | | PO Box 202414 | | | Dallas | TX | 75320 | |
| SourceMedia | | PO Box 4871 | | | Chicago | IL | 60680 | |
| SourceMedia | | PO Box 4634 | | | Chicago | IL | 60680-9598 | |
| SourceMedia | | PO Box 71633 | | | Chicago | IL | 60694-1633 | |
| South Dakota Division of Securities | | 124 S. Euclid, Ste. 104 | | | Pierre | SD | 57501 | |
| Southern Conference Teacher Retirement | | PO Box 642 | | | Sturbridge | MA | 01566 | |
| Southern Methodist University | Attn Erin Sutton | PO Box 750460 | | | Dallas | TX | 75275-0460 | |
| Southfork CLO Ltd. JPMorgan Chase Bank, National Association | | Attention The Directors-Stratford CLO Ltd. | Queensgate House, South Church Street, George Town | P.O. Box 1093GT | Grand Cayman | | | Cayman Islands |
| Southfork CLO Ltd. JPMorgan Chase Bank, National Association | JPMorgan Chase Bank | 600 Travis Street | 50th Floor | Institutional Trust Services-Southfork CLO Ltd. | Houston | TX | 77002 | |
| Southfork CLO, Ltd. | The Directors | PO Box 1093 GT | Queensgate House, South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Southland Property Tax Consultants, Inc | | 201 S Main St Ste 1460 | | | Fort Worth | TX | 76102-3146 | |

001798

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 141 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Southland Property Tax Consultants, Inc | | 777 Main Street | Suite 1960 | | Fort Worth | TX | 76102-5323 | |
| Southwest Ford Inc. | | PO Box 234 | | | Weatherford | TX | 76086 | |
| Southwest Glass, Inc. | | 2333 Glenda Lane | | | Dallas | TX | 75229 | |
| Southwest Reporting & Video Service | | 826 Heights Blvd. | | | Houston | TX | 77007 | |
| Southwest Search | | PO Box 710596 | | | Dallas | TX | 75371-0596 | |
| Southwest Securities, Inc. | Attn Holly Peritz | 1201 Elm St. Ste 3500 | | | Dallas | TX | 75270 | |
| Southwestern Medical Foundation | | Parkland Hall at Old Parkland | 3889 Maple Ave., Ste 100 | | Dallas | TX | 75219 | |
| Sove Lavi | | Kimberly Simeus | 1212 Wyndham Hill Lane | | Southlake | TX | 76092 | |
| SOWIN, JOSEPH | | Address on File | | | | | | |
| SOWIN, JOSEPH | | Address on File | | | | | | |
| Spears & Associates | | 8908 S. Yale | Suite 440 | | Tulsa | OK | 74137 | |
| Special Delivery Service, Inc. | | 5470 L.B.J. Freeway | | | Dallas | TX | 75240 | |
| Special Fund For Disability Benefits | Accounts-DB Penalty | 328 State Street | | | Schenectady | NY | 12305-2318 | |
| Special Fund For Disability Benefits | Accounts-DB Penalty Room | 301 20 Park St | | | Albany | NY | 12207-1674 | |
| Specialized Schedulers, Inc. | | 22334 SW 107th Ave | | | Tualatin | OR | 97062 | |
| SPECTOR, ANASTASIYA | | Address on File | | | | | | |
| SPECTRUM GAMING GROUP LLC | | 2 DONOVAN ROAD | | | Pennington | NJ | 08534 | |
| SPEICHER, NATHAN | | Address on File | | | | | | |
| Spence, Austin | | Address on File | | | | | | |
| Spherion | | PO Box 100186 | | | Atlanta | GA | 30384-0186 | |
| Spinner Printing Company | | 3335 Keller Springs #100 | | | Carrollton | TX | 75006 | |
| Spin-Off Advisors, LLC | | 1327 W. Washington Blvd | Ste 4-G | | Chicago | IL | 60607 | |
| Spoke LLC | | 3304 9th St. NE #1 | | | Washington | DC | 20017 | |
| Spot Cooling Systems | | 1420 Century Dr Ste 800 | | | Carrollton | TX | 75006 | |
| Spotlight Marketing Communications | | 18101 Von Karman Ave. | Third Floor | | Irvine | CA | 92612 | |
| Springboard Network LLC | | 9900 Spectrum Drive | | | Austin | TX | 78717-0000 | |
| Sprint | | PO Box 660092 | | | Dallas | TX | 75266-0092 | |
| Square, Inc | | 1455 Market St. | Suite 600 | | San Francisco | CA | 94103 | |
| Squire Patton Boggs (US) LLP | | PO Box 643051 | | | Cincinnati | OH | 45264 | |
| ST JUDE CHILDRENs RESEARCH HOSPITAL | | 501 St. Jude Place | | | Memphis | TN | 38105 | |
| ST JUDE CHILDRENs RESEARCH HOSPITAL | | 4324 N BELTLINE RD | STE C-206 | | Irving | TX | 75038 | |
| St. Louis Cardinals | | 700 Clark St | Group Ticket Dept. | | Saint Louis | MO | 63102 | |
| STA SVDP | | 6306 Kenwood Ave | | | Dallas | TX | 75214 | |
| Stacey Morimoto | | Address on File | | | | | | |
| STACEY RUGG | | Address on File | | | | | | |
| Staffelbach, Inc. | | 2525 McKinnon, Suite 800 | | | Dallas | TX | 75201 | |
| STAGGS, JOE | | Address on File | | | | | | |
| Staltari, Mauro | | Address on File | | | | | | |
| Stan Lata | | Address on File | | | | | | |

App. 0915
001799

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 142 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Standard & Poors | Capital IQ | 2542 Collection Center Dr | | | Chicago | IL | 60693 | |
| Standard & Poors/Capital IQ | | 33356 Collection Center Drive | | | Chicago | IL | 60693-0333 | |
| Standard Ins. Co. RAS Executive Benefits | | 1100 SW 6th Ave | | | Portland | OR | 97204 | |
| Standard Ins. Co. RAS Executive Benefits | | INDIVIDUAL CLIENT SERVICES | PO BOX 711 | | Portland | OR | 97207-0711 | |
| Standard Ins. Co. RAS Executive Benefits | | PO BOX 5674 | | | Portland | OR | 97228-5674 | |
| Standard Insurance Company | | 1100 SW 6th Ave | | | Portland | OR | 97204 | |
| Standard Insurance Company | | PO Box 2707 | | | Portland | OR | 97208-3358 | |
| Standard Insurance Company | | PO BOX 3358 | | | Portland | OR | 97208-3358 | |
| Standard Research Corporation | | 4430 Tyne Blvd | | | Nashville | TN | 37215 | |
| STANLEY ACCESS TECH LLC | | PO BOX 0371595 | | | Pittsburgh | PA | 15251-7595 | |
| Stanton Advisors LLC | | 300 Coles Street | Apt. 802 | | Jersey City | NJ | 07310 | |
| Stanton Law Firm PC | James Stanton | 1717 Main St., Suite 3800 | | | Dallas | TX | 75201 | |
| Stanton Law Firm PC | | 4350 Beltway Drive | | | Addison | TX | 75001 | |
| Stanton LLP | | 1717 Main St, Ste 3800 | | | Dallas | TX | 75201 | |
| Stanton LLP | | 9400 N Central Expwy | Ste 1304 | | Dallas | TX | 75231 | |
| Staples Credit Plan | | Dept. 22 - 0008144217 PO Box 9020 | | | Des Moines | IA | 50368-9020 | |
| Star Displays | | 16914 FM 2920 | | | Tomball | TX | 77377 | |
| Star Pro Staffing | | 8600 Preston Rd Apt 113 | | | Dallas | TX | 75225-3529 | |
| State Auditor | | 1900 Kanawha Boulevard East | Building 1, Room W-100 | | Charleston | WV | 25305 | |
| STATE BAR OF TEXAS | | PO Box 5075 | | | Saginaw | MI | 48605-5075 | |
| State Bar of Texas | | PO Box 12487 | | | Austin | TX | 78711-2487 | |
| State Bar of Texas | | PO BOX 13007 | MCLE DEPT | | Austin | TX | 78711-3007 | |
| State Bar of Texas | | PO Box 149335 | | | Austin | TX | 78714-9335 | |
| State Comptroller | | 111 E 17th St | | | Austin | TX | 78774-0001 | |
| State Comptroller | | Comptroller of Public Accounts | 111 E 17th St | | Austin | TX | 78774-0100 | |
| State Fair of TX Youth Livestock Auction | | PO Box 150009 | | | Dallas | TX | 75315 | |
| State Insurance Fund | | PO Box 4779 | Disability Benefits | | Syracuse | NY | 13221-4779 | |
| State Insurance Fund | | PO Box 5261 | | | Binghamton | NY | 13902-5261 | |
| State of Alaska | | Securities Section, Division of Banking | 333 W. Willoughby Ave., Ste. 9 | | Juneau | AK | 99801 | |
| STATE OF ARKANSAS | DEPT OF FINANCE & ADMINISTRATION | PO BOX 919 | CORPORATION INCOME TAX SECTION | | Little Rock | AR | 72203-0919 | |
| STATE OF CALIFONIA, FRANCHISE TAX BOARD | | PO BOX 942867 | | | Sacramento | CA | 94267-0011 | |
| State of Delaware | Division of Corporations | PO Box 5509 | | | Binghamton | NY | 13902-5509 | |

Appx. 00416

001800

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 143 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| STATE OF MARYLAND | Dept of Assessments & Taxation | Personal Property Division | PO Box 17052 | | Baltimore | MD | 21297-1052 | |
| STATE OF MICHIGAN | COMPOSITE RETURN | PO BOX 30058 | MICHIGAN DEPT OF TREASURY | | Lansing | MI | 48909 | |
| STATE OF MICHIGAN | Corp, Securities & Comm Licensing Bureau | 525 W. Allegan Street | Audit & Exam Division | | Lansing | MI | 48909 | |
| STATE OF MICHIGAN | MICHIGAN DEPARTMENT OF TREASURY | DEPT 77375 | PO BOX 77000 | | Detroit | MI | 48277-0375 | |
| STATE OF MICHIGAN | | PO Box 30774 | | | Lansing | MI | 48909-8274 | |
| State of New Hampshire | | New Hampshire Dept. of State | 107 N. Main Street, Rm 204, State House | | Concord | NH | 03301-4951 | |
| STATE OF NEW JERSEY | DEPT OF LABOR AND WORKFORCE | PO BOX 929 | DIV OF REVENUE PROCESSING | | Trenton | NJ | 08646-0929 | |
| STATE OF NEW JERSEY | | New Jersey Dept of Law & Public Safety | 153 Halsey Street, 6th Floor | | Newark | NJ | 07102 | |
| STATE OF NEW JERSEY | | REVENUE PROCESSING CENTER | PO BOX 642 | | Trenton | NJ | 08646-0642 | |
| State of New Jersey-CBT | Division of Tax Revenue Proc Center | PO Box 66 | | | Trenton | NJ | 08646-0666 | |
| State of Oregon | Div of Finance & Corporate Securities | 350 Winter St NE, Rm 410 | Labor & Industries Bldg | | Salem | OR | 97301 | |
| State Securities Commissioner of Alabama | | Registration Division | 401 Adams Avenue, Suite 280 | | Montgomery | AL | 36104 | |
| State Street Bank and Trust Company | | CDO Services Group | 200 Clarendon Street | Mail Code EUC-108 | | Boston | MA | 02116 | |
| State Street Bank and Trust Company | | PO Box 5607 | | | Boston | MA | 02206-5607 | |
| State Street Corporation | | PO Box 5013 | | | Boston | MA | 02206-5013 | |
| State Street Corporation | | PO Box 5607 | | | Boston | MA | 02206-5607 | |
| State Street Bank and Trust Company | | Elkins McSherry LLC | One Lincoln Street | | Boston | MA | 02111 | |
| State Street Global Exchange | | One Lincoln Street | | | Boston | MA | 02111 | |
| State Street Global Markets, LLC | | 151 South 1st | Suite 100 | | Austin | TX | 78704 | |
| Status Labs.com | | 4630 Soquel Drive | Suite 5 | | Soquel | CA | 95073 | |
| Stax Media, Inc. | | Address on File | | | | | | |
| Stefan Peller | | PO Box 8329 | | | Scottsdale | AZ | 85252 | |
| Stellar Adventures | | 13748 Neutron Rd | | | Dallas | TX | 75244-4412 | |
| Stenstrom-Schneider, INC | | Address on File | | | | | | |
| Stephanie Catalano | | Address on File | | | | | | |
| Stephanie Vitiello | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| STEPHEN LORENZ | | Address on File | | | | | | |
| Stephen M. Fremgen | | Address on File | | | | | | |
| Steptoe & Johnson LLP | | 1330 Connecticut Ave, N.W. | | | Washington | DC | 20036-1795 | |
| STERLING VALUATION GROUP, INC | | 590 MADISON AVE | 5TH FLR | | New York | NY | 10022 | |
| STEVE LEACH | | Address on File | | | | | | |
| Steve Mackay | | Address on File | | | | | | |
| Steve Thiel | | Address on File | | | | | | |
| STEVE ZIMMERMAN | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 144 of
175
Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Steven Delarosa | | Address on File | | | | | | |
| STEVEN GART | | Address on File | | | | | | |
| Steven Haltom | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Steven J White MD | | PO Box 650772 | | | Dallas | TX | 75265-0772 | |
| Steven J. Kaplan, P.C. | | 5910 Stoneshire Ct | | | Dallas | TX | 75252 | |
| Steven Johnson | | Address on File | | | | | | |
| STEVEN SUN | | Address on File | | | | | | |
| Stevens, Kellie | | Address on File | | | | | | |
| Stevens, Kellie | | Address on File | | | | | | |
| Stewart F. House Photography | | 2600 Bunker Hill Cr | | | Plano | TX | 75075 | |
| Stewart, Phoebe | | Address on File | | | | | | |
| Stewart, Phoebe L. | | Address on File | | | | | | |
| STEWART, STEVEN a. | | Address on File | | | | | | |
| STF Services Corporation | | PO Box 3251 | | | Syracuse | NY | 13220-3251 | |
| STIKEMAN ELLIOT | | 5300 Commerce Court West | 199 Bay Street West | | Toronto | ON | M5L 1B9 | CANADA |
| Stillman & Friedman, P.C. | | 425 Park Avenue | 26th Floor | | New York | NY | 10022 | |
| Stinson Leonard Street LLP | Stinson LLP | Attn Paul Lackey | 3102 Oak Lawn Avenue, Suite 777 | | Dallas | TX | 75219 | |
| Stinson Leonard Street LLP | | PO Box 843052 | | | Kansas City | MO | 64184 | |
| Stinson LLP | Attn Paul Lackey | 3102 Oak Lawn Avenue, Suite 777 | | | Dallas | TX | 75219 | |
| Stinson LLP | Deborah Deitsch-Perez, Michael P. Aigen | 3102 Oak Lawn Avenue, Suite 777 | | | Dallas | TX | 75219 | |
| Stinson LLP | Paul M. Hoffmann | 1201 Walnut Street, Suite 2900 | | | Kansas City, | MO | 64106-2150 | |
| STINSON MORRISON HECKER LLP | | PO Box 219492 | | | Kansas City | MO | 64121 | |
| Stone, David | | Address on File | | | | | | |
| Stone, Kenneth | | Address on File | | | | | | |
| Stonecypher, Abbie | | Address on File | | | | | | |
| Stonelake Capital Holdings, LP | Attn Blake Wilson | 100 Crescent Court, Suite 850 | | | Dallas | TX | 75201 | |
| Stonelake Capital Holdings, LP | Attn Jacob Becker | 100 Crescent Court, Suite 850 | | | Dallas | TX | 75201 | |
| Stonelake Capital Holdings, LP | Attn John A. Kiltz | 3200 Gracie Kiltz Lane, Suite 500 | | | Austin | TX | 78758 | |
| Stonelake Capital Holdings, LP | Attn Kenneth E. Aboussie, Jr. | 100 Crescent Court, Suite 850 | | | Dallas | TX | 75201 | |
| Stonelake Capital Holdings, LP | Attn W. Hunter Sage, Esq. | 200 Park Place, 4200 Westheimer, Suite 900 | | | Houston | TX | 77027 | |
| Stonelake Capital Holdings, LP | Attn William C. Wilshusen | Haynes & Boone, LLP | 2323 Victory Avenue, Suite 700 | | Dallas | TX | 75219 | |
| STOOPS, CLIFFORD | | Address on File | | | | | | |
| Stout Management Company | | 10151 Park Run Drive | | | Las Vegas | NV | 89145 | |
| Stradley Ronon Stevens & Young, LLP | | 2005 Market Street | Suite 2600 | | Philadelphia | PA | 19103-7018 | |
| Strand Advisors Inc. | | 1209 Orange Street | | | Wilmington | DE | 19801-0000 | |

Appx. 001802
001802

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 03/02/22    Page 27 of 241    PageID 1929
Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 145 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Strand Advisors, Inc. | Attn James Seery | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Strand Advisors, Inc. | Attn John Dubel | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Strand Advisors, Inc. | Attn Russell Nelms | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Strasburger & Price, L.L.P. | | PO Box 50100 | | | Dallas | TX | 75250-9989 | |
| Strategas Research Partners LLC | ATTN Eileen Gabay | 52 Vanderbilt Avenue | 8th Floor | | New York | NY | 10017 | |
| Strategas Securities LLC | | 52 Vanderbilt Ave | 8th Fl | | New York | NY | 10017 | |
| STRATEGIC ALLIANCE GROUP, LLC | | 500 W CYPRESS CREEK RD | STE 420 | | Ft. Lauderdale | FL | 33309 | |
| Strategic Financial Solutions | | 2650 Thousand Oaks Blvd | Suite 1340 | | Memphis | TN | 38118 | |
| Strategic Growth, Inc | | 5004 Crestway Drive | | | Austin | TX | 78731 | |
| Strategic Insight Group | | 1300 Summit Ave Ste 512 | | | Fort Worth | TX | 76102-4419 | |
| STRATEGIC WORKFORCE SOLUTIONS | | PO BOX 32960 | | | Hartford | CT | 32960 | |
| Stratford CLO Ltd. | | P.O. Box 1093GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Stratford CLO Ltd, State Street Bank and Trust Company | State Street Bank and Trust Company | 200 Claredon Street | CDO Services Group, Ref Stratford CLO Ltd. | | Boston | MA | 02116 | |
| Stratford CLO Ltd, State Street Bank and Trust Company | Stratford CLO Ltd. | P.O. Box 1093GT, Boundary Hall | Cricket Square George Town, Grand Cayman | Attention The Directors- Stratford CLO Ltd. | Grand Cayman | | | Cayman Islands |
| Stratford CLO, Ltd. | c/o Maples Finance Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Stratos Legal Services, LP | | 4295 San Felipe | Ste 125 | | Houston | TX | 77027 | |
| Stratus Energy Group | Attn P. Hudson | 1206 San Antonio Street | | | Austin | TX | 78701 | |
| Strohl Systems Group | | 631 Park Ave | | | King of Prussia | PA | 19406 | |
| STRONCZEK, JILLIAN N. | | Address on File | | | | | | |
| Strong Pipkin Bissell & Ledyard, L.L.P. | | 1400 San Jacinto Building, 595 Orleans | | | Beaumont | TX | 77701-3255 | |
| Stroock & Stroock & Lavan LLP | | 180 Maiden Lane | | | New York | NY | 10038 | |
| Structural and Steel Products, Inc | | 3001 W Pafford Street | | | Fort Worth | TX | 76110-0000 | |
| Structure Tone Southwest, Inc. | | 3333 Welborn St, Ste 200 | | | Dallas | TX | 75219 | |
| Structured Credit Investor | | 507 Clerkwell Workshops | 27/31 Clerkenwell Close | | Farringdon | | EC1R 0AR | United Kingdom |
| Studio Movie Grill | | 5405 Beltline Rd | | | Dallas | TX | 75248 | |
| STUECHELI, GREGORY | | Address on File | | | | | | |
| Stuhlsatz, Amy | | Address on File | | | | | | |
| Stutman Treister & Glatt PC | | 1901 Avenue of the Stars | 12th Floor | | Los Angeles | CA | 90067-6013 | |
| Styx International, Ltd. | | 875 Third Avenue | 10th Floor | | New York | NY | 10022 | |
| Styx Partners, LP | | 875 Third Avenue | 10th Floor | | New York | NY | 10022 | |
| Success CE | | 2 Corporate Plaza Drive | Suite 100 | | Newport Beach | CA | 92660 | |
| Succession Resource Group | | PO Box 1573 | | | Tualatin | OR | 97062 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 146 of
175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Sue McGeehan | VP, Collections, Finance Dept. | 7 World Trade Center at 250 Greenwich Street | | | New York | NY | 10007 | |
| Sui Hock Goy | | Ni Advisors, Inc. | 1138 Cadillac Ct. | | Nilpitas | CA | 95035 | |
| Suicide and Crisis Center of North Texas | | 10625 Northboro | | | Dallas | TX | 75230 | |
| Sullivan Cromwell LLP | Brian D. Glueckstein | 125 Broad Street | | | New York | NY | 10004 | |
| SULLIVAN, JOURDAN | | Address on File | | | | | | |
| Summit Brokerage Services, Inc. | Attn Compliance/Payroll | 595 South Federal Highway | Ste 500 | | Boca Raton | FL | 33432 | |
| Summit Brokerage Services, Inc. | | 500 S. Federal Highway | Suite 500 | | Boca Raton | FL | 33432 | |
| Summit Management Limited | | 23 Lime Tree Bay Avenue | Suite #4-210 | Govenors Square | | | KY1-1209 | Cayman Islands |
| Sun Life Assurance Company of Canada | | PO Box 7247-7184 | | | Philadelphia | PA | 19170-7184 | |
| Sunbelt Securities, Inc. | | 2700 Post Aok Blvd, Suite 1700 | | | Houston | TX | 77056 | |
| Sundance Painting | | 3702 N Buckner Blvd | | | Dallas | TX | 75228-5612 | |
| SunDiego Charter Company | | 522 W 8th Street | | | National City | CA | 91950 | |
| SUNEET AGARWAL | | 444 WASHINGTON BLVD | | | Jersey City | NJ | 07310 | |
| SunGard | | Bank of America Lockbox Services | 15138 Collections Center Dr | | Chicago | IL | 60693 | |
| Sungard Availability Services | Automated Securities Clearance LLC | 91233 Collection Center Drive | | | Chicago | IL | 60693 | |
| Sungard Protegent | | 15138 Collections Center Dr | | | Chicago | IL | 60693 | |
| Sunil Devarakonda | | 111 East 125th Street, Apt 3 E | | | New York | NY | 10035 | |
| SunTrust Robinson Humphrey Inc. | Attn Documentation | SunTrust Robinson Humphrey 5001 Spring Valley Rd Ste 1000 W | 711 5th Avenue 14th Fl. | | New York | NY | 10022-0000 | |
| Superior Search & Staffing | | PO Box 15548 | | | Dallas | TX | 75244 | |
| Supermarket News | | Address on File | | | North Hollywood | CA | 91615-5548 | |
| SURGENT, THOMAS | | 4127 Towne Green Circle | | | Addison | TX | 75001 | |
| Susan Burton Consulting, LLC | | Address on File | | | | | | |
| Susan Leahy | | 1000 Louisiana | Ste. 5100 | | Houston | TX | 77002 | |
| SUSMAN GODFREY LLP | | 700 Sixth Street NW | Suite 700 | | Washington | DC | 20001 | |
| Sutherland Asbill & Brennan LLP | | 999 Peachtree Street NE | | | Atlanta | GA | 30309-3996 | |
| Sutherland Asbill & Brennan LLP | | Address on File | | | | | | |
| Swadley, Emily | | Address on File | | | | | | |
| SWADLEY, RICK | | 400 Crescent Court | | | Dallas | TX | 75201 | |
| Swank Audio Visuals | | Address on File | | | | | | |
| Sweeney, Katelyn | | Zurichbergstrasse 20 | | | Zurich | | 08032 | SWITZERLAND |
| SWIXMED | | 353 Larkfield Rd | | | East Northport | NY | 11731 | |
| Sybari Software, Inc. | | | | | | | | |

Case 22-03052-sgj   Doc 21   Filed 05/27/22   Entered 05/27/22 15:12:46   Desc Main
Case 3:22-cv-02280-S   Document 10   Filed 11/05/22   Page 29 of 241   PageID 1931
Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 147 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Symphony Communication Services LLC | | 1117 S California Ave | | | Palo Alto | CA | 94304-0000 | |
| Synnex Corporation | | 5845 Collections Center Dr | | | Chicago | IL | 60693 | |
| Sysco Food Services | | PO Box 560700 | | | Lewisville | TX | 75056-0700 | |
| System Electric | | 1278 Montalvo Way | | | Palm Springs | CA | 92262 | |
| T. H. Quest, Inc. | | 5001 Spring Valley Rd. | Ste 400-E | | Dallas | TX | 75244 | |
| T4 Capital Talent, LLC | | 272 E. Deerpath Rd | Suite 236 | | Lake Forest | IL | 60045 | |
| TACA The Arts Community Alliance | Attn Julie Bice | One Arts Plaza | 1722 Routh Street, #115 | | Dallas | TX | 75201 | |
| TAK-CHEUNG DAVIDSON WAN | | 5050 S LAKE SHORE DR, APT #1509 | | | Chicago | IL | 60615 | |
| Talkingbox DMG, LLC | | 284 Sport Hill Road | | | Easton | CT | 06612 | |
| TAMALE SOFTWARE, INC | | 320 CONGRESS ST | | | Boston | MA | 02210 | |
| TANDBERG, SCOTT | | Address on File | | | | | | |
| Tanner Morgan | | Address on File | | | | | | |
| Tara Allen | | Address on File | | | | | | |
| TARAs LIMO & AIRPORT SERVICE | | PO BOX 795581 | | | Dallas | TX | 75379-5581 | |
| Tarrant County | Elizabeth Weller | Linebarger Goggan Blair & Sampson, LLP | 2777 N. Stemmons Freeway, Suite 1000 | | Dallas | TX | 75207 | |
| TARSHA, DANIEL S. | | Address on File | | | | | | |
| TARUN K BHATT | | Address on File | | | | | | |
| Tax & Accounting-R&G | | PO BOX 71687 | | | Chicago | IL | 60694-7687 | |
| TAX EXECUTIVES INSTITUTE, INC | | PO BOX 9407 | | | Uniondale | NY | 11555-9407 | |
| Taylor Porter | | Address on File | | | | | | |
| Taylor, Brian | | Address on File | | | | | | |
| TAYLOR, GREGORY | | Address on File | | | | | | |
| TCS Central Region GP LLC | ATTN Kelly Thomas | 5001 Spring Valley | Suite 600W | | Dallas | TX | 75244 | |
| TCS Corporate Services | Allied Capital Partners | PO Box 676649 | | | Dallas | TX | 75267 | |
| TCS Corporate Services | | PO Box 671160 | | | Dallas | TX | 75267-1160 | |
| TD Ameritrade Trust Company | Attn FFC RMT | PO Box 17748 | | | Denver | CO | 80217-0748 | |
| TDA Associates, Inc. | | 2101 Sardis Rd N, Suite 109 | | | Charlotte | NC | 28227 | |
| TDIndustries | | PO Box 300008 | | | Dallas | TX | 75303-0008 | |
| Technology Team, LLC | | 1120 South Freeway | Suite 215 | | Fort Worth | TX | 76104 | |
| Ted Kanarek | | Address on File | | | | | | |
| Telecomm Strategies Inc | | 6404 Highland Drive | | | Chevy Chase | MD | 20815 | |
| TELOS Peformance Center | | 13701 Dallas Pkwy | | | Dallas | TX | 75240 | |
| Temple Emanu-El | Attn Rick Rosenberg | 8500 Hillcrest | | | Dallas | TX | 75225 | |
| Tennessee Department of Revenue | | 500 Deaderick Street | Andrew Jackson State Office Building | | Nashville | TN | 37242 | |
| Tennessee Dept of Commerce & Insurance | | Securities Division | 500 James Robertson Parkway, Suite 680 | | Nashville | TN | 37243 | |
| TERRELL, ARTIS | | Address on File | | | | | | |
| Terrie Rabinowitz, L.C. S.W. | | 7186 Promenade Dr Apt 801 | | | Boca Raton | FL | 33433-6977 | |
| Terry Jackson | | Address on File | | | | | | |
| Terry Jackson | | Address on File | | | | | | |
| Terry Swagerty | | Address on File | | | | | | |
| Terry, Doris A. | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

Appx. 00121
001805

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 148 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| TERRY, JOSHUA N. | | Address on File | | | | | | |
| TESLA, NIKOLA | | Address on File | | | | | | |
| Texas Alliance of Energy Producers | | 900 8th Street, Suite 400 | | | Wichita Falls | TX | 76301 | |
| Texas Best Meats | | PO Box 4810 | | | Wichita Falls | TX | 76308 | |
| Texas Best Meats | | 7043 Seymour Hwy | | | Wichita Falls | TX | 76310 | |
| Texas Commerce Bank, N.A. | | 600 Travis Street | 8th Floor, Texas Commerce Tower | Global Trust Services | Houston | TX | 77002 | |
| Texas Comptroller of Public Accounts | | PO Box 149348 | | | Austin | TX | 78714-9348 | |
| Texas Department of Insurance | Financial Regulation Division | Company Licensing and Registration | 333 Guadalupe | | Austin | TX | 78701 | |
| Texas Dept of Licensing and Regulation | | PO Box 12157 | | | Austin | TX | 78711 | |
| TEXAS DEPT OF STATE HEALTH SERVICES | | LOCKBOX-DSHS ASBESTOS/DEMO NOTIFICATION | PO BOX 12190 | | Austin | TX | 78711-2190 | |
| Texas Entertainment Group | | 103 N Kirby St | | | Garland | TX | 75042 | |
| Texas LawBook LLC | | 3888 Everwood Lane | | | Addison | TX | 75001 | |
| TEXAS ROOF MANAGEMENT, INC | Accounts Receivable | 728 LINGCO DR | | | Richardson | TX | 75081 | |
| Texas Secretary of State | | PO Box 12887 | | | Austin | TX | 78711-2887 | |
| Texas Secretary of State | | PO Box 13697 | | | Austin | TX | 78711 | |
| Texas State Comptroller | | 9241 LBJ FREEWAY | STE 205 | | Dallas | TX | 75243 | |
| Texas State Comptroller | | PO Box 12030 | | | Austin | TX | 78711-2030 | |
| Texas State Securities Board | | Securities Commission of Texas | 208 E 10th, Room 610 | | Austin | TX | 78701 | |
| TEXPERS | | 13111 Northwest Freeway | Suite 100 | | Houston | TX | 77040 | |
| Thackray Williams LLP | | 32-40 Widmore Rd | Bromley | | Kent | | BR1 1RY | United Kingdom |
| Tharrington Smith LLP | | PO Box 1151 | | | Raleigh | NC | 27602 | |
| The American Cancer Society | | 18505 West Twelve Mile Rd | | | Southfield | MI | 48076 | |
| The Ashcroft Lawfirm, LLC | | 950 North Glebe Road | Suite 2400 | | Arlington | VA | 22203 | |
| The Ashcroft Lawfirm, LLC | | 1100 Main Street | Suite 2710 | | Kansas City | MO | 64105 | |
| The Aspen Institute | | Society of Fellows | 1000 N. Third Street | | Aspen | CO | 81611 | |
| The Badge of Honor Memorial Foundation | | David Blanchard | 3131 Maple Ave | | Dallas | TX | 75201 | |
| The Bailey Group | | PO Box 1395 | | | Whitehouse Station | NJ | 08889 | |
| The Bank of New York Mellon | Elizabeth Stern | Director and Managing Counsel | 240 Greenwich Street, 18th Floor | | New York | NY | 10286 | |
| The Bank of New York Mellon Trust Compan | | 601 Travis, 16th floor | | | Houston | TX | 77002-0000 | |
| The Bank of New York Trust Co. | Global Corp. Trust | 600 Travis Street, 50th Floor | | | Houston | TX | 77002 | |
| The Bermuda Monetary Authority | | 43 Victoria Street | | | Hamilton | | HM 12 | Bermuda |
| The Bowman Law Firm, LLC | | 840 Tom Wheeler Lane | | | McEwen | TN | 37101 | |
| The Bradbury Group | | 10661 Rockley Rd | | | Houston | TX | 77099 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 136 of 155

Appx. 00122

001806

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| The Brattle Group | | 44 Brattle St | | | Cambridge | MA | 02138-3736 | |
| The Bretton Woods Institute | | R.R. #1 Simcoe | | | Toronto | ON | N3Y 4J9 | CANADA |
| The Bryant Park Hotel | | 40 W. 40th Street | | | New York | NY | 10018 | |
| THE BUREAU OF NATIONAL AFFAIRS, INC | | PO Box 419889 | | | Boston | MA | 02241-9889 | |
| The Bureau of National Affairs, Inc (Blo | | 1801 South Bell Street | | | Arlington | VA | 22202-0000 | |
| The Burnett Companies Consolidated, Inc. | | PO Box 973940 | | | Dallas | TX | 75397 | |
| The Cake Guys | | 730 Big Stone Gap Rd | Suite B | | Duncanville | TX | 75137 | |
| The Cayman Islands Monetary Authority | | 171 Elgin Ave, SIX Cricket Square | | George Town | Grand Cayman | | | Cayman Islands |
| The Charlotte Observer | | 600 S. Tryon Street | | | Charlotte | NC | 28202 | |
| The Chart Store | | 11768 Tarrynot Ln | | | Carmel | IN | 46033 | |
| The Claro Group, LLC | | 123 N Wacker Dr Ste 2100 | | | Chicago | IL | 60606-1747 | |
| THE CLUEN CORPORATION | | 135 5TH AVE FL 4 | | | NEW YORK | NY | 10010-7157 | |
| The Crystal Charity Ball | | Mrs. Mark D Leyendecker, Underwriting | 3838 Oak Lawn Avenue, Suite L150 | | Dallas | TX | 75219 | |
| The Cystic Fibrosis Foundation | | 4040 North Central Expressway | Ste 730 | | Dallas | TX | 75204 | |
| The da Vinci School | | 10909 Midway Rd | | | Dallas | TX | 75229 | |
| The Dallas Morning News | | Subscriptions Dept. | PO Box 630054 | | Dallas | TX | 75263-0054 | |
| The Darden School | Attn Christi Warren | PO Box 7726 | | | Charlottesville | VA | 22906-7726 | |
| | Attn Development- CFR | | | | | | | |
| The Day Group | | The 401 Centre | 302 Regent Street | | London | | W1B3HH | United Kingdom |
| The Deal LLC | | 105 Madison Ave | 5th floor | | New York | NY | 10016 | |
| The Deal LLC | | PO BOX 26356 | | | New York | NY | 10087-6356 | |
| The Deal LLC | | PO Box 3502 | | | Northbrook | IL | 60065-9850 | |
| The Devon Trust II | | #2800 | 715 - 5th Avenue SW | | Calgary | AB | T2P 2X6 | CANADA |
| The DI Wire Publishing LLC | | 18101 Von Karman Ave | Suite 300 | | Irvine | CA | 92612 | |
| The Dugaboy Investment Trust | Grant Scott, Trustee | 4140 Park Lake Ave., Suite 600 | | | Raleigh | NC | 27612 | |
| The Economist | | Subscription Center | PO Box 46978 | | Saint Louis | MO | 63146-6978 | |
| The Economist | | Subscriptions Department | PO Box 58522 | | Boulder | CO | 80322-8522 | |
| The Efficient Business LLC | | 13601 Preston | Ste 250E | | Dallas | TX | 75240 | |
| The Efficient Business LLC | | 14800 Quorum Dr | Suite 560 | | Dallas | TX | 75254-7679 | |
| The Emblem Source, LLC | | 4575 Westgrove Drive | Suite 500 | | Addison | TX | 75001 | |
| The Englishmans Interiors | | 14655 Midway Rd | | | Addison | TX | 75001 | |
| The Executive Centre | | Tokyo Ginko Kyokai Bldg 15th Floor | 1-3-1 Marunouchi | | Chiyoda-ku | Tokyo | 100-0005 | JAPAN |
| The Expert Series LLC | | 317 Madison Avenue | Suite 920 | | New York | NY | 10017 | |
| The Family Place | Attn Shivangi Pokharel | PO Box 7999 | | | Dallas | TX | 75209 | |
| THE FRANCHISE TAX BOARD | | PO BOX 942867 | | | Sacramento | CA | 94267-0001 | |
| THE FRANK W. NORRIS FOUNDATION | | PO Box 6071 | | | Athens | GA | 30604 | |
| THE FRANK W. NORRIS FOUNDATION | | Warnell School of Forestry | and Natural Resources | | Athens | GA | 30602-2152 | |
| THE FREDONIA GROUP | | 767 BETA DR | | | Cleveland | OH | 44143 | |

Appx. 00123
001807

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 150 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| The Garden Gate | | 2615 Routh Street | | | Dallas | TX | 75201 | |
| The Garden Gate | | 2303 Farrington | #100 | | Dallas | TX | 75207 | |
| The General Counsel Forum | | PO Box 131263 | | | Dallas | TX | 75313 | |
| The Greitens Group | | 4500 West Pine Boulevard | | | Saint Louis | MO | 63108 | |
| The Griffith Law Firm | | 4925 Greenville Ave | Suite 200 | | Dallas | TX | 75206 | |
| The Gym | | 921 W. Mayfield Rd. | Suite 112 | | Arlington | TX | 76015 | |
| The Hanover Insurance Group | | PO Box 580045 | | | Charlotte | NC | 28258-0045 | |
| The Harry Walker Agency, Inc. | | 355 Lexington Ave | Flr 21 | | New York | NY | 10017 | |
| THE HARTFORD | | PO BOX 2907 | | | The Hartford | CT | 061004-2907 | |
| THE HARTFORD | | PO Box 660916 | | | Dallas | TX | 75266-0916 | |
| The Hockaday School | Attn Holly Hook | 11600 Welch Road | | | Dallas | TX | 75229 | |
| The Hogan Firm | | 1311 Delaware Ave | | | Wilmington | DE | 19806 | |
| The House Oldtown Brasserie | | 6936 E. Main St. | | | Scottsdale | AZ | 85251 | |
| The Intl Stock Exchange Authority Ltd | | PO Box 623, Helvetoa Court | Block B, 3rd Floor | Les Echelons | St Peter Port | GUERNSEY | GY1 1AR | United Kingdom |
| The Irish Stock Exchange plc | | 28 Anglesea Street | | | Dublin | | D02 XT25 | IRELAND |
| The Island Hotel | | 690 Newport Center Drive | | | Newport Beach | CA | 92660 | |
| The Joule | | 1530 Main Street | | | Dallas | TX | 75201 | |
| The Junior League of Dallas | | PO Box 12707 | | | Dallas | TX | 75226 | |
| The Kaplan Group | | 2250 King Ct. Suite 50 | | | San Luis | CA | 93401 | |
| The Kiplinger Tax Letter | | PO Box 62300 | | | Tampa | FL | 33662-2300 | |
| The Kiplinger Tax Letter | | PO Box 3299 | | | Harlan | IA | 51593-0479 | |
| The Ladders | Accounting Dept | 137 Varick St | | | New York | NY | 10013 | |
| THE LAKESHORE COMPANIES | | 1081 MOMENTUM PL | | | Chicago | IL | 60689-5310 | |
| The LDM Group, LLC | | Renaissance Tower | 1201 Elm Street, Ste. 4201 | | Dallas | TX | 75270 | |
| The Leukemia & Lyphoma Society | | 1311 Mamaroneck Ave, Suite 310 | | | White Plains | NY | 10605 | |
| The Leukemia & Lyphoma Society | | 8111 LBJ Freeway | Suite 425 | | Dallas | TX | 75251 | |
| The Loan Syndications and Trading Assoc | | 366 Madison Ave | 15th Floor | | New York | NY | 10017 | |
| The Mark and Pamela Okada Family Exempt Trust #1 | Brian D. Glueckstein | Sullivan Cromwell LLP | 125 Broad Street | | New York | NY | 10004 | |
| The Markets.com | | PO Box 9420 | | | Uniondale | NY | 11555-9420 | |
| The Matchbox Studio | | 3013 Canton Street | | | Dallas | TX | 75226 | |
| The McCarton Foundation | | 331 W. 25th Street | | | New York | NY | 10001 | |
| The Medleh Group | | PO Box 96370 | | | Houston | TX | 77213 | |
| The Money Management Institute | | 1101 17th St, NW Ste 703 | | | Washington | DC | 20036 | |
| The Money Management Institute | | PO Box 759231 | | | Baltimore | MD | 21275-9231 | |
| The Montessori School of Raleigh | | 7005 Lead Mine Road | | | Raleigh | NC | 27615 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 151 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| The Morgan Library & Museum | | 225 Madison Avenue | | | New York | NY | 10016 | |
| The NASDAQ OMX Group Inc. | | Lockbox 90200 | PO Box 8500 | | Philadelphia | PA | 19178-0200 | |
| The NASDAQ Stock Market LLC | c/o Wells Fargo Bank | Lockbox 80200/PO Box 8500 | | | Philadelphia | PA | 19178-0200 | |
| The National due Diligence Alliance | | West8 Tower | 10205 Westheimer Rd, Ste 500 | | Houston | TX | 77042 | |
| The Neighbors Law Firm P.C. | | 2500 Regency Parkway | | | Cary | NC | 27518 | |
| The New York Times | | PO Box 4039 | | | Woburn | MA | 01888-4039 | |
| The New York Times | | PO BOX 371456 | | | Pittsburgh | PA | 15250-7456 | |
| The nGage Company, LLC | Attn Phil McKay | 170 Pine Point Rd | | | Scarborough | ME | 04074 | |
| The Oechsli Institute | | PO Box 29385 | | | Greensboro | NC | 27429 | |
| The Optimal Networking Event, LLC | | 5 Block Court | | | Randolph | NJ | 07869 | |
| The Optimal Networking Event, LLC | | PO Box 191 | | | Mt. Freedom | NJ | 07970-0191 | |
| The Original Butt Sketch | | PO Box 4495 | | | Dallas | TX | 75208-4495 | |
| The Paley Center for Media | Attn Accounting Department | 25 West 52nd Street | | | New York | NY | 10019 | |
| The Party New York | | 137 Avenue A | Suite 2E | | New York | NY | 10009 | |
| The Paul Revere Life Ins. Co. | | PO Box 740590 | | | Atlanta | GA | 30374-0590 | |
| The Pension Bridge, Inc | | 4504 S Ocean Blvd | | | Highland Bch | FL | 33487-4233 | |
| THE PLACEMENT GROUP, INC. | | 6060 North Central Expressway | Suite 524 | | Dallas | TX | 75206 | |
| THE PLANT PLACE | | 10704 Goodnight Lane | | | Dallas | TX | 75220 | |
| The Plexus Groupe | | 21805 Field Parkway | Suite 300 | | Deer Park | IL | 60010 | |
| The Plumbing Mechanical Fire Prot. Co | | 60 North Prospect Avenue | | | Lynbrook | NY | 11563-1395 | |
| The Promise House | Attn Christy Cerralvo | RBC Capital Markets | 2711 N Haskell Ave, Ste 2500 | | Dallas | TX | 75240 | |
| The Real Estate Council | | Three Lincoln Center | 5430 LBJ Frwy, Suite 100 | | Dallas | TX | 75240 | |
| The Real Estate Council Foundation | Attn Stephanie Keller Hudiberg | 3100 McKinnon Street | Suite 1150 | | Dallas | TX | 75201 | |
| The Reeds Public Relations Corporation | | 3232 McKinney Avenue | Suite 855 | | Dallas | TX | 75204 | |
| The Renaissance Consulting Group | | 870 San Jacinto Twr 2121 San Jacinto St | | | Dallas | TX | 75201 | |
| The Rhythm Room | Attn Elaine Hewlett | 4734 Tremont Street | | | Dallas | TX | 75246 | |
| The Rise School | | 4220 Monterey Oaks Blvd. | | | Austin | TX | 78749 | |
| The Ritz-Carlton | | 455 Grand Bay Drive | | | Key Biscayne | FL | 33149 | |
| The Ritz-Carlton | | 2121 McKinney Avenue | | | Dallas | TX | 75201 | |
| THE RITZ-CARLTON, LAKE LAS VEGAS | ATTN A/R | 1610 LAKE LAS VEGAS PKWY | | | Henderson | NV | 89011 | |
| The Rowland Law Firm | Ronald L. Rowland, Authorized Agent | 2453 Vineyard Lane | | | Crofton | MD | 21114 | |
| The Ryan Anthony Foundation | | 2512 Boll Street | | | Dallas | TX | 75204 | |
| The Search Group | | 222. W Las Colinas Blvd | Ste 844E | | Irving | TX | 75039 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 139 of 155

Case 22-03052-sgj   Doc 21   Filed 05/27/22   Entered 05/27/22 15:12:46   Desc Main
Case 3:22-cv-02280-S   Document 10   Filed 04/06/22   Page 34 of 241   PageID 1936
Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 152 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| THE SIGN COMPANY | | 575 MADISON AVE | | | New York | NY | 10022 | |
| The Spencer Company | | 2121 North Akard | Suite 100 | | Dallas | TX | 75201 | |
| The Standard | | 1100 SW Sixth Ave | | | Portland | OR | 97204-0000 | |
| The Standard | | PO Box 3358 | | | Portland | OR | 97208-3358 | |
| The Standard | | PO BOX 5674 | | | Portland | OR | 97228-5674 | |
| The Standard Life Insurance Co of NY | | PO Box 3358 | | | Portland | OR | 97208-3358 | |
| The State of Texas | Deana K. Adams, CSR | Official Court Reporter | 600 Commerce, 630 C | | Dallas | TX | 75202 | |
| The Stewpot Alliance | | 4516 Lovers Lane | Suite 229 | | Dallas | TX | 75225 | |
| The Strategic Financial Alliance | | 202 Abbey Court | | | Alpharetta | GA | 30004 | |
| The Strategic Financial Alliance, Inc. | | 2200 Century Parkway, Ste 500 | | | Atlanta | GA | 30345 | |
| The TAARP Group, LLP | | 8333 Douglas Avenue | Suite 1500 | | Dallas | TX | 75225 | |
| The TAARP Group, LLP | | PO Box 797337 | | | Dallas | TX | 75379-7337 | |
| The TASA Group, Inc. | | 1166 DeKalb Pike | | | Blue Bell | PA | 19422-1853 | |
| The Texas Lyceum | | 3305 Steck Ave Ste 200 | | | Austin | TX | 78757-8155 | |
| The Texas Lyceum Association, Inc | | 7131 Lavendale Ave | | | Dallas | TX | 75230 | |
| The Townwide Fund of Huntington, Inc. | | 148 East Main Street | | | Huntington | NY | 11743 | |
| The United States Ski & Snowboard Assoc | | 1 Victory Lane | Box 100 | | Park City | UT | 84060 | |
| The United States Treasury | | Internal Revenue Service | PO Box 9941 | | Ogden | UT | 84409 | |
| The University of Texas at Arlington | | Grants and Accounting, Box 19136 | | | Arlington | TX | 76019-0136 | |
| The VIA Group,Inc | | 2610 Technology Forest Blvd | | | The Woodlands | TX | 77381 | |
| The Wall Street Journal | | Corporate Subscription Program | 102 First Ave | | Chicopee | MA | 01020 | |
| The Wellness Group, LLC | | 1000 N. Green Valley Pkwy | Suite 440 #401 | | Henderson | NV | 89074 | |
| The Wellness Group, LLC | | 100 N. Green Valley Pkwy | Suite 440 #401 | | Henderson | NV | 89074 | |
| The Westin Charlotte | | 601 South College Street | | | Charlotte | NC | 28202 | |
| The YGS Group | | 3650 West Market Street | Content Division-A/R | | York | PA | 17404 | |
| The Yield Book, Inc. | | PO Box 13755 | | | Newark | NJ | 07188-0755 | |
| THEDFORD, LAUREN E. | | Address on File | | | | | | |
| Theodore N Dameris | | Address on File | | | | | | |
| Theodore N Dameris | | Address on File | | | | | | |
| Think-Cell | | InvalidenstraBe 34 | | | Berlin | | 10115 | GERMANY |
| Think-cell Sales GmbH & Co. KG | | Chausseestr. 8/E | | | Berlin | | 10115 | GERMANY |
| Thirstystone Resources | | 860 E 19th St | | | Tucson | AZ | 85719 | |
| THOMAS HENNINGS | | Address on File | | | | | | |
| Thomas Hoerner | | Address on File | | | | | | |
| Thomas Printworks | | PO Box 740967 | | | Dallas | TX | 75374-0967 | |
| Thomas Reprographics | | P.O. Box 740967 | | | Dallas | TX | 75374-0967 | |
| THOMAS SHARP | | Address on File | | | | | | |
| Thomas Surgent | c/o David Neier | Winston Strawn LLP | 4441 Beverly Drive | | Dallas | TX | 75205 | |
| Thomas Surgent | c/o David Neier, Winston Strawn LLP | 200 Park Avenue | | | New York | NY | 10166 | |
| Thomas Surgent | | Address on File | | | | | | |

App. 00426
001810

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 153 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Thomas White | c/o KGen Power Corp | 9337 Spring Cypress Rd, #214 | | | Spring | TX | 77379 | |
| Thompson & Knight | | PO Box 660684 | | | Dallas | TX | 75266-0684 | |
| Thompson & Knight | | Dept 70 PO Box 4346 | | | Houston | TX | 77210-4346 | |
| THOMPSON & KNIGHT LLP | | ONE ARTS PLAZA | 1722 ROUTH STREET SUITE 1500 | | Dallas | TX | 75201-2533 | |
| Thompson Coe Cousins & Irons LLP | | 700 N. Pearl Street | Twenty Fifth Floor | | Dallas | TX | 75201 | |
| Thompson Reuters | | 610 Opperman Drive | PO Box 64833 | | Eagan | MN | 55123-0000 | |
| THOMPSON, DAVISON R. | | Address on File | | | | | | |
| Thompson, Jordan | | Address on File | | | | | | |
| THOMPSON, ROBIN | | Address on File | | | | | | |
| Thomson | | PO Box 4634 | | | Chicago | IL | 60680-9598 | |
| Thomson Financial | | 195 Broadway | 7th floor | | New York | NY | 10007 | |
| Thomson Financial | | PO Box 360301 | | | Pittsburgh | PA | 15251-6301 | |
| Thomson Financial | | PO Box 5136 | | | Carol Stream | IL | 60197-5136 | |
| Thomson Financial | | PO Box 95512 | | | Chicago | IL | 60690-5512 | |
| THOMSON REUTERS | Attn Greg Winterton | 3 Times Square, 18th Floor | | | New York | NY | 10036 | |
| THOMSON REUTERS | | PO BOX 55743 | The Tomson Reuters Building | | London | | E14 10B | United Kingdom |
| THOMSON REUTERS | | PO Box 95512 | | | Chicago | IL | 95512 | |
| THOMSON REUTERS | | TAX & ACCOUNTING - R&G | PO BOX 71687 | | Chicago | IL | 60694-1687 | |
| Thomson Reuters (Markets) LLC | | PO Box 415983 | | | Boston | MA | 02241 | |
| Thomson Reuters (Markets) LLC | | GPO BOX 10410 | | | Newark | NJ | 07193-0410 | |
| Thomson Reuters (Tax & Accounting) Inc. | | PO Box 71687 | | | Chicago | IL | 60694-1687 | |
| Thomson Reuters Corporation | | 17400 Medine Road | Suite 850 | | Plymouth | MN | 55447 | |
| Thomson Reuters Tax & Accounting - Check | | PO Box 71687 | | | Chicago | IL | 60694-0000 | |
| thomson RIA | | PO Box 6159 | | | Carol Stream | IL | 60197-6159 | |
| Thomson West | | PO Box 64833 | | | Saint Paul | MN | 55164-0833 | |
| Thomson West | | PO Box 6292 | | | Carol Stream | IL | 60197-6292 | |
| Thornton-Tomasetti Group, Inc. | | PO Box 826203 | | | Philadelphia | PA | 19182-6203 | |
| Throckmorton, Michael | | Address on File | | | | | | |
| Thuzio, Inc. | | 267 Fifth Avenue | Seventh Floor | | New York | NY | 10016 | |
| TIAMPO, SAUKOK | | Address on File | | | | | | |
| TIBCO Software, Inc. | | Lockbox No 7514 | PO Box 7247 | | Philadelphia | PA | 19170-7514 | |
| Tiffs Treats | | Address on File | | | | | | |
| Tim Dalton | | Address on File | | | | | | |
| TIM LAWLER | | Address on File | | | | | | |
| Tim Symington | | Address on File | | | | | | |
| Timber Mart-South | Center for Forest Business | Daniel B. Warnell School of Forestry | The University of Georgia | | Athens | GA | 30602-2152 | |
| Timberhorn, LLC | | 127 W Worthington Ave Ste 100 | | | Charlotte | NC | 28203-0064 | |
| Time Value Software | | 22 Mauchly | | | Irvine | CA | 92618 | |

Appx. 00427
001817

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 154 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| TIME WARNER CABLE | | PO BOX 9227 | | | Uniondale | NY | 11555-9227 | |
| TIME WARNER CABLE | | Box 223085 | | | Pittsburgh | PA | 15251-2085 | |
| TIME WARNER CABLE | | PO BOX 742663 | | | CINCINNATI | OH | 45274-2663 | |
| TIME WARNER CABLE | | PO Box 742633 | | | Cincinnati | OH | 45274-2663 | |
| TIME WARNER CABLE | | PO Box 650063 | | | Dallas | TX | 75265-0063 | |
| TIME WARNER CABLE | | PO BOX 650210 | | | Dallas | TX | 75265-0210 | |
| TIME WARNER CABLE | | PO Box 60074 | | | City of Industry | CA | 91716-0074 | |
| Time, Inc. | | PO Box 60001 | | | Tampa | FL | 33660-0001 | |
| Times Square Tower Associates LLC | | 800 Boylston Street | Suite 1900 | | Boston | MA | 02199 | |
| Times Square Tower Associates LLC | | PO Box 415917 | | | Boston | MA | 0241-5917 | |
| Timothy Brice | | Address on File | | | | | | |
| Timothy Hotchandani | | Address on File | | | | | | |
| Timothy Lawler | | Address on File | | | | | | |
| Timothy Leung | | Address on File | | | | | | |
| Timothy Spring | | Address on File | | | | | | |
| TIPS,LLC | | Department 34932 | PO Box 39000 | | San Francisco | CA | 94139 | |
| TIPS,LLC | | File 30578 | PO Box 60000 | | San Francisco | CA | 94160 | |
| Title Partners, LLC | | 5501 LBJ Freeway | Ste 200 | | Dallas | TX | 75240 | |
| TLK Networks | | PO Box 202286 | | | Arlington | TX | 76006 | |
| TMC Communications, LLC | | 245 Park Ave, 24th Flr | | | New York | NY | 10167 | |
| TMF Group | | 400 Capability Green | | | Luton | | LU1 3AE | United Kingdom |
| TNT INTERNATIONAL | | PO BOX 186 | RAMSBOTTOM | | BURY | | BL09GR | United Kingdom |
| Tobias Lewis | | Address on File | | | | | | |
| TOBY FELDMAN INC. | | ONE PENN PLAZA | | | New York | NY | 10119 | |
| Todd A. Travers | | Address on File | | | | | | |
| Todd Blatterman | | Address on File | | | | | | |
| Todd Travers | c/o Jason P. Kathman | Pronske & Kathman, P.C. | 2701 Dallas Parkway, Suite 590 | | Plano | TX | 75093 | |
| Todd Travers | | Address on File | | | | | | |
| Toly Novik | | Address on File | | | | | | |
| TOM BEACH | | Address on File | | | | | | |
| TOM LOVELL | | Address on File | | | | | | |
| Tom Rigatti | | Address on File | | | | | | |
| Tomasino, Matthew | | Address on File | | | | | | |
| TOMLIN, WILLIAM | | Address on File | | | | | | |
| Tony Zaffaro | | Address on File | | | | | | |
| Total Alternatives | | PO Box 5018 | | | Brentwood | TN | 37024 | |
| Total Uptime Tech | | Post Office Box 2228 | | | Skyland | NC | 28776-0000 | |
| Touchstone Securities, Inc | | 303 Broadway | Suite 1100 | | Cincinnati | OH | 45202-4203 | |
| TOUDOUZE, KENNETH | | Address on File | | | | | | |
| Towers Watson | | PO Box 8500 | S-6110 | | Philadelphia | PA | 19178-6110 | |
| TPAC | | 920 Tyne Blvd | | | Nashville | TN | 37220 | |
| TQ ESI, LLC | | 400 N. St Paul | STE 1230 | | Dallas | TX | 75201 | |
| Tracey Ivey | | Address on File | | | | | | |
| TradeStation Securities, Inc. | Attn Account Department | 8050 SW 10th St -- Ste 2000 | | | Plantation | FL | 33324 | |
| TRAHAN, MICHAEL | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

Appx. 00428
001812

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| TransPerfect Legal Solutions | Attn Accounts Receivable | 1250 Broadway Fl 7 | STE 600W | | New York | NY | 10001-3749 | |
| TRANSWESTERN | | 5001 SPRING VALLEY RD | | | Dallas | TX | 75244 | |
| TRANTHAM, AUSTIN | | Address on File | | | | | | |
| Travel Search Network | | 8111 LBJ Freeway # 550 | | | Dallas | TX | 75251 | |
| TRAVERS, TODD | | Address on File | | | | | | |
| Travis Kruger | | Address on File | | | | | | |
| TRC | | PO Box 536282 | | | Pittsburgh | PA | 15253-5904 | |
| TRC Consultants, LC | | 120 Diefert Ave | Suite 100 | | Boerne | TX | 78006 | |
| Treasurer of State of Vermont | | Securities Division | 89 Main Street, 2nd Floor, Drawer 20 | | Montpelier | VT | 05620 | |
| Treasurer of Virginia | | Virginia State Corporation Commission | 1300 East Main Street, 9th Floor | | Richmond | VA | 23219 | |
| Treasurer, State of Connecticut | | Securities & Business Investment Div | 260 Constitution Plaza | | Hartford | CT | 06103 | |
| Treasurer, State of Maine | | Office of Securities | 76 Northern Avenue | | Gardiner | ME | 04345 | |
| TREASURY OF THE UNITED STATES | Austin Campus Disclosure Office | Stop 7000-AUSC | PO Box 2986 | | Austin | TX | 78768 | |
| TREASURY OF THE UNITED STATES | INTERNAL REVENUE SERVICE | 3651 SOUTH IH-35, MS 7000AUSC | DISCLOSURE OFFICE | | Austin | TX | 78741 | |
| TREMOR, LAUREN E. | | Address on File | | | | | | |
| Trend Macrolytics LLC | | 680 N. Lake Shore Drive | #1412 | | Chicago | IL | 60611 | |
| Trenkner, Jamie | | Address on File | | | | | | |
| Trepp, LLC | | 477 Madison Ave 18th Flr | | | New York | NY | 10022 | |
| Triad Security Systems | | 971 Lehigh Avenue | | | Union | NJ | 07083 | |
| Trial Arts Professional Copy Service | | 1500 Dragon St, Ste C | | | Dallas | TX | 75207 | |
| Tricor Evatthouse Corporate Services | | 8 Cross Street | #11-00 PWC Building | | Singapore | | 048424 | SINGAPORE |
| Tricor Singapore Pte Ltd | | 8 Cross Street | #11-00 PWC Building | | Singapore | | 048424 | SINGAPORE |
| Trinity River Mission | | 2060 Singleton Blvd, Ste 104 | Suite 320 | | Dallas | TX | 75212 | |
| Triple Threat Cowboy | | 1430 Regal Row | | | Dallas | TX | 75247 | |
| TRI-RIVER CAPITAL | C/O BEUTEL & JOYCE, LP | ATTN MILTON WALTERS | 555 FIFTH AVE - 15TH FLR | | New York | NY | 10017 | |
| Tritech Communications, Inc. | | 625 Locust St. | | | Garden City | NY | 11530 | |
| Troutman Sanders LLP | | P.O. Box 933652 | | | Atlanta | GA | 31193-3652 | |
| TROY BARNETTE | | Address on File | | | | | | |
| Trump International Hotel & Tower CH | | 401 North Wabash Ave | | | Chicago | IL | 60611 | |
| Trussway Holdings, Inc. | Kendall Hoyd | 9411 Alcorn | | | Houston | TX | 77093-6753 | |
| Trussway Holdings, LLC | | 7001 Enterprise Ave | | | Fort Worth | TX | 76118 | |
| Trustees of Boston University | | 1 Silber Way | | | Boston | MA | 02215 | |
| Trustwave | | 70 W Madison St | Ste. 1050 | | Chicago | IL | 60602 | |
| TSCM AMERICA | | PO Box 6743 | | | McKinney | TX | 75071 | |
| TSCPA | | PO Box 797488 | | | Dallas | TX | 75379 | |
| TSG Reporting, Inc | | 747 Third Ave, Suite 10A | | | New York | NY | 10017 | |
| TSX INC | | The Exchange Tower | PO Box 421, 130 King Street West | | Toronto | ON | M5X 1E1 | CANADA |
| TTA Research & Guidance | | PO Box 71687 | | | Chicago | IL | 60694 | |
| Tuan Olona, LLP | | One Rockefeller Plaza | Eleventh Floor | | New York | NY | 10020 | |
| Turf Scapes | | 368 National Drive | | | Rockwall | TX | 75032-6531 | |

App. 00429
001813

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 156 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Turing Experts | | Birchin Court | 20 Birchin Lane | | London | | EC3V 9DU | United Kingdom |
| Turtle Bay Resort | | 57-091 Kamehameha Highway | | | Kahuku | HI | 96731 | |
| TW Telecom Holdings, llc | Attn Finance Department | PO Box 910182 | | | Denver | CO | 80291-0182 | |
| Twenty-First Securities Corporation | | 780 Third Avenue | 24th Floor | | New York | NY | 10017 | |
| TXU ENERGY | | PO BOX 650638 | | | Dallas | TX | 75265-0638 | |
| TXU ENERGY | | PO BOX 660409 | | | Dallas | TX | 75266-0409 | |
| Tyco Integrated Security | | PO Box 371967 | | | Pittsburg | PA | 15250-7967 | |
| Tyler Kemp | | Address on File | | | | | | |
| TYRA GILB TRUST | | 325M SHARON PARK DR #207 | | | Menlo Park | CA | 94025-6804 | |
| U.D.S.TX, LLC | | 1401 Elm, Suite 4567 | | | Dallas | TX | 75202 | |
| U.S. - Japan Council | Attn Dana Fager, Develop. Coordinator | 1819 L Street, NW, Suite 800 | | | Washington | DC | 20036 | |
| U.S. Bancorp Equipment Finance, Inc. | | PO Box 790448 | | | Saint Louis | MO | 63179-0448 | |
| U.S. Bank | | CM-9690 | PO Box 70870 | | Saint Paul | MN | 55170-9690 | |
| U.S. Bank National Association | Attn CDO Unit | One Federal Street | 3rd Floor | Mail Code EX-MA-FED | Boston | MA | 02110 | |
| U.S. Fund for UNICEF | | 520 Post Oak Blvd | Suite 280 | | Houston | TX | 77027 | |
| U.S. Securities and Exchange Commission | Fort Worth Regional Office | Burnett Plaza, 19th Floor | 801 Cherry Street, Unit 18 | | Fort Worth | TX | 76102 | |
| UBS AG, London Branch | Attn Suzanne Forster, John Lantz | UBS Securities LLC, | 1285 Avenue of the Americas | | New York | NY | 10019 | |
| UBS AG, London Branch | Jeffrey E. Bjork, Kimberly A. Posin | Latham & Watkins LLP | 355 South Grand Avenue, Ste. 100 | | Los Angeles | CA | 90071 | |
| UBS AG, London Branch | Latham and Watkins LLP | Asif Attarwala | 330 North Wabash Ave. Suite 2800 | | Chicago | IL | 60611 | |
| UBS AG, London Branch | Latham and Watkins LLP | Andrew Clubok, Sarah Tomkowiak | 555 Eleventh Street, NW, Suite 1000 | | Washington | DC | 20004-1304 | |
| UBS AG, London Branch | UBS Securities LLC | Attn Suzanne Forster, John Lantz | 1285 Avenue of the Americas | | New York | NY | 10019 | |
| UBS AG, London Branch UBS Securities LLC | | Latham & Watkins LLP | 555 Eleventh Street NW Suite 1000 | | Washington | DC | 20004 | |
| UBS Securities LLC | | 1285 Avenue of the Americas | | | New York | NY | 10019 | |
| UBS Securities LLC | c/o Andrew Clubok | Latham & Watkins LLP | 555 11th Street NW #1000 | | Washington | DC | 20004 | |
| UBS Securities LLC | Jeffrey E. Bjork, Kimberly A. Posin | Latham & Watkins LLP | 355 South Grand Avenue, Ste. 100 | | Los Angeles | CA | 90071 | |
| UBS Securities LLC | Latham and Watkins LLP | Asif Attarwala | 330 North Wabash Ave. Suite 2800 | | Chicago | IL | 60611 | |
| UCG | | 11300 Rockville Pike | Ste 1100 | | Rockville | MD | 20852-3030 | |
| Uchi Dallas, LLC | | 701 S. Lamar Blvd | Suite C | | Austin | TX | 78704 | |
| UDAI DHAWAN | | 28 SPRAIN VALLEY RD | | | Scarsdale | NY | 10583 | |
| UERMMMC-MAAAI | Dr. Audrey Coo, Treasurer | PO Box 2153 | | | Bedford Park | IL | 60499-2153 | |
| Ulf Nofelt | | Address on File | | | | | | |
| Ulicny, Inc. | | 92 Amity Drive | | | Wayne | PA | 19087 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 144 of 155

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 157 of
175
Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Umari Zugaro, PLLC | Basil A. Umari | 1403 Eberhard | | | Houston | TX | 77019 | |
| UMB Bank, N.A. | Attn Trust Fees Dept | PO Box 414589 | | | Kansas City | MO | 64141-4589 | |
| UNICOM TECHNOLOGIES, INC | | 1011 HWY 6 S | STE 200 | | Houston | TX | 77077 | |
| Unimerica Insurance Company | Administrative Office | 6300 Olson Memorial Highway | | | Golden Valley | MN | 55427 | |
| Unishippers | | 800 W Airport Fwy Ste 611 LB 6065 | | | Irving | TX | 75062 | |
| Unishippers | | 800 W Airport FWY Ste 611 LB 6065 | | | Irving | TX | 75062-6294 | |
| United American Reporting Services | | 1201 Elm Street | Suite 5220 | | Dallas | TX | 75270 | |
| United Capital | | 5655 S. Yosemite St. | Suite 450 | | Greenwood Village | CO | 80111 | |
| United Carpet Cleaning Systems, Inc. | | PO Box 1625 | | | Hurst | TX | 76053 | |
| UNITED HEALTHCARE INSURANCE COMPANY | ATTN LISA CARRILLO | 5800 GRANITE PKWY, STE 700 | | | Plano | TX | 75024 | |
| UNITED HEALTHCARE INSURANCE COMPANY | | 22561 NETWORK PLACE | | | Chicago | IL | 60673-1225 | |
| United Mechanical | | 11540 Plano Road | PO Box 551206 | | Dallas | TX | 75355-1206 | |
| United Parcel Service, Inc | | 55 Glenlake Parkway | | | Atlanta | GA | 30328-0000 | |
| United States Treasury | | INTERNAL REVENUE SVC | PO BOX 69 | | Memphis | TN | 38101-0069 | |
| United States Treasury | | INTERNAL REVENUE SERVICE | | | Cincinnati | OH | 45999-0039 | |
| United States Treasury | | INTERNAL REVENUE SERVICE | | | Kansas City | MO | 64999-0202 | |
| United States Treasury | | STOP 5107 NWSAT | 4050 ALPHA RD | | Farmers Branch | TX | 75244-4201 | |
| United States Treasury | | PO Box 660443 | | | Dallas | TX | 75266-0443 | |
| United States Treasury | | INTERNAL REVENUE SERVICE | | | Ogden | UT | 84201-0039 | |
| UNITED VAN LINES | | ONE UNITED DRIVE | | | Fenton | MO | 63026-1350 | |
| United Way of Mass. Bay & Merrimack Vlly | Attn A/R- Barbara Alexander | PO Box 51381 | | | Boston | MA | 02205-1381 | |
| Universal Printing Solutions, Inc. | | 10573 West Pico Blvd. #610 | | | Los Angeles | CA | 90064-2438 | |
| University of Michigan | c/o Matching Gifts | 3003 S. State Street, Suite 8000 | | | Ann Arbor | MI | 48109-1288 | |
| University of Pennsylvania | | 433 Franklin Building | 3451 Walnut Street | | Philadelphia | PA | 19104-6285 | |
| University Prk Sch ParentTeacher Assoc | | 3505 Amherst | | | Dallas | TX | 75225 | |
| Unum Life Insurance Company of America | | PO BOX 406834 | | | Atlanta | GA | 30384-6834 | |
| Unum Life Insurance Company of America | | PO Box 409548 | | | Atlanta | GA | 30384-9548 | |
| Update Legal | | 1140 Avenue of the Americas | | | New York | NY | 10036 | |
| Uplift Education | c/o David Jackson | 1825 Market Center Blvd, Ste 500 | | | Dallas | TX | 75207 | |
| UPMC HEALTH SYSTEM PENSION TRUST | | 1 MELLON BANK CTR | | | Pittsburgh | PA | 15258 | |

Highland Capital Management, L.P.
Case No. 19-34054

Appx. 00431
001815

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 158 of
175
Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| UPS Freight | | PO Box 730900 | | | Dallas | TX | 75373-0900 | |
| UPS Supply Chain Solutions | | PO BOX 7247-0244 | | | Philadelphia | PA | 19170-0001 | |
| UPS Supply Chain Solutions | | 28013 Network Place | | | Chicago | IL | 60673-1280 | |
| UPS Supply Chain Solutions | | PO Box 730900 | | | Dallas | TX | 75373-0900 | |
| UpSwing Performance Improvement, Inc. | | PO Box 738 | | | Manchester | MO | 63011 | |
| Uptown Energy Partners | | 2602 McKinney Ave | Suite 330 | | Dallas | TX | 75204 | |
| Urano, Cameron | | Address on File | | | | | | |
| URBAN, ASHLEY | | Address on File | | | | | | |
| URBAN, JOHN | | Address on File | | | | | | |
| URBANIC, MATTHEW | | Address on File | | | | | | |
| URECH, DANIELLE | | Address on File | | | | | | |
| URS CORPORATION | | PO BOX 121028 | DEPT 1028 | | Dallas | TX | 75312-1028 | |
| US Attorneys Office for the Northern District of Texas | Erin Nearly Cox, Donna K. Webb | 1100 Commerce St. Suite 300 | | | Dallas | TX | 75242 | |
| US Bank | | 1555 N Rivercenter Dr, Ste 302 | | | Milwaukee | WI | 53212 | |
| US BANK NA | ATTN THOMAS BELCHER | ONE FEDERAL STREET | THIRD FLOOR | | Boston | MA | 02110 | |
| US Foods, Inc. | | Box 843202 | | | Dallas | TX | 75284-3202 | |
| US Legal Support | | Texas Records & Reporting | PO BOX 952172 | | Dallas | TX | 75395-2172 | |
| US Legal Support | | Chicago, IL Reporting | PO Box 4772-11 | | Houston | TX | 77210-4772 | |
| US Markets | | 10 W. 37th St | 7th FL | | New York | NY | 10018 | |
| US Policy Metrics LLC | | 2001 K St NW Fl 8-11 | | | Washington | DC | 20006-1042 | |
| US Postage Meter Center | | PO Box 800848 | | | Santa Clarita | CA | 91380 | |
| US Securities & Exchange Commission | FOIA Officer & Privacy Act Officer | 100 F Street, NE | Mail Stop 2736 | | WASHINGTON | DC | 20549-2000 | |
| US Ski and Snowboard Team Foundation | | 1 Victory Lane | Box 100 | | Park City | UT | 84060 | |
| USA Shooting | Attn Rob Weekes | 1 Olympic Plaza | | | Colorado Springs | CO | 80909 | |
| usfi marketing communications | | 12100 Ford Rd Ste 100 | | | Dallas | TX | 75234 | |
| USTMAAM | C/O MARC VILLAFANIA | 104 BIG OAKS RD | | | STREAMWOOD | IL | 60107-1320 | |
| USW LOCAL 870 | | 94 WASHINGTON PLACE | | | Totwa | NJ | 07512 | |
| Utah Division of Securities | | Securities Division | 160 East 300 South, 2nd Floor | | Salt Lake City | UT | 84111 | |
| UTAH STATE TAX COMMISSION | | 210 N 1950 W | | | Salt Lake City | UT | 84134 | |
| Valhalla CLO, Ltd. | c/o Intertrust SPV (Cayman) Limited | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Valhalla CLO, Ltd. JPMorgan Chase Bank | JPMorgan Chase Bank | 390 Greenwich Street, 4th Floor | Institutional Trust Services | Valhalla CLO, Ltd. | New York | NY | 10013 | |
| Valhalla CLO, Ltd. JPMorgan Chase Bank | Valhalla CLO, Ltd. c/o Walkers SPV Limited | Walker House, PO Box 908GT, Mary Street | George Town, Grand Cayman | The Directors | Grand Cayman | | | Cayman Islands |
| VALIANT MEDIA | | 3116-D COMMERCE ST | | | Dallas | TX | 75226 | |
| Validity, Inc. | | 200 Clarendon St | 22nd Floor | | Boston | MA | 02116 | |
| Value Line Publishing | ATTN Matt Jamison | Value Line Publishing, Inc | 220 East 42nd Street 6th floor | | New York | NY | 10017 | |
| ValueScope, Inc. | | 1400 Thetford Ct. | | | Southlake | TX | 76092 | |
| VAN HOEF, ASHLEY | | Address on File | | | | | | |
| VANACOUR, JASON | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 146 of 155

Appx. 00432
001816

Case 22-03052-sgj   Doc 21   Filed 05/27/22   Entered 05/27/22 15:12:46   Desc Main
Case 3:22-cv-02280-S   Document 10   Filed 10/12/22   Page 41 of 241   PageID 1943
Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 159 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Vanessa Sea | | Address on File | | | | | | |
| Vanguard Brokerage Services | Attn Securities Receipt & Transfer | PO Box 1170 | | | Valley Forge | PA | 19482-1170 | |
| Vector One Management | | 113 E 55th St | | | New York | NY | 10022 | |
| Vela Wood PC | Attention Kevin Vela | 5307 E. Mockingbird Lane, Suite 802 | | | Dallas | TX | 75206 | |
| Venable LLP | | PO Box 630798 | | | Baltimore | MD | 21263-0798 | |
| Venable LLP | | PO Box 62727 | | | Baltimore | MD | 21264-2727 | |
| Vengroff Williams, Inc c/o American Arbitration Association | Vengroff Williams, Inc c/o American Arbitration | 2211 Fruitville Rd | | | Sarasota | FL | 34237 | |
| Venture Mechanical, Inc. | | 1644 W Crosby Rd | | | Carrollton | TX | 75006-6628 | |
| Veritas Backup Exec | | 2625 Augustine Drive | | | Santa Clara | CA | 95054-0000 | |
| Veritas Enterprise Vault | | 2625 Augustine Drive | | | Santa Clara | CA | 95054-0000 | |
| Veritas Software Global LLC | | PO Box 60000 | | | San Francisco | CA | 94160-3667 | |
| Veritext Corp. | | 3090 Bristol Street | Suite 190 | | Costa Mesa | CA | 92626 | |
| Veritext Los Angelos Reporting Co | | 3090 Bristol St | Suite 190 | | Costa Mesa | CA | 92626 | |
| Veritext Mid-Atlantic | | 1801 Market Street | Suite 1800 | | Philadelphia | PA | 19103 | |
| Veritext New York Reporting Co | | 330 Old Country Rd | Suite 300 | | Mineola | NY | 11501 | |
| Veritext New York Reporting Co | | PO Box 71303 | | | Chicago | IL | 60694-1303 | |
| Verity Group | | 885 E Collins Blvd | Ste. 102 | | Richardson | TX | 75081-0000 | |
| Verity Group | | PO Box 940361 | | | Plano | TX | 75094-0361 | |
| VERIZON | | PO BOX 15124 | | | Albany | NY | 12212-5124 | |
| VERIZON | | PO BOX 1100 | | | Albany | NY | 12250-0001 | |
| Verizon Wireless | | PO Box 489 | | | Newark | NJ | 07101-0489 | |
| Verizon Wireless | | PO Box 790406 | | | Saint Louis | MO | 63179-0406 | |
| Verizon Wireless | | PO Box 660108 | | | Dallas | TX | 75266-0108 | |
| Verizon Wireless | | PO Box 4001 | | | Inglewood | CA | 90313-4001 | |
| Vermont Department of Taxes | | PO Box 588 | | | Montpelier | VT | 05601 | |
| Vermont Dept of Financial Regulation | | Dept of Banking, Insurance & Securities | 89 Main Street, 2nd Floor, Drawer 20 | | Montpelier | VT | 05620 | |
| Verrill Dana LLP | | One Portland Square | P.O. Box 586 | | Portland | ME | 04112 | |
| VFG Securities, Inc. | Attn Jana Oledzki | 100 Corporate Pointe | Suite 382 | | Culver City | CA | 90230-7612 | |
| ViaWest, Inc. | Attn John Greenwood | 1200 17th Street, Suite 1150 | | | Denver | CO | 80202 | |
| ViaWest, Inc. | | PO Box 732368 | | | Dallas | TX | 75373-2368 | |
| ViaWest, Inc. | | PO Box 912362 | | | Denver | CO | 80291-2362 | |
| Vibrancy21 | | 1133 South Clinton Street | | | Baltimore | MD | 21224 | |
| Vickery Meadow Learning Center | | 6329 Ridgecrest | | | Dallas | TX | 75231 | |
| Victor Chang | | Address on File | | | | | | |
| Victor Chong | | Address on File | | | | | | |
| Vigilant Resources | | 45 Rockefeller Plaza, 20th Floor | | | New York | NY | 10111 | |
| VILLA VERONA, LTD | | 13330 NOEL RD | | | Dallas | TX | 75240 | |
| Village on the Green | | 5301 Alpha Road, Suite 44 | | | Dallas | TX | 75240 | |
| Vin Thompson | | Address on File | | | | | | |

App. 00432
001817

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Vincent Lopez Serafino & Jenevein, PC | | 2001 Bryan St | Suite 2000 | | Dallas | TX | 75201 | |
| VINSON & ELKINS, LLP | | A1001 FANNIN ST, STE 2300 | FIRST CITY TOWER | | Houston | TX | 77002-6760 | |
| Vintage Filings | | 350 Hudson Street, Suite 300 | | | New York | NY | 10014 | |
| Vintage Filings | | 350 Hudson Street | Suite 300 | | New York | NY | 10014 | |
| Vintage Filings | | PO Box 30719 | | | New York | NY | 10087-0719 | |
| Vira, Sagar | | Address on File | | | | | | |
| VIRGINIA DEPARTMENT OF TAXATION | | PO BOX 1500 | | | Richmond | VA | 23218-1500 | |
| VIRGINIA DEPARTMENT OF TAXATION | | PO BOX 1777 | | | Richmond | VA | 23218-1777 | |
| Virginia Retirement System | Attn Control | PO Box 361 | | | Richmond | VA | 23218 | |
| Virginia Retirement Systems | Attn Control | PO Box 361 | | | Richmond | VA | 23218 | |
| Vishnu Gogineni | | Address on File | | | | | | |
| Visix, Inc. | | 230 Scientific Drive | Suite 800 | | Norcross | GA | 30092 | |
| Vitae Search Group, LLC | | 6009 Mariposa Drive | | | McKinney | TX | 75070 | |
| Vitiello, Stephanie | | Address on File | | | | | | |
| Vlahakis, Eleni | | Address on File | | | | | | |
| VODAFONE | | PO BOX 549 | | | London | | OX17 3ZJ | United Kingdom |
| Vogel Alcove | | 200 Crescent Court | Ste 300 | | Dallas | TX | 75201 | |
| Voice of Hope | Attn Ruth Hardesty | PO Box 224845 | | | Dallas | TX | 75222-4845 | |
| Volunteers for Youth, Inc. | | 205 Lloyd Street | Suite 103 | | Carrboro | NC | 27510 | |
| Voya Financial Advisors | Attn Adriana Mardarie Gagov | 909 Locust Street | | | Des Moines | IA | 50309 | |
| Voya Financial Advisors | | 5780 Powers Ferry Road, NW | | | Atlanta | GA | 30327 | |
| VSI Solutions | | 203 Dumont ct | | | Fairview | TX | 75069 | |
| VTB Capital plc | | 14 Cornhill | | | London | | EC3V3ND | United Kingdom |
| W San Diego | | 421 West B St | | | San Diego | CA | 92101 | |
| W. Andrew Hodge Consulting, PA | | PO Box 11417 | | | Glendale | AZ | 85318 | |
| W.B. Mason Co., Inc. | | 59 Centre St | | | Brockton | MA | 02301 | |
| Wachovia Insurance Services | | 5956 Sherry Lane | Suite 2000 | | Dallas | TX | 75225-6531 | |
| Wachovia Secuities LLC | | Relationship Management Group-MO1400 | 1 North Jefferson St | | Saint Louis | MO | 63103 | |
| Wachtell, Lipton, Rosen & Katz | | 51 West 52nd Street | | | New York | NY | 10019 | |
| Wagner, Grace | | Address on File | | | | | | |
| Wake2O | | Rue du Mont Blanc 3 | | | Geneva | | 01201 | SWITZERLAND |
| Wakefield Quinn | | Victoria Place | 31 Victoria St | | Hamilton | | 0HM10 | Bermuda |
| Wakefield Quinn | | PO BOX HM 809 | | | Hamilton | | 0HMCX | BERMUDA |
| Walek & Associates, Inc. | | 317 Madison Avenue Suite 2300 | | | New York | NY | 10017 | |
| WALIA, AMIT | | Address on File | | | | | | |
| Walker Dunlop | | Address on File | | | | | | |
| Walker Kobelan | | Address on File | | | | | | |

Case 22-03052-sgj  Doc 21  Filed 05/27/22  Entered 05/27/22 15:12:46  Desc Main
Case 3:22-cv-02280-S  Document 10  Filed 12/09/22  Page 43 of 241  PageID 1945
Case 19-34054-sgj11  Doc 2747  Filed 08/19/21  Entered 08/19/21 16:03:15  Page 161 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Walkers | | PO Box 265GT, Walker House | 87 Mry Street | | George Town | | KY1-9001 | Cayman Islands |
| Walkers - Ireland | | The Exchange, Georges Dock, IFSC | | | Dublin | | 1 | Ireland |
| Walkers Fund Services Limited | c/o Intertrust Cayman | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Wall Street Tax Association | c/o OConnor Davies Munns & Dobbins LLP | 60 East 42nd Street | | | New York | NY | 10165 | |
| WALLS, DAVID | | Address on File | | | | | | |
| WALTER JARMAN | | Address on File | | | | | | |
| WAN, QIAN | | Address on File | | | | | | |
| WANG, ALICE | | Address on File | | | | | | |
| WANG, CHEN-HAN | | Address on File | | | | | | |
| Wang, Ruozhou | | Address on File | | | | | | |
| Warehouse Store Fixture Co. | | 84 Progress Lane | | | Waterbury | CT | 06705 | |
| Warner Stevens LLP | | 1700 City Center Tower II | 301 Commerce Street | | Fort Worth | TX | 76102 | |
| Warren Posner | | Address on File | | | | | | |
| Washington Speakers Bureau Inc. | | 1663 Prince Street | | | Alexandria | VA | 22314 | |
| Washington State Treasurer | | WA Dept of Finan Inst. Securities Div | 150 Israel Road SW | | Tumwater | WA | 98501 | |
| Waterhouse, Frank | Ross & Smith, PC | Plaza of the Americas | 700 N Pearl Street, Suite 1610 | | Dallas | TX | 75201 | |
| WATERHOUSE, FRANK | | Address on File | | | | | | |
| Waterview Advisors | | 14800 Quorum Dr Ste 450 | | | Dallas | TX | 75254-7531 | |
| Watson Wyatt & Co | | PO Box 277665 | | | Atlanta | GA | 30384 | |
| WATSON, ERIN | | Address on File | | | | | | |
| Watts, Andrew | | Address on File | | | | | | |
| WATTS, KEITH R | | Address on File | | | | | | |
| Wayne Bell | | Address on File | | | | | | |
| WC 4641 Production, LLC | C/o Great Value Storage | 4641 Production Drive | | | Dallas | TX | 75235 | |
| WCDABG | Attn Sharon Popham, Reservations Chair | 3 Carmarthen Court | | | Dallas | TX | 75225 | |
| Wealthforge Securities, LLC | | 6800 Paragon Place | Ste 200 | | Richmond | VA | 23230 | |
| Wealthmaster Group, LLC | | 18881 Von Karman Ave | Suite 720 | | Irvine | CA | 92612 | |
| Weatherly, Brian | | Address on File | | | | | | |
| Weaver and Tidwell, LLP | | 2821 West 7th Street | Suite 700 | | Fort Worth | TX | 76107 | |
| Webb, Justin | | Address on File | | | | | | |
| WebsiteBackup Company | | 2375 E. Camelback Rd | Suite 600 | | Phoenix | AZ | 85016 | |
| WEBSTER, GREGORY W | | Address on File | | | | | | |
| WEIJUN ZANG | | Address on File | | | | | | |
| Weinstein, Clower & Associates | | PO Box 795001 | | | Dallas | TX | 75379 | |
| Welch Consulting Ltd | | 1716 Briarcrest Drive #700 | | | Bryan | TX | 77802-2760 | |
| Wells Fargo Advisors FBO Bezilla | Attn Alan Kinney | 200 Stephenson Ave, Suite 301 | | | Savannah | GA | 31405 | |
| Wells Fargo Advisors, LLC | Attn Andrew Black | 280 Park Avenue, FL 29W | | | New York | NY | 10017 | |
| Wells Fargo Advisors, LLC | Attn April Johnson | 10900 Wilshire Blvd, 11th Floor | | | Los Angeles | CA | 90024 | |

App. 00435
001819

Exhibit C
Creditor Matrix
Served via First Class Mail

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 162 of 175

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Wells Fargo Advisors, LLC | Attn Dan Racicot WF - Finet | 4275 Executive Square, Ste 910 | | | La Jolla | CA | 92037 | |
| Wells Fargo Advisors, LLC | Attn Denise Bare | 9665 Wilshire Blvd, Ste 100 | | | Beverly Hills | CA | 90212 | |
| Wells Fargo Advisors, LLC | Attn Greg Shumaker | 700 Ackerman Rd., Ste 400 | | | Columbus | OH | 43202 | |
| Wells Fargo Advisors, LLC | Attn Kathy Buckley | 6060 South American Plaza St East | | | Tulsa | OK | 74135 | |
| Wells Fargo Advisors, LLC | Attn Kevin Dailey | 100 East Wisconsin Ave, 12th Floor | | | Milwaukee | WI | 53202 | |
| Wells Fargo Advisors, LLC | Attn Mike McChesney | 2500 Legacy Dr., Ste 200 | | | Frisco | TX | 75034 | |
| Wells Fargo Advisors, LLC | Attn Nicole Stenquist | 450 Post Road East | | | Westport | CT | 06880 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 20 William Street, Ste 300 | | | Wellesley | MA | 02481 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 331 Newman Springs Rd, Ste 230 | | | Red Bank | NJ | 07701 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 222 East Main St, Ste 106 | | | Smithtown | NY | 11787 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 13621 University Ave | | | Clive | IA | 50325 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 909 Fannin St, Suite 1200 | | | Houston | TX | 77010 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 1200 17th St, Ste 2000 | | | Denver | CO | 80202 | |
| Wells Fargo Advisors, LLC | Attn Operations Mgr Garner Mabry | 6400 South Fiddlers Green Cir, Ste 1840 | | | Greenwood Village | CO | 80111 | |
| Wells Fargo Advisors, LLC | Attn Paula Curry, Control Specialist | 2 International Place, 20th Fl | | | Boston | MA | 02110 | |
| Wells Fargo Advisors, LLC | Attn Rita Borchers | 7400 West 130th St, Ste 200 | | | Overland Park | KS | 66213 | |
| Wells Fargo Advisors, LLC | Attn Tracy Lusk | 8115 Preston Rd, Suite 300 | | | Dallas | TX | 75225 | |
| Wells Fargo Advisors, LLC | Attn Web Wang | 5820 Canoga Ave, #100 | | | Woodland Hills | CA | 91367 | |
| Wells Fargo Advisors, LLC | c/o David Elfenbein | 1211 Avenue of the Americas, 27th Flr | | | New York | NY | 10036 | |
| Wells Fargo Advisors, LLC | c/o Hefter Leshem Margolis | 500 Lake Cook Rd, Ste 100 | | | Deerfield | IL | 60015 | |
| Wells Fargo Advisors, LLC | c/o Shannon Walker | 695 E. Arlington Blvd., Ste 201 | Suite 301 | | Greenville | NC | 27858 | |
| Wells Fargo Advisors, LLC | | 180 Glastonbury Blvd | | | Glastonbury | CT | 06033 | |
| Wells Fargo Advisors, LLC | | 1 North Jefferson Ave. | | | Saint Louis | MO | 63103 | |
| Wells Fargo Advisors, LLC | | 3501 W Rosemont Ave | | | Chicago | IL | 60659-2207 | |
| Westwood | | 10900 Wilshire Blvd | 11th Floor | | Los Angeles | CA | 90024 | |
| WELLS FARGO BANK | | WF 8113 | PO BOX 1450 | | Minneapolis | MN | 55485-8113 | |
| Wemple, Stefanie | | Address on File | | | | | | |
| WEN, JING | | Address on File | | | | | | |
| WENDELL, MORTON | | Address on File | | | | | | |
| Wendy Harper | | Address on File | | | | | | |
| WENTWORTH, KEVIN J. | | Address on File | | | | | | |
| Wesley Golie | | Address on File | | | | | | |
| West Court Reporting Services | | West Payment Center | P.O. Box 6292 | | Carol Stream | IL | 60197-6292 | |
| West Payment Center | | PO Box 6292 | | | Carol Stream | IL | 60197-6292 | |
| West Publishing Corporation | | P.O. Box 12421 | | | Newark | NJ | 07101 | |
| West Virginia State Auditor Office | Securities Division | 1900 Kanawha Blvd. E | State Capital Building 1, Room W-100 | | Charleston | WV | 25305-0230 | |
| Westchester CLO, Ltd. | The Directors | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |

Highland Capital Management, L.P.
Case No. 19-34054

Page 150 of 155

Case 22-03052-sgj Doc 21 Filed 05/27/22 Entered 05/27/22 15:12:46 Desc Main
Case 3:22-cv-02280-S Document 10 Filed 10/12/22 Page 45 of 241 PageID 1947
Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 163 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Westchester CLO, Ltd. | | | Queensgate House, South Church Street | The Directors | George Town | | | Cayman Islands |
| Westchester CLO, Ltd. | | P.O. Box 1093GT | | | | | | |
| Investors Bank & Trust Company | Investors Bank & Trust Company | 200 Clarendon Street | COO Services Group Ref Westchester CLO, Ltd. | | Boston | MA | 02116 | |
| Western International Securities, Inc. | | 70 S. Lake Ave | Ste 700 | | Pasadena | CA | 91101 | |
| Westley McGeoghegan | | 49 Chetwynd Road | | | Somerville | MA | 02144 | |
| WESTMINSTER CITY COUNCIL | | PO BOX 397 | | | London | | WA55 1GG | United Kingdom |
| WestPark Capital, Inc. | | 1900 Avenue of the Stars | Suite 310 | | Los Angeles | CA | 90067 | |
| Westwood Professional Services, Inc. | | 7699 Anagram Drive | | | Eden Prairie | MN | 55334 | |
| WHARF, PAUL | | Address on File | | | | | | |
| WHARF, PAUL C. | | Address on File | | | | | | |
| Whatley, David | | Address on File | | | | | | |
| WHERRY, SHANNON M. | | Address on File | | | | | | |
| Whetstone, Laurie | | Address on File | | | | | | |
| Whitaker, Chalk, Swindler, & Sawyer | | 301 Commerce St. Suite 3500 | | | Ft. Worth | TX | 76102 | |
| White & Case LLP | | 1155 Avenue of the Americas | | | New York | NY | 10036-2787 | |
| White & Williams LLP | | 1800 One Liberty Place | | | Philadelphia | PA | 19103-7395 | |
| White, Jeremy | | Address on File | | | | | | |
| White, Kelly | | Address on File | | | | | | |
| WhiteGlove House Call Health, Inc. | | 5300 Bee Cave Rd, Bldg One | Ste 100 | | Austin | TX | 78746 | |
| WhiteGlove House Call Health, Inc. | | PO Box 845720 | | | Dallas | TX | 75284-5720 | |
| Whitehall-Parker Securities, Inc. | | 477 Pacific Ave, 2nd Floor | | | San Francisco | CA | 94133 | |
| Whitney Smith Co | | 301 Commerce St | Suite 1950 | | Fort Worth | TX | 76102 | |
| WhitneySmith Company | | 301 Commerce Street, Suite 1950 | | | Fort Worth | TX | 76102 | |
| WICK PHILLIPS LLP | | 500 North Akward Street | Suite 2100 | | Dallas | TX | 75201 | |
| Wick Phillips Gould & Martin, LLP | Jason M. Rudd, Lauren K. Drawhorn | 3131 McKinney Avenue, Suite 500 | | | Dallas | TX | 75204 | |
| Wicks Business Information | | 1375 Kings Highway East Ste 450 | | | Fairfield | CT | 06824 | |
| Wild Rose Floral Design Studio | | PO Box 541 | | | Rockwall | TX | 75087 | |
| Wild Rose Floral Design Studio | | 720 E Lamar St | | | Royse City | TX | 75189 | |
| Wientz, Goldman & Spitzer | | 90 Woodbridge Center Dr. | | | Woodbridge | NJ | 07095 | |
| Wiley, Grant | | Address on File | | | | | | |
| Wilkinson Center | Attn Andrea Jones | PO Box 720248 | | | Dallas | TX | 75372 | |
| Wilkinson Center | Attn Cathy Rosson | PO Box 720248 | | | Dallas | TX | 75372 | |
| Wilks, Lukoff & Bracegirdle, LLC | | 4250 Lancaster Pike, Suite 200 | | | Wilmington | DE | 19805 | |
| Will Pryor Mediation & Arbitration | Thad J. Bracegirdle | 5420 LBJ Frwy Ste 626 | | | Dallas | TX | 75240 | |

Appx. 00437

001821

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 12/02/2637    Page 46 of 241    PageID 1948

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 164 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| WILLIAM CORNELIUS | | Address on File | | | | | | |
| William Gosserand | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| William Ikard | | Address on File | | | | | | |
| William Keeney | | Address on File | | | | | | |
| William M. Cobb & Associates, Inc. | | 12770 Coit Rd, Ste 907 | | | Dallas | TX | 75251 | |
| William Mabry | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| William Oliveira | | Address on File | | | | | | |
| William R. Welch | | Address on File | | | | | | |
| William Todd Westerburg | | Address on File | | | | | | |
| Williams, Andrew | | Address on File | | | | | | |
| WILLIAMS, MEREDITH | | PO Box 4557 | | | New York | NY | 10249-4557 | |
| Willis of New York, Inc. | | Dallas/Ft. Worth Division | PO Box 730310 | | Dallas | TX | 75373-0310 | |
| Willis of Texas, Inc. | | PO Box 731739 | | | Dallas | TX | 75373-1739 | |
| Willis of Texas, Inc. | | 787 Seventh AvE | | | New York | NY | 10019-6099 | |
| Wilkie Farr & Gallagher LLP | | Address on File | | | | | | |
| WILLMORE, DAVID | | 3409 Rosedale Avenue | | | Dallas | TX | 75205 | |
| Willoughby McCabe Agents Co | | | | | | | | |
| WILLOUGHBY-MCCABE, PATRICK | | Address on File | | | | | | |
| Wilmer Cutler Pickering Hale and Dorr LLP | Timothy F. Silva | 60 State Street | | | Boston | MA | 02109 | |
| Wilmer Cutler Pickering Hale Dorr LLP | | 1875 Pennsylvania Avenue NW | | | Washington | DC | 20006 | |
| Wilmer Cutler Pickering Hale Dorr LLP | | PO Box 7247-8760 | | | Philadelphia | PA | 19170-8760 | |
| Wilmington Trust Company | | Rodney Square North | 1100 North Market St | | Wilmington | DE | 19890-0001 | |
| Wilshire Associates Incorporated | Attn Accounts Receivable | 1299 Ocean Avenue, Suite 700 | | | Santa Monica | CA | 90401-1085 | |
| WILSON SMITH | | Address on File | | | | | | |
| WILSON, ANDREW | | Address on File | | | | | | |
| WILSON, ANTHONY | | Address on File | | | | | | |
| Wilson, Owen | | Address on File | | | | | | |
| WILSON, SCOTT | | Address on File | | | | | | |
| Wilson, Sonsini, Goodrich, & Rosati | | PO Box 742866 | | | Los Angeles | CA | 90074-2866 | |
| Wilson, Sonsini, Goodrich, & Rosati | | File # 73672 | PO Box 60000 | | San Francisco | CA | 94160-3672 | |
| WILSON, STEVE L. | | Address on File | | | | | | |
| Wilton, William | | Address on File | | | | | | |
| WINGS Ventures LLC | | 172304 Preston Rd | Ste 800 | | Dallas | TX | 75252 | |
| Winn Media | | Address on File | | | | | | |
| WINSTEAD P.C. | | 5400 RENAISSANCE TOWER | 1201 ELM ST | | Dallas | TX | 75270 | |
| WINSTEAD P.C. | | 2728 N Harwood Street | Suite 500 | | Dallas | TX | 75201-1743 | |
| Winston & Strawn LLP | | 2121 North Pearl Street | Suite 900 | | Dallas | TX | 75201 | |
| Wired | | PO Box 37704 | | | Boone | IA | 50037-0704 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 152 of 155

Appx. 001438
001822

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 165 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Wisconsin Office of Comm of Securities | Division of Securities | 201 West Washington Avenue, Suite 300 | | | Madison | WI | 53703 | |
| WISE, CHRIS | | Address on File | | | | | | |
| Wiseman & Hoffman | | 460 Park Ave South, 4th Flr | | | New York | NY | 10016 | |
| WISER, JASON | | Address on File | | | | | | |
| Withers Bergman LLP | | 157 Church Street, 12th Floor | PO Box 426 | | New Haven | CT | 06502 | |
| Withers Bergman LLP | | PO Box 1685 | | | New Haven | CT | 06507 | |
| WM Fund Associates Co., Ltd. | | Kakimi Kojimachi Annex Bldg 6F | 3-2 Kojimachi, Chiyoda-ku | | Tokyo | | 102-0083 | JAPAN |
| Wolters Kluwer | | 1999 Bryan Street | Ste 900 | | Dallas | TX | 75201-0000 | |
| Wolters Kluwer Legal & Regulatory US | | PO Box 71882 | | | Chicago | IL | 60694-1882 | |
| Wombat Security Technologies | | 3030 Penn Avenue | Suite 200 | | Pittsburgh | PA | 15201 | |
| Womens Auxiliary Childrens-Six Flags | Attn Jenny Garberding | 7315 Centenary Ave | | | Dallas | TX | 75225 | |
| Womens Auxiliary Childrens-Six Flags | | 7506 Greenbrier | | | Dallas | TX | 75225 | |
| Wonderlic | Attn Robin Wilson, Treasurer | 1795 N. Butterfield Rd | | | Libertyville | IL | 60048-1212 | |
| WOOD, HANNAH | | Address on File | | | | | | |
| Woodal Rodgers Park Foundation | Attn Erika White | 1909 Woodall Rodgers Fwy | Suite 403 | | Dallas | TX | 75201 | |
| Woodbury Financial Services, Inc. | ATTN Reimb Processing | PO Box 64284 | | | Saint Paul | MN | 55164 | |
| Woodruff-Sawyer & Co. | | PO Box 45057 | | | San Francisco | CA | 94145-9950 | |
| WOOTTON, JENNIFER | | Address on File | | | | | | |
| World Affairs Council | | 325 N. St. Paul St. | Suite 4200 | | Dallas | TX | 75201 | |
| World Data Products | | M & I 196 PO Box 1414 | | | Minneapolis | MN | 55480-1414 | |
| Worldwide Financial Solutions | | 16140 Northcross Drive | | | Huntersville | NC | 28078 | |
| Worldwide Insurance Services | ATTN INDIVIDUAL UNDERWRITING DEPT | 100 MATSONFORD RD | STE 100 | | Radnor | PA | 19087 | |
| WP Engine | | 504 Lavaca Street | Suite 1000 | | Austin | TX | 78701-0000 | |
| WQ International Ltd. | | Victoria Place. 31 Victoria Street | | | Hamilton | | 0HM10 | BERMUDA |
| Wright Wealth Management | | 3181 Clearwater Dr. | Ste A | | Prescott | AZ | 86305 | |
| Wrights Media | | 2407 Timberloch Place | Suite B | | The Woodlands | TX | 77380-1039 | |
| Wurz, Brandon | | Address on File | | | | | | |
| Wyoming Secretary of State | | Securities Division, State Capitol Bldg | 2020 Carey Avenue, Suite 700 | | Cheyenne | WY | 82001 | |
| Xact Data Discovery -DATX | | 5800 Foxridge Dr | Suite 406 | | Mission | KS | 66202 | |
| Xerox | | 45 Glover Ave | | | Norwalk | CT | 06856-0000 | |
| Xerox Corporation | | 2553 Collections Center Dr. | | | Chicago | IL | 60693 | |
| Xerox Corporation | | PO Box 650361 | | | Dallas | TX | 75265 | |
| Xerox Corporation | | PO Box 827598 | | | Philadelphia | PA | 19182-7598 | |
| Xerox Corporation | | PO Box 802555 | | | Chicago | IL | 60680-2555 | |
| Xerox Corporation | | PO Box 7405 | | | Pasadena | CA | 91109-7405 | |
| Xignite, Inc | | 1825 South Grant St | Suite 100 | | San Mateo | CA | 94404 | |
| Xignite, Inc | | Dept 3344 | PO Box 123344 | | Dallas | TX | 75312-2344 | |

Appx. 00439
001823

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 166 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| XIOTECH CORPORATION | | DEPT CH 17326 | | | Palentine | IL | 60055-7326 | |
| XO Communications | | PO Box 530471 | | | Atlanta | GA | 30353-0471 | |
| XPISTI LLC | | 2807 Allen Street # 382 | | | Dallas | TX | 75204 | |
| Xtract Research | | 330 Hudson Street | 4th Floor | | New York | NY | 10013 | |
| YAGNISIS, AIRLIA | | Address on File | | | | | | |
| YANG, JOHN | | Address on File | | | | | | |
| YAROSLAV JERRY LVOVICH | | Address on File | | | | | | |
| Yehia, Josef | | Address on File | | | | | | |
| Yellbelly, Inc. | | 2364 Northwest Pkwy | | | Southlake | TX | 76092 | |
| YINGHUI HE | | Address on File | | | | | | |
| YMCA of Metropolitan Dallas | | 5101 Tennyson Pkwy. | | | Plano | TX | 75024 | |
| YOON, CHRISTOPHER K. | | Address on File | | | | | | |
| York & Chapel, Corp. | | 2 Trap Falls Road | Suite 410 | | Shelton | CT | 06484 | |
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | Bruce L. Silverstein | Elena C. Norman | 1000 North King Street | | Wilmington | DE | 19801 | |
| Young Life | C/O Lee Anne Bingham | 3304 Beckham Ct | | | Plano | TX | 75075 | |
| YOUNG LIFE ALBUQUERQUE | | PO BOX 91894 | | | Albuquerque | NM | 87199-1894 | |
| YOUNG LIFE, NORTH CENTRAL TEXAS | | 11300 N CENTRAL EXPWY | STE 600 | | Dallas | TX | 75243 | |
| Young Womens Preparatory Network | | 1722 Routh Street | Suite 720 | | Dallas | TX | 75201 | |
| Young, Priya | | Address on File | | | | | | |
| YTAC-Dallas | | 2807 Allen St., Box 347 | | | Dallas | TX | 75204 | |
| Zacks Investment Research, Inc. | | 111 North Canal Street | Suite 1101 | | Chicago | IL | 60606 | |
| ZANG, WEIJUN | | Address on File | | | | | | |
| ZANG, WEIJUN | | Address on File | | | | | | |
| ZARIN, GREGORY | | Address on File | | | | | | |
| Zayo Group | | 1821 30th Street | Unit A | | Boulder | CO | 80301-0000 | |
| Zayo Group, LLC | | PO Box 952136 | | | Dallas | TX | 75395-2136 | |
| Zendesk | | 1019 Market St. | | | San Francisco | CA | 94103-0000 | |
| Zenprise Inc | | 6120 Stevenson Blvd | | | Fremont | CA | 94538 | |
| ZEPHYR ASSOCIATES | | 4 Westchester Park Dr | 2nd Floor | | White Plains | NY | 10604 | |
| ZEPHYR ASSOCIATES | | Dept 2215 | PO Box 2121 | | Memphis | TN | 38159 | |
| ZEPHYR ASSOCIATES | | PO Box 12368 | | | Zephyr Cove | NV | 89448 | |
| ZEPHYR ASSOCIATES | | PO Box 416014 | 312 Doria Court | Suite 204 | Boston | MA | 02241-6014 | |
| ZEPHYR ASSOCIATES | | P.O. Box 2153 | Dept. 1899 | | Birmingham | AL | 35287-1899 | |
| ZIEGENHAGEN, RANDALL | | Address on File | | | | | | |
| ZIEGLER, JASON | | Address on File | | | | | | |
| ZIMMERMANN, JOHN | | File No #31469 | PO Box 60000 | | San Francisco | CA | 94160 | |
| ZOHO Corporation | | PO Box 742760 | | | Los Angeles | CA | 90074-2760 | |
| ZOHO Corporation | | 4900 Hoppard Road | Suite 310 | | Pleasanton | CA | 94588-7100 | |
| Zosel, August | | Address on File | | | | | | |
| Zscaler | | 110 Rose Orchard Way | | | San Jose | CA | 95134-0000 | |
| Zuckerman Spaeder LLP | | 1800 M Street NW | | | Washington | DC | 20036-5802 | |
| Zuluaga, Juan Camilo | | Address on File | | | | | | |
| Zurich North America | ATTN HOWARD BULGATZ | 8745 PAYSPHERE CIRCLE | | | Chicago | IL | 60674 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 154 of 155

APPX 001824

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 167 of
175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Zurich North America | | 8712 Innovation Way | | | Chicago | IL | 60682-0087 | |
| Zyrka | | 1408 N. Riverfront Blvd. #106 | | | Dallas | TX | 75207 | |

Highland Capital Management, L.P.
Case No. 19-34054

Appx. 00141

001825

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 168 of 175

# EXHIBIT D

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21  16:03:15

175

**Exhibit D**

Multiple Party Address Packages
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Advisors Equity Group, LLC | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Canis Major Trust | | 300 Crescent Ct | Ste 700 | Dallas | TX | 75201 |
| DONDERO, JAMES | | 300 Crescent Ct. Suite 700 | | DALLAS | TX | 75201 |
| Eagle Equity Advisors, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| ELLINGTON, SCOTT | | 300 Crescent Ct. Suite 700 | | DALLAS | TX | 75201 |
| Fanshaw Bay, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Four Rivers Co-Invest, LP | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Gunwale, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| HCRE Partner, LLC | | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| HFP GP, LLC | Attn Highland Capital Management, L.P. as sole member | | | | | 75201 |
| Highland HCF Advisor, Ltd. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Acquisition Corporation | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Funds Distributor, Inc. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Insurance Solutions, L.P. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Management (Singapore) | | 300 Crescent Ct. | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Management Fund Advisors, L.P. | Attn General Counsel | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Management Fund Advisors, L.P. | | 300 Crescent Court Suite 700 | | Dallas | TX | 75201 |
| Highland Capital Management Services, Inc. | | 300 Crescent Court, Suite 700 | | Dallas | TX | 75201 |
| HIGHLAND CAPITAL MANAGEMENT, LP | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Mgmt Fund Advisors | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland CLO Funding, Ltd. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland CLO Management, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Energy MLP Fund | | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| Highland First Foundation Income Fund | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |

Highland Capital Management, L.P.
Case No. 19-34054

Appx. 00143
001827

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 170 of
175

**Exhibit D**

Multiple Party Address Packages
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Highland Fixed Income Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| Highland Floating Rate Fund | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Funds I | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Funds II | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Global Allocation Fund | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Healthcare Opportunities Fund | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Income Fund HFRO | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Latin America Consulting, LTD | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Long/Short Equity Fund | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Merger Arbitrage Fund | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Opportunistic Credit Fund | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Prometheus | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland RCP Offshore, LP | | 300 Crescent Ct. | Suite 700 | Dallas | TX | 75201 |
| Highland RCP, LP | | 300 Crescent Ct. | Suite 700 | Dallas | TX | 75201 |
| Highland Small-Cap Equity Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| Highland Socially Responsible Equity Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| Highland Tax-Exempt Fund | Highland Energy MLP Fund | 300 Crescent Court Suite 700 | | Dallas | TX | 75201 |
| Highland Tax-Exempt Fund | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Total Return Fund | Highland Energy MLP Fund | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| Highland/iBoxx Senior Loan ETF | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Honis, Trevor | | 300 Crescent Ct. | Ste. 700 | Dallas | TX | 75201 |
| James D. Dondero | | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| James D. Dondero | | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| James Dondero, as the successor-in-interest to the Canis Major Trust | | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| LEE BLACKWELL PARKER, III | | 300 Crescent Court, Suite 700 | | Dallas | TX | 75201 |
| Mark K. Okada | Attn Melissa Schroth | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Mark K. Okada | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexBank Advisors, L.P | | 300 Crescent Ct, Suite 700 | | Dallas | TX | 75201 |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 171 of
175

**Exhibit D**
Multiple Party Address Packages
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| NexBank Capital, Inc | | 300 Crescent Ct, Suite 700 | | Dallas | TX | 75201 |
| NexBank Securities, Inc | | 300 Crescent Ct, Suite 700 | | Dallas | TX | 75201 |
| NexBank SSB | | 300 Crescent Ct, Suite 700 | | Dallas | TX | 75201 |
| NexBank Title, Inc. | | 300 Crescent Ct, Suite 700 | | Dallas | TX | 75201 |
| NexPoint Advisors, L.P. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexPoint Cap Escrow | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexPoint Capital, Inc. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexPoint Discount Strategies Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| NexPoint Energy and Material Opportunities Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| NexPoint Event-Driven Fund | Highland Energy MLP Fund | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| NexPoint Healthcare Opportunities Fund | Highland Energy MLP Fund | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexPoint Healthcare Opportunities Fund | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexPoint Latin America Opportunities Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| NexPoint Real Estate Strategies Fund | Highland Energy MLP Fund | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| NexPoint Strategic Opportunities Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| OKADA, MARK | | 300 Crescent Ct. Suite 700 | | DALLAS | TX | 75201 |
| PARKER, LEE | | 300 Crescent Ct. Suite 700 | | DALLAS | TX | 75201 |
| Penant Management GP, LLC | c/o Highland Capital Management, L.P. | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| PetroCap Operating, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| PetroCap Partners II, LP | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| PRILICK, GUSTAVO | | 300 Crescent Court | STE 700 | Dallas | TX | 75201 |
| Ragen, Spencer | | 300 Crescent Ct. | Ste. 700 | Dallas | TX | 75201 |
| SE Multifamily Holdings, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Strand Advisors Inc. | | 300 Crescent Court | | Dallas | TX | 75201 |
| Strand Advisors, Inc. | Attn Isaac Leventon | 300 Crescent Court, Suite 700 | | Dallas | TX | 75201 |
| Strand Advisors, Inc. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| The Dugaboy Investment Trust | | 300 Crescent Court Suite 700 | | Dallas | TX | 75201 |

Highland Capital Management, L.P.
Case No. 19-34054

App. 00445
001829

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 172 of
175

**Exhibit D**

Multiple Party Address Packages
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| The Dugaboy Investment Trust, as successor-in-interest to the Canis Major Trust | | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| The Get Good Non-Exempt Trust No. 1 | | 300 Crescent Ct | Ste 700 | Dallas | TX | 75201 |
| The Get Good Non-Exempt Trust No. 1, Individually and as Successor-In-Interest of the Canis Minor Trust | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| The Get Good Non-Exempt Trust No. 2 | | 300 Crescent Ct | Ste 700 | Dallas | TX | 75201 |
| The Get Good Non-Exempt Trust No. 2, Individually and as Successor-In-Interest of the Canis Minor Trust | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| The Get Good Trust | | 300 Crescent Ct | Ste 700 | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Exempt Trust #1 | Attn Melissa Schroth | 300 Crescent Court Suite 700 | | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Exempt Trust #2 | Attn Melissa Schroth | 300 Crescent Court Suite 700 | | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Trust | Exempt Trust #1 | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Trust | Exempt Trust #2 | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Trust - Exempt Descendants Trust #1 | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Trust - Exempt Descendants Trust #2 | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |

App. 001446
001830

# EXHIBIT E

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 174 of
175

**Exhibit E**

Multiple Party Address Packages
Served via First Class Mail

| CreditorName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|
| AMY JENKINS | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| Amy Mitts | 13455 Noel Rd | Suite 800 | Dallas | TX | 75240 |
| BENTLEY CALLAN | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| BILL CORNELIUS | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| BOYD GOSSERAND | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| CLINT GILCHRIST | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| COURTNEY ORENT | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| Cummings Bay Capital Management, LP | 13455 Noel Rd, Ste 800 | | Dallas | TX | 75240 |
| DAVID CRULL | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| DAVID SMITH | 13455 Noel Rd | Ste 800 | Dallas | TX | 75240 |
| EMERALD ORCHARD | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| GUSTAVO PRILICK | 13455 Noel Rd, Ste 800 | | Dallas | TX | 75240 |
| HCM ACQUISITION COMPANY | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| HIGHLAND ALL CAP EQUITY VALUE FUND | 13455 NOEL RD | | Dallas | TX | 75240 |
| HIGHLAND CAPITAL REAL ESTATE ADVISORS | 13455 NOEL RD | | Dallas | TX | 75240 |
| HIGHLAND CDO HOLDING COMPANY | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| HIGHLAND CDO OPPORTUNITY FUND | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 13455 NOEL RD | | Dallas | TX | 75240 |
| HIGHLAND CREDIT STRATEGIES FUND RIC | 13455 NOEL RD STE 800 | | Dallas | TX | 75240 |
| HIGHLAND CRUSADER FUND | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| Highland Employee Retention Assets LLC | 13455 Noel Rd | Ste 800 | Dallas | TX | 75240 |
| HIGHLAND FINANCIAL CORP | 13455 NOEL RD | | Dallas | TX | 75240 |
| HIGHLAND FINANCIAL REAL ESTATE CORP | 13455 NOEL RD | | Dallas | TX | 75240 |
| HIGHLAND FINANCIAL TRUST | 13455 NOEL RD | | Dallas | TX | 75240 |
| Highland Funds Asset Management | 13455 Noel Rd | Ste 800 | Dallas | TX | 75240 |
| HIGHLAND LOAN FUNDING V | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |

Page 1 of 2

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21  Entered 08/19/21 16:03:15  Page 175 of
175

**Exhibit E**
Multiple Party Address Packages
Served via First Class Mail

| CreditorName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|
| HIGHLAND SELECT EQUITY FUND | 13455 NOEL RD | | Dallas | TX | 75240 |
| Highland Special Situations Fund | 13455 Noel Rd | | Dallas | TX | 75204 |
| JASON GREEN | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| JENNIFER JURRIUS | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| KEN KAPADIA | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| LARRY LINDSEY | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| LAURA KNIPP | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| Lauren Okada | 13455 Noel Rd | suite 800 | Dallas | TX | 75240 |
| LESLIE HARRIS | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| LINDY HEATHERINGTON | 13455 NOELRD | STE 800 | Dallas | TX | 75240 |
| Lisa Miller | 13455 Noel Rd | | Dallas | TX | 75240 |
| Luke Okada | 13455 Noel St | Suite 800 | Dallas | TX | 75240 |
| Michael Hasenauer | 13455 Noel Rd | Suite 800 | Dallas | TX | 75240 |
| Michael McLochlin | 13455 Noel Rd. Ste 800 | | Dallas | TX | 75240 |
| MICKEY MINCES | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| MULTI-STRATEGY SUB FUND | 13455 NOEL RD | | Dallas | TX | 75240 |
| NATALIE HARALSON | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| NGUYEN, TIFFANY | 13455 NOEL RD #800 | | DALLAS | TX | 75240 |
| REAL ESTATE FUND 2002-A | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| SCOTT BASHRUM | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| Scott Groff | 13455 Noel Rd Suite 800 | | Dallas | TX | 75240 |
| SCOTT WILSON | 13455 NOEL RD | | Dallas | TX | 75240 |
| SHELBY NOBLE | 13455 NOEL RD | | Dallas | TX | 75240 |
| TAMRA APPLEGATE | 13455 NOEL RD | | Dallas | TX | 75240 |
| WILLIAM SMITH | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |

# EXHIBIT 9

Appx. 00450
001834

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 2/65/02637    Page 59 of 241    PageID 1961
Case 22-03052-sgj    Doc 6    Filed 05/25/22    Entered 05/25/22 17:35:13    Page 1 of 6
Case 3:21-cv-01710-N    Document 6    Filed 08/26/21    Page 1 of 6    PageID 21

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| THE CHARITABLE DAF FUND, LP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 3:21-cv-01710-N |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P., | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S MOTION TO STAY ALL PROCEEDINGS

### I.

### NECESSITY OF MOTION

Plaintiff submits this Motion as a result of the effective date, August 11, 2021, of Defendant Highland Capital Management L.P.'s Chapter 11 plan of reorganization (the "Plan"). The Plan purports to exculpate Defendant from liability and enjoin Plaintiff from pursuing actions against them. It also contains an assertion of exclusive jurisdiction by the bankruptcy court.

An appeal of the Plan, which the Fifth Circuit certified for direct appeal under 28 U.S.C. § 158(d), is now before the Court of Appeals and captioned *In re Highland Capital Management, L.P.*, No. 21-10449 (the "Fifth Circuit Appeal"). Each of the issues noted above is raised in the appeal. If successful, the appeal will overturn the exculpation, injunction, and assertion of exclusive jurisdiction in the Plan, allowing Plaintiff to proceed with this action in this Court.

In the meantime, however, Plaintiff is enjoined from participating further in this pending case and therefore asks that it be stayed pending the outcome of the Fifth Circuit Appeal.

---

App. 00151
001835

Case 22-03052-sgj   Doc 21   Filed 05/27/22   Entered 05/27/22 15:12:46   Desc Main
Case 3:22-cv-02280-S   Document 10   Filed 06/02/22   Page 60 of 241   PageID 1962
Case 22-03052-sgj Doc 6 Filed 05/25/22   Entered 05/25/22 17:35:13   Page 2 of 6
Case 3:21-cv-01710-N   Document 6   Filed 08/26/21   Page 2 of 6   PageID 22

## II.

## BACKGROUND

On August 9, 2021, Plaintiff received notice that the Plan was now effective. *In re Highland Capital Management, L.P.*, No. 19-34054, Doc. 2700. Although one condition precedent to the effectiveness of the Plan is finality of the confirmation order, which can only happen once all appeals are resolved, that and all other conditions are waivable by the Debtor. *Id.*, Doc. 1943 at pdf 142-43 (Art. VIII at pp. 45-46). The Debtor's notice, which waived finality and any other unsatisfied conditions, makes the Plan's exculpation provisions and injunctions immediately effective.

As to exculpation, the Plan states,

Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); *provided, however,* the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 05/00/2263    Page 61 of 241    PageID 1963
Case 22-03052-sgj Doc 6 Filed 05/25/22    Entered 05/25/22 17:35:13    Page 3 of 6
Case 3:21-cv-01710-N    Document 6    Filed 08/26/21    Page 3 of 6    PageID 23

*Id.* at pdf  144-45 (Art. IX.C at pp. 47-48 (emphasis added)). "Exculpated Parties" is a defined

term in the Plan that includes the Defendant in this action. *Id.* at pdf 106 (Art. I at p. 9).

As to the injunction, the Plan states,

Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, <u>all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the property of the Debtor,</u> (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor or the property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtor or against property or interests in property of the Debtor, except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Debtor, including, but not limited to, the Reorganized Debtor, the Litigation SubTrust, and the Claimant Trust and their respective property and interests in property.

Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; provided, however, the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the

---

App. 00452
001837

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 06/02/22    Page 62 of 241    PageID 1964
Case 22-03052-sgj  Doc 6  Filed 05/25/22    Entered 05/25/22 17:35:13    Page 4 of 6
Case 3:21-cv-01710-N    Document 6    Filed 08/26/21    Page 4 of 6    PageID 24

date of appointment of the Independent Directors through the Effective Date.
The Bankruptcy Court will have sole and exclusive jurisdiction to determine
whether a claim or cause of action is colorable and, only to the extent legally
permissible and as provided for in ARTICLE XI, shall have jurisdiction to
adjudicate the underlying colorable claim or cause of action.

*Id.* at pdf 147-48 (Art. IX.F at pp. 50-51 (emphasis added)). "Enjoined Parties" is a defined term

in the Plan that includes Plaintiff. *Id.* at pdf 105 (Art. I; ¶ 56 at p.8).

    Because these provisions are currently in force and prohibits Plaintiff from continuing this

action, and because the Fifth Circuit Appeal includes direct challenges to the validity of these very

provisions, Plaintiff respectfully submits that the most efficient course of action is for this Court

to stay this action until the Fifth Circuit Appeal is resolved. Plaintiff expects that any resolution of

the Fifth Circuit Appeal will necessarily determine that the Plan's exculpation and injunction

provisions absolves Defendant of any liability or, alternatively, that this action can proceed.

## III.

## ARGUMENT

    This Court should exercise its inherent powers to stay all proceedings in the case until the

Fifth Circuit Appeal is decided.

    The Fifth Circuit has long held that "[t]he district court possesses the inherent power to

control its docket." *Marine Chance Shipping v. Sebastian*, 143 F.3d 216, 218 (5th Cir. 1998). The

exercise of that power is a discretionary one. *E.g., Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir.

1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary

questions that may dispose of the case are determined.")

    Here, Plaintiff asks this Court to exercise discretion in favor of efficiency and to stay all

proceedings. Plaintiff respectfully submits that, until the appeal is resolved, many complex legal

questions exist that may affect the viability of this action or the forum in which it should be

---

Case 22-03052-sgj   Doc 21   Filed 05/27/22   Entered 05/27/22 15:12:46   Desc Main
Case 3:22-cv-02280-S   Document 10   Filed 06/02/22   Page 63 of 241   PageID 1965
Case 22-03052-sgj Doc 6 Filed 05/25/22   Entered 05/25/22 17:35:13   Page 5 of 6
Case 3:21-cv-01710-N   Document 6   Filed 08/26/21   Page 5 of 6   PageID 25

litigated. Those questions—including the validity of the exculpation and injunction provisions quoted above—will likely be resolved by the Fifth Circuit Appeal. And therefore, Plaintiff submist, judicial economy may be gained by staying all proceedings in this action pending that appeal.

## IV.

## <u>CONCLUSION</u>

Plaintiff appears to be wholly prohibited from participating further in this action by the now-effective terms of the Plan that purport to enjoins Plaintiff and exculpates Defendant. In light of its inability to conduct the litigation and the pending Fifth Circuit Appeal, which that court has certified for direct appeal, Plaintiff respectfully submits that the most appropriate course for this Court is to stay all proceedings until the appeal is decided. Plaintiff therefore respectfully requests a stay and all further relief to which it may be entitled.

Dated: August 26, 2021

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/ Jonathan Bridges*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
**Jonathan Bridges**
Texas Bar No. 24028835
JPMorgan Chase Tower
2200 Ross Avenue – Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
    jeb@sbaitilaw.com

**Counsel for Plaintiffs**

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 06/02/22    Page 64 of 241    PageID 1966
Case 22-03052-sgj Doc 6 Filed 05/25/22    Entered 05/25/22 17:35:13    Page 6 of 6
Case 3:21-cv-01710-N    Document 6    Filed 08/26/21    Page 6 of 6    PageID 26

## CERTIFICATE OF CONFERENCE

I hereby certify that, in a series of communications between August 13 and 26, 2021, I conferred with Defendant's counsel regarding this Motion, and counsel indicated that they are opposed to the relief sought in this Motion.

/s/ Jonathan Bridges
Jonathan Bridges

Appx. 00456
001840

**EXHIBIT 10**

Appx. 00457
001847

DOCKET TEXT:7 ELECTRONIC ORDER granting 6 Motion to Stay. (Ordered by Judge David C
Godbey on 9/7/2021) (chmb) [ORIGINALLY FILED IN 21-CV-1710 AS #7 ON 09/7/2021 IN
U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor,
Marcey)

# EXHIBIT 11

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 04/03/23    Page 68 of 241    PageID 1970
Case 22-03052-sgj Doc 8 Filed 05/25/22    Entered 05/25/22 17:43:18    Page 1 of 5
Case 3:21-cv-01710-N    Document 8    Filed 10/05/21    Page 1 of 5    PageID 27

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:    jpomerantz@pszjlaw.com
          rfeinstein@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          hwinograd@pszjlaw.com

-and-

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| THE CHARITABLE DAF FUND, L.P., | § § § § | |
| Plaintiff, | § § | |
| vs. | § § | Case No. 3:21-cv-01710-N |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| Defendant. | § § § § | |

1

APPX 00460
001844

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 06/02/22    Page 69 of 241    PageID 1971
Case 22-03052-sgj  Doc 8  Filed 05/25/22    Entered 05/25/22 17:43:18    Page 2 of 5
Case 3:21-cv-01710-N    Document 8    Filed 10/05/21    Page 2 of 5    PageID 28

## HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION FOR
## RECONSIDERATION OF STAY ORDER

Highland Capital Management, L.P., a defendant in the above-captioned case (the "<u>Debtor</u>"
or "<u>Highland</u>"), by and through its undersigned counsel, files this motion (the "<u>Motion</u>") seeking
reconsideration of the Stay Order (as defined below) that was recently entered by the Court without
notice to, or opposition by, Highland.  In support of its Motion, Highland states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to section 1334(a) and (b) of
title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

3.      The predicates for the relief requested in the Motion are 28 U.S.C. § 157(a), Rule
9019 of the Federal Rules of Bankruptcy Procedure (the <u>Bankruptcy Rules</u>), and Rule 59(a) of the
Federal Rules of Civil Procedure.

### RELIEF REQUESTED

4.      Through this Motion, Highland requests that this Court issue the proposed form of
order attached as **Exhibit A** (the "<u>Proposed Order</u>") pursuant to 28 U.S.C. § 157(a).

5.      For the reasons set forth more fully in *Highland Capital Management, L.P.'s
Memorandum of Law in Support of Motion for Reconsideration of Stay Order* (the "<u>Memorandum
of Law</u>") filed contemporaneously with this Motion, Highland requests that the Court: (a) re-open
the Stay Order, amend the findings and conclusions, and issue a new order denying the Stay
Motion, and (b) grant such other and further relief as the Court deems just and proper.

6.      In accordance with Rule 7.1 of the *Local Civil Rules of the United States District
Court for the Northern District of Texas* (the "<u>Local Rules</u>"), contemporaneously herewith and in
support of the Motion Highland is filing: (a) its Memorandum of Law, and (b) the *Appendix in*

2

APPX. 00481
001845

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 06/02/23    Page 70 of 241    PageID 1972
Case 22-03052-sgj Doc 8 Filed 05/25/22    Entered 05/25/22 17:43:18    Page 3 of 5
Case 3:21-cv-01710-N    Document 8    Filed 10/05/21    Page 3 of 5    PageID 29

*Support of Motion for Reconsideration of Stay Order* (the "Appendix"), together with the exhibits

annexed thereto.

7.    Based on the exhibits annexed to the Appendix and the arguments contained in the

Memorandum of Law, Highland is entitled to the relief requested herein as set forth in the Proposed

Order.

8.    Notice of this Motion has been provided to all parties.  Highland submits that no

other or further notice need be provided.

WHEREFORE, Highland respectfully requests that the Court (i) enter the Proposed Order

substantially in the formed annexed hereto as **Exhibit A** granting the relief requested herein, and

(ii) grant Highland such other and further relief as the Court may deem proper.

*[Remainder of Page Intentionally Blank]*

DOCS_NY:44200.2 36027/003

App. 001846

Case 22-03052-sgj   Doc 21   Filed 05/27/22   Entered 05/27/22 15:12:46   Desc Main
Case 3:22-cv-02280-S   Document 10   Filed 07/02/22   Page 71 of 241   PageID 1973
Document 10   Page 71 of 241   PageID 1973
Case 22-03052-sgj Doc 8 Filed 05/25/22   Entered 05/25/22 17:43:18   Page 4 of 5
Case 3:21-cv-01710-N   Document 8   Filed 10/05/21   Page 4 of 5   PageID 30

Dated:  October 5, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
        rfeinstein@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 08/02/23    Page 72 of 241    PageID 1974
Case 22-03052-sgj Doc 8 Filed 05/25/22    Entered 05/25/22 17:43:18    Page 5 of 5
Case 3:21-cv-01710-N    Document 8    Filed 10/05/21    Page 5 of 5    PageID 31

## CERTIFICATE OF SERVICE

    I hereby certify that, on October 5, 2021, a true and correct copy of the foregoing Motion was served electronically upon all parties registered to receive electronic notice in this case via the Court's CM/ECF system.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

DOCS_NY:44200.2 36027/003

001848

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 09/02637    Page 73 of 241    PageID 1975
Case 22-03052-sgj Doc 8-1 Filed 05/25/22    Entered 05/25/22 17:43:18    Page 1 of 3
Case 3:21-cv-01710-N    Document 8-1    Filed 10/05/21    Page 1 of 3    PageID 32

**EXHIBIT A**

DOCS_NY:44200.2 36027/003

App. 00485
001849

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 9-10    Filed 07/06/22    Page 74 of 241    PageID 1976
Case 22-03052-sgj  Doc 8-1  Filed 05/25/22    Entered 05/25/22 17:43:18    Page 2 of 3
Case 3:21-cv-01710-N   Document 8-1   Filed 10/05/21   Page 2 of 3   PageID 33

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

_____

| | |
|---|---|
| THE CHARITABLE DAF FUND, L.P., | § |
| | § |
| Plaintiff, | § |
| | § |
| | § Case No. 3:21-cv-01710-N |
| vs. | § |
| | § |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | § |
| Defendant. | § |
| | § |
| | § |
| | § |

-------------------------------------------------------------

**ORDER GRANTING MOTION FOR
<u>RECONSIDERATION OF STAY ORDER</u>**

Before the Court is *Highland Capital Management L.P.'s Motion for Reconsideration of Stay Order* [Docket No. __] (the "<u>Motion</u>")[1]  Having considered: (a) the Motion; (b) *Highland Capital Management, L.P.'s Memorandum of Law in Support of Motion for Reconsideration of Order to Enforce the Order of Reference* [Docket No. __] (the "<u>Memorandum of Law</u>"); and (c) the *Appendix in Support of Motion for Reconsideration of Stay Order* [Docket No. __] (the "<u>Appendix</u>"), and the exhibits annexed thereto; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that (a) venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1409; (b) Highland was not served with the Stay Motion and had no opportunity to contest it; (c) the Court was presented with new facts and arguments in the Motion, the Memorandum of Law, and the Appendix of which it was unaware when it entered the Stay Order; (d) based on those new facts,

_____

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Memorandum of Law.

DOCS_NY:44200.2 36027/003

App. 001850

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 07/06/22    Page 75 of 241    PageID 1977
Case 22-03052-sgj Doc 8-1 Filed 05/25/22    Entered 05/25/22 17:43:18    Page 3 of 3
Case 3:21-cv-01710-N    Document 8-1    Filed 10/05/21    Page 3 of 3    PageID 34

the Court finds and determines that Plaintiff has not met its burden of proving that a stay of the Action is warranted; and this Court having found that Highland's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish good cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, and for the reasons set forth in the record on this Motion, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED**.

2.      Pursuant to Rule 59, the Court re-opens and vacates the Stay Order and enters this new Order **DENYING** the Stay Motion.

**It is so ordered** this _____ day of _____, 2021.

_____
The Honorable David C. Godbey
United States District Judge

Appx. 00467
001851

# EXHIBIT 12

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 08/02/23    Page 77 of 241    PageID 1979
Case 22-03052-sgj Doc 11 Filed 05/25/22    Entered 05/25/22 17:54:35    Page 1 of 5
Case 3:21-cv-01710-N    Document 11    Filed 10/05/21    Page 1 of 5    PageID 1062

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         rfeinstein@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com
-and-

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

---

| | | |
|---|---|---|
| THE CHARITABLE DAF FUND, L.P., | § § § § § | |
| Plaintiff, | § | |
| vs. | § | Case No. 3:21-cv-01710-N |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| Defendant. | § § § § | |

---

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS**

1

App. 00489
001853

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 04/06/23    Page 78 of 241    PageID 1980
Case 22-03052-sgj Doc 11 Filed 05/25/22    Entered 05/25/22 17:54:35    Page 2 of 5
Case 3:21-cv-01710-N    Document 11    Filed 10/05/21    Page 2 of 5    PageID 1063

Highland Capital Management, L.P. ("Highland"), the putative defendant in the above-captioned case (the "Action"), by and through its undersigned counsel, files this motion (the "Motion") to dismiss the Action.  In support of its Motion, Highland states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to section 1334(a) and (b) of title 11 of the United States Code (the "Bankruptcy Code").

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

3.      The predicates for the relief requested in the Motion are 28 U.S.C. § 157(a), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the Bankruptcy Rules), and Rules 12(b)(1), (3), (4), and (6) of the Federal Rules of Civil Procedure, made applicable in this Action pursuant to Bankruptcy Rule 7012.

## RELIEF REQUESTED

4.      Through this Motion, Highland requests that this Court issue the proposed form of order attached as **Exhibit A** (the "Proposed Order") pursuant to 28 U.S.C. § 157(a).

5.      For the reasons set forth more fully in *Highland Capital Management, L.P.'s Memorandum of Law in Support of Its Motion to Dismiss* (the "Memorandum of Law") filed contemporaneously with this Motion, Highland requests that the Court: (a) dismiss the Action with prejudice, and (b) grant such other and further relief as the Court deems just and proper.

6.      In accordance with Rule 7.1 of the *Local Civil Rules of the United States District Court for the Northern District of Texas* (the "Local Rules"), contemporaneously herewith and in support of the Motion Highland is filing: (a) its Memorandum of Law, and (b) the *Appendix in Support of Motion to Dismiss* (the "Appendix"), together with the exhibits annexed thereto.

2

APPX. 00470
001854

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 06/02/22    Page 79 of 241    PageID 1981
Case 22-03052-sgj  Doc 11  Filed 05/25/22    Entered 05/25/22 17:54:35    Page 3 of 5
Case 3:21-cv-01710-N    Document 11    Filed 10/05/21    Page 3 of 5    PageID 1064

7.    Based on the exhibits annexed to the Appendix and the arguments contained in the Memorandum of Law, Highland is entitled to the relief requested herein as set forth in the Proposed Order.

8.    Notice of this Motion has been provided to all parties.  Highland submits that no other or further notice need be provided.

WHEREFORE, Highland respectfully requests that the Court (i) enter the Proposed Order substantially in the formed annexed hereto as **Exhibit A** granting the relief requested herein, and (ii) grant Highland such other and further relief as the Court may deem proper.

[*Remainder of Page Intentionally Blank*]

DOCS_NY:44226.1 36027/003

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 06/02/22    Page 80 of 241    PageID 1982
Case 22-03052-sgj Doc 11 Filed 05/25/22    Entered 05/25/22 17:54:35    Page 4 of 5
Case 3:21-cv-01710-N    Document 11    Filed 10/05/21    Page 4 of 5    PageID 1065

Dated:  October 5, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
        rfeinstein@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

DOCS_NY:44226.1 36027/003

App. 00472
001856

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 07/07/22    Page 81 of 241    PageID 1983
Case 22-03052-sgj Doc 11 Filed 05/25/22    Entered 05/25/22 17:54:35    Page 5 of 5
Case 3:21-cv-01710-N    Document 11    Filed 10/05/21    Page 5 of 5    PageID 1066

## CERTIFICATE OF SERVICE

  I hereby certify that, on October 5, 2021, a true and correct copy of the foregoing Motion was served electronically upon all parties registered to receive electronic notice in this case via the Court's CM/ECF system.

          */s/ Zachery Z. Annable*
          Zachery Z. Annable

DOCS_NY:44226.1 36027/003

App. 00472
001857

Case 22-03052-sgj   Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S   Document 9-10    Filed 07/08/22    Page 82 of 241   PageID 1984
Case 22-03052-sgj Doc 11-1 Filed 05/25/22    Entered 05/25/22 17:54:35    Page 1 of 3
Case 3:21-cv-01710-N   Document 11-1   Filed 10/05/21   Page 1 of 3   PageID 1067

# EXHIBIT A

Appx. 00474

001858

Case 22-03052-sgj   Doc 21   Filed 05/27/22   Entered 05/27/22 15:12:46   Desc Main
Case 3:22-cv-02280-S   Document 10   Filed 09/02/22   Page 83 of 241   PageID 1985
Case 22-03052-sgj Doc 11-1 Filed 05/25/22   Entered 05/25/22 17:54:35   Page 2 of 3
Case 3:21-cv-01710-N   Document 11-1   Filed 10/05/21   Page 2 of 3   PageID 1068

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

_____

THE CHARITABLE DAF FUND, L.P.,                §
                                              §
                        Plaintiff,            §
                                              §
                                              §   Case No. 3:21-cv-01710-N
vs.                                           §
                                              §
HIGHLAND CAPITAL MANAGEMENT, L.P.,            §
                                              §
                        Defendant.            §
                                              §
                                              §
-------------------------------------------------§

## ORDER GRANTING MOTION TO DISMISS

Before the Court is *Highland Capital Management L.P.'s Motion to Dismiss* [Docket No.

__] (the "Motion").[1]  Having considered: (a) the Motion; (b) *Highland Capital Management,*

*L.P.'s Memorandum of Law in Support of Its Motion to Dismiss* [Docket No. __] (the

"Memorandum of Law"); and (c) the *Appendix in Support of Motion to Dismiss* [Docket No. __]

(the "Appendix"), and the exhibits annexed thereto; and this Court having jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that (a) venue of this

proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1409; (b) the Effective

Date has occurred; (c) the Confirmation Order and Plan enjoin Plaintiff from continuing any action

or suit against Highland and mandate that claims against Highland be brought in the Bankruptcy

Court following the Effective Date pursuant to the Injunction Provision; (d) the purported claims

asserted against Highland arise from transactions that took place post-petition and, to the extent

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Memorandum of Law.

APPX. 00475
001859

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 06/02/22    Page 84 of 241    PageID 1986
Case 22-03052-sgj Doc 11-1 Filed 05/25/22    Entered 05/25/22 17:54:35    Page 3 of 3
Case 3:21-cv-01710-N    Document 11-1    Filed 10/05/21    Page 3 of 3    PageID 1069

valid, would constitute post-petition administrative claims; (e) the Plan provides a specific

procedure through which holders of purported administrative claims, such as Plaintiff, can file an

application with the Bankruptcy Court for allowance of its administrative expense claims; and (f)

based on the foregoing, under the Confirmation Order and Plan, this Court is not the appropriate

venue for this Action; and this Court having found that Highland's notice of the Motion and

opportunity for a hearing on the Motion were appropriate under the circumstances and that no

other notice need be provided; and this Court having determined that the legal and factual bases

set forth in the Motion establish good cause for the relief granted herein; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, and for the reasons set forth in the record on this Motion, it is **HEREBY ORDERED**

**THAT**:

    1.    The Motion is **GRANTED**.

    2.    The Action is **DISMISSED** with prejudice.


**It is so ordered** this _____ day of _____, 2021.


_____
The Honorable David C. Godbey
United States District Judge

DOCS_NY:44226.1 36027/003

App. 00476
001860

# EXHIBIT 13

App. 00477
001867

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 10    Filed 08/02/63    Page 86 of 241    PageID 1988
Case 22-03052-sgj Doc 18 Filed 05/25/22    Entered 05/25/22 18:10:05    Page 1 of 2
Case 3:21-cv-01710-N    Document 18    Filed 05/19/22    Page 1 of 2    PageID 1345

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARITABLE DAF FUND, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-1710-N |
| | § | |
| HIGHLAND CAPITAL | § | |
| MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |

## <u>ORDER</u>

This Order addresses Defendant Highland Capital Management, L.P.'s ("HCM")

motion for reconsideration of this Court's earlier order staying this case [8].  This case

challenges a transaction consumated in the course of a consolidated bankruptcy proceeding

and names as the sole defendant the debtor in that bankruptcy.  The Court therefore

concludes that this case constitutes a matter "related to" a case in the bankruptcy court

under the meaning of this District's Miscellaneous Order No. 33.  Accordingly, the Court

grants Defendant's motion, lifts the stay, and refers this case to Judge Stacey G.C. Jernigan

of the United States Bankruptcy Court for the Northern District of Texas, to be adjudicated

as a matter related to the Chapter 11 Bankruptcy of HCM., Chapter 11 Case No. 19-34054.

The Clerk of this Court and the Clerk of the Bankruptcy Court to which this case is referred

are directed to take such actions as are necessary to docket this matter as an Adversary

Proceeding associated with the aforementioned consolidated bankruptcy case.

ORDER – PAGE 1

Case 22-03052-sgj   Doc 21   Filed 05/27/22   Entered 05/27/22 15:12:46   Desc Main
Case 3:22-cv-02280-S   Document 10   Filed 08/02/23   Page 87 of 241   PageID 1989
Case 22-03052-sgj Doc 18 Filed 05/25/22   Entered 05/25/22 18:10:05   Page 2 of 2
Case 3:21-cv-01710-N   Document 18   Filed 05/19/22   Page 2 of 2   PageID 1346

Signed May 19, 2022.

David C. Godbey
United States District Judge

ORDER – PAGE 2

# EXHIBIT 14

Appx. 00480
001864

# Highland Multi Strategy Credit Fund, L.P.

A Delaware Limited Partnership

**Fourth Amended and Restated**

**Limited Partnership Agreement**

November 1, 2014

App. 00481
001865

# TABLE OF CONTENTS

Page

Article I DEFINITIONS ..........................................................................................................1

Article II ORGANIZATION...................................................................................................10
    2.1      Continuation of Limited Partnership ...........................................................10
    2.2      Name of Partnership ...................................................................................11
    2.3      Principal Office; Registered Office.............................................................11
    2.4      Term of Partnership ....................................................................................11
    2.5      Object and Powers of Partnership...............................................................11
    2.6      Liability of Partners ....................................................................................12
    2.7      Actions by Partnership ................................................................................12
    2.8      Reliance by Third Parties ............................................................................12
    2.9      UCC Status of Limited Partner Interests ....................................................12
    2.10    Series of Interests .......................................................................................12

Article III CAPITAL.............................................................................................................13
    3.1      Contributions to Capital .............................................................................13
    3.2      Rights of Partners in Capital ......................................................................14
    3.3      Capital Accounts ........................................................................................14
    3.4      Allocations of Net Profit and Net Loss.......................................................15
    3.5      Allocation of Management Fees, Withholding Taxes and Certain Other
            Expenditures ..............................................................................................15
    3.6      Reserves; Adjustments for Certain Future Events ......................................16
    3.7      Performance Allocation ..............................................................................17
    3.8      Limited Participation Investments and New Issues ....................................17
    3.9      Allocation to Avoid Capital Account Deficits ............................................18
    3.10    Regulatory Allocations...............................................................................18
    3.11    Allocations for Income Tax Purposes ........................................................19
    3.12    Individual Partner's Tax Treatment.............................................................21
    3.13    Distributions...............................................................................................21

Article IV MANAGEMENT ..................................................................................................22
    4.1      Duties and Powers of the General Partner ..................................................22
    4.2      Expenses.....................................................................................................23
    4.3      Rights of Limited Partners .........................................................................25
    4.4      Other Activities of Partners........................................................................25
    4.5      Exculpation; Indemnification......................................................................26
    4.6      Advisory Committee ...................................................................................28
    4.7      Alternative Investment Vehicles .................................................................29

Article V ADMISSIONS, TRANSFERS AND WITHDRAWALS ...........................................29
    5.1      Admission of Limited Partners ...................................................................29
    5.2      Admission of Additional General Partners ..................................................29
    5.3      Transfer of Interests of Limited Partners ....................................................30
    5.4      Transfer of Interest of the General Partner .................................................30
    5.5      Withdrawal of Interests of Partners ............................................................31

i

App. 001866

Article VI SOFT WIND DOWN, DISSOLUTION AND LIQUIDATION ................................ 35
    6.1     Soft Wind Down ................................................................................................ 35
    6.2     Dissolution of Partnership ................................................................................. 36
    6.3     Liquidation of Assets ........................................................................................ 36
Article VII ACCOUNTING AND VALUATION; BOOKS AND RECORDS ....................... 37
    7.1     Accounting and Reports .................................................................................... 37
    7.2     Valuation of Partnership Assets and Interests ................................................... 38
    7.3     Determinations by the General Partner .............................................................. 38
    7.4     Books and Records ............................................................................................ 39
    7.5     Confidentiality ................................................................................................... 39
Article VIII GENERAL PROVISIONS ................................................................................. 41
    8.1     Amendment of Partnership Agreement .............................................................. 41
    8.2     Special Power-of-Attorney ................................................................................ 43
    8.3     Notices .............................................................................................................. 44
    8.4     Agreement Binding Upon Successors and Assigns; Delegation ......................... 44
    8.5     Governing Law .................................................................................................. 44
    8.6     Not for Benefit of Creditors .............................................................................. 45
    8.7     Dispute Resolution ............................................................................................ 45
    8.8     Consents and Voting .......................................................................................... 47
    8.9     Merger and Consolidation ................................................................................. 48
    8.10    Miscellaneous ................................................................................................... 48
    8.11    BHCA Subject Persons ..................................................................................... 48
    8.12    RIC Limited Partners ........................................................................................ 49
    8.13    Bad Actor Limited Partners .............................................................................. 50
    8.14    Entire Agreement .............................................................................................. 50

Appx. 00483
001867

THIS FOURTH AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT of Highland Multi Strategy Credit Fund, L.P., dated effective as of November 1, 2014, is by and among Highland Multi Strategy Credit Fund GP, L.P., as General Partner, and certain Persons who were admitted as Limited Partners in accordance with the Prior Agreement and those Persons who are hereafter admitted as additional Limited Partners in accordance with this Agreement.   Capitalized terms have the meanings set forth in Article I below.

## PRELIMINARY STATEMENTS

(A)    The General Partner and certain of the Limited Partners have heretofore formed a limited partnership pursuant to the Act (as defined herein) by filing a Certificate of Limited Partnership with the office of the Secretary of State of the State of Delaware on December 1, 2005, and previously entered into a Limited Partnership Agreement, dated effective as of December 1, 2005, as last amended and restated by the Third Amended and Restated Limited Partnership Agreement dated as of December 31, 2007 (the "***Prior Agreement***").

(B)    The General Partner filed an amendment to the Certificate of Limited Partnership of the Fund on August 26, 2014, changing the name of the Fund to "Highland Multi Strategy Credit Fund, L.P."

(C)    The parties hereto desire to continue the Partnership as a limited partnership under the Act and to make certain modifications to the Prior Agreement, as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants expressed herein and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto hereby agree that the Prior Agreement is amended and restated in its entirety to read as follows:

## Article I
## DEFINITIONS

For purposes of this Agreement:

"***Act***" means the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. §§ 17-101, et seq., as in effect on the date hereof and as amended from time to time, or any successor law.

"***Accounting Period***" means each period that starts on the day immediately following the last day of the preceding Accounting Period, and that ends on the earliest of the following dates:

(a)    the last day of a calendar month;

(b)    any date as of which any withdrawal or distribution of capital is made with respect to any Capital Account or as of which this Agreement provides for any amount to be credited to or debited against a Capital Account, other than a withdrawal or distribution by or to, or an allocation to, all Capital Accounts that does not result in any change of the Partnership Percentage relating to any Capital Account;

APPX 00484
001868

(c)      the date which immediately precedes any day as of which a capital contribution is accepted by the General Partner from any new or existing Partner; or

(d)      any other date which the General Partner selects.

"***Advisers Act***" means the U.S. Investment Advisers Act of 1940, as amended, and the rules promulgated thereunder.

"***Advisory Committee***" has the meaning set forth in Section 4.6.

"***Affiliate***" means, with respect to any Person, a Person which controls, is controlled by, or is under common control with, such Person.  For these purposes, "control" (including "controlled by" and "under common control") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"***Affiliated Investor***" means any Limited Partner that is an Affiliate of the General Partner or the Investment Manager, including their respective employees, members or partners and their respective immediate family members.

"***Agreement***" means this Fourth Amended and Restated Limited Partnership Agreement of the Partnership, as amended from time to time.

"***Alternative Investment Vehicle***" has the meaning set forth in Section 4.7.

"***Arbitration Rules***" has the meaning set forth in Section 8.7(b)(i).

"***Authorized Representative***" has the meaning set forth in Section 7.5(a).

"***Bad Actor Limited Partner***" means a Limited Partner that (i) would cause the disqualification of the Partnership from using Rule 506 under the Securities Act due to the operation of paragraph (d) thereof (or its successor) if such Limited Partner were to beneficially own 20% or more of the outstanding voting interest of all of the Partners (excluding any other Interests that are Non-Voting Interests) or (ii) the General Partner determines is likely to become subject to a conviction, order, judgment, finding or that would be likely to cause the disqualification described in clause (i).

"***BHCA***" means the U.S. Bank Holding Company Act of 1956, as amended.

"***BHCA Subject Person***" means any Limited Partner that is subject, directly or indirectly, to the provisions of Section 4 of the BHCA and the regulations of the Board of Governors of the Federal Reserve System promulgated thereunder.

"***Business Day***" means any day other than (a) Saturday and Sunday and (b) any other day on which banks located in New York, New York are required or authorized by law to be closed.

"***Calculation Period***" means, with respect to each Capital Account, the period commencing as of the date of the establishment of the Capital Account (in the case of the initial Calculation

APPX 001869
001869

Period) and thereafter each period commencing as of the day following the last day of the preceding Calculation Period with respect to such Capital Account, and ending as of the close of business on the first to occur of the following:

      (a)    the last day of a calendar year;

      (b)    the withdrawal of all or a portion of the Interest attributable to such Capital Account (but only with respect to such withdrawn amount);

      (c)    the permitted Transfer of all or any portion of such Limited Partner's Interest; or

      (d)    the final distribution to such Limited Partner following the dissolution of the Partnership.

"***Capital Account***" means, with respect to each Partner, the capital account established and maintained on behalf of such Partner as described in Section 3.3.

"***Carryforward Account***" means a memorandum account to be recorded in the books and records of the Partnership with respect to each Capital Account that has an initial balance of zero and that is adjusted as follows:

      (a)    As of the first day after the close of each Calculation Period for such Capital Account, the balance of the Carryforward Account is (i) increased by the amount, if any, of such the Negative Performance Change with respect to such Capital Account for such Calculation Period and (ii) reduced (but not below zero) by the amount, if any, of the Positive Performance Change with respect to such Capital Account for such Calculation Period.

      (b)    As of the close of the Calculation Period, any positive balance of the Carryforward Account is further adjusted if such Capital Account has been reduced during such Calculation Period as a result of a distribution or withdrawal, by reducing such positive balance (but not below zero) by an amount determined by multiplying (i) such positive balance by (ii) a fraction, of which (A) the numerator is equal to the amount so distributed or withdrawn, and (B) the denominator is equal to the balance of such Capital Account immediately before giving effect to such distribution or withdrawal.

The Carryforward Account attributable to each Series A Capital Account shall be reset to zero on the Effective Date. For the avoidance of doubt, any gains or losses allocated by the Partnership to any Capital Account of a Limited Partner prior to the Effective Date will be inapplicable in the calculation of the Carryforward Account following the Effective Date.

"***Certificate***" means the Certificate of Limited Partnership of the Partnership referred to in Section 2.1(b).

"***Code***" means the U.S. Internal Revenue Code of 1986, as amended, and as hereafter amended, or any successor law.

Appx. 00486
001870

"*Dispute*" has the meaning set forth in Section 8.7.

"*Effective Date*" means the date set forth above as the effective date of this Agreement.

"*Election Notice*" has the meaning set forth in Section 8.11(c).

"*FAA*" has the meaning set forth in Section 8.7(b)(ii)

"*FATCA*" means Sections 1471 through 1474 of the Code, as amended, and any Regulations thereunder or official interpretations thereof, including any successor Regulations or interpretations, and any intergovernmental agreement implementing the foregoing.

"*FINRA*" means the Financial Industry Regulatory Authority, Inc.

"*Fiscal Year*" means each period commencing on January 1 of each year and ending on December 31 of such year, unless the General Partner elects another fiscal year; provided that any such other fiscal year is permissible for U.S. federal income tax purposes.   In the case of the Fiscal Year in which the Partnership is terminated in accordance with Article VI, "*Fiscal Year*" means the portion of the calendar year ending on the date on which the Partnership is terminated.

"*GAAP*" means generally accepted accounting principles in the United States, as amended.

"*General Partner*" means Highland Multi Strategy Credit Fund GP, L.P., a Delaware limited partnership, any successor thereto, and any Person hereafter admitted as an additional general partner, in its capacity as general partner of the Partnership.

"*Indemnified Person*" has the meaning set forth in Section 4.5(a).

"*Interest*" means the entire ownership interest of a Partner in the Partnership at the relevant time, including the right of such Partner to any and all benefits to which a Partner may be entitled as provided in this Agreement, together with the obligations of such Partner to comply with all the terms and provisions of this Agreement.

"*Investment Company Act*" means the U.S. Investment Company Act of 1940, as amended, and the regulations promulgated thereunder.

"*Investment Management Agreement*" means the investment management agreement between the Investment Manager, the General Partner, the Offshore Fund and the Partnership.

"*Investment Manager*" means Highland Capital Management, L.P., a Delaware limited partnership, or any successor thereto, or any Person thereafter appointed as an investment manager of the Partnership in accordance with the Investment Management Agreement.

"*Investments*" means investment in securities, assets and other financial or intangible investment instruments, contracts or products made as described in the Partnership's offering memorandum.

APPX 00487
001871

"***Limited Partners***" means any Person who is a limited partner of the Partnership (which, except as otherwise indicated, will include a substituted Limited Partner) at the time of reference thereto, in such Person's capacity as a limited partner of the Partnership.   For all purposes of the Act, the Limited Partners of the Partnership will constitute a single class or group of limited partners.

"***Majority-in-Interest of Limited Partners***" means Limited Partners whose Partnership Percentages represent more than 50% of the aggregate Partnership Percentages of all Limited Partners.

"***Management Fee***" means, with respect to each Capital Account, an amount equal to one fourth of (i) 1.5% of each Series A Capital Account balance; (ii) 1.5% of each Series B Capital Account balance; (iii) 1.0% of each Series C Capital Account balance; and (iv) 2.0% of each Series D Capital Account balance, which amounts are calculated on the first Business Day of each calendar quarter. Management Fees shall be appropriately adjusted for contributions during any partial quarter.

"***Negative Basis***" means, with respect to any Partner and as of any time of calculation, the excess of such Partner's "adjusted tax basis" in its Interest for U.S. federal income tax purposes at such time (determined without regard to any adjustments made to such adjusted tax basis by reason of any Transfer of such Interest) over the amount that such Partner is entitled to receive upon withdrawal from or liquidation of the Partnership.

"***Negative Basis Partner***" means any Partner who withdraws from the Partnership and who has a Negative Basis as of the Withdrawal Date, but such Partner shall cease to be a Negative Basis Partner at such time as it has received allocations pursuant to Section 3.11(d) equal to such Partner's Negative Basis as of the Withdrawal Date and without regard to such Partner's share of the liabilities of the Partnership under Section 752 of the Code.

"***Net Assets***" means the total value, as determined by the General Partner or its delegate(s) in accordance with Section 7.2, of all Investments and other assets of the Partnership (including net unrealized appreciation or depreciation of the assets and accrued interest and dividends receivable net of any withholding taxes), less an amount equal to all accrued debts, liabilities and obligations of the Partnership (including any reserves for contingencies accrued pursuant to Section 3.6,).   Except as otherwise expressly provided herein, Net Assets as of the first day of any Accounting Period are determined on the basis of the valuation of assets conducted as of the close of the immediately preceding Accounting Period, but after giving effect to any capital contributions made by any Partner subsequent to the last day of such immediately preceding Accounting Period, and after giving effect to Management Fee charges, and Net Assets as of the last day of any Accounting Period are determined before giving effect to any of the following amounts payable by the Partnership generally or in respect of any Investment which are effective as of the date on which such determination is made:

> (a)      any Performance Allocation as of the date on which such determination is made;

APPX 00488
001872

(b)      any withdrawals or distributions payable to any Partner which are effective as of the date on which such determination is made; and

(c)      withholding or other taxes, expenses of processing withdrawals and other items payable, any increases or decreases in any reserves, holdbacks or other amounts recorded pursuant to Section 3.6 and any increases or decreases in the value of any Restricted New Issues pursuant to Section 3.8(b) and other amounts specially allocated pursuant to Section 3.8 during the Accounting Period ending as of the date on which such determination is made, to the extent the General Partner determines that, pursuant to any provisions of this Agreement, such items are not to be charged ratably among the Capital Accounts of all Partners on the basis of their respective Partnership Percentages as of the commencement of the Accounting Period.

"***Net Loss***" means any amount by which the Net Assets as of the first day of an Accounting Period exceed the Net Assets as of the last day of the same Accounting Period.

"***Net Profit***" means any amount by which the Net Assets as of the last day of an Accounting Period exceed the Net Assets as of the first day of the same Accounting Period.

"***New Issue Rules***" has the meaning set forth in Section 3.8(b).

"***Nonrecourse Deductions***" has the meaning set forth in Regulations Section 1.704-2(b)(1) and (c).

"***Non-Voting Interest***" means an Interest, the holder of which is not entitled to vote, consent or withhold consent with respect to any Partnership matter (including but not limited to mergers, sales of substantially all assets or consolidations of the Partnership), except as otherwise expressly provided in this Agreement.

"***Offshore Fund***" means Highland Multi Strategy Credit Fund, Ltd., a Cayman Islands exempted company and a Limited Partner of the Partnership.

"***Orderly Realization***" has the meaning set forth in Section 6.1.

"***Other Account***" means any assets or investments of the General Partner, or any assets managed by the General Partner or any Affiliate of the General Partner for the account of any Person or entity (including investment vehicles) other than the Partnership, which are invested or which are available for investment in securities or other instruments or for trading activities whether or not of the specific type being conducted by the Partnership.

"***Partner***" means the General Partner or any of the Limited Partners, except as otherwise expressly provided herein, and "***Partners***" means the General Partner and all of the Limited Partners.

"***Partnership***" means the limited partnership governed by this Agreement.

"***Partnership Minimum Gain***" has the meaning set forth in Regulations Section 1.704-2(b)(2) and (d).

App. 00489
001873

"***Partnership Percentage***" means a percentage established for each Capital Account on the Partnership's books as of the first day of each Accounting Period.   The Partnership Percentage of a Capital Account for an Accounting Period is determined by dividing the amount of such Capital Account as of the beginning of the Accounting Period by the sum of the Capital Accounts of all of the Partners as of the beginning of the Accounting Period.   The numerator and denominator of the above shall be calculated after crediting all capital contributions to the Capital Account or Partnership, as appropriate, which are effective as of such date, net of all deductions, including Management Fees.  The sum of the Partnership Percentages of all Capital Accounts for each Accounting Period shall equal 100%.

"***Performance Allocation***" means, for each Capital Account of a Limited Partner, 20% of the amount by which (a) the Positive Performance Change for such Calculation Period for such Capital Account, if any, exceeds (b) any positive balance in the Carryforward Account for such Capital Account as of the most recent prior date as of which any adjustment has been made thereto.

"***Performance Change***" means, with respect to each Capital Account of a Limited Partner for each Calculation Period, the difference between:

(a)    the sum of (i) the balance of such Capital Account as of the close of the Calculation Period (after giving effect to Management Fees and all allocations to be made to such Capital Account as of such date, including such Capital Account's allocable share of any profits or losses pursuant to Section 3.8 and any credits or debits of any applicable carrying charge associated therewith other than any Performance Allocation to be debited against such Capital Account), plus (ii) any debits to such Capital Account during the Calculation Period to reflect any actual or deemed distributions or withdrawals with respect to such Capital Account, plus (iii) any debits to such Capital Account during the Calculation Period to reflect any items allocable to such Capital Account pursuant to Section 3.5(b) or (c); and

(b)    the balance of such Capital Account as of the commencement of the Calculation Period.

If the amount specified in clause (a) exceeds the amount specified in clause (b) such difference is a "***Positive Performance Change***," and if the amount specified in clause (b) exceeds the amount specified in clause (a), such difference is a "***Negative Performance Change***."

The Performance Change will be computed separately for each Capital Account (and thus each separately maintained capital sub-account created to reflect an additional contribution to a Capital Account).  Thus, if a Limited Partner has multiple Capital Accounts, the Performance Change will be calculated separately for each Capital Account and the resulting "Positive Performance Change" and "Negative Performance Change" shall be separately allocated to each such Capital Account and shall not be netted against each other.

"***Person***" means any individual, partnership, corporation, limited liability company, trust or other entity or any government (including a governmental agency or political subdivision thereof).

7

001874
APP. 001790

"***Positive Basis***" means, with respect to any Partner and as of any time of calculation, the excess of the amount that such Partner is entitled to receive upon withdrawal from or liquidation of the Partnership over such Partner's "adjusted tax basis" in its Interest for U.S. federal income tax purposes at such time (determined without regard to any adjustments made to such adjusted tax basis by reason of any Transfer of such Interest).

"***Positive Basis Partner***" means any Partner who withdraws from the Partnership and who has a Positive Basis as of the Withdrawal Date, but such Partner ceases to be a Positive Basis Partner at such time as it has received allocations pursuant to Section 3.11(c) equal to such Partner's Positive Basis as of the Withdrawal Date and without regard to such Partner's share of the liabilities of the Partnership under Section 752 of the Code.

"***Prior Agreement***" has the meaning set forth in the Preliminary Statements to this Agreement.

"***Realization Period***" has the meaning set forth in Section 6.1.

"***Recent Amendments***" means the changes to the terms of an investment in the Partnership as contemplated in this Agreement and the constituent documents related thereto, including, but not limited to, the re-designation of all Interests held by Limited Partners on the Effective Date as Series A Interests.

"***Regulations***" means the proposed, temporary and final U.S. Treasury Regulations promulgated under the Code, including any successor regulations.

"***Regulatory Allocations***" has the meaning set forth in Section 3.10(d).

"***Restricted Capital Accounts***" has the meaning set forth in Section 3.8(b).

"***Restricted Issues***" has the meaning set forth in Section 3.8(b).

"***Revocation Notice***" has the meaning set forth in Section 8.11(c).

"***RIC Limited Partner***" means a Limited Partner that is registered as an investment company under the Investment Company Act.

"***Schedule of Partners***" means a schedule to be maintained by the General Partner containing the following information with respect to each Partner: (a) name; (b) address; (c) date of admission; (d) amount and date of all capital contributions and withdrawals; and (e) the amount and date of any permitted Transfers.

"***Series***" means a designated series of Interests established in accordance with this Agreement and having such terms as the General Partner determines.

"***Series A Capital Account***" means the Capital Account attributable to a Limited Partner's Series A Interest.

8

"***Series A Interests***" means a Series of Interests having the rights and obligations applicable to Series A Interests as set forth in this Agreement.

"***Series A Lock-Up***" has the meaning set forth in Section 5.5(c)(i).

"***Series A Withdrawal Date***" has the meaning set forth in Section 5.5(c)(i).

"***Series B Capital Account***" means the Capital Account attributable to a Limited Partner's Series B Interest.

"***Series B Interests***" means a Series of Interests having the rights and obligations applicable to Series B Interests as set forth in this Agreement.

"***Series B Withdrawal Date***" has the meaning set forth in Section 5.5(c)(ii).

"***Series C Capital Account***" means the Capital Account attributable to a Limited Partner's Series C Interest.

"***Series C Interests***" means a Series of Interests having the rights and obligations applicable to Series C Interests as set forth in this Agreement.

"***Series C Withdrawal Date***" has the meaning set forth in Section 5.5(c)(iii).

"***Series D Capital Account***" means the Capital Account attributable to a Limited Partner's Series D Interest.

"***Series D Interests***" means a Series of Interests having the rights and obligations applicable to Series D Interests as set forth in this Agreement.

"***Series D Withdrawal Date***" has the meaning set forth in Section 5.5(c)(iv).

"***Sub-Series of Shares***" refers to sub-series of the shares of the Offshore Fund, as created from time to time, for purposes of accounting for any profits and losses attributable to each individual shareholder and of permitting the Performance Allocation to be calculated separately with respect to each shareholder to reflect different returns achieved as a result of subscriptions received from shareholders at different times.

"***Suspension***" has the meaning set forth in Section 5.5(l).

"***Super-Majority-in-Interest of Limited Partners***" means Limited Partners whose Partnership Percentages represent more than 75% of the aggregate Partnership Percentages of all Limited Partners.

"***Transfer***" means any direct, indirect or synthetic sale, exchange, transfer, assignment, pledge, encumbrance, charge, exchange, hypothecation, placing of a lien or a security interest on an Interest or any other disposition by a Partner of its Interest to or in favor of another party, whether voluntary or involuntary (including, but not limited to, being offered or listed on or through any placement agent, intermediary, online service, site, agent or similar Person).

Appx. 00492
001876

"***Withdrawal Date***" means, as applicable, the Series A Withdrawal Date, the Series B Withdrawal Date, the Series C Withdrawal Date, and the Series D Withdrawal Date or any other effective date of withdrawal pursuant to Section 5.5.

## Article II
## ORGANIZATION

**2.1    Continuation of Limited Partnership**

    (a)    The General Partner and the Limited Partners hereby agree to continue the Partnership as a limited partnership under and pursuant to the Act and this Agreement.

    (b)    The General Partner has executed and filed with the Secretary of State of the State of Delaware a Certificate, and shall execute, acknowledge and file with the Secretary any amendments thereto as may be required by the Act, and any other instruments, documents and certificates which, in the opinion of the Partnership's legal counsel, may from time to time be required by the laws of the United States of America, the State of Delaware or any other jurisdiction in which the Partnership determines to do business, or any political subdivision or agency thereof, or which such legal counsel may deem necessary or appropriate to effectuate, implement and continue the valid and subsisting existence and business of the Partnership.  The General Partner shall cause any required amendment to the Certificate to be filed promptly following the event requiring such amendment.   All amendments may be signed by the General Partner (as required by the Act) and may be signed either personally or by an attorney-in-fact.

    (c)    The parties hereto agree to operate the Partnership as a limited partnership pursuant to the provisions of the Act and of this Agreement and agree that the rights and liabilities of the Limited Partners and the General Partner are as provided in the Act, for limited partners and the general partner except as provided herein.

    (d)    The parties hereto acknowledge and agree that the Partnership shall be classified as a "partnership" and not as an association taxable as a corporation for U.S. federal income tax purposes.  No election may be made by the Partners or the Partnership to treat the Partnership as other than a "partnership" for U.S. federal, state and/or local income tax purposes and, to the extent necessary, the Partners or Partnership shall make any election to treat the Partnership as a "partnership."   The Partners shall treat the Partnership consistently with its status as a "partnership" for U.S. federal income tax purposes and agree to undertake any further action which is necessary to treat the Partnership as such, and shall not undertake any action that is inconsistent with the Partnership's status as a "partnership" for U.S. federal, state and/or local income tax purposes.

    (e)    The General Partner may change the domicile of the Partnership to another state, country or other jurisdiction where advisable due to legal, tax or other

10

APPX. 00492
001877

considerations; <u>provided</u> that no such change of domicile would reasonably be expected to have a material adverse effect on the Limited Partners.

**2.2    Name of Partnership**

(a)    The name of the Partnership is Highland Multi Strategy Credit Fund, L.P. or such other name as the General Partner may hereafter adopt, subject to causing an amendment to the Certificate to be filed with the Secretary of State of the State of Delaware in accordance with the Act.   The General Partner shall send a notice of any change of name to the Limited Partners.   All business of the Partnership shall be conducted under such name or under such other name as the General Partner deems appropriate.

(b)    The Partnership shall have the exclusive ownership and right to use the Partnership name so long as the Partnership continues, despite the withdrawal, expulsion, resignation or removal of any Limited Partner, but upon the Partnership's termination or at such time as there ceases to be a general partner, the Partnership shall assign the name and the goodwill attached thereto to the General Partner without payment by the assignee(s) of any consideration therefor.

**2.3    Principal Office; Registered Office**

(a)    The Partnership's principal office shall be at such location as the General Partner may designate from time to time.

(b)    The Partnership's registered office in the State of Delaware is at 1209 Orange Street, County of New Castle, Wilmington, Delaware 19801, and the registered agent of the Partnership in the State of Delaware is The Corporation Trust Company, unless a different registered office or agent is designated from time to time by the General Partner.

**2.4    Term of Partnership**

The term of the Partnership commenced on the date on which the Certificate was filed with the Secretary of State of the State of Delaware and continues until the Partnership is dissolved pursuant to Section 6.1 (unless its term is extended pursuant to Section 6.1).   The legal existence of the Partnership as a separate legal entity continues until the cancellation of the Certificate.

**2.5    Object and Powers of Partnership**

(a)    The object and business of the Partnership is (i) to purchase, sell (including short sales), invest and trade in Investments, (ii) to engage in financial transactions, including borrowing, financing, pledging, hedging and other derivative transactions relating thereto for the benefit of the Partnership, (iii) to engage in any lawful act or activity of which limited partnerships may be formed under the Act and (iv) to engage in any and all activities necessary or incidental to the foregoing.

Appx. 00494
001878

(b)    The Partnership possesses and may exercise all such powers and privileges as the General Partner considers necessary, convenient or incidental to the conduct, promotion or attainment of the object of the Partnership.

**2.6    Liability of Partners**

In no event shall any Limited Partner (or former Limited Partner) be obligated to make any contribution to the Partnership in addition to its agreed capital contribution (or other payments provided for herein) or have any liability for the repayment or discharge of the debts and obligations of the Partnership except to the extent provided herein or as required by the Act.

**2.7    Actions by Partnership**

The Partnership may execute, deliver and perform all contracts, agreements and other undertakings and engage in all activities and transactions as may in the opinion of the General Partner be necessary or advisable to carry out its objects.

**2.8    Reliance by Third Parties**

Persons dealing with the Partnership are entitled to rely conclusively upon the power and authority of the General Partner as herein set forth.

**2.9    UCC Status of Limited Partner Interests**

(a)    For purposes of the grant, pledge, attachment or perfection of a security interest in an Interest or otherwise, the Interests are deemed to be "securities" within the meaning of Section 8-102(a)(15) and as provided by Section 8-103(c) of the Uniform Commercial Code as in effect from time to time in the State of Delaware or analogous provisions in the Uniform Commercial Code in effect in any other jurisdiction.

(b)    Any Interest may be evidenced by a certificate of partnership interest issued by the Partnership in such form as the General Partner may approve.  Every certificate representing an Interest shall bear a legend substantially in the following form:

"For the purposes of Section 8-103 of the Uniform Commercial Code of the United States of America in effect in any relevant jurisdiction, the certificates representing an interest in the Limited Partnership constitute "securities" within the meaning of Section 8-102 and Section 8-103 of the Uniform Commercial Code."

**2.10    Series of Interests**

(a)    The General Partner, at any time, may without notification to or consent of the other Limited Partners, create and offer different Series of Interests in the Partnership with such rights, obligations, liabilities, privileges, designations and preferences (including different investment strategies, underlying investments, degrees of leverage, Management Fees, Performance Allocations, brokerage commissions, transparency, withdrawal rights, co-investment opportunities, and other

12

differences) as the General Partner may determine upon the issuance of such Series; <u>provided</u> that such Series would not reasonably be expected to have a material adverse effect on the existing Limited Partners.  The terms and rights of such Series may be set forth in a supplement to the Partnership's offering memorandum or a "side letter" or other agreement, which the General Partner may incorporate by reference.

(b)     All Interests in the Partnership held by Limited Partners (including Affiliated Investors) as of the Effective Date are hereby designated as Series A Interests.

## Article III
## CAPITAL

**3.1     Contributions to Capital**

(a)     The minimum required initial capital contribution of each Limited Partner is the amount determined by the General Partner.  The General Partner may change the required minimum initial contribution amount at any time with respect to any, all or less than all Limited Partners.

(b)     The Partnership may accept additional contributions at such times as the General Partner may permit, but no Limited Partner shall be obligated to make any additional capital contribution to the Partnership, subject to the provisions of Section 3.5(b) and any contrary provision of the Act.  The minimum required additional capital contribution of any existing Limited Partner to the Partnership shall be the amount the General Partner may determine.  The General Partner may change the required minimum additional contribution amount at any time with respect to any, all or less than all Limited Partners.

(c)     The General Partner or an Affiliate has made a capital contribution to the Partnership as set forth in the Schedule of Partners. Except as required by the Act, the General Partner is not required to make any additional capital contributions to the Partnership.   The General Partner may, however, make capital contributions to the Partnership in such amounts and at such times as it may determine.   The General Partner or any of its Affiliates have the right at any time to make additional capital contributions as a Limited Partner or General Partner.  If the General Partner or any of its Affiliates (including their associated Persons, such as officers, directors, partners, members or employees or any of their family members) makes a capital contribution as a Limited Partner, the General Partner or the Investment Manager shall have authority to waive the Management Fee and/or Performance Allocation with respect to such Limited Partner.

(d)     Except as otherwise permitted by the General Partner (i) initial or additional capital contributions by each Partner shall be paid in one installment with cash and/or Investments having an aggregate value as set forth in the Partnership's books and records, and (ii) initial contributions are due as of the date of admission of such Person as a Limited Partner of the Partnership.   Whether Investments may be

13

APPX 001880

accepted as a contribution to the capital of the Partnership is determined by the General Partner.

**3.2    Rights of Partners in Capital**

(a)    No Partner shall be entitled to interest on its capital contributions to the Partnership. For the avoidance of doubt, interest income, if any, earned on subscription amounts remitted to the Partnership prior to the date that an Interest is issued to a Partner shall be payable to the Partnership and not applied toward the purchase of an Interest.

(b)    No Partner shall have the right to the return of any capital contribution to the Partnership except (i) upon withdrawal of such Partner pursuant to Section 5.5 or (ii) upon the dissolution of the Partnership pursuant to Section 6.1. The entitlement to any such return is limited to the value of the Capital Account(s) of the Partner. The General Partner shall not be liable for the return of any such amounts.

**3.3    Capital Accounts**

(a)    The Partnership shall maintain a separate Capital Account for each Partner. In the event a Limited Partner invests in more than one Series of Interests, the Partnership will maintain a separate Capital Account with respect to each Series of Interests held by such Limited Partner, with each such Capital Account being treated as if it were the Capital Account of a separate Partner for purposes of computing the Performance Allocation, the Management Fee and the withdrawal rights attributable to the Series.

(b)    The General Partner may, in its discretion, maintain a separate sub-account for such purposes as the General Partner may determine appropriate, including for recordkeeping, accounting or reporting or to otherwise give effect to the provisions of this Agreement. Each Capital Account shall reflect the aggregate sum of the balances in such Partner's Capital Account.

(c)    If a Partner makes an additional capital contribution to an existing Capital Account, the Capital Account will be sub-divided into separate capital sub-accounts attributable to each separate capital contribution, with each capital sub-account treated as if it were the Capital Account of a separate Partner for purposes of determining the Management Fee, the Performance Allocation and withdrawal rights and restrictions applicable to each capital sub-account. References herein to a Partner's "Capital Account" include any such separately maintained capital sub-accounts.

(d)    The Partnership will issue to the Offshore Fund an Interest and maintain capital sub-accounts that correspond to each Sub-Series of Shares and each capital sub-account is treated separately for determining Management Fees, the Performance Allocations and withdrawal rights.

14

(e)     Each Capital Account has an initial balance equal to the amount of any cash and the net value of any property constituting the relevant Partner's initial capital contribution to such Capital Account.

(f)     Each Capital Account shall be increased by such Capital Account's allocable share of the Net Profits allocated by the Partnership to such Capital Account pursuant to Section 3.4.

(g)     Each Capital Account shall be reduced by (i) the amount of any cash and the net value of any property withdrawn by or distributed to the relevant Partner pursuant to Sections 5.5 or 6.3, including any amount deducted from any such withdrawal or distribution pursuant to Section 5.5(h), (ii) such Capital Account's allocable share of the Net Losses allocated by the Partnership to such Capital Account pursuant to Section 3.4, (iii) such Capital Account's *pro rata* portion of the expenses allocable (or specially allocable) by the Partnership pursuant to Section 3.5, (iv) such Capital Account's allocable share of the Performance Allocation allocable pursuant to Section 3.7, and (v) such Capital Account's *pro rata* portion of the expenses payable by the Partnership pursuant to Section 4.2(b).

(h)     The Capital Account of the Investment Manager, as a special Limited Partner of the Partnership, shall be increased by the amount of the Performance Allocation allocated to such Capital Account and the investment gains therein.

(i)     Each Capital Account shall also be adjusted to reflect all other allocations and other changes in the value of such Capital Account not otherwise described in this Section 3.3 in the manner specified in the remaining provisions of this Article III.

**3.4    Allocations of Net Profit and Net Loss**

Subject to Sections 3.5 through 3.10, as of the last day of each Accounting Period, any Net Profit or Net Loss of such Accounting Period shall be separately allocated among and credited to or debited against the Capital Accounts of the Partners in proportion to their respective Partnership Percentages for such Accounting Period.

**3.5    Allocation of Management Fees, Withholding Taxes and Certain Other Expenditures**

(a)     As of the first Business Day of each calendar quarter, each Capital Account's Management Fee for such calendar quarter shall be debited against such Capital Account and paid by the Partnership to the Investment Manager. Capital contributions accepted after the commencement of the calendar quarter shall be subject to a prorated Management Fee reflecting the time remaining during that quarter. The Investment Manager may reduce or eliminate the Management Fee with respect to any Partner (or Capital Account) in its sole discretion; provided that such reduction or elimination shall not increase the Management Fee payable by any other Partner (or Capital Account).

(b)     To the extent the General Partner or the Partnership is required by law (including under circumstances where the General Partner or the Partnership is unable to rely

15

conclusively on any withholding certification provided by a Partner) to withhold or to make tax payments on behalf of or with respect to any Partner or Partners (including backup withholding or withholding under FATCA), the General Partner or the Partnership may withhold such amounts and make such tax payments as so required.  If the Partnership pays or incurs any withholding tax or other tax obligation (including under FATCA) with respect to the income allocable or distributable to one or more Partners, then the amount of such withholding tax or tax obligation shall be treated as a distribution to such Partner or Partners, as applicable, pursuant to the terms of this Agreement.   Such amount shall be debited against the Capital Account(s) of such Partner or Partners as of the close of the Accounting Period during which the Partnership so withholds, pays or incurs such obligation.  If the amount so withheld, paid or incurred is greater than the balance of the Capital Account(s) of the relevant Partner or Partners, as applicable, then such Partner or Partners and any successors shall make a contribution to the capital of the Partnership, within 10 days following request by the General Partner, the amount of such excess.  The General Partner is not obligated to apply for or obtain a reduction of or exemption from withholding tax on behalf of any Partner that may be eligible for such reduction or exemption, or be otherwise obligated to structure Investments so as to reduce or avoid any such withholding tax.

(c)     Except as otherwise provided for in this Agreement, any expenditures payable by the Partnership, to the extent determined by the General Partner to have been paid or withheld on behalf of, or by reason of particular circumstances applicable to, one or more but fewer than all of the Partners, shall be specially allocated only to the Capital Accounts of those Partners on whose behalf such payments are made or whose particular circumstances gave rise to such payments.  Such allocations shall be debited from the relevant Capital Accounts of such Partners as of the close of the Accounting Period during which any such items were accrued by the Partnership.

**3.6     Reserves; Adjustments for Certain Future Events**

(a)     The General Partner may cause appropriate reserves to be created, accrued and charged against Net Assets and proportionately against the Capital Accounts for contingent liabilities or probable losses, such reserves to be in the amounts which the General Partner deems necessary or appropriate.  The General Partner may increase or reduce any such reserve from time to time by such amounts as the General Partner deems necessary or appropriate.  The amount of any such reserve, or any increase or decrease therein, may, at the election of the General Partner, be debited or credited, as the General Partner deems appropriate, to the Capital Accounts of current Partners that (i) are Partners at the time when such reserve is created, increased, or decreased, as the case may be, or (ii) were Partners, or are transferees from Persons who were Partners, at the time of the act or omission giving rise to the contingent liability for which the reserve has been established by the General Partner.

App. 00499
001883

(b)    If the General Partner determines that it is equitable to treat an amount to be paid or received as being applicable to one or more prior periods, then all or a portion of such amount may be proportionately debited or credited, as appropriate, in proportion to the Capital Account balances of the current Partners as such balances existed during any such prior period.

**3.7    Performance Allocation**

(a)    The Performance Allocation shall be debited against each Capital Account of each Limited Partner as of the last day of each Calculation Period with respect to such Capital Account, and the amount so debited shall simultaneously be credited to the Capital Account of the Investment Manager, as a special Limited Partner of the Partnership.

(b)    The Investment Manager may waive or alter the Performance Allocation with respect to any Limited Partner.

**3.8    Limited Participation Investments and New Issues**

(a)    If the General Partner determines that for legal, tax, regulatory or bona fide other reasons as to which the General Partner and any Partner may agree such Partner should not participate (or should receive a reduced participation) in the Net Profit or Net Loss with respect to any Investment, the General Partner may allocate Net Profit or Net Loss, if any, with respect to such Investment only to Partners to whom the restrictions on participating in that Investment do not apply.   In order to allocate Net Profit or Net Loss accordingly, the General Partner may establish and maintain a memorandum account in the accounting records of the Partnership on a Partner-by-Partner basis with respect to each such Investment. The Net Profit and Net Loss and expenses relating to such Investment will be separately calculated and allocated based on each participating Partner's balance in such memorandum account for such Investment divided by the sum of the balances of all memorandum accounts for all participating Partners.   In order to compensate a Limited Partner who is not participating in an Investment pursuant to this Section 3.8 for the use of such Partner's share of Partnership capital to purchase the Investment, the General Partner may credit the non-participating Partner's Capital Account (and correspondingly debit the Capital Account of the participating Partners with a carrying charge).   Any distributions from the memorandum account will be based on the participating Partner's respective percentage interest in such Investment.

(b)    Pursuant to certain rules of FINRA ("***New Issue Rules***"), members of FINRA are permitted to sell to the Partnership certain publicly-offered securities ("***Restricted Issues***") only if the Capital Accounts of Partners connected with the securities industry or executive officers or directors of investment banking clients of underwriters ("***Restricted Capital Accounts***") are not restricted from sharing a beneficial interest in such Restricted Issues in accordance with the provisions of the New Issue Rules.   Notwithstanding the provisions of Section 3.4, if the Partnership chooses to invest in Restricted Issues, the Partnership shall not allocate any items

17

of income, gain, loss, deduction and credit that relate to investments in Restricted Issues to Restricted Capital Accounts except to the extent permitted by the New Issue Rules, and shall instead allocate such items among the other Capital Accounts on a *pro rata* basis.  To the extent the New Issue Rules permit certain Persons with Restricted Capital Accounts to participate in profits and losses from Restricted Issues, the General Partner shall allocate such profits and losses from Restricted Issues among such Restricted Capital Accounts on a *pro rata* basis or on such other basis that the General Partner reasonably determines ensures compliance with the New Issue Rules.  To the extent consistent with the New Issue Rules, the General Partner shall determine when all Capital Accounts may participate in the Net Profit and Net Loss from any Restricted Issue.  The General Partner shall value any Restricted Issue at such time at the then-current price of the security in the secondary market.

**3.9      Allocation to Avoid Capital Account Deficits**

To the extent that any debits pursuant to this Article III would reduce the balance of the Capital Account of any Limited Partner below zero, that portion of any such debits shall instead be allocated to the Capital Account of the General Partner.  Any credits in any subsequent Accounting Period which would otherwise be allocable pursuant to this Article III to a Capital Account of any Limited Partner previously affected by the application of this Section 3.9 shall instead be allocated to the Capital Account of the General Partner in such amounts as are necessary to offset all previous debits attributable to such Limited Partner pursuant to this Section 3.9 not previously recovered.

**3.10      Regulatory Allocations**

Notwithstanding anything to the contrary in this Agreement:

(a)      <u>Qualified Income Offset</u>.   In the event any Limited Partner unexpectedly receives any adjustments, allocations, or distributions described in Section 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or 1.704-1(b)(2)(ii)(d)(6) of the Regulations, items of Partnership income and gain shall be specially allocated to each such Limited Partner in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the deficit balance in the Capital Account of such Limited Partner as quickly as possible; <u>provided</u> that an allocation pursuant to this Section 3.10(a) may be made only if and to the extent that such Limited Partner would have a deficit balance in its Capital Account after all other allocations provided for in this Article III have been tentatively made as if this Section 3.10(a) were not in this Agreement.  This Section 3.10(a) is intended to constitute a "qualified income offset" within the meaning of Section 1.704-1(b)(2)(ii) of the Regulations and is to be interpreted consistently therewith.

(b)      <u>Minimum Gain Chargeback</u>.    Notwithstanding any other provision of this Section 3.10, if there is a net decrease in Partnership Minimum Gain during any Fiscal Year, the Partners shall be specially allocated items of Partnership income and gain for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an

APPX. 00501
001885

amount equal to the portion of any such Partner's share of the net decrease in Partnership Minimum Gain, determined in accordance with Regulations Sections 1.704-2(f) and (g). This Section 3.10(b) is intended to comply with the minimum gain chargeback requirement in such Sections of the Regulations and shall be interpreted consistently therewith.

(c)   <u>Gross Income Allocation</u>.   In the event any Limited Partner has a deficit Capital Account at the end of any Fiscal Year that is in excess of the sum of (i) the amount such Limited Partner is obligated to restore pursuant to any provision of this Agreement and (ii) the amount such Limited Partner is deemed to be obligated to restore pursuant to the penultimate sentences of Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Regulations, each such Limited Partner shall be specially allocated items of Partnership gross income and gain in the amount of such excess as quickly as possible; <u>provided</u> that an allocation pursuant to this Section 3.10(c) may be made only if and to the extent that such Limited Partner would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Article III have been made as if Section 3.10(a) and this Section 3.10(c) were not in this Agreement.

(d)   <u>Curative Allocations</u>.   The allocations set forth this Section 3.10 (the "***Regulatory Allocations***") are intended to comply with certain requirements of the Regulations. It is the intent of the Partners that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with special allocations of other items of Partnership income, gain, loss, or deduction pursuant to this Section 3.10.   Therefore, notwithstanding any other provision of this Article III (other than the Regulatory Allocations), the General Partner shall make such offsetting special allocations of the Partnership income, gain, loss, or deduction in whatever manner it determines appropriate so that, after such offsetting allocations are made, each Partner's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Partner would have had if the Regulatory Allocations were not part of this Partnership Agreement and all Partnership items were allocated pursuant to other provisions of this Article III (other than the Regulatory Allocations).

(e)   <u>Nonrecourse Deductions</u>.   Any Nonrecourse Deductions for any Fiscal Year or other period shall be allocated to the Partners in accordance with their Partnership Percentages.

(f)   <u>Section 704(b) Compliance</u>.   The allocations provided in this Section 3.10 are intended to comply with the Regulations under Section 704(b) of the Code and may, as determined by the General Partner, be interpreted and applied in a manner consistent therewith.

**3.11   Allocations for Income Tax Purposes**

(a)   <u>Income Tax Allocations</u>.   Except as otherwise required by Code Section 704(c), items of income, gain, deduction, loss, or credit that are recognized for U.S. federal

APPX 001886

income tax purposes in each Fiscal Year shall be allocated among the Partners in such manner as to reflect equitably amounts credited to or debited against each Partner's Capital Account, whether in such Fiscal Year or in prior Fiscal Years. To this end, the Partnership shall establish and maintain records which shall show the extent to which the Capital Account of each Partner comprises amounts that have not been reflected in the taxable income of such Partner as of the last day of each Fiscal Year.   To the extent deemed by the General Partner to be feasible and equitable, taxable income and gains in each Fiscal Year shall be allocated among the Partners who have enjoyed the related credits to their Capital Accounts, and items of deduction, loss and credit in each Fiscal Year shall be allocated among the Partners who have borne the burden of the related debits to their Capital Accounts. Foreign tax credits attributable to taxes incurred by the Partnership shall be allocated in a manner consistent with Section 1.704-1(b)(4)(viii) of the Regulations. All matters concerning allocations for U.S. federal, state and/or local income tax purposes, including accounting procedures, not expressly provided for in this Agreement shall be determined by the General Partner.

(b)     Basis Adjustments.   To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Section 734(b) of the Code or Section 743(b) of the Code is required under Section 1.704-1(b)(2)(iv)(m) of the Regulations to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Partners in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations; provided that in the event that an adjustment to the book value of Partnership property is made as a result of an adjustment pursuant to Section 734(b) of the Code, items of income, gain, loss, or deduction, as computed for book and tax purposes, shall be specially allocated among the Partners so that the effect of any such adjustment shall benefit (or be borne by) the Partner(s) receiving the distribution that caused such adjustment.

(c)     Positive Basis Allocations.   If the Partnership recognized gains or items of gross income (including short-term capital gain) from the sale of Partnership assets for U.S. federal income tax purposes for any Fiscal Year in which one or more Positive Basis Partners withdraws from the Partnership pursuant to Section 5.5, the General Partner may elect:   (i) to allocate such gains or items of gross income among such Positive Basis Partners, pro rata in proportion to the respective Positive Basis of each such Positive Basis Partner, until either the full amount of such gains or items of gross income shall have been so allocated or the Positive Basis of each such Positive Basis Partner shall have been eliminated; and (ii) to allocate any gains or items of gross income not so allocated to Positive Basis Partners to the other Partners in such manner that reflects equitably the amounts credited to such Partners' Capital Accounts pursuant to Section 3.3; provided, however, that if, following such Fiscal Year, the Partnership recognizes gains or items of gross income from a sale of an Investment the proceeds of which are designated on the Partnership's books and records as being used to effect payment of all or part of the

20

liquidating share of any Positive Basis Partner, that continues to be a Partner in the Partnership following such withdrawal (*i.e.,* such Positive Basis Partner effected a partial, and not a complete, withdrawal of its Interest), then such Positive Basis Partner may be allocated an amount of such gains or items of gross income equal to the amount, if any, by which its or its Positive Basis as of the Withdrawal Date exceeds the amount allocated to such Partner pursuant to clause (i) of this Section 3.11(c).

(d)  <u>Negative Basis Allocations</u>.  If the Partnership recognizes net losses or items of gross loss or deduction (including short-term capital loss) from the sale of Partnership assets for U.S. federal income tax purposes for any Fiscal Year in which one or more Negative Basis Partners withdraws from the Partnership pursuant to Section 5.5, the General Partner may elect:   (i) to allocate such net losses or items of gross loss or deduction among such Negative Basis Partners, *pro rata* in proportion to the respective Negative Basis of each such Negative Basis Partner, until either the full amount of such losses or items of loss or deduction shall have been so allocated or the Negative Basis of each such Negative Basis Partner has been eliminated; and (ii) to allocate any net losses or items of gross loss or deduction not so allocated to Negative Basis Partners to the other Partners in such manner that reflects equitably the amounts credited to such Partners' Capital Accounts pursuant to Section 3.3; <u>provided</u>, <u>however</u>, that if, following such Fiscal Year, the Partnership recognizes net losses or items of gross loss and deduction from a sale of an Investment the proceeds of which are designated on the Partnership's books and records as being used to effect payment of all or part of the liquidating share of any Negative Basis Partner that continues to be a Partner in the Partnership following such withdrawal (*i.e.*, such Negative Basis Partner effected a partial, and not a complete, withdrawal of its Interest), there may be allocated to such Negative Basis Partner an amount of such net losses or items of gross loss or deduction equal to the amount, if any, by which its or its Negative Basis as of the Withdrawal Date exceeds the amount allocated to such Partner pursuant to clause (i) of this Section 3.11(d).

## 3.12   Individual Partner's Tax Treatment

Each Partner agrees not to treat, on any U.S. federal, state, local and/or non-U.S. income tax return or in any claim for a refund, any item of income, gain, loss, deduction or credit in a manner inconsistent with the treatment of such item by the Partnership or which would result in inconsistent treatment, and each Partner further agrees to treat, on any U.S. federal, state, local and/or non-U.S. income tax return in any claim for a refund, any item of income, gain, loss, deduction or credit in a manner consistent with the treatment of such item by the Partnership.

## 3.13   Distributions

(a)  The Partnership shall make distributions in respect of withdrawals in accordance with Section 5.5 and liquidation in accordance with Section 6.3.  In addition, the General Partner may make other distributions at the times and in the amounts the

APPX. 00504
001888

General Partner determines.   Any distributions may be paid in cash, in kind or partly in cash and partly in kind.

(b)     Notwithstanding any provision to the contrary contained in this Agreement, the Partnership, and the General Partner on behalf of the Partnership, may not make a distribution to any Partner on any account of its Interest if such distribution would violate Section 17-607 of the Act or other applicable law.

**Article IV**
**MANAGEMENT**

**4.1     Duties and Powers of the General Partner**

(a)     Subject to the terms and conditions of this Agreement, the General Partner has complete and exclusive power and responsibility, to the fullest extent permitted by the Act, for (i) all investment and investment management decisions to be undertaken on behalf of the Partnership and (ii) managing and administering the affairs of the Partnership, and shall have the power and authority to do all things that the General Partner considers necessary or desirable to carry out its duties hereunder and to achieve the purposes of the Partnership, whether or not such action or authority is expressly provided for in this Agreement.   Without limiting the foregoing generality, the General Partner's powers include the power to borrow, obtain leverage or otherwise incur indebtedness with respect to the Partnership's capital.

(b)     Without limiting the generality of the General Partner's duties and powers hereunder and notwithstanding anything to the contrary contained herein, the General Partner has full power and authority, subject to the other terms and provisions of this Agreement, to execute, deliver and perform such contracts, agreements and other undertakings on behalf of the Partnership, without the consent or approval of any other Person, and to engage in all activities and transactions, as it may deem necessary or advisable for, or as may be incidental to, the conduct of the business contemplated by this Section 4.1.

(c)     The General Partner may delegate to any other Person, including the Investment Manager, any power and authority vested in the General Partner pursuant to this Agreement.

(d)     The General Partner is the "tax matters partner" for purposes of Section 6231(a)(7) of the Code.   The General Partner has the exclusive authority in its determination to make any elections required or permitted to be made by the Partnership under any provisions of the Code or any other revenue laws.   The General Partner shall be entitled to be reimbursed by the Partnership for all costs and expenses incurred by it in connection with any administrative or judicial proceeding affecting tax matters of the Partnership and/or the Partners in their capacity as such and to be indemnified by the Partnership (solely out of Partnership assets) with respect to any

APPX 00505
001889

action brought against it in connection with any judgment in or settlement of any such proceeding.

(e)     Every power vested in the General Partner pursuant to this Agreement and any decision or determination that it is permitted to make is to be construed as a power to act (or not to act) in its sole and absolute discretion, except as otherwise expressly provided herein, and the General Partner shall be entitled to consider in making such decisions or determinations only such interests and factors as it desires, including its own interests.   No provision of this Agreement is to be construed to require the General Partner to violate the Act, the Advisers Act, or any other law, regulation or rule of any self-regulatory organization.   Notwithstanding any other provision of this Agreement, whenever in this Agreement, the General Partner is permitted or required to make a decision in its "good faith" or under another expressed standard, the General Partner must act under such express standard and will not be subject to any other or different standards.

(f)     Each Limited Partner shall deliver to the General Partner, upon a reasonable request, (i) an affidavit or certificate in form satisfactory to the General Partner that is sufficient to establish that the applicable Partner (and its partners, members, and/or beneficial owners, as the case may be) is not subject to withholding under the provisions of any U.S. federal, state, local, non-U.S. or other tax laws, or with respect to such Partner's tax status under such laws, and (ii) any information or documentation prescribed under FATCA or as may be necessary, as reasonably determined by the General Partner, for the Partnership to comply with its obligations under FATCA (including, but not limited to, information with respect to citizenship, residency, ownership or control of such Partner).   Each Limited Partner shall reasonably cooperate with the General Partner in connection with any tax audit of the Partnership, or any existing or former Investment.

**4.2     Expenses**

(a)     Except as otherwise provided herein, and in consideration of the Management Fee, the General Partner and the Investment Manager shall each pay all of its own operating and overhead costs, without reimbursement by the Partnership.

(b)     The Partnership shall pay, or reimburse the General Partner and the Investment Manager for, all other reasonable costs, fees and expenses arising in connection with the Partnership's operations.   Such expenses payable by the Partnership include the following:

(i)     all costs, fees and expenses directly related to Investments or prospective Investments (whether or not consummated) of the Partnership, including research and due diligence costs related to an Investment; brokerage commissions and other execution and transaction costs, interest on, and commitment fees and expenses arising out of, debit balances or borrowings; exchange, clearing and settlement charges; fees and expenses of any third-party providers of "back office" and "middle office" services relating to

APPX. 00596
001890

trade settlement; travel expenses; appraisal fees; investment banking fees and expenses; borrowing charges on Investments sold short; custody fees; and fees of consultants and finders relating to Investments or prospective Investments of the Partnership; the costs, fees and expenses of any appraisers, accountants or other experts engaged by the General Partner or the Investment Manager as well as other expenses directly related to the Partnership's Investments;

(ii)     any withholding, transfer or other taxes imposed on the Partnership;

(iii)    the reasonable, out-of-pocket fees, costs and expenses (including legal fees and expenses) incurred to comply with any applicable law, rule or regulation (including regulatory filings or other expenses of the Partnership and the pro rata portion of any regulatory and other expenses of the General Partner or the Investment Manager, which benefit or are attributable to the Partnership);

(iv)    the reasonable, out-of-pocket costs, fees and expenses for financial and tax accounting, bookkeeping and reporting services, and administrative services performed by any Person on behalf of the Partnership (e.g., the administrator of the Partnership), including the cost of any audit of the Partnership's financial statements and the preparation of its tax returns (including with respect to FATCA compliance);

(v)     Management Fees;

(vi)    the reasonable, out-of-pocket costs, fees and expenses of legal counsel and any other litigation or investigation involving Partnership activities;

(vii)   specific expenses incurred in obtaining, maintaining or performing systems, research and other information, including information service subscriptions, utilized with respect to the Partnership's Investments including without limitation for portfolio management, valuations and accounting purposes, including the costs of statistics and pricing services, service contracts for quotation equipment and related hardware, software, phone and internet charges;

(viii)  the reasonable, out-of-pocket costs, fees and expenses associated with the Recent Amendments, including legal and accounting fees, printing costs, reporting and providing information to existing and prospective Partners, obtaining requisite consent from Limited Partners, travel fees and expenses related to the Partnership's offering, filing fees (including any "blue sky" filing fees) and other out-of-pocket expenses and compliance with any applicable federal and state laws;

(ix)    the costs and expenses associated with meetings of Partners;

24

(x)    the expenses of the Advisory Committee and the members thereof, including any indemnification expenses;

(xi)    the costs associated with maintaining "directors and officers" or similar liability insurance for the benefit of the Partnership, the General Partner, the Investment Manager, or any other Indemnified Person; and

(xii)    any costs or expenses of winding up and liquidating the Partnership and

(xiii)    all costs, fees and expenses associated with the ongoing offering of Limited Partner Interests.

(c)    Expenses with respect to Section 4.2(b)(viii) above will be amortized by the Partnership over a period of 36 months from the Effective Date; however, the General Partner may limit the amount of expenses amortized so that the Partnership's audited financial statements do not contain qualification.

(d)    Except as otherwise provided elsewhere in this Agreement, including Sections 3.4, 3.5, 3.6, 3.8 and 5.5(i), expenses are generally borne *pro rata* by the Partners in accordance with their respective Partnership Percentages.

(e)    If the General Partner or the Investment Manager, as appropriate, incurs any Partnership expenses for the account or for the benefit of, or in connection with its activities or those of its Affiliates on behalf of, both the Partnership and any Other Account, the General Partner or the Investment Manager, as appropriate, shall allocate such expense among the Partnership and each such Other Account in proportion to the size of the Investment made by each in the activity or entity to which the expense relates, or in such other manner as the General Partner considers fair and reasonable.

(f)    The General Partner and the Investment Manager may, to the extent disclosed in the Partnership's offering memorandum or otherwise disclosed to the Limited Partners, use "soft dollars" generated by the Partnership. Use of "soft dollars" by the General Partner or the Investment Manager as disclosed herein shall not constitute a breach by either the General Partner or the Investment Manager of any fiduciary or other duty which the General Partner or the Investment Manager may be deemed to owe to the Partnership or its Partners.

**4.3    Rights of Limited Partners**

The Limited Partners may not take any part in the management, control or operation of the Partnership's business, and have no right or authority to act for the Partnership or to vote on matters other than the matters set forth in this Agreement or as required by applicable law.

**4.4    Other Activities of Partners**

(a)    The General Partner is not required to devote any specific amount of its time to the affairs of the Partnership, but shall devote such of its time to the business and affairs

APPX 00508
001892

of the Partnership as it may determine to be necessary to conduct the affairs of the Partnership for the benefit of the Partnership and the Partners.

(b)     Each Partner acknowledges and agrees that the General Partner, its Affiliates and their respective partners, managers, directors, officers, shareholders, members or employees may engage in or possess an interest in other business ventures or commercial dealings of every kind and description, independently or with others, including, but not limited to, management of other accounts, investment in, or financing, acquisition and disposition of, Investments, investment and management counseling, brokerage services, serving as directors, officers, advisers or agents of other issuers, partners of any partnership, or trustee of any trust, or entering into any other commercial arrangements, whether or not any such activities may conflict with any interest of the parties with respect to the Partnership.   Without in any way limiting the foregoing, each Partner hereby acknowledges that none of the General Partner, its Affiliates or their respective partners, managers, directors, officers, shareholders, members or employees shall have any obligation or responsibility to disclose or refer any of the investment or other opportunities obtained through activities contemplated by this Section 4.4(b) to the Partnership, but may refer the same to any other party or keep such opportunities for their own benefit.

(c)     The General Partner and its Affiliates shall act in a manner that each considers fair, reasonable and equitable on an overall basis in allocating investment opportunities to the Partnership and any Other Account.   The General Partner and its Affiliates shall allocate investment opportunities as set forth in their policies and procedures, as may be amended from time to time, and as communicated to Limited Partners through the Partnership's private offering memorandum for Interests or otherwise.

(d)     Each of the Partners hereby waives and covenants not to sue on the basis of any law (statutory, common law or otherwise) respecting the rights and obligations of the Partners *inter se* which is or may be inconsistent with this Section 4.4.

## 4.5     Exculpation; Indemnification

(a)     The General Partner, the Investment Manager, any of their Affiliates, each direct or indirect member, manager, partner, director, officer, shareholder and employee of any of the foregoing and, with the approval of the General Partner, any agent of any of the foregoing (including their respective executors, heirs, assigns, successors or other legal representatives) (each an "***Indemnified Person***") shall not be liable to the Partnership or to any of the Limited Partners for any loss or damage occasioned by any acts or omissions in the performance of services under this Agreement or the Investment Management Agreement, or otherwise in connection with the Partnership, its Investments or operations, unless such loss or damage has occurred by reason of the willful misconduct, fraud or gross negligence of such Indemnified Person or as otherwise required by law; provided that nothing in this Agreement is to be construed as waiving any legal rights or remedies which the Partnership may have under state or federal securities laws.

26

(b)     The Partnership (but not the Partners individually) shall indemnify each Indemnified Person to the fullest extent permitted by law against any cost, expense (including reasonable attorneys' fees), judgment or liability incurred by or imposed upon it in connection with any action, suit or proceeding (including any proceeding before any judicial, administrative or legislative body or agency) to which it may be made a party or otherwise be involved or with which it shall be threatened by reason of being or having been General Partner, having been the Investment Manager pursuant to the Investment Management Agreement or its having provided services to the Partnership; <u>provided</u> that the Indemnified Person is not so indemnified to the extent such cost, expense, judgment or liability has been finally determined (i) in a non-appealable decision on the merits in any such action, suit or proceeding, or (ii) on a plea of *nolo contendere*, to have been incurred or suffered by the Indemnified Person solely by reason of willful misconduct, fraud or gross negligence by the Indemnified Person.

(i)     The right to indemnification granted by this Section 4.5 shall be in addition to any rights to which the Indemnified Person may otherwise be entitled and shall inure to the benefit of the successors or assigns of such Indemnified Person. The Partnership shall pay the expenses incurred by the Indemnified Person in defending a civil or criminal action, suit or proceeding in advance of the final disposition of such action, suit or proceeding, upon receipt of an undertaking by the Indemnified Person to repay such payment if there is an adjudication or determination that it is not entitled to indemnification as provided herein; provided that no such advance shall be made in connection with any action brought by a Majority-in-Interest of the Limited Partners.

(ii)    In any suit in the name of the Partnership to recover expenses advanced pursuant to the terms of an undertaking, the Partnership shall be entitled to recover such expenses upon a final adjudication that the Indemnified Person or other Person claiming a right to indemnification hereunder has not met the applicable standard of conduct set forth in Section 4.5(a). In any such suit brought to enforce a right to indemnification or to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the Indemnified Person or other Person claiming a right to indemnification shall not be entitled to be indemnified, or to an advancement of expenses, hereunder shall be on the Partnership (or any Limited Partner acting derivatively or otherwise on behalf of the Partnership or the Limited Partners) unless otherwise required by applicable law.

(iii)   Each Indemnified Person may not satisfy any right of indemnity or reimbursement granted in this Section 4.5 or to which it may be otherwise entitled except out of the assets of the Partnership, and no Partner shall be personally liable with respect to any such claim for indemnity or reimbursement. The General Partner may obtain appropriate insurance on behalf, and at the expense, of the Partnership to secure the Partnership's obligations hereunder.

27

APPX 00510
001894

(iv) Nothing in this Agreement is to be construed as to provide for the indemnification of an Indemnified Person for any liability (including liability under U.S. federal securities laws) to the extent that such indemnification would be in violation of applicable law but is to be construed so as to effectuate this Section 4.5 to the fullest extent permitted by law.

(v) Each Indemnified Person shall be deemed a third-party beneficiary (to the extent not a direct party hereto) of this Agreement and, in particular, the provisions of this Section 4.5. The General Partner and/or the Investment Manager may enter into agreements on behalf of the Partnership with an Indemnified Person to provide an indemnity to the same extent provided in this Section 4.5.

**4.6    Advisory Committee**

(a) The General Partner and/or the Investment Manager may appoint a committee (the "***Advisory Committee***") composed of one or more individuals selected from time to time by the General Partner. No member of the Advisory Committee may be an Affiliate of the General Partner and/or the Investment Manager (except as a Limited Partner or as an investor in an Affiliate of the Partnership).

(b) If established, the Advisory Committee will meet with the General Partner and/or the Investment Manager from time to time as requested by and deemed appropriate by the General Partner and/or the Investment Manager to consult with and advise the General Partner and/or the Investment Manager on any matter deemed appropriate by the General Partner and/or the Investment Manager, including any circumstances involving conflicts of interest between the General Partner and/or the Investment Manager (and their Affiliates), on the one hand, and the Limited Partners and the Partnership, on the other.

(c) The General Partner and/or the Investment Manager may in its discretion seek the approval of the Advisory Committee or establish any other reasonable mechanism in connection with (i) approvals that are or would be required under the Investment Advisers Act (including Section 206(3)) or (ii) any other matter deemed appropriate by the General Partner and/or the Investment Manager. Each Limited Partner agrees that, except as otherwise specifically provided herein and to the extent permitted by applicable law, the approval of a majority of the members of the Advisory Committee at such time is binding upon the Partnership and each Partner with respect to any approval sought under this Section 4.6(c).

(d) As determined by the General Partner and/or the Investment Manager, meetings of the Advisory Committee may be held in person or by telephone. Approval of the Advisory Committee is deemed to have been given if given by a majority of those members present at a meeting or by a majority of all members of the Advisory Committee if given pursuant to a written consent without a meeting.

28

APPX 0051
001895

(e)     The Partnership agrees to reimburse members of the Advisory Committee for their out-of-pocket expenses relating to their services as Advisory Committee members and to indemnify each Advisory Committee member to the maximum extent permitted by law

(f)     In the event an Advisory Committee is not appointed, the General Partner and/or the Investment Manager may obtain the approval of an unaffiliated third party, as is determined advisable by the General Partner and/or the Investment Manager, and any such approval by such third party shall, to the extent permitted under applicable law, serve as the approval of the Advisory Committee and shall be binding on the Partnership and the Limited Partners.

**4.7     Alternative Investment Vehicles**

The General Partner shall have the right in connection with any Investment to direct the capital contributions of some or all of the Partners to be made through one or more alternative investment vehicles ("**_Alternative Investment Vehicles_**") and to exchange a portion of the Interests of one or more Limited Partners for similar equity interests in one or more Alternative Investment Vehicles if, in the judgment of the General Partner, the use of such vehicle or vehicles would allow the Partnership to overcome legal or regulatory constraints or invest in a more tax efficient manner and/or would facilitate participation in certain types of Investments; provided that the General Partner shall not employ the use of an Alternative Investment Vehicle in any manner that would reasonably be expected to have a material adverse effect on the participating Limited Partners. Any Alternative Investment Vehicle shall contain terms and conditions substantially similar to those of the Partnership and shall be managed by the General Partner or an Affiliate thereof, and such controlling Person is required to comply with the provisions of this Agreement applicable to Alternative Investment Vehicles.   Expenses related to an Alternative Investment Vehicle on behalf of less than all of the Partners shall not be borne by the Partners that do not participate in such Alternative Investment Vehicle.

**Article V**
**ADMISSIONS, TRANSFERS AND WITHDRAWALS**

**5.1     Admission of Limited Partners**

The General Partner may, at such times as the General Partner may determine, without advance notice to or consent from the Limited Partners, admit to the Partnership any Person who executes this Agreement or any other writing evidencing the intent of such Person to become a Limited Partner.   Such admission shall be effective when the General Partner enters the name of such Person on the books and records of the Partnership as a Partner and does not require the consent or approval of any other Partner.   The General Partner has the authority to reject subscriptions for Interests in whole or in part.

**5.2     Admission of Additional General Partners**

(a)     Except as provided in Section 5.2(b), the General Partner may admit one or more Persons as additional general partners to the Partnership.   No additional general

29

partner shall be added unless such additional general partner agrees to be bound by all of the terms of this Agreement.

(b)    Any Person to whom the General Partner has transferred its general partner interest in accordance with Section 5.4 shall be admitted to the Partnership as a substitute General Partner without the consent of the Limited Partners unless otherwise provided for in Section 5.4.

**5.3    Transfer of Interests of Limited Partners**

(a)    No Transfer of any Limited Partner's Interest, whether voluntary or involuntary, shall be valid or effective, and no transferee may become a substituted Limited Partner, unless the prior written consent of the General Partner has been obtained, which consent may be granted, withheld or conditioned for any reason by the General Partner.  Any attempted Transfer not made in accordance with this Section 5.3, to the fullest extent permitted by law, shall be void *ab initio*.

(b)    Prior to recognizing any Transfer in accordance with this Section 5.3, the General Partner may require the transferring Limited Partner to execute and acknowledge an instrument of Transfer in form and substance satisfactory to the General Partner, and may require the transferee to make certain representations and warranties to the Partnership and Partners and to accept, adopt and approve in writing all of the terms and provisions of this Agreement.

(c)    In the event of a Transfer of a Partner's Interest or in the event of a distribution of assets of the Partnership to any Partner, the Partnership may, but shall not be required to, file an election under Section 754 of the Code and in accordance with the applicable Regulations, to cause the basis of the Partnership's assets to be adjusted for U.S. federal income tax purposes as provided by Section 734 or 743 of the Code.

(d)    In the event of a Transfer at any time other than the end of a Fiscal Year, items of income, gain, loss, deduction or credit recognized by the Partnership for U.S. federal income tax purposes shall be allocated between the transferring parties, as determined by the General Partner, using any permissible method under Code Section 706(d) and the Regulations thereunder.  To the extent the transferring parties have given the General Partner written notice prior to the consent by the General Partner pursuant to Section 5.3(a) of their agreement to apply a particular and reasonable method, then the General Partner may elect to use such method.  The transferring parties agree to reimburse the General Partner and the Partnership for any incidental accounting fees and other expenses incurred by the General Partner and the Partnership in making allocations pursuant to this Section 5.3(d).

**5.4    Transfer of Interest of the General Partner**

The General Partner may Transfer its Interest as a General Partner in the Partnership; <u>provided</u> that if any such proposed Transfer would result in an "assignment" (as such term is

APPX 001512
001897

defined under the Advisers Act), the General Partner shall obtain the consent of Limited Partners constituting a Majority-in-Interest of Limited Partners that are not Affiliated Investors.

**5.5     Withdrawal of Interests of Partners**

(a)     The Interest of a Limited Partner may not be withdrawn from the Partnership prior to its dissolution except as provided in this Section 5.5.

(b)     Withdrawal rights are determined separately with respect to each Capital Account (and each capital sub-account, if applicable).  Each capital contribution shall be accounted for using a separate capital sub-account, and, in the case of a Limited Partner for which more than one capital sub-account is maintained, the withdrawals from any such capital sub-accounts shall be processed on a "first-in, first-out" basis based upon the date on which each capital contribution was made, unless otherwise agreed between the General Partner and such Partner.  Each capital sub-account relating to a contribution of capital from a Limited Partner will be treated as if it were the separate Capital Account of a separate Partner for the purposes of applying the withdrawal provisions of this Section 5.5.

(c)     Subject to a Suspension and the other provisions of this Section 5.5:

(i)     A Limited Partner may make a complete or partial withdrawal from its Series A Capital Account effective on the last Business Day of each calendar quarter occurring at least 36 calendar months after the contribution of the capital to be withdrawn (each, a "***Series A Withdrawal Date***") by providing written notice to the General Partner at least 90 days prior to the proposed Series A Withdrawal Date (such restriction, the "***Series A Lock-Up***").  For purposes of calculating the Series A Lock-Up, each Limited Partner holding Series A Interests on of the Effective Date is deemed to have made its initial contribution for Series A Interests as of the Effective Date.  Additional contributions for Series A Interests after the Effective Date will also be subject to the Series A Lock-Up, which lock-up period shall commence on the date of each such additional contribution.

(ii)     A Limited Partner may make a complete or partial withdrawal from its Series B Capital Account upon written notice to the General Partner at least 180 days prior to the applicable Series B Withdrawal Date. The "***Series B Withdrawal Date***" means: (i) the end of the day on the last Business Day of the calendar month that immediately precedes the one-year anniversary of the contribution of the capital to be withdrawn; and thereafter (ii) the end of the day on each one-year anniversary of the preceding Series B Withdrawal Date (or the last Business Day of such month).

(iii)    A Limited Partner may make a complete or partial withdrawal from its Series C Capital Account upon written notice to the General Partner at least 180 days prior to the applicable Series C Withdrawal Date.   The "***Series C Withdrawal Date***" means: (i) the end of the day on the last Business Day of

APPX. 00514
001898

the calendar month that immediately precedes the two-year anniversary of the contribution of the capital to be withdrawn; and thereafter (ii) the end of the day on each two-year anniversary of the preceding Series C Withdrawal Date (or the last Business Day of such month).

(iv)    A Limited Partner may make a complete or partial withdrawal from its Series D Capital Account effective on the last Business Day of each calendar quarter (each, a "***Series D Withdrawal Date***") occurring at least 12 calendar months after the contribution of the capital to be withdrawn by providing written notice to the General Partner at least 90 days prior to the proposed Series D Withdrawal Date.

(d)    Any notice of withdrawal shall be irrevocable by the Limited Partner, unless otherwise agreed by the General Partner. For the avoidance of doubt, if a Limited Partner notifies the General Partner of its intent to withdraw and later chooses not to withdraw (with the General Partner's consent), any transaction costs incurred by the Partnership or the General Partner in connection therewith may be charged to such withdrawing Limited Partner. The General Partner may refuse to honor any Limited Partner's request for a full or partial withdrawal if such request is not accompanied by such additional information as the General Partner may reasonably require, including any information required to determine the "adjusted basis" for U.S. federal income tax purposes in the Limited Partner's Interest withdrawn.

(e)    With respect to any amounts withdrawn, a withdrawing Partner shall not share in the income, gains and losses of the Partnership or have any other rights as a Partner (in the case of a complete withdrawal) after the applicable Withdrawal Date, and withdrawn amounts will be fixed as of the applicable Withdrawal Date, except as provided in Section 3.6. For the avoidance of doubt, none of the Partnership, the General Partner or the Investment Manager shall be liable to a Limited Partner for interest on the proceeds of any withdrawal.

(f)    At least 90% of the estimated amount due with respect to the Partnership's marketable investments is normally settled in cash or, subject to the sole discretion of the General Partner, wholly or partially with securities or other assets of the Partnership, within 30 Business Days after the Withdrawal Date, provided that the General Partner may delay such payment if such delay is reasonably necessary to prevent such withdrawal from having a material adverse impact on the Partnership or the remaining Capital Accounts. The General Partner is entitled to deduct from such settlement payment an amount equal to the pro rata portion of any Performance Allocation (based on the portion of the withdrawal being settled) payable to the Investment Manager with respect to such withdrawn amount. Any balance will be held back and distributed, without interest thereon, promptly following completion of the audit of the Partnership's financial statements for such Fiscal Year, or sooner in the General Partner's discretion.

(g)    In the case of a complete withdrawal, or a partial withdrawal that cannot be fully funded out of the Limited Partner's interest in the Partnership's marketable

32

investments, no settlements occur with respect to any of such Limited Partner's interest in the Partnership's non-marketable investments until the occurrence of liquidity events with respect to such non-marketable investments after the scheduled payment date for the withdrawal (without interest thereon). Notwithstanding the foregoing, the General Partner may, however, make settlements in such cases prior to the occurrence of a liquidity event if such settlement would, in the good faith opinion of the General Partner, not have a material adverse effect on the Partnership. Generally, a liquidity event will be a sale of the relevant investment for cash, in which case the settlement will be funded in cash within 90 days after the liquidity event (without interest). If the liquidity event is not a sale for cash, the General Partner may effect the settlement either by making a distribution in kind of the Limited Partner's ratable share of the relevant investment or by distributing the net proceeds derived from a sale of such investment. The General Partner is entitled to withdraw from each such settlement an amount equal to the remaining portion of any Performance Allocation (pro rata based on the portion of such withdrawal being distributed) to be credited to the Investment Manager at the same time and in the same form (in cash or in kind) as the distribution to the withdrawing Limited Partner.

(h)     The General Partner may effect withdrawal payments (i) in cash, (ii) in kind, by transfer of marketable or non-marketable Investments to the Limited Partner, the value of which, as determined in accordance with Section 7.2, would satisfy the Limited Partner's request for withdrawal, or (iii) in any combination of the foregoing.

(i)      The General Partner may deduct from any withdrawal proceeds due to any Limited Partner pursuant to this Section 5.5 an amount representing the Partnership's actual or estimated expenses, as determined by the General Partner, associated with processing the withdrawal. Any such withdrawal deduction shall be retained by the Partnership for the benefit of the remaining Limited Partners.

(j)      The right of any Partner to withdraw or receive distributions pursuant to the provisions of this Section 5.5 is subject to all Capital Account allocations and adjustments contemplated by this Agreement and to the provision by the General Partner for all Partnership liabilities and for reserves and holdbacks for contingencies provided in Section 3.6.

(k)     The General Partner may suspend or limit, in whole or in part, (i) the right of the Partners to withdraw or receive distributions from the Partnership and/or (ii) the valuation of the Partnership's Net Assets:

(i)      during any period when any exchange or over-the-counter market on which the Partnership's Investments are quoted, traded or dealt in is closed, other than for ordinary holidays and weekends, or during periods in which dealings are restricted or suspended;

33

APP. 00516
0011900

(ii) during the existence of any state of affairs as a result of which, in the reasonable opinion of the General Partner, disposal of, or withdrawals or redemptions from, Investments by the Partnership, or the determination of the value of the assets of the Partnership, would not be reasonably practicable;

(iii) during any breakdown in the means of communication normally employed in determining the price or value of the Partnership's assets or liabilities, or of current prices in any market as aforesaid, or when for any other reason the prices or values of any assets or liabilities of the Partnership cannot reasonably be accurately ascertained within a reasonable time frame;

(iv) during any period when the transfer of funds involved in the realization or acquisition of any Investments cannot, in the reasonable opinion of the General Partner, be effected at normal rates of exchange;

(v) in other circumstances where the General Partner is unable to fairly value the Partnership's assets due to extreme market conditions; or

(vi) automatically upon liquidation of the Partnership.

(l) In the event of any such suspension or limitation described above in Section 5.5(k) (a "**Suspension**"), the General Partner shall promptly notify each Limited Partner. Any Limited Partner who has submitted a withdrawal request and to whom payment in full of the amount being withdrawn has not yet been remitted is not given any priority with respect to the withdrawal of such Interests or portions thereof after the cause for such Suspension ceases to exist. The General Partner may, however, allow any such Partners to rescind their withdrawal requests to the extent of any portion thereof for which withdrawal proceeds have not yet been remitted. Upon the reasonable determination by the General Partner that conditions leading to Suspension no longer apply, withdrawal rights for all Limited Partners shall be promptly reinstated, and any pending withdrawal requests (or new, timely withdrawal requests) shall be honored as of the last Business Day of the calendar quarter in which withdrawals have recommenced, subject to the application of the withdrawal limitations described herein.

(m) The General Partner may, notwithstanding any Suspension, upon not less than five days' prior written notice (or immediately if the General Partner determines in its sole discretion that such Limited Partner's continued participation in the Partnership may cause the Partnership, the Investment Manager or the General Partner to violate any applicable law), require any Limited Partner's Interest to be withdrawn in part or in its entirety from the Partnership (including, but not limited to, for reasons relating to FATCA) and for the Limited Partner to cease to be a Limited Partner of the Partnership (in the case of a withdrawal of a Limited Partner's Interest in its entirety) pursuant to this Section 5.5(m). Except as otherwise provided herein, settlements of withdrawals pursuant to this Section 5.5(m) are made in the same manner as voluntary withdrawals.

APPX 00517
0019017

(n)     Notwithstanding the foregoing, the General Partner may waive any restrictions on any Limited Partner's ability to withdraw.

### Article VI
### SOFT WIND DOWN, DISSOLUTION AND LIQUIDATION

**6.1     Soft Wind Down**

(a)     The General Partner may, in consultation with the Investment Manager, make a determination that the investment strategy should no longer be continued (whether or not the General Partner has implemented a Suspension).  Having made such determination, the Investment Manager may recommend to the General Partner to cause the Partnership to return the Partnership's assets to Limited Partners in an orderly manner (without proceeding with a liquidation of the Partnership) (an "***Orderly Realization***").  The General Partner may, in such circumstances, resolve to effect an Orderly Realization should it determine that doing so is in the best interests of the Partnership as a whole.  Such Orderly Realization shall not constitute a dissolution or winding up of the Partnership for any purposes, but rather only the continued management of the Partnership's portfolio so as to reduce such portfolio to cash (to the extent reasonably practicable, as advised by the Investment Manager) and return such cash as well as all other assets of the Partnership to the Limited Partners.

(b)     The General Partner will notify the Limited Partners of any decision to proceed with an Orderly Realization of the Partnership.  During an Orderly Realization, the Investment Manager may, in consultation with the General Partner, take such steps as are considered appropriate in the best interests of the Partnership as a whole to effect the Orderly Realization.  The General Partner, in consultation with the Investment Manager, shall establish what they consider to be a reasonable time by which the Orderly Realization should be effected (the "***Realization Period***").  Any resolution to undertake an Orderly Realization and the process thereof shall be deemed to be integral to the business of the Partnership and may be carried out without recourse to a formal process of liquidation under Delaware law or any other applicable bankruptcy or insolvency regime.

(c)     The General Partner, in consultation with the Investment Manager, may resolve to cease the Orderly Realization within the Realization Period and recommence active trading if the circumstances permit a lifting of any applicable Suspension or, where no Suspension is in effect, if the circumstances are such that the investment strategy can then be continued.

(d)     Management Fees, and all other fees and expenses, shall be payable and Performance Allocations shall be made during an Orderly Realization on the same basis as provided herein.

35

**6.2     Dissolution of Partnership**

(a)     The Partnership shall be dissolved upon the first to occur of the following dates:

  (i)     any date on which the General Partner shall elect in writing to dissolve the Partnership; or

  (ii)    the occurrence of any other event causing (A) the General Partner (or a successor to its business) to cease to be the general partner of the Partnership or (B) the dissolution of the Partnership under the Act.

(b)     In the event an Orderly Realization lasts longer than three years, a Super-Majority-in-Interest of the Limited Partners may seek a court decree of dissolution or seek the appointment by the court of a liquidator for the Partnership.  The Limited Partners will not have any other right to bring an action in court to dissolve the Partnership.  The parties agree that irreparable damage would be done to the goodwill and reputation of the Partners if any Limited Partner should bring an action in court to dissolve the Partnership.  Care has been taken in this Agreement to provide for fair and just payment in liquidation of the Interests of all Partners.  Accordingly, each Limited Partner hereby waives and renounces its right to such a court decree of dissolution or to seek the appointment by the court of a liquidator for the Partnership except as provided herein.

**6.3     Liquidation of Assets**

(a)     Upon dissolution of the Partnership, the General Partner shall promptly liquidate the business and administrative affairs of the Partnership to the extent feasible, except that if the General Partner is unable to perform this function, a liquidator elected by a Majority-in-Interest of Limited Partners shall liquidate the business and administrative affairs of the Partnership.  Net Profit and Net Loss during any Accounting Period, which includes the period of liquidation, shall be allocated pursuant to Article III.  The proceeds from liquidation shall be divided in the following manner, subject to the Act:

  (i)     the debts, liabilities and obligations of the Partnership, other than any debts to the Partners as Partners, and the expenses of liquidation (including legal, administrative and accounting expenses incurred in connection therewith), up to and including the date that distribution of the Partnership's assets to the Partners has been completed, shall first be satisfied (whether by payment or the making of reasonable provision for payment thereof);

  (ii)    such debts as are owing to the Partners as Partners are next paid; and

  (iii)   the Partners shall next be paid liquidating distributions (in cash or in securities or other assets, whether or not readily marketable) *pro rata* in accordance with, and up to the positive balances of their respective Capital Accounts, as adjusted pursuant to Article III to reflect allocations for the

APPX 001903

Accounting Period ending on the date of the distributions under this Section 6.1(a)(iii).

(b)     Notwithstanding this Section 6.3 and the priorities set forth in the Act, the General Partner or liquidator may distribute ratably in kind rather than in cash, upon dissolution, any assets of the Partnership; provided, however, that if any in kind distribution is to be made, (i) the assets distributed in kind shall be valued pursuant to Section 7.2, and charged as so valued and distributed against amounts to be paid under Section 6.3(a) and (ii) any gain or loss (as computed for book purposes) attributable to property distributed in kind shall be included in the Net Profit or Net Loss for the Accounting Period ending on the date of such distribution.

## Article VII
## ACCOUNTING AND VALUATION; BOOKS AND RECORDS

**7.1    Accounting and Reports**

(a)     The Partnership may adopt for tax accounting purposes any accounting method that the General Partner shall decide is in the best interests of the Partnership and that is permissible for U.S. federal income tax purposes.

(b)     As soon as practicable after the end of each Fiscal Year thereafter, the General Partner shall cause an audit of the financial statements of the Partnership as of the end of each such period to be made by a firm of independent accountants selected by the General Partner.  As soon as is practicable thereafter, but subject to Section 7.4, the General Partner shall furnish to each Limited Partner a copy of the set of financial statements prepared in accordance with GAAP, with such adjustments thereto as the General Partner determines appropriate, including the report of such independent accountants.

(c)     As soon as practicable after the end of each taxable year, the General Partner shall furnish to each Limited Partner such information as may be required to enable each Limited Partner properly to report for U.S. federal, state and local income tax purposes its distributive share of each Partnership item of income, gain, loss, deduction or credit for such year.   The General Partner shall have discretion as to how to report Partnership items of income, gain, loss, deduction or credit on the Partnership's tax returns, and the Limited Partners shall treat such items consistently on their own tax returns.

(d)     As soon as practicable after the end of each calendar month, but subject to Section 7.5, the General Partner shall arrange for the preparation and delivery to each Limited Partner of an interim report containing such information concerning the affairs of the Partnership (which need not include any financial statements) as the General Partner considers appropriate.

CONFIDENTIAL
001904

### 7.2    Valuation of Partnership Assets and Interests

(a)    The General Partner (or its delegate, including the Investment Manager or the administrator of the Partnership) shall value the assets of the Partnership as of the close of business on the last day of each Accounting Period.  Such valuations will generally be in accordance with GAAP, with such adjustments thereto as the General Partner reasonably determines appropriate.  In addition, the General Partner shall value the assets which are being distributed in kind as of the close of the Business Day immediately preceding the distribution date in accordance with Section 5.5(c) or Section 6.3(b).  In determining the value of the assets of the Partnership, no value shall be placed on the goodwill or name of the Partnership, or the office records, files, statistical data or any similar intangible assets of the Partnership not normally reflected in the Partnership's accounting records, but there shall be taken into consideration any related items of income earned but not received, expenses incurred but not yet paid, liabilities fixed or contingent, prepaid expenses to the extent not otherwise reflected in the books of account, and the value of options or commitments to purchase or sell securities pursuant to agreements entered into on or prior to such valuation date.

(b)    To the extent readily available, valuations will be based on independent market quotations obtained by the General Partner from recognized pricing services, market participants or other sources.  In the case of any Investment for which a quotation from an independent source is not available or is determined by the General Partner to be unreliable or inadequate, the General Partner (i) shall be authorized, to the extent permitted by applicable law, to value such positions at their fair value in such manner as the General Partner determines in good faith, or (ii) may (but shall not be required to) obtain an appraisal, at the expense of the Partnership, by an independent third party selected by the General Partner.   Except as otherwise determined by or at the direction of the General Partner, investment and trading transactions shall be accounted for on the trade date.

(c)    Accounts shall be maintained in U.S. dollars, and except as otherwise determined by or at the direction of the General Partner:  (i)  assets and liabilities denominated in currencies other than U.S. dollars shall be translated at the rates of exchange quoted by an independent pricing service as in effect as of the close of business on the relevant valuation dates (and exchange adjustments shall be recorded in the results of operations); and (ii) investment and trading transactions and income and expenses shall be translated at the rates of exchange in effect at the time of each transaction.

### 7.3    Determinations by the General Partner

(a)    All matters concerning the determination and allocation among the Partners of the amounts to be determined and allocated pursuant to this Agreement, including Article III and accounting procedures applicable thereto, shall be determined by the General Partner, unless specifically and expressly otherwise provided for by the provisions of this Agreement, and such determinations and allocations shall be final

38

APPX 00521
001905

and binding on all the Partners; provided, however, that all calculations of the Performance Allocation will be made on the basis of, or subject to correction based on, the annual audit of the Partnership's financial statements and appropriate adjustments will be made to all such calculations and related allocations to the extent necessary as a result of that audit.

(b)     The General Partner may make such adjustments to the computation of Net Profit or Net Loss or any other allocations with respect to any Limited Partner, or any component items comprising any of the foregoing, as it considers appropriate to reflect the financial results of the Partnership and the intended allocation thereof among the Partners in a reasonably accurate, fair and efficient manner. Without limiting the generality of the foregoing, any provision of this Agreement that requires an adjustment to be made to any Capital Account or sub-account as of any mid-month or mid-quarter date may be made as of the most recent preceding or succeeding date when a regular valuation is being conducted.

**7.4     Books and Records**

(a)     The General Partner shall keep books and records pertaining to the Partnership's affairs showing all of its assets and liabilities, receipts and disbursements, realized income, gains, deductions and losses, Partners' Capital Accounts and all transactions entered into by the Partnership.  The General Partner shall afford to the Partnership's independent auditors reasonable access to such documents during customary business hours and shall permit the Partnership's auditors to make copies thereof or extracts therefrom at the expense of the Partnership.

(b)     The General Partner shall establish such standards as it deems appropriate regarding the access of Limited Partners to the books and records of the Partnership and shall not be obliged to permit access by a Limited Partner to the name or address of any other Limited Partner.

**7.5     Confidentiality**

(a)     Each Limited Partner agrees to keep confidential, and not to make any use of (other than for purposes reasonably related to its Interest or for purposes of filing such Limited Partner's tax returns) or disclose to any Person, any information or matter relating to the Partnership and its affairs and any information or matter related to any Investment (other than disclosure to such Limited Partner's directors, employees, agents, advisors, or representatives responsible for matters relating to the Partnership or to any other Person approved in writing by the General Partner (each such Person being hereinafter referred to as an "***Authorized Representative***")); provided that (i) such Limited Partner and its Authorized Representatives may make such disclosure to the extent that (A) the information to be disclosed is publicly available at the time of proposed disclosure by such Limited Partner or Authorized Representative, (B) the information otherwise is or becomes legally available to such Limited Partner other than through disclosure by the Partnership or the General Partner, or (C) such disclosure is required by law or in

39

APPX 00522
001906

response to any governmental agency request or in connection with an examination by any regulatory authorities; provided that such governmental agency, regulatory authorities or association is aware of the confidential nature of the information disclosed; (ii) such Limited Partner and its Authorized Representatives may make such disclosure to its beneficial owners to the extent required under the terms of its arrangements with such beneficial owners; and (iii) each Limited Partner will be permitted, after written notice to the General Partner, to correct any false or misleading information which becomes public concerning such Limited Partner's relationship to the Partnership or the General Partner. Prior to making any disclosure required by law, each Limited Partner shall use its best efforts to notify the General Partner of such disclosure. Prior to any disclosure to any Authorized Representative or beneficial owner, each Limited Partner shall advise such Authorized Representative or beneficial owner of the obligations set forth in this Section 7.5(a) and each such Authorized Representative or beneficial owner shall agree to be bound by such obligations.

(b)     The General Partner may keep confidential from the Limited Partners, for such period of time as the General Partner deems reasonable, any information, including the identity of the Partners or information regarding the Partners or Investments, which the General Partner reasonably believes to be in the nature of trade secrets or other information the disclosure of which the General Partner believes is not in the best interests of the Partnership or could damage the Partnership or its business or which the Partnership is required by law or agreement with a third party to keep confidential.

(c)     Subject to applicable legal and regulatory considerations, the General Partner shall use reasonable efforts to keep confidential any information relating to a Limited Partner obtained by the General Partner in connection with or arising out of the Partnership which the Limited Partner requests to be kept confidential.

(d)     Notwithstanding the provisions of this Section 7.5, Partners (and their employees, representatives and other agents) may disclose to any and all Persons, without limitation of any kind, the tax treatment and tax structure of the Partnership and its transactions and all materials of any kind (including tax opinions or other tax analyses) that are provided to such Person by, or on behalf of the Partnership. For this purpose, "tax treatment" is the purported or claimed U.S. federal income tax treatment of a transaction and "tax structure" is limited to any fact that may be relevant to understanding the purported or claimed U.S. federal income tax treatment of a transaction. For this purpose, the names of the Partnership, the Partners, their affiliates, the names of their partners, members or equity holders and the representatives, agents and tax advisors of any of the foregoing are not items of tax structure.

(e)     The General Partner may disclose to prospective investors such information relating to the Partnership or the Investments as it believes in good faith will benefit the Partnership and facilitate investment in the Partnership by such prospective investors.

40

(f)    The Investment Manager and a Person acting as a service provider to the Partnership shall have the right to access all information belonging to the Partnership.

## Article VIII
## GENERAL PROVISIONS

**8.1    Amendment of Partnership Agreement**

(a)    Except as otherwise provided in this Section 8.1, this Agreement may be amended, in whole or in part, with the written consent of (i) the General Partner and (ii) the consent of a Majority-in-Interest of Limited Partners (which approval may be obtained by negative consent affording the Limited Partners at least 30 calendar days to object).

(b)    Any amendment that would:

    (i)    increase the obligation of a Partner to make any contribution to the capital of the Partnership;

    (ii)    reduce the Capital Account of a Partner other than in accordance with Article III;

    (iii)    adversely alter any Partner's rights with respect to the allocation of Net Profit or Net Loss or with respect to distributions and withdrawals; or

    (iv)    change the respective liabilities of the General Partner and the Limited Partners;

may only be made if the consent of each Partner adversely affected thereby is obtained (which consent may be obtained by negative consent affording the Partner at least 30 calendar days to object).

(c)    Notwithstanding paragraphs (a) and (b) of this Section 8.1, this Agreement may be amended by the General Partner without the consent of the Limited Partners, at any time and without limitation, if any Limited Partner whose contractual rights as a Limited Partner would be materially and adversely changed by such amendment has an opportunity to withdraw from the Partnership as of a date determined by the General Partner that is not less than 30 calendar days after the General Partner has furnished written notice of such amendment to each affected Limited Partner and that is prior to the effective date of the amendment.    The admission and withdrawal of Limited Partners will not require notice or disclosure to, or the approval of, the other Limited Partners.

(d)    The General Partner may at any time without the consent of the other Partners:

APPX 00524
001908

(i)     add to the representations, duties or obligations of the General Partner or surrender any right or power granted to the General Partner under this Agreement, for the benefit of the Limited Partners;

(ii)     cure any ambiguity or correct or supplement any conflicting provisions of this Agreement;

(iii)     change the name of the Partnership;

(iv)     make any changes required by a governmental body or agency which is deemed to be for the benefit or protection of the Limited Partners, provided, however, that no such amendment may be made unless such change (A) is for the benefit of, or not adverse to, the interests of Limited Partners, (B) does not affect the right of the General Partner to manage and control the Partnership's business, (C) does not affect the allocation of profits and losses among the Partners and (D) does not affect the limited liability of the Limited Partners;

(v)     amend this Agreement to reflect a change in the identity of the General Partner which has been made in accordance with this Agreement;

(vi)     amend this Agreement (other than with respect to the matters set forth in Section 8.1(b)) to effect compliance with any applicable laws, regulations or administrative actions;

(vii)     subject to Section 8.1(b), amend this Agreement to reflect the creation, and terms, of any new Series of Interests;

(viii)     effect any other amendment which would not, in the good faith judgment of the General Partner, adversely affect any of the existing Limited Partners; and

(ix)     restate this Agreement together with any amendments hereto which have been duly adopted in accordance herewith to incorporate such amendments in a single, integrated document.

(e)     Following the adoption of any amendments to this Agreement pursuant to 8.1(d), the General Partner shall promptly deliver a copy of such amendments to this Agreement to the Limited Partners.

(f)     The General Partner may agree with a Limited Partner to waive or modify the application of any provision of this Agreement with respect to such Limited Partner without notifying or obtaining the consent of any other Limited Partner (other than a Limited Partner whose rights as a Limited Partner pursuant to this Agreement would be materially and adversely changed by such waiver or modification).  Any such waiver or modification may be evidenced by a "side letter" or other document which will govern with respect to the applicable Limited Partner and be incorporated as part of this Agreement.

APP 00525
001909

**8.2**    **Special Power-of-Attorney**

(a)    Each Limited Partner hereby irrevocably makes, constitutes and appoints the General Partner (and each of its successors and permitted assigns), with full power of substitution, the true and lawful representative and attorney-in-fact of, and in the name, place and stead of, such Limited Partner with the power from time to time to make, execute, sign, acknowledge, swear to, verify, deliver, record, file or publish:

(i)    an amendment to this Agreement that complies with the provisions of this Agreement (including the provisions of Section 8.1);

(ii)    the Certificate and any amendment thereof required because this Agreement is amended, including an amendment to effectuate any change in the membership of the Partnership or in the capital contributions of the Partners;

(iii)    any financing statement or other filing or document required or permitted to perfect the security interests contemplated by any provision hereof; and

(iv)    all such other instruments, documents and certificates which, in the opinion of legal counsel to the Partnership, may from time to time be required by the laws of the United States of America, the State of Delaware, or any other jurisdiction in which the Partnership determines to do business, or any political subdivision or agency thereof, or which such legal counsel may deem necessary or appropriate to effectuate, implement and continue the valid and subsisting existence and business of the Partnership as a limited partnership, exchange a portion of a Limited Partner's Interest for similar equity interests in an Alternative Investment Vehicle, or to effect the dissolution or termination of the Partnership.

(b)    Each Limited Partner is aware that the terms of this Agreement permit certain amendments to this Agreement to be effected and certain other actions to be taken or omitted by or with respect to the Partnership without that Limited Partner's consent.  If an amendment of the Certificate or this Agreement or any action by or with respect to the Partnership is taken by the General Partner in the manner contemplated by this Agreement, each Limited Partner agrees that, notwithstanding any objection which such Limited Partner may assert with respect to such action, the General Partner in its sole discretion is authorized and empowered, with full power of substitution, to exercise the authority granted above in any manner which may be necessary or appropriate to permit such amendment to be made or action to be lawfully taken or omitted.  Each Partner is fully aware that each other Partner relies on the effectiveness of this special power-of-attorney with a view to the orderly administration of the affairs of the Partnership.  This power-of-attorney is a special power-of-attorney and is coupled with an interest in favor of the General Partner and as such:

(i)    is irrevocable and continues in full force and effect notwithstanding the subsequent death or incapacity of any party granting this power-of-attorney,

APPX. 00526
001910

regardless of whether the Partnership or the General Partner has had notice thereof; and

(ii)    survives the delivery of an assignment by a Limited Partner of the whole or any portion of such Limited Partner's Interest, except that where the assignee thereof has been approved by the General Partner for admission to the Partnership as a substituted Limited Partner, this power-of-attorney given by the assignor survives the delivery of such agreement for the sole purpose of enabling the General Partner to execute, acknowledge and file any instrument necessary to effect such substitution.

**8.3    Notices**

Notices which may be or are required to be given under this Agreement by any party to another shall be given by hand delivery, transmitted by facsimile, transmitted electronically to an address that has been previously provided or verified through another form of notice or sent by registered or certified mail, return receipt requested or internationally recognized courier service, and shall be addressed to the respective parties hereto at their addresses as set forth on the register of Partners maintained by the General Partner or to such other addresses, facsimile numbers or electronic addresses as may be designated by any party hereto by notice addressed to (a) the General Partner, in the case of notice given by any Limited Partner, and (b) each of the Limited Partners, in the case of notice given by the General Partner.  Notices will be deemed to have been given (i) when delivered by hand, transmitted by facsimile or transmitted electronically or (ii) on the date indicated as the date of receipt on the return receipt when delivered by mail or courier service.

**8.4    Agreement Binding Upon Successors and Assigns; Delegation**

This Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors, but the rights and obligations of the Partners hereunder are not assignable, transferable or delegable except as provided in Sections 4.1(c), 5.3 and 5.4, and any attempted assignment, transfer or delegation thereof which is not made pursuant to the terms of such Sections will be null and void *ab initio*.

**8.5    Governing Law**

This Agreement is, and the rights of the Partners hereunder are, governed by and shall be construed in accordance with the laws of the State of Delaware, without regard to the conflict of laws rule thereof which would result in the application of the laws of a different jurisdiction.   The parties hereby consent to the exclusive jurisdiction and venue for any action arising out of this Agreement in the courts located in Dallas County, Texas.  Each Partner consents to service of process in any action or proceeding involving the Partnership by the mailing thereof by registered or certified mail, postage prepaid, to such Partner's mailing address set forth in the register of Partners maintained by the General Partner.

APPX 00527
001917

## 8.6     Not for Benefit of Creditors

The provisions of this Agreement are intended only for the regulation of relations among Partners and between Partners and former or prospective Partners and the Partnership.   Except for the rights of the Indemnified Persons hereunder, this Agreement is not intended for the benefit of non-Partner creditors and no rights are granted to non-Partner creditors under this Agreement.

## 8.7     Dispute Resolution

The following procedures shall be used to resolve any controversy or claim ("**_Dispute_**") arising out of, relating to or in connection with the Agreement or otherwise involving the Partnership, its Partners and/or any Indemnified Person.   If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

    (a)     <u>Mediation</u>

        (i)     Any Dispute shall be submitted to mediation by written notice to the other party or parties.   In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations.   The mediator will be selected by agreement of the parties.   If the parties cannot agree on a mediator, a mediator shall be designated by JAMS/Endispute at the request of a party using, if necessary, strike and rank procedures then in effect.

        (ii)     The mediation will be conducted as specified by the mediator and agreed upon by the parties.   The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.

        (iii)     The mediation will be treated as a settlement discussion and therefore will be confidential.   The mediator may not testify for either party in any later proceeding relating to the dispute.   No recording or transcript shall be made of the mediation proceedings.

        (iv)     Each party will bear its own costs in the mediation.   The fees and expenses of the mediator will be shared equally by the parties.

    (b)     <u>Arbitration</u>

        (i)     If a Dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration.   A party who files a suit in court regarding a Dispute rather than in arbitration waives its claim and must pay all attorney's fees and costs incurred by the other party in seeking to have such suit dismissed. Under no circumstances will a party maintain its right to pursue his/her/its Dispute if that party initiates a judicial suit instead of complying with the

APPX 001912
APPX 00528

mediation and arbitration provisions herein. The arbitration will be conducted through JAMS/Endispute in accordance with the procedures in this document and the commercial dispute arbitration rules then in effect ("***Arbitration Rules***"). In the event of a conflict, the provisions of this document will control.

(ii)     The arbitration will be conducted before a panel of three arbitrators, regardless of the size of the dispute, to be selected as provided in the Arbitration Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the U.S. Federal Arbitration Act ("***FAA***"), and resolved by the arbitrators, *provided, however*, that the Partnership or such applicable affiliate thereof may pursue a temporary restraining order and/or preliminary injunctive relief in connection with confidentiality, non-competition, non-solicitation or non-recruitment covenants or agreements binding on any party, with related expedited discovery for the parties, in a court of law, and, thereafter, require arbitration of all issues of final relief. Under no circumstances will a state arbitration act preclude application of the FAA, including any choice of law provisions in this Agreement, or any other agreement. No potential arbitrator may serve on the panel unless he or she has agreed in writing to abide and be bound by these procedures.

(iii)    The arbitrators may not award non-monetary or equitable relief of any sort. They shall have no power to award punitive damages or any other damages not measured by the prevailing party's actual damages, and the parties expressly waive their right to obtain such damages in arbitration or any in other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitrators have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction. The arbitrator(s) shall be required to state in a written opinion all facts and conclusions of law relied upon to support any decision rendered. Any dispute over whether the arbitrator(s) has failed to comply with the foregoing will be resolved by summary judgment in a court of law.

(iv)     The party initiating arbitration shall pay all arbitration costs and arbitrator's fees, subject to a final arbitration award on who should bear costs and fees. All proceedings shall be conducted in Dallas, Texas, or another mutually agreeable site. Each party shall bear its own attorneys fees, costs and expenses, including any costs of experts, witnesses and/or travel, subject to a final arbitration award on who should bear costs and fees. The duty to arbitrate described above shall survive the termination of this Agreement.

(v)      No discovery will be allowed in connection with the arbitration unless the arbitration panel, upon a showing of substantial need, expressly authorizes

APPX 00529
001913

      ii.  In any event, there shall be no more than (a) two party depositions of six hours each.   Each deposition is to be taken pursuant to the Texas Rules of Civil Procedure; (b) one non-party deposition of six hours; (c) twenty-five interrogatories; (d) twenty-five requests for admission; (e) ten requests for production.   In response, the producing party shall not be obligated to produce in excess of 5,000 total pages of documents.   The total pages of documents shall include electronic documents; and (f) one request for disclosure pursuant to the Texas Rules of Civil Procedure.   Any discovery not specifically provided for in this paragraph, whether to parties or non-parties, shall not be permitted.

(vi)    All aspects of the arbitration shall be treated as confidential, including its institution and/or settlement.   Neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements.   Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests. In the event a party who recovered monies by settlement, award by the arbitration panel, or otherwise in connection with the Dispute violates this confidentiality term, he, she, or it shall refund all such sums recovered. The parties expressly intend to waive the right to retain any monies received through settlement, award by the arbitration panel, or otherwise in connection with the Dispute in the event that that party violates the aforementioned confidentiality term.

(vii)   The result of the arbitration will be binding on the parties, and judgment on the arbitrators' award may be entered in any court having jurisdiction.

**8.8**    **Consents and Voting**

(a)    Except as provided in Section 5.4, Limited Partners do not have any right to vote for the admission or removal of any General Partner and, except for the right to vote on certain amendments proposed by the General Partner and as otherwise expressly set out herein, have no other voting rights.   Upon the request of any Limited Partner, the General Partner may designate an Interest as a Non-Voting Interest, in which case the Limited Partner shall not have the right to vote on any matter including amendments.

(b)    Any and all consents, agreements or approvals provided for or permitted by this Agreement shall be in writing and a copy thereof shall be filed and kept with the books of the Partnership.   For the avoidance of doubt, an amendment made pursuant to Section 8.1(c) or pursuant to negative consent under Section 8.1(a) or Section 8.1(b) shall not require any affirmative written response by any Limited Partner who is not electing to withdraw from the Partnership.

(c)    In the event the Partnership seeks the approval, vote or consent of the Offshore Fund with respect to any matter to which it would be entitled to vote as a Limited

CFPX-00530

Partner of the Partnership under this Agreement, the Offshore Fund will: (i) submit such matter for the consent of the shareholders and (ii) shall vote its Limited Partner interest proportionally for and against such matter in the same proportion that the shareholders voted for and against such matter.

**8.9    Merger and Consolidation**

(a)    The Partnership may merge or consolidate with or into one or more limited partnerships formed under the Act or other business entities pursuant to an agreement of merger or consolidation which has been approved in the manner contemplated by Section 17-211(b) of the Act.

(b)    Notwithstanding anything to the contrary contained elsewhere in this Agreement, an agreement of merger or consolidation approved in accordance with Section 17-211(b) of the Act may, to the extent permitted by Section 17-211(g) of the Act, (i) effect any amendment to this Agreement, (ii) effect the adoption of a new limited partnership agreement for the Partnership if it is the surviving or resulting limited partnership in the merger or consolidation, or (iii) provide that the limited partnership agreement of any other constituent partnership to the merger or consolidation (including a limited partnership formed for the purpose of consummating the merger or consolidation) shall be the limited partnership agreement of the surviving or resulting limited partnership.

**8.10    Miscellaneous**

(a)    The captions and titles preceding the text of each Section hereof shall be disregarded in the construction of this Agreement.   Use of the word "including" in this Agreement means in each case "without limitation," whether or not such term is explicitly stated.

(b)    This Agreement may be executed in counterparts, each of which shall be deemed to be an original hereof.

(c)    If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement shall remain in full force and effect.   Any provision of this Agreement held invalid or unenforceable only in part or degree shall remain in full force and effect to the extent not held invalid or unenforceable.

**8.11    BHCA Subject Persons**

Notwithstanding any other provision of this Agreement to the contrary:

(a)    Solely for purposes of any provision of this Agreement that confers voting rights on the Limited Partners and any other provisions hereof regarding consents of or action by the Limited Partners, any BHCA Subject Person that shall have given the General Partner an Election Notice and shall not thereafter have given the General Partner a Revocation Notice, and that at any time has a Partnership Percentage in

APPX 00531
001915

excess of 4.9% of the aggregate Partnership Percentages of the Limited Partners entitled to participate in such voting or the giving of any consent or the taking of any action, shall be deemed to hold a Partnership Percentage of only 4.9% of the aggregate Partnership Percentages of the Limited Partners (after giving effect to the limitations imposed by this Section 8.11 on all such Limited Partners), and such Partnership Percentage in excess of said 4.9% shall be deemed held by the Limited Partners who are not BHCA Subject Persons, *pro rata* in proportion to their respective Partnership Percentages; <u>provided</u> that this limitation shall not prohibit a Limited Partner from voting or participating in giving or withholding consent or taking any action under any provision of this Agreement up to the full amount of its Partnership Percentage in situations where such Limited Partner's vote or consent or action is of the type customarily provided by statute or stock exchange rules with regard to matters that would significantly and adversely affect the rights or preference of the Limited Partner's Interest.  The foregoing voting restriction shall continue to apply with respect to any assignee or other transferee of such BHCA Subject Person's Interest; <u>provided</u>, <u>however</u>, that the foregoing voting restriction shall not continue to apply if the Interest is transferred: (i) to the Partnership; (ii) to the public in an offering registered under the Securities Act; (iii) in a transaction pursuant to Rule 144 or Rule 144A under the Securities Act in which no Person acquires more than 2% of the Partnership's outstanding Interests; or (iv) in a single transaction to a third party who acquires at least a majority of the Partnership's outstanding Interests without regard to the Transfer of such Interests.

(b)    Except as specifically provided otherwise in this Agreement, a Limited Partner that is a BHCA Subject Person that shall have given the General Partner an Election Notice, and shall not thereafter have given the General Partner a Revocation Notice, shall not be entitled to exercise any rights to consent to actions to be taken with respect to the Partnership, including rights conferred by any applicable law.  Such right to consent shall be deemed granted to the Limited Partners who are not BHCA Subject Persons, *pro rata* in proportion to their respective Partnership Percentages.

(c)    A Limited Partner that is a BHCA Subject Person and that elects to be subject to Section 8.11(a) and (b) shall notify the General Partner thereof (an "***Election Notice***") and, on the General Partner's receipt of such Election Notice, such Limited Partner shall be subject to Section 8.11(a) and (b) until 10 calendar days after such Limited Partner notifies the General Partner that it elects no longer to be subject to Section 8.11(a) and (b) (a "***Revocation Notice***"), which period may be reduced by the General Partner.

**8.12    RIC Limited Partners**

An Interest of a RIC Limited Partner does not entitle the RIC Limited Partner to vote or consent with respect to any Partnership matter unless the RIC Limited Partner's vote or consent with respect to its Interest would not be considered to be "voting securities" as defined under Section 2(a)(42) of the Investment Company Act.  Except as provided in this Section 8.12, an Interest held by a RIC Limited Partner as a Non-Voting Interest is identical in all regards to all other Interests held by Limited Partners.

49

**8.13    Bad Actor Limited Partners**

Under Rule 506(d) under the Securities Act, the Partnership may be banned from selling Interests under Rule 506 if a Limited Partner beneficially owning 20% or more of the Partnership's voting securities engages in a "bad act" set forth in Rule 506.   Accordingly, each Limited Partner agrees that the General Partner may deem the portion of any Bad Actor Limited Partner's Interests to be, or convert any Bad Actor Limited Partner's Interests into, Non-Voting Interests (except for the purposes of voting on any amendment to this Agreement that would materially and adversely change the Bad Actor Limited Partner's rights and preferences as a Limited Partner other than pursuant to an amendment under Section 8.1(c)) to the extent that the General Partner determines that such portion is in excess of 19.99% of the outstanding aggregate voting Interests of all Partners excluding any Interests that are Non-Voting Interests.

**8.14    Entire Agreement**

The parties acknowledge and agree that, this Agreement, together with any other agreement with a Limited Partner pursuant to Section 8.1(e), constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto.

[Signature Page Follows]

APPX 00532
001917

The parties hereto have executed this Agreement as of the day and year first above written.

**GENERAL PARTNER:**

HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P.

By:   HIGHLAND MUTI STRATEGY CREDIT GP, LLC
      its general partner

By:   HIGHLAND CAPITAL MANAGEMENT, L.P.
      its sole member

By:   STRAND ADVISORS, INC.
      its general partner

By: _____

Name:  James Dondero

Title:   President


**LIMITED PARTNERS:**

By:   HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P
      attorney-in-fact for the Limited Partners

By:   HIGHLAND MULTI STRATEGY CREDIT GP, LLC
      its general partner

By:   HIGHLAND CAPITAL MANAGEMENT, L.P.
      its sole member

By:   STRAND ADVISORS, INC.
      its general partner

By: _____

Name:  James Dondero

Title:   President


*Signature Page to the Fourth Amended and Restated Limited Partnership Agreement of Highland Multi Strategy Credit Fund, L.P.*

# EXHIBIT 15

**THE COMPANIES LAW (2013 REVISION)**

**OF THE CAYMAN ISLANDS**

**COMPANY LIMITED BY SHARES**

**AMENDED AND RESTATED**

**MEMORANDUM AND ARTICLES OF ASSOCIATION**

**OF**

**HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.**

**(As Adopted by Special Resolution on 1 November 2014)**



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

**App. 00536**
001920

THE COMPANIES LAW (2013 REVISION)

OF THE CAYMAN ISLANDS

COMPANY LIMITED BY SHARES


AMENDED AND RESTATED

MEMORANDUM OF ASSOCIATION

OF

HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.

(As Adopted by Special Resolution on 1 November 2014)


1        The name of the Company is **Highland Multi Strategy Credit Fund, Ltd.**

2        The Registered Office of the Company shall be at the offices of Maples Corporate Services Limited, PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands, or at such other place within the Cayman Islands as the Directors may decide.

3        The objects for which the Company is established are unrestricted and the Company shall have full power and authority to carry out any object not prohibited by the laws of the Cayman Islands.

4        The liability of each Member is limited to the amount unpaid on such Member's Shares.

5        The share capital of the Company is US$50,000 divided into 100 Management Shares of US$0.01 par value each and 49,999,000 Participating Shares of US$0.001 par value each.

6        The Company has power to register by way of continuation as a body corporate limited by shares under the laws of any jurisdiction outside the Cayman Islands and to be deregistered in the Cayman Islands.

7        Capitalised terms that are not defined in this Memorandum of Association bear the respective meanings given to them in the Articles of Association of the Company.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

Appx. 00537

001921

THE COMPANIES LAW (2013 REVISION)

OF THE CAYMAN ISLANDS

COMPANY LIMITED BY SHARES


AMENDED AND RESTATED

ARTICLES OF ASSOCIATION

OF

HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.

(As Adopted by Special Resolution on 1 November 2014)


# 1 Interpretation

1.1 In these Articles, Table A in the First Schedule to the Statute does not apply and unless there is something in the subject or context inconsistent therewith:

| | |
|---|---|
| **"Administrator"** | means the person, firm or corporation appointed and from time to time acting as administrator of the Company. |
| **"Articles"** | means these articles of association of the Company. |
| **"Auditor"** | means the person (if any) for the time being performing the duties of auditor of the Company. |
| **"Business Day"** | means any day normally treated as a business day in such places and/or on such markets as the Directors may from time to time determine. |
| **"Cayman Islands"** | means the British Overseas Territory of the Cayman Islands. |
| **"Class"** | means a separate class of Participating Share (and includes any sub-class of any such class). |
| **"Company"** | means the above-named Company. |
| **"Directors"** | means the directors for the time being of the Company. |
| **"Dollars"** or **"US$"** | refers to the currency of the United States. |
| **"Electronic Record"** | has the same meaning as in the Electronic Transactions Law. |



| "**Electronic Transactions Law**" | means the Electronic Transactions Law (2003 Revision) of the Cayman Islands. |
|---|---|
| "**Eligible Investor**" | means a person eligible to hold Participating Shares, as determined from time to time by the Directors. |
| "**FATCA**" | means: |

|  | (i) | sections 1471 to 1474 of the US Internal Revenue Code of 1986 and any associated legislation, regulations or guidance, or similar legislation, regulations or guidance enacted in any jurisdiction which seeks to implement similar tax reporting and/or withholding tax regimes; |
|---|---|---|
|  | (ii) | any intergovernmental agreement, treaty, regulation, guidance or any other agreement between the Cayman Islands (or any Cayman Islands government body) and the US, the UK or any other jurisdiction (including any government bodies in such jurisdiction), entered into in order to comply with, facilitate, supplement or implement the legislation, regulations or guidance described in paragraph (i); and |
|  | (iii) | any legislation, regulations or guidance in the Cayman Islands that give effect to the matters outlined in the preceding paragraphs. |

| "**Gross Negligence**" | shall have the meaning ascribed thereto under the laws of the State of Delaware, USA. |
|---|---|
| "**Investment Manager**" | means the person, firm or corporation appointed and for the time being acting as the investment manager of the Company. |
| "**Management Share**" | means a voting non participating Share in the capital of the Company of US$0.01 par value designated as a Management Share and having the rights provided for in these Articles. |
| "**Master Fund**" | means Highland Multi Strategy Credit Fund, L.P., or any other entity in which all, or substantially all, of the assets of the Company are invested. |
| "**Member**" | means each person whose name is, from time to time and for the time being, entered in the Register of Members as the holder of one or more Shares. |

*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

App. 00539
001923

| | |
|---|---|
| **"Memorandum"** | means the memorandum of association of the Company. |
| **"Net Asset Value"** | means the value of the assets less the liabilities of the Company, or of a Separate Account (as the context may require), calculated in accordance with these Articles. |
| **"Net Asset Value per Participating Share"** | means the amount determined in accordance with these Articles as being the Net Asset Value per Participating Share of a particular Class and/or Series. |
| **"New Issue"** | has the meaning ascribed thereto by Rule 2790 adopted by the National Association of Securities Dealers, Inc. |
| **"New Issue Investment"** | means any New Issue acquired by the Company. |
| **"New Issue Shares"** | means a class of Participating Shares issued and designated as "New Issue Shares" and which may be issued in any one or more Series having the rights and restrictions set out in these Articles |
| **"Offering Memorandum"** | means an offering memorandum relating to Participating Shares of any Class and/or Series as amended or supplemented from time to time subject to and in accordance with these Articles. |
| **"Ordinary Resolution"** | means a resolution passed by a simple majority of the votes of such Members as, being entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting, and includes a unanimous written resolution. |
| **"Participating Share"** | means a participating redeemable Share in the capital of the Company of US$0.001 par value and having the rights provided for in these Articles.  Participating Shares may be divided into Classes in the discretion of the Directors in accordance with the provisions of these Articles and each Class may be further divided into different Series of Participating Shares and the term "Participating Share" shall include all such Classes and Series of Participating Share. |
| **"Prohibited Person"** | means any person who is restricted from participating in a New Issue pursuant to the Free-Riding and Withholding Interpretation adopted by the Board of Governors of the National Association of Securities Dealers Inc. |
| **"Redemption Date"** | means, in relation to any Class and/or Series of Participating Shares, such day or days as are set out in the Offering Memorandum or as may be specified by the Directors from time to time, upon which a Member is entitled to require the redemption of Participating Shares |

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

3

APPX 00540

001924

of that Class and/or Series.

| | |
|---|---|
| **"Redemption Fee"** | means such fee (if any) payable by a Member to the Company on a redemption of Participating Shares, as the same may be determined by the Directors and disclosed to the Member at the time of its subscription for such Participating Shares. |
| **"Redemption Notice"** | means a notice in a form approved by the Directors by which a holder of Participating Shares is entitled to require the Company to redeem its Participating Shares. |
| **"Redemption Price"** | means the price determined in accordance with these Articles at which redeemable Participating Shares of the relevant Class and/or Series may be redeemed. |
| **"Register of Members** | means the register of Members, which shall be maintained in accordance with the Statute and includes (except where otherwise stated) any branch or duplicate Register of Members. |
| **"Registered Office"** | means the registered office for the time being of the Company. |
| **"Sales Charge"** | means such sales charge (if any) determined by the Directors as being payable by a subscriber on a subscription for Participating Shares of any Class and/or Series. |
| **"Seal"** | means the common seal of the Company and includes every duplicate seal. |
| **"Separate Account"** | means a separate internal account of the Company which the Directors may establish and cause to be maintained in accordance with these Articles. |
| **"Series"** | means a separate series of Participating Share (and includes any sub-series of any such series). |
| **"Share"** and **"Shares"** | means a share or shares of any class or series in the Company, including a Management Share, a Participating Share or a New Issue Share, as well as any fraction of a Share. |
| **"Share Rights"** | means, with respect to the Participating Shares of any Class or Series in issue, the class rights for the time being applicable to such Participating Shares or other terms of offer for the time being applicable to such Participating Shares whether set out in the Offering Memorandum, any subscription agreement or otherwise (including any representations, warranties or other disclosure relating |

*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

App. 0054
001925

to the offer or holding of such Participating Shares).

| | |
|---|---|
| **"Special Resolution"** | has the same meaning as in the Statute and includes a unanimous written resolution. |
| **"Statute"** | means the Companies Law (2013 Revision) of the Cayman Islands. |
| **"Subscriber"** | means the subscriber to the Memorandum. |
| **"Subscription Date"** | means, in relation to Participating Shares of any Class and/or Series, such day or days as are set out in the Offering Memorandum or as may be specified by the Directors from time to time upon which a person may subscribe for Participating Shares of that Class and/or Series. |
| **"Subscription Price"** | means the price determined in accordance with these Articles at which Participating Shares of the relevant Class and/or Series may be subscribed. |
| **"Suspension"** | means a determination by the Directors to postpone or suspend (i) the calculation of the Net Asset Value of Participating Shares of any one or more Classes and/or Series (and the applicable Valuation Date) (a "**Calculation Suspension**"); (ii) the issue of Participating Shares of any one or more Classes and/or Series (and the applicable Subscription Date) (an "**Issue Suspension**"); (iii) the redemption by Members (in whole or in part) of Participating Shares of any one or more Classes and/or Series (and the applicable Redemption Date) (a "**Redemption Suspension**"); and/or (iv) the payment (in whole or in part) of any redemption proceeds (even if Valuation Dates and Redemption Dates are not postponed) (a "**Payment Suspension**"). |
| **"Transfer"** | means, in respect of any Share, any sale, assignment, exchange, transfer, pledge, encumbrance or other disposition of that Share, and "**Transferred**" shall be construed accordingly. |
| **"Treasury Share"** | means a Share held in the name of the Company as a treasury share in accordance with the Statute. |
| **"Valuation Date"** | means, in relation to each Class and/or Series of Participating Shares, the day or days determined from time to time by the Directors to be the day or days on which the Net Asset Value per Participating Share of that Class and/or Series is calculated. |
| **"Valuation Point"** | means, with respect to any Class and/or Series, the time or times on the Valuation Date of such Class and/or Series at which the Directors |

*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

Appx. 00542

001926

determine that the Net Asset Value per Participating Share of that Class and/or Series shall be calculated.

1.2      In these Articles:

(a)      the singular number includes the plural number and vice versa;

(b)      the masculine gender includes the feminine gender;

(c)      persons includes corporations;

(d)      "written" and "in writing" include all modes of representing or reproducing words in visible form, including in the form of an Electronic Record;

(e)      "shall" shall be construed as imperative and "may" shall be construed as permissive;

(f)      references to provisions of any law or regulation shall be construed as references to those provisions as amended, modified, re-enacted or replaced from time to time;

(g)      any phrase introduced by the terms "including", "include", "in particular" or any similar expression shall be construed as illustrative and shall not limit the sense of the words preceding those terms;

(h)      the term "and/or" is used herein to mean both "and" as well as "or."  The use of "and/or" in certain contexts in no respects qualifies or modifies the use of the terms "and" or "or" in others.  "Or" shall not be interpreted to be exclusive, and "and" shall not be interpreted to require the conjunctive — in each case, unless the context otherwise requires;

(i)      any reference to the powers of the Directors shall include, when the context admits, the service providers or any other person to whom the Directors may delegate their powers;

(j)      any requirements as to delivery under the Articles include delivery in the form of an Electronic Record;

(k)      any requirements as to execution or signature under the Articles including the execution of the Articles themselves can be satisfied in the form of an electronic signature as defined in the Electronic Transactions Law;

(l)      sections 8 and 19(3) of the Electronic Transactions Law shall not apply; and

(m)      headings are inserted for reference only and shall be ignored in construing these Articles.



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

Appx. 00543
001927

**2        Commencement of Business**

2.1      The business of the Company may be commenced as soon after incorporation as the Directors shall see fit.

2.2      The Directors may pay, out of the capital or any other monies of the Company, all expenses incurred in or about the formation and operation of the Company, including the expenses of registration and the initial offering of Participating Shares.

**3        Service Providers**

3.1      The Directors may appoint any person, firm or corporation to act as a service provider to the Company (whether in general or in respect of any Class and/or Series of Shares) and may entrust to and confer upon any such service providers any of the functions, duties, powers and discretions exercisable by them as Directors, upon such terms and conditions (including as to remuneration payable by the Company) and with such powers of delegation, but subject to such restrictions, as they think fit. Without limiting the generality of the foregoing, such service providers may include managers, investment advisers, administrators, registrars, transfer agents, custodians and prime brokers.

3.2      Without prejudice to the generality of the preceding Article, the Directors may appoint any person, firm or corporation to act as the Investment Manager with respect to the assets of the Company (whether in general or in respect of any Class and/or Series of Shares).  The Directors may entrust to and confer upon the Investment Manager any of the functions, duties, powers and discretions exercisable by them as Directors upon such terms and conditions (including as to remuneration payable by the Company) and with such powers of delegation, but subject to such restrictions, as they think fit.

**4        Rights attaching to Shares**

4.1      The Management Shares shall have the following rights:

(a)      as to voting: the holder of a Management Share shall (in respect of such Management Share) have the right to receive notice of, attend at and vote as a Member at any general meeting of the Company; and

(b)      as to capital: a Management Share shall confer upon the holder the right in a winding up to repayment of capital as provided in these Articles but shall confer no other right to participate in the profits or assets of the Company; and

(c)      as to income: no dividends shall be payable on the Management Shares.

4.2      The Participating Shares shall have the following rights:



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**App. 00544**

**001928**

(a)     as to voting: the holder of a Participating Share shall not (in respect of such Participating Share) have the right to receive notice of, attend at or vote as a Member at any general meeting of the Company, but may vote at a separate Class meeting convened in accordance with these Articles; and

(b)     as to capital: a Participating Share shall confer upon the holder thereof the right in a winding up to participate in the surplus assets of the Company by reference to the Separate Account attributable to the relevant Class or Series of Participating Shares as provided in these Articles; and

(c)     as to income: the Participating Shares shall confer on the holders thereof the right to receive dividends as provided in these Articles.

4.3     Notwithstanding Articles 4.1(a) and 4.2(a), if the Company, in its capacity as a limited partner of the Master Fund, is called upon to approve, vote or consent to any matter to which it would be entitled to vote as a limited partner of the Master Fund and is required to seek the consent of the holders of Participating Shares in connection with any such approval, vote or consent pursuant to the constitutional documents of the Master Fund (a "**Master Fund Consent Transaction**"), each holder of a Participating Share shall have the right (in respect of such Participating Share), to the exclusion of the holders of the Management Shares (in respect of such Management Shares), to receive notice of, and vote on, the Master Fund Consent Transaction (the "**Special Voting Right**").   The voting rights attributable to each Participating Share shall be calculated by reference to the Net Asset Value per Participating Share (calculated as at the most recent Valuation Date) and not on the basis of one Participating Share, one vote.   For every Master Fund Consent Transaction, the Directors shall cause the Company to vote its limited partnership interest in the Master Fund proportionally for and against such matter in the same proportion that the Members holding Participating Shares voted for and against such matter pursuant to the Special Voting Right.

4.4     In relation to any Special Voting Right pursuant to Article 4.3, unless otherwise determined by the Directors in their sole discretion, the procedure in this Article 4.4 shall be invoked.   The Directors shall provide written notice of the proposed Master Fund Consent Transaction to the Members holding Participating Shares and shall specify a deadline (the "**Consent Date**"), which shall be no earlier than 30 days after the date of giving such notice, by which date such Members may submit a written refusal to consent to the proposed Master Fund Consent Transaction.   The holders of Participating Shares in respect of which an express written refusal to consent has not been received by the Consent Date shall be deemed to have consented in writing to the proposed Master Fund Consent Transaction.

## 5       Share Capital

5.1     Subject to these Articles, the Directors may allot, issue, grant options or warrants over, or otherwise dispose of Shares in separate classes and/or series with different terms, preferences, privileges or special rights including, without limitation, with respect to investment strategy and/or policy, participation in assets, profits and losses of the Company, voting, fees charged (including



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

Appx. 00545

001929

management, performance and incentive fees), redemption privileges, allocation of costs and expenses (including, without limitation, the costs and expenses incurred in any hedging activities and any profits and losses arising therefrom) as they think proper.  Subject to the Statute, these Articles and any applicable subscription agreement, any Share Rights (other than those set out in these Articles or set out in a Special Resolution) may be varied by either the Directors or by Ordinary Resolution.  Notwithstanding the foregoing, the Subscriber shall have the power to:

(a)     issue one Share to itself;

(b)     transfer that Share by an instrument of transfer to any person; and

(c)     update the Register of Members in respect of the issue and transfer of that Share.

5.2     On or before the allotment of any Participating Share the Directors shall resolve the Class and/or Series to which such Participating Share shall be classified and may, prior to the issue of any Participating Share, reclassify such Participating Share.  Each Class and/or Series shall be specifically identified.  Subject to the Statute and these Articles, the Directors may at any time re-name any Participating Share.

5.3     Notwithstanding the currency in which the par value of the Participating Shares is denominated, the Directors may specify any currency as the currency in which the Subscription Price, Redemption Price and Net Asset Value of Participating Shares of a Class and/or Series is calculated.

5.4     The Company shall not issue Shares to bearer.

5.5     Fractional Shares may be issued.

5.6     Shares shall only be issued as fully paid-up.

5.7     No right of pre-emption or first refusal shall attach to any Shares.

5.8     New Issue Shares shall not be issued to a Prohibited Person.

**6      Allotment and Issue of Participating Shares**

6.1     The Directors may from time to time allot and issue Participating Shares of any Class and/or Series.  The Directors may, in their discretion, refuse to allot and issue any Participating Shares, and shall not issue any Participating Shares to or for the account of an investor who is not an Eligible Investor.  If the Directors have declared a Calculation Suspension or Issue Suspension, no Participating Shares of that Class or Series (as appropriate) shall be issued until the relevant Suspension has ended.

6.2     The Directors shall determine the Subscription Price at the time of issue of the first issue of Participating Shares of any Class and/or Series.  Thereafter, the Directors may allot and issue



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

App. 00546

001930

Participating Shares of the same Class and/or Series on any Subscription Date provided that such additional Participating Shares are issued at a Subscription Price equal to not less than the Net Asset Value per Participating Share of such Class and/or Series calculated on the relevant Subscription Date (or if the Subscription Date is not also a Valuation Date then on the immediately preceding Valuation Date).

6.3    The Directors may add to the Subscription Price per Participating Share (before making any rounding adjustment) an amount which they consider to be an appropriate allowance to reflect fiscal and purchase charges which would be incurred for the account of the Company in investing an amount equal to the Subscription Price.  The Directors may also add, in their discretion, a Sales Charge and/or an amount equal to any stamp duty and any other governmental taxes or charges payable by the Company with respect to the issue of such Participating Shares.

6.4    An applicant for Participating Shares shall pay for such Participating Shares in such currencies, in such manner, at such time, in such place and to such person acting on behalf of the Company as the Directors may from time to time determine.

6.5    Subject to the terms of any subscription agreement, an application for Participating Shares shall be irrevocable by an applicant for Participating Shares once it has been received by the Company.  Participating Shares shall be treated as having been issued with effect from the relevant Subscription Date notwithstanding that the subscriber for those Participating Shares may not be entered in the Register of Members until after the Subscription Date.

6.6    Participating Shares shall be issued in such minimum numbers as the Directors may specify either generally or in any particular case; likewise the Directors may from time to time prescribe an amount as the minimum subscription amount.

6.7    The Directors may resolve to accept non-cash assets in satisfaction (in whole or in part) of the Subscription Price.

6.8    The Directors may require an applicant for Participating Shares to pay to the Company for the benefit of any selling agent such selling commissions or such organisational charges as may have been disclosed to such applicant.  The Directors may differentiate between applicants as to the amount of such selling commissions or such organisational charges.

6.9    The Company may, in so far as the Statute permits, pay a commission to any person in consideration of that person subscribing or agreeing to subscribe whether absolutely or conditionally for any Participating Shares.  Such commissions may be satisfied by the payment of cash and/or the issue of fully or partly paid-up Participating Shares.  The Company may also on any issue of Participating Shares pay such brokerage as may be lawful.

**7      Separate Accounts**

7.1    The Directors shall have the power to establish and maintain, with respect to Participating Shares of any Class and/or Series, a Separate Account, to record (purely as an internal accounting



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

001931

matter) the allocation, on a differentiated basis, of the assets and liabilities of the Company to the holders of Participating Shares of any such Class and/or a Series in a manner consistent with the methodology set forth in the Offering Memorandum and the rights otherwise attaching to the Participating Shares.

7.2    The proceeds from the issue of Participating Shares of any Class and/or Series shall be applied in the books of the Company to the Separate Account established for Participating Shares of that Class and/or Series.  The assets and liabilities and income and expenditure attributable to that Separate Account shall be applied to such Separate Account and, subject to the provisions of these Articles, to no other Separate Account.  In the event that the assets of a Separate Account referable to any Class and/or Series are exhausted, any and all unsatisfied claims which any Members or former Members referable to that Class and/or Series have against the Company shall be extinguished.  The Members or former Members referable to a Class and/or Series shall have no recourse against the assets of any other Separate Account established by the Company.

7.3    Where any asset is derived from another asset (whether cash or otherwise), such derivative asset shall be applied in the books of the Company to the same Separate Account as the asset from which it was derived, and on each revaluation of an asset the increase or diminution in value shall be applied to the same Separate Account and, subject to the provisions of these Articles, to no other Separate Account.

7.4    In the case of any asset or liability of the Company which the Directors do not consider is attributable to a particular Separate Account, the Directors shall have discretion to determine the basis upon which any such asset or liability shall be allocated between or among Separate Accounts.

7.5    The Directors may, in the books of the Company, allocate assets and liabilities to and from Separate Accounts if, as a result of a creditor proceeding against certain of the assets of the Company or otherwise, a liability would be borne in a different manner from that in which it would have been borne if applied under the foregoing Articles.

7.6    The Directors may from time to time transfer, allocate or exchange an asset or liability from one Separate Account to another Separate Account provided that at the time of such transfer, allocation or exchange the Directors form the opinion (in good faith) that the value in money or money's worth of each such asset or liability transferred, allocated or exchanged is not significantly less or more than the value in money or money's worth (referred to in these Articles as "proper value") received by the Separate Account from which such asset or liability is transferred, allocated or exchanged except only as is otherwise provided by these Articles.

## 8    Determination of Net Asset Value

8.1    The Net Asset Value and Net Asset Value per Participating Share of each Class and/or Series shall be determined by or on behalf of the Directors as at the relevant Valuation Point on each relevant Valuation Date.



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

001932

8.2     In calculating the Net Asset Value and the Net Asset Value per Participating Share, the Directors shall apply such generally accepted accounting principles as they may determine.

8.3     The assets and liabilities of the Company shall be valued in accordance with such policies as the Directors may determine.  Absent bad faith or manifest error, any valuation made pursuant to these Articles shall be binding on all persons.

8.4     Unless otherwise determined by the Directors in any resolution creating a Class and/or Series of Participating Shares or as otherwise disclosed in any Offering Memorandum, the Net Asset Value per Participating Share of each Class (or Series) shall be determined by allocating *pro rata* the Net Asset Value, as at the relevant Valuation Point, of the Company and/or of the relevant Separate Account among each Class and/or Series, adjusting the amount so calculated to reflect any fees, costs, foreign exchange items or other assets or liabilities which are properly attributable to a specific Class and/or Series and then by dividing the resultant amount by the number of Participating Shares of such Class and/or Series then in issue.

8.5     The Directors may determine that the Net Asset Value of any Class and/or Series shall be definitively determined on the basis of estimates and that such determination shall not be modified to reflect final valuations.

8.6     Any expense or liability may be amortised over such period as the Directors may determine.

8.7     The Directors may establish such reserves as they deem reasonably necessary for Company expenses and any other contingent Company assets or liabilities, and may, upon the reversal or release of such reserves, apply any monies resulting therefrom in such manner as they may, in their absolute discretion, determine.

8.8     Net Asset Value per Participating Share shall be rounded to the nearest cent or such other amount as the Directors may determine and the benefit of any such roundings may be retained by the Company.

8.9     The Directors may cause the Company to issue new Participating Shares at par or to compulsorily redeem at par such number of Participating Shares as they consider necessary to address, in such manner as they consider equitable, any prior miscalculation of Net Asset Value or Net Asset Value per Participating Share.  The Company shall not be required to pay to the holder the redemption proceeds of any such compulsorily redeemed Participating Shares, which proceeds shall be retained by the Company.

## 9      Suspensions

9.1     The Directors may, from time to time, in the circumstances disclosed in the Offering Memorandum, declare a Suspension with respect to any one or more Classes and/or Series of Participating Shares.



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

Appx. 00549

001933

9.2    The Directors shall promptly notify all affected Members of any such Suspension and shall promptly notify such Members upon termination of such Suspension.

## 10    Transfer of Shares

10.1    Subject to Article 5.1, Shares may not be Transferred without the prior written approval of the Directors (which may be withheld for any or no reason) provided that the Directors may waive this requirement to the extent that they deem appropriate in connection with the listing of any Class or Series of Share on a stock exchange.

10.2    The Directors shall not register any Transfer of any Share to any person who is, in the opinion of the Directors, not an Eligible Investor.

10.3    Any proposed transferee shall provide to the Directors such information and documents as the Directors may request, including, without limitation, such documents or information as the Directors deem necessary or desirable:

(a)    to enable the Directors to determine that the proposed transferee is an Eligible Investor; and

(b)    to enable the Company to comply with all applicable laws, including anti-money laundering laws.

10.4    The instrument of Transfer of any Share shall be in writing and shall be executed by or on behalf of the transferor (and, if the Directors so require, signed by or on behalf of the transferee). The transferor shall be deemed to remain the holder of a Share until the name of the transferee is entered in the Register of Members.

## 11    Transmission of Shares

11.1    If a Member dies, the survivor or survivors (where the Member was a joint holder) or his or her legal personal representatives (where the Member was a sole holder) shall be the only persons recognised by the Company as having any title to the Member's interest in the Company. The death of any Member shall not operate to relieve, waive or reduce any liabilities attaching to the Member's Shares at the time of death and such liabilities shall continue to bind any survivor or survivors, or any personal representative, as the case may be.

11.2    Any person becoming entitled to a Share in consequence of the death or bankruptcy, or the liquidation or dissolution, of a Member (or in any other way than by Transfer) and who is an Eligible Investor may, upon delivery to the Directors of such evidence as may from time to time be required by them of:

(a)    such person's entitlement to such Shares; and/or

(b)    such person's status as an Eligible Investor,



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

Appx. 00550
001934

elect, either to become the holder of such Share or to have such Share Transferred to another Eligible Investor nominated by such person.  If such person elects to become the holder of such Share, such person shall give notice in writing to the Directors to that effect, but the Directors shall, in either case, have the same right to decline registration of such person as a holder of such Share as they would have had in the case of a Transfer of the Share by that Member before his or her death or bankruptcy, or liquidation or dissolution, as the case may be.

11.3    Any person becoming entitled to a Share in consequence of the death or bankruptcy, or the liquidation or dissolution, of a Member (or in any other way than by Transfer) and who is not an Eligible Investor shall not be registered as the holder of such Share and shall promptly Transfer such Share to an Eligible Investor in accordance with these Articles.

11.4    A person becoming entitled to a Share by reason of the death or bankruptcy or liquidation or dissolution of the holder (or in any other case than by Transfer), and who is an Eligible Investor, shall be entitled to the same dividends and other advantages to which such person would be entitled if such person were the registered holder of such Share. However, the person shall not, before becoming a Member in respect of a Share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the Company and the Directors may at any time give notice requiring any such person to elect either to be registered himself or to have some person nominated by him become the holder of the Share (but the Directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the Share by the relevant Member before his death or bankruptcy or liquidation or dissolution or any other case than by transfer, as the case may be). If the notice is not complied with within ninety days the Directors may thereafter withhold payment of all dividends, bonuses or other monies payable in respect of the Share until the requirements of the notice have been complied with.

## 12    Redemption of Shares

12.1    Subject to any provisions relating to a specific Class and/or Series as set out in the Offering Memorandum or these Articles or in any resolution constituting a Class and/or Series or otherwise forming part of the special rights of such Participating Shares, a Member may require the redemption of all or any of such Member's Participating Shares by serving a Redemption Notice on the Company. Unless timely receipt is waived by the Directors in a particular case, a Redemption Notice shall be required to be received on or before a Redemption Date with respect to such Participating Shares (or such number of days prior to such Redemption Date as may be determined by the Directors).  Any Member redeeming Participating Shares shall submit to the Directors the share certificate (if any) issued in respect of those Participating Shares.  The Company shall redeem such Participating Shares at the Redemption Price, being an amount equal to the Net Asset Value per Participating Share of the relevant Class and/or Series prevailing on the relevant Redemption Date (or if the Redemption Date is not a Valuation Date then on the immediately preceding Valuation Date) subject to any deductions, holdbacks or adjustments provided for in these Articles and/or the Offering Memorandum.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

Appx. 00551
001935

12.2    The Directors may deduct any Redemption Fee from the Redemption Price.  The Directors may also deduct such amount which they consider to be an appropriate allowance to reflect fiscal and sale charges which would be incurred for the account of the Company in realising assets or closing out positions to provide funds to meet any redemption request.

12.3    A Member may not withdraw a Redemption Notice once submitted to the Company unless (a) the Directors shall have declared a Calculation Suspension or Redemption Suspension or (b) the Directors determine (in their sole discretion) to permit the withdrawal of such redemption request (which they may do in whole or in part).  If a relevant Suspension has been declared by the Directors, the right of a Member to have its Participating Shares redeemed shall be suspended and during the period of Suspension the Member may withdraw its Redemption Notice.  Any withdrawal of the Redemption Notice shall be made in writing and shall only be effective if actually received by the Company before the termination of the period of the Redemption Suspension or Calculation Suspension, as applicable.  If the Redemption Notice is not withdrawn, any Participating Shares the redemption of which has been suspended shall be redeemed once the relevant Suspension has ended at the Redemption Price for Participating Shares of the relevant Class and/or Series calculated on the next Redemption Date following the end of the relevant Suspension.

12.4    The Directors may impose a gate the effect of which is to limit the redemptions of Participating Shares of any Class and/or Series or to limit the redemptions of Participating Shares held by any Member or Members as of any Redemption Date to such extent and in such manner as is disclosed in the Offering Memorandum.  If the Directors determine to limit redemptions, the Directors may determine the manner in which such gated redemption requests will be dealt with on any subsequent Redemption Date.

12.5    If the Company is required by the laws of any relevant jurisdiction to make a withholding from any redemption monies payable to the holder of Participating Shares the amount of such withholding shall be deducted from the redemption monies otherwise payable to such person.

12.6    No redemption of part of a Member's holding of Participating Shares of any one Class and/or Series may be made if, as a result thereof, such Member would hold fewer Participating Shares of such Class and/or Series than such minimum number or value of Participating Shares of such Class and/or Series as may from time to time be specified (either generally or in any particular case or cases) by the Directors.  If such partial redemption would reduce such Member's holding of Participating Shares to less than such minimum holding, the Directors may, in their discretion, elect to compulsorily redeem all of such Member's Participating Shares.

12.7    The Company may, in the absolute discretion of the Directors, refuse to make a redemption payment to a Member if the Directors suspect or are advised that the payment of any redemption proceeds to such Member may result in a breach or violation of any anti-money laundering law by any person in any relevant jurisdiction, or if such refusal is necessary to ensure the compliance by the Company, its Directors, the Administrator or any other service provider of the Company with any anti-money laundering law in any relevant jurisdiction.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

App. 00552
001936

12.8    Any amount payable to a Member for the redemption of Participating Shares shall be paid in such currency or currencies as the Directors may determine.  Subject to any Payment Suspension, the Company shall remit redemption proceeds (net of the costs of remittance) by cheque or wire transfer within such period or periods as the Directors shall have disclosed to the Member at the time of its subscription for Participating Shares or, in the absence of any such disclosure, within such period or periods as the Directors shall determine.  In the absence of directions as to payment the Company may remit redemption proceeds by cheque to the address of the Member appearing on the Register of Members or by wire transfer to such account as the Directors deem appropriate in the circumstances.  The Company shall not be liable for any loss resulting from this procedure.

12.9    On any redemption of Participating Shares the Directors shall have the power to satisfy (in whole or in part) the Redemption Price (and any other sums payable on redemption as provided in these Articles) owing on the redemption of such Participating Shares by dividing *in specie* the whole or any part of the assets of the Company (including, without limitation, shares, debentures, or securities of any other company whether or not held by the Company on the Redemption Date in question) and either (i) distributing such assets directly to the redeeming shareholder, and/or (ii) distributing or allocating such assets to a liquidating account or other similar mechanism to be managed and/or liquidated at the discretion of the Directors.

12.10    Participating Shares shall be treated as having been redeemed with effect from the relevant Redemption Date irrespective of whether or not a Member has been removed from the Register of Members or the Redemption Price has been determined or remitted. Accordingly, on and from the relevant Redemption Date, Members in their capacity as such will not be entitled to or be capable of exercising any rights arising under these Articles with respect to Participating Shares being redeemed (including any right to receive notice of, attend or vote at any meeting of the Company) save the right to receive the Redemption Price and any dividend which has been declared prior to the relevant Redemption Date but not yet paid (in each case with respect to the Participating Shares being redeemed). Such Members will be treated as creditors of the Company with respect to the Redemption Price and will rank accordingly in the priority of the Company's creditors.

12.11    Once a Participating Share is redeemed it shall be available for re issue and, until re issue, shall form part of the authorised and unissued share capital of the Company.

12.12    Upon the written request of a Member or prospective Member in a form acceptable to the Directors, the Company may, in the discretion of the Directors, accept a standing redemption request from such Member or prospective Member pursuant to which the Company shall agree (without assuming any liability for failing to do so) to use its commercially reasonable efforts to redeem such Member's Participating Shares to the extent necessary to ensure that such Member does not own over a specified percentage of the outstanding Participating Shares of the Company or any Class and/or Series thereof; such percentage to be the percentage identified by such Member or prospective Member in such written request as being the percentage which such Member's or prospective Member's ownership cannot exceed without material risk of such



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

App. 00552
001937

Member or prospective Member being in violation of applicable law or regulation.  Any such written request may be revoked by notice in writing to the Company from the affected Member.

12.13   No amendment to these Articles made after a Redemption Date shall affect a Member with respect to Participating Shares of that Member which have been redeemed, or are being treated as redeemed, on or prior to that Redemption Date.

12.14   Unless otherwise provided in the Offering Memorandum, unremitted redemption proceeds shall not bear interest against the Company and redeemed Participating Shares shall not participate in the profits and losses of the Company with effect from the relevant Redemption Date.

## 13   Compulsory Redemption

13.1   The Directors may cause the Company to redeem any or all of the Participating Shares held by any person at the appropriate Redemption Price in the circumstances disclosed in the Offering Memorandum.  If the Directors determine compulsorily to redeem any Participating Shares under this Article they shall give the holder of the Participating Shares such notice of the redemption as they shall have disclosed to the Member at the time of its subscription for Participating Shares or, in the absence of any such disclosure, within such period as the Directors shall determine.

13.2   The Directors may cause a compulsory redemption during any period for which a Redemption Suspension has been declared.

13.3   Without prejudice to the generality of the foregoing, the Company may (without notice) compulsorily redeem the Participating Shares of any Member and, on behalf of such Member, apply the proceeds of redemption in paying for new Participating Shares to give effect to any exchange, conversion or roll-up policy disclosed to Members pursuant to which Participating Shares of one Class or Series (the **"Old Shares"**) may, at the option of the Company, be exchanged for Participating Shares of another Class or Series (the **"New Shares"**) by means of the redemption of the Old Shares and the immediate re-subscription of the redemption proceeds in paying up the New Shares.

## 14   FATCA

14.1   Notwithstanding any other Article, in order to comply with FATCA, any Director shall be entitled to release and/or disclose on behalf of the Company to the Cayman Islands Tax Information Authority or equivalent authority (the **"TIA"**) and any other foreign government body as required by FATCA, any information in its or its agents' or delegates' possession regarding a Member including, without limitation, financial information concerning the Member's investment in the Company, and any information relating to any shareholders, principals, partners, beneficial owners (direct or indirect) or controlling persons (direct or indirect) of such Member.  Any such Director may also authorise any third party agent, including but not limited to, the Investment Manager or Administrator, to release and/or disclose such information on behalf of the Company.



14.2    In order to comply with FATCA and, if necessary, to reduce or eliminate any risk that the Company or its Members are subject to withholding taxes pursuant to FATCA or incur any costs or liabilities associated with FATCA, the Directors may cause the Company to undertake any of the following actions:

(a)    compulsorily redeem any or all of the Shares held by a Member either (i) where the Member fails to provide (in a timely manner) to the Company, or any agent or delegate of the Company, including but not limited to, the Investment Manager or the Administrator, any information requested by the Company or such agent or delegate pursuant to FATCA; or (ii) where there has otherwise been non-compliance by the Company with FATCA whether caused, directly or indirectly, by the action or inaction of such Member, or any related person, or otherwise;

(b)    deduct from, or hold back, redemption or repurchase proceeds, dividend payments or any other distributions, in order to:

(i)    comply with any requirement to apply  and collect withholding tax pursuant to FATCA;

(ii)    allocate to a Member an amount equal to any withholding tax imposed on the Company as a result of the Member's, or any related person's, action or inaction (direct or indirect), or where there has otherwise been non-compliance by the Company with FATCA;

(iii)    ensure that any FATCA related costs, debts, expenses, obligations or liabilities (whether external, or internal, to the Company) are recovered from the Member(s) whose action or inaction (directly or indirectly, including the action or inaction of any person related to such Member) gave rise or contributed to such costs or liabilities;

(c)    in order to give effect to the requirements imposed upon the Company by FATCA, including the actions contemplated by articles 14.2(a) and 14.2(b), the Directors may:

(i)    create separate classes and/or series of Shares ("**FATCA Shares**"), with such rights and terms as the Directors may in their sole discretion determine, and following the compulsory redemption of some or all of a Member's Shares may immediately apply such redemption proceeds in subscribing for such number of FATCA Shares as the Directors determine; and/or

(ii)    may re-name any number of Shares (whether issued or unissued) as FATCA Shares, create a Separate Account with respect to such FATCA Shares and apply any FATCA related costs, debts, expenses, obligations or liabilities (whether external, or internal, to the Company) to such Separate Account; and/or



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

Appx. 00585
001939

      (iii)     allocate any FATCA costs, debts, expenses, obligations, liabilities or withholding tax among Separate Accounts on a basis determined solely by the Directors; and/or

      (iv)     adjust the Net Asset Value per Share of any relevant Shares (including any FATCA Share).

## 15 Designated Investments

15.1 The Directors may, in their discretion, classify certain of the Company's investments which are deemed by the Directors or the Investment Manager to be illiquid or the value of which is not readily or reliably ascertainable or which may have a relatively long-term investment horizon as "**Designated Investments**". Once so classified, Designated Investments may, in the discretion of the Directors, be represented by a separate Class and/or Series of Participating Shares which, unless otherwise determined by the Directors, shall be allotted only to those Members who are holders of Participating Shares at the time of such designation. The gains and losses attributable to Designated Investments may, in the discretion of the Directors, be segregated and separately calculated and attributed amongst Members holding Shares of the relevant Class or Series in such manner as is consistent with the relevant provisions of the Offering Memorandum. Participating Shares of any such separate Class and/or Series may be issued by way of bonus or by way of conversion or exchange of all or part of a Member's holding of Participating Shares of another Class and/or Series. Similarly, Shares of a Designated Investment Class and/or Series may be converted or exchanged back into Participating Shares of the original Class and/or Series upon the Directors making a determination that the relevant investment no longer qualifies as a Designated Investment. The power to convert or exchange Participating Shares of one Class and/or Series into Participating Shares of another Class and/or Series may be effected by the Directors in any manner permitted by the Statute and the Articles, including the compulsory redemption of Participating Shares of one Class and/or Series and the application of the proceeds of redemption in subscribing for Participating Shares of the other Class and/or Series or by redesignating a portion of the Participating Shares of any existing Class and/or Series as thereafter belonging to a new Class and/or Series. Shares of a Class or Series of Shares which represent Designated Investments shall not, unless the Directors otherwise determine, be redeemable at the option of the Members holding such Participating Shares. Where investments are classified as Designated Investments and Participating Shares of a separate Class and/or Series are issued by way of bonus, the requirement of these Articles to ensure proper value is transferred to the Separate Account of the Participating Shares of the original Class and/or Series to which such investments were originally allocated shall not apply.

## 16 Purchase and Surrender of Shares

16.1 Subject to the provisions of the Statute and without prejudice to these Articles, the Company may purchase its own Shares (including any redeemable Shares) in such manner and on such other terms as the Directors may agree with the relevant Member.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

APPX. 00556
001940

16.2   The Company may make a payment in respect of the redemption or purchase of its own Shares in any manner permitted by the Statute, including out of capital.

16.3   The Directors may accept the surrender for no consideration of any fully paid Share.

## 17   Treasury Shares

17.1   The Directors may, prior to the purchase, redemption or surrender of any Share, determine that such Share shall be held as a Treasury Share.

17.2   The Directors may determine to cancel a Treasury Share or transfer a Treasury Share on such terms as they think proper (including, without limitation, for nil consideration).

## 18   Variation of Share Rights

18.1   Subject to the Statute, these Articles and any applicable subscription agreement, all or any of the Share Rights applicable to any Class or Series of Participating Shares in issue (unless otherwise provided by the terms of issue of those Participating Shares) may (whether or not the Company is being wound up) be varied without the consent of the holders of the issued Participating Shares of that Class or Series where such variation is considered by the Directors not to have a material adverse effect upon such holders' Share Rights; otherwise, any such variation may be made with the prior consent in writing of the holders of not less than two-thirds by Net Asset Value of such Participating Shares, or with the sanction of a resolution passed by a majority of at least two-thirds of the votes cast in person or by proxy at a separate meeting of the holders of such Participating Shares.  For the avoidance of doubt, the Directors reserve the right, notwithstanding that any such variation may not have a material adverse effect, to obtain consent from the holders of such Participating Shares.  To any such meeting all the provisions of these Articles as to general meetings shall *mutatis mutandis* apply, but so that any holder of a Participating Share present in person or by proxy may demand a poll, and the quorum for any such meeting shall be Members holding not less than twenty per cent. by Net Asset Value of the issued Participating Shares of the relevant Class or Series.  At any Class meeting, the voting rights attributable to each Participating Share shall be calculated by reference to the Net Asset Value per Participating Share (calculated as at the most recent Valuation Date) and not on the basis of one Participating Share, one vote.

18.2   For the purposes of a Class consent, the Directors may treat two or more or all the Classes or Series of Participating Shares as forming one Class or Series if the Directors consider that such Classes or Series would be affected in the same way by the proposals under consideration, but in any other case shall treat them as separate Classes or Series.

18.3   Where the Shares of any Class or Series (the "**First Class**") rank, or will on issue rank, pari passu with the Shares of another Class or Series (the "**Second Class**") with respect to participation in the same pool of profits or assets of the Company on a winding up, the rights of the First Class shall be deemed to be varied by any variation of or creation of rights in the Second



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

APPX 00557

Class (including on initial issue) which gives the Second Class priority over the First Class on a winding up of the Company.

18.4    Subject to the foregoing Articles, the Share Rights applicable to any Class or Series of Shares in issue shall (unless otherwise expressly provided by the conditions of issue of such Shares) be deemed not to be varied by:

(a)    the creation, allotment or issue of further Shares ranking pari passu therewith and which may be issued with the benefit of the terms referred to below;

(b)    the purchase or redemption of any Shares;

(c)    the exercise of the powers to allocate assets and charge liabilities to the various Separate Accounts or any of them and to transfer the same to and from the various Separate Accounts or any of them, as provided for in these Articles;

(d)    any reduction or waiver of any fees (including early redemption, management or performance fees) chargeable or allocable to any Class or Series of Shares;

(e)    any reduction or waiver of any redemption notice, gate or lock-up period applicable to any Class or Series of Shares; or

(f)    any variation or waiver contemplated by or provided for in the Offering Memorandum applicable to the relevant Class and/or Series.

18.5    In relation to any Class or Series consent required pursuant to Article 18.1, the Directors in their discretion may invoke the following procedure (the "**Negative Consent Procedure**").    The Directors shall provide written notice of the proposed variation (the "**Proposal**") to the Members of the affected Class or Series and shall specify a deadline (the "**Redemption Request Date**"), which shall be no earlier than 30 days after the date of giving such notice, by which date such Members may submit a written request for redemption of some or all of their Participating Shares of the affected Class and/or Series on the Redemption Date (the "**Specified Redemption Date**") specified by the Directors in such notice.    The terms of the Proposal shall be such that its specified effective date (the "**Effective Date**") shall not be on or prior to the Specified Redemption Date.    Such notice shall further provide that the holders of any Participating Shares in respect of which a request for redemption has not been received by the Redemption Request Date (the "**Affected Shares**") shall, in the absence of express written refusal to consent, be deemed to have consented in writing to the Proposal (such Affected Shares being the "**Negative Consent Shares**").    In the event that the Negative Consent Procedure is followed, only the Affected Shares shall be considered for the purposes of determining whether the written consent majority has been obtained under Article 18.1 with the holders of the Negative Consent Shares being deemed to have submitted a written consent in favour of the Proposal on the Effective Date.



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

**App. 001942**

**19      Variation of Terms**

The Directors, with the consent of the Investment Manager, shall have the absolute discretion to agree with a Member to waive or modify the terms applicable to such Member's subscription for Participating Shares (including those relating to management and performance fees and redemption terms) without obtaining the consent of any other Member; provided that such waiver or modification does not amount to a variation of the rights attaching to the Participating Shares of such other Members.

**20      Certificates for Shares**

20.1    A Member shall only be entitled to a share certificate if the Directors resolve that share certificates shall be issued. Share certificates representing Shares, if any, shall be in such form as the Directors may determine.  Share certificates shall be signed by one or more Directors or another person authorised by the Directors. The Directors may authorise certificates to be issued with the authorised signature(s) affixed by mechanical process.  All certificates for Shares shall be consecutively numbered or otherwise identified and shall specify the Shares to which they relate.  All certificates surrendered to the Company for transfer shall be cancelled and, subject to these Articles, no new certificate shall be issued until the former certificate representing a like number of relevant Shares shall have been surrendered and cancelled.

20.2    The Company shall not be bound to issue more than one certificate for Shares held jointly by more than one person and delivery of a certificate to one joint holder shall be a sufficient delivery to all of them.

20.3    If a share certificate is defaced, worn out, lost or destroyed, it may be renewed on such terms (if any) as to evidence and indemnity and on the payment of such expenses reasonably incurred by the Company in investigating evidence, as the Directors may prescribe, and (in the case of defacement or wearing out) on delivery up of the old certificate.

**21      Register of Members**

21.1    The Company shall maintain or cause to be maintained the Register of Members.

21.2    The Directors may determine that the Company shall maintain one or more branch registers of Members in accordance with the Statute. The Directors may also determine which register of Members shall constitute the principal register and which shall constitute the branch register or registers, and to vary such determination from time to time.

**22      Closing Register of Members and Fixing Record Date**

22.1    For the purpose of determining Members entitled to notice of, or to vote at any meeting of Members or any adjournment thereof, or Members entitled to receive payment of any dividend, or in order to make a determination of Members for any other proper purpose, the Directors may provide that the Register of Members shall be closed for transfers for a stated period which shall not in any case exceed thirty days.

SFC/690420-000001/33202513v4

22

*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

APPX 00559

001943

22.2    In lieu of, or apart from, closing the Register of Members, the Directors may fix in advance or arrears a date as the record date for any such determination of Members entitled to notice of, or to vote at any meeting of the Members or any adjournment thereof, or for the purpose of determining the Members entitled to receive payment of any dividend or in order to make a determination of Members for any other proper purpose.

22.3    If the Register of Members is not so closed and no record date is fixed for the determination of Members entitled to notice of, or to vote at, a meeting of Members or Members entitled to receive payment of a dividend, the date on which notice of the meeting is sent or the date on which the resolution of the Directors declaring such dividend is passed, as the case may be, shall be the record date for such determination of Members.  When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Article, such determination shall apply to any adjournment thereof.

## 23    Non Recognition of Trusts

The Company shall not be bound by or compelled to recognise in any way (even when notified) any equitable, contingent, future or partial interest in any Share, or (except only as is otherwise provided by these Articles or the Statute) any other rights in respect of any Share other than an absolute right to the entirety thereof in the registered holder.

23.1    if it is not paid all the provisions of these Articles shall apply as if that amount had become due and payable by virtue of a call.

23.2    The Directors may issue Shares with different terms as to the amount and times of payment of calls, or the interest to be paid.

23.3    The Directors may, if they think fit, receive an amount from any Member willing to advance all or any part of the monies uncalled and unpaid upon any Shares held by it, and may (until the amount would otherwise become payable) pay interest at such rate as may be agreed upon between the Directors and the Member paying such amount in advance.

23.4    No such amount paid in advance of calls shall entitle the Member paying such amount to any portion of a dividend declared in respect of any period prior to the date upon which such amount would, but for such payment, become payable.

## 24    Lien on Shares

24.1    The Company shall have a first and paramount lien on all Shares (whether fully paid-up or not) registered in the name of a Member (whether solely or jointly with others) for all debts, liabilities or engagements to or with the Company (whether presently payable or not) by such Member or such Member's estate, either alone or jointly with any other person, whether a Member or not, but the Directors may at any time declare any Share to be wholly or in part exempt from the provisions of this Article.  The registration of a Transfer of any such Share shall operate as a waiver of the Company's lien thereon.  The Company's lien on a Share shall also extend to any amount payable in respect of that Share.

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

APPX 00560

0011944

24.2  The Company may sell, in such manner as the Directors think fit, any Shares on which the Company has a lien, if a sum in respect of which the lien exists is presently payable, and is not paid within fourteen clear days after notice has been given to the holder of the Shares, or to the person entitled to it in consequence of the death or bankruptcy of the holder, demanding payment and stating that if the notice is not complied with the Shares may be sold.

24.3  To give effect to any such sale the Directors may authorise any person to execute an instrument of Transfer of the Shares sold to, or in accordance with the directions of, the purchaser.  The purchaser or such purchaser's nominee shall be registered as the holder of the Shares comprised in any such Transfer, and the purchaser shall not be bound to see to the application of the purchase money, nor shall the purchaser's title to the Shares be affected by any irregularity or invalidity in the sale or the exercise of the Company's power of sale under these Articles.

24.4  The net proceeds of such sale after payment of costs, shall be applied in payment of such part of the amount in respect of which the lien exists as is presently payable and any balance shall (subject to a like lien for sums not presently payable as existed upon the Shares before the sale) be paid to the person entitled to the Shares at the date of the sale.

**25    Amendments of Memorandum and Articles and Alteration of Capital**

25.1  The Company may, by Ordinary Resolution:

(a)    increase its share capital by such sum and with such rights, priorities and privileges annexed thereto, as the resolution shall prescribe;

(b)    consolidate and divide all or any of its share capital into Shares of larger amount than its existing Shares;

(c)    by subdivision of its existing Shares or any of them divide the whole or any part of its share capital into Shares of smaller amount than is fixed by the Memorandum; and

(d)    cancel any Shares that at the date of the passing of the resolution have not been taken or agreed to be taken by any person.

25.2  All new Shares created in accordance with the provisions of the preceding Article shall be subject to the same provisions of these Articles with reference to liens, Transfer, transmission and otherwise as the Shares in the original share capital.

25.3  Subject to the provisions of the Statute and the provisions of these Articles as regards the matters to be dealt with by Ordinary Resolution the Company may, by Special Resolution:

(a)    change its name;

(b)    alter or add to these Articles;



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

24

Appx. 00581

001945

(c)     alter or add to the Memorandum with respect to any objects, powers or other matters specified therein; and

(d)     reduce its share capital or any capital redemption reserve fund.

## 26      Registered Office

Subject to the provisions of the Statute, the Company may by resolution of the Directors change the location of its Registered Office.  The Company may, in addition to its Registered Office, maintain such other offices or places of business as the Directors determine.

## 27      General Meetings

27.1    All general meetings other than annual general meetings shall be called extraordinary general meetings.  The Directors may call general meetings.

27.2    The Company may but shall not be obliged to hold a general meeting in each year as its annual general meeting, and shall specify the meeting as such in the notice calling it.   Any annual general meeting shall be held at such time and place as the Directors shall determine.

## 28      Notice of General Meetings

28.1    At least five Business Days' notice shall be given of any general meeting.  Every notice shall be exclusive of the day on which it is given or deemed to be given and of the day on which the meeting is to be held and shall specify the place, the day and the hour of the meeting and the general nature of the business and shall be given in the manner hereinafter mentioned or in such other manner if any as may be prescribed by the Company, provided that a general meeting of the Company shall, whether or not the notice specified in this Article has been given and whether or not the provisions of these Articles regarding general meetings have been complied with, be deemed to have been duly convened if it is so agreed:

(a)     in the case of an annual general meeting, by all the Members entitled to attend and vote thereat; and

(b)     in the case of an extraordinary general meeting, by a majority in number of the Members having the right to attend and vote at the meeting, being a majority together holding not less than ninety five per cent. in par value of the Shares giving that right.

28.2    The accidental omission to give notice of a general meeting to, or the non receipt of notice of a meeting by, any person entitled to receive notice thereof shall not invalidate the proceedings of that meeting.

## 29      Proceedings at General Meetings

29.1    No business shall be transacted at any general meeting unless a quorum is present. A quorum shall be one or more Members (present in person, by proxy or authorised corporate

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST



Appx. 00582
001946

representative, as the case may be) entitled to attend and vote and representing not less than twenty per cent. in par value of all of the Shares in issue and carrying the right to vote at the meeting.

29.2    A person may, with the consent of the Directors, participate at a general meeting by conference telephone or other communications equipment by means of which all the persons participating in the meeting can communicate with each other.  Participation by a person in a general meeting in this manner is treated as presence in person at that meeting.

29.3    A resolution (including a Special Resolution) in writing (in one or more counterparts) signed by all Members for the time being entitled to receive notice of and to attend and vote at general meetings (or, being corporations or other non-natural persons, signed by their duly authorised representatives) shall be as valid and effective as if the resolution had been passed at a general meeting of the Company duly convened and held.

29.4    If a quorum is not present within half an hour from the time appointed for the meeting or if during such a meeting a quorum ceases to be present, the meeting, if convened upon the requisition of Members, shall be dissolved and in any other case it shall stand adjourned to the same day in the next week at the same time and place or to such other day, time or such other place as the Directors may determine, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting the Members present shall be a quorum.

29.5    The chairman, if any, of the board of Directors shall preside as chairman at every general meeting of the Company, or if there is no such chairman, or if the chairman shall not be present within fifteen minutes after the time appointed for the holding of the meeting, or is unwilling to act, the Directors present shall elect one of their number to be chairman of the meeting.

29.6    If no Director is willing to act as chairman, or if no Director is present within fifteen minutes after the time appointed for holding the meeting, the Members present shall choose one of their number to be chairman of the meeting.

29.7    The chairman may, with the consent of a meeting at which a quorum is present (and shall if so directed by the meeting) adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.  When a general meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.  Otherwise it shall not be necessary to give any such notice.

29.8    A resolution put to the vote of a meeting shall be decided on a show of hands unless before, or on the declaration of the result of, the show of hands, the chairman or any Member present in person or by proxy (or in the case of a non-natural person, by its duly authorised representative or by proxy) demands a poll.

29.9    Unless a poll is duly demanded a declaration by the chairman that a resolution has been carried or carried unanimously, or by a particular majority, or lost or not carried by a particular majority,

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

26



App. 00562

001947

an entry to that effect in the minutes of the proceedings of the meeting shall be conclusive evidence of that fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.

29.10   The demand for a poll may be withdrawn.

29.11   Except on a poll demanded on the election of a chairman or on a question of adjournment, a poll shall be taken as the chairman directs, and the result of the poll shall be deemed to be the resolution of the general meeting at which the poll was demanded.

29.12   A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith.  A poll demanded on any other question shall be taken at such time as the chairman of the general meeting directs, and any business other than that upon which a poll has been demanded or is contingent thereon may proceed pending the taking of the poll.

29.13   In the case of an equality of votes, whether on a show of hands or on a poll, the chairman shall not be entitled to a second or casting vote.

## 30      Votes of Members

30.1    Subject to any rights or restrictions attached to any Shares, on a show of hands every Member holding Shares carrying the right to vote on the matter in question who (being an individual) is present in person or by proxy or (if a corporation or other non-natural person) is present by its duly authorised representative or by proxy, shall have one vote and on a poll every such Member shall have one vote for every Share of which he is the holder.

30.2    In the case of joint holders of record, the vote of the senior holder who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders. Seniority among joint holders shall be determined by the order in which the names of the holders stand in the Register of Members.

30.3    A Member of unsound mind, or in respect of whom an order has been made by any court or authority having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by the Member's committee, receiver, curator bonis, or other similar person appointed on such Member's behalf by that court or authority and any such committee, receiver, curator bonis or other similar person may vote by proxy.

30.4    No person shall be entitled to vote at any general meeting unless such person is registered as a Member on the record date for such meeting, nor unless all calls or other monies then payable by such person in respect of such Shares have been paid.

30.5    No objection shall be raised to the qualification of any voter except at the general meeting or adjourned general meeting at which the vote objected to is purported to be given or tendered and every vote not disallowed at the meeting shall be valid.  Any objection made in due time shall be referred to the chairman whose decision shall be final and conclusive.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

App. 001948

30.6    On a poll or on a show of hands votes may be cast either personally or by proxy. A Member may appoint more than one proxy or the same proxy under one or more instruments to attend and vote at a meeting. Where a Member appoints more than one proxy the instrument of proxy shall state which proxy is entitled to vote on a show of hands.

30.7    A Member holding more than one Share need not cast the votes in respect of its Shares in the same way on any resolution and therefore may vote a Share or some or all such Shares either for or against a resolution and/or abstain (any such abstentions to count neither for nor against the resolution) from voting a Share or some or all of the Shares and, subject to the terms of the instrument appointing it, a proxy appointed under one or more instruments may vote a Share or some or all of the Shares in respect of which such proxy is appointed either for or against a resolution and/or abstain from voting.

## 31    Proxies

31.1    The instrument appointing a proxy shall be in writing, be executed under the hand of the appointor or of such appointor's attorney duly authorised in writing or, if the appointor is a corporation or other non-natural person, under the hand of an officer or other person duly authorised for that purpose.  A proxy need not be a Member of the Company.

31.2    The Directors may, in the notice convening any meeting or adjourned meeting, or in an instrument of proxy sent out by the Company, specify the place and the time (being not later than the time for holding the meeting or adjourned meeting to which the proxy relates) at which the instrument appointing a proxy shall be deposited.  In the absence of any such direction from the Directors in the notice convening any meeting or adjourned meeting, the instrument appointing a proxy shall be deposited at the Registered Office not less than 48 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote.

31.3    The chairman may in any event, at the chairman's discretion, declare that an instrument of proxy shall be deemed to have been duly deposited.  An instrument of proxy that is not deposited in the manner permitted and which has not been declared to have been duly deposited by the chairman, shall be invalid.

31.4    The instrument appointing a proxy may be in any usual or common form and may be incorporated within any subscription agreement or other document signed by or on behalf of the Member.  An instrument appointing a proxy may be expressed to be for a particular meeting or any adjournment thereof or generally until revoked.  An instrument appointing a proxy shall be deemed to include the power to demand or join or concur in demanding a poll.

31.5    Votes given in accordance with the terms of an instrument of proxy shall be valid notwithstanding the previous death or insanity of the principal or revocation of the proxy or of the authority under which the proxy was executed, or the Transfer of the Share in respect of which the proxy is given unless notice in writing of such death, insanity, revocation or Transfer was received by the



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

28

Appx. 00505

001949

Company at the Registered Office before the commencement of the general meeting, or adjourned meeting at which it is sought to use the proxy.

**32      Corporate Members**

Any corporation or other non-natural person which is a Member of the Company may in accordance with its constitutional documents, or in the absence of such provision by resolution of its directors or other governing body, authorise such person as it thinks fit to act as its representative at any meeting of the Company or of any Class of Members, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which such person represents as the corporation could exercise if it were an individual Member.

**33      Shares Beneficially Owned by the Company**

Shares of the Company that are beneficially owned by the Company shall not be voted, directly or indirectly, at any meeting and shall not be counted in determining the total number of outstanding Shares at any given time.

**34      Directors**

There shall be a board of Directors consisting of not less than one person (exclusive of alternate Directors) provided however that the Company may from time to time by Ordinary Resolution increase or reduce the limits in the number of Directors.  The first Directors of the Company shall be determined in writing by, or appointed by a resolution of, the Subscriber.

**35      Powers of Directors**

35.1      Subject to the provisions of the Statute, the Memorandum and the Articles and to any directions given by Special Resolution, the business of the Company shall be managed by the Directors who may exercise all the powers of the Company.  No alteration of the Memorandum or these Articles and no such direction shall invalidate any prior act of the Directors which would have been valid if that alteration had not been made or that direction had not been given.  A duly convened meeting of Directors at which a quorum is present may exercise all powers exercisable by the Directors.

35.2      All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments and all receipts for monies paid to the Company shall be signed, drawn, accepted, endorsed or otherwise executed as the case may be in such manner as the Directors shall determine by resolution.

35.3      The Directors may exercise all the powers of the Company to borrow money and to mortgage or charge its undertaking, property and uncalled capital or any part thereof and to issue debentures, debenture stock, mortgages, bonds and other such securities whether outright or as security for any debt, liability or obligation of the Company or of any third party.   Notwithstanding the foregoing, the Directors shall not exercise the powers specified in this Article in breach of any limits or restrictions specified in the Offering Memorandum.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00506**

**001950**

**36    Appointment and Removal of Directors**

36.1    The Company may, by Ordinary Resolution, appoint any person to be a Director and may, by Ordinary Resolution, remove any Director.

36.2    The Directors may appoint any person to be a Director, either to fill a vacancy or as an additional Director provided that the appointment does not cause the number of Directors to exceed any number fixed by or in accordance with these Articles as the maximum number of Directors.

**37    Vacation of Office of Director**

The office of a Director shall be vacated if:

(a)    the Director gives notice in writing to the Company that such Director resigns the office of Director;

(b)    the Director is absent (without being represented by proxy or an alternate Director appointed by such Director) from three consecutive meetings of the board of Directors without special leave of absence from the Directors, and they pass a resolution that such Director has by reason of such absence vacated office;

(c)    the Director dies, becomes bankrupt or makes any arrangement or composition with such Director's creditors generally;

(d)    the Director is or becomes of unsound mind;

(e)    the Director ceases to be a Director by virtue of, or is prohibited from being a Director by, an order made pursuant to any law or regulation binding on the Company; or

(f)    all the other Directors of the Company (being not less than two in number) resolve that such Director should be removed as a Director.

**38    Proceedings of Directors**

38.1    The quorum for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed shall be two if there are two or more Directors, and shall be one if there is only one Director. A person who holds office as an alternate Director shall, if such person's appointor is not present, be counted in the quorum. A Director who also acts as an alternate Director shall, if such Director's appointor is not present, count twice towards the quorum.

38.2    Subject to the provisions of these Articles, the Directors may regulate their proceedings as they think fit. Questions arising at any meeting shall be decided by a majority of votes. In the case of an equality of votes, the chairman shall not have a second or casting vote. A Director who is also an alternate Director shall be entitled in the absence of such Director's appointor to a separate vote on behalf of such Director's appointor in addition to such Director's own vote.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

Appx. 00567
001957

38.3    A person may participate in a meeting of the Directors or any committee of Directors by conference telephone or other communications equipment by means of which all the persons participating in the meeting can communicate with each other at the same time. Participation by a person in a meeting in this manner is treated as presence in person at that meeting.  Unless otherwise determined by the Directors, the meeting shall be deemed to be held at the place where the chairman is located at the start of the meeting.

38.4    A resolution in writing (in one or more counterparts) signed by all the Directors or all the members of a committee of Directors (an alternate Director being entitled to sign such a resolution on behalf of such alternate Director's appointor) shall be as valid and effectual as if it had been passed at a meeting of the Directors, or committee of Directors as the case may be, duly convened and held.

38.5    A Director or alternate Director may, or other officer of the Company at the direction of a Director or alternate Director may call a meeting of the Directors by at least two days' notice in writing to every Director and alternate Director which notice shall set forth the general nature of the business to be considered unless notice is waived by all the Directors (or their alternates) either at, before or after the meeting is held.

38.6    The continuing Directors may act notwithstanding any vacancy in their body, but if and so long as their number is reduced below the number fixed by or pursuant to these Articles as the necessary quorum of Directors the continuing Directors or Director may act for the purpose of increasing the number of Directors to that number, or of summoning a general meeting of the Company, but for no other purpose.

38.7    The Directors may elect a chairman of their board and determine the period for which the chairman is to hold office; but if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the Directors present may choose one of their number to be chairman of the meeting.

38.8    All acts done by any meeting of the Directors or of a committee of Directors (including any person acting as an alternate Director) shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any Director or alternate Director, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and qualified to be a Director or alternate Director as the case may be.

38.9    A Director but not an alternate Director may be represented at any meetings of the board of Directors by a proxy appointed in writing by such Director.  The proxy shall count towards the quorum and the vote of the proxy shall for all purposes be deemed to be that of the appointing Director.

**39    Presumption of Assent**

A Director who is present at a meeting of the board of Directors at which action on any Company matter is taken shall be presumed to have assented to the action taken unless the Director's dissent shall be entered in the minutes of the meeting or unless the Director shall file such

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

App. 00568
001952

Director's written dissent from such action with the person acting as the chairman or secretary of the meeting before the close or adjournment thereof or shall forward such dissent by personal delivery, courier or registered post to such person immediately after the close or adjournment of the meeting.  Such right to dissent shall not apply to a Director who voted in favour of such action.

## 40      Directors' Interests

40.1     A Director may hold any other office or place of profit under the Company (other than the office of Auditor) in conjunction with such Director's office of Director for such period and on such terms as to remuneration and otherwise as the Directors may determine.

40.2     A Director may act alone or by such Director's firm in a professional capacity for the Company and the Director or such Director's firm shall be entitled to remuneration for professional services as if such Director were not a Director or alternate Director.

40.3     A Director or alternate Director of the Company may be or become a director or other officer of or otherwise interested in any company promoted by the Company or in which the Company may be interested as shareholder or otherwise, and no such Director or alternate Director shall be accountable to the Company for any remuneration or other benefits received by such Director or alternate Director as a director or officer of, or from such Director or alternate Director's interest in, such other company.

40.4     No person shall be disqualified from the office of Director or alternate Director or prevented by such office from contracting with the Company, either as vendor, purchaser or otherwise, nor shall any such contract or any contract or transaction entered into by or on behalf of the Company in which any Director or alternate Director shall be in any way interested be or be liable to be avoided, nor shall any Director or alternate Director so contracting or being so interested be liable to account to the Company for any profit realised by any such contract or transaction by reason of such Director holding office or of the fiduciary relationship thereby established.  A Director (or such Director's alternate Director in such Director's absence) shall be at liberty to vote in respect of any contract or transaction in which such Director is interested provided that the nature of the interest of any Director or alternate Director in any such contract or transaction shall be disclosed by such Director at or prior to such Director's consideration and any vote thereon.

40.5     A general notice that a Director or alternate Director is a shareholder, director, officer or employee of any specified firm or company and is to be regarded as interested in any transaction with such firm or company shall be sufficient disclosure for the purposes of voting on a resolution in respect of a contract or transaction in which such Director has an interest, and after such general notice it shall not be necessary to give special notice relating to any particular transaction.

## 41      Minutes

The Directors shall cause minutes to be made in books kept for the purpose of recording all appointments of officers made by the Directors, all proceedings at meetings of the Company or



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

Appx. 00509
001953

the holders of any Class of Shares and of the Directors, and of committees of Directors including the names of the Directors or alternate Directors present at each meeting.

## 42    Delegation of Directors' Powers

42.1    The Directors may delegate any of their powers to any committee consisting of one or more Directors or such other persons as the Directors may designate. They may also delegate to any managing director or any Director holding any other executive office such of their powers as they consider desirable to be exercised by such managing director or any Director provided that an alternate Director may not act as managing director and the appointment of a managing director shall be revoked forthwith if such managing director ceases to be a Director.   Any such appointment may be made subject to any conditions the Directors may impose, and either collaterally with or to the exclusion of their own powers, and may be revoked or altered.   Subject to any such conditions, the proceedings of a committee of Directors shall be governed by these Articles regulating the proceedings of Directors, so far as they are capable of applying.

42.2    The Directors may establish any committees, local boards or agencies or appoint any person to be a manager or agent for managing the affairs of the Company and may appoint any person to be a member of such committees or local boards.   Any such appointment may be made either collaterally with or to the exclusion of the Directors' powers, shall be subject to any conditions the Directors may impose, and may be revoked or altered.   Subject to any such conditions, the proceedings of any such committee, local board or agency shall be governed by these Articles regulating the proceedings of Directors, so far as they are capable of applying.

42.3    The Directors may by power of attorney or otherwise appoint any company, firm, person or body of persons to be the attorney or authorised signatory of the Company for such purpose and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such powers of attorney or other appointment may contain such provisions for the protection and convenience of persons dealing with any such attorneys or authorised signatories as the Directors may think fit and may also authorise any such attorney or authorised person to delegate all or any of the powers, authorities and discretions vested in such attorney or authorised person.

42.4    The Directors may appoint such officers as they consider necessary on such terms, at such remuneration (if any) and to perform such duties, and subject to such provisions as to disqualification and removal as the Directors may think fit.   Unless otherwise specified in the terms of such officer's appointment an officer may be removed by resolution of the Directors or Members.

## 43    Alternate Directors

43.1    Any Director (other than an alternate Director) may by written notice to the Company appoint any other Director, or any other person willing to act, to be an alternate Director and by written notice to the Company may remove from office an alternate Director so appointed by the Director.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

APPX 00574

43.2    An alternate Director shall be entitled to receive notice of all meetings of Directors and of meetings of committees of Directors of which such alternate Director's appointor is a member, to attend and vote at every such meeting at which the Director appointing such alternate Director is not personally present, and generally to perform all the functions of such alternate Director's appointor as a Director in such Director's absence.

43.3    An alternate Director shall cease to be an alternate Director if such alternate Director's appointor ceases to be a Director.

43.4    Any appointment or removal of an alternate Director shall be by notice to the Company signed by the Director making or revoking the appointment or in any other manner approved by the Directors.

43.5    Subject to the provisions of the Articles, an alternate Director shall be deemed for all purposes to be a Director and shall alone be responsible for such alternate Director's own acts and defaults and shall not be deemed to be the agent of the Director appointing such alternate Director.

## 44    No Minimum Shareholding for Directors

The Company in general meeting may fix a minimum shareholding required to be held by a Director, but unless and until such a shareholding qualification is fixed a Director shall not be required to hold Shares.

## 45    Remuneration of Directors

45.1    The remuneration to be paid to the Directors, if any, shall be such remuneration as the Directors shall determine.  The Directors shall also be entitled to be paid all travelling, hotel and other expenses properly incurred by them in connection with their attendance at meetings of Directors or committees of Directors, or general meetings of the Company, or separate meetings of the holders of any Class of Shares or debentures of the Company, or otherwise in connection with the business of the Company, or to receive a fixed allowance in respect thereof as may be determined by the Directors, or a combination partly of one such method and partly the other.

45.2    The Directors may by resolution approve additional remuneration to any Director for any services other than such Director's ordinary routine work as a Director.  Any fees paid to a Director who is also counsel to the Company, or otherwise serves it in a professional capacity, shall be in addition to such Director's remuneration as a Director.

## 46    Seal

The Company may, if the Directors so determine, have a Seal, which shall only be used by the authority of the Directors or of a committee of the Directors authorised by the Directors.  Every instrument to which the Seal has been affixed shall be signed by at least one person who shall be either a Director or some officer or other person authorised by the Directors for the purpose.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

App. 0051

001955

## 47    Dividends, Distributions and Reserves

47.1    Subject to the Statute, these Articles, and the special rights attaching to Participating Shares of any Class and/or Series, the Directors may, in their absolute discretion, declare dividends and distributions on Participating Shares of any Class and/or Series in issue and authorise payment of the dividends or distributions out of the relevant Separate Account in respect of such Participating Shares.  No dividend or distribution shall be paid except out of the realised or unrealised profits of the Company, or out of the share premium account attributable to Participating Shares of the Class and/or Series in respect of which the dividend or distribution is proposed to be paid, or as otherwise permitted by law.

47.2    Except as otherwise provided by the rights attached to Participating Shares, or as otherwise determined by the Directors, all dividends and distributions in respect of Participating Shares of a particular Class and/or Series shall be declared and paid according to Net Asset Value of the Participating Shares of the Class and/or Series that a Member holds. If any Participating Share is issued on terms providing that it shall rank for dividend or distribution as from a particular date, that Participating Share shall rank for dividend or distribution accordingly.

47.3    The Directors may deduct and withhold from any dividend or distribution otherwise payable to any Member all sums of money (if any) then payable by it to the Company on account of calls or otherwise or any monies which the Company is obliged by law to pay to any taxing or other authority.

47.4    Under no circumstances may the assets (or the income derived from such assets) attributed to a Separate Account in respect of any Class and/or Series be used to pay a dividend in respect of a Separate Account that is attributed to any other Class and/or Series.

47.5    The Directors may declare that any dividend or distribution be paid wholly or partly by the distribution of specific assets and in particular of shares, debentures or securities of any other company or in any one or more of such ways and, where any difficulty arises in regard to such distribution, the Directors may settle the same as they think expedient and in particular may issue fractional Shares and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any Members upon the basis of the value so fixed in order to adjust the rights of all Members and may vest any such specific assets in trustees as may seem expedient to the Directors.

47.6    Any dividend, distribution, interest or other monies payable in cash in respect of Participating Shares may be paid by wire transfer to the holder or by cheque or warrant sent through the post directed to the registered address of the holder or, in the case of joint holders, to the registered address of the holder who is first named on the Register of Members or to such person and to such address as such holder or joint holders may in writing direct.  Every such cheque or warrant shall (unless the Directors in their sole discretion otherwise determine) be made payable to the order of the person to whom it is sent.  Any one of two or more joint holders may give effectual receipts for any dividends, bonuses, or other monies payable in respect of the Participating Share held by them as joint holders.

47.7    Any dividend or distribution which cannot be paid to a Member and/or which remains unclaimed after six months from the date of declaration of such dividend or distribution may, in the discretion of the Directors, be paid into a separate account in the Company's name, provided that the Company shall not be constituted as a trustee in respect of that account and the dividend or distribution shall remain as a debt due to the Member.  Any dividend or distribution which remains unclaimed after a period of six years from the date of declaration of such dividend or distribution shall be forfeited and shall revert to the Company.

47.8    No dividend or distribution shall bear interest against the Company.

## 48    Capitalisation

The Directors may capitalise any sum standing to the credit of any of the Company's reserve accounts (including share premium account and capital redemption reserve) or any sum standing to the credit of profit and loss account or otherwise available for distribution and to appropriate such sum to Members of any Class and/or Series in the proportions in which such sum would have been divisible amongst them had the same been a distribution of profits by way of dividend and to apply such sum on their behalf in paying up in full unissued Participating Shares for allotment and distribution credited as fully paid-up to and amongst them in the proportion aforesaid.  In such event the Directors shall do all acts and things required to give effect to such capitalisation, with full power to the Directors to make such provisions as they think fit for the case of Participating Shares becoming distributable in fractions (including provisions whereby the benefit of fractional entitlements accrue to the Company rather than to the Members concerned). The Directors may authorise any person to enter into an agreement with the Company, on behalf of all of the Members interested, providing for such capitalisation and matters incidental thereto and any agreement made under such authority shall be effective and binding on all concerned.

## 49    Books of Account

49.1    The Directors shall cause proper books of account (including, where applicable, material underlying documentation including contracts and invoices) to be kept with respect to all sums of money received and expended by the Company and the matters in respect of which the receipt or expenditure takes place, all sales and purchases of goods by the Company and the assets and liabilities of the Company.  Such books of account must be retained for a minimum period of five years from the date on which they are prepared.  Proper books shall not be deemed to be kept if there are not kept such books of account as are necessary to give a true and fair view of the state of the Company's affairs and to explain its transactions.

49.2    The Directors shall from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the Company or any of them shall be open to the inspection of Members not being Directors and no Member (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by Statute, or authorised by the Directors or by the Company in general meeting.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

Appx. 00572
001957

49.3 The Directors may from time to time cause to be prepared and to be laid before the Company in general meeting profit and loss accounts, balance sheets, group accounts (if any) and such other reports and accounts as may be required by law.

## 50 Audit

50.1 The Directors may appoint an Auditor of the Company who shall hold office on such terms as the Directors determine.

50.2 Every Auditor of the Company shall have a right of access at all times to the books and accounts and vouchers of the Company and shall be entitled to require from the Directors and officers of the Company such information and explanation as may be necessary for the performance of the duties of the Auditor.

50.3 Any Auditors of the Company shall, if so required by the Directors, make a report on the accounts of the Company during their tenure of office at the next annual general meeting following their appointment in the case of a company which is registered with the Registrar of Companies as an ordinary company, and at the next extraordinary general meeting following their appointment in the case of a company which is registered with the Registrar of Companies as an exempted company, and at any other time during their term of office, upon request of the Directors or any general meeting of the Members.

## 51 Notices

51.1 Notices shall be in writing and may be given by the Company to any Member either personally or by sending it by courier, post, cable, telex, fax or e-mail to the Member or to the address as shown in the Register of Members (or where the notice is given by e-mail by sending it to the e-mail address provided by such Member). Any notice, if posted from one country to another, is to be sent airmail.

51.2 Where a notice is sent by courier, service of the notice shall be deemed to be effected by delivery of the notice to a courier company, and shall be deemed to have been received on the third day (not including Saturdays or Sundays or public holidays) following the day on which the notice was delivered to the courier. Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, pre paying and posting a letter containing the notice, and shall be deemed to have been received on the fifth day (not including Saturdays or Sundays or public holidays in the Cayman Islands) following the day on which the notice was posted. Where a notice is sent by cable, telex or fax, service of the notice shall be deemed to be effected by properly addressing and sending such notice and shall be deemed to have been received on the same day that it was transmitted. Where a notice is given by e-mail service shall be deemed to be effected by transmitting the e-mail to the e-mail address provided by the intended recipient and shall be deemed to have been received on the same day that it was sent, and it shall not be necessary for the receipt of the e-mail to be acknowledged by the recipient.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

Appx. 00574

001958

51.3    A notice may be given by the Company to the person or persons which the Company has been advised are entitled to a Share or Shares in consequence of the death or bankruptcy of a Member in the same manner as other notices which are required to be given under these Articles and shall be addressed to them by name, or by the title of representatives of the deceased, or trustee of the bankrupt, or by any like description at the address supplied for that purpose by the persons claiming to be so entitled, or at the option of the Company by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

51.4    Notice of every general meeting shall be given in the manner authorised by these Articles to every person shown as holding Shares carrying an entitlement to receive such notice in the Register of Members on the record date for such meeting except that in the case of joint holders the notice shall be sufficient if given to the joint holder first named in the Register of Members and every person upon whom the ownership of a Share devolves by reason of such person being a legal personal representative or a trustee in bankruptcy of a Member where the Member but for such Member's death or bankruptcy would be entitled to receive notice of the meeting, and no other person shall be entitled to receive notices of general meetings.

## 52    Winding Up

52.1    If the Company shall be wound up the liquidator shall apply the assets of the Company in satisfaction of creditors' claims in such manner and order as such liquidator thinks fit.   The liquidator shall in relation to the assets available for distribution among the Members make in the books of the Company such transfers thereof to and from Separate Accounts as may be necessary in order that the effective burden of such creditors' claims may be shared among the holders of Participating Shares of different Classes and/or Series in such proportions as the liquidator in such liquidator's absolute discretion may think equitable.

52.2    Subject to the special rights attaching to Participating Shares of any Class or Series, the balance shall then be applied in the following priority:

(a)    first, to the holders of Management Shares, an amount equal to the par value of such Management Shares; and

(b)    second, the balance shall be paid to the holders of Participating Shares in proportion to the Net Asset Value of Participating Shares held, subject to a deduction from those Participating Shares in respect of which there are monies due, of all monies due to the Company for unpaid calls, or otherwise.

52.3    If the Company shall be wound up (whether the liquidation is voluntary or by or under the supervision of the Court) the liquidator may, with the authority of a resolution or resolutions passed by the holders of Participating Shares (whether as a whole or at separate Class meetings), divide among the Members in specie the whole or any part of the assets of the Company, and whether or not the assets shall consist of property of one kind or shall consist of property of different kinds, and may for such purposes set such value as the liquidator deems fair upon any one or more class or classes of property, and may determine how such division shall be



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

App. 00575
001959

carried out as between the Members or different classes of Members.  The liquidator may, with the like authority, vest any part of the assets in trustees upon such trusts for the benefit of Members as the liquidator, with the like authority, shall think fit, and the liquidation of the Company may be closed and the Company dissolved, but so that no Member shall be compelled to accept any shares or other property in respect of which there is a liability.

## 53    Indemnity and Insurance

53.1    Every Director and officer of the Company (which for the avoidance of doubt, shall not include any Auditor), together with every former Director and former officer of the Company (each an "**Indemnified Person**") shall be indemnified out of the assets of the Company against any liability, action, proceeding, claim, demand, costs, damages or expenses, including legal expenses, whatsoever which they or any of them may incur as a result of any act or failure to act in carrying out their functions other than such liability (if any) that they may incur by reason of their own actual fraud, wilful default or Gross Negligence.  No Indemnified Person shall be liable to the Company for any loss or damage incurred by the Company as a result (whether direct or indirect) of the carrying out of their functions unless that liability arises through the actual fraud, wilful default or Gross Negligence of such Indemnified Person.  No person shall be found to have committed actual fraud, wilful default or Gross Negligence under this Article unless or until a court of competent jurisdiction shall have made a finding to that effect.

53.2    The Company shall advance to each Indemnified Person reasonable attorneys' fees and other costs and expenses incurred in connection with the defence of any action, suit, proceeding or investigation involving such Indemnified Person for which indemnity will or could be sought.  In connection with any advance of any expenses hereunder, the Indemnified Person shall execute an undertaking to repay the advanced amount to the Company if it shall be determined by final judgment or other final adjudication that such Indemnified Person was not entitled to indemnification pursuant to this Article.  If it shall be determined by a final judgment or other final adjudication that such Indemnified Person was not entitled to indemnification with respect to such judgment, costs or expenses, then such party shall not be indemnified with respect to such judgment, costs or expenses and any advancement shall be returned to the Company (without interest) by the Indemnified Person.

53.3    The Directors, on behalf of the Company, may purchase and maintain insurance for the benefit of any Director or other officer of the Company against any liability which, by virtue of any rule of law, would otherwise attach to such person in respect of any negligence, default, breach of duty or breach of trust of which such person may be guilty in relation to the Company.

53.4    Pursuant to the foregoing provisions, the Company may enter into a service or other agreement with any Director (or any entity providing one or more persons to the Company to act as Directors) upon such terms and conditions (including as to indemnification and exculpation) as the Directors shall, in their absolute discretion, determine.  Any such indemnification and exculpation provisions may be specified to a standard equal to or more favourable (but not less favourable) to the Company than any standard specified in these Articles.



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

**Appx. 00576**
**001960**

**54     Disclosure**

If required to do so under the laws of any jurisdiction to which the Company, the Investment Manager, the Administrator or any other service provider is subject, or in compliance with the rules of any stock exchange upon which the Company's Shares are listed, or to ensure the compliance by any person with any anti-money laundering law in any relevant jurisdiction, any Director, Officer, the Investment Manager, the Administrator or Auditor of the Company shall be entitled to release or disclose any information in its possession regarding the affairs of the Company or a Member including, without limitation, any information contained in the Register of Members or subscription documentation of the Company relating to any Member.

**55     Financial Year**

Unless the Directors otherwise prescribe, the financial year of the Company shall end on 31st December in each year and, following the year of incorporation, shall begin on 1st January in each year.

**56     Transfer by way of Continuation**

The Company shall, subject to the provisions of the Statute and with the approval of a Special Resolution, have the power to register by way of continuation as a body corporate under the laws of any jurisdiction outside the Cayman Islands and to be deregistered in the Cayman Islands.

**57     Mergers and Consolidations**

The Company shall, with the approval of a Special Resolution, have the power to merge or consolidate with one or more constituent companies (as defined in the Statute), upon such terms as the Directors may determine.



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

001967

# EXHIBIT 16

App. 00578
001962

**THIRD AMENDED AND RESTATED INVESTMENT MANAGEMENT AGREEMENT**

**by and among**

**HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.**

**HIGHLAND MULTI STRATEGY CREDIT FUND, L.P.**

**and**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

**November 1, 2013**

**THIS THIRD AMENDED AND RESTATED INVESTMENT MANAGEMENT AGREEMENT** (this "***Agreement***"), is dated effective as of November 1, 2014, by and among:

**HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.**, a Cayman Islands exempted company (the "***Offshore Fund***");

**HIGHLAND MULTI STRATEGY CREDIT FUND, L.P.**, a Delaware limited partnership (the "***Domestic Fund***," and together with the Offshore Fund, the "***Clients***") acting through its general partner, Highland Multi Strategy Credit Fund GP, L.P. a Delaware limited partnership (the "***General Partner***"); and

**HIGHLAND CAPITAL MANAGEMENT, L.P.**, a Delaware limited partnership (the "***Investment Manager***").

## PRELIMINARY STATEMENTS

A.      The Domestic Fund previously retained the Investment Manager as its investment manager pursuant to an investment management agreement dated as of December 1, 2005, as amended and restated as of December 29, 2005 and as further amended and restated as of September 1, 2006 (the "***Original Agreement***").

B.      The Offshore Fund will invest all of its investable assets in the Domestic Fund. The Investment Manager will exercise no discretion with respect to the investment of the assets of the Offshore Fund and will serve merely as a steward thereof. The Investment Manager will conduct its investment activities at the Domestic Fund level as the investment manager to the Domestic Fund.

C.      The Domestic Fund desires to continue to retain the Investment Manager and the Offshore Fund desires to retain the Investment Manager to provide certain discretionary advisory services relating to the assets and liabilities of the Domestic Fund and the Investment Manager desires to accept such appointment, all subject to the terms and conditions hereinafter set forth.

## AGREEMENT

This Agreement amends and restates in its entirety the Original Agreement as set forth below. For good and valuable consideration, the sufficiency and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.      **Appointment.**

The Clients hereby appoint the Investment Manager as investment manager with respect to the assets and liabilities of the Domestic Fund and the Investment Manager hereby accepts such appointment and agrees to perform its obligations in accordance with the terms hereof and of the Fourth Amended and Restated Limited Partnership Agreement of the Domestic Fund, dated effective as of November 1, 2014, as amended from time to time (the "***Domestic Fund Partnership Agreement***"), and the investment objectives, policies,

2

guidelines and restrictions that from time to time are set forth in the Governing Documents of the Clients as applicable. "***Governing Documents***" mean, with respect to:

(a)     the Offshore Fund: the Memorandum and Articles of Association of the Offshore Fund, as amended from time to time, and the Confidential Private Offering Memorandum dated November 2014, as may be supplemented from time to time (the "***POM***");

(b)     the Domestic Fund: the Domestic Fund Partnership Agreement and the Private Placement Memorandum dated November 2014, as may be supplemented from time to time (the "***PPM***").

**2.     Authority and Duties of the Investment Manager.**

(a)     All of the investable assets of the Offshore Fund must be invested in, and the investment program of the Offshore Fund is to be conducted by the Investment Manager through, the Domestic Fund. The Investment Manager will exercise no discretion with respect to the investment of the assets of the Offshore Fund and the investment activities of the Investment Manager will be conducted at the Domestic Fund level as the investment manager to the Domestic Fund.

(b)     The Domestic Fund's investment program will be conducted by the Investment Manager in accordance with the PPM.

(c)     The Investment Manager serves as the investment manager to the Domestic Fund and in that capacity has full discretion and authority, without obtaining the prior approval of any officer or other agent of the Domestic Fund:

(i)     to continuously supervise the investment program of the Domestic Fund and the composition of its investment portfolio including, without limitation, determining from time to time what investments will be purchased, retained or sold, what contracts will be entered into by the Domestic Fund and what portion of its assets will be retained as cash, and to engage consultants and analysts in connection therewith; to cause the Domestic Fund to purchase or sell any asset, enter into any other investment-related transaction, including (directly or through subsidiaries or affiliates of the Domestic Fund) borrowing money, entering into swap transactions, lending securities, exercising control over a company, exercising voting or approval rights and selecting brokers and dealers for execution of portfolio transactions; and to undertake to do anything incidental to the foregoing to facilitate the performance of its obligations hereunder;

(ii)    to invest within or outside the United States of America in "Investments" (as defined in, and subject to the provisions of, the Domestic Fund Limited Partnership Agreement);

(iii)   to effect any and all transactions in Investments, including collateralized loan obligations, asset-backed securities, commodities, total return swaps,

APPX 00581
001965

credit default swaps, synthetic securities and other financial instruments and assets (and options and other contracts thereon), and everything connected therewith in the broadest sense, including, without limitation, the full discretion and authority to make short sales, to purchase or write options (including uncovered options) and to trade on margin;

(iv)    to, on behalf of the Clients, exercise all rights, powers, privileges and other incidents of ownership or possession with respect to the Investments and other property and funds held or owned by the Domestic Fund, including without limitation the right to possess, lend, transfer, mortgage, pledge or otherwise deal in, and to secure the payment of obligations of the Domestic Fund by mortgage upon, or hypothecation or pledge of, all or part of the property of the Domestic Fund, whether at the time owned or thereafter acquired, and to vote Investments, participate in arrangements with creditors, institute and settle or compromise suits and administrative proceedings and other similar matters;

(v)    to select brokers, dealers, banks and other intermediaries by or through whom such transactions will be executed or carried out and to open, maintain and close accounts with brokers, which power shall include the authority to issue all instructions and authorizations to brokers regarding securities and money therein and to cause the Domestic Fund to pay, or authorize the payment and reimbursement of, brokerage commissions;

(vi)    to open, maintain and close bank accounts and authorize the drawing of checks or other orders for the payment of monies;

(vii)    to borrow or raise monies or utilize any other forms of leverage and to issue, accept, endorse and execute promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non- negotiable instruments and evidences of indebtedness and otherwise to utilize any lines of credit, credit balances or overdraft privileges available to the Domestic Fund;

(viii)    to value the Client's assets as of the close of each fiscal period and any other date selected by the respective Client;

(ix)    to direct any administrator of the Clients, banks, brokers or other custodians to effect deliveries of funds or assets, but only in the course of effecting portfolio transactions for the account of the Clients;

(x)    to remove or replace any administrator of the Clients and/or any accountant of the Clients at any time; and

(xi)    to make and execute all such documents and to take all such other actions as the Investment Manager considers necessary or appropriate to carry out its investment management duties hereunder.

4

(d)    In furtherance of the foregoing, the Board of Directors, on behalf of the Offshore Fund, and the General Partner, on behalf of the Domestic Fund, has delegated certain rights and responsibilities with respect to the operation of their respective partnerships and funds to the Investment Manager, as more fully set forth in the Governing Documents.

(e)    Each Client hereby designates the Investment Manager as the commodity pool operator (the "***CPO***") for such Client with complete authority and responsibility for compliance with the U.S. Commodity Exchange Act and the regulations promulgated thereunder, including to perform any and all duties required of a CPO (i) that is exempt from registration under the regulations of the U.S. Commodity Futures Trading Commission (the "***CFTC***") and (ii) that is in compliance with CFTC Rule 4.13(a)(3), including the filing of a notice of exemption under said Rule 4.13(a)(3) with the CFTC.

(f)    Additionally, each of the Clients hereby designates and appoints the Investment Manager as its agent and attorney-in-fact, with full power and authority and without the need for further approval of the Clients (except as may be required by law) to complete and execute all such documents and to take any and all actions that the Investment Manager, in its discretion, may deem advisable to carry out the foregoing with respect to the assets of the Clients; provided, however, that the Investment Manager is not intended to have actual or constructive custody of any assets of the Clients.  In connection with any of the foregoing, the Investment Manager is further authorized to transfer or tender for cash or exchange such assets. In all such purchases, sales or trades the Clients authorize the Investment Manager to act for the Clients, and at their risk, and in their name and on their behalf, in the same manner and with the same force and effect as the Clients might or could do with respect to such purchases, sales or trades without prior consultation with the Clients.  The Clients also appoint the Investment Manager as their agent and attorney-in-fact to vote, and to execute proxies, waivers, consents and other instruments with respect to, the assets of the Clients.

(g)    At the request of a Client, in any wind down of such Client, the Investment Manager will manage the realization of the Client's assets and the distribution thereof to investors.

(h)    In connection with the execution of transactions on behalf of the Domestic Fund, the Domestic Fund hereby acknowledges and agrees that in the course of selecting brokers, dealers, futures commission merchants, banks and financial intermediaries to effect transactions for the Domestic Fund's account, the Investment Manager may agree to such commissions, fees and other charges on behalf of the Domestic Fund's account as it may deem reasonable in the circumstances, taking into consideration all such factors as the Investment Manager deems relevant, including the following: the ability to effect prompt and reliable executions at favorable prices; the operational efficiency with which transactions are effected; the financial strength, integrity and stability of the broker; the quality, comprehensiveness and frequency of available research and other services considered to be of value; and

APPX. 00582
001967

the competitiveness of commission rates in comparison with other brokers satisfying the Investment Manager's other selection criteria. It is understood that the costs of such services will not necessarily represent the lowest costs available and that the Investment Manager is under no obligation to combine or arrange orders so as to obtain reduced charges.

3.    **Fees and Expenses.**

(a)    For its services to the Domestic Fund, the Domestic Fund will pay the Investment Manager the Management Fee (as defined in the Domestic Fund Partnership Agreement), calculated and payable monthly in advance. The Investment Manager may waive or reduce the management fees with respect to capital account and capital sub-accounts of the Domestic Fund in its discretion.

(b)    The Clients will pay, or will reimburse the Investment Manager, for all costs and expenses arising in connection with their operations, including without limitation, with respect to the Domestic Fund, all costs and expenses directly related to portfolio investments or prospective investments (whether or not consummated) of the Domestic Fund.

(c)    The Clients will not have their own separate employees or office, and they will not reimburse the Investment Manager for salaries, office rent and other general overhead costs of the Investment Manager. The Investment Manager will pay all of its own operating and overhead costs (except liability insurance) without reimbursement by the Clients. The Investment Manager is entitled to reimbursement from the Clients for any expenses paid by it on behalf of the Clients; provided that, the Investment Manager in its sole discretion may absorb any or all of such expenses incurred on behalf of the Clients. If the Investment Manager incurs any such expenses for the account of the Clients and any Customers (as defined below), the Investment Manager will allocate such expenses among the Clients and each such Customer in proportion to the size of the investment made by each in the activity or entity to which the expense relates, or in such other manner as the Investment Manager in its sole discretion considers fair and reasonable.

4.    **Other Activities and Investments.**

(a)    The Investment Manager is not required to devote its full time to the affairs of the Clients, but must devote such of its time to the business and affairs of the Clients as it may determine, in its discretion exercised in good faith, to be necessary to conduct the affairs of the Clients for the benefit of the Clients, the shareholders of the Offshore Fund and the partners of the Domestic Fund. Subject to this limitation, the Investment Manager, its partners and principals and their affiliates are not precluded from engaging in or owning an interest in other business ventures or investment activities of any kind. It is expressly understood that the Investment Manager and its affiliates may effect investment transactions for their own accounts and for the accounts of other customers (generally, "***Customers***"), and the Clients further understand and agree that nothing herein restricts the ability of the

6

Investment Manager and its affiliates to engage in any such transactions notwithstanding the fact that the Clients may enter into or engage in such transactions so long as such transactions are in the best interests of the Clients.

(b)     The Investment Manager will act in a manner that it considers fair, reasonable and equitable in allocating investment opportunities to the Clients.  It is understood that when the Investment Manager determines that it would be appropriate for the Clients and one or more of the Customers to participate in an investment opportunity, the Investment Manager will seek to execute orders for, or otherwise allocate such opportunities to, the Clients and such Customers on an equitable basis.  In such situations, the Investment Manager may place orders for the Clients and each Customer simultaneously, and if all such orders are not filled at the same price, the Investment Manager may cause the Clients and each Customer to pay or receive the average of the prices at which such orders were filled for the Clients and all other Customers.  If all such orders cannot be fully executed under prevailing market conditions, the Investment Manager may allocate among the Clients and the Customers the investments traded in a manner which the Investment Manager considers equitable, taking into account the size of the order placed for the Clients and each such Customer as well as any other factors which the Investment Manager deems relevant.

**5.     Account and Other Information.**

(a)     The Investment Manager must furnish such information concerning activities undertaken for the account of the Clients as the Clients may reasonably request.

(b)     The Clients agree to keep confidential and not to disclose to any person any information or matter relating to the Clients' investments (other than disclosure to the Clients' shareholders, partners, directors and employees, legal counsel, administrator, registrar and accountant in connection with the preparation and review of financial statements and with the filing of any tax returns or to any other person approved in writing by the Investment Manager (each such person being hereinafter referred to as an "*Authorized Representative*")); provided that the Clients and their Authorized Representatives may make such disclosure to the extent that (x) the information to be disclosed is publicly known at the time of proposed disclosure by the Clients or Authorized Representative, (y) the information otherwise is or becomes legally known to the Clients other than through disclosure by the Investment Manager or (z) such disclosure is required by law or in response to any governmental agency request or in connection with an examination by any regulatory authorities, provided that such agency, regulatory authorities or association is aware of the confidential nature of the information disclosed.  Prior to making any disclosure required by law, the Clients will use their best efforts to notify the Investment Manager of such disclosure.  Prior to any disclosure to any Authorized Representative, the Clients must advise such Authorized Representative of the obligations set forth in this Section 5(b) and are responsible for any breach of these obligations made by an Authorized Representative.

APPX 00585
001969

(c)    The Investment Manager retains, or arranges for the retention of, for a period of at least 5 years, copies of any documents generated or received by the Investment Manager in the ordinary course of business pertaining to the financial condition of the account of the Clients or to the compensation payable to the Investment Manager.  At the request of the Clients, the Investment Manager will afford to the Clients' independent auditors reasonable access to such documents during customary business hours and will permit the Clients' auditors to make copies thereof or extracts therefrom at the expense of the Clients.

**6.    Custody.**

The assets of the Clients must be held in the custody of one or more custodians (or other independent institutions performing the functions of custodian, with respect to the assets which are held by such institutions) selected by the Investment Manager.  The Investment Manager will notify the Clients promptly of the proposed selection of any custodians.

**7.    Scope of Liability.**

The Clients agree that the Investment Manager is not liable to the Clients or any of their partners or shareholders for any losses, damages, expenses or claims occasioned by any act or omission of the Investment Manager in connection with the performance of its services hereunder, other than as a result of the Investment Manager's willful misconduct, fraud or gross negligence, or as otherwise prescribed by applicable law.  The Clients explicitly recognize that the investment advisory opinions, recommendations and actions of the Investment Manager will be based on advice and information deemed to be reliable but not guaranteed by or to the Investment Manager.

**8.    Indemnification.**

(a)    The Clients must indemnify and hold harmless the Investment Manager, each member, shareholder, partner, manager or director of, or any person who controls, the Investment Manager, each of the respective affiliates of the foregoing and each of the respective executors, heirs, assigns, successors or other legal representatives of the foregoing (each, an "***indemnitee***") from and against any expense, loss, liability or damage arising out of any claim asserted or threatened to be asserted against such indemnitee in connection with the Investment Manager's serving or having served as such pursuant to this Agreement; provided, however, that the indemnitee is not entitled to any such indemnification with respect to any expense, loss, liability or damage that was caused by the indemnitee's willful misconduct, fraud or gross negligence.

(b)    In the event that the Investment Manager or any other indemnitee entitled to indemnification pursuant to paragraph (a) above is or becomes a party to any action or proceeding in respect of which, or there otherwise exists a claim pursuant to which, it may be entitled to seek indemnification hereunder, the indemnitee must promptly notify the respective Client thereof.  The respective Client is entitled to participate in any such suit or proceeding and, to the extent that it may wish, to

8

001970

assume the defense thereof with counsel reasonably satisfactory to the indemnitee. After notice of an election by the Client so to assume the defense thereof, the Client will not be liable to the indemnitee hereunder for any legal or other expenses subsequently incurred by the indemnitee in connection with the defense thereof other than reasonable costs of investigation or reasonable legal expenses incurred as a result of (i) potential conflicts of interest between the indemnitee and the Client or (ii) the protection of proprietary or privacy interests of other clients of or parties in interest with the indemnitee. The Client must advance to the indemnitee the reasonable costs and expenses of investigating and/or defending such claim, subject to receiving a written undertaking from the indemnitee to repay such amounts if and to the extent of any subsequent determination by a court or other tribunal of competent jurisdiction that the indemnitee was not entitled to indemnification hereunder.

(c)     A Client is not liable hereunder for any settlement of any action or claim effected without its written consent thereto.

## 9.     Independent Contractor.

For all purposes of this Agreement, the Investment Manager is an independent contractor and not an employee or dependent agent of any Client. Nothing herein is to be construed as making any Client a partner or co-venturer with the Investment Manager or any of its affiliates or Customers. Except as provided in this Agreement, the Investment Manager has no authority to bind, obligate or represent the Clients.

## 10.     Term; Termination; Renewal.

(a)     This Agreement will remain in full force and effect for a period commencing on the date first above written and ending on December 31, 2014, and thereafter will renew automatically for successive one-year periods. This Agreement may be terminated by any party hereto, without penalty, upon 75 days' prior written notice to the other parties.

(b)     The termination of this Agreement does not extinguish the obligations of the Clients for the payment of fees and expenses in respect of services rendered by the Investment Manager prior to the effective date of such termination.

## 11.     Acknowledgement.

Each of the Clients certifies and acknowledges to the Investment Manager that it:

(i)     has fully disclosed to potential investors the fee provisions and other arrangements relating to the Client's account with the Investment Manager and is satisfied that the potential investors have received sufficient information from the Investment Manager to enable them to evaluate the terms of this Agreement; and

(ii)     fully understands the method of compensation provided herein and its associated risks, including the risk that the performance compensation arrangements with

APPX 00587

affiliates of the Investment Manager may create an incentive for the Investment Manager to engage in transactions that are riskier or more speculative than would be the case in the absence of performance compensation and that such risk has been disclosed to potential investors.

**12.      Amendment; Modification; Waiver.**

Except as otherwise expressly provided herein, this Agreement may not be amended, nor may any provision of this Agreement be considered modified or waived, unless evidenced by a writing signed by the party to be charged with such amendment, waiver or modification.

**13.      Binding Effect; Assignment.**

This Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors, but the rights and obligations hereunder are not, except as otherwise expressly provided herein, assignable, transferable or delegable without the written consent of the other parties hereto and any attempted assignment, transfer or delegation thereof without such consent is null and void, except that the Investment Manager may assign its rights and obligations hereunder to an entity that controls, is controlled by or is under common control with the Investment Manager; provided, however, that such entity assumes the obligations of the Investment Manager hereunder.

**14.      Governing Law.**

This Agreement is governed by and construed in accordance with the substantive laws of the State of Delaware which are applicable to contracts made and entirely to be performed therein, without regard to the place of performance hereunder.

[SIGNATURE PAGE FOLLOWS]

10

The parties have executed this Agreement as of the day and year first above written.

**HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.**

By: _____
Name:  James Dondero
Title:   Director

**HIGHLAND   MULTI   STRATEGY   CREDIT FUND, L.P.**

By:   HIGHLAND MULTI STRATEGY CREDIT
      FUND GP, L.P
      attorney-in-fact for the Limited Partners

By:   HIGHLAND MULTI STRATEGY CREDIT
      GP, LLC
      its general partner

By:   HIGHLAND CAPITAL MANAGEMENT,
      L.P.
      its sole member

By:   STRAND ADVISORS, INC.
      its general partner

By: _____
Name: James Dondero
Title:   President

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By:   STRAND ADVISORS, INC.

By: _____
Name:  James Dondero
Title:   President

*Signature Page to Third Amended and Restated Investment Management Agreement*

# EXHIBIT 17

App. 00590
001974

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX  75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| THE CHARITABLE DAF FUND, L.P., | § | |
| | § | |
| Plaintiffs, | § | Adversary Proceeding No. |
| | § | 22-03052-sgj |
| vs. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## DECLARATION OF JAMES P. SEERY, JR., IN SUPPORT OF HIGHLAND CAPITAL
## MANAGEMENT, L.P.'S AMENDED MOTION TO DISMISS

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357).  The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

Appx. 00591
001975

I, James P. Seery, Jr., pursuant to 28 U.S.C. § 1746(a), under penalty of perjury, declare as follows:

1.      During the bankruptcy case, I was first appointed as a member of the Board of Directors (the "Board") of Strand Advisors, Inc. ("Strand"), the general partner of Highland Capital Management, L.P. (the "Highland" or the "Debtor," as applicable), and later as the Debtor's Chief Executive Officer ("CEO") and Chief Restructuring Officer ("CRO").

2.      In August 2021, upon the occurrence of the effective date of Highland's Plan, I became Highland's CEO.

3.      I submit this Declaration in support of *Highland Capital Management, L.P.'s Amended Motion to Dismiss* (the "Motion"),[2] being filed concurrently with this Declaration. Unless stated otherwise, this Declaration is based on my personal knowledge, my review of the documents described below, and my communications with certain of Highland's employees and counsel.

4.      Highland is the investment manager for Multi-Strat (defined below) pursuant to the terms of the *Third Amended and Restated Investment Management Agreement, by and among Highland Multi Strategy Credit Fund, Ltd., Highland Multi Strategy Credit Fund, L.P., and Highland Capital Management, L.P.*, dated November 1, 2013.

5.      Multi-Strat is a pooled investment fund structured as a "mini master" and consists of Highland Multi Strategy Credit Fund, L.P., a Delaware limited partnership (the "Master Fund"), and Highland Multi Strategy Credit Fund, Ltd., a Cayman Islands exempted company (the "Feeder Fund").  We refer to the Master Fund and the Feeder Fund collectively as "Multi-Strat."

---

[2] Capitalized terms not defined herein shall have the meanings ascribed in the Motion.

6.      Multi-Strat is managed by Highland, as its investment manager, and its general partner, Highland Multi Strategy Credit Fund GP, L.P. ("MSCF GP").  MSCF GP is wholly-owned by Highland Multi Strategy Credit GP, LLC, which is in turn wholly-owned by Highland.  I am the sole officer of MSCF GP.  I am also a director of the Feeder Fund.

7.      Multi-Strat's investors include both the limited partners in the Master Fund and the shareholders of the Feeder Fund (which itself is a limited partner of the Master Fund).  The ultimate investors, whether direct or through the Feeder Fund, are commonly referred to as Multi-Strat's limited partners.  Multi-Strat's current limited partners on a consolidated basis are:

| Limited Partner | Ownership % |
| --- | --- |
| Highland | 58.70% |
| CLO Holdco, Ltd. | 4.06% |
| The Dugaboy Investment Trust | 1.71% |
| Highland Capital Management Services, Inc. | 35.10% |
| Mark Okada | 0.43% |

8.      In addition to the limited partners, there are a number of former "redeemed" limited partners of Multi-Strat.

9.      The Charitable DAF Fund, L.P., is not a Multi-Strat limited partner, investor, or "redeemed" limited partner in Multi-Strat.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

DOCS_NY:45827.2 36027/003

App. 00593
001977

I declare under penalty of perjury OF the laws of the United States that the foregoing is true and correct.

Dated:  May 27, 2022

 /s/ James P. Seery, Jr.
James P. Seery, Jr.

DOCS_NY:45827.2 36027/003

Appx. 001978

# EXHIBIT 18

Appx. 00595
001979

[1992–93 CILR 372]

CAYMAN HOTEL AND GOLF INCORPORATED v. RESORT GEMS LIMITED

GRAND COURT (Smellie, Ag. J.): July 6th, 1993

Civil Procedure—joinder of parties—party who "ought to have been joined"—Grand Court (Civil Procedure) Rules, r.26 permits joinder of defendant who ought to have been joined at commencement of proceedings only if established link between original cause of action and that against party to be joined—joinder not permitted for purpose of expanding original cause, e.g. to join party not privy to contract forming subject of original cause

Civil Procedure—pleading—amendment—application to amend under Rules of Supreme Court, O.20, r.5 to be decided on merits and effect on action against original defendant—normally allowed unless applicant causing injury for which no compensation or acting mala fide—inconsistent, useless or futile claims or those constituting new cause of action not permitted

Landlord and Tenant—characteristics of relationship—exclusivity—if landlord/tenant relationship and remedy for breach comprehensively covered by lease agreement, court will not impose equitable or agency relationship —court will also not impose duties not strictly and necessarily incidental to relationship expressly created by parties

Landlord and Tenant—breach of covenant—forfeiture—notice—Registered Land Law (Revised), s.56 requirements for notice before forfeiture applicable only if breach capable of remedy

   The plaintiff sought leave to amend its writ and statement of claim in an action against the defendant for breach of a lease.

   The plaintiff leased premises to the defendant for the operation of its jewellery retail business. The form of lease was based on a Canadian model and provided for the payment of an annual basic rent and an annual percentage rent based on sales. The lease contained extensive provisions dealing with the defendant's obligations to report and account to the plaintiff and specified the relief available in the event of breach of those provisions.

   The defendant failed to keep full and faithful records and refused to comply with the directions of an independent auditor engaged by the plaintiff to obtain a reconstruction or compilation of those records. The plaintiff also obtained evidence of at least one sale of a valuable item which had not been recorded. The plaintiff claimed forfeiture of the lease and gave notice

---

1992–93 CILR 373

to that effect. It brought proceedings for recovery of possession and for rent claiming that the defendant had repudiated the lease.

   The plaintiff subsequently sought leave to amend its writ and statement of claim (a) to add four more defendants who it alleged conspired with and facilitated or assisted the defendant in its falsification of accounts and disclosures; (b) to plead claims against those defendants; and (c) to effect substantial amendments of the pleadings against the primary defendant to include *inter alia* a claim for an account from the defendant to ascertain the amount owed to it, a claim for a declaration that the lease was duly forfeited and a claim in the alternative for damages for breach of the covenant to pay rent.

   The plaintiff submitted that (a) the joinder of the additional defendants was permitted under r.26 of the Grand Court (Civil Procedure) Rules because the proper test was whether they could have been joined in some way at the time the original action was brought irrespective of whether they could have been joined in the action as it was actually brought. Accordingly, though the original action sought recovery of possession and mesne profits from the defendant, it could have instituted proceedings in damages at the same time against the other parties for having procured and conspired with the defendant to breach the lease; (b) the justification for giving leave to amend to include a claim for an account from the defendant consisted in the fiduciary relationship of principal and agent which should be implied as existing between it and the defendant having regard to the lease agreement which demanded a duty of trust from the defendant as tenant; further, an action for an account was an established remedy available to a principal against his agent in lieu of damages; (d) it was entitled to forfeit the lease on the basis that the breach was incapable of being remedied; and (e) it was entitled to make an alternative claim for damages for breach of the covenant to pay rent.

   The defendant submitted in reply that (a) the joinder of the proposed defendants under r.26 was not permissible as they were not party to any contract with the plaintiff; (b) the court had no jurisdiction to permit the plaintiff to amend its writ and statement of claim to include new causes of action or inconsistent or useless amendments; (c) no fiduciary relationship existed between itself and the plaintiff; theirs was strictly a relationship of landlord and tenant to be governed by the clearly express terms of the lease; and (d) the plaintiff's application should be



dismissed in its entirety for the most important reason that the cause of action was bound to fail, for though it might have breached the lease, that breach was not irremediable. Accordingly, by virtue of s.56 of the Registered Land Law (Revised) it was entitled to notice requiring it to remedy the breach. As there had been no such proper notice nor any proper demand to remedy, the forfeiture was wrong in law and the cause of action based on it, for recovery of possession, rent and, latterly, damages, could not succeed. Further, the lease was still intact despite the plaintiff's claim to forfeiture.

**Held,** granting the application in part:

(1) The Grand Court (Civil Procedure) Rules, r.26 provided for the

---

## 1992–93 CILR 374

joinder of defendants who ought to have been joined at the commencement of the proceedings where there was an established link between the original cause and the cause against those to be joined. It did not permit joinder for the purpose of expanding the original cause of action. Since the original action between the plaintiff and the defendant was based on the lease agreement between them as landlord and tenant and the plaintiff's claim to recovery of possession and mesne profits arising from the defendant's breach, there could have been no other parties to the action as instituted because privity of contract existed only between those two (page 381, lines 13–15; lines 21–28; page 383, line 37 – page 384, line 9).

(2) In general, a plaintiff's application to amend pleadings to vary or add claims was to be decided on the merits to the extent that they might affect the action brought against the original defendant. The applicable principles were embodied in the Rules of the Supreme Court, O.20, r.5, by which amendments should normally be allowed unless it was apparent that the plaintiff applicant was acting *mala fide* or that by his omission or by the amendment he had done or would cause injury to his opponent which could not be compensated for by costs or otherwise; a plaintiff would not be permitted to raise entirely new claims amounting to a new cause of action or those that were inconsistent or useless or which sought to support a case that was bound to fail (page 385, line 27 – page 386, line 26).

(3) The court should not search for liability in tort or in equity where the parties were in a contractual relationship and this was particularly so in commercial relationships. More specifically it should not impose duties which were not strictly and necessarily incidental to that relationship. Since the lease agreement between the parties was a commercial transaction and it specified expressly and comprehensively their intentions with regard to the defendant's duties as well as an appropriate remedy for breach of the agreement, the court would not invoke the rules of equity so as to impose a relationship where there was no true need for the special protection that equity afforded. Similarly, no relationship of principal and agent could be found in what was strictly a landlord and tenant relationship. Furthermore, the proposition that the court should impose a fiduciary duty on the defendant because of the self-dealing manner in which he had breached the agreement was not acceptable since the equitable rules about self-dealing were based on a pre-existing fiduciary duty. Accordingly, no separate fiduciary duty on the defendant to account was to be implied from their relationship and the plaintiff's application to amend the pleadings on this basis would therefore be refused (page 387, lines 12–30; page 388, line 28 – page 389, line 36).

(4) The plaintiff had satisfied the court that it had a good, arguable case for forfeiture on the merits since even though it had omitted to address the question of whether the defendant's breach could be

---

## 1992–93 CILR 375

remedied, it was at least objectively arguable that it should be entitled to treat the circumstances existing at the time it purported to forfeit the case as irremediable because (a) the defendant's falsifications were deliberate; (b) its failure to assist the independent auditor betrayed an intention to continue its dissemblance; and (c) the continued performance of the lease depended on the good faith and willingness of the defendant, not only to remedy the breach but also to keep faithful accounts and make full and frank disclosure of sales and income. Although s.56 of the Registered Land Law (Revised) and its requirements for proper notice superseded any provisions in the lease to the contrary, the section would apply only if it were to be determined on the facts that the breaches were capable of remedy. Since the plaintiff's contention was that the breach was irremediable and repudiatory and entitled him to repudiate the lease without notice, it should be allowed to present that claim for determination on its merits. Given the interlocutory nature of these proceedings, the plaintiff needed to show no more than that it had a good, arguable case in this respect. Accordingly, the leave to amend would be granted to


APPX 00597

include the claim for a declaration that the lease had been duly forfeited (page 390, lines 3–10; page 390, line 21 – page 392, line 20; page 392, lines 33–41).

  (5) Leave would also be granted to include a claim in the alternative for damages for breach of the covenant to pay rent. This was sustainable in light of the evidence of at least one instance in which the defendant had failed to declare the sale of a valuable item which would have generated income to be assessed for percentage rent (page 393, lines 14–19).

Cases cited:

  (1)  *Baker (G.L.) Ltd.* v. *Medway Building & Supplies Ltd.*, [1958] 1 W.L.R. 1216; [1958] 3 All E.R. 540, observations of Jenkins, L.J. applied.

  (2)  *Bank of Nova Scotia* v. *Becker*, 1988–89 CILR 12, applied.

  (3)  *Cayman Arms (1982) Ltd.* v. *English Shoppe Ltd.*, 1988–89 CILR 383; on appeal, Cause No. 16 of 1989, September 20th, 1989, unreported.

  (4)  *Clarapede* v. *Commercial Union Assn.* (1883), 32 W.R. 262, observations of Brett, M.R. applied.

  (5)  *Executive Air Servs. Ltd.* v. *MacDonald*, 1990–91 CILR N–4.

  (6)  *Empire Clothing Serv. & Sales Ltd.* v. *Hillgate House Ltd.*, [1986] Ch. 340; [1985] 2 All E.R. 998, *dicta* of Slade, L.J. applied.

  (7)  *Iorgulescu* v. *Swiss Bank & Trust Corp. Ltd.*, 1990–91 CILR 163.

  (8)  *Jones v. Hughes*, [1905] 1 Ch. 180, observations of Vaughan Williams, L.J. applied.

  (9)  *Ketteman* v. *Hansel Properties Ltd*, [1987] A.C. 189; [1988] 1 All E.R. 38, observations of Lord Griffiths applied.

(10)  *Kurtz* v. *Spence* (1887), 36 Ch. D. 770.

(11)  *Lac Minerals Ltd.* v. *International Corona Resources Ltd.*, [1989] 2 R.C.S. 574, applied.

(12)  *Molnlycke AB* v. *Procter & Gamble Ltd.*, [1992] 1 W.L.R. 1112; [1992] 4 All E.R. 47, distinguished.

---

1992–93 CILR 376

(13)  *Norwich Pharmacal Co.* v. *Customs & Excise Commrs.*, [1974] A.C. 133; [1973] 2 All E.R. 943.

(14)  *Paradise Manor Ltd.* v. *Bank of Nova Scotia*, 1984–85 CILR 437, considered.

(15)  *Raleigh* v. *Goschen*, [1898] 1 Ch. 73.

(16)  *Salomon* v. *A. Salomon & Co. Ltd.*, [1897] A.C. 22; [1895–99] All E.R. Rep. 33, considered.

(17)  *Tai Hing Cotton Mill Ltd.* v. *Liu Chong Hing Bank Ltd.*, [1986] A.C. 519; [1985] 2 All E.R. 947; [1985] 2 Lloyd's Rep. 313, followed.

(18)  *Tildesley* v. *Harper* (1878), 10 Ch. D. 393, observations of Bramwell, L.J. applied.

(19)  *Tito* v. *Waddell (No.2)*, [1977] Ch. 106; [1977] 3 All E.R. 129, *dicta* of Megarry, V.-C. applied.

**Legislation construed:**

Grand Court (Civil Procedure) Rules, r.25: The relevant terms of this rule are set out at page 380, lines 29–34.

r.26: The relevant terms of this rule are set out at page 380, line 35 – page 381, line 9.

Registered Land Law (Revised) (Law 21 of 1971, revised 1976), s.37(1): The relevant terms of this section are set out at page 392, lines 25–27.

s.55(1):

  "Subject to the provisions of section 57 and to any provision to the contrary in the lease, the lessor shall have the right to forfeit the lease if the lessee—

  (a)  commits any breach of, or omits to perform any agreement or condition on his part expressed or implied in the lease. . . ."

s.56:

  "Notwithstanding anything to the contrary contained in the lease, no lessor shall be entitled to exercise the right of forfeiture for the breach of any agreement or condition in the lease whether expressed or implied, until the lessor has served on the lessee a notice—

  (a)  specifying the particular breach complained of; and

  (b)  if the breach is capable of remedy, requiring the lessee to remedy the breach within such reasonable period as is specified in the notice; and

  (c)  in any case other than non-payment of rent, requiring the lessee to make compensation in money for the breach,

and the lessee has failed to remedy the breach within a reasonable time thereafter, if it is capable of remedy, and to make reasonable compensation in money."

Rules of the Supreme Court, O.20, r.5:

"Subject to Order 15, rules 6, 7 and 8 and the following provisions of this rule, the Court may at any stage of the proceedings allow the plaintiff to amend his writ, or any party to

---

1992–93 CILR 377

amend his pleading, on such terms as to costs or otherwise as may be just and in such manner (if any) as it may direct."

*M. Parkinson* for the plaintiff;

*P. Lamontagne, Q.C.* and *P. Boni* for the defendant.

**SMELLIE, Ag. J.:** By summons dated March 1st, 1993 the landlord/plaintiff sought leave to re-amend its writ and statement of claim in this matter to achieve three main objectives. The first was to add parties—the proposed second to fifth defendants. The

10   second was to plead claims against those additional defendants and the third, to effect consequential amendments of the pleadings against the original defendant. Submissions were taken on March 31st, April 1st and April 5th and an order made on April 16th, 1993 with written reasons to be delivered at a later

15   date. These are the reasons.

  The original parties stand in the position of landlord and tenant by virtue of a lease dated August 16th, 1990. In the action the plaintiff's case is that the tenant/defendant has falsified records of accounts and disclosures required to be respectively kept and

20   made by the defendant pursuant to the lease and that the defendant has falsified those records in order to deprive the plaintiff of rents lawfully due under the lease. The proposed additional defendants are parties who, the plaintiff alleges, conspired with and actually facilitated or assisted the defendant in

25   its falsification of the accounts and disclosures.

  The lease is not typical of the forms in use in this jurisdiction and I am informed by counsel that it follows a Canadian model. It is unusual in that, among other things, it includes a provision for "annual percentage rent" as well as a provision for "basic rent."

30   Central to the dispute is the issue whether the defendant has made full and frank disclosure as to its income from sales as the basis for arriving at the annual percentage rent.

  Article III of the lease contains the following provisions:

    "3.01 *Basic rent*

35     The tenant shall pay to the landlord in each lease year $45,000 *per* annum (in this lease referred to as 'basic rent') by equal monthly instalments in advance, commencing upon the commencement date and on the first day of each calendar month thereafter during the term (provided that if the term

40   commences on a day which is not the first day of a calendar

Appx. 00599
001983

month, then the instalment of basic rent payable on the

1992–93 CILR 378

commencement date for the broken portion of the calendar
month at the beginning of the term shall be calculated at a
rate per day of 1/365 of the annual basic rent).

3.02 *Percentage rent*

5      The tenant shall pay to the landlord in each lease year
during the term the annual percentage rent for such lease
year. Such annual percentage rent shall be payable in
monthly instalments of estimated monthly percentage rent
which shall be payable 20 days after the close of each

10    calendar month in each and every lease year (including any
portion of a calendar month at the commencement of the
term if the term commences on a day other than the first day
of a calendar month) *the amount of such estimated monthly
percentage rent to be calculated by the tenant and accom*

15    *panied by a statement certified as correct by the tenant
showing in such detail as the landlord shall reasonably
require, the amount of gross revenue for such calendar month
and the amount of estimated monthly percentage rent payable.*

3.03 *Adjustment of annual percentage rent*

20     Within 120 days after the end of each lease year *the tenant
shall deliver to the landlord a statement in writing and certified
by the tenant, and which shall also be certified as being
audited by an independent chartered accountant acceptable to
the landlord, setting forth accurately and with reasonable*

25    *detail and particulars and in such form as the landlord may
require the gross revenue both monthly and in the aggregate,
for such lease year and its annual percentage rent payable for
such lease year.* If the aggregate annual percentage rent set
forth in such statement differs from the annual percentage

30    rent set forth in such statement, the tenant shall pay or the
landlord shall refund the difference within 30 days after such
statement is provided." [Emphasis supplied.]

In the definitions in Article I, the following appears:

" 'Annual percentage rent' means 6% of gross revenue

35    plus 1.5% of extraordinary off premises revenue (derived
from sales by the tenant of stock kept on the leased premises
or sold off-premises having been placed for display on the
leased premises) minus the basic rent. Annual percentage
rent shall only be payable in the event such calculation from

40    time to time produces a net positive figure."

By virtue of those provisions the plaintiff claims that special

APPX. 001984

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 3-1    Filed 06/05/22    Page 209 of 241    PageID 2111

5/27/22, 1:46 PM                    CAYMAN HOTEL AND GOLF INCORPORATED v. RESORT GEMS LIMITED 06-July-1993

1992–93 CILR 379

duties and responsibilities are created and are owed to him by the
defendant and that they give rise to an implied relationship of
trust which is not to be found in an ordinary lease where liabilities
for rent are essentially stipulated as a pre-determined sum. Here
5    the plaintiff argues that the lease contains covenants that the
tenant must keep proper accounts of its income in order to ensure
that the proper amounts of annual percentage rent are known and
payable to the plaintiff.

   A most important issue centered on this argument. It is
10   whether this implied relationship of trust is so germane to the
landlord/tenant relationship in this lease that the manner in which
it was dishonoured by the tenant gave rise to an irremediable
breach of the lease. If so the consequence would be that the
plaintiff should be entitled to claim that the lease has been duly
15   forfeited and in the manner which the plaintiff has purported to
do so in a letter and notice which it sent to the defendant dated
November 17th, 1992.

   The plaintiff having raised these allegations of breach of
contract and breach of faith, the court was invited by counsel for
20   the defendant to reject any suggestion of fraudulent conduct on
the part of the defendant as fraud had not been specifically
pleaded at the outset. Instead, and without any admission on the
part of his client, counsel for the defendant invited the court to
make the following assumptions for the purposes of the hearing
25   of this summons that (a) there is no dispute as to the tenant's
contractual obligations to pay basic rent and annual percentage
rent, although the amount owed may be disputed; (b) there is no
dispute that the tenant is in breach of the lease in not having kept
full and faithful records as required by Articles 3:03, 3:04 and
30   3:05 of the lease; (c) despite efforts on the part of the landlord to
obtain a reconstruction or compilation of the records of the
revenue of the defendant, through an independent auditor
engaged for the purpose by the landlord, the tenant had failed to
comply with the directions of the auditor to provide names and
35   addresses of customers from whom verification of sales transac-
tions might be obtained, and that such verification was essential
to that exercise of reconstruction or compilation of the records;
and (d) in at least one instance a certain named customer had
purchased an expensive item of jewellery from the tenants' on-
40   premises shop and that the tenant had failed to declare that item
of revenue for the purposes of the accounting records.

APPX. 00601
001985

1992–93 CILR 380

Despite those assumptions which I was invited to make, counsel for the defendant submitted ultimately that the plaintiff's application on his summons should be dismissed in its entirety for the most important reason that the cause of action was bound to
5 fail. This submission was based on the position taken by the defendant that though it may have breached the lease, those breaches were not irremediable; it was entitled to notice requiring it to remedy them; and as there was no such proper notice nor any proper demand to remedy, the forfeiture was
10 wrong in law and the cause of action based on it, for recovery of possession, rent and, latterly, damages, could not succeed. Further, that the lease was still intact despite the landlord's claim to forfeiture. The landlord's claim was therefore bound to fail.

For the reasons which will follow, I was unable to accept the
15 defendant's submissions that the plaintiff will inevitably fail to establish that it was entitled to forfeit the lease. Although that is the central issue underlying the action as it stands between the plaintiff and the defendant, the plaintiff sought leave by its summons to do a number of things, some of which were allowed
20 by my order of April 16th and others disallowed. I will proceed to set out my reasons for the order in respect of each issue separately.

(A) *Application for leave to re-amend to join the proposed second,*
25 *third, fourth and fifth defendants. Leave refused.*

For the purposes of joinder of defendants to an existing cause of action, rr. 25 and 26 of the Grand Court (Civil Procedure) Rules are applicable. The text of the rules is as follows:

"25. All persons may be joined as defendants against
30 whom the right of any relief is alleged to exist, whether jointly, severally or in the alternative, and any judgment may be given against such one or more of the defendants as may be found to be liable, according to their respective liabilities, without any amendment.
35 26. No cause or matter shall be defeated by reason of the misjoinder or nonjoinder of parties and the Court may in every cause or matter deal with the matter in controversy so far as regards the rights and interests of the parties actually before it. The Court may, at any stage of the proceedings,
40 either upon or without the application of any party and upon such terms as may seem just, order the names of any parties

1992–93 CILR 381

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 3-1    Filed 06/07/22    Page 211 of 241    PageID 2113

5/27/22, 1:46 PM                    CAYMAN HOTEL AND GOLF INCORPORATED v. RESORT GEMS LIMITED 06-July-1993

improperly joined, whether as plaintiffs or defendants, to be
struck out and the names of any parties added who *ought to
have been joined*, whether as plaintiffs or defendants, or
*whose presence before the Court may be necessary to enable
the Court effectually and completely to adjudicate upon and
settle all the questions* involved in the cause or matter:

5      Provided that no person shall be added as a plaintiff, or as
the next friend of a plaintiff under a disability, without his
own consent in writing thereto." [Emphasis supplied.]

10    Rule 25 deals with the joinder of defendants in a single action.
Rule 26 addresses the principles and circumstances which
determine the joinder of a party to proceedings already insti-
tuted. As to joinder of plaintiffs or defendants, r.26 provides for
the addition of two categories of persons: (a) those who ought to

15    have been joined at the commencement of the proceedings, and
(b) those whose presence may be necessary to enable the court
effectually and completely to adjudicate upon and settle all the
questions involved in the cause or matter. Mr. Parkinson sought
the joinder of the additional defendants on the basis that they

20    came within the first category of persons.

    The original action is between the landlord and tenant based on
the lease agreement between them. The claim at the time that
action was brought was against the tenant for recovery of
possession, for rent and for mesne profits and arose from the

25    tenant's alleged repudiation of the lease. Privity of contract
existed only between those parties and in the cause of action as it
was thus framed, there could have been no other parties to the
action as originally instituted. Notwithstanding those circum-
stances Mr. Parkinson submitted that amendments ought to be

30    allowed to add the proposed second to fifth defendants because
the proper test is whether they could have been joined as
defendants in some way, *at the time* the original action was
brought, irrespective of whether they could have been joined as
defendants in the action *as it was actually brought.*

35    The plaintiff's claim against the proposed second to fifth
defendants was, *inter alia*, for damages for having procured and
conspired with the defendant to breach the lease. As such a
claim
could have been brought originally and *at the same time* as the
original action, Mr. Parkinson submitted the requirements of

40    rr. 25 and 26 were met, notwithstanding that the rules of privity
of contract would have precluded joinder of the proposed

---

1992–93 CILR 382

Appx. 00603
001987

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 3-1    Filed 06/03/22    Page 212 of 241    PageID 2114

5/27/22, 1:46 PM                    CAYMAN HOTEL AND GOLF INCORPORATED v. RESORT GEMS LIMITED 06-July-1993

defendants in the action as originally framed. He relied primarily
on the judgment of the Court of Appeal in *Executive Air Servs.
Ltd.* v. *MacDonald* (5).

5        In that case the Court of Appeal upheld the decision of this
court in allowing amendments to join a party as a joint tortfeasor
in a statement of claim which originally raised allegations of
tortious conduct as well as of breach of contract. In so doing it is
significant that the court disallowed amendments seeking to join
the same party as defendant to the claim based on allegations of
10       breach of contract. In that case it was urged that the additional
defendant was someone who fell within the first of the two
categories of persons covered by r.26 of those who ought to have
been joined at the commencement of the proceedings. From my
reading of that case it appears clear that the court regarded the
15       additional defendant as a party who "ought to have been joined"
in the original action as framed in tort and within the meaning of
that expression as it appears within r.26. It follows that the Court
of Appeal disallowed the further pleadings as the additional
defendant was not a party who ought to have been joined in the
20       contractual claim as originally pleaded; as such an amendment
would have been contrary to the principles of privity of contract,
the additional defendant not having been a party to the contract
and therefore against the principles established by *Salomon* v. *A.
Salomon & Co. Ltd.* (16). I therefore did not think the case
25       supported Mr. Parkinson's position.

         Although rr. 25 and 26 may be outmoded, they still apply and I
consider that the applicable principles were settled by the Court
of Appeal in the earlier case of *Bank of Nova Scotia* v. *Becker* (2)
which was cited in argument by Mr. Lamontagne on behalf of the
30       proposed defendants.

         In that case, the applicant and third defendant, a company in
liquidation which had been joined as a party in the suit between
the plaintiff bank and the other defendants, applied for an order
to join its own receivers as parties. The company had been
35       granted a loan by the plaintiff bank for which collateral had been
provided by the other defendants. It had defaulted in payment
and the bank had appointed receivers who took possession of the
company's property. In an action by the bank against the other
defendants as guarantors, the company was itself made a
40       co-defendant upon the successful application of one of the other
defendants. It was joined for the purpose of setting off any

Appx. 00604
001988

damages it might recover for the wrongful acts of the receivers
(whom it alleged to be agents or servants of the bank) against
any
relief granted to the bank in relation to it as principal debtor and
the other defendants as guarantors.

5      The company then sought to counterclaim against the bank
alleging that the receivers, as the bank's agents or servants, had
trespassed upon the company's land, wrongfully taken
possession
of it and wrongfully converted the company's chattels. The
company also applied for leave to join the receivers as added

10     parties in the counterclaim contending that (a) as it was entitled
to damages from the bank or the receivers or both, the receivers
were, under the Grand Court (Civil Procedure) Rules, r.26
"necessary parties to the proceedings"; and (b) in any event,
since by virtue of r.25 it could have initiated proceedings against

15     the bank and joined the receivers as co-defendants, it was "only
just and convenient" that it should be able to counterclaim
against them both at the same time.
       The Court of Appeal, in refusing to order the joinder of the
receiver, held (a) the court was obliged to have regard to the

20     terms of the Grand Court (Civil Procedure) Rules and was only
entitled to consider whether joinder was "just and convenient" as
an aspect of the application of those rules. It was not entitled to
use the "just and convenient" principles to give itself an
unfettered discretion to order joinder; (b) as the bank had

25     originally made no claim against the receivers they could not be
added as defendants in the bank's writ against the guarantors.
Consequently, so far as that action was concerned, the receivers
could not qualify as persons who "ought to have been joined" at
the beginning of the proceedings. Nor did they so qualify when

30     the company was introduced into the proceedings as an added
party and counterclaimed against the bank. The application had
therefore failed the first criterion for joinder in r.26; and (c) nor
did the receivers qualify under the second criterion as parties
"whose presence before the court may be necessary to enable the

35     court effectually and completely to adjudicate upon the issue
involved within the meaning of r.26. . . ."
       From the second head of the *ratio decidendi* of the case as
extracted above from the report and from the judgment itself, it
seems to me that parties can only be joined pursuant to r.26 as

40     persons "who ought to have been joined" if that nexus is
established with the action as originally commenced. It is

APPX. 000905
001989

1992–93 CILR 384

impermissible to join parties for the purpose of expanding the original cause of action.

In the case before me, there was no privity of contract between the proposed additional defendants and the plaintiff. The action based on the lease for recovery of possession and mesne profits as commenced could have joined no other parties. It rested entirely between the plaintiff as landlord and the defendant as tenant. For those reasons I was unable to allow the joinder of the proposed second to fifth defendants.

I should also mention in passing that Mr. Parkinson also placed great reliance on the case of *Molnlycke AB* v. *Procter & Gamble Ltd.* (12) as authority for two propositions. The first was that other members of a corporate group besides the defendant (as were the proposed second and third defendants in relation to the defendant herein) may be brought in as defendants in the same action if they are in some way shown to have facilitated the conspiracy whereby the original defendant was able to commit the wrongdoing complained of and that is so whether or not the others are willing parties to the conspiracy. The second proposition was that the *Molnlycke* case confirms it is not an abuse of process to join other parties for the purpose only of obtaining discovery where that discovery will assist in proving the claims against the original defendant and assist in the later claim against the added defendants and further that that approach would not be in breach of the principles laid down in *Norwich Pharmacal Co.* v. *Customs & Excise Commrs.* (13).

My reading of the *Molnlycke* case leads me to a different view of it. To my mind it deals with a situation where a plaintiff sought to join as an alleged tortfeasor a German company which was an affiliate of the defendant company. By virtue of certain provisions of the Convention on Jurisdiction and the Enforcement of Civil and Commercial Judgments 1968, joinder in the circumstances of that case was as of right provided the plaintiff met the preliminary criterion of showing it had a good arguable case against the alleged defendant by satisfying the court that there was a serious question which called for a trial for its proper determination in respect of an alleged defendant company domiciled in a country which was party (as was Germany) to the convention. That criterion is premised on a basis entirely distinct from those criteria laid down by rr. 25 and 26 of the Grand Court (Civil Procedure) Rules and which are clearly set out in the judgment of

1992–93 CILR 385

Appx. 01990

the Court of Appeal in *Bank of Nova Scotia* v. *Becker* (2) which I
regard as applicable here. It follows I did not regard the
*Molnlycke* case as persuasive authority for either proposition in
the circumstances of this case.

5      I should also make it clear that leave to amend to join the
additional defendants was not refused on the basis that the
plaintiff's case was doomed to failure in its entirety. Had that
been my view of the case I would have been obliged to invoke
also the principles stated in *Raleigh* v. *Goschen* (15) that leave
10    should not be given to add parties to an action which is bound to
fail and where such leave would allow the plaintiff to mount a
substantially different cause of action against added parties.

(B) *Leave for consequential re-amendments in respect of the*
15    *proposed additional defendants, including an amendment seeking*
*orders for discovery against them. Leave refused.*

It followed from the refusal of leave to join the proposed
additional defendants that leave for consequential re-amend-
ments to plead claims against them had also to be refused. I note
20    further that in any event Mr. Parkinson for the plaintiff indicated
he would have been prepared to seek discovery from them
separately had they been joined as defendants and to have done
so by separate process. As joinder was refused, on the merits,
that recourse would also fail to materialize. I have set out above
25    the reasons for the decision not to allow further amendments
which sought to add new parties.

The remaining issues related to the application to re-amend the
pleadings to vary or add claims. Such applications still fell to be
decided on the merits to the extent that they might affect the
30    action brought against the original defendant. There was no
dispute as to the general principles which the court should apply
in deciding on an application to amend pleadings for the
purposes
of adding or varying claims. They are set out at O.20, r.5 of the
Rules of the Supreme Court and, as they apply to this case, I
35    summarize them as follows:

(a) Generally speaking, all amendments ought to be allowed
which are for the purpose of determining the real question in
controversy between the parties to any proceedings or for
correcting any defect or error in any proceedings (*per* Jenkins,
40    L.J. in *G.L. Baker Ltd.* v. *Medway Building & Supplies Ltd.* (1)
([1958] 1 W.L.R. at 1231).

---

1992–93 CILR 386

APPX 001997

(b) Leave should be given to amend unless the court is satisfied that the party applying was acting *mala fide*, or that, by his blunder, he had done some injury to his opponent which could not be compensated for by costs or otherwise. However negligent

5   or careless may have been the omission, and however late the proposed amendment, the amendment should be allowed if it can be made without injustice to the other side. There is no injustice if the other side can be compensated by costs (*per* Bramwell, L.J. in *Tildesley* v. *Harper* (18) (10 Ch. D. at 397) and *per* Brett, M.R.

10   in *Clarapede* v. *Commercial Union Assn.* (4) (32 W.R. at 263).

(c) An amendment ought to be allowed if thereby "the real substantial question" can be raised between the parties and multiplicity of legal proceedings avoided: see *Kurtz* v. *Spence* (10).

(d) On the other hand, it should be remembered that there is a

15   clear difference between allowing amendments to clarify the issues in dispute and those that provide distinct defences or claims to be raised for the first time (*per* Lord Griffiths in *Ketteman* v. *Hansel Properties Ltd.* (9) ([1987] A.C. at 220)).

(e) Furthermore, the court will always look at the materiality of

20   the proposed amendment; inconsistent or useless amendments will not be allowed nor will amendments be allowed to raise a case which must fail: see 1 *The Supreme Court Practice 1991*, para. 20/5 – 8/23; *Jones v. Hughes* (8) ([1905] 1 Ch. at 187 *per* Vaughan Williams, L.J.) and the judgment of the Court of

25   Appeal of the Cayman Islands in *Iorgulescu* v. *Swiss Bank & Trust Corp. Ltd.* (7).

I now turn to deal with the application for re-amendments to the claims.

30   (C) *Leave to re-amend the writ and the statement of claim to include a claim for an account from the defendant to be taken in order to ascertain the ultimate amount which the defendant owes the plaintiff by way of annual percentage rent. Leave refused.*

This aspect of the application had proceeded on the basis that a

35   fiduciary relationship of principal and agent should be implied as existing between the plaintiff and defendant having regard to the lease arrangement which demanded a duty of trust from the defendant as tenant. Mr. Parkinson had submitted further that an action for an account is an established remedy available to a

40   principal against his agent (in lieu of damages) and that such an action arose here. I need not provide reasons at length for this

---

1992–93 CILR 387

aspect of the ruling as it appears Mr. Parkinson accepted as

App. 00608
001992

correct the principles cited by Mr. Lamontagne in his response
but as considerable time was taken on it and as a distinction needs
to be struck between the duty to account prescribed by the lease
5   and the remedy in equity which was sought here, I will provide a
brief minute of reasons.

    Two considerations were paramount bearing in mind that the
lease agreement embodies a commercial arm's length transaction
between the parties. It contains extensive provisions as set out in
10  Articles 3:01 – 3:05 as to the tenant's obligations to report and
account to the landlord. It also specifies the relief available in the
event of breach of those provisions. The two questions which
arose were (a) whether there was the necessity and therefore a
basis for implying as between the parties, a term or condition of
15  the lease that there existed a further fiduciary relationship and
arising from it that there should be accounting, as a separate
remedy, beyond that expressly provided in the lease in the event
the tenant acted in breach of the lease; and (b) could there be a
need or basis for finding a relationship of principal and agent and
20  a resulting duty to account, where the written agreement between
the parties is a complete code of the intentions of the parties.

    The decision of the Privy Council in *Tai Hing Cotton Mill Ltd.*
v. *Liu Chong Hing Bank Ltd.* (17) was cited in opposition to Mr.
Parkinson's submissions and is clear authority for the proposition
25  that the court should not search for a liability in tort or in equity
where the parties are in a contractual relationship and that this is
particularly so in commercial relationships. It is not permissible,
on the contractual analysis of the relationship between the
parties, to imply duties which are not strictly and necessarily
30  incidental to that relationship.

    Mr. Parkinson had conceded there was no English authority
directly on point to support his submissions but had cited extracts
from Underhill & Hayton, *Law relating to Trusts & Trustees*, 14th
ed., at 14 (1987), 1(2) *Halsbury's Laws of England*, 4th ed., para.
35  86, at 62, and from 1 *Atkin's Court Forms*, 2nd ed., at 601 *et seq.*
(1992 Issue) in support of his general submissions that the
categories of circumstances which may give rise to a fiduciary
relationship are not closed and that a principal/agent relationship
might be inferred from the nature of the relationship between the
40  parties as was evident in this case from the lease. Further, that an
action for an account is a remedy arising from that relationship.

---

1992–93 CILR 388

    Mr. Lamontagne in opposition relied also on the decision of
the Supreme Court of Canada in *Lac Minerals Ltd.* v. *Interna*

*tional Corona Resources Ltd.* (11) for the following statement of principles which are extracted from the headnote to the case in the *Canada Supreme Court Reports* ([1989] 2 R.C.S. at 577–578):

5

> "The following common features provide a rough and ready guide to whether or not a fiduciary obligation should be imposed on a new relationship: (1) the fiduciary has scope for the exercise of some discretion or power; (2) the fiduciary can unilaterally exercise that power or discretion so as to affect the beneficiary's legal or practical interests; and (3) the beneficiary is peculiarly vulnerable to or at the mercy of the fiduciary holding the discretion or power."

10

This description of the fiduciary relationship accords with the treatment of the subject in the textbooks which were cited in argument and especially as regards the relationship of principal and agent the following definition of agency is to be found in Fridman's *Law of Agency*, 6th ed., at 9 (1990):

15

> "Agency is the relationship that exists between two persons when one, called the *agent*, is considered in law to represent the other, called the *principal*, in such a way as to be able to affect the principal's legal position in respect of strangers to the relationship by the making of contracts or the disposition of property."

20

That definition does not accord with the relationship created between the landlord and tenant in the context of the lease which is the subject of this action.

25

The very helpful and exhaustive treatment of the subject in the *Lac Minerals* case also demonstrates that no relationship of principal and agent could properly be implied into the commercial arm's length transaction which was the lease agreement between the parties herein. It would not be appropriate to invoke the rules of equity so as to impose a relationship in a situation such as this where there is no true need for the special protection that equity affords.

30

35

I also observe that the plaintiff's submissions were based not on any suggestion of a pre-existing fiduciary duty but on the proposition that the court might find one having regard to the self-dealing manner in which the contractual duties of the defendant had been breached. In that regard I was specifically guided by the opinion of Megarry, V.-C. in *Tito* v. *Waddell (No. 2)* (19) in

40

commenting on this approach to identifying a fiduciary obligation

APPX 001994

([1977] 3 All E.R. at 232):

> "I cannot see why the imposition of a statutory duty to
> perform certain functions, or the assumption of such a duty,
> should as a general rule impose fiduciary obligations, or even
> be presumed to impose any. Of course, the duty may be of
> such a nature as to carry with it fiduciary obligations. . . .
> Impose a fiduciary duty and you impose fiduciary obliga-
> tions. But apart from such cases, it would be remarkable
> indeed if in each of the manifold cases in which statute
> imposes a duty, or imposes a duty relating to property, the
> person on whom the duty is imposed were thereby to be put
> in a fiduciary relationship with those interested in the
> property, or towards whom the duty could be said to be
> owed. . . .
>
>   Furthermore, I cannot see that coupling the job to be
> performed with self-dealing in the performance of it makes
> any difference. If there is a fiduciary duty, the equitable rules
> about self-dealing apply: but self-dealing does not impose
> the duty. Equity bases its rules about self-dealing on some
> pre-existing fiduciary duty: it is a disregard of this pre-
> existing duty that subjects the self-dealer to the con-
> sequences of the self-dealing rules. I do not think that one
> can take a person who is subject to no pre-existing fiduciary
> duty and then say that because he self-deals he is thereupon
> subjected to a fiduciary duty."

Notwithstanding the assumptions I was invited by Mr. Lamon-
tagne to make and which lead irresistibly to the conclusion that
the defendant was in breach of the lease and thereby guilty of
"self-dealing," I was unable to conclude, having regard to the
foregoing statements of principles, that there could be found to
be a principal/agent relationship between the landlord and tenant
as parties to the lease. Accordingly, no separate fiduciary duty to
account was to be implied. The plaintiff had no arguable case for
a claim in that regard and the re-amendments could not have
been allowed.

(D) *Application for leave to re-amend to include a claim for a
declaration that the lease was properly rescinded. Leave refused.*

   This aspect of the application was abandoned by Mr. Parkinson
and I see no need to comment further on it.

---

1992–93 CILR 390

(E) *Leave to re-amend to include a claim for a declaration
against*
the defendant that the lease was duly forfeited. Leave granted.

App. 0061
001995

Having regard to the assumptions which I should make for
present purposes that the defendant was in breach of the lease,

5    the real point in dispute, as I earlier mentioned, was whether the
breaches committed by the defendant were repudiatory, that is
irremediable breaches giving rise to a right in the plaintiff to
repudiate the lease without first giving notice as required by the
lease and more importantly as required by ss. 55 and 56 of the

10   Registered Land Law (Revised).

Mr. Lamontagne submitted that leave should not be granted
because the plaintiff's claim for a declaration that the lease was
duly forfeited was bound to fail. This was so, he urged, because in
purporting to forfeit the lease the plaintiff treated as irremedi-

15   able breaches which were patently capable of being remedied
and because it failed to give notice to remedy as mandatorily
prescribed by s.56 of the Law. Furthermore, he submitted, it was
not for the plaintiff unilaterally and subjectively to decide
whether the breach was remediable; it was obliged to give notice

20   and see whether the defendant complied within the reasonable
time to be set in the notice. Acceptance of Mr. Lamontagne's
submissions in this regard would result in the disallowance of the
plaintiff's application to re-amend to include a claim for a
declaration that the lease was duly forfeited as, having regard to

25   the principles earlier cited, amendments should not be allowed in
aid of futile claims. This would be the result as no right of action
in forfeiture could have accrued to the plaintiff, if the breach had
been capable of remedy.

I was satisfied the plaintiff had at least an arguable case that the

30   breaches complained of were not capable of remedy. On the basis
of the authorities the plaintiff need not show more than that, at
this stage, in order to render his claim strike-out proof. In
arriving at that conclusion I was guided by the following passage
from the judgment of the English Court of Appeal given by

35   Slade, L.J. in *Empire Clothing Serv. & Sales Ltd.* v. *Hillgate
House Ltd.* (6) ([1985] 2 All E.R. at 1010):

"In my judgment, on the remediability issue, the ultimate
question for the court was this: if the s.146 notice had
required the lessee to remedy the breach and the lessors had

40   then allowed a reasonable time to elapse to enable the lessee
fully to comply with the relevant covenant, would such

1992–93 CILR 391

compliance, coupled with the payment of any appropriate
monetary compensation, have effectively remedied the harm
which the lessors had suffered or were likely to suffer from

APPX 001996

the breach? If, but only if, the answer to this question was

5      No would the failure of the s.146 notice to require remedy of
the breach have been justifiable. In the *Rugby School,
Esplanade* and *Hoffman* cases the answer to this question
plainly would have been No. In the present case, however,
for the reasons already stated, I think the answer to it must

10     have been Yes."

Essentially, given the interlocutory nature of the proceedings
before me, the issue is whether the plaintiff has an arguable case.
The answer to that question is No. There is no dispute that the
plaintiff's notice did not afford an opportunity to the defendant to

15     remedy the breach.

    I took the view, in the light of the assumptions I was invited to
draw by the defendant and having regard to the affidavit of Mr.
Mark Chapman, the independent auditor engaged by the plaintiff
to examine the records of the defendant, in which Mr. Chapman

20     expressed the view that there had been no proper records of
accounts at all maintained by the defendant, that the plaintiff had
at least an arguable case that the harm had been irretrievably
done and that the breaches of the positive covenants to keep and
maintain proper accounts and to enable full disclosure of income

25     are breaches which in the context of this case may be shown to
be

incapable of remedy. This is, in my view, arguable notwithstand-
ing that Mr. Chapman's affidavit dealt with the situation as he
found it and did not specifically address the question whether it
would be possible for the defendant to rectify the breach by

30     reconstruction of the records.

    To my mind it must be at least objectively arguable that the
plaintiff should be entitled to treat the circumstances existing at
the time it purported to forfeit the lease as irremediable because
the defalcations were deliberate, because the defendant's failure

35     to assist Mr. Chapman's audit betrayed its intention to continue
its dissemblance and because the continued performance of the
lease depended on the good faith, willingness and ability of the
defendant not only to remedy the breach but also to keep faithful
accounts and make full and final disclosure of sales and income.

40     Put another way, it will be an arguable matter whether a notice
in keeping with s.56 of the Law, specifying the breach and

---

1992–93 CILR 392

requiring remedy, should have been issued in circumstances
where it would have been clear no proper records existed and that
their creation would depend upon the recall and co-operation of

the officers or employees of the defendant which, from all

5     indications, would likely be convenient to the defendant's own
interests and which records may have therefore been predisposed
to falsification. Whether the plaintiff as landlord could reasonably
and objectively apprehend such an outcome as the inevitable
result of a notice to remedy is an issue to be tried.

10    On account of the unusual nature of this lease, none of the
cases cited in argument provided a full answer by way of
precedent to these factual issues which remain to be resolved on
the question whether the plaintiff was entitled to forfeit this lease.
It should also be clear that in arriving at this view of the matter I

15    proceeded on the basis that the requirements of ss. 55 and 56 of
the Registered Land Law (Revised), in respect of the exercise of
the right of forfeiture of leases, are paramount, and specifically as
regards the requirements set out in s.56 for proper notice, this is
so regardless whether there are provisions to the contrary

20    contained in the lease itself.
    The primacy of the s.56 requirements is confirmed by the
pronouncements of this court in *Cayman Arms (1982) Ltd.* v.
*English Shoppe Ltd.* (3) and by their confirmation by the Court of
Appeal. Moreover, s.37(1) of the Registered Land Law (Revised)

25    also expressly states that "no land, lease or charge registered
under this Law shall be capable of being disposed of except in
accordance with this Law. . . ." Henry, J.A. stated in the Court
of Appeal case of *Paradise Manor Ltd.* v. *Bank of Nova Scotia*
(14) (1984–85 CILR at 480) that under s.37 of the Registered

30    Land Law (Revised), "no right of a proprietor in or over his land,
lease or charge registered under the Law shall be capable of being
affected except in accordance with the Law. . . ."
    Nonetheless, as the plaintiff's primary contention is that it was
entitled to forfeit the lease on the basis that the breaches were

35    incapable of being remedied and as I decided it should be allowed
to present that claim for determination on its merits, there was no
need for me to consider whether the requirements of s.56 as to
notice had been met, as those requirements would apply in the
factual circumstances of this case only if it is determined that the

40    breach is capable of remedy or that the defendant should have
been afforded an opportunity to remedy.

---

1992–93 CILR 393

    (F) *Leave to re-amend to include a claim in respect of auditor's*

*fees. Leave granted.*

5

    The lease in Article 3:04 provides that the cost of "any special audit or an examination by an accountant designated by the landord pursuant to this section shall be chargeable to and paid by the tenant" in circumstances like those which led to Mr. Chapman's audit. Accordingly Mr. Lamontagne for the defendant conceded that the plaintiff's claim in that regard was not prone to being struck out and did not oppose the amendment.

(G) *Leave to re-amend to include a claim, in the alternative to the claim for a declaration of forfeiture, for damages for breach of the*

*covenant to pay rent. Leave granted.*

15

    In light of the proof of at least one instance where the defendant failed to declare the sale of a valuable item which would have generated income which would be subject to being assessed for percentage rent, a claim in the alternative for damages for breach of the covenant to pay rent is sustainable. This re-amendment was therefore allowed without opposition.

*Order accordingly.*

Attorneys: *Ritch & Connolly* for the plaintiff; *Ian Boxall & Co.* for the defendant.

# EXHIBIT 19

App. 00616
002000

CAYMAN ISLANDS



Supplement No. 5 published with Extraordinary
Gazette No. 35 dated 21st May, 2014.

**THE CONTRACTS (RIGHTS OF THIRD PARTIES) LAW, 2014**

**(LAW 4 OF 2014)**

*The Contracts (Rights of Third Parties) Law, 2014*

## THE CONTRACTS (RIGHTS OF THIRD PARTIES) LAW, 2014

## ARRANGEMENT OF SECTIONS

1.    Short title
2.    Interpretation
3.    Application
4.    Rights of third party to enforce contractual term
5.    Variation and rescission of contract
6.    Defences
7.    Enforcement of contract by promisee
8.    Protection of promisor from double liability
9.    Exceptions
10.   Supplementary provisions relating to third party
11.   Arbitration provisions

2

App. 00618
002002

*The Contracts (Rights of Third Parties) Law, 2014*

CAYMAN ISLANDS

Law 4 of 2014.

I Assent

Franz Manderson

Acting Governor.

14th May, 2014

**A LAW TO MAKE PROVISION FOR THE ENFORCEMENT OF
CONTRACTUAL TERMS BY THIRD PARTIES; AND FOR INCIDENTAL
AND CONNECTED PURPOSES**

ENACTED by the Legislature of the Cayman Islands.

1.    This Law may be cited as the Contracts (Rights of Third Parties) Law, 2014.    Short title

2.    (1)   In this Law -    Interpretation

"contract of employment" has the meaning assigned to that expression under
section 2 of the Labour Law (2011 Revision);    (2011 Revision)

"employee" has the meaning assigned to that expression under section 2 of the
Labour Law (2011 Revision);

"set off" includes netting of claims; and

"third party" means a person who is not a party to a contract.

(2)   In relation to a term of a contract which is enforceable by a third
party -

(a)   "promisor" means a party to the contract against whom the term
is enforceable by the third party; and

3

APP2 00613
002003

*The Contracts (Rights of Third Parties) Law, 2014*

(b)   "promisee" means a party to the contract by whom the term is enforceable against the promisor.

Application

3.   (1)   This Law shall apply to any contract which, on or after the date on which this Law comes into force, includes terms which comply with section 4.

(2)   A contract made on, before or after the date on which this Law comes into force may be amended to include terms which comply with section 4.

(3)   If, after this Law comes into force, a contract is amended to include terms which comply with section 4, a third party may only enforce a right which accrues on or after the date on which the contract is amended.

(4)   If, prior to the date on which this Law comes into force, a contract included terms which comply with section 4, a third party may only enforce a right which accrues on or after the date on which this Law comes into force.

Rights of third party to enforce contractual term

4.   (1)   Subject to section 9, a third party may in his own right enforce a term of the contract if -

(a)   he is expressly identified in the contract by name, as a member of a class or as answering a particular description, which includes a person nominated or otherwise identified pursuant to the terms of the contract but the third party need not be in existence when the contract is entered into; and

(b)   the contract expressly provides in writing that he may.

(2)   This section does not confer a right on a third party to enforce a term of a contract otherwise than subject to and in accordance with any other relevant terms of the contract.

(3)   For the purpose of exercising his right to enforce a term of the contract, there shall be available to the third party any remedy that would have been available to him in an action for breach of contract if he had been a party to the contract and the rules relating to damages, injunctions, specific performance and other relief shall apply accordingly.

(4)   Where a term of a contract excludes or limits liability in relation to any matter, references in this Law to the third party enforcing the term shall be construed as references to his availing himself of the exclusion or limitation.

Variation and rescission of contract

5.   (1)   Where a third party has a right under section 4 to enforce a term of the contract, the parties to the contract may not, by agreement, rescind the contract, or

4

App. 000624

*The Contracts (Rights of Third Parties) Law, 2014*

vary it so as to extinguish or alter his entitlement under that right, without his consent if -

    (a)   the third party has communicated his assent to the term to the promisor;

    (b)   the promisor is aware that the third party has relied on the term; or

    (c)   the promisor can reasonably be expected to have foreseen that the third party would rely on the term and the third party has in fact relied on it.

    (2)   The assent referred to in subsection (1)(a) -

    (a)   may be by words or conduct; and

    (b)   if sent to the promisor by post or other means, shall not be regarded as communicated to the promisor until received by him.

    (3)   Subsection (1) is subject to any express term of the contract under which -

    (a)   the contract may be rescinded or varied without the consent of the third party; or

    (b)   the consent of the third party is required in circumstances specified in the contract instead of those set out in subsection (1)(a) to (c).

    (4)   Where the consent of a third party is required under subsection (1) or (3), the court may, on the application of one or more of the parties to the contract, dispense with his consent if satisfied that it is just and equitable to do so having regard to all the circumstances.

    (5)   The court may, on the application of one or more of the parties to a contract, dispense with any consent that may be required under subsection (1)(c) if satisfied that it cannot reasonably be ascertained whether or not the third party has in fact relied on the term.

    (6)   If the court dispenses with a third party's consent, it may impose the conditions it thinks fit, including a condition requiring the payment of compensation to the third party.

6.   (1)   Subsections (2) to (5) apply where, in reliance on section 4, proceedings for the enforcement of a term of a contract are brought by a third party.                                  *Defences*

    (2)   The promisor shall have available to him by way of defence or set-off any matter that -

App. 00621
002005

*The Contracts (Rights of Third Parties) Law, 2014*

    (a)    arises from or in connection with the contract and is relevant to the term; and

    (b)    would have been available to him by way of defence or set-off if the proceedings had been brought by the promisee.

    (3)    The promisor shall also have available to him by way of defence or set-off any matter if -

    (a)    an express term of the contract provides for it to be available to him in proceedings brought by the third party; and

    (b)    it would have been available to him by way of defence or set-off if the proceedings had been brought by the promisee.

    (4)    The promisor shall also have available to him -

    (a)    by way of defence or set-off any matter; and

    (b)    by way of counterclaim any matter not arising from the contract,

that would have been available to him by way of defence or set-off or, as the case may be, by way of counterclaim against the third party if the third party had been a party to the contract.

    (5)    Subsections (2) and (4) are subject to any express term of the contract as to the matters that are not to be available to the promisor by way of defence, set-off or counterclaim.

    (6)    Where in any proceedings brought against him a third party seeks in reliance on section 4 to enforce a term of a contract including, in particular, a term purporting to exclude or limit liability, he may not do so if he could not have done so, whether by reason of any particular circumstances relating to him or otherwise, had he been a party to the contract.

Enforcement of contract by promisee

7.    Section 4 does not affect any right of the promisee to enforce any term of the contract.

Protection of promisor from double liability

8.    Where under section 4 a term of a contract is enforceable by a third party and a promisee has recovered from the promisor a sum in respect of -

    (a)    the third party's loss in respect of the term; or

    (b)    the expense to the promisee of making good to the third party the default of the promisor,

then, in any proceedings brought in reliance on that section by the third party, the court shall reduce any award to the third party to the extent it thinks appropriate to take account of the sum recovered by the promisee.

6

*The Contracts (Rights of Third Parties) Law, 2014*

9.   (1)   Section 4 confers no rights on a third party in the case of a contract on a bill of exchange, promissory note or other negotiable instrument.

Exceptions

(2)   Section 4 confers no rights on a third party in the case of any contract binding on a company and its members under sections 12 and 25 of the Companies Law (2013 Revision).

(2013 Revision)

(3)   Section 4 confers no rights on a third party to enforce any term of a contract of employment against an employee.

(4)   Section 4 confers no rights on a third party in the case of -

(a)   a contract for the carriage of goods by sea;
(b)   a contract for the carriage of goods by road, or for the carriage of cargo by air; or
(c)   letters of credit.

(5)   In subsection (4) -

"contract for the carriage of goods by sea" means a contract of carriage -

(a)   contained in or evidenced by a bill of lading, sea waybill or a corresponding electronic transaction; or
(b)   under or for the purposes of which there is given an undertaking which is contained in a ship's delivery order or a corresponding electronic transaction.

10.   (1)   Section 4 does not affect any right or remedy of a third party that exists or is available apart from this Law.

Supplementary provisions relating to third party

(2)   In sections 7 and 10 of the Limitation Law (1996 Revision) the references to an action founded on a simple contract and an action upon a specialty shall respectively include references to an action brought in reliance on section 4 relating to a simple contract and an action brought in reliance on that section relating to a specialty.

(1996 Revision)

(3)   Except to the extent provided in section 11(1) or (2), a third party shall not, by virtue of section 4(4), 6(4), 6(6), 11(1) or 11(2) be treated as a party to the contract for the purposes of any other Law or any instrument made under any other Law.

11.   (1)   Where a right under section 4 to enforce a term is subject to an arbitration agreement, the third party shall be treated for the purposes of the Arbitration Law, 2012 as a party to the arbitration agreement as regards disputes

Arbitration provisions

(Law 3 of 2012)

7

*The Contracts (Rights of Third Parties) Law, 2014*

between himself and the promisor relating to the enforcement of the term by the third party.

    (2)   Where -

        (a)   a third party has a right under section 4 to enforce an arbitration agreement; and

        (b)   the third party does not fall to be treated under subsection (1) as a party to the arbitration agreement,

the third party shall, if he exercises the right, be treated for the purposes of the Arbitration Law, 2012 as a party to the arbitration agreement in relation to the matter with respect to which the right is exercised, and be treated as having been so immediately before the exercise of the right.

    (3)   In this section -

"arbitration agreement" has the meaning assigned to that expression under section 2 of the Arbitration Law, 2012.

Passed by the Legislative Assembly the 11th day of April, 2014.

Juliana Y. O'Connor-Connolly

Speaker.

Zena Merren-Chin

Clerk of the Legislative Assembly.

8

App. 00624
002008

# EXHIBIT 20

Appx. 00625
002009

## *366 Ebbw Vale Urban District Council v South Wales Traffic Area Licensing Authority.

 No Substantial Judicial Treatment

**Court**
Court of Appeal

**Judgment Date**
16 March 1951

**Report Citation**
[1951] 2 K.B. 366

Court of Appeal

Cohen , Asquith and Birkett , L.JJ.

1951 March 16.

*Road Traffic—Omnibus company—100 per cent. subsidiary of British Transport Commission—Company's application to vary fares made to licensing authority—Jurisdiction of authority— Road Traffic Act, 1930 (20 & 21 Geo. 5, c. 43), s. 72 — Transport Act, 1947 (10 & 11 Geo. 6, c. 49), ss. 2, sub—ss. 1, 2 (f) (g) (i), 3, 63—5, 76 .*

By s. 65, sub-s. 1, of the Transport Act, 1947 , ss. 72 to 76 of the Road Traffic Act, 1930 , do not apply to any passenger road transport service provided by the British Transport Commission or by any person acting as agent for the commission.

The commission, acting under the Transport Act, 1947 , acquired all the shares of a passenger road transport company with power to appoint and dismiss all their directors, the company thus becoming a 100 per cent. subsidiary of the commission. There was no evidence that the commission had in fact appointed the company to act as their agent. The company applied to a licensing authority for public service vehicles under s. 72, sub-ss. 1 and 4, of the Road Traffic Act, 1930 , to vary the conditions of road service licences then held by them, i.e., to increase the existing scale of fares.

*367

Held, that the licensing authority had jurisdiction to hear the application of the company, since the service in question was not a passenger road transport service provided by the commission or by any person acting as agent for the commission. The commission, in acquiring the shares of the company in the exercise of their general duty as stated in s. 3 of the British Transport Act, 1947 , were not "providing", but "securing or promoting" the provision of, an efficient, adequate, economical and properly integrated system of public inland transport.

*Salomon v. Salomon & Co. LD.[1897] A. C. 22* followed.

Observations of Tomlin, J., in *British Thomson-Houston Co. LD. v. Sterling Accessories LD.[1924] 2 Ch. 33* , 38, 40, referred to.

Decision of the Divisional Court reversed.

© 2022 Thomson Reuters.

App. 00626
002010

Appeal from the Divisional Court.

The applicants, Ebbw Vale Urban District Council, sought an order to prohibit the licensing authority for public service vehicles for the South Wales Traffic Area from hearing and determining an application by Red and White Services Ld. under s. 72 of the Road Traffic Act, 1930 [1] , to vary the conditions of road service licences then held by them, that was, to increase their existing scale of fares. The ground for the application was that the licensing authority had no jurisdiction to hear the application by the omnibus company by reason of s. 65 of the Transport Act, 1947 [2] .

*368*

The Divisional Court (Lord Goddard, C.J., Hilbery and Hallett, JJ.) held that s. 72 of the Act of 1930 on the facts of the case had ceased to apply, because the services afforded by the omnibus company were provided "by the commission" or by a "person acting as agent for the commission" within the meaning of sub-s. 1 of s. 65 of the Transport Act, 1947 .

The omnibus company had been a private enterprise concern when, under the Transport Act, 1947 , the British Transport Commission had acquired all their shares and the power to appoint and dismiss all their directors. The omnibus company, therefore, became a 100 per cent. subsidiary of the British Transport Commission. Lord Goddard, C.J., said that the commission were providing the road passenger service of the omnibus company, though he was rather inclined to think that the omnibus company in the circumstances were acting as agents for the commission. The British Transport Commission and the omnibus company appealed.

Before the Court of Appeal, counsel for the urban district council did not see fit to support the order of prohibition made by the Divisional Court on the ground that the omnibus company provided the services as agents of the British Transport Commission: he contended that the services were provided by the commission.

*Heald, K.C.,* and *R. J. Parker* for the commission.

*Fox-Andrews, K.C.,* and *King-Hamilton* for the omnibus company.

*Cyril Morgan* for the urban district council.

The argument, based on the relevant sections of the Transport Act, 1947 , appears fully from the judgment of Cohen, L.J. Counsel for the appellants cited *Salomon v. Salomon & Co. LD.* [3] ; the speech of Lord Buckmaster in *Rainham Chemical Works LD. (In Liquidation) v. Belvedere Fish Guano Co. LD.* [4] ; the judgment of Tomlin, J., in *British Thomson-Houston Co. LD. v. Sterling Accessories LD.* [5] ; *Railway Executive v. Henson* [6] ; and *Smith v. London Transport Executive* [7] .

COHEN, L.J.

This appeal raises a question as to the jurisdiction of the licensing authority under s. 72 of the Road Traffic Act, 1930 , to hear an application by Red and White Services Ld. for the modification of the conditions of their licence in such a way as to enable them to increase the fares which they are entitled to charge for the services that they supply in a district in South Wales.

Section 72, sub-s. 1 , provides: "Subject to the provisions of this section the commissioners may grant to any person applying therefor a licence (in this Act referred to as a 'road service licence') to provide such a road service ag may be specified therein, and a vehicle shall not be used as a stage carriage or an express carriage except under such a licence". Under sub-s. 6 power is given to the commissioners, subject to the provisions of the section, to fix such fares and make it a condition of the licence that fares shall not be charged under or in excess of the minimum or maximum. Under sub-s. 4 the commissioners may from time to time vary, in such manner as they think fit, the conditions attached to a road service licence. It is under that last provision that Red and White Services Ld. made the application which gives rise to the present proceedings.

When the application came before the authority, the suggestion was made, and it has since been decided by the Divisional Court, that the jurisdiction of the authority had been taken away, so far as the point then under discussion was concerned, by s. 65 of the Transport Act, 1947 . [His Lordship read sub-s. 1 of s. 65 ]. The Divisional Court decided that s. 72 of the Road Traffic Act, 1930 , had ceased to apply on the facts of this case, because the services in question were services provided "by the commission", or by a "person acting as agent for the commission", within the meaning of s. 65.

© 2022 Thomson Reuters.

APP. 00627

I will refer to two passages in the judgment of Lord Goddard, C.J., in order to explain the ratio decidendi of the court. He said: "It seems to me, when one gives s. 65 the ordinary meaning of the English language, that the transport commission, having acquired the whole of the undertaking and share-holding of this company, and running the omnibuses of that company for the purpose of providing a passenger service through the Ebbw Vale, are providing a road transport service. The vehicles are not their own: they still belong to the legal entity which is the company; but it seems to me that the commission are in effect providing the road passenger transport, though I am rather inclined to think that the omnibus company in the circumstances are acting as agents for the commission". Then, in the last paragraph he said: "Mr.  *370  Heald has relied on the well-known case of *Salomon v. Salomon & Co. LD.* [8], which decided that in what is commonly called a one-man company, the company is a different entity from the man who holds the whole of the shares. and I have no doubt here that the omnibus company are a different entity from the commission; but it seems to me that the commission are providing this road passenger transport service, because the company are put there by the Transport Commission to do what otherwise it is the privilege of the commission to do. For these reasons I think that the order of prohibition must go".

Colloquially speaking, it may be true to say that the British Transport Commission are running the omnibuses of the company; but I am unable to agree, with all respect to the Divisional Court, that so broad a construction can properly be placed on the material phrase in s. 65: "any passenger road transport service provided ... by the commission or by any person acting as agent for the commission".

Under the ordinary rules of law, a parent company and a subsidiary company, even a 100 per cent. subsidiary company, are distinct legal entities, and in the absence of an agency contract between the two companies one cannot be said to be the agent of the other. That seems to me to be clearly established by *Salomon v. Salomon & Co. LD.* [9], and by the observations of Tomlin, J., in *British Thomson-Houston Co. LD. v. Sterling Accessories LD.* [10].

Tomlin, J., said [11]: "I do not think that any such inference" - that is, an inference of agency between the directors and the company - "can be or ought to be drawn. It has been made plain by the House of Lords that for the purpose of establishing contractual liability it is not possible, even in the case of the so-called one-man companies, to go behind the legal corporate entity of the company and treat the creator and controller of the company as the real contractor merely because he is the creator and controller. If he is to be fixed with liability as principal, the agency of the company must be established substantively and cannot be inferred from the holding of director's office and the control of the shares alone: see *Salomon v. Salomon & Co. LD.* [12]. Any other conclusion would have nullified the purpose for which the creation of limited companies was authorized by the legislature".

*371

Tomlin, J., continued: "Nor does the matter stand otherwise in regard to liability for tortious acts". and later [13]: "There is no evidence from which it ought or can be inferred that the defendant directors have authorized the wrongful acts. To draw that inference from the fact that they are sole directors and shareholders of the defendant company would be manifestly wrong and contrary to the principles enunciated by the House of Lords in the cases already referred to, and there is no evidence of any other facts at all in relation to the matter".

So I think that it can clearly be said here that there is no evidence to justify the inference which apparently Lord Goddard, C.J., was inclined to draw, that the omnibus company in the circumstances of the case are acting as agents for the British Transport Commission. In fairness to Mr. Morgan I add that he did not seek to support the order on the ground of agency. He did, however, strongly urge that, on a business view of the matter, the services which were provided in South Wales by the company were services provided by the commission.

I can find nothing in the Act to negative or exclude the ordinary rules of law so far as this question is concerned. I think that the proper approach to the question is to construe s. 65, sub-s. 1, in the light of the other relevant provisions of the Act; and, as Mr. Fox-Andrews said, the proper starting point is s. 3 , which lays down the general duty of the commission and states the objects, as distinct from the powers, which the commission was incorporated to perform. By sub-s. 1: "It shall be the general duty of the commission so to exercise their powers under this Act as to provide, or secure or promote the provision of, an efficient, adequate, economical and properly integrated system of public inland transport and port facilities within Great Britain for passengers and goods with due regard to safety of operation".

APP 00628
002012

I would emphasize the distinction that is plainly drawn there between "providing", on the one hand, and "securing or promoting" on the other, the provision of an efficient system of transport. It seems to me that those words clearly visualize that the commission may either provide the system themselves or may secure or promote its provision by others. With that in mind I turn back to s. 2 , which concerns the powers which the commission are to  *372  have to enable them to fulfil their object. Section 2, sub-s. 1 , provides: "Subject to the provisions of this Act, the commission shall have power - (a) to carry goods and passengers by rail, road and inland waterway, within Great Britain". By sub-s. 2: "Subject to the provisions of this Act, the powers conferred by sub-s. 1 of this section include power", and then follow a series of powers lettered in paragraphs from (a) to (i). I need only refer to paragraphs (f), (g) and (i). Paragraph (f): "to acquire by agreement (whether absolutely or for any period) the whole or any part of any undertaking of any other person, being an undertaking, or a part of an undertaking, the activities whereof are wholly or mainly such activities as are specified in the said sub-s. 1". Paragraph (g): "to enter into and carry out agreements with any person for the carrying on by that person, whether as agent for the commission or otherwise, of any of the activities specified in the said sub-s. 1, or for the provision by that person, whether as agent for the commission or otherwise, of clearing house facilities in connexion with the transport of goods". Paragraph (i): "to lend money to, or give guarantees for the benefit of, any person carrying on or about to carry on any of the activities specified in the said sub-s. 1", and then, omitting immaterial words, "and to acquire by agreement any securities of any body corporate which is carrying on or about to carry on or which directly or indirectly controls another body corporate which is carrying on or about to carry on any such activities".

I pause here to observe that it is plain as regards the omnibus company that it is under this latter power to acquire the securities of a body corporate which is carrying on transport activities that the acquisition was made. I pause also to observe that both sub-s. 1 and sub-s. 2 are subject to provisoes prohibiting the commission from doing certain things which might otherwise be within the wide words of the enabling power.

Sub-s. 3 provides: "Where, whether by agreement or otherwise, the commission acquire the whole or any part of any undertaking of any other person, they may, subject to the provisions of this Act, carry on any activities, whether mentioned in sub-s. 1 of this section or not, which were theretofore carried on for the purposes of that undertaking or part of an undertaking or were authorized by any statutory provision to be carried on for the purposes thereof". There again that is followed by a proviso restricting the generality of the foregoing Sub-s. 4 also contains certain restrictive powers.

*373

It is clear from that section, and I think that it also appears clear from ss. 63 and 64 , which concern the preparation and approval of area road transport schemes and the contents of area road transport schemes, that the Act contemplates that the commission may either provide services itself or may secure the provision of those services by or through other bodies, and not only by or through agents of the commission. That being so, prima facie, it would seem necessary to see whether what is being done in any particular case is an act done to provide transport facilities, or is an act done to secure the provision of transport facilities. Where a service is provided through a subsidiary company of the commission, it seems to me that prima facie, having regard to the general rule of law, what the commission are doing is to secure the provision of road transport facilities, and not to provide them.

That the commission can act by providing them themselves is made clear by the decision of this court to which our attention was called by Mr. Heald and Mr. Morgan, namely, *Smith v. London Transport Executive* [14] .

That the commission can act through an agent is also clear under the express provisions of sub-s. (2) (g) ; but, as I have said, there is no question of agency here. It seems to me quite plain that it can also arrange with independent concerns to provide a service, in which case it will be performing its function of securing or promoting the provision of an efficient, adequate, economical and properly integrated system of public inland transport. In the present case, I think, the commission were securing the provision of an efficient, adequate, economical and properly integrated system of public inland transport within the meaning of s. 3, sub-s. 1, of the Act, through the omnibus company - not an independent concern, but a separate legal entity.

That conclusion, it seems to me, is rendered more certain by sub-s. 6 of s. 2 of the Act. That provides: "For the purposes of sub-s. 4 and of the provisoes to sub-ss. 2 and 3 of this section, where a body corporate is directly or indirectly controlled by the commission, anything done by that body shall be deemed to be done by the commission, and the undertaking of the body shall be deemed to form part of the undertaking of the commission". The importance of that provision seems to me to be that it is quite plain that Parliament when it passed this Act had in mind the general rule of law to which I have  *374  referred as laid down in *Salomon v. Salomon & Co. LD.* [15] , and many other cases, that a subsidiary company is not the agent of the parent company, but is an entirely separate entity. Its acts are not the acts of the parent company, and the parent company is not responsible for its acts or defaults, in the absence of special provisions in some contract between the parties. Parliament, with that in mind, has gone out of its way to prescribe that for certain limited purposes the acts of the subsidiary company shall be

© 2022 Thomson Reuters.

App. 00629

Case 22-03052-sgj    Doc 21    Filed 05/27/22    Entered 05/27/22 15:12:46    Desc Main
Case 3:22-cv-02280-S    Document 1    Filed 10/12/22    Page 238 of 241    PageID 2140

Ebbw Vale Urban DC v South Wales Traffic Area..., [1951] 2 K.B. 366 (1951)

deemed to be the acts of the commission. It seems to me an inevitable inference from that provision that, except to that extent, the intention was that the ordinary rule of law should prevail and that the acts of the subsidiary company should be its own acts and not the acts of the commission.

Mr. Morgan was compelled to admit that if there were a road accident the victim would have a remedy, if he had a remedy at all, not against the commission, but only against the omnibus company. That seems to me to lead to, or support, the conclusion that the services here were provided, not by the commission, but by the company.

There is another argument of Mr. Morgan's to which I ought to refer. He laid some stress on the words in sub-s. 1 of s. 65, "any passenger road transport service provided, whether under a scheme under the preceding provisions of this Part of this Act or otherwise". He relied upon those words as in some way enlarging the meaning to be given to the word "provided". I am unable to follow him in this part of his argument. It seems to me that, in the context in which they appear, the words "or otherwise" are merely in contrast to the words "under a scheme", and mean no more than "provided, whether or not under a scheme under the preceding provisions of this Part of this Act". It does not assist us in determining whether or not as a matter of fact any particular service is provided by the commission.

There is still one other argument to which I must refer. It was said that it would lead to a ridiculous, or at any rate to an artificial, situation if there were to be two bodies dealing with the same subject-matter. Section 76 of the Transport Act, 1947 , contains the provisions under which the commission "shall from time to time prepare, and submit to the transport tribunal for confirmation, drafts of schemes (hereafter in this Act referred to as 'charges schemes ') for determining, as respects the  *375  services and facilities provided by the commission to which the schemes respectively relate - (a) the charges which are to be made by the commission". So, said Mr. Morgan, it is plain that in one case not the licensing authority under the Road Traffic Act, 1930 , but the transport tribunal under the Transport Act, 1947 , will have to determine the fares and charges which are to be made by the commission. Is it not, he said, most unlikely that the legislature intended that, as regards other cases, where in substance the service was provided by the commission, the reference should be to the licensing authority? It does not seem to me that that objection really has any substance, and in a sense it begs the question, because it is only where the services are provided by the commission that the obligation to set up a charging scheme arises; and it seems to me that Parliament, having, as it clearly had, in mind the prospect that the commission might discharge their obligations either by providing or by securing provision of the requisite services, should have visualized a different method of settling the charges according to whether the commission provided the services themselves or secured their provision. It seems to me quite natural that the charging scheme should only apply where the commission were providing the services themselves, leaving the matter to be dealt with under the Road Traffic Act, 1930 , in cases where the part played by the commission was merely to secure the provision of the services.

For these reasons, I think that the proper inference from the facts proved before the Divisional Court was that this was a case where the services were not provided by the commission but the commission merely secured their provision. I therefore think that it is not a case for prohibition, and I would allow the appeal.


ASQUITH, L.J.

I agree, and I would add only a word or two out of deference to the judgment from which we are differing. The case originally raised two distinct issues: did the commission within the meaning of sub-s. 1 of s. 65 "provide" these services? Or, short of that, did the omnibus company provide them as agents for the commission?

Mr. Morgan has not pressed the second point on the appeal, but, as the Divisional Court based its judgment partly on an affirmative answer to it, it is desirable to glance at it briefly. The only relevant fact before the court is that the commission own substantially all the shares in the company. The two bodies are admittedly separate legal personæ. Admittedly a subsidiary ia not necessarily, as such, an agent for the controlling corporation.  *376  There is, of course, nothing to prevent a controlling body from constituting a controlled body its agent if it chooses to do so, but there is no evidence of any such thing having happened here.

I turn, therefore, to the other question: did the commission provide these services themselves? The Divisional Court took a broad, common-sense view of the meaning of the word "provide", but in my view it has to be construed in the light of its context and the general structure of the Act. The other sections of the Act do draw a firm and sharp distinction between services "provided by" the commission themselves, and services of which they "secure the provision", presumably by other people. My Lord has read the first two or three lines of s. 3, sub-s. 1, of the Transport Act, 1947 , in support of that proposition, and I will not repeat them, but the same distinction reappears in a salient form in ss. 63 and 64, concerning schemes. Sub-s. 1 of s. 63

© 2022 Thomson Reuters.

App. 00630
002014

provides: "(1) The commission may, at any time, prepare and submit to the Minister a scheme". Sub-s. 1 of s. 64 provides: "A scheme under the last preceding section may provide for all or any of the following matters, that is to say - (a) for constituting or specifying the body or bodies who are to provide passenger road transport services operating within or partly within the area ...". Then by sub-s. 2: "The commission may be the body specified, or one of the bodies specified, in a provision included in a scheme by virtue of paragraph (a) of sub-s. 1 of this section"; so that it is not to be assumed that the distinction between services provided by the commission themselves and services which they cause other bodies to provide - a distinction which is so clearly present in the draftsman's mind when drafting ss. 63 and 64 - has entirely escaped his mind when he passes on to draft s. 65. It would appear to me that the commission have not in fact themselves provided passenger road services up to this time; but it is quite clear that they could, if they wished to do so, purchase a fleet of omnibuses tomorrow and run them themselves under powers given by s. 2, sub-s. 1 (a) and sub-s. 2 : see *Smith. v. London Transport Executive* [16] . If the commission in this case had bought, not shares in the omnibus company, but the physical assets of that company, and had engaged the company's staff to run the undertaking, in that case the commission would have been "providing" the services themselves. But it is, in my view, only if and to the extent that the commission do provide such services by themselves (or by an *377 "agent" within the meaning of sub-s. 1 of s. 65 ) that the jurisdiction as to fares of the licensing authority is displaced; and as neither of these conditions is fulfilled in the present case I agree with my Lord that the appeal ought to be allowed.

BIRKETT, L.J.

I agree with both the judgments which have just been delivered. The point in this case was described by the Lord Chief Justice in the Divisional Court as being a short point, and a short point it assuredly is.

The Lord Chief Justice said: "I think, therefore, for the reasons which I have endeavoured to express - it is a very short point - that this is a road transport service provided by the commission, or by persons acting as agents for the commission, and that accordingly the Road Traffic Act no longer applies". Also, in the Divisional Court the grounds upon which this order for prohibition was asked were these: "The relief sought is an order of prohibition that the licensing authority for public service vehicles for the South Wales Traffic Area be prohibited from hearing and determining an application by Red and White Services Ld. to vary the conditions attached to road service licences now held by the Red and White Services Ld., that is to say, to increase their present scale of fares. The grounds upon which relief is sought are that the said licensing authority has no jurisdiction to hear and determine the said application".

The short question, therefore, is: is it shown, on the true construction of the statutes, and on the facts which have been proved, that the British Transport Commission are providing these road services in South Wales so that ss. 72 to 76 of the Road Traffic Act, 1930 , no longer apply?

Mr. Morgan invited the court to take a broad view, as he termed it, of the word "provide" in sub-s. 1 of s. 65, and, of course, that, I think, is the gist of the whole matter. Section 65, sub-s. 1, of the Transport Act, 1947 , provides: " Sections 72 to 76 of the Road Traffic Act, 1930 (which relate to road service licences) shall not apply to any passenger road transport service provided, whether under a scheme under the preceding provisions of this Part of this Act or otherwise, by the commission or by any person acting as agent for the commission". Quite naturally, Mr. Morgan said that you must take a broad view of that word "provide". If I may say so, with all respect, it was the acceptance of that invitation in the Divisional Court which led to error. The meaning of the word "provide" cannot be interpreted quite on those lines, but must be ascertained with *378 some precision, having regard to the wording of the various sections of the Transport Act, 1947 .

I think that Mr. Fox-Andrews was quite right in saying that the section which sheds most light on this matter is s. 3. There the general duty of the commission is set out. Sub-section 1 provides: "It shall be the general duty of the commission so to exercise their powers under this Act as to provide, or secure or promote the provision of, an efficient, adequate, economical and properly integrated system of public inland transport and port facilities within Great Britain for passengers and goods with due regard to safety of operation; and for that purpose it shall be the duty of the commission to take such steps as they consider necessary for extending and improving the transport and port facilities within Great Britain in such manner as to provide most efficiently and conveniently for the needs of the public, agriculture, commerce and industry". That is the general duty of the commission, and it is to be observed that one can conceive all sorts of matters as within the power of the Transport Commission under that section: they can provide services themselves; they can, in lieu of providing services themselves, secure the provision of services; or they can, instead of doing that, promote services, all to the end that their general duty under the section shall be fulfilled.

In this case it was shown that the commission in fact controlled the omnibus company, in this sense, that they owned all the shares, with the possible exception of two, and that they had the controlling power over the appointment and the dismissal of directors. In relation to that, sub-s. 6 of s. 2 is very important, because it is contemplated that the commission shall control, directly or indirectly, corporate bodies. The sub-section provides: "For the purposes of sub-s. 4 and of the provisoes to sub-ss. 2 and 3 of this section, where a body corporate is directly or indirectly controlled by the commission, anything done by that body shall be deemed to be done by the commission", thus limiting this provision most carefully to the matters which are set out in the section, i.e., for the purposes of sub-s. 4 and the provisoes of sub-ss. 2 and 3 of s. 2. Therefore, in this case, although the commission do control the omnibus company, though they do own the shares, though they have the power to control the appointment and dismissal of directors, they do not own the property of the company and the vehicles which actually run upon the roads. As my Lord pointed out, there is no power to sue the commission either in contract or in tort. Therefore, popularly, *379  or, if I may use Mr. Morgan's phrase, "in a broad sense", one may say, of course, that the commission provide the services, as one man might say to another, because they control the company, they own the shares; yet in fact what they are really doing here is, not to provide the services, but, as my Lord has already stated, to secure that those services are provided.

Asquith, L.J., discussed the matter of agency, which clearly influenced the Divisional Court, but which is no longer relied upon here; and Cohen, L.J., disposed of the argument raised on the use of the words "or otherwise" in the words of sub-s. 1 of s. 65: "any passenger road transport service provided whether under a scheme under the preceding provisions of this Part of this Act or otherwise".

In all these circumstances, I am clearly of opinion that this was not a case where the commission in fact provided the services, and, that being so, sub-s. 1 of s. 65, which eliminated ss. 72 to 76 of the Road Traffic Act, 1930 , in the case of any passenger road transport service *provided* by the commission, has no application, and I agree that this appeal should be allowed.

### Representation

Solicitors: M. H. B. Gilmour ; M. H. B. Gilmour ; Lewin, Gregory, Torr, Durnford & Co. , for J. L. J. Price, Merthyr Tydfil .

*Appeal allowed. (C. G. M. )*

### Footnotes

1    Road Traffic Act, 1930, s. 72, sub-s. 1 : "Subject to the provisions of this section the commissioners may grant to any person applying therefor a licence (in this Act referred to as a 'road service licence') to provide such a road service as may be specified therein, and a vehicle shall not be used as a stage carriage or an express carriage except under such a licence". Under sub-s. 6 power is given to the commissioners, subject to the provisions of the section, to fix such fares and make it a condition of the licence that fares shall not be charged under or in excess of the minimum or maximum. Under sub-s. 4 the commissioners may from time to time vary, in such manner as they think fit, the conditions attached to a road service licence. Transport Act, 1947, s. 65, sub-s. 1 : " Sections 72 to 76 of the Road Traffic Act, 1930 (which relate to road service licences) shall not apply to any passenger road transport service provided, whether under a scheme under the preceding provisions of this Part of this Act or otherwise, by the Commission or by any person acting as agent for the Commission, but neither the Commission nor any such person as aforesaid shall use any public service vehicle for the conveyance of passengers for hire or reward at separate fares except - (a) on a route approved, as respects so much there of as falls within any traffic area, by the licensing authority for public service vehicles for that area; and (b) in accordance with such restrictions as may be imposed by that authority as to the class or description of vehicles which may be used on the route and as to the portions of the route on which, and the points at which, passengers may be taken up or set down ...".

2    Road Traffic Act, 1930, s. 72, sub-s. 1 : "Subject to the provisions of this section the commissioners may grant to any person applying therefor a licence (in this Act referred to as a 'road service licence') to provide such a road service as may be specified therein, and a vehicle shall not be used as a stage carriage or an express carriage except under such a licence". Under sub-s. 6 power is given to the commissioners, subject to the

© 2022 Thomson Reuters.

APP 00632
002018

provisions of the section, to fix such fares and make it a condition of the licence that fares shall not be charged under or in excess of the minimum or maximum. Under sub-s. 4 the commissioners may from time to time vary, in such manner as they think fit, the conditions attached to a road service licence. Transport Act, 1947, s. 65, sub-s. I : " Sections 72 to 76 of the Road Traffic Act, 1930 (which relate to road service licences) shall not apply to any passenger road transport service provided, whether under a scheme under the preceding provisions of this Part of this Act or otherwise, by the Commission or by any person acting as agent for the Commission, but neither the Commission nor any such person as aforesaid shall use any public service vehicle for the conveyance of passengers for hire or reward at separate fares except - (a) on a route approved, as respects so much there of as falls within any traffic area, by the licensing authority for public service vehicles for that area; and (b) in accordance with such restrictions as may be imposed by that authority as to the class or description of vehicles which may be used on the route and as to the portions of the route on which, and the points at which, passengers may be taken up or set down ...".

| | |
|---|---|
| 3 | *[1897] A. C. 22* . |
| 4 | *[1921] 2 A. C. 465* , 475. |
| 5 | *[1924] 2 Ch. 33* , 38 and 40. |
| 6 | *(1949) 65 T. L. R. 336; 113 J. P. 333* . |
| 7 | *[1949] Ch. 685; [1951] W. N. 157* . |
| 8 | *[1897] A. C. 22* . |
| 9 | *[1897] A. C. 22* . |
| 10 | *[1924] 2 Ch. 33* . |
| 11 | Ibid. 38. |
| 12 | *[1897] A. C. 22* . |
| 13 | *[1924] 2 Ch. 33* , 40. |
| 14 | *[1949] Ch. 685; [1951] W. N. 157* . |
| 15 | *[1897] A. C. 22* . |
| 16 | *[1949] Ch. 685; [1951] W. N. 157* |

(c) Incorporated Council of Law Reporting for England & Wales

App. 00633
002017