**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re: Highland Capital Management, L.P.** | § | Case No. **19-34054-SGJ-11** |
| The Charitable DAF Fund LP | § | |
| | § | |
| Appellant | § | 22-03052 |
| vs. | § | |
| **Highland Capital Management, L.P.** | § | |
| | § | |
| Appellee | § | **3:22-CV-02280-S** |

**[43]  Order granting amended motion to dismiss adversary proceeding with prejudice (related document # 19) Entered on 9/30/2022**

# APPELLANT RECORD
# VOLUME 18

SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367

*Counsel for The Charitable DAF Fund, L.P.
and CLO Holdco, Ltd.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| THE CHARITABLE DAF FUND, L.P. | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 22-03052-sgj11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |
| | § | |

*INDEX*

## APPELLANT'S SECOND AMENDED STATEMENT OF ISSUES AND
## DESIGNATION OF RECORD ON APPEAL

Pursuant to Rules 8009(a)(1)(A)-(B) and (a)(4) of the Federal Rules of Bankruptcy

Procedure, The Charitable DAF Fund, L.P. ("Appellant") hereby designates the following items

to be included in the record and identifies the following issues with respect to its appeal of the

Order Granting Defendant's Amended Motion to Dismiss Adversary Proceeding [Doc.43] which

was entered by the United States Bankruptcy Court for the Northern District of Texas on September 30, 2022.

## I. STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

Whether the Bankruptcy Court erred in granting Defendant's Amended Motion to Dismiss Adversary Proceeding.

## II. DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD

*Vol. 1*
*000001*

1. Notice of Appeal for Bankruptcy Case Adversary Proceeding No. 21-03067-sgj11 [Doc. 46].

*000004*

2. The judgment, order, or decree appealed from: Order Granting Amended Motion to Dismiss Adversary Proceeding [Doc. 43].

3. Any opinion, findings of fact and conclusions of law of the bankruptcy court relating to the issues on appeal, including transcripts of all oral rulings: None.

*000032*

3. Docket Sheet kept by the Bankruptcy Clerk.

4. Documents listed below and as described in the Docket Sheet for Bankruptcy Case Proceeding No. 22-03052-sgj.

*Vol. 2*

| No. | Date Filed | Docket No. | Description/Document Text |
|-----|-----------|-----------|--------------------------|
| 1 | 5/25/22 (7/22/21) | 1 | (18 pgs; 4 docs) Adversary case 22-03052. ORDER REFERRING CASE 3:21-CV-1710-N from U.S District Court for the Northern District of Texas, Dallas Division to U.S. Bankruptcy Court for Northern District of Texas, Dallas Division and Complaint by Charitable DAF Fund, LP against Highland Capital Management, L.P. Fee Amount $350 (Attachments: # 1 Original Complaint # 2 Civil Cover Sheet # 3 Docket Sheet from 21-CV-1710). Nature(s) of suit: 02 (Other (e.g., other actions that would have been brought in state court if unrelated to bankruptcy)). (Okafor, Marcey) |
| 2 | 5/25/22 (10/5/21) | 8 | (8 pgs; 2 docs) MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) Attorney Zachery Z. Annable added to party Highland Capital Management LP(pty: dft) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #8 ON |

*000040*

*000058*

| | | | |
|---|---|---|---|
| | | | 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 3 | 5/25/22 (10/5/21) | 9 | (15 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #9 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 4 | 5/25/22 (10/5/21) | 10 | (1012 pgs; 28 docs) Appendix in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #10 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION](Okafor, Marcey) |
| 5 | 5/25/22 (10/5/21) | 11 | (8 pgs; 2 docs) MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #11 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 6 | 5/25/22 (10/5/21) | 12 | (10 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Annable, Zachery [ORIGINALLY FILED IN 21-CV-1710 AS #12 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 7 | 5/25/22 (10/5/21) | 13 | ((238 pgs; 4 docs) Appendix in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 |

Handwritten annotations in left margin:
Vol. 2
000066
000081
Thru Vol. 6
Vol. 7
001093
001101
001111

| | | | |
|---|---|---|---|
| *Vol. 8* | | | AS #13 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| *001349* | 8 | 5/25/22 (10/27/21) | 15 | (3 pgs) RESPONSE filed by Charitable DAF Fund LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Sbaiti, Mazin) [ORIGINALLY FILED IN 21-CV-1710 AS #15 ON 10/27/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| *001352* | 9 | 5/25/22 (11/5/21) | 16 | (7 pgs) REPLY filed by Highland Capital Management LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #16 ON 11/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| *001359* | 10 | 5/25/22 (11/21/21) | 18 | (2 pgs) ORDER re: 8 Motion for Reconsideration. The Court grants Defendant's motion, lifts the stay, and refers this case to Judge Stacey G.C. Jernigan of the United States Bankruptcy Court for the Northern District of Texas, to be adjudicated as a matter related to the Chapter 11 Bankruptcy of HCM., Chapter 11 Case No. 10-34054. The Clerk of this Court and the Clerk of the Bankruptcy Court to which this case is referred are directed to take such actions as are necessary to docket this matter as an Adversary Proceeding associated with the aforementioned consolidated bankruptcy case. (Ordered by Judge David C Godbey on 5/19/2022) (oyh) (Main Document 18 replaced on 5/23/2022) (twd). (Entered: 05/20/2022) [ORIGINALLY FILED IN 21-CV-1710 AS #18 ON 11/21/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (*ERROR IN ENTRY: CORRECT CASE NUMBER IS: 19-34054*) (Okafor, Marcey) |
| *001361* | 11 | 5/27/22 | 19 | (8 pgs; 2 docs) Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments:# 1 Exhibit A--Proposed Order) (Annable, Zachery) |
| *001369* | 12 | 5/27/22 | 20 | (12 pgs) Brief in support filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| *001381 Thru Vol. 10* | 13 | 5/27/22 | 21 | (637 pgs) Support/supplemental document (*Appendix in Support of Highland Capital Management, L.P.'s Amended* |

| | | | | |
|---|---|---|---|---|
| | | | | *Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| Vol. 11<br>002018 | 14 | 6/1/22 | 23 | (6 pgs; 2 docs) Notice of hearing filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Hearing to be held on 8/3/2022 at 02:30 PM at https://us courts.webex.com/meet/jerniga for 19 and for 19, (Attachments: # 1 Exhibit A)(Hayward, Melissa) |
| 002024 | 15 | 7/5/22 | 30 | (12 pgs) Response opposed to (related document(s): 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) filed by Plaintiff Charitable DAF Fund, LP . (Ecker, C.) (Entered: 07/06/2022) |
| 002036 | 16 | 7/26/22 | 31 | (15 pgs) Reply to (related document(s): 30 Response filed by Plaintiff Charitable DAF Fund, LP) filed by Defendant Highland Capital Management, L.P.. (Annable, Zachery) |
| 002051<br>Thru Vol 14 | 17 | 7/26/22 | 32 | (865 pgs) Support/supplemental document *(Amended Appendix in Support of Highland Capital Management, L.P.'s Amended Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 21 Support/supplemental document). (Annable, Zachery) |
| Vol. 15<br>002916<br>Thru Vol. 18 | 18 | 8/1/22 | 34 | (867 pgs; 23 docs) Witness and Exhibit List *(Reorganized Debtor's Witness and Exhibit List with Respect to Evidentiary Hearing to Be Held on August 3, 2022)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22) (Annable, Zachery) |
| Vol. 19<br>003783<br>Thru Vol. 22 | 19 | 8/3/22 | 40 | (1 pg) Court admitted exhibits date of hearing August 3, 2022 (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments: # 1 Exhibit A--Proposed Order) COURT ADMITTED EXHIBIT 17. COURT TOOK JUDICIAL NOTICE OF EXHIBITS 1-13, 21 AND 22. (Ellison, T.) (Entered: 08/04/2022) |

*vol. 22*

*004651*

*004679*

| | 20 | 9/30/22 | 42 | (28 pgs) Memorandum of opinion regarding Defendant's amended motion to dismiss adversary proceeding (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Entered on 9/30/2022 (Okafor, Marcey) |
| | 21 | 8/4/22 | 41 | 41 Transcript regarding Hearing Held 08/03/2022 (45 pages) RE: Motion to Dismiss Adversary Proceeding (19). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 11/2/2022. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 37 Hearing held on 8/3/2022. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) (Appearances: G. Demo and Z. Annabel for Movant/Highland; J. Bridges for Respondent/Charitable DAF. Evidentiary hearing. Motion granted. Court to issue Opinion and Order.)). Transcript to be made available to the public on 11/2/2022. (Rehling, Kathy) |

Dated:  November 28, 2022          Respectfully submitted,

                                   **SBAITI & COMPANY PLLC**

                                   */s/ Mazin A. Sbaiti*
                                   **Mazin A. Sbaiti**
                                   Texas Bar No. 24058096
                                   **Jonathan Bridges**
                                   Texas Bar No. 24028835
                                   JPMorgan Chase Tower
                                   2200 Ross Avenue – Suite 4900W
                                   Dallas, TX  75201
                                   T:  (214) 432-2899
                                   F:  (214) 853-4367
                                   E:  mas@sbaitilaw.com
                                       jeb@sbaitilaw.com

                                   **Counsel for Appellant**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically through the Court's ECF system, which provides notice to all parties of interest, on this 28th day of November, 2022.

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 28   Filed 11/06/22   Page 9 of 227   PageID 3754

9

1    two, the order asserts jurisdiction -- sole jurisdiction, even

2    -- over proceedings in which withdrawal of the reference is

3    mandatory under 157(d).

4        The fourth major problem is what the Court called

5    specificity at the previous hearing.  The Fifth Circuit's

6    *Applewood Chair* case holds that the rule from *Shoaf* does not

7    apply without a "specific discharge or release," and that that

8    release has to be enumerated and approved by the Bankruptcy

9    Court.  Thus, the order here can't exculpate Mr. Seery of

10   liability for ordinary negligence and the like in a blanket

11   fashion.  The claims being released must be identified.

12       That's what happened in *Shoaf*.  Shoaf's guaranty

13   obligation was explicitly released.  That's also what happened

14   in *Espinosa*.  Espinosa's plan listed his student loan as his

15   only specific indebtedness.  But it's not what happened here.

16   And it couldn't happen here, because the ordinary negligence

17   and similar claims being discharged by the order had not yet

18   accrued and thus were not even in existence at the time the

19   order issued.

20       Instead, what we have here is a nonconsensual, nondebtor

21   injunction or release that's precisely what the Fifth Circuit

22   refused to enforce in the *Pacific Lumber* case.

23       So, lack of specificity is the third major problem with

24   the order.  And that brings us to the fourth problem, which is

25   the *Barton* doctrine.  *Barton* is the only possible basis for

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 12/06/22   Page 10 of 227   PageID 3755

10

1   this Court to assert exclusive or sole jurisdiction over

2   anything.  Outside of *Barton*, it's plain black letter law that

3   the District Court's jurisdiction is equal to and includes

4   anything that this Court's derivative jurisdiction would also

5   reach.

6      But the exception to the *Barton* doctrine in 959(a) plainly

7   applies here, leaving no basis for exclusivity with regards to

8   jurisdiction and the District Court.  That's because Mr. Seery

9   is carrying on the business of a debtor and managing the

10   property of others, rather than merely administering the

11   bankruptcy estate.  The exclusive jurisdiction function of the

12   *Barton* doctrine has no applicability because 959(a) creates

13   that exception here.

14      Under its general equity powers, yes, 959(a) still

15   authorizes this Court to exercise some control over actions

16   against Mr. Seery, but short of depriving litigants of their

17   day in court.  And nothing in 959(a), that exception to

18   *Barton*, says that the Court can nonetheless exercise

19   exclusivity in that jurisdiction.  Those general equity powers

20   do not create exclusive or sole jurisdiction.  They do not

21   deprive the District Court of its Congressionally-granted

22   original jurisdiction.

23      Moreover, Mr. Seery is not an appointed trustee entitled

24   to the protections of the *Barton* doctrine in any case.  His

25   appointment was a corporate decision that the Court was asked

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Exhibit 21   Filed 12/30/22   Page 11 of 227   PageID 3756

11

1    not to interfere with.  The Court was asked to defer under the

2    business judgment rule to the Debtor's appointment of Mr.

3    Seery.  And the Court did so.

4         As we asserted last time, no authority that we can find

5    combines these two unrelated doctrines, the *Barton* doctrine

6    and the business judgment rule.  And they don't go together.

7    None of the testimony or the briefing or argument, in the July

8    order, in the January order that preceded it, none of that

9    indicated that Mr. Seery would be a trustee or the functional

10   equivalent of a trustee.  The word "trustee" does not appear

11   in any of those briefs or transcripts.

12        Opposing -- and because of that, the District Court suit

13   is not about -- well, not because of that.  The District Court

14   suit simply is not about any trustee-like role that Mr. Seery

15   may have played anyway.  Opposing counsel will try to convince

16   you otherwise, will tell you that the District Court case is a

17   collateral attack on the settlement, but it's not.  Wearing

18   his estate administrator hat, Mr. Seery can settle claims in

19   this court.  Wearing his advisor hat, he has to fulfill his

20   Advisers Act duties and properly advise his clients.

21        He doesn't have to wear both hats, and it seems highly

22   unusual that he would choose to fill both of those roles

23   simultaneously.  But he has chosen both roles.  And the

24   District Court case is a hundred percent about his role as an

25   advisor.  Did he comply with the Act?  Did he do the things

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 23   Filed 10/06/22   Page 12 of 227   PageID 3757

12

1    that his advisor role obligated him to do as a manager of that

2    property?

3        The District Court suit really is only being used to

4    illustrate the issues that we're raising here.  It's

5    important, it's timely to address those issues now because of

6    the District Court action, but that's an illustration of the

7    problems with the order.  It is not exclusively that that

8    action is what we're attempting to address.  Rather, the order

9    exculpating Mr. Seery from ordinary negligence liability and

10   similar liability is problematic, is contrary to the law.  On

11   top of that, the Court is asserting jurisdiction over gross

12   negligence and intentional misconduct claims.  To the extent

13   that 157(d) applies, it is problematic and contrary to law as

14   well.

15            THE COURT:  Okay.  We're occasionally getting some

16   breakup of your sound.  So please -- I don't know what you can

17   do to adjust, but it was just now, and intermittently we get a

18   little bit of garbly.  So if you could just say your last

19   sentence one more time, and we'll see if it improves.

20            MR. BRIDGES:  Your Honor, I'm not sure I can say this

21   last sentence again.

22            THE COURT:  Okay.

23            MR. BRIDGES:  I was -- I was mentioning that the

24   District Court case is an illustration of our argument.  Our

25   argument is not merely that the District Court case should be

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Exhibit 21   Filed 12/16/2224   Page 13 of 227   PageID 3758

13

1   exempted or excepted from the order.  Our argument is that the

2   order is legally infirm and that the District Court case and

3   the claims there illustrate some of those infirmities, but

4   that the infirmities go beyond just what's at issue in the

5   District Court case.

6       In sum, there are four problems with the order that render

7   parts of it legally infirm.  It deprives the right of a jury

8   trial -- in fact, of any trial -- in contravention of 959(a)

9   for some causes of action.

10      It asserts jurisdiction -- two, it asserts jurisdiction

11  over claims that are subject to the mandatory withdrawal of

12  the reference provision (garbled) 157(d).

13      And three, it lacks the specificity required to discharge

14  future claims under *Applewood*.

15      Finally, Your Honor, number four, the order relies on the

16  *Barton* doctrine, which doesn't apply and which 959(a) creates

17  an exception to.

18      Movants respectfully submit the order should be modified

19  for those reasons.

20          MR. SBAITI:  Tell him Mark Patrick is here, for the

21  record.

22          THE COURT:  All right.  I have a couple of follow-up

23  questions for you.  I want to drill down on the issue of your

24  client not having appealed the July 2020 order.  Or the

25  HarbourVest settlement order, for that matter.  Tell me as

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 23   Filed 10/06/22   Page 14 of 227   PageID 3759

14

1   directly as possible why you don't view that as a big problem.

2   Because it's high on my list of possible problems here.

3        MR. BRIDGES:  I understand, Your Honor.  The

4   *Applewood Chair* case is our -- our defense to that argument,

5   that without providing specifics as to the claims being

6   discharged in the July order, that *Shoaf* cannot apply to

7   create a res judicata effect from the failure to appeal that

8   order.

9        THE COURT:  But is that really what we're talking

10  about, a discharge of certain claims?  We're talking about a

11  protocol that the Court established which wasn't appealed.

12       MR. BRIDGES:  Your Honor, your order does many

13  things.  We're talking about a few of them in one paragraph of

14  the order.  And in that order -- in that paragraph, yes, it

15  creates a protocol for determining the colorability of some

16  claims, claims that rise to the level of gross negligence or

17  intentional misconduct.  It does not create a protocol for

18  claims that fall below that threshold, claims for ordinary

19  negligence, as an example.

20       THE COURT:  Okay.

21       MR. BRIDGES:  For breach of contract that's not

22  intentional, is not grossly negligent, it's just a breach of

23  contract.  It can even be faultless.  There's still liability.

24  There's still a jury right under the Seventh Amendment for

25  faultless breach of contract.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 23   Filed 10/06/22   Page 15 of 227   PageID 3760

15

1    The protocols in the order do not address such claims

2    other than to bar them.  To discharge them.  And thus, yes,

3    it's a release, it's a discharge of those claims.  It can be

4    viewed as a permanent injunction against bringing such claims.

5    It's what's -- it's what's not allowed by the *Applewood Chair*

6    case and by *Pacific Lumber*.

7         THE COURT:  All right.  So you're arguing that was --

8    the wording of the order was not specific enough to apprise

9    affected parties of what they were releasing, they're

10   releasing claims based on ordinary negligence against Mr.

11   Seery?  That's not specific enough?

12        MR. BRIDGES:  Correct.  Future unproved claims, the

13   factual basis for which has not happened yet.  Those cannot be

14   and were not disclosed with any specificity in this order.

15   If we compare it to *Shoaf* and to *Espinosa*, in *Shoaf* what

16   we had was a guaranty, Shoaf's guaranty on a transaction that

17   was listed in the actual release, describing what the

18   transaction was that was being -- that the guaranty was being

19   released for.

20   In *Espinosa*, what we had was a student loan --

21        THE COURT:  Right.

22        MR. BRIDGES:  -- that was listed in the plan

23   specifically, as the only specific indebtedness.

24   Here, we don't have any of that specificity.  What we have

25   is a notice to the entire world, Your Honor, that for an

003570

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 11   Filed 18/01/224   Page 16 of 227   PageID 3761
Exhibit 21   Page 18 of 224

16

1   unlimited period of time any claim for ordinary negligence,

2   for ordinary breach of contract or fiduciary duty against Mr.

3   Seery is barred if it relates to his CEO role.  And his CEO

4   role means as a manager of property, exactly precisely what

5   959(a) is talking about.

6       Those jury rights (garbled) claims cannot be released,

7   discharged, expunged, done away with, in an order that isn't

8   explicit.

9       On top of that, even in an explicit order, 959(a) tells

10  the Court it cannot deprive a litigant of its jury trial

11  right.

12          THE COURT:  Well, as anyone knows who's been around a

13  while in this case, my brain sometimes goes down an unexpected

14  trail, and maybe this one is one of those situations.  Are

15  there contracts that your clients would rely on in potential

16  litigation?

17          MR. BRIDGES:  Yes, Your Honor.

18          THE COURT:  What are those contracts?

19          MR. BRIDGES:  It is a management contract.  I don't

20  think I can give you the specifics at this moment, but I

21  probably can before we're done here today.  A management

22  contract in which the Debtor provides advisory and management

23  services to the DAF --

24          THE COURT:  Well, you know, the shared services

25  agreements that we heard so much about in this case?  A shared

003571

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 11/06/24   Page 17 of 227   PageID 3762

17

1  service agreement?  I can't remember, you know, which entities

2  have them and which do not at times.  So, --

3          MR. BRIDGES:  The shared services agreement is one of

4  those contracts, Your Honor.

5          THE COURT:  Okay.

6          MR. BRIDGES:  It's not the only one.

7          THE COURT:  And what are the others?

8          MR. BRIDGES:  There's -- the other is the investment

9  advisory agreement.

10          THE COURT:  Those two?

11          MR. BRIDGES:  (no response)

12          THE COURT:  Those are the only two?

13          MR. BRIDGES:  There may be one other, Your Honor.

14  I'm not sure.

15          THE COURT:  Are they in evidence?

16          MR. BRIDGES:  I can find out shortly.

17          THE COURT:  Are they in evidence?  We haven't talked

18  about evidence yet, but are they going to be in evidence,

19  potentially?

20          MR. BRIDGES:  They are referenced in the District

21  Court case, the complaint, which is in evidence.

22          THE COURT:  I'm asking, are --

23          MR. BRIDGES:  But those contracts I don't believe are

24  listed as exhibits here in this motion, no.

25          THE COURT:  They are not?  Okay.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 10/06/22   Page 18 of 227   PageID 3763

18

1    Well, what my brain is thinking about here is, of the

2    umpteen agreements I've seen -- more than umpteen -- of the

3    many, many agreements I've seen over time in this case, so

4    often there's a waiver of jury trial rights, as I recall, as

5    well as an arbitration clause.  I just was curious, hmm, you

6    know, you talked a lot about your clients' jury trial rights:

7    do we know that these agreements have not waived those?

8         MR. BRIDGES:  Your Honor, I think I can answer that

9    by the end of our hearing.  I don't have an answer off the top

10   of my head.  What I can tell you is a jury right has been

11   demanded in the federal court complaint, which is in evidence,

12   and that opposing counsel has brought no evidence indicating

13   that they have the defense of our having waived the right to a

14   jury trial here.

15        THE COURT:  Okay.  Well, I just --

16        MR. BRIDGES:  Or arbitra...

17        THE COURT:  -- would think that you would know that.

18   Does anyone know that on the Debtor's side off the top of your

19   head?

20        MR. POMERANTZ:  I do not, Your Honor.

21        THE COURT:  Uh-huh.

22        MR. POMERANTZ:  And to Mr. Bridges' last point, we

23   have filed a motion to dismiss.  We have not answered the

24   complaint.  So any time to object to their jury trial right

25   would be in the context of the answer.  So the implication

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 131   Filed 12/06/22   Page 19 of 227   PageID 3764

19

1    that we have not raised the issue and therefore it doesn't

2    exist is just not a correct implication and connection he's

3    trying to draw.

4          THE COURT:  Okay.  All right.

5       Well, let me also ask you about this.  I'm obsessing a

6    little over the *Barton* doctrine and your insistence that it

7    does not provide authority or an analogy here.

8       Well, for one thing, is there anything in the Fifth

9    Circuit case *Sherman v. Ondova* that you think either helps you

10   or hurts you on that point?  I'm intimately familiar with it,

11   although I haven't read it in a while, because it was my

12   opinion that the Fifth Circuit affirmed.  And I spent a lot of

13   time thinking about that.  It was a trustee, a traditional --

14   well, no, a Chapter 11 trustee and his counsel.  But anything

15   from that case that you think is worthy of pointing out here?

16         MR. BRIDGES:  No, Your Honor.  I'm not -- nothing

17   comes to mind.  That case is not fresh on my mind.

18      What I would tell you is that *Barton* doctrine and the

19   business judgment rule are incompatible, and the appointment

20   of a trustee never involves application of the business

21   judgment rule or deference to the Debtor or another party in

22   terms of making that appointment.

23      The *Barton* doctrine, as it applies to trustees, is viewed

24   as an extension, to some extent, of judicial immunity to the

25   trustee, who is chosen by, selected by the Court and assigned

003574

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 12/06/2224   Page 20 of 227   PageID 3765

20

1    by the Court to carry out certain functions.  That --

2            THE COURT:  Well, let me --

3            MR. BRIDGES:  -- quasi-immunity --

4            THE COURT:  -- stop you there.  You say it's an

5    extension of immunity.  But isn't it, by nature, really a

6    gatekeeping provision?  It's a gatekeeping provision, right?

7    Before you even get to immunity, maybe, in a lawsuit, it's a

8    gatekeeping function that the Supreme Court has blessed, you

9    know, obviously in the context of a receiver, but appellate

10   courts have blessed it in the bankruptcy context.  The

11   Bankruptcy Court can be the gatekeeper on whether the trustee

12   or someone I think in a similar position can get sued or not.

13      And then we had that Fifth Circuit case after *Ondova*.  It

14   begins with a V, *Villegas* or something like that.  Didn't

15   that, I don't know, further ratify, if you will, the whole

16   *Barton* doctrine by saying, oh, just because they're noncore

17   claims, state law or non-bankruptcy law claims, doesn't mean,

18   after *Stern*, the Bankruptcy Court still cannot serve the

19   gatekeeper function.

20      Tell me what you disagree.  That's my kind of combined

21   reading of all of that.

22           MR. BRIDGES:  Your Honor, I have to parse it out.

23   There's a lot to unpack there.  If I can make sure to get in

24   the follow-ups, I can start with saying it's okay for the

25   Court in many instances to act as a gatekeeper.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 121   Filed 12/30/22   Page 21 of 227   PageID 3766

21

1          THE COURT:  Okay.

2          MR. BRIDGES:  Both under *Barton* -- under *Barton*, or

3    when the *Barton* exception in 959(a) applies, under the Court's

4    general equitable powers, that gatekeeping functions are not

5    across-the-board prohibited, --

6          THE COURT:  Okay.

7          MR. BRIDGES:  -- and we aren't trying to argue that

8    they're prohibited across the board.

9          THE COURT:  Okay.

10         MR. BRIDGES:  Now, to try to dig into that a little

11   deeper, the order does two things:  gatekeeping as to some

12   claims, and, frankly, discharging or barring other claims.

13   Those are two separate functions.

14        The first one, the gatekeeping, may be, in some

15   circumstances, which we'll come to, many circumstances, may be

16   allowable, may be even mandatory under *Barton*, not even

17   requiring an order from this Court, for the gatekeeping of

18   *Barton* to apply.  But nonetheless, allowable in many instances

19   under the Court's general equity powers under 959(a).  That

20   part is right about gatekeeping.

21        It does not create jurisdiction in this Court where 157(d)

22   deprives this Court of jurisdiction.  Just because it's

23   related to bankruptcy isn't enough to say that the Court

24   therefore has jurisdiction if, one, if mandatory withdrawal of

25   the reference is required.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 04/06/22   Page 22 of 227   PageID 3767

22

1    Furthermore, Your Honor, that gatekeeping function, under

2    the equity powers authorized by 959(a), will not allow a court

3    to discharge or -- or deprive, is the word I'm looking for --

4    deprive a litigant of their right to a trial -- a specific

5    kind of trial, a jury trial -- but a trial.  And by crafting

6    an order that says certain kinds of claims that do (garbled)

7    jury rights are barred, rather than just providing a

8    gatekeeper provision, flat-out bars them, that doesn't -- that

9    doesn't comply with 959.

10           THE COURT:  Okay.

11           MR. BRIDGES:  Your Honor, if I could add one last

12    thing.

13           THE COURT:  Go ahead.

14           MR. BRIDGES:  The Supreme Court's *Stern* case points

15    out that -- that it's -- well, actually, it's the *Villegas*

16    case from the Fifth Circuit --

17           THE COURT:  The one I mentioned.

18           MR. BRIDGES:  -- points out that *Stern* -- *Stern* --

19    yes, you did.  *Stern* did not create an exception to the *Barton*

20    doctrine.  And that gives -- that endorses a *Barton* court's

21    ability to perform gatekeeping, even over claims that *Stern*

22    says there would not be jurisdiction over.

23    Contrast that with 959(a), which *Collier on Bankruptcy* and

24    the Fifth Circuit have held is an exception to the *Barton*

25    doctrine.  Because of that exception, *Barton* no longer

003577

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 23   Filed 04/25/24   Page 23 of 227   PageID 3768

23

1    applies, and what you're using in invoking a gatekeeper order

2    is the Court's inherent equitable powers, its general powers

3    in equity.  And those equity powers are cabined.  They're

4    broad, but they're cabined by 959(a)'s prohibition of doing

5    away with a litigant's right to a trial, a jury trial.

6         Now, I also -- counsel is telling me I should note for the

7    record that Mr. Mark Patrick is here as a representative of

8    our clients.  But Your Honor, I'll -- I will quit now unless

9    you have further questions for me.

10        THE COURT:  All right.  I do not at this time.  Mr.

11   Morris or Mr. Pomerantz, who's going to make the argument?

12        MR. POMERANTZ:  It's me, Your Honor.

13        OPENING STATEMENT ON BEHALF OF THE DEBTOR

14        MR. POMERANTZ:  And I'll start with the jury trial

15   right.  In the last few minutes, we have been able to

16   determine that the Second Amended and Restated Investment

17   Advisory Agreement between the DAF and the Debtor has a broad

18   jury trial waiver under 14(f).  And in addition, as I will

19   include in my discussion, there is no private right of action

20   under the Investment Advisers Act.

21        I think those two points are fatal to Movants' argument,

22   and probably I can get away with not even responding to the

23   others.  But since I prepared a lengthy presentation to

24   address the issues that were raised today, and also the half

25   hour that Mr. Bridges spent with Your Honor on June 8th in

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 06/02/22   Page 24 of 227   PageID 3769

24

1   which was his first opening statement on the motion for

2   reconsideration, I'll now proceed.

3          THE COURT:  All right.

4          MR. POMERANTZ:  The arguments that the Movants made

5   in the original motion essentially boil down to one legal

6   proposition, that the Court did not have jurisdiction to enter

7   the July 16th order because those orders impermissibly

8   stripped the District Court from jurisdiction, in violation of

9   (inaudible) Supreme Court precedent and 28 U.S.C. Section

10  157(d).

11       As with all things Dondero, the arguments continue to

12  morph, and you heard argument at the contempt hearing on June

13  8th and further argument today that now the prospective

14  exculpation for negligence in the order is also unenforceable

15  and should be modified.

16       Movants continue to try to distance themselves from the

17  January 9th order and argue that it is not relevant because

18  they seek to pursue claims against Mr. Seery as CEO and not as

19  an independent director.  Movants ignore, however, that the

20  January 9th order not only protects Mr. Seery in his role as

21  the independent director, but also as an agent of the board.

22  I will walk the Court through my arguments on that issue in a

23  few moments.

24       Of course, the Movants had no explanation, Your Honor, for

25  the question of why it took them until May of 2021, 10 months

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 23-1    Filed 2/06/224    Page 25 of 227    PageID 3770

25

1    after the entry of the July 16th order that appointed Mr.

2    Seery as CEO and CRO, and 16 months after the Court appointed

3    the independent board, with Mr. Dondero's blessing and

4    consent, as a substitute for what would have surely been the

5    imminent appointment of a Chapter 11 trustee.

6         Movants try to distance themselves from the prior orders

7    by essentially arguing that the DAF is a newcomer to the

8    Chapter 11 and is not under Mr. Dondero's control but is

9    rather managed separately and independently by Mr. Patrick,

10   who recently replaced Mr. Scott.

11        The Movants admit, as they must, that the DAF is the

12   parent and the sole shareholder of CLO Holdco and conducts its

13   business through CLO Holdco, and both entities conduct their

14   business through one individual.  It was Grant Scott then;

15   it's Mark Patrick now.  So even if Mr. Dondero does not

16   control the DAF and CLO Holdco, which issue was the subject of

17   lengthy testimony in connection with the DAF hearing, both the

18   DAF and the CLO Holdco are bound by the Debtor's res judicata

19   argument, which I will discuss shortly.

20        In any event, I really doubt the Court is convinced that

21   the DAF operates truly independently of Mr. Dondero any more

22   than the Court has been convinced that the Advisors, the

23   Funds, Dugaboy and Get Good, all operate independently from

24   Mr. Dondero.  The only explanation for the delay is that Mr.

25   Dondero has been and continues to be unhappy with the Court's

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 21    Filed 2/8/2224    Page 26 of 227    PageID 3771

26

1    rulings and has now hired a new set of lawyers in a desperate

2    attempt to evade this Court's jurisdiction.  Having failed in

3    their attempt to recuse Your Honor from the case, this is

4    essentially their last hope.

5        And these new lawyers, Your Honor, have not only filed

6    this DAF lawsuit in the District Court which is the subject of

7    the contempt motion and today's motion, but they also filed

8    another lawsuit in the District Court on behalf of an entity

9    called PCMG, another Dondero entity, challenging yet another

10   of Mr. Seery's postpetition decisions.

11       And there's no doubt that this is only the beginning.  Mr.

12   Dondero recently told Your Honor at a hearing that there were

13   many more sets of lawyers waiting in the wings.  And as the

14   Court remarked at the hearing on the Trusts' motion to compel

15   compliance with Rule 2015.3, the Trusts were trying through

16   that motion to obtain information about the Debtor's control

17   entities so that they could file more lawsuits against the

18   Debtor, a concern that Mr. Draper unconvincingly denied.

19       I would like to focus the Court preliminarily on exactly

20   what the January 9th and July 16th orders do, because Movants

21   try to confuse things by casting the entire order with a broad

22   brush of their jurisdictional overreach arguments, and they

23   misinterpret Supreme Court and Fifth Circuit precedent.

24       I would like to put up on the screen the language of

25   Paragraph 10 of the January 9th order and Paragraph 35

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 09/02/22   Page 27 of 227   PageID 3772

27

1   (garbled) of the July 16th.

2       Your Honor is very familiar with these orders, I'm sure,

3   having dealt with them in connection with confirmation and in

4   prior proceedings.  But to recap, the orders essentially do

5   three things.

6       First, they require the parties to first come to the

7   Bankruptcy Court before commencing or pursuing a claim against

8   certain parties.

9       Second, they provided the Court with the sole jurisdiction

10  to make a finding of whether the party has asserted a

11  colorable claim of negligence -- of willful misconduct or

12  gross negligence.

13      And lastly, the orders provided the Court with exclusive

14  jurisdiction over any claims that the Court determined were

15  colorable.

16      The protected parties under the January 9th order are the

17  independent directors, their agents and advisors, which, as I

18  mentioned earlier, includes Mr. Seery -- who, at least as of

19  March 2020, was acting as the agent on the board's behalf as

20  the CEO -- for any actions taken under their direction.

21      The protected parties under the July 16th order are Mr.

22  Seery, as the CEO and CRO, and his agents and advisors.

23      Movants spend a lot of time in their moving papers and

24  reply arguing that the Court may not assert exclusive

25  jurisdiction over any claims that pass through the gate.  They

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 10/07/22   Page 28 of 227   PageID 3773

28

1    also spend a lot of time arguing that the Bankruptcy Court

2    does not even have jurisdiction at all to assert -- to

3    adjudicate claims against Mr. Seery because such claims are

4    subject to mandatory withdrawal under Section 157(d).

5        The Debtor doesn't agree, and has briefed why mandatory

6    withdrawal of the reference is inapplicable.  The Debtor has

7    also filed in the District Court a motion to enforce the

8    reference in effect in this district which refers cases in

9    this district arising under, arising in, or related to Chapter

10   11 to the Bankruptcy Court.

11       The motion to enforce the reference, Your Honor, which

12   extensively briefs this issue, is contained in Exhibit 3 of

13   the Debtor's exhibits.

14       We were somewhat surprised that the complaint filed in the

15   District Court wasn't automatically referred to this Court

16   under the standing order in effect in this district, given the

17   related bankruptcy case, the Court's prior approval of the

18   HarbourVest settlement, and the appeal in the District Court

19   of the HarbourVest settlement.

20       When we dug a little further, we found out that Movants

21   filed a civil case cover sheet accompanying the complaint in

22   the District Court.  They neglected in that initial filing to

23   point out that there was any related case to the lawsuit they

24   filed.

25       Mr. Bridges fell on his sword at the contempt hearing on

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 131   Filed 10/06/22   Page 29 of 227   PageID 3774

29

1    June 8th and took complete responsibility for the oversight.

2    I commend him for not trying to argue that the bankruptcy

3    case, the HarbourVest settlement, and the District Court

4    appeal are not related cases that would require disclosure, an

5    argument that surely would have been unsupportable.

6        But as I said at the contempt hearing, I find it curious

7    that such an important issue was overlooked, an issue which

8    would have likely changed the entire trajectory of the

9    proceedings and landed the DAF lawsuit in this Court rather

10   than the District Court.

11       And this Tuesday, Your Honor, Movants filed a revised

12   civil cover sheet with the District Court.  Although they

13   referenced the bankruptcy case as a related case, they didn't

14   bother to mention the appeal already pending in the District

15   Court regarding the HarbourVest settlement -- surely, a

16   related case.

17       Your Honor also asked Mr. Bridges at the June 8th hearing

18   whether it was an oversight or intentional that he didn't

19   mention 28 U.S.C. Section 1334 as a basis for jurisdiction in

20   his complaint.  Mr. Bridges had no answer for Your Honor then,

21   and has given no answer now.  His only comment at the hearing

22   last time was that it must have been Ms. Sbaiti that wrote it

23   because he had no recollection of it.

24       So, Your Honor, it's no surprise that Movants conveniently

25   found themselves in the District Court, which was their

003584

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 09/07/22   Page 30 of 227   PageID 3775

30

1    ultimate strategy from the get go.

2        In any event, Your Honor, we have briefed the withdrawal

3    of the reference issue.  A response by the Movants is due --

4    CLO Holdco and DAF is due on June 29th.  And we hope the

5    District Court will decide soon thereafter whether to enforce

6    the reference.

7        While I'm happy to argue why Movants' mandatory withdrawal

8    of the reference argument is [not] persuasive, I don't think

9    it's necessary, but I do, again, want to highlight that there

10   is no private right of action under the Investment Advisers

11   Act.

12       Your Honor, it's not really relevant to today's hearing,

13   since we have argued in opposition to the motion before Your

14   Honor that resolving the issue of the Bankruptcy Court's

15   jurisdiction to adjudicate claims contained in the complaint

16   as they relate to Mr. Seery is premature at this point.  The

17   January 9th and July 16th orders first require the Court to

18   determine whether a claim is colorable.  It's not until this

19   Court determines if a claim is colorable that the decision on

20   where the lawsuit should be tried is relevant.

21       Having said that, Your Honor, we read the Movants' reply

22   brief very carefully and noticed in Footnote 6 that the

23   Movants state that modifying the exclusive grant of

24   jurisdiction to adjudicate any claims that pass through the

25   gate to include the language "to the extent permissible by

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 23-1   Filed 12/30/22   Page 31 of 227   PageID 3776

31

1    law," in the same way the Debtor modified the plan, would

2    resolve the motion.  So let's look at the provision as it

3    exists in the plans.

4        Ms. Canty, if you can put up the next demonstrative,

5    please.

6        This provision provides that the Bankruptcy Court will

7    have sole and exclusive jurisdiction to determine whether a

8    claim or cause of action is colorable, and, only to the extent

9    legally permissible and provided in Article XI, shall have

10   jurisdiction to determine -- to adjudicate the underlying

11   colorable claim or cause of action.

12       The Movants request in their reply brief in Footnote 6

13   that the July 16th order be given the plan treatment.  That

14   treatment:  sole authority to determine colorability and

15   jurisdiction, and, to the extent legally permissible, to

16   adjudicate underlying claim, only if jurisdiction existed.

17       After reviewing the reply brief and prior to the June 8th

18   hearing, we decided that we would agree to modify both the

19   January 9th and the July 16th orders to provide that the

20   Bankruptcy Court would only have jurisdiction to adjudicate

21   claims that pass through the colorability gate to the extent

22   permissible by law.

23       Prior to the June 8th hearing, Mr. Morris and I had a

24   conversation with Mr. Bridges.  We conferred about a potential

25   resolution and a proposed modification.  Mr. Bridges indicated

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 121   Filed 04/06/224 Page 32 of 227   PageID 3777

32

1    they were interested in exploring a resolution and wanted to

2    --

3            MR. BRIDGES:  Objection, Your Honor.

4            THE COURT:  There's an objection?

5            MR. BRIDGES:  Objection, Your Honor.  There's a Rule

6    408 settlement discussion.  He's welcome to talk about the

7    results, but he shouldn't be talking about what was -- what

8    was proposed by opposing counsel in a settlement conversation.

9            THE COURT:  Okay.  I overrule.

10           MR. POMERANTZ:  Your Honor, this was not --

11           THE COURT:  I don't think this is a 408 issue.

12   Continue.

13           MR. BRIDGES:  Thank you.

14           MR. POMERANTZ:  The stipulation and order which we

15   provided to counsel is attached to my declaration, which is

16   found at Document 2418, and it was filed in connection with a

17   Notice of Revised Proposed Orders that we filed at Docket

18   2417.  And I would like to put up on the screen the relevant

19   paragraphs of the order that we provided to the Movants.

20       So, you see, we agreed to modify each of the orders at the

21   end to do what the plan says.  The Court would only have

22   jurisdiction for claims passing through the gate if the Court

23   had jurisdiction and it was legally permissible.

24       Movants' counsel, however, responded with a mark-up that

25   went beyond -- went beyond what Movants proposed in Footnote 6

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 05/02/24   Page 33 of 227   PageID 3778

33

1 and sought to fundamentally change the January 9th and July

2 16th orders in ways that were not acceptable to the Debtor and

3 not even contemplated by the original motion.

4     Ms. Canty, can you put up on the screen the relevant

5 paragraphs of the response we received?

6     Specifically, Your Honor, you see at the first part they

7 wanted to provide that the only -- the order only applied to

8 claims involving injury to the Debtor, presumably as opposed

9 to alleged injuries to affiliated funds or third parties.

10 They also provided that the Court's ability to make the

11 initial colorability determination was also qualified by "to

12 the extent permissible by law" in the way that the Court --

13 that the Debtor agreed to modify the ultimate adjudication

14 jurisdiction provision.

15     Your Honor, Movants haven't even talked about this back

16 and forth.  They haven't talked about their about-face.  And

17 I'll leave it for Your Honor to read their Footnote 6 that

18 said it would resolve their motion, the back and forth, our

19 proposal, and now Mr. Bridges' modified, morphed arguments

20 that now point out other issues.

21     In any event, Your Honor, we made the change, and we think

22 it should resolve the motion, or at least it resolves part of

23 the motion.  There can't be any argument that the Court is

24 trying to exert exclusive jurisdiction on claims that pass

25 through the gate.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 06/02/24   Page 34 of 227   PageID 3779

34

1    What apparently remains from the arguments raised by the

2    Movants is the argument that the Court does not even have

3    jurisdiction to act as a gatekeeper in the first place because

4    it doesn't have jurisdiction of the underlying lawsuit.  And

5    on June 8th and today, they've added a new argument, that the

6    orders impermissibly exculpate Mr. Seery and others, violate

7    their jury trial rights, and are contrary to the Fifth Circuit

8    precedent.

9        Movants claims that the orders are a jurisdictional

10   overreach, a violation of constitutional proportions, a

11   violation of due process, and inconsistent with several U.S.

12   Supreme Court cases.  But, of course, they cite no cases whose

13   facts are even remotely similar to this one.  Instead, they

14   are content to rely on general statements regarding bankruptcy

15   jurisdiction, how it is derived from district court

16   jurisdiction and is constitutionally limited, legal

17   propositions which are not terribly controversial or even

18   applicable to these facts.

19       There are several arguments -- I mean, there are several

20   reasons, Your Honor, why Movants' arguments fail.  Initially,

21   Movants have not cited any authority, any statute, or any rule

22   which would allow this Court to revisit the January 9th and

23   July 16th orders.  As I will discuss in a moment, Your Honor,

24   *Republic v. Shoaf*, a case the Court is very familiar in and

25   relied on in connection with plan confirmation, bars a

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 07/06/22   Page 35 of 227   PageID 3780
Exhibit 21   Page 37 of 224

35

1  collateral attack on these orders under the doctrine of res

2  judicata.

3      Similarly, as the Court remarked on June 8th, the Supreme

4  Court's *Espinosa* decision, which rejected an attack based upon

5  Federal Rule of Civil Procedure 60(b)(4) to a prior order that

6  may have been unlawful, prohibits the Court from now

7  reconsidering the January 9th and July 16th orders.

8      But even if Your Honor rules that res judicata does not

9  apply, there are two independent reasons why the orders were

10  not an unlawful extension of the Court's jurisdiction.  The

11  first is because the Court had jurisdiction to enter both of

12  those orders as the ability to determine the colorability of

13  claims is within the jurisdiction of the Court.  The second is

14  because the orders are justified by the *Barton* doctrine.

15      Lastly, Your Honor, Movants' argument that the Court may

16  not act as a gatekeeper to determine the colorability of a

17  claim for which it may not have jurisdiction is incorrect, and

18  as Your Honor has mentioned and as Mr. Bridges unconvincingly

19  tried to distinguish, the Fifth Circuit *Villegas v. Schmidt*

20  case is a case on point and resolves that issue.

21      Turning to res judicata, Your Honor, it prevents the Court

22  from revisiting these governance orders.  CLO Holdco had

23  formal notice of the Seery CEO motion and the opportunity to

24  respond.  It failed to do so.  It is clearly bound.

25      As reflected on Debtor's Exhibit 4, CLO Holdco is a

003590

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 03/30/21   Page 36 of 227   PageID 3781

36

1    wholly-owned subsidiary of the DAF.  The DAF is its sole

2    shareholder.  There is no dispute about that.  Importantly, at

3    the time of both the January and July orders, Grant Scott was

4    the only human being authorized to act on behalf of CLO Holdco

5    and the DAF.  The DAF did not respond to the Seery CEO motion,

6    either.

7         And why is that important, Your Honor?  It's because

8    Movants argue in their reply that the DAF cannot be bound by

9    res judicata because they did not receive notice of the July

10   16th order.  However, Your Honor, that is not the law.  Res

11   judicata binds parties to the dispute and their privies, and

12   the DAF is bound to the prior orders even though it did not

13   receive notice.

14        There are several cases, Your Honor, that stand for this

15   unremarkable proposition.  First I would point Your Honor to

16   the Fifth Circuit's opinion of *Astron Industrial Associates v.*

17   *Chrysler*, found at 405 F.2d 958, a Fifth Circuit case from

18   1968.  In that case, Your Honor, the Fifth Circuit held that

19   the appellant was barred by the doctrine of res judicata from

20   bringing a claim because its parent, which was its sole

21   shareholder, would have been bound by res judicata.

22        *Astron* is consistent with the 1978 Fifth Circuit case of

23   *Pollard v. Cockrell*, 578 F.2d 1002 (1978).  And the Northern

24   District of Texas in 2000 case of *Bank One v. Capital*

25   *Associates*, 2000 U.S. Dist. LEXIS 11652, found that a parent

003591

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 23-1   Filed 09/02/22   Page 37 of 227   PageID 3782

37

1    and a sole shareholder of an entity couldn't assert res

2    judicata as a defense when those claims could have been

3    brought against its wholly-owned subsidiary.

4       And lastly, Your Honor, the 2011 Southern District of

5    Texas case, *West v. WRH Energy Partners*, 2011 LEXIS 5183, held

6    that res judicata applied with respect to a partnership's

7    general partner because the general partner was in privity

8    with the partnership.

9       These cases are spot on and make sense.  DAF is CLO

10    Holdco's parent.  Grant Scott was the only live person to

11    represent these entities in any capacity at the relevant

12    times.  Accordingly, just as CLO Holdco is bound, DAF is

13    bound.

14       Allowing DAF to assert a claim when its wholly-owned and

15    controlled subsidiary is barred would allow entities to

16    transfer claims amongst their related entities in order to

17    relitigate them and they would never be finality.  And, of

18    course, Jim Dondero, as we know, consented to the January 9th

19    order, which provided Mr. Seery protection in a variety of

20    capacities.

21       And as Your Honor has pointed out, and as Mr. Bridges

22    didn't have an answer for, neither CLO Holdco nor the DAF or

23    any other party appealed any of the governance orders.  And

24    nobody challenged the validity of these orders at the

25    confirmation hearing, where the terms of these orders were

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 10/06/22   Page 38 of 227   PageID 3783
Exhibit 21   Page 40 of 224

38

1  front and center.

2       And importantly, Your Honor, the orders are clear and

3  unambiguous.  They require a Bankruptcy Court [sic] to seek

4  Bankruptcy Court approval before they commence or pursue an

5  action against the independent board, the CEO, CRO, or their

6  agents.  And they clearly and unambiguously set the standard

7  of care for actions prospectively:  gross negligence or

8  willful misconduct.

9       The Bankruptcy Court had jurisdiction to enter the

10  governance orders, which, as expressly indicated in the

11  orders, were core proceedings dealing with the administration

12  of the estate.  No one challenged this finding of core

13  jurisdiction.  And as I will discuss later, the failure to

14  challenge core jurisdiction is waived under applicable Supreme

15  Court and Fifth Circuit precedent.

16       Your Honor, the Court [sic] does not argue that Movants

17  have waived their right to seek adjudication of a lawsuit that

18  passes through the colorability gate by an Article III Court.

19  The issue is not before the Court, but the changes to the

20  order that the Debtor agreed to make clearly -- clearly will

21  provide Mr. Bridges' clients the ability to make that

22  determination.

23       The Debtor is, however, arguing that the Movants have

24  waived their right to contest the core jurisdiction of the

25  Bankruptcy Court to make the determination that the claims are

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 11/06/22   Page 39 of 227   PageID 3784

39

1 colorable in the first place, and to challenge the exculpation

2 provisions provided to the beneficiaries of those orders.

3     Accordingly, Your Honor, the elements of res judicata are

4 satisfied.  Both proceedings involve the same parties.  The

5 prior judgment was entered by a court of competent

6 jurisdiction.  The prior order was a final judgment on its

7 merits.  And they involved the same causes of action.

8     Importantly, the members of the independent board,

9 including Jim Seery, relied on the protections contained in

10 the January 9th and July 16th orders and would not have

11 accepted these appointments if the protections weren't

12 included.  And how do we know this?  Because each of them,

13 both Mr. Seery and Mr. Dubel, both testified at the

14 confirmation hearing on this very topic.

15     And I would like to put up on the screen an excerpt from

16 Mr. Seery's testimony at confirmation, which is testimony

17 included in the February 2nd, 2021 transcript, which is

18 Exhibit 2 of the Debtor's exhibits.

19          THE COURT:  Okay.

20          MR. POMERANTZ:  And I would like to just read this,

21 Your Honor.

22     "Q   Okay.   You mentioned that there were certain

23     provisions of the January 9th order that were important

24     to you and the other independent directors.  Do I have

25     that right?"

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 13-1   Filed 12/06/22   Page 40 of 227   PageID 3785

40

1          MR. POMERANTZ:  A little bit later on, Mr. Seery

2     testifies:

3          "A    And then ultimately there'll be another provision

4          in the agreement here, I don't see it off the top of my

5          head, but a gatekeeper provision.  And that provision"

6          --

7          "Q    Hold on one second, Mr. Seery."

8          MR. POMERANTZ:  Please scroll.

9          "Q    So, Paragraph 4 and 5, were those -- were those --

10         were those provisions put in there at the insistence of

11         the prospective independent directors?

12         "A    Yes.

13         "Q    Okay.  Can we go to Paragraph 10, please?  There

14         you go."

15         Mr. Morris:  Is this the other provision that you were

16    referring to?

17         "A    This is -- it's become to be known as the

18         gatekeeper provision, but it's a provision that I

19         actually got from other cases -- again, another very

20         litigious case -- that I thought it was appropriate to

21         bring it into this case.  And the concept here is that

22         when you are dealing with parties that seem to be

23         willing to engage in decade-long litigation and

24         multiple forums, not only domestically but even

25         throughout the world, it seemed important and prudent

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 12/30/22   Page 41 of 227   PageID 3786

41

1     to me and a requirement that I set out that somebody

2     would have to come to this Court, the Court with

3     jurisdiction over these matters, and determine whether

4     there was a colorable claim.  And that colorable claim

5     would have to show gross negligence and willful

6     misconduct -- i.e., something that would not otherwise

7     be indemnifiable" --

8          MR. POMERANTZ:  Hold on one second.

9     "A   So, basically, it set an exculpation standard for

10    negligence.    It  exculpates  the  directors  from

11    negligence, and if somebody wants to bring a cause

12    against the directors, they have to come to this Court

13    first to get a finding that there's a colorable claim

14    for gross negligence or willful misconduct."

15    "Q   Would you have accepted the engagement as an

16    independent director without the Paragraphs 4, 5, and

17    10 that we just looked at?

18    "A   No, these were very specific requests.    The

19    language here has been smithed, to be sure, but I

20    provided the original language for Paragraph 10 and

21    insisted on the guaranty provisions above to ensure

22    that the indemnity would have some support.

23    "Q   And ultimately did the Committee and the Debtor

24    agree to provide all the protections afforded by

25    Paragraphs 4, 5, and 10?

003596

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 04/06/24   Page 42 of 227   PageID 3787

42

1          "A   Yes."

2          MR. POMERANTZ:  So, Your Honor, these -- this

3     testimony also applied to as well as the CEO.

4          The testimony was echoed by Mr. Dubel, another member of

5     the board.  And I'm not going to put his testimony on the

6     screen, but it can be found at Pages 272 to 281 of Exhibit 2,

7     which is the February 2nd transcript.

8          Movants argue, however, that res judicata doesn't apply

9     because the Court didn't have jurisdiction to enter these

10    orders.  And they argue that the order stripped the District

11    Court of this jurisdiction.  As I previously described, the

12    Debtor is prepared to modify the governance orders to provide

13    that the Court shall retain jurisdiction to -- on claims that

14    pass through the gate only to the extent legally permissible.

15    The modification does not appear to be good enough for the

16    Movants.  They continue to argue that the Bankruptcy Court

17    can't even act as the exclusive gatekeeper to determine

18    whether such actions are colorable as a prerequisite for

19    commencing or pursuing an action.

20         The problem Movants run into is the Fifth Circuit's

21    opinion of *Republic v. Shoaf* and various Supreme Court

22    decisions, including *Espinosa*.

23         In *Shoaf*, the Fifth Circuit held that a party cannot

24    subsequently challenge a confirmed plan that clearly and

25    unambiguously released a third party, even if the Bankruptcy

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 06/02/22   Page 43 of 227   PageID 3788

43

1   Court lacked jurisdiction to approve the release in the first

2   place.  Movants' proper recourse was to appeal the governance

3   orders, not to seek to collaterally attack them.

4       In *Shoaf*, the Fifth Circuit held that the confirmed plan

5   was res judicata with respect to a suit by the creditor

6   against the guarantor.  And in so ruling, the Fifth Circuit

7   says that the prong of res judicata standard that requires an

8   order, prior order to be made by a court of competent

9   jurisdiction is satisfied regardless of whether the issue was

10  actually litigated.  This is because whenever a court enters

11  an order, it does so by implicitly making a finding of its

12  jurisdiction, a determination that can't be attacked.  And in

13  fact, in the January 9th and the July 16th orders, it wasn't

14  implicit, the Court's jurisdiction; it was set out that the

15  Court had core jurisdiction.

16      Movants try to brush *Shoaf* aside, arguing that is the only

17  case the Debtor cites to support res judicata argument and is

18  a narrow opinion that has been questioned and distinguished.

19  That's just not correct, Your Honor.  Movants ignore that we

20  have cited two United States Supreme Court cases, *Stoll v.*

21  *Gottleib* and *Chicot County Drainage District*, upon which the

22  Fifth Circuit based its *Shoaf* decision.  In each case, the

23  U.S. Supreme Court gave res judicata effect to a Bankruptcy

24  Court order that made a ruling party -- that a ruling party

25  later claimed was beyond the Court's jurisdiction to do so.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 06/01/22   Page 44 of 227   PageID 3789
Exhibit 21   Page 46 of 224

44

1    In *Stoll*, it was a release of guaranty without jurisdiction,

2    like *Shoaf*.  In *Chicot*, it was an extinguishment of a bond

3    claim without jurisdiction.

4        Similarly, Your Honor, the U.S. Supreme Court held in

5    *Espinosa* that a party was not entitled to reconsideration of a

6    Bankruptcy Court order under Federal Rule of Civil Procedure

7    60(b)(4) discharging a student loan without making the

8    required statutory finding of undue hardship in an adversary

9    proceeding.  And the Supreme Court reasoned in that opinion as

10   follows:  A judgment is not void, for example, simply because

11   it may have been erroneous.  Similarly, a motion under

12   60(b)(4) is not a substitute for a timely appeal.  Instead,

13   60(b)(4) applies only in the rare instance where a judgment is

14   premised either on a certain type of jurisdictional error or a

15   violation of due process that deprives a party of notice or

16   the opportunity to be heard.

17       Federal courts considering Rule 60(b)(4) motions that

18   assert a judgment is void because of a jurisdictional defect

19   generally have reserved it only for the exceptional case in

20   which the court that rendered the judgment lacked even an

21   arguable basis for jurisdiction.  This case is not the

22   exceptional -- exceptional circumstance that was referred to

23   by *Espinosa*.

24       In addition, we argue in our brief, and I'll get to in a

25   few moments, that both of the orders are justified under the

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 13-1    Filed 04/06/22    Page 45 of 227    PageID 3790

45

1    *Barton* doctrine.

2        Actually, before I go to that, Your Honor, I think Movants

3    are really trying to distinguish *Espinosa* by arguing that the

4    Court's order exculpating Mr. Seery for negligence liability

5    did not provide people, mom-and-pop investors, with the due

6    process informing them that they would not be able to assert

7    duty claims based upon mere negligence.  I think that's the

8    core of Mr. Bridges' argument, that, hey, you entered an

9    order, you gave this exculpation, it was inappropriate, and it

10    couldn't be done.

11        There are several problems with Movants' argument.  First,

12    Movants mischaracterize both the facts and the law in

13    connection with the Debtor's relationship with its investors.

14    The Debtor is the registered investment advisor for HCLOF as

15    well as approximately 15 to 18 CLOs.  The only investor in

16    HCLOF other than the Debtor is CLO Holdco.  The investors in

17    the CLOs are the retail funds advised by the Dondero advisors

18    and the other -- and other institutional investors.

19    Accordingly, the thousands of investors, the mom-and-pop

20    investors whose due process rights have allegedly been

21    trampled by the January 9th and July 16th orders, are not

22    investors in any funds managed by the Debtor.

23        And, of course, I have mentioned, as I've mentioned

24    before, no non -- non-Dondero investor, be it a mom-and-pop

25    investor, another institutional investor, anyone unrelated to

003600

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 12/01/22   Page 46 of 227   PageID 3791

46

1   Mr. Dondero, has ever appeared in this Court to challenge the

2   Debtor's activities.

3       But more fundamentally, Your Honor, the Debtor does not

4   owe fiduciary duties to investors in any of the funds that the

5   Debtor advises.  The fiduciary duty that the Debtor owes is to

6   the funds themselves, not the investors in the funds.

7       And while Movants point to Mr. Seery's prior testimony to

8   support the argument that the Debtor owes a duty to investors,

9   Mr. Seery was not testifying as a lawyer and his testimony

10  just cannot change the law.

11      As to each of the funds that the Debtor manages, HCLOF and

12  the CLOs, they were each provided with actual notice of the

13  January 16th -- the July 16th order and didn't object.  And as

14  Your Honor will recall, the Trustees for the CLOs, the party

15  that could potentially have claims for breach of fiduciary

16  duty, they participated in the January 9th hearing.  They came

17  to the Court and were concerned about the protocols that the

18  Debtor was agreeing to with the Committee.  We revised them.

19  The Trustees didn't object.  They didn't object then; they

20  didn't object now.  And, in fact, they consented to the

21  assumption of the contracts between the Debtor and the CLOs.

22      So the argument that the orders, by having this

23  exculpation for future conduct, violated due process rights of

24  anyone and is the type -- essentially, the type of order that

25  *Espinosa* would have contemplated could be attacked, is --

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 131   Filed 09/07/22   Page 47 of 227   PageID 3792

47

1   relies on faulty legal and factual premises.  No duty to

2   investors.  No private right of action.  And both -- and all

3   the funds received due process.

4        In addition, Your Honor, as we argue in our brief and I'll

5   get to in a few moments, both of the orders are justified

6   under the *Barton* doctrine, as Mr. Seery is entitled to

7   protection based upon how courts around the country have

8   interpreted the *Barton* doctrine.  As such, Mr. Seery is

9   performing his role both as an agent of the independent board

10  under the January 9th order, as a CEO under the July 16th

11  order, as a quasi-judicial officer.  And as Your Honor

12  examined in the *Ondova* opinion which you mentioned, trustees

13  are entitled to qualified immunity for damage to third parties

14  resulting from simple negligence, provided that the trustee is

15  operating within the scope of his duties and is not acting in

16  an *ultra vires* manner.

17       So, exculpating the independent directors, their agents,

18  and the CEO in the January 9th and July 16th orders was a

19  recognition by this Court that they would be entitled to

20  qualified immunity, much in the same way trustees are.

21       No doubt that Movants contend that this was error and that

22  the Court overreached.  However, the remedy for that overreach

23  was an appeal, not a reconsideration 16 months later.  The

24  Court's orders based upon the determination that in this

25  highly contentious case that these court officers needed to be

003602

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 121   Filed 06/21/24   Page 48 of 227   PageID 3793

48

1    protected from negligence suits is not the exceptional case

2    where the Court lacked any arguable basis for jurisdiction.

3    Accordingly, this Court must follow *Espinosa*, *Shoaf*, *Stoll*,

4    and *Chicot* and reject the attack on the prior court orders.

5        The only case Movants cite to challenge the Supreme

6    Court's decision -- to challenge the Supreme Court precedent I

7    mentioned and the Fifth Circuit's *Shoaf* decision is the

8    *Applewood* case. *Applewood* is totally consistent with *Shoaf*.

9    *Applewood* also involved a plan that purported to release a

10   guaranty claim that the guarantor argued was res judicata in

11   subsequent litigation regarding the guaranty. The Fifth

12   Circuit held in that case that the plan was not res judicata.

13   It made that ruling because the plan did not contain clear and

14   unambiguous language releasing the guaranty. In that way, the

15   Fifth Circuit distinguished *Shoaf*.

16       *Applewood* and *Shoaf* are consistent. A Bankruptcy Court

17   order will be given res judicata effect, even if the Court

18   didn't have jurisdiction to enter it, if the order was clear

19   and unambiguous. In *Shoaf*, the release was. In *Applewood*, it

20   wasn't.

21       Movants argued on June 8th and argue now that the

22   *Applewood* case really argues -- really deals with prospective

23   exculpation of claims. I went back and read Mr. Bridges'

24   comments carefully of June 8th. He said *Applewood*,

25   exculpation. Well, that's just not correct. *Applewood* is all

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 06/21/24   Page 49 of 227   PageID 3794

49

1    about requiring specificity of a (garbled) to give it res

2    judicata effect.  Claims that existed at that time, were they

3    described clearly and unambiguously?  Yes?  *Shoaf* applies.

4    No?  *Applewood* does -- applies.

5        So how should the Court apply these principles here?  The

6    Court approved a procedure for certain claims in the

7    governance orders.  The procedure:  come to Bankruptcy Court

8    before pursuing a claim against the independent directors and

9    Seery or their agents so that the Court can make a

10   colorability determination.  Clear and unambiguous.  The

11   governance orders each provide that the Bankruptcy Court had

12   jurisdiction to enter the orders, and the orders were not

13   appealed.

14       Movants attempt to confuse the Court and argue *Applewood*

15   is on point because the January 9th and July 16th orders do

16   not clearly identify specific claims that Movants now have

17   that are being released.  And because they're not specific,

18   then basically it's an ambiguous release and *Applewood*

19   applies.

20       The problem with the Movants' argument is that neither the

21   January 9th or July 16th orders released claims that existed

22   at that time.  If they did, and if there wasn't an adequate

23   description, I might agree with Mr. Bridges that *Applewood*

24   applied.  But there were no claims.  It was prospective.  It

25   was a standard of care.  The Court clearly and unambiguously

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 05/26/22   Page 50 of 227   PageID 3795

50

1   said what the standard of care would be going forward.

2   Clearly, under *Shoaf* and Supreme Court precedent, they are

3   entitled to res judicata because it's a clear and unambiguous

4   provision.  *Applewood* just simply doesn't apply.

5       Mr. Phillips at the last hearing made an impassioned plea

6   to the Court for a narrow interpretation of the exculpation

7   provisions in the January 9th and July 16th orders, and he

8   argued that the Court could not possibly have intended for the

9   exculpation for negligence to apply on a go forward basis.  He

10  thus argued to the Court that the Court should construe the

11  exculpation narrowly and only apply it to potential claims of

12  harm caused to the Debtor, as opposed to harm caused to third

13  parties, which he said included thousands of innocent

14  investors.

15      Of course, Mr. Phillips made those arguments unburdened by

16  the actual facts and the prior proceedings which led to the

17  entry of these orders, because, as he was the first to admit,

18  he only became involved in the case a month ago.

19      As the Court recalls, and as reinforced by Mr. Seery's and

20  Mr. Dubel's testimony I just mentioned, the exculpation

21  provisions were included precisely to prevent Mr. Dondero,

22  through any one of the entities he's owned and controlled, the

23  Movants being two of those, from asserting baseless claims

24  against the beneficiaries of those orders, exactly the

25  situation Mr. Seery now finds himself in.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 11   Filed 05/30/22   Page 51 of 227   PageID 3796
Exhibit 21   Page 53 of 224

51

1       And, again, it bears emphasizing:  throughout this case,

2   not one of the purported public investors Mr. Phillips

3   lamented would be prevented from holding Mr. Seery responsible

4   for his conduct has ever appeared in this case to object about

5   anything.  And none of the directors of the funds, the funds

6   where the Debtor acts as an investment adviser, have ever

7   stepped foot in this court, either.

8       Even if the Court declines to apply res judicata, Your

9   Honor, to prevent challenges to the governance orders, the

10  Court has the jurisdiction, had the jurisdiction to include

11  the gatekeeping provisions in those orders.  The Bankruptcy

12  Court derives its jurisdiction from 28 U.S.C. Section 157, and

13  bankruptcy jurisdiction is divided into two parts:  core

14  matters, which are those arising in or arising under Title 11,

15  and noncore matters, those matters which are related to a

16  Chapter 11 case.

17      Bankruptcy Courts may enter final orders in core

18  proceedings, and with the consent of parties, noncore

19  proceedings.  If a party does not consent to a final judgment

20  in the noncore matters or waives its right to consent, then

21  the Bankruptcy Court -- or does not waive its right to

22  consent, then the Bankruptcy Court issues a report and

23  recommendation to the District Court.

24      The seminal Fifth Circuit case on bankruptcy court

25  jurisdiction is the 1987 case of *Wood v. Wood*, 825 F.2d 90.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 04/04/2224   Page 52 of 227   PageID 3797

52

1   There, the Fifth Circuit held that the Bankruptcy Court has

2   related to jurisdiction over matters if the outcome of that

3   proceeding could conceivably have any effect on the estate

4   being administered in the bankruptcy.

5        More recently, the Fifth Circuit, in the 2005 case, in

6   *Stonebridge Tech's*, elaborated on when a matter has a

7   conceivable effect on the estate such as to confer Bankruptcy

8   Court jurisdiction.  There, the Fifth Circuit held that an

9   action is related to bankruptcy if the outcome could alter the

10  debtor's rights, liabilities, options, or freedom of action,

11  either positively or negatively, and which in any way impacts

12  upon the handling and the administration of the bankruptcy

13  estate.  It is against this backdrop, Your Honor, that the

14  Court should evaluate its jurisdiction to have entered the

15  orders.

16       So, again, what did the orders do?  They established

17  governance over the Chapter 11 debtor with new independent

18  directors being approved.  They established the procedures and

19  protocols of how transactions were going to be presented to

20  and approved by the Committee.  They vested in the Committee

21  certain related-party claims, and they provided for the

22  procedures parties would have to follow to assert any claims

23  against the independent directors and the CRO and the agents

24  and advisors.

25       Your Honor, it's hard to imagine that there is a more core

003607

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 05/06/24   Page 53 of 227   PageID 3798

53

1   order than the entry of these orders.  At the time the orders

2   were entered, the Court was well aware of the potential for

3   acrimony from Mr. Dondero and his related entities, and

4   included the gatekeeper provisions to prevent the Debtor's

5   estate from being embroiled in frivolous litigation against

6   the board and the CEO.

7       Such protections were clearly within the Court's

8   jurisdiction, both to protect the administration of the estate

9   but also under applicable Fifth Circuit law dealing with

10  vexatious litigants, as set forth in the *Baum* and *Carroll*

11  cases that the Court cited in its confirmation order.

12      Not that it was hard to predict, but the last several

13  months have reinforced how important the gatekeeping

14  provisions in the order are and how important similar

15  provisions in the plan are.

16      The Court heard extensive testimony at the confirmation

17  hearing regarding the havoc continued litigation by Mr.

18  Dondero and his related entities would cause, which

19  predictions have unfortunately been borne out by the

20  unprecedented blizzard of litigation involving Mr. Dondero and

21  his related entities that has consumed the Court over the last

22  several months and caused the estate to incur millions of

23  dollars in fees that could have been used to pay its

24  creditors.

25      And these attacks are continuing.  As I mentioned before,

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 06/02/24   Page 54 of 227   PageID 3799

54

1   in addition to the DAF lawsuit, Sbaiti & Co. filed an action

2   against the Debtor on behalf of PCMG, another related entity,

3   alleging postpetition mismanagement of the Select Fund.

4       And to complete the hat trick, they are the lawyers

5   seeking to sue Acis in the Southern District of New York for

6   allegedly post-confirmation matters.

7       The Court knew then and certainly knows now that the

8   potential for sizable indemnification claims could consume the

9   estate.  The Court used that as the potential basis for

10  determining that the orders were within its jurisdiction, just

11  as it used that potential to justify the exculpation

12  provisions in the plan as being consistent with *Pacific*

13  *Lumber*.

14      Movants also ignore the cases -- and we cited in our

15  opposition -- where courts in this district, including Judge

16  Lynn in *Pilgrim's Pride* in 2010 and Judge Houser in the *CHC*

17  *Group* in 2016, approved gatekeeper provisions that provided

18  the Bankruptcy Court with exclusive jurisdiction to adjudicate

19  claims against postpetition fiduciaries.

20      Movants also ignore cases outside this district, including

21  *General Motors* and *Madoff*, which we cited in our brief as

22  examples of cases where Bankruptcy Courts have been used as

23  gatekeepers to determine if claims are colorable or being

24  asserted against the correct entity.

25      And there's another reason, Your Honor, why Movants may

003609

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 23   Filed 07/06/22   Page 55 of 227   PageID 3800

55

1    now not contest the Court's jurisdiction to have entered those

2    orders.  Each of those orders, as I said before, include a

3    finding that the Court had core jurisdiction to enter the

4    orders.  No party contested that finding or refused to consent

5    to the core jurisdiction.

6        Under well-established Supreme Court precedent, parties

7    can waive their right to challenge the Bankruptcy Court's

8    jurisdiction, core jurisdiction, by failing to object.  In

9    *Wellness v. Sharif* in 2015, the Supreme Court expressly held

10   that Article III was not violated if parties knowingly and

11   voluntarily consented to adjudication of *Stern v. Marshall*-

12   type alter ego claims, and that the consent need not be

13   express, so long as it was knowing and voluntary.

14       And *Wellness* confirmed the pre-*Stern* opinion of the Fifth

15   Circuit in the 1995 *McFarland* case, which held that a person

16   who fails to object to the Bankruptcy Court's assumption of

17   core jurisdiction is deemed to have consented to the entry of

18   a final order by the Bankruptcy Court.

19       Your Honor, I'd now like to turn to the *Barton* doctrine.

20   The Court also has jurisdiction to have entered the orders

21   based upon the *Barton* doctrine.  The *Barton* doctrine dates

22   back to an old United States Supreme Court case and provides

23   as a general rule that, before a suit may be brought against a

24   trustee, consent from the appointing court must be obtained.

25       Movants essentially make two arguments why the *Barton*

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 09/28/22   Page 56 of 227   PageID 3801

56

1   doctrine doesn't apply.

2        First, Movants, without citing any authority, argue that

3   it does not apply to Mr. Seery because he is not a trustee or

4   receiver and was not appointed by the Court.  Although the

5   doctrine was originally applied to receivers, it has been

6   extended over time to cover various court-appointed

7   fiduciaries and their agents in bankruptcy cases, including

8   debtors in possession, officers and directors of the debtor,

9   and the general partner of the debtor.  And although Mr.

10  Bridges says he couldn't find one case that applied the *Barton*

11  doctrine to a court-retained professional, I will now talk

12  about several such cases.

13       In *Helmer v. Pogue*, a 2012 case cited in our brief, the

14  District Court for the Northern District of Alabama

15  extensively analyzed the *Barton* doctrine jurisprudence from

16  the Eleventh Circuit and beyond and concluded that it applied

17  to debtors in possession.  The *Helmer* Court relied in part on

18  a prior 2000 decision of the Eleventh Circuit in *Carter v.*

19  *Rodgers*, which held that the doctrine applies to both court-

20  appointed and court-approved officers of the debtor, which is

21  consistent with the law in other circuits.

22       And subsequently, the Eleventh Circuit again considered --

23  and in that case, the distinction of a court-appointed as a

24  court-retained professional was -- was not persuasive to the

25  Court, and the Court held that a court-retained professional

003611

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 121   Filed 05/06/2224   Page 57 of 227   PageID 3802

57

1   can still have *Barton* protection, notwithstanding that he

2   wasn't appointed, the argument that Mr. Bridges tries to make.

3       And subsequently, --

4           THE COURT:  I wonder, was that -- was that Judge

5   Clifton Jessup, by chance?  Or maybe Bennett?

6           MR. POMERANTZ:  Your Honor, this was -- this was the

7   Eleventh Circuit *Carter v. Rodgers*, so I think Judge Jessup

8   was --

9           THE COURT:  Oh, I thought you were still talking

10  about the Alabama case.  No?

11          MR. POMERANTZ:  Yeah, the Alabama -- well, the

12  Alabama case referred to the Eleventh Circuit case, *Carter v.*

13  *Rodgers*, --

14          THE COURT:  Okay.

15          MR. POMERANTZ:  -- and the appointment and -- or

16  retention issue was discussed in the *Carter v. Rodgers* case.

17          THE COURT:  Okay.

18          MR. POMERANTZ:  And subsequently, the Eleventh

19  Circuit again considered the contours of the *Barton* doctrine

20  in *CDC Corp.*, a 2015 case, 2015 U.S. App. LEXIS 9718.  In that

21  case, which Your Honor referenced in your *Ondova* opinion,

22  which I will discuss in a few moments, the Eleventh Circuit

23  held that a debtor's general counsel who had been approved by

24  the Court, who was appointed by a chief restructuring officer

25  who was also approved by the Court, was covered by the *Barton*

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 131   Filed 06/06/22   Page 58 of 227   PageID 3803

58

1   doctrine for acts taken in furtherance of the administration

2   of the estate and the liquidation of the assets.

3        And the Eleventh Circuit last year, in *Tufts v. Hay*, 977

4   F.3d 204, reaffirmed that court-approved counsel who function

5   as the equivalent of court-appointed officers are entitled to

6   protection under *Barton*.  While the Court in that case

7   ultimately ruled that counsel could be sued without first

8   going to the Bankruptcy Court, it did so because it determined

9   that the suit between two sets of lawyers would not have any

10   effect on the administration of the estate.

11        So, Your Honor, not only is there authority, there is

12   overwhelming authority that Mr. Seery is entitled to the

13   protections.

14        In *Gordon v. Nick*, a District -- a case from 1998 from the

15   Fourth Circuit, the Court that the *Barton* doctrine applied to

16   a lawsuit against a general partner who was responsible for

17   administering the bankruptcy estate.

18        And as I mentioned, Your Honor, and as Your Honor

19   mentioned, Your Honor had reason to look at the *Barton*

20   doctrine in length and in depth in the 2017 *Ondova* opinion.

21   And in the course of the opinion, Your Honor discussed one of

22   the policy rationales for the doctrine, which you took from

23   the Seventh Circuit's *Linton* opinion, and you said as follows:

24   "Finally, another policy concern underlying the doctrine is a

25   concern for the overall integrity of the bankruptcy process

003613

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 06/06/22   Page 59 of 227   PageID 3804

59

1    and the threat of trustees being distracted from or

2    intimidated from doing their jobs.  For example, losers in the

3    bankruptcy process might turn to other courts to try to become

4    winners there by alleging the trustee did a negligent job."

5        Here, the independent board was approved by the Court as

6    an alternative to the appointment of a Chapter 11 trustee.

7    And it and its agent, including Mr. Seery as the CEO, even

8    before the July 16th order, were provided protections in the

9    form of the gatekeeper order and exculpation.

10       I'm sure the Court has a good recollection of the January

11   9th hearing -- we've talked about it a lot in the proceedings

12   before Your Honor -- where the Debtor and the Committee

13   presented the governance resolution to Your Honor.  And as

14   Your Honor will recall, the appointment of the board was a

15   hotly-contested issue among the Debtor and the Committee and

16   was heavily negotiated.  And the appointment of the

17   independent board was even contested by the United States

18   Trustee at a hearing on January 20th, 2020.

19       I refer the Court to the transcripts of the hearings on

20   January 9th and January 20th of 2020, which clearly

21   demonstrate that appointing this board and giving it the

22   rights and protections and its agents the rights and

23   protections was not your typical corporate governance issue,

24   but it was essentially the Court's alternative to appointing a

25   trustee.  And recognizing that the members of the independent

003614

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 07/06/22   Page 60 of 227   PageID 3805

60

1    board were essentially officers of the Court, the Court

2    approved the gatekeeper provision, requiring parties first to

3    come and seek the Court's permission before suing them, in

4    order to prevent them from being harassed by frivolous

5    litigation.

6        And the independent board was given the responsibility in

7    the January 9th order to retain a CEO it deemed appropriate,

8    and it did so by retaining Mr. Seery.

9        Recognizing the *Barton* doctrine as it applies to Mr. Seery

10   is consistent with a legion of cases throughout the United

11   States, and Movants' argument that Mr. Seery is not court-

12   appointed is just wrong.

13       Second, Your Honor, Movants cite without any authority,

14   argue that even if the *Barton* doctrine applied there is an

15   exception which would allow it to pursue a claim against Mr.

16   Seery without leave of the Court.

17       The Debtor agrees the 28 U.S.C. § 959 is an exception to

18   the *Barton* doctrine.  Section 959(a) provides that trustees,

19   receivers, or managers of any property, including debtors in

20   possession, may be sued without leave of the court appointing

21   them with respect to any of their acts or transactions in

22   carrying on business connected with such property.

23       As the Court also pointed out at the June 8th hearing, and

24   Mr. Bridges alluded to in his argument, the last sentence of

25   959(a) provides that such actions -- clearly referring to

1   actions that may be pursued without leave of the appointing

2   court -- shall be subject to the general equity power of such

3   court, so far as the same may be necessary to the ends of

4   justice.

5       And Mr. Bridges made a plea, saying you can't take away my

6   jury trial right there.  You just cannot do that.  Well, I

7   have two answers to that, Your Honor.  One, they relinquished

8   their jury trial right.  We've established that.  Okay?

9       The second is allowing Your Honor to act as a gatekeeper

10  has nothing to do with their jury trial right.  Allowing Your

11  Honor to act as a gatekeeper allows you to determine whether

12  the action could go forward, and it'll either go forward in

13  Your Honor's court or some other court.

14      And the argument that the exculpation was essentially a

15  violation of 959 is just -- is just -- it just is twisting

16  what happened.  You have an exculpation provision.  We already

17  went through the authority the Court had to give an

18  exculpation.  With respect to these litigants who are before

19  Your Honor -- we're not talking about anyone else who's coming

20  in to try to get relief from the order; we're talking about

21  these litigants -- we've already established that they were

22  here, they're bound by res judicata.  So their 959 argument

23  goes away.

24      And as the Court -- and separate and apart from that, the

25  issue at issue in the District Court litigation is -- is not

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 23    Filed 04/06/24    Page 62 of 227    PageID 3807

62

1   even subject to 959.

2       Mr. Bridges says, well, of course it is because it deals

3   with the administration of the estate.  I'd like to refer to

4   what the Court said -- this Court said in its *Ondova* opinion:

5   The exception generally applies to situations in which the

6   trustee is operating a business and some stranger to the

7   bankruptcy process might be harmed, such as a negligence claim

8   in a slip-and-fall case, and is inapplicable to suits based

9   upon actions taken to further the administering or liquidating

10  the bankruptcy estate.

11      And your *Ondova* opinion is consistent with the Third and

12  Eleventh Circuit opinions Your Honor cited in your opinion, as

13  well as numerous other --

14      (Interruption.)

15          MR. POMERANTZ:  -- from the -- from around the

16  country, including cases from the First, Second, Sixth,

17  Seventh, and Ninth Circuits.  And I'm not going to give all

18  the cites to those cases, but it's not a -- it's not a

19  remarkable proposition that Your Honor relied on in *Ondova*.

20      In addition, several of these cases, including the

21  Eleventh Circuit's *Carter* opinion, have been cited with

22  approval by the Fifth Circuit in *National Business Association

23  v. Lightfoot*, a 2008 unpublished opinion for this very point.

24  The *Barton* exception of 959 does not apply to actions taken in

25  the administration of the case and the liquidation of assets

003617

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 05/06/24   Page 63 of 227   PageID 3808

63

1    in the estate.

2        Suffice it to say that it's clear that the Section 959

3    exception to *Barton* has no applicability in this case.

4    Movants, hardly strangers to the bankruptcy case, want to sue

5    Mr. Seery for acts taken relating to a settlement of very

6    complex and significant claims against the estate.  They want

7    to sue a court-appointed fiduciary for doing his job,

8    resolving claims against the estate and his management of the

9    bankruptcy estate.  And they want to do this outside of the

10   Bankruptcy Court.

11       Settlement of the HarbourVest claim, which is where this

12   claim arises under -- whether it's a collateral attack now or

13   not, and we say it is, is for another issue -- but it clearly

14   arises in the context of settlement of the HarbourVest claim,

15   is the quintessential act to further the administration and

16   liquidation of the bankruptcy estate, and certainly doesn't

17   fall within the 959 exception.

18       Movants seem to be arguing that 959(a) makes a distinction

19   between claims against Mr. Seery that damaged the Debtor and

20   claims against Mr. Seery that damaged third parties.  However,

21   the Movants make up that distinction, and it's not in the

22   statute, it's not in the case law.  The focus is not on who

23   the conduct damages, but it's rather on whether the conduct

24   was taken in connection with the administration or the

25   liquidation of the estate.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 1-21   Filed 06/06/22   Page 64 of 227   PageID 3809

64

1    And even if the Debtor is wrong, Your Honor, which it's

2    not, the savings clause allows the Court to determine whether

3    leave to be -- sue will be granted.  Given that these claims

4    are asserted by Dondero-related entities, if not controlled

5    entities, no serious argument exists that the equities do not

6    permit this Court to determine if leave to sue is appropriate.

7    Accordingly, Movants' argument that the orders create this

8    tension with 959 is simply an over-dramatization.  And in any

9    event, Your Honor, there's a basis independent of *Barton* that

10   supports the jurisdiction to enter the orders, as I mentioned.

11   But even if the orders only relied on *Barton*, there is an

12   easy fix to Movants' concerns:  let them come to court and

13   argue that the type of suit they are bringing allegedly falls

14   within the exception of 959.

15   Your Honor, Movants argue that the Bankruptcy Court may

16   not act as a gatekeeper if it would not have jurisdiction to

17   deal with the underlying action.  They essentially argue that

18   an Article I judge may not pass on the colorability of a

19   claim, that it should be decided by an Article III judge.

20   This is the same argument, Your Honor, that Your Honor

21   rejected in connection with plan confirmation and which I

22   touched on earlier.

23   And the reason why Your Honor rejected it is because

24   there's no law to support it.  In fact, there is Fifth Circuit

25   law that holds to the contrary.  And we talked about a little

003619

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 10/07/22   Page 65 of 227   PageID 3810
Exhibit 21   Page 67 of 224

65

1   bit the Fifth Circuit case decided is *Villegas v. Schmidt* in

2   2015.  And *Villegas* is a simple case.  Schmidt was appointed

3   trustee over a debtor and liquidated its estate and the

4   Bankruptcy Court approved his final fees.  Four years later,

5   Villegas and the prior debtor sued Schmidt in District Court,

6   the district in which the Bankruptcy Court was pending,

7   arguing that he was negligent in the performance of his

8   duties.  The District Court dismissed the case because

9   Villegas failed to obtain Bankruptcy Court approval to bring

10   the suit under the *Barton* doctrine.

11       On appeal, Villegas argued *Barton* didn't apply for two

12   reasons.  First, that *Stern v. Marshall* created an exception

13   to the *Barton* doctrine for claims that the Bankruptcy Court

14   would not have the jurisdiction to adjudicate.  And second,

15   that *Barton* did not apply if the suit is brought in the

16   District Court, which exercises supervisory authority over the

17   Bankruptcy Court that appointed the trustee.  Pretty much the

18   argument that was made by Movants at the contempt hearing.

19       The Fifth Circuit rejected both arguments.  It held that

20   the existence of a *Stern* claim does not impact the Bankruptcy

21   Court's authority because *Stern* did not overrule *Barton* and

22   the Supreme Court had cautioned circuit courts against

23   interpreting later cases as impliedly overruling prior cases.

24       More importantly, the Fifth Circuit pointed to a post-

25   *Stern* 2014 case, *Executive Benefits v. Arkison*, 573 U.S. 25

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 06/30/22   Page 66 of 227   PageID 3811

66

1    (2014), which held that *Stern* does not decide how a Bankruptcy

2    Court or District Courts should proceed when a *Stern* creditor

3    is identified, as support for the argument that *Barton* is

4    still good law, even dealing with a *Stern* claim.

5        Second, the Fifth Circuit, joining every circuit to have

6    addressed the issue, ruled that the District Court and the

7    Bankruptcy Court are distinct from one another and the

8    Bankruptcy Court has the exclusive authority to determine the

9    colorability of *Barton* claims and that the supervisory

10   District Court does not.

11       Movants didn't address *Villegas* in their reply.  Briefly

12   tried to distinguish it, unconvincingly, today.  The bottom

13   line is *Villegas* is directly applicable.  Your Honor cited it

14   in the *Ondova* opinion for precisely the proposition that

15   *Barton* applies whether or not the Court has authority to

16   adjudicate the claim.

17       Accordingly, Your Honor, it was within the Court's

18   jurisdiction to require a party to seek approval of Your Honor

19   on the colorability of a claim before an action may be

20   commenced or pursued against the protected parties, even if

21   Your Honor wouldn't have authority to adjudicate the claim at

22   the end of the day.

23       In fact, some courts have even addressed the proper

24   procedure for doing so, requiring the putative plaintiff to

25   not only seek leave of Bankruptcy Court but also to provide a

003621

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 09/02/22   Page 67 of 227   PageID 3812

67

1  draft complaint and a basis for the Court to determine if the

2  claim is colorable.

3       Movants have done neither, and they should not be

4  permitted to modify the final orders of the Court as a

5  workaround.

6       Your Honor, that concludes my presentation.  I'm happy to

7  answer any questions Your Honor may have.

8            THE COURT:  All right.  Not at this time.  All right.

9  I'm going to figure out, do we need a break or not, depending

10 on what Mr. Bridges tells me.  I assume we're just doing this

11 on argument today.  I think that's what I heard.  No witnesses

12 or exhibits.

13           MR. BRIDGES:  That is correct, Your Honor.

14           THE COURT:  Okay.  Mr. Bridges, how long do you

15 expect your rebuttal to take so I can figure out does the

16 Court need a break?

17           MR. BRIDGES:  Fifteen minutes plus whatever it takes

18 to submit agreed-to exhibits.

19           THE COURT:  Okay.  Let's take a five-minute bathroom

20 break.  We'll come back.  It's -- what time is it?  It's 1:11

21 Central time.  We'll come back in five minutes.

22           THE CLERK:  All rise.

23      (A recess ensued from 1:11 p.m. until 1:17 p.m.)

24           THE CLERK:  All rise.

25           THE COURT:  All right.  Please be seated.  We're

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 121   Filed 07/06/22   Page 68 of 227   PageID 3813

68

1    going back on the record in the Highland matters.

2         Mr. Bridges, time for your rebuttal.  I want to ask you a

3    question right off the bat.  Mr. Pomerantz pointed out

4    something that was on my list that I forgot to ask you when

5    you made your initial presentation.  What is the authority

6    you're relying on?  You did not cite a statute or a rule *per*

7    *se*, but I guess we can probably all agree that Bankruptcy Rule

8    9024 and Federal Rule 60 is the authority that would govern

9    your motion, correct?

10        MR. BRIDGES:  I don't agree, Your Honor.  I don't

11   believe this is a final order that we're contesting here.  And

12   I think that's demonstrated by the Court's final confirmation

13   -- plan -- plan confirmation order that seeks to modify this

14   order or will modify this order upon being -- being effective.

15   So I don't think so.

16        In the alternative, if we are challenging a final order,

17   then I think you're right as to the rules that would be

18   controlling.

19        THE COURT:  All right.  Well, let me back up.  Why

20   exactly do you say this would be an interlocutory order as

21   opposed to a final order?

22        MR. BRIDGES:  Because of its nature, Your Honor.

23   While the appointment in the order or the approval of the

24   appointment in the order might, as a separate component of the

25   order, have -- have finality, the provisions -- the provisions

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 21    Filed 07/06/22    Page 69 of 227    PageID 3814

69

1    in it relating to gatekeeping and exculpation are, we think,

2    by their very nature, quite obviously interlocutory and not

3    permanent.  They don't seem to indicate an intention by any of

4    the parties that, 30 years from now, if Mr. Seery is still CEO

5    at Highland, long after the bankruptcy case has ended, that

6    nonetheless parties would be prohibited from bringing claims,

7    strangers to this action would be prohibited from bringing

8    claims related to his CEO role.

9         I think the nature of it demonstrates that, the

10    modifications to it, and even the inclusion of it in the final

11    plan confirmation, as well as -- can't read that.

12              THE COURT:  Can you give me some authority?  Because

13    as we know, there's a lot of authority out there in the

14    bankruptcy universe on what discrete orders are interlocutory

15    in nature that a bankruptcy judge might routinely enter and

16    which ones are final.  You know, it would just probably, if I

17    flipped open *Collier's*, I could -- you know, it would be mind-

18    numbing.

19         So what authority can you rely on?  I mean, is there any

20    authority that says an employment order is not a final order?

21    That would be shocking to me if you have cases to that effect,

22    but, I mean, of course, sometimes we do interim on short

23    notice and then final.  But this would be shocking to me if

24    there is case authority to support the argument this is not a

25    final order.  But I learn something new every day, so maybe I

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 7/26/224 Page 70 of 227   PageID 3815

70

1    would be shocked and there is.

2             MR. BRIDGES:  Your Honor, I'd point you to *In re*

3    *Smyth*, 207 F.3d 758, and *In re Royal Manor*, 525 B.K. 338

4    [sic], for the proposition that retaining a bankruptcy

5    professional is an interlocutory order.

6             THE COURT:  Okay.  Stop for a moment.  The *Smyth*

7    case.  Which court is that?

8             MR. BRIDGES:  Fifth Circuit.

9             THE COURT:  Okay.  So tell me the facts.  I'm

10   surprised I don't know about this case.  But, again, I don't

11   know every case.  So, it held that an employment order is an

12   interlocutory order?

13            MR. BRIDGES:  Appointing counsel.  A professional in

14   the bankruptcy context, Your Honor.

15            THE COURT:  Counsel for a debtor-in-possession?  An

16   order approving counsel was an interlocutory order?

17            MR. BRIDGES:  Yes, or the Trustee's counsel.

18            THE COURT:  Or the Trustee's counsel?  Okay.  What

19   were the circumstances?  Was this on an expedited basis and

20   there wasn't a follow-up final order, or what?

21            MR. BRIDGES:  Your Honor, I don't have -- I don't

22   have that at the tip of my memory.  I'm sorry.

23            THE COURT:  Okay.  And the other one, 525 B.R. 338,

24   what court was that?

25            MR. BRIDGES:  It's a Bankruptcy Court within the

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 12/30/22   Page 71 of 227   PageID 3816
Exhibit 21   Page 73 of 224

71

 1   Sixth Circuit.  I'm not certain which district.

 2            THE COURT:  All right.  Well, maybe one of you two

 3   over there can look them up and give me the context, because

 4   that is surprising authority.  Or other lawyers on the WebEx

 5   maybe can do some quickie research.

 6      Okay.  We'll come back to that.  But assuming that this

 7   was a final order, which I have just been presuming it was,

 8   Rule 60 is the authority you're going under?  9024 and Rule

 9   60, correct?

10            MR. BRIDGES:  Your Honor, we have not invoked those

11   rules.  Alternatively, I think you're right that they would

12   control if we are wrong about the interlocutory nature of the

13   order.

14            THE COURT:  Well, you have to be going under certain

15   -- some kind of authority when you file a motion.  So I'm --

16            MR. BRIDGES:  As an alternative --

17            THE COURT:  I'm approaching this exactly, I assure

18   you, as the District Court or a Court of Appeals would.  You

19   know, you start out, what is the legal authority that is being

20   invoked here?

21            MR. BRIDGES:  Well, --

22            THE COURT:  So I just assume Rule 60.  I can't, you

23   know, come up with anything else that would be the authority.

24            MR. BRIDGES:  Yes, Your Honor.  You also have

25   inherent power to modify orders that are in violation of the

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 131   Filed 07/06/22   Page 72 of 227   PageID 3817

72

1   law.  And we pointed you to --

2            THE COURT:  Now, is that right?  Is that really

3   right?  Why do we have Rule 60 if I can just willy-nilly, oh,

4   I feel like I got that wrong two years ago?  I can't do that,

5   can I?  Rule 60 is the template for when a court can do that.

6   Parties are entitled to rely on orders of courts.  And that's

7   why we have Rule 60, right?  So, --

8            MR. BRIDGES:  Your Honor, I think -- I think that

9   we're miscommunicating.  I'm trying not to rely on Rule 60 in

10  the first instance because in the first instance we view this

11  as not a final order.  So, in the first instance, --

12           THE COURT:  I got that.  And I've got my law clerks

13  looking up your cases to see if they convince me.  But I'm

14  asking you to go to layer two.  Assuming I don't agree with

15  you these are final orders, what is your authority for the

16  relief you're seeking?

17           MR. BRIDGES:  Yes, Your Honor.  Rule 60 would apply

18  in the alternative.

19           THE COURT:  All right.

20           MR. BRIDGES:  That's correct.

21           THE COURT:  So, which provision?  Which provision of

22  Rule 60?  (b) what?

23           MR. BRIDGES:  Your Honor, I'm not prepared to concede

24  any of them.  I don't have the rule in front of me.

25           THE COURT:  You're not prepared to concede what?

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 07/06/22   Page 73 of 227   PageID 3818

73

1          MR. BRIDGES:  Any of the provisions of Rule 60.  Just

2    (b)(1), (b)(2), especially, but I'm -- I'm -- Rule 60 is our

3    basis, as is the particulars (b)(1), (2), (6) --

4         (Garbled audio.)

5          THE COURT:  Okay.  You're breaking up.  Can you

6    restate?

7          MR. BRIDGES:  (b)(1), (2), and (6), as -- as well as

8    any other provision, Your Honor, of Rule 60.

9          THE COURT:  Okay.  Well, so (1), mistake,

10   inadvertence, surprise, excusable neglect.  Which one of

11   those?

12         MR. BRIDGES:  All of the above, Your Honor.

13         THE COURT:  Surprise?  Who's surprised?

14         MR. BRIDGES:  Your Honor, I think every potential

15   litigant who discovers that your order purports to bar

16   prospective unaccrued claims at the time the order issued

17   would be surprised.

18      Frankly, I think Mr. Seery would be surprised, given his

19   testimony that he owes fiduciary duty -- duties that he must

20   abide by and that he appears to have, as I continue to

21   represent to clients, to advisees, and to the SEC, that those

22   duties are owing.

23         THE COURT:  Okay.  I'm giving you one more chance

24   here to make clear on the record what provision of Rule 60(b)

25   are you relying on, okay?  I need to know.  It's not in your

003628

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 31    Filed 07/06/2124 Page 74 of 227    PageID 3819

74

1    pleading.

2         MR. BRIDGES:  Your Honor, --

3         THE COURT:  So tell me specifically.  I can only --

4         MR. BRIDGES:  -- (b)(1) --

5         THE COURT:  -- come up with a result here if I know

6    exactly what's being presented.

7         MR. BRIDGES:  Your Honor, (b)(1), (b)(2), and (b)(6)

8    --

9         THE COURT:  Which, okay, there are multiple parts to

10    (1).  You're saying somebody's surprised by the ruling.  I

11    don't know who.  Really, all that matters is your client, the

12    Movants.  You're saying, even though they participated, --

13         MR. BRIDGES:  Yes, Your Honor.

14         THE COURT:  -- got notice, they're somehow surprised?

15    Why are they surprised?

16         MR. BRIDGES:  Yes, Your Honor.

17         THE COURT:  Do you have evidence of their surprise?

18         MR. BRIDGES:  Your Honor, our brief shows the

19    intentions of all involved were not the interpretation of that

20    order being advanced at this -- at this point in time.  And

21    so, yes, I believe that is evidence.  The transcripts of the

22    hearings I believe evidence that as well, that the

23    understanding of everyone involved was not that future --

24    unspecified future claims that had not accrued yet would be

25    released under (b)(1).  Yes, Your Honor.

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 21    Filed 07/06/22   Page 75 of 227    PageID 3820
Exhibit 21    Page 76 of 224

75

1          THE COURT:  Okay.

2          MR. BRIDGES:  Under (b)(2), --

3          THE COURT:  I don't have any evidence of that.  All I

4    have is the clear wording of the order.  Okay.  Let me just --

5    just let me go through this.

6       Assuming Rule 60 (1) through (6) are what you're arguing

7    here, what about Rule 60(c):  a motion under Rule 60(b) must

8    be made within a reasonable time?  We're now 11 months --

9          MR. BRIDGES:  Your Honor, --

10         THE COURT:  We're now 11 months past the July 2020

11   order.  What is your authority for this being a reasonable

12   time?

13         MR. BRIDGES:  Yes, Your Honor.  If I may back up one

14   step before answering your question.  Under (b)(2), we're

15   relying on newly-discovered evidence that was discovered in

16   late March and caused both the filing of this motion and the

17   filing of the District Court action.

18      Under (b)(4), we believe that the order is --

19         THE COURT:  Let me stop.  Let me stop.  What is my

20   evidence that you're putting in the record that's newly

21   discovered?

22         MR. BRIDGES:  The evidence is detailed in the

23   complaint that is in the record.  You know, --

24         THE COURT:  That's not evidence.

25         MR. BRIDGES:  -- honestly, Your Honor, --

003630

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 31    Filed 07/08/22    Page 76 of 227    PageID 3821
Exhibit 21   Page 78 of 224

76

1          THE COURT:  That is not evidence.  Okay?  A lawyer-

2    drafted complaint in another court is not evidence.  Okay?

3          MR. BRIDGES:  Your Honor, I think, to be technical,

4    that there is not a record yet, that we have evidence yet to

5    be admitted on our exhibit list.  I believe in this

6    circumstance -- I understand that, in general, allegations in

7    a pleading are not evidence.  In this instance, when we're

8    talking about whether or not new facts led to the filing of a

9    lawsuit, I do believe that the allegations in the lawsuit are

10   evidence of those new facts.

11         THE COURT:  All right.  Go on.

12         MR. BRIDGES:  Under (b)(4), we believe the order is,

13   in part, void.  It is void because of the jurisdictional and

14   other defects noted in our argument.

15      And also, under (b)(6) (garbled) ground for relief that

16   we're appealing to the equitable powers of this Court to

17   correct errors and manifest injustice towards not just the

18   litigants here but to correct the order of the Court to make

19   it comply with -- with the law, with the statutes promulgated

20   by Congress and to respect the jurisdiction of the District

21   Court.

22         THE COURT:  All right.  Do you agree with Mr.

23   Pomerantz that the case law standard for Rule 60(b)(4) is

24   exceptional circumstances?  It's only applied so that a

25   judgment is voided in exceptional circumstances.  Do you

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 09/02/24   Page 77 of 227   PageID 3822

77

1   disagree with that case authority?

2          MR. BRIDGES:  I would -- I would agree, in part, that

3   unusual circumstances is not the ordinary case.  I'm not

4   entirely sure what you mean by exceptional, but I think we're

5   on the same page.

6          THE COURT:  Okay.  It's not what I mean.  That's just

7   the case law standard.  And I'm asking, do you agree with Mr.

8   Pomerantz that that is the standard set forth in case law when

9   applying 60(b)(4)?  There have to be some sort of exceptional

10  circumstances where there's just basically no chance the Court

11  had authority to do what it did.

12         MR. BRIDGES:  Out of the ordinary would be the phrase

13  I would use, Your Honor.

14         THE COURT:  Okay.  So I guess then I'll go from

15  there.  Is it your argument that gatekeeping provisions in the

16  bankruptcy world are out of the ordinary?

17         MR. BRIDGES:  The exculpation of Mr. Seery for

18  liability falling short of gross negligence or intentional

19  wrongdoing in connection with his continuing to conduct the

20  business of the Debtor as an investment advisor subject to the

21  Advisers Act, yes, I would say that is out of the ordinary,

22  that it is extraordinary, that it is --

23         THE COURT:  Okay.  What is your authority or evidence

24  on that?  Because this Court approves exculpation provisions

25  regularly in connection with employment orders, and pretty

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 09/02/22   Page 78 of 227   PageID 3823

78

1   much every judge I know does.  In fact, I'm wondering why this

2   isn't just a term of compensation.  You know, he's going to do

3   x, y, z in the case.  His compensation is going to be a, b, c,

4   d, e.  And by the way, we're going to set a standard of

5   liability for his performance as CEO or investment banker,

6   financial advisor, whatever, so that no one can sue him

7   regarding his performance of his job duties unless it rises to

8   the level of gross negligence, willful misconduct.

9        It's a term of employment that, from my vantage point,

10   seems to be employed all the time.  So it would be anything

11   but exceptional circumstances.  Do you have authority or

12   evidence --

13           MR. BRIDGES:  Your Honor, frankly, --

14           THE COURT:  -- to the contrary?

15           MR. BRIDGES:  Your Honor, frankly, I'm astonished at

16   your view of that situation, that it would merely be a term of

17   his employment, that vitiates the entire fiduciary duty

18   standard created by the Advisers Act that tells him, with

19   hundreds of millions of dollars of assets under management for

20   people he's advising as a registered investment advisor,

21   people he's advising who believe that he has a fiduciary duty

22   to them and that it's enforceable, that the SEC, who monitors,

23   believes he has an enforceable fiduciary duty to those people,

24   and that he's testified that he has fiduciary duties to those

25   people, and that Your Honor is saying no, just as a regular

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 23-1   Filed 10/06/22   Page 79 of 227   PageID 3824

79

1    term of employment we have undone the Advisers Act's

2    imposition of an unwaivable fiduciary duty.

3         Your Honor, the order is void to the extent that it

4    attempts to do so.

5         This is not an ordinary employment agreement, Your Honor.

6    This is an attempt to exculpate someone from the key thing

7    that our entire investment system depends upon, regulation by

8    the SEC and the requirement in investment advisors to act as

9    fiduciaries when they manage the money of another.

10        It would be the equivalent of telling lawyers who are

11   appointed in a bankruptcy proceeding that they don't have any

12   duties to their client, or at least not fiduciary duties.

13   That the lawyers merely owe a duty not to be grossly negligent

14   to their clients.  That's not an ordinary term of employment,

15   Your Honor.

16            THE COURT:  All right.  So I guess we're back to my

17   question, was this brought within a reasonable time under Rule

18   60(c)?

19            MR. BRIDGES:  It was brought very quickly after the

20   new evidence was discovered at the end of March, Your Honor,

21   yes.

22            THE COURT:  Okay.  Well, I guess I'll just ask you

23   one more question before you continue on with your rebuttal

24   argument.  I mean, again, I want your best argument of why

25   *Villegas* doesn't absolutely permit the gatekeeping provisions

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 11   Filed 12/06/22   Page 80 of 227   PageID 3825

80

1  that you're challenging.  And many cases were cited by Mr.

2  Pomerantz in his brief where courts have extended the *Barton*

3  doctrine to persons other than trustees.  And so what is your

4  best rebuttal to that?

5           MR. BRIDGES:  Your Honor, we've already given it.

6  I'm afraid --

7           THE COURT:  Okay.  If you don't want to say more, --

8           MR. BRIDGES:  -- what I have is not --

9           THE COURT:  -- I'm not going to make you say more.

10          MR. BRIDGES:  I --

11          THE COURT:  I'm just telling you what's on my brain.

12          MR. BRIDGES:  I do.  I want to -- I am apologizing in

13  advance for repeating, but yes, *Villegas*, *Villegas*, however

14  that case is pronounced, says that *Stern* is not an exception

15  to the *Barton* doctrine.

16          THE COURT:  Uh-huh.

17          MR. BRIDGES:  959(a) is an exception to the *Barton*

18  doctrine.  You are not operating under the *Barton* doctrine

19  here.  Even counsel's brief, the Debtor's brief, doesn't say

20  *Barton* applies.  It says it's consistent with *Barton*.

21      Your Honor, in our previous hearing, you directed me to

22  the second sentence of 959(a) because you believe it's what

23  empowers you to do the gatekeeping.  It limits the gatekeeping

24  that you can do by protecting jury rights, the right to trial,

25  says you cannot discharge, undo, deprive a litigant of their

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 2/30/22   Page 81 of 227   PageID 3826

81

1   right to a trial, a jury trial.

2           THE COURT:  Well, you mentioned it again, jury trial

3   rights.  Do you have any argument --

4           MR. BRIDGES:  Yes, Your Honor.

5           THE COURT:  -- of why that hasn't flown out the

6   window?

7           MR. BRIDGES:  Yes, Your Honor.  I am told that

8   Section 14(f) that counsel for the Debtor referred to is not a

9   waiver of jury rights at all.  It is an arbitration agreement.

10  Your Honor is probably familiar how arbitration agreements

11  work, is that they need not be elected.  They need not be

12  invoked by the parties.  When they are, they create a

13  situation where arbitration may be required.  But a waiver of

14  a jury right outside of arbitration is not part of this

15  arbitration clause, or of any.  The issue is not briefed or in

16  evidence before the Court.  We're relying on representations

17  of counsel as to what that provision contains.  That Mr. Seery

18  wasn't even a party to that agreement, the advisory agreement,

19  with the Charitable DAF.  The arbitration agreement is subject

20  to defenses that are not at issue here before the Court.  That

21  Movants' rights, their contractual rights to invoke the

22  arbitration clause, also appear to be terminated by the

23  orders' assertion of sole jurisdiction in this matter.

24      Your Honor, yes, our jury rights survive Section 14(f) in

25  the advisory agreement with the DAF for all of those potential

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 04/06/2224   Page 82 of 227   PageID 3827

82

1  reasons.

2      On top of that, it doesn't go to all of our causes of

3  action.  It goes to the contract cause of action.  And to the

4  extent they can argue that the other claims are subject to

5  arbitration, that also is a defense and -- defensible and

6  complex issue requiring the application of the Federal

7  Arbitration Act, requiring consideration of the Federal

8  Arbitration Act, which this Court doesn't have jurisdiction to

9  do under 157(d).

10          THE COURT:  What?  Repeat that.

11          MR. BRIDGES:  Yes.  This Court does not have

12  jurisdiction to determine whether or not arbitration --

13  arbitration is enforceable due to the mandatory withdrawal of

14  the reference provisions of 157(d).

15          THE COURT:  That's just not consistent with Fifth

16  Circuit authority.  *National Gypsum*.  What are some of these

17  other arbitration cases?  I've written an article on it.  I

18  can't remember them.  That's just not right.  Bankruptcy

19  courts look at arbitration clauses all the time.  Motions to

20  compel arbitration.

21          MR. BRIDGES:  Your Honor, under 157(d), in the

22  circumstances of this case, if the Court is going to take into

23  consideration an arbitration clause under the Federal

24  Arbitration Act, when that clause is not in evidence and is

25  not before the Court, then Movants respectfully move to

003637

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 08/05/22   Page 83 of 227   PageID 3828

83

1  withdraw the reference of your consideration of that issue and

2  of any proceeding and ask that you would issue only a report

3  and recommendation rather than an order on that issue.

4        THE COURT:  Okay.  I regret that we even got off on

5  this trail.  I'm sorry.  So just proceed with your rebuttal

6  argument as you had envisioned it, Mr. Bridges.

7        MR. BRIDGES:  Thank you, Your Honor.

8     Debtor's counsel says there's no private right of action

9  under the Advisers Act.  That is both inaccurate and

10  misleading.  The Advisory Act creates, imposes fiduciary

11  duties that state law provides the cause of action for.  It is

12  a state law breach of fiduciary duty claim regarding --

13  regarding fiduciary duties imposed as a matter of law by the

14  Investment Advisers Act that is Count One in the District

15  Court action.

16     Furthermore, that Act does create a private right of

17  action for rescission.  That would be rescission of the

18  advisory agreement with the Charitable DAF, not rescission of

19  the HarbourVest settlement.

20     Second, Your Honor, the notion that this Court has related

21  to jurisdiction is irrelevant and beside the point.  I would

22  like to note for the record that the District Court civil

23  cover sheet that omitted to state that this was a related

24  action has been corrected, has been amended, and that that has

25  taken place.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 06/02/24   Page 84 of 227   PageID 3829

84

1    Counsel for the Debtor also appears to agree with us that

2    the order ought to be modified for having asserted exclusive

3    jurisdiction over colorable claims to the extent it's not

4    legally permissible to do.  And in trying to invoke the

5    discussions between us as to how the orders might be fixed,

6    what counsel does is tries to cabin the legally-permissible

7    caveat to just the second half of the paragraph at issue.  It

8    is both -- both portions, the gatekeeping and the subsequent

9    hearing of the claims, that should be limited to the extent it

10   would be impermissible legally for this Court to make those

11   decisions.

12       On top of that, Your Honor, merely stating "to the extent

13   legally permissible" would result in a considerable amount of

14   ambiguity in the order that would lead it, I fear, to be

15   unenforceable as a matter of law.

16       Next, Your Honor, when Debtor's counsel talks about the

17   authority in this case, it feels like we're ships passing in

18   the night.  He says that we're wrong in asserting that no case

19   we can find involves both the *Barton* doctrine and the

20   application of the business judgment rule where the Court is

21   asked to defer, and he mentions cases that apply the *Barton*

22   doctrine to an approval rather than an appointment.  The Court

23   is asked to --

24       (Garbled audio.)

25           THE COURT:  I lost you for a moment.  Could you

003639

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 131    Filed 07/06/22    Page 85 of 227    PageID 3830
Exhibit 21    Page 370 of 224

85

1   repeat the last 30 seconds?

2           MR. BRIDGES:  Thank you, Your Honor.  Yes.  He points

3   -- opposing counsel points us to case law where the *Barton*

4   doctrine has been applied despite the Bankruptcy Court having

5   merely approved rather than appointed the trustee or the, I'm

6   sorry, the professional.  But in doing so, he doesn't

7   reference any case that has done so in the context of business

8   judgment rule deference.  It's like we're ships passing in the

9   night.

10      What we're saying isn't that a mere approval can never

11  rise to the level of the *Barton* doctrine.  What we're saying

12  is that, in combination with the business judgment rule

13  deference, the two cannot go together.  There's no authority

14  for saying that they do.

15      We -- I further feel like we're ships passing in the night

16  when he talks about *Shoaf*.  Counsel says that in *Shoaf* there

17  was a confirmed final plan and it specifically identified the

18  released guaranty.  And yeah, that distinguishes it from this

19  case, just as it distinguished -- just as the *Applewood Chair*

20  case distinguished it when there's not that specific

21  identification.  And here, we don't even have a final plan

22  confirmation at the time these orders are being issued.

23  Without that express -- express notion of what the claims are

24  being discharged, *Shoaf* doesn't apply.

25      There, there was a guaranty to a party on a specific

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 21    Filed 03/06/22    Page 86 of 227    PageID 3831
Exhibit 21    Page 86 of 224

86

1    indebtedness that was listed, identified with specificity, and

2    disappeared as a result of the judgment, as a result of the

3    judgment in the underlying case.  Here, we're talking about

4    any potential claim that might arise in the future.  As of the

5    July order's issuance, it didn't apply on its -- either it

6    didn't apply to future claims that had not yet accrued or else

7    in violation of *Applewood Chair*, it was releasing claims

8    without identifying them.

9        Who does Seery owe a fiduciary duty to?  Is it, as

10   Debtor's counsel says, only to the funds and not to the

11   investors, or does he also owe those duties to the investors

12   as well?  Your Honor, that is going to be a hotly-contested

13   issue in this litigation, and it involves -- it requires

14   consideration of the Advisers Act and the multitude of

15   accompanying regulations.  To just state that his fiduciary

16   duties are limited in a way that couldn't affect anyone that

17   is -- whose claims are precluded by the July order is both

18   wrong on the law and is invoking something that will be a

19   hotly-contested issue that falls under 157(d), where, again,

20   this Court doesn't have the jurisdiction to decide that, other

21   than in a report and recommendation.

22       The order is legally infirm because it's issued without

23   jurisdiction for doing that as well.

24       Finally, Your Honor, I think (garbled) wrong direction

25   with a statement that suggests that Mr. Seery is an agent of

003641

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 10/01/22   Page 87 of 227   PageID 3832

87

1    the independent directors under the January order.  He is, in

2    fact, not an independent agent -- not an agent of any of the

3    independent directors, but, at most, of the company that is

4    controlled by the board, not -- not of individual directors

5    who could confer on him -- who could confer on him any

6    immunity that they have obtained from the January order just

7    by having appointed him.

8        The proposed order from the other side failed to address

9    either the ambiguity in the order or its attempt to exculpate

10   Mr. Seery from the liability, including liability for which

11   there is a jury trial right, and it is not a fix to the

12   problem for that reason.

13       In order to make the order enforceable and to fix its

14   infirmities, the Court would have to do significantly more.

15   It would have to both apply the caveat from the final

16   confirmation plan order, rope that caveat to the first part of

17   the relevant paragraph, as well as the second part, and it

18   would have to provide directive clarity to be enforceable

19   rather than too vague.

20       Your Honor, I think that's all I have.

21           THE COURT:  Okay.  Just FYI, my law clerk pulled the

22   *Smyth* case from 21 years ago from the Fifth Circuit.  And

23   while it more prominently deals with the issue of whether

24   trustees -- in this case, it was a Chapter 11 trustee -- could

25   be subjected to personal liability for damages to the

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 21    Filed 09/06/22    Page 88 of 227    PageID 3833

88

1    bankruptcy estate --

2         (Echoing.)

3            THE COURT:  Someone, put your phone on mute.  I don't

4    know who that is.

5        It dealt with, you know, the standard of liability, that

6    the trustee could not be sued for matters not to the level of

7    gross negligence.

8        But it does say, in the very last paragraph, to my shock

9    and amazement, that -- it's just one sentence in a 10-page

10   opinion -- orders appointing counsel -- and it was talking

11   about the trustee's lawyer he hired to handle appeals to the

12   Fifth Circuit -- orders appointing counsel under the

13   Bankruptcy Code are interlocutory and are not generally

14   considered final and appealable.  And it cites one case from

15   1993, the Middle District of Florida.  Live and learn.  There

16   is one sentence in that opinion that says that.  But I don't

17   know that it's hugely impactful here, but I did not know about

18   that opinion and I'm rather surprised.

19       All right.  You were going to walk me through evidence,

20   you said?

21           MR. BRIDGES:  Well, do I -- Your Honor, do you want

22   to do that first before I submit --

23           THE COURT:  Yes, please.

24           MR. BRIDGES:  -- my rebuttal argument?

25           THE COURT:  Please.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 09/06/22   Page 89 of 227   PageID 3834

89

```
1              MR. BRIDGES:  Okay.

2              THE COURT:  Uh-huh.

3              MR. BRIDGES:  Your Honor, we would submit and offer

4    Exhibits 1 through 44, with the exception of those that have

5    been withdrawn, that are 2, 13 --

6              THE COURT:  Okay.  Slow down.  Slow down.  I need to

7    get to the docket entry number we're talking about.  Are we

8    talking -- are your -- the Debtor's exhibits are at 2412.  But

9    Nate, I misplaced my notes.  Where are Charitable DAF and

10   Holdco's?

11             THE CLERK:  I have 2411.

12             THE COURT:  2411?  Is that it?

13             MR. BRIDGES:  2420, Your Honor.

14             THE COURT:  2420?  Okay.  Give me a minute.  (Pause.)

15   2420?

16             MR. BRIDGES:  Yes, Your Honor.

17             THE COURT:  Okay, I'm there.  And it's which

18   exhibits?

19             MR. BRIDGES:  It's Exhibits 1 through 44, Your

20   Honor, with four exceptions.  We have agreed to withdraw

21   Exhibit 2, 13, 14, and 29.

22             THE COURT:  All right.

23             MR. BRIDGES:  Also, Your Honor, we'd like to submit

24   Debtor's Exhibit 1, which is under Exhibit 49 on our list,

25   would be anything offered by the other side.  But we'd like
```

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 09/06/22   Page 90 of 227   PageID 3835

90

 1   to make sure that Debtor's Exhibit 1 gets in the record as

 2   well.

 3          THE COURT:  Let me back up.  When I pull up the

 4   docket entry you just told me, I have Exhibits 44, 45, and 46

 5   only.  Am I misreading this?

 6          MR. BRIDGES:  I have a chart showing Exhibits 1

 7   through 49 titled Docket 2420 filed 6/7/21.

 8          THE COURT:  Okay.  The docket entry number you told

 9   me, 2420, it only has three exhibits:  44, 45, and 46.  So,

10   first off, I understand -- are you offering 45 and 46 or not?

11          MR. BRIDGES:  No, Your Honor.

12          THE COURT:  Okay.  So you said you were offering 1

13   through 44 minus certain ones.  44 is here.

14          MR. BRIDGES:  Yes.

15          THE COURT:  But I've got to go back to a different

16   docket number.

17          THE CLERK:  It's actually 2411.

18          THE COURT:  It's at 2411.  That has all the others?

19          THE CLERK:  Yes.

20          THE COURT:  Okay.

21      So, Mr. Pomerantz, do you have any objection to Exhibits

22   1 through 44, which he's excepted out 2, 13, 14, and 29, and

23   then he's added Debtor's Exhibit 1?  Any objection?

24          MR. POMERANTZ:  I don't believe so.  I just would

25   confirm with John Morris, who has been focused on the

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 09/30/22   Page 91 of 227   PageID 3836
Exhibit 21   Page 93 of 224

91

1  exhibits, just to confirm.

2          THE COURT:  Mr. Morris?

3          MR. MORRIS:  No objection, Your Honor.  It's fine.

4          THE COURT:  Okay.  They're admitted.

5       (Movants' Exhibits 1, 3 through 12, 15 through 28, and 30

6  through 44 are received into evidence.  Debtor's Exhibit 1 is

7  received into evidence.)

8          THE COURT:  So, any --

9          MR. BRIDGES:  Thank you, Your Honor.

10          THE COURT:  Anything you wanted to call to my

11  attention about these?

12          MR. BRIDGES:  Your Honor, the things that we

13  mentioned in the argument, for sure, but especially that the

14  word "trustee" is not used in the January hearing's

15  transcript, nor is it under discussion in that transcript

16  that it would be a trustee-like role being played by the

17  Strand directors, as well as the transcript of the July

18  hearing on the order at issue here, Your Honor, where you are

19  asked to defer both in that transcript and in the motion, the

20  motion that was at issue in that hearing, you are asked to

21  defer to the business judgment of the company.

22       And finally, Your Honor, I'd ask you to look at the

23  allegations in the District Court complaint.

24          THE COURT:  All right.

25       Mr. Pomerantz or Morris, let's see what exhibits you're

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 04/06/22   Page 92 of 227   PageID 3837

Exhibit 21   Page 94 of 224

92

1    wanting the Court to consider.  Your exhibits, it looks like,

2    are at Docket Entry 2412.

3              MR. MORRIS:  As subsequently amended at 2423.

4              THE COURT:  Oh.  All right.  So which ones are you

5    offering?

6              MR. MORRIS:  We're offering all of the exhibits on

7    2423, which is 1 through 17.

8         (Echoing.)

9              THE COURT:  Whoops.  We got some distortion there.

10   Say again?

11             MR. MORRIS:  Yeah.  All of the exhibits that are on

12   2423, which are Exhibits 1 through 17.  But I want to make

13   sure that, as I did earlier, that that has the exhibits that

14   we're relying on.  Does that --

15        (Pause.)

16             THE COURT:  Okay.  Let me make sure I know what's

17   going on here.  You're double-checking your exhibits, Mr.

18   Morris?

19             MR. MORRIS:  Yes, Your Honor.

20             THE COURT:  Okay.

21        (Pause.)

22             MR. MORRIS:  Your Honor, we start with Docket No.

23   2419, --

24             THE COURT:  Okay.

25             MR. MORRIS:  -- which was the amended exhibit list.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 11   Filed 09/26/22   Page 93 of 227   PageID 3838

93

1    And that actually had Exhibits 1 through 17.  And then that

2    was amended at Docket 2423.  So, the exhibits on both of

3    those lists.

4            THE COURT:  Well, they're one and the same, it looks

5    like, right?

6            MR. MORRIS:  Yes.

7            THE COURT:  Okay.  So you're offering those?

8            MR. MORRIS:  I think -- yeah.

9            THE COURT:  Any objection?

10           MR. BRIDGES:  No objection.

11           THE COURT:  All right.  They're admitted.

12        (Debtor's Exhibits 1 through 17 are received into

13    evidence.)

14           MR. POMERANTZ:  Your Honor, if I may take a few

15    moments to respond to Mr. Bridges' reply?

16           THE COURT:  All right.   Is he still within his hour

17    and a half?

18           THE CLERK:  At an hour and one minute.

19           THE COURT:  Okay.  All right.  You have a little

20    time left, so go ahead.

21           MR. POMERANTZ:  Thank you, Your Honor.

22        So look, I -- it sort of was really not fair to us.  Mr.

23    Bridges was really making things up on the fly.  He was

24    changing the theories of his case and responding to Your

25    Honor.  But I'm going to do my best to respond to the

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 09/07/22   Page 94 of 227   PageID 3839

94

1    arguments made, many of which I sort of anticipated.

2        I'll first start with the issue that Your Honor raised,

3    which was whether this is under Rule 60 or not.  Mr. Bridges

4    identified a couple of cases, said that the order was

5    interlocutory, said that somehow the orders have anything to

6    do with a plan confirmation order.  They do not.  Your Honor

7    didn't hear that argument at the plan confirmation.  The

8    January 9th and July 16th orders are old and cold.  There's

9    an exculpation provision in the plan.  There's a gatekeeper

10   in the plan.  The provisions do not overlap entirely.  The

11   gatekeeper applies prospectively.  The exculpation provision

12   includes additional parties.

13       So the arguments that basically the plan had anything to

14   do -- and the fact that the plan is not a final order -- has

15   anything to do with the January 9th and July 16th orders is

16   just wrong.  It's just wrong.

17       More fundamentally, Your Honor, as Your Honor pointed

18   out, the *Smyth* case is a professional employment order.  And

19   ironically, if you abide by the *Smyth* case, that order is

20   never appealable because it's interlocutory.

21       But more fundamentally, Your Honor, that's dealing with

22   327 professionals.  And again, there's not much analysis in

23   the *Smyth* case, but we're not dealing with a 327

24   professional.  We're dealing with orders that were approved

25   under 363.

003649

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 21    Filed 09/06/22    Page 95 of 227    PageID 3840

95

1     So the premise of the argument that Rule 60(b) -- 60

2  doesn't apply and they have other arguments just doesn't make

3  any sense.

4     Okay.  So now that gets us to Rule 60.  And Your Honor,

5  Your Honor hit the nail on the head.  They haven't presented

6  any evidence.  Allegations in a complaint aren't evidence.

7  They can't stand up there and say surprise evidence.  They

8  had the opportunity -- and this hearing's been continued a

9  few weeks -- they had the opportunity to bring it up, and

10  it's -- they had the opportunity to claim that there was

11  surprise, but they just didn't.  Okay?

12     So to go on to the Rule 60 arguments.  Surprise.

13  Surprise and reasonable delay are really -- go hand in hand

14  with Mr. Bridges' argument.  He says, well, we didn't find

15  out that -- months after the order was entered that he

16  violated a duty to us, so we are surprised by that, and it's

17  a reasonable time.  Well, Your Honor, the order provided for

18  an exculpation.  CLO Holdco and DAF knew that it applied to

19  an exculpation.  They were bound.  They knew based upon that

20  order that they would not be able to bring claims for normal

21  negligence.  There is no surprise.

22     If you take Mr. Bridges' argument to its conclusion, he

23  could wait until the end of the statute of limitations after

24  an order and have come in four years from now and say, Your

25  Honor, we just found out facts so we should go back four

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 09/06/22   Page 96 of 227   PageID 3841
Exhibit 21   Page 28 of 124

96

1  years before.  That, Your Honor, that's not how the surprise

2  works.  That's not how the reasonable time works.

3     Mr. Bridges did not contest that they're bound by res

4  judicata.  He did not contest that the exculpation itself was

5  clear and unambiguous.  Of course he argued Your Honor

6  couldn't enter an order saying there was exculpation, again,

7  with no authority.  And he seemed surprised, as I suspect he

8  should, since he's not a bankruptcy lawyer, that retention

9  orders, whether it's investment bankers, financial advisors,

10 include exculpations all the time.  So there's no grounds

11 under surprise.

12     There's no grounds -- the motions are late under 60(c).

13     And they're not void.  I went through a painstaking

14 analysis, Your Honor, and I described in detail what the

15 *Espinosa* case held, and the exceptional circumstances which

16 Mr. Bridges tried to get away from as much as he could.

17 Maybe he can try to get away from language in a district

18 Court opinion, in a Bankruptcy Court opinion, in a Circuit

19 Court opinion.  You can't get away from language in a Supreme

20 Court opinion.  The Supreme Court opinion said exceptional

21 circumstances, where there was arguably no basis for

22 jurisdiction for what the Court did.  They have not even come

23 close to convincing Your Honor that there was absolutely no

24 basis.

25     Now, they disagree.  We granted, we think it's a good-

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 09/02/22   Page 97 of 227   PageID 3842

97

1  faith disagreement, but they haven't come close to

2  establishing the *Espinosa* standard, so their motion under 60

3  does not -- it fails.

4      And I don't think -- look, these are good lawyers.  Mr.

5  Bridges and Mr. Sbaiti are good lawyers.  They didn't just

6  inadvertently not mention Rule 60.  They never mentioned it

7  because they knew they had no claim under Rule 60.

8      Your Honor, Mr. Bridges has made comments about the

9  fiduciary duty of Mr. Seery, about what the Investor's Act

10 provides.  He's just wrong on the law.  Now, Your Honor

11 doesn't have to decide that.  Whichever court adjudicates the

12 DAF lawsuit will have to decide it.  But there is no private

13 cause of action for damages.  There are no fiduciary duties to

14 the investors.

15     And what Mr. Bridges doesn't even mention, in that the

16 investment agreement that's so prominent in his complaint,

17 they waived claims other than willful misconduct and gross

18 negligence against Highland.  They waived those claims.  So

19 for Mr. Bridges to come in here and argue that there's some

20 surprise, when he hasn't even bothered to look at the document

21 that's underlying the contractual relationship between the DAF

22 and the Debtor, is -- you know, I'll just say it's

23 inadvertence.

24     Your Honor, Mr. Bridges tried to argue that Mr. Seery is

25 not a beneficiary of the January 9th order.  He's not an

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 8-21   Filed 12/06/22   Page 98 of 227   PageID 3843

98

1     agent.  Well, again, Your Honor, Mr. Bridges wasn't there.

2     Your Honor and we were.  On January 9th, an independent board

3     was picked, and at the time Mr. Dondero ceased to become the

4     CEO.  So you have three gentlemen coming in -- Mr. Seery, Mr.

5     Dubel, and Mr. Nelms -- coming in to run Highland, in a very

6     chaotic time.  They had to act through their agents.  There

7     was no expectation that this board was going to actually run

8     the day-to-day operations of the Debtor.  Of course not.  They

9     needed someone to run.  And they picked Mr. Seery.  And the

10    argument that well, he's an agent of the company, he's not an

11    agent of the board, that just doesn't make sense.  The

12    independent board had to act.  The directors had to act.  And

13    the directors, how do they deal with that?  They acted through

14    Mr. Seery.  So he is most certainly governed by the January

15    9th order.

16         Your Honor, I want to talk about the jury trial right.

17    Mr. Bridges said that Paragraph 14 is an arbitration clause

18    and not a jury trial waiver.  Now, again, I will forgive Mr.

19    Bridges because I assume he didn't read the provision, okay,

20    and he -- somebody told him that, and that person just got it

21    wrong.  But what I would like to do is read for Your Honor

22    Paragraph 14(f).  It doesn't have to do with arbitration.

23    It's a waiver of jury trial.  14(f), Jurisdiction Venue,

24    Waiver of Jury Trial.  The parties hereby agree that any

25    action, claim, litigation, or proceeding of any kind

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 18    Filed 12/16/24    Page 99 of 227    PageID 3844

99

1   whatsoever against any other party in any way arising from or

2   relating to this agreement and all contemplated transactions,

3   including claims sounding in contract, equity, tort, fraud,

4   statute defined as a dispute shall be submitted exclusively to

5   the U.S. District Court for the Northern District of Texas, or

6   if such court does not have subject matter jurisdiction, the

7   courts of the State of Texas, City of Dallas County, and any

8   appellate court thereof, defined as the enforcement court.

9   Each party ethically and unconditionally submits to the

10  exclusive personal and subject matter jurisdiction of the

11  enforcement court for any dispute and agrees to bring any

12  dispute only in the enforcement court.  Each party further

13  agrees it shall not commence any dispute in any forum,

14  including administrative, arbitration, or litigation, other

15  than the enforcement court.  Each party agrees that a final

16  judgment in any such action, litigation, or proceeding is

17  conclusive and may be enforced through other jurisdictions by

18  suit on the judgment or in any manner provided by law.

19      And then the kick, Your Honor, all caps, as jury trial

20  waiver always are:  Each party irrevocably and unconditionally

21  waives to the fullest extent permitted by law any right it may

22  have to a trial by jury in any legal action, proceeding, cause

23  of action, or counterclaim arising out of or relating to this

24  agreement, including any exhibits, schedules, and appendices

25  attached to this agreement or the transactions contemplated

003654

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 11/03/22   Page 100 of 227   PageID 3845

100

1   hereby.  Each party certifies and acknowledges that no

2   representative of the owner of the other party has represented

3   expressly or otherwise that the other party won't seek to

4   enforce the foregoing waiver in the event of a legal action.

5   It has considered the implications of this waiver, it makes

6   this waiver knowingly and voluntarily, and it has been induced

7   to enter into this agreement by, among other things, the

8   mutual waivers and certifications in this section.

9        Your Honor, I will forgive Mr. Bridges.  I assume he just

10  did not read that.  But to represent to the Court that that

11  language does not contain a jury trial waiver is -- is just

12  wrong.

13            THE COURT:  All right.  I'm going to stop right

14  there.  And you were reading from the Second Amended and

15  Restated Shared Services Agreement between Highland --

16            MR. POMERANTZ:  Not shared services.  I'm reading

17  from the Second Amended and Restated Investment Advisory

18  Agreement --

19            THE COURT:  Investment --

20            MR. POMERANTZ:  -- between the Charitable DAF, the

21  Charitable DAF GP, and Highland Capital Management.  The

22  agreement whereby the Debtor was the investment advisor to the

23  Charitable DAF Fund and the Charitable DAF GP.

24            THE COURT:  All right.  Well, Mr. Bridges, I'm going

25  to bounce quickly back to you.  This is your chance to defend

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 1-31   Filed 10/06/22   Page 101 of 227   PageID 3846

101

 1 | your honor.

 2 | MR. BRIDGES:  Yeah, we're -- we're looking at a

 3 | different agreement, where -- where literally the words that

 4 | were read to you are not in the agreement in front of us and

 5 | it is news to me.  So, Your Honor, this is a problem --

 6 | THE COURT:  What is the agreement you're looking at?

 7 | MR. BRIDGES:  It is the Amended -- I assume that

 8 | means First Amended -- Restated Advisory Agreement.

 9 | MR. POMERANTZ:  Your Honor, we are happy to file this

10 | agreement with the Court so the Court has the benefit of it in

11 | connection with Your Honor's ruling.

12 | THE COURT:  Okay.  I would like you to do that.  Uh-

13 | huh.

14 | MR. BRIDGES:  I'd like -- I'd like to request -- I'll

15 | withdraw that.

16 | THE COURT:  Okay.  Go on, Mr. Pomerantz.

17 | MR. POMERANTZ:  Mr. Bridges, if you could put us on

18 | mute.  If you could put us on mute, Mr. Bridges, so I don't

19 | hear your feedback.  Thank you.

20 | Mr. Bridges also complains about the language "to the

21 | extent permissible by law."  As Your Honor knows and as has

22 | been my practice over 30 years, that language is probably in

23 | every plan where there's a retention of jurisdiction:  to the

24 | extent permissible by law.  And Mr. Bridges says that this

25 | will create ambiguity in the order that couldn't be enforced.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 04/04/24   Page 102 of 227   PageID 3847

102

1    There's no basis for that.  Our including the language "to the

2    extent permissible by law" in the orders, as we are prepared

3    to do, is consistent with the plan confirmation order where we

4    addressed that issue.  And we addressed that issue because we

5    didn't want to put Your Honor in a position where thereby Your

6    Honor may have an action before Your Honor that passes the

7    colorability gate that Your Honor may not be able to assert

8    jurisdiction.  And since jurisdiction can't be waived in that

9    regard, we will agree to amend that.

10        There's nothing ambiguous about that, and there's no

11   reason, though, that clause has to modify the Court's ability

12   to act as a gatekeeper, because, as we've argued *ad nauseam*,

13   gatekeeper provisions where the Court has that ability is not

14   only part of general bankruptcy jurisprudence but also part of

15   the Bankruptcy Code.

16        Counsel says that *Barton* doesn't apply because the

17   business judgment of Your Honor was used in retaining Mr.

18   Seery as opposed to in some other capacity.  There's no basis

19   for that, Your Honor.  A court-appointed -- a court-approved

20   CEO, CRO, professional, they are all entitled to protection

21   under the *Barton* act.  And the argument -- and again, this is

22   separate and apart from whether he's entitled to protection

23   under the January 9th order. But the argument that because it

24   was the business judgment -- again, business judgment in doing

25   something that Your Honor expressly contemplated under the

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 05/02/24   Page 103 of 227   PageID 3848

103

1    January 9th corporate governance order -- there's just no law

2    to support that.  And I guess he's trying to get around the

3    plethora of cases that deal with the situation where *Barton*

4    has been extended.

5         Your Honor, Mr. Bridges, again, in arguing that we're

6    ships passing in the night on *Shoaf* and *Applewood* and

7    *Espinosa*, no, we're not ships passing in the night.  We have a

8    difference in agreement on what these cases stand for.  These

9    cases stand for the proposition that a clear and unambiguous

10   provision, plain and simple, if it's clear and unambiguous, it

11   will be given res judicata effect.  The release in *Shoaf*,

12   clear and unambiguous.  The release in *Applewood*, not.  The

13   issue here is the exculpation language.  That was clear and

14   unambiguous.  It applied prospectively.  The argument makes no

15   sense that we didn't identify -- we didn't identify claims

16   that might arise in the future, so therefore an exculpation

17   clause doesn't apply?  That doesn't make any sense.

18        Your Honor clearly exculpated parties.  Mr. Dondero knew

19   it.  CLO Holdco knew it.  The DAF knew it.  So the issue Your

20   Honor has to decide is whether that exculpation was a clear

21   and unambiguous provision such that it should be entitled to

22   res judicata effect.  And we submit that the answer is

23   unequivocally yes.

24        That's all I have, Your Honor.

25             THE COURT:  All right.  Well, --

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 11/06/02124   Page 104 of 227   PageID 3849

104

1        MR. MORRIS:  Your Honor?  I apologize.

2        THE COURT:  Okay.

3        MR. MORRIS:  This is John Morris.

4        THE COURT:  Yes?

5        MR. MORRIS:  I just want to, with respect to the

6   exhibits, I know there was no objection, but I had cited to

7   Docket Nos. 2419 and 2423.  The original exhibit list is at

8   Docket No. 2412.  So it's the three of those lists together.

9   2412, as amended by 2419, as amended by 2423.  Thank you very

10  much.

11       THE COURT: All right.  Thank you.  All right.

12       MR. BRIDGES:  Your Honor, I still have no objection

13  to that, but may I have the last word on my motion?

14       THE COURT:  Is there time left?

15       THE CLERK:  Yes.

16       THE COURT:  Okay.  Go ahead.

17       MR. BRIDGES:  I just need a minute, Your Honor.  They

18  agreed to change the order.  They proposed it to us.  They

19  proposed it in a proposed order to you.  They can't also say

20  that it cannot be changed.

21       Secondly, Your Honor, in *Milic v. McCarthy*, 469 F.Supp.3d

22  580, the Eastern District of Virginia points out that the

23  Fourth Circuit treats appointment of estate professionals as

24  interlocutory orders as well.

25       That's all.  Thank you, Your Honor.

003659

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 131   Filed 11/07/22   Page 105 of 227   PageID 3850

105

1          THE COURT:  All right.  Here's what we're going to

2     do.  We've been going a very long time.  I'm going to take a

3     break to look through these exhibits, see if there's anything

4     in there that I haven't looked at before and that might affect

5     the decision here.  So we will come back at 3:00 o'clock

6     Central Time -- it's 2:22 right now -- and I will give you my

7     bench ruling on this.  All right.

8          So, Mike, they can all stay on the line, right?

9          Okay.  You can stay on, and we'll be back at 3:00 o'clock.

10          THE CLERK:  All rise.

11     (A recess ensued from 2:22 p.m. to 3:04 p.m.)

12          THE CLERK:  All rise.

13          THE COURT:  All right.  Please be seated.  All right.

14     Everyone presented and accounted for.  We're going back on the

15     record.

16          MR. POMERANTZ:  Your Honor, before you start, this is

17     Jeff Pomerantz.  We had sent to your clerk, and hopefully it

18     got to you, a copy of the Second Amended and Restated

19     Investment Advisory Agreement.  We also copied Mr. Sbaiti with

20     it as well.  And we would also like to move that into

21     evidence, just so that it's part of the Court's record.

22          THE COURT:  All right.

23          MR. BRIDGES:  We would object to that, Your Honor.

24     We haven't had an opportunity to even verify its authenticity

25     yet.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 11/08/22   Page 106 of 227   PageID 3851

106

1          THE COURT:  All right.  Well, I'll tell you what.

2     I'm going to address this in my ruling.  So it's not going to

3     be part of the record for this decision, and yet -- well, I'll

4     get to it.

5          All right.  So we're back on the record in Case Number 19-

6     34054, Highland Capital.  The Court has deliberated, after

7     hearing a lot of argument and allowing in a lot of documentary

8     evidence, and the Court concludes that the motion of CLO

9     Holdco, Ltd. and The Charitable DAF to modify the retention

10    order of James Seery, which was entered almost a year ago, on

11    July 16th, 2020, should be denied.

12         This is the Court's oral bench ruling, but the Court

13    reserves discretion to supplement or amend in a more fulsome

14    written order what I'm going to announce right now, pursuant

15    to Rule 7052.

16         First, what is the Movants' authority to request the

17    modification of a bankruptcy court order that has been in

18    place for so many months, which was issued after reasonable

19    notice to the Movants, and after a hearing, which was not

20    objected to by the Movants, or appealed, when the Movants were

21    represented by sophisticated counsel, I might add, and which

22    order was relied upon by parties in this case, most notably

23    Mr. Seery and the Debtor, and in fact was entered after

24    significant negotiations involving a sophisticated court-

25    appointed Unsecured Creditors' Committee with sophisticated

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 11/09/22   Page 107 of 227   PageID 3852

107

1   professionals and sophisticated members, and after negotiation

2   with an independent board of directors, court-appointed, one

3   of whose members is a retired bankruptcy judge?  What is the

4   Movants' authority?

5       Movants fumbled a little on that question, in that the

6   exact authority wasn't set forth in the motion.  But Movants'

7   primary argument is that Movants think the Seery retention

8   order was an interlocutory order and that the Court simply has

9   the inherent authority to modify it as an interlocutory order.

10      The Court disagrees with this analysis.  I do not think

11  the Fifth Circuit's *Smyth* case dictates that the Seery

12  retention order is still interlocutory.  The Seery retention

13  order was an order entered pursuant to Section 363 of the

14  Bankruptcy Code, not a Section 327 professionals to a debtor-

15  in-possession, professionals to a trustee employment order

16  such as the one involved in the *Smyth* case.

17      But even if the Seery retention order is interlocutory --

18  the Court feels strongly that it's not, but even if it is --

19  the Court believes it would be an abuse of this Court's

20  inherent discretion or authority to modify that order almost a

21  year after the fact and under the circumstances of this case.

22      Now, assuming Rule 60(b) applies to the Movants' request,

23  the Court determines that the Movants have not made their

24  motion anywhere close to within a reasonable time, as Rule

25  60(c) requires, nor do I think the Movants have demonstrated

003662

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 131   Filed 11/06/0124   Page 108 of 227   PageID 3853

108

1   any exceptional circumstances to declare the order or any of

2   its provisions void.  The Movants have put on no evidence that

3   constitutes surprise or constitutes newly-disputed evidence.

4   So why are there no exceptional circumstances here such that

5   the Court might find, you know, a void order or void

6   provisions of an order?

7        First, this Court concludes that there's no credible

8   argument that the Court overreached its jurisdiction with the

9   gatekeeping provisions in the order.  Gatekeeping provisions

10  are not only very common in the bankruptcy world -- in

11  retention orders and in plan confirmation orders, for example

12  -- but they are wholly consistent with the *Barton* case, the

13  U.S. Supreme Court's *Barton's* case, and its progeny that has

14  become known collectively as the *Barton* doctrine.  Gatekeeping

15  provisions are wholly consistent with 28 U.S.C. Section

16  959(a)'s complete language.

17       The Fifth Circuit has blessed gatekeeping provisions in

18  all sorts of contexts.  It has blessed them in the situation

19  of when *Stern* claims are involved in the *Villegas* case.  It

20  even blessed Bankruptcy Courts' gatekeeping functions a long

21  time ago, in 1988, in a case that I don't think anyone

22  mentioned in the briefing, but as I've said, my brain

23  sometimes goes down trails, and I'm thinking of the *Louisiana*

24  *World Exposition* case in 1988, when the Fifth Circuit blessed

25  there a procedure where an unsecured creditors' committee can

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 12/06/2124   Page 109 of 227   PageID 3854

109

1   bring causes of action against persons, such as officers and

2   directors or other third parties, if they first come to the

3   Bankruptcy Court and show a colorable claim.  They have to

4   come to the Bankruptcy Court, show they have a colorable claim

5   and they're the ones that should be able to pursue them.  Not

6   exactly on point, but it's just one of many cases that one

7   could cite that certainly approve gatekeeper functions of

8   various sorts of Bankruptcy Courts.

9       It doesn't matter which court might ultimately adjudicate

10   the claims; the Bankruptcy Court can be the gatekeeper.

11       And the Court agrees with the many cases cited from

12   outside this circuit, such as the case in Alabama, in the

13   Eleventh Circuit, and there was another circuit-level case, at

14   least one other, that have held that the *Barton* doctrine

15   should be extended to other types of case fiduciaries, such as

16   debtor-in-possession management, among others.

17       Finally, as I pointed out in my confirmation ruling in

18   this case, gatekeeping provisions are commonplace for all

19   types of courts, not just Bankruptcy Courts, when vexatious

20   litigants are involved.  I have commented before that we seem

21   to have vexatious litigation behavior with regard to Mr.

22   Dondero and his many controlled entities.

23       Now, as far as the Movants' argument that there was not

24   just improper gatekeeping provisions but actually an improper

25   discharge in the Seery retention order of negligence claims or

003664

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 11/03/22   Page 110 of 227   PageID 3855

110

1    other claims that don't rise to the level of gross negligence

2    or willful misconduct, again, I reiterate there's nothing

3    exceptional in the bankruptcy world about exculpation

4    provisions like this.  They absolutely are a term of

5    employment very often.  Just like compensation, they're

6    frequently requested, negotiated, and approved.  They are

7    normal in the corporate governance world, generally.  They are

8    normal in corporate contracts between sophisticated parties.

9    And most importantly of all, even if this Court overreached

10   with the exculpation provisions in the Seery retention order,

11   even if it did, res judicata bars the attack of these

12   provisions at this late stage, under cases such as *Shoaf,*

13   *Republic Supply v. Shoaf* from the Fifth Circuit, the *Espinosa*

14   case from the U.S. Supreme Court, and even *Applewood*, since

15   the Court finds the language in this order was clear,

16   specific, and unambiguous with regard to the gatekeeping

17   provisions and the exculpation provisions.

18       Last, and this is the part where I said I'm going to get

19   to this agreement that has been submitted, the Second Amended

20   and Restated Investment Advisor Agreement or whatever the

21   title is.  I am more than a little disturbed that so much of

22   the theme of the Movants' pleadings and arguments, and I think

23   even representations to the District Court, have been they

24   have these sacred jury trial rights, these inviolate jury

25   trial rights, and an Article I Court like this Court should

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S   Document 1-21   Filed 11/08/22   Page 111 of 227   PageID 3856

111

1  have no business through a gatekeeping provision impinging on

2  the possible pursuit of an action where there's a jury trial

3  right.

4       I was surprised initially when I thought about this.  I

5  thought, wow, I've seen so many agreements over the months.  I

6  can't say every one of them waived the jury trial right, but I

7  just remembered seeing that a lot, and seeing arbitration

8  provisions, and so that's why I asked.  It just was lingering

9  in my brain.  So I'm going to look at what is submitted.  I'm

10  not relying on that as part of my ruling.  As you just heard,

11  I had a multi-part ruling, and whether there's a jury trial

12  right or not is irrelevant to how I'm choosing to rule on this

13  motion.  But I do want to see the agreement, and then I want

14  Movants within 10 days to respond with a post-hearing trial

15  brief either saying you agree that this is the controlling

16  document or you don't agree and explain the oversight, okay?

17  Because it feels like a gross omission here to have such a

18  strong theme in your argument -- we have a jury trial right,

19  we have a jury trial right, by God, the gatekeeping

20  provisions, among other things, impinge on our sacred pursuit

21  of our jury trial right -- and then maybe it was very

22  conspicuous in the controlling agreement that you'd waived

23  that, the Movants had waived that.

24       So, anyway, I'm requiring some post-hearing briefing, if

25  you will, on whether omissions, misrepresentations were made

003666

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 11/04/24   Page 112 of 227   PageID 3857

112

1   to the Court.

2        Anyway, so I reserve the right to supplement or amend this

3   ruling with a more fulsome written order.  I am asking Mr.

4   Pomerantz to upload a form of order that is consistent with

5   this ruling, and --

6             MR. POMERANTZ:  Your Honor, we will do so.  I do have

7   one thing to bring to the Court's attention, unrelated to the

8   motion, before Your Honor leaves the bench.

9             THE COURT:  All right.  So just a couple of follow-up

10  things.  Have you -- I'm not clear I heard what you said about

11  this agreement.  Did you email it to my courtroom deputy or

12  did you file it on the docket?

13            MR. POMERANTZ:  We emailed it to your courtroom

14  deputy.  We're happy to file it on the docket.  And we also

15  provided a copy to Mr. Sbaiti.

16       I would note for the Court that it's signed both by The

17  Charitable DAFs by Grant Scott, just for what it's worth.

18            THE COURT:  Okay.  All right.  Well, I'm trying to

19  think what I want -- I do want you to file it on the docket,

20  and I'm trying to think of what you label it.  Just call it

21  Post-Hearing Submission or something and link it to the motion

22  that we adjudicated here today.  And then, again, you've got

23  10 days, Mr. Bridges, to say whatever you want to say about

24  that agreement.

25       I guess the last thing I wanted to say is we sure devoted

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 131   Filed 11/05/2124   Page 113 of 227   PageID 3858

113

1    a lot of time to this motion today.  We have -- this is a

2    recurring pattern, I guess you can say.  We have a lot of

3    things that we devote a lot of time to in this case that I get

4    surprised, but it is what it is.  You file a motion.  I'm

5    going to give it all the attention Movants and Respondents

6    think it warrants.  I'm going to develop a full record,

7    because, you know, there's a recurring pattern of appeals

8    right now, 11 or 12 appeals, I think, not to mention motions

9    to withdraw the reference.  If we're going to have higher

10   courts involved in the administration of this case, I'm going

11   to make a very thorough record so nobody is confused about

12   what we did, what I considered, what my reasoning was.

13       So I kind of think it's unfortunate for us to have to

14   spend case resources and so much time and fees on things like

15   this, but I'm going to make sure a Court of Appeals is not

16   ever confused about what happened and what we did.  So that's

17   just the way it's going to be.  And I feel like we have no

18   choice, given, again, the pattern of appeals.

19       All right.  So, with that, Mr. Pomerantz, you had one

20   other case matter, you said?

21           MR. POMERANTZ:  Yes.  But before I get to that, Your

22   Honor, I assume that, in response to the Movants' submission

23   on the agreement, that we would have right at four or seven

24   days to respond if we deem it's appropriate?

25           THE COURT:  I think that's reasonable.  That's

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 131   Filed 11/06/22   Page 114 of 227   PageID 3859

114

1    reasonable.

2         MR. POMERANTZ:  Okay.  Thank you, Your Honor.

3         THE COURT:  So let me think of how I want to do this.

4    I'll just do a short scheduling order of sorts that just, it

5    says in one or two paragraphs, at the hearing on this motion,

6    the Court raised questions about the jury trial rights and the

7    Debtor has now submitted the controlling agreements, I'm

8    giving the Movants 10 days to respond to whether this is

9    indeed a controlling agreement, and why, if it is, the Movants

10   have heretofore taken the position they have jury trial

11   rights.  And then I will give you seven days thereafter to

12   reply, and then the Court will set a further status conference

13   if it determines it's necessary.  Okay?

14        So, Nate, we'll do a short little order to that effect.

15   Okay?

16        MR. POMERANTZ:  Thank you, Your Honor.

17        I -- again, before I raise the other issue, I want to pick

18   up on a comment Your Honor just made towards the end.  I know

19   the Court has been frustrated with the time and effort we've

20   been spending.  The Debtor and the creditors have been

21   extremely frustrated, because in addition to the time and

22   effort everyone's spending, we're spending millions of

23   dollars, millions of dollars on litigation that --

24        THE COURT:  It's one of the reasons you needed an

25   exit loan, right?

003669

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 131   Filed 11/07/22   Page 115 of 227   PageID 3860

115

1          MR. POMERANTZ:  Right.  No, exactly.  That's

2    frivolous, that we think is made in bad faith.

3          And Your Honor, and everyone else who's hearing this on

4    behalf of Mr. Dondero, should understand we're looking into

5    what appropriate authority Your Honor would have to shift some

6    of the costs.  Your Honor did that in the contempt motion.

7    Your Honor can surely do that in connection with the notes

8    litigation.  But all this other stuff that is requiring us to

9    spend hundreds and hundreds of hours and spend millions of

10   dollars, we are clearly looking into whether it would be

11   appropriate and what authority there is.  I just wanted to let

12   Your Honor know that.

13         And in connection with that, the last point, Your Honor, I

14   can't actually even believe I'm saying this, but there was

15   another lawsuit filed -- we just found out in the break -- on

16   Wednesday night by the Sbaiti firm on behalf of Dugaboy in the

17   District Court.

18         Now, to make matters worse, Your Honor, the litigation

19   relates to alleged improper management by the Debtor of Multi-

20   Strat.  If Your Honor will recall, at many times I've told

21   this Court what Dugaboy's claims they filed in this case.

22   Dugaboy has a claim that is filed in this case for

23   mismanagement postpetition of Multi-Strat.  Now the Sbaiti

24   firm, in addition to representing CLO Holdco, in addition to

25   representing the DAF, and whatever the Plaintiffs' lawyers are

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 12/06/2124   Page 116 of 227   PageID 3861

116

1    in that other District Court, PCMG, and in connection with the

2    Acis matter, they've decided they haven't had enough.  They've

3    now filed another motion that -- you know, why they filed it

4    in District Court and there's a proof of claim on the same

5    issues, I don't know.  But I thought Your Honor should know.

6    I'm not asking Your Honor to do anything about it.  But we

7    will act aggressively, strongly, and promptly.

8         Thank you, Your Honor.

9         THE COURT:  All right.  Well, you've reminded me of

10   what came out earlier today about the entity -- I left my

11   notepad in my chambers -- PMC or PMG or something.

12        Mr. Bridges, we're not going to have a hearing right now

13   on me doing anything, but what are you thinking?  What are you

14   doing?

15        MR. BRIDGES:  Your Honor, I'm not trying to duck your

16   question.  I literally have no involvement with any other

17   claim, and we would have to ask Mr. Sbaiti to answer your

18   questions.

19        THE COURT:  All right.  Is he there?

20        MR. BRIDGES:  He is.

21        THE COURT:  I'll listen.

22        MR. BRIDGES:  I'll switch seats and give him this

23   chair.

24        MR. SBAITI:  Sorry, Your Honor.  We had two computers

25   going and weren't able to use the sound on one, so we ended up

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 121   Filed 2/09/02124   Page 117 of 227   PageID 3862

117

1  turning that off.

2      Your Honor, I'm not sure what the question is about when

3  you say what are we thinking.  We have a client that's asked

4  us to file something, and when we're advised by bankruptcy

5  counsel that it's not prohibited for us to do so, and don't

6  know why we're precluded from doing so, and when the time

7  comes I'm sure we'll be able to explain to Your Honor --

8  someone will be able to explain to Your Honor why what we're

9  doing, despite Mr. Pomerantz's exacerbation, or excuse me,

10  exasperation, why that wasn't improper.  It's our belief that

11  it wasn't improper or a violation of the Court's rule.

12          THE COURT:  Just give me a quick shorthand *Readers'*

13  *Digest* of why you don't think it's improper.

14          MR. SBAITI:  Sure.  My understanding is, Your Honor,

15  there's not a rule that says we can't file it against the

16  Debtor for postpetition actions.  So that, that's as -- that's

17  as much as I understand.  And I'm going to -- I'm not trying

18  to duck it, either.  And if I'm wrong about that and someone

19  wants to correct me on our side offline and if we have to

20  explain to the Court why that's so or what rule has been

21  violated, I'm sure we'll be able to put together something for

22  that.  But that's what I've been advised.

23          THE COURT:  Have you done thorough --

24          MR. POMERANTZ:  Your Honor, I think what --

25          MR. SBAITI:  (garbled), Your Honor.

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 21   Filed 12/06/22   Page 118 of 227   PageID 3863

118

1        THE COURT:  Have you done thorough research yourself?

2   Your Rule 11 signature is on the line, not some bankruptcy

3   counsel you talked to.  Have you done the research yourself?

4        MR. SBAITI:  Well, Your Honor, I've relied on the

5   research and advice of people who are experts, and I believe

6   my Rule 11 obligations also allow me to do that, so yes.

7        MR. POMERANTZ:  Your Honor, I think we're entitled to

8   know if it's Mr. Draper's firm who has been representing

9   Dugaboy.  He's the bankruptcy counsel.  I don't think it's an

10  attorney-client privilege issue.  If Mr. Sbaiti is going to be

11  here and sort of say, hey, bankruptcy counsel said it was

12  okay, I think we would like to know and I'm sure Your Honor

13  would like to know who is that bankruptcy counsel.

14       THE COURT:  Yes.  Fair enough.  Mr. Sbaiti?

15       MR. SBAITI:  Your Honor, in consultation with Mr.

16  Draper and with consultation with other counsel that we've

17  spoken to, that has been our understanding.

18       THE COURT:  Who's the other counsel?

19       MR. SBAITI:  Well, we've talked to Mr. Rukavina about

20  some of these things for the PCMG and the Acis case.  We've

21  talked to the people who, when they tell us you can't do this

22  because they're bankruptcy counsel for our client, then we

23  don't do something.  So, and I'm not trying to throw anybody

24  under the bus, but my understanding of what goes on in

25  Bankruptcy Court is incredibly limited, so, you know, and if

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 131   Filed 12/06/22   Page 119 of 227   PageID 3864

119

1    it's a mistake then I'll own it, if I have a mistaken

2    understanding, but I also wasn't anticipating having to make a

3    presentation about this right here right now, so --

4            THE COURT:  Well, you're filing lawsuits that involve

5    this bankruptcy case during the hearing, so --

6            MR. SBAITI:  Oh, we didn't file it during the

7    hearing, Your Honor.  It was filed last night, I believe.

8            THE COURT:  Okay.  Well, I assume that you're going

9    to go back and hit the books, hit the computer, and be

10   prepared to defend your actions, because your bankruptcy

11   experts, they may think they know a lot, but the judge is not

12   very happy about what she's hearing.

13           MR. POMERANTZ:  Your Honor, if I may ask when Your

14   Honor intends to issue the contempt ruling in connection with

15   the June 8th hearing?  I strongly believe -- and, obviously,

16   this has nothing to do with the contempt hearing; this

17   happened after -- but I strongly believe that sending a

18   message that Your Honor is inclined to hold counsel in

19   contempt, which obviously is one of the violators we said

20   should be held in contempt, it may be important to do that

21   sooner rather than later so that people know that Your Honor

22   is serious.

23           THE COURT:  All right.  Well, I understand and

24   respect that request.  And let me tell you all, I had a seven-

25   day -- okay.  You all were here on that motion June 8th.  I

Case 22-03052-sgj    Doc 34-21    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 1-21    Filed 12/23/0212 124  Page 120 of 227    PageID 3865

120

1    had a seven-day, all-day, every-day, 9:00 to 5:00, 45-minute

2    lunch break, in-person hearing with a dozen or so live

3    witnesses that I just finished Tuesday at 5:00 o'clock.  So

4    you all were here on the 8th, and then -- what day was that --

5    what was -- Tuesday, I finished.  Tuesday was the 22nd.  So I

6    started on the 14th, okay?  So you all were here on the 8th

7    and I had a live jury trial -- I mean, not jury trial, a live

8    bench trial -- live human beings in the courtroom, beginning

9    June 14th.  So you're here the 8th.  June 14th through 22nd, I

10   did my trial.  And here we are on the 25th.  And guess what, I

11   have another live human-being bench trial next week, Monday

12   through Friday.

13       So we've been working in other things like this in between

14   those two.  So I'm telling you that not to whine, I'm just

15   telling you that, that's the only reason I didn't get out a

16   quick ruling on this, okay?

17           MR. POMERANTZ:  And Your Honor, I was not at all

18   making that comment to imply anything about the Court.

19           THE COURT:  Well, --

20           MR. POMERANTZ:  The time and effort that you have

21   given to this case is extraordinary, --

22           THE COURT:  Okay.

23           MR. POMERANTZ:  -- so please don't misunderstand my

24   comment.

25           THE COURT:  Okay.  And I didn't mean to express

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 1-31   Filed 12/28/21   Page 121 of 227   PageID 3866

121

1    annoyance or anything like that.  I guess what I'm trying to

2    do is I don't want anyone to mistake the delay in ruling on

3    the contempt motion to mean I'm just not that -- you know, I'm

4    not prioritizing it, other things are more serious to me or

5    important to me, or I'm going to take two months to get to it.

6    It's literally been I've been in trial almost all day long

7    every day since you were here.  But trust me, I'm about as

8    upset as upset can be about what I heard on June 8th, and I'm

9    going to get to that ruling, and I know what I'm going to do.

10   And, well, like I said, it's just a matter of figuring out

11   dollars and whom, okay?  There's going to be contempt.  I just

12   haven't put it on paper because I've been in court all day and

13   I haven't come up with a dollar figure.  Okay?

14       So I hope -- I don't know if that matters very much, but

15   it should.

16       All right.  We stand adjourned.

17       (Proceedings concluded at 3:35 p.m.)

18                            --oOo--

19

20                         CERTIFICATE

21       I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
22   above-entitled matter.

23    **/s/ Kathy Rehling**                        **06/29/2021**

24   _____        _____

25   Kathy Rehling, CETD-444                      Date
     Certified Electronic Court Transcriber

003676

Case 22-03052-sgj   Doc 34-21   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31   Filed 11/04/22   Page 122 of 227   PageID 3867

122

INDEX
*Excerpt*
*11:33 a.m. to 3:35 p.m.*

PROCEEDINGS                                                              3

OPENING STATEMENTS

- By Mr. Bridges                                                         3
- By Mr. Pomerantz                                                      23

WITNESSES

-none-

EXHIBITS

Movants' Exhibits 1, 3 through 12, 15 through      Received 91
28, and 30 through 44

Debtor's Exhibit 1                                  Received 91
Debtor's Exhibits 1 through 17                      Received 93

RULINGS                                                               106

END OF PROCEEDINGS                                                    121

INDEX                                                                 122

003677

# EXHIBIT 22

003678

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS (DALLAS)

```
IN RE:                       .   Case No. 19-34054-11(SGJ)
                             .
HIGHLAND CAPITAL             .
MANAGEMENT, L.P.,            .
                             .
                             .
         Debtor.             .
. . . . . . . . . . . . . .  .
                             .   Adv. No. 21-03067(SGJ)
CHARITABLE DAF FUND, LP,     .
et al.,                      .
                             .
         Plaintiffs,         .   Earle Cabell Federal Building
                             .   1100 Commerce Street
     v.                      .   Dallas, Texas  75242
                             .
HIGHLAND CAPITAL,            .
MANAGEMENT, L.P., et al.,    .
                             .
         Defendants.         .   Tuesday, November 23, 2021
. . . . . . . . . . . . . .      9:40 a.m.
```

TRANSCRIPT OF HEARING ON
PLAINTIFFS' MOTION TO STAY ALL PROCEEDINGS (55);
PLAINTIFFS' MOTION TO STRIKE REPLY APPENDIX (47); AND
DEFENDANTS' MOTION TO DISMISS COMPLAINT (26)

**BEFORE HONORABLE STACEY G. JERNIGAN**
**UNITED STATES BANKRUPTCY COURT JUDGE**

TELEPHONIC APPEARANCES CONTINUED ON NEXT PAGE.

Audio Operator:        Hawaii S. Jeng

Proceedings recorded by electronic sound recording, transcript
produced by a transcript service.

───────────────────────────────────────────────────

**LIBERTY TRANSCRIPTS**
**7306 Danwood Drive**
**Austin, Texas 78759**
**E-mail:  DBPATEL1180@GMAIL.COM**
**(847) 848-4907**

003679

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 18-22   Filed 08/30/22   Page 125 of 227   PageID 3870
Exhibit 22   Page 3 of 105

2

```
TELEPHONIC APPEARANCES:

For CLO Holdco, Ltd.:        Sbaiti & Company PLLC
                             BY:  MAZIN AHMAD SBAITI, ESQ.
                             JP Morgan Chase Tower
                             2200 Ross Avenue, Suite 4900 W
                             Dallas, Texas 75201

For Highland Capital         Pachulski Stang Ziehl & Jones LLP
Management:                  BY:  JOHN MORRIS, ESQ.
                             780 3rd Avenue, 34th Floor
                             New York, NY 10017

                             Pachulski Stang Ziehl & Jones LLP
                             BY:  JEFFREY N. POMERANTZ, ESQ.
                             10100 Santa Monica Blvd., 13th Floor
                             Los Angeles, California 90067

For Highland CLO             Brobeck Phleger & Harrison
Funding, Ltd.:              BY:  JONATHAN W. JORDAN, ESQ.
                             4801 Plaza on the Lake
                             Austin, Texas 78746

                             King & Spalding LLP
                             BY:  PAUL RICHARD BESSETTE, ESQ.
                             500 West 2nd Street, Suite 1800
                             Austin, Texas 78701
```

3

**INDEX**

                                                               **PAGE**

PLAINTIFFS' MOTION TO STAY ALL PROCEEDINGS (55)
  Court's Ruling - Denied                                       29

PLAINTIFFS' MOTION TO STRIKE REPLY APPENDIX (47)
  Court's Ruling - Denied                                       32

DEFENDANTS' MOTION TO DISMISS COMPLAINT (26)
  Court's Ruling - Under Advisement                            103

003681

4

1          THE COURT:  Good morning.  Please be seated.

2          All right.  We have a setting in the Charitable DAF

3   Fund, et al., v. Highland, Adversary 21-3067.  We have three

4   motions that are set.

5          Let me get appearances from the Plaintiffs' counsel

6   first.  Go ahead.

7          MR. SBAITI:  Good morning, Your Honor.  This is Mazin

8   Sbaiti for the Plaintiffs.

9          THE COURT:  Okay.  Thank you.

10          Now for the Defendants, who do we have appearing?

11          MR. POMERANTZ:  Good morning, Your Honor.  It's Jeff

12   Pomerantz and John Morris from Pachulski Stang Ziehl & Jones.

13   Your Honor, before -- I understand Your Honor is going to take

14   up the motion to stay first.

15          Before Your Honor does so, I have a procedural issue

16   relating to that motion that I would like to address the Court

17   after appearances are made.

18          THE COURT:  All right.  I assume that's all the

19   lawyer appearances for this adversary.

20          MR. JORDAN:  Your Honor?

21          THE COURT:  Oh, go ahead.

22          MR. JORDAN:  Your Honor, we are a nominal defendant,

23   but John Jordan on behalf of Highland CLO Funding, Ltd.

24          THE COURT:  Okay.  Thank you.  Sorry about that.

25          MR. BESSETTE:  And, Your Honor, Paul Bessette, Mr.

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 16-22 Filed 06/01/22 Page 128 of 227   PageID 3873
Exhibit 22 Page 66 of 105

5

 1   Jordan's colleague is on the phone, as well.

 2          THE COURT:  Okay.  Thank you.

 3          All right.  Anyone else I missed?

 4      (No audible response)

 5          THE COURT:  All right.  Mr. Pomerantz, your

 6   procedural issue?

 7          MR. POMERANTZ:  Thank you, Your Honor.

 8          Your Honor, I must once again bring to this Court's

 9   attention a violation of the Court Rules by the various counsel

10   representing Mr. Dondero.  This time it's by Mr. Sbaiti.

11          When the district court entered its order granting

12   Highland's motion to enforce the reference and referring this

13   matter to Your Honor, there were three matters on the Court's

14   docket, district court's docket that got transferred.  First

15   was the motion to dismiss, second was the motion to stay, and

16   third was the motion to strike, which essentially has been

17   rendered moot.

18          The briefing was complete with respect to the first

19   two matters, the motion to dismiss and the motion to stay.  And

20   all that remained for the Court to do was to set a hearing and

21   have oral argument.  Your Honor, on October 13th, Your Honor

22   set a hearing for today for each of those two motions.

23   Nevertheless, on November 10th, almost a month after the Court

24   set the matters for hearing and after pleadings were closed,

25   Plaintiffs filed what they called their amended motion to stay.

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 18-22 Filed 06/21/22   Page 129 of 227   PageID 3874
Exhibit 22 Page 00205

6

1          As an initial matter, Your Honor, the amended motion

2    was not even filed in this adversary proceeding initially.  It

3    was filed in the main case, and there was an error that Mr.

4    Sbaiti corrected on November 18th, five days before this

5    hearing.  Plaintiff did not ask for leave of court to file any

6    further pleadings.  They did not provide the time under the

7    local rules for response.  And, in fact, they raised additional

8    arguments in their amended motion.

9          Well, Your Honor, we can certainly argue to the Court

10   that the amended motion constitutes a new motion, is untimely,

11   and the hearing should be continued to allow us to file a

12   response.  We're not going to do that, Your Honor.  As I will

13   discuss when it's my time to response substantively to the

14   motion, the new arguments to stay the proceedings, the amended

15   motion are equally as frivolous as the arguments contained in

16   the original motion.

17         But I bring this to the Court's attention because,

18   again, it's extremely frustrating to have the lawyers

19   representing Mr. Dondero's related entities continue to act as

20   if the rules do not apply to them.  Your Honor will recall just

21   a week or so ago, Your Honor made a -- we had a similar issue

22   in connection with the motion to dismiss.  Failure to follow

23   the rules is unprofessional, and it's disrespectful not only to

24   Highland's professionals but also to the Court and it

25   interferes with Your Honor's ability to control your docket and

003684

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 18-22 Filed 08/30/22   Page 130 of 227   PageID 3875
Exhibit 22   Page 36 of 105

7

1  sufficiently prepare for contested matters.

2          At some point, Your Honor, there should be real

3  consequences for the continued violation of the rules.  Having

4  said that, Your Honor, we are prepared to go forward with the

5  motion to stay today.

6          THE COURT:  All right.  Mr. Sbaiti, what say you?

7  I'm looking at Docket Entry Number 69 in the adversary

8  proceeding that was filed last Thursday.  So, obviously, very,

9  very late in the game, shall we say.  What is your response to

10  this?

11          MR. SBAITI:  Your Honor, that was not filed in the

12  adversary as an error.  When we asked one of our paralegals to

13  file it, we're not as familiar with the bankruptcy court system

14  and it was an error.  It was corrected once the lawyers

15  realized it, which was last -- which was on November the 18th.

16  It was filed in, I guess in the main case.  But it was simply

17  an inadvertent error, Your Honor.

18          MR. POMERANTZ:  I would add, Your Honor, the original

19  motion filed inadvertently was November 10th.  It still was not

20  timely.  I think Mr. Sbaiti needs to answer the question of why

21  that was filed untimely, okay.

22          THE COURT:  All right.  Thank you, Mr. Sbaiti.

23          So, one of my pet peeves in life is people blaming

24  paralegals, by the way.  But be that as it may, as Mr.

25  Pomerantz points out that it was still untimely the motion

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 8-22   Filed 09/02/22   Page 131 of 227   PageID 3876
Exhibit 22 Page 96 of 205

8

 1   filed in the underlying bankruptcy case November 10th.  So what

 2   is your --

 3          MR. SBAITI:  Your Honor, when we looked at the motion

 4   and looked at the progression of the case, we filed an amended

 5   motion simply to clarify our position.  And really I don't

 6   think we've changed our arguments all that much.  We simply

 7   clarified our position.  We've seen amended motions filed in

 8   the bankruptcy in our prior dealings, and so at that point, we

 9   felt like there wasn't a rule explicitly saying we couldn't

10   have an amended motion.

11          But if it's untimely, Your Honor, you know, we don't

12   think it changes the underlying arguments.  As Mr. Pomerantz

13   said, we don't think there's any prejudice to Highland either.

14          THE COURT:  All right.  Well, just to be clear, you

15   know, it's one thing in an underlying bankruptcy case to file

16   an amended motion after you've gotten a motion set for hearing

17   that might slightly adjust, you know, facts or relief sought.

18   And, of course, we independently look at it when it happens in

19   an underlying case to see do we need more notice to affected

20   parties.

21          But in an adversary proceeding, you know, you just

22   don't do this.  All right?  If you have some sort of

23   exceptional circumstances, you can file I guess a motion to

24   amend because I got to include this new information that didn't

25   exist.  But you just don't do this, okay?

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-22   Filed 10/07/22   Page 132 of 227   PageID 3877
Exhibit 22   Page 106 of 105

9

1          So I don't -- could you be clear what was the new

2    information?  What was the new information that had to be

3    brought before the Court suddenly?

4          MR. SBAITI:  Your Honor, there wasn't new

5    information.  We were simply giving notice of our understanding

6    of where the legal arguments were going.  The reason being is

7    that after those motions were filed and recently, the debtor

8    took the position in two other cases that they should be

9    dismissed pursuant to the permanent injunction.

10         And so that clarified for us at least a couple of

11   arguments that were unclear to us where the debtor stood on

12   whether or not the permanent injunction would be a basis to

13   dismiss or stay any of the claims that were pending.  There are

14   two other claims pending in district court.  Since we had filed

15   that motion, the debtor filed a motion to reconsider the stays

16   that were granted in those two courts.  And then they also

17   moved to dismiss on the basis of the permanent injunction.

18         And so given that the debtor took the position that

19   they were willing to dismiss those cases based upon the

20   permanent injunction, it in many ways contravenes the position

21   they took in response to our motion which is that the -- for

22   example, they somewhat take the position in Paragraph 22, it

23   wasn't as clear then but it's clear -- it seems clearer now

24   that the permanent injunction is not relevant to whether or not

25   the case can go forward in any capacity.

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-82   Filed 10/21/22   Page 133 of 227   PageID 3878
Exhibit 82   Page 106 of 105

10

1          And so we simply wanted to incorporate that, but it's

2     mainly legal argument about the choices that are before the

3     Court.  That was really it.  I mean, theoretically, I would

4     have made them for the first time during oral argument and we

5     thought we were doing something good by giving -- apprising the

6     Court in writing and giving notice of these arguments to the

7     other side by filing an amended motion.  We didn't add new

8     evidence or anything like that.

9          MR. POMERANTZ:  Your Honor, that argument is

10     completely disingenuous because our motion to dismiss and

11     motion for reconsideration that Mr. Sbaiti refers to is several

12     weeks ago, okay.  It wasn't November 10th.  It was several

13     weeks ago.

14          I will respond substantively why Mr. Sbaiti is wrong

15     and there's no inconsistent positions when it's my time to

16     speak.  But for Mr. Sbaiti to say he was doing us a favor and

17     he was reacting to recent new information is just wrong, Your

18     Honor.  And they should just not be continued to allowed to get

19     away with flouting the rules.

20          THE COURT:  All right.  Well, let me just say I'm

21     confused, maybe I should say baffled, about this amended

22     motion.  You know, the motion to dismiss that is before the

23     Court for oral argument today isn't about the injunction, isn't

24     about the plan injunction.  It's about res judicata and other

25     12(b)(6) arguments.

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-22   Filed 10/06/22   Page 134 of 227   PageID 3879
Exhibit 22   Page 206 of 205

11

1           So I'm confused and I think, you know, it's been
2   clear for many months in this adversary proceeding, in
3   particular, the debtor's position on the plan injunction,
4   particularly, you know, in the whole argument on the motion to
5   leave to add Mr. Seery as a defendant.

6           So I'm confused, but we're going to go forward on the
7   argument today, whatever argument you want to make.  And you've
8   been, I guess, forewarned.  I will say that these last-minute
9   amended motions are not going to be tolerated, are not going to
10  be considered.  And so, you know, I hope you won't do it again.
11  Your firm has already been sanctioned once in this adversary
12  proceeding.  I'm sure we all remember.

13          So, you know, I'm just kind of baffled why you would
14  take a chance filing an amended motion without leave or somehow
15  getting it to the attention of the Court or running it by the
16  other parties for their consent to you doing it.  But we're
17  going to go forward and just hear the arguments, okay.  And so
18  --

19          MR. SBAITI:  Thank you.

20          THE COURT:  -- I'll hear your argument.

21          I'm letting people know I don't know where this time
22  estimate came on the calendar today, three hours.  I don't know
23  if someone specifically expressed that.  But I'm letting you
24  know at noon I have a swearing-in ceremony that I'm doing back
25  in my chambers.  So I will stop at noon Central time.

12

1          And so does anyone think that's going to be a

2     problem?

3          MR. SBAITI:  It should not be, Your Honor, from our

4     perspective.

5          THE COURT:  Mr. Pomerantz?

6          MR. POMERANTZ:  I don't believe so.  Mr. Morris is

7     going to handle the motion to dismiss which is going to be the

8     bulk.  My presentation on the motion to stay is only going to

9     be around ten minutes or so.

10         THE COURT:  Okay.  Thank you.

11         Mr. Sbaiti, your argument on the motion for stay.

12         MR. SBAITI:  Thank you, Your Honor.

13         Your Honor, may I share my screen?

14         THE COURT:  You may.

15         MR. SBAITI:  I have a PowerPoint that can kind of --

16         THE COURT:  Okay.  You may.

17         MR. SBAITI:  -- walk us through.  Thank you.

18         Is Your Honor able to see my screen?

19         THE COURT:  I can, yes.

20         MR. SBAITI:  Thank you, Your Honor.

21         Your Honor, what I would point you to is, first, the

22    injunction language.  This is what Your Honor's permanent

23    injunction says, and this is really what animates our motion to

24    stay.  Out motion to stay is derived specifically because my

25    clients and I feel like our case has been enjoined by this

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 6-12   Exhibit 22   Filed 10/03/22   Page 136 of 227   PageID 3881

13

1   injunction, if not completely disposed of.

2           The language says that we're an enjoined:

3           "An enjoined party is permanently enjoined from

4           commencing, conducting, or continuing in any manner

5           any suit, action, or other proceeding of any kind

6           including any proceeding in a judicial, arbitral,

7           administrative, or other forum against or affecting

8           the debtor or the property of the debtor."

9           And then (v) of that injunction says:

10          "or acting or proceeding in any manner in any place

11          whatsoever that does not conform to or comply with

12          the provisions of the plan."

13          One of the things that was suggested in Paragraph 22

14  of their response was that the DAF and Holdco are not enjoined

15  parties.  But the final plan defines an enjoined party in

16  Article 1(b)(56) as any entity who has or -- all entities who

17  have held, hold, or may hold claims against the debtor; any

18  entity that has appeared and/or filed any motion, objection, or

19  other pleading in this Chapter 11 case regardless of the

20  capacity in which such entity appeared and any other party in

21  interest.  And, five, the related persons of each of the

22  foregoing.

23          Article 1(b)(22) defines a claim as any claim that's

24  defined in Section 1015 of the Bankruptcy Code.  And Section

25  1015 of the Bankruptcy Code defines a claim as a right to

14

 1  payment whether or not such right is reduced to judgment,

 2  liquidated, unliquidated, fixed, contingent, matured,

 3  unmatured, disputed, undisputed, legal, equitable, secured, or

 4  unsecured.

 5          So given this definition, when we've read this

 6  injunction, we believed that we were enjoined parties, the DAF

 7  and Holdco were both enjoined parties.  They had appeared in

 8  the -- they have claims.  Obviously, those are the claims being

 9  asserted here.

10          And so going back to the injunction language, we

11  believe this lawsuit has been disposed of by this permanent

12  injunction.  We believe there's really only one or two things

13  that should probably happen with this lawsuit.  Either it could

14  be dismissed based upon the permanent injunction or what we

15  proposed in our motion to stay is that the Court exercise its

16  inherent authority to simply stay the case pending the appeal

17  of this language, which is up on appeal in the Fifth Circuit

18  right now.

19          If that language, and if the injunction gets affirmed

20  by the Fifth Circuit, then certainly the dismissal can happen

21  once that affirmance happens and there's no harm, no foul, and

22  no one's wasted any time.

23          If they're not, if it's overturned, then, obviously,

24  the injunction would be vacated, presumably by the Fifth

25  Circuit.  And at some point, if the Court decides not to enter

003692

1  a similar injunction that would likewise dispose of this case,

2  then the case could proceed on the merits.

3       The issue we've identified both in our original

4  motion and as we fleshed out in our -- as a matter of law in

5  our amended motion to simply put a finer point on it is that

6  the merits are now -- have been disposed of.  This injunction

7  ends this case, at least as far as we read it.  It ends this

8  case irrespective of the underlying merits of the lawsuit,

9  which means that the lawsuit merits themselves have become moot

10  and any opinion or any attempt to resolve it is obviously an

11  advisory opinion by the Court.

12       So we really only see two ways that this could go

13  right now without either gutting the injunction or

14  circumventing it completely, which is to say that either the

15  case should be dismissed based upon the permanent injunction or

16  the case should be stayed based upon the permanent injunction.

17       Mr. Pomerantz or the debtors' brief suggests that,

18  well, the injunction doesn't prevent hearing pending motions.

19  But I would respectfully disagree with that.  If you look at

20  the language, "commencing, conducting, or continuing in any

21  manner in any suit, action, or other proceeding against or

22  affecting the debtor."

23       As 12(b)(6) hearing, I would imagine, was intended to

24  fall under the umbrella of a proceeding.  And us arguing a

25  12(b)(6) motion would us be conducting and maybe even

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-22 Filed 11/06/23   Page 139 of 227   PageID 3884
Exhibit 22   Page 107 of 105

16

 1    continuing the suit because we're trying to protect the merits

 2    of the suit, which as I said are at this juncture already moot.

 3            And so it comes down to I think a very simple

 4    question, which is what do we do at this juncture.  Do we just

 5    simply dismiss the lawsuit in light of this permanent

 6    injunction or stay the lawsuit in light of this permanent

 7    injunction?

 8            The debtor makes a lot of hay out of the fact that,

 9    well, there are special rules that apply when you're trying to

10    stay a case pending appeal.  But if you look at all of their

11    case law, it has to do with different circumstances where an

12    appeal -- where there's a matter on appeal that could

13    substantially affect the resolution of the case, which here we

14    think it actually could.  But in those cases, those appeals

15    would affect the resolution of the case on the merits; whereas,

16    here, the question goes to whether or not a permanent

17    injunction that really has stopped us all in our tracks.

18            As soon as we understood this injunction and its

19    scope, we're the ones who reached out to the debtor's counsel

20    and asked them on a meet-and-confer whether or not they would

21    just agree to stay the matter.  And we were a little bit

22    surprised by their reaction when they first didn't think that

23    this applied to our case, and we didn't understand how.  And

24    then they changed their mind, said it did apply to our case but

25    they didn't think that we should stay the case.  And they

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-22   Filed 10/06/22   Page 140 of 227   PageID 3885
Exhibit 22   Page 108 of 105

17

 1  didn't suggest let's just dismiss it based upon the permanent

 2  injunction.

 3          So it kind of comes down to the same small -- same

 4  simple issue, Your Honor.  There's this permanent injunction,

 5  and I don't think there's any way for us to get around it at

 6  this juncture.

 7          THE COURT:  Mr. Pomerantz:

 8          MR. POMERANTZ:  Yes, Your Honor.

 9          I'm going to respond to several of the arguments Mr.

10  Sbaiti made in his motion, which apparently he's abandoned

11  because he only is focused on the injunction.  And I'm also

12  going to tell Your Honor, what our arguments are because

13  despite Mr. Sbaiti's efforts, he's completely misquoted them.

14          So in the motion and the amended motion, the

15  Plaintiffs make several arguments why this Court should stay

16  the matter.  First, they argue they're entitled to a stay

17  because the exculpation provision in the plan prohibits them

18  from proceeding against the Defendants in the action.  And

19  there are several problems with that argument.

20          First, Mr. Sbaiti and the Plaintiffs don't even

21  attempt to meet the Fifth Circuit's standards for a stay

22  pending appeal because, of course, they can't.  Mr. Sbaiti's

23  trying to sidestep the grounds for a stay pending appeal by

24  arguing it doesn't apply just is incorrect.

25          They would have to show that there is a likelihood of

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-22   Filed 10/06/22   Page 141 of 227   PageID 3886

18

1    success on the merits, they would suffer irreparable harm, the

2    debtor wouldn't suffer irreparable harm, and there is -- public

3    interest supports a stay.  They can't do any of them.

4          In fact, as Your Honor is well aware, Your Honor

5    denied the actual appellants in that suit, in that order, the

6    confirmation order, a stay pending appeal and that was denied

7    by the district court and also denied by the Fifth Circuit

8    Court of Appeals.

9          The Plaintiffs didn't object to the plan, they are

10   not parties to the appeal, and they never sought a stay pending

11   appeal.  So they really can't explain why they as really

12   strangers to the appeal are entitled to a stay of the

13   effectiveness of the plan when the actual appellants to that

14   order were denied a stay pending appeal up through the

15   appellate ladder.

16         Second, notwithstanding Mr. Sbaiti's arguments in the

17   motion, the exculpation provision is neither as broad nor does

18   it affect all the parties that are subject to this litigation.

19   There are three Defendants in the complaint.  The only

20   Defendant that is covered by the exculpation provision is the

21   debtor.  The exculpation provision does not apply HCF Advisors,

22   and it does not apply to Highland CLO Funding.

23         Also, while the exculpation provision does apply to

24   the debtor, it only exculpates the debtor from claims of

25   negligence.  The complaint raises a variety of causes of action

19

1  that have nothing to do with negligence and would not be

2  covered by the exculpation provision.

3         But, Your Honor, the biggest problem with their

4  argument that the exculpation provision supports a stay is that

5  the exculpation -- the appeal of the exculpation provision has

6  nothing to do with this case.  Why?  Because the Fifth Circuit

7  appeal concerns whether the exculpation provision is

8  appropriate for parties other than the debtor.  The debtor is

9  the only Defendant in this case that obtains the benefit of the

10 exculpation.

11        And there is no dispute, there was no dispute at

12 confirmation, there's no dispute in the case law, there's no

13 dispute in Pacific Lumber, there's no dispute in the appeal

14 that a plan can exculpate the debtor.  So the Fifth Circuit

15 appeal doesn't implicate the exculpation provision and cannot

16 support a basis for a stay.

17        The next argument Mr. Sbaiti makes is the injunction

18 provision, and the injunction provision is on appeal to the

19 Fifth Circuit.  But the aspect of the appeal of the injunction

20 is not the provision that Mr. Sbaiti points to.

21        And, again, as with the exculpation provision, the

22 same arguments about failure to obtain a stay, failure to be

23 party to the appeals, and failure to object to the plan apply,

24 as well.  But as is the case with the exculpation provision,

25 the resolution of the appeal of the injunction provision will

003697

20

1  not affect this case in any way.

2          They point to the portion of the injunction that

3  prohibits enjoined parties from directly or indirectly

4  continuing, commencing, or conducting in any manner any suit or

5  action proceeding against the debtor.  They argue that they

6  cannot proceed without violating the injunction because the

7  injunction was intended to put all litigation against the

8  debtor to an end.

9          But, of course, Your Honor, that is not true.  That

10  is not what the injunction is.  The issue on appeal before the

11  Fifth Circuit as it relates to the injunction is whether the

12  injunction impermissibly enjoins parties from enforcing their

13  rights with respect to post-effective date commercial

14  relationships with the reorganized debtor.  And, of course, we

15  argue that it's appropriate, but it has nothing to do with the

16  provision Mr. Sbaiti identified.

17          The appeal does not impact in any way whether a plan

18  can enjoin prosecution of claims that arose prior to the

19  effective date.  And, of course, such a plan provision is

20  completely appropriate and is customary.  The plan provided the

21  debtor as the plan provides all debtors with a fresh start and

22  enjoins litigation against the debtor.

23          But importantly, Your Honor, that does not mean as

24  Plaintiffs argue that any liability for pre-effective date

25  conduct just goes away and that creditors are left without a

003698

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-22   Filed 12/26/22   Page 144 of 227   PageID 3889
Exhibit 22   Page 226 of 105

21

1    remedy to pursue claims against the debtor for pre-effective

2    date conduct.

3           Rather, if they have a pre-petition claim in lieu of

4    their litigation that's pending, they file a pre-petition claim

5    against the estate and that matter is resolved in the claims

6    objection procedure.  Or, as in the case here, when they make

7    an allegation that there is a post-petition claim, what do they

8    do?  They file a request for payment of an administrative

9    claim, and this Court addresses the validity of the

10   administration claim.  The lawsuit pending in another

11   jurisdiction stops, but the claim has to be resolved in the

12   bankruptcy court.

13          The only conduct that the injunction really prohibits

14   is them from proceeding with actions in other courts.  It does

15   not deny them a remedy.  Accordingly, their argument that they

16   cannot proceed with claims against the debtor because of the

17   injunction provision just lacks any merit and can't form the

18   basis for a stay.

19          Plaintiffs' next argument in their briefing is that

20   if the Court refuses to stay the complaint, they will file a

21   motion to withdraw the reference of this matter to the district

22   court.  Your Honor, this is the biggest head-scratcher of them

23   all given how this complaint ended up before Your Honor.  This

24   exact issue and Plaintiffs' arguments as to why the reference

25   should be withdrawn have already been fully briefed and decided

003699

22

1  by the district court.

2          As Your Honor may recall, the Plaintiff filed this

3  action in the district court, conveniently failing to include

4  the bankruptcy case as a related case or mentioning that the

5  bankruptcy courts have related jurisdiction in the filings.

6  Your Honor may have had occasion to review the underlying

7  complaint when the debtor brought a motion for contempt against

8  counsel for Plaintiffs for pursuing a claim against Mr. Seery

9  in violation of Your Honor's January 9th, 2020 and July 16th,

10  2020 orders.

11          Your Honor issued an order finding counsel and

12  various parties in contempt which order is, of course, subject

13  to appeal.  At the time we were litigating the contempt motion,

14  we filed two motions in district court.  The first was a motion

15  to enforce the reference and have the district court send that

16  complaint to Your Honor.  And that motion to enforce the

17  reference is now on Your Honor's docket at Number 22 and 23.

18          The second was the motion to dismiss which is before

19  Your Honor today.  Plaintiffs oppose the motion to enforce the

20  reference arguing that mandatory withdrawal was required

21  because the matter involved consideration of non-bankruptcy

22  federal law, specifically federal securities laws and the

23  Investment Advisors' Act.

24          Plaintiffs further argue to the district court why

25  would you refer the case to the bankruptcy court if it's only

**WWW.LIBERTYTRANSCRIPTS.COM**

23

1   going to end up back in the district court upon mandatory

2   withdrawal of the reference.  They argue to the district court

3   that would be a complete waste of time.

4        We filed our reply at Docket Number 42 explaining to

5   the district court why mandatory withdrawal of the reference

6   did not apply and why this case should be referred to Your

7   Honor.  And what did the district court subsequently do?  It

8   entered an order referring this action to Your Honor which is

9   why we are here today.

10        Plaintiffs now flout the district court's order of

11  reference by telling the Court that if the Court does not stay

12  the matter, they will file a motion to withdraw the reference

13  before Your Honor, and they attach virtually identical pleading

14  that they filed in opposition to our motion to enforce the

15  reference.

16        Plaintiffs did not disclose in their amended motion

17  that there was a fully-briefed motion to enforce the reference

18  before the district court.  Plaintiffs' argument is

19  disingenuous and designed to mislead the Court.

20        The district court has only agreed that mandatary

21  withdrawal of the reference does not apply and this case

22  belongs in Your Honor.  And while we cannot stop the Plaintiffs

23  from filing any motion before this Court, we want to put them

24  on notice that if they do file a motion for withdrawal of the

25  reference in light of the facts as I just stated them, we will

003701

Case 22-03052-sgj    Doc 34-22    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 18-12    Filed 12/16/22    Page 147 of 227    PageID 3892
Exhibit 22    Page 256 of 105

24

1    seek sanctions.

2              In any event, Your Honor, the fact that they may file

3    a motion for withdrawal of the reference at some point in the

4    future is not grounds to stay the matter.

5              Lastly, Your Honor, Plaintiffs argued in the opening

6    that Highland's position today in opposing the motion to stay

7    is inconsistent with positions Highland has taken in two other

8    lawsuits commenced by the Sbaiti firm.  Like all of their other

9    arguments, they misrepresent the facts and are frivolous.

10             The Sbaiti firm filed a complaint on behalf of the

11   DAF in the district court arguing that Highland mismanaged

12   (audio drop).  That complaint followed in the heels of an

13   almost identical complaint filed by Dugaboy asserting the same

14   claims.

15             And Your Honor may recall questioning Mr. Sbaiti at a

16   hearing in June how Dugaboy could pursue such a claim in the

17   district court if Dugaboy had a pending proof of administrative

18   claim on file in the bankruptcy case.  Well, soon after that

19   hearing, Your Honor, the Dugaboy complaint was dismissed, and a

20   few days later the DAF complaint was filed.  That complaint has

21   never been served on Highland.

22             The second lawsuit is also a lawsuit filed by the

23   Sbaiti firm on behalf of an entity called PCMG in the district

24   court.  And PCMG previously held less than five one-hundredths

25   of a percent interest in a certain fund managed by highland.

003702

25

1  The lawsuit alleges that Highland acted improperly to sell

2  certain assets of the fund, thereby damaging PCMG.  That

3  complaint has also never been served on Highland.

4        The Plaintiffs sought a stay of those matters before

5  Highland could file a response, and the court -- the district

6  court's entered stays in those matters.  And Highland has filed

7  motions for reconsideration and the motions to dismiss because

8  they violate the injunction.

9        But, importantly, Your Honor, if you read the

10  motions, Highland does not argue that Plaintiffs do not have a

11  remedy for the alleged wrongs they say they suffer.  Rather,

12  Highland's argument is that any claims alleged in those

13  lawsuits, just like any claims alleged in the lawsuit before

14  Your Honor today, must proceed in bankruptcy court as part of

15  the claims objection process.  That's where they will have

16  their day in court.  The lawsuits don't go away.  The

17  injunction prevents them from continuing on in district court.

18        Accordingly, Highland is being totally consistent in

19  all matters, and the litigations may not proceed there but must

20  proceed before Your Honor.  And, of course, none of these three

21  matters are implicated by the Fifth Circuit appeal.

22        Your Honor, the amended motion was procedurally

23  improper and is substantively without merit.  And for all these

24  reasons, we request that the Court deny the stay motion and

25  proceed with the hearing on the motion to dismiss.

003703

26

1          Thank you, Your Honor.

2          THE COURT:  All right.

3          Mr. Sbaiti, you get the last word.

4          MR. SBAITI:  Thank you, Your Honor.

5          Your Honor, the administrative claim process that was

6   described as being the way that these claims were supposed to

7   proceed, by the language of the order that we read, does not

8   allow for these claims.  Those claims are limited to a specific

9   category of claims that don't include the claims that are

10  alleged in this lawsuit.

11          And in any event, this lawsuit wasn't filed as an

12  administrative claim.  So if that's the case and it needs to be

13  refiled or reasserted as an administrative claim, then I think

14  that's a subject for another day.  All I know is that we have

15  this injunction right now that either should stay this case

16  pending the appeal, which I'll address the issue on appeal in a

17  moment, or it should be dismissed, perhaps without prejudice so

18  that it can be refiled properly as an administrative claim if

19  that's what's supposed to happen, because I guess this converts

20  the matter.

21          The appeal, the subject of the appeal as to the

22  injunction, Your Honor, the appeal actually encompasses many of

23  the issues that we're talking about in this case.  Now Mr.

24  Pomerantz tries to narrow the scope of what's up on appeal, and

25  that may indeed be the argument that they're going to present

003704

27

 1  to the Fifth Circuit or that they've presented to the Fifth

 2  Circuit.

 3          But the actual issue up on appeal is the

 4  enforceability and validity of the order for a variety of

 5  reasons which includes the provision that we're talking about

 6  and the enforceability of the provision that we're talking

 7  about because it gets rid of particular claims.  And I guess

 8  the argument back is, no, it doesn't because there's now an

 9  alternative means of going there.

10          Mr. Pomerantz says that we shouldn't have proffered a

11  motion to enforce the reference.  That proffer, however, was

12  because Judge Boyle's reference to this Court didn't deal with

13  our motion to -- our cross-motion to withdraw the reference.

14  All it dealt with was their motion to enforce the reference as

15  a -- to enforce the standing order in the district court.  And

16  that's all she ordered was she cited the standing order and the

17  statutes, I think it's 157(a), and that's really all it did.

18          So it left open the question of whether she wanted

19  Your Honor to deal with the withdrawal of the reference

20  specifically as to the 12(b)(6) issue in the first instance.

21  It didn't resolve the question.  It doesn't purport to resolve

22  that question.  And it's not unheard of for the district court

23  then to send the matter to the bankruptcy court and then to

24  piecemeal which proceedings the withdrawal of the reference is

25  applicable to and then all the other proceedings would stay

003705

28

1  with Your Honor or with the bankruptcy court.

2        So we weren't flouting the district court's order,

3  and we certainly weren't flouting any of the previous orders.

4  And the threat of a sanction for simply exercising our rights

5  in due course is not well taken.

6        Now Mr. Pomerantz says, well, the DAF and CLO Holdco

7  are not parties to the appeal.  I don't think that's relevant

8  because if the provision is struck by the Fifth Circuit, it's

9  not only struck for the appellants, it's struck as to all.

10  It's either valid or it's invalid.  And even if it's declared

11  to be invalid only as to the appellants, it's not suddenly

12  valid as to everyone else who didn't appeal.  That's not

13  generally how these appeals have worked.

14        If the Court doesn't stay this matter, Your Honor,

15  and doesn't dismiss it, we still maintain, Your Honor, that as

16  it stands today, the question on the merits have been mooted

17  and we cannot proceed.  I think what Mr. Pomerantz is hoping

18  for or the debtor is hoping for is a provision where our hands

19  are potentially tied to argue the motion.

20        And if the Court tells us they're not, then we'll

21  certainly argue the 12(b)(6).  But what I don't want to do is

22  argue a 12(b)(6) motion that on its face appears to violate the

23  permanent injunction and then be held in contempt for violating

24  that injunction.

25        And so that's why we've asked for the Court to either

003706

29

1  stay the matter under its inherent jurisdiction or to -- if

2  you're going to -- if it's not going to be stayed, then we

3  believe it has to be dismissed according to the permanent

4  injunction as it stands right now.

5          THE COURT:  All right.

6          The motion to stay is denied.  The amended motion to

7  stay is likewise denied.  This is an odd argument.  I guess one

8  might say the traditional four-factor test for a stay of a

9  proceeding has really not been the subject of the argument here

10 for a stay.

11         So suffice it to say the four-prong test for a stay,

12 you know, hasn't been met here.  There hasn't been a showing of

13 substantial likelihood of success on the merits or irreparable

14 injury if the stay's not granted or a stay will not

15 substantially harm others or the stay would serve a public

16 interest.

17         But going on to the arguments that were focused on by

18 movant, I just don't think that you have shown that, you know,

19 either the exculpation clause or the injunction provisions of

20 the plan somehow tie your hands in arguing the 12(b)(6) motion,

21 defending against the 12(b)(6) motion today or I just think

22 that your arguments reflect, frankly, a misunderstanding of how

23 the injunction language and exculpation language applies here.

24         So the motion for stay is denied, and I will ask Mr.

25 Pomerantz to submit an order reflecting the Court's ruling.

003707

30

1          So it looks like we have another procedural matter,

2     Mr. Sbaiti.  You filed a motion to strike reply appendix of the

3     Plaintiffs quite a while back.  So did you want to present

4     that?

5          MR. SBAITI:  Yes, Your Honor.  I think it's a very

6     simple procedural issue.

7          Generally, a party that files a 12(b)(6) is limited

8     to the four corners of the complaint.  And if there's a

9     contract incorporated or a document incorporated as an

10    intrinsic part of the complaint, you know, that's usually

11    considered under the 12(b)(6) motion.

12         What the Defendants did, what the debtor here did is

13    they filed a bunch of evidence in their 12(b)(6), essentially

14    attempting to argue it as a summary judgment.  We raised that

15    in our response.  So as part of our response, we objected to

16    all the evidence.  But then on the reply, they filed a bunch

17    more evidence both without leave and improperly, basically

18    sandbagged us.

19         And so we raised two points for striking that

20    evidence.  One was akin to the first argument, which is it's

21    not an evidentiary hearing.  It's not an evidentiary process in

22    the first instance.  A 12(b)(6) motion has to assume that the

23    facts pled are true, and then the question is whether they

24    state a claim.

25         And, secondly, adding them to the reply is especially

003708

31

1  egregious because the reply is the last word.  And we didn't

2  have an opportunity to respond, and we also don't think it's

3  relevant nor should we have to respond to a whole bunch of

4  extra evidence that was attached.

5        That's essentially the basis of our motion, Your

6  Honor.

7        MR. POMERANTZ:  Your Honor, the simple answer to the

8  issue is we filed the reply of the appendix in connection with

9  the motion to enforce the reference.  We didn't file it in

10 connection with the motion to dismiss.  The motion to enforce

11 the reference is moot.  So what Mr. Sbaiti, his whole argument

12 doesn't make any sense.

13        As a substantive matter, just there wasn't any

14 evidence.  It was pointing to court pleadings, orders, and

15 stuff.  So it's irrelevant.  I don't know why it's still on the

16 docket.  It shouldn't be on the docket since it related to the

17 motion to enforce the reference.

18        THE COURT:  All right.  Mr. Sbaiti, did you just

19 simply --

20        MR. SBAITI:  Your Honor, much of that evidence was --

21        THE COURT:  -- misunderstand or what?

22        MR. SBAITI:  I think we might have because it was

23 filed as a separate item, and it may have been miscalendared or

24 misapplied on our system.  But the way it was presented to us

25 when we got it was it appeared to be evidence in support of,

003709

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 1-82   Filed 03/06/2105   Page 155 of 227   PageID 3900

32

1  well, I guess both, but certainly evidence that was averted to

2  in the reply.

3          But if they're saying that the Court's not going to

4  consider it, then that moots the motion and I think we can move

5  on.

6          MR. POMERANTZ:  Yes, Your Honor.  I had nothing to do

7  with his motion.  I guess there was another mistake on their

8  end.  I guess that stuff happens occasionally.

9          THE COURT:  Okay.  All right.  So I'll deny it as

10 based on a mistake that's been acknowledged here.  And so with

11 that, let's have an order cleaning that up, as well, Mr.

12 Pomerantz, please.

13          With that, we'll move on to the Defendants' motion to

14 dismiss complaint.  I think, Mr. Pomerantz, you said Mr. Morris

15 will be making this argument?

16          MR. POMERANTZ:  That is correct, Your Honor.

17          THE COURT:  All right.

18          Mr. Morris, I'll hear your argument.

19          MR. MORRIS:  Good morning, Your Honor.  John Morris

20 for Pachulski Stang Ziehl & Jones for the reorganized debtor.

21 Can you hear me okay?

22          THE COURT:  I can.  Thank you.

23          MR. MORRIS:  Okay.

24          Your Honor, this is a bit like Groundhog's Day.  I

25 believe that we're going to spend the next half hour or an hour

33

1  discussing the very issues that were before the Court earlier

2  this year on the HarbourVest 9019 motion.

3         As the Court will recall from the June 8 hearing,

4  there is a complaint that's been filed ostensibly by the DAF

5  and CLO Holdco.  As Your Honor will recall, the testimony

6  established that Mark Patrick had just been installed as the

7  trustee, had no knowledge of the prior events, and Mr. Dondero

8  and Mr. Sbaiti spent quite some time together formulating this

9  particular complaint that is nothing less than a collateral

10 attack on the Court's prior order.

11        I'd like to, if I can, just walk through a PowerPoint

12 presentation to try to make the debtor's position quite clear,

13 if I may.

14        THE COURT:  You may.

15        MR. MORRIS:  And I would ask my assistant, Ms. Canty

16 (phonetic), to put up the first slide.

17        Your Honor, you'll recall that last December, the

18 debtor filed its motion under Rule 9019 for court approval of a

19 settlement.  The debtor was completely and utterly transparent

20 in what the terms of the settlement were.

21        Very briefly, as set forth in Appendix 2 or Exhibit 2

22 which was the motion itself, in Paragraph 32, Your Honor, the

23 debtor set forth the terms of the transaction for which it was

24 seeking approval.  Those terms included in the very first

25 bullet point a statement that HarbourVest shall transfer its

003711

34

1   entire interest in CLOF to an entity to be designated by the

2   debtor.

3          And that's an important point that we'll talk about

4   in a number of different contexts, Your Honor.  The debtor made

5   it very clear at the very first moment of this matter that it

6   was not going to acquire the asset but the asset was going to

7   be transferred to an entity to be designated by the debtor.

8   The debtor's motion filed last December clearly stated the

9   value of the interest that it would be acquiring in return.

10  That was also set forth in Paragraph 32 in a footnote.

11         It didn't say that it was the fair market value.  It

12  said the method of valuation was the net asset value and gave a

13  valuation date of December 1st so that all parties in interest

14  who received the motion understood the economics of the deal.

15  And the deal that the debtor was asking the Court to approve

16  was one whereby HarbourVest would receive certain claims and in

17  exchange for those claims, they were going to transfer their

18  interest in CLO -- HCLOF.

19         The debtor also filed on the docket for all to see a

20  copy of the settlement agreement.  The settlement agreement

21  sets forth the terms of the deal, including again the statement

22  that HarbourVest "will transfer all of its rights, title, and

23  interest in HCLOF."  It actually says to an affiliate or an

24  entity to be designated by the debtor.  And the transfer

25  agreement itself was also put on the docket.

003712

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-22   Filed 06/02/05   Page 158 of 227   PageID 3903
Exhibit 22   Page 306 of 105

35

1           So that's where things stood just before Christmas.

2  I know that there's some due process and other type arguments

3  that are in the Plaintiffs' opposition to the motion.  But, of

4  course, the undisputed facts are that the debtor timely filed

5  the motion.  The time period was consistent with all applicable

6  rules.  Nobody ever asked the debtor for an extension of time.

7  Nobody ever filed a motion for an extension of time.  And so

8  those due process arguments I think carry no weight at all.

9           So the debtor filed the motion.  And if we can go to

10  the next slide, we see what the responses were, and there were

11  several.  All of the responses, the only responses were

12  objections to the motion filed by Mr. Dondero and his certain

13  of his affiliated entities.

14           Mr. Dondero's objection can be summarized as follows.

15  He made the following observations and asserted the following

16  objections to the proposed settlement.  The first thing he said

17  is that the settlement far exceeds the bounds of

18  reasonableness.  Now, of course, one cannot make a

19  determination of reasonableness without having an understanding

20  of value.  The debtor was giving something and it was getting

21  something.

22           And so Mr. Dondero understood that the issue of value

23  was front and center.  If there was any mistake about it, he

24  also noted that he understood that as part of the settlement

25  and, again, I've written this incorrectly, HarbourVest will

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 18-22   Filed 07/06/22   Page 159 of 227   PageID 3904
Exhibit 22   Page 207 of 105

36

1 transfer its entire interest in HCLOF to the debtor. That is

2 not what Mr. Dondero understood. In fact, Mr. Dondero

3 understood that it would transfer its entire interest in HCLOF

4 "to an entity to be designated by the debtor," again, making it

5 clear that he knew exactly what the debtor was doing here. And

6 that can be found at Appendix 4 in Footnote 3 on Page 1 if you

7 want the exact quote from Mr. Dondero's pleading.

8           In the same footnote, he also specifically

9 acknowledges that he understood the valuation. He understood

10 the method valuation. He understood the valuation date of

11 December 1st. And he urged the Court in his pleading to

12 scrutinize the settlement to make clear that the available

13 value of the investment should be realized by the debtor's

14 estate.

15          And this is such a critical point, Your Honor. His

16 concern was that by placing the value in an entity other than

17 the debtor itself, that the Court wouldn't have jurisdiction

18 over that asset. That was his concern. So not only did he

19 understand that the asset was going to be transferred to an

20 affiliate, he wanted to make sure that this Court had

21 jurisdiction over the asset.

22          And, of course, Mr. Seery in his testimony and

23 otherwise, we provided the Court with all the comfort it needed

24 to know that even though it was being assigned to a special-

25 purpose vehicle wholly-owned by the debtor, it would

003714

37

1  nevertheless be subject to the Court's jurisdiction.

2          Mr. Dondero's trusts also filed an objection if we

3  can go to the next slide.

4          Dugaboy and Get Good represented by Douglas Draper

5  made the following observations and asserted the following

6  objections to the HarbourVest Settlement.  They, too, made

7  clear that they understood that the asset was going to be

8  transferred to an entity designated by the debtor.  They, too,

9  acknowledge that they understood that the debtor was valuing

10 the asset at approximately $22 million as of December 1st.  And

11 their objection was that the Court couldn't evaluate the

12 settlement without knowing how the asset was valued, without

13 knowing whether the debtor could acquire the asset, very

14 critical point.

15         These are the points that are made in the complaint.

16 These are the exact same points that are made in the complaint.

17 And also the Court couldn't evaluate the settlement unless they

18 understood that the value would be inure to the benefit of the

19 debtor's estate, again, mimicking Mr. Dondero's concern that by

20 placing the asset in an affiliate of the debtor, that it might

21 not be subject to the Court's jurisdiction.

22         Finally, and most importantly, if we can go to the

23 next slide.  The Plaintiff, CLO Holdco, filed an objection to

24 the 9019 motion.  And this is just so critical.  And this is

25 the Groundhog Day aspect that I specifically speak of.  CLO

1   Holdco's objection was based solely on its assertion that it

2   had a superior right to the opportunity to acquire the asset

3   that was being transferred by HarbourVest.  It only made one

4   argument in support of its contention that it had a superior

5   right, but that argument was specifically premised on the

6   membership agreement, Section 6.1 and 6.2 of the membership

7   agreement.

8        CLO Holdco, the Plaintiff in the underlying action,

9   argued to this Court that HarbourVest had no authority to

10  transfer the asset without complying with the right of first

11  refusal that would give CLO Holdco the opportunity to take the

12  asset for itself.  That's what this Court was told.  CLO Holdco

13  didn't make this argument fleetingly.  They provided an

14  extraordinarily detailed analysis of Sections 6.1 and 6.2 of

15  the membership agreement and concluded "that HarbourVest must

16  effectuate the right of first refusal before it can transfer

17  its interest in HCLOF.  That was the objection.  Objections

18  have consequences, as Your Honor knows.

19        If we can go to the next slide.

20        By filing an objection, CLO Holdco and the trusts and

21  Mr. Dondero became participants in the litigation.

22  Notwithstanding the Plaintiffs' arguments to the contrary, when

23  they file the objections, they participate in what's called a

24  contested matter.  And in a contested matter, they had every

25  right to take all discovery on any issue that was related to

1  the 9019 motion, including the transfer, the disposition of the

2  asset to an affiliate of the debtor, the valuation of the asset

3  that's being received, the merits of the settlement itself, the

4  causes of action, whether, you know, what communications that

5  were, the negotiations, what did Mr. Seery and Mr. Pugatch

6  discuss?  Right?

7          They could have taken any discovery they wanted.  And

8  they did avail themselves of discovery, in fact.  They did -- I

9  don't know why they did what they did, but they chose to take

10 one deposition, and that was Mr. Pugatch, okay.

11         His deposition transcript, I think is at Exhibit 7,

12 or Appendix Number 7, and it was a long deposition.  It really

13 was.  And they asked Mr. Pugatch at the deposition if he knew

14 what the value of the asset that was being transferred was.

15 And he said $22.5 million.  So it wasn't just Mr. Seery or the

16 debtor who was subscribing to this valuation.  The party on the

17 other side of an arm's length negotiation was subscribing to

18 the exact same valuation.

19         The Plaintiffs could have taken whatever discovery

20 they wanted.  This is a full and fair opportunity to

21 participate in the litigation.  We proceeded to trial.  Before

22 we got there, actually, the debtor filed its response to CLO

23 Holdco's objection and proffered its own very detailed and

24 apparently very persuasive analysis that CLO Holdco's objection

25 was without merit, that CLO Holdco had no right of first

40

1  refusal under the facts and circumstances as they existed, and

2  with Grant Scott, Mr. Dondero's childhood friend at the helm,

3  we got to Court for the contested hearing on the debtor's 9019

4  motion, and CLO Holdco withdrew their objection.

5  And I've put up on the screen just an excerpt of the

6  transcript because, you know, when we talk about whether or *res*

7  *judicata* should apply, because was there a hearing on the

8  merits?  Was there a decision on the merits?  Just look at the

9  words of CLO Holdco's lawyer.  "CLO Holdco has had an

10  opportunity to review the reply briefing and after doing so has

11  gone back and scrubbed the HCLOF corporate documents based on

12  our analysis of Guernsey law."

13  And some of the arguments of counsel in those

14  pleadings and our review of the appropriate documents, counsel

15  obtained the authority from Mr. Scott to withdraw the CLO

16  Holdco objection based on the interpretation of the member

17  agreement.  We were grateful for that and the Court

18  specifically said in response, "That eliminates one of the

19  major arguments that we had anticipated this morning."

20  Apparently, the Plaintiffs believe that those events

21  have no meaning and that this Court's reliance on CLO Holdco's

22  substantive withdrawal of its objection has no meaning.  I

23  think they're wrong, and we'll get to that in a moment.

24  We proceeded with the hearing.  Mr. Seery and

25  Mr. Pugatch testified at length.  If you look at Footnote 3,

003718

1  you'll see Mr. Seery testified for almost 70 pages of

2  testimony.  Mr. Pugatch testified for almost 45 pages of

3  testimony.  His testimony was exhaustive.  And, again, any of

4  the objecting parties had the right to ask whatever questions

5  they want.

6          But I do want to just note a few things that aren't

7  up on the screen right now.  If you go to Appendix 9, Your

8  Honor, which is the transcript of the hearing, at Page 13, you

9  will see that the very first thing I discussed in my opening

10  statement was the economics and how with a valuation of $22.5

11  million this deal made sense for the debtor.

12          You will see from Pages 30 to 42 there is extensive

13  testimony from Mr. Seery about the amount and the value of the

14  asset.  But the most important part of Mr. Seery's testimony is

15  that he explains how it came to be that HarbourVest agreed to

16  transfer its interest in HCLOF to an affiliate of the debtor.

17  And that came about, not because Mr. Seery or the debtor was

18  initially at all interested in doing this.  The whole idea

19  originated with HarbourVest.

20          They wanted to extract themselves from the Highland

21  platform.  They wanted to give this piece up.  So there's no

22  conspiracy going on here.  The unrebutted testimony that all of

23  the objecting parties had an opportunity to challenge was that

24  the whole idea originated with Mr. Pugatch and with

25  HarbourVest.  I think that's an important point to take into

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 18-2   Filed 12/06/22   Page 165 of 227   PageID 3910
Exhibit 22   Page 4 of 105

42

1  account.

2          And finally, again, from the hearing, if you look at

3  at Appendix 9, you'd also find that Mr. Pugatch, again,

4  testified, as he had in his deposition, as to the value of the

5  interest being transferred.  So we completed the testimony.  We

6  rested our case having had a full and fair opportunity to

7  contest the motion.  The objecting parties rested as well.  And

8  we got to the point where we had to prepare the notice, and we

9  were discussing that at the hearing, if we can go to the next

10  slide.

11          And it's very important, because again, this was all

12  done transparently, and it was all done on the record.  And

13  after the close of evidence, I addressed the order that was

14  going to be prepared.  I specifically said that I wanted to

15  make clear that we were going to include a provision, "that

16  specifically authorizes the debtor to engage in, to receive

17  HarbourVest the asset, you know, the HCLOF interest," right.  I

18  wanted everybody to know that was what was going to happen, and

19  then I said, "The objection has been withdrawn."  I think the

20  evidence is what it is and we want to make sure that nobody

21  thinks they're going to go to a different court somehow to

22  challenge the transfer.  But yet, that is exactly what the

23  complaint seeks to do.

24          Having put everybody on notice as to where we were

25  going, as to what the evidence showed, the debtor drafted and

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-22   Filed 04/01/22   Page 166 of 227   PageID 3911
Exhibit 22   Page 44 of 105

43

1   the Court adopted an order, and the order says, among other

2   things, that HarbourVest was authorized to transfer its

3   interest to the debtor.  Actually, it says, "to a wholly owned

4   and controlled subsidiary of the debtor," pursuant to the

5   transfer agreement, "without the need to obtain the consent of

6   any party or to offer such interest first to any other investor

7   in HCLOF."  So the Court heard the 9019 motion pursuant to a

8   Bankruptcy Rule and entered and order that was unambiguous and

9   that the Plaintiffs did not appeal from.

10          We can go to the next slide.

11          At a very high level, Your Honor, it is just crystal

12  clear that the complaint is just inextricably intertwined with

13  the 9019 proceedings and the order itself.  I think Mr. Sbaiti

14  would agree with me that but for the order that approved the

15  transfer of the asset and the testimony about the value of that

16  asset, they have no claims.

17          Every single claim is predicated on what happened in

18  the 9019 hearing.  Every single claim is predicated on the

19  Court's order approving the transfer of the asset and the

20  testimony and evidence that was adduced in relation to that

21  asset.

22          There were really only two issues that the Court -- I

23  mean, if you want to think about it at its most simplistic

24  level, the Court was being asked to assess, is it fair, is it

25  reasonable, is it legally permissible for the debtor to give

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-12   Filed 12/05/22   Page 167 of 227   PageID 3912
Exhibit 22   Page 456 of 105

44

1  something.  In this case, allowed claims and releases, and to

2  get something in return.  In this case, HarbourVest's interest

3  in HCLOF and releases in return.  And that is really the

4  gravamen of the complaint.

5          The complaint is based whether it's breach of

6  fiduciary duty or RICO or breach of contract or tortious

7  interference, whatever the claim is, none of them exist if the

8  debtor doesn't get this.  They just don't exist.  And that is

9  why the complaint and the proceeding are inextricably

10  intertwined.  And if you just take a look at just one paragraph

11  of the pleading, it says at the core of this lawsuit is the

12  fact that HCM, that's the then debtor, purchased the

13  HarbourVest interests in HCLOF for $22.5 million knowing that

14  they were worth far more than that.  There's not a cause of

15  action that exists in the complaint that isn't dependent on

16  Paragraph 36.

17          So if we can go to the next slide with that

18  background, I'd like to argue why under 12(b), the complaint

19  should be dismissed because the claim should be barred under

20  the doctrine of *res judicata*.  Luckily, Your Honor, there is at

21  least one area of agreement between the parties here, and that

22  is the purpose of the doctrine and the elements that have to be

23  satisfied in order to meet the burden of proof necessary to

24  have the claims barred.  And in Footnote 1, you can -- I've

25  tried to just be helpful to the Court to show that we may not

45

1   cite to the exact same cases, but the parties agree that the

2   doctrine is intended to foreclose the re-litigation of claims

3   that were or could have been raised in a prior action and that

4   there's four elements that have to be satisfied for the

5   doctrine to apply.

6          The parties have to be either identical or at least

7   in privity, the judgment in the prior action had to have been

8   rendered by a court of competent jurisdiction.  Number three,

9   the prior action had to have been concluded by a judgment on

10  the merits.  And the last one is that the same claim or cause

11  of action was involved in both suits.  So I just want to spend

12  a few minutes now, Your Honor, going through those four

13  elements to show the Court how easily the reorganized debtor

14  meets this standard.

15         If we can go to the next slide, I can take care of

16  the first two elements very quickly.

17         The first element, the debtor asserted that the

18  Plaintiffs were parties or in privity with parties to the prior

19  proceeding.  That's at Paragraph 17 of the motion to dismiss.

20  The debtor relies on the deposition testimony of Grant Scott,

21  who was then the trustee of the DAF.

22         CLO Holdco is a wholly-owned subsidiary of the DAF,

23  or wholly controlled, in any event, and Mr. Scott's testimony

24  was that he was the only director and there were no employees

25  of either entity.  So we, in our motion, put forth evidence to

003723

46

1  establish the first element, and I don't believe, maybe I've

2  missed it.  I don't believe that the Plaintiffs have contested

3  that element.  If they have, I think Mr. Scott's testimony will

4  carry the day, in any event.

5          The second element as to whether or not a court of

6  competent jurisdiction is the entity or the court that rendered

7  the ruling.  Of course, that's been met, too.  The Plaintiffs,

8  in their opposition to the motion to dismiss, suggested that

9  the bankruptcy court would have lacked jurisdiction if their

10 cross motion to withdraw the reference was granted.  They said

11 if the district court decides that mandatory withdrawal

12 applies, then it cannot find that the bankruptcy courts already

13 entered final judgment was rendered on Plaintiffs' causes of

14 action and had jurisdiction to do so.  I think that's just a

15 clear misstatement of the law.

16         But in any event, Your Honor, at this point, I

17 believe it's irrelevant because the district court, in fact,

18 sent the case back to Your Honor and back to this Court.  And

19 so, at the end of the day, Plaintiffs' argument doesn't hold

20 water because of the district court's ruling, which can be

21 found -- the order of reference can be found at Docket

22 Number 64.  And so I think that easily takes care of the second

23 prong.

24         The third prong is whether -- if we can go to the

25 next slide -- the prior proceeding resulted in a judgment on

003724

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 3-12   Filed 12/06/22   Page 170 of 227   PageID 3915
Exhibit 22   Page 246 of 105

47

1   the merits.  And this is really the critical point, Your Honor.

2   As the Court knows, the whole doctrine of *res judicata* is

3   designed to prevent, as the parties agree, the re-litigation of

4   claims.  Stated another way, it's to bring finale.  It's to

5   make sure that the Court doesn't hear the same claims and the

6   same issues that either were brought or that could have been

7   brought in a prior proceeding.  And so, we believe that we

8   easily meet the standards set forth in the third prong.  The

9   9019 order necessarily determined that the *quid pro quo* that I

10  described earlier was fair, reasonable, and legally

11  permissible.

12        Notwithstanding their assertions to the contrary, the

13  Plaintiffs are most definitely seeking to unwind at least one

14  half of the Court's order by belatedly claiming that they are

15  entitled to the benefit of the bargain while leaving Highland

16  burdened, frankly, with the claims that HarbourVest got as part

17  of the deal.  I will tell you, Your Honor, and this is

18  argument, the debtor would never have asked for, and I don't

19  believe that the Court would ever have granted, the 9019 motion

20  if they thought that there was a risk in the future that

21  Highland wouldn't get the benefit of the bargain and it was

22  incumbent upon CLO Holdco and the DAF, and frankly, any party

23  in interest, to stand up and be counted and tell the Court and

24  the debtor, why the debtor was not entitled to do this deal and

25  CLO Holdco did that.  They actually did.

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-22 Filed 09/02/22   Page 171 of 227   PageID 3916
Exhibit 22   Page 49 of 105

48

1        They stood up and they filed an objection and they

2  said we have a superior right to this asset in the form of a

3  right of first refusal.  They wound up folding in the face of

4  persuasive argument, and I respect the lawyer who did that.  I

5  just do.  But that was the time to speak up, and that's why it

6  is on the merits because that is exactly what *res judicata* is

7  intended to do.  It's intended to have everybody put your cards

8  on the table.  You don't put one card on the table and say, I'm

9  going to challenge this under 6.2 of the members agreement, but

10 I'm not going to tell you that I also think you owe me a

11 fiduciary duty under the Advisors Act or as the control party

12 or under any other theory that they had.  They can't do that.

13 That's exactly what the problem is here.

14        If we can go to the next slide.  Is it a judgment on

15 the merits?  The debtor and the Court relied on CLO Holdco's

16 representation that it was withdrawing its argument, its claim,

17 its contention, its assertion that it had a superior right to

18 obtain the HarbourVest interest in HCLOF.  Again, they did so

19 not whimsically, not because Mr. Kane was going to be out of

20 town and he couldn't make the hearing.  He did it after, and I

21 don't think this matters frankly, but I think it's worth noting

22 that he did it after an extremely careful analysis.  I would

23 tell you, Your Honor, that -- well, I would argue, Your Honor,

24 that even if Mr. Kane at CLO Holdco had never filed an

25 objection, if they'd never filed -- if they'd gotten notice

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 3-122   Filed 05/06/22   Page 172 of 227   PageID 3917
Exhibit 22   Page 250 of 105

49

1   that this was happening and they sat silently, that would have

2   been enough for *res judicata* because the issue before the Court

3   was whether it was legally permissible for the debtor to

4   acquire this asset.

5           And if they had an obligation, if they owed a duty to

6   another party, it wouldn't have been legally permissible.  And

7   if somebody believed that it wasn't legally permissible because

8   a duty was owed to them, they had an obligation to speak up.

9   And so I think it's very important, particularly for the

10  collateral estoppel argument that I'll make in a moment, that

11  CLO Holdco did in fact file an objection.  It was based on the

12  breach of contract claim that's in their complaint.  It's the

13  exact same claim.  And they withdrew it.  I think it's very,

14  very important.  I think it highlights why *res judicata*

15  applies.  I think it is the linchpin of the collateral estoppel

16  argument.

17          But at the end of the day, I think if they say

18  nothing, they should be estopped or precluded under *res*

19  *judicata* from now asserting -- it would be like -- I was

20  thinking about this earlier, Your Honor.  If you'll remember

21  earlier this year, Mr. Dondero and his entities have kind of a

22  habit of withdrawing objections at the last minute.  We had a

23  couple of sale hearings earlier this year.  And the issue was

24  valuation, you know, and the process, and could the debtor meet

25  its burden of proving that the sale outside of the ordinary

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-32   Filed 10/06/22   Page 173 of 227   PageID 3918
Exhibit 22   Page 50 of 105

50

1  course of business was in the debtor's best interest.  And they

2  sold that restaurant.  And Mr. Dondero objected.  And at the

3  last second, they withdrew the objection.  Did they sue

4  tomorrow?  Does Your Honor really think that they could bring a

5  lawsuit tomorrow and say they just found a document or theory

6  on which the debtor had an obligation to give them a right of

7  first refusal, even though we've already closed on the

8  transaction, even though they were given notice of the

9  transaction, even though they filed an objection to the

10  transaction, even though they withdrew the objection?  Would

11  the Court tolerate for one second a new pleading tomorrow from

12  Mr. Dondero that the debtor actually had a fiduciary duty to

13  give him a right of first refusal to buy that asset under

14  whatever theory, just because he pleads it and the Court has to

15  accept as true the allegations in the complaint?  I think not.

16  And I think it's worth thinking about that to highlight just

17  how -- just how wrong this is.

18          Continuing on.  You know, the Plaintiffs in

19  opposition say it can't be a trial on the merits because we

20  weren't parties.  Of course they were parties.  Again, they

21  filed an objection.  They were the parties to the contested

22  matter, full stop.  They rely on a case called Applewood and

23  they say, this is the very first point they make in their

24  brief.  Applewood, if it wasn't *res judicata* in Applewood, how

25  could it possibly be *res judicata* here?  But the facts are just

Case 22-03052-sgj    Doc 34-22    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 31-12    Exhibit 22    Filed 02/06/23    Page 252 of 205    Page 174 of 227    PageID 3919

51

1  so inapposite, right?

2            In Applewood, you had a garden variety plan and

3  release where the debtor and the officers and directors got a

4  discharge.  No objection to it.  And a secured lender later on

5  sought to sue guarantors who happened to be officers and

6  directors.  And the court, not surprisingly, said that the

7  confirmation order wouldn't prevent the secured lender from

8  going after the officers and directors, not in their

9  capacities, as such, but in their capacity as guarantors, which

10  were never part of the confirmation order.  That just doesn't

11  apply here because here, we have the debtor making a motion

12  before the Court in which it sought permission and authority to

13  acquire a particular asset.  Anybody who had a claim to that

14  asset should have stepped forward and put their cards on the

15  table.

16            And again, CLO Holdco put their cards on the table

17  and they lost, and they folded.  To use the poker analogy, they

18  folded.  And to hear them come into Court today and say we're

19  going to sue you because I reshuffled the deck, it's not right

20  and Applewood has no relevance.

21            Finally, Your Honor, you know, it's not on the

22  merits, they say, because you know, Mr. Seery and the debtor

23  hid the true value of the asset, and had we only known the true

24  value of the asset, we would have made all of these other

25  claims.  The fact of the matter is, you either have a fiduciary

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 3-12   Filed 10/25/22   Page 175 of 227   PageID 3920
Exhibit 22   Page 253 of 305

52

1 duty or you don't.  And if you had a fiduciary duty, they

2 should have spoken up and they did only under 6.2, but they

3 did.

4         But here's the important part, Your Honor.  Take the

5 allegations as true.  You have to take all of the allegations

6 as true, not just some of them.  And if you look at

7 Paragraph 127 of the complaint, and I would ask Ms. Canty to go

8 to Appendix 11 and let's just put Paragraph 127 up on the

9 board.

10         Here's the irony of the whole thing, right.  The

11 whole complaint is based on the fact that somehow Mr. Seery was

12 engaged in insider trading.  They accused him of insider

13 trading, and they say he didn't disclose the full value of the

14 asset.  Just read Paragraph 127.  James Dondero, who was on the

15 board of MGM, is the tippee.  You've got an insider trading

16 case -- I mean, I don't represent MGM.  I'm not with the SEC.

17 I don't know why Mr. Dondero thought he should be telling

18 Mr. Seery in December, 2020.  It's not clear if it was before

19 or after the 9019 motion was filed.  But Mr. Dondero is the

20 very source of information -- you can't make this up.  He's the

21 very source of the information that he now complains Mr. Seery

22 didn't disclose.

23         Of course, Mr. Dondero, the trust, CLO Holdco could

24 have asked Mr. Seery at any time, how did you come up with your

25 valuation?  Mr. Dondero, knowing that he had supplied to

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 3-122   Filed 10/06/22   Page 176 of 227   PageID 3921
Exhibit 22   Page 250 of 205

53

1   Mr. Seery, according to Paragraph 27, please take it as true
2   for purposes of this motion only.  He's the source of the
3   inside information.  And now he has the audacity to come to
4   this Court, notwithstanding the Court's approval, all of the
5   time and money and effort spent in the 9019 process, and say,
6   Mr. Seery was wrong because he didn't tell CLO Holdco and the
7   DAF about the information that Mr. Dondero gave to Mr. Seery.
8   It's not right.

9        It was a judgment on the merits.  And if Mr. Dondero
10  or the DAF or CLO Holdco or the trust wanted to challenge the
11  valuation, they had every opportunity to do so.  And based on
12  Paragraph 127, if the Court accepts it as true, shame on them.
13  Shame on them for not pursuing this issue before.  The guy gave
14  Mr. Seery, according to this allegation, and I'm just going to
15  leave it there, inside information.  And he sits there in
16  silence, right?  It says, look at the last sentence: "The news
17  of the MGM purchase should have caused Seery to revalue HCLOF's
18  investment."  Seriously?

19        The third element is (indiscernible).  The fourth
20  element, if we can go to the next slide.

21        Are they the same claims?  Did the claims arise from
22  the same set of operative facts?  I've addressed this pretty
23  clearly already, so I don't want to belabor the point.  But
24  obviously, both the 9019 motion and the complaint arise solely
25  from the debtor's settlement with HarbourVest.  The debtor's

54

1  acquisition of HarbourVest's interest in HCLOF and the debtor's

2  valuation of that interest.  Without those three facts, there

3  is no complaint.  It's just not credible to argue that the

4  fourth element is not met.

5          The case law is clear.  It's quoted in the

6  Plaintiffs' opposition.  It's not just the test of whether the

7  claims are the same.  It's whether the claim is the same as

8  that which was brought or could have been brought.

9          In their opposition, the Plaintiffs contend that the

10 claims "did not write them until after the settlement was

11 consummated," and that the first time the plaintiffs heard

12 about the valuation of HarbourVest's interests was at the

13 January 14, 2021, hearing.  I think I quoted that.  If you

14 look, I don't know if it's Page 10 or Paragraph 10; the way I

15 wrote it, it's probably Page 10.  I think that's a quote right

16 out of there.  But of course, as we saw the debtor disclosed

17 the valuation in its very initial motion, CLO Holdco's counsel

18 elicited valuation testimony directly from Mr. Pugatch, so that

19 was before the hearing.

20         And of course, Mr. Dondero and the trusts both cited

21 in their objections the valuation.  The notion that this was

22 not right, just -- it's contradicted by their own conduct,

23 their objections, their questions in deposition, the

24 information that was contained in the motion that they objected

25 to.

**WWW.LIBERTYTRANSCRIPTS.COM**

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-2   Filed 06/02/25   Page 178 of 227   PageID 3923
Exhibit 22   Page 256 of 105

55

1          I do want to go off-script for just a minute, if we

2     could just take that down because I know that this is probably

3     something that Mr. Sbaiti may argue.  And that is, well, gee,

4     but you have to take the allegation as true that Mr. Seery

5     wasn't honest, that Mr. Seery lied to the court.  I don't

6     understand why there's not a fraud cause of action in there,

7     but there's not.  But that's their theory.

8          And gee, how does he get to skate away Scott free if

9     he's allowed to do that with impunity, right?  I will tell you,

10    Your Honor, of course you've seen Mr. Seery many times.  You've

11    made your own assessments of his credibility.  I'm not here to

12    argue the merits, but I will just say that the Defendants, if

13    ever forced to, will contest the allegation.

14         But here's the thing, and here's the important point

15    about, you know, whether or not he could lie with impunity and

16    say, I suspect that's where Mr. Sbaiti is going to want to go.

17         Mr. Seery said what he said.  And he had a reason to

18    speak, and he spoke, and he said what he said and he told

19    everybody who would listen exactly what he was doing and how he

20    was doing it.  For whatever reason, the objectors put the

21    valuation front and center.  It's right in their objections.

22    They noted the objections.  But for whatever reason, they did

23    nothing.

24         Whether they were negligent or whether they were

25    lying in wait is kind of irrelevant.  They had a full and fair

003733

1   opportunity to contest this issue.  And if they had done so,

2   and the evidence proved what they're now alleging, they can't

3   tell you what would have happened.  So, you know, HarbourVest

4   may have taken a different position.  The Court may have done

5   something.

6          We're never going to know now because Mr. Seery and

7   the debtor are getting away with something, but because they

8   put in evidence that went unchallenged by Mr. Dondero and the

9   Plaintiffs.  It simply went unchallenged.  And they say, oh,

10  gee, that's because we didn't know.  Well first of all, you

11  didn't ask.  And second of all, again, the source of the inside

12  information, the reason that Mr. Seery should have known the

13  asset was worth more.  The reason that he should have refrained

14  from trading and not engaged in insider information was

15  Paragraph 127.  It was Mr. Dondero.

16         Here's another thing.  If -- if again Mr. Seery had

17  not been honest with the Court and that was ever brought out,

18  Maybe HarbourVest -- maybe HarbourVest would have had a right

19  to complain.  There's a lot in the complaint about oh,

20  HarbourVest was misled.  The actual evidence that's in the

21  record, and this is part of res judicata, Mr. Seery testified

22  very clearly to the arm's length negotiation that took place.

23  He told the Court under oath that the negotiations were

24  contentious.

25         He told the Court under oath that in order to try to

1 resolve the case, he and Mr. Pugatch went off and had their own

2 private conversation without lawyers.  They could have taken

3 discovery on any of that, right.  What did you guys talk about?

4 It's certainly not privileged.  They had every opportunity.

5 But what we do know is that Mr. Pugatch under oath, in

6 deposition, and at trial, said the value is $22.5 million.

7            So I don't think Mr. Pugatch or HarbourVest is ever,

8 ever, every going to complain about the transaction they did.

9 Because of what the evidence simply shows.  But again, you've

10 got the Plaintiffs in their complaint saying that somehow the

11 debtor and Mr. Seery in negotiating this transaction has now

12 exposed the debtor to liability.  It just makes no sense.

13            So there was a time and there was a place to

14 challenge Mr. Seery.  Somebody, you know, maybe HarbourVest

15 could have done something, maybe they could still do something.

16 I don't know.  If they really think that there's a problem,

17 maybe we'll hear from HarbourVest someday.  But the Plaintiffs

18 have no right to complain.  They just don't.  They knew

19 everything.  They were the source of the inside information.

20 They sat on their hands, and they shouldn't be allowed to do

21 what they're doing now.

22            If we can go to the next slide.  I want to move to

23 the next theory and try to finish this up.  The next theory is

24 that the Plaintiffs' claims are barred by judicial estoppel.

25 The judicial estoppel argument is really, really very

58

1  straight-forward.  And it's important because if the Court

2  thinks about this the way I do, it's that the whole issue of

3  valuation is completely irrelevant to the Plaintiffs unless

4  they can show that they were owed some kind of duty, that they

5  had some superior right to acquire the asset.  But that's

6  exactly the issue that CLO Holdco relied upon and withdrew and

7  should now be estopped from pursuing.  Right.

8          The legal standard, again the parties agree on, that

9  in order to be estopped, the party must take an inconsistent

10  position.  And the party must have convinced the Court to

11  accept that position.  Again, both prongs are easily met here

12  in just a few sentences from the January 14 hearing.  You have

13  Mr. Kane saying that he understands and acknowledges and admits

14  that they have no superior right to the investment.  And the

15  Court relying on that very representation in declining to

16  conduct a hearing and render a ruling on the merits of the

17  claim that was withdrawn.  The objection that was withdrawn.

18          And for the avoidance of doubt, after Mr. Draper

19  spoke on behalf of the Trust, the Court, at Page 22 engaged in

20  the following colloquy.  The Court asked Mr. Draper:

21          "THE COURT:  Were you saying that the Court still

22              needs to drill down on the issue of whether the

23              debtor can acquire HarbourVest's interest in HCLOF.

24          "MR. DRAPER:  No.

25          "THE COURT:  Okay.  I was confused whether you were

003736

59

1          saying I needed to take an independent look of that.

2          Now that the objection has been withdrawn of CLO

3          Holdco, you're not pressing the issue.

4          "MR. DRAPER:  No.  I am not."

5          Okay.  You can call it res judicata, you can call it

6     judicial estoppel, collateral estoppel, the two prongs are

7     easily met.  They're taking an inconsistent position today and

8     through all kinds of different theories, including the one that

9     they withdrew, the Plaintiffs assert that they had a superior

10    right to acquire the interest from HarbourVest.

11         And they should have asserted those rights at the

12    hearing.  That was the time.  And they should be estoped now

13    from taking a completely inconsistent position from the one

14    that was before the Court.  And I just do want to point out,

15    the statement from a case called <u>Hall vs. G.E. Plastic</u>.  And

16    it's interesting, Your Honor, because there's only a few cases

17    that I focused on, because this is really more fact intensive.

18    And there isn't a dispute as to the, you know, the elements of

19    these matters.

20         But it is interesting that the Plaintiffs, you know,

21    generally ignore all of the cases that we cite to.  One which

22    is <u>Hall vs. G.E. Plastic</u>, where the Court said that the focus

23    on the prior success or judicial acceptance requirements is to

24    minimize the degree of a party contradicting a Court's

25    determination, based on a party's prior position.  That's the

003737

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 1-22   Filed 10/06/22   Page 183 of 227   PageID 3928
Exhibit 22   Page 16 of 105

60

1  whole point of the exercise.  You can't do this.  You can't do

2  this.

3      Just quickly, that leaves the individual arguments as to

4  each of the five causes of action and I just want to go through

5  some highlights.  There's a negligence claim, Your Honor.  And

6  we did not file a pleading, but the Court can certainly take

7  judicial notice of the fact that the effective date has

8  occurred.  Under the effective date, the plan is now effective.

9  That includes the exculpation clause, as Mr. Pomerantz, I think

10  accurately and without contradiction pointed out earlier, the

11  exculpation clause applies specifically to the debtor and to

12  negligence claims.  And that's not a matter that's at all

13  subject to appeal.

14      So I think just to add to the arguments that we have

15  in our papers, which I adopt and do not abandon for any

16  purpose, I would add to the argument on negligence, that it's

17  now precluded, as a result of the plan becoming effective.

18      The fiduciary duty count suffers from numerous defects.  I

19  just want to point out a couple of them.  They don't respond to

20  the argument under Corwin, that under the Advisor's Act, there

21  is no private right of action to sue for damages arising from a

22  breach of fiduciary duty.  This claim rears its head in

23  virtually every single complaint.  They've never addressed

24  Corwin.  Corwin is binding on this Court, and it is unambiguous

25  that there is no private right of action to sue for damages for

61

1  breach of fiduciary duty under the Advisor's Act.

2          They ignore Goldstein.  Goldstein is not from the

3  Fifth Circuit, but it's very persuasive authority that advisors

4  do not owe fiduciary duties to their individual investors.

5  Instead, they owe fiduciary duty to their client.  Their client

6  is the entity with whom they're in contractual privity.  And so

7  in this case, there's no fiduciary duty there, either.

8          The breach of contract claim.  Again I just -- I

9  would just say quickly, Your Honor, it's barred under judicial

10  estoppel.  Even if it wasn't, it's clear based on Mr. James'

11  analysis and admission that the debtor's, or the reorganized

12  debtor's interpretation of 6.2 is accurate.  And you know, I

13  said this in the beginning.  Now let me tie it in a bow because

14  the breach of contract claim, and the tortuous interference

15  claim are both tied to the same thing.  And that is the

16  assertion that the Plaintiffs had a right under the membership

17  agreement, a right of first refusal.

18          And they basically say that the debtor was playing

19  games.  That they shouldn't be able to get through 6.2 by

20  assigning it to an affiliate.  And that's where I go back, Your

21  Honor, and just remind the Court that the debtor told the whole

22  world exactly what they were doing in their motion.  And their

23  objections, Mr. Dondero and the Trusts both acknowledge to the

24  whole world that they understood exactly what was happening.

25          In fact, their concern was not that it was going to

003739

1  the debtor, but that it might be going to an affiliate outside

2  of the bankruptcy court's jurisdiction.  And for them to now

3  say, having taken all of those positions -- talk about

4  inconsistent positions.  They should be barred from saying

5  today, that the use of an affiliate to effectuate the

6  transaction was wrongful, because they actually told the Court

7  that they needed to -- that the Court needed to make sure that

8  it had jurisdiction over the very entity they now say somehow

9  shouldn't have been allowed to get the asset.

10         It's a bit much.  So that takes care of the tortuous

11  interference.

12         The RICO claim, Your Honor, again is a motion.

13  There's so many different aspects to it.  But I don't think the

14  Court needs to get past the Supreme Court holdings in HJ, Inc.

15  Again, just simply ignored by the Plaintiffs in their

16  opposition to the motion to dismiss.  In HJ, Inc., the Court --

17  the Supreme Court did an exhaustive analysis to try to

18  determine and ultimately did determine, what a pattern of

19  racketeering activity meant.  And the Supreme Court came to the

20  following formulation.  That it had to have two or more

21  predicate related offenses that amounted to a threat of

22  continued criminal activities.

23         You know, the notion here is that the debtor and Mr.

24  Seery engaged in insider trading.  We've already -- I've

25  already mentioned that according to the complaint, which the

003740

1 Court can take as true.  Mr. Dondero, himself, was the tippee.

2 But be that as it may, they don't come close to meeting the

3 very high standards set forth by the Supreme Court in HJ, Inc.

4 to show that whatever conduct Mr. Seery and the debtor engaged

5 in, and if you take the allegations as true, in not telling

6 what the fair value of the asset was, that that doesn't amount

7 to a hill of beans for purposes of RICO.  That you don't have

8 any, I think predicate acts.  I think here's the Court,

9 predicate acts extending over a few weeks or months,

10 threatening no future criminal conduct, do not meet RICO

11 pleading grounds.  Right.

12        Security fraud claims cannot be predicate acts for

13 purposes of RICO.  That is also clear.  And that is really, I

14 mean they say mail, wire and fraud.  But what's really at heart

15 is the 10(b)(5).  Okay, it's the 10(b)(5) claim.  Again, Mr.

16 Seery being -- I mean Mr. Dondero being the tippee.  But those

17 are just some of the reasons.

18        None of, you know, that the RICO claim fails. You

19 know, I'll otherwise rely on the papers, unless the Court has

20 specific questions as to any of the other pieces of the motion

21 to dismiss the RICO claim, or any other aspect of the

22 Defendants' motion.  I think this is clear.  I think we win, no

23 matter how you slice it.  It's just wrong.  It's just wrong.

24    This Court will never, ever have a final order if Mr.

25 Dondero is able to engineer complaints such as this, which seek

64

1  to assert claims that absolutely positively could have and

2  should have been brought at the time the debtor made its

3  motion.

4          Unless the Court has any questions, I have nothing

5  further.

6          THE COURT:  I do not.  All right.

7          Mr. Sbaiti, I'm going to let you have as much time as

8  Mr. Morris.  He took 55 minutes.  As I mentioned, I have a hard

9  stop at 12:00 to do a swearing in ceremony.  So if you're not

10 finished in 40 minutes, then I'm going to have to take a break

11 and come back and let you finish.  All right?

12         MR. SBAITI:  Thank you, Your Honor.  Although I don't

13 think I'm going to be much longer than 35-ish minutes.

14         THE COURT:  Okay.

15         MR. SBAITI:  if not less.

16         THE COURT:  Okay.

17         MR. SBAITI:  I think you'll be able to be done by --

18 we'll be able to be done by noon.

19         THE COURT:  All right.  Thank you.

20         MR. SBAITI: Thank you, Your Honor.  Your Honor, may I

21 share my screen?

22         THE COURT:  You may.

23         MR. SBAITI:  Thank you, Your Honor.  Do you see my

24 Power Point, Your Honor?

25         THE COURT:  I do.

003742

1          MR. SBAITI:  Thank you, Your Honor.  I don't know

2   what which one you see.  Is it the --

3          THE COURT:  I see presentation.

4          MR. SBAITI:  With the full page?

5          THE COURT:  Yes, uh-huh.

6          MR. SBAITI:  Okay, yeah, great.  I just want to make

7   sure we're on the right page.  Thank you, Your Honor.  So Your

8   Honor, the defendant debtor is a registered investment advisor.

9   And it all begins with that.  And this where the distinctions

10  between what happened in the 9019 and I'll get to the elements

11  of res judicata through argument.

12          But the first thing that has to be identified is that

13  the Defendant is a registered investment advisor.  The

14  objection filed by Holdco back during the 9019 was an objection

15  against HarbourVest selling its interest by filing the right of

16  first refusal.  It did not deal with the investment advisor

17  feature of Highland's relationship.  And I'll get to why the

18  9019 doesn't preclude these arguments today.

19          This is essentially the structure.  Highland was the

20  investment advisor of HCLOF, and Holdco is an investor in

21  HCLOF.  And so Highland would owe a fiduciary duty under the

22  Advisor's Act against -- to CLO Holdco.

23          Highland also had a direct advisor relationship with

24  the DAF.  And so under the Investment Advisor's Act, it owed

25  fiduciary duties to both of those entities.  The law governing

003743

66

1  registered investment advisors is that it's a federally

2  recognized and defined fiduciary duties.  The fiduciary duty to

3   there's a fiduciary duty to affirmatively keep the advisee

4  informed and the fiduciary duty not to self-deal, i.e., not to

5  trade ahead of an advisee and opportunity that an advisee would

6  want or expect and without the advisee's expressed informed

7  consent.

8          This is a federally recognized and defined fiduciary

9  duty and it's actionable under state fiduciary duty laws.

10 While Mr. Morris ended his argument by saying we didn't deal

11 with their case law saying that there's no private right of

12 action under the Advisor's Act, the fact of the matter is that

13 Judge Boyle, about ten years ago, found that a state -- the

14 breach of fiduciary duty claim can be predicated on breaches of

15 federally imposed fiduciary duties under the Advisor's Act.

16 And that's what Douglass v. Beakley held.  And that's actually

17 what we cited in our response.  So I'm not sure why he would

18 argue that we haven't addressed the issue of where does this

19 private right of action come from.

20          Federal Law supplies the rules of the relationship

21 and State Law provides the cause of action for those breaches.

22 Now the scope of that has been expounded upon by many cases.

23 The Fifth Circuit held in Laird, as a fiduciary, the standard

24 of care to which an investment advisor must adhere imposes an

25 affirmative duty of utmost good faith and full and fair

003744

67

disclosure to all material facts, as well as an affirmative
obligation to employ reasonable care to avoid misleading his
clients.

The word "affirmative" there is important because it
means the investment advisor is not supposed to wait to be
asked.  The investment advisor as an affirmative duty to
proactively provide the information to the client.

The next standard comes from the SEC.  We call it the
SEC interpretation letter.  It's a release that came out in
2019.  And to meet it's duty of loyalty, an advisor must make
full and fair disclosure to its clients of all material facts
relating to the advisor relationship.  Material facts relating
to the advisor relationship include the capacity at which the
firm is acting with respect to the advice provided.

The SEC had another release in 2000 -- or excuse me,
in that same release, the SEC said the duty of loyalty requires
that an advisor not subordinate its clients interests to its
own.  In other word, an investment advisor must not place its
own interest ahead of its clients' interests.  An advisor has a
duty to act in the client's best interest, not its own.

The SEC general instruction three to part 2 of Form
ADV, that every investment advisor has to pull out.  And this
is cited in our papers.  As a fiduciary, you must also seek to
avoid conflicts of interest with your clients, and at a
minimum, make full disclosure of all material conflicts of

003745

68

1  interest between you and your clients that could affect the

2  advisor relationship. This obligation requires that you provide

3  the client with sufficiently specific facts, so that the client

4  is able to understand the conflicts of interest you have, and

5  the business practices in which you engage, and can give

6  informed consent to such conflicts or practices or reject them.

7            And, finally, the Third Circuit in _Belmont_ said:

8            "Under the best interest test, an advisor may benefit

9            from a transaction recommended to a client if, and

10           only if, that benefit, and all related details of the

11           transaction are fully disclosed."

12           These fiduciary duties are unwaivable by the advisor.

13  Any condition, stipulation or provision binding any person to

14  waive compliance with any provision of this subchapter, or with

15  any rule, regulation or order thereunder shall be void.

16           So the lawsuit does not allege that the HarbourVest

17  settlement should be undone or unwound.  I'd like to move to

18  that point.  Mr. Morris says well, you have to unwind half of

19  the settlement.  Maybe HarbourVest doesn't have to give back

20  what it got, but Highland would still be saddled with the cost

21  of the settlement, but not with the benefit of the settlement.

22           Well, actually that's not true.  There's two points

23  that we would make on that.  Number one, our suit is a suit for

24  damages.  In other words, the suit would be a suit for money

25  damages, based on the difference between the value of the asset

003746

1 and what HarbourVest or what the actual value of the asset that

2 was represented, $22.5 million.  So the second point, though,

3 is that even under a situation where CLO or Holdco or the DAF,

4 or even HCLOF were to purchase the HarbourVest suit, the

5 expectation would obviously be that they'd pay the $22.5

6 million that Highland paid for it.

7         So Highland is -- so it's not unwinding, and there's

8 no saddling Highland with a burden that they didn't otherwise

9 have, I think that's a misrepresentation.  But we're not

10 seeking to unwind the lawsuit -- or excuse me, unwind the

11 settlement.

12         Now Mr. Morris is correct, the representation of

13 value by Mr. Seery is -- is one of the main points here.  And

14 the representation was that the value of the entire asset.  Not

15 just the shares of MGM, but the value of the entire asset was

16 $22.5 million.  So in other word, nearly half of HCLOF was

17 represented to be worth $22.5 million.  It was argued by

18 counsel on Page 14 of the January 14th transcript, and then on

19 Page 112 of that transcript, Mr. Seery specifically says the

20 current value is right around $22.5 million.

21         Now that was also in some of the filing papers and

22 Mr. Morris put up the evidence to Your Honor that Mr. Pugatch,

23 on behalf of HarbourVest also parroted that number.  But

24 there's not any evidence today about where that number came

25 from, or whether he was simply relying on Highland's

Case 22-03052-sgj    Doc 34-22    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 31-22    Filed 07/06/22    Page 193 of 227    PageID 3938

70

1   representation of that value.

2          Now as a general rule, in these 12(B)(6) motions, as

3   I said before, we don't look at the evidence because the whole

4   point of discovery is to find out what's behind a lot of the

5   evidence.  That's been quoted.  The amount of evidence that

6   went into the 9019 motion as not necessarily full-blown

7   discovery.

8          I understand Mr. Morris saying well, they could have

9   asked the question.  But as I just showed you, they shouldn't

10  have to ask the question.  There should be fair and full

11  disclosure of all the material facts.  And if it turns out,

12  which we believe it is true, that by January, the value of

13  HCLOF was twice what it was represented, or the HarbourVest

14  portion of HCLOF was twice as to what it was represented,

15  that's a material omission that Highland had an affirmative

16  duty to not misrepresent.  Irrespective of the questions being

17  asked.

18         The DAF found out later on that the representation of

19  the value wasn't true.  Now Mr. Morris talked for a very long

20  time about all the opportunities that somebody, Mr. Dondero,

21  somebody other than CLO Holdco.  In addition to CLO Holdco,

22  could have asked the magic question to find out whether or not

23  they were telling the truth.  But that runs right in the face

24  of the standards set forth by the SEC and by the Courts as to

25  the affirmative obligation of an advisor to disclose all the

1   material benefits that they're going to get as part of a trade.

2   The idea being that when you're a registered investment advisor

3   and you want to engage in a transaction, you make a full

4   disclosure and say this is the transaction.  It's worth 41, but

5   I'm paying 22-1/2.  But here's why I'd like to be able to do

6   it.  And then that's the discussion that happens.

7           That clearly didn't happen here.  And when it turned

8   out that there was this entirely huge upside that they were

9   gaining the benefit of, and maybe HarbourVest didn't care, that

10  that was a false statement.  Now the reason we don't have a

11  common law fraud claim, or that we don't necessarily hang our

12  hat on a fraud claim is we don't have enough evidence as it

13  stands today, to specifically say that Mr. Seery intentionally

14  misrepresented that.  Although we believe that it was grossly

15  reckless of him to do so.  But we don't really need a fraud

16  claim with a gross recklessness standard.  We have a breach of

17  fiduciary duty, which basically gets us to the same place.

18          So the timeline we have is September 30th was the

19  last valuation of HCLOF assets provided by HCMLP.  And the

20  value of HCLOF, at that time, or the HarbourVest of that value,

21  would have been about 22.5 million.  So what it appears to be

22  is that in January or in late December, the valuation that was

23  being done -- what was being reported, wasn't the current

24  valuation.  It was the valuation as of the end of the third

25  quarter of 2020.

72

1          On December 22nd, the motion to approve the

2   settlement with HarbourVest was filed.  HCMLP should have had

3   or would have had up-to-date valuations of the HCLOF assets,

4   but didn't necessarily disclose them as being different than

5   the 22.5 million.  On January the 14th, Your Honor, held the

6   9019 hearing.  And then that same day, Your Honor entered the

7   approval order.

8          And finally, in March, the DAF learns the true value

9   of HLOF assets as of January 2021 and starts to look into it.

10  Now Mr. Morris makes much of the fact that well, Mr. Dondero at

11  least knew that he had tipped them off, Mr. Seery.  And if you

12  actually read Paragraph 127, you'll see specifically what it's

13  purported that he said.  He said stop trading in the MGM

14  assets, because MGM might be in play.  So you can't trade

15  because I'm an advisor, Mr. Dondero's an insider, he's the

16  tipper, not the tippee.  Mr. Seery becomes the tippee under

17  that theory of the case, and he has to, and is required to,

18  because of their affiliation at the time, he's required to

19  cease trading.  And that was the purpose of saying that.

20         The collateral issue that we point is that he at the

21  very least knew about that, and that should have caused him to

22  revalue, if he hadn't done so at the time.  Not that, knowing

23  that alone is sufficient to know what the value of HCLOF

24  actually was on that date.  That's a complete misrepresentation

25  of the point and purpose of that allegation.

003750

1        And as Your Honor knows, under 12(B)(6)

2   jurisprudence, the way this is supposed to go is we get the

3   benefit of every inference based upon the allegations, not the

4   movant.  So the first violation is that the debtor as an IRA

5   failed to affirmatively disclose the true current valuation of

6   HCLOF and failed to keep the DAF and CLO Holdco reasonably

7   informed of the value of the assets.

8        And the debtor as an IRA, failed to obtain CLO

9   Holdco's with the DAF's informed consent before it traded in

10  the asset, because it didn't have all of the information.  The

11  typical remedy for breach of fiduciary duty is typically

12  damages for any loss suffered by the Plaintiff as a result of

13  the breach.  I don't think there's a debate there.

14       So now we get to Mr. Morris' key argument.  His key

15  argument is that we should be talking about res judicata.  The

16  elements of res judicata and I think we agree is you have to

17  have identical parties in the action; the prior judgment was

18  rendered by a Court of competent jurisdiction; the final

19  judgment was final on the merits, and the cases involved the

20  same causes of action or the same transaction and nexus of

21  facts.

22       Now I'm going to skip to three, because I think

23  that's one of the key points that we disagree with them on.

24  There is no case, Your Honor, that we could find, and no case

25  that I read them citing that says an order on an 9019 has

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 1-182   Filed 02/06/22 05   Page 197 of 227   PageID 3942

74

1  preclusive effect under res judicata under an objector to the

2  settlement.  We looked.  We looked in the Fifth Circuit.  We

3  looked outside of the Fifth Circuit.  No District Court, no

4  Fifth Circuit Court of Appeals' opinion we could find held that

5  a 9019 order has res judicata effect on an objector's

6  objection.  And I think the reason is pretty simple.  Is it

7  doesn't.

8        Because the Plaintiff's claims, here our claims

9  hadn't even accrued.  We have a four year statute of

10 limitations, but I think more importantly is that, as the Fifth

11 Circuit said, the 9019 motion grants the Court discretion.

12 It's not supposed to be a mini trial.  The Court can approve a

13 settlement over even the valid objection of an objector.  It's

14 not a trial on the merits.  It's not supposed to be a trial on

15 the merits.  It's not supposed to be a disposition on the

16 merits.

17        So the fact that Your Honor could have approved the

18 9019 settlement with HarbourVest, even if we had a valid

19 objection, means this isn't a disposition on the merits, as res

20 judicata would envision.  It wasn't a trial on the merits, even

21 though it was withdrawn.

22        The other elements that we would point out to is that

23 neither the DAV nor Holdco were parties to the dispute between

24 HarbourVest and Highland.  And this keys off of the issue that

25 I just raised.  The cases that are cited by the debtor to Your

75

1   Honor all have to do with where one of the settling parties is

2   trying to undo the settlement for some collateral reason.  And

3   the Courts have held, no, that's res judicata, because you were

4   a party to the action.  HarbourVest brought the claims against

5   Highland.  Highland settled those claims.

6         CLO Holdco was collateral to that settlement, it's

7   not a -- excuse me, collateral to that dispute.  It's not a

8   party to that dispute.  Its claims weren't being resolved by

9   the settlement.  And while you have a notice to all creditors

10  and those objections can be raised, there was not inherently

11  any manner for resolving those objections on their own merits.

12  Only -- it was only resolved in so far as deciding whether or

13  not the settlement was in the best interest of the debtor,

14  which Your Honor decided, and we don't challenge that.  But we

15  do argue that it caused damages and the debtor shouldn't get

16  off for those damages.

17        The fourth element is that the --

18        THE COURT:  Just for the record, the standard in a

19  9019 context is not best interest of the debtor, right?

20        MR. SBAITI:  Your Honor, I mean that's what the rule

21  says and Your Honor's order --

22        THE COURT:  That is not what the rule says.  The rule

23  is actually very sparsely worded and then we have Fifth Circuit

24  case law and U.S. Supreme Court law that talk about what the

25  standard is.

003753

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-22   Filed 07/06/22   Page 199 of 227   PageID 3944

76

1          MR. SBAITI:  Yes, Your Honor.  And there are five --

2          THE COURT:  And it's -- is it fair?

3          MR. SBAITI:  There are five elements.

4          THE COURT:  Is it fair and equitable and in the best

5    interest of the estate given a long list --

6          MR. SBAITI:  Correct, Your Honor.  And I didn't mean

7    to --

8          THE COURT:  -- of considerations that the Court is

9    supposed to consider that "bear on the wisdom of the

10   settlement."  Okay.  So it's actually much more involved, is my

11   point, than is it in the best interest of the estate.  Is it in

12   the best interest of the estate and fair and equitable given

13   all factors bearing on the wisdom of the compromise?  And then

14   we have a long laundry list of things the Court should consider

15   as part of that analysis.

16         MR. SBAITI:  That's a --

17         THE COURT:  I just bring that up because if I'm still

18   -- my brain is still stuck five minutes ago on your comment

19   that you can't find any case saying that an order approving a

20   9019 compromise has res judicata effect on creditors.  And it's

21   -- let me just say it's shocking to me that someone would argue

22   otherwise.  Bankruptcy is a collective proceeding --

23         MR. SBAITI:  Your Honor --

24         THE COURT:  -- where creditors can weigh in and

25   object and raise whatever arguments they think the Court should

77

1  consider that bear on the wisdom of the compromise.  And the

2  Fifth Circuit in Foster Mortgage has said the Court should give

3  great deference to the views of the creditors, the paramount

4  interest of creditors.

5      So it's a really sort of shocking proposition that

6  the order approving a 9019 compromise wouldn't have res

7  judicata effect on all parties and interests who got notice of

8  that.  So if you have any elaboration on that, I'd like to hear

9  it.

10      MR. SBAITI:  Your Honor, we looked at the Fifth

11  Circuit cases that they cited, which I believe included that

12  case.  And even in that case, the point that we made in our

13  papers and the point I was trying to arrive at is that among

14  the factors, yes, the Court should give great deference to the

15  creditors.  But among the factors is not that the objections

16  lack merit or are meritless or that they wouldn't be winnable

17  if they were simply standalone claims.

18      And that was really the only point I was trying to

19  make is that Your Honor has discretion.  Granted it's -- as you

20  mentioned, it's not unfettered discretion.  It's bounded by

21  standards and there are -- there is, I know, about five

22  standards Your Honor has to consider or the Court has to

23  consider.  But among those, that laundry list of standards, is

24  not that the Court finds that any objection lacks merit.  And

25  that was really the only point I was making.

003755

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 6-12 Filed 12/09/22 Page 201 of 227   PageID 3946
Exhibit 22   Page 279 of 305

78

1           And in terms of the case law, we looked at the Fifth

2   Circuit.  We looked, frankly, outside the Fifth Circuit as much

3   as we could, and because this is actually not an easy one to

4   research, as it turned out, despite the language.  And we also

5   looked for district court opinions in the Fifth Circuit to see

6   did any district court or did any court of appeals give this

7   type of approval to the standard that a 9019 order has res

8   judicata effect on a claim raised in an objection by a

9   creditor.

10          And we couldn't find any and I read all the cases

11  that Mr. Morris cited in his papers, and they didn't cite one

12  that explicitly said that.  They tried to drive at it through

13  insinuation that, well, if the Court has to give great

14  deference or if the Court has to take into account the

15  underlying facts and the fact that there is discovery, surely

16  that must mean this is akin to the trial on the merits.  And I

17  think that's where we simply disagree in good faith.  I'm not

18  ascribing any bad intention.  But we disagree that that's where

19  the law goes.

20          Res judicata is not -- while it's supposed to stop

21  the relitigation of issues, it is predicated on there having

22  been actual litigation of those issues.  And when HarbourVest

23  and Highland settle a case and my clients show up with an

24  objection, even though they withdraw an objection, that, in our

25  opinion -- and we're asking the Court to see it our way -- is

003756

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 3-12   Filed 08/02/22   Page 202 of 227   PageID 3947

79

1  not trial on the merits. It's not a disposition on the merits

2  of the objection in and of itself. Some objections we can --

3        THE COURT: But the context matters. In the context

4  of a 9019 compromise, the hearing is about look at the bonafide

5  ease of the settlement. And it's either fair and equitable and

6  in the best interest of the estate or not. And an objector can

7  say this is a terrible settlement and here's why it's a

8  terrible settlement and let me cross-examine the movant and let

9  me put on my own witness that will enlighten the Court as to

10 why this is a terrible settlement, why I say terrible, why it's

11 not fair and equitable.

12        That's your chance to convince the Court, don't

13 approve this settlement because there are, you know, 14

14 problems with it. And if you convince the Court, then you

15 convince the Court and it's not approved. If you don't, you

16 appeal, and we do have an appeal of the settlement order.

17        So, again, I'm not understanding the "res judicata

18 doesn't apply" argument.

19        MR. SBAITI: Your Honor, if I could riff on two

20 points based upon what you just said, if I could address those.

21        The first is there are clearly two kinds of

22 objections that get -- at least two kinds of objections that

23 get raised in these 9019 approval hearings. The two that you

24 heard recounted, some were this is bad for the estate. There's

25 reasons why we don't think the estate will benefit from it and

1   it will be harmed from it.

2          And those types of objections, which I believe mostly

3   comprise the objections that Mr. Morris was talking about

4   because they are concerns for the estate.  And so creditors who

5   want to get money from the estate are concerned that the

6   settlement will not enter (phonetic) to the benefit of the

7   estate, and therefore, not enter to their benefit as creditors.

8   That's number one.

9          But those don't adhere in a lawsuit.  Those aren't

10  claims for damages that the settlement is going to create for

11  the person objection or for the party objecting.  There's a

12  whole separate set of objections similar to the ones HCLO

13  Holdco raised where that what inheres in the objection is this

14  is actually going to cause us some kind of damage.

15         And so, the factors though, don't require the Court

16  in those second set of instances to say, well, you know what?

17  Not only do I think you're wrong, but I think that your

18  lawsuit, the underlying causes of action that give rise to this

19  objection, have no merit on their own face, that the discovery

20  is not there to support them, that a jury is not going to find

21  there.  I am now the trier or the Court is now the trier of

22  fact on the merits of the underlying causes of action that

23  animate the objection.

24         And that's where I believe we're diverging with the

25  debtor on the law.  It goes too far to say that a 9019 hearing

1  where the Court in the end has discretion to approve it, even

2  over a meritorious objection by any party, regardless of what

3  bucket of objections the objection falls into.  It goes -- our

4  argument today, Your Honor, and we're asking the Court to see

5  it our way, is that that would go too far.  That an actual

6  cause of action shouldn't be eradicated simply because of the

7  9019 process because, as you pointed out, the Court does have

8  to go through a litany of factors.

9          And if the Court determines that it's fair and it's

10  more equitable to overrule the objection, the Court has that

11  discretion.  And we're not here to unwind that discretion.

12          But the settlement process did violate certain

13  obligations and did cause my client damages.  And that's what

14  we're saying isn't precluded.

15          THE COURT:  Okay.

16          MR. SBAITI:  The fourth element, Your Honor, which I

17  guess in many ways maps on to the argument I just made to Your

18  Honor is that the cases, the underlying cases, do not involve

19  the same claims.  Plaintiffs' claims arise from the settlement

20  process itself and not from the underlying issues being settled

21  between HarbourVest and Highland.  So that's why we think at

22  least three of the four elements aren't met here.  And we'll

23  reserve on the papers, you know, whether jurisdiction was

24  applicable because I think that's probably water under the

25  bridge at this point in the oral argument.

82

1        Now, Mr. Morris attacks the case that we cite,
2   Applewood Chair vs. Three Rivers Planning.  And he argues that,
3   well, this is not applicable.  And the argument he made however
4   was he put it in the context of, well, the parties there, the
5   issue was you had guarantors who were not parties in their
6   capacity as guarantors.  But that's not actually what the Court
7   held.

8        The Court didn't say that the release wasn't
9   applicable to them because they didn't appear as parties in
10  their guarantee capacities.  They -- the Court held that, well,
11  the specific discharge language doesn't enumerate those
12  specific guarantees, and so therefore it's not released.

13       And where this dovetails, we believe, as closely as
14  we can, this isn't a 9019 case.  This is a final confirmed
15  plan.  But where it dovetails with what our argument is, is
16  that the Court there as well was essentially saying the
17  underlying causes of action weren't really presented to us, so
18  we're not -- we -- and the confirmation of the plan didn't
19  involve disposing of them, so we're not going to say that they
20  are precluded.  And we think that that's as close an analogy as
21  we've found in the Fifth Circuit to the issues here today.

22       So I would say, Your Honor, that we believe that
23  dispenses with the res judicata argument.  The judicial
24  estoppel argument, they conflate the language.  I'll go back to
25  this for a second.  They conflate the language of judicial

003760

1  estoppel on the success of the claim.  None of the cases they

2  cite on judicial estoppel involved where a party took a

3  position, withdrew their argument, and then the Court moved on.

4       Mr. Morris tries to convert a judicial estoppel claim

5  into a judicial reliance claim, which is not the purpose of the

6  doctrine and is not the doctrine at all.  The doctrine is that

7  if you take a successful position in one court, you can't take

8  the opposite position in another court.  CLO Holdco didn't take

9  a successful position in one court and then change its position

10  later on.  In fact, its positions, as Mr. Morris stated, are

11  remarkably similar.  They're not inconsistent, which is the

12  problem with their judicial estoppel argument.  And we -- I

13  think we fairly briefed that in our papers and we'll otherwise

14  rest on the papers.

15       To deal -- to address the actual claims, again, I

16  come back to the idea of a fiduciary duty claim, which is our

17  lead claim.  And to be clear, it's a state claim predicated on

18  the violation of federally imposed fiduciary duties.

19       And I'm looking for a clock to make sure I'm not

20  abusing Your Honor's time, and I don't have one right in front

21  of me because my screen -- my screen is up.

22       Your Honor, the Douglass v. Beakley case is, like I

23  said, is Judge Boyle's case.  It specifically provides a cause

24  of action based upon violations of the Advisers Act.  We also

25  cite about four or five other cases in footnote 8 of our

84

 1  response from other circuits, including the Third Circuit, the
 2  Belton case that I referred to earlier, all of which held that,
 3  yes, a state fiduciary duty claim can be predicated on breaches
 4  of a federal Advisers Act violation.

 5        The other point that they make on the fiduciary duty
 6  claim is they argue HCMLP doesn't owe fiduciary duties to CLO
 7  Holdco.  And the cases they cite, Your Honor, we dealt with in
 8  the papers why they were distinguishable, because in those
 9  cases they were dealing with the fact that there wasn't any
10  harm or any direct relationship.  But what they ignore is the
11  actual language of the Advisers Act, which is important.

12        Well, first of all, Mr. Seery admitted in his own
13  testimony during the approval hearing in July of 2019 that he
14  says, "We owe."  He says, "There are third party investors in
15  the fund -- in these funds who have no relation whatsoever to
16  Highland, and we owe them a fiduciary duty both to manage their
17  assets prudently, but also to seek to maximize value."  I think
18  Mr. Seery was absolutely correct when he said that.  Highland
19  owes fiduciary duties to the investors in the funds that
20  Highland manages.  The core of our case is that Highland is
21  using or abusing the assets of the funds it managed in HCLOF
22  for its own enrichment, which is a classic breach of fiduciary
23  duty case under the Advisers Act.

24        Now -- excuse me.  The other point that I would say,
25  Your Honor, is that there is a statutory basis for us to argue

003762

85

1    a breach of fiduciary duty.  Excuse me.  I didn't mean to stop

2    sharing.  I apologize.

3            Are you back with me, Your Honor, on my --

4            THE COURT:  Yes.

5            MR. SBAITI:  -- PowerPoint?

6            THE COURT:  Yes.

7            MR. SBAITI:  Sorry about that, Your Honor.  I just

8    hit the wrong thing.  I'm not very technologically savvy.  Here

9    we go.

10           So Holdco is an investor in HCLOF, which is a pooled

11   investment vehicle.  A pooled investment vehicle under the case

12   law we cite is simply defined as an investment vehicle that

13   doesn't publicly solicit investors and has few than 100

14   investors.  Highland advises it.  That's the same holding in

15   TransAmerica Mortgage, by the way, which we also cite.

16           15 U.S. C. Section 80(b)(6) establishes the federal

17   fiduciary standards to govern the conduct of registered

18   investment advisers.  That's also the TransAmerica case.  15

19   U.S.C. Section 80(b)(6)(D) delegated to the SEC the power to

20   decide the scope of those duties that are imposed under the

21   statute.  And so the SEC enacted 17 C.F.R. Section 275.206(4)-

22   8.

23           And it expressly states, and we cite the statute or

24   the regular in full in our papers, that the fiduciary duties

25   are owed to investors in the pooled investment vehicles.  It

003763

Case 22-03052-sgj  Doc 34-22  Filed 08/01/22  Entered 08/01/22 17:35:41  Desc
Case 3:22-cv-02280-S  Document 3-12  Filed 10/06/22  Page 209 of 227  PageID 3954

86

1  specifically says that.  It talks about two different duties

2  owed and they're owed to the investors in the vehicles, which

3  means they're owed to Holdco as an investor in HCLOF, which is

4  the vehicle that Highland manages.

5          It's black and white in the regulation.  And we

6  haven't seen any response.  There was no response of that in

7  the reply that was filed, Your Honor.  And so the argument that

8  there's not a fiduciary duty owed to Holdco because it's merely

9  an investor in HCLOF simply doesn't comport with the law.

10         And finally, the petition lays out the basis for our

11 claims including the applicable federal and state law.

12 Plaintiffs' response lays out why the legal arguments aren't

13 opposite at the 12(b)(6) stage and Rule 9(b) is met where

14 necessary under the federal claim.  And I'm trying to unshare

15 so that I can get back to regular argument.

16         I'd like to briefly address Mr. Morris' argument,

17 Your Honor.  Your Honor, I re-raise my argument that I made

18 before, which is that a 12(b)(6) motion and hearing is not the

19 appropriate time for all the evidence that was poured in here.

20 And I understand Mr. Morris' contention, well, it's really hard

21 to ignore all the history of this case.  But a lot of that

22 history really boils down to things that were actually admitted

23 in the complaint.  The complaint recognized there was a 9019.

24 But what Mr. Morris wants to do is go beyond that and to go to

25 what people said and what they must have meant.  What Mr.

87

Dondero must have meant in his objection, what Dugaboy must
have meant by their objection, what Mr. Pugatch must have meant
by his testimony.

All of that is highly improper at this stage of the
proceeding, Your Honor.  It's outside of the 12(b)(6) confines.
It's outside the four corners of the complaint.  And we object
to all of that evidence being considered.

THE COURT:  Let me --

MR. SBAITI:  The question we --

THE COURT:  Let me ask you about that procedural
point.

MR. SBAITI:  Yes, Your Honor.

THE COURT:  As we know, 12(d) provides that if
matters outside the pleadings are presented to and not excluded
by the Court in a 12(b)(6) motion, the motion must be treated
as one for a summary judgment under Rule 56 and all parties
must be given a reasonable opportunity to present all the
material that is pertinent to the motion.

Are you -- what are you arguing?  That I should treat
it as a motion for summary judgment and give you more time to
present other materials?  I mean, you both presented an
appendix, okay.  And I'm telling you we're seeing this more and
more, I've noticed.  People are going beyond the four corners
of a motion to dismiss and attaching things.  And there's some,
you know, Fifth Circuit authority that says, well, if what is

003765

88

1  attached is integral to understanding, you know, an allegation

2  or whatever in the pleading, you know, there is some discretion

3  to go outside the four corners.

4          So I'm trying to understand the point you're making

5  with this.  Are you saying I should treat it as a motion for

6  summary judgment or do these attachments really -- you know, do

7  I have authority under the Fifth Circuit to consider them as

8  part of the 12(b)(6) motion or not?

9          MR. SBAITI:  Typically, in our experience, Your

10  Honor, is when a summary or when a 12(b)(6) is going to be

11  treated as summary judgment under 12(d), the Court says that

12  and then the parties are given an opportunity, as you said, to

13  go do some discovery in order to put together the evidence and

14  materials to then come back and respond as a summary judgment.

15  We responded to a 12(b)(6) and objected to the evidence.  If

16  the Court wants to treat it as a summary judgment, then we

17  would ask for an opportunity for -- to conduct discovery in

18  order to be able to respond as a summary judgment motion, but

19  we didn't -- because we responded to a 12(b)(6) --

20          THE COURT:  You did the same thing though.  You did

21  the same thing in your response.  You submitted an appendix of

22  evidence, if you want to call it evidence.  As someone pointed

23  out, it's stuff from the bankruptcy court record.  I don't

24  think it went beyond what was already in the bankruptcy court.

25          MR. MORRIS:  And if I -- can I be heard on this, Your

003766

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 31-22   Filed 09/06/22   Page 212 of 227   PageID 3957
Exhibit 22   Page 206 of 105

89

1   Honor?

2          THE COURT:  You can.  You can.

3          MR. MORRIS:  Just to respond.  This is really quite

4   simple.  The motion to dismiss is based on res judicata.  Res

5   judicata necessarily requires a review of what happened in

6   connection with the prior hearing.  There's nothing that we

7   have identified or put forth in the appendix or on our exhibit

8   list except for the pleadings in the 9019, the transcripts, the

9   one deposition transcript, the one trial transcript, the

10  settlement agreement, the transfer agreement.  I'd love to know

11  what the Court couldn't or shouldn't take judicial notice of.

12  There is no emails.  There is no -- there is no -- there is no

13  extrinsic evidence, if you will.  All of this is either on the

14  docket or was presented as part of the hearing.

15         THE COURT:  Yeah.  I'm just trying to ferret --

16         MR. MORRIS:  And it's necessary.  And it's necessary

17  for the motion.

18         THE COURT:  Yeah.  I'm just trying to ferret out the

19  procedural position that's being asserted here.  And I don't

20  have the case cites off the top of my brain, but there is

21  authority from at least the Northern District judges, if not

22  the Fifth Circuit, saying in a 12(b)(6) motion I can take

23  judicial notice of items in the record.  And then, you know,

24  there -- I know there's Fifth Circuit authority saying I can go

25  beyond the four corners in a 12(b) context if it's just basic,

1  you know, explaining things that are in allegations.  You know,

2  such as --

3          MR. SBAITI:  May I address that, Your Honor?

4          THE COURT:  -- such as if a contract is in dispute,

5  okay.  Like there's no way you can have a cause of action under

6  the contract and here's the contract.  So I'm just trying to

7  nail down your procedural position here.

8          MR. SBAITI:  Your Honor, the distinction I was trying

9  to make that I don't think I put as artfully as I might be able

10 to put now is in a 12(b)(6) if there's a contract, as you said,

11 if there's a legal document, a contract and order that's

12 integral to the case, Your Honor can take judicial notice of

13 that.  Generally, a court can take judicial notice of filings

14 in a bankruptcy, the fact that they were filed.

15         So the transcripts, which Your Honor can't take

16 judicial notice of, is the truth of those.  And that was what I

17 was objecting to is it's one thing for him to say an objection

18 was filed and therefore, because an objection was filed, that

19 should be it.  That was your only chance.  I'm not saying Mr.

20 Morris can't make that argument.

21         But when he goes beyond the fact of the filing or the

22 fact that there was a transcript or the fact that there was a

23 deposition and starts to read from the depositions or read from

24 the filings and say this is what those mean, that goes against

25 the 12(b)(6) parameters because, number one, now it's

Case 22-03052-sgj    Doc 34-22    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 31-22    Filed 09/26/22    Page 214 of 227    PageID 3959
Exhibit 22    Page 206 of 105

91

1  substantive evidence and not simply a judicial notice of

2  something that's right there in front of the Court, i.e.,

3  something on its own docket.  Because those statements and the

4  interpretation of those statements are subject to credibility

5  findings.  They're subject to clarification.  They're subject

6  to rebuttal.  That's the purpose of discovery.

7       And so if Your Honor -- and Mr. Morris is right.

8  Usually, res judicata involves knowing what happened in the

9  prior proceedings.  So if all he wants to do is rest on the

10  fact that an objection was filed by CLO Holdco and maybe even

11  other people, and that should be it and he thinks that's enough

12  for Your Honor to say res judicata applies, then I don't think

13  we have a problem.  It's when he goes beyond that and says,

14  Your Honor, these people must have known and this is what they

15  meant by their argument, that's what I'm asking Your Honor not

16  to consider.  And if Mr. Morris wants you to consider that,

17  that's a summary judgment motion and we should have the

18  opportunity to do discovery at the very least into the issues

19  he has now raised as supporting his res judicata defense which

20  he has the burden of proof on.

21       MR. MORRIS:  Your Honor, this is one of the strangest

22  arguments I have ever heard.  I'm allowed to offer the Court

23  and the Court is allowed to accept the documents, but I'm not

24  allowed to read them.  I'm not allowed to make arguments.  I

25  don't understand what that even means.  If it were a contract,

003769

 1  I would be allowed to put the contract in front of Your Honor,

 2  but I wouldn't be able to argue why the contract doesn't say

 3  what the Plaintiff says.  I don't get it.

 4          THE COURT:  Okay.

 5          MR. MORRIS:  That's --

 6          THE COURT:  Just I've heard enough on this.  I don't

 7  think we have moved into Rule 12(e), that realm of me needing

 8  to treat this as a motion for summary judgment.  I think the

 9  so-called evidence, the appendix that was attached to the

10  motion as well as the appendix that was attached to Plaintiffs'

11  response, it's stuff that I can take judicial notice of that's

12  in the record of this Court and I can look at it.  You know, it

13  is what it is, the record of this Court.

14          All right.  So I have nine people waiting in

15  chambers.  I'm trying to figure out should I take a break now

16  or are you fairly close to wrapping up.  Either answer is fine,

17  Mr. Sbaiti.  I just need to figure out who I make wait here.

18          MR. SBAITI:  I have -- oh, I'm sorry.  I didn't mean

19  to interrupt you, Your Honor.  I was just going to say I have

20  five minutes left, but I know Mr. Morris probably wants to come

21  back.  So if you want to break now and we can come back at

22  whenever the Court wants us to, we can do so.

23          THE COURT:  All right.  Why don't you make your final

24  five minutes and then we'll take a break?

25          MR. SBAITI:  Okay.  Thank you, Your Honor.

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 11-2   Filed 09/02/22   Page 216 of 227   PageID 3961
Exhibit 22   Page 216 of 105

93

1          I just wanted to address some of the arguments that

2    Mr. Morris raised in his argument.  The first thing is -- and I

3    addressed this in part -- but Mr. Morris makes a big deal about

4    paragraph 127 of the complaint and essentially suggests that

5    we're the -- or that Mr. Dondero is the perpetrator of a

6    nefarious scheme.  Whereas, what the pleading actually says,

7    and I again encourage Your Honor to re-read -- to read it

8    specifically, is that Mr. Dondero warned Mr. Seery not to trade

9    in the stock and not to make any transactions because the stock

10   was going to appreciate in value.

11          That has two implications for us, Your Honor.  Number

12   one, it means Mr. Seery was a tippee of insider information,

13   and number two, it means that Mr. Seery, if he did trade on

14   that information or if he did pass that information on to

15   someone else, that is a problem from the Advisers Act

16   standpoint, which is really the only purpose of saying that.

17          While paragraph 127 also says that that should have

18   caused Mr. Seery to revalue the NAV of HCLOF, it does not state

19   and we did not plead that the entire value of HCLOF is tied to

20   the MGM stock.  So the insinuation that that somehow gave us

21   inside information about what the true value of HCLOF was and

22   we should have known or that Mr. Dondero should have known is

23   simply untrue.

24          The other argument Mr. -- that Mr. Morris likes to

25   harp on is that CLO Holdco withdrew its argument, but he

003771

94

1  characterizes Mr. Kane's withdrawal testimony -- as he says,

2  Mr. Kane admitted that CLO Holdco lacked the superior right to

3  obtain the HarbourVest.  If you read the very language that was

4  highlighted on Mr. Morris' slide, that's not what Mr. Kane

5  says.  Mr. Kane says, "We've gone back to the drawing board.

6  We've read your reply.  And my client has given me permission

7  to withdraw the argument or withdraw the objection."  That's

8  all he said.  There was not an admission that he was wrong.

9  There was not an admission that they had made a mistake.  There

10  was simply an admission that they decided to withdraw the

11  objection for whatever reason.

12        Lastly, on the specific claims --

13        THE COURT:  That's not an accurate description of the

14  record.  He said he looked at --

15        MR. SBAITI:  Your Honor, I was reading it along with

16  him.

17        THE COURT:  -- Guernsey Law.  And I don't know if his

18  words were deep dive.

19        MR. SBAITI:  Yeah.

20        THE COURT:  But he had looked at the agreements

21  extensively.  That's just not what he said.

22        MR. SBAITI:  And he said he was with -- Your Honor,

23  he said he was withdrawing.  He didn't say we were wrong.  He

24  didn't say we don't have a claim.  What he said was, "We're

25  withdrawing the objection."

003772

95

1           THE COURT:  After doing an extensive look at the

2   agreements in Guernsey Law, okay, so.

3           MR. SBAITI:  Sure.  But, Your Honor, he might have --

4   he could just as easily thought we have a chance, but it's not

5   a good one.  And frankly, we'll be here for 20 days and we're

6   withdrawing it for that reason because we'll live to fight

7   another day.  Your Honor, there's an innumerable number.  To

8   simply say that he admitted that they didn't have a correct

9   claim, it's just he didn't say that.  That's all.  That's the

10  only point I'm making.

11          Your Honor, I don't disagree with the debtor that the

12  Court's exculpation clause gets rid of the negligence claim

13  which was obviously filed before the effective date, so that

14  claim is gone.

15          And I think the last argument that Mr. Morris makes

16  on the RICO claim is the federal court, the Supreme Court

17  standard for pleading a RICO claim, that acts that only

18  continue for a few weeks are not -- don't set out a RICO claim.

19  Your Honor, in our response to that, we actually submitted an

20  amended complaint that shows that the type of acts we're

21  talking about, the pattern of the debtor using its investor

22  vehicles assets to liquidate is a long pattern and practice

23  than simply the HarbourVest suit.  And so, we move to amend on

24  that basis to satisfy that pleading defect, which is the main

25  one that they focused on.

003773

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 3-12   Filed 07/01/22   Page 219 of 227   PageID 3964
Exhibit 22   Page 207 of 215

96

1          That's all I have, Your Honor.

2          THE COURT:  All right.  Thank you.

3          We're going to take a 15 minute break and come back.

4  I'll ask Mr. Jordan and Mr. Bessette did they have anything

5  they wanted to say today.  I know they joined in the debtor's

6  motion.  And then we'll let Mr. Morris have rebuttal.

7          All right.  So we'll be back in 15 minutes.

8          THE CLERK:  All rise.

9          MR. MORRIS:  Thank you, Your Honor.

10     (Recess at 12:05 p.m./Reconvened at 12:23 p.m.)

11          THE CLERK:  All rise.

12          THE COURT:  All right.  Please be seated.

13          We're back on the record in Charitable DAF v.

14  Highland Capital.  All right.  So I promised I was going to go

15  back to counsel for Highland CLO Funding, Ltd.  So Mr. Jordan,

16  Mr. Bessette, is there anything you wanted to say for oral

17  argument?

18          MR. JORDAN:  Thank you, Your Honor.  John Jordan on

19  behalf of HCLOF.

20          Our points are two procedural points.  The first is

21  as the Court anticipated, in our motion to dismiss filed back

22  in August, we joined in the motion to dismiss of Highland.  And

23  so to the extent that the Court after deliberation is inclined

24  to grant that motion, we would ask that as a joining party,

25  HCLOF be pulled along with that.

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 18-22 Filed 08/02/22   Page 220 of 227   PageID 3965
Exhibit 22   Page 220 of 227

97

1           The second procedural point is that back in our

2    motion to dismiss, we pointed out that the complaint does not

3    actually allege anything against HCLOF.  In the story, we're

4    essentially the football and neither Oklahoma nor UT.  And we

5    pointed that out as an additional argument to what you've heard

6    today.  That motion was never responded to.  The deadline by

7    agreement was extended to October 11th.  And the lack of

8    response was, we believe, not inadvertent but simply an

9    acknowledgment that HCLOF is not a party that anything is being

10   claimed against.

11          It particularly makes sense since effectively and in

12   rough numbers, they're half owned by both sides.  So for every

13   dollar that HCLOF spends hanging around the case, the parties

14   are paying essentially 100 cents collectively.  So for that

15   reason, we would ask, and subject to Mr. Sbaiti's input,

16   whether the Court would ask us or direct us to upload an order

17   granting our motion as unopposed.  We just feel like we don't

18   have any role in this case.

19          THE COURT:  All right.

20          Mr. Sbaiti, what about that?

21          MR. SBAITI:  Your Honor, they were originally added

22   as a nominal party.  And as a nominal party, because of the

23   potential need to have a derivative action, I think that based

24   upon Highland's arguments and the arguments that we had, I

25   don't think the derivative action is necessary for us to

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 6-12   Filed 09/06/22   Page 221 of 227   PageID 3966
Exhibit 22   Page 220 of 105

98

1    maintain on a go-forward basis.  And so we don't oppose them

2    being dismissed.

3             THE COURT:  All right.  Then I assume, Mr. Morris,

4    you don't have any problem with this, correct?

5             MR. MORRIS:  No, Your Honor.

6             THE COURT:  Okay.  So I'll look for the parties to

7    submit an agreed order of dismissal of HCLOF after the hearing.

8    All right?

9             MR. JORDAN:  Thank you, Your Honor.

10            THE COURT:  All right.  Mr. Morris, you get the last

11   word.

12            MR. MORRIS:  Thank you, Your Honor.  I hope to be

13   relatively brief.  I really just want to focus on the arguments

14   concerning whether or not the order that was entered by this

15   Court was an order that was entered on the merits.

16            As the Court is well aware, a 9019 motion filed by a

17   debtor is done so on notice.  It is to give all parties in

18   interest an opportunity to be heard, not just as to whether or

19   not the debtor meets its burden of proof under Rule 9019 but

20   whether or not the Court can find, as it must, that the

21   proposed settlement is in the best interest of the estate.

22            The purpose of -- I mean that is the purpose of the

23   giving notice so that everybody has a chance to be heard.  The

24   questions that the Court asked, the questions that every

25   bankruptcy court asks in a 9019 is can the debtor do this deal,

99

1   should the debtor do this deal, is it in the best interest of

2   the estate to do this deal.

3        And, you know, the idea that a 9019 order is somehow

4   res judicata only to the parties to a settlement is just

5   something that doesn't make any sense to me because it

6   abrogates so many rules that exist that allows and encourages

7   and requires parties who have objections to be heard.

8        Mr. Sbaiti's clients filed an objection. They

9   initiated a contested matter. They obtained rights. They were

10  litigants. They are litigants in a contested matter where

11  they're required to tell the Court what objections they have to

12  the settlement, and they did that.

13       Mr. Sbaiti, you know, told me that I wasn't allowed

14  to characterize the words that are used in the documents that

15  have now been admitted by the Court. And, yet, I heard him say

16  that maybe Mr. Kane (phonetic) really meant to tell Your Honor

17  that he was withdrawing the claim because he was going to save

18  it for another day.

19       I'd just ask the Court to look at the transcript. I

20  don't have to interpret it at all. And I'd ask the Court to

21  read the words. I can put them back up on the screen, but

22  they're pretty short. It's at Pages 7 and 8 of the transcript

23  of what Mr. Kane told you and what you said in response. It's

24  on the page, not my interpretation, and what the import of that

25  was.

003777

Case 22-03052-sgj   Doc 34-22   Filed 08/01/22   Entered 08/01/22 17:35:41   Desc
Case 3:22-cv-02280-S   Document 13-22   Filed 11/06/02105  Page 223 of 227   PageID 3968

100

1            Mr. Sbaiti believes, I guess, if one is allowed to

2    engage in such conduct without consequence, that one is allowed

3    to allow to file objections, cause the Court and the litigants

4    to participate, to give discovery, to write briefs, to do

5    analyses, withdraw it on the basis of their own good faith

6    analysis of Guernsey law of the documents and somehow say it's

7    irrelevant.  Not what the law is, not what res judicata is

8    intended to do.

9            He should have put all of his cards on the table.  In

10   fact, I think that Mr. Kane believed he was putting all of his

11   cards on the table because that's what he did.  He filed a very

12   comprehensive objection.  He asserted a right to the

13   opportunity that the debtor was proposing to take in the 9019

14   motion.  That's what he was doing.  He was objecting on the

15   basis that he claimed his client had a superior right to this

16   asset.

17           And he didn't -- like I said earlier, Your Honor, I

18   don't think he would be permitted, I don't think these claims

19   would fly today if no objection was filed.  But the fact that

20   there was renders, I think, indisputable that there was a

21   finding on the merits, right.  And the only reason that the

22   Court didn't rule on Mr. Kane's motion, the only reason the

23   Court didn't rule on it is because Mr. Kane withdrew it.

24           Is that really the way this process is supposed to

25   work, that one can tell the Court that after a review of the

003778

Case 22-03052-sgj    Doc 34-22    Filed 08/01/22    Entered 08/01/22 17:35:41    Desc
Case 3:22-cv-02280-S    Document 12    Filed 11/03/22    Page 224 of 227    PageID 3969

101

1  documents, I'm going to withdraw the objection and then file a

2  claim for damages three months later with a different client,

3  with a different control person, with a different lawyer?

4  That's okay under doctrine of res judicata?  I don't think so.

5          They had a full and fair opportunity.  The fact that

6  this was somehow -- you know, they're denigrating the fact that

7  this was a 9019 motion.  There's not supposed to be a mini-

8  trial.  Your Honor had discretion as to what to do.  Every

9  court in every bench trial has discretion as to what to do and

10  whether or not to overrule objections and whether or not to

11  substain [sic] objections.  That's what judges to.

12          And there's nothing offensive about the fact that it

13  happened in the context of a 9019 motion.  They don't get to

14  sit on their hands and wait to fight another day.  If they

15  believed that the debtor was exposing itself to liability, and

16  that's what they actually say in the opposition, that's what I

17  actually think they say in the complaint, accept it as true,

18  they believe that the debtor created liability for itself by

19  rendering -- by entering into this transaction.

20          Shouldn't they have raised their hand and said you

21  can't do this deal, right?  And the only response to that --

22  they have to that is they had no idea about value.  Paragraph

23  127, Your Honor, Mr. Dondero, the architect of this complaint,

24  as was proven on June 8th, knew very well about value.  And it

25  doesn't matter that it was only MGM.  Your Honor commented on

1  that at the June 8th hearing in a different context.  But

2  everybody knows, right, it is.  He sits on the board of MGM.

3          And I'm sorry if I called him a tippee instead of a

4  tipper.  But if this complaint goes forward, we'll dig into

5  that real deep.  But there's no reason it ought to, Your Honor.

6  This case ought to be dismissed on res judicata grounds.  It

7  should be dismissed on judicial estoppel grounds.  And it

8  should be dismissed for all the reasons that I said in my

9  argument in my brief.

10          But I do just want to close with one point, and that

11  is to read from a case called Goldstein, which I think I

12  alluded to earlier on this issue of whether there's a fiduciary

13  duty that's owed by an advisor to an investor and a fund:

14          "At best, it is counterintuitive to characterize the

15          investors in a hedge fund as the clients of the

16          advisors.  The advisor owes fiduciary duties only to

17          the fund, not to the fund's investors."

18          There's a lot of discussion about fiduciary duties,

19  Your Honor.  But to the extent that they have any basis to

20  defeat the motion to dismiss on res judicata or collateral

21  estoppel grounds, we hope and we trust and we know the Court

22  will review the case law vigorously to test some of the

23  assertions to that.

24          I have nothing further, Your Honor.

25          THE COURT:  All right.  Well, thank you to all of

1  you.

2          As a reminder, I don't think you need it, but as a

3  reminder, I am essentially acting as a magistrate for Judge

4  Boyle in this action.  And whichever way I go on whichever

5  theories, I think she would expect a thorough write-up.  It

6  would, of course, be in the form of a report and recommendation

7  for her to either adopt or not if I dispose of some or all of

8  the counts in the lawsuit.

9          Even to the extent I deny dismissal, even though the

10 rule typically does not require a court to make detailed

11 findings and conclusions in connection with a denial of a

12 motion to dismiss, again, since I'm sitting as a magistrate, I

13 think Judge Boyle would expect some thorough explanations and

14 reasoning from me.

15         So that's my way of saying I'm taking this under

16 advisement.  I am going to drill down on some of the cases that

17 have been argued.  I think some important issues are raised

18 here that need some thorough reasoning.

19         So I will do the best to get this out without too

20 much delay.  I think there's probably zero chance, zero chance

21 I'm going to get it done by the end of the year.  We're just

22 too behind with some of our under-advisements.  But I will try

23 earnestly to get it out fairly soon after the first of the

24 year.  All right?

25         Thank you.  You all have a good holiday.

104

```
 1              THE CLERK:  All rise.

 2          (Proceedings concluded at 12:37 p.m.)

 3                      *  *  *  *  *

 4

 5              C E R T I F I C A T I O N

 6          We, DIPTI PATEL, KAREN WATSON, CRYSTAL THOMAS, AND

 7  PATTIE MITCHELL, court approved transcribers, certify that the

 8  foregoing is a correct transcript from the official electronic

 9  sound recording of the proceedings in the above-entitled

10  matter, and to the best of my ability.

11

12  /s/ Dipti Patel

13  DIPTI PATEL, CET-997

14

15  /s/ Karen Watson

16  KAREN WATSON, CET-1039

17

18  /s/ Crystal Thomas

19  CRYSTAL THOMAS, CET-

20

21  /s/ Pattie Mitchell

22  PATTIE MITCHELL

23  LIBERTY TRANSCRIPTS                DATE: November 23, 2021

24
```

**WWW.LIBERTYTRANSCRIPTS.COM**

003782