**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re: Highland Capital Management, L.P.** | § | Case No. **19-34054-SGJ-11** |
| The Charitable DAF Fund LP | § | |
| | § | |
| Appellant | § | 22-03052 |
| vs. | § | |
| **Highland Capital Management, L.P.** | § | |
| | § | |
| Appellee | § | **3:22-CV-02280-S** |

**[43]  Order granting amended motion to dismiss adversary proceeding with prejudice (related document # 19) Entered on 9/30/2022**

# APPELLANT RECORD
# VOLUME 22

SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367

*Counsel for The Charitable DAF Fund, L.P.
and CLO Holdco, Ltd.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| THE CHARITABLE DAF FUND, L.P. | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 22-03052-sgj11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |
| | § | |

*INDEX*

### APPELLANT'S SECOND AMENDED STATEMENT OF ISSUES AND
### DESIGNATION OF RECORD ON APPEAL

Pursuant to Rules 8009(a)(1)(A)-(B) and (a)(4) of the Federal Rules of Bankruptcy

Procedure, The Charitable DAF Fund, L.P. ("Appellant") hereby designates the following items

to be included in the record and identifies the following issues with respect to its appeal of the

Order Granting Defendant's Amended Motion to Dismiss Adversary Proceeding [Doc.43] which

was entered by the United States Bankruptcy Court for the Northern District of Texas on September 30, 2022.

## I.   STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

Whether the Bankruptcy Court erred in granting Defendant's Amended Motion to Dismiss Adversary Proceeding.

## II.   DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD

1. Notice of Appeal for Bankruptcy Case Adversary Proceeding No. 21-03067-sgj11 [Doc. 46].

2. The judgment, order, or decree appealed from: Order Granting Amended Motion to Dismiss Adversary Proceeding [Doc. 43].

3. Any opinion, findings of fact and conclusions of law of the bankruptcy court relating to the issues on appeal, including transcripts of all oral rulings: None.

3. Docket Sheet kept by the Bankruptcy Clerk.

4. Documents listed below and as described in the Docket Sheet for Bankruptcy Case Proceeding No. 22-03052-sgj.

| No. | Date Filed | Docket No. | Description/Document Text |
|-----|-----------|-----------|--------------------------|
| 1 | 5/25/22 (7/22/21) | 1 | (18 pgs; 4 docs) Adversary case 22-03052. ORDER REFERRING CASE 3:21-CV-1710-N from U.S District Court for the Northern District of Texas, Dallas Division to U.S. Bankruptcy Court for Northern District of Texas, Dallas Division and Complaint by Charitable DAF Fund, LP against Highland Capital Management, L.P. Fee Amount $350 (Attachments: # 1 Original Complaint # 2 Civil Cover Sheet # 3 Docket Sheet from 21-CV-1710). Nature(s) of suit: 02 (Other (e.g., other actions that would have been brought in state court if unrelated to bankruptcy)). (Okafor, Marcey) |
| 2 | 5/25/22 (10/5/21) | 8 | (8 pgs; 2 docs) MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) Attorney Zachery Z. Annable added to party Highland Capital Management LP(pty: dft) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #8 ON |

*Vol. 2*

| | | | 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
|---|---|---|---|
| 3 | 5/25/22 (10/5/21) | 9 | (15 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #9 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 4 | 5/25/22 (10/5/21) | 10 | (1012 pgs; 28 docs) Appendix in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #10 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION](Okafor, Marcey) |
| 5 | 5/25/22 (10/5/21) | 11 | (8 pgs; 2 docs) MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #11 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 6 | 5/25/22 (10/5/21) | 12 | (10 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Annable, Zachery [ORIGINALLY FILED IN 21-CV-1710 AS #12 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 7 | 5/25/22 (10/5/21) | 13 | ((238 pgs; 4 docs) Appendix in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 |

*000066*

*000081*

*Thru Vol. 6*

*Vol. 7*

*001093*

*001101*

*001111*

*Vol. 8*

|  |  |  | AS #13 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
|---|---|---|---|
| 8 | 5/25/22 (10/27/21) | 15 | (3 pgs) RESPONSE filed by Charitable DAF Fund LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Sbaiti, Mazin) [ORIGINALLY FILED IN 21-CV-1710 AS #15 ON 10/27/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 9 | 5/25/22 (11/5/21) | 16 | (7 pgs) REPLY filed by Highland Capital Management LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #16 ON 11/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 10 | 5/25/22 (11/21/21) | 18 | (2 pgs) ORDER re: 8 Motion for Reconsideration. The Court grants Defendant's motion, lifts the stay, and refers this case to Judge Stacey G.C. Jernigan of the United States Bankruptcy Court for the Northern District of Texas, to be adjudicated as a matter related to the Chapter 11 Bankruptcy of HCM., Chapter 11 Case No. 10-34054. The Clerk of this Court and the Clerk of the Bankruptcy Court to which this case is referred are directed to take such actions as are necessary to docket this matter as an Adversary Proceeding associated with the aforementioned consolidated bankruptcy case. (Ordered by Judge David C Godbey on 5/19/2022) (oyh) (Main Document 18 replaced on 5/23/2022) (twd). (Entered: 05/20/2022) [ORIGINALLY FILED IN 21-CV-1710 AS #18 ON 11/21/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (*ERROR IN ENTRY: CORRECT CASE NUMBER IS: 19-34054*) (Okafor, Marcey) |
| 11 | 5/27/22 | 19 | (8 pgs; 2 docs) Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments:# 1 Exhibit A--Proposed Order) (Annable, Zachery) |
| 12 | 5/27/22 | 20 | (12 pgs) Brief in support filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| 13 | 5/27/22 | 21 | (637 pgs) Support/supplemental document (*Appendix in Support of Highland Capital Management, L.P.'s Amended* |

*001349*

*001352*

*001359*

*001361*

*001369*

*001381*

*Thru  Vol. 10*

| | | | | |
|---|---|---|---|---|
| | | | | *Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| *Vol. 11* *002018* | 14 | 6/1/22 | 23 | (6 pgs; 2 docs) Notice of hearing filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Hearing to be held on 8/3/2022 at 02:30 PM at https://us courts.webex.com/meet/jerniga for 19 and for 19, (Attachments: # 1 Exhibit A)(Hayward, Melissa) |
| *002024* | 15 | 7/5/22 | 30 | (12 pgs) Response opposed to (related document(s): 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) filed by Plaintiff Charitable DAF Fund, LP . (Ecker, C.) (Entered: 07/06/2022) |
| *002036* | 16 | 7/26/22 | 31 | (15 pgs) Reply to (related document(s): 30 Response filed by Plaintiff Charitable DAF Fund, LP) filed by Defendant Highland Capital Management, L.P.. (Annable, Zachery) |
| *002051* *Thru Vol 14* | 17 | 7/26/22 | 32 | (865 pgs) Support/supplemental document *(Amended Appendix in Support of Highland Capital Management, L.P.'s Amended Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 21 Support/supplemental document). (Annable, Zachery) |
| *Vol. 15* *002916* *Thru Vol. 18* | 18 | 8/1/22 | 34 | (867 pgs; 23 docs) Witness and Exhibit List *(Reorganized Debtor's Witness and Exhibit List with Respect to Evidentiary Hearing to Be Held on August 3, 2022)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22) (Annable, Zachery) |
| *Vol. 19* *003783* *Thru Vol. 22* | 19 | 8/3/22 | 40 | (1 pg) Court admitted exhibits date of hearing August 3, 2022 (RE: related document(s) 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments: # 1 Exhibit A--Proposed Order)) COURT ADMITTED EXHIBIT 17. COURT TOOK JUDICIAL NOTICE OF EXHIBITS 1-13, 21 AND 22. (Ellison, T.) (Entered: 08/04/2022) |

| | 20 | 9/30/22 | 42 | (28 pgs) Memorandum of opinion regarding Defendant's amended motion to dismiss adversary proceeding (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Entered on 9/30/2022 (Okafor, Marcey) |
| | 21 | 8/4/22 | 41 | 41 Transcript regarding Hearing Held 08/03/2022 (45 pages) RE: Motion to Dismiss Adversary Proceeding (19). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 11/2/2022. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 37 Hearing held on 8/3/2022. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) (Appearances: G. Demo and Z. Annabel for Movant/Highland; J. Bridges for Respondent/Charitable DAF. Evidentiary hearing. Motion granted. Court to issue Opinion and Order.)). Transcript to be made available to the public on 11/2/2022. (Rehling, Kathy) |

*Handwritten in left margin: VOL. 22  004651  004679*

Dated:  November 28, 2022

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
**Jonathan Bridges**
Texas Bar No. 24028835
JPMorgan Chase Tower
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367
E:  mas@sbaitilaw.com
    jeb@sbaitilaw.com

**Counsel for Appellant**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically through the Court's ECF system, which provides notice to all parties of interest, on this 28th day of November, 2022.

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 37 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 9 of 274   PageID 4680

35

1    collateral attack on these orders under the doctrine of res

2    judicata.

3         Similarly, as the Court remarked on June 8th, the Supreme

4    Court's *Espinosa* decision, which rejected an attack based upon

5    Federal Rule of Civil Procedure 60(b)(4) to a prior order that

6    may have been unlawful, prohibits the Court from now

7    reconsidering the January 9th and July 16th orders.

8         But even if Your Honor rules that res judicata does not

9    apply, there are two independent reasons why the orders were

10   not an unlawful extension of the Court's jurisdiction.  The

11   first is because the Court had jurisdiction to enter both of

12   those orders as the ability to determine the colorability of

13   claims is within the jurisdiction of the Court.  The second is

14   because the orders are justified by the *Barton* doctrine.

15        Lastly, Your Honor, Movants' argument that the Court may

16   not act as a gatekeeper to determine the colorability of a

17   claim for which it may not have jurisdiction is incorrect, and

18   as Your Honor has mentioned and as Mr. Bridges unconvincingly

19   tried to distinguish, the Fifth Circuit *Villegas v. Schmidt*

20   case is a case on point and resolves that issue.

21        Turning to res judicata, Your Honor, it prevents the Court

22   from revisiting these governance orders.  CLO Holdco had

23   formal notice of the Seery CEO motion and the opportunity to

24   respond.  It failed to do so.  It is clearly bound.

25        As reflected on Debtor's Exhibit 4, CLO Holdco is a

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 38 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 10 of 274   PageID 4681

36

1    wholly-owned subsidiary of the DAF.  The DAF is its sole

2    shareholder.  There is no dispute about that.  Importantly, at

3    the time of both the January and July orders, Grant Scott was

4    the only human being authorized to act on behalf of CLO Holdco

5    and the DAF.  The DAF did not respond to the Seery CEO motion,

6    either.

7         And why is that important, Your Honor?  It's because

8    Movants argue in their reply that the DAF cannot be bound by

9    res judicata because they did not receive notice of the July

10   16th order.  However, Your Honor, that is not the law.  Res

11   judicata binds parties to the dispute and their privies, and

12   the DAF is bound to the prior orders even though it did not

13   receive notice.

14        There are several cases, Your Honor, that stand for this

15   unremarkable proposition.  First I would point Your Honor to

16   the Fifth Circuit's opinion of *Astron Industrial Associates v.*

17   *Chrysler*, found at 405 F.2d 958, a Fifth Circuit case from

18   1968.  In that case, Your Honor, the Fifth Circuit held that

19   the appellant was barred by the doctrine of res judicata from

20   bringing a claim because its parent, which was its sole

21   shareholder, would have been bound by res judicata.

22        *Astron* is consistent with the 1978 Fifth Circuit case of

23   *Pollard v. Cockrell*, 578 F.2d 1002 (1978).  And the Northern

24   District of Texas in 2000 case of *Bank One v. Capital*

25   *Associates*, 2000 U.S. Dist. LEXIS 11652, found that a parent

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 39 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 11 of 274   PageID 4682

37

1    and a sole shareholder of an entity couldn't assert res

2    judicata as a defense when those claims could have been

3    brought against its wholly-owned subsidiary.

4        And lastly, Your Honor, the 2011 Southern District of

5    Texas case, *West v. WRH Energy Partners*, 2011 LEXIS 5183, held

6    that res judicata applied with respect to a partnership's

7    general partner because the general partner was in privity

8    with the partnership.

9        These cases are spot on and make sense.  DAF is CLO

10   Holdco's parent.  Grant Scott was the only live person to

11   represent these entities in any capacity at the relevant

12   times.  Accordingly, just as CLO Holdco is bound, DAF is

13   bound.

14       Allowing DAF to assert a claim when its wholly-owned and

15   controlled subsidiary is barred would allow entities to

16   transfer claims amongst their related entities in order to

17   relitigate them and they would never be finality.  And, of

18   course, Jim Dondero, as we know, consented to the January 9th

19   order, which provided Mr. Seery protection in a variety of

20   capacities.

21       And as Your Honor has pointed out, and as Mr. Bridges

22   didn't have an answer for, neither CLO Holdco nor the DAF or

23   any other party appealed any of the governance orders.  And

24   nobody challenged the validity of these orders at the

25   confirmation hearing, where the terms of these orders were

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 40 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 12 of 274 PageID 4683

38

1    front and center.

2          And importantly, Your Honor, the orders are clear and

3    unambiguous.  They require a Bankruptcy Court [sic] to seek

4    Bankruptcy Court approval before they commence or pursue an

5    action against the independent board, the CEO, CRO, or their

6    agents.  And they clearly and unambiguously set the standard

7    of care for actions prospectively:  gross negligence or

8    willful misconduct.

9          The Bankruptcy Court had jurisdiction to enter the

10   governance orders, which, as expressly indicated in the

11   orders, were core proceedings dealing with the administration

12   of the estate.  No one challenged this finding of core

13   jurisdiction.  And as I will discuss later, the failure to

14   challenge core jurisdiction is waived under applicable Supreme

15   Court and Fifth Circuit precedent.

16         Your Honor, the Court [sic] does not argue that Movants

17   have waived their right to seek adjudication of a lawsuit that

18   passes through the colorability gate by an Article III Court.

19   The issue is not before the Court, but the changes to the

20   order that the Debtor agreed to make clearly -- clearly will

21   provide Mr. Bridges' clients the ability to make that

22   determination.

23         The Debtor is, however, arguing that the Movants have

24   waived their right to contest the core jurisdiction of the

25   Bankruptcy Court to make the determination that the claims are

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 41 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 13 of 274 PageID 4684

39

1  colorable in the first place, and to challenge the exculpation

2  provisions provided to the beneficiaries of those orders.

3      Accordingly, Your Honor, the elements of res judicata are

4  satisfied.  Both proceedings involve the same parties.  The

5  prior judgment was entered by a court of competent

6  jurisdiction.  The prior order was a final judgment on its

7  merits.  And they involved the same causes of action.

8      Importantly, the members of the independent board,

9  including Jim Seery, relied on the protections contained in

10  the January 9th and July 16th orders and would not have

11  accepted these appointments if the protections weren't

12  included.  And how do we know this?  Because each of them,

13  both Mr. Seery and Mr. Dubel, both testified at the

14  confirmation hearing on this very topic.

15      And I would like to put up on the screen an excerpt from

16  Mr. Seery's testimony at confirmation, which is testimony

17  included in the February 2nd, 2021 transcript, which is

18  Exhibit 2 of the Debtor's exhibits.

19          THE COURT:  Okay.

20          MR. POMERANTZ:  And I would like to just read this,

21  Your Honor.

22      "Q   Okay.   You mentioned that there were certain

23      provisions of the January 9th order that were important

24      to you and the other independent directors.  Do I have

25      that right?"

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 42 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 14 of 274   PageID 4685

40

1          MR. POMERANTZ:  A little bit later on, Mr. Seery

2     testifies:

3          "A   And then ultimately there'll be another provision

4          in the agreement here, I don't see it off the top of my

5          head, but a gatekeeper provision.  And that provision"

6          --

7          "Q   Hold on one second, Mr. Seery."

8               MR. POMERANTZ:  Please scroll.

9          "Q   So, Paragraph 4 and 5, were those -- were those --

10         were those provisions put in there at the insistence of

11         the prospective independent directors?

12         "A   Yes.

13         "Q   Okay.  Can we go to Paragraph 10, please?  There

14         you go."

15         Mr. Morris:  Is this the other provision that you were

16    referring to?

17         "A   This is -- it's become to be known as the

18         gatekeeper provision, but it's a provision that I

19         actually got from other cases -- again, another very

20         litigious case -- that I thought it was appropriate to

21         bring it into this case.  And the concept here is that

22         when you are dealing with parties that seem to be

23         willing to engage in decade-long litigation and

24         multiple forums, not only domestically but even

25         throughout the world, it seemed important and prudent

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 43 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 15 of 274   PageID 4686

41

1      to me and a requirement that I set out that somebody

2      would have to come to this Court, the Court with

3      jurisdiction over these matters, and determine whether

4      there was a colorable claim.  And that colorable claim

5      would have to show gross negligence and willful

6      misconduct -- i.e., something that would not otherwise

7      be indemnifiable" --

8          MR. POMERANTZ:  Hold on one second.

9      "A   So, basically, it set an exculpation standard for

10     negligence.     It  exculpates  the  directors  from

11     negligence, and if somebody wants to bring a cause

12     against the directors, they have to come to this Court

13     first to get a finding that there's a colorable claim

14     for gross negligence or willful misconduct."

15     "Q   Would you have accepted the engagement as an

16     independent director without the Paragraphs 4, 5, and

17     10 that we just looked at?

18     "A   No, these were very specific requests.   The

19     language here has been smithed, to be sure, but I

20     provided the original language for Paragraph 10 and

21     insisted on the guaranty provisions above to ensure

22     that the indemnity would have some support.

23     "Q   And ultimately did the Committee and the Debtor

24     agree to provide all the protections afforded by

25     Paragraphs 4, 5, and 10?

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 44 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 16 of 274 PageID 4687

42

1      "A   Yes."

2           MR. POMERANTZ:  So, Your Honor, these -- this

3      testimony also applied to as well as the CEO.

4           The testimony was echoed by Mr. Dubel, another member of

5      the board.  And I'm not going to put his testimony on the

6      screen, but it can be found at Pages 272 to 281 of Exhibit 2,

7      which is the February 2nd transcript.

8           Movants argue, however, that res judicata doesn't apply

9      because the Court didn't have jurisdiction to enter these

10     orders.  And they argue that the order stripped the District

11     Court of this jurisdiction.  As I previously described, the

12     Debtor is prepared to modify the governance orders to provide

13     that the Court shall retain jurisdiction to -- on claims that

14     pass through the gate only to the extent legally permissible.

15     The modification does not appear to be good enough for the

16     Movants.  They continue to argue that the Bankruptcy Court

17     can't even act as the exclusive gatekeeper to determine

18     whether such actions are colorable as a prerequisite for

19     commencing or pursuing an action.

20          The problem Movants run into is the Fifth Circuit's

21     opinion of *Republic v. Shoaf* and various Supreme Court

22     decisions, including *Espinosa*.

23          In *Shoaf*, the Fifth Circuit held that a party cannot

24     subsequently challenge a confirmed plan that clearly and

25     unambiguously released a third party, even if the Bankruptcy

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 45 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 17 of 274 PageID 4688

43

1  Court lacked jurisdiction to approve the release in the first

2  place. Movants' proper recourse was to appeal the governance

3  orders, not to seek to collaterally attack them.

4      In *Shoaf*, the Fifth Circuit held that the confirmed plan

5  was res judicata with respect to a suit by the creditor

6  against the guarantor. And in so ruling, the Fifth Circuit

7  says that the prong of res judicata standard that requires an

8  order, prior order to be made by a court of competent

9  jurisdiction is satisfied regardless of whether the issue was

10  actually litigated. This is because whenever a court enters

11  an order, it does so by implicitly making a finding of its

12  jurisdiction, a determination that can't be attacked. And in

13  fact, in the January 9th and the July 16th orders, it wasn't

14  implicit, the Court's jurisdiction; it was set out that the

15  Court had core jurisdiction.

16      Movants try to brush *Shoaf* aside, arguing that is the only

17  case the Debtor cites to support res judicata argument and is

18  a narrow opinion that has been questioned and distinguished.

19  That's just not correct, Your Honor. Movants ignore that we

20  have cited two United States Supreme Court cases, *Stoll v.*

21  *Gottlieb* and *Chicot County Drainage District*, upon which the

22  Fifth Circuit based its *Shoaf* decision. In each case, the

23  U.S. Supreme Court gave res judicata effect to a Bankruptcy

24  Court order that made a ruling party -- that a ruling party

25  later claimed was beyond the Court's jurisdiction to do so.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 46 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 18 of 274   PageID 4689

44

1    In *Stoll*, it was a release of guaranty without jurisdiction,

2    like *Shoaf*.  In *Chicot*, it was an extinguishment of a bond

3    claim without jurisdiction.

4        Similarly, Your Honor, the U.S. Supreme Court held in

5    *Espinosa* that a party was not entitled to reconsideration of a

6    Bankruptcy Court order under Federal Rule of Civil Procedure

7    60(b)(4) discharging a student loan without making the

8    required statutory finding of undue hardship in an adversary

9    proceeding.  And the Supreme Court reasoned in that opinion as

10   follows:  A judgment is not void, for example, simply because

11   it may have been erroneous.  Similarly, a motion under

12   60(b)(4) is not a substitute for a timely appeal.  Instead,

13   60(b)(4) applies only in the rare instance where a judgment is

14   premised either on a certain type of jurisdictional error or a

15   violation of due process that deprives a party of notice or

16   the opportunity to be heard.

17       Federal courts considering Rule 60(b)(4) motions that

18   assert a judgment is void because of a jurisdictional defect

19   generally have reserved it only for the exceptional case in

20   which the court that rendered the judgment lacked even an

21   arguable basis for jurisdiction.  This case is not the

22   exceptional -- exceptional circumstance that was referred to

23   by *Espinosa*.

24       In addition, we argue in our brief, and I'll get to in a

25   few moments, that both of the orders are justified under the

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 47 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 19 of 274 PageID 4690

45

1    *Barton* doctrine.

2        Actually, before I go to that, Your Honor, I think Movants

3    are really trying to distinguish *Espinosa* by arguing that the

4    Court's order exculpating Mr. Seery for negligence liability

5    did not provide people, mom-and-pop investors, with the due

6    process informing them that they would not be able to assert

7    duty claims based upon mere negligence.  I think that's the

8    core of Mr. Bridges' argument, that, hey, you entered an

9    order, you gave this exculpation, it was inappropriate, and it

10    couldn't be done.

11        There are several problems with Movants' argument.  First,

12    Movants mischaracterize both the facts and the law in

13    connection with the Debtor's relationship with its investors.

14    The Debtor is the registered investment advisor for HCLOF as

15    well as approximately 15 to 18 CLOs.  The only investor in

16    HCLOF other than the Debtor is CLO Holdco.  The investors in

17    the CLOs are the retail funds advised by the Dondero advisors

18    and the other -- and other institutional investors.

19    Accordingly, the thousands of investors, the mom-and-pop

20    investors whose due process rights have allegedly been

21    trampled by the January 9th and July 16th orders, are not

22    investors in any funds managed by the Debtor.

23        And, of course, I have mentioned, as I've mentioned

24    before, no non -- non-Dondero investor, be it a mom-and-pop

25    investor, another institutional investor, anyone unrelated to

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 48 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 20 of 274 PageID 4691

46

1   Mr. Dondero, has ever appeared in this Court to challenge the

2   Debtor's activities.

3       But more fundamentally, Your Honor, the Debtor does not

4   owe fiduciary duties to investors in any of the funds that the

5   Debtor advises.  The fiduciary duty that the Debtor owes is to

6   the funds themselves, not the investors in the funds.

7       And while Movants point to Mr. Seery's prior testimony to

8   support the argument that the Debtor owes a duty to investors,

9   Mr. Seery was not testifying as a lawyer and his testimony

10  just cannot change the law.

11      As to each of the funds that the Debtor manages, HCLOF and

12  the CLOs, they were each provided with actual notice of the

13  January 16th -- the July 16th order and didn't object.  And as

14  Your Honor will recall, the Trustees for the CLOs, the party

15  that could potentially have claims for breach of fiduciary

16  duty, they participated in the January 9th hearing.  They came

17  to the Court and were concerned about the protocols that the

18  Debtor was agreeing to with the Committee.  We revised them.

19  The Trustees didn't object.  They didn't object then; they

20  didn't object now.  And, in fact, they consented to the

21  assumption of the contracts between the Debtor and the CLOs.

22      So the argument that the orders, by having this

23  exculpation for future conduct, violated due process rights of

24  anyone and is the type -- essentially, the type of order that

25  *Espinosa* would have contemplated could be attacked, is --

Case 22-03052-sgj Doc 34-21 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 49 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 21 of 274   PageID 4692

47

1  relies on faulty legal and factual premises.  No duty to

2  investors.  No private right of action.  And both -- and all

3  the funds received due process.

4      In addition, Your Honor, as we argue in our brief and I'll

5  get to in a few moments, both of the orders are justified

6  under the *Barton* doctrine, as Mr. Seery is entitled to

7  protection based upon how courts around the country have

8  interpreted the *Barton* doctrine.  As such, Mr. Seery is

9  performing his role both as an agent of the independent board

10 under the January 9th order, as a CEO under the July 16th

11 order, as a quasi-judicial officer.  And as Your Honor

12 examined in the *Ondova* opinion which you mentioned, trustees

13 are entitled to qualified immunity for damage to third parties

14 resulting from simple negligence, provided that the trustee is

15 operating within the scope of his duties and is not acting in

16 an *ultra vires* manner.

17     So, exculpating the independent directors, their agents,

18 and the CEO in the January 9th and July 16th orders was a

19 recognition by this Court that they would be entitled to

20 qualified immunity, much in the same way trustees are.

21     No doubt that Movants contend that this was error and that

22 the Court overreached.  However, the remedy for that overreach

23 was an appeal, not a reconsideration 16 months later.  The

24 Court's orders based upon the determination that in this

25 highly contentious case that these court officers needed to be

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 50 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 22 of 274 PageID 4693

48

1    protected from negligence suits is not the exceptional case

2    where the Court lacked any arguable basis for jurisdiction.

3    Accordingly, this Court must follow *Espinosa*, *Shoaf*, *Stoll*,

4    and *Chicot* and reject the attack on the prior court orders.

5        The only case Movants cite to challenge the Supreme

6    Court's decision -- to challenge the Supreme Court precedent I

7    mentioned and the Fifth Circuit's *Shoaf* decision is the

8    *Applewood* case.  *Applewood* is totally consistent with *Shoaf*.

9    *Applewood* also involved a plan that purported to release a

10   guaranty claim that the guarantor argued was res judicata in

11   subsequent litigation regarding the guaranty.  The Fifth

12   Circuit held in that case that the plan was not res judicata.

13   It made that ruling because the plan did not contain clear and

14   unambiguous language releasing the guaranty.  In that way, the

15   Fifth Circuit distinguished *Shoaf*.

16       *Applewood* and *Shoaf* are consistent.  A Bankruptcy Court

17   order will be given res judicata effect, even if the Court

18   didn't have jurisdiction to enter it, if the order was clear

19   and unambiguous.  In *Shoaf*, the release was.  In *Applewood*, it

20   wasn't.

21       Movants argued on June 8th and argue now that the

22   *Applewood* case really argues -- really deals with prospective

23   exculpation of claims.  I went back and read Mr. Bridges'

24   comments carefully of June 8th.  He said *Applewood*,

25   exculpation.  Well, that's just not correct.  *Applewood* is all

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 51 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 23 of 274   PageID 4694

49

1    about requiring specificity of a (garbled) to give it res

2    judicata effect.  Claims that existed at that time, were they

3    described clearly and unambiguously?  Yes?  *Shoaf* applies.

4    No?  *Applewood* does -- applies.

5        So how should the Court apply these principles here?  The

6    Court approved a procedure for certain claims in the

7    governance orders.  The procedure:  come to Bankruptcy Court

8    before pursuing a claim against the independent directors and

9    Seery or their agents so that the Court can make a

10   colorability determination.  Clear and unambiguous.  The

11   governance orders each provide that the Bankruptcy Court had

12   jurisdiction to enter the orders, and the orders were not

13   appealed.

14       Movants attempt to confuse the Court and argue *Applewood*

15   is on point because the January 9th and July 16th orders do

16   not clearly identify specific claims that Movants now have

17   that are being released.  And because they're not specific,

18   then basically it's an ambiguous release and *Applewood*

19   applies.

20       The problem with the Movants' argument is that neither the

21   January 9th or July 16th orders released claims that existed

22   at that time.  If they did, and if there wasn't an adequate

23   description, I might agree with Mr. Bridges that *Applewood*

24   applied.  But there were no claims.  It was prospective.  It

25   was a standard of care.  The Court clearly and unambiguously

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 52 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 24 of 274   PageID 4695

50

1   said what the standard of care would be going forward.

2   Clearly, under *Shoaf* and Supreme Court precedent, they are

3   entitled to res judicata because it's a clear and unambiguous

4   provision.  *Applewood* just simply doesn't apply.

5       Mr. Phillips at the last hearing made an impassioned plea

6   to the Court for a narrow interpretation of the exculpation

7   provisions in the January 9th and July 16th orders, and he

8   argued that the Court could not possibly have intended for the

9   exculpation for negligence to apply on a go forward basis.  He

10   thus argued to the Court that the Court should construe the

11   exculpation narrowly and only apply it to potential claims of

12   harm caused to the Debtor, as opposed to harm caused to third

13   parties, which he said included thousands of innocent

14   investors.

15       Of course, Mr. Phillips made those arguments unburdened by

16   the actual facts and the prior proceedings which led to the

17   entry of these orders, because, as he was the first to admit,

18   he only became involved in the case a month ago.

19       As the Court recalls, and as reinforced by Mr. Seery's and

20   Mr. Dubel's testimony I just mentioned, the exculpation

21   provisions were included precisely to prevent Mr. Dondero,

22   through any one of the entities he's owned and controlled, the

23   Movants being two of those, from asserting baseless claims

24   against the beneficiaries of those orders, exactly the

25   situation Mr. Seery now finds himself in.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 53 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 25 of 274 PageID 4696

51

1    And, again, it bears emphasizing:  throughout this case,

2  not one of the purported public investors Mr. Phillips

3  lamented would be prevented from holding Mr. Seery responsible

4  for his conduct has ever appeared in this case to object about

5  anything.  And none of the directors of the funds, the funds

6  where the Debtor acts as an investment adviser, have ever

7  stepped foot in this court, either.

8    Even if the Court declines to apply res judicata, Your

9  Honor, to prevent challenges to the governance orders, the

10 Court has the jurisdiction, had the jurisdiction to include

11 the gatekeeping provisions in those orders.  The Bankruptcy

12 Court derives its jurisdiction from 28 U.S.C. Section 157, and

13 bankruptcy jurisdiction is divided into two parts:  core

14 matters, which are those arising in or arising under Title 11,

15 and noncore matters, those matters which are related to a

16 Chapter 11 case.

17   Bankruptcy Courts may enter final orders in core

18 proceedings, and with the consent of parties, noncore

19 proceedings.  If a party does not consent to a final judgment

20 in the noncore matters or waives its right to consent, then

21 the Bankruptcy Court -- or does not waive its right to

22 consent, then the Bankruptcy Court issues a report and

23 recommendation to the District Court.

24   The seminal Fifth Circuit case on bankruptcy court

25 jurisdiction is the 1987 case of *Wood v. Wood*, 825 F.2d 90.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22  Entered 08/01/22 17:35:41  Page 54 of 124
Case 3:22-cv-02280-S  Document 3-22  Filed 12/06/22  Page 26 of 274  PageID 4697

52

1   There, the Fifth Circuit held that the Bankruptcy Court has

2   related to jurisdiction over matters if the outcome of that

3   proceeding could conceivably have any effect on the estate

4   being administered in the bankruptcy.

5       More recently, the Fifth Circuit, in the 2005 case, in

6   *Stonebridge Tech's*, elaborated on when a matter has a

7   conceivable effect on the estate such as to confer Bankruptcy

8   Court jurisdiction.  There, the Fifth Circuit held that an

9   action is related to bankruptcy if the outcome could alter the

10  debtor's rights, liabilities, options, or freedom of action,

11  either positively or negatively, and which in any way impacts

12  upon the handling and the administration of the bankruptcy

13  estate.  It is against this backdrop, Your Honor, that the

14  Court should evaluate its jurisdiction to have entered the

15  orders.

16      So, again, what did the orders do?  They established

17  governance over the Chapter 11 debtor with new independent

18  directors being approved.  They established the procedures and

19  protocols of how transactions were going to be presented to

20  and approved by the Committee.  They vested in the Committee

21  certain related-party claims, and they provided for the

22  procedures parties would have to follow to assert any claims

23  against the independent directors and the CRO and the agents

24  and advisors.

25      Your Honor, it's hard to imagine that there is a more core

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 55 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 27 of 274   PageID 4698

53

1   order than the entry of these orders.  At the time the orders

2   were entered, the Court was well aware of the potential for

3   acrimony from Mr. Dondero and his related entities, and

4   included the gatekeeper provisions to prevent the Debtor's

5   estate from being embroiled in frivolous litigation against

6   the board and the CEO.

7        Such protections were clearly within the Court's

8   jurisdiction, both to protect the administration of the estate

9   but also under applicable Fifth Circuit law dealing with

10  vexatious litigants, as set forth in the *Baum* and *Carroll*

11  cases that the Court cited in its confirmation order.

12       Not that it was hard to predict, but the last several

13  months have reinforced how important the gatekeeping

14  provisions in the order are and how important similar

15  provisions in the plan are.

16       The Court heard extensive testimony at the confirmation

17  hearing regarding the havoc continued litigation by Mr.

18  Dondero and his related entities would cause, which

19  predictions have unfortunately been borne out by the

20  unprecedented blizzard of litigation involving Mr. Dondero and

21  his related entities that has consumed the Court over the last

22  several months and caused the estate to incur millions of

23  dollars in fees that could have been used to pay its

24  creditors.

25       And these attacks are continuing.  As I mentioned before,

004476

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 56 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 28 of 274   PageID 4699

54

1    in addition to the DAF lawsuit, Sbaiti & Co. filed an action

2    against the Debtor on behalf of PCMG, another related entity,

3    alleging postpetition mismanagement of the Select Fund.

4         And to complete the hat trick, they are the lawyers

5    seeking to sue Acis in the Southern District of New York for

6    allegedly post-confirmation matters.

7         The Court knew then and certainly knows now that the

8    potential for sizable indemnification claims could consume the

9    estate.  The Court used that as the potential basis for

10   determining that the orders were within its jurisdiction, just

11   as it used that potential to justify the exculpation

12   provisions in the plan as being consistent with *Pacific*

13   *Lumber*.

14        Movants also ignore the cases -- and we cited in our

15   opposition -- where courts in this district, including Judge

16   Lynn in *Pilgrim's Pride* in 2010 and Judge Houser in the *CHC*

17   *Group* in 2016, approved gatekeeper provisions that provided

18   the Bankruptcy Court with exclusive jurisdiction to adjudicate

19   claims against postpetition fiduciaries.

20        Movants also ignore cases outside this district, including

21   *General Motors* and *Madoff*, which we cited in our brief as

22   examples of cases where Bankruptcy Courts have been used as

23   gatekeepers to determine if claims are colorable or being

24   asserted against the correct entity.

25        And there's another reason, Your Honor, why Movants may

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 57 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 29 of 274   PageID 4700

55

1     now not contest the Court's jurisdiction to have entered those

2     orders.  Each of those orders, as I said before, include a

3     finding that the Court had core jurisdiction to enter the

4     orders.  No party contested that finding or refused to consent

5     to the core jurisdiction.

6         Under well-established Supreme Court precedent, parties

7     can waive their right to challenge the Bankruptcy Court's

8     jurisdiction, core jurisdiction, by failing to object.  In

9     *Wellness v. Sharif* in 2015, the Supreme Court expressly held

10     that Article III was not violated if parties knowingly and

11     voluntarily consented to adjudication of *Stern v. Marshall*-

12     type alter ego claims, and that the consent need not be

13     express, so long as it was knowing and voluntary.

14         And *Wellness* confirmed the pre-*Stern* opinion of the Fifth

15     Circuit in the 1995 *McFarland* case, which held that a person

16     who fails to object to the Bankruptcy Court's assumption of

17     core jurisdiction is deemed to have consented to the entry of

18     a final order by the Bankruptcy Court.

19         Your Honor, I'd now like to turn to the *Barton* doctrine.

20     The Court also has jurisdiction to have entered the orders

21     based upon the *Barton* doctrine.  The *Barton* doctrine dates

22     back to an old United States Supreme Court case and provides

23     as a general rule that, before a suit may be brought against a

24     trustee, consent from the appointing court must be obtained.

25         Movants essentially make two arguments why the *Barton*

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 58 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 30 of 274   PageID 4701

56

1    doctrine doesn't apply.

2        First, Movants, without citing any authority, argue that

3    it does not apply to Mr. Seery because he is not a trustee or

4    receiver and was not appointed by the Court.  Although the

5    doctrine was originally applied to receivers, it has been

6    extended over time to cover various court-appointed

7    fiduciaries and their agents in bankruptcy cases, including

8    debtors in possession, officers and directors of the debtor,

9    and the general partner of the debtor.  And although Mr.

10   Bridges says he couldn't find one case that applied the *Barton*

11   doctrine to a court-retained professional, I will now talk

12   about several such cases.

13       In *Helmer v. Pogue*, a 2012 case cited in our brief, the

14   District Court for the Northern District of Alabama

15   extensively analyzed the *Barton* doctrine jurisprudence from

16   the Eleventh Circuit and beyond and concluded that it applied

17   to debtors in possession.  The *Helmer* Court relied in part on

18   a prior 2000 decision of the Eleventh Circuit in *Carter v.*

19   *Rodgers*, which held that the doctrine applies to both court-

20   appointed and court-approved officers of the debtor, which is

21   consistent with the law in other circuits.

22       And subsequently, the Eleventh Circuit again considered --

23   and in that case, the distinction of a court-appointed as a

24   court-retained professional was -- was not persuasive to the

25   Court, and the Court held that a court-retained professional

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 59 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 31 of 274 PageID 4702

57

1    can still have *Barton* protection, notwithstanding that he

2    wasn't appointed, the argument that Mr. Bridges tries to make.

3        And subsequently, --

4           THE COURT:  I wonder, was that -- was that Judge

5    Clifton Jessup, by chance?  Or maybe Bennett?

6           MR. POMERANTZ:  Your Honor, this was -- this was the

7    Eleventh Circuit *Carter v. Rodgers*, so I think Judge Jessup

8    was --

9           THE COURT:  Oh, I thought you were still talking

10    about the Alabama case.  No?

11           MR. POMERANTZ:  Yeah, the Alabama -- well, the

12    Alabama case referred to the Eleventh Circuit case, *Carter v.*

13    *Rodgers*, --

14           THE COURT:  Okay.

15           MR. POMERANTZ:  -- and the appointment and -- or

16    retention issue was discussed in the *Carter v. Rodgers* case.

17           THE COURT:  Okay.

18           MR. POMERANTZ:  And subsequently, the Eleventh

19    Circuit again considered the contours of the *Barton* doctrine

20    in *CDC Corp.*, a 2015 case, 2015 U.S. App. LEXIS 9718.  In that

21    case, which Your Honor referenced in your *Ondova* opinion,

22    which I will discuss in a few moments, the Eleventh Circuit

23    held that a debtor's general counsel who had been approved by

24    the Court, who was appointed by a chief restructuring officer

25    who was also approved by the Court, was covered by the *Barton*

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 60 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 32 of 274 PageID 4703

58

1  doctrine for acts taken in furtherance of the administration

2  of the estate and the liquidation of the assets.

3      And the Eleventh Circuit last year, in *Tufts v. Hay*, 977

4  F.3d 204, reaffirmed that court-approved counsel who function

5  as the equivalent of court-appointed officers are entitled to

6  protection under *Barton*.  While the Court in that case

7  ultimately ruled that counsel could be sued without first

8  going to the Bankruptcy Court, it did so because it determined

9  that the suit between two sets of lawyers would not have any

10  effect on the administration of the estate.

11      So, Your Honor, not only is there authority, there is

12  overwhelming authority that Mr. Seery is entitled to the

13  protections.

14      In *Gordon v. Nick*, a District -- a case from 1998 from the

15  Fourth Circuit, the Court that the *Barton* doctrine applied to

16  a lawsuit against a general partner who was responsible for

17  administering the bankruptcy estate.

18      And as I mentioned, Your Honor, and as Your Honor

19  mentioned, Your Honor had reason to look at the *Barton*

20  doctrine in length and in depth in the 2017 *Ondova* opinion.

21  And in the course of the opinion, Your Honor discussed one of

22  the policy rationales for the doctrine, which you took from

23  the Seventh Circuit's *Linton* opinion, and you said as follows:

24  "Finally, another policy concern underlying the doctrine is a

25  concern for the overall integrity of the bankruptcy process

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 61 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 33 of 274 PageID 4704

59

1    and the threat of trustees being distracted from or

2    intimidated from doing their jobs.  For example, losers in the

3    bankruptcy process might turn to other courts to try to become

4    winners there by alleging the trustee did a negligent job."

5        Here, the independent board was approved by the Court as

6    an alternative to the appointment of a Chapter 11 trustee.

7    And it and its agent, including Mr. Seery as the CEO, even

8    before the July 16th order, were provided protections in the

9    form of the gatekeeper order and exculpation.

10       I'm sure the Court has a good recollection of the January

11   9th hearing -- we've talked about it a lot in the proceedings

12   before Your Honor -- where the Debtor and the Committee

13   presented the governance resolution to Your Honor.  And as

14   Your Honor will recall, the appointment of the board was a

15   hotly-contested issue among the Debtor and the Committee and

16   was heavily negotiated.  And the appointment of the

17   independent board was even contested by the United States

18   Trustee at a hearing on January 20th, 2020.

19       I refer the Court to the transcripts of the hearings on

20   January 9th and January 20th of 2020, which clearly

21   demonstrate that appointing this board and giving it the

22   rights and protections and its agents the rights and

23   protections was not your typical corporate governance issue,

24   but it was essentially the Court's alternative to appointing a

25   trustee.  And recognizing that the members of the independent

004482

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 62 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 34 of 274   PageID 4705

60

1    board were essentially officers of the Court, the Court

2    approved the gatekeeper provision, requiring parties first to

3    come and seek the Court's permission before suing them, in

4    order to prevent them from being harassed by frivolous

5    litigation.

6        And the independent board was given the responsibility in

7    the January 9th order to retain a CEO it deemed appropriate,

8    and it did so by retaining Mr. Seery.

9        Recognizing the *Barton* doctrine as it applies to Mr. Seery

10   is consistent with a legion of cases throughout the United

11   States, and Movants' argument that Mr. Seery is not court-

12   appointed is just wrong.

13       Second, Your Honor, Movants cite without any authority,

14   argue that even if the *Barton* doctrine applied there is an

15   exception which would allow it to pursue a claim against Mr.

16   Seery without leave of the Court.

17       The Debtor agrees the 28 U.S.C. § 959 is an exception to

18   the *Barton* doctrine.  Section 959(a) provides that trustees,

19   receivers, or managers of any property, including debtors in

20   possession, may be sued without leave of the court appointing

21   them with respect to any of their acts or transactions in

22   carrying on business connected with such property.

23       As the Court also pointed out at the June 8th hearing, and

24   Mr. Bridges alluded to in his argument, the last sentence of

25   959(a) provides that such actions -- clearly referring to

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 63 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 35 of 274   PageID 4706

61

1    actions that may be pursued without leave of the appointing

2    court -- shall be subject to the general equity power of such

3    court, so far as the same may be necessary to the ends of

4    justice.

5         And Mr. Bridges made a plea, saying you can't take away my

6    jury trial right there.  You just cannot do that.  Well, I

7    have two answers to that, Your Honor.  One, they relinquished

8    their jury trial right.  We've established that.  Okay?

9         The second is allowing Your Honor to act as a gatekeeper

10   has nothing to do with their jury trial right.  Allowing Your

11   Honor to act as a gatekeeper allows you to determine whether

12   the action could go forward, and it'll either go forward in

13   Your Honor's court or some other court.

14        And the argument that the exculpation was essentially a

15   violation of 959 is just -- is just -- it just is twisting

16   what happened.  You have an exculpation provision.  We already

17   went through the authority the Court had to give an

18   exculpation.  With respect to these litigants who are before

19   Your Honor -- we're not talking about anyone else who's coming

20   in to try to get relief from the order; we're talking about

21   these litigants -- we've already established that they were

22   here, they're bound by res judicata.  So their 959 argument

23   goes away.

24        And as the Court -- and separate and apart from that, the

25   issue at issue in the District Court litigation is -- is not

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 64 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 36 of 274   PageID 4707

62

1   even subject to 959.

2       Mr. Bridges says, well, of course it is because it deals

3   with the administration of the estate.  I'd like to refer to

4   what the Court said -- this Court said in its *Ondova* opinion:

5   The exception generally applies to situations in which the

6   trustee is operating a business and some stranger to the

7   bankruptcy process might be harmed, such as a negligence claim

8   in a slip-and-fall case, and is inapplicable to suits based

9   upon actions taken to further the administering or liquidating

10  the bankruptcy estate.

11      And your *Ondova* opinion is consistent with the Third and

12  Eleventh Circuit opinions Your Honor cited in your opinion, as

13  well as numerous other --

14      (Interruption.)

15          MR. POMERANTZ:  -- from the -- from around the

16  country, including cases from the First, Second, Sixth,

17  Seventh, and Ninth Circuits.  And I'm not going to give all

18  the cites to those cases, but it's not a -- it's not a

19  remarkable proposition that Your Honor relied on in *Ondova*.

20      In addition, several of these cases, including the

21  Eleventh Circuit's *Carter* opinion, have been cited with

22  approval by the Fifth Circuit in *National Business Association*

23  *v. Lightfoot*, a 2008 unpublished opinion for this very point.

24  The *Barton* exception of 959 does not apply to actions taken in

25  the administration of the case and the liquidation of assets

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 65 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 37 of 274   PageID 4708

63

1    in the estate.

2         Suffice it to say that it's clear that the Section 959

3    exception to *Barton* has no applicability in this case.

4    Movants, hardly strangers to the bankruptcy case, want to sue

5    Mr. Seery for acts taken relating to a settlement of very

6    complex and significant claims against the estate.  They want

7    to sue a court-appointed fiduciary for doing his job,

8    resolving claims against the estate and his management of the

9    bankruptcy estate.  And they want to do this outside of the

10   Bankruptcy Court.

11        Settlement of the HarbourVest claim, which is where this

12   claim arises under -- whether it's a collateral attack now or

13   not, and we say it is, is for another issue -- but it clearly

14   arises in the context of settlement of the HarbourVest claim,

15   is the quintessential act to further the administration and

16   liquidation of the bankruptcy estate, and certainly doesn't

17   fall within the 959 exception.

18        Movants seem to be arguing that 959(a) makes a distinction

19   between claims against Mr. Seery that damaged the Debtor and

20   claims against Mr. Seery that damaged third parties.  However,

21   the Movants make up that distinction, and it's not in the

22   statute, it's not in the case law.  The focus is not on who

23   the conduct damages, but it's rather on whether the conduct

24   was taken in connection with the administration or the

25   liquidation of the estate.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 66 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 38 of 274 PageID 4709

64

1    And even if the Debtor is wrong, Your Honor, which it's

2  not, the savings clause allows the Court to determine whether

3  leave to be -- sue will be granted.  Given that these claims

4  are asserted by Dondero-related entities, if not controlled

5  entities, no serious argument exists that the equities do not

6  permit this Court to determine if leave to sue is appropriate.

7    Accordingly, Movants' argument that the orders create this

8  tension with 959 is simply an over-dramatization.  And in any

9  event, Your Honor, there's a basis independent of *Barton* that

10  supports the jurisdiction to enter the orders, as I mentioned.

11    But even if the orders only relied on *Barton*, there is an

12  easy fix to Movants' concerns:  let them come to court and

13  argue that the type of suit they are bringing allegedly falls

14  within the exception of 959.

15    Your Honor, Movants argue that the Bankruptcy Court may

16  not act as a gatekeeper if it would not have jurisdiction to

17  deal with the underlying action.  They essentially argue that

18  an Article I judge may not pass on the colorability of a

19  claim, that it should be decided by an Article III judge.

20  This is the same argument, Your Honor, that Your Honor

21  rejected in connection with plan confirmation and which I

22  touched on earlier.

23    And the reason why Your Honor rejected it is because

24  there's no law to support it.  In fact, there is Fifth Circuit

25  law that holds to the contrary.  And we talked about a little

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 67 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 39 of 274 PageID 4710

65

1   bit the Fifth Circuit case decided is *Villegas v. Schmidt* in

2   2015. And *Villegas* is a simple case. Schmidt was appointed

3   trustee over a debtor and liquidated its estate and the

4   Bankruptcy Court approved his final fees. Four years later,

5   Villegas and the prior debtor sued Schmidt in District Court,

6   the district in which the Bankruptcy Court was pending,

7   arguing that he was negligent in the performance of his

8   duties. The District Court dismissed the case because

9   Villegas failed to obtain Bankruptcy Court approval to bring

10  the suit under the *Barton* doctrine.

11      On appeal, Villegas argued *Barton* didn't apply for two

12  reasons. First, that *Stern v. Marshall* created an exception

13  to the *Barton* doctrine for claims that the Bankruptcy Court

14  would not have the jurisdiction to adjudicate. And second,

15  that *Barton* did not apply if the suit is brought in the

16  District Court, which exercises supervisory authority over the

17  Bankruptcy Court that appointed the trustee. Pretty much the

18  argument that was made by Movants at the contempt hearing.

19      The Fifth Circuit rejected both arguments. It held that

20  the existence of a *Stern* claim does not impact the Bankruptcy

21  Court's authority because *Stern* did not overrule *Barton* and

22  the Supreme Court had cautioned circuit courts against

23  interpreting later cases as impliedly overruling prior cases.

24      More importantly, the Fifth Circuit pointed to a post-

25  *Stern* 2014 case, *Executive Benefits v. Arkison*, 573 U.S. 25

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 68 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 40 of 274   PageID 4711

66

1   (2014), which held that *Stern* does not decide how a Bankruptcy

2   Court or District Courts should proceed when a *Stern* creditor

3   is identified, as support for the argument that *Barton* is

4   still good law, even dealing with a *Stern* claim.

5       Second, the Fifth Circuit, joining every circuit to have

6   addressed the issue, ruled that the District Court and the

7   Bankruptcy Court are distinct from one another and the

8   Bankruptcy Court has the exclusive authority to determine the

9   colorability of *Barton* claims and that the supervisory

10  District Court does not.

11      Movants didn't address *Villegas* in their reply.  Briefly

12  tried to distinguish it, unconvincingly, today.  The bottom

13  line is *Villegas* is directly applicable.  Your Honor cited it

14  in the *Ondova* opinion for precisely the proposition that

15  *Barton* applies whether or not the Court has authority to

16  adjudicate the claim.

17      Accordingly, Your Honor, it was within the Court's

18  jurisdiction to require a party to seek approval of Your Honor

19  on the colorability of a claim before an action may be

20  commenced or pursued against the protected parties, even if

21  Your Honor wouldn't have authority to adjudicate the claim at

22  the end of the day.

23      In fact, some courts have even addressed the proper

24  procedure for doing so, requiring the putative plaintiff to

25  not only seek leave of Bankruptcy Court but also to provide a

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 69 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 41 of 274   PageID 4712

67

1    draft complaint and a basis for the Court to determine if the

2    claim is colorable.

3        Movants have done neither, and they should not be

4    permitted to modify the final orders of the Court as a

5    workaround.

6        Your Honor, that concludes my presentation.  I'm happy to

7    answer any questions Your Honor may have.

8            THE COURT:  All right.  Not at this time.  All right.

9    I'm going to figure out, do we need a break or not, depending

10   on what Mr. Bridges tells me.  I assume we're just doing this

11   on argument today.  I think that's what I heard.  No witnesses

12   or exhibits.

13           MR. BRIDGES:  That is correct, Your Honor.

14           THE COURT:  Okay.  Mr. Bridges, how long do you

15   expect your rebuttal to take so I can figure out does the

16   Court need a break?

17           MR. BRIDGES:  Fifteen minutes plus whatever it takes

18   to submit agreed-to exhibits.

19           THE COURT:  Okay.  Let's take a five-minute bathroom

20   break.  We'll come back.  It's -- what time is it?  It's 1:11

21   Central time.  We'll come back in five minutes.

22           THE CLERK:  All rise.

23       (A recess ensued from 1:11 p.m. until 1:17 p.m.)

24           THE CLERK:  All rise.

25           THE COURT:  All right.  Please be seated.  We're

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 70 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 42 of 274   PageID 4713

68

1    going back on the record in the Highland matters.

2         Mr. Bridges, time for your rebuttal.  I want to ask you a

3    question right off the bat.  Mr. Pomerantz pointed out

4    something that was on my list that I forgot to ask you when

5    you made your initial presentation.  What is the authority

6    you're relying on?  You did not cite a statute or a rule *per*

7    *se*, but I guess we can probably all agree that Bankruptcy Rule

8    9024 and Federal Rule 60 is the authority that would govern

9    your motion, correct?

10        MR. BRIDGES:  I don't agree, Your Honor.  I don't

11   believe this is a final order that we're contesting here.  And

12   I think that's demonstrated by the Court's final confirmation

13   -- plan -- plan confirmation order that seeks to modify this

14   order or will modify this order upon being -- being effective.

15   So I don't think so.

16        In the alternative, if we are challenging a final order,

17   then I think you're right as to the rules that would be

18   controlling.

19        THE COURT:  All right.  Well, let me back up.  Why

20   exactly do you say this would be an interlocutory order as

21   opposed to a final order?

22        MR. BRIDGES:  Because of its nature, Your Honor.

23   While the appointment in the order or the approval of the

24   appointment in the order might, as a separate component of the

25   order, have -- have finality, the provisions -- the provisions

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 71 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 43 of 274   PageID 4714

69

1   in it relating to gatekeeping and exculpation are, we think,

2   by their very nature, quite obviously interlocutory and not

3   permanent.  They don't seem to indicate an intention by any of

4   the parties that, 30 years from now, if Mr. Seery is still CEO

5   at Highland, long after the bankruptcy case has ended, that

6   nonetheless parties would be prohibited from bringing claims,

7   strangers to this action would be prohibited from bringing

8   claims related to his CEO role.

9         I think the nature of it demonstrates that, the

10  modifications to it, and even the inclusion of it in the final

11  plan confirmation, as well as -- can't read that.

12            THE COURT:  Can you give me some authority?  Because

13  as we know, there's a lot of authority out there in the

14  bankruptcy universe on what discrete orders are interlocutory

15  in nature that a bankruptcy judge might routinely enter and

16  which ones are final.  You know, it would just probably, if I

17  flipped open *Collier's*, I could -- you know, it would be mind-

18  numbing.

19        So what authority can you rely on?  I mean, is there any

20  authority that says an employment order is not a final order?

21  That would be shocking to me if you have cases to that effect,

22  but, I mean, of course, sometimes we do interim on short

23  notice and then final.  But this would be shocking to me if

24  there is case authority to support the argument this is not a

25  final order.  But I learn something new every day, so maybe I

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 72 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 44 of 274 PageID 4715

70

1    would be shocked and there is.

2            MR. BRIDGES:  Your Honor, I'd point you to *In re*

3    *Smyth*, 207 F.3d 758, and *In re Royal Manor*, 525 B.K. 338

4    [sic], for the proposition that retaining a bankruptcy

5    professional is an interlocutory order.

6            THE COURT:  Okay.  Stop for a moment.  The *Smyth*

7    case.  Which court is that?

8            MR. BRIDGES:  Fifth Circuit.

9            THE COURT:  Okay.  So tell me the facts.  I'm

10   surprised I don't know about this case.  But, again, I don't

11   know every case.  So, it held that an employment order is an

12   interlocutory order?

13           MR. BRIDGES:  Appointing counsel.  A professional in

14   the bankruptcy context, Your Honor.

15           THE COURT:  Counsel for a debtor-in-possession?  An

16   order approving counsel was an interlocutory order?

17           MR. BRIDGES:  Yes, or the Trustee's counsel.

18           THE COURT:  Or the Trustee's counsel?  Okay.  What

19   were the circumstances?  Was this on an expedited basis and

20   there wasn't a follow-up final order, or what?

21           MR. BRIDGES:  Your Honor, I don't have -- I don't

22   have that at the tip of my memory.  I'm sorry.

23           THE COURT:  Okay.  And the other one, 525 B.R. 338,

24   what court was that?

25           MR. BRIDGES:  It's a Bankruptcy Court within the

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 73 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 45 of 274 PageID 4716

71

1    Sixth Circuit.  I'm not certain which district.

2              THE COURT:  All right.  Well, maybe one of you two

3    over there can look them up and give me the context, because

4    that is surprising authority.  Or other lawyers on the WebEx

5    maybe can do some quickie research.

6       Okay.  We'll come back to that.  But assuming that this

7    was a final order, which I have just been presuming it was,

8    Rule 60 is the authority you're going under?  9024 and Rule

9    60, correct?

10             MR. BRIDGES:  Your Honor, we have not invoked those

11   rules.  Alternatively, I think you're right that they would

12   control if we are wrong about the interlocutory nature of the

13   order.

14             THE COURT:  Well, you have to be going under certain

15   -- some kind of authority when you file a motion.  So I'm --

16             MR. BRIDGES:  As an alternative --

17             THE COURT:  I'm approaching this exactly, I assure

18   you, as the District Court or a Court of Appeals would.  You

19   know, you start out, what is the legal authority that is being

20   invoked here?

21             MR. BRIDGES:  Well, --

22             THE COURT:  So I just assume Rule 60.  I can't, you

23   know, come up with anything else that would be the authority.

24             MR. BRIDGES:  Yes, Your Honor.  You also have

25   inherent power to modify orders that are in violation of the

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 74 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 46 of 274 PageID 4717

72

1   law.  And we pointed you to --

2          THE COURT:  Now, is that right?  Is that really

3   right?  Why do we have Rule 60 if I can just willy-nilly, oh,

4   I feel like I got that wrong two years ago?  I can't do that,

5   can I?  Rule 60 is the template for when a court can do that.

6   Parties are entitled to rely on orders of courts.  And that's

7   why we have Rule 60, right?  So, --

8          MR. BRIDGES:  Your Honor, I think -- I think that

9   we're miscommunicating.  I'm trying not to rely on Rule 60 in

10   the first instance because in the first instance we view this

11   as not a final order.  So, in the first instance, --

12          THE COURT:  I got that.  And I've got my law clerks

13   looking up your cases to see if they convince me.  But I'm

14   asking you to go to layer two.  Assuming I don't agree with

15   you these are final orders, what is your authority for the

16   relief you're seeking?

17          MR. BRIDGES:  Yes, Your Honor.  Rule 60 would apply

18   in the alternative.

19          THE COURT:  All right.

20          MR. BRIDGES:  That's correct.

21          THE COURT:  So, which provision?  Which provision of

22   Rule 60?  (b) what?

23          MR. BRIDGES:  Your Honor, I'm not prepared to concede

24   any of them.  I don't have the rule in front of me.

25          THE COURT:  You're not prepared to concede what?

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 75 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 47 of 274   PageID 4718

73

1          MR. BRIDGES:  Any of the provisions of Rule 60.  Just

2     (b)(1), (b)(2), especially, but I'm -- I'm -- Rule 60 is our

3     basis, as is the particulars (b)(1), (2), (6) --

4          (Garbled audio.)

5          THE COURT:  Okay.  You're breaking up.  Can you

6     restate?

7          MR. BRIDGES:  (b)(1), (2), and (6), as -- as well as

8     any other provision, Your Honor, of Rule 60.

9          THE COURT:  Okay.  Well, so (1), mistake,

10    inadvertence, surprise, excusable neglect.  Which one of

11    those?

12         MR. BRIDGES:  All of the above, Your Honor.

13         THE COURT:  Surprise?  Who's surprised?

14         MR. BRIDGES:  Your Honor, I think every potential

15    litigant who discovers that your order purports to bar

16    prospective unaccrued claims at the time the order issued

17    would be surprised.

18       Frankly, I think Mr. Seery would be surprised, given his

19    testimony that he owes fiduciary duty -- duties that he must

20    abide by and that he appears to have, as I continue to

21    represent to clients, to advisees, and to the SEC, that those

22    duties are owing.

23         THE COURT:  Okay.  I'm giving you one more chance

24    here to make clear on the record what provision of Rule 60(b)

25    are you relying on, okay?  I need to know.  It's not in your

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 76 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 48 of 274 PageID 4719

74

1    pleading.

2              MR. BRIDGES:  Your Honor, --

3              THE COURT:  So tell me specifically.  I can only --

4              MR. BRIDGES:  -- (b)(1) --

5              THE COURT:  -- come up with a result here if I know

6    exactly what's being presented.

7              MR. BRIDGES:  Your Honor, (b)(1), (b)(2), and (b)(6)

8    --

9              THE COURT:  Which, okay, there are multiple parts to

10   (1).  You're saying somebody's surprised by the ruling.  I

11   don't know who.  Really, all that matters is your client, the

12   Movants.  You're saying, even though they participated, --

13             MR. BRIDGES:  Yes, Your Honor.

14             THE COURT:  -- got notice, they're somehow surprised?

15   Why are they surprised?

16             MR. BRIDGES:  Yes, Your Honor.

17             THE COURT:  Do you have evidence of their surprise?

18             MR. BRIDGES:  Your Honor, our brief shows the

19   intentions of all involved were not the interpretation of that

20   order being advanced at this -- at this point in time.  And

21   so, yes, I believe that is evidence.  The transcripts of the

22   hearings I believe evidence that as well, that the

23   understanding of everyone involved was not that future --

24   unspecified future claims that had not accrued yet would be

25   released under (b)(1).  Yes, Your Honor.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 77 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 49 of 274   PageID 4720

75

1          THE COURT:  Okay.

2          MR. BRIDGES:  Under (b)(2), --

3          THE COURT:  I don't have any evidence of that.  All I

4   have is the clear wording of the order.  Okay.  Let me just --

5   just let me go through this.

6      Assuming Rule 60 (1) through (6) are what you're arguing

7   here, what about Rule 60(c):  a motion under Rule 60(b) must

8   be made within a reasonable time?  We're now 11 months --

9          MR. BRIDGES:  Your Honor, --

10         THE COURT:  We're now 11 months past the July 2020

11  order.  What is your authority for this being a reasonable

12  time?

13         MR. BRIDGES:  Yes, Your Honor.  If I may back up one

14  step before answering your question.  Under (b)(2), we're

15  relying on newly-discovered evidence that was discovered in

16  late March and caused both the filing of this motion and the

17  filing of the District Court action.

18     Under (b)(4), we believe that the order is --

19         THE COURT:  Let me stop.  Let me stop.  What is my

20  evidence that you're putting in the record that's newly

21  discovered?

22         MR. BRIDGES:  The evidence is detailed in the

23  complaint that is in the record.  You know, --

24         THE COURT:  That's not evidence.

25         MR. BRIDGES:  -- honestly, Your Honor, --

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 78 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 50 of 274   PageID 4721

76

1          THE COURT:  That is not evidence.  Okay?  A lawyer-

2   drafted complaint in another court is not evidence.  Okay?

3          MR. BRIDGES:  Your Honor, I think, to be technical,

4   that there is not a record yet, that we have evidence yet to

5   be admitted on our exhibit list.  I believe in this

6   circumstance -- I understand that, in general, allegations in

7   a pleading are not evidence.  In this instance, when we're

8   talking about whether or not new facts led to the filing of a

9   lawsuit, I do believe that the allegations in the lawsuit are

10  evidence of those new facts.

11         THE COURT:  All right.  Go on.

12         MR. BRIDGES:  Under (b)(4), we believe the order is,

13  in part, void.  It is void because of the jurisdictional and

14  other defects noted in our argument.

15     And also, under (b)(6) (garbled) ground for relief that

16  we're appealing to the equitable powers of this Court to

17  correct errors and manifest injustice towards not just the

18  litigants here but to correct the order of the Court to make

19  it comply with -- with the law, with the statutes promulgated

20  by Congress and to respect the jurisdiction of the District

21  Court.

22         THE COURT:  All right.  Do you agree with Mr.

23  Pomerantz that the case law standard for Rule 60(b)(4) is

24  exceptional circumstances?  It's only applied so that a

25  judgment is voided in exceptional circumstances.  Do you

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 79 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 51 of 274 PageID 4722

77

1   disagree with that case authority?

2          MR. BRIDGES:  I would -- I would agree, in part, that

3   unusual circumstances is not the ordinary case.  I'm not

4   entirely sure what you mean by exceptional, but I think we're

5   on the same page.

6          THE COURT:  Okay.  It's not what I mean.  That's just

7   the case law standard.  And I'm asking, do you agree with Mr.

8   Pomerantz that that is the standard set forth in case law when

9   applying 60(b)(4)?  There have to be some sort of exceptional

10  circumstances where there's just basically no chance the Court

11  had authority to do what it did.

12         MR. BRIDGES:  Out of the ordinary would be the phrase

13  I would use, Your Honor.

14         THE COURT:  Okay.  So I guess then I'll go from

15  there.  Is it your argument that gatekeeping provisions in the

16  bankruptcy world are out of the ordinary?

17         MR. BRIDGES:  The exculpation of Mr. Seery for

18  liability falling short of gross negligence or intentional

19  wrongdoing in connection with his continuing to conduct the

20  business of the Debtor as an investment advisor subject to the

21  Advisers Act, yes, I would say that is out of the ordinary,

22  that it is extraordinary, that it is --

23         THE COURT:  Okay.  What is your authority or evidence

24  on that?  Because this Court approves exculpation provisions

25  regularly in connection with employment orders, and pretty

Case 22-03052-sgj  Doc 34-21  Filed 08/01/22    Entered 08/01/22 17:35:41    Page 80 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 52 of 274   PageID 4723

78

1  much every judge I know does.  In fact, I'm wondering why this

2  isn't just a term of compensation.  You know, he's going to do

3  x, y, z in the case.  His compensation is going to be a, b, c,

4  d, e.  And by the way, we're going to set a standard of

5  liability for his performance as CEO or investment banker,

6  financial advisor, whatever, so that no one can sue him

7  regarding his performance of his job duties unless it rises to

8  the level of gross negligence, willful misconduct.

9       It's a term of employment that, from my vantage point,

10  seems to be employed all the time.  So it would be anything

11  but exceptional circumstances.  Do you have authority or

12  evidence --

13             MR. BRIDGES:  Your Honor, frankly, --

14             THE COURT:  -- to the contrary?

15             MR. BRIDGES:  Your Honor, frankly, I'm astonished at

16  your view of that situation, that it would merely be a term of

17  his employment, that vitiates the entire fiduciary duty

18  standard created by the Advisers Act that tells him, with

19  hundreds of millions of dollars of assets under management for

20  people he's advising as a registered investment advisor,

21  people he's advising who believe that he has a fiduciary duty

22  to them and that it's enforceable, that the SEC, who monitors,

23  believes he has an enforceable fiduciary duty to those people,

24  and that he's testified that he has fiduciary duties to those

25  people, and that Your Honor is saying no, just as a regular

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 81 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 53 of 274   PageID 4724

79

1    term of employment we have undone the Advisers Act's

2    imposition of an unwaivable fiduciary duty.

3         Your Honor, the order is void to the extent that it

4    attempts to do so.

5         This is not an ordinary employment agreement, Your Honor.

6    This is an attempt to exculpate someone from the key thing

7    that our entire investment system depends upon, regulation by

8    the SEC and the requirement in investment advisors to act as

9    fiduciaries when they manage the money of another.

10        It would be the equivalent of telling lawyers who are

11   appointed in a bankruptcy proceeding that they don't have any

12   duties to their client, or at least not fiduciary duties.

13   That the lawyers merely owe a duty not to be grossly negligent

14   to their clients.  That's not an ordinary term of employment,

15   Your Honor.

16             THE COURT:  All right.  So I guess we're back to my

17   question, was this brought within a reasonable time under Rule

18   60(c)?

19             MR. BRIDGES:  It was brought very quickly after the

20   new evidence was discovered at the end of March, Your Honor,

21   yes.

22             THE COURT:  Okay.  Well, I guess I'll just ask you

23   one more question before you continue on with your rebuttal

24   argument.  I mean, again, I want your best argument of why

25   *Villegas* doesn't absolutely permit the gatekeeping provisions

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 82 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 54 of 274   PageID 4725

80

 1   that you're challenging.  And many cases were cited by Mr.

 2   Pomerantz in his brief where courts have extended the *Barton*

 3   doctrine to persons other than trustees.  And so what is your

 4   best rebuttal to that?

 5          MR. BRIDGES:  Your Honor, we've already given it.

 6   I'm afraid --

 7          THE COURT:  Okay.  If you don't want to say more, --

 8          MR. BRIDGES:  -- what I have is not --

 9          THE COURT:  -- I'm not going to make you say more.

10          MR. BRIDGES:  I --

11          THE COURT:  I'm just telling you what's on my brain.

12          MR. BRIDGES:  I do.  I want to -- I am apologizing in

13   advance for repeating, but yes, *Villegas*, *Villegas*, however

14   that case is pronounced, says that *Stern* is not an exception

15   to the *Barton* doctrine.

16          THE COURT:  Uh-huh.

17          MR. BRIDGES:  959(a) is an exception to the *Barton*

18   doctrine.  You are not operating under the *Barton* doctrine

19   here.  Even counsel's brief, the Debtor's brief, doesn't say

20   *Barton* applies.  It says it's consistent with *Barton*.

21       Your Honor, in our previous hearing, you directed me to

22   the second sentence of 959(a) because you believe it's what

23   empowers you to do the gatekeeping.  It limits the gatekeeping

24   that you can do by protecting jury rights, the right to trial,

25   says you cannot discharge, undo, deprive a litigant of their

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 83 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 55 of 274 PageID 4726

81

1   right to a trial, a jury trial.

2                 THE COURT:  Well, you mentioned it again, jury trial

3   rights.  Do you have any argument --

4                 MR. BRIDGES:  Yes, Your Honor.

5                 THE COURT:  -- of why that hasn't flown out the

6   window?

7                 MR. BRIDGES:  Yes, Your Honor.  I am told that

8   Section 14(f) that counsel for the Debtor referred to is not a

9   waiver of jury rights at all.  It is an arbitration agreement.

10  Your Honor is probably familiar how arbitration agreements

11  work, is that they need not be elected.  They need not be

12  invoked by the parties.  When they are, they create a

13  situation where arbitration may be required.  But a waiver of

14  a jury right outside of arbitration is not part of this

15  arbitration clause, or of any.  The issue is not briefed or in

16  evidence before the Court.  We're relying on representations

17  of counsel as to what that provision contains.  That Mr. Seery

18  wasn't even a party to that agreement, the advisory agreement,

19  with the Charitable DAF.  The arbitration agreement is subject

20  to defenses that are not at issue here before the Court.  That

21  Movants' rights, their contractual rights to invoke the

22  arbitration clause, also appear to be terminated by the

23  orders' assertion of sole jurisdiction in this matter.

24       Your Honor, yes, our jury rights survive Section 14(f) in

25  the advisory agreement with the DAF for all of those potential

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 84 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 56 of 274 PageID 4727

82

1    reasons.

2         On top of that, it doesn't go to all of our causes of

3    action.  It goes to the contract cause of action.  And to the

4    extent they can argue that the other claims are subject to

5    arbitration, that also is a defense and -- defensible and

6    complex issue requiring the application of the Federal

7    Arbitration Act, requiring consideration of the Federal

8    Arbitration Act, which this Court doesn't have jurisdiction to

9    do under 157(d).

10             THE COURT:  What?  Repeat that.

11             MR. BRIDGES:  Yes.  This Court does not have

12   jurisdiction to determine whether or not arbitration --

13   arbitration is enforceable due to the mandatory withdrawal of

14   the reference provisions of 157(d).

15             THE COURT:  That's just not consistent with Fifth

16   Circuit authority.  *National Gypsum*.  What are some of these

17   other arbitration cases?  I've written an article on it.  I

18   can't remember them.  That's just not right.  Bankruptcy

19   courts look at arbitration clauses all the time.  Motions to

20   compel arbitration.

21             MR. BRIDGES:  Your Honor, under 157(d), in the

22   circumstances of this case, if the Court is going to take into

23   consideration an arbitration clause under the Federal

24   Arbitration Act, when that clause is not in evidence and is

25   not before the Court, then Movants respectfully move to

004505

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 85 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 57 of 274 PageID 4728

83

1   withdraw the reference of your consideration of that issue and

2   of any proceeding and ask that you would issue only a report

3   and recommendation rather than an order on that issue.

4        THE COURT:  Okay.  I regret that we even got off on

5   this trail.  I'm sorry.  So just proceed with your rebuttal

6   argument as you had envisioned it, Mr. Bridges.

7        MR. BRIDGES:  Thank you, Your Honor.

8     Debtor's counsel says there's no private right of action

9   under the Advisers Act.  That is both inaccurate and

10   misleading.  The Advisory Act creates, imposes fiduciary

11   duties that state law provides the cause of action for.  It is

12   a state law breach of fiduciary duty claim regarding --

13   regarding fiduciary duties imposed as a matter of law by the

14   Investment Advisers Act that is Count One in the District

15   Court action.

16     Furthermore, that Act does create a private right of

17   action for rescission.  That would be rescission of the

18   advisory agreement with the Charitable DAF, not rescission of

19   the HarbourVest settlement.

20     Second, Your Honor, the notion that this Court has related

21   to jurisdiction is irrelevant and beside the point.  I would

22   like to note for the record that the District Court civil

23   cover sheet that omitted to state that this was a related

24   action has been corrected, has been amended, and that that has

25   taken place.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 86 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 58 of 274   PageID 4729

84

1          Counsel for the Debtor also appears to agree with us that

2     the order ought to be modified for having asserted exclusive

3     jurisdiction over colorable claims to the extent it's not

4     legally permissible to do.  And in trying to invoke the

5     discussions between us as to how the orders might be fixed,

6     what counsel does is tries to cabin the legally-permissible

7     caveat to just the second half of the paragraph at issue.  It

8     is both -- both portions, the gatekeeping and the subsequent

9     hearing of the claims, that should be limited to the extent it

10    would be impermissible legally for this Court to make those

11    decisions.

12          On top of that, Your Honor, merely stating "to the extent

13    legally permissible" would result in a considerable amount of

14    ambiguity in the order that would lead it, I fear, to be

15    unenforceable as a matter of law.

16          Next, Your Honor, when Debtor's counsel talks about the

17    authority in this case, it feels like we're ships passing in

18    the night.  He says that we're wrong in asserting that no case

19    we can find involves both the *Barton* doctrine and the

20    application of the business judgment rule where the Court is

21    asked to defer, and he mentions cases that apply the *Barton*

22    doctrine to an approval rather than an appointment.  The Court

23    is asked to --

24          (Garbled audio.)

25              THE COURT:  I lost you for a moment.  Could you

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 87 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 59 of 274   PageID 4730

85

1   repeat the last 30 seconds?

2           MR. BRIDGES:  Thank you, Your Honor.  Yes.  He points

3   -- opposing counsel points us to case law where the *Barton*

4   doctrine has been applied despite the Bankruptcy Court having

5   merely approved rather than appointed the trustee or the, I'm

6   sorry, the professional.  But in doing so, he doesn't

7   reference any case that has done so in the context of business

8   judgment rule deference.  It's like we're ships passing in the

9   night.

10      What we're saying isn't that a mere approval can never

11  rise to the level of the *Barton* doctrine.  What we're saying

12  is that, in combination with the business judgment rule

13  deference, the two cannot go together.  There's no authority

14  for saying that they do.

15      We -- I further feel like we're ships passing in the night

16  when he talks about *Shoaf*.  Counsel says that in *Shoaf* there

17  was a confirmed final plan and it specifically identified the

18  released guaranty.  And yeah, that distinguishes it from this

19  case, just as it distinguished -- just as the *Applewood Chair*

20  case distinguished it when there's not that specific

21  identification.  And here, we don't even have a final plan

22  confirmation at the time these orders are being issued.

23  Without that express -- express notion of what the claims are

24  being discharged, *Shoaf* doesn't apply.

25      There, there was a guaranty to a party on a specific

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 88 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 60 of 274 PageID 4731

86

1   indebtedness that was listed, identified with specificity, and

2   disappeared as a result of the judgment, as a result of the

3   judgment in the underlying case. Here, we're talking about

4   any potential claim that might arise in the future. As of the

5   July order's issuance, it didn't apply on its -- either it

6   didn't apply to future claims that had not yet accrued or else

7   in violation of *Applewood Chair*, it was releasing claims

8   without identifying them.

9       Who does Seery owe a fiduciary duty to? Is it, as

10  Debtor's counsel says, only to the funds and not to the

11  investors, or does he also owe those duties to the investors

12  as well? Your Honor, that is going to be a hotly-contested

13  issue in this litigation, and it involves -- it requires

14  consideration of the Advisers Act and the multitude of

15  accompanying regulations. To just state that his fiduciary

16  duties are limited in a way that couldn't affect anyone that

17  is -- whose claims are precluded by the July order is both

18  wrong on the law and is invoking something that will be a

19  hotly-contested issue that falls under 157(d), where, again,

20  this Court doesn't have the jurisdiction to decide that, other

21  than in a report and recommendation.

22      The order is legally infirm because it's issued without

23  jurisdiction for doing that as well.

24      Finally, Your Honor, I think (garbled) wrong direction

25  with a statement that suggests that Mr. Seery is an agent of

Case 22-03052-sgj Doc 34-21 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 89 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 61 of 274   PageID 4732

87

1    the independent directors under the January order.  He is, in

2    fact, not an independent agent -- not an agent of any of the

3    independent directors, but, at most, of the company that is

4    controlled by the board, not -- not of individual directors

5    who could confer on him -- who could confer on him any

6    immunity that they have obtained from the January order just

7    by having appointed him.

8         The proposed order from the other side failed to address

9    either the ambiguity in the order or its attempt to exculpate

10   Mr. Seery from the liability, including liability for which

11   there is a jury trial right, and it is not a fix to the

12   problem for that reason.

13        In order to make the order enforceable and to fix its

14   infirmities, the Court would have to do significantly more.

15   It would have to both apply the caveat from the final

16   confirmation plan order, rope that caveat to the first part of

17   the relevant paragraph, as well as the second part, and it

18   would have to provide directive clarity to be enforceable

19   rather than too vague.

20        Your Honor, I think that's all I have.

21             THE COURT:  Okay.  Just FYI, my law clerk pulled the

22   *Smyth* case from 21 years ago from the Fifth Circuit.  And

23   while it more prominently deals with the issue of whether

24   trustees -- in this case, it was a Chapter 11 trustee -- could

25   be subjected to personal liability for damages to the

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 90 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 62 of 274 PageID 4733

88

1    bankruptcy estate --

2         (Echoing.)

3         THE COURT:  Someone, put your phone on mute.  I don't

4    know who that is.

5       It dealt with, you know, the standard of liability, that

6    the trustee could not be sued for matters not to the level of

7    gross negligence.

8       But it does say, in the very last paragraph, to my shock

9    and amazement, that -- it's just one sentence in a 10-page

10   opinion -- orders appointing counsel -- and it was talking

11   about the trustee's lawyer he hired to handle appeals to the

12   Fifth Circuit -- orders appointing counsel under the

13   Bankruptcy Code are interlocutory and are not generally

14   considered final and appealable.  And it cites one case from

15   1993, the Middle District of Florida.  Live and learn.  There

16   is one sentence in that opinion that says that.  But I don't

17   know that it's hugely impactful here, but I did not know about

18   that opinion and I'm rather surprised.

19      All right.  You were going to walk me through evidence,

20   you said?

21        MR. BRIDGES:  Well, do I -- Your Honor, do you want

22   to do that first before I submit --

23        THE COURT:  Yes, please.

24        MR. BRIDGES:  -- my rebuttal argument?

25        THE COURT:  Please.

004511

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 91 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 63 of 274 PageID 4734

89

1          MR. BRIDGES:  Okay.

2          THE COURT:  Uh-huh.

3          MR. BRIDGES:  Your Honor, we would submit and offer

4    Exhibits 1 through 44, with the exception of those that have

5    been withdrawn, that are 2, 13 --

6          THE COURT:  Okay.  Slow down.  Slow down.  I need to

7    get to the docket entry number we're talking about.  Are we

8    talking -- are your -- the Debtor's exhibits are at 2412.  But

9    Nate, I misplaced my notes.  Where are Charitable DAF and

10   Holdco's?

11         THE CLERK:  I have 2411.

12         THE COURT:  2411?  Is that it?

13         MR. BRIDGES:  2420, Your Honor.

14         THE COURT:  2420?  Okay.  Give me a minute.  (Pause.)

15   2420?

16         MR. BRIDGES:  Yes, Your Honor.

17         THE COURT:  Okay, I'm there.  And it's which

18   exhibits?

19         MR. BRIDGES:  It's Exhibits 1 through 44, Your

20   Honor, with four exceptions.  We have agreed to withdraw

21   Exhibit 2, 13, 14, and 29.

22         THE COURT:  All right.

23         MR. BRIDGES:  Also, Your Honor, we'd like to submit

24   Debtor's Exhibit 1, which is under Exhibit 49 on our list,

25   would be anything offered by the other side.  But we'd like

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 92 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 64 of 274   PageID 4735

90

1    to make sure that Debtor's Exhibit 1 gets in the record as

2    well.

3            THE COURT:  Let me back up.  When I pull up the

4    docket entry you just told me, I have Exhibits 44, 45, and 46

5    only.  Am I misreading this?

6            MR. BRIDGES:  I have a chart showing Exhibits 1

7    through 49 titled Docket 2420 filed 6/7/21.

8            THE COURT:  Okay.  The docket entry number you told

9    me, 2420, it only has three exhibits:  44, 45, and 46.  So,

10   first off, I understand -- are you offering 45 and 46 or not?

11           MR. BRIDGES:  No, Your Honor.

12           THE COURT:  Okay.  So you said you were offering 1

13   through 44 minus certain ones.  44 is here.

14           MR. BRIDGES:  Yes.

15           THE COURT:  But I've got to go back to a different

16   docket number.

17           THE CLERK:  It's actually 2411.

18           THE COURT:  It's at 2411.  That has all the others?

19           THE CLERK:  Yes.

20           THE COURT:  Okay.

21      So, Mr. Pomerantz, do you have any objection to Exhibits

22   1 through 44, which he's excepted out 2, 13, 14, and 29, and

23   then he's added Debtor's Exhibit 1?  Any objection?

24           MR. POMERANTZ:  I don't believe so.  I just would

25   confirm with John Morris, who has been focused on the

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 93 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 65 of 274 PageID 4736

91

1    exhibits, just to confirm.

2              THE COURT:  Mr. Morris?

3              MR. MORRIS:  No objection, Your Honor.  It's fine.

4              THE COURT:  Okay.  They're admitted.

5         (Movants' Exhibits 1, 3 through 12, 15 through 28, and 30

6    through 44 are received into evidence.  Debtor's Exhibit 1 is

7    received into evidence.)

8              THE COURT:  So, any --

9              MR. BRIDGES:  Thank you, Your Honor.

10             THE COURT:  Anything you wanted to call to my

11   attention about these?

12             MR. BRIDGES:  Your Honor, the things that we

13   mentioned in the argument, for sure, but especially that the

14   word "trustee" is not used in the January hearing's

15   transcript, nor is it under discussion in that transcript

16   that it would be a trustee-like role being played by the

17   Strand directors, as well as the transcript of the July

18   hearing on the order at issue here, Your Honor, where you are

19   asked to defer both in that transcript and in the motion, the

20   motion that was at issue in that hearing, you are asked to

21   defer to the business judgment of the company.

22        And finally, Your Honor, I'd ask you to look at the

23   allegations in the District Court complaint.

24             THE COURT:  All right.

25        Mr. Pomerantz or Morris, let's see what exhibits you're

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 94 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 66 of 274   PageID 4737

92

1    wanting the Court to consider.  Your exhibits, it looks like,

2    are at Docket Entry 2412.

3            MR. MORRIS:  As subsequently amended at 2423.

4            THE COURT:  Oh.  All right.  So which ones are you

5    offering?

6            MR. MORRIS:  We're offering all of the exhibits on

7    2423, which is 1 through 17.

8        (Echoing.)

9            THE COURT:  Whoops.  We got some distortion there.

10   Say again?

11           MR. MORRIS:  Yeah.  All of the exhibits that are on

12   2423, which are Exhibits 1 through 17.  But I want to make

13   sure that, as I did earlier, that that has the exhibits that

14   we're relying on.  Does that --

15       (Pause.)

16           THE COURT:  Okay.  Let me make sure I know what's

17   going on here.  You're double-checking your exhibits, Mr.

18   Morris?

19           MR. MORRIS:  Yes, Your Honor.

20           THE COURT:  Okay.

21       (Pause.)

22           MR. MORRIS:  Your Honor, we start with Docket No.

23   2419, --

24           THE COURT:  Okay.

25           MR. MORRIS:  -- which was the amended exhibit list.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 95 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 67 of 274 PageID 4738

93

1    And that actually had Exhibits 1 through 17.  And then that

2    was amended at Docket 2423.  So, the exhibits on both of

3    those lists.

4              THE COURT:  Well, they're one and the same, it looks

5    like, right?

6              MR. MORRIS:  Yes.

7              THE COURT:  Okay.  So you're offering those?

8              MR. MORRIS:  I think -- yeah.

9              THE COURT:  Any objection?

10             MR. BRIDGES:  No objection.

11             THE COURT:  All right.  They're admitted.

12        (Debtor's Exhibits 1 through 17 are received into

13   evidence.)

14             MR. POMERANTZ:  Your Honor, if I may take a few

15   moments to respond to Mr. Bridges' reply?

16             THE COURT:  All right.  Is he still within his hour

17   and a half?

18             THE CLERK:  At an hour and one minute.

19             THE COURT:  Okay.  All right.  You have a little

20   time left, so go ahead.

21             MR. POMERANTZ:  Thank you, Your Honor.

22        So look, I -- it sort of was really not fair to us.  Mr.

23   Bridges was really making things up on the fly.  He was

24   changing the theories of his case and responding to Your

25   Honor.  But I'm going to do my best to respond to the

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 96 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 68 of 274 PageID 4739

94

1  arguments made, many of which I sort of anticipated.

2      I'll first start with the issue that Your Honor raised,

3  which was whether this is under Rule 60 or not.  Mr. Bridges

4  identified a couple of cases, said that the order was

5  interlocutory, said that somehow the orders have anything to

6  do with a plan confirmation order.  They do not.  Your Honor

7  didn't hear that argument at the plan confirmation.  The

8  January 9th and July 16th orders are old and cold.  There's

9  an exculpation provision in the plan.  There's a gatekeeper

10  in the plan.  The provisions do not overlap entirely.  The

11  gatekeeper applies prospectively.  The exculpation provision

12  includes additional parties.

13      So the arguments that basically the plan had anything to

14  do -- and the fact that the plan is not a final order -- has

15  anything to do with the January 9th and July 16th orders is

16  just wrong.  It's just wrong.

17      More fundamentally, Your Honor, as Your Honor pointed

18  out, the *Smyth* case is a professional employment order.  And

19  ironically, if you abide by the *Smyth* case, that order is

20  never appealable because it's interlocutory.

21      But more fundamentally, Your Honor, that's dealing with

22  327 professionals.  And again, there's not much analysis in

23  the *Smyth* case, but we're not dealing with a 327

24  professional.  We're dealing with orders that were approved

25  under 363.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 97 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 69 of 274 PageID 4740

95

1    So the premise of the argument that Rule 60(b) -- 60

2    doesn't apply and they have other arguments just doesn't make

3    any sense.

4    Okay. So now that gets us to Rule 60. And Your Honor,

5    Your Honor hit the nail on the head. They haven't presented

6    any evidence. Allegations in a complaint aren't evidence.

7    They can't stand up there and say surprise evidence. They

8    had the opportunity -- and this hearing's been continued a

9    few weeks -- they had the opportunity to bring it up, and

10   it's -- they had the opportunity to claim that there was

11   surprise, but they just didn't. Okay?

12   So to go on to the Rule 60 arguments. Surprise.

13   Surprise and reasonable delay are really -- go hand in hand

14   with Mr. Bridges' argument. He says, well, we didn't find

15   out that -- months after the order was entered that he

16   violated a duty to us, so we are surprised by that, and it's

17   a reasonable time. Well, Your Honor, the order provided for

18   an exculpation. CLO Holdco and DAF knew that it applied to

19   an exculpation. They were bound. They knew based upon that

20   order that they would not be able to bring claims for normal

21   negligence. There is no surprise.

22   If you take Mr. Bridges' argument to its conclusion, he

23   could wait until the end of the statute of limitations after

24   an order and have come in four years from now and say, Your

25   Honor, we just found out facts so we should go back four

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 98 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 70 of 274   PageID 4741

96

1    years before.  That, Your Honor, that's not how the surprise

2    works.  That's not how the reasonable time works.

3        Mr. Bridges did not contest that they're bound by res

4    judicata.  He did not contest that the exculpation itself was

5    clear and unambiguous.  Of course he argued Your Honor

6    couldn't enter an order saying there was exculpation, again,

7    with no authority.  And he seemed surprised, as I suspect he

8    should, since he's not a bankruptcy lawyer, that retention

9    orders, whether it's investment bankers, financial advisors,

10   include exculpations all the time.  So there's no grounds

11   under surprise.

12       There's no grounds -- the motions are late under 60(c).

13       And they're not void.  I went through a painstaking

14   analysis, Your Honor, and I described in detail what the

15   *Espinosa* case held, and the exceptional circumstances which

16   Mr. Bridges tried to get away from as much as he could.

17   Maybe he can try to get away from language in a district

18   Court opinion, in a Bankruptcy Court opinion, in a Circuit

19   Court opinion.  You can't get away from language in a Supreme

20   Court opinion.  The Supreme Court opinion said exceptional

21   circumstances, where there was arguably no basis for

22   jurisdiction for what the Court did.  They have not even come

23   close to convincing Your Honor that there was absolutely no

24   basis.

25       Now, they disagree.  We granted, we think it's a good-

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 99 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 71 of 274 PageID 4742

97

1    faith disagreement, but they haven't come close to

2    establishing the *Espinosa* standard, so their motion under 60

3    does not -- it fails.

4        And I don't think -- look, these are good lawyers.  Mr.

5    Bridges and Mr. Sbaiti are good lawyers.  They didn't just

6    inadvertently not mention Rule 60.  They never mentioned it

7    because they knew they had no claim under Rule 60.

8        Your Honor, Mr. Bridges has made comments about the

9    fiduciary duty of Mr. Seery, about what the Investor's Act

10   provides.  He's just wrong on the law.  Now, Your Honor

11   doesn't have to decide that.  Whichever court adjudicates the

12   DAF lawsuit will have to decide it.  But there is no private

13   cause of action for damages.  There are no fiduciary duties to

14   the investors.

15       And what Mr. Bridges doesn't even mention, in that the

16   investment agreement that's so prominent in his complaint,

17   they waived claims other than willful misconduct and gross

18   negligence against Highland.  They waived those claims.  So

19   for Mr. Bridges to come in here and argue that there's some

20   surprise, when he hasn't even bothered to look at the document

21   that's underlying the contractual relationship between the DAF

22   and the Debtor, is -- you know, I'll just say it's

23   inadvertence.

24       Your Honor, Mr. Bridges tried to argue that Mr. Seery is

25   not a beneficiary of the January 9th order.  He's not an

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 100 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 72 of 274 PageID 4743

98

1    agent.  Well, again, Your Honor, Mr. Bridges wasn't there.

2    Your Honor and we were.  On January 9th, an independent board

3    was picked, and at the time Mr. Dondero ceased to become the

4    CEO.  So you have three gentlemen coming in -- Mr. Seery, Mr.

5    Dubel, and Mr. Nelms -- coming in to run Highland, in a very

6    chaotic time.  They had to act through their agents.  There

7    was no expectation that this board was going to actually run

8    the day-to-day operations of the Debtor.  Of course not.  They

9    needed someone to run.  And they picked Mr. Seery.  And the

10   argument that well, he's an agent of the company, he's not an

11   agent of the board, that just doesn't make sense.  The

12   independent board had to act.  The directors had to act.  And

13   the directors, how do they deal with that?  They acted through

14   Mr. Seery.  So he is most certainly governed by the January

15   9th order.

16       Your Honor, I want to talk about the jury trial right.

17   Mr. Bridges said that Paragraph 14 is an arbitration clause

18   and not a jury trial waiver.  Now, again, I will forgive Mr.

19   Bridges because I assume he didn't read the provision, okay,

20   and he -- somebody told him that, and that person just got it

21   wrong.  But what I would like to do is read for Your Honor

22   Paragraph 14(f).  It doesn't have to do with arbitration.

23   It's a waiver of jury trial.  14(f), Jurisdiction Venue,

24   Waiver of Jury Trial.  The parties hereby agree that any

25   action, claim, litigation, or proceeding of any kind

Case 22-03052-sgj Doc 34-21 Filed 08/01/22  Entered 08/01/22 17:35:41  Page 101 of 124
Case 3:22-cv-02280-S  Document 3-22  Filed 12/06/22  Page 73 of 274  PageID 4744

99

1    whatsoever against any other party in any way arising from or

2    relating to this agreement and all contemplated transactions,

3    including claims sounding in contract, equity, tort, fraud,

4    statute defined as a dispute shall be submitted exclusively to

5    the U.S. District Court for the Northern District of Texas, or

6    if such court does not have subject matter jurisdiction, the

7    courts of the State of Texas, City of Dallas County, and any

8    appellate court thereof, defined as the enforcement court.

9    Each party ethically and unconditionally submits to the

10   exclusive personal and subject matter jurisdiction of the

11   enforcement court for any dispute and agrees to bring any

12   dispute only in the enforcement court.  Each party further

13   agrees it shall not commence any dispute in any forum,

14   including administrative, arbitration, or litigation, other

15   than the enforcement court.  Each party agrees that a final

16   judgment in any such action, litigation, or proceeding is

17   conclusive and may be enforced through other jurisdictions by

18   suit on the judgment or in any manner provided by law.

19        And then the kick, Your Honor, all caps, as jury trial

20   waiver always are:  Each party irrevocably and unconditionally

21   waives to the fullest extent permitted by law any right it may

22   have to a trial by jury in any legal action, proceeding, cause

23   of action, or counterclaim arising out of or relating to this

24   agreement, including any exhibits, schedules, and appendices

25   attached to this agreement or the transactions contemplated

004522

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 102 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 74 of 274 PageID 4745

100

1    hereby.  Each party certifies and acknowledges that no

2    representative of the owner of the other party has represented

3    expressly or otherwise that the other party won't seek to

4    enforce the foregoing waiver in the event of a legal action.

5    It has considered the implications of this waiver, it makes

6    this waiver knowingly and voluntarily, and it has been induced

7    to enter into this agreement by, among other things, the

8    mutual waivers and certifications in this section.

9        Your Honor, I will forgive Mr. Bridges.  I assume he just

10    did not read that.  But to represent to the Court that that

11    language does not contain a jury trial waiver is -- is just

12    wrong.

13            THE COURT:  All right.  I'm going to stop right

14    there.  And you were reading from the Second Amended and

15    Restated Shared Services Agreement between Highland --

16            MR. POMERANTZ:  Not shared services.  I'm reading

17    from the Second Amended and Restated Investment Advisory

18    Agreement --

19            THE COURT:  Investment --

20            MR. POMERANTZ:  -- between the Charitable DAF, the

21    Charitable DAF GP, and Highland Capital Management.  The

22    agreement whereby the Debtor was the investment advisor to the

23    Charitable DAF Fund and the Charitable DAF GP.

24            THE COURT:  All right.  Well, Mr. Bridges, I'm going

25    to bounce quickly back to you.  This is your chance to defend

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 103 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 75 of 274   PageID 4746

101

1    your honor.

2           MR. BRIDGES:  Yeah, we're -- we're looking at a

3    different agreement, where -- where literally the words that

4    were read to you are not in the agreement in front of us and

5    it is news to me.  So, Your Honor, this is a problem --

6           THE COURT:  What is the agreement you're looking at?

7           MR. BRIDGES:  It is the Amended -- I assume that

8    means First Amended -- Restated Advisory Agreement.

9           MR. POMERANTZ:  Your Honor, we are happy to file this

10   agreement with the Court so the Court has the benefit of it in

11   connection with Your Honor's ruling.

12          THE COURT:  Okay.  I would like you to do that.  Uh-

13   huh.

14          MR. BRIDGES:  I'd like -- I'd like to request -- I'll

15   withdraw that.

16          THE COURT:  Okay.  Go on, Mr. Pomerantz.

17          MR. POMERANTZ:  Mr. Bridges, if you could put us on

18   mute.  If you could put us on mute, Mr. Bridges, so I don't

19   hear your feedback.  Thank you.

20      Mr. Bridges also complains about the language "to the

21   extent permissible by law."  As Your Honor knows and as has

22   been my practice over 30 years, that language is probably in

23   every plan where there's a retention of jurisdiction:  to the

24   extent permissible by law.  And Mr. Bridges says that this

25   will create ambiguity in the order that couldn't be enforced.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 104 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 76 of 274 PageID 4747

102

1    There's no basis for that.  Our including the language "to the

2    extent permissible by law" in the orders, as we are prepared

3    to do, is consistent with the plan confirmation order where we

4    addressed that issue.  And we addressed that issue because we

5    didn't want to put Your Honor in a position where thereby Your

6    Honor may have an action before Your Honor that passes the

7    colorability gate that Your Honor may not be able to assert

8    jurisdiction.  And since jurisdiction can't be waived in that

9    regard, we will agree to amend that.

10        There's nothing ambiguous about that, and there's no

11   reason, though, that clause has to modify the Court's ability

12   to act as a gatekeeper, because, as we've argued *ad nauseam*,

13   gatekeeper provisions where the Court has that ability is not

14   only part of general bankruptcy jurisprudence but also part of

15   the Bankruptcy Code.

16        Counsel says that *Barton* doesn't apply because the

17   business judgment of Your Honor was used in retaining Mr.

18   Seery as opposed to in some other capacity.  There's no basis

19   for that, Your Honor.  A court-appointed -- a court-approved

20   CEO, CRO, professional, they are all entitled to protection

21   under the *Barton* act.  And the argument -- and again, this is

22   separate and apart from whether he's entitled to protection

23   under the January 9th order. But the argument that because it

24   was the business judgment -- again, business judgment in doing

25   something that Your Honor expressly contemplated under the

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 105 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 77 of 274 PageID 4748

103

1  January 9th corporate governance order -- there's just no law

2  to support that. And I guess he's trying to get around the

3  plethora of cases that deal with the situation where *Barton*

4  has been extended.

5       Your Honor, Mr. Bridges, again, in arguing that we're

6  ships passing in the night on *Shoaf* and *Applewood* and

7  *Espinosa*, no, we're not ships passing in the night. We have a

8  difference in agreement on what these cases stand for. These

9  cases stand for the proposition that a clear and unambiguous

10  provision, plain and simple, if it's clear and unambiguous, it

11  will be given res judicata effect. The release in *Shoaf*,

12  clear and unambiguous. The release in *Applewood*, not. The

13  issue here is the exculpation language. That was clear and

14  unambiguous. It applied prospectively. The argument makes no

15  sense that we didn't identify -- we didn't identify claims

16  that might arise in the future, so therefore an exculpation

17  clause doesn't apply? That doesn't make any sense.

18       Your Honor clearly exculpated parties. Mr. Dondero knew

19  it. CLO Holdco knew it. The DAF knew it. So the issue Your

20  Honor has to decide is whether that exculpation was a clear

21  and unambiguous provision such that it should be entitled to

22  res judicata effect. And we submit that the answer is

23  unequivocally yes.

24       That's all I have, Your Honor.

25            THE COURT: All right. Well, --

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 106 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 78 of 274 PageID 4749

104

1     MR. MORRIS: Your Honor? I apologize.

2     THE COURT: Okay.

3     MR. MORRIS: This is John Morris.

4     THE COURT: Yes?

5     MR. MORRIS: I just want to, with respect to the

6  exhibits, I know there was no objection, but I had cited to

7  Docket Nos. 2419 and 2423. The original exhibit list is at

8  Docket No. 2412. So it's the three of those lists together.

9  2412, as amended by 2419, as amended by 2423. Thank you very

10 much.

11    THE COURT: All right. Thank you. All right.

12    MR. BRIDGES: Your Honor, I still have no objection

13 to that, but may I have the last word on my motion?

14    THE COURT: Is there time left?

15    THE CLERK: Yes.

16    THE COURT: Okay. Go ahead.

17    MR. BRIDGES: I just need a minute, Your Honor. They

18 agreed to change the order. They proposed it to us. They

19 proposed it in a proposed order to you. They can't also say

20 that it cannot be changed.

21    Secondly, Your Honor, in *Milic v. McCarthy*, 469 F.Supp.3d

22 580, the Eastern District of Virginia points out that the

23 Fourth Circuit treats appointment of estate professionals as

24 interlocutory orders as well.

25    That's all. Thank you, Your Honor.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 107 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 79 of 274   PageID 4750

105

1          THE COURT:  All right.  Here's what we're going to

2    do.  We've been going a very long time.  I'm going to take a

3    break to look through these exhibits, see if there's anything

4    in there that I haven't looked at before and that might affect

5    the decision here.  So we will come back at 3:00 o'clock

6    Central Time -- it's 2:22 right now -- and I will give you my

7    bench ruling on this.  All right.

8       So, Mike, they can all stay on the line, right?

9       Okay.  You can stay on, and we'll be back at 3:00 o'clock.

10          THE CLERK:  All rise.

11       (A recess ensued from 2:22 p.m. to 3:04 p.m.)

12          THE CLERK:  All rise.

13          THE COURT:  All right.  Please be seated.  All right.

14    Everyone presented and accounted for.  We're going back on the

15    record.

16          MR. POMERANTZ:  Your Honor, before you start, this is

17    Jeff Pomerantz.  We had sent to your clerk, and hopefully it

18    got to you, a copy of the Second Amended and Restated

19    Investment Advisory Agreement.  We also copied Mr. Sbaiti with

20    it as well.  And we would also like to move that into

21    evidence, just so that it's part of the Court's record.

22          THE COURT:  All right.

23          MR. BRIDGES:  We would object to that, Your Honor.

24    We haven't had an opportunity to even verify its authenticity

25    yet.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 108 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 80 of 274 PageID 4751

106

1          THE COURT:  All right.  Well, I'll tell you what.

2    I'm going to address this in my ruling.  So it's not going to

3    be part of the record for this decision, and yet -- well, I'll

4    get to it.

5        All right.  So we're back on the record in Case Number 19-

6    34054, Highland Capital.  The Court has deliberated, after

7    hearing a lot of argument and allowing in a lot of documentary

8    evidence, and the Court concludes that the motion of CLO

9    Holdco, Ltd. and The Charitable DAF to modify the retention

10   order of James Seery, which was entered almost a year ago, on

11   July 16th, 2020, should be denied.

12       This is the Court's oral bench ruling, but the Court

13   reserves discretion to supplement or amend in a more fulsome

14   written order what I'm going to announce right now, pursuant

15   to Rule 7052.

16       First, what is the Movants' authority to request the

17   modification of a bankruptcy court order that has been in

18   place for so many months, which was issued after reasonable

19   notice to the Movants, and after a hearing, which was not

20   objected to by the Movants, or appealed, when the Movants were

21   represented by sophisticated counsel, I might add, and which

22   order was relied upon by parties in this case, most notably

23   Mr. Seery and the Debtor, and in fact was entered after

24   significant negotiations involving a sophisticated court-

25   appointed Unsecured Creditors' Committee with sophisticated

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 109 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 81 of 274 PageID 4752

107

1    professionals and sophisticated members, and after negotiation

2    with an independent board of directors, court-appointed, one

3    of whose members is a retired bankruptcy judge?  What is the

4    Movants' authority?

5        Movants fumbled a little on that question, in that the

6    exact authority wasn't set forth in the motion.  But Movants'

7    primary argument is that Movants think the Seery retention

8    order was an interlocutory order and that the Court simply has

9    the inherent authority to modify it as an interlocutory order.

10       The Court disagrees with this analysis.  I do not think

11   the Fifth Circuit's *Smyth* case dictates that the Seery

12   retention order is still interlocutory.  The Seery retention

13   order was an order entered pursuant to Section 363 of the

14   Bankruptcy Code, not a Section 327 professionals to a debtor-

15   in-possession, professionals to a trustee employment order

16   such as the one involved in the *Smyth* case.

17       But even if the Seery retention order is interlocutory --

18   the Court feels strongly that it's not, but even if it is --

19   the Court believes it would be an abuse of this Court's

20   inherent discretion or authority to modify that order almost a

21   year after the fact and under the circumstances of this case.

22       Now, assuming Rule 60(b) applies to the Movants' request,

23   the Court determines that the Movants have not made their

24   motion anywhere close to within a reasonable time, as Rule

25   60(c) requires, nor do I think the Movants have demonstrated

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 110 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 82 of 274 PageID 4753

108

1    any exceptional circumstances to declare the order or any of

2    its provisions void.  The Movants have put on no evidence that

3    constitutes surprise or constitutes newly-disputed evidence.

4    So why are there no exceptional circumstances here such that

5    the Court might find, you know, a void order or void

6    provisions of an order?

7        First, this Court concludes that there's no credible

8    argument that the Court overreached its jurisdiction with the

9    gatekeeping provisions in the order.  Gatekeeping provisions

10   are not only very common in the bankruptcy world -- in

11   retention orders and in plan confirmation orders, for example

12   -- but they are wholly consistent with the *Barton* case, the

13   U.S. Supreme Court's *Barton's* case, and its progeny that has

14   become known collectively as the *Barton* doctrine.  Gatekeeping

15   provisions are wholly consistent with 28 U.S.C. Section

16   959(a)'s complete language.

17       The Fifth Circuit has blessed gatekeeping provisions in

18   all sorts of contexts.  It has blessed them in the situation

19   of when *Stern* claims are involved in the *Villegas* case.  It

20   even blessed Bankruptcy Courts' gatekeeping functions a long

21   time ago, in 1988, in a case that I don't think anyone

22   mentioned in the briefing, but as I've said, my brain

23   sometimes goes down trails, and I'm thinking of the *Louisiana*

24   *World Exposition* case in 1988, when the Fifth Circuit blessed

25   there a procedure where an unsecured creditors' committee can

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 111 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 83 of 274 PageID 4754

109

1  bring causes of action against persons, such as officers and

2  directors or other third parties, if they first come to the

3  Bankruptcy Court and show a colorable claim.  They have to

4  come to the Bankruptcy Court, show they have a colorable claim

5  and they're the ones that should be able to pursue them.  Not

6  exactly on point, but it's just one of many cases that one

7  could cite that certainly approve gatekeeper functions of

8  various sorts of Bankruptcy Courts.

9      It doesn't matter which court might ultimately adjudicate

10  the claims; the Bankruptcy Court can be the gatekeeper.

11      And the Court agrees with the many cases cited from

12  outside this circuit, such as the case in Alabama, in the

13  Eleventh Circuit, and there was another circuit-level case, at

14  least one other, that have held that the *Barton* doctrine

15  should be extended to other types of case fiduciaries, such as

16  debtor-in-possession management, among others.

17      Finally, as I pointed out in my confirmation ruling in

18  this case, gatekeeping provisions are commonplace for all

19  types of courts, not just Bankruptcy Courts, when vexatious

20  litigants are involved.  I have commented before that we seem

21  to have vexatious litigation behavior with regard to Mr.

22  Dondero and his many controlled entities.

23      Now, as far as the Movants' argument that there was not

24  just improper gatekeeping provisions but actually an improper

25  discharge in the Seery retention order of negligence claims or

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 112 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 84 of 274 PageID 4755

110

1   other claims that don't rise to the level of gross negligence

2   or willful misconduct, again, I reiterate there's nothing

3   exceptional in the bankruptcy world about exculpation

4   provisions like this.  They absolutely are a term of

5   employment very often.  Just like compensation, they're

6   frequently requested, negotiated, and approved.  They are

7   normal in the corporate governance world, generally.  They are

8   normal in corporate contracts between sophisticated parties.

9   And most importantly of all, even if this Court overreached

10   with the exculpation provisions in the Seery retention order,

11   even if it did, res judicata bars the attack of these

12   provisions at this late stage, under cases such as *Shoaf,*

13   *Republic Supply v. Shoaf* from the Fifth Circuit, the *Espinosa*

14   case from the U.S. Supreme Court, and even *Applewood*, since

15   the Court finds the language in this order was clear,

16   specific, and unambiguous with regard to the gatekeeping

17   provisions and the exculpation provisions.

18       Last, and this is the part where I said I'm going to get

19   to this agreement that has been submitted, the Second Amended

20   and Restated Investment Advisor Agreement or whatever the

21   title is.  I am more than a little disturbed that so much of

22   the theme of the Movants' pleadings and arguments, and I think

23   even representations to the District Court, have been they

24   have these sacred jury trial rights, these inviolate jury

25   trial rights, and an Article I Court like this Court should

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 113 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 85 of 274 PageID 4756

111

1 have no business through a gatekeeping provision impinging on

2 the possible pursuit of an action where there's a jury trial

3 right.

4 I was surprised initially when I thought about this. I

5 thought, wow, I've seen so many agreements over the months. I

6 can't say every one of them waived the jury trial right, but I

7 just remembered seeing that a lot, and seeing arbitration

8 provisions, and so that's why I asked. It just was lingering

9 in my brain. So I'm going to look at what is submitted. I'm

10 not relying on that as part of my ruling. As you just heard,

11 I had a multi-part ruling, and whether there's a jury trial

12 right or not is irrelevant to how I'm choosing to rule on this

13 motion. But I do want to see the agreement, and then I want

14 Movants within 10 days to respond with a post-hearing trial

15 brief either saying you agree that this is the controlling

16 document or you don't agree and explain the oversight, okay?

17 Because it feels like a gross omission here to have such a

18 strong theme in your argument -- we have a jury trial right,

19 we have a jury trial right, by God, the gatekeeping

20 provisions, among other things, impinge on our sacred pursuit

21 of our jury trial right -- and then maybe it was very

22 conspicuous in the controlling agreement that you'd waived

23 that, the Movants had waived that.

24 So, anyway, I'm requiring some post-hearing briefing, if

25 you will, on whether omissions, misrepresentations were made

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 114 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 86 of 274   PageID 4757

112

1    to the Court.

2        Anyway, so I reserve the right to supplement or amend this

3    ruling with a more fulsome written order.  I am asking Mr.

4    Pomerantz to upload a form of order that is consistent with

5    this ruling, and --

6            MR. POMERANTZ:  Your Honor, we will do so.  I do have

7    one thing to bring to the Court's attention, unrelated to the

8    motion, before Your Honor leaves the bench.

9            THE COURT:  All right.  So just a couple of follow-up

10   things.  Have you -- I'm not clear I heard what you said about

11   this agreement.  Did you email it to my courtroom deputy or

12   did you file it on the docket?

13           MR. POMERANTZ:  We emailed it to your courtroom

14   deputy.  We're happy to file it on the docket.  And we also

15   provided a copy to Mr. Sbaiti.

16       I would note for the Court that it's signed both by The

17   Charitable DAFs by Grant Scott, just for what it's worth.

18           THE COURT:  Okay.  All right.  Well, I'm trying to

19   think what I want -- I do want you to file it on the docket,

20   and I'm trying to think of what you label it.  Just call it

21   Post-Hearing Submission or something and link it to the motion

22   that we adjudicated here today.  And then, again, you've got

23   10 days, Mr. Bridges, to say whatever you want to say about

24   that agreement.

25       I guess the last thing I wanted to say is we sure devoted

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 115 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 87 of 274 PageID 4758

113

1    a lot of time to this motion today.  We have -- this is a

2    recurring pattern, I guess you can say.  We have a lot of

3    things that we devote a lot of time to in this case that I get

4    surprised, but it is what it is.  You file a motion.  I'm

5    going to give it all the attention Movants and Respondents

6    think it warrants.  I'm going to develop a full record,

7    because, you know, there's a recurring pattern of appeals

8    right now, 11 or 12 appeals, I think, not to mention motions

9    to withdraw the reference.  If we're going to have higher

10   courts involved in the administration of this case, I'm going

11   to make a very thorough record so nobody is confused about

12   what we did, what I considered, what my reasoning was.

13       So I kind of think it's unfortunate for us to have to

14   spend case resources and so much time and fees on things like

15   this, but I'm going to make sure a Court of Appeals is not

16   ever confused about what happened and what we did.  So that's

17   just the way it's going to be.  And I feel like we have no

18   choice, given, again, the pattern of appeals.

19       All right.  So, with that, Mr. Pomerantz, you had one

20   other case matter, you said?

21           MR. POMERANTZ:  Yes.  But before I get to that, Your

22   Honor, I assume that, in response to the Movants' submission

23   on the agreement, that we would have right at four or seven

24   days to respond if we deem it's appropriate?

25           THE COURT:  I think that's reasonable.  That's

004536

Case 22-03052-sgj Doc 34-21 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 116 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 88 of 274   PageID 4759

114

1    reasonable.

2            MR. POMERANTZ:  Okay.  Thank you, Your Honor.

3            THE COURT:  So let me think of how I want to do this.

4    I'll just do a short scheduling order of sorts that just, it

5    says in one or two paragraphs, at the hearing on this motion,

6    the Court raised questions about the jury trial rights and the

7    Debtor has now submitted the controlling agreements, I'm

8    giving the Movants 10 days to respond to whether this is

9    indeed a controlling agreement, and why, if it is, the Movants

10   have heretofore taken the position they have jury trial

11   rights.  And then I will give you seven days thereafter to

12   reply, and then the Court will set a further status conference

13   if it determines it's necessary.  Okay?

14       So, Nate, we'll do a short little order to that effect.

15   Okay?

16           MR. POMERANTZ:  Thank you, Your Honor.

17       I -- again, before I raise the other issue, I want to pick

18   up on a comment Your Honor just made towards the end.  I know

19   the Court has been frustrated with the time and effort we've

20   been spending.  The Debtor and the creditors have been

21   extremely frustrated, because in addition to the time and

22   effort everyone's spending, we're spending millions of

23   dollars, millions of dollars on litigation that --

24           THE COURT:  It's one of the reasons you needed an

25   exit loan, right?

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 117 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 89 of 274 PageID 4760

115

1          MR. POMERANTZ: Right. No, exactly. That's

2     frivolous, that we think is made in bad faith.

3          And Your Honor, and everyone else who's hearing this on

4     behalf of Mr. Dondero, should understand we're looking into

5     what appropriate authority Your Honor would have to shift some

6     of the costs. Your Honor did that in the contempt motion.

7     Your Honor can surely do that in connection with the notes

8     litigation. But all this other stuff that is requiring us to

9     spend hundreds and hundreds of hours and spend millions of

10    dollars, we are clearly looking into whether it would be

11    appropriate and what authority there is. I just wanted to let

12    Your Honor know that.

13         And in connection with that, the last point, Your Honor, I

14    can't actually even believe I'm saying this, but there was

15    another lawsuit filed -- we just found out in the break -- on

16    Wednesday night by the Sbaiti firm on behalf of Dugaboy in the

17    District Court.

18         Now, to make matters worse, Your Honor, the litigation

19    relates to alleged improper management by the Debtor of Multi-

20    Strat. If Your Honor will recall, at many times I've told

21    this Court what Dugaboy's claims they filed in this case.

22    Dugaboy has a claim that is filed in this case for

23    mismanagement postpetition of Multi-Strat. Now the Sbaiti

24    firm, in addition to representing CLO Holdco, in addition to

25    representing the DAF, and whatever the Plaintiffs' lawyers are

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 118 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 90 of 274 PageID 4761

116

1   in that other District Court, PCMG, and in connection with the

2   Acis matter, they've decided they haven't had enough.  They've

3   now filed another motion that -- you know, why they filed it

4   in District Court and there's a proof of claim on the same

5   issues, I don't know.  But I thought Your Honor should know.

6   I'm not asking Your Honor to do anything about it.  But we

7   will act aggressively, strongly, and promptly.

8       Thank you, Your Honor.

9           THE COURT:  All right.  Well, you've reminded me of

10   what came out earlier today about the entity -- I left my

11   notepad in my chambers -- PMC or PMG or something.

12      Mr. Bridges, we're not going to have a hearing right now

13   on me doing anything, but what are you thinking?  What are you

14   doing?

15          MR. BRIDGES:  Your Honor, I'm not trying to duck your

16   question.  I literally have no involvement with any other

17   claim, and we would have to ask Mr. Sbaiti to answer your

18   questions.

19          THE COURT:  All right.  Is he there?

20          MR. BRIDGES:  He is.

21          THE COURT:  I'll listen.

22          MR. BRIDGES:  I'll switch seats and give him this

23   chair.

24          MR. SBAITI:  Sorry, Your Honor.  We had two computers

25   going and weren't able to use the sound on one, so we ended up

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 119 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 91 of 274 PageID 4762

117

1   turning that off.

2       Your Honor, I'm not sure what the question is about when

3   you say what are we thinking.  We have a client that's asked

4   us to file something, and when we're advised by bankruptcy

5   counsel that it's not prohibited for us to do so, and don't

6   know why we're precluded from doing so, and when the time

7   comes I'm sure we'll be able to explain to Your Honor --

8   someone will be able to explain to Your Honor why what we're

9   doing, despite Mr. Pomerantz's exacerbation, or excuse me,

10  exasperation, why that wasn't improper.  It's our belief that

11  it wasn't improper or a violation of the Court's rule.

12          THE COURT:  Just give me a quick shorthand *Readers'*

13  *Digest* of why you don't think it's improper.

14          MR. SBAITI:  Sure.  My understanding is, Your Honor,

15  there's not a rule that says we can't file it against the

16  Debtor for postpetition actions.  So that, that's as -- that's

17  as much as I understand.  And I'm going to -- I'm not trying

18  to duck it, either.  And if I'm wrong about that and someone

19  wants to correct me on our side offline and if we have to

20  explain to the Court why that's so or what rule has been

21  violated, I'm sure we'll be able to put together something for

22  that.  But that's what I've been advised.

23          THE COURT:  Have you done thorough --

24          MR. POMERANTZ:  Your Honor, I think what --

25          MR. SBAITI:  (garbled), Your Honor.

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 120 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 92 of 274 PageID 4763

118

1    THE COURT:  Have you done thorough research yourself?

2  Your Rule 11 signature is on the line, not some bankruptcy

3  counsel you talked to.  Have you done the research yourself?

4    MR. SBAITI:  Well, Your Honor, I've relied on the

5  research and advice of people who are experts, and I believe

6  my Rule 11 obligations also allow me to do that, so yes.

7    MR. POMERANTZ:  Your Honor, I think we're entitled to

8  know if it's Mr. Draper's firm who has been representing

9  Dugaboy.  He's the bankruptcy counsel.  I don't think it's an

10  attorney-client privilege issue.  If Mr. Sbaiti is going to be

11  here and sort of say, hey, bankruptcy counsel said it was

12  okay, I think we would like to know and I'm sure Your Honor

13  would like to know who is that bankruptcy counsel.

14    THE COURT:  Yes.  Fair enough.  Mr. Sbaiti?

15    MR. SBAITI:  Your Honor, in consultation with Mr.

16  Draper and with consultation with other counsel that we've

17  spoken to, that has been our understanding.

18    THE COURT:  Who's the other counsel?

19    MR. SBAITI:  Well, we've talked to Mr. Rukavina about

20  some of these things for the PCMG and the Acis case.  We've

21  talked to the people who, when they tell us you can't do this

22  because they're bankruptcy counsel for our client, then we

23  don't do something.  So, and I'm not trying to throw anybody

24  under the bus, but my understanding of what goes on in

25  Bankruptcy Court is incredibly limited, so, you know, and if

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 121 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 93 of 274 PageID 4764

119

1   it's a mistake then I'll own it, if I have a mistaken

2   understanding, but I also wasn't anticipating having to make a

3   presentation about this right here right now, so --

4           THE COURT:  Well, you're filing lawsuits that involve

5   this bankruptcy case during the hearing, so --

6           MR. SBAITI:  Oh, we didn't file it during the

7   hearing, Your Honor.  It was filed last night, I believe.

8           THE COURT:  Okay.  Well, I assume that you're going

9   to go back and hit the books, hit the computer, and be

10  prepared to defend your actions, because your bankruptcy

11  experts, they may think they know a lot, but the judge is not

12  very happy about what she's hearing.

13          MR. POMERANTZ:  Your Honor, if I may ask when Your

14  Honor intends to issue the contempt ruling in connection with

15  the June 8th hearing?  I strongly believe -- and, obviously,

16  this has nothing to do with the contempt hearing; this

17  happened after -- but I strongly believe that sending a

18  message that Your Honor is inclined to hold counsel in

19  contempt, which obviously is one of the violators we said

20  should be held in contempt, it may be important to do that

21  sooner rather than later so that people know that Your Honor

22  is serious.

23          THE COURT:  All right.  Well, I understand and

24  respect that request.  And let me tell you all, I had a seven-

25  day -- okay.  You all were here on that motion June 8th.  I

Case 22-03052-sgj Doc 34-21 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 122 of 124
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 94 of 274   PageID 4765

120

1    had a seven-day, all-day, every-day, 9:00 to 5:00, 45-minute

2    lunch break, in-person hearing with a dozen or so live

3    witnesses that I just finished Tuesday at 5:00 o'clock.  So

4    you all were here on the 8th, and then -- what day was that --

5    what was -- Tuesday, I finished.  Tuesday was the 22nd.  So I

6    started on the 14th, okay?  So you all were here on the 8th

7    and I had a live jury trial -- I mean, not jury trial, a live

8    bench trial -- live human beings in the courtroom, beginning

9    June 14th.  So you're here the 8th.  June 14th through 22nd, I

10   did my trial.  And here we are on the 25th.  And guess what, I

11   have another live human-being bench trial next week, Monday

12   through Friday.

13       So we've been working in other things like this in between

14   those two.  So I'm telling you that not to whine, I'm just

15   telling you that, that's the only reason I didn't get out a

16   quick ruling on this, okay?

17            MR. POMERANTZ:  And Your Honor, I was not at all

18   making that comment to imply anything about the Court.

19            THE COURT:  Well, --

20            MR. POMERANTZ:  The time and effort that you have

21   given to this case is extraordinary, --

22            THE COURT:  Okay.

23            MR. POMERANTZ:  -- so please don't misunderstand my

24   comment.

25            THE COURT:  Okay.  And I didn't mean to express

004543

Case 22-03052-sgj Doc 34-21 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 123 of 124
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 95 of 274 PageID 4766

121

1   annoyance or anything like that.  I guess what I'm trying to

2   do is I don't want anyone to mistake the delay in ruling on

3   the contempt motion to mean I'm just not that -- you know, I'm

4   not prioritizing it, other things are more serious to me or

5   important to me, or I'm going to take two months to get to it.

6   It's literally been I've been in trial almost all day long

7   every day since you were here.  But trust me, I'm about as

8   upset as upset can be about what I heard on June 8th, and I'm

9   going to get to that ruling, and I know what I'm going to do.

10   And, well, like I said, it's just a matter of figuring out

11   dollars and whom, okay?  There's going to be contempt.  I just

12   haven't put it on paper because I've been in court all day and

13   I haven't come up with a dollar figure.  Okay?

14      So I hope -- I don't know if that matters very much, but

15   it should.

16      All right.  We stand adjourned.

17      (Proceedings concluded at 3:35 p.m.)

18                    --oOo--

19

20                    CERTIFICATE

21      I certify that the foregoing is a correct transcript from

     the electronic sound recording of the proceedings in the

22   above-entitled matter.

23   **/s/ Kathy Rehling**                **06/29/2021**

24   _____   _____

     Kathy Rehling, CETD-444            Date

25   Certified Electronic Court Transcriber

122

INDEX
*Excerpt*
*11:33 a.m. to 3:35 p.m.*

PROCEEDINGS                                                              3

OPENING STATEMENTS

- By Mr. Bridges                                                          3
- By Mr. Pomerantz                                                       23

WITNESSES

-none-

EXHIBITS

Movants' Exhibits 1, 3 through 12, 15 through      Received 91
28, and 30 through 44

Debtor's Exhibit 1                                 Received 91
Debtor's Exhibits 1 through 17                     Received 93

RULINGS                                                                106

END OF PROCEEDINGS                                                      121

INDEX                                                                   122

004545

# **EXHIBIT 22**

```
                  UNITED STATES BANKRUPTCY COURT
               NORTHERN DISTRICT OF TEXAS (DALLAS)

IN RE:                      .   Case No. 19-34054-11(SGJ)
                            .
HIGHLAND CAPITAL            .
MANAGEMENT, L.P.,           .
                            .
                            .
          Debtor.           .
. . . . . . . . . . . . . . .
                            .   Adv. No. 21-03067(SGJ)
CHARITABLE DAF FUND, LP,    .
et al.,                     .
                            .
          Plaintiffs,       .   Earle Cabell Federal Building
                            .   1100 Commerce Street
       v.                   .   Dallas, Texas  75242
                            .
HIGHLAND CAPITAL,           .
MANAGEMENT, L.P., et al.,   .
                            .
          Defendants.       .   Tuesday, November 23, 2021
. . . . . . . . . . . . . . .   9:40 a.m.


                  TRANSCRIPT OF HEARING ON
        PLAINTIFFS' MOTION TO STAY ALL PROCEEDINGS (55);
    PLAINTIFFS' MOTION TO STRIKE REPLY APPENDIX (47); AND
        DEFENDANTS' MOTION TO DISMISS COMPLAINT (26)
```

**BEFORE HONORABLE STACEY G. JERNIGAN**
**UNITED STATES BANKRUPTCY COURT JUDGE**

TELEPHONIC APPEARANCES CONTINUED ON NEXT PAGE.

Audio Operator:         Hawaii S. Jeng

Proceedings recorded by electronic sound recording, transcript
produced by a transcript service.

_____

**LIBERTY TRANSCRIPTS**
**7306 Danwood Drive**
**Austin, Texas 78759**
**E-mail:  DBPATEL1180@GMAIL.COM**
**(847) 848-4907**

004547

2

```
TELEPHONIC APPEARANCES:

For CLO Holdco, Ltd.:        Sbaiti & Company PLLC
                             BY:  MAZIN AHMAD SBAITI, ESQ.
                             JP Morgan Chase Tower
                             2200 Ross Avenue, Suite 4900 W
                             Dallas, Texas 75201

For Highland Capital         Pachulski Stang Ziehl & Jones LLP
Management:                  BY:  JOHN MORRIS, ESQ.
                             780 3rd Avenue, 34th Floor
                             New York, NY 10017

                             Pachulski Stang Ziehl & Jones LLP
                             BY:  JEFFREY N. POMERANTZ, ESQ.
                             10100 Santa Monica Blvd., 13th Floor
                             Los Angeles, California 90067

For Highland CLO             Brobeck Phleger & Harrison
Funding, Ltd.:              BY:  JONATHAN W. JORDAN, ESQ.
                             4801 Plaza on the Lake
                             Austin, Texas 78746

                             King & Spalding LLP
                             BY:  PAUL RICHARD BESSETTE, ESQ.
                             500 West 2nd Street, Suite 1800
                             Austin, Texas 78701
```

004548

3

**INDEX**

**PAGE**

PLAINTIFFS' MOTION TO STAY ALL PROCEEDINGS (55)
  Court's Ruling - Denied                             29

PLAINTIFFS' MOTION TO STRIKE REPLY APPENDIX (47)
  Court's Ruling - Denied                             32

DEFENDANTS' MOTION TO DISMISS COMPLAINT (26)
  Court's Ruling - Under Advisement          103

004549

4

1      THE COURT:  Good morning.  Please be seated.

2      All right.  We have a setting in the Charitable DAF

3  Fund, et al., v. Highland, Adversary 21-3067.  We have three

4  motions that are set.

5      Let me get appearances from the Plaintiffs' counsel

6  first.  Go ahead.

7      MR. SBAITI:  Good morning, Your Honor.  This is Mazin

8  Sbaiti for the Plaintiffs.

9      THE COURT:  Okay.  Thank you.

10      Now for the Defendants, who do we have appearing?

11      MR. POMERANTZ:  Good morning, Your Honor.  It's Jeff

12  Pomerantz and John Morris from Pachulski Stang Ziehl & Jones.

13  Your Honor, before -- I understand Your Honor is going to take

14  up the motion to stay first.

15      Before Your Honor does so, I have a procedural issue

16  relating to that motion that I would like to address the Court

17  after appearances are made.

18      THE COURT:  All right.  I assume that's all the

19  lawyer appearances for this adversary.

20      MR. JORDAN:  Your Honor?

21      THE COURT:  Oh, go ahead.

22      MR. JORDAN:  Your Honor, we are a nominal defendant,

23  but John Jordan on behalf of Highland CLO Funding, Ltd.

24      THE COURT:  Okay.  Thank you.  Sorry about that.

25      MR. BESSETTE:  And, Your Honor, Paul Bessette, Mr.

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 6 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 102 of 274   PageID 4773

5

1    Jordan's colleague is on the phone, as well.

2                THE COURT:  Okay.  Thank you.

3                All right.  Anyone else I missed?

4          (No audible response)

5                THE COURT:  All right.  Mr. Pomerantz, your

6    procedural issue?

7                MR. POMERANTZ:  Thank you, Your Honor.

8                Your Honor, I must once again bring to this Court's

9    attention a violation of the Court Rules by the various counsel

10   representing Mr. Dondero.  This time it's by Mr. Sbaiti.

11               When the district court entered its order granting

12   Highland's motion to enforce the reference and referring this

13   matter to Your Honor, there were three matters on the Court's

14   docket, district court's docket that got transferred.  First

15   was the motion to dismiss, second was the motion to stay, and

16   third was the motion to strike, which essentially has been

17   rendered moot.

18               The briefing was complete with respect to the first

19   two matters, the motion to dismiss and the motion to stay.  And

20   all that remained for the Court to do was to set a hearing and

21   have oral argument.  Your Honor, on October 13th, Your Honor

22   set a hearing for today for each of those two motions.

23   Nevertheless, on November 10th, almost a month after the Court

24   set the matters for hearing and after pleadings were closed,

25   Plaintiffs filed what they called their amended motion to stay.

6

1    As an initial matter, Your Honor, the amended motion

2    was not even filed in this adversary proceeding initially.   It

3    was filed in the main case, and there was an error that Mr.

4    Sbaiti corrected on November 18th, five days before this

5    hearing.  Plaintiff did not ask for leave of court to file any

6    further pleadings.  They did not provide the time under the

7    local rules for response.  And, in fact, they raised additional

8    arguments in their amended motion.

9    Well, Your Honor, we can certainly argue to the Court

10   that the amended motion constitutes a new motion, is untimely,

11   and the hearing should be continued to allow us to file a

12   response.  We're not going to do that, Your Honor.  As I will

13   discuss when it's my time to response substantively to the

14   motion, the new arguments to stay the proceedings, the amended

15   motion are equally as frivolous as the arguments contained in

16   the original motion.

17   But I bring this to the Court's attention because,

18   again, it's extremely frustrating to have the lawyers

19   representing Mr. Dondero's related entities continue to act as

20   if the rules do not apply to them.  Your Honor will recall just

21   a week or so ago, Your Honor made a -- we had a similar issue

22   in connection with the motion to dismiss.  Failure to follow

23   the rules is unprofessional, and it's disrespectful not only to

24   Highland's professionals but also to the Court and it

25   interferes with Your Honor's ability to control your docket and

004552

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 8 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 104 of 274   PageID 4775

7

1  sufficiently prepare for contested matters.

2        At some point, Your Honor, there should be real

3  consequences for the continued violation of the rules.  Having

4  said that, Your Honor, we are prepared to go forward with the

5  motion to stay today.

6        THE COURT:  All right.  Mr. Sbaiti, what say you?

7  I'm looking at Docket Entry Number 69 in the adversary

8  proceeding that was filed last Thursday.  So, obviously, very,

9  very late in the game, shall we say.  What is your response to

10  this?

11        MR. SBAITI:  Your Honor, that was not filed in the

12  adversary as an error.  When we asked one of our paralegals to

13  file it, we're not as familiar with the bankruptcy court system

14  and it was an error.  It was corrected once the lawyers

15  realized it, which was last -- which was on November the 18th.

16  It was filed in, I guess in the main case.  But it was simply

17  an inadvertent error, Your Honor.

18        MR. POMERANTZ:  I would add, Your Honor, the original

19  motion filed inadvertently was November 10th.  It still was not

20  timely.  I think Mr. Sbaiti needs to answer the question of why

21  that was filed untimely, okay.

22        THE COURT:  All right.  Thank you, Mr. Sbaiti.

23        So, one of my pet peeves in life is people blaming

24  paralegals, by the way.  But be that as it may, as Mr.

25  Pomerantz points out that it was still untimely the motion

004553

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 9 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 105 of 274   PageID 4776

8

 1  filed in the underlying bankruptcy case November 10th.  So what

 2  is your --

 3          MR. SBAITI:  Your Honor, when we looked at the motion

 4  and looked at the progression of the case, we filed an amended

 5  motion simply to clarify our position.  And really I don't

 6  think we've changed our arguments all that much.  We simply

 7  clarified our position.  We've seen amended motions filed in

 8  the bankruptcy in our prior dealings, and so at that point, we

 9  felt like there wasn't a rule explicitly saying we couldn't

10  have an amended motion.

11          But if it's untimely, Your Honor, you know, we don't

12  think it changes the underlying arguments.  As Mr. Pomerantz

13  said, we don't think there's any prejudice to Highland either.

14          THE COURT:  All right.  Well, just to be clear, you

15  know, it's one thing in an underlying bankruptcy case to file

16  an amended motion after you've gotten a motion set for hearing

17  that might slightly adjust, you know, facts or relief sought.

18  And, of course, we independently look at it when it happens in

19  an underlying case to see do we need more notice to affected

20  parties.

21          But in an adversary proceeding, you know, you just

22  don't do this.  All right?  If you have some sort of

23  exceptional circumstances, you can file I guess a motion to

24  amend because I got to include this new information that didn't

25  exist.  But you just don't do this, okay?

9

1          So I don't -- could you be clear what was the new

2    information?  What was the new information that had to be

3    brought before the Court suddenly?

4          MR. SBAITI:  Your Honor, there wasn't new

5    information.  We were simply giving notice of our understanding

6    of where the legal arguments were going.  The reason being is

7    that after those motions were filed and recently, the debtor

8    took the position in two other cases that they should be

9    dismissed pursuant to the permanent injunction.

10          And so that clarified for us at least a couple of

11   arguments that were unclear to us where the debtor stood on

12   whether or not the permanent injunction would be a basis to

13   dismiss or stay any of the claims that were pending.  There are

14   two other claims pending in district court.  Since we had filed

15   that motion, the debtor filed a motion to reconsider the stays

16   that were granted in those two courts.  And then they also

17   moved to dismiss on the basis of the permanent injunction.

18          And so given that the debtor took the position that

19   they were willing to dismiss those cases based upon the

20   permanent injunction, it in many ways contravenes the position

21   they took in response to our motion which is that the -- for

22   example, they somewhat take the position in Paragraph 22, it

23   wasn't as clear then but it's clear -- it seems clearer now

24   that the permanent injunction is not relevant to whether or not

25   the case can go forward in any capacity.

004555

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 11 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 107 of 274 PageID 4778

10

1          And so we simply wanted to incorporate that, but it's

2    mainly legal argument about the choices that are before the

3    Court.  That was really it.  I mean, theoretically, I would

4    have made them for the first time during oral argument and we

5    thought we were doing something good by giving -- apprising the

6    Court in writing and giving notice of these arguments to the

7    other side by filing an amended motion.  We didn't add new

8    evidence or anything like that.

9          MR. POMERANTZ:  Your Honor, that argument is

10   completely disingenuous because our motion to dismiss and

11   motion for reconsideration that Mr. Sbaiti refers to is several

12   weeks ago, okay.  It wasn't November 10th.  It was several

13   weeks ago.

14         I will respond substantively why Mr. Sbaiti is wrong

15   and there's no inconsistent positions when it's my time to

16   speak.  But for Mr. Sbaiti to say he was doing us a favor and

17   he was reacting to recent new information is just wrong, Your

18   Honor.  And they should just not be continued to allowed to get

19   away with flouting the rules.

20         THE COURT:  All right.  Well, let me just say I'm

21   confused, maybe I should say baffled, about this amended

22   motion.  You know, the motion to dismiss that is before the

23   Court for oral argument today isn't about the injunction, isn't

24   about the plan injunction.  It's about res judicata and other

25   12(b)(6) arguments.

11

1    So I'm confused and I think, you know, it's been

2  clear for many months in this adversary proceeding, in

3  particular, the debtor's position on the plan injunction,

4  particularly, you know, in the whole argument on the motion to

5  leave to add Mr. Seery as a defendant.

6    So I'm confused, but we're going to go forward on the

7  argument today, whatever argument you want to make.  And you've

8  been, I guess, forewarned.  I will say that these last-minute

9  amended motions are not going to be tolerated, are not going to

10  be considered.  And so, you know, I hope you won't do it again.

11  Your firm has already been sanctioned once in this adversary

12  proceeding.  I'm sure we all remember.

13    So, you know, I'm just kind of baffled why you would

14  take a chance filing an amended motion without leave or somehow

15  getting it to the attention of the Court or running it by the

16  other parties for their consent to you doing it.  But we're

17  going to go forward and just hear the arguments, okay.  And so

18  --

19    MR. SBAITI:  Thank you.

20    THE COURT:  -- I'll hear your argument.

21    I'm letting people know I don't know where this time

22  estimate came on the calendar today, three hours.  I don't know

23  if someone specifically expressed that.  But I'm letting you

24  know at noon I have a swearing-in ceremony that I'm doing back

25  in my chambers.  So I will stop at noon Central time.

004557

12

1     And so does anyone think that's going to be a

2  problem?

3           MR. SBAITI:  It should not be, Your Honor, from our

4  perspective.

5           THE COURT:  Mr. Pomerantz?

6           MR. POMERANTZ:  I don't believe so.  Mr. Morris is

7  going to handle the motion to dismiss which is going to be the

8  bulk.  My presentation on the motion to stay is only going to

9  be around ten minutes or so.

10           THE COURT:  Okay.  Thank you.

11           Mr. Sbaiti, your argument on the motion for stay.

12           MR. SBAITI:  Thank you, Your Honor.

13           Your Honor, may I share my screen?

14           THE COURT:  You may.

15           MR. SBAITI:  I have a PowerPoint that can kind of --

16           THE COURT:  Okay.  You may.

17           MR. SBAITI:  -- walk us through.  Thank you.

18           Is Your Honor able to see my screen?

19           THE COURT:  I can, yes.

20           MR. SBAITI:  Thank you, Your Honor.

21           Your Honor, what I would point you to is, first, the

22  injunction language.  This is what Your Honor's permanent

23  injunction says, and this is really what animates our motion to

24  stay.  Out motion to stay is derived specifically because my

25  clients and I feel like our case has been enjoined by this

004558

13

1  injunction, if not completely disposed of.

2          The language says that we're an enjoined:

3          "An enjoined party is permanently enjoined from

4          commencing, conducting, or continuing in any manner

5          any suit, action, or other proceeding of any kind

6          including any proceeding in a judicial, arbitral,

7          administrative, or other forum against or affecting

8          the debtor or the property of the debtor."

9          And then (v) of that injunction says:

10         "or acting or proceeding in any manner in any place

11         whatsoever that does not conform to or comply with

12         the provisions of the plan."

13         One of the things that was suggested in Paragraph 22

14 of their response was that the DAF and Holdco are not enjoined

15 parties.  But the final plan defines an enjoined party in

16 Article 1(b)(56) as any entity who has or -- all entities who

17 have held, hold, or may hold claims against the debtor; any

18 entity that has appeared and/or filed any motion, objection, or

19 other pleading in this Chapter 11 case regardless of the

20 capacity in which such entity appeared and any other party in

21 interest.  And, five, the related persons of each of the

22 foregoing.

23         Article 1(b)(22) defines a claim as any claim that's

24 defined in Section 1015 of the Bankruptcy Code.  And Section

25 1015 of the Bankruptcy Code defines a claim as a right to

004559

14

1  payment whether or not such right is reduced to judgment,

2  liquidated, unliquidated, fixed, contingent, matured,

3  unmatured, disputed, undisputed, legal, equitable, secured, or

4  unsecured.

5         So given this definition, when we've read this

6  injunction, we believed that we were enjoined parties, the DAF

7  and Holdco were both enjoined parties.  They had appeared in

8  the -- they have claims.  Obviously, those are the claims being

9  asserted here.

10        And so going back to the injunction language, we

11 believe this lawsuit has been disposed of by this permanent

12 injunction.  We believe there's really only one or two things

13 that should probably happen with this lawsuit.  Either it could

14 be dismissed based upon the permanent injunction or what we

15 proposed in our motion to stay is that the Court exercise its

16 inherent authority to simply stay the case pending the appeal

17 of this language, which is up on appeal in the Fifth Circuit

18 right now.

19        If that language, and if the injunction gets affirmed

20 by the Fifth Circuit, then certainly the dismissal can happen

21 once that affirmance happens and there's no harm, no foul, and

22 no one's wasted any time.

23        If they're not, if it's overturned, then, obviously,

24 the injunction would be vacated, presumably by the Fifth

25 Circuit.  And at some point, if the Court decides not to enter

004560

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 16 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 112 of 274 PageID 4783

15

1  a similar injunction that would likewise dispose of this case,

2  then the case could proceed on the merits.

3          The issue we've identified both in our original

4  motion and as we fleshed out in our -- as a matter of law in

5  our amended motion to simply put a finer point on it is that

6  the merits are now -- have been disposed of.  This injunction

7  ends this case, at least as far as we read it.  It ends this

8  case irrespective of the underlying merits of the lawsuit,

9  which means that the lawsuit merits themselves have become moot

10 and any opinion or any attempt to resolve it is obviously an

11 advisory opinion by the Court.

12         So we really only see two ways that this could go

13 right now without either gutting the injunction or

14 circumventing it completely, which is to say that either the

15 case should be dismissed based upon the permanent injunction or

16 the case should be stayed based upon the permanent injunction.

17         Mr. Pomerantz or the debtors' brief suggests that,

18 well, the injunction doesn't prevent hearing pending motions.

19 But I would respectfully disagree with that.  If you look at

20 the language, "commencing, conducting, or continuing in any

21 manner in any suit, action, or other proceeding against or

22 affecting the debtor."

23         As 12(b)(6) hearing, I would imagine, was intended to

24 fall under the umbrella of a proceeding.  And us arguing a

25 12(b)(6) motion would us be conducting and maybe even

004561

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 17 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 113 of 274   PageID 4784

16

1 continuing the suit because we're trying to protect the merits

2 of the suit, which as I said are at this juncture already moot.

3           And so it comes down to I think a very simple

4 question, which is what do we do at this juncture.  Do we just

5 simply dismiss the lawsuit in light of this permanent

6 injunction or stay the lawsuit in light of this permanent

7 injunction?

8           The debtor makes a lot of hay out of the fact that,

9 well, there are special rules that apply when you're trying to

10 stay a case pending appeal.  But if you look at all of their

11 case law, it has to do with different circumstances where an

12 appeal -- where there's a matter on appeal that could

13 substantially affect the resolution of the case, which here we

14 think it actually could.  But in those cases, those appeals

15 would affect the resolution of the case on the merits; whereas,

16 here, the question goes to whether or not a permanent

17 injunction that really has stopped us all in our tracks.

18           As soon as we understood this injunction and its

19 scope, we're the ones who reached out to the debtor's counsel

20 and asked them on a meet-and-confer whether or not they would

21 just agree to stay the matter.  And we were a little bit

22 surprised by their reaction when they first didn't think that

23 this applied to our case, and we didn't understand how.  And

24 then they changed their mind, said it did apply to our case but

25 they didn't think that we should stay the case.  And they

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 18 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 114 of 274   PageID 4785

17

1  didn't suggest let's just dismiss it based upon the permanent

2  injunction.

3        So it kind of comes down to the same small -- same

4  simple issue, Your Honor.  There's this permanent injunction,

5  and I don't think there's any way for us to get around it at

6  this juncture.

7        THE COURT:  Mr. Pomerantz:

8        MR. POMERANTZ:  Yes, Your Honor.

9        I'm going to respond to several of the arguments Mr.

10 Sbaiti made in his motion, which apparently he's abandoned

11 because he only is focused on the injunction.  And I'm also

12 going to tell Your Honor, what our arguments are because

13 despite Mr. Sbaiti's efforts, he's completely misquoted them.

14        So in the motion and the amended motion, the

15 Plaintiffs make several arguments why this Court should stay

16 the matter.  First, they argue they're entitled to a stay

17 because the exculpation provision in the plan prohibits them

18 from proceeding against the Defendants in the action.  And

19 there are several problems with that argument.

20        First, Mr. Sbaiti and the Plaintiffs don't even

21 attempt to meet the Fifth Circuit's standards for a stay

22 pending appeal because, of course, they can't.  Mr. Sbaiti's

23 trying to sidestep the grounds for a stay pending appeal by

24 arguing it doesn't apply just is incorrect.

25        They would have to show that there is a likelihood of

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 19 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 115 of 274   PageID 4786

18

1    success on the merits, they would suffer irreparable harm, the

2    debtor wouldn't suffer irreparable harm, and there is -- public

3    interest supports a stay.  They can't do any of them.

4         In fact, as Your Honor is well aware, Your Honor

5    denied the actual appellants in that suit, in that order, the

6    confirmation order, a stay pending appeal and that was denied

7    by the district court and also denied by the Fifth Circuit

8    Court of Appeals.

9         The Plaintiffs didn't object to the plan, they are

10   not parties to the appeal, and they never sought a stay pending

11   appeal.  So they really can't explain why they as really

12   strangers to the appeal are entitled to a stay of the

13   effectiveness of the plan when the actual appellants to that

14   order were denied a stay pending appeal up through the

15   appellate ladder.

16        Second, notwithstanding Mr. Sbaiti's arguments in the

17   motion, the exculpation provision is neither as broad nor does

18   it affect all the parties that are subject to this litigation.

19   There are three Defendants in the complaint.  The only

20   Defendant that is covered by the exculpation provision is the

21   debtor.  The exculpation provision does not apply HCF Advisors,

22   and it does not apply to Highland CLO Funding.

23        Also, while the exculpation provision does apply to

24   the debtor, it only exculpates the debtor from claims of

25   negligence.  The complaint raises a variety of causes of action

004564

19

1  that have nothing to do with negligence and would not be

2  covered by the exculpation provision.

3        But, Your Honor, the biggest problem with their

4  argument that the exculpation provision supports a stay is that

5  the exculpation -- the appeal of the exculpation provision has

6  nothing to do with this case.  Why?  Because the Fifth Circuit

7  appeal concerns whether the exculpation provision is

8  appropriate for parties other than the debtor.  The debtor is

9  the only Defendant in this case that obtains the benefit of the

10  exculpation.

11        And there is no dispute, there was no dispute at

12  confirmation, there's no dispute in the case law, there's no

13  dispute in Pacific Lumber, there's no dispute in the appeal

14  that a plan can exculpate the debtor.  So the Fifth Circuit

15  appeal doesn't implicate the exculpation provision and cannot

16  support a basis for a stay.

17        The next argument Mr. Sbaiti makes is the injunction

18  provision, and the injunction provision is on appeal to the

19  Fifth Circuit.  But the aspect of the appeal of the injunction

20  is not the provision that Mr. Sbaiti points to.

21        And, again, as with the exculpation provision, the

22  same arguments about failure to obtain a stay, failure to be

23  party to the appeals, and failure to object to the plan apply,

24  as well.  But as is the case with the exculpation provision,

25  the resolution of the appeal of the injunction provision will

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 21 of 105
Case 3:22-cv-02280-S    Document 3-22    Filed 12/06/22    Page 117 of 274    PageID 4788

20

1  not affect this case in any way.

2           They point to the portion of the injunction that

3  prohibits enjoined parties from directly or indirectly

4  continuing, commencing, or conducting in any manner any suit or

5  action proceeding against the debtor.  They argue that they

6  cannot proceed without violating the injunction because the

7  injunction was intended to put all litigation against the

8  debtor to an end.

9           But, of course, Your Honor, that is not true.  That

10  is not what the injunction is.  The issue on appeal before the

11  Fifth Circuit as it relates to the injunction is whether the

12  injunction impermissibly enjoins parties from enforcing their

13  rights with respect to post-effective date commercial

14  relationships with the reorganized debtor.  And, of course, we

15  argue that it's appropriate, but it has nothing to do with the

16  provision Mr. Sbaiti identified.

17           The appeal does not impact in any way whether a plan

18  can enjoin prosecution of claims that arose prior to the

19  effective date.  And, of course, such a plan provision is

20  completely appropriate and is customary.  The plan provided the

21  debtor as the plan provides all debtors with a fresh start and

22  enjoins litigation against the debtor.

23           But importantly, Your Honor, that does not mean as

24  Plaintiffs argue that any liability for pre-effective date

25  conduct just goes away and that creditors are left without a

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 22 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 118 of 274 PageID 4789

21

1    remedy to pursue claims against the debtor for pre-effective

2    date conduct.

3           Rather, if they have a pre-petition claim in lieu of

4    their litigation that's pending, they file a pre-petition claim

5    against the estate and that matter is resolved in the claims

6    objection procedure.  Or, as in the case here, when they make

7    an allegation that there is a post-petition claim, what do they

8    do?  They file a request for payment of an administrative

9    claim, and this Court addresses the validity of the

10   administration claim.  The lawsuit pending in another

11   jurisdiction stops, but the claim has to be resolved in the

12   bankruptcy court.

13          The only conduct that the injunction really prohibits

14   is them from proceeding with actions in other courts.  It does

15   not deny them a remedy.  Accordingly, their argument that they

16   cannot proceed with claims against the debtor because of the

17   injunction provision just lacks any merit and can't form the

18   basis for a stay.

19          Plaintiffs' next argument in their briefing is that

20   if the Court refuses to stay the complaint, they will file a

21   motion to withdraw the reference of this matter to the district

22   court.  Your Honor, this is the biggest head-scratcher of them

23   all given how this complaint ended up before Your Honor.  This

24   exact issue and Plaintiffs' arguments as to why the reference

25   should be withdrawn have already been fully briefed and decided

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 23 of 105
Case 3:22-cv-02280-S    Document 3-22    Filed 12/06/22    Page 119 of 274    PageID 4790

22

1  by the district court.

2          As Your Honor may recall, the Plaintiff filed this

3  action in the district court, conveniently failing to include

4  the bankruptcy case as a related case or mentioning that the

5  bankruptcy courts have related jurisdiction in the filings.

6  Your Honor may have had occasion to review the underlying

7  complaint when the debtor brought a motion for contempt against

8  counsel for Plaintiffs for pursuing a claim against Mr. Seery

9  in violation of Your Honor's January 9th, 2020 and July 16th,

10  2020 orders.

11          Your Honor issued an order finding counsel and

12  various parties in contempt which order is, of course, subject

13  to appeal.  At the time we were litigating the contempt motion,

14  we filed two motions in district court.  The first was a motion

15  to enforce the reference and have the district court send that

16  complaint to Your Honor.  And that motion to enforce the

17  reference is now on Your Honor's docket at Number 22 and 23.

18          The second was the motion to dismiss which is before

19  Your Honor today.  Plaintiffs oppose the motion to enforce the

20  reference arguing that mandatory withdrawal was required

21  because the matter involved consideration of non-bankruptcy

22  federal law, specifically federal securities laws and the

23  Investment Advisors' Act.

24          Plaintiffs further argue to the district court why

25  would you refer the case to the bankruptcy court if it's only

**WWW.LIBERTYTRANSCRIPTS.COM**

23

1    going to end up back in the district court upon mandatory

2    withdrawal of the reference.  They argue to the district court

3    that would be a complete waste of time.

4         We filed our reply at Docket Number 42 explaining to

5    the district court why mandatory withdrawal of the reference

6    did not apply and why this case should be referred to Your

7    Honor.  And what did the district court subsequently do?  It

8    entered an order referring this action to Your Honor which is

9    why we are here today.

10        Plaintiffs now flout the district court's order of

11   reference by telling the Court that if the Court does not stay

12   the matter, they will file a motion to withdraw the reference

13   before Your Honor, and they attach virtually identical pleading

14   that they filed in opposition to our motion to enforce the

15   reference.

16        Plaintiffs did not disclose in their amended motion

17   that there was a fully-briefed motion to enforce the reference

18   before the district court.  Plaintiffs' argument is

19   disingenuous and designed to mislead the Court.

20        The district court has only agreed that mandatary

21   withdrawal of the reference does not apply and this case

22   belongs in Your Honor.  And while we cannot stop the Plaintiffs

23   from filing any motion before this Court, we want to put them

24   on notice that if they do file a motion for withdrawal of the

25   reference in light of the facts as I just stated them, we will

004569

24

1   seek sanctions.

2           In any event, Your Honor, the fact that they may file
3   a motion for withdrawal of the reference at some point in the
4   future is not grounds to stay the matter.

5           Lastly, Your Honor, Plaintiffs argued in the opening
6   that Highland's position today in opposing the motion to stay
7   is inconsistent with positions Highland has taken in two other
8   lawsuits commenced by the Sbaiti firm.  Like all of their other
9   arguments, they misrepresent the facts and are frivolous.

10          The Sbaiti firm filed a complaint on behalf of the
11  DAF in the district court arguing that Highland mismanaged
12  (audio drop).  That complaint followed in the heels of an
13  almost identical complaint filed by Dugaboy asserting the same
14  claims.

15          And Your Honor may recall questioning Mr. Sbaiti at a
16  hearing in June how Dugaboy could pursue such a claim in the
17  district court if Dugaboy had a pending proof of administrative
18  claim on file in the bankruptcy case.  Well, soon after that
19  hearing, Your Honor, the Dugaboy complaint was dismissed, and a
20  few days later the DAF complaint was filed.  That complaint has
21  never been served on Highland.

22          The second lawsuit is also a lawsuit filed by the
23  Sbaiti firm on behalf of an entity called PCMG in the district
24  court.  And PCMG previously held less than five one-hundredths
25  of a percent interest in a certain fund managed by highland.

004570

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 26 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 122 of 274 PageID 4793

25

1    The lawsuit alleges that Highland acted improperly to sell

2    certain assets of the fund, thereby damaging PCMG.  That

3    complaint has also never been served on Highland.

4         The Plaintiffs sought a stay of those matters before

5    Highland could file a response, and the court -- the district

6    court's entered stays in those matters.  And Highland has filed

7    motions for reconsideration and the motions to dismiss because

8    they violate the injunction.

9         But, importantly, Your Honor, if you read the

10   motions, Highland does not argue that Plaintiffs do not have a

11   remedy for the alleged wrongs they say they suffer.  Rather,

12   Highland's argument is that any claims alleged in those

13   lawsuits, just like any claims alleged in the lawsuit before

14   Your Honor today, must proceed in bankruptcy court as part of

15   the claims objection process.  That's where they will have

16   their day in court.  The lawsuits don't go away.  The

17   injunction prevents them from continuing on in district court.

18        Accordingly, Highland is being totally consistent in

19   all matters, and the litigations may not proceed there but must

20   proceed before Your Honor.  And, of course, none of these three

21   matters are implicated by the Fifth Circuit appeal.

22        Your Honor, the amended motion was procedurally

23   improper and is substantively without merit.  And for all these

24   reasons, we request that the Court deny the stay motion and

25   proceed with the hearing on the motion to dismiss.

26

1          Thank you, Your Honor.

2          THE COURT:  All right.

3          Mr. Sbaiti, you get the last word.

4          MR. SBAITI:  Thank you, Your Honor.

5          Your Honor, the administrative claim process that was

6     described as being the way that these claims were supposed to

7     proceed, by the language of the order that we read, does not

8     allow for these claims.  Those claims are limited to a specific

9     category of claims that don't include the claims that are

10    alleged in this lawsuit.

11         And in any event, this lawsuit wasn't filed as an

12    administrative claim.  So if that's the case and it needs to be

13    refiled or reasserted as an administrative claim, then I think

14    that's a subject for another day.  All I know is that we have

15    this injunction right now that either should stay this case

16    pending the appeal, which I'll address the issue on appeal in a

17    moment, or it should be dismissed, perhaps without prejudice so

18    that it can be refiled properly as an administrative claim if

19    that's what's supposed to happen, because I guess this converts

20    the matter.

21         The appeal, the subject of the appeal as to the

22    injunction, Your Honor, the appeal actually encompasses many of

23    the issues that we're talking about in this case.  Now Mr.

24    Pomerantz tries to narrow the scope of what's up on appeal, and

25    that may indeed be the argument that they're going to present

004572

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 28 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 124 of 274   PageID 4795

27

1 to the Fifth Circuit or that they've presented to the Fifth

2 Circuit.

3          But the actual issue up on appeal is the

4 enforceability and validity of the order for a variety of

5 reasons which includes the provision that we're talking about

6 and the enforceability of the provision that we're talking

7 about because it gets rid of particular claims.  And I guess

8 the argument back is, no, it doesn't because there's now an

9 alternative means of going there.

10          Mr. Pomerantz says that we shouldn't have proffered a

11 motion to enforce the reference.  That proffer, however, was

12 because Judge Boyle's reference to this Court didn't deal with

13 our motion to -- our cross-motion to withdraw the reference.

14 All it dealt with was their motion to enforce the reference as

15 a -- to enforce the standing order in the district court.  And

16 that's all she ordered was she cited the standing order and the

17 statutes, I think it's 157(a), and that's really all it did.

18          So it left open the question of whether she wanted

19 Your Honor to deal with the withdrawal of the reference

20 specifically as to the 12(b)(6) issue in the first instance.

21 It didn't resolve the question.  It doesn't purport to resolve

22 that question.  And it's not unheard of for the district court

23 then to send the matter to the bankruptcy court and then to

24 piecemeal which proceedings the withdrawal of the reference is

25 applicable to and then all the other proceedings would stay

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 29 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 125 of 274   PageID 4796

28

1    with Your Honor or with the bankruptcy court.

2            So we weren't flouting the district court's order,

3    and we certainly weren't flouting any of the previous orders.

4    And the threat of a sanction for simply exercising our rights

5    in due course is not well taken.

6            Now Mr. Pomerantz says, well, the DAF and CLO Holdco

7    are not parties to the appeal.  I don't think that's relevant

8    because if the provision is struck by the Fifth Circuit, it's

9    not only struck for the appellants, it's struck as to all.

10   It's either valid or it's invalid.  And even if it's declared

11   to be invalid only as to the appellants, it's not suddenly

12   valid as to everyone else who didn't appeal.  That's not

13   generally how these appeals have worked.

14           If the Court doesn't stay this matter, Your Honor,

15   and doesn't dismiss it, we still maintain, Your Honor, that as

16   it stands today, the question on the merits have been mooted

17   and we cannot proceed.  I think what Mr. Pomerantz is hoping

18   for or the debtor is hoping for is a provision where our hands

19   are potentially tied to argue the motion.

20           And if the Court tells us they're not, then we'll

21   certainly argue the 12(b)(6).  But what I don't want to do is

22   argue a 12(b)(6) motion that on its face appears to violate the

23   permanent injunction and then be held in contempt for violating

24   that injunction.

25           And so that's why we've asked for the Court to either

004574

29

1   stay the matter under its inherent jurisdiction or to -- if

2   you're going to -- if it's not going to be stayed, then we

3   believe it has to be dismissed according to the permanent

4   injunction as it stands right now.

5           THE COURT:  All right.

6           The motion to stay is denied.  The amended motion to

7   stay is likewise denied.  This is an odd argument.  I guess one

8   might say the traditional four-factor test for a stay of a

9   proceeding has really not been the subject of the argument here

10  for a stay.

11          So suffice it to say the four-prong test for a stay,

12  you know, hasn't been met here.  There hasn't been a showing of

13  substantial likelihood of success on the merits or irreparable

14  injury if the stay's not granted or a stay will not

15  substantially harm others or the stay would serve a public

16  interest.

17          But going on to the arguments that were focused on by

18  movant, I just don't think that you have shown that, you know,

19  either the exculpation clause or the injunction provisions of

20  the plan somehow tie your hands in arguing the 12(b)(6) motion,

21  defending against the 12(b)(6) motion today or I just think

22  that your arguments reflect, frankly, a misunderstanding of how

23  the injunction language and exculpation language applies here.

24          So the motion for stay is denied, and I will ask Mr.

25  Pomerantz to submit an order reflecting the Court's ruling.

004575

30

1          So it looks like we have another procedural matter,

2     Mr. Sbaiti.  You filed a motion to strike reply appendix of the

3     Plaintiffs quite a while back.  So did you want to present

4     that?

5          MR. SBAITI:  Yes, Your Honor.  I think it's a very

6     simple procedural issue.

7          Generally, a party that files a 12(b)(6) is limited

8     to the four corners of the complaint.  And if there's a

9     contract incorporated or a document incorporated as an

10    intrinsic part of the complaint, you know, that's usually

11    considered under the 12(b)(6) motion.

12         What the Defendants did, what the debtor here did is

13    they filed a bunch of evidence in their 12(b)(6), essentially

14    attempting to argue it as a summary judgment.  We raised that

15    in our response.  So as part of our response, we objected to

16    all the evidence.  But then on the reply, they filed a bunch

17    more evidence both without leave and improperly, basically

18    sandbagged us.

19         And so we raised two points for striking that

20    evidence.  One was akin to the first argument, which is it's

21    not an evidentiary hearing.  It's not an evidentiary process in

22    the first instance.  A 12(b)(6) motion has to assume that the

23    facts pled are true, and then the question is whether they

24    state a claim.

25         And, secondly, adding them to the reply is especially

31

1   egregious because the reply is the last word.  And we didn't

2   have an opportunity to respond, and we also don't think it's

3   relevant nor should we have to respond to a whole bunch of

4   extra evidence that was attached.

5           That's essentially the basis of our motion, Your

6   Honor.

7           MR. POMERANTZ:  Your Honor, the simple answer to the

8   issue is we filed the reply of the appendix in connection with

9   the motion to enforce the reference.  We didn't file it in

10  connection with the motion to dismiss.  The motion to enforce

11  the reference is moot.  So what Mr. Sbaiti, his whole argument

12  doesn't make any sense.

13          As a substantive matter, just there wasn't any

14  evidence.  It was pointing to court pleadings, orders, and

15  stuff.  So it's irrelevant.  I don't know why it's still on the

16  docket.  It shouldn't be on the docket since it related to the

17  motion to enforce the reference.

18          THE COURT:  All right.  Mr. Sbaiti, did you just

19  simply --

20          MR. SBAITI:  Your Honor, much of that evidence was --

21          THE COURT:  -- misunderstand or what?

22          MR. SBAITI:  I think we might have because it was

23  filed as a separate item, and it may have been miscalendared or

24  misapplied on our system.  But the way it was presented to us

25  when we got it was it appeared to be evidence in support of,

32

1 well, I guess both, but certainly evidence that was averted to

2 in the reply.

3          But if they're saying that the Court's not going to

4 consider it, then that moots the motion and I think we can move

5 on.

6          MR. POMERANTZ:  Yes, Your Honor.  I had nothing to do

7 with his motion.  I guess there was another mistake on their

8 end.  I guess that stuff happens occasionally.

9          THE COURT:  Okay.  All right.  So I'll deny it as

10 based on a mistake that's been acknowledged here.  And so with

11 that, let's have an order cleaning that up, as well, Mr.

12 Pomerantz, please.

13          With that, we'll move on to the Defendants' motion to

14 dismiss complaint.  I think, Mr. Pomerantz, you said Mr. Morris

15 will be making this argument?

16          MR. POMERANTZ:  That is correct, Your Honor.

17          THE COURT:  All right.

18          Mr. Morris, I'll hear your argument.

19          MR. MORRIS:  Good morning, Your Honor.  John Morris

20 for Pachulski Stang Ziehl & Jones for the reorganized debtor.

21 Can you hear me okay?

22          THE COURT:  I can.  Thank you.

23          MR. MORRIS:  Okay.

24          Your Honor, this is a bit like Groundhog's Day.  I

25 believe that we're going to spend the next half hour or an hour

004578

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 34 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 130 of 274   PageID 4801

33

1  discussing the very issues that were before the Court earlier

2  this year on the HarbourVest 9019 motion.

3           As the Court will recall from the June 8 hearing,

4  there is a complaint that's been filed ostensibly by the DAF

5  and CLO Holdco. As Your Honor will recall, the testimony

6  established that Mark Patrick had just been installed as the

7  trustee, had no knowledge of the prior events, and Mr. Dondero

8  and Mr. Sbaiti spent quite some time together formulating this

9  particular complaint that is nothing less than a collateral

10 attack on the Court's prior order.

11          I'd like to, if I can, just walk through a PowerPoint

12 presentation to try to make the debtor's position quite clear,

13 if I may.

14          THE COURT:  You may.

15          MR. MORRIS:  And I would ask my assistant, Ms. Canty

16 (phonetic), to put up the first slide.

17          Your Honor, you'll recall that last December, the

18 debtor filed its motion under Rule 9019 for court approval of a

19 settlement.  The debtor was completely and utterly transparent

20 in what the terms of the settlement were.

21          Very briefly, as set forth in Appendix 2 or Exhibit 2

22 which was the motion itself, in Paragraph 32, Your Honor, the

23 debtor set forth the terms of the transaction for which it was

24 seeking approval.  Those terms included in the very first

25 bullet point a statement that HarbourVest shall transfer its

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 35 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 131 of 274 PageID 4802

34

1 entire interest in CLOF to an entity to be designated by the

2 debtor.

3 And that's an important point that we'll talk about

4 in a number of different contexts, Your Honor. The debtor made

5 it very clear at the very first moment of this matter that it

6 was not going to acquire the asset but the asset was going to

7 be transferred to an entity to be designated by the debtor.

8 The debtor's motion filed last December clearly stated the

9 value of the interest that it would be acquiring in return.

10 That was also set forth in Paragraph 32 in a footnote.

11 It didn't say that it was the fair market value. It

12 said the method of valuation was the net asset value and gave a

13 valuation date of December 1st so that all parties in interest

14 who received the motion understood the economics of the deal.

15 And the deal that the debtor was asking the Court to approve

16 was one whereby HarbourVest would receive certain claims and in

17 exchange for those claims, they were going to transfer their

18 interest in CLO -- HCLOF.

19 The debtor also filed on the docket for all to see a

20 copy of the settlement agreement. The settlement agreement

21 sets forth the terms of the deal, including again the statement

22 that HarbourVest "will transfer all of its rights, title, and

23 interest in HCLOF." It actually says to an affiliate or an

24 entity to be designated by the debtor. And the transfer

25 agreement itself was also put on the docket.

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 36 of 105
Case 3:22-cv-02280-S    Document 3-22    Filed 12/06/22    Page 132 of 274    PageID 4803

35

1          So that's where things stood just before Christmas.

2    I know that there's some due process and other type arguments

3    that are in the Plaintiffs' opposition to the motion.  But, of

4    course, the undisputed facts are that the debtor timely filed

5    the motion.  The time period was consistent with all applicable

6    rules.  Nobody ever asked the debtor for an extension of time.

7    Nobody ever filed a motion for an extension of time.  And so

8    those due process arguments I think carry no weight at all.

9          So the debtor filed the motion.  And if we can go to

10   the next slide, we see what the responses were, and there were

11   several.  All of the responses, the only responses were

12   objections to the motion filed by Mr. Dondero and his certain

13   of his affiliated entities.

14         Mr. Dondero's objection can be summarized as follows.

15   He made the following observations and asserted the following

16   objections to the proposed settlement.  The first thing he said

17   is that the settlement far exceeds the bounds of

18   reasonableness.  Now, of course, one cannot make a

19   determination of reasonableness without having an understanding

20   of value.  The debtor was giving something and it was getting

21   something.

22         And so Mr. Dondero understood that the issue of value

23   was front and center.  If there was any mistake about it, he

24   also noted that he understood that as part of the settlement

25   and, again, I've written this incorrectly, HarbourVest will

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 37 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 133 of 274 PageID 4804

36

1 transfer its entire interest in HCLOF to the debtor. That is

2 not what Mr. Dondero understood. In fact, Mr. Dondero

3 understood that it would transfer its entire interest in HCLOF

4 "to an entity to be designated by the debtor," again, making it

5 clear that he knew exactly what the debtor was doing here. And

6 that can be found at Appendix 4 in Footnote 3 on Page 1 if you

7 want the exact quote from Mr. Dondero's pleading.

8          In the same footnote, he also specifically

9 acknowledges that he understood the valuation. He understood

10 the method valuation. He understood the valuation date of

11 December 1st. And he urged the Court in his pleading to

12 scrutinize the settlement to make clear that the available

13 value of the investment should be realized by the debtor's

14 estate.

15          And this is such a critical point, Your Honor. His

16 concern was that by placing the value in an entity other than

17 the debtor itself, that the Court wouldn't have jurisdiction

18 over that asset. That was his concern. So not only did he

19 understand that the asset was going to be transferred to an

20 affiliate, he wanted to make sure that this Court had

21 jurisdiction over the asset.

22          And, of course, Mr. Seery in his testimony and

23 otherwise, we provided the Court with all the comfort it needed

24 to know that even though it was being assigned to a special-

25 purpose vehicle wholly-owned by the debtor, it would

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 38 of 105
Case 3:22-cv-02280-S    Document 3-22    Filed 12/06/22    Page 134 of 274    PageID 4805

37

1    nevertheless be subject to the Court's jurisdiction.

2            Mr. Dondero's trusts also filed an objection if we

3    can go to the next slide.

4            Dugaboy and Get Good represented by Douglas Draper

5    made the following observations and asserted the following

6    objections to the HarbourVest Settlement.  They, too, made

7    clear that they understood that the asset was going to be

8    transferred to an entity designated by the debtor.  They, too,

9    acknowledge that they understood that the debtor was valuing

10   the asset at approximately $22 million as of December 1st.  And

11   their objection was that the Court couldn't evaluate the

12   settlement without knowing how the asset was valued, without

13   knowing whether the debtor could acquire the asset, very

14   critical point.

15           These are the points that are made in the complaint.

16   These are the exact same points that are made in the complaint.

17   And also the Court couldn't evaluate the settlement unless they

18   understood that the value would be inure to the benefit of the

19   debtor's estate, again, mimicking Mr. Dondero's concern that by

20   placing the asset in an affiliate of the debtor, that it might

21   not be subject to the Court's jurisdiction.

22           Finally, and most importantly, if we can go to the

23   next slide.  The Plaintiff, CLO Holdco, filed an objection to

24   the 9019 motion.  And this is just so critical.  And this is

25   the Groundhog Day aspect that I specifically speak of.  CLO

38

1    Holdco's objection was based solely on its assertion that it

2    had a superior right to the opportunity to acquire the asset

3    that was being transferred by HarbourVest.  It only made one

4    argument in support of its contention that it had a superior

5    right, but that argument was specifically premised on the

6    membership agreement, Section 6.1 and 6.2 of the membership

7    agreement.

8            CLO Holdco, the Plaintiff in the underlying action,

9    argued to this Court that HarbourVest had no authority to

10   transfer the asset without complying with the right of first

11   refusal that would give CLO Holdco the opportunity to take the

12   asset for itself.  That's what this Court was told.  CLO Holdco

13   didn't make this argument fleetingly.  They provided an

14   extraordinarily detailed analysis of Sections 6.1 and 6.2 of

15   the membership agreement and concluded "that HarbourVest must

16   effectuate the right of first refusal before it can transfer

17   its interest in HCLOF.  That was the objection.  Objections

18   have consequences, as Your Honor knows.

19           If we can go to the next slide.

20           By filing an objection, CLO Holdco and the trusts and

21   Mr. Dondero became participants in the litigation.

22   Notwithstanding the Plaintiffs' arguments to the contrary, when

23   they file the objections, they participate in what's called a

24   contested matter.  And in a contested matter, they had every

25   right to take all discovery on any issue that was related to

004584

Case 22-03052-sgj  Doc 34-22  Filed 08/01/22   Entered 08/01/22 17:35:41   Page 40 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 136 of 274   PageID 4807

39

1   the 9019 motion, including the transfer, the disposition of the

2   asset to an affiliate of the debtor, the valuation of the asset

3   that's being received, the merits of the settlement itself, the

4   causes of action, whether, you know, what communications that

5   were, the negotiations, what did Mr. Seery and Mr. Pugatch

6   discuss?  Right?

7           They could have taken any discovery they wanted.  And

8   they did avail themselves of discovery, in fact.  They did -- I

9   don't know why they did what they did, but they chose to take

10  one deposition, and that was Mr. Pugatch, okay.

11          His deposition transcript, I think is at Exhibit 7,

12  or Appendix Number 7, and it was a long deposition.  It really

13  was.  And they asked Mr. Pugatch at the deposition if he knew

14  what the value of the asset that was being transferred was.

15  And he said $22.5 million.  So it wasn't just Mr. Seery or the

16  debtor who was subscribing to this valuation.  The party on the

17  other side of an arm's length negotiation was subscribing to

18  the exact same valuation.

19          The Plaintiffs could have taken whatever discovery

20  they wanted.  This is a full and fair opportunity to

21  participate in the litigation.  We proceeded to trial.  Before

22  we got there, actually, the debtor filed its response to CLO

23  Holdco's objection and proffered its own very detailed and

24  apparently very persuasive analysis that CLO Holdco's objection

25  was without merit, that CLO Holdco had no right of first

40

1   refusal under the facts and circumstances as they existed, and

2   with Grant Scott, Mr. Dondero's childhood friend at the helm,

3   we got to Court for the contested hearing on the debtor's 9019

4   motion, and CLO Holdco withdrew their objection.

5          And I've put up on the screen just an excerpt of the

6   transcript because, you know, when we talk about whether or *res*

7   *judicata* should apply, because was there a hearing on the

8   merits?  Was there a decision on the merits?  Just look at the

9   words of CLO Holdco's lawyer.  "CLO Holdco has had an

10  opportunity to review the reply briefing and after doing so has

11  gone back and scrubbed the HCLOF corporate documents based on

12  our analysis of Guernsey law."

13         And some of the arguments of counsel in those

14  pleadings and our review of the appropriate documents, counsel

15  obtained the authority from Mr. Scott to withdraw the CLO

16  Holdco objection based on the interpretation of the member

17  agreement.  We were grateful for that and the Court

18  specifically said in response, "That eliminates one of the

19  major arguments that we had anticipated this morning."

20         Apparently, the Plaintiffs believe that those events

21  have no meaning and that this Court's reliance on CLO Holdco's

22  substantive withdrawal of its objection has no meaning.  I

23  think they're wrong, and we'll get to that in a moment.

24         We proceeded with the hearing.  Mr. Seery and

25  Mr. Pugatch testified at length.  If you look at Footnote 3,

004586

41

1   you'll see Mr. Seery testified for almost 70 pages of

2   testimony.  Mr. Pugatch testified for almost 45 pages of

3   testimony.  His testimony was exhaustive.  And, again, any of

4   the objecting parties had the right to ask whatever questions

5   they want.

6          But I do want to just note a few things that aren't

7   up on the screen right now.  If you go to Appendix 9, Your

8   Honor, which is the transcript of the hearing, at Page 13, you

9   will see that the very first thing I discussed in my opening

10  statement was the economics and how with a valuation of $22.5

11  million this deal made sense for the debtor.

12         You will see from Pages 30 to 42 there is extensive

13  testimony from Mr. Seery about the amount and the value of the

14  asset.  But the most important part of Mr. Seery's testimony is

15  that he explains how it came to be that HarbourVest agreed to

16  transfer its interest in HCLOF to an affiliate of the debtor.

17  And that came about, not because Mr. Seery or the debtor was

18  initially at all interested in doing this.  The whole idea

19  originated with HarbourVest.

20         They wanted to extract themselves from the Highland

21  platform.  They wanted to give this piece up.  So there's no

22  conspiracy going on here.  The unrebutted testimony that all of

23  the objecting parties had an opportunity to challenge was that

24  the whole idea originated with Mr. Pugatch and with

25  HarbourVest.  I think that's an important point to take into

004587

42

1   account.

2           And finally, again, from the hearing, if you look at

3   at Appendix 9, you'd also find that Mr. Pugatch, again,

4   testified, as he had in his deposition, as to the value of the

5   interest being transferred.  So we completed the testimony.  We

6   rested our case having had a full and fair opportunity to

7   contest the motion.  The objecting parties rested as well.  And

8   we got to the point where we had to prepare the notice, and we

9   were discussing that at the hearing, if we can go to the next

10  slide.

11          And it's very important, because again, this was all

12  done transparently, and it was all done on the record.  And

13  after the close of evidence, I addressed the order that was

14  going to be prepared.  I specifically said that I wanted to

15  make clear that we were going to include a provision, "that

16  specifically authorizes the debtor to engage in, to receive

17  HarbourVest the asset, you know, the HCLOF interest," right.  I

18  wanted everybody to know that was what was going to happen, and

19  then I said, "The objection has been withdrawn."  I think the

20  evidence is what it is and we want to make sure that nobody

21  thinks they're going to go to a different court somehow to

22  challenge the transfer.  But yet, that is exactly what the

23  complaint seeks to do.

24          Having put everybody on notice as to where we were

25  going, as to what the evidence showed, the debtor drafted and

004588

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 44 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 140 of 274   PageID 4811

43

1  the Court adopted an order, and the order says, among other

2  things, that HarbourVest was authorized to transfer its

3  interest to the debtor.  Actually, it says, "to a wholly owned

4  and controlled subsidiary of the debtor," pursuant to the

5  transfer agreement, "without the need to obtain the consent of

6  any party or to offer such interest first to any other investor

7  in HCLOF."  So the Court heard the 9019 motion pursuant to a

8  Bankruptcy Rule and entered and order that was unambiguous and

9  that the Plaintiffs did not appeal from.

10         We can go to the next slide.

11         At a very high level, Your Honor, it is just crystal

12  clear that the complaint is just inextricably intertwined with

13  the 9019 proceedings and the order itself.  I think Mr. Sbaiti

14  would agree with me that but for the order that approved the

15  transfer of the asset and the testimony about the value of that

16  asset, they have no claims.

17         Every single claim is predicated on what happened in

18  the 9019 hearing.  Every single claim is predicated on the

19  Court's order approving the transfer of the asset and the

20  testimony and evidence that was adduced in relation to that

21  asset.

22         There were really only two issues that the Court -- I

23  mean, if you want to think about it at its most simplistic

24  level, the Court was being asked to assess, is it fair, is it

25  reasonable, is it legally permissible for the debtor to give

44

1  something.  In this case, allowed claims and releases, and to

2  get something in return.  In this case, HarbourVest's interest

3  in HCLOF and releases in return.  And that is really the

4  gravamen of the complaint.

5        The complaint is based whether it's breach of

6  fiduciary duty or RICO or breach of contract or tortious

7  interference, whatever the claim is, none of them exist if the

8  debtor doesn't get this.  They just don't exist.  And that is

9  why the complaint and the proceeding are inextricably

10 intertwined.  And if you just take a look at just one paragraph

11 of the pleading, it says at the core of this lawsuit is the

12 fact that HCM, that's the then debtor, purchased the

13 HarbourVest interests in HCLOF for $22.5 million knowing that

14 they were worth far more than that.  There's not a cause of

15 action that exists in the complaint that isn't dependent on

16 Paragraph 36.

17        So if we can go to the next slide with that

18 background, I'd like to argue why under 12(b), the complaint

19 should be dismissed because the claim should be barred under

20 the doctrine of *res judicata*.  Luckily, Your Honor, there is at

21 least one area of agreement between the parties here, and that

22 is the purpose of the doctrine and the elements that have to be

23 satisfied in order to meet the burden of proof necessary to

24 have the claims barred.  And in Footnote 1, you can -- I've

25 tried to just be helpful to the Court to show that we may not

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 46 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 142 of 274 PageID 4813

45

1  cite to the exact same cases, but the parties agree that the

2  doctrine is intended to foreclose the re-litigation of claims

3  that were or could have been raised in a prior action and that

4  there's four elements that have to be satisfied for the

5  doctrine to apply.

6      The parties have to be either identical or at least

7  in privity, the judgment in the prior action had to have been

8  rendered by a court of competent jurisdiction. Number three,

9  the prior action had to have been concluded by a judgment on

10 the merits. And the last one is that the same claim or cause

11 of action was involved in both suits. So I just want to spend

12 a few minutes now, Your Honor, going through those four

13 elements to show the Court how easily the reorganized debtor

14 meets this standard.

15     If we can go to the next slide, I can take care of

16 the first two elements very quickly.

17     The first element, the debtor asserted that the

18 Plaintiffs were parties or in privity with parties to the prior

19 proceeding. That's at Paragraph 17 of the motion to dismiss.

20 The debtor relies on the deposition testimony of Grant Scott,

21 who was then the trustee of the DAF.

22     CLO Holdco is a wholly-owned subsidiary of the DAF,

23 or wholly controlled, in any event, and Mr. Scott's testimony

24 was that he was the only director and there were no employees

25 of either entity. So we, in our motion, put forth evidence to

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 47 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 143 of 274 PageID 4814

46

1  establish the first element, and I don't believe, maybe I've

2  missed it.  I don't believe that the Plaintiffs have contested

3  that element.  If they have, I think Mr. Scott's testimony will

4  carry the day, in any event.

5       The second element as to whether or not a court of

6  competent jurisdiction is the entity or the court that rendered

7  the ruling.  Of course, that's been met, too.  The Plaintiffs,

8  in their opposition to the motion to dismiss, suggested that

9  the bankruptcy court would have lacked jurisdiction if their

10 cross motion to withdraw the reference was granted.  They said

11 if the district court decides that mandatory withdrawal

12 applies, then it cannot find that the bankruptcy courts already

13 entered final judgment was rendered on Plaintiffs' causes of

14 action and had jurisdiction to do so.  I think that's just a

15 clear misstatement of the law.

16      But in any event, Your Honor, at this point, I

17 believe it's irrelevant because the district court, in fact,

18 sent the case back to Your Honor and back to this Court.  And

19 so, at the end of the day, Plaintiffs' argument doesn't hold

20 water because of the district court's ruling, which can be

21 found -- the order of reference can be found at Docket

22 Number 64.  And so I think that easily takes care of the second

23 prong.

24      The third prong is whether -- if we can go to the

25 next slide -- the prior proceeding resulted in a judgment on

004592

47

1 the merits.  And this is really the critical point, Your Honor.

2 As the Court knows, the whole doctrine of *res judicata* is

3 designed to prevent, as the parties agree, the re-litigation of

4 claims.  Stated another way, it's to bring finale.  It's to

5 make sure that the Court doesn't hear the same claims and the

6 same issues that either were brought or that could have been

7 brought in a prior proceeding.  And so, we believe that we

8 easily meet the standards set forth in the third prong.  The

9 9019 order necessarily determined that the *quid pro quo* that I

10 described earlier was fair, reasonable, and legally

11 permissible.

12         Notwithstanding their assertions to the contrary, the

13 Plaintiffs are most definitely seeking to unwind at least one

14 half of the Court's order by belatedly claiming that they are

15 entitled to the benefit of the bargain while leaving Highland

16 burdened, frankly, with the claims that HarbourVest got as part

17 of the deal.  I will tell you, Your Honor, and this is

18 argument, the debtor would never have asked for, and I don't

19 believe that the Court would ever have granted, the 9019 motion

20 if they thought that there was a risk in the future that

21 Highland wouldn't get the benefit of the bargain and it was

22 incumbent upon CLO Holdco and the DAF, and frankly, any party

23 in interest, to stand up and be counted and tell the Court and

24 the debtor, why the debtor was not entitled to do this deal and

25 CLO Holdco did that.  They actually did.

**WWW.LIBERTYTRANSCRIPTS.COM**

004593

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 49 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 145 of 274 PageID 4816

48

1        They stood up and they filed an objection and they

2   said we have a superior right to this asset in the form of a

3   right of first refusal.  They wound up folding in the face of

4   persuasive argument, and I respect the lawyer who did that.  I

5   just do.  But that was the time to speak up, and that's why it

6   is on the merits because that is exactly what *res judicata* is

7   intended to do.  It's intended to have everybody put your cards

8   on the table.  You don't put one card on the table and say, I'm

9   going to challenge this under 6.2 of the members agreement, but

10  I'm not going to tell you that I also think you owe me a

11  fiduciary duty under the Advisors Act or as the control party

12  or under any other theory that they had.  They can't do that.

13  That's exactly what the problem is here.

14        If we can go to the next slide.  Is it a judgment on

15  the merits?  The debtor and the Court relied on CLO Holdco's

16  representation that it was withdrawing its argument, its claim,

17  its contention, its assertion that it had a superior right to

18  obtain the HarbourVest interest in HCLOF.  Again, they did so

19  not whimsically, not because Mr. Kane was going to be out of

20  town and he couldn't make the hearing.  He did it after, and I

21  don't think this matters frankly, but I think it's worth noting

22  that he did it after an extremely careful analysis.  I would

23  tell you, Your Honor, that -- well, I would argue, Your Honor,

24  that even if Mr. Kane at CLO Holdco had never filed an

25  objection, if they'd never filed -- if they'd gotten notice

1 that this was happening and they sat silently, that would have

2 been enough for *res judicata* because the issue before the Court

3 was whether it was legally permissible for the debtor to

4 acquire this asset.

5 And if they had an obligation, if they owed a duty to

6 another party, it wouldn't have been legally permissible. And

7 if somebody believed that it wasn't legally permissible because

8 a duty was owed to them, they had an obligation to speak up.

9 And so I think it's very important, particularly for the

10 collateral estoppel argument that I'll make in a moment, that

11 CLO Holdco did in fact file an objection. It was based on the

12 breach of contract claim that's in their complaint. It's the

13 exact same claim. And they withdrew it. I think it's very,

14 very important. I think it highlights why *res judicata*

15 applies. I think it is the linchpin of the collateral estoppel

16 argument.

17 But at the end of the day, I think if they say

18 nothing, they should be estopped or precluded under *res*

19 *judicata* from now asserting -- it would be like -- I was

20 thinking about this earlier, Your Honor. If you'll remember

21 earlier this year, Mr. Dondero and his entities have kind of a

22 habit of withdrawing objections at the last minute. We had a

23 couple of sale hearings earlier this year. And the issue was

24 valuation, you know, and the process, and could the debtor meet

25 its burden of proving that the sale outside of the ordinary

1   course of business was in the debtor's best interest.  And they

2   sold that restaurant.  And Mr. Dondero objected.  And at the

3   last second, they withdrew the objection.  Did they sue

4   tomorrow?  Does Your Honor really think that they could bring a

5   lawsuit tomorrow and say they just found a document or theory

6   on which the debtor had an obligation to give them a right of

7   first refusal, even though we've already closed on the

8   transaction, even though they were given notice of the

9   transaction, even though they filed an objection to the

10  transaction, even though they withdrew the objection?  Would

11  the Court tolerate for one second a new pleading tomorrow from

12  Mr. Dondero that the debtor actually had a fiduciary duty to

13  give him a right of first refusal to buy that asset under

14  whatever theory, just because he pleads it and the Court has to

15  accept as true the allegations in the complaint?  I think not.

16  And I think it's worth thinking about that to highlight just

17  how -- just how wrong this is.

18          Continuing on.  You know, the Plaintiffs in

19  opposition say it can't be a trial on the merits because we

20  weren't parties.  Of course they were parties.  Again, they

21  filed an objection.  They were the parties to the contested

22  matter, full stop.  They rely on a case called Applewood and

23  they say, this is the very first point they make in their

24  brief.  Applewood, if it wasn't *res judicata* in Applewood, how

25  could it possibly be *res judicata* here?  But the facts are just

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 52 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 148 of 274 PageID 4819

51

1  so inapposite, right?

2         In Applewood, you had a garden variety plan and

3  release where the debtor and the officers and directors got a

4  discharge.  No objection to it.  And a secured lender later on

5  sought to sue guarantors who happened to be officers and

6  directors.  And the court, not surprisingly, said that the

7  confirmation order wouldn't prevent the secured lender from

8  going after the officers and directors, not in their

9  capacities, as such, but in their capacity as guarantors, which

10 were never part of the confirmation order.  That just doesn't

11 apply here because here, we have the debtor making a motion

12 before the Court in which it sought permission and authority to

13 acquire a particular asset.  Anybody who had a claim to that

14 asset should have stepped forward and put their cards on the

15 table.

16         And again, CLO Holdco put their cards on the table

17 and they lost, and they folded.  To use the poker analogy, they

18 folded.  And to hear them come into Court today and say we're

19 going to sue you because I reshuffled the deck, it's not right

20 and Applewood has no relevance.

21         Finally, Your Honor, you know, it's not on the

22 merits, they say, because you know, Mr. Seery and the debtor

23 hid the true value of the asset, and had we only known the true

24 value of the asset, we would have made all of these other

25 claims.  The fact of the matter is, you either have a fiduciary

52

1  duty or you don't.  And if you had a fiduciary duty, they

2  should have spoken up and they did only under 6.2, but they

3  did.

4          But here's the important part, Your Honor.  Take the

5  allegations as true.  You have to take all of the allegations

6  as true, not just some of them.  And if you look at

7  Paragraph 127 of the complaint, and I would ask Ms. Canty to go

8  to Appendix 11 and let's just put Paragraph 127 up on the

9  board.

10         Here's the irony of the whole thing, right.  The

11 whole complaint is based on the fact that somehow Mr. Seery was

12 engaged in insider trading.  They accused him of insider

13 trading, and they say he didn't disclose the full value of the

14 asset.  Just read Paragraph 127.  James Dondero, who was on the

15 board of MGM, is the tippee.  You've got an insider trading

16 case -- I mean, I don't represent MGM.  I'm not with the SEC.

17 I don't know why Mr. Dondero thought he should be telling

18 Mr. Seery in December, 2020.  It's not clear if it was before

19 or after the 9019 motion was filed.  But Mr. Dondero is the

20 very source of information -- you can't make this up.  He's the

21 very source of the information that he now complains Mr. Seery

22 didn't disclose.

23         Of course, Mr. Dondero, the trust, CLO Holdco could

24 have asked Mr. Seery at any time, how did you come up with your

25 valuation?  Mr. Dondero, knowing that he had supplied to

004598

53

1  Mr. Seery, according to Paragraph 27, please take it as true

2  for purposes of this motion only. He's the source of the

3  inside information. And now he has the audacity to come to

4  this Court, notwithstanding the Court's approval, all of the

5  time and money and effort spent in the 9019 process, and say,

6  Mr. Seery was wrong because he didn't tell CLO Holdco and the

7  DAF about the information that Mr. Dondero gave to Mr. Seery.

8  It's not right.

9          It was a judgment on the merits. And if Mr. Dondero

10 or the DAF or CLO Holdco or the trust wanted to challenge the

11 valuation, they had every opportunity to do so. And based on

12 Paragraph 127, if the Court accepts it as true, shame on them.

13 Shame on them for not pursuing this issue before. The guy gave

14 Mr. Seery, according to this allegation, and I'm just going to

15 leave it there, inside information. And he sits there in

16 silence, right? It says, look at the last sentence: "The news

17 of the MGM purchase should have caused Seery to revalue HCLOF's

18 investment." Seriously?

19         The third element is (indiscernible). The fourth

20 element, if we can go to the next slide.

21         Are they the same claims? Did the claims arise from

22 the same set of operative facts? I've addressed this pretty

23 clearly already, so I don't want to belabor the point. But

24 obviously, both the 9019 motion and the complaint arise solely

25 from the debtor's settlement with HarbourVest. The debtor's

004599

54

1  acquisition of HarbourVest's interest in HCLOF and the debtor's

2  valuation of that interest. Without those three facts, there

3  is no complaint. It's just not credible to argue that the

4  fourth element is not met.

5        The case law is clear. It's quoted in the

6  Plaintiffs' opposition. It's not just the test of whether the

7  claims are the same. It's whether the claim is the same as

8  that which was brought or could have been brought.

9        In their opposition, the Plaintiffs contend that the

10 claims "did not write them until after the settlement was

11 consummated," and that the first time the plaintiffs heard

12 about the valuation of HarbourVest's interests was at the

13 January 14, 2021, hearing. I think I quoted that. If you

14 look, I don't know if it's Page 10 or Paragraph 10; the way I

15 wrote it, it's probably Page 10. I think that's a quote right

16 out of there. But of course, as we saw the debtor disclosed

17 the valuation in its very initial motion, CLO Holdco's counsel

18 elicited valuation testimony directly from Mr. Pugatch, so that

19 was before the hearing.

20       And of course, Mr. Dondero and the trusts both cited

21 in their objections the valuation. The notion that this was

22 not right, just -- it's contradicted by their own conduct,

23 their objections, their questions in deposition, the

24 information that was contained in the motion that they objected

25 to.

004600

1          I do want to go off-script for just a minute, if we

2     could just take that down because I know that this is probably

3     something that Mr. Sbaiti may argue.  And that is, well, gee,

4     but you have to take the allegation as true that Mr. Seery

5     wasn't honest, that Mr. Seery lied to the court.  I don't

6     understand why there's not a fraud cause of action in there,

7     but there's not.  But that's their theory.

8          And gee, how does he get to skate away Scott free if

9     he's allowed to do that with impunity, right?  I will tell you,

10    Your Honor, of course you've seen Mr. Seery many times.  You've

11    made your own assessments of his credibility.  I'm not here to

12    argue the merits, but I will just say that the Defendants, if

13    ever forced to, will contest the allegation.

14         But here's the thing, and here's the important point

15    about, you know, whether or not he could lie with impunity and

16    say, I suspect that's where Mr. Sbaiti is going to want to go.

17         Mr. Seery said what he said.  And he had a reason to

18    speak, and he spoke, and he said what he said and he told

19    everybody who would listen exactly what he was doing and how he

20    was doing it.  For whatever reason, the objectors put the

21    valuation front and center.  It's right in their objections.

22    They noted the objections.  But for whatever reason, they did

23    nothing.

24         Whether they were negligent or whether they were

25    lying in wait is kind of irrelevant.  They had a full and fair

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 57 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 153 of 274 PageID 4824

56

1  opportunity to contest this issue.  And if they had done so,

2  and the evidence proved what they're now alleging, they can't

3  tell you what would have happened.  So, you know, HarbourVest

4  may have taken a different position.  The Court may have done

5  something.

6  We're never going to know now because Mr. Seery and

7  the debtor are getting away with something, but because they

8  put in evidence that went unchallenged by Mr. Dondero and the

9  Plaintiffs.  It simply went unchallenged.  And they say, oh,

10 gee, that's because we didn't know.  Well first of all, you

11 didn't ask.  And second of all, again, the source of the inside

12 information, the reason that Mr. Seery should have known the

13 asset was worth more.  The reason that he should have refrained

14 from trading and not engaged in insider information was

15 Paragraph 127.  It was Mr. Dondero.

16 Here's another thing.  If -- if again Mr. Seery had

17 not been honest with the Court and that was ever brought out,

18 Maybe HarbourVest -- maybe HarbourVest would have had a right

19 to complain.  There's a lot in the complaint about oh,

20 HarbourVest was misled.  The actual evidence that's in the

21 record, and this is part of res judicata, Mr. Seery testified

22 very clearly to the arm's length negotiation that took place.

23 He told the Court under oath that the negotiations were

24 contentious.

25 He told the Court under oath that in order to try to

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 58 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 154 of 274   PageID 4825

57

1  resolve the case, he and Mr. Pugatch went off and had their own

2  private conversation without lawyers.  They could have taken

3  discovery on any of that, right.  What did you guys talk about?

4  It's certainly not privileged.  They had every opportunity.

5  But what we do know is that Mr. Pugatch under oath, in

6  deposition, and at trial, said the value is $22.5 million.

7        So I don't think Mr. Pugatch or HarbourVest is ever,

8  ever, every going to complain about the transaction they did.

9  Because of what the evidence simply shows.  But again, you've

10  got the Plaintiffs in their complaint saying that somehow the

11  debtor and Mr. Seery in negotiating this transaction has now

12  exposed the debtor to liability.  It just makes no sense.

13        So there was a time and there was a place to

14  challenge Mr. Seery.  Somebody, you know, maybe HarbourVest

15  could have done something, maybe they could still do something.

16  I don't know.  If they really think that there's a problem,

17  maybe we'll hear from HarbourVest someday.  But the Plaintiffs

18  have no right to complain.  They just don't.  They knew

19  everything.  They were the source of the inside information.

20  They sat on their hands, and they shouldn't be allowed to do

21  what they're doing now.

22        If we can go to the next slide.  I want to move to

23  the next theory and try to finish this up.  The next theory is

24  that the Plaintiffs' claims are barred by judicial estoppel.

25  The judicial estoppel argument is really, really very

58

1   straight-forward.  And it's important because if the Court

2   thinks about this the way I do, it's that the whole issue of

3   valuation is completely irrelevant to the Plaintiffs unless

4   they can show that they were owed some kind of duty, that they

5   had some superior right to acquire the asset.  But that's

6   exactly the issue that CLO Holdco relied upon and withdrew and

7   should now be estopped from pursuing.  Right.

8        The legal standard, again the parties agree on, that

9   in order to be estopped, the party must take an inconsistent

10  position.  And the party must have convinced the Court to

11  accept that position.  Again, both prongs are easily met here

12  in just a few sentences from the January 14 hearing.  You have

13  Mr. Kane saying that he understands and acknowledges and admits

14  that they have no superior right to the investment.  And the

15  Court relying on that very representation in declining to

16  conduct a hearing and render a ruling on the merits of the

17  claim that was withdrawn.  The objection that was withdrawn.

18       And for the avoidance of doubt, after Mr. Draper

19  spoke on behalf of the Trust, the Court, at Page 22 engaged in

20  the following colloquy.  The Court asked Mr. Draper:

21       "THE COURT:  Were you saying that the Court still

22            needs to drill down on the issue of whether the

23            debtor can acquire HarbourVest's interest in HCLOF.

24       "MR. DRAPER:  No.

25       "THE COURT:  Okay.  I was confused whether you were

004604

59

1          saying I needed to take an independent look of that.

2          Now that the objection has been withdrawn of CLO

3          Holdco, you're not pressing the issue.

4          "MR. DRAPER:  No.  I am not."

5          Okay.  You can call it res judicata, you can call it

6  judicial estoppel, collateral estoppel, the two prongs are

7  easily met.  They're taking an inconsistent position today and

8  through all kinds of different theories, including the one that

9  they withdrew, the Plaintiffs assert that they had a superior

10 right to acquire the interest from HarbourVest.

11         And they should have asserted those rights at the

12 hearing.  That was the time.  And they should be estoped now

13 from taking a completely inconsistent position from the one

14 that was before the Court.  And I just do want to point out,

15 the statement from a case called <u>Hall vs. G.E. Plastic</u>.  And

16 it's interesting, Your Honor, because there's only a few cases

17 that I focused on, because this is really more fact intensive.

18 And there isn't a dispute as to the, you know, the elements of

19 these matters.

20         But it is interesting that the Plaintiffs, you know,

21 generally ignore all of the cases that we cite to.  One which

22 is <u>Hall vs. G.E. Plastic</u>, where the Court said that the focus

23 on the prior success or judicial acceptance requirements is to

24 minimize the degree of a party contradicting a Court's

25 determination, based on a party's prior position.  That's the

004605

60

1  whole point of the exercise.  You can't do this.  You can't do

2  this.

3      Just quickly, that leaves the individual arguments as to

4  each of the five causes of action and I just want to go through

5  some highlights.  There's a negligence claim, Your Honor.  And

6  we did not file a pleading, but the Court can certainly take

7  judicial notice of the fact that the effective date has

8  occurred.  Under the effective date, the plan is now effective.

9  That includes the exculpation clause, as Mr. Pomerantz, I think

10 accurately and without contradiction pointed out earlier, the

11 exculpation clause applies specifically to the debtor and to

12 negligence claims.  And that's not a matter that's at all

13 subject to appeal.

14      So I think just to add to the arguments that we have

15 in our papers, which I adopt and do not abandon for any

16 purpose, I would add to the argument on negligence, that it's

17 now precluded, as a result of the plan becoming effective.

18      The fiduciary duty count suffers from numerous defects.  I

19 just want to point out a couple of them.  They don't respond to

20 the argument under Corwin, that under the Advisor's Act, there

21 is no private right of action to sue for damages arising from a

22 breach of fiduciary duty.  This claim rears its head in

23 virtually every single complaint.  They've never addressed

24 Corwin.  Corwin is binding on this Court, and it is unambiguous

25 that there is no private right of action to sue for damages for

61

1  breach of fiduciary duty under the Advisor's Act.

2       They ignore Goldstein.  Goldstein is not from the

3  Fifth Circuit, but it's very persuasive authority that advisors

4  do not owe fiduciary duties to their individual investors.

5  Instead, they owe fiduciary duty to their client.  Their client

6  is the entity with whom they're in contractual privity.  And so

7  in this case, there's no fiduciary duty there, either.

8       The breach of contract claim.  Again I just -- I

9  would just say quickly, Your Honor, it's barred under judicial

10 estoppel.  Even if it wasn't, it's clear based on Mr. James'

11 analysis and admission that the debtor's, or the reorganized

12 debtor's interpretation of 6.2 is accurate.  And you know, I

13 said this in the beginning.  Now let me tie it in a bow because

14 the breach of contract claim, and the tortuous interference

15 claim are both tied to the same thing.  And that is the

16 assertion that the Plaintiffs had a right under the membership

17 agreement, a right of first refusal.

18      And they basically say that the debtor was playing

19 games.  That they shouldn't be able to get through 6.2 by

20 assigning it to an affiliate.  And that's where I go back, Your

21 Honor, and just remind the Court that the debtor told the whole

22 world exactly what they were doing in their motion.  And their

23 objections, Mr. Dondero and the Trusts both acknowledge to the

24 whole world that they understood exactly what was happening.

25      In fact, their concern was not that it was going to

004607

62

1   the debtor, but that it might be going to an affiliate outside

2   of the bankruptcy court's jurisdiction. And for them to now

3   say, having taken all of those positions -- talk about

4   inconsistent positions. They should be barred from saying

5   today, that the use of an affiliate to effectuate the

6   transaction was wrongful, because they actually told the Court

7   that they needed to -- that the Court needed to make sure that

8   it had jurisdiction over the very entity they now say somehow

9   shouldn't have been allowed to get the asset.

10         It's a bit much. So that takes care of the tortuous

11  interference.

12         The RICO claim, Your Honor, again is a motion.

13  There's so many different aspects to it. But I don't think the

14  Court needs to get past the Supreme Court holdings in HJ, Inc.

15  Again, just simply ignored by the Plaintiffs in their

16  opposition to the motion to dismiss. In HJ, Inc., the Court --

17  the Supreme Court did an exhaustive analysis to try to

18  determine and ultimately did determine, what a pattern of

19  racketeering activity meant. And the Supreme Court came to the

20  following formulation. That it had to have two or more

21  predicate related offenses that amounted to a threat of

22  continued criminal activities.

23         You know, the notion here is that the debtor and Mr.

24  Seery engaged in insider trading. We've already -- I've

25  already mentioned that according to the complaint, which the

004608

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 64 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 160 of 274 PageID 4831

63

1  Court can take as true.  Mr. Dondero, himself, was the tippee.

2  But be that as it may, they don't come close to meeting the

3  very high standards set forth by the Supreme Court in HJ, Inc.

4  to show that whatever conduct Mr. Seery and the debtor engaged

5  in, and if you take the allegations as true, in not telling

6  what the fair value of the asset was, that that doesn't amount

7  to a hill of beans for purposes of RICO.  That you don't have

8  any, I think predicate acts.  I think here's the Court,

9  predicate acts extending over a few weeks or months,

10  threatening no future criminal conduct, do not meet RICO

11  pleading grounds.  Right.

12      Security fraud claims cannot be predicate acts for

13  purposes of RICO.  That is also clear.  And that is really, I

14  mean they say mail, wire and fraud.  But what's really at heart

15  is the 10(b)(5).  Okay, it's the 10(b)(5) claim.  Again, Mr.

16  Seery being -- I mean Mr. Dondero being the tippee.  But those

17  are just some of the reasons.

18      None of, you know, that the RICO claim fails. You

19  know, I'll otherwise rely on the papers, unless the Court has

20  specific questions as to any of the other pieces of the motion

21  to dismiss the RICO claim, or any other aspect of the

22  Defendants' motion.  I think this is clear.  I think we win, no

23  matter how you slice it.  It's just wrong.  It's just wrong.

24      This Court will never, ever have a final order if Mr.

25  Dondero is able to engineer complaints such as this, which seek

64

1  to assert claims that absolutely positively could have and

2  should have been brought at the time the debtor made its

3  motion.

4         Unless the Court has any questions, I have nothing

5  further.

6         THE COURT:  I do not.  All right.

7         Mr. Sbaiti, I'm going to let you have as much time as

8  Mr. Morris.  He took 55 minutes.  As I mentioned, I have a hard

9  stop at 12:00 to do a swearing in ceremony.  So if you're not

10 finished in 40 minutes, then I'm going to have to take a break

11 and come back and let you finish.  All right?

12        MR. SBAITI:  Thank you, Your Honor.  Although I don't

13 think I'm going to be much longer than 35-ish minutes.

14        THE COURT:  Okay.

15        MR. SBAITI:  if not less.

16        THE COURT:  Okay.

17        MR. SBAITI:  I think you'll be able to be done by --

18 we'll be able to be done by noon.

19        THE COURT:  All right.  Thank you.

20        MR. SBAITI: Thank you, Your Honor.  Your Honor, may I

21 share my screen?

22        THE COURT:  You may.

23        MR. SBAITI:  Thank you, Your Honor.  Do you see my

24 Power Point, Your Honor?

25        THE COURT:  I do.

004610

65

1          MR. SBAITI:  Thank you, Your Honor.  I don't know

2    what which one you see.  Is it the --

3          THE COURT:  I see presentation.

4          MR. SBAITI:  With the full page?

5          THE COURT:  Yes, uh-huh.

6          MR. SBAITI:  Okay, yeah, great.  I just want to make

7    sure we're on the right page.  Thank you, Your Honor.  So Your

8    Honor, the defendant debtor is a registered investment advisor.

9    And it all begins with that.  And this where the distinctions

10   between what happened in the 9019 and I'll get to the elements

11   of res judicata through argument.

12         But the first thing that has to be identified is that

13   the Defendant is a registered investment advisor.  The

14   objection filed by Holdco back during the 9019 was an objection

15   against HarbourVest selling its interest by filing the right of

16   first refusal.  It did not deal with the investment advisor

17   feature of Highland's relationship.  And I'll get to why the

18   9019 doesn't preclude these arguments today.

19         This is essentially the structure.  Highland was the

20   investment advisor of HCLOF, and Holdco is an investor in

21   HCLOF.  And so Highland would owe a fiduciary duty under the

22   Advisor's Act against -- to CLO Holdco.

23         Highland also had a direct advisor relationship with

24   the DAF.  And so under the Investment Advisor's Act, it owed

25   fiduciary duties to both of those entities.  The law governing

004611

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 67 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 163 of 274   PageID 4834

66

1   registered investment advisors is that it's a federally

2   recognized and defined fiduciary duties.  The fiduciary duty to

3    there's a fiduciary duty to affirmatively keep the advisee

4   informed and the fiduciary duty not to self-deal, i.e., not to

5   trade ahead of an advisee and opportunity that an advisee would

6   want or expect and without the advisee's expressed informed

7   consent.

8           This is a federally recognized and defined fiduciary

9   duty and it's actionable under state fiduciary duty laws.

10  While Mr. Morris ended his argument by saying we didn't deal

11  with their case law saying that there's no private right of

12  action under the Advisor's Act, the fact of the matter is that

13  Judge Boyle, about ten years ago, found that a state -- the

14  breach of fiduciary duty claim can be predicated on breaches of

15  federally imposed fiduciary duties under the Advisor's Act.

16  And that's what Douglass v. Beakley held.  And that's actually

17  what we cited in our response.  So I'm not sure why he would

18  argue that we haven't addressed the issue of where does this

19  private right of action come from.

20          Federal Law supplies the rules of the relationship

21  and State Law provides the cause of action for those breaches.

22  Now the scope of that has been expounded upon by many cases.

23  The Fifth Circuit held in Laird, as a fiduciary, the standard

24  of care to which an investment advisor must adhere imposes an

25  affirmative duty of utmost good faith and full and fair

004612

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 68 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 164 of 274   PageID 4835

67

1  disclosure to all material facts, as well as an affirmative

2  obligation to employ reasonable care to avoid misleading his

3  clients.

4          The word "affirmative" there is important because it

5  means the investment advisor is not supposed to wait to be

6  asked.  The investment advisor as an affirmative duty to

7  proactively provide the information to the client.

8          The next standard comes from the SEC.  We call it the

9  SEC interpretation letter.  It's a release that came out in

10 2019.  And to meet it's duty of loyalty, an advisor must make

11 full and fair disclosure to its clients of all material facts

12 relating to the advisor relationship.  Material facts relating

13 to the advisor relationship include the capacity at which the

14 firm is acting with respect to the advice provided.

15         The SEC had another release in 2000 -- or excuse me,

16 in that same release, the SEC said the duty of loyalty requires

17 that an advisor not subordinate its clients interests to its

18 own.  In other word, an investment advisor must not place its

19 own interest ahead of its clients' interests.  An advisor has a

20 duty to act in the client's best interest, not its own.

21         The SEC general instruction three to part 2 of Form

22 ADV, that every investment advisor has to pull out.  And this

23 is cited in our papers.  As a fiduciary, you must also seek to

24 avoid conflicts of interest with your clients, and at a

25 minimum, make full disclosure of all material conflicts of

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 69 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 165 of 274   PageID 4836

68

1  interest between you and your clients that could affect the

2  advisor relationship. This obligation requires that you provide

3  the client with sufficiently specific facts, so that the client

4  is able to understand the conflicts of interest you have, and

5  the business practices in which you engage, and can give

6  informed consent to such conflicts or practices or reject them.

7          And, finally, the Third Circuit in _Belmont_ said:

8          "Under the best interest test, an advisor may benefit

9          from a transaction recommended to a client if, and

10          only if, that benefit, and all related details of the

11          transaction are fully disclosed."

12          These fiduciary duties are unwaivable by the advisor.

13  Any condition, stipulation or provision binding any person to

14  waive compliance with any provision of this subchapter, or with

15  any rule, regulation or order thereunder shall be void.

16          So the lawsuit does not allege that the HarbourVest

17  settlement should be undone or unwound. I'd like to move to

18  that point. Mr. Morris says well, you have to unwind half of

19  the settlement. Maybe HarbourVest doesn't have to give back

20  what it got, but Highland would still be saddled with the cost

21  of the settlement, but not with the benefit of the settlement.

22          Well, actually that's not true. There's two points

23  that we would make on that. Number one, our suit is a suit for

24  damages. In other words, the suit would be a suit for money

25  damages, based on the difference between the value of the asset

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 70 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 166 of 274   PageID 4837

69

1    and what HarbourVest or what the actual value of the asset that

2    was represented, $22.5 million.  So the second point, though,

3    is that even under a situation where CLO or Holdco or the DAF,

4    or even HCLOF were to purchase the HarbourVest suit, the

5    expectation would obviously be that they'd pay the $22.5

6    million that Highland paid for it.

7           So Highland is -- so it's not unwinding, and there's

8    no saddling Highland with a burden that they didn't otherwise

9    have, I think that's a misrepresentation.  But we're not

10   seeking to unwind the lawsuit -- or excuse me, unwind the

11   settlement.

12          Now Mr. Morris is correct, the representation of

13   value by Mr. Seery is -- is one of the main points here.  And

14   the representation was that the value of the entire asset.  Not

15   just the shares of MGM, but the value of the entire asset was

16   $22.5 million.  So in other word, nearly half of HCLOF was

17   represented to be worth $22.5 million.  It was argued by

18   counsel on Page 14 of the January 14th transcript, and then on

19   Page 112 of that transcript, Mr. Seery specifically says the

20   current value is right around $22.5 million.

21          Now that was also in some of the filing papers and

22   Mr. Morris put up the evidence to Your Honor that Mr. Pugatch,

23   on behalf of HarbourVest also parroted that number.  But

24   there's not any evidence today about where that number came

25   from, or whether he was simply relying on Highland's

004615

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 71 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 167 of 274   PageID 4838

70

1   representation of that value.

2          Now as a general rule, in these 12(B)(6) motions, as

3   I said before, we don't look at the evidence because the whole

4   point of discovery is to find out what's behind a lot of the

5   evidence.  That's been quoted.  The amount of evidence that

6   went into the 9019 motion as not necessarily full-blown

7   discovery.

8          I understand Mr. Morris saying well, they could have

9   asked the question.  But as I just showed you, they shouldn't

10  have to ask the question.  There should be fair and full

11  disclosure of all the material facts.  And if it turns out,

12  which we believe it is true, that by January, the value of

13  HCLOF was twice what it was represented, or the HarbourVest

14  portion of HCLOF was twice as to what it was represented,

15  that's a material omission that Highland had an affirmative

16  duty to not misrepresent.  Irrespective of the questions being

17  asked.

18         The DAF found out later on that the representation of

19  the value wasn't true.  Now Mr. Morris talked for a very long

20  time about all the opportunities that somebody, Mr. Dondero,

21  somebody other than CLO Holdco.  In addition to CLO Holdco,

22  could have asked the magic question to find out whether or not

23  they were telling the truth.  But that runs right in the face

24  of the standards set forth by the SEC and by the Courts as to

25  the affirmative obligation of an advisor to disclose all the

1   material benefits that they're going to get as part of a trade.

2   The idea being that when you're a registered investment advisor

3   and you want to engage in a transaction, you make a full

4   disclosure and say this is the transaction.  It's worth 41, but

5   I'm paying 22-1/2.  But here's why I'd like to be able to do

6   it.  And then that's the discussion that happens.

7          That clearly didn't happen here.  And when it turned

8   out that there was this entirely huge upside that they were

9   gaining the benefit of, and maybe HarbourVest didn't care, that

10  that was a false statement.  Now the reason we don't have a

11  common law fraud claim, or that we don't necessarily hang our

12  hat on a fraud claim is we don't have enough evidence as it

13  stands today, to specifically say that Mr. Seery intentionally

14  misrepresented that.  Although we believe that it was grossly

15  reckless of him to do so.  But we don't really need a fraud

16  claim with a gross recklessness standard.  We have a breach of

17  fiduciary duty, which basically gets us to the same place.

18         So the timeline we have is September 30th was the

19  last valuation of HCLOF assets provided by HCMLP.  And the

20  value of HCLOF, at that time, or the HarbourVest of that value,

21  would have been about 22.5 million.  So what it appears to be

22  is that in January or in late December, the valuation that was

23  being done -- what was being reported, wasn't the current

24  valuation.  It was the valuation as of the end of the third

25  quarter of 2020.

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 73 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 169 of 274   PageID 4840

72

1          On December 22nd, the motion to approve the

2   settlement with HarbourVest was filed.  HCMLP should have had

3   or would have had up-to-date valuations of the HCLOF assets,

4   but didn't necessarily disclose them as being different than

5   the 22.5 million.  On January the 14th, Your Honor, held the

6   9019 hearing.  And then that same day, Your Honor entered the

7   approval order.

8          And finally, in March, the DAF learns the true value

9   of HLOF assets as of January 2021 and starts to look into it.

10  Now Mr. Morris makes much of the fact that well, Mr. Dondero at

11  least knew that he had tipped them off, Mr. Seery.  And if you

12  actually read Paragraph 127, you'll see specifically what it's

13  purported that he said.  He said stop trading in the MGM

14  assets, because MGM might be in play.  So you can't trade

15  because I'm an advisor, Mr. Dondero's an insider, he's the

16  tipper, not the tippee.  Mr. Seery becomes the tippee under

17  that theory of the case, and he has to, and is required to,

18  because of their affiliation at the time, he's required to

19  cease trading.  And that was the purpose of saying that.

20         The collateral issue that we point is that he at the

21  very least knew about that, and that should have caused him to

22  revalue, if he hadn't done so at the time.  Not that, knowing

23  that alone is sufficient to know what the value of HCLOF

24  actually was on that date.  That's a complete misrepresentation

25  of the point and purpose of that allegation.

73

1          And as Your Honor knows, under 12(B)(6)

2    jurisprudence, the way this is supposed to go is we get the

3    benefit of every inference based upon the allegations, not the

4    movant.  So the first violation is that the debtor as an IRA

5    failed to affirmatively disclose the true current valuation of

6    HCLOF and failed to keep the DAF and CLO Holdco reasonably

7    informed of the value of the assets.

8          And the debtor as an IRA, failed to obtain CLO

9    Holdco's with the DAF's informed consent before it traded in

10   the asset, because it didn't have all of the information.  The

11   typical remedy for breach of fiduciary duty is typically

12   damages for any loss suffered by the Plaintiff as a result of

13   the breach.  I don't think there's a debate there.

14         So now we get to Mr. Morris' key argument.  His key

15   argument is that we should be talking about res judicata.  The

16   elements of res judicata and I think we agree is you have to

17   have identical parties in the action; the prior judgment was

18   rendered by a Court of competent jurisdiction; the final

19   judgment was final on the merits, and the cases involved the

20   same causes of action or the same transaction and nexus of

21   facts.

22         Now I'm going to skip to three, because I think

23   that's one of the key points that we disagree with them on.

24   There is no case, Your Honor, that we could find, and no case

25   that I read them citing that says an order on an 9019 has

004619

74

1   preclusive effect under res judicata under an objector to the

2   settlement.  We looked.  We looked in the Fifth Circuit.  We

3   looked outside of the Fifth Circuit.  No District Court, no

4   Fifth Circuit Court of Appeals' opinion we could find held that

5   a 9019 order has res judicata effect on an objector's

6   objection.  And I think the reason is pretty simple.  Is it

7   doesn't.

8        Because the Plaintiff's claims, here our claims

9   hadn't even accrued.  We have a four year statute of

10  limitations, but I think more importantly is that, as the Fifth

11  Circuit said, the 9019 motion grants the Court discretion.

12  It's not supposed to be a mini trial.  The Court can approve a

13  settlement over even the valid objection of an objector.  It's

14  not a trial on the merits.  It's not supposed to be a trial on

15  the merits.  It's not supposed to be a disposition on the

16  merits.

17       So the fact that Your Honor could have approved the

18  9019 settlement with HarbourVest, even if we had a valid

19  objection, means this isn't a disposition on the merits, as res

20  judicata would envision.  It wasn't a trial on the merits, even

21  though it was withdrawn.

22       The other elements that we would point out to is that

23  neither the DAV nor Holdco were parties to the dispute between

24  HarbourVest and Highland.  And this keys off of the issue that

25  I just raised.  The cases that are cited by the debtor to Your

004620

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 76 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 172 of 274   PageID 4843

75

1   Honor all have to do with where one of the settling parties is

2   trying to undo the settlement for some collateral reason.  And

3   the Courts have held, no, that's res judicata, because you were

4   a party to the action.  HarbourVest brought the claims against

5   Highland.  Highland settled those claims.

6        CLO Holdco was collateral to that settlement, it's

7   not a -- excuse me, collateral to that dispute.  It's not a

8   party to that dispute.  Its claims weren't being resolved by

9   the settlement.  And while you have a notice to all creditors

10  and those objections can be raised, there was not inherently

11  any manner for resolving those objections on their own merits.

12  Only -- it was only resolved in so far as deciding whether or

13  not the settlement was in the best interest of the debtor,

14  which Your Honor decided, and we don't challenge that.  But we

15  do argue that it caused damages and the debtor shouldn't get

16  off for those damages.

17        The fourth element is that the --

18        THE COURT:  Just for the record, the standard in a

19  9019 context is not best interest of the debtor, right?

20        MR. SBAITI:  Your Honor, I mean that's what the rule

21  says and Your Honor's order --

22        THE COURT:  That is not what the rule says.  The rule

23  is actually very sparsely worded and then we have Fifth Circuit

24  case law and U.S. Supreme Court law that talk about what the

25  standard is.

004621

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 77 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 173 of 274   PageID 4844

76

1          MR. SBAITI:  Yes, Your Honor.  And there are five --

2          THE COURT:  And it's -- is it fair?

3          MR. SBAITI:  There are five elements.

4          THE COURT:  Is it fair and equitable and in the best

5     interest of the estate given a long list --

6          MR. SBAITI:  Correct, Your Honor.  And I didn't mean

7     to --

8          THE COURT:  -- of considerations that the Court is

9     supposed to consider that "bear on the wisdom of the

10    settlement."  Okay.  So it's actually much more involved, is my

11    point, than is it in the best interest of the estate.  Is it in

12    the best interest of the estate and fair and equitable given

13    all factors bearing on the wisdom of the compromise?  And then

14    we have a long laundry list of things the Court should consider

15    as part of that analysis.

16         MR. SBAITI:  That's a --

17         THE COURT:  I just bring that up because if I'm still

18    -- my brain is still stuck five minutes ago on your comment

19    that you can't find any case saying that an order approving a

20    9019 compromise has res judicata effect on creditors.  And it's

21    -- let me just say it's shocking to me that someone would argue

22    otherwise.  Bankruptcy is a collective proceeding --

23         MR. SBAITI:  Your Honor --

24         THE COURT:  -- where creditors can weigh in and

25    object and raise whatever arguments they think the Court should

1   consider that bear on the wisdom of the compromise.  And the

2   Fifth Circuit in Foster Mortgage has said the Court should give

3   great deference to the views of the creditors, the paramount

4   interest of creditors.

5          So it's a really sort of shocking proposition that

6   the order approving a 9019 compromise wouldn't have res

7   judicata effect on all parties and interests who got notice of

8   that.  So if you have any elaboration on that, I'd like to hear

9   it.

10         MR. SBAITI:  Your Honor, we looked at the Fifth

11  Circuit cases that they cited, which I believe included that

12  case.  And even in that case, the point that we made in our

13  papers and the point I was trying to arrive at is that among

14  the factors, yes, the Court should give great deference to the

15  creditors.  But among the factors is not that the objections

16  lack merit or are meritless or that they wouldn't be winnable

17  if they were simply standalone claims.

18         And that was really the only point I was trying to

19  make is that Your Honor has discretion.  Granted it's -- as you

20  mentioned, it's not unfettered discretion.  It's bounded by

21  standards and there are -- there is, I know, about five

22  standards Your Honor has to consider or the Court has to

23  consider.  But among those, that laundry list of standards, is

24  not that the Court finds that any objection lacks merit.  And

25  that was really the only point I was making.

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 79 of 105
Case 3:22-cv-02280-S    Document 3-22    Filed 12/06/22    Page 175 of 274    PageID 4846

78

1          And in terms of the case law, we looked at the Fifth

2    Circuit.  We looked, frankly, outside the Fifth Circuit as much

3    as we could, and because this is actually not an easy one to

4    research, as it turned out, despite the language.  And we also

5    looked for district court opinions in the Fifth Circuit to see

6    did any district court or did any court of appeals give this

7    type of approval to the standard that a 9019 order has res

8    judicata effect on a claim raised in an objection by a

9    creditor.

10          And we couldn't find any and I read all the cases

11   that Mr. Morris cited in his papers, and they didn't cite one

12   that explicitly said that.  They tried to drive at it through

13   insinuation that, well, if the Court has to give great

14   deference or if the Court has to take into account the

15   underlying facts and the fact that there is discovery, surely

16   that must mean this is akin to the trial on the merits.  And I

17   think that's where we simply disagree in good faith.  I'm not

18   ascribing any bad intention.  But we disagree that that's where

19   the law goes.

20          Res judicata is not -- while it's supposed to stop

21   the relitigation of issues, it is predicated on there having

22   been actual litigation of those issues.  And when HarbourVest

23   and Highland settle a case and my clients show up with an

24   objection, even though they withdraw an objection, that, in our

25   opinion -- and we're asking the Court to see it our way -- is

004624

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 80 of 105
Case 3:22-cv-02280-S    Document 3-22    Filed 12/06/22    Page 176 of 274    PageID 4847

79

1   not trial on the merits.  It's not a disposition on the merits

2   of the objection in and of itself.  Some objections we can --

3          THE COURT:  But the context matters.  In the context

4   of a 9019 compromise, the hearing is about look at the bonafide

5   ease of the settlement.  And it's either fair and equitable and

6   in the best interest of the estate or not.  And an objector can

7   say this is a terrible settlement and here's why it's a

8   terrible settlement and let me cross-examine the movant and let

9   me put on my own witness that will enlighten the Court as to

10  why this is a terrible settlement, why I say terrible, why it's

11  not fair and equitable.

12         That's your chance to convince the Court, don't

13  approve this settlement because there are, you know, 14

14  problems with it.  And if you convince the Court, then you

15  convince the Court and it's not approved.  If you don't, you

16  appeal, and we do have an appeal of the settlement order.

17         So, again, I'm not understanding the "res judicata

18  doesn't apply" argument.

19         MR. SBAITI:  Your Honor, if I could riff on two

20  points based upon what you just said, if I could address those.

21         The first is there are clearly two kinds of

22  objections that get -- at least two kinds of objections that

23  get raised in these 9019 approval hearings.  The two that you

24  heard recounted, some were this is bad for the estate.  There's

25  reasons why we don't think the estate will benefit from it and

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 81 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 177 of 274   PageID 4848

80

1   it will be harmed from it.

2          And those types of objections, which I believe mostly

3   comprise the objections that Mr. Morris was talking about

4   because they are concerns for the estate.  And so creditors who

5   want to get money from the estate are concerned that the

6   settlement will not enter (phonetic) to the benefit of the

7   estate, and therefore, not enter to their benefit as creditors.

8   That's number one.

9          But those don't adhere in a lawsuit.  Those aren't

10  claims for damages that the settlement is going to create for

11  the person objection or for the party objecting.  There's a

12  whole separate set of objections similar to the ones HCLO

13  Holdco raised where that what inheres in the objection is this

14  is actually going to cause us some kind of damage.

15         And so, the factors though, don't require the Court

16  in those second set of instances to say, well, you know what?

17  Not only do I think you're wrong, but I think that your

18  lawsuit, the underlying causes of action that give rise to this

19  objection, have no merit on their own face, that the discovery

20  is not there to support them, that a jury is not going to find

21  there.  I am now the trier or the Court is now the trier of

22  fact on the merits of the underlying causes of action that

23  animate the objection.

24         And that's where I believe we're diverging with the

25  debtor on the law.  It goes too far to say that a 9019 hearing

Case 22-03052-sgj Doc 34-22 Filed 08/01/22    Entered 08/01/22 17:35:41    Page 82 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 178 of 274   PageID 4849

81

1  where the Court in the end has discretion to approve it, even

2  over a meritorious objection by any party, regardless of what

3  bucket of objections the objection falls into.  It goes -- our

4  argument today, Your Honor, and we're asking the Court to see

5  it our way, is that that would go too far.  That an actual

6  cause of action shouldn't be eradicated simply because of the

7  9019 process because, as you pointed out, the Court does have

8  to go through a litany of factors.

9        And if the Court determines that it's fair and it's

10  more equitable to overrule the objection, the Court has that

11  discretion.  And we're not here to unwind that discretion.

12        But the settlement process did violate certain

13  obligations and did cause my client damages.  And that's what

14  we're saying isn't precluded.

15        THE COURT:  Okay.

16        MR. SBAITI:  The fourth element, Your Honor, which I

17  guess in many ways maps on to the argument I just made to Your

18  Honor is that the cases, the underlying cases, do not involve

19  the same claims.  Plaintiffs' claims arise from the settlement

20  process itself and not from the underlying issues being settled

21  between HarbourVest and Highland.  So that's why we think at

22  least three of the four elements aren't met here.  And we'll

23  reserve on the papers, you know, whether jurisdiction was

24  applicable because I think that's probably water under the

25  bridge at this point in the oral argument.

004627

82

1          Now, Mr. Morris attacks the case that we cite,

2    Applewood Chair vs. Three Rivers Planning.  And he argues that,

3    well, this is not applicable.  And the argument he made however

4    was he put it in the context of, well, the parties there, the

5    issue was you had guarantors who were not parties in their

6    capacity as guarantors.  But that's not actually what the Court

7    held.

8          The Court didn't say that the release wasn't

9    applicable to them because they didn't appear as parties in

10   their guarantee capacities.  They -- the Court held that, well,

11   the specific discharge language doesn't enumerate those

12   specific guarantees, and so therefore it's not released.

13         And where this dovetails, we believe, as closely as

14   we can, this isn't a 9019 case.  This is a final confirmed

15   plan.  But where it dovetails with what our argument is, is

16   that the Court there as well was essentially saying the

17   underlying causes of action weren't really presented to us, so

18   we're not -- we -- and the confirmation of the plan didn't

19   involve disposing of them, so we're not going to say that they

20   are precluded.  And we think that that's as close an analogy as

21   we've found in the Fifth Circuit to the issues here today.

22         So I would say, Your Honor, that we believe that

23   dispenses with the res judicata argument.  The judicial

24   estoppel argument, they conflate the language.  I'll go back to

25   this for a second.  They conflate the language of judicial

004628

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 84 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 180 of 274 PageID 4851

83

1   estoppel on the success of the claim.  None of the cases they

2   cite on judicial estoppel involved where a party took a

3   position, withdrew their argument, and then the Court moved on.

4         Mr. Morris tries to convert a judicial estoppel claim

5   into a judicial reliance claim, which is not the purpose of the

6   doctrine and is not the doctrine at all.  The doctrine is that

7   if you take a successful position in one court, you can't take

8   the opposite position in another court.  CLO Holdco didn't take

9   a successful position in one court and then change its position

10  later on.  In fact, its positions, as Mr. Morris stated, are

11  remarkably similar.  They're not inconsistent, which is the

12  problem with their judicial estoppel argument.  And we -- I

13  think we fairly briefed that in our papers and we'll otherwise

14  rest on the papers.

15        To deal -- to address the actual claims, again, I

16  come back to the idea of a fiduciary duty claim, which is our

17  lead claim.  And to be clear, it's a state claim predicated on

18  the violation of federally imposed fiduciary duties.

19        And I'm looking for a clock to make sure I'm not

20  abusing Your Honor's time, and I don't have one right in front

21  of me because my screen -- my screen is up.

22        Your Honor, the Douglass v. Beakley case is, like I

23  said, is Judge Boyle's case.  It specifically provides a cause

24  of action based upon violations of the Advisers Act.  We also

25  cite about four or five other cases in footnote 8 of our

84

1  response from other circuits, including the Third Circuit, the

2  Belton case that I referred to earlier, all of which held that,

3  yes, a state fiduciary duty claim can be predicated on breaches

4  of a federal Advisers Act violation.

5          The other point that they make on the fiduciary duty

6  claim is they argue HCMLP doesn't owe fiduciary duties to CLO

7  Holdco.  And the cases they cite, Your Honor, we dealt with in

8  the papers why they were distinguishable, because in those

9  cases they were dealing with the fact that there wasn't any

10  harm or any direct relationship.  But what they ignore is the

11  actual language of the Advisers Act, which is important.

12          Well, first of all, Mr. Seery admitted in his own

13  testimony during the approval hearing in July of 2019 that he

14  says, "We owe."  He says, "There are third party investors in

15  the fund -- in these funds who have no relation whatsoever to

16  Highland, and we owe them a fiduciary duty both to manage their

17  assets prudently, but also to seek to maximize value."  I think

18  Mr. Seery was absolutely correct when he said that.  Highland

19  owes fiduciary duties to the investors in the funds that

20  Highland manages.  The core of our case is that Highland is

21  using or abusing the assets of the funds it managed in HCLOF

22  for its own enrichment, which is a classic breach of fiduciary

23  duty case under the Advisers Act.

24          Now -- excuse me.  The other point that I would say,

25  Your Honor, is that there is a statutory basis for us to argue

004630

85

1 a breach of fiduciary duty. Excuse me. I didn't mean to stop

2 sharing. I apologize.

3          Are you back with me, Your Honor, on my --

4          THE COURT: Yes.

5          MR. SBAITI: -- PowerPoint?

6          THE COURT: Yes.

7          MR. SBAITI: Sorry about that, Your Honor. I just

8 hit the wrong thing. I'm not very technologically savvy. Here

9 we go.

10          So Holdco is an investor in HCLOF, which is a pooled

11 investment vehicle. A pooled investment vehicle under the case

12 law we cite is simply defined as an investment vehicle that

13 doesn't publicly solicit investors and has few than 100

14 investors. Highland advises it. That's the same holding in

15 TransAmerica Mortgage, by the way, which we also cite.

16          15 U.S. C. Section 80(b)(6) establishes the federal

17 fiduciary standards to govern the conduct of registered

18 investment advisers. That's also the TransAmerica case. 15

19 U.S.C. Section 80(b)(6)(D) delegated to the SEC the power to

20 decide the scope of those duties that are imposed under the

21 statute. And so the SEC enacted 17 C.F.R. Section 275.206(4)-

22 8.

23          And it expressly states, and we cite the statute or

24 the regular in full in our papers, that the fiduciary duties

25 are owed to investors in the pooled investment vehicles. It

004631

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 87 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 183 of 274 PageID 4854

86

1 specifically says that. It talks about two different duties

2 owed and they're owed to the investors in the vehicles, which

3 means they're owed to Holdco as an investor in HCLOF, which is

4 the vehicle that Highland manages.

5 It's black and white in the regulation. And we

6 haven't seen any response. There was no response of that in

7 the reply that was filed, Your Honor. And so the argument that

8 there's not a fiduciary duty owed to Holdco because it's merely

9 an investor in HCLOF simply doesn't comport with the law.

10 And finally, the petition lays out the basis for our

11 claims including the applicable federal and state law.

12 Plaintiffs' response lays out why the legal arguments aren't

13 opposite at the 12(b)(6) stage and Rule 9(b) is met where

14 necessary under the federal claim. And I'm trying to unshare

15 so that I can get back to regular argument.

16 I'd like to briefly address Mr. Morris' argument,

17 Your Honor. Your Honor, I re-raise my argument that I made

18 before, which is that a 12(b)(6) motion and hearing is not the

19 appropriate time for all the evidence that was poured in here.

20 And I understand Mr. Morris' contention, well, it's really hard

21 to ignore all the history of this case. But a lot of that

22 history really boils down to things that were actually admitted

23 in the complaint. The complaint recognized there was a 9019.

24 But what Mr. Morris wants to do is go beyond that and to go to

25 what people said and what they must have meant. What Mr.

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 88 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 184 of 274 PageID 4855

87

1  Dondero must have meant in his objection, what Dugaboy must

2  have meant by their objection, what Mr. Pugatch must have meant

3  by his testimony.

4          All of that is highly improper at this stage of the

5  proceeding, Your Honor.  It's outside of the 12(b)(6) confines.

6  It's outside the four corners of the complaint.  And we object

7  to all of that evidence being considered.

8          THE COURT:  Let me --

9          MR. SBAITI:  The question we --

10         THE COURT:  Let me ask you about that procedural

11 point.

12         MR. SBAITI:  Yes, Your Honor.

13         THE COURT:  As we know, 12(d) provides that if

14 matters outside the pleadings are presented to and not excluded

15 by the Court in a 12(b)(6) motion, the motion must be treated

16 as one for a summary judgment under Rule 56 and all parties

17 must be given a reasonable opportunity to present all the

18 material that is pertinent to the motion.

19         Are you -- what are you arguing?  That I should treat

20 it as a motion for summary judgment and give you more time to

21 present other materials?  I mean, you both presented an

22 appendix, okay.  And I'm telling you we're seeing this more and

23 more, I've noticed.  People are going beyond the four corners

24 of a motion to dismiss and attaching things.  And there's some,

25 you know, Fifth Circuit authority that says, well, if what is

88

1   attached is integral to understanding, you know, an allegation

2   or whatever in the pleading, you know, there is some discretion

3   to go outside the four corners.

4          So I'm trying to understand the point you're making

5   with this.  Are you saying I should treat it as a motion for

6   summary judgment or do these attachments really -- you know, do

7   I have authority under the Fifth Circuit to consider them as

8   part of the 12(b)(6) motion or not?

9          MR. SBAITI:  Typically, in our experience, Your

10  Honor, is when a summary or when a 12(b)(6) is going to be

11  treated as summary judgment under 12(d), the Court says that

12  and then the parties are given an opportunity, as you said, to

13  go do some discovery in order to put together the evidence and

14  materials to then come back and respond as a summary judgment.

15  We responded to a 12(b)(6) and objected to the evidence.  If

16  the Court wants to treat it as a summary judgment, then we

17  would ask for an opportunity for -- to conduct discovery in

18  order to be able to respond as a summary judgment motion, but

19  we didn't -- because we responded to a 12(b)(6) --

20         THE COURT:  You did the same thing though.  You did

21  the same thing in your response.  You submitted an appendix of

22  evidence, if you want to call it evidence.  As someone pointed

23  out, it's stuff from the bankruptcy court record.  I don't

24  think it went beyond what was already in the bankruptcy court.

25         MR. MORRIS:  And if I -- can I be heard on this, Your

004634

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 90 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 186 of 274   PageID 4857

89

```
 1   Honor?

 2              THE COURT:  You can.  You can.

 3              MR. MORRIS:  Just to respond.  This is really quite

 4   simple.  The motion to dismiss is based on res judicata.  Res

 5   judicata necessarily requires a review of what happened in

 6   connection with the prior hearing.  There's nothing that we

 7   have identified or put forth in the appendix or on our exhibit

 8   list except for the pleadings in the 9019, the transcripts, the

 9   one deposition transcript, the one trial transcript, the

10   settlement agreement, the transfer agreement.  I'd love to know

11   what the Court couldn't or shouldn't take judicial notice of.

12   There is no emails.  There is no -- there is no -- there is no

13   extrinsic evidence, if you will.  All of this is either on the

14   docket or was presented as part of the hearing.

15              THE COURT:  Yeah.  I'm just trying to ferret --

16              MR. MORRIS:  And it's necessary.  And it's necessary

17   for the motion.

18              THE COURT:  Yeah.  I'm just trying to ferret out the

19   procedural position that's being asserted here.  And I don't

20   have the case cites off the top of my brain, but there is

21   authority from at least the Northern District judges, if not

22   the Fifth Circuit, saying in a 12(b)(6) motion I can take

23   judicial notice of items in the record.  And then, you know,

24   there -- I know there's Fifth Circuit authority saying I can go

25   beyond the four corners in a 12(b) context if it's just basic,
```

90

1  you know, explaining things that are in allegations.  You know,

2  such as --

3       MR. SBAITI:  May I address that, Your Honor?

4       THE COURT:  -- such as if a contract is in dispute,

5  okay.  Like there's no way you can have a cause of action under

6  the contract and here's the contract.  So I'm just trying to

7  nail down your procedural position here.

8       MR. SBAITI:  Your Honor, the distinction I was trying

9  to make that I don't think I put as artfully as I might be able

10 to put now is in a 12(b)(6) if there's a contract, as you said,

11 if there's a legal document, a contract and order that's

12 integral to the case, Your Honor can take judicial notice of

13 that.  Generally, a court can take judicial notice of filings

14 in a bankruptcy, the fact that they were filed.

15      So the transcripts, which Your Honor can't take

16 judicial notice of, is the truth of those.  And that was what I

17 was objecting to is it's one thing for him to say an objection

18 was filed and therefore, because an objection was filed, that

19 should be it.  That was your only chance.  I'm not saying Mr.

20 Morris can't make that argument.

21      But when he goes beyond the fact of the filing or the

22 fact that there was a transcript or the fact that there was a

23 deposition and starts to read from the depositions or read from

24 the filings and say this is what those mean, that goes against

25 the 12(b)(6) parameters because, number one, now it's

004636

91

1 substantive evidence and not simply a judicial notice of

2 something that's right there in front of the Court, i.e.,

3 something on its own docket. Because those statements and the

4 interpretation of those statements are subject to credibility

5 findings. They're subject to clarification. They're subject

6 to rebuttal. That's the purpose of discovery.

7      And so if Your Honor -- and Mr. Morris is right.

8 Usually, res judicata involves knowing what happened in the

9 prior proceedings. So if all he wants to do is rest on the

10 fact that an objection was filed by CLO Holdco and maybe even

11 other people, and that should be it and he thinks that's enough

12 for Your Honor to say res judicata applies, then I don't think

13 we have a problem. It's when he goes beyond that and says,

14 Your Honor, these people must have known and this is what they

15 meant by their argument, that's what I'm asking Your Honor not

16 to consider. And if Mr. Morris wants you to consider that,

17 that's a summary judgment motion and we should have the

18 opportunity to do discovery at the very least into the issues

19 he has now raised as supporting his res judicata defense which

20 he has the burden of proof on.

21      MR. MORRIS: Your Honor, this is one of the strangest

22 arguments I have ever heard. I'm allowed to offer the Court

23 and the Court is allowed to accept the documents, but I'm not

24 allowed to read them. I'm not allowed to make arguments. I

25 don't understand what that even means. If it were a contract,

004637

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 93 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 189 of 274 PageID 4860

92

1  I would be allowed to put the contract in front of Your Honor,

2  but I wouldn't be able to argue why the contract doesn't say

3  what the Plaintiff says.  I don't get it.

4          THE COURT:  Okay.

5          MR. MORRIS:  That's --

6          THE COURT:  Just I've heard enough on this.  I don't

7  think we have moved into Rule 12(e), that realm of me needing

8  to treat this as a motion for summary judgment.  I think the

9  so-called evidence, the appendix that was attached to the

10 motion as well as the appendix that was attached to Plaintiffs'

11 response, it's stuff that I can take judicial notice of that's

12 in the record of this Court and I can look at it.  You know, it

13 is what it is, the record of this Court.

14         All right.  So I have nine people waiting in

15 chambers.  I'm trying to figure out should I take a break now

16 or are you fairly close to wrapping up.  Either answer is fine,

17 Mr. Sbaiti.  I just need to figure out who I make wait here.

18         MR. SBAITI:  I have -- oh, I'm sorry.  I didn't mean

19 to interrupt you, Your Honor.  I was just going to say I have

20 five minutes left, but I know Mr. Morris probably wants to come

21 back.  So if you want to break now and we can come back at

22 whenever the Court wants us to, we can do so.

23         THE COURT:  All right.  Why don't you make your final

24 five minutes and then we'll take a break?

25         MR. SBAITI:  Okay.  Thank you, Your Honor.

004638

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 94 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 190 of 274   PageID 4861

93

1           I just wanted to address some of the arguments that

2     Mr. Morris raised in his argument.  The first thing is -- and I

3     addressed this in part -- but Mr. Morris makes a big deal about

4     paragraph 127 of the complaint and essentially suggests that

5     we're the -- or that Mr. Dondero is the perpetrator of a

6     nefarious scheme.  Whereas, what the pleading actually says,

7     and I again encourage Your Honor to re-read -- to read it

8     specifically, is that Mr. Dondero warned Mr. Seery not to trade

9     in the stock and not to make any transactions because the stock

10    was going to appreciate in value.

11          That has two implications for us, Your Honor.  Number

12    one, it means Mr. Seery was a tippee of insider information,

13    and number two, it means that Mr. Seery, if he did trade on

14    that information or if he did pass that information on to

15    someone else, that is a problem from the Advisers Act

16    standpoint, which is really the only purpose of saying that.

17          While paragraph 127 also says that that should have

18    caused Mr. Seery to revalue the NAV of HCLOF, it does not state

19    and we did not plead that the entire value of HCLOF is tied to

20    the MGM stock.  So the insinuation that that somehow gave us

21    inside information about what the true value of HCLOF was and

22    we should have known or that Mr. Dondero should have known is

23    simply untrue.

24          The other argument Mr. -- that Mr. Morris likes to

25    harp on is that CLO Holdco withdrew its argument, but he

004639

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 95 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 191 of 274   PageID 4862

94

1  characterizes Mr. Kane's withdrawal testimony -- as he says,

2  Mr. Kane admitted that CLO Holdco lacked the superior right to

3  obtain the HarbourVest.  If you read the very language that was

4  highlighted on Mr. Morris' slide, that's not what Mr. Kane

5  says.  Mr. Kane says, "We've gone back to the drawing board.

6  We've read your reply.  And my client has given me permission

7  to withdraw the argument or withdraw the objection."  That's

8  all he said.  There was not an admission that he was wrong.

9  There was not an admission that they had made a mistake.  There

10 was simply an admission that they decided to withdraw the

11 objection for whatever reason.

12          Lastly, on the specific claims --

13          THE COURT:  That's not an accurate description of the

14 record.  He said he looked at --

15          MR. SBAITI:  Your Honor, I was reading it along with

16 him.

17          THE COURT:  -- Guernsey Law.  And I don't know if his

18 words were deep dive.

19          MR. SBAITI:  Yeah.

20          THE COURT:  But he had looked at the agreements

21 extensively.  That's just not what he said.

22          MR. SBAITI:  And he said he was with -- Your Honor,

23 he said he was withdrawing.  He didn't say we were wrong.  He

24 didn't say we don't have a claim.  What he said was, "We're

25 withdrawing the objection."

004640

1          THE COURT:  After doing an extensive look at the

2     agreements in Guernsey Law, okay, so.

3          MR. SBAITI:  Sure.  But, Your Honor, he might have --

4     he could just as easily thought we have a chance, but it's not

5     a good one.  And frankly, we'll be here for 20 days and we're

6     withdrawing it for that reason because we'll live to fight

7     another day.  Your Honor, there's an innumerable number.  To

8     simply say that he admitted that they didn't have a correct

9     claim, it's just he didn't say that.  That's all.  That's the

10    only point I'm making.

11          Your Honor, I don't disagree with the debtor that the

12    Court's exculpation clause gets rid of the negligence claim

13    which was obviously filed before the effective date, so that

14    claim is gone.

15          And I think the last argument that Mr. Morris makes

16    on the RICO claim is the federal court, the Supreme Court

17    standard for pleading a RICO claim, that acts that only

18    continue for a few weeks are not -- don't set out a RICO claim.

19    Your Honor, in our response to that, we actually submitted an

20    amended complaint that shows that the type of acts we're

21    talking about, the pattern of the debtor using its investor

22    vehicles assets to liquidate is a long pattern and practice

23    than simply the HarbourVest suit.  And so, we move to amend on

24    that basis to satisfy that pleading defect, which is the main

25    one that they focused on.

1          That's all I have, Your Honor.

2          THE COURT:  All right.  Thank you.

3          We're going to take a 15 minute break and come back.

4  I'll ask Mr. Jordan and Mr. Bessette did they have anything

5  they wanted to say today.  I know they joined in the debtor's

6  motion.  And then we'll let Mr. Morris have rebuttal.

7          All right.  So we'll be back in 15 minutes.

8          THE CLERK:  All rise.

9          MR. MORRIS:  Thank you, Your Honor.

10       (Recess at 12:05 p.m./Reconvened at 12:23 p.m.)

11         THE CLERK:  All rise.

12         THE COURT:  All right.  Please be seated.

13         We're back on the record in Charitable DAF v.

14  Highland Capital.  All right.  So I promised I was going to go

15  back to counsel for Highland CLO Funding, Ltd.  So Mr. Jordan,

16  Mr. Bessette, is there anything you wanted to say for oral

17  argument?

18         MR. JORDAN:  Thank you, Your Honor.  John Jordan on

19  behalf of HCLOF.

20         Our points are two procedural points.  The first is

21  as the Court anticipated, in our motion to dismiss filed back

22  in August, we joined in the motion to dismiss of Highland.  And

23  so to the extent that the Court after deliberation is inclined

24  to grant that motion, we would ask that as a joining party,

25  HCLOF be pulled along with that.

Case 22-03052-sgj Doc 34-22 Filed 08/01/22   Entered 08/01/22 17:35:41   Page 98 of 105
Case 3:22-cv-02280-S   Document 3-22   Filed 12/06/22   Page 194 of 274   PageID 4865

97

 1              The second procedural point is that back in our

 2    motion to dismiss, we pointed out that the complaint does not

 3    actually allege anything against HCLOF.  In the story, we're

 4    essentially the football and neither Oklahoma nor UT.  And we

 5    pointed that out as an additional argument to what you've heard

 6    today.  That motion was never responded to.  The deadline by

 7    agreement was extended to October 11th.  And the lack of

 8    response was, we believe, not inadvertent but simply an

 9    acknowledgment that HCLOF is not a party that anything is being

10    claimed against.

11              It particularly makes sense since effectively and in

12    rough numbers, they're half owned by both sides.  So for every

13    dollar that HCLOF spends hanging around the case, the parties

14    are paying essentially 100 cents collectively.  So for that

15    reason, we would ask, and subject to Mr. Sbaiti's input,

16    whether the Court would ask us or direct us to upload an order

17    granting our motion as unopposed.  We just feel like we don't

18    have any role in this case.

19              THE COURT:  All right.

20              Mr. Sbaiti, what about that?

21              MR. SBAITI:  Your Honor, they were originally added

22    as a nominal party.  And as a nominal party, because of the

23    potential need to have a derivative action, I think that based

24    upon Highland's arguments and the arguments that we had, I

25    don't think the derivative action is necessary for us to

98

1   maintain on a go-forward basis.  And so we don't oppose them

2   being dismissed.

3           THE COURT:  All right.  Then I assume, Mr. Morris,

4   you don't have any problem with this, correct?

5           MR. MORRIS:  No, Your Honor.

6           THE COURT:  Okay.  So I'll look for the parties to

7   submit an agreed order of dismissal of HCLOF after the hearing.

8   All right?

9           MR. JORDAN:  Thank you, Your Honor.

10          THE COURT:  All right.  Mr. Morris, you get the last

11  word.

12          MR. MORRIS:  Thank you, Your Honor.  I hope to be

13  relatively brief.  I really just want to focus on the arguments

14  concerning whether or not the order that was entered by this

15  Court was an order that was entered on the merits.

16          As the Court is well aware, a 9019 motion filed by a

17  debtor is done so on notice.  It is to give all parties in

18  interest an opportunity to be heard, not just as to whether or

19  not the debtor meets its burden of proof under Rule 9019 but

20  whether or not the Court can find, as it must, that the

21  proposed settlement is in the best interest of the estate.

22          The purpose of -- I mean that is the purpose of the

23  giving notice so that everybody has a chance to be heard.  The

24  questions that the Court asked, the questions that every

25  bankruptcy court asks in a 9019 is can the debtor do this deal,

004644

99

1 should the debtor do this deal, is it in the best interest of

2 the estate to do this deal.

3      And, you know, the idea that a 9019 order is somehow

4 res judicata only to the parties to a settlement is just

5 something that doesn't make any sense to me because it

6 abrogates so many rules that exist that allows and encourages

7 and requires parties who have objections to be heard.

8      Mr. Sbaiti's clients filed an objection.  They

9 initiated a contested matter.  They obtained rights.  They were

10 litigants.  They are litigants in a contested matter where

11 they're required to tell the Court what objections they have to

12 the settlement, and they did that.

13      Mr. Sbaiti, you know, told me that I wasn't allowed

14 to characterize the words that are used in the documents that

15 have now been admitted by the Court.  And, yet, I heard him say

16 that maybe Mr. Kane (phonetic) really meant to tell Your Honor

17 that he was withdrawing the claim because he was going to save

18 it for another day.

19      I'd just ask the Court to look at the transcript.  I

20 don't have to interpret it at all.  And I'd ask the Court to

21 read the words.  I can put them back up on the screen, but

22 they're pretty short.  It's at Pages 7 and 8 of the transcript

23 of what Mr. Kane told you and what you said in response.  It's

24 on the page, not my interpretation, and what the import of that

25 was.

004645

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 101 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 197 of 274 PageID 4868

100

1        Mr. Sbaiti believes, I guess, if one is allowed to

2   engage in such conduct without consequence, that one is allowed

3   to allow to file objections, cause the Court and the litigants

4   to participate, to give discovery, to write briefs, to do

5   analyses, withdraw it on the basis of their own good faith

6   analysis of Guernsey law of the documents and somehow say it's

7   irrelevant.  Not what the law is, not what res judicata is

8   intended to do.

9        He should have put all of his cards on the table.  In

10  fact, I think that Mr. Kane believed he was putting all of his

11  cards on the table because that's what he did.  He filed a very

12  comprehensive objection.  He asserted a right to the

13  opportunity that the debtor was proposing to take in the 9019

14  motion.  That's what he was doing.  He was objecting on the

15  basis that he claimed his client had a superior right to this

16  asset.

17       And he didn't -- like I said earlier, Your Honor, I

18  don't think he would be permitted, I don't think these claims

19  would fly today if no objection was filed.  But the fact that

20  there was renders, I think, indisputable that there was a

21  finding on the merits, right.  And the only reason that the

22  Court didn't rule on Mr. Kane's motion, the only reason the

23  Court didn't rule on it is because Mr. Kane withdrew it.

24       Is that really the way this process is supposed to

25  work, that one can tell the Court that after a review of the

Case 21-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 102 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 198 of 274 PageID 4869

101

1  documents, I'm going to withdraw the objection and then file a

2  claim for damages three months later with a different client,

3  with a different control person, with a different lawyer?

4  That's okay under doctrine of res judicata?  I don't think so.

5        They had a full and fair opportunity.  The fact that

6  this was somehow -- you know, they're denigrating the fact that

7  this was a 9019 motion.  There's not supposed to be a mini-

8  trial.  Your Honor had discretion as to what to do.  Every

9  court in every bench trial has discretion as to what to do and

10 whether or not to overrule objections and whether or not to

11 substain [sic] objections.  That's what judges to.

12        And there's nothing offensive about the fact that it

13 happened in the context of a 9019 motion.  They don't get to

14 sit on their hands and wait to fight another day.  If they

15 believed that the debtor was exposing itself to liability, and

16 that's what they actually say in the opposition, that's what I

17 actually think they say in the complaint, accept it as true,

18 they believe that the debtor created liability for itself by

19 rendering -- by entering into this transaction.

20        Shouldn't they have raised their hand and said you

21 can't do this deal, right?  And the only response to that --

22 they have to that is they had no idea about value.  Paragraph

23 127, Your Honor, Mr. Dondero, the architect of this complaint,

24 as was proven on June 8th, knew very well about value.  And it

25 doesn't matter that it was only MGM.  Your Honor commented on

Case 22-03052-sgj Doc 34-22 Filed 08/01/22 Entered 08/01/22 17:35:41 Page 103 of 105
Case 3:22-cv-02280-S Document 3-22 Filed 12/06/22 Page 199 of 274 PageID 4870

102

1 that at the June 8th hearing in a different context. But

2 everybody knows, right, it is. He sits on the board of MGM.

3       And I'm sorry if I called him a tippee instead of a

4 tipper. But if this complaint goes forward, we'll dig into

5 that real deep. But there's no reason it ought to, Your Honor.

6 This case ought to be dismissed on res judicata grounds. It

7 should be dismissed on judicial estoppel grounds. And it

8 should be dismissed for all the reasons that I said in my

9 argument in my brief.

10       But I do just want to close with one point, and that

11 is to read from a case called <u>Goldstein</u>, which I think I

12 alluded to earlier on this issue of whether there's a fiduciary

13 duty that's owed by an advisor to an investor and a fund:

14             "At best, it is counterintuitive to characterize the

15             investors in a hedge fund as the clients of the

16             advisors. The advisor owes fiduciary duties only to

17             the fund, not to the fund's investors."

18       There's a lot of discussion about fiduciary duties,

19 Your Honor. But to the extent that they have any basis to

20 defeat the motion to dismiss on res judicata or collateral

21 estoppel grounds, we hope and we trust and we know the Court

22 will review the case law vigorously to test some of the

23 assertions to that.

24       I have nothing further, Your Honor.

25       THE COURT: All right. Well, thank you to all of

103

1  you.

2          As a reminder, I don't think you need it, but as a

3  reminder, I am essentially acting as a magistrate for Judge

4  Boyle in this action.  And whichever way I go on whichever

5  theories, I think she would expect a thorough write-up.  It

6  would, of course, be in the form of a report and recommendation

7  for her to either adopt or not if I dispose of some or all of

8  the counts in the lawsuit.

9          Even to the extent I deny dismissal, even though the

10  rule typically does not require a court to make detailed

11  findings and conclusions in connection with a denial of a

12  motion to dismiss, again, since I'm sitting as a magistrate, I

13  think Judge Boyle would expect some thorough explanations and

14  reasoning from me.

15          So that's my way of saying I'm taking this under

16  advisement.  I am going to drill down on some of the cases that

17  have been argued.  I think some important issues are raised

18  here that need some thorough reasoning.

19          So I will do the best to get this out without too

20  much delay.  I think there's probably zero chance, zero chance

21  I'm going to get it done by the end of the year.  We're just

22  too behind with some of our under-advisements.  But I will try

23  earnestly to get it out fairly soon after the first of the

24  year.  All right?

25          Thank you.  You all have a good holiday.

004649

104

1          THE CLERK:  All rise.

2       (Proceedings concluded at 12:37 p.m.)

3                    * * * * *

4

5            **C E R T I F I C A T I O N**

6          We, DIPTI PATEL, KAREN WATSON, CRYSTAL THOMAS, AND

7   PATTIE MITCHELL, court approved transcribers, certify that the

8   foregoing is a correct transcript from the official electronic

9   sound recording of the proceedings in the above-entitled

10  matter, and to the best of my ability.

11

12  /s/ Dipti Patel

13  DIPTI PATEL, CET-997

14

15  /s/ Karen Watson

16  KAREN WATSON, CET-1039

17

18  /s/ Crystal Thomas

19  CRYSTAL THOMAS, CET-

20

21  /s/ Pattie Mitchell

22  PATTIE MITCHELL

23  LIBERTY TRANSCRIPTS          DATE: November 23, 2021

24

**WWW.LIBERTYTRANSCRIPTS.COM**

004650



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 30, 2022**

_____

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT L.P., | § | CASE NO. 19-34054-SGJ-11 |
| | § | (CHAPTER 11) |
| REORGANIZED DEBTOR. | § | |
| _____ | § | |
| CHARITABLE DAF FUND, L.P., | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | ADVERSARY NO. 22-03052 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| DEFENDANT | § | |

_____

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S AMENDED
### MOTION TO DISMISS ADVERSARY PROCEEDING
### [DE ## 19, 20, 21, & 32][1]

_____

[1] "DE # ___" as used herein refers to the Docket Number at which a pleading appears in the docket maintained by the Bankruptcy Clerk in Adv. Proc. No. 22-03052. Here, DE ## 19, 20 & 21 refer to the Amended Motion to Dismiss, the Brief in Support, and the Appendix in Support filed by the Defendant (the "Original Appendix").

004651

## I.    INTRODUCTION

The above-referenced action ("Action") was originally commenced in the United States District Court for the Northern District of Texas ("District Court") and was thereafter referred to the bankruptcy court ("Bankruptcy Court").[2]

In the Action, a Plaintiff seeks damages and other relief from a former Chapter 11 debtor, *pertaining to business conduct undertaken by the debtor, during the course of its Chapter 11 bankruptcy case ("Bankruptcy Case")—conduct that allegedly harmed the Plaintiff*. The Action was filed after confirmation of the Debtor's plan, but before the effective date of the plan occurred.

The former debtor-in-possession (now a reorganized debtor) moves for dismissal of the Action, arguing primarily that the filing of the Action in District Court *was an improper means for pursuing a post-petition administrative claim against a chapter 11 debtor.* There was a well-defined process for pursuing administrative expense claims in the Bankruptcy Case—of which the Plaintiff received ample notice—and the Plaintiff ignored that process, choosing instead to embark on post-confirmation litigation in the District Court. The former debtor-in-possession also argues

---

Additionally, DE # 32 refers to the Defendant's Amended Appendix in Support of Amended Motion to Dismiss, that merely added two more exhibits to Defendant's Original Appendix—new Exhs. 21 & 22. *See also* DE # 30 (the Response of the Plaintiff) and DE # 31 (the Reply of the Defendant). Notably, at the oral argument on the Amended Motion to Dismiss, the court ruled that only Exhs. 1-13, 17, 21, and 22 would be considered by the court. All of these exhibits, *except Exh. 17*, were items on the Bankruptcy Court's docket of which this court may take judicial notice in the context of a Rule 12(b) motion to dismiss. Although a court generally limits its inquiry on a Rule 12(b) motion to dismiss to a plaintiff's complaint or any documents attached to the complaint, a court may also take judicial notice of matters that are part of the public record when considering a motion to dismiss. *See, e.g., T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins.*, No. 4:07–cv–0419, 2008 WL 7627807, at *2 (S.D. Tex. 2008); *Cade v. Henderson*, No. CIV A 01-943, 2001 WL 1012251, at *2 (E.D. La. Aug. 31, 2001). *As to Exh. 17*, it was a short Declaration of Defendant's Chief Executive Officer ("CEO"), James Seery, dealing solely with the Rule 12(b)(1) standing (i.e., lack of subject matter jurisdiction) issue, and there was no objection to Exh. 17 being considered by the court. *See* DE # 41, Transcript of oral argument on the Amended Motion to Dismiss ("8/3/22 Transcript"), at 3:22–5:17.

[2] The referral occurred by virtue of an order entered by Judge David C. Godbey on May 19, 2022, in Civil Action # 3:21-cv-01710-N. *See* DE # 32, Ex. 13, Appx. 477-79.

004652

that—in addition to Plaintiff's procedural problems—that Plaintiff lacks standing to pursue its claims.

   *A. The Parties*

   The movant is the Defendant, Highland Capital Management, L.P., now a reorganized debtor ("Highland" or "Reorganized Debtor").  Highland is the sole defendant. The allegedly actionable conduct of Highland occurred in August 2020 (mid-way through its Chapter 11 case). The Bankruptcy Court entered an order confirming Highland's Chapter 11 plan, on February 22, 2021.  Highland's plan went effective on August 11, 2021.  The Action was filed on July 22, 2021, some seven months after entry of the Bankruptcy Court's confirmation order but just before the effective date.

   The respondent, the Plaintiff, is an entity known as Charitable DAF Fund, L.P. ("Plaintiff or "Plaintiff/DAF").[3]  Plaintiff is a limited partnership hedge fund, organized in the Cayman Islands, that purports to have charitable purposes (i.e., it is designated as a "donor advised fund"), and was originally seeded with funds from Highland.[4] Plaintiff purports to now act through an

---

[3] Notably, this is Plaintiff/DAF's **second** time to sue Highland, post-confirmation, regarding Highland's alleged post-petition mismanagement or misconduct during its Chapter 11 case. *See* Adv. Proc. # 21-3067 styled *Charitable DAF Fund, L.P. et al. v. Highland Capital Management, L.P., et al*, (Bankr. N.D. Tex.) (hereinafter, the "First DAF Post-Confirmation Lawsuit against Highland"). The First DAF Post-Confirmation Lawsuit against Highland was also filed in the United States District Court (Judge Jane Boyle) and then was referred by Judge Boyle to the Bankruptcy Court.  That lawsuit challenged the legality of Highland's conduct in entering into a compromise and settlement agreement during the Bankruptcy Case (with Bankruptcy Court approval) with an entity known as HarbourVest.  The Bankruptcy Court dismissed the First DAF Post-Confirmation Lawsuit Against Highland on March 11, 2022 (based on estoppel grounds and declining to reach other grounds possibly warranting dismissal). Finally, this court notes that an entity known as Dugaboy Investment Trust—a family trust of which Highland's former CEO, James Dondero, and/or his family members are beneficiaries —earlier, on June 23, 2021, filed a District Court action based on the very same allegations that are asserted in this present Action but later voluntarily dismissed such action. DE # 32, Exh. 22, Appx. 781.  *See also* 8/3/22 Transcript at 10:13.
[4] *See* DE # 99 entered in the First DAF Post-Confirmation Lawsuit Against Highland, Adv. Proc. # 21-3067, at p.2. As referenced earlier, although a court generally limits its inquiry on a motion to dismiss to the plaintiff's complaint or any documents attached to the complaint, a court may also take judicial notice of matters that are part of the public record when considering a motion to dismiss. *See* authorities mentioned in footnote 1, *supra*.

individual named Mark Patrick[5]—a former Highland employee who now works for entities controlled by or associated with James Dondero, Highland's founder and former CEO.

B. *The Allegedly Actionable Conduct*.

Plaintiff represents in its Complaint that it was an investor in a non-debtor entity known as "Multi Strat." Multi Strat was controlled by Highland—in that Highland was Multi Strat's investment manager and ultimate majority equity owner.[6] In its Complaint, Plaintiff alleges that Highland, during its Bankruptcy Case, breached contractual and extra-contractual duties to Plaintiff, as an alleged investor in "Multi Strat"—supposedly causing Plaintiff harm. The pith of the Complaint deals with Multi Strat's previous ownership of a pool of "viaticals." Viaticals are life insurance policies, insuring the lives of various random individuals, that have been purchased, with the purchaser taking over the payment of premiums on such policies, such that when the individual dies, the life insurance proceeds are paid to the purchaser/owner of the policies (in this case, Multistrat). Distilled to its essence, Plaintiff's argument is that Highland—acting as Multi Strat's investment manager—caused the sale of Multi Strat's pool of viaticals, during the Chapter 11 case (in August 2020), pursuant to a flawed process, at a price that Plaintiff believes was too low, and subject to other improprieties. To be clear, the sale was not subject to a Section 363 sale motion or court order, since Multi Strat's assets (i.e., the viaticals) were not property of the estate.

The Complaint must be dismissed, pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure (the "FRCP"), made applicable to this Action by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "FRBP"), for at least two reasons. First, the causes

---

[5] Until at least mid-January 2021, Grant Scott, James Dondero's life-long friend and college roommate, was the sole director of Plaintiff/DAF. *See* DE # 99, entered in the First DAF Post-Confirmation Lawsuit Against Highland, Adv. Proc. # 21-3067, at p. 3. Mark Patrick was installed as the new control person at some point thereafter in 2021. DE # 32, Exh. 22, Appx. 790.

[6] It is undisputed that Highland was both the investment manager of and majority investor in Multi Strat.

of action asserted in the Complaint—that Highland breached its contractual and extra-contractual duties to Plaintiff *during* the Chapter 11 case—would, if meritorious, have been "administrative expense claims" and, under the terms of the Plan, were required to be filed *with the Bankruptcy Court* and served on Highland no later than September 25, 2021.    Despite these Plan requirements—of which Plaintiff received notice—Plaintiff asserted its claims through this Action in the District Court.    That decision must be deemed fatal, and Plaintiff's claims are now time-barred. Second, Plaintiff has now acknowledged in its response to Highland's Amended Motion to Dismiss that it is not an investor in Multi Strat. Rather, its subsidiary, an entity known as "CLO Holdco" is ("CLO Holdco" is apparently a 4.06% equity owner of Multi Strat).    Regardless of Plaintiff's reasons for filing the Complaint in its own name, rather than in the name of its subsidiary CLO Holdco (and this court can only speculate),[7] the result is the same. Plaintiff itself lacks standing to assert the claims in the Complaint, for the reasons further described herein, and this Court accordingly lacks jurisdiction to adjudicate the claims asserted in the Complaint. Moreover, allowing substitution of CLO Holdco as a plaintiff at this point in time (if a motion pursuant to Rules 15 and 17 of the FRCP were to be made) would be futile, since the real problem here is the failure to follow the Plan and Bankruptcy Code's required procedures for pursuing an administrative expense claim.    Accordingly, the Complaint must be dismissed.

---

[7] The court notes that CLO Holdco was *very active* in the Highland Bankruptcy Case, including objecting to the Plan.  *See* DE ## 1675 and 1797 in the main Highland Bankruptcy Case.  Its 100% parent, Plaintiff/DAF, on the contrary, was not nominally—although Plaintiff/DAF, as 100% parent to CLO Holdco, would have necessarily been giving directions to CLO Holdco during the Bankruptcy Case. The court cannot help but speculate that Plaintiff was trying to avert estoppel arguments that might have been made if CLO Holdco had filed this Action—given its active litigation of the Plan. In any event, as described herein, this Action fails for other reasons more fundamental than estoppel.

## II.   UNDISPUTED FACTS

A.   *Relevant Dates and Deadlines in the Highland Bankruptcy Case*

On October 16, 2019 (the "Petition Date"), Highland commenced a voluntary petition under chapter 11 of the Bankruptcy Code.

On February 22, 2021, after months of contentiousness and various sessions of mediation with professional mediators—which successfully led to resolution of certain large creditor claims—the Bankruptcy Court entered an Order (i) Confirming the Fifth Amended Plan of Reorganization (as Modified) and (ii) Granting Related Relief (the "Confirmation Order"),[8] which confirmed the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P (as Modified) (the "Plan").[9]

Notably, the Plan contained customary language incorporating section 1141(d)(1)(A) of the Bankruptcy Code and releasing the Debtor from pre-confirmation liabilities of any kind:

> Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities ***that arose before the Confirmation Date***, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.[10]

Section 1141(d(1)(A), in turn, provides that the confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). To be clear, this did not leave parties without a remedy to assert possible post-petition, pre-confirmation claims. In that regard, the Plan contained customary definitions and other provisions

---

[8] DE # 32, Exh. 3, Appx. 19-180.
[9] *Id.,* Exh. 4, Appx. 181-247.
[10] *Id.,* Exh. 4, Appx. 235 (emphasis added).

004656

regarding the filing and adjudication of "administrative expense claims."  These provisions,

summarized below, are key to the disputes in this Action.

First, as is typical for a Chapter 11 plan, there was a "Defined Term" for "Administrative

Expense Claim" as follows:

> "Administrative Expense Claim" means any Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor . . . and that have not already been paid by the Debtor during the Chapter 11 Case . . .. [11]

Second, the Plan further provided that:

> If an Administrative Expense Claim … is not paid by the Debtor in the ordinary course, the Holder of such Administrative Expense Claim must *File*, on or before the applicable Administrative Expense Claims Bar Date, *and serve on the Debtor or Reorganized Debtor*, as applicable … an application for allowance and payment of such Administrative Expense Claim. [12]

There was a defined term for "File" in the Plan as follows:

> "File" or "Filed" or "Filing" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case. [13]

Finally, there was a defined term for Administrative Expense Bar Date as follows:

> "Administrative Expense Claims Bar Date" means, with respect to any Administrative Expense Claim (other than a Professional Fee Claim) becoming due on or prior to the Effective Date, 5:00 p.m. (prevailing Central Time) on such date that is *forty-five days after the Effective Date*. [14]

---

[11] *Id.,* Appx. 189.

[12] *Id.*, Appx. 204 (emphasis added).

[13] *Id.,* Appx. 196 (note that the reference to the "authorized designee" for the Bankruptcy Court in the Chapter 11 Case would have been a reference to Kurtzman Carson Consultants LLC ("KCC"), the claims and noticing agent in the above-captioned case, which, among other things, maintained the proof of claim register in the case for *prepetition* claims). (emphasis added).

[14] *Id.,* Appx. 189 (emphasis added).

004657

On August 11, 2021, the Plan became effective.  On August 11, 2021, Highland filed the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (the "Notice of Effective Date"),[15] clearly disclosing that the "Effective Date" (as defined in the Plan) had occurred on August 11, 2021.

Consistent with the Plan, the Notice of Effective Date disclosed in bold, capitalized letters, that all "administrative expense claims" were required to be filed no later than 45 days after the Effective Date (i.e., September 25, 2021):

> **PLEASE TAKE FURTHER NOTICE** that, except with respect to Administrative Expense Claims that are Professional Fee Claims or as otherwise set forth in the Plan, requests for payment of an Administrative Expense Claim must be Filed with the Bankruptcy Court no later than forty-five (45) days after the Effective Date (the "Administrative Expense Claims Bar Date").  **HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS BY THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE THAT DO NOT FILE AND SERVE SUCH A REQUEST BY THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR.**[16]

Highland served the Notice of Effective Date via at least First-Class Mail on Plaintiff/DAF.[17]  It is undisputed that Plaintiff/DAF did not *file* an administrative expense claim with the ***Bankruptcy Court***, nor did it *serve* one on the Reorganized Debtor by the bar date.

However, on July 22, 2021, seven months after entry of the Confirmation Order (and prior to the Administrative Expense Claim Bar Date), Plaintiff commenced this Action against Highland

---

[15] *Id.*, Exh. 7, Appx. 269-73.

[16] *Id.*, Appx. 271 (emphasis in original).

[17] *Id.*, Exh. 8, Appx. 310. The court also notes that CLO Holdco's counsel received electronic Notice of the Effective Date, *id.* at Appx. 278, as well as notice by First-Class Mail, *id.*, at Appx. 282, and CLO Holdco itself received Notice of the Effective Date by First-Class Mail, *id.* at Appx. 312-313 at numerous addresses. The court takes judicial notice that the Plan itself was also served on CLO Holdco and its counsel. *See* DE #1630, in the main Highland Bankruptcy Case, at Exh. S, p.25 of 139, and at Exh. V, p. 1 of 3.

by filing an Original Complaint (the "Complaint") in the District Court.[18] It is undisputed that

Plaintiff/DAF also never served the Complaint on Highland.[19]

    The Complaint alleged that Highland, under the direction of its new, independent CEO,

James P. Seery, Jr.—appointed pursuant to a corporate governance agreement between Highland

and the Official Committee of Unsecured Creditors (and approved by the Bankruptcy Court)—

violated the contractual and extra-contractual duties that Highland owed to Plaintiff/DAF as an

alleged investor in the entity known as Multi Strat and that Plaintiff/DAF was harmed thereby.[20]

As noted in the Introduction herein, Multi Strat was a vehicle that purchased and owned a pool of

viaticals—that is, life insurance policies keyed to the lives of various individuals. Multi Strat paid

the premiums on the policies, and when an insured person died, the life insurance money would

be paid to the owner of the policy—in this case, Multi Strat.

    Highland's alleged misconduct occurred during the spring and summer of 2020, i.e., after

the Petition Date while Highland was a debtor-in-possession.[21] The contracts allegedly breached

were assumed by Highland pursuant to the Plan.[22]

    B.    *The Substance of the Complaint; More About "Multi Strat"*

    The Complaint sets forth three causes of action premised on conduct in which Highland

allegedly engaged post-petition: (a) First Cause of Action—Highland's alleged violation of the

Investment Advisers Act of 1940;[23] (b) Second Cause of Action—Highland's alleged breach of

---

[18]*Id.*, Exh. 5, Appx. 248-59.

[19] *See* 8/3/22 Transcript, at 28:2-11.

[20]DE # 32, Exh. 5, Appx. 252-58.

[21]*Id.,* Appx. 251.

[22]*Id.,* Exh. 4, Appx. 224-25; Exh. 6, Appx. 262, 264.

[23] Although no statutory cite is given, the Plaintiff apparently refers to the Investment Advisers Act of 1940, codified
at 15 U.S.C. § 80b-1 through 80b21, which is the primary source of regulation of investment advisers and is
administered by the U.S. Securities and Exchange Commission. The court notes that the United States Supreme
Court has held in *Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 19 (1979) that there is not a private
right of action for damages under the Investment Advisers Act. Specifically, an investor may seek to ***void an
investment adviser contract*** (i.e., essentially allowing a suit for rescission or for an injunction against continued

fiduciary duty;[24] and (c) Third Cause of Action—Highland's alleged breach of contract.[25] The various conduct of Highland is described as: (1) selling the viatical pool of Multi Strat at a distressed price (i.e., $35 million) when it was not in distress and there was allegedly no need for Multi Strat to sell; (2) concealing the information about the transaction from the Plaintiff; (3) failing to advise the Plaintiff of the opportunity to purchase the viatical pool—especially when it knew the Plaintiff had an interest in the pool and had the means of purchasing it for more cash than $35 million; (4) allegedly concealing the purpose behind the sale of the viatical pool and conflicts of interest; (5) allegedly causing  the viatical pool to be sold in a manner that violated the rights of the Plaintiff as an investor in Multi Strat (e.g., by failing to conduct an auction, obtaining competitive bids and taking the pool to market); and (6) utilizing the sale proceeds for its own ends—namely, to enrich itself.

The entity at the heart of the Complaint—Multi Strat—is what is known in the investment community as a pooled investment fund structured as a "mini master."  It actually consists of Highland Multi Strategy Credit Fund, L.P., a Delaware limited partnership (the "Master Fund"), and Highland Multi Strategy Credit Fund, Ltd., a Cayman Island exempted company (the "Feeder Fund").  The Master Fund and the Feeder Fund are collectively referred to as "Multi Strat." Highland Multi Strategy Credit Fund GP, L.P., itself a Delaware limited partnership, is the general

---

operation of the contract, and for restitution), but not seek actual monetary damages. That being said, it appears that the relief sought by Plaintiff for this cause of action is as follows:  "Plaintiff seeks to declare the sale of the viaticals void because they were accomplished in violation of the Advisers Act" and "Plaintiff further seeks to declare the agreement(s) between Highland and Multistrat void because they were continued in violation of the Advisers Act." Complaint, *id.* at Exh. 5, Appx. 254.

[24] Here, the Plaintiff appears to invoke both the Investment Advisers Act as well as Texas law—clearly seeking monetary damages including punitive damages.

[25] *Id.,* Exh. 5, Appx. 252-58. Here, the Plaintiff invokes the Third Amended and Restated Investment Management Agreement, effective November 1, 2013 (the "IMA") between Highland and Multi Strat.

004660

partner of Multi Strat, which is wholly owned by Highland Multi Strategy Credit GP, LLC, which is, in turn, wholly owned by Highland.[26]

The equity ownership interests of the limited partners in Multi Strat are somewhat complex but, put simply, on a consolidated basis, Highland owns 58.7% of the limited partnership interests in Multi Strat and the entity known as CLO Holdco, Ltd. ("CLO Holdco") owns 4.06% of the limited partnership interests. *Notably, CLO Holdco is a subsidiary of Plaintiff/DAF, but, as noted earlier, it is undisputed that Plaintiff/DAF itself is not an investor or equity owner of any sort of Multi Strat.*[27]

Also, notably, the only other owners of Multi Strat are:  The Dugaboy Investment Trust (1.71%);[28] Highland Capital Management Services, Inc. (35.10%), and Mark Okada (.43%).[29] The Dugaboy interest is notable for the following reason: Dugaboy filed a proof of claim during the Highland Bankruptcy Case that, while vague, appears to have been based on the very same theories espoused by the Plaintiff/DAF in this Action.  Specifically, it stated:

> The Dugaboy Investment Trust ("Claimant"), an investor in certain funds managed by the Debtor, including Highland Multi-Strategy Credit Fund, L.P. and Highland Multi-Strategy Credit Fund, Ltd., may have claims against the Debtor relating to the post-petition actions or inactions of the fund investment manager in managing these funds pursuant to Debtor's Fourth Amended and Restated Limited Partnership Agreement  and that certain Third Amended and Restated Investment Management Agreement by and between Highland Multi-Strategy Credit Fund, L.P., Highland Multi-Strategy Credit Fund, Ltd., and the Debtor, as amended from time to time. While the potential claims relate to the post-petition actions or inactions of the fund investment manager, Claimant is filing this claim to preserve

---

[26] *Id.* at Exh. 17, Appx. 592-93. The Master Fund's governing document is known as the Fourth Amended and Restated Limited Partnership Agreement of Highland Multi Strategy Credit Fund, L.P., dated November 1, 2014 (the "LPA").  The Feeder Fund's governing document is known as the Amended and Restated Memorandum and Articles of Association of Highland Multi Strategy Credit Fund, Ltd., as adopted on November 1, 2014 (the "Articles").  Highland's obligations as investment manager are set forth in a document known as the Third Amended and Restated Investment Management Agreement, by and among Highland Multi Strategy Credit Fund, Ltd., Highland Multi Strategy Credit Fund, L.P., and Highland Capital Management, L.P., dated November 1, 2013 (the "IMA").

[27] *Id.* at Exh. 17, Appx. 592-93.

[28] It is undisputed that Dugaboy is a family trust of former Highland CEO, James Dondero.

[29] *Id.* at Exh. 17, Appx. 592-93.

004661

all potential rights, claims, and causes of action it may have against the Debtor under these prepetition agreements relating to the investment manager's actions or inactions in managing these funds.[30]

The Dugaboy proof of claim was signed and submitted by an individual named Grant Scott, the then-Trustee of Dugaboy.  Grant Scott was also the then-Trustee of CLO Holdco, the 100% subsidiary of Plaintiff/DAF.  This proof of claim was later withdrawn.

Dugaboy also filed a District Court lawsuit against Highland (post-confirmation and pre-Effective Date, on June 23, 2021)[31] raising these very same issues, which it later dismissed.

## III.    LEGAL ANALYSIS

### A.  Jurisdiction and Legal Standards

Bankruptcy subject matter jurisdiction exists with regard to this Action, pursuant to 28 U.S.C. § 1334(b).  The Action presents "arising in" or "arising under" core matters, pursuant to 28 U.S.C. § 157(b)(2)(A) and (B)—as it involves claims that were asserted against a Chapter 11 Debtor (before the effective date of its plan) and the application of sections 503 and 507 of the Bankruptcy Code.  Moreover, the Action requires interpretation of the now-effective Plan of the Reorganized Debtor and application of section 1141(d)(1) of the Bankruptcy Code.  Therefore, the Bankruptcy Court may enter final orders in this matter.  Moreover, the District Court has referred this Action to the Bankruptcy Court.

The Reorganized Debtor's Amended Motion to Dismiss argues grounds for dismissal, pursuant to FRCP 12(b)(1) (i.e., lack of subject matter jurisdiction—due to lack of standing of the Plaintiff) and FRCP 12(b)6) (i.e., failure to state a claim upon which relief may be granted).

---

[30] *Id.* at Exh. 1, Appx. 6.
[31] *Id.* at Exh. 2, Appx, 8-18.

004662

With regard to the Rule 12(b)(1) argument, the applicable legal standards are set forth in detail in part III.E. of this Opinion. With regard to Rule 12(b)(6), to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Dismissal is proper under Rule 12(b)(6) when, taking the facts alleged in the complaint as true, it appears that the plaintiff "cannot prove any set of facts that would entitle it to the relief it seeks." *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.,* 61 F.3d 288, 289 (5th Cir. 1995). As set forth below, here, more than anything else, Plaintiff/DAF's problem is that its claims are barred for failure to proceed according to the Plan requirements and because of section 1141(d)(1)(A) of the Bankruptcy Code. As earlier noted, the court may take judicial notice of matters of public record when considering a motion to dismiss for failure to state a claim. *See, e.g., T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins.*, No. 4:07–cv–0419, 2008 WL 7627807, at *2 (S.D. Tex. 2008); *Cade v. Henderson*, No. CIV A 01-943, 2001 WL 1012251, at *2 (E.D. La. Aug. 31, 2001).

### B.  Plaintiff's Claims Asserted in the Action, if Valid, Would Constitute "Administrative Expense Claims"

Starting with the basics, an "Administrative Expense Claim" is not merely a concept defined in the Debtor's Plan.  It is a significant concept in the Bankruptcy Code.  Section 507(a)(2) of the Bankruptcy Code establishes that administrative expenses incurred in bankruptcy are to be given priority in distribution such that they are generally paid in full before other unsecured non-priority claims.  *See* 11 U.S.C. § 507(a)(2). These administrative expenses include "the actual, necessary costs and expenses of preserving the estate ...." 11 U.S.C. § 503(b)(1)(A). To qualify as an "'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have

arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefited the estate." *See Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432, 441 (5th Cir. 2019) (citing *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 387 (5th Cir. 2001)). Notwithstanding the "benefited the estate" concept that has been articulated in case law, an exception was created by the United States Supreme Court many years ago (in the context of a "Chapter XI arrangement" case under the former Bankruptcy Act of 1898), in a situation in which damages were inflicted on innocent third parties through a receiver's (equivalent of a Chapter 11 trustee or debtor-in-possession today) operation of the debtor's estate. *See Reading Co. v. Brown*, 391 U.S. 471, 478-79 (1968).

In *Reading*, a building that was being operated by the bankruptcy receiver in a reorganization case was destroyed by a fire, and the fire spread to adjoining premises, destroying real and personal property of claimant, Reading. Reading argued that the fire was caused by the negligence of the receiver and one of his workmen, in the course of operating the debtor's estate during a bankruptcy reorganization. *See id.* at 473–74. The Supreme Court—in grappling with what type of a claim Reading might have—held that it would be unfair to force the fire victim to share equally with the existing creditors and, thus, granted administrative priority to that claimant. *See id.* at 478 (framing the question as "whether the fire claimants should be subordinated to, should share equally with, or should collect ahead of those creditors for whose benefit the continued operation of the business ... was allowed").

The "*Reading* exception," as it has become known, has withstood the test of time and has been routinely applied after the enactment of the modern Bankruptcy Code. *See, e.g., Jack/Wade Drilling*, 258 F.3d at 388 ("The Reading exception has survived Congressional amendments to the

004664

bankruptcy code and been recognized and applied by nearly every Court of Appeals in the nation."); *Texas v. Lowe (In re H.L.S. Energy Co.)*, 151 F.3d 434, 437 (5th Cir. 1998) (same); *In re Al Copeland Enters., Inc.,* 991 F.2d 233, 238-39 (5th Cir. 1993) (same). The *Reading* case has been interpreted broadly to include not just torts, but other negligent or intentional acts committed by a debtor-in-possession as giving rise to administrative expense claims. *See Al Copeland*, 991 F.2d at 239 ("[T]hose injured during … administration of an estate are entitled to an administrative priority [claim] regardless of whether their injury was caused by a tort or other wrongdoing."); *In re Charlesbank Laundry, Inc.*, 755 F.2d 200, 202 (1st Cir. 1985) ("If fairness dictates that a tort claim based on negligence should be paid ahead of pre-reorganization claims, then, a fortiori, an intentional action which violates the law and damages others should be so treated"), *accord* 4 COLLIERS ON BANKRUPTCY ¶ 503.06[3][c][i] ("Courts have found *Reading* directly applicable to victims of postpetition torts committed by a debtor in possession or trustee. Courts have also applied the doctrine to a variety of other postpetition claims") (citing cases).

Accordingly, based on the above authority, the claims of Plaintiff, if meritorious, would fall into the category of administrative expense claims.  Plaintiff specifically alleges that it was injured by Highland causing the sale of Multi Strat's assets during the middle of 2020—after the Petition Date, before the Effective Date, and while Highland was a debtor-in-possession—in violation of Highland's alleged contractual and extra-contractual duties owed to Plaintiff. Plaintiff's claims, therefore, would constitute "administrative expense claims" against Highland. *Whistler Energy*, 931 F.3d at 443 (discussing circumstances when a party might be entitled to an administrative expense claim, regardless of whether there is an assumed or rejected prepetition contract, and even when "benefit to the estate" may be less than "readily calculable"; noting

004665

sometimes such a claim might simply result as a cost incidental to a debtor's business operations) (citing *Reading*, 391 U.S. 471).

C. *Requests for Allowance of "Administrative Expense Claims" Were Required to be Filed in the Bankruptcy Court by September 25, 2021*

As set forth earlier herein, Article II of the Plan dictated the procedures for the filing and allowance of "administrative expense claims."  Pursuant to Article II of the Plan, parties seeking "administrative expense claims" were required to (i) file those claims with the bankruptcy court specifically (not the District Court); and (ii) serve those claims on Highland no later than the Administrative Expense Claim Bar Date (i.e., September 25, 2021).[32]  The Plan and Notice of Effective Date make clear that any administrative expense claim not filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date would be time-barred. Section 1141(a) provides that the provisions of a confirmed plan bind the debtor and any creditor. *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 170–71 (5th Cir. 1992).[33]

This court noted in the case of *In re Taco Bueno Rests., Inc.*, 606 B.R. 289, 302-303 (Bankr. N.D. Tex. 2019), in addressing the importance of the concept of "timeliness" with regard to administrative expense claims, that debtors and reorganized debtors have a keen interest in obtaining finality sooner rather than later with regard to administrative expense claims. The reason debtors have an interest in such finality derives from the special treatment afforded to administrative expense claims. An administrative expense claimant is generally entitled to cash in full on the effective date of a plan (or as soon as the claim is allowed thereafter by the bankruptcy

---

[32] *See* Exh. 4, Appx. 189, 196, 203-04.

[33] *See also Hall Fin. Group, Inc., v. DP Partners, L.P,* 106 F.3d 667, 672, n.19 (5th Cir. 1997) (bankruptcy judges have, for some time, been accorded discretion in setting administrative-claim bar-dates) (citing 3 Collier on Bankruptcy ¶ 503.1, at 503–4 n. 2c (Lawrence P. King ed., 15th ed. 1994) (noting that the Bankruptcy Reform Act of 1994 sets no time limit for filing administrative claims, and further noting that because nothing in the Bankruptcy Rules or Code sets deadlines for filing administrative claims, bankruptcy judges "may set such deadlines on a case by case basis").

004666

court).  It is a very important event in the bankruptcy case for a reorganized debtor to have a deadline for administrative expense claims because administrative claims can pose significant feasibility issues for plans.  The reorganized debtor needs to be able to ascertain an amount such entities must have in cash due to pay administrative expenses.

There is ample case law that stresses the importance of requiring potential administrative expense claimants to follow the mandates of Bankruptcy Code section 503(b) and file a request for allowance with the bankruptcy court.  *See Taco Bueno*, 606 B.R. 289 (concluding that utilizing a "Proof of Claim" form—i.e., Official Form 410—to make a request for payment of an administrative expense, is insufficient to satisfy the requirement under Bankruptcy Code section 503(a) to timely file and serve a request for payment of an administrative claim by an administrative claims bar date; requests for administrative claims have different procedures— requiring the filing of an application requesting allowance and payment of an administrative-expense claim on the bankruptcy court's docket).[34]  *See also In re Maxus Energy Corp.*, 639 B.R. 51, 64 (Bankr. D. Del. 2022) (claim barred because it was not filed by administrative claim bar date and "a claims bar date 'operates as a federally created statute of limitations, after which the claimant loses all of [its] rights to bring an action against the debtor'") (citations omitted); *Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*, 190 B.R. 185, 188 (Bankr. S.D.N.Y.

---

[34] This court noted in *Taco Bueno* that Congress made the rules and burdens for an administrative expense claim very different from those for a proof of claim. Section 503 governs an administrative expense claim. Under § 503, the burden at the beginning is on the claimant to show reasonableness, necessity, and benefit to the estate. The Bankruptcy Code and the Bankruptcy Rules put a claimant in a completely different posture for an administrative expense claim compared to a proof of claim. Requiring that a § 503 administrative expense claim be asserted in an application, among other things, ensures that the bankruptcy court will have an opportunity to pass judgment on the administrative expense and prevent any unreasonable, unnecessary, and non-beneficial claims from being charged to the estate. Creditors ultimately bear the burden of persuasion and production to establish that their claims are, in fact, an administrative expense. Allowing creditors to satisfy their burden of production by burying an administrative expense in a proof of claim circumvents their statutory burdens and forces the trustee or some other interested party to affirmatively raise this administrative expense as objectionable—directly contradicting § 503(b)'s express requirement that a claimant, in order to have an administrative expense claim allowed, must make a request and give notice to parties in the case and obtain a bankruptcy court hearing. *Taco Bueno*, 606 B.R. at 302.

004667

1995) (stressing the importance of filing claims timely in the bankruptcy court before the bar date, as opposed to in district court litigation).[35]

Here, Plaintiff's alleged causes of action are administrative expense claims and were required to be filed with this Bankruptcy Court by the Administrative Expense Claim Bar Date. Plaintiff knowingly chose not to file an administrative claim. The filing of the Complaint constituted an ***improper means to pursue a post-petition claim against a chapter 11 debtor.*** To the extent it may have been a defensible strategy at the time the Action was filed (*see discussion* in Part III.E below for more on this thought), it certainly became wholly indefensible after the Plan went effective. The Plaintiff/DAF received notice and had every reason to know, on or after August 11, 2021, that it had one avenue to pursue the claims asserted in the Action—through the mechanism of filing an Administrative Expense Claim in the Bankruptcy Court on or before September 25, 2021. However, it chose not to go that route. As a result, the Complaint must be dismissed.

Plaintiff/DAF makes a confusing argument that "administrative priority claims" are not subject to the Plan because the Plan uses the term "Administrative Expense Claim."[36] Plaintiff attempts to create confusion where none exists. As noted earlier, the Plan defines "Administrative Expense Claim," in relevant part, as a:

> Claim for costs and expenses of administration of the Chapter 11 Case … pursuant to sections 503(b), 507(a)(2), 507(b) … including, without limitation, (a) the actual and necessary costs and expense incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor ….[37]

---

[35] *See also NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991) (case involved a post-petition contract between a chapter 11 debtor and an oil field service vendor that went awry and vendor filed a federal district court lawsuit during the case for breach of contract and torts; while the lawsuit went forward in the Federal District Court, the Fifth Circuit opinion contains discussion stressing the need for the vendor to have filed a request for administrative expense claim in the bankruptcy court and giving that as a reason for not allowing the vendor to amend its pleading to assert damages not provided for in the debtor's confirmed plan).

[36]*See* DE # 30 (Plaintiff's Response), at 3-4.

[37] DE # 21, Exh. 4, Appx. 189.

There is no "distinction" in the Plan between an "administrative priority claim" and an "Administrative Expense Claim." Both would encompass claims arising from the "actual and necessary costs and expense" of the debtor-in-possession's post-petition management. Highland's naming convention did not somehow change the substantive application of the Bankruptcy Code or the nature of an administrative expense/priority claim.

    D.   *The Unsupportability of Plaintiff/DAF's Eleventh-Hour Request (Through Their Response to the Motion to Dismiss Their Action) for the Bankruptcy Court to Excuse Their "Technical Non-Compliance" and Deem Complaint to Have Been a Timely Request for Allowance of an Administrative Expense Claim*

Plaintiff/DAF argues that the Bankruptcy Court should excuse its "technical" non-compliance and treat its Complaint as a "request for an order permitting a late claim or treating the filing of this action as a timely Administrative Expense Claim."[38]  While Plaintiff minimizes the significance of its failure to comply with the Plan, Confirmation Order, and standard bankruptcy protocols—by referring to its failure to file a request for allowance of an administrative expense claim in the Bankruptcy Court as "technical" non-compliance—its proposal that the Complaint should be deemed such a "request" is procedurally and legally improper.  The relief must be sought by a separate motion and include evidence of "cause" under section 503(a) of the Bankruptcy Code and possibly also "excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 394 (1993).[39] Here, there is no evidence supporting "cause" (or excusable neglect, for that matter), just the following undisputed facts:

---

[38] DE # 30 (Plaintiff's Response), at p.5.

[39] The *Pioneer* case dealt with late-filed proofs of claim, for prepetition claims, not requests for allowance of post-petition administrative expense claims.  Thus, it is not entirely clear that it governs here.  Perhaps, only section 503(a) "cause" is the standard.

004669

- The Plan was confirmed on February 22, 2021 and included clear disclosures about the Administrative Expense Claim Bar Date.

- At a hearing on June 25, 2021, shortly before the Complaint was filed—in a hearing on a different matter, in which a different post-petition lawsuit filed in the District Court was being discussed (and the Bankruptcy Court expressed concern about it)—Plaintiff's counsel indicated to the Bankruptcy Court that he was receiving advice from bankruptcy counsel on whether post-petition administrative expense claims, like those asserted in the Complaint, could be filed in courts other than the Bankruptcy Court.[40]

- On July 22, 2021, Plaintiff's counsel filed (but did not serve) the Complaint—i.e., seven months after the Confirmation Order and two months before the Administrative Expense Claim Bar Date.

- On or about August 11, 2021, Plaintiff/DAF was served with notice of the Administrative Expense Claim Bar Date.

- Plaintiff/DAF did not file an administrative expense claim with this Court by the Administrative Expense Claim Bar Date (i.e., September 25, 2021).

- On November 23, 2021, the Bankruptcy Court told Plaintiff its arguments regarding the Plan injunction—similar to some of the same arguments it is making now—were mistaken. At the same hearing, Highland told Plaintiff/DAF, on the record, it should have filed an administrative expense claim in this court.[41]

---

[40] DE # 32, Exh. 21, Appx. 751-53.
[41] DE # 32, Exh. 22, Appx. 777 (lines 17) – Appx. 778 (line 18); Appx. 781 (line 10) – 782 (line 17); Appx. 783 (line 5-14); Appx. 786 (line 17-23).

004670

• Between the November 2021 hearing and the filing of the Motion (more than eight months), Plaintiff/DAF never moved this Court to allow its claim as late filed or took any other action to protect its rights.

• Only after the Complaint was referred to this Court and Highland filed its Amended Motion to Dismiss did Plaintiff ask this Court to consider the Complaint as "a late claim" in the Response.

• Plaintiff has not submitted any evidence of "cause" as required by Section 503(a), nor "excusable neglect" under *Pioneer* (to the extent it is applicable).

To be clear, Plaintiff argues that it should be held to have asserted a timely request for administrative expense claim because (a) its Complaint was filed (but not served) before the Administrative Expense Claim Bar Date; (b) Highland (while not formally served) received "prompt" notice and was not prejudiced; (c) enforcing the Administrative Expense Claims Bar Date would raise concerns regarding Constitutional "due process and taking;" and (d) the "best interests of creditors test" in Section 1129 favors Plaintiff.[42]  Plaintiff also blames its failure to comply on the Plan itself, arguing that a Plan injunction therein prevented Plaintiff from fulfilling its obligations. Each argument misses the point.

First, it is irrelevant that the Complaint was filed before the Administrative Expense Claim Bar Date. The Bankruptcy Code,[43] the Plan,[44] and applicable case law require the filing of administrative expense claims—like those asserted in the Complaint—on the bankruptcy court's docket, not on another court's, for a claim to be deemed timely filed. *See, e.g.*, *Taco Bueno*, 606 B.R. at 302-03; *Houbigant*, 190 B.R. at 188.14.

---

[42] DE # 30 (Plaintiff's Response), at p. 5.
[43] 11 U.S.C. § 503(a).
[44] DE # 21, Exh. 4, Appx. 125, 203-04.

004671

Moreover, any suggestion that the Complaint is an "informal proof of claim" is rejected. Even assuming this concept might be applicable in the context of requests for allowance of administrative expense claims, an "informal proof of claim" must be filed in the bankruptcy court and the equities must favor the claimant. *In re Opus Mgmt. Grp. Jackson LLC,* 2017 Bankr. LEXIS 555, at * 29-30 (Bankr. S.D. Miss. Feb. 27, 2017) ("The Court is unaware of any precedent that would allow it to treat the pre-bar date filing in one case as an informal proof of claim in another case."); *In re Murchison*, 85 B.R. 27, 41 (Bankr. N.D. Tex. 1987) ("Debtor's knowledge of the claim has never been held sufficient to constitute an informal proof of claim … These communications cannot constitute a proof of claim because they were not filed with the Court.").

Additionally, Plaintiff's argument regarding prejudice is disingenuous. Plaintiff filed the Complaint but decided not to serve it. Plaintiff cannot rely on Highland's purported diligence in learning of the Complaint to justify its misconduct. The bar date exists to avoid prejudice to Highland, not Plaintiff.  Moreover, other creditors in a bankruptcy case are entitled to notice that a party is asserting an administrative expense claim.  Allowance of such a claim could greatly impact their ultimate recovery.  Creditors (not just the debtor) may want to object and be heard. That's why section 503(b) of the Bankruptcy Code contemplates "notice and a hearing" in the bankruptcy court when a request is filed.

Additionally, no due process or taking concerns arise if Plaintiff is required to abide by court- and statutorily created deadlines, and Plaintiff cites to nothing to support this position.

Additionally, the "best interests of creditors" test applies to plan confirmation and is irrelevant in this context. Regardless, the test would weigh in Highland's favor. Creditors want Highland's assets monetized and proceeds distributed sooner rather than later. Plaintiff's efforts to

004672

"backdoor" an administrative expense claim by asserting it in another forum delays that process, increases expenses, and directly contradicts the policy behind bar dates.

Finally, Plaintiff's argument that it was confused by the Plan discharge or injunction language is not credible. The provisions are typical and unambiguous; they prohibited Plaintiff from pursuing claims in the District Court. Numerous other claimants—including some of Mr. Dondero's other affiliates—complied with the bar date. Plaintiff is not entitled to special treatment because it, and it alone, found the Plan confusing.

E. *The Plaintiff's Unspoken, But Not-So-Subtle Strategy Play*

Ultimately, the Plaintiff's filing of the Complaint in the District Court was a strategic move that did not work and now it binds the Plaintiff.

The Plaintiff's strategy—rather obvious to this Court—was clever, to be sure, but it all hinged on the prospect of the Debtor's Plan being reversed on appeal, which did not ultimately happen.[45] Specifically, thinking through the Plaintiff's legal strategy, the court believes the Plaintiff's legal team likely thought through this as follows. First, there was an automatic stay conundrum. Specifically, filing the Action might have at first seemed risky, because the automatic stay was still in place at the time the Plaintiff filed its Complaint (because it was filed during the post-confirmation but pre-Effective Date time frame).[46] But, the Plaintiff was pursuing ***post*-**petition claims, so the filing of the Action arguably was not precluded by the automatic stay. 11 U.S.C. § 362(a)(1).[47] However, even with that automatic stay conundrum potentially resolved, the Plan and Confirmation Order became an obvious obstacle. As discussed here *ad nauseum*, the

---

[45] The Fifth Circuit affirmed in substantial part the Plan on September 2, 2022, in Action No. 21-10449.
[46] *See also* DE # 21, Exh. 4, Appx. 167 (Art. IX.G.).
[47] The inapplicability of the automatic stay was not a "given." The relief sought in the Plaintiff/DAF's Complaint asked for, among other things, disgorgement of all of Highland's allegedly ill-gotten gains, and also voiding of certain agreements of Highland. This sounds potentially like exercising or an attempt to exercise control over property of the estate. 11 U.S.C. § 362(a)(3).

004673

Plan required a post-petition claim like this to be filed as a Request for Allowance of Administrative Expense Claim with the Bankruptcy Court and, moreover, the Plan discharge and injunction language precluded an action such as the Plaintiff's from being filed in another court. Plaintiff was no doubt thinking that it had found the perfect "workaround"—file the Action in the District Court ***before*** the Plan went effective, seek a stay of the Action for a bit,[48] and hope that, during the stay of the Action, the Plan got reversed on appeal (which would moot the Administrative Claim Bar Date and Plan Injunction).  In the event of a reversal, the Plaintiff would seek to un-stay the Action and go forward in the District Court hopefully—unless the District Court decided to refer the Action at that point to the Bankruptcy Court (on the basis that it was at least related to the Bankruptcy Case; maybe Plaintiff could successfully fight this).

Here, as the Plaintiff's legal strategy started to unravel, on July 5, 2022, in its Response to the Motion to Dismiss, the Plaintiff asked the Bankruptcy Court for the first time to treat its Complaint as a timely request for allowance of an administrative expense claim (a year after it was filed, and 10 months after the deadline for filing it in the Bankruptcy Court).  This is not "cause" as contemplated by Section 503(a).  This is nothing more than a belated and unjustified "Plan B" after the Plaintiff's clever workaround did not pan out as hoped. *Houbigant*, 190 B.R. at 187 ("[Claimant] concedes that it failed to [file its claim] to avoid the claims allowance process … [Claimant] cannot have it both ways. Equity mandates that it be bound by its tactical decisions.").

*F.  The Standing Problem.*

Highland has also argued that the Action must be dismissed because Plaintiff lacks both prudential and constitutional standing to assert the claims that it has asserted in the Action.

---

[48] DE # 32, Exh. 9, Appx. 451.

As has been extensively set forth herein, the Complaint alleges that Plaintiff/DAF was injured because Highland mismanaged the sale of certain of Multi Strat's assets and, in doing so, breached its contractual and extra-contractual duties to Plaintiff/DAF as an investor in Multi Strat. But Plaintiff/DAF is not a limited partner or investor in Multi Strat (Plaintiff/DAF agrees it is not). Rather, Plaintiff/DAF's 100% subsidiary CLO Holdco is.   Therefore, Highland argues Plaintiff/DAF lacks standing to assert the claims in the Complaint. While Plaintiff/DAF arguably could have constitutional standing as the parent of CLO Holdco (a Multi Strat investor), Plaintiff/DAF would have had to plead its relationship to CLO Holdco, that CLO Holdco was injured, and that the injury to CLO Holdco caused injury to Plaintiff/DAF.  *See BCC Merch. Solutions, Inc. v. Jet Pay, LLC*, 129 F.Supp.3d 440, 449-50 (N.D. Tex. 2015) (finding plaintiff parent company had constitutional standing when it pled injury it suffered arising from breach of contract to which its subsidiary was a counterparty). Plaintiff/DAF, however, has not done this.

Highland also argues that Plaintiff/DAF lacks prudential standing because it is not the "real party in interest" as required by Rule 17(a) of the FRCP, made applicable by Rule 7017 of the FRBP.  Prudential standing is a "'fundamental restriction on [federal judicial] authority" and requires 'a litigant [to] assert his or her own legal rights… and []not rest a claim to relief on the legal rights or interests of third parties.'"  *Id.* at 450 (citations omitted).  Prudential standing is a separate requirement from constitutional standing, and, if a plaintiff lacks prudential standing, the action must be dismissed regardless of whether the plaintiff has constitutional standing.  *Id.*  This prudential standing requirement is embodied in Rule 17(a) of the FRCP, which mandates that a claim be brought by the "real party in interest," i.e., the party "with the right to sue under … the controlling state or federal substantive laws."  *Id.* at 450, 453. Here, Plaintiff/DAF is not an investor

004675

in Multi Strat and has no right to assert the actual investors' contractual or other rights under applicable substantive law.[49]

That Plaintiff/DAF is the parent of CLO Holdco, a Multi Strat investor, changes nothing. A parent cannot assert the contractual rights of its subsidiaries or pierce its own corporate veil to do so.  *BCC Merch.*, 129 F. Supp. 3d at 460 ("[W]hile BCC may have Article III standing, the Court finds that it lacks prudential standing and is not the real party in interest entitled to enforce the ISO Agreement, which BCC's subsidiary, BankCard, undisputedly entered into alone."). For the foregoing reasons, Plaintiff/DAF is not a "real party in interest" as required by Rule 17(a) and lacks prudential standing to assert the claims in the Complaint.

Plaintiff/DAF argues that it should be given leave to amend its Complaint to clarify that it is suing derivatively on behalf of CLO Holdco and/or to substitute in CLO Holdco as party in interest.  The Plaintiff/DAF submits that Rule 7017 of the FRBP requires an opportunity to join a

---

[49] *See Carroll v. JPMorgan Chase Bank*, 575 Fed. Appx. 260, 260-61 (5th Cir. 2014) (finding plaintiff lacked standing and was not the "real party in interest" when it had no right to sue under contract); *Farrell Constr. Co. v. Jefferson Parish*, 896 F.2d 136, 140 (5th Cir. 1990) (finding plaintiff was not a "real party in interest" when it was neither a party to the contract nor a third party beneficiary); *BCC Merch.*, 129 F.Supp.3d at 460 (holding plaintiff was not a "real party in interest" and lacked prudential standing when it sought to assert the contract rights of its wholly-owned subsidiary); *see also Hillside Metro Assocs., LLC v. JPMorgan Chase Bank*, 747 F.3d 44, 48-49 (2d Cir. 2014), *cert denied* 2015 U.S. LEXIS 1370 (U.S. Feb. 23, 2015) (applying federal common law and holding: ("We conclude that Hillside does not have prudential standing in this case because it cannot enforce the terms of the [contract], as to which it is neither a party nor a third-party beneficiary, but the enforcement of which is a necessary component of its claim"); *Williams v. Bd. of Educ. of Chicago*, 506 Fed. Appx. 517, 520 (7th Cir. 2013) ("Neither situation describes the federal lawsuit filed by Williams, whose indefinite, inchoate claims arise entirely from a dispute between two business entities whose contracts granted him no direct or incidental benefit and thus leave him without standing to bring these claims); *Pelletier v. Rodriguez*, 2021 U.S. Dist. LEXIS 131898, at *13 (D. Nev. July 15, 2021) ("[B]ecause there is no given reason that Clover Valley Ranch LLC could not pursue a breach of contract claim in its own name, the Court declines to confer prudential standing on Plaintiff to bring this claim on behalf of a third-party."); *Cumming v. Felder*, 2018 U.S. Dist. LEXIS 82081, at *5 (D. Conn. May 16, 2018) ("[A]n individual who is neither a party to an agreement nor an intended beneficiary of the agreement lacks prudential standing to sue under the agreement") (citing cases); *Alexander v. DLJ Mortg. Cap., Inc.*, 2016 U.S. Dist. LEXIS 198193, at * 8-14 (S.D. Miss. Jul. 5, 2016) (finding non-party to a contract lacked standing under FRCP 17(a) to bring breach of contract claims); *Henderson v. Benchmark Strategy, LLC*, 2011 U.S. Dist. LEXIS 90988, at *10-11 (D. Colo. Aug. 15, 2011) ("Mr. Henderson is not a party to the Consulting Agreement and is not the real party in interest to assert the rights (if any) of Henderson LLP."); *Browne v. Robb*, 583 A.2d 949, 954-55 (Del. 1990) (applying Delaware law and finding plaintiff lacked standing to assert breach of a contract to which it was neither a party nor an intended third-party beneficiary) .

real party in interest in such circumstances as these. Specifically, Rule 7017 incorporates FRCP

17(a)(3), which provides:

> The court may not dismiss an action for failure to prosecute in the name of the real
> party in interest until, after an objection, a reasonable time has been allowed for the
> real party in interest to ratify, join, or be substituted into the action. After
> ratification, joinder, or substitution, the action proceeds as if it had been originally
> commenced by the real party in interest.

However, because the administrative expense claims asserted in the Compliant are time-

barred, granting Plaintiff/DAF leave to amend its Complaint and substitute in CLO Holdco would

be futile.  *See, e.g., Stripling v. Jordan Prod. Co.*, 234 F.3d 863, (5th Cir. 2000) (finding

amendment "futile" when the "amendment complaint would fail to state a claim upon which relief

could be granted.").  CLO Holdco would have the same problems that Plaintiff/DAF has—it didn't

comply with the Plan and Confirmation Order and timely file an administrative expense claim in

the Bankruptcy Court and serve it on the Debtor by September 25, 2021.

### IV.    CONCLUSION

As this court explained in its *Taco Bueno*[50] decision, the requirement of filing a request for

allowance of an administrative expense claim in the bankruptcy court, and the act of

seeking/setting a bar date in connection therewith, are, collectively, a big deal.  The concept of

setting an administrative expense claim bar date is not just about protecting a debtor.  It is about

protecting general unsecured creditors, too—because a large administrative expense claim can

greatly impact the general unsecured creditors' share of the bankruptcy pie.  That's why a request

for allowance of an administrative expense claim must be filed on the bankruptcy court's docket

and determined by the bankruptcy court after notice and a hearing. And that's why any party-in-

interest can object to the claim.  But, to be clear, the Bankruptcy Code and Rules do not specifically

---

[50] *Taco Bueno*, 606 B.R. 289.

004677

set the deadline.  *See* 11 U.S.C. § 503.  Rather, a debtor typically asks for one to be set or provides for one in its plan.  That's what Highland did here.  The deadline can be extended for cause under section 503(a). The Plaintiff/DAF never filed any motion seeking an extension here arguing "cause."  It only asks for an extension now—almost a year after the noticed deadline—and now that it's clear that its District Court Action was improper.  The Plaintiff/DAF's "work-around" legal strategy here cannot be condoned.

Accordingly, it is

**ORDERED** that the Motion to Dismiss is **GRANTED** as to all causes of action asserted and the Complaint is dismissed in its entirety with prejudice.

**###END OF MEMORANDUM OPINION AND ORDER###**

004678

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| In Re: | ) | **Case No. 19-34054-sgj-11** |
|  | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL | ) | Dallas, Texas |
| MANAGEMENT, L.P., | ) | August 3, 2022 |
|  | ) | 2:30 p.m. Docket |
|     Reorganized Debtor. | ) |  |
|  | ) |  |
| ———————————————— | ) |  |
| CHARITABLE DAF FUND, L.P., | ) | **Adversary Proceeding 22-3052-sgj** |
|  | ) |  |
|     Plaintiff, | ) |  |
|  | ) | MOTION TO DISMISS ADVERSARY |
| v. | ) | PROCEEDING FILED BY DEFENDANT |
|  | ) | HIGHLAND CAPITAL MANAGEMENT, |
| HIGHLAND CAPITAL | ) | LP [19] |
| MANAGEMENT, L.P., | ) |  |
|  | ) |  |
|     Defendant. | ) |  |
| ———————————————— | ) |  |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

For the Plaintiff:             Jonathan E. Bridges
                               SBAITI & COMPANY, PLLC
                               JP Morgan Chase Tower
                               2200 Ross Avenue, Suite 4900 W
                               Dallas, TX  75201
                               (214) 432-2899

For the Defendant:             Gregory V. Demo
                               PACHULSKI STANG ZIEHL & JONES, LLP
                               780 Third Avenue, 34th Floor
                               New York, NY  10017-2024
                               (212) 561-7700

For the Defendant:             Zachery Z. Annable
                               HAYWARD, PLLC
                               10501 N. Central Expressway,
                                Suite 106
                               Dallas, TX  75231
                               (972) 755-7108

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 3-22   Filed 02/02/45   Page 231 of 274   PageID 4902

2

```
 1    Recorded by:               Michael F. Edmond, Sr.
                                 UNITED STATES BANKRUPTCY COURT
 2                               1100 Commerce Street, 12th Floor
                                 Dallas, TX  75242
 3                               (214) 753-2062

 4    Transcribed by:            Kathy Rehling
                                 311 Paradise Cove
 5                               Shady Shores, TX  76208
                                 (972) 786-3063
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
              Proceedings recorded by electronic sound recording;
25               transcript produced by transcription service.
```

004680

Case 22-03052-sgj    Doc 41    Filed 08/04/22    Entered 08/04/22 11:39:59    Desc Main
Case 3:22-cv-02280-S    Document 22ent Filed 08/02/245 Page 232 of 274    PageID 4903

3

1          DALLAS, TEXAS - AUGUST 3, 2022 - 2:37 P.M.

2               THE COURT:  22-3052.  This is a motion to dismiss

3     adversary proceeding.  For the Movant Highland, who do we have

4     appearing?

5               MR. DEMO:  Your Honor, Greg Demo; Pachulski Stang

6     Ziehl & Jones; on behalf of Highland.  Zachery Annable from

7     the Hayward firm is here as well.  And we have Jim Seery.

8               THE COURT:  Okay.  Thank you.

9        All right.  For Plaintiff/Respondent Charitable DAF, who

10    do we have appearing?

11              MR. BRIDGES:  Jonathan Bridges here, Your Honor.

12              THE COURT:  All right.  Well, I've got the pleadings

13    here in front of me, and I saw an exhibit list of Movant/

14    Debtor, but I think the exhibits were just all of the

15    attachments to the amended motion to dismiss.  Is that

16    correct?

17              MR. DEMO:  That's --

18              THE COURT:  Or the appendix, I should say?

19              MR. DEMO:  That is absolutely correct.

20              THE COURT:  Okay.  All right.  Well, I'll hear

21    Highland's argument.

22              MR. DEMO:  And for the exhibits, we did have a

23    discussion with opposing counsel, counsel for the DAF.

24    Exhibit 17 is Mr. Seery's declaration.  We filed the motion to

25    dismiss under both 12(b)(1) and 12(b)(6), and so Mr. Seery's

Case 22-03052-sgj    Doc 41    Filed 08/04/22    Entered 08/04/22 11:39:59    Desc Main
Case 3:22-cv-02280-S    Document 2-2    Filed 04/04/2045    Page 233 of 274    PageID 4904

4

1    declaration we would like to formally enter into evidence

2    because that goes to what we believe is Plaintiff's lack of

3    standing and thus this Court's lack of jurisdiction.  And we

4    do believe that extrinsic evidence is appropriate for that.

5        With respect to Exhibits 1 through 13 and then Exhibits 21

6    and 22, those are all documents that were filed on this

7    Court's docket and they consist of really three buckets:

8    either complaints or orders, the plan, and then transcripts.

9    All of those are on this Court's docket.  And we would ask

10   your Court to take judicial notice of those.  And I know that

11   Mr. Bridges may have some issues with that, but we do believe

12   that's appropriate for a 12(b)(6) motion.

13           THE COURT:  All right.  So you mentioned 17, the

14   Seery Declaration.   1 through 13, --

15           MR. DEMO:  Yes, Your Honor.

16           THE COURT:  1 through 13, and 21 and 22.  Or did I

17   mishear?

18           MR. DEMO:  Yes.  No, that's exactly right, Your

19   Honor.

20           THE COURT:  So that's the universe of what you're

21   asking the Court to consider?  You're not asking the Court to

22   consider 14, 15, and 18 through 20?  I don't have them in

23   front of me to --

24           MR. DEMO:  14 -- we are not asking Your Honor to

25   consider 14, 15, 16, 18, 19, and 20.

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22 Filed 08/05/22   Page 234 of 274   PageID 4905

5

1          THE COURT:  Okay.  All right.  Mr. Bridges, what say

2  you about this?

3          MR. BRIDGES:  Thank you, Your Honor.  Counsel is

4  correct.  We have no objection to Exhibit 17.

5      We do object to the remainder.  And the remainder, our

6  objection is because they're not referenced in the pleading

7  and because they aren't actually evidence.  What was filed,

8  especially what was filed in a different adversarial matter,

9  isn't evidence in this case.  And that's the basis for our

10  objection.

11          MR. DEMO:  Your Honor, if I may?

12          THE COURT:  You may.

13          MR. DEMO:  I guess the first thing is that they were

14  all referenced in the pleadings, Your Honor.

15      The second thing is that Your Honor can take judicial

16  notice of things on her docket, and all of these things are on

17  Your Honor's docket for purposes of the 12(b)(6) motion.

18      And I'm honestly a little surprised by Mr. Bridges'

19  arguments and by Plaintiff's arguments because they ask you to

20  do the exact same thing in their pleading.  They ask you to

21  take judicial notice of two time entries that were filed in

22  the main docket here as evidence that we, Highland, had

23  knowledge of Plaintiff filing the complaint in the District

24  Court.  And, you know, we're not going to quibble with that

25  because they are on your Court's dockets and we do believe

Case 22-03052-sgj  Doc 41  Filed 08/04/22  Entered 08/04/22 11:39:59  Desc Main
Case 3:22-cv-02280-S  Document 22  Filed 06/02/45  Page 235 of 274  PageID 4906

6

1   that you can take judicial notice of those.

2        And I can cite you Fifth Circuit case law, if you'd like,

3   but I think it's a fairly standard issue.

4             THE COURT:  All right.  I'll over --

5             MR. BRIDGES:  Your Honor, one more thing?

6             THE COURT:  Go ahead.  Uh-huh.

7             MR. BRIDGES:  I might be confused, Your Honor.  My

8   objection was the failure to reference these documents in the

9   original complaint, the pending complaint in this adversary

10  proceeding, not to -- failure to have referenced them in the

11  briefing of this motion.

12            MR. DEMO:  Your Honor, I don't think that changes it.

13  I mean, Your Honor is entitled to take judicial notice of

14  exhibits -- I mean, I'm sorry, of matters on her docket -- for

15  the purposes of our motion to dismiss.  And all of these

16  pleadings and all of these exhibits and appendices -- the

17  witness and exhibit list were referenced in our motion to

18  dismiss.  I don't think that changes anything.

19            THE COURT:  All right.  I overrule the objection.  I

20  can take judicial notice of these items, and I will.

21            MR. DEMO:  Thank you, Your Honor.

22            THE COURT:  All right.  You may proceed.

23            MR. DEMO:  Thank you.  Again, Your Honor, for

24  purposes of the record, Greg Demo; Pachulski Stang Ziehl &

25  Jones; on behalf of Highland Capital Management.

Case 22-03052-sgj    Doc 41    Filed 08/04/22    Entered 08/04/22 11:39:59    Desc Main
Case 3:22-cv-02280-S    Document 22    Filed 07/07/22    Page 236 of 274    PageID 4907

7

1          We were here today on -- originally on two motions to

2     dismiss.  And our two motions to dismiss were generally

3     identical.  The first motion to dismiss, which is going

4     forward today, is the motion -- I'm sorry, the motion to

5     dismiss the complaint filed by the Charitable DAF Fund, which

6     alleges that Highland breached its fiduciary obligations to

7     the DAF as an investor in Multi-Strat during the course of the

8     bankruptcy.

9          The second thing we were supposed to be here today on,

10    Your Honor, was a complaint -- a motion to dismiss the

11    complaint filed by PCMG Trading Partners XXIII.  PCMG is

12    majority-owned by Jim Dondero and wholly controlled by Jim

13    Dondero.  We did have PCMG contact us last week and offer to

14    withdraw that motion.  We were happy to accept that offer

15    because we do think that it should have been dismissed.

16         That said, Your Honor, we were equally frustrated with

17    that offer, because the complaint was filed over a year ago.

18    Highland had to expend substantial resources briefing and

19    responding to motions.  And then, on the eve of trial, when we

20    have a dispositive motion on file, they withdrew it.  And that

21    is frustrating, Your Honor.

22         And it's doubly frustrating because Mr. Dondero has come

23    to this Court and tried to make an issue of the burn rate for

24    legal fees in this Court.  And we think that -- that the

25    filing of the complaint and then the last-minute withdrawal of

8

the complaint is emblematic of what Mr. Dondero is doing here,
Your Honor.

    That said, we are here only on one motion to dismiss.  And
as I mentioned, it's our motion to dismiss Plaintiff's
complaint which alleges that Highland Capital Management
breached its fiduciary obligations to Plaintiff and those
fiduciary obligations arose under the Investment Advisors Act,
common law, and contract.  And those breaches allegedly
occurred in mid-2020.  And that was after the petition date,
after Your Honor appointed independent directors to manage the
bankruptcy, but before confirmation of the plan and before the
plan's effective date.  And each of those causes of action
primarily revolve around the Plaintiff's contention that
Highland sold assets that it wasn't supposed to sell.  In
other words, Highland sold assets that Mr. Dondero did not
want it to sell.

    And I realize I mentioned the complaint was originally
filed in the District Court for the Northern District of
Texas.  The District Court referred the complaint to Your
Honor in May of this year, and Highland filed its amended
motion to dismiss on May 22nd -- I'm sorry, May 27th, 2022.

    And our motion to dismiss is simple, Your Honor, and it
amounts to one simple question:  Are the causes -- should the
Court dismiss the complaint because the causes of action in
the complaint are administrative expense claims that should

004686

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 3-22   Filed 09/02/22   Page 238 of 274   PageID 4909

9

1   have been filed in this Court and served on the Debtor prior

2   to the administrative expense claim bar date, which occurred

3   in September of 2021?

4        We believe the answer to that question is yes, Your Honor.

5   We believe it's unequivocally yes under black letter

6   bankruptcy law.

7        But as a separate and alternative basis for dismissal, we

8   believe that Plaintiff lacks both constitutional and

9   prudential standing, because (1) Plaintiff, the Charitable DAF

10  Fund, is not an investor in Multi-Strat, and that's what Mr.

11  Seery's declaration says; and (2) the Plaintiff did not allege

12  in the complaint how it was harmed by Highland's actions with

13  respect to Multi-Strat when it was not an investor in Multi-

14  Strat.

15       That's it, Your Honor.  And we believe it is and should be

16  a simple matter.

17       Plaintiff, however, has made a belated and what we believe

18  is a procedurally-improper request to have the complaint

19  treated as a late-filed administrative claim by this Court.

20  We believe Your Honor should deny that request.

21       But before addressing the law, I think it's important,

22  Your Honor, to go through the facts and to go through the

23  timeline of this complaint, because what the facts and what

24  the timeline will show is that there was no inadvertent error,

25  Your Honor.  There was a tactical and strategic decision to

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 23   Document Filed 06/06/22   Page 10 of 45   Page 239 of 274   PageID 4910

10

1   file the complaint outside of this Court in the hopes that

2   this Court would not know about it and that it could be

3   adjudicated around Your Honor.

4       And Ms. Canty, can you please put up Slide 1?

5       And as you'll see, Your Honor, this is the timeline that

6   we would like to discuss.  So, first, February 22nd, 2021.

7   Your Honor confirmed Highland's plan of reorganization.

8   Highland's plan, like all plans, included clear procedures for

9   dealing with administrative expense claims and stated --

10  again, we believe clearly -- that all administrative expense

11  claims are required to be filed within 45 days of the plan

12  effective date.

13      The next date we would bring Your Honor's attention to is

14  June 23rd, 2021.  On June 23rd, the Dugaboy Investment Trust

15  filed a complaint in the Northern District of Texas, alleging

16  that Highland breached its fiduciary duties with respect to

17  Multi-Strat.  We did not receive notice of that hearing -- of

18  that motion, of that complaint.  But on June 25th, which is

19  the next day here, we had a hearing in front of Your Honor on

20  the Plaintiff the Charitable DAF's motion to reconsider the

21  order appointing Mr. Seery as Highland's chief restructuring

22  officer.  During that hearing, we discovered that the Dugaboy

23  Investment Trust, Mr. Dondero's family trust, had filed its

24  complaint, and we brought that to Your Honor's attention.

25  Plaintiff's counsel at that June 25th hearing is the same

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22   Document   Filed 06/03/22   Page 240 of 274   PageID 4911

11

1    counsel in front of Your Honor today.

2         During that hearing, Your Honor rightly asked Plaintiff,

3    Plaintiff's counsel, about why it believed it could file

4    claims rightly before Your Honor in different courts.  And

5    Your Honor rightly told Plaintiff to, and I'm quoting here,

6    "Go back and hit the books and be prepared to defend" filing

7    claims outside of this Court.  After that hearing, Dugaboy

8    withdrew the Dugaboy complaint.

9         The next date I would call Your Honor's attention to is

10   July 22nd, 2021, approximately one month after that June

11   hearing.  That's the date the complaint at issue today was

12   filed, Your Honor.  The complaint -- and the complaint at

13   issue today was never served.  Plaintiff filed a motion to

14   stay that complaint in the Northern District of Texas and

15   never served that motion to stay.

16        Moving forward, Your Honor, November 23rd, 2021.  We are

17   here again in front of Your Honor on Plaintiff's complaint

18   with respect to the HarbourVest settlement.  And Highland had

19   moved to dismiss that complaint.  And again Plaintiff's

20   counsel at that hearing in front of Your Honor was the counsel

21   here today.

22        During that hearing, we also heard Plaintiff's motion to

23   stay the HarbourVest complaint pending resolution and pending

24   the appeal of Highland's plan of reorganization to the Fifth

25   Circuit.

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22   Filed 06/27/23   Page 241 of 274   PageID 4912

12

1    Plaintiff's arguments concerning the plan injunction at

2    that hearing were essentially the exact same as the arguments

3    they make in the response to our motion to dismiss, that the

4    plan injunction prohibited them from doing anything.  It

5    prohibited them from prosecuting the causes of action in the

6    complaint outside of this Court, which we agree with, but they

7    also argued it prohibited them from prosecuting the causes of

8    action in the complaint inside of this Court.

9    At that hearing, Your Honor -- and I'll backtrack just a

10   second after that -- at that hearing, Your Honor, Highland's

11   counsel was very clear on the record that they agreed that the

12   plan injunction prohibited litigation filed prior to the

13   effective date from occurring outside of this Court.

14   Highland, however, was also clear that Plaintiff did have a

15   remedy, and that remedy was to file the causes of action in

16   the complaint as a motion for allowance of an administrative

17   expense claim in this Court and prosecute them here.

18   At that hearing in November of 2021, Your Honor also told

19   Plaintiff's counsel that their arguments concerning the plan

20   injunction, and I'm quoting here, Your Honor, "reflect,

21   frankly, a misunderstanding of how the injunction language

22   applies."

23   Now, I'm going to backtrack, Your Honor, because I did

24   forget a very important date, and that's the August 11th, 2021

25   effective date of the plan.  It is indisputed, Your Honor,

004690

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22   Document   Filed 06/21 Page 16 of 45 Page 242 of 274   PageID 4913

13

1   that Plaintiff received notice of that effective date, and

2   Plaintiff's counsel was separately noticed with that effective

3   date of the plan.

4       Those certificates of service are in Bankruptcy Docket No.

5   2747, and are included in our witness and exhibit list as

6   Exhibit 8.  Again, it is indisputed that both Plaintiff's

7   counsel and Plaintiff had notice of the effective date of the

8   plan.

9       And it is also indisputed, Your Honor, that that notice

10  disclosed that all administrative expense claims had to be

11  filed with this Court and served on the Debtor within 45 days

12  of the effective date of the plan, which was September 25,

13  2021.

14      It is important to note that at no point in this timeline

15  to date did Plaintiff's counsel -- I'm sorry, did Plaintiff do

16  anything.  Plaintiff did not file an administrative expense

17  claim.  Plaintiff did not file a motion to have their

18  complaint allowed as timely filed.  Plaintiff did nothing.

19      It was not until May of 2022 when the District Court

20  referred this action to Your Honor and after Highland filed

21  its amended motion to dismiss for Plaintiff's failure to

22  comply with the administrative expense claim bar date that

23  Plaintiff came into this Court asking leniency.

24      Plaintiff came into this Court in their response to the

25  motion to dismiss asking Your Honor to treat their claim as a

Case 22-03052-sgj    Doc 41    Filed 08/04/22    Entered 08/04/22 11:39:59    Desc Main
Case 3:22-cv-02280-S    Document 22-1  Document  Filed 08/04/22  Page 34 of 45  Page 243 of 274    PageID 4914

14

1    timely-filed administrative expense claim.  But what this

2    timeline shows, Your Honor, and what the facts show, Your

3    Honor, is, again, that this was not an inadvertent mistake.

4    Plaintiff chose to file the complaint outside of this Court.

5    Plaintiff, with notice of the effective date and notice of the

6    administrative expense claim bar date, chose not to file an

7    administrative expense claim in this Court.

8         Plaintiff, with Your Honor's -- Your Honor's direct (audio

9    gap) in November of 2021 that they misunderstood the plan

10   injunction, still did nothing, Your Honor.  It was not until

11   we moved to dismiss this action that Plaintiff requested, in a

12   procedurally-improper way, to have their claim treated as a

13   late-filed claim.

14        What we believe that shows, Your Honor, is that this was

15   tactical.  That what Plaintiff actually wanted was to file

16   their claim in the District Court, which they did, and which

17   they did not give us notice of; to stay that action in the

18   District Court, which they did, and which they did not give us

19   notice of; and to have that complaint sit there in the

20   District Court until the Fifth Circuit overturned the plan,

21   and then and only then would they litigate that action, again,

22   away from Your Honor.

23        We believe that's highly improper, Your Honor.

24        That said, the legal question here is, again, very simple.

25   Does the complaint include administrative expense claims that

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22   Document   Filed 05/27   Page 05/27   Page 244 of 274   PageID 4915

15

1    are now time-barred because they were not filed in this Court

2    by the September 2021 administrative expense claim bar date?

3    Again, we believe the answer to that question is a simple yes.

4    These are administrative expense claims.

5        Again, Plaintiff's complaint alleges that Highland

6    violated its fiduciary obligations to Plaintiff in mid-2020,

7    after the petition date, after appointment of independent

8    directors, before confirmation, and before the effective date,

9    at all times while Highland was the debtor-in-possession.

10       And as Your Honor knows, administrative expense claims,

11   generally speaking, are claims that arise under Section 503(b)

12   of the Code for the actual and necessary costs of preserving

13   the estate and that arise from the debtor-in-possession or

14   trustee's postpetition, pre-effective-date, ordinary-course

15   operation of the estate.

16       And the claims in the complaint are administrative expense

17   claims under 503(b) under the *Reading* exception which was

18   created by the Supreme Court in 1968 in *Reading Co. v. Brown*.

19   And as set forth in our brief, Your Honor, *Reading* is still

20   good law.  It's routinely applied in the Fifth Circuit and

21   it's routinely applied in all circuits.

22       And *Reading*, Your Honor, (garbled) it includes not just

23   torts, but other claims arising from intentional or other

24   wrongful or -- wrongful acts as well.  And the claims asserted

25   in the complaint are clearly administrative expense claims

Case 22-03052-sgj    Doc 41    Filed 08/04/22    Entered 08/04/22 11:39:59    Desc Main
Case 3:22-cv-02280-S    Document 23    Document Filed 06/27 of 45    Page 245 of 274    PageID 4916

16

1    under *Reading*.  They are claims for intentional and/or

2    negligent violations of Highland's alleged fiduciary duty to

3    Plaintiff during the course of the bankruptcy.

4         And Ms. Canty, if you could please put up Slide 2.

5         Now, Plaintiff tries to dodge this by saying that the

6    definition of, quote, administrative expense claims and the

7    plan does not include the types of claims that they allege

8    here.  But that's not the case, Your Honor.  And the defined

9    term "Administrative Expense Claim" is in the middle box of

10   your screen.  And as you'll see, it says it's any claim

11   allowed pursuant to Sections 503(b), 507(a)(2), 507(b), or

12   1114(2) of the Bankruptcy Code.  Those include administrative

13   expense claims under the *Reading* exception, and they include

14   the administrative expense claims asserted in the complaint.

15        Those claims were required under the plan -- and the

16   provisions are all right here -- again to be filed in this

17   Court by September 2021.  They were not.

18        And as I mentioned above, it is indisputed that Plaintiff

19   had notice of the plan, that Plaintiff had notice of the

20   administrative expense claim bar date.  And it's also

21   indisputed that Plaintiff, represented by counsel, did not

22   file with this Court an administrative expense claim by

23   September 25th, 2021.  Plaintiff's claims are now time-barred.

24        And we believe Your Honor's *Taco Bueno* opinion is on all

25   fours.  In *Taco Bueno*, the claimant at least tried to file an

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22  Document  Filed 06/28  Page 167 of 45  Page 246 of 274   PageID 4917

17

1   administrative expense claim with this Court by filing a proof

2   of claim on the claims register.  Your Honor held that wasn't

3   good enough and it did not count as an administrative expense

4   claim, and Your Honor barred claimant's claim in *Taco Bueno* as

5   time-barred.

6       Here, similarly, Plaintiff, who's been represented at all

7   times by counsel, indisputably had notice and chose to file

8   the complaint in the District Court rather than complying with

9   the provisions of the plan and with the provisions of the

10  Bankruptcy Code.  Under *Taco Bueno* and various cases, Your

11  Honor, this claim is time-barred.

12      And that should end the discussion, Your Honor, but it

13  doesn't, because Plaintiff, in its response to our motion to

14  dismiss, finally asked this Court for leniency and finally

15  asked this Court to treat the claim as, quote, a request for

16  an order permitting a late claim or otherwise to have it

17  treated as a timely administrative expense claim under Federal

18  Rule of Civil Procedure 15.

19      But that's not how it works, Your Honor.  Section 502 of

20  the Code allows late-filed administrative expense claims only

21  for cause.  But that requires a separate motion, and it

22  requires evidence, Your Honor.  None of that happened here.

23  Instead, Plaintiff filed a one-line request to have it treated

24  as a late-filed claim, and it filed that request 16 months

25  after confirmation, 10 months after the bar date, and 8 months

1   after Your Honor rejected their argument on the plan

2   injunction.

3       There is no cause here.  Plaintiff has provided no

4   evidence of it.  It just asked for leniency based on a series

5   of what we believe are irrelevant arguments.

6       And that's where the facts again become important.  As

7   Your Honor has said, facts matter.  And the facts here, the

8   indisputed facts (garbled) Plaintiff and bely a finding of

9   cause or excusable neglect under *Pioneer*.  Again, two

10  standards that Plaintiff has not even tried to argue.

11      And, again, Your Honor, what we believe the facts show is

12  that there was no inadvertent technical error here.  There was

13  a considered and strategic plan to file these claims outside

14  of this Court in the hopes of avoiding Your Honor.

15      As in *Houbigant*, which we briefed in our paper, Plaintiff

16  is bound by those tactical decisions.  And the complaint, Your

17  Honor, we would ask be dismissed with prejudice for failure to

18  state a -- I'm sorry, for failure to comply with the

19  administrative expense claim bar date.

20      And lastly, Your Honor, standing.  In our motion to

21  dismiss, we sought an order dismissing this action under

22  12(b)(1) for lack of constitutional standing and also under

23  12(b)(6) for lack of prudential standing.  And as stated in

24  our papers and in Mr. Seery's declaration -- which, again, is

25  Exhibit 17 on our witness and exhibit list -- the DAF, the

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document Filed 08/04/22   Page 248 of 274   PageID 4919

19

1   Plaintiff here, is not an investor in Multi-Strat.  And all of

2   the allegations in the complaint, all of the causes of action

3   in the complaint, revolve around the DAF being an investor in

4   Multi-Strat, and Plaintiff did not plead how it could possibly

5   have standing as a non-investor.

6        Consequently, Your Honor, Plaintiff failed to plead

7   constitutional standing, failed to plead an injury, and failed

8   to plead prudential standing because it failed to plead how it

9   was the real party in interest under Section 17.

10       Now, Plaintiff makes various arguments in its response

11  about how it could have direct and/or derivative standing.

12  But, again, Your Honor, one, we believe those arguments are

13  meritless, and we believe that they're irrelevant, because

14  notwithstanding the liberal amendments standard in Federal

15  Rule of Civil Procedure 15 and the language in Federal Rule of

16  Civil Procedure 17, we believe amendment here would be futile.

17  For all the reasons we discussed, the claims are time-barred.

18  And even if Plaintiff were able to amend its complaint to fix

19  the standing issues, Plaintiff in no world can unwind and turn

20  back the clock to be able to file the complaint in this Court

21  as an administrative expense claim by the administrative

22  expense claim bar date, which, again, was on September 25th,

23  2021.

24       For the foregoing reasons, Your Honor, we ask that you

25  dismiss the complaint with prejudice.  And I'm happy to answer

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22   Document   Filed 08/08/22   Page 249 of 274   PageID 4920

20

1  any questions.

2          THE COURT:  Okay.  No questions right now.

3          MR. DEMO:  Thank you.

4          THE COURT:  Mr. Bridges?

5          MR. BRIDGES:  Thank you, Your Honor.  The last time I

6  appeared in this Court was at the June 25th, 2021 hearing that

7  counsel referenced.  It's particularly memorable to me because

8  of being postponed due to symptoms from a cranky gallbladder.

9  The time before that I remember even better.  That was the

10  only other time I was before you, Your Honor.  The

11  particularly painful order that was the result of that

12  previous time is also very memorable to me.

13      My gallbladder is no longer with us, and that order, that

14  painful order, has been expunged at considerable costs.  I was

15  hoping that meant today would be a fresh start.  Apparently, I

16  need to go backwards just a little bit, perhaps.

17      At the June 25th hearing that counsel described, I did

18  argue.  At the end, you did ask about a recently-filed lawsuit

19  that I didn't know anything about and told you so.  You asked

20  if Mr. Sbaiti was available, and I believe we had to go get

21  him, and he answered your questions, and your exchange was

22  with him.

23      I'm afraid that, again, I am unprepared and largely not in

24  the know about the other matters that counsel has referenced.

25  I came to argue the motion that's at issue today in the

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 23   Document   Filed 05/24/23   Page 250 of 274   PageID 4921

21

1   adversary proceeding that we're here for.

2   The *Federal Reporters*, Your Honor, I know that you know

3   this, they're full of opinions admonishing courts to favor

4   resolving cases on the merits.  Ever since the code pleading

5   system was abolished, federal courts have expressed their bias

6   in favor of addressing the merits of cases, and I would be

7   remiss in failing to mention that here on Highland's motion to

8   dismiss this case on timeliness and standing grounds.

9   Rule 15 and Rule 17 of the Federal Rules of Civil

10  Procedure are among those aimed at getting cases to the

11  merits, and we relied on both of those in our brief.

12  The first issue raised in the briefs is the classification

13  of our allegations as an administrative expense claim.  That

14  three-word term is capitalized in the plan, indicating that it

15  is a defined term.  I read in the reply brief and heard

16  counsel argue just moments ago that Highland views this as

17  merely a naming convention and not as a limiting provision,

18  the defined term.  And I see that as a reasonable view of

19  what's in the plan.  But it does quite -- quite plainly appear

20  as a defined term, with a lengthy definition.

21  Although this is not a hill we would choose to die on, and

22  much of our response brief is devoted to alternative

23  arguments, we don't view the allegations in the complaint as

24  administrative in nature, nor as an expense, nor, perhaps most

25  importantly, as the result of an action that benefits the

004699

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 28   Document Filed 08/22/22   Page 251 of 274   PageID 4922

22

1    estate, as both the plan definition and Section 503(b)

2    require.

3        Section 503(b) concerns only, quote, the costs and

4    expenses of preserving the estate.  What the complaint alleges

5    in this matter is that the acts complained of were against the

6    interests of the estate and depleted the estate's assets.

7        For example, Paragraph 22, which sums up the factual

8    allegations in the complaint, reads as follows.  Quote, "In

9    short, HCMLP caused Multi-Strat to sell the viatical pool at a

10   substantially discounted amount to curry favor with the

11   brokers and buyers in the marketplace, for no apparent benefit

12   to Multi-Strat's investors or the Debtor's estate."

13       This allegation does not on its face appear to be based on

14   the result of an action that benefits the estate.

15       The second issue concerns the consequences if we're wrong

16   about the first issue.

17           THE COURT:  Let me --

18           MR. BRIDGES:  The consequences --

19           THE COURT:  Let me back up.  Let me back up if you're

20   moving off that point.  What about the Supreme Court --

21           MR. BRIDGES:  Yes, Your Honor.

22           THE COURT:  What about the Supreme Court's *Reading*

23   case or *Reading* case?  If my memory -- it's been years since

24   I've read it, but I remember it pretty well.  I believe that

25   involved a fire, right, a fire in a building that a trustee

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22   Document Filed 09/28/22   Page 252 of 274   PageID 4923

23

1  was operating.  Certainly, a fire and great damage caused to a

2  third party wouldn't seem on its face to benefit the estate,

3  as that phrasing is used in 503(b).  But the U.S. Supreme

4  Court said something to the effect of, you know, he's doing

5  business and it's a cost of doing business that, you know,

6  you're going to sometimes have things like this happen.  And

7  isn't that exactly the same sort of situation we have here if

8  your allegations are true?

9           MR. BRIDGES:  I don't think so, Your Honor, although

10  I would -- would like to emphasize again this is not a hill

11  that we would choose to die on.  But I think --

12           THE COURT:  Am I correct --

13           MR. BRIDGES:  -- two reasons distinguish --

14           THE COURT:  -- in remembering the facts of that

15  famous U.S. Supreme Court case, that it involved a fire and

16  that the trustee who was operating the business, it was a

17  consequence of him operating the business?  Am I correct in

18  remembering those facts?

19           MR. BRIDGES:  That sounds correct to me, Your Honor,

20  but I don't pretend to remember it well enough to disagree

21  with you.  I would like --

22           THE COURT:  Mr. Demo, --

23           MR. BRIDGES:  -- to distinguish it.

24           THE COURT:  -- can you confirm or tell me if I'm

25  wrong?

Case 22-03052-sgj    Doc 41    Filed 08/04/22    Entered 08/04/22 11:39:59    Desc Main
Case 3:22-cv-02280-S    Document 22-3  Document Filed 08/12/22  Page 34 of 45  Page 253 of 274    PageID 4924

24

1          MR. DEMO:  Yeah.  You're absolutely correct, Your

2    Honor.  The trustee in that case accidentally burned down the

3    neighboring building, and the Supreme Court found that it was

4    still an administrative expense claim under the "*Reading*" or

5    "*Reading*" exception.  And that exception provides that even

6    though burning down somebody else's house does not benefit the

7    estate, that it still counts as an administrative expense

8    claim under 503(b).  And we have other case that comes --

9    other case law that comes after that that even broadens that,

10   Your Honor.

11         THE COURT:  Yes.  And I know the Fifth Circuit case

12   has cited that case in different opinions.

13      Okay.  So, going back to that, Mr. Bridges, I mean, you

14   just argued 503(b) doesn't contemplate this type of claim that

15   -- or claims you're alleging in the action, but hasn't the

16   Supreme Court in fact said that it does apply to this kind of

17   thing?

18         MR. BRIDGES:  Your Honor, no, I don't think so.  And

19   the reasons are twofold.  One is because the fire in that case

20   is not, I don't believe, the actions being complained of by

21   the plaintiff.  Rather, actions that are to the benefit of the

22   estate result in negligently, accidentally, causing a fire.

23   And that is a significant difference from here, where the

24   actions allegedly being -- that we're alleging, that are

25   complained of, are actually actions against the interests of

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 12-21   Filed 05/27/21   Page 254 of 274   PageID 4925

25

1  the estate, selling out the estate on the cheap.  Your Honor,

2  that is one distinction.

3      The other is that we're relying on the defined term, which

4  has different language from the actual Code, which was not at

5  issue in the other case.

6      Those are the two distinctions that I draw, Your Honor.

7          THE COURT:  Well, if this is not --

8          MR. BRIDGES:  The second issue --

9          THE COURT:  -- a 503-type claim, then what kind of

10  claim would it be?  It has to fit into some sort of category

11  here.

12          MR. BRIDGES:  Your Honor, honestly, our position is

13  that the order itself creates -- the final plan creates a gap

14  by not identifying this as -- as that kind of -- as an

15  administrative priority claim.

16          THE COURT:  Okay.

17          MR. BRIDGES:  The second issue, Your Honor, concerns

18  the consequences if we're wrong about the first issue and that

19  the consequences need not be forfeiture.

20      Counsel raises concerns about the purpose of the

21  administrative claim bar date and the ability to distribute

22  funds.  Those concerns certainly seen valid.  But importantly,

23  they go to priority, not validity.

24      Not one of their policy arguments supports outright

25  dismissal of the complaint, which would amount to a default

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22-2   Document   Filed 08/26/22   Page 255 of 274   PageID 4926   Page 26 of 45

26

1   and would have the effect of protecting the interests of

2   equity in this matter over the interests of a creditor.

3       Rule 15 allows for relation back of allegations from a

4   previous filing, and we believe it governs here.  Highland

5   doesn't deny that it had notice of the complaint, so they

6   don't have prejudice from the timing of it.  And there is

7   authority under the Code for allowing timely filing or

8   treating as timely the filing of one type of claim that was

9   submitted as another type of claim.

10      And on this, I'd point the Court to the Delaware

11  *Bluestream [sic] Brands* case, 2021 Bankr. LEXIS 1980, which

12  cites to the First Circuit and other cases allowing a timely

13  proof of claim to be treated as an administrative expense

14  claim.

15          THE COURT:  Doesn't that --

16          MR. BRIDGES:  I'm truly --

17          THE COURT:  Doesn't that run contrary to my *Taco*

18  *Bueno* opinion?

19          MR. BRIDGES:  Perhaps, Your Honor.  It does cite your

20  opinion in a "*But see*."  And I again would defer to your

21  knowledge of the proceedings in that case.  But I saw in the

22  opinion no argument whatsoever concerning the ability of the

23  creditor to seek relief on its proof of claim regarding the

24  same transaction.  I read it not to exclude that.

25      Although the Court relied -- also, the Court relied on

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22   Document Filed 08/17/22   Page 256 of 274   PageID 4927

27

1    prejudice to the creditors in that case if the administrative

2    claim had been allowed.  Importantly, in this case, where

3    creditors can expect to be paid in full, no such prejudice

4    exists, or at least at this stage of the claim -- of the case

5    there is no evidence that any such prejudice to the creditors

6    exists.

7        I'm truly unsure how to respond to the accusation that the

8    decision to file this action in District Court was a strategic

9    one, a strategic decision.  In some regards, certainly, all of

10   our decisions are strategic.  But the implication that this

11   was somehow a nefarious decision that should inflame the Court

12   is simply untrue.

13       I think the timeline supports us in this, that at the time

14   of the filing of this lawsuit the plan was not yet effective,

15   so the route to bring an administrative claim, if that's what

16   this is, did not appear to be available to us without the plan

17   having gone effective.

18       Also, it appeared that it might not go effective for a

19   year or more while the appeal to the Fifth Circuit was

20   pending.

21       A few weeks later, I think it was less than three,

22   approximately 20 days later, when Highland elected to make the

23   plan effective, the injunction as we understand it precludes

24   us from serving them from that point forward, as doing so

25   would have been continuing with this case.  The plan

Case 22-03052-sgj    Doc 41    Filed 08/04/22    Entered 08/04/22 11:39:59    Desc Main
Case 3:22-cv-02280-S    Document 22    Document Filed 08/22/22    Page 257 of 274    PageID 4928

28

1   injunction prevented us from doing so.

2       And so the accusation that we intentionally filed the

3   lawsuit and didn't serve them with process is really about a

4   three-week period that before we got them served we were

5   enjoined, as we understand the injunction, from doing so.

6       I have not heard from them that we're wrong on that

7   interpretation of the injunction.  I know from their other

8   pleadings in this matter that they view the injunction as

9   applying to this matter.  The only question I have is whether

10  they agree with our take that serving process would have been

11  continuing with the action.

12          THE COURT:  Let me -- let me --

13          MR. BRIDGES:  The notion that we --

14          THE COURT:  -- double-check that I understand

15  something you said.  I think what I heard you say was, because

16  the plan had not gone effective fee yet, therefore triggering

17  the 45-day deadline for filing administrative expense claims,

18  you had no other avenue here to pursue your claims except to

19  file the District Court lawsuit.  Is that what I heard you

20  say, or am I misunderstanding?

21          MR. BRIDGES:  Well, that's certainly more strongly

22  than I intended to say it.  I don't think so, Your Honor.  But

23  a similar vein, that the idea of filing a claim as required by

24  the final plan was not -- was not something that had gone into

25  effect yet.  So thinking that that --

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 23   Document Filed 09/29/22   Page 258 of 274   PageID 4929

29

1              THE COURT:  What do you mean?  You can file a request

2    for allowance of administrative claim, heck, in the first 30

3    days of a bankruptcy case.  You don't have to wait for the

4    Court to set a deadline.

5              MR. BRIDGES:  Your Honor, --

6              THE COURT:  You can file one at any time.

7              MR. BRIDGES:  -- we did not have an effective

8    deadline.  We did not know when that effective deadline would

9    go effective.  That process, that procedure, did not appear to

10   be the one that was, what, most available to us.

11             THE COURT:  Why not?  Why not?  Why not?  There is

12   nothing that would have precluded you from filing a request

13   for allowance of administrative expense claim.  People file

14   them throughout Chapter 11 cases frequently, --

15             MR. BRIDGES:  The --

16             THE COURT:  -- before there's ever a deadline set.

17             MR. BRIDGES:  Your Honor, the answer to that question

18   is that reading the definition of what it was did not cause us

19   to believe that's what we had here.  That is Issue #1 over

20   again.

21        One question -- again, one question is whether we are

22   right or wrong on Issue 1.  And I'm hearing you loudly and

23   clearly that you don't agree with us on that.

24        But in connection with that, I don't, Your Honor, I don't

25   think a fair conclusion is that we knew better or should have

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 11-2   Document   Filed 08/23/22   Page 30 of 45   Page 259 of 274   PageID 4930

30

1    known better than to read the defined term and think that it

2    does not apply to the case that we brought.

3        Certainly, the final order -- I'm sorry, the plan was not

4    in effect yet, so we weren't governed by it at that time.  And

5    I believe and urge the Court to consider that a plain reading

6    of that plan does not sound like on its face that our claim --

7    our complaint is within its four corners.

8            THE COURT:  Did you worry about the automatic stay?

9            MR. BRIDGES:  Yes, Your Honor.

10           THE COURT:  Okay.  What is your analysis there?

11           MR. BRIDGES:  Your Honor, it was well more than a

12   year ago.  I don't think I can remember that.  It wasn't in

13   the briefing for today, and it's not fresh on my mind.

14           THE COURT:  You're right.  You're right, it wasn't in

15   the briefing.  But, again, I'm just trying to put myself in

16   your brains and, you know, I don't -- I will say it's a gray

17   issue, because these are not prepetition claims, and usually

18   362 stays collection or actions aimed at pursuing prepetition

19   claims.

20       On the other hand, the relief sought in the DAF's

21   complaint asked for, among other things, disgorgement of all

22   ill-gotten gains, and also voiding of certain agreements of

23   Highland.  This sounds potentially like exercising or an

24   attempt to exercise control over property of the estate.  So,

25   again, it's something that weighs on me a little bit.

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22   Document   Filed 08/31/22   Page 260 of 274   PageID 4931
Page 31 of 45

31

1      But, again, it's not the subject of the hearing today, but

2   I kind of am still interested in what your thought process

3   was.  You know, it's a very risky thing to file a lawsuit

4   against a Chapter 11 debtor as opposed to filing a proof of

5   claim or a request for allowance of administrative claim.  So

6   I just -- it would be helpful to hear what your analysis was

7   on that.

8           MR. BRIDGES:  Perhaps this would be helpful as well,

9   Your Honor.  At least as -- at least in my view and

10  experience, you do not have to be a bankruptcy lawyer to know

11  what the automatic stay is.  An administrative expense claim

12  isn't the same kind of recognized concept, I believe.

13  Certainly, not to me.

14      And so the notion that what we were doing is sitting on

15  our hands rather than serving the complaint because of some

16  ulterior motive is just wrong.  That's untrue.  And generally

17  speaking, in this day and age, cases aren't dismissed without

18  reaching the merits simply because they weren't filed in the

19  right place or with the right forum.

20      Your Honor, that brings us to the third issue, which is

21  standing.  Again, courts in this day and age do not dismiss

22  cases without reaching the merits simply because they were not

23  brought by the real party in interest.  That's what Rule 17

24  says quite clearly.  An opportunity for the real party in

25  interest to join must be provided.  If -- if that's -- let me

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 29   Document Filed 08/22/23   Page 261 of 274   PageID 4932

32

1   back up.  If -- because Highland admits that Plaintiff's

2   subsidiary, CLO Holdco, is an investor who would have

3   standing, that should end the matter there.

4       Moreover, the Plaintiff, the DAF, has alleged in

5   Paragraphs 7 and 11 of the complaint that it is an investor.

6   And frankly, Your Honor, I don't think that's incorrect when

7   you view that someone can invest indirectly.  That is not a

8   peculiar concept, and I don't think it's a stretch to say that

9   that pleading that we are indirectly an investor is an invalid

10  one.  And in Paragraph 54, it states quite clearly that, if

11  necessary, we are seeking to plead our claim derivatively.

12      That's all I have today, Your Honor.  If there's more I

13  can answer, I will do my best.

14          THE COURT:  Okay.  So, am I hearing that the DAF

15  acknowledges that CLO Holdco, its one-hundred-percent

16  subsidiary, last I knew, that it is actually the investor in

17  Multi-Strat, not DAF?  Am I hearing that?

18          MR. BRIDGES:  Mostly yes, Your Honor.  I'd like to

19  quibble around the edges.  I believe it is not a one-hundred-

20  percent-owned subsidiary.

21          THE COURT:  Okay.

22          MR. BRIDGES:  My recollection is that it's --

23          THE COURT:  Well, forget that hundred percent.  But

24  the point is I'm hearing DAF acknowledge that it's CLO Holdco

25  that it is at least partly an owner of, if not mostly an owner

Case 22-03052-sgj    Doc 41    Filed 08/04/22    Entered 08/04/22 11:39:59    Desc Main
Case 3:22-cv-02280-S    Document 22    Document Filed 08/05/22    Page 262 of 274    PageID 4933

33

1   of, CLO Holdco is the one that invested in Multi-Strat.

2              MR. BRIDGES:  I believe Highland is correct on that,

3   Your Honor.  Yes.

4              THE COURT:  Okay.  So your argument is that the DAF

5   still would have standing because it should be considered an

6   indirect owner of interest in Multi-Strat?

7              MR. BRIDGES:  Slightly different from that, Your

8   Honor.  Not only is it an indirect investor, it also is

9   receiving investment device -- advice from Highland for the

10  purposes of directing its subsidiaries or counsel to these

11  subsidiaries or aiding them in making investment decisions.

12  So that investment advice and the contract claims are still

13  relevant, whether the investment by the DAF is direct or

14  indirect.  The relationship is, in all important aspects, the

15  same, regardless of whether the investment in the ultimate

16  asset is a direct one or an indirect one.

17      And Your Honor, I don't believe there's anything unusual

18  about that relationship between a subsidiary and its -- and

19  its parent.

20             THE COURT:  You don't think there's anything unusual

21  about what?

22             MR. BRIDGES:  About the relationship --

23             THE COURT:  About only naming the parent as a party,

24  not the subsidiary that actually owns the investment?

25             MR. BRIDGES:  No, Your Honor.  That's not what I was

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22   Document Filed 08/12/22   Page 263 of 274   PageID 4934

34

1   referring to.

2      The relationship between a parent entity that uses

3   subsidiaries to make its investment is a not-unusual corporate

4   arrangement.

5          THE COURT:  Oh, well, certainly.  I wouldn't think it

6   would be.  But I'm more focused on the parent being the

7   Plaintiff in the lawsuit and not the subsidiary.

8          MR. BRIDGES:  Your Honor, I think that's what

9   derivative case law and the statutes that govern it are all

10  about.  This is not a novel thing.

11         THE COURT:  I think you've got it flip-flopped, don't

12  you?  I mean, usually, derivative -- I mean, I guess I -- I

13  see what you're saying.  The entity has a cause of action and

14  it won't bring it for whatever reason, so the shareholders --

15  here, I guess you're saying the DAF -- would ask for standing.

16  It doesn't seem like the same thing we usually -- the same

17  context we usually see derivative litigation brought in.

18  Would you acknowledge that?

19         MR. BRIDGES:  I think in the federal courts what

20  you're referring to is shareholder derivative actions that

21  indeed tend to fit the paradigm you're talking about.

22     It is not unusual at all, however, for a majority owner of

23  an LLC to bring an action that is derivative on behalf of the

24  LLC, or a minority but a significant minority member of an LLC

25  or another type of company to bring such action.  Shareholder

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 29   Document   Filed 08/05/22   Page 264 of 274   PageID 4935

35

1  derivatives are not the only kind of derivative action.

2          THE COURT:  Okay.  I think that's all the questions I

3  have.  Anything else?

4      (No response.)

5          THE COURT:  Anything else?  Okay.  I guess -- that

6  was directed to you, Mr. Bridges.  Anything else?

7          MR. BRIDGES:  I'm sorry.  Not from me, Your Honor.

8          THE COURT:  All right.  Mr. Demo, you have the last

9  word.

10          MR. DEMO:  Thank you, Your Honor.  And I'll be fairly

11  brief.

12      Mr. Bridges I think is still -- I'm sorry, not --

13  Plaintiff I think is still confused about what an

14  administrative claim, expense claim is and how the *Reading*

15  exception applies.  In *Reading*, there was no benefit to

16  burning down somebody's house.  In *A.I. [sic] Copeland*, which

17  is a Fifth Circuit case, a debtor improperly failed to turn

18  over tax claims -- I'm sorry, tax distributions, tax payments,

19  to the State of Texas, in violation of Texas statutes.  That

20  was an administrative expense claim.

21      All of the claims here arise from Highland's alleged

22  intentional or negligent breach of its fiduciary duties to the

23  DAF -- again, not an investor in Multi-Strat, but that's what

24  was pled.  All of those fall under the *Reading* exception.

25      And to Plaintiff's point about, you know, there not being

Case 22-03052-sgj    Doc 41    Filed 08/04/22    Entered 08/04/22 11:39:59    Desc Main
Case 3:22-cv-02280-S    Document 23-1    Filed 08/02/23    Page 265 of 274    PageID 4936

36

1   a benefit to the estate here, I would read you the last line

2   of Paragraph 49, which says that one of the breaches includes

3   utilizing the sale proceeds for its own names, namely -- I'm

4   sorry.  Utilizing -- let me start over, Your Honor.  It says,

5   "utilizing the sale proceeds for its own end, namely, to

6   enrich itself."  That's Mr. Bridges, that's Plaintiff's

7   complaint.  They are alleging that we took these actions to

8   benefit Highland during the course of the bankruptcy.

9       Either way you slice it, Your Honor, this is an

10  administrative expense claim.  We think *Reading* is directly on

11  point, that they have pled a substantial benefit to the

12  estate.  They basically pled that we took these assets and

13  absconded with them.

14      Either way you slice it, under *Reading*, it applies.  Under

15  benefit to the estate, under their complaint, it applies.

16  This is an administrative expense claim and had to be filed by

17  the administrative expense claim bar date.

18      And, again, with respect to the plan injunction, Your

19  Honor, even if Mr. Bridges was right -- I'm sorry.  Even if

20  Plaintiff were right, and they're not, and I do think a point

21  needs to be made here, is that Plaintiff is the only party,

22  Plaintiff and PCBM, are the only parties who did not

23  understand the plan.  Even Mr. Dondero's other affiliates --

24  NexPoint, NexPoint Advisors, Highland Capital Management Fund

25  Advisors, and CPCM -- all were able to file administrative

Case 22-03052-sgj    Doc 41    Filed 08/04/22    Entered 08/04/22 11:39:59    Desc Main
Case 3:22-cv-02280-S    Document 29    Document Filed 08/04/22    Page 37 of 45    Page 266 of 274    PageID 4937

37

1    expense claims in this Court on or substantially before the

2    administrative expense claims bar date.  Plaintiff's

3    interpretation and confusion with the plan injunction applies

4    only to Plaintiff.  They are on an island here.

5        And yes, it's also wrong.  And even if Plaintiff were

6    confused about that when they filed their complaint in the

7    Northern District of Texas, they cannot say they were confused

8    about that after the November 2021 hearing, where Your Honor

9    told them bluntly and blatantly that they misunderstood the

10   plan injunction and where Highland told them that they were

11   not without a remedy, that their remedy was to file an

12   administrative expense claim in this Court.

13       So, even giving Plaintiff the benefit of the doubt that

14   they did innocently misunderstand the plan injunction, that

15   misunderstanding ended in November of 2021, eight months ago.

16   During that eight-month period, Plaintiff again did nothing.

17   Plaintiff only made a request, and a procedurally-improper

18   request, to have the claim treated as late-filed when it

19   responded to our motion to dismiss.

20       With respect to the policy here, Your Honor, I think Your

21   Honor nailed it in *Taco Bueno*.  Bar dates are important.

22   Administrative expense bar dates are extremely important.  And

23   so now I understand under Federal Rule of Civil Procedure 15

24   and all the other Federal Rules you do want to get to the

25   merits, but 503 applies here, Your Honor.  There are separate

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22   Document   Filed 08/23/22   Page 267 of 274   PageID 4938

38

1    procedures dealing with administrative expense claims, and

2    those procedures are important to protect not just the Debtor

3    but all creditors in this matter.

4        This is not a two-party dispute.  Bankruptcy is not a two-

5    party game.  There are other creditors here who have been

6    waiting ten, ten years, a decade to be paid.  And Plaintiff is

7    coming in and saying, you know what, we should get an

8    administrative expense claim.  We should be able to take

9    a-hundred-cent dollars off the top.  And they're doing that,

10   Your Honor, without any evidence whatsoever.  No evidence of

11   cause under 503(a).  No evidence under *Pioneer*.  And not even

12   an attempt to plead them.

13       The policy here does not favor them.  It favors the

14   estate.  It favors all other creditors in this action who are

15   relying on the confirmed plan that has been confirmed for well

16   over a year now, Your Honor.

17       And the last thing I'll say on standing, I do think

18   Plaintiff's arguments on direct and derivative are just way

19   off.  But I don't think they matter, Your Honor, because,

20   again, regardless of the liberal amendment standards in 15,

21   and regardless of the language in 17, amendment here is

22   futile.  That is our point.  It doesn't matter if they fix the

23   standing issues.  Their complaint is still going to be time-

24   barred.  And they still, like today, they still will have no

25   evidence of cause or excusable neglect to justify that

Case 22-03052-sgj    Doc 41    Filed 08/04/22    Entered 08/04/22 11:39:59    Desc Main
Case 3:22-cv-02280-S    Document 22    Document Filed 08/04/22    Page 39 of 45    Page 268 of 274    PageID 4939

39

1    complaint.

2         Again, happy to answer any questions, Your Honor, but we

3    do think this is a straightforward matter.  And with that,

4    I'll cede my time.

5              THE COURT:  Okay.  Thank you.

6         The Court is going to grant the motion to dismiss.  And

7    I'm obviously going to write this up.  But there's no question

8    whatsoever that the purported claims against Highland that

9    have been asserted in this action by the DAF concerning the

10   Multi-Strat sales of assets, they arise from postpetition

11   transactions, and to the extent the claims are valid, they

12   would have given rise to postpetition administrative expense

13   claims.  There's just no -- there's no legitimate argument to

14   the contrary on that.

15        And so that means this is a Section 503(b) issue, not a

16   Rule 15 or a Rule 17 issue.

17        Not only did the plan provide a specific procedure for

18   filing administrative expense claims, but 503 of the

19   Bankruptcy Code also contemplates such a procedure.

20        And as this Court held in a lengthy opinion in the *Taco

21   Bueno* case, these procedures have to be strictly complied

22   with.  It's very clear from the language of the Code, and the

23   legislative history, if the language of the Code weren't

24   clear, that proofs of claim are very different things than

25   postpetition claims that arise.  You file a proof of claim, a

004717

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 22   Document   Filed 08/04/22   Page 269 of 274   PageID 4940

40

1   simple form, for a prepetition claim.  It's deemed allowed if

2   no one objects.  You don't even have to get an order.  But,

3   again, as I explained in *Taco Bueno*, a 503 administrative

4   expense claim is a very different animal.  Okay?  You have to

5   put the world on notice.

6          As Mr. Demo said, it's not a two-party dispute.  It's a

7   type of claim that potentially every unsecured creditor in the

8   case would care about and want to weigh in on.  You're held to

9   strict proof.

10          And, again, as I noted from the Supreme Court *Reading*

11  case, the Supreme Court has said technically there doesn't

12  have to be a benefit to the estate.  There are some things

13  that are just a cost of doing business.  A fire to a

14  neighbor's building didn't benefit the estate, but still the

15  victim of that fire was entitled to an administrative expense

16  claim.  But this is not even the stretch that a fire would be.

17  So there's just zero room for argument, I think, here that the

18  claims asserted in this action are of the nature of

19  administrative expense claims, postpetition claims, and a

20  request had to be filed by September 25th.

21          And to the extent a sentence or two in this response filed

22  July 5th, 2022 is a request to file a late-filed

23  administrative expense claim, I mean, it's procedurally

24  improper in every way.  And so I'm not going to grant any

25  relief based on that.

004718

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 29   Document   Filed 06/21/22   Page 270 of 274   PageID 4941

41

1          Last, the standing issue.  While I have the view that CLO

2     Holdco would have been the party aggrieved here if these

3     claims are valid, and there does appear to be a problem with

4     the standing of the Charitable DAF, I think this is a moot

5     point or an irrelevant point.  While under 17 I could, in

6     different circumstances, allow the proper party to substitute

7     in, it would be an exercise in futility here because, again,

8     we're ten months past the deadline for a timely filing of an

9     administrative expense claim.

10         So, I will draft up an opinion and order in this regard.

11         Let me just throw this out here so no one is surprised or

12    on a different page.  I don't think I have to do a report and

13    recommendation on this.  And anyone who wants to weigh in can

14    weigh in, but as you know, --

15              MR. DEMO:  Your Honor?

16              THE COURT:  Oh.

17              MR. DEMO:  I'm sorry.  I was just agreeing with Your

18    Honor.  This is the claims allowance process.  This is a pure

19    core proceeding at this point.

20              THE COURT:  Okay.  And so certainly I'll also hear

21    from Mr. Bridges if he has a comment.

22         But the way I look at this is, okay, we start with the

23    point of Judge Godbey, I think it was, had this one.  He *sua*

24    *sponte* referred this to the Bankruptcy Court.  There wasn't a

25    report and recommendation where I said, I think you should

004719

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 23   Document Filed 06/22/ 45   Page 271 of 274   PageID 4942

42

1   either not withdraw or withdraw but let the Bankruptcy Court

2   do pretrial matters.  He just *sua sponte* did that.  Okay?

3       But then a couple of additional points.  Rule 7012(b)

4   says that a responsive pleading to a 12(b)(6) or a 12(b)(1),

5   any -- shall include a statement that the party does or does

6   not consent to the entry of final orders of judgment by the

7   Court.  So I guess we could argue, does that apply to the

8   Movant or does it apply to the Respondent?  But I think it

9   probably applies to the Respondent here, and so there was

10  just nothing in the response as to whether Respondent did or

11  did not consent to entry of a final order, so I would view

12  that as a waiver.

13      But most importantly of all, I guess, my third point on

14  this is I think this is an arising-in core matter, not merely

15  related to, where consent is necessary.  Because certainly

16  the idea of do you need an administrative expense claim or

17  not and were the proper procedures followed, I think that's

18  core arising in.

19      So, for all of these reasons, I'm letting you know I'm

20  not doing this in a report and recommendation.  I'm just

21  doing this in an opinion and order.

22      Mr. Bridges, anything you want to say about that?

23          MR. BRIDGES:  Yes, Your Honor.  If I could back up

24  and correct myself first.  I think I was mistaken about CLO

25  Holdco.  They are indeed, I am told, the hundred-percent

43

1    subsidiary of the Plaintiff, the Charitable DAF.

2         Secondly, yes, Your Honor, this is a Rule 12 motion in an

3    adversary proceeding.  We would object to a final order and

4    ask you to issue a report and recommendation.

5         THE COURT:  Well, you didn't put that in your

6    response.  What is your comment about that?

7         MR. BRIDGES:  Your Honor, my comment on that is I

8    feel -- I feel like my hands are tied by the injunction.  We

9    haven't been able to file any motion for leave on fear of --

10   on pain of getting a ruling from this Court against us as to

11   the injunction, but we don't have clarity as to what we're

12   enjoined from and what we are not.  And I guess that would be

13   my basis.

14        THE COURT:  Okay.  Well, I don't know what that has

15   to do it with putting a sentence in a response that's required

16   by 7012(b) saying whether you consent or don't consent.  I

17   don't know what an injunction has to do with that.

18        But anyway, I do view this as an arising-in matter where

19   consent is probably irrelevant, but I'm just dotting all our

20   I's here.

21        All right.  I will -- I've got one law clerk working on

22   one under-advisement of Highland that I think is pretty close.

23   I've got another law clerk working on another under-advisement

24   in Highland that is getting there.  So I think I'll probably

25   just jot out a pretty fast opinion and order on this one,

Case 22-03052-sgj   Doc 41   Filed 08/04/22   Entered 08/04/22 11:39:59   Desc Main
Case 3:22-cv-02280-S   Document 23   Document Filed 04/25/23   Page 273 of 274   PageID 4944

44

1    because the facts on it are pretty simple, and I think

2    probably in a few days you'll have it.

3        All right.  We're adjourned.

4            THE CLERK:  All rise.

5            MR. DEMO:  Thank you.

6        (Proceedings concluded at 3:44 p.m.)

7                        --oOo--

8

9

10

11

12

13

14

15

16

17

18

19

20                    CERTIFICATE

21        I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
22   above-entitled matter.

23    **/s/ Kathy Rehling**                          **08/04/2022**

24   _____          _____
     Kathy Rehling, CETD-444                         Date
25   Certified Electronic Court Transcriber


004722

45

INDEX

PROCEEDINGS                                                          3

WITNESSES

-none-

EXHIBITS

Judicial Notice to be Taken                                          6

RULINGS                                                             39

END OF PROCEEDINGS                                                  44

INDEX                                                               45

004723